PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, NY 10019-6131
Telephone: 212-858-1000
Facsimile: 212-858-1500
John A. Pintarelli
Kwame O. Akuffo

PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, 36th Floor
Los Angeles, CA 90017-5524
Telephone: 213-488-3655
Facsimile: 213-629-1033
Claire K. Wu (*pro hac vice* pending)

*Attorneys for Petitioners Graham Robinson and Ivy Chua,*
*in their capacities as Joint Official Liquidators*
*of Ascentra Holdings, Inc. (In Official Liquidation)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No. 21-11854 (DSJ) |
| Ascentra Holdings, Inc. (In Official Liquidation), | Chapter 15 |
| Debtor in a Foreign Proceeding.[1] | |

**VERIFIED PETITION FOR RECOGNITION OF FOREIGN
INSOLVENCY PROCEEDING AND APPLICATION FOR
ADDITIONAL RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY
CODE, AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

---

[1]  The Debtor's company registration number is 283719. The Debtor's registered office is c/o JTC (Cayman) Ltd., 94 Solaris Avenue, Second Floor, Camana Bay, PO Box 30745, Grand Cayman, Cayman Islands, KY1-1203.

# Table of Contents

I.   PRELIMINARY STATEMENT ........................................................................................ 1

II.  JURISDICTION AND VENUE ...................................................................................... 5

III. BACKGROUND .............................................................................................................. 5

    A.  Ascentra's Corporate Structure ................................................................................ 6

    B.  Ascentra's Pre-Liquidation Business ....................................................................... 7

    C.  Events Leading to Ascentra's Liquidation .............................................................. 9

IV.  THE CAYMAN PROCEEDING AND CAYMAN ISLANDS INSOLVENCY LAW ........ 11

V.   RELIEF REQUESTED ................................................................................................. 16

VI.  BASIS FOR RELIEF .................................................................................................... 17

    A.  Ascentra is an Eligible Debtor Under Chapter 15 of the Bankruptcy Code................... 17

    B.  The Cayman Proceeding is a Foreign Proceeding and the Liquidators are Foreign
        Representatives .................................................................................................... 18

    C.  The Cayman Proceeding Is a Foreign Main Proceeding ............................................. 20

    D.  Alternatively, the Cayman Proceedings Should Be Recognized as a Foreign Non-Main
        Proceeding. .......................................................................................................... 24

    E.  The Cayman Proceeding Meets All Other Requirements for Recognition ..................... 25

    F.  Relief Pursuant to Section 1521 of the Bankruptcy Code is Appropriate ...................... 26

VII.     NO PRIOR REQUEST ............................................................................................. 26

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re ABC Learning Centres Ltd.*,
    445 B.R. 318 (Bankr. D. Del. 2010) ................................................................................ 21

*In re Aerovias Nacionales de Colombia S.A.*,
    303 B.R. 1 (Bankr. S.D.N.Y. 2003) ................................................................................ 18

*In re Ashapura Minechem Ltd.*,
    480 B.R. 129 (S.D.N.Y. 2012) ......................................................................................... 19

*In re B.C.I. Finances Pty Ltd.*,
    583 B.R. 288 (Bankr. S.D.N.Y. 2018) ............................................................................ 17

*In re Barnet*,
    737 F.3d 238 (2d Cir. 2013) ............................................................................................ 17

*In re Betcorp Ltd.*,
    400 B.R. 266 (Bankr. D. Nev. 2009) .............................................................................. 19

*In re Cenargo Int'l, PLC*,
    294 B.R. 571 (Bankr. S.D.N.Y. 2003) ............................................................................ 18

*In re Fairfield Sentry Ltd. (GBD)*,
    Case No. 10-13164, 2011 WL4357421, at *10 n.8 (S.D.N.Y. Sept. 16, 2011) ............... 24

*In re Gold & Honey, Ltd.*,
    410 B.R. 357 (Bankr. E.D.N.Y. 2009) ........................................................................... 19

*In re Grand Prix Assocs.*, No. 09-16545 (DHS),
    2009 WL 1410519, at *22 (Bankr. D.N.J. May 18, 2009) .............................................. 22

*In re Millard*,
    501 B.R. 644 (Bankr. S.D.N.Y. 2013) ...................................................................... 4, 20

*In re Millennium Global Emerging Credit Master Fund Limited*,
    458 B.R. 63 (Bankr. S.D.N.Y. 2011) .............................................................................. 21

*In re Millennium Global Emerging Credit Master Fund Limited*,
    474 B.R. 88 (S.D.N.Y. 2012) ......................................................................................... 21

*In re Octaviar Admin. Pty Ltd.*,
    511 B.R. 361 (Bankr. S.D.N.Y. 2014) ............................................................................ 17

*In re Suntech Power Holdings Co.*,
    520 B.R. 399 (Bankr. S.D.N.Y. 2014) ................................................ 2, 4, 20, 22, 23, 24

*Morning Mist Holdings Ltd. V. Krys (In re Fairfield Sentry Ltd.)*,
    714 F.3d 127 (2d Cir. 2013) ...................................................................................... 21, 22

**Page(s)**

**Statutes**

11 U.S.C. § 101(23) ................................................................................. 18, 19

11 U.S.C. § 101(24) ..................................................................................... 18

11 U.S.C. § 109(a) ...................................................................................... 17

11 U.S.C. § 1502(2) ..................................................................................... 24

11 U.S.C. § 1502(4) ..................................................................................... 20

11 U.S.C. § 1502(5) ..................................................................................... 24

11 U.S.C. § 1506 ......................................................................................... 17

11 U.S.C. § 1515(b) ..................................................................................... 25

11 U.S.C. § 1515(d) ..................................................................................... 26

11 U.S.C. § 1516(c) ..................................................................................... 21

11 U.S.C. § 1517(a) ..................................................................................... 17

11 U.S.C. § 1517(b)(1) ................................................................................. 20

11 U.S.C. § 1520 ......................................................................................... 26

11 U.S.C. § 1521(a) ..................................................................................... 26

**Other Authorities**

*In re AJW Offshore Ltd.*,
    Case No. 13-70078 (Bankr. E.D.N.Y. Feb. 5, 2013) ..................................... 4, 20

*In re Bancredit Cayman Ltd. (in Liquidation)*,
    Case No. 06-11026 (SMB) (Bankr. S.D.N.Y. June 16, 2006) ...................... 4, 20, 21

*In re Farenco Shipping Co. Ltd.*,
    Case No. 11-14138 (REG) (Bankr. S.D.N.Y Feb. 24, 2012) ............................ 22

*In re Global Trade Finance Fund, Ltd.*,
    Case No. 20-10132 (MEW) (Bankr. S.D.N.Y. February 19, 2020) .................... 4, 20

*In re Lawndale Grp. S.A.*,
    Case No. 15-11352 (SCC) (Bankr. S.D.N.Y. July 6, 2015) .............................. 21

*In re LDK Solar Co., Ltd.*,
    Case No. 14-12387 (PJW) (Bankr. D. Del. Nov. 21, 2014) ........................... 4, 19

*In re Pioneer Freight Futures*,
    Case No. 13-12324 (Bankr. S.D.N.Y. Aug. 23, 2013) .................................... 21

*In re Platinum Partners Value Arbitrage Fund L.P. (In Provisional Liquidation), et al.*,
    Case No. 16-12925 (SCC) (Bankr. S.D.N.Y. Nov. 23, 2016) ......................... 4, 20

