PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, NY 10019-6131
Telephone: 212-858-1000
Facsimile: 212-858-1500
John A. Pintarelli
Kwame O. Akuffo

PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, 36th Floor
Los Angeles, CA 90017-5524
Telephone: 213-488-3655
Facsimile: 213-629-1033
Claire K. Wu (*pro hac vice* pending)

*Attorneys for Petitioners Graham Robinson and Ivy Chua,
in their capacities as Joint Official Liquidators
of Ascentra Holdings, Inc. (in Official Liquidation)*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Ascentra Holdings, Inc., (In Official Liquidation)<br><br>　　　Debtor in a Foreign Proceeding. [1] | Case No. 21-11854 (DSJ)<br><br>Chapter 15 |

**DECLARATION OF GRAHAM ROBINSON IN SUPPORT OF CHAPTER 15
PETITION FOR RECOGNITION AS FOREIGN MAIN PROCEEDING AND
<u>EMERGENCY APPLICATION FOR PROVISIONAL RELIEF</u>**

　　　I, Graham Robinson, to the best of my information and belief, state as follows:

　　　1.　　My colleague Ivy Chua and I are the duly appointed joint official liquidators (the "**Liquidators**" or "**Petitioners**") of Ascentra Holdings Inc. (In Official Liquidation) ("**Ascentra**" or the "**Debtor**"), a company in official liquidation in the Cayman Islands (the "**Cayman Proceeding**").

---

[1] The Debtor's company registration number is 283719. The Debtor's registered office is c/o JTC (Cayman) Ltd., 94 Solaris Avenue, Second Floor, Camana Bay, PO Box 30745, Grand Cayman, Cayman Islands, KY1-1203.

2. On June 1, 2021, by unanimous written resolutions, Ascentra's shareholders resolved to place the company into voluntary liquidation, and I was appointed voluntary liquidator (in such capacity, the "**VL**"). A true and accurate copy of the June 1, 2021, shareholder resolution is attached hereto as **Exhibit A**.

3. I respectfully submit this declaration in support of the official form chapter 15 petition for Ascentra and the verified petition filed contemporaneously herewith (the "**Petition**"), which seek recognition of the Cayman Proceeding as a "foreign main proceeding," recognition of the Liquidators as "foreign representatives," and related relief.

4. I am a licensed insolvency practitioner, qualified to take insolvency appointments in the United Kingdom and the Cayman Islands. I am a director of Crowe Cayman Limited with more than twenty-five years of experience in insolvency and restructuring matters. I work out of Crowe's Cayman offices located at 94 Solaris Avenue, Camana Bay, Grand Cayman. Ivy Chua, my colleague at Crowe (HK) CPA Limited and joint official liquidator, is also a licensed insolvency practitioner with more than twenty years' experience.

5. I am duly authorized to make this declaration. I am over the age of 18 and, if called upon, could testify competently about the facts set forth herein and make this declaration in support of the (a) *Verified Petition for Recognition of Foreign Main Proceeding and Additional Relief*, dated October 22, 2021, seeking this Court's recognition of the Cayman Proceeding as a "foreign main proceeding" and for additional relief, under sections 1504, 1507, 1509, 1515, 1517, 1520 and 1521 of title 11 of the United States Code (the "**Bankruptcy Code**") and (ii) *Emergency Application for Provisional Relief Pursuant to Sections 1519 and 105(a) of the Bankruptcy Code*, dated October 22, 2021 (the "**Provisional Relief Application**").

6. I am fully familiar with the facts of this matter as a consequence of my day-to-day administration of the Cayman Proceeding. Unless otherwise indicated, all statements contained herein are based on my personal knowledge of Ascentra's operations and financial condition, my review of Ascentra's relevant corporate records and documents, and my conversations with relevant company personnel.

7. I am familiar with the Model Law on Cross-Border Insolvency, adopted by the United Nations Commission on International Trade Law (UNCITRAL) and approved by a resolution of the United Nations General Assembly on 15 December 1997. I also understand that the Model Law has been adopted in the United States as chapter 15 of the Bankruptcy Code.

8. I make this Declaration in my statutory capacity as an officer of the Grand Court and request an extension of comity for the benefit of all of Ascentra's creditors and investors, whose interests I represent.

