PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, NY 10019-6131
Telephone: 212-858-1000
Facsimile: 212-858-1500
John A. Pintarelli
Kwame O. Akuffo

PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, 36th Floor
Los Angeles, CA 90017-5524
Telephone: 213-488-3655
Facsimile:  213-629-1033
Claire K. Wu (*pro hac vice* pending)

*Attorneys for Petitioners Graham Robinson and Ivy Chua,*
*in their capacities as Joint Official Liquidators*
*of Ascentra Holdings, Inc. (in Official Liquidation)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Ascentra Holdings, Inc. (In Official Liquidation),<br><br>    Debtor in a Foreign Proceeding.[1] | Case No. 21-11854 (DSJ)<br><br>Chapter 15 |

**DECLARATION OF GUY COWAN IN SUPPORT OF CHAPTER 15 PETITION FOR RECOGNITION AS FOREIGN MAIN PROCEEDING**

I, Guy Cowan, do hereby declare, under penalty of perjury under the laws of the United States of America, that the following is true and correct to the best of my knowledge and belief:

**I.    Introduction**

1.    I am a counsel in the Cayman Islands office of the law firm Campbells LLP ("**Campbells**") and I am retained as Cayman Islands' legal counsel to Graham Robinson and Ivy

---

[1] The Debtor's company registration number is 283719. The Debtor's registered office is c/o JTC (Cayman) Ltd., 94 Solaris Avenue, Second Floor, Camana Bay, PO Box 30745, Grand Cayman, Cayman Islands, KY1-1203.

Chua in their capacities as joint official liquidators (the "**JOLs**" or "**Liquidators**") of Ascentra Holdings, Inc. ("**Ascentra**" or the **"Company"**)).

2. Campbells is a leading full service offshore law firm established in 1970 with offices in the Cayman Islands, British Virgin Islands and Hong Kong. Campbells advises the most prominent names in finance, investments and insurance in relation to Cayman Islands and British Virgin Islands law.

3. I qualified as a solicitor in England and Wales in 2004, was admitted as an attorney in the Cayman Islands in 2011 and have been a member of Campbells' Litigation, Insolvency, and Restructuring practice since 2011. I therefore have over 17 years' experience practicing law, including more than 10 years practicing Cayman Islands law. I currently reside in the Cayman Islands where my legal practice focuses on contentious restructuring matters, and I have wide ranging experience advising distressed hedge funds, stakeholders and financial institutions in solvent and insolvent liquidations, and parties in connection with general commercial litigation and enforcement matters. I am a member of the Cayman Islands Legal Practitioners Association, the Law Society of England and Wales, and INSOL International through its local chapter in the Cayman Islands. I am also a Fellow of INSOL International.

4. I have acted for provisional and official liquidators of numerous Cayman Islands companies and frequently appear as an advocate before the Grand Court of the Cayman Islands (the **"Grand Court"**) in insolvency proceedings.

5. I submit this declaration in support of the petition seeking the U.S. Bankruptcy Court's recognition of Ascentra's liquidation in the Cayman Islands as a "foreign main proceeding" under 11 U.S.C. § 1517(b)(1) and the JOLs as Ascentra's "foreign representatives" under 11 U.S.C. § 101(24). The JOLs have asked me to explain the substantive Cayman Islands

law and procedural rules relevant to liquidation proceedings of Cayman Islands' companies and, more particularly, Ascentra.

6. I am competent to testify and, except as otherwise indicated, all facts set forth in this declaration are based on my personal experience and knowledge, and my review of relevant documents, including the sworn declarations of Graham Robinson and John A. Pintarelli. To the extent that statements in this declaration are of my own legal opinion, they represent my views and understanding of the Cayman Islands' laws as a practicing Cayman Islands attorney.

## II. Background

7. Ascentra was incorporated as an exempted company in the Cayman Islands on December 20, 2013. Until June 1, 2016, Ascentra was known as Interush Holdings, Inc. Ascentra was formed and operates pursuant to a Memorandum and Articles of Association (the "**Articles**"), originally dated December 20, 2013, but subsequently amended and restated, and filed with the Cayman Islands Registrar of Companies. The most recent directors of Ascentra (now displaced by the joint official liquidators) were Yoshio Matsuura and Ryunosuke Yoshida.

8. Prior to the commencement of its voluntary liquidation, Ascentra's registered office address was c/o Hermes Corporate Services Limited, 5th Floor, Zephyr House, Mary Street, George Town, PO Box 31493, Grand Cayman, Cayman Islands KY1-1206. Following the commencement of its voluntary liquidation, Ascentra's registered office address was changed to c/o JTC (Cayman) Ltd., 94 Solaris Avenue, Second Floor, Camana Bay, PO Box 30745, Grand Cayman, Cayman Islands, KY1-1203.

