**Declaration of Guy Cowan**

**EXHIBIT B**

(*160088 Canada Incorporated v. Socoa International Limited* [1998] CILR 256 Judgment)

[1998 CILR 256]

160088 CANADA INCORPORATED, 151095 CANADA INCORPORATED and 152931 CANADA INCORPORATED v. SOCOA INTERNATIONAL LIMITED

GRAND COURT (Harre, C.J.): September 3rd, 1998

Conflict of Laws—companies—shares—transfer of shares—corporate rights of transferee governed by lex situs—effect of transfer as between parties governed by law of place of transfer

Conflict of Laws—companies—shares—lex situs of shares in exempted company is law of place of incorporation regardless of where register of members located

Companies—register of shareholders—rectification—no rectification of Cayman company's register under Companies Law (Revised), s.45 to enforce order of foreign court—summary procedure may be inappropriate when complex matters of fact and foreign law in issue—alternative measures to be used for tracing and recovering company assets

   The applicant applied for the rectification of the respondent company's register of shareholders.

   By an order of the Superior Court of Quebec, a receiver-manager was appointed for three Canadian companies and was directed to take action to recover the proceeds of patent infringements which had been transferred to the respondent, a Cayman exempted company, through the three Canadian companies. The Quebec court gave judgment in favour of 160088 Canada Inc., the initial recipient of the moneys, whose shares had been sold as part of a scheme to defeat attempts to recover them, and ordered that the alleged owners of the respondent company immediately assign their shares to the receiver-manager. The order provided that if they failed to sign the appropriate forms, the order itself would instead suffice to transfer the shares.

   The owners failed to comply with the order, claiming that they had already transferred their shares in the company to a third party, and produced share transfer forms and the register of members as evidence of this. The respondent's board of directors refused to register the purported transfer by the Quebec court on the ground that Cayman law required a voluntary transfer by the registered holder.

   The receiver-manager applied under the Companies Law (Revised), s.45 then in force for the rectification of the register of shareholders to reflect the transfer effected by the order of the Quebec court.

   He submitted that (a) since the register of shareholders and share certificates were kept in Montreal and since the shares had been dealt

---

1998 CILR 257

with outside the respondent's place of incorporation, Canadian law governed whether an effective transfer to him had occurred; (b) the alleged transfer of shares to a third party was evidenced by falsified documents for the purpose of defeating the Quebec court's order and had not in fact taken place; and (c) even if the Quebec court's order were deemed not to have transferred the shares, the rectification of the register would perfect an equitable assignment which had occurred by virtue of undertakings which the respondent's owners had given not to deal in its shares.

   The respondent submitted in reply that (a) the register of shareholders was not kept in Montreal and since the transfer of shares in a Cayman company was governed solely by s.32(1) of the Companies Law (Revised), which provided that conditions and restrictions in the company's articles were to be observed, the shares were the property of the registered holder unless he executed a transfer to a transferee whose name was entered in the register; (b) since under s.47 of the Companies Law (Revised) the register was *prima facie* evidence of company ownership, the third party was its legal owner; and (c) no undertaking given by its previous owners in compliance with the order of the Quebec court could constitute an equitable assignment of shares before the Cayman court.

   **Held,** dismissing the application:

   (1) The effect, *vis-à-vis* the company itself, of a purported transfer of shares in a Cayman company outside the jurisdiction could be determined only by Cayman law, since the shares of an exempted company were deemed to be situated here whatever the location of the register of shareholders. This was a separate issue from the effect as between the parties dealing with the shares, which might be governed by the law of Quebec as the place of the purported transfer. As there had been no voluntary transfer in accordance with the respondent's articles of association under s.32(1) of the Companies Law, the legal ownership remained, *prima facie,* in the hands of the registered holder of the shares. Nor had there been any equitable assignment to allow the court to order rectification of the register, since the undertakings fell short of this and had not been given voluntarily (page 261, lines 16–33; page 263, lines 13–41; page 264, lines 11–16; page 265, lines 1–10).

(2) In any event, the court's discretion to order rectification of the register was not to be exercised under compulsion by a foreign court. Furthermore, the s.45 procedure was intended to be a summary procedure and was inappropriate in this case where complex issues of fact and foreign law were to be determined. Alternative measures were available for the tracing and recovering of overseas assets by the receiver-manager (page 262, lines 20–25; page 263, lines 41–45; page 265, lines 11–33).

Cases cited:
(1) *Att. Gen.* v. *Bank of Nova Scotia*, 1984–85 CILR 418, *dicta* of Summerfield, C.J. applied.