*In re Saad Invs. Fin. Co. (No. 5) Ltd.*,
    Case No. 09-13985 (KG) (Bankr. D. Del. Dec. 4, 2009) .................................. 20

Graham Robinson and Ivy Chua, the duly appointed joint official liquidators ("**Petitioners**" or "**Liquidators**") of Ascentra Holdings, Inc. (In Official Liquidation) ("**Ascentra**"), a company in official liquidation in the Cayman Islands by way of a shareholder resolution to wind up the company (the "**Cayman Proceeding**"), which was brought under the supervision of the Grand Court of the Cayman Islands (the "**Grand Court**") by an order dated September 17, 2021 (cause no. FSD 189 of 2021) (the "**Supervision Order**"), by its undersigned United States counsel, Pillsbury Winthrop Shaw Pittman LLC, respectfully submit the Official Form Petition, this Verified Petition (together, the "**Petition**"), the accompanying Declaration of Graham Robinson executed on October 25, 2021 (the "**Robinson Declaration**"), the Declaration of Guy Cowan executed on October 25, 2021 (the "**Cowan Declaration**"), and the Declaration of John A. Pintarelli executed on October 25, 2021 (the "**Pintarelli Declaration**" and, together with the Robinson Declaration and the Cowan Declaration, the "**Declarations**"), for entry of an order (the "**Proposed Order**"), substantially in the form attached hereto as <u>Exhibit A</u>, pursuant to Chapter 15 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**"):

    a.  recognition of the Cayman Proceeding as a foreign main proceeding under section 1517(b)(1) of title 11 of the United States Code (the "**Bankruptcy Code**") or in the alternative as a foreign nonmain proceeding under section 1517(b)(2) of the Bankruptcy Code;

    b.  recognition of Petitioners as Ascentra's foreign representatives under sections 1509 and 1517 of the Bankruptcy Code; and

    c.  granting relief pursuant to sections 1502 and 1521 of the Bankruptcy Code.

## I.    PRELIMINARY STATEMENT

1.    The purpose of Chapter 15 of the Bankruptcy Code is to provide effective mechanisms for dealing with cases of cross-border insolvency, with the express objectives of: (a) cooperation between United States courts, trustees, examiners, debtors and debtors in possession and the courts and other competent authorities of foreign countries; (b) greater legal certainty for

trade and investment; (c) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other interested entities, including the debtor; (d) the protection and maximization of the debtor's assets; and (e) the facilitation of the rescue of financially troubled businesses. *See* 11 U.S.C. § 1501(a)(1)-(5)); *see also In re Suntech Power Holdings Co.*, 520 B.R. 399, 413 (Bankr. S.D.N.Y. 2014). To that end, the Liquidators request recognition of the Cayman Proceeding as a foreign main proceeding primarily to obtain this Court's assistance in staying all proceedings and any actions against Ascentra, its property and assets, as well as to facilitate the Liquidators' efforts to collect Ascentra's assets and investigate potential claims against third parties. Recognition of the Cayman Proceeding as a foreign main proceeding would confer upon Ascentra the protections afforded by sections 362 and 1520 of the Bankruptcy Code, thereby preventing any one stakeholder from gaining an advantage over other stakeholders or otherwise interfering with the Cayman Proceeding and implementation of orders of the Grand Court.

2.     Ascentra was an e-commerce company, selling health and beauty products to the Asian market via a network of members. On June 1, 2021, by unanimous written resolutions, Ascentra's shareholders resolved to place the company into voluntary liquidation and appointed Mr. Robinson as voluntary liquidator (in such capacity, the "**VL**"). Pursuant to section 124 of the Companies Act of the Cayman Islands (2021 Revision) (the "**Companies Act**") and Order 14, r.1(1) of the Cayman Winding Up Rules 2018 ("**CWR**"), a "declaration of solvency shall be … signed by each person who was a director of the company on the date on which the voluntary winding up was commenced." No such declaration of solvency was received by the VL within 28 days of the commencement of the liquidation. Accordingly, pursuant to section 124(1) of the Companies Act, the VL was required to bring an application to bring Ascentra's liquidation under

the Grand Court's supervision, which application was filed by the VL on July 2, 2021.    On September 17, 2021, the Grand Court issued the Supervision Order.

3.       The Liquidators seek precisely the type of relief that Chapter 15 was designed to provide, and the Cayman Proceeding and this Petition meet all of the requirements for recognition and the requested relief. In particular, the Liquidators' role is to administer Ascentra's assets and liabilities, including potential litigation claims against third parties in connection with its liquidation pursuant to the Companies Act, a law relating to insolvency or adjustment of debt.

4.       Likewise, the Cayman Proceeding is a collective judicial proceeding as referenced in 15 U.S.C. § 101(23), subject to the oversight and control of the Grand Court, encompassing all creditors and stakeholders of Ascentra, which is pending in the Cayman Islands, the country in which Ascentra was formed, maintains registered offices and where one of its liquidators resides, maintains its center of main interest ("**COMI**"), and where the Liquidators have been engaged in substantial, non-transient, ongoing economic activity involving the wind-down and liquidation of Ascentra's businesses and affairs.

5.       Pursuant to section 1516(c) of the Bankruptcy Code, the Cayman Islands are presumed to be Ascentra's COMI because Ascentra was incorporated there and maintains its registered office there. This Petition and the accompanying Declarations further demonstrate that Ascentra's counterparties and creditors had clear and actual knowledge that Ascentra was a Cayman Islands entity. Since the commencement of the Cayman Proceeding, the Cayman Islands are the obvious and demonstrable "nerve center" of Ascentra's ongoing liquidation. Among other things, the VL has (a) performed certain statutory duties including (i) writing to third parties requesting the turnover of Ascentra's assets in their possession, including its books and records, (ii) overseeing the winddown of Ascentra's operations and that of its subsidiaries, including a

3

subsidiary organized in the U.S., (iii) paying the ordinary course expenses of Ascentra incurred by consultants and service providers that were involved in the winddown of the operations and (iv) communicating with Ascentra's other stakeholders about the status of the winddown; and (b) commenced an investigation into the activities of Ascentra, including agreements entered into with insiders or by insiders on behalf of the company, all with the express purpose of winding down Ascentra's business from the Cayman Islands. Hence, the Cayman Proceeding is a "foreign main proceeding" within the meaning of sections 101(23), 1502(4), 1516(c), and 1517(b)(1) of the Bankruptcy Code.

6.      This Court and others have recognized similar liquidation proceedings of Cayman Island entities as foreign main proceedings. *See, e.g., In re Suntech Power Holdings Co.*, 520 B.R. 399 (commencement of provisional Cayman Islands proceedings, together with subsequent activities of liquidators, had the effect of transferring holding company's COMI to Cayman); *In re Platinum Partners Value Arbitrage Fund L.P. (In Provisional Liquidation), et al.*, No. 16-12925 (SCC) (Bankr. S.D.N.Y. Nov. 23, 2016), ECF No. 27; *In re Global Trade Finance Fund, Ltd.*, Case No. 20-10132 (MEW) (Bankr. S.D.N.Y.) ECF No. 9; (recognizing Cayman Islands liquidation as foreign main proceeding); *In re Bancredit Cayman Ltd. (in Liquidation)*, No. 06-11026 (SMB) (Bankr. S.D.N.Y. June 16, 2006), ECF No. 13; *In re LDK Solar Co., Ltd.*, No. 14-12387 (PJW) (Bankr. D. Del. Nov. 21, 2014), ECF No. 43 (same);; *In re Millard*, 501 B.R. 644, 647 (Bankr. S.D.N.Y. 2013); *In re AJW Offshore Ltd.*, No. 13-70078 (Bankr. E.D.N.Y. Feb. 5, 2013), ECF No. 31.