9. For the reasons set forth herein, I submit that: (a) Ivy Chua and I are duly appointed foreign representatives of Ascentra in the Cayman Proceeding and that the Cayman Proceeding qualifies as a "foreign proceeding" within the meaning of sections 101(23) and (24) of the Bankruptcy Code; (b) this case was properly commenced in accordance with the requirements of Chapter 15 of the Bankruptcy Code; and (c) the Cayman Proceeding satisfies all the requirements to be recognized as a "foreign main proceeding" pursuant to sections 1502(4) and 1517(b)(1) of the Bankruptcy Code.

I. **General Background**

10. Ascentra was incorporated as an exempted company in the Cayman Islands on December 20, 2013. Until June 1, 2016, Ascentra was known as Interush Holdings, Inc. *Id*. Ascentra was formed and operates pursuant to a Memorandum and Articles of Association (the

"**Articles**"), originally dated December 20, 2013, but subsequently amended and restated, and filed with the Cayman Islands Registrar of Companies. *Id*. The directors of Ascentra (now displaced by the Liquidators) were Yoshio Matsuura and Ryunosuke Yoshida.[2]

11. Prior to its entry into voluntary liquidation, Ascentra's registered address was c/o Hermes Corporate Services Limited, 5th Floor, Zephyr House, Mary Street, George Town, PO Box 31493, Grand Cayman, Cayman Islands KY1-1206. Following the commencement of its voluntary liquidation, Ascentra's registered office address was changed to c/o JTC (Cayman) Ltd., 94 Solaris Avenue, Second Floor, Camana Bay, PO Box 30745, Grand Cayman, Cayman Islands, KY1-1203.

### A. Ascentra's Corporate Structure

12. Ascentra is beneficially owned by the following parties:

   a. Mr. Martin J. Matthews holds a 21.59% indirect economic interest in Ascentra, through his (i) 100% ownership interest in INTL Media Holdings, LLC ("**INTL Media**"), a Delaware limited liability company, which owns a 30.64% equity interest in Ascentra and (ii) INTL's Media's 21.43% ownership interest in IR-P Holdings, Inc. ("**IR-P**"), a Cayman Islands corporation, which owns a 58.5% equity interest in Ascentra;

   b. Ms. Mari Matthews holds a 21.59% indirect economic interest in Ascentra, through her (i) 50% ownership interest in INTL Media Holdings, LLC ("**INTL Media**"), a Delaware limited liability company, which owns a 30.64% equity interest in Ascentra and (ii) INTL's Media's 21.43% ownership interest in IR-P Holdings, Inc. ("**IR-P**"), a Cayman Islands corporation, which owns a 58.5% equity interest in Ascentra;

   c. Mr. Matsuura holds a 22.98% indirect economic interest in Ascentra, through his 100% ownership interest in South Asia Ventures Ltd., a Cayman company ("**SAV**"), which owns a 39.28% equity interest in IR-P;

   d. Mr. Yoshida holds a 22.98% indirect economic interest in Ascentra, through his 100% ownership interest in Lequious Holdings Ltd. ("**Lequious**"), which owns a 39.28% equity interest in IR-P; and

---

[2] On June 1, 2021, pursuant to Article 122, Mr. Yoshida was purportedly removed as a director by Mr. Matsuura (the "**Purported Removal**"). Mr. Yoshida has contested the validity of the Purported Removal.

4

e. the remaining 10.85% of Ascentra is owned by three former members of Ascentra's senior management, Jeffrey Boshears, Ryosuke Kojima and Alex Oliva.

B. **Ascentra's Pre-Liquidation Business**

13. Beginning with Ascentra's predecessor, Interrush, Ascentra was engaged in the sale of products and services through a personal marketing referral program through its development of an offshore e-commerce and onshore consultant support services business model for the sale of such products and services in Hong Kong and the People's Republic of China (the "**PRC**") since 2004.