## III. Insolvency in the Cayman Islands
### A. *Ascentra Liquidation*

9. On June 1, 2021, by unanimous written resolutions, Ascentra's shareholders resolved to place the Company into voluntary liquidation and appointed Mr. Robinson as voluntary liquidator (in such capacity, the "**VL**").

10. Subsequently, on July 2, 2021, the VL presented a petition (the "**Cayman Petition**") to bring the voluntary liquidation under the Grand Court's supervision. As required by the Companies Act (2021 Revision) (the "**Companies Act**") and the Companies Winding Up Rules, 2018 (the "**CWR**") (discussed below), the VL provided notice of the presentation of the Cayman Petition, and his request for the appointment of himself and Ms. Chua as JOLs of Ascentra, by serving a copy of the Cayman Petition on each of the Company's shareholders and its only known creditor.

11. The Cayman Petition sought, among other things, the following relief: (a) an order that the liquidation of Ascentra be brought under the supervision of the Grand Court in accordance with the Companies Act; (b) the appointment of Mr. Robinson and Ms. Chua as JOLs; and (c) the granting of certain powers to Mr. Robinson and Ms. Chua in their capacities as JOLs, as described in the Cayman Petition. A true and correct copy of the Cayman Petition is attached to the Robinson Declaration as Exhibit B.

12. On September 17, 2021, the Grand Court made a supervision order in respect of Ascentra (the "**Supervision Order**"). The provisions of the Supervision Order largely mirrored the relief sought in the Cayman Petition, although the powers granted to the JOLs were different. A true and correct copy of the Supervision Order is attached to the Robinson Declaration as Exhibit C.

13. Pursuant to section 133 of the Companies Act, the Supervision Order takes effect for all purposes as if it was an order that the Company be wound up by the Grand Court except that:

   a. the liquidation is deemed to have commenced at the time of the passing of the resolution for winding-up; and

   b. the prior actions of the VL shall be valid and binding upon the Company and the JOLs.

14. As a consequence of the foregoing, the JOLs have, since September 17, 2021, been empowered by the Grand Court to exercise the powers and functions set forth in the Supervision Order and have been statutorily empowered to exercise certain other powers including those contained in section 103 of the Companies Act in respect of Ascentra. A true and correct copy of the relevant sections of the Companies Act are attached hereto as **Exhibit A**.

   **B.    Sources of Law**

15. The Cayman Islands is a British Overseas Territory and a distinct legal jurisdiction. The courts of the Cayman Islands administer justice in accordance with local statutes, subordinate legislation, statutes passed by the parliament of the United Kingdom that have been expressly extended to the Cayman Islands, orders of Her Majesty's Judicial Committee of the Privy Council (the **"Privy Council"**) applicable in the Cayman Islands, and principles of common law.

16. The Grand Court is the court of first instance for insolvency matters, with appeals lying to the Cayman Islands Court of Appeal (the **"Court of Appeal"**), and finally to the Privy Council.

17. The doctrine of judicial precedent applies in the Cayman Islands. The structure of the court system is hierarchical, with the courts being bound by the *rationes decidendi* of decisions of the courts above. The *rationes decidendi* of decisions of the Privy Council are therefore binding on the Court of Appeal and the Grand Court. The *rationes decidendi* of decisions of the Court of Appeal are similarly binding on the Grand Court. The Grand Court will generally follow the *rationes decidendi* of its previous decisions, unless satisfied that they are clearly wrong.

18. There is a comparatively small (but increasing) body of reported case law in the Cayman Islands, contained in the Cayman Islands Law Reports. In the absence of binding Cayman Islands case law, the Cayman Islands Courts will look to English authorities, which are highly persuasive, but not binding. As a general rule, the Cayman Islands courts follow English authorities to the extent that they are not inconsistent with either Cayman Islands statutory provisions or Cayman Islands authorities, and to the extent that they do not relate to English statutory provisions which have no equivalent in the Cayman Islands. Decisions of courts in other Commonwealth jurisdictions are also of persuasive but not binding authority.

C. *Liquidation of Cayman Island Companies*

19. The statutory provisions governing the liquidation of Cayman Islands companies are set out in Part V of the Companies Act, which is supplemented by the CWR, the Insolvency Practitioners' Regulations 2018 (the "**IPR**"), the Foreign Bankruptcy Proceedings (International Cooperation) Rules 2018, and the Grand Court Rules 1995 (as revised). The provisions of Part V of the Companies Act apply to companies formed and registered under the Companies Act or its predecessors, including companies that are formed as exempted companies, as well as bodies incorporated under any other law and certain foreign companies.