1998 CILR 258

(2) *Reese River Silver Mining Co. (Directors)* v. *Smith* (1868), L.R. 4 H.L. 64, considered.
(3) *Williams* v. *Colonial Bank* (1888), 38 Ch. D. 388; on appeal, *sub nom. Colonial Bank* v. *Cady* (1890), 15 App. Cas. 267; 63 L.T. 156, *dicta* of Bowen, L.J. and Lord Herschell applied.

Legislation construed:
Companies Law (Revised) (Laws of the Cayman Islands, 1963, *cap.* 22, revised 1990), s.32(1), as substituted by the Companies (Amendment) (No. 2) Law (Law 23 of 1993), s.3: The relevant terms of this sub-section are set out at page 261, lines 18–24.
s.43: The relevant terms of this section are set out at page 263, lines 30–33.
s.45: The relevant terms of this section are set out at page 260, line 36 – page 261, line 12.
s.47: The relevant terms of this section are set out at page 261, lines 13–15.

*J.P. Telfer* for the applicant;
*A. Turner* for the respondent.

**HARRE, C.J.:** On May 3rd, 1994 I made orders which included the following:

> "1. That Mr. Mayer Diamond (of 345 Victoria Avenue, Suite 400, West Mount, Quebec, Canada) having previously been recognized
25 by order of this court dated December 1st, 1992 as the interim receiver-manager of 160088 Canada Inc., 151095 Canada Inc. and 152931 Canada Inc., be now recognized as the receiver-manager of 160088 Canada Inc., 151095 Canada Inc. and 152931 Canada Inc. pursuant to the order of the Superior Court of the Province of
30 Quebec dated December 22nd, 1993.
> 2. That Mr. Mayer Diamond do have all the powers conferred upon him by the final judgment of the Hon. Mr. Justice Roland Tremblay, J.S.C. in the Superior Court of the Province of Quebec in Cause No. 500–05–00930–907 dated December 22nd, 1993, a copy
35 of which judgment is exhibited to the affidavit of John Parr Telfer sworn on February 22nd, 1994."

I shall hereafter refer to the Canadian companies there mentioned as "the three Canadian companies."

Those orders were sought by the plaintiff's summons dated March 2nd,
40 1994. There was a third prayer in that summons. It was this:

> "3. That the register of Socoa International Ltd. be rectified pursuant to s.45 of the Companies Law (Revised) and/or the inherent jurisdiction of the court to record the registration of the transfers of shares in Socoa International Ltd. from Gaston Pinat,
45 Yvette LeLay Pinat, Pierre Pinat, Philippe Pinat and Frank Pinat to

1998 CILR 259

        Mr. Mayer Diamond, in compliance with and pursuant to the orders given in the judgment of the Hon. Mr. Justice Roland Tremblay in the Superior Court of the Province of Quebec in Cause No. 500–05–00930–907 dated December 22nd, 1993."

5     The hearing of that part of the summons was adjourned and I found in favour of the defendant. Unfortunately no written reasons were delivered. I am asked to provide them now, as the matter is still ongoing. Indeed, a judgment was given on September 19th, 1997 by Smellie, J. (as he then was) in which summary judgment was given in favour of 160088 Canada

10   Inc. in respect of the sum of the award in its favour given by the Superior Court of the Province of Quebec, Canada on December 22nd, 1993.

      My decision on the prayer that the register of the first defendant ("Socoa") be rectified turned on different issues from those which were considered and determined by Smellie, J. However, his judgment not only

15  sets out the background to this case, but also deals with the jurisdiction of the Quebec court over Socoa and the recognition of its judgment. I respectfully agree with the conclusions of Smellie, J. in respect of those matters.

      The following is that part of the order made by Tremblay, J. which

20  relates to the appointment of the plaintiff as receiver-manager and sole director of the three Canadian companies, and to the shares of Socoa:

        "The court . . . appoints Mayer Diamond, trustee in bankruptcy residing in the City of Montreal, as receiver-manager and sole director of each of defendants 160088 Canada Inc., 151095 Canada

25     Inc. and 152931 Canada Inc. in order to assure that the amounts to be received by the defendant 160088 Canada Inc. pursuant to this judgment rendered in its favour are paid to it and distributed according to law.

        The defendants Gaston Pinat, Yvette Lelay Pinat, Pierre Pinat,

30     Philippe Pinat and Frank Pinat are ordered to assign and remit to Mr. Mayer Diamond any and all shares which they hold in Socoa International or which they control directly or indirectly, within a period of ten (10) days from the date of this judgment and to sign the form annexed to the present judgment.