7.      For all of these reasons and as set forth below, the Liquidators respectfully submit that: (a) Ascentra meets the eligibility requirements of section 109 of the Bankruptcy Code because it has property in the United States; (b) the Cayman Proceeding is a foreign main proceeding within

the meaning of sections 101(23) and 1502(4) of the Bankruptcy Code; (c) the Liquidators are the duly appointed foreign representatives of Ascentra within the meaning of section 101(24); (d) the Liquidators and the Petition comply with all the requirements of section 1515 and Bankruptcy Rule 1007(a)(4); and (e) recognition of the Cayman Proceeding would not be contrary to public policy under Bankruptcy Code section 1506.

## II.   JURISDICTION AND VENUE

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and sections 109 and 1501 of the Bankruptcy Code.

9.      Venue in this District is proper pursuant to 28 U.S.C. § 1410 because Ascentra has assets within this District.

10.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P), and the Court may enter a final order consistent with Article III of the United States Constitution.

11.      The statutory bases for the relief requested are sections 105(a), 362, 1504, 1506, 1515, 1517, 1520 and 1521 of the Bankruptcy Code.

## III.   BACKGROUND

12.      Ascentra was incorporated as an exempted company in the Cayman Islands on December 20, 2013.  Robinson Declaration ¶ 10. Until June 1, 2016, Ascentra was known as Interush Holdings, Inc. *Id*.  Ascentra was formed and operates pursuant to a Memorandum and Articles of Association (the "**Articles**"), originally dated December 20, 2013, but subsequently amended and restated, and filed with the Cayman Islands Registrar of Companies. *Id*. The directors of Ascentra (now displaced by the Liquidators) were Yoshio Matsuura ("**Mr. Matsuura**") and Ryunosuke Yoshida ("**Mr. Yoshida**"). [2] *Id*.

---

[2]  On June 1, 2021, pursuant to Article 122, Mr. Yoshida was purportedly removed as a director by Mr. Matsuura (the "**Purported Removal**"). Mr. Yoshida has contested the validity of the Purported Removal.

13.    Prior to the commencement of its voluntary liquidation, Ascentra's registered office address was c/o Hermes Corporate Services Limited, 5th Floor, Zephyr House, Mary Street, George Town, PO Box 31493, Grand Cayman, Cayman Islands KY1-1206. Robinson Declaration ¶ 11. Cowan Declaration ¶ 8, 33.  Following the commencement of its voluntary liquidation, Ascentra's registered office address was changed to c/o JTC (Cayman) Ltd., 94 Solaris Avenue, Second Floor, Camana Bay, PO Box 30745, Grand Cayman, Cayman Islands, KY1-1203. *Id*.

A.    **Ascentra's Corporate Structure**

14.    Ascentra is beneficially owned by the following parties:

a.   Mr. Martin J. Matthews holds a 21.59% indirect economic interest in Ascentra, through his (i) 50% ownership interest in INTL Media Holdings, LLC ("**INTL Media**"), a Delaware limited liability company, which owns a 30.64% equity interest in Ascentra and (ii) INTL's Media's 21.43% ownership interest in IR-P Holdings, Inc. ("**IR-P**"), a Cayman Islands corporation, which owns a 58.5% equity interest in Ascentra;

b.   Ms. Mari Matthews holds a 21.59% indirect economic interest in Ascentra, through her (i) 50% ownership interest in INTL Media Holdings, LLC ("**INTL Media**"), a Delaware limited liability company, which owns a 30.64% equity interest in Ascentra and (ii) INTL's Media's 21.43% ownership interest in IR-P Holdings, Inc. ("**IR-P**"), a Cayman Islands corporation, which owns a 58.5% equity interest in Ascentra;

c.   Mr. Matsuura holds a 22.98% indirect economic interest in Ascentra, through his 100% ownership interest in South Asia Ventures Ltd., a Cayman company ("**SAV**"), which owns a 39.28% equity interest in IR-P;

d.   Mr. Yoshida holds a 22.98% indirect economic interest in Ascentra, through his 100% ownership interest in Lequious Holdings Ltd. ("**Lequious**"), which owns a 39.28% equity interest in IR-P; and

e.   the remaining 10.85% of Ascentra is owned by three former members of Ascentra's senior management, Jeffrey Boshears, Ryosuke Kojima and Alex Oliva.

Robinson Declaration ¶ 12.

### B.    Ascentra's Pre-Liquidation Business

15.    Beginning with Ascentra's predecessor, Interrush, Ascentra was engaged in the sale of products and services through a personal marketing referral program through its development of an offshore e-commerce and onshore consultant support services business model for the sale of such products and services in Hong Kong and the People's Republic of China (the "**PRC**") since 2004. Robinson Declaration ¶ 13.

16.    During 2015, the Hong Kong authorities brought criminal proceedings against Mr. Matthews concerning the operation of Interush's business in Hong Kong. Robinson Declaration ¶ 14. The Hong Kong authorities alleged that Interrush was a pyramid scheme and charged Mr. Matthews with money laundering. *Id*. Mr. Matthews became a nonvoting director of IR-P pending outcome of the criminal proceedings. *Id*.  In or about May 2017, Mr. Matthews was fully acquitted, the presiding judge ordered all charges to be dropped, and shortly thereafter, the Hong Kong court awarded Mr. Matthews a judgment against the prosecutors for the payment of his full legal costs. *Id*. Following this, Mr. Matthews reacquired his full voting rights as a director of IR-P.  *Id*.

17.    In or about November 2016, Ascentra entered into a memorandum of understanding (the "**MOU**") with Shang Peng Gao Ke, Inc. ("**SPGK**"), an indirect wholly owned subsidiary of Growth Today, a Cayman Islands entity owned and controlled at the time by Mr. Yoshida's predecessor-in-interest, Mr. Motohiko Homma. Robinson Declaration ¶ 15, Ex. D.  Under the MOU, Ascentra granted SPGK, *inter alia*, (a) the exclusive right to use Ascentra's PRC affiliate list, (b) exclusive rights to sell Ascentra tangible products in the PRC under SPGK's proprietary brand names and (c) an exclusive license to sell Ascentra software in the PRC in exchange for a royalty payment equal to approximately 77% of the net revenues generated from such sales. *Id*.  In addition, Mr. Homma was to cause NSET to tender its shares in IR-P, which represent a 23% indirect ownership stake in Ascentra, for cancellation.  *Id*. On or about April 3, 2018, Ascentra and

7

SPGK entered into an agreement to cancel the MOU (the "**Cancellation Agreement**") as the terms therein were never fully implemented and the parties to the Cancellation Agreement agreed *inter alia* to take any and all actions to remit and return to Ascentra (x) all assets and monies held or generated by SPGK and (y) SPGK's proprietary brand names. *Id.*, Ex. E.