14. It is my understanding that during 2015, the Hong Kong authorities brought criminal proceedings against Mr. Matthews concerning the operation of Interush's business in Hong Kong. The Hong Kong authorities alleged that Interrush was a pyramid scheme and charged Mr. Matthews with money laundering. Pending the outcome of the criminal proceedings Mr. Matthews relinquished all decision-making authority for IR-P and Ascentra and became a nonvoting director of IR-P. In or about May 2017, Mr. Matthews was fully acquitted, the presiding judge ordered all charges to be dropped and shortly thereafter the Hong Kong court awarded Mr. Matthews a judgment against the prosecutors for payment of his full legal costs. Following the dismissal of the charges, Mr. Matthews reacquired his full voting rights as a director of IR-P.

15. In or about November 2016, Ascentra entered into a memorandum of understanding (the "**MOU**") with Shang Peng Gao Ke, Inc. ("**SPGK**"), an indirect wholly owned subsidiary of Growth Today, a Cayman Islands entity owned and controlled at the time by Mr. Yoshida's predecessor-in-interest, Mr. Motohiko Homma. Under the MOU, Ascentra granted SPGK, *inter alia*, (a) the exclusive right to use Ascentra's PRC affiliate list, (b) exclusive rights to sell Ascentra tangible products in the PRC under SPGK's proprietary brand names and (c) an exclusive license to sell Ascentra software in the PRC in exchange for a royalty payment equal to approximately

5

77% of the net revenues generated from such sales. In addition, Mr. Homma was to cause NSET to tender its shares in IR-P, which represent a 23% indirect ownership stake in Ascentra, for cancellation. On or about April 3, 2018, Ascentra and SPGK entered into an agreement to cancel the MOU (the "**Cancellation Agreement**") as the terms therein were never fully implemented and the parties to the Cancellation Agreement agreed *inter alia* to take any and all actions to remit and return to Ascentra (x) all assets and monies held or generated by SPGK and (y) SPGK's proprietary brand names. True and correct copies of the MOU and the Cancellation Agreement are attached hereto as **Exhibit D** and **Exhibit E**.

16. On or about April 4, 2018, Ascentra entered into an exclusive international distribution agreement (the "**Distribution Agreement**") with Asian Offshore Services ("**AOS**") pursuant to which AOS would have the exclusive right to distribute certain of Ascentra's products in the PRC under AOS' proprietary brand names. AOS discontinued providing services to Ascentra and its affiliates earlier this year. During the period in which AOS provided these back-office services, it utilized certain of the back-office systems, bank accounts, service providers and other infrastructure that Ascentra built and initially transferred to SPGK to support Ascentra's sales.

17. The Liquidators understand that the assets of Ascentra, as of December 31, 2020, are currently estimated to be in excess of $200 million, which amount excludes potential litigation claims. This estimate is based on information from SPGK's summary income statement for the years 2016 to 2020, which Mr. Matsuura recently provided to the Cayman Court in an affidavit, a copy of which is attached hereto as **Exhibit F**. The income statement estimates that SPGK's net income during that 5-year period was $282.3 million, of which $217 million would have been payable to Ascentra under the MOU; however, based on the terms of the Cancellation Agreement,

6

**all** revenues were to be transferred to Ascentra. Based on the Liquidators' initial investigation, SPGK has not paid or transferred any funds to Ascentra based on the sales of Ascentra's products, which has led to the dispute amongst Ascentra' beneficial owners (*i.e.*, primarily IR-P's shareholders). According to the terms of the Cancellation Agreement, Ascentra has claims to the entirety of the $67 million currently held in a credit card clearing account maintained by Planet Payment in New York. Ascentra also has claims against SPGK for its failure to transfer any of the revenues from the sale of Ascentra's products. SPGK maintains more than $160 million in bank accounts in various other jurisdictions. In addition, Ascentra has a contingent interest in funds retained by a former service provider, potential litigation claims against U.S. parties and has contract rights under agreements governed by the laws of New York and California.

18.   Ascentra's main liabilities as of December 31, 2021, include the costs incurred by the Liquidators and certain ordinary course operating expenses for storage and maintenance of Ascentra's information until such time the Liquidators complete their investigation. Ascentra may have other contingent liabilities that my team and I are investigating.

II.   **Events Leading up to the Ascentra's Liquidation**

19.   Since 2018, Messrs. Matthews, Homma, Yoshida and Matsuura have had disagreements over the strategic direction of the business. By early 2018 there was some tension between those individuals. At the time, it is my understanding that Mr. Homma and Mr. Matsuura excluded Mr. Matthews from day-to-day involvement in the operations of the business. As a result, Mr. Matthews resigned as a director of IR-P and Ascentra in November 2018.