20. A Cayman Islands company may be wound up: (a) compulsorily, by order of the Grand Court;[2] (b) voluntarily, following the passing of a special resolution of its shareholder(s),[3] or pursuant to a mandatory term in its constitutional documents[4] or other event;[5] or (c) under the supervision of the Grand Court.

21. In the case of Ascentra, and as set out above, it entered into voluntary liquidation as a result of the unanimous shareholder resolution dated June 1, 2021, which resolved to wind up the Company voluntarily.

22. Pursuant to section 124 of the Companies Act and CWR Order 14, r.1(1), a "declaration of solvency shall be … signed by each person who was a director of the company on the date on which the voluntary winding up was commenced". No such declaration of solvency was received by the VL within 28 days of the commencement of Ascentra's voluntary liquidation. Accordingly, pursuant to section 124(1) of the Companies Act, the VL was required to bring an application to bring the voluntary liquidation under the Grand Court's supervision.

23. The VL presented the Cayman Petition to the Grand Court on July 2, 2021.

24. On September 17, 2021, the Cayman Court made the Supervision Order administratively.

25. A general principle underlying the Cayman Islands' insolvency regime is that creditors are treated on a *pari passu* basis, subject to certain exceptions.[6]

26. Section 97(1) of the Companies Act provides in relevant part that upon the making of a winding up order against a company, no suit, action, or other proceedings, including

---

[2] Section 90(a) of the Companies Act.
[3] Section 90(b)(i) of the Companies Act.
[4] Section 90(b)(ii) of the Companies Act.
[5] Section 90(b)(iii) of the Companies Act.
[6] Section 140 (1) of the Companies Act.

criminal proceedings, shall be proceeded with or commenced against the company except with leave of the Grand Court and subject to such terms as the Grand Court may impose. This automatic stay serves to, *inter alia*, facilitate the JOLs' ability to deal with the claims of creditors collectively and comprehensively.

27. In my experience, Cayman Islands liquidation proceedings are fair and equitable, insofar as all creditors and interest holders have the opportunity to be heard by the Grand Court and no creditors will be prejudiced on the sole basis that they are foreign based. All creditors are treated equally, regardless of where they are domiciled.

### IV. The Liquidators

28. The JOLs are fiduciaries and officers of the Grand Court. As official liquidators of Ascentra, their function is to (a) collect, realize and distribute the assets of Ascentra to its creditors and if there is a surplus, to equity holders in accordance with their rights; and (b) report to Ascentra's creditors and/or shareholders upon the affairs of Ascentra and the manner in which they are being wound up.

29. Schedule 3, Part I of the Companies Act sets out the following powers that the JOLs may exercise with the sanction of the Grand Court:

    a. "Power to bring or defend any action or other legal proceeding in the name and on behalf of the company.

    b. Power to carry on the business of the company so far as may be necessary for its beneficial winding up.

    c. Power to dispose of any property of the company to a person who is or was related to the company.

    d. Power to pay any class of creditors in full.

    e. Power to make any compromise or arrangement with creditors or persons claiming to be creditors or having or alleging themselves to have any claim (present or future, certain or contingent, ascertained or sounding only in

8

    damages) against the company or for which the company may be rendered liable.

 f. Power to compromise on such terms as may be agreed all debts and liabilities capable of resulting in debts, and all claims (present or future, certain or contingent, ascertained or sounding only in damages) subsisting, or supposed to subsist between the company and a contributory or alleged contributory or other debtor or person apprehending liability to the company.

 g. Power to deal with all questions in any way relating to or affecting the assets or the winding up of the company, to take any security for the discharge of any such call, debt, liability or claim and to give a complete discharge in respect of it.

 h. The power to sell any of the company's property by public auction or private contract with power to transfer the whole of it to any person or to sell the same in parcels.

 i. The power to raise or borrow money and grant securities therefor over the property of the company.

 j. The power to engage staff (whether or not as employees of the company) to assist [them] in the performance of [their] functions.

 k. The power to engage attorneys and other professionally qualified persons to assist [them] in the performance of [their] functions."

30. Schedule 3, Part II of the Companies Act further provides that the JOLs are permitted to exercise the following powers without the Grand Court's sanction:

 a. "The power to take possession of collect and enter the property of the company and for that purpose to take all such proceedings as [they] consider necessary.

 b. The power to do all acts and execute, in the name and on behalf of the company, all deeds, receipts and other documents and for that purpose to use, when necessary, the company seal.

 c. The power to prove, rank and claim in the bankruptcy, insolvency or sequestration of any contributory for any balance against his estate, and to receive dividends in the bankruptcy, insolvency or sequestration in respect of that balance, as a separate debt due from the bankrupt or insolvent and ratably with the other separate creditors.