35     In the event that these defendants fail to respect this order, the present judgment will avail instead of their signatures and will effect the transfer of their shares as designated above.

        The same defendants are also ordered to sign the proxy forms annexed to this judgment permitting and authorizing Mr. Mayer

40     Diamond to act in the place and stead of defendants Gaston Pinat, Yvette Lelay Pinat, Pierre Pinat, Philippe Pinat and Frank Pinat in their capacity as shareholders and directors of Socoa International.

In addition, they are ordered to remit to Mr. Mayer Diamond within a period of ten (10) days from the date of this judgment, all assets, books, registers, and correspondence of Socoa International

1998 CILR 260

and to remit to Mr. Mayer Diamond a detailed statement of account of their administration of the affairs of Socoa International since its incorporation.

The defendants Gaston Pinat, Yvette Lelay Pinat, Pierre Pinat, Philippe Pinat, Frank Pinat and Jean-Guy St. Georges are hereby ordered to refrain, directly or indirectly from—

(a) convening, attending or participating in any meeting of the shareholders or directors of Socoa International, whether personally or by proxy;

(b) exercising any rights, prerogatives or privileges in their capacity as shareholders or directors of Socoa International;

(c) withdrawing, disposing of or transferring any funds whatsoever in any bank accounts of Socoa International or disposing of or dealing in any way with the shares of Socoa International or giving instructions to any person to such effect;

(d) transferring or disposing of any right to hold or control the shares of Socoa International in favour of any person other than Mayer Diamond;

(e) communicating in any way with whomsoever may be in possession of or may control directly or indirectly any asset of Socoa International including, without limitation, the bankers of Socoa International, or giving instructions to any person to do so;

(f) contesting any demand or petition which may be made by Mayer Diamond in the Cayman Islands with respect to Socoa International, including, without limitation, any request for possession of the assets or for their repatriation to the Province of Quebec or to exercise any right or privilege which these defendants may have as directors, shareholders, officers or representatives of Socoa."

The statutory jurisdiction of the Grand Court with regard to rectification of the register of members rests on s.45 of the Companies Law (Revised) which reads as follows:

"If the name of any person is without sufficient cause entered in or omitted from the register of members of any company or if

```
             default is made or unnecessary delay takes place in entering on the
             register the fact of any person having ceased to be a member of
40           the company, the person or member aggrieved or any member of the
             company or the company itself may by motion to the Court apply
             for an order that the register be rectified; and the Court may either
             refuse such application with or without costs, to be paid by the
             applicant, or it may, if satisfied of the justice of the case, make an
45           order for the rectification of the register, and may direct the
```

1998 CILR 261

```
             company to pay all the costs of such motion, application or petition,
             and any damages the party aggrieved may have sustained. The Court
             may in any proceeding under this section decide any question
             relating to the title of any person who is a party to such proceeding
5            to have his name entered in or omitted from the register, whether
             such question arises between two or more members or alleged
             members, or between any members or alleged members and the
             company, and generally, the Court may in any such proceeding
             decide any question that it may be necessary or expedient to decide
10           for the rectification of the register:
                    PROVIDED that the Court may direct an issue to be tried, on which
             any question of law may be raised."
             Section 47 provides that "the register of members shall be prima facie
             evidence of any matters by [the Companies Law] directed or authorised
15           to be inserted therein."
             The transfer of shares was at the material time dealt with in s.32 of the
             Companies Law (Revised), sub-s. (1) of which reads:
                    "A share or other interest of a member in a company—
                           (a) is personal estate and not in the nature of real estate; and
20                         (b) is capable of being transferred if—
                                  (i)  a transfer is expressly or impliedly permitted by the
                           regulations of the company; and
                                  (ii) any restriction or condition on the transfer of the shares
                           or interest set out in the regulations is observed."
25           None of the shares which are the subject of this application are bearer
             shares. Their ownership is recorded in a register about which I shall have
             more to say. They are fully paid up. In respect of shares other than bearer
             shares, art. 17 of Socoa's Articles of Association provides that—
                    "the INSTRUMENT of transfer of any share shall be executed by or on
30           behalf of the transferor and, if so required by the directors, shall be
             executed on behalf of the transferee, and the transferor shall be
             deemed to remain a holder of the share until the name of the
             transferee is entered in the register of members in respect thereof."
             Gaston Pinat was alleged in the Quebec proceedings to be the prime
```

35 mover in relation to the activities complained of therein. In particular, it was alleged that all the funds of Socoa originated from the funds improperly transferred to it. The attorney for Socoa in Canada testified in the trial before the Quebec Superior Court in January 1993 and produced in evidence a "minute book" of Socoa which indicated that Gaston Pinat
40 and his family had secretly held controlling shares in Socoa.