18.    On or about April 4, 2018, Ascentra entered into an exclusive international distribution agreement (the "**Distribution Agreement**") with Asian Offshore Services ("**AOS**") pursuant to which AOS would have the exclusive right to distribute certain of Ascentra's products in the PRC under AOS' proprietary brand names. Robinson Declaration ¶ 16. AOS discontinued providing services to Ascentra and its affiliates earlier this year. *Id.*  During the period in which AOS provided these back-office services, it utilized certain of the back-office systems, bank accounts, service providers and other infrastructure that Ascentra built and initially transferred to SPGK to support Ascentra's sales. *Id.*

19.    The Liquidators understand that the assets of Ascentra, as of December 31, 2020, are currently estimated to be in excess of $200 million, which amount excludes potential litigation claims. Robinson Declaration ¶ 17. This estimate is based on information from SPGK's summary income statement for the years 2016 to 2020, which Mr. Matsuura recently provided to the Cayman Court in an affidavit, a copy of which is attached to the Robinson Declaration as Exhibit F.  The income statement estimates that SPGK's net income during that 5-year period was $282.3 million, of which $217 million would have been payable to Ascentra under the MOU; however, based on the terms of the Cancellation Agreement, **all** revenues should have been transferred to Ascentra. *Id.*  Based on the Liquidators' initial investigation, SPGK has not paid or transferred any funds to Ascentra based on the sales of Ascentra's products. *Id.*  According to the terms of the Cancellation Agreement, Ascentra has claims to the entirety of the $67 million currently held in a credit card

clearing account maintained by Planet Payment in New York. Ascentra also has claims against SPGK for its failure to transfer any of the revenues from the sale of its products. *Id*. In addition, Ascentra has a contingent interest in funds retained by a former service provider, potential litigation claims against U.S. parties and has contract rights under agreements governed by the laws of New York and California. *Id*.

20.     Ascentra's main liabilities as of December 31, 2021, include the costs incurred by the Liquidators and certain ordinary course operating expenses for storage and maintenance of Ascentra's information until such time the Liquidators complete their investigation.  Robinson Declaration ¶ 18. Ascentra may have other contingent liabilities that are the subject of the Liquidators' investigation. *Id*.

**C.     Events Leading to Ascentra's Liquidation**

21.     Since 2018, Messrs. Matthews, Homma, Yoshida and Matsuura have had disagreements over the strategic direction of the business. Robinson Declaration ¶ 19. By early 2018 there was some tension between those individuals. *Id*. At the time, Mr. Homma and Mr. Matsuura excluded Mr. Matthews from day-to-day involvement in the operations of the business. *Id*. As a result, Mr. Matthews resigned as a director of IR-P and Ascentra in November 2018. *Id*.

22.     In December 2018, Mr. Homma nominated Mr. Yoshida to replace him as director of Ascentra.  Robinson Declaration ¶ 20.  Shortly thereafter, Mr. Homma retired from the business and transferred his interests in NSET and Growth Today to Mr. Yoshida.  *Id*.

23.     Since his resignation, Mr. Matthews has been concerned about SPGK continuing to sell Ascentra's products without authorization, its failure to turnover assets to Ascentra and its failure to pay certain commissions to its PRC consultants. Robinson Declaration ¶ 21.  Since January 2019, Mr. Matthews has unsuccessfully attempted to exercise his rights to appoint a board member of Ascentra.  *Id*. Upon information and belief, as a result of the shareholder issues,

including SPGK's failure to transfer funds to Ascentra and Ascentra's inability to declare a dividend to shareholders, in early 2021, Ascentra's then chief financial officer resigned *Id*. As a result, AOS also discontinued providing distribution and operational support to Ascentra and its affiliates. *Id*. The Liquidators' investigation into these claims is ongoing and central to the Liquidators' objective of obtaining chapter 15 relief to protect any dissipation of Ascentra's assets. *Id*.

24.     In or about April 2021, Mr. Matsuura raised the issue of making significant payments to certain agents at a service provider of Ascentra (former employees that were moved to a separate legal entity set up for the sole purpose of providing IT development and back-office support to Ascentra).  Robinson Declaration ¶ 22. On May 28, 2021, Mr. Matthews and Mr. Yoshida, controlling the voting shares of IR-P, resolved to appoint Mr. Robinson in place of the existing voluntary liquidator of IR-P. *Id*. Subsequently, on June 1, 2021, Mr. Matthews (voting the shares of INTL Media), the other shareholders of Ascentra and Mr. Robinson (in his capacity as voluntary liquidator of IR-P and thereby controlling the voting shares of IR-P) unanimously resolved to have Ascentra voluntarily wound up and to appoint Mr. Robinson as voluntary liquidator. *Id*.

25.     The Liquidators have recently commenced an investigation into potential improper uses of Ascentra's assets, including its back-office platform, customer lists and intellectual property for the benefit of third parties without any consideration. Robinson Declaration ¶ 23. Under Cayman law, it is the responsibility of the Liquidators to investigate these issues, safeguard and maximize the recovery of Ascentra's assets for the benefit of all stakeholders and make distributions in accordance with the Cayman statutory distribution scheme.  *Id*.  Chapter 15 recognition will aid the Liquidators in carrying out their statutory duties.  *Id*.

10

## IV.    THE CAYMAN PROCEEDING AND CAYMAN ISLANDS INSOLVENCY LAW

26.    The statutory provisions governing the liquidation of Cayman Islands companies are set out in Part V of the Companies Act, which is supplemented by the CWR, the Insolvency Practitioners' Regulations 2018 (the "**IPR**"), the Foreign Bankruptcy Proceedings (International Cooperation) Rules 2018, and the Grand Court Rules 1995 (as revised). Cowan Declaration ¶ 19. The provisions of Part V apply to companies formed and registered under the Companies Act or its predecessors, including companies that are formed as exempted companies, as well as bodies incorporated under any other law and certain foreign companies. *Id*.

27.    A Cayman Islands company may be wound up: (a) compulsorily, by order of the Grand Court;[3] (b) voluntarily, following the passing of a special resolution of its shareholder(s),[4] or pursuant to a mandatory term in its constitutional documents[5] or other event;[6] or (c) under the supervision of the Grand Court.[7] Cowan Declaration ¶ 20.

28.    Ascentra entered into voluntary liquidation as a result of the unanimous shareholder resolution dated June 1, 2021, which resolved to wind up Ascentra voluntarily. Cowan Declaration ¶¶ 9, 21.

29.    The Liquidators are fiduciaries and officers of the Grand Court. Cowan Declaration ¶ 28. As official liquidators of Ascentra, their function is to: (a) collect, realize and distribute the assets of Ascentra to its creditors and if there is a surplus, to equity holders in accordance with their rights; and (b) report to Ascentra's creditors and other stakeholders upon the affairs of Ascentra and the manner in which it is being wound up.[8] *Id*.

---

[3]  Section 90(a) of the Companies Act.

[4]  Section 90(b)(i) of the Companies Act.

[5]  Section 90(b)(ii) of the Companies Act.

[6]  Section 90(b)(iii) of the Companies Act.

[7]  Section 90(c) of the Companies Act.

[8]  Section 110 of the Companies Act.

30.     Generally, the Liquidators are authorized and empowered to take the following actions with the sanction of the Grand Court:

- Power to bring or defend any action or other legal proceeding in the name and on behalf of the company.

- Power to carry on the business of the company so far as may be necessary for its beneficial winding up.

- Power to dispose of any property of the company to a person who is or was related to the company.

- Power to pay any class of creditors in full.

- Power to make any compromise or arrangement with creditors or persons claiming to be creditors or having or alleging themselves to have any claim (present or future, certain or contingent, ascertained or sounding only in damages) against the company or for which the company may be rendered liable.