20.   In December 2018, Mr. Homma nominated Mr. Yoshida to replace him as director of Ascentra. Shortly thereafter, Mr. Homma retired from the business and transferred his interests in NSET and Growth Today to Mr. Yoshida.

21.     Since his resignation, Mr. Matthews has been concerned about SPGK continuing to sell Ascentra's products without authorization, its failure to turnover assets to Ascentra and its failure to pay certain commissions to its PRC consultants. Since January 2019, Mr. Matthews has unsuccessfully attempted to exercise his rights to appoint a board member of Ascentra. Upon information and belief, as a result of the disputes among certain beneficial holders of Ascentra's equity, including one arising from SPGK's failure to transfer funds to Ascentra and Ascentra's inability to declare a dividend to shareholders, in early 2021, Ascentra's then chief financial officer resigned out of concern that Ascentra's directors were not being transparent with all of the shareholders about the company's finances, to the disadvantage of Ascentra's U.S. shareholders. As a result, AOS also discontinued providing distribution and operational support to Ascentra and its affiliates. My investigation into these claims is ongoing and the protection of Ascentra's assets in other jurisdictions is the main reason Ms. Chua and I have sought chapter 15 recognition of the Cayman Proceeding.

22.     Upon information and belief, in or about April 2021, Mr. Matsuura raised the issue of making significant payments to certain agents at a service provider of Ascentra (former employees that were moved to a separate legal entity set up for the sole purpose of providing IT development and back-office support to Ascentra). Based on his disagreement with this proposal, Mr. Yoshida joined Mr. Matthews in deciding to wind up the business. On May 28, 2021, Mr. Matthews and Mr. Yoshida, controlling the voting shares of IR-P, resolved to appoint me in place of the existing voluntary liquidator of IR-P. Subsequently, on June 1, 2021, Mr. Matthews (voting the shares of INTL Media), the other shareholders of Ascentra and I (in my capacity as voluntary liquidator of IR-P and thereby controlling the voting shares of IR-P) unanimously resolved to have Ascentra voluntarily wound up and to appoint me as voluntary liquidator.

23. More recently, my team and I have commenced an investigation into potential improper uses of Ascentra's assets, including its back-office platform, customer lists and intellectual property, for the benefit of third parties without compensation. Under Cayman law, it is my responsibility along with Ms. Chua, as Liquidators, to investigate these issues, safeguard and maximize the recovery of Ascentra's assets for the benefit of all stakeholders and make distributions in accordance with the Cayman statutory distribution scheme, which provides for equal treatment for stakeholders holding similar claims. Chapter 15 recognition will aid our efforts in carrying out our statutory duties.

### III.    Events Following Commencement of the Cayman Liquidation

24. Pursuant to section 124 of the Companies Act of the Cayman Islands (2021 Revision) (the "**Companies Act**") and Order 14, r.1(1) of the Cayman Winding Up Rules 2018 ("**CWR**"), a "declaration of solvency shall be … signed by each person who was a director of the company on the date on which the voluntary winding up was commenced". No such declaration of solvency was received by me as VL of Ascentra within 28 days of the commencement of the liquidation. Accordingly, pursuant to section 124(1) of the Companies Act, I (as VL) was required to bring an application to bring Ascentra's liquidation under the Cayman Court's supervision.

25. As VL, I filed the application with the Cayman Court to bring the Cayman Proceeding under the supervision of the Cayman Court on July 2, 2021. A true and accurate copy of this application is attached hereto as **Exhibit B**.

26. In addition to filing the statutory application with the Cayman Court, since my appointment as VL, I have undertaken and/or directed the following actions:

    a. opened a new liquidation bank account for the and on behalf of the Ascentra with CIBC First Caribbean Bank, Cayman Islands;
    b. assumed all management responsibility for Ascentra;

9

    c. retained consultants to assist the voluntary liquidator with the management of operations and to investigate Ascentra's prior business activities;

    d. conducted an analysis of Ascentra's cash assets;

    e. approved the payment of day-to-day operational expenses and manage the wind down of business operations;

    f. corresponded with various third parties, including directors, affiliates and counterparties, to obtain Ascentra's books and records;

    g. secured certain assets of Ascentra, including servers, customer lists and certain cash assets; and

    h. conducted negotiations with certain service providers and suppliers.