9

    d. The power to draw, accept, make and indorse any bill of exchange or promissory note in the name and on behalf of the company, with the same effect with the respect of the company's liability as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of the company in the course of its business.

    e. The power to promote a scheme of arrangement pursuant to section 86.

    f. The power to convene meetings of creditors and contributories.

    g. The power to do all other things incidental to the exercise of his powers."

    31. Pursuant to section 102 of the Companies Act, the JOLs are also empowered to investigate (a) the causes for the failure of Ascentra, as well as (b) generally, the promotion, business, dealings and affairs of Ascentra.

    32. Ascentra was established as a Cayman Islands exempted company. Under the Companies Act an exempted company "shall not carry on a trade or business in the [Cayman] Islands with any person, except in furtherance of [its business] carried on outside of the [Cayman Islands], unless that exempted company holds a license to carry on business in the [Cayman] Islands under any applicable law." Upon application to register as an exempted company with the Cayman Islands Registrar of Companies, the objects of the company are required to be "...carried out mainly outside the [Cayman] Islands." Further, upon filing an annual return with the Cayman Islands Registrar of Companies, an exempted company is also required to declare its operations "since the last return or since registration […] have been mainly outside the [Cayman] Islands." However, in order to further its objects outside of the Cayman Islands, an exempted company may "[effect and conclude] contracts in the [Cayman] Islands and [exercise] in the [Cayman] Islands all its powers necessary for the carrying on of its business outside the [Cayman] Islands." In other words, it can employ staff or agents in the Cayman Islands and maintain a registered office in the Cayman Islands.

33. Although, upon its incorporation, Ascentra as an exempted company was required to conduct its operations mainly outside the Cayman Islands, that did not mean that Ascentra had no presence at all in this jurisdiction. For example, as pointed out previously, the registered office of Ascentra (from where Ascentra's annual filings with the Registrar of Companies were made) has, in accordance with the Companies Act, been situated in the Cayman Islands since its inception and continues to be so situated. Initially, the registered office was located at Mourant Ozannes Corporate Services (Cayman) Limited, 94 Solaris Avenue, Camana Bay, PO Box 1348, Grand Cayman, KY1-1108, Cayman Islands, but it was then changed several times. First, in or around April 2016, it was changed to Samson & McGrath Corporate Services Limited (now known as McGrath Tonner Corporate Services Limited), Genesis Building, 5th Floor, Genesis Close, PO Box 446, Grand Cayman, KY1-1106, Cayman Islands. Subsequently, in or around August 2019, it was changed to Bell Rock Group Financial Services Limited, 2454 Centennial Towers, Suite 205C, West Bay Road, Grand Cayman KY1-9006, Cayman Islands. On June 1, 2021, the registered office was again changed to Hermes Corporate Services Limited, 5th Floor, Zephyr House, Mary Street, George Town, PO Box 31493, Grand Cayman, Cayman Islands KY1-1206. Most recently, on August 16, 2021, the registered office was changed to c/o JTC (Cayman) Ltd., 94 Solaris Avenue, Second Floor, Camana Bay, PO Box 30745, Grand Cayman, Cayman Islands, KY1-1203. Under private international law, shares are deemed to be situated in the country where they can be effectively dealt with between the shareholder and that company. *See 160088 Canada Incorporated v. Socoa International Limited* [1998] CILR 256. A copy of the judgment in this case is attached hereto as **Exhibit B**. I would expect that any issues relating to the title of those shares will be governed by the laws of the Cayman Islands. In addition, following Mr. Robinson's appointment as voluntary liquidator in June 2021 until the making of

11

the Supervision Order, he was solely responsible for the management of Ascentra and was involved in the winding down of the operations of certain of its subsidiaries, which are located in various jurisdictions. Following the making of the Supervision Order, Mr. Robinson has managed the affairs of Ascentra alongside his co-liquidator, however, he continues to have primary conduct of the liquidation and is therefore responsible for managing it on a day-to-day basis. Mr. Robinson is domiciled and resident in the Cayman Islands.

34. The status of a company as "exempted" does not operate to prevent the liquidation of that company from being controlled and supervised from within the Cayman Islands. Indeed, it is a requirement of Cayman Islands law that at least one official liquidator must be resident in the Cayman Islands. In this case, Mr. Robinson is a resident of the Cayman Islands, as required by the IPR.

*(Remainder of Page Intentionally Left Blank)*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: October 27, 2021
      Grand Cayman, Cayman Islands

                                                */s/ Guy Cowan*
                                                Guy Cowan