Amongst the affidavit evidence which was presented in relation to the events preceding and surrounding the order of Tremblay, J. was an affidavit by one Christian Garcia, a resident of France. In it he deposed that he is the sole director of Socoa and has been a director since August
45 12th, 1988 and that by share transfers during September and October

1998 CILR 262

1993, Gaston Pinat and the members of his family transferred their shares in Socoa to him. Exhibited to his affidavit are copies of share transfers and the register of members and directors of Socoa which are consistent with those assertions. Mr. Garcia goes on to say that as sole director, he
5 was present at a directors' meeting in France on March 2nd, 1994. Minutes of that meeting exhibited to his affidavit contain the following resolutions:

"1. That the directors recognize the transfer of all issued ordinary shares to Mr. Christian Garcia by Gaston, Yvette, Pierre, Frank and
10 Philippe Pinat and that these transfers be approved.

2. That the company issue a share certificate in favour of Mr. Garcia representing the 7,000 ordinary shares of the company presently issued and that the company cancel certificates No. 1, 2, 6, 7, 8 and 9."

The plaintiff submits that on the evidence, the minutes of Socoa appear to
15

have reflected the true position up to August 10th, 1988 but that thereafter there was a fraudulent scheme to falsify corporate records for the purpose of defeating court actions and that Gaston Pinat remained the sole owner of the common shares.

20 The plaintiff acknowledged that s.45 of the Companies Law provided a jurisdiction which was a summary alternative to the applicants' right to institute an action. It is a matter within the court's discretion to determine whether, by reason of the complexity of the matter or because there are matters requiring investigation or otherwise, the matter is best dealt with
25 by one procedure or the other.

Every person who has agreed to become a member of a Cayman Islands company and whose name is entered on the register of members is deemed to be a member of the company. The register cannot be conclusive, but the following salutary observation by Lord Cairns on the
30 jurisdiction to rectify pursuant to the Companies Act 1862 appears in

*Directors of Reese River Silver Mining Co.* v. *Smith* (2) (L.R. 4 H.L. at 80):

> ". . . [I]t is also, as a matter of policy, of very great importance, in these cases, to make the register of any one of these companies as conclusive as, consistently with the proper interpretation of the Act of Parliament, you are able to do. But it is perfectly clear, my Lords, that you cannot make the register absolutely conclusive. Many cases can be pointed out, without difficulty, in which the register is not conclusive."

It was, however, submitted by the plaintiff that in cases where share certificates are dealt with outside the place of incorporation of the company one should look at the place of that dealing to determine whether effective transfer has occurred. *Williams* v. *Colonial Bank* (3) was a case where dealings in the shares of a company incorporated in New York were carried out in England by persons domiciled there. It was held that the respective rights of the parties to those dealings must be

1998 CILR 263

determined by English law and that one party was not estopped from setting up its title against the other. The following passage from the speech of Lord Herschell shows the *ratio decidendi* of the case (15 App. Cas. at 283):

> "I agree that the question, what is necessary or effectual to transfer the shares in such a company, or to perfect the title to them, where there is or must be held to have been an intention to transfer them, must be answered by a reference to the law of the State of New York. But I think that the right arising out of a transaction entered into by parties in this country, whether, for example, it operated to effect a binding sale or pledge as against the owner of the shares, must be determined by the law prevailing here."

So, in such a case there are two entirely different questions to be determined. First, what is the effect of a transfer as between the parties and as against the company itself? The second question, that is to say the corporate rights of an alleged transferee, is determined by the *situs* of the shares. As Bowen, L.J. had said when the case was before the Court of Appeal in a passage which has been described as being of "terse felicity" (38 Ch. D at 408):

> "The key to this case is whether the Defendants [the bank] have a right to hold these pieces of paper, these certificates. What the effect upon their ulterior rights in *America* would be, if we were to declare that they were entitled to these pieces of paper, is another question."

It is the "ulterior rights" in relation to the register of members of a Cayman company with which I am concerned.

I will deal at this point with a submission about the proper law which should apply to the issue before me. Mr. Telfer submitted that the *situs* of

the shares was Quebec because the share register and certificates were in Montreal. Section 43 of the Companies Law (Revised) includes the following: "The register of members, commencing from the date of registration of the company, shall be kept at the registered office of the company . . . or, in the case of an exempted company, at any other place within or without the Islands." Socoa is an exempted company and I found the evidence as to where the register was in fact kept inconclusive. Questions of fact needed to be determined.