- Power to compromise on such terms as may be agreed all debts and liabilities capable of resulting in debts, and all claims (present or future, certain or contingent, ascertained or sounding only in damages) subsisting, or supposed to subsist between the company and a contributory or alleged contributory or other debtor or person apprehending liability to the company.

- Power to deal with all questions in any way relating to or affecting the assets or the winding up of the company, to take any security for the discharge of any such call, debt, liability or claim and to give a complete discharge in respect of it.

- The power to sell any of the company's property by public auction or private contract with power to transfer the whole of it to any person or to sell the same in parcels.

- The power to raise or borrow money and grant securities therefor over the property of the company.

- The power to engage staff (whether or not as employees of the company) to assist them in the performance of their functions.

- The power to engage attorneys and other professionally qualified persons to assist them in the performance of their functions.

Cowan Declaration ¶ 29 (citing Companies Act, section 110, Schedule 3, Part I).

31.     Schedule 3, Part II of section 110 of the Companies Act further provides that the Liquidators are permitted to exercise the following powers without the Grand Court's sanction:

- The power to take possession of, collect and enter the property of the company and for that purpose to take all such proceedings as the Liquidators consider necessary.

12

- The power to do all acts and execute, in the name and on behalf of the company, all deeds, receipts and other documents and for that purpose to use, when necessary, the company seal.

- The power to prove, rank and claim in the bankruptcy, insolvency or sequestration of any contributory for any balance against Ascentra's estate, and to receive dividends in the bankruptcy, insolvency or sequestration in respect of that balance, as a separate debt due from the bankrupt or insolvent and ratably with the other separate creditors.

- The power to draw, accept, make and indorse any bill of exchange or promissory note in the name and on behalf of the company, with the same effect with the respect of Ascentra's liability as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of the company in the course of its business.

- The power to promote a scheme of arrangement pursuant to section 86 of the Companies Act.

- The power to convene meetings of creditors and contributories.

- The power to do all other things incidental to the exercise of their powers.

Cowan Declaration ¶ 30 (citing Companies Act, section 110, Schedule 3, Part II).

32.     Under the Companies Act, the Liquidators are also empowered to investigate (a) the causes for the failure of Ascentra's business, as well as (b) generally, the promotion, business, dealings and affairs of Ascentra. Cowan Declaration ¶ 31 (citing Companies Act, section 102).

33.     A general principle underlying the Companies Act and the Cayman Proceeding is that creditors are treated on a *pari passu* basis, subject to certain exceptions.[9] Cowan Declaration ¶ 25 (citing Companies Act, section 140).

34.     Cayman liquidation proceedings are fair and equitable insofar as all creditors have the opportunity to be heard by the Grand Court and no creditors will be prejudiced on the sole basis that they are foreign based. Cowan Declaration ¶ 27.  All creditors are treated equally, regardless of where they are domiciled. *Id*.

35.     Section 97(1) of the Companies Act provides in relevant part that upon the entry of a winding up order against a company, no suit or other proceeding may be commenced or

---

[9]  For example, see sections 140 and 141 of the Companies Act.

continued against the company except with leave of the Grand Court and subject to such terms as the Grand Court might impose. Cowan Declaration ¶ 26. This automatic stay mirrors the stay imposed in U.S. bankruptcy proceedings and serves to, *inter alia*, facilitate the Liquidators' ability to deal with claims and creditors collectively and comprehensively. *Id.*

## V.    ASCENTRA'S ACTIVITIES IN THE CAYMAN ISLANDS

36.    Ascentra was formed as an exempted company in 2013 and has continuously maintained its registered office in the Cayman Islands. *See* Cowan Declaration ¶¶ 32, 33. An "exempted" company under the Companies Act is prohibited from undertaking business in the Cayman Islands except in furtherance of its business carried on outside the Cayman Islands.[10] *Id.* Specifically, it may effect and conclude contracts in the Cayman Islands and exercise in the Cayman Islands all of its powers necessary for the carrying on of its business outside the Cayman Islands, meaning that it may employ staff or agents in the Cayman Islands and maintain a registered office in the Cayman Islands in furtherance of its business outside the Cayman Islands, which Ascentra has always had. *Id.*

37.    Although upon its incorporation Ascentra was restricted from carrying on business within the Cayman Islands, this did not mean that Ascentra had no presence there. For example, the registered office of Ascentra (from where Ascentra's annual filings with the Registrar of Companies were made) has, in accordance with the Companies Act, been situated in the Cayman Islands since its inception and continues to be so situated.  *See* Cowan Declaration ¶ 33. Under applicable law, the situs of the shares of a Cayman Islands company is the place of its incorporation,

---

[10] Requirements are such that the operation of the proposed company must be "... conducted mainly outside the [Cayman] Islands." *See* sections 163 and 165 of the Companies Act. Exempted companies are also required to file an annual return with the Registrar of Companies to this effect, along with its annual fees, pursuant to section 168(b) of the Companies Act.

14

*i.e.* the Cayman Islands. *Id*. In addition, Ascentra has at least one operating subsidiary and numerous contracts with service providers governed by the laws of the Cayman Islands. *Id*.

38.     The status of a company as "exempted" does not operate to prevent the liquidation of that company from being controlled and supervised from within the Cayman Islands. Cowan Declaration ¶ 34.  In addition, it is a requirement of Cayman Islands law that at least one official liquidator be resident in the Cayman Islands. *Id*. In this case, Mr. Robinson is a resident of the Cayman Islands, as required by the IPR. *Id*.

39.     Since his initial appointment as voluntary liquidator, Mr. Robinson has overseen and directed all activities related to Ascentra from the Cayman Islands. Robinson Declaration ¶ 26. A significant proportion of the work to date relating to the Cayman Proceeding has been conducted in the Cayman Islands, and all of the work is supervised by the Liquidators and, with the entry of the Supervision Order, ultimately subject to the supervision of the Grand Court. *Id*.

40.     In addition to filing the statutory application with the Cayman Court, since Mr. Robinson's appointment as VL, he has undertaken the following actions:

    a.  opened a new liquidation bank account for the and on behalf of the Ascentra with CIBC First Caribbean Bank, Cayman Islands;

    b.  assumed all management responsibility for Ascentra;

    c.  retained consultants to assist the voluntary liquidator with the management of operations and to investigate Ascentra's prior business activities;

    d.  conducted an analysis of Ascentra's cash assets;

    e.  approved the payment of day-to-day operational expenses and manage the wind down of business operations;

    f.  corresponded with various third parties, including directors, affiliates and counterparties, to obtain Ascentra's books and records;

    g.  secured certain assets of Ascentra, including servers, customer lists and certain cash assets; and

    h.  conducted negotiations with certain service providers and suppliers.

Robinson Declaration ¶ 26.

41.     Additionally, all major stakeholders are actively participating in the Cayman Proceeding. Robinson Declaration ¶ 27.  Further, it is anticipated that most disputes amongst the beneficial holders of Ascentra's equity (*i.e.*, primarily IR's-P shareholders) will be resolved by the Grand Court.  *Id*.