I have taken and/or directed these actions from the Cayman Islands.

27. Additionally, all major stakeholders are actively participating in the Cayman Proceeding. I anticipate that most disputes amongst the beneficial holders of Ascentra's equity will be resolved by the Grand Court. To that end, through counsel, I have requested (a) Planet Payment provide all monthly statements for the card processing accounts to ascertain the origin of funds, (b) Planet Payment not transfer the funds unless jointly agreed to by SPGK and the Liquidators and (c) SPGK deposit the Planet Payment funds into the Grand Court until such time as the dispute is resolved. Planet Payment has not provided any information or assurances regarding our requests. Further, SPGK has written to Planet Payment demanding that Planet Payment not share any information with Ascentra or the Foreign Representatives. Moreover, SPGK has refused to deposit the funds.

28. On September 17, 2021, the Cayman Court made an order (cause no. FSD 189 of 2021) (the "**Supervision Order**"), pursuant to which Ms. Chua and I were appointed as joint official liquidators of Ascentra. A true and accurate copy of the Supervision Order is attached hereto as **Exhibit C**.

29. Since the issuance of the Supervision Order, the Liquidators have, amongst other things, undertaken the following actions:

   a. performed certain statutory duties including, providing notice to all known stakeholders of the Liquidators appointment;

   b. retained counsel in Hong Kong, Singapore and Taiwan to seek recognition of the Cayman Proceeding;

   c. solicited the filing of proofs of debt and interests to crystallize claims against and interests in the estate;

   d. written to stakeholders about constituting a Liquidation Committee;

   e. written to third parties requesting the turnover of Ascentra's assets in their possession, including its books and records;

   f. overseen the winding up of various subsidiaries, including its indirect wholly-owned subsidiary, iHealthscience, LLC, a Delaware limited liability company and its parent, Radial IT Systems, Ltd., a Cayman Islands company;

   g. placed one of its subsidiaries into liquidation and exploring the dissolution of its Delaware indirect subsidiary; and

   h. continued the investigation into the activities of Ascentra's financial affairs with the express purpose of winding down Ascentra's business from the Cayman Islands.

### IV. The Chapter 15 Case and Support for Recognition

30. Contemporaneously with the filing of this declaration, Ascentra filed the Petition, commencing the above-captioned chapter 15 case. The Petition seeks recognition of the Cayman Proceeding as a "foreign main proceeding," recognition of the Petitioners as "foreign representatives," and other necessary or appropriate relief in support of the Cayman Proceeding.

31. I believe that the chapter 15 case will complement Ascentra's primary proceeding in the Cayman Islands to ensure that Ascentra's restructuring is effectively and economically implemented.

32. Recognition of the Cayman Proceeding as a foreign main proceeding will impose an automatic stay on Ascentra's property within the territorial jurisdiction of the United States. As

11

discussed in more detail in the *Statement Pursuant to Federal Rules of Bankruptcy Procedure 1007(a)(4) and 7007.1, and Section 1515(c) of the Bankruptcy Code* (the "**Rule 1007 Statement**"), which is attached hereto as **Exhibit G**, Ascentra has several items of property in the United States, including rights related to certain contracts governed by U.S. law and claims to funds from the sale of Ascentra's products, which funds are held in New York-based bank accounts maintained by a credit card payment processor. Imposition of the automatic stay will prevent creditors from pursuing extrajudicial remedies and will ensure that Ascentra's U.S. assets are preserved for the benefit of all stakeholders.

33. I have been advised by counsel of the requirements for obtaining recognition of a foreign proceeding under chapter 15 of the Bankruptcy Code, and I believe that they are satisfied here. My understanding is that Ascentra's property in the United States, which is listed in the Rule 1007 Statement, is sufficient to satisfy the debtor eligibility requirements set forth in section 109(a) of the Bankruptcy Code.