The rule of private international law is that shares are deemed to be situated in the country where they can be effectively dealt with between the shareholder and the company. There is only one place where issues regarding the perfecting of title to shares by rectification of the register can be dealt with and that is before the Grand Court of the Cayman Islands, under s.45 of the Cayman Companies Law. This is intended to be a summary procedure. It is quite inappropriate for the hearing of expert evidence on foreign law and the determination of questions as to rectification in accordance with that law. The proper law is the law of the Cayman Islands.

1998 CILR 264

Mr. Telfer suggested various approaches which were open to me. First, I should order that the minute book of Socoa as at August 10th, 1988 be presumed correct, and that a share certificate No. 2 be presumed to be transferred to the plaintiff under Canadian law pursuant to the court order of December 22nd, 1993, and I should declare all other certificates not properly issued and that there are no other common shareholders of Socoa, or—put another way, as did Mr. Telfer—I should "put Socoa back together" as the simplest way to resolve this matter. Another submission was that I should consider the position in equity arising from the undertakings given to the court by Gaston Pinat and his associates not to deal in the shares of Socoa. The argument was that in equity the undertaking was to the whole world and operated as an equitable assignment of which Socoa had notice, and that this can now be perfected by rectification of the register. This appears to be bold in the extreme and not an acceptable extension of the established principles to which I was referred.

There is in evidence an exchange of letters between the plaintiff and the defendants' attorneys dated respectively January 18th and 28th, 1994. With his letter of January 18th, the plaintiff enclosed a copy and translation of the judgment of Tremblay, J. on the basis of which he made the following claim:

"This judgment orders Gaston Pinat, Yvette Lelay Pinat, Pierre Pinat, Phillipe Pinat and Frank Pinat to sign the form of transfer that is annexed to this judgment and further orders that in the event of

their failure to comply, the judgment of the Superior Court of the Province of Quebec will avail instead of their signatures.

Therefore, the shares of Yvette Lelay Pinat, Pierre Pinat, Phillipe Pinat and Frank Pinat have been transferred to Mayer Diamond. The share certificates numbered 6, 7, 8 and 9 are now in the custody of the Quebec Superior Court at Montreal and can be produced to you for inspection should you so require. I should be grateful if you would register these transfers forthwith."

After contesting jurisdiction, Mr. Turner responded to this request as follows:

"The transfer of shares in Socoa is subject to Cayman law, since Socoa is a Cayman company. Section 32 of the Companies Law (Revised) provides as follows:

'(1) A share or other interest of a member of a company—

. . .

(b) is capable of being transferred if—

(i) a transfer is expressly or impliedly permitted by the regulations of the company; and

(ii) any restriction or condition on the transfer of the shares or interest set out in the regulations of the company is observed.'

1998 CILR 265

Pursuant to the Articles of Association of Socoa, the shares of Socoa cannot be transferred by court order. The transfer must be a voluntary transfer by the registered owner. In these circumstances the board of directors of Socoa does not intend to register the purported transfer of shares as outlined in your letter."

In relation to the judgment of the Tremblay, J., I regard that as a correct statement of Cayman law. If the individuals who had been ordered to sign the forms of transfer annexed to the judgment had done so, interesting questions as to whether or not these signatures were voluntary might have arisen. As they did not, they need not be addressed.

There are established procedures for recovering funds alleged to have been wrongfully hidden in overseas companies. Use of the summary procedures for rectification of the register of Socoa under compulsion of the order of the Canadian court is not among them. I empathize with the words of Summerfield, C.J. in one of the "consent directive" cases where the issue was whether this creature of American law gave rise to a real consent within the terms of the Confidential Relationships (Preservation) Law for the disclosure of confidential information. The case was *Att. Gen. v. Bank of Nova Scotia* (1) where he said this (1984–85 CILR at 427–428):

> "Further, I do not, with respect, think that any useful purpose would be served by a review and analysis of the authorities cited concerning the recognition of foreign judgments, public policy in relation thereto and comity of nations. . . . In any event, I cannot divest my mind of the thought that we are here dealing with an order of a foreign court consciously aimed at setting at nought the proper application of one of our Laws which it is my duty to see correctly applied."

I do not say that because complicated questions of law such as those in this application are in issue the procedure under s.45 is necessarily inappropriate but it was on the merits, and for the reasons which I have given, that I dismissed para. 3 of the plaintiff's summons dated March 2nd, 1994.

*Order accordingly.*

Attorneys: *Ritch & Conolly* for the applicant; *W.S. Walker & Co.* for the respondent.