42.     In addition to the work described above, since entry of the Supervision Order, the Liquidators have engaged and overseen the following specific and general matters on their own and through and with the assistance of Cayman and U.S. counsel, commencing the process within days of the issuance of the Supervision Order:

   a. performed certain statutory duties including, providing notice to all known stakeholders of the Liquidators appointment;

   b. retained counsel in Hong Kong, Singapore and Taiwan to seek recognition of the Cayman Proceeding;

   c. solicited the filing of proofs of debt and interests to crystallize claims against and interests in the estate;

   d. written to stakeholders about constituting a Liquidation Committee;

   e. written to third parties requesting the turnover of Ascentra's assets in their possession, including its books and records;

   f. overseen the winding up of various subsidiaries, including its indirect wholly-owned subsidiary, iHealthscience, LLC, a Delaware limited liability company and its parent, Radial IT Systems, Ltd., a Cayman Islands company;

   g. placed one of its subsidiaries into liquidation and exploring the dissolution of its Delaware indirect subsidiary; and

   h. continued the investigation into the activities of Ascentra's financial affairs with the express purpose of winding down Ascentra's business from the Cayman Islands.

Robinson Declaration ¶ 29.

## V.      **RELIEF REQUESTED**

43.     By this Verified Petition, the Petitioners seek:

a. recognition of the Cayman Proceeding as a foreign main proceeding under section 1517(b)(1) of the Bankruptcy Code or, in the alternative, as a foreign nonmain proceeding under section 1517(b)(2) of the Bankruptcy Code;

b. recognition of Petitioners as Ascentra's foreign representatives under sections 1509 and 1517 of the Bankruptcy Code; and

c. relief pursuant to sections 1520 and 1521 of the Bankruptcy Code.

## VI.   BASIS FOR RELIEF

44.     Section 1517 of the Bankruptcy Code mandates entry of an order recognizing a "foreign proceeding" if it appears that recognition will not undermine U.S. public policy and: "(1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign non-main proceeding within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515." 11 U.S.C. § 1517(a); *see also* 11 U.S.C. § 1506.

45.     Each of those requirements is met here, and entry of the Proposed Order attached hereto as Exhibit A will significantly aid the Liquidators' efforts to administer and recover Ascentra's assets and liabilities as well as ensure a fair and equitable treatment of and greater distributions to Ascentra's creditors and interest holders.

### A.     Ascentra is an Eligible Debtor Under Chapter 15 of the Bankruptcy Code

46.     Section 109(a) of the Bankruptcy Code provides that "only a person that resides or has a domicile, a place of business, or property in the United States . . . may be a debtor." 11 U.S.C. § 109(a). Section 109(a) has been applied to cases commenced under Chapter 15 and is usually satisfied if the foreign debtor has nominal amounts of property in the United States. *See In re Barnet*, 737 F.3d 238, 248 (2d Cir. 2013); *In re B.C.I. Finances Pty Ltd.*, 583 B.R. 288, 294 (Bankr. S.D.N.Y. 2018) ("retainer account constitutes property of the [d]ebtors that satisfies the [s]ection 109(a)"); *In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 373 (Bankr. S.D.N.Y. 2014) (section 109(a) is satisfied even if the debtor manufactures eligibility by depositing a $10,000

17

retainer in a client trust account); *In re Cenargo Int'l, PLC*, 294 B.R. 571, 603 (Bankr. S.D.N.Y. 2003) (debtor was eligible under Chapter 15 since it had joint bank accounts and pledged stock in the United States); *In re Aerovias Nacionales de Colombia S.A.*, 303 B.R. 1, 8-9 (Bankr. S.D.N.Y. 2003) (minimal amount of property in the United States is enough to establish section 109(a) eligibility).

47.      Ascentra is an eligible debtor under section 109(a) because it has property in the United States in the form of a retainer with Pillsbury Winthrop Shaw Pittman LLP. Pintarelli Declaration ¶ 3. These funds are held in J.P. Morgan Chase account in New York. *Id*. In addition, Ascentra has legal and equitable claims to funds held in bank accounts maintained by a credit card processing entity in New York and former service providers and is a party to contracts governed by the laws of New York and California. Robinson Declaration ¶ 17.

**B.      The Cayman Proceeding is a Foreign Proceeding and the Liquidators are Foreign Representatives**

48.      Section 101(23) of the Bankruptcy Code defines a foreign proceeding as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23). This definition incorporates the term foreign representative, which the Bankruptcy Code in turn defines as "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24). The Liquidators and the Cayman Proceeding undoubtedly satisfy each of these requirements.

18

49.     First, the Cayman Proceeding is a judicial proceeding in a foreign country, the Cayman Islands, subject to the control and supervision of the Grand Court. Cowan Declaration ¶ 21. All claims against Ascentra may be submitted in the Cayman Proceeding, and all claimants have the right to access the Grand Court and appeal decisions of the Liquidators. Robinson Declaration ¶ 40.

50.     Second, the Cayman Proceeding is being conducted by the Liquidators, who were appointed by the Grand Court pursuant to the Companies Act as joint official liquidators to oversee the winding up of Ascentra according to the provisions of the Companies Act. Cowan Declaration ¶ 28. As such, each of the Liquidators is a "person authorized in a foreign proceeding to administer the reorganization or the liquidation of [Ascentra's] assets or affairs," within the meaning of section 101(24).

51.     Third, the relevant portions of the Companies Act and related rules that govern the Cayman Proceeding specifically relate to proceedings in the Cayman Islands concerning "insolvency or adjustment of debt." 11 U.S.C. § 101(23); Cowan Declaration ¶ 29.

52.     Finally, the Cayman Proceeding is a "collective . . . proceeding" because it "considers the rights and obligations of all creditors." *See, e.g.*, *In re Ashapura Minechem Ltd.*, No. 11-14668 (JMP) (Bankr. S.D.N.Y. Nov. 22, 2011), ECF No. 34, at 6 (quoting *In re Betcorp Ltd.*, 400 B.R. 266, 281 (Bankr. D. Nev. 2009)); *In re Gold & Honey, Ltd.*, 410 B.R. 357, 370 (Bankr. E.D.N.Y. 2009) (citations omitted). Pursuant to the Supervision Order and the Companies Act, the Cayman Proceeding and the Liquidators' management of Ascentra's assets and affairs are subject to the supervision and control of the Grand Court. Cowan Declaration ¶¶ 13, 22, 24.

53.     As discussed above, numerous courts in this and other districts have found that official liquidation proceedings brought pursuant to the Companies Act qualify as a "foreign

19

proceeding," and that joint liquidators appointed and overseen by the Grand Court qualify as a "foreign representative" for purposes of section 101(23) and (24). *See, e.g.*, *Suntech Power*, 520 B.R. at 416-17 (commencement of provisional Cayman proceedings, together with subsequent activities of liquidators had the effect of transferring holding company's COMI to Cayman); *In re Global Trade Finance Fund, Ltd.*, Case No. 20-10132 (MEW) (Bankr. S.D.N.Y. Feb. 19, 2020) (recognizing Cayman Islands liquidation as foreign main proceeding); *In re Platinum Partners Value Arbitrage Fund L.P. (In Provisional Liquidation), et al.*, Case No. 16-12925 (SCC) (Bankr. S.D.N.Y. Nov. 23, 2016) (ECF No. 27) (same); *In re Bancredit Cayman Ltd. (in Liquidation)*, No. 06-11026 (SMB) (Bankr. S.D.N.Y. Jun. 16, 2006) (ECF No. 13) (same); *In re LDK Solar Co., Ltd*, No. 14-12387 (PJW) (Bankr. D. Del. Nov. 21, 2014) (ECF Nos. 43 and 44) (same); *In re Saad Invs. Fin. Co. (No. 5) Ltd.*, No. 09-13985 (KG) (Bankr. D. Del. Dec. 4, 2009) (ECF No. 39) (same); *In re Millard*, 501 B.R. at 647 (individual bankruptcies before Cayman Grand Court); *In re AJW Offshore Ltd.*, Case No. 13-70078, (Bankr. E.D.N.Y. Feb. 5, 2013) (ECF No. 31) (same).