34. I am aware of the definition of "foreign representative," as referred to in 11 U.S.C. § 101(24), and I believe that the Liquidators qualify as such. The Liquidators were appointed by the Grand Court pursuant to the Companies Act to act as the joint official liquidators of Ascentra. Among other things, the Liquidators are charged with administering, protecting and liquidating the business and assets of Ascentra and acting on behalf of Ascentra. As such, the Liquidators are the persons responsible for representing Ascentra in the Cayman Liquidation and in all related matters, including this matter, and are therefore "foreign representatives" of Ascentra within the meaning of section 101(24) of the Bankruptcy Code.

35. I also have been advised that a "foreign court" is defined in section 1502 of the Bankruptcy Code as "a judicial or other authority competent to control or supervise a foreign

proceeding." I respectfully submit that the Grand Court qualifies as a foreign court for purposes of section 1502.

36.     It is also my view that the Cayman Proceeding qualifies as a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code. I understand that a "foreign proceeding" is defined as "a collective judicial . . .proceeding in a foreign country . . . under a law relating to insolvency or the adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." I respectfully submit that the Cayman Liquidation qualifies as such, since by definition it is a liquidation proceeding pursuant to and governed by the Companies Act under the collective judicial supervision of the Grand Court for the benefit of all of Ascentra's creditors, contributories, and parties in interest.

37.     I am also aware that section 1517(b)(1) of the Bankruptcy Code provides that a foreign proceeding shall be recognized as a "foreign main proceeding" if the foreign proceeding is "pending in the country where the debtor has "the center of its main interests" ("**COMI**"). I understand that section 1516(c) of the Bankruptcy Code provides that a debtor's 'registered office" is presumed to be the debtor's COMI in the absence of evidence to the contrary. Ascentra was formed under the laws of the Cayman Islands and has continuously maintained its registered office there. I believe that there is no basis for rebutting this statutory presumption that is afforded, and that, in any case, the facts clearly indicate that Ascentra's COMI is the Cayman Islands. As demonstrated by the facts included herein, I further believe that Ascentra is engaged in nontransient economic activity in the Cayman Islands.

38.     A considerable amount of Ascentra's books, records, contracts, operating agreements, and other critical documentation have been transferred to the Cayman Islands. In

13

addition, I have recovered certain proceeds from service providers, which is being held in a Cayman Islands-domiciled account controlled by the Liquidators and future realizable value for Ascentra's stakeholders will come from parties in the U.S. and other foreign jurisdictions. Finally, the licensing agreements and other contractual arrangements amongst affiliates are governed by Cayman law.

39. I have reviewed voluminous documentation issued by and to Ascentra. In all such documentation, Ascentra is referred to and addressed as a Cayman Islands company. Moreover, all major stakeholders are actively participating in the Cayman Liquidation. Based upon board meetings and resolutions, and the liquidation of Ascentra itself, all of which focused on the Cayman Islands, I believe that all relevant creditors, stakeholders, and shareholders regard Ascentra to be a Cayman Islands company and the Liquidators to be Ascentra's current "nerve center."

40. As Liquidators, we have displaced the prior board of directors of Ascentra, and Ascentra is in liquidation before a Cayman Islands court (the Grand Court). All creditors of Ascentra may submit their claims in the Cayman Liquidation, and stakeholders have the right to access the Grand Court and appeal decisions of the Liquidators. Moreover, the liquidation of Ascentra and its remaining affairs are being conducted and wound down from the Cayman Islands.

41. At the outset of the liquidation process, my colleagues in the Cayman Islands and I caused the requisite notices and filings to be filed, published and served, and arranged for the transfer of Ascentra's books and records to Crowe Cayman, as Ascentra's new registered office.

42. I believe it is clear that Ascentra's "nerve center" has been the Cayman Islands since the commencement of the Ascentra's liquidation and my appointment as VL, and similarly

that the Cayman Islands is Ascentra's COMI. I further believe it is clear that since that time Ascentra has been engaged in non-transitory economic activity in the Cayman Islands.

43. In accordance with 11 U.S.C. § 1515(c), I am aware of no other pending foreign insolvency proceedings, except the Cayman Liquidation, in which Ascentra is the subject of the proceeding; however, as stated above, Ascentra is in the process of filing applications for recognition in a number of additional jurisdictions in which is what material assets.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated: October 27, 2021
Grand Cayman, Cayman Islands

*/s/ Graham Robinson*
Graham Robinson