54.    For the foregoing reasons, the Cayman Proceeding is a "foreign proceeding" within the meaning of section 1517(a)(1) of the Bankruptcy Code.

### C.    The Cayman Proceeding Is a Foreign Main Proceeding

55.    The Cayman Proceeding is a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code because Ascentra's COMI is in the Cayman Islands. Robinson Declaration ¶ 39, 42. The Bankruptcy Code defines a "foreign main proceeding" as "a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4). A foreign proceeding "shall be recognized" as a foreign main proceeding if it is pending where the debtor has its COMI. *See* 11 U.S.C. § 1517(b)(1).

56.    Although the Bankruptcy Code does not define "center of main interests," pursuant to section 1516(c) of the Bankruptcy Code, in the absence of evidence to the contrary, the debtor's

registered office, which in this case is the Cayman Islands, is presumed to be its COMI. 11 U.S.C.

§1516(c). *See also In re ABC Learning Centres Ltd.*, 445 B.R. 318, 333 (Bankr. D. Del. 2010)

(holding that debtor's registered jurisdiction was its COMI where debtor established the section

1516 presumption, and no evidence was presented rebutting that presumption).

57.     Here, the registered office of Ascentra is in the Cayman Islands and has been since

the time of Ascentra's formation. Cowan Declaration ¶ 29. Further, there is no contrary evidence

to rebut the resulting presumption that the Cayman Islands is Ascentra's COMI.

58.     As discussed in detail above, although Ascentra was formed as an "exempt"

company, it nevertheless maintained its registered office in the Cayman Islands even before the

commencement of the Cayman Proceedings, and its documents and other correspondence made it

clear that it was a Cayman Islands registered company. Robinson Declaration ¶ 39.  In any case, a

foreign debtor's COMI is determined at the time the Chapter 15 petition is filed. *Morning Mist*

*Holdings Ltd. V. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137 (2d Cir. 2013) ("a debtor's

COMI should be determined based on its activities at or around the time the Chapter 15 petition is

filed, as the statutory text suggests."); *In re Millennium Global Emerging Credit Master Fund*

*Limited,* 458 B.R. 63 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 88 (S.D.N.Y. 2012) (describing

same COMI test). Where, as here, a debtor has engaged in substantial liquidation efforts and related

activities prior to the filing of the Chapter 15 petition, courts will consider such activities in the

determination of the debtor's COMI. *Fairfield Sentry Ltd.*, 714 F.3d at 137.

59.     On this basis, numerous similar entities and capital structures have been recognized

by courts in various jurisdictions as foreign main proceedings pursuant to Chapter 15. *See, e.g.,*

*Bancredit Cayman*, No. 06-11026 (SMB) (Bankr. S.D.N.Y. Jun. 16, 2006) (ECF No. 13); *In re*

*Lawndale Grp. S.A.,* No. 15-11352 (SCC) (Bankr. S.D.N.Y. July 6, 2015) (ECF No. 3)

(recognizing liquidation of British Virgin Islands entity as foreign main proceeding); *In re Pioneer Freight Futures,* No. 13-12324 (Bankr. S.D.N.Y. Aug. 23, 2013) (ECF No. 14) (recognizing British Virgin Islands liquidation proceeding as foreign main proceeding); *In re Farenco Shipping Co. Ltd.,* No. 11-14138 (REG) (Bankr. S.D.N.Y Feb. 24, 2012) (ECF No. 18) (same).

60.    In addition to the presumption provided under section 1516, courts consider any relevant factors, including: (a) the location of the debtor's assets; (b) the location of the debtor's books and records; (c) the location of the majority of the debtor's creditors; (d) the commercial expectations and knowledge of the debtor's creditors; and (e) the location of those who actually manage the debtor. *See, e.g.*, *Suntech Power*, 520 B.R. at 416; *In re Grand Prix Assocs.,* No. 09-16545 (DHS), 2009 WL 1410519, at *22 (Bankr. D.N.J. May 18, 2009). These factors, however, are not dispositive or exclusive, and none of the factors are required. *See Fairfield Sentry*, 714 F.3d at 137-38. Further, courts have also looked to whether a Chapter 15 debtor's COMI would have been readily ascertainable to parties in interest, such as the debtor's creditors. *See Grand Prix*, 2009 WL 1410519, at *6.

61.    Here, there is no doubt that Ascentra's COMI is the Cayman Islands. While Ascentra has claims to certain cash balances in bank accounts maintained in New York, those claims arise under contracts governed by Cayman law.  Robinson Declaration ¶ 31. In addition, the Liquidators have recovered certain proceeds from service providers, which is being held in a Cayman Islands-domiciled account controlled by the Liquidators and future realizable value for Ascentra's stakeholders will come from parties in foreign jurisdictions. Robinson Declaration ¶ 38.  Finally, the licensing agreements and other contractual arrangements amongst affiliates are governed by Cayman law.  *Id*.  The collection of this value is and will be overseen from the Cayman Islands by the Liquidators through the winding up proceeding of Ascentra, including via the

Liquidators' negotiation of potential settlements and oversight of contemplated litigation. Based on the documentation issued by and as to Ascentra, the corporate meetings, statutory demands and resolutions to wind up Ascentra, shareholder meetings and Ascentra's liquidation, all of which focused on the Cayman Islands, it is clear that all relevant creditors, stakeholders, and shareholders regard Ascentra to be a Cayman Islands company, and that all relevant persons, entities, investors, creditors and counterparties regard the Cayman Islands to be the "nerve center" of Ascentra. *Id.* at ¶ 39.

62.     Since the commencement of the Cayman Proceeding, substantially all activities associated therewith have been conducted and/or overseen by the Liquidators from the Cayman Islands, including overseeing the collection of Ascentra's assets. Among other things, the Liquidators have overseen and filed all necessary notices and displaced the prior management of Ascentra and assumed their duties, are engaged in the process of investigating and assessing the claims of Ascentra and its creditors and interest holders, are gathering information about the operation and management of Ascentra's business before the Cayman Proceeding and are engaged in discussions with creditors and interest holders. Robinson Declaration ¶ 26, 29.

63.     The *Suntech* opinion issued by this Court is instructive. In *Suntech,* the Court held that the activities of a Cayman provisional liquidator were sufficient to establish the Cayman Islands as the debtor's COMI, even though the debtor's principal place of business prior to foreign liquidation was in China. *Suntech Power*, 520 B.R. at 419.

64.     A primary factor in this Court's COMI analysis for *Suntech* was the provisional liquidator's active involvement in managing the debtor fund's subsidiaries. As stated, the Liquidators have been continuously working on managing Ascentra. In *Suntech,* day-to-day operations of the debtor fund was left to a board of directors, while the Liquidators in this case

23

have absolute management control over Ascentra subject to the supervision of the Grand Court.
*Suntech Power*, 520 B.R. at 417.

65.     As set forth in detail in paragraphs 39-42 and 61-62 above, as well as in the
accompanying Robinson Declaration, it is respectfully submitted that the level of liquidation and
ongoing business activity in this case substantially exceeds what this Court and other courts have
previously found sufficient to establish COMI.

66.     Under the circumstances, the Liquidators submit that there is ample evidence and precedent
to support recognition of the Cayman Proceeding as a foreign main proceeding.

**D.      Alternatively, the Cayman Proceedings Should Be Recognized as a Foreign
Non-Main Proceeding.**

67.     The Cayman Proceeding meets the requirements of a "foreign main proceeding"
pursuant to section 1502 of the Bankruptcy Code. Nevertheless, should the Court determine that
the Cayman Proceeding should not be recognized as a foreign main proceeding, the Liquidators
submit that, in the alternative, the Cayman Proceeding should be recognized as a foreign nonmain
proceeding under sections 1517(b)(2) and 1502(5) of the Bankruptcy Code.

68.     Section 1502(5) of the Bankruptcy Code defines a foreign nonmain proceeding as
"a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor
has an establishment." 11 U.S.C. § 1502(5). In turn, "establishment" is defined by section 1502(2)
as being "any place of operations where the debtor carries out nontransitory economic activity."
11 U.S.C. § 1502(2). The "establishment" requirement is satisfied by the local conduct of business.
*See In re Fairfield Sentry Ltd. (GBD)*, No. 10-13164, 2011 WL 4357421, at *10 n.8 (S.D.N.Y. Sept.
16, 2011) ("This Court agrees with the Bankruptcy Court that if main recognition were not granted,
non-main recognition of Sentry's BVI Proceeding would be appropriate because Sentry has an

establishment in the BVI for the conduct of nontransitory economic activity, *i.e.* a local place of business.").

69.     The Liquidators respectfully submit that, at a minimum, their activities in the Cayman Islands constitute nontransitory economic activity. Robinson Declaration ¶ 41. There is no foreign or domestic insolvency proceeding other than the Cayman Proceeding, however, the Liquidators have retained counsel to seek recognition of the Cayman Proceeding in other foreign jurisdictions. *Id*. at ¶ 42.

70.     As such, there can be no dispute that the Cayman Proceeding is a legitimate insolvency proceeding. Under the circumstances and given that Ascentra's ongoing business activities are being conducted from the Cayman Islands, at a minimum this Court should recognize the Cayman Proceeding as a foreign nonmain proceedings pursuant to Chapter 15 and further, to grant the Liquidators the discretionary relief requested.

### E.     The Cayman Proceeding Meets All Other Requirements for Recognition

71.     In addition to being a foreign main (or nonmain) proceeding brought by duly appointed foreign representatives, the Cayman Proceeding meets all other requirements for recognition under section 1515 of the Bankruptcy Code. The Petition is accompanied by certified copies of the Supervision Order issued by the Grand Court, which evidences the commencement of the Cayman Proceeding and the appointment of the Liquidators as joint official liquidators of Ascentra. The Petition also is accompanied by a declaration that contains a statement identifying all foreign proceedings with respect to Ascentra that are known to the Liquidators. *See* 11 U.S.C. §§ 1515(b), (c); *see also* Robinson Declaration ¶ 43.

72.     The Petition likewise is accompanied by a declaration containing the information required by Bankruptcy Rule 1007, including the disclosures required by Bankruptcy Rule 7007.1, a statement indicating that there are no other persons or entities known to the Liquidators that are

authorized to administer foreign proceeding with respect to Ascentra, and a list of all parties to litigation with Ascentra in the United States. *See* Robinson Declaration ¶ 32, Exhibit G. All documents supporting the Petition are in English. *See* 11 U.S.C. § 1515(d). For all of these reasons, this Court can and should find that all of the requirements for recognition of the Cayman Proceeding as a foreign main proceeding under Chapter 15 have been satisfied.

### F.   Relief Pursuant to Section 1521 of the Bankruptcy Code is Appropriate

73.   In addition to the relief that is automatically provided by section 1520 of the Bankruptcy Code upon recognition of a foreign main proceeding,[11] Petitioners request additional relief pursuant to section 1521 of the Bankruptcy Code to protect Ascentra's assets and its creditors' interests.   Section 1521 of the Bankruptcy Code provides, in part, that the court may grant a foreign representative "any appropriate relief," including "any additional relief that may be available to a trustee," subject to certain limitations (which do not apply here) where necessary to effectuate the purpose of Chapter 15 and to protect the debtor's assets and creditors' interests. 11 U.S.C. § 1521(a) .

74.   Pursuant to sections 1521(a)(4) of the Bankruptcy Code, Petitioners request that the Court authorize the Liquidators to issue subpoenas and obtain discovery from parties with whom Ascentra either conducted business directly or indirectly through insiders or their related parties to aid in its investigation of Ascentra's business affairs and to locate additional assets of Ascentra.

### VII.   <u>NO PRIOR REQUEST</u>

75.   No prior request for the relief sought in this Petition has been made to this or any other court.

---

[11]   Upon recognition of the Cayman Proceeding as a foreign main proceeding, certain relief is automatically granted as a matter of right. *See* 11 U.S.C. § 1520.

WHEREFORE, for the foregoing reasons, Petitioners respectfully request entry of the Proposed Order attached hereto as <u>Exhibit A</u>, (i) recognizing the Cayman Proceeding as a "foreign main proceeding," (ii) recognizing Petitioners as Ascentra's foreign representatives, (iii) granting additional relief under section 1521, including extending the relief granted pursuant to section 1519(a) of the Bankruptcy Code, if applicable, which request for relief is being filed contemporaneously herewith, and (iv) granting such other and further relief as the Court deems just and proper.

New York, New York
Dated:  October 27, 2021                      Respectfully submitted,

PILLSBURY WINTHROP SHAW PITTMAN LLP

*/s/ John A. Pintarelli*
John A. Pintarelli
Kwame O. Akuffo
31 West 52nd Street
New York, NY 10019-6131
Telephone: 212-858-1000
Facsimile: 212-858-1500

Claire Wu (*pro hac vice* pending)
725 South Figueroa Street, 36th Floor
Los Angeles, CA 90017-5524
Telephone: 213-488-3655
Facsimile:  213-629-1033

*Attorneys for Petitioners Graham Robinson and Ivy Chua, in their capacities as Joint Official Liquidators of Ascentra Holdings, Inc. (In Official Liquidation)*

27

# VERIFICATION

Pursuant to 28 U.S.C. § 1746, Graham Robinson declares as follows:

My colleague Ivy Chua and I are the duly appointed joint official liquidators (the "**Petitioners**") of Ascentra Holdings, Inc., a company in official liquidation in the Cayman Islands by way of a winding up order date September 17, 2021 (cause no. FSD 189 of 2021) made by the Grand Court of the Cayman Islands to liquidation proceedings and appoint the Petitioners as joint liquidation under Part V of the Companies Act of the Cayman Islands (2018 Revision) (as revised). I have full authority to verify the foregoing *Verified Petition for Order Recognizing Foreign Main Proceeding and Granting Additional Relief Under Chapter 15 of the Bankruptcy Code and Memorandum of Law in Support Thereof* (the "**Verified Petition**"). I have read the Verified Petition, am informed, and believe that the allegations contained therein are true and accurate to the best of my knowledge, information, and belief. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 27th day of October 2021 in Grand Cayman, Cayman Islands.

_____
Graham Robinson
Solely in his capacity as Joint Liquidator for
Ascentra Holdings Inc. (In Official Liquidation)

4852-4947-9931