PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, NY 10019-6131
Telephone: 212-858-1000
Facsimile: 212-858-1500
John A. Pintarelli
Kwame O. Akuffo

PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, 36th Floor
Los Angeles, CA 90017-5524
Telephone: 213-488-3655
Facsimile:  213-629-1033
Claire K. Wu (*pro hac vice* pending)

*Attorneys for Petitioners Graham Robinson and Ivy Chua,*
*in their capacities as Joint Official Liquidators*
*of Ascentra Holdings, Inc. (in Official Liquidation)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Ascentra Holdings, Inc. (In Official Liquidation),<br><br>        Debtor in a Foreign Proceeding. [1] | Case No. 21-11854 (DSJ)<br><br>Chapter 15 |

**EMERGENCY REQUEST FOR PROVISIONAL RELIEF**
**PURSUANT TO SECTIONS 1519 AND 105(a) OF THE BANKRUPTCY CODE**

---

[1]  The Debtor's company registration number is 283719. The Debtor's registered office is c/o JTC (Cayman) Ltd., 94 Solaris Avenue, Second Floor, Camana Bay, PO Box 30745, Grand Cayman, Cayman Islands, KY1-1203.

## Table of Contents

I.      PRELIMINARY STATEMENT ...................................................................................... 1

II.     JURISDICTION AND VENUE ..................................................................................... 2

III.    BACKGROUND ........................................................................................................... 3

IV.     RELIEF REQUESTED ................................................................................................. 5

V.      ARGUMENT ................................................................................................................ 6

    A.   Provisional Relief is Authorized Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code ................................................................................................................................. 6

    B.   The Petitioners Satisfy the Standards for Injunctive Relief ............................................. 9

        1.   Likelihood of Success on the Merits ......................................................................... 9

        2.   Ascentra Will Suffer Irreparable Harm Absent Provisional Relief ......................... 11

        3.   Balance of Hardships Favor the Petitioners ............................................................ 14

        4.   Requested Relief is in the Public Interest ................................................................ 15

VI.     WAIVER OF FEDERAL RULE OF CIVIL PROCEDURE 65(C) .......................... 16

VII.    SATISFACTION OF LOCAL RULE 9013-1(a) ...................................................... 16

VIII.   NOTICE ..................................................................................................................... 16

IX.     NO PRIOR REQUEST .............................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re ABC Learning Centres Ltd.*,
  445 B.R. 318 (Bankr. D. Del. 2010) ................................................................... 10

*In re Ashapura Minechem Ltd.*,
  480 B.R. 129 (S.D.N.Y. 2012) ............................................................................. 9

*In re Barnet*,
  737 F.3d 238 (2d Cir. 2013) ................................................................................ 9

*In re B.C.I. Finances Pty Ltd.*,
  583 B.R. 288 (Bankr. S.D.N.Y. 2018) ................................................................. 9

*In re Beechwood Re*,
  No. 19-11560 (MG), 2019 WL 3025283, *2 (Bankr. S.D.N.Y. Jul. 10, 2019) ..................... 7

*In re Betcorp Ltd.*,
  400 B.R. 266 (Bankr. D. Nev. 2009) ................................................................... 10

*In re Brierley*,
  145 B.R. 151, 168 (Bankr. S.D.N.Y. 1992) ......................................................... 13

*In re Caldas*,
  274 B.R. 583, 598 (Bankr. S.D.N.Y. 2002) ......................................................... 12

*In re Calpine Corp.*,
  365 B.R. 401, 409 (Bankr. S.D.N.Y. 2007) ........................................................... 8

*In re Garcia Avila*,
  296 B.R. 95 (Bankr. S.D.N.Y. 2003) ................................................................. 13

*In re Innua Can. Ltd.*,
  Case No. 09-16362 (DHS), 2009 WL 1025088 Bankr. D. N.J. Mar. 25, 2009) ........... 7, 8, 14

*In re Japan Airlines Corp.*,
  2010 WL 1050075 (Bankr. S.D.N.Y. Jan. 28, 2010) .............................................. 7

*In re Lyondell Chem. Co.*,
  402 B.R. 571, 588 (Bankr. S.D.N.Y. 2009) ........................................................... 8

*In re Netia Holdings, S.A.*,
  278 B.R. 344 (Bankr. S.D.N.Y. 2002) ................................................................ 12

*In re Pro-Fit Int'l Ltd.*,
  391 B.R. 850 (Bankr. CD. Cal. 2008) ................................................................... 7

*In re Qimonda AG*,
  No. 09-14766 (RGM), 2009 WL 2210771 (Bankr. E.D. Va. Jul. 16, 2009) ................. 8, 9

*In re Rubin*,
  160 B.R. 269, 283 (Bankr. S.D.N.Y. 1993) ......................................................... 13

**Page(s)**

**Cases (con't)**

*In re SIVEC SRL,*
  Case No. 11-80799-TRC, 2011 WL 2445754 (Bankr. E.D. Okla. Jun. 15, 2011) ................ 7

*In re Vitro S.A.B. de CV,*
  455 B.R. 571 (Bankr. N.D. Tex 2011) .............................................................................. 8

*In re Worldwide Educ. Servs., Inc.,*
  494 B.R. 494, 499 (Bankr. C.D. Cal. 2013) ..................................................................... 8

**Statutes**

11 U.S.C. § 101(15) ........................................................................................................... 9

11 U.S.C. § 101(41) ........................................................................................................... 9

11 U.S.C. § 105(a) ............................................................................................................. 8

11 U.S.C. § 1501(a) ......................................................................................................... 15

11 U.S.C. § 1516(c) ......................................................................................................... 10

11 U.S.C. § 1519(a) ........................................................................................................... 6

11 U.S.C. § 1519(a)(1) ...................................................................................................... 7

11 U.S.C. § 1519(a)(2) ...................................................................................................... 7

11 U.S.C. § 1519(a)(3) ...................................................................................................... 7

11 U.S.C. § 1521(a)(6) ...................................................................................................... 8

11 U.S.C. § 1522(a) ......................................................................................................... 14

**Other Authorities**

*In re Alitalia Linee Aeree Italiane S.p.A.,*
  Case No. 08-14321 (BRL) [Docket No. 11] (Bankr. S.D.N.Y. Nov. 13, 2008) ................... 7

*In re Compania Mexicana de Aviation. S.A. de C.V.,*
  Case No. 10-14182 (MG) [Docket No. 140] (Bankr. S.D.N.Y. Aug. 5, 2010) .................... 7

*In re Cozumel Caribe, S.A., de C.V.,*
  Case No. 10-13913 (MG) Docket No. 23 (Bankr. S.D.N.Y. Aug. 4, 2010) ......................... 8

*In re Gerova Fin. Grp., Ltd.,*
  Case No.12-13641 (MEW) [Docket No. 21] (Bankr. S.D.N.Y. Aug. 24, 2012) ................. 11

*In re Mt.Gox Co., Ltd. a/k/a K.K. MtGox,*
  Case No. 14-31229 (SGJ) [Docket No. 13] (Bankr. N.D. Tex. Mar. 10, 2014) ................... 7

*In re STX Pan Ocean Co.,*
  Case No. 13-12046 (SCC), [Docket No. 30] (Bankr. S.D.N.Y. Jul. 1, 2013) ............. 8, 11, 14

Graham Robinson and Ivy Chua, the duly appointed joint official liquidators ("**Petitioners**" or "**Liquidators**") of Ascentra Holdings, Inc. (In Official Liquidation) ("**Ascentra**"), a company in official liquidation in the Cayman Islands by way of a shareholder resolution to wind up the company (the "**Cayman Proceeding**"), which was brought under the supervision of the Grand Court of the Cayman Islands (the "**Grand Court**") by an order dated September 17, 2021 (cause no. FSD 189 of 2021), by its undersigned United States counsel, Pillsbury Winthrop Shaw Pittman LLP, respectfully submit this application (the "**Application**"), pursuant to Rule 65 of the Federal Rules of Civil Procedure, made applicable to this proceeding through Rule 7065 of the Federal Rules of Bankruptcy Procedure, and sections 105(a) and 1519 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**"), for entry of an order substantially in the form attached as **Exhibit A** (the "**Provisional Relief Order**").

In support of the Application, the Petitioners respectfully incorporate the following herein by reference: (a) the *Verified Petition for Recognition of Foreign Insolvency Proceeding and Application for Additional Relief under Chapter 15 of the Bankruptcy Code, and Memorandum of Law in Support Thereof* (the "**Verified Petition**") and (b) the *Declaration of Graham Robinson* filed in support of the Verified Petition and this Application (the "**Robinson Declaration**") filed contemporaneously herewith and represent as follows:

## I.    PRELIMINARY STATEMENT

1.    The Petitioners seek provisional relief under section 1519 of the Bankruptcy Code, including, *inter alia*, making the automatic stay under section 362 of the Bankruptcy Code apply to funds held in a payment processing account in the name of Shang Peng Gao Ke Inc SEZC ("**SPGK**") maintained by Planet Payment Solutions LLC ("**Planet Payment**"), to which funds Ascentra holds a contractual and equitable entitlement. The Petitioners also seek authorization to conduct discovery in connection with the Planet Payment account. Application of the automatic

stay to the transfer of funds in the Planet Payment account is urgently needed to avoid irreparable harm to Ascentra and its stakeholders. Based on a preliminary investigation, the Petitioners understand that approximately $67 million is currently held in the Planet Payment account. Those funds are the revenues derived from the credit card sales of Ascentra products. Under the terms of an agreement cancelling the SPGK distribution agreement, SPGK was to pay over and transfer to Ascentra all assets and monies of SPGK. There is material risk that the funds may be transferred outside the territorial jurisdiction of the United States to accounts controlled by an individual over whom this Court otherwise has no jurisdiction.

2.      Absent provisional relief, the Petitioners may face an extraordinary burden to trace and recover the funds (if transferred) to accounts controlled by a shareholder that has failed to transfer any monies generated by the sale of Ascentra products over the last five years. Such a burden would shift the Petitioners' focus and responsibilities in overseeing the orderly administration of Ascentra's financial affairs under the Cayman Proceeding, require the Petitioners to expend significant time and resources to investigate and potentially litigate to recover the funds (if transferred), and deplete recoveries to Ascentra's stakeholders. The Petitioners ask this Court to preserve the status quo, by staying the transfer of funds from the Planet Payment account until such time that the dispute over the funds can be settled privately or by the Grand Court.

## II.      <u>JURISDICTION AND VENUE</u>

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and sections 105(a) and 1519 of the Bankruptcy Code.

4.      Venue in this District is proper pursuant to 28 U.S.C. § 1410 because Ascentra has assets within this District.

5.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P), and the Court may enter a final order consistent with Article III of the United States Constitution.

2

6.     The statutory bases for the relief requested are sections 105(a) and 1519 of the Bankruptcy Code.

### III.    BACKGROUND

7.     The Verified Petition and the Robinson Declaration, which are incorporated by reference as if fully set forth herein, describe in detail Ascentra's business, corporate structure, and events leading up to the Cayman Proceeding and this chapter 15 case. To avoid redundancy, the salient facts for purposes of this Application are as follows.

8.     In or about November 2016, Ascentra entered into a memorandum of understanding (the "**MOU**") with an affiliate, SPGK, which was controlled at the time by Mr. Ryunosuke Yoshida's predecessor-in-interest, Mr. Motohiko Homma. Robinson Declaration ¶ 15. Under the MOU, Ascentra granted SPGK, *inter alia*, (a) the exclusive right to use Ascentra's PRC affiliate list, (b) exclusive rights to sell Ascentra tangible products in the PRC under SPGK's proprietary brand names and (c) an exclusive license to sell Ascentra software in the PRC in exchange for a royalty payment equal to approximately 77% of the net revenues generated from such sales. *Id*.

9.     In addition, Mr. Homma was to cause NSET to tender its shares in IR-P, which represent a 23% indirect ownership stake in Ascentra, for cancellation. *Id*. On or about April 3, 2018, Ascentra and SPGK entered into an agreement to cancel the MOU (the "**Cancellation Agreement**") as the terms therein were never fully implemented and the parties to the Cancellation Agreement agreed *inter alia* to take any and all actions to remit and return to Ascentra (x) all assets and monies of SPGK and (y) SPGK's proprietary brand names. *Id*.

10.    On or about April 4, 2018, Ascentra entered into an exclusive international distribution agreement (the "**Distribution Agreement**") with Asian Offshore Services ("**AOS**") pursuant to which AOS would have the exclusive right to distribute certain of Ascentra's products in the PRC under AOS' proprietary brand names. Robinson Declaration ¶ 16. AOS discontinued

3

providing services to Ascentra and its affiliates earlier this year. *Id*. During the period in which AOS provided these back-office services, it utilized certain of the back-office systems, bank accounts, service providers and other infrastructure that Ascentra built and initially transferred to SPGK to support the sale of Ascentra's products. *Id*.

11.    The Liquidators understand that the assets of Ascentra, as of December 31, 2020, are currently estimated to be in excess of $200 million, which amount excludes potential litigation claims. Robinson Declaration ¶ 17. This estimate is based on information from SPGK's summary income statement for the years 2016 to 2020, which Mr. Yoshio Matsuura recently provided to the Grand Court in an affidavit. The income statement estimates that SPGK's net income during that 5-year period was $282.3 million, of which $217 million would have been payable to Ascentra under the MOU; however, based on the terms of the Cancellation Agreement, all of the net revenues and assets should have been transferred to Ascentra. *Id*. Based on the Liquidators' initial investigation, SPGK has not paid or transferred any funds to Ascentra. *Id*. According to the terms of the Cancellation Agreement, Ascentra has claims to the entirety of the $67 million currently held in a credit card clearing account maintained by Planet Payment. *Id*. Ascentra has claims against SPGK for its failure to transfer any of the proceeds from the sale of Ascentra's products. *Id*. SPGK has more than $160 million in bank accounts in various other jurisdictions. *Id*.

12.    The Liquidators, through counsel, have requested (a) Planet Payment provide all monthly statements for the card processing accounts to ascertain the origin of funds, (b) Planet Payment not transfer the funds unless jointly agreed to by SPGK and the Liquidators and (c) SPGK deposit the Planet Payment funds into the Grand Court until such time as the dispute is resolved. Robinson Declaration ¶ 27. Planet Payment has not provided any information or assurances

regarding our requests. *Id*. Further, SPGK has written to Planet Payment demanding that Planet Payment not share any information with Ascentra or the Foreign Representatives. *Id*.

## IV.    <u>RELIEF REQUESTED</u>

13.    The Petitioners respectfully request entry of the Provisional Relief Order granting the following provisional relief effective and until such time this Court enters a final order with respect to the Petitioners' petition for recognition of the Cayman Proceeding as a foreign main proceeding (the "**Interim Period**").  During the Interim Period –

    a.  The Petitioners shall be the representative of Ascentra with full and sole authority to administer Ascentra's assets and affairs in the United States on a provisional basis.

    b.  Section 362 of the Bankruptcy Code shall apply with respect to Ascentra and its property located within the territorial jurisdiction of the United States. Without limiting the generality of the foregoing, the Provisional Relief Order shall impose a stay within the territorial jurisdiction of the United States of:

        i.  the commencement or continuation, including the issuance or employment of process of, any judicial, administrative or any other action or proceeding involving or against Ascentra or its assets or proceeds thereof, or to recover a claim or enforce any judicial, quasi-judicial, regulatory, administrative or other judgment, assessment, order, lien or arbitration award against Ascentra or its assets or proceeds thereof, or to exercise any control over Ascentra's assets located in the United States, except as otherwise authorized by the Petitioners in writing;

        ii.  the creation, perfection, seizure, attachment, enforcement, or execution of liens or judgments against Ascentra's property in the United States or from transferring, encumbering or otherwise disposing of or interfering with Ascentra's assets in the United States without the express written consent of the Petitioners;

        iii.  any act to collect, assess, or recover a claim against Ascentra that arose before the commencement of its chapter 15 case;

        iv.  the setoff of any debt owing to Ascentra that arose before the commencement of its chapter 15 case against any claim against Ascentra; and

        v.  the transfer, relinquishment or disposal of any property of Ascentra to any entity (as that term is defined in section 101(15) of the Bankruptcy Code)

other than the Petitioners and their expressly authorized representatives and agents;

c.  Authorizing the Petitioners to issue subpoenas in accordance with applicable procedural rules for the examination of witnesses and/or the production of documents within the territorial jurisdiction of the United States concerning the assets, affairs, rights, obligations or liabilities of Ascentra and its affiliates, including subpoenas to intermediary banks that process U.S. dollar denominated wire transfers and maintain records of such transfers; provided that any subpoenas served pursuant to this authority set forth in this paragraph shall be without prejudice to the recipients' rights to object in accordance with the applicable procedural rules;

d.  Authorizing the Petitioners to take possession and to seek turnover of any and all documents, records, filings or other information, however stored, that belongs to Ascentra and that is found within the territorial jurisdiction of the United States;

e.  Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, (i) the Provisional Relief Order shall be effective immediately and enforceable upon entry, (ii) the Petitioners are not subject to any stay in the implementation, enforcement, or realization of the relief granted in the Provisional Relief Order, and (iii) the Petitioners are authorized and empowered, and may, in their discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of the Provisional Relief Order; and

f.  Such other relief as may be just and proper.

## V.    ARGUMENT

A.    *Provisional Relief is Authorized Pursuant to Sections 105(a) and 1519 of the Bankruptcy Code*

14.    Section 1519(a) of the Bankruptcy Code provides that a foreign representative may request provisional relief during the gap period between the petition date for recognition and the date a recognition order is entered if such "relief is urgently needed to protect the assets of the debtor or interests of the creditors." 11 U.S.C. § 1519(a). Provisional relief may include –

1.    staying execution against the debtor's assets;

2.    entrusting the administration or realization of all or part of the debtor's assets located in the United States to the Petitioners in order to protect and preserve the value of assets; and

3.    any relief referred to in paragraph (3), (4) or (7) of section 1521(a).

6

11 U.S.C. §§ 1519(a)(1)-(3).

15.   Provisional relief under section 1519 includes the provisional application of section 362(a) of the Bankruptcy Code against third parties to maintain the *status quo* and ensure that the foreign debtor's assets or property within the United States are protected. Indeed, bankruptcy courts in this district and elsewhere have imposed the automatic stay under section 362(a) to maintain the status quo pending recognition of a foreign proceeding under chapter 15 or former section 304. *See, e.g.*, *In re Compania Mexicana de Aviation. S.A. de C.V.*, No. 10-14182 (MG) [Docket No. 140] (Bankr. S.D.N.Y. Aug. 5, 2010) (provisionally imposing section 362 stay); *In re Japan Airlines Corp.*, No. 10-10198 (JMP), 2010 WL 1050075 (Bankr. S.D.N.Y. Jan. 28, 2010) (same); *In re Alitalia Linee Aeree Italiane S.p.A.*, No. 08-14321 (BRL) [Docket No. 11] (Bankr. S.D.N.Y. Nov. 13, 2008) (same); *In re Pro-Fit Int'l Ltd.*, 391 B.R. 850, 864-65 (Bankr. CD. Cal. 2008) (same); *In re Mt.Gox Co., Ltd. a/k/a K.K. MtGox*, No. 14-31229 (SGJ) [Docket No. 13] (Bankr. N.D. Tex. Mar. 10, 2014) (same); *In re SIVEC SRL*, No. 11-80799 (TRC), 2011 WL 2445754 (Bankr. E.D. Okla. Jun. 15, 2011) (same); *In re Innua Can. Ltd.*, No. 09-16362 (DHS), 2009 WL 1025088 Bankr. D. N.J. Mar. 25, 2009) (same).

16.   In granting provisional relief, section 1519(e) provides that "[t]he standards, procedures, and limitations applicable to an injunction shall apply to relief under this section." 11 U.S.C. § 1519(e). A majority of courts have interpreted section 1519(e) as requiring application of the standards for preliminary injunction to determine whether provision relief should be granted. *See, e.g.*, *In re Beechwood Re*, No. 19-11560 (MG), 2019 WL 3025283, *2 (Bankr. S.D.N.Y. Jul. 10, 2019) (applying the standards for preliminary injunction to determine whether provisional relief should be granted); *In re Worldwide Educ. Servs., Inc.*, 494 B.R. 494, 499 (Bankr. C.D. Cal. 2013) (same); *In re Vitro, S.A.B. de C.V.*, 455 B.R. 571, 580 (Bankr. N.D. Tex. 2011) (same); *In*

*re Qimonda AG*, No. 09-14766 (RGM), 2009 WL 2210771, at *3 (Bankr. E.D. Va. Jul. 16, 2009) (same); *Innua*, 2009 WL 1025088, at *3 (stating that foreign representative must satisfy injunctive relief standard to obtain provisional relief under section 1519).

17.    Section 105(a) of the Bankruptcy Code also provides that "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). A request for injunctive relief under section 105(a) "is regarded as a request for a preliminary injunction," which has been modified to "fit the bankruptcy context." *In re Calpine Corp.*, 365 B.R. 401, 409 (Bankr. S.D.N.Y. 2007). To obtain injunctive relief in the Second Circuit, a party must establish: (a) a likelihood of success on the merits; (b) irreparable harm if provisional relief is not granted; (c) that the balance of hardships tips decidedly in the movant's favor; and (d) that public interest favors provisional relief. *See In re Lyondell Chem. Co.*, 402 B.R. 571, 588 (Bankr. S.D.N.Y. 2009) (applying the "traditional preliminary injunction standard as modified to fit the bankruptcy context"); *In re STX Pan Ocean Co.*, No. 13-12046 (SCC) (Bankr. S.D.N.Y. Jul. 1, 2013) (Docket No. 30) (ordering provisional relief after finding that debtor had satisfied the traditional preliminary injunction standard); *In re Cozumel Caribe, S.A., de C.V.*, No. 10-13913 (MG) (Bankr. S.D.N.Y. Aug. 4, 2010) (Docket No. 23) (same).

18.    If provisional relief is granted, such relief can be automatically extended upon entry of an order of recognition of the foreign proceeding. *See* 11 U.S.C. § 1521(a)(6); *see also Vitro*, 455 B.R. at 579 ("any provisional relief granted under [section] 1519 prior to recognition is automatically extended upon entry of an order of recognition of the foreign proceeding."). All the factors described above have been met.

B.     *The Petitioners Satisfy the Standards for Injunctive Relief*

1.     Likelihood of Success on the Merits

19.     The first factor turns on the likelihood that the Petitioners will obtain recognition of the Cayman Proceeding. *See In re Qimonda*, No. 09-14766-RGM, 2009 WL 2210771, at *3 (Bankr. E.D. Va. July 16, 2009) ("The issue upon which [the petitioner] must prevail for an injunction to issue is whether an order of recognition will be entered . . ."). As fully described in the Verified Petition, the Petitioners are likely to succeed in obtaining recognition of the Cayman Proceeding as a foreign main proceeding.

20.     *First,* Ascentra qualifies as a "debtor" as that term is defined in section 1502(a)(1) of the Bankruptcy Code because it is an "entity," which includes a corporation. *See* 11 U.S.C. §§ 101(15) (definition of "entity," which includes a "person") and 101(41) (definition of "person," which includes a "corporation"). Moreover, Ascentra is an eligible debtor under section 109(a) of the Bankruptcy Code because it has property in the United States in the form of (a) a retainer with the undersigned counsel, which is held in a J.P. Morgan Chase bank account in New York, (b) legal and equitable claims to $67 million held in the credit card processing accounts maintained by Planet Payment (the "**Planet Payment Funds**") in New York and (c) contractual rights pursuant to agreements governed by New York and California law. Robinson Declaration ¶ 17. *See In re Barnet*, 737 F.3d 238, 248 (2d Cir. 2013); *In re B.C.I. Finances Pty Ltd.*, 583 B.R. 288, 294 (Bankr. S.D.N.Y. 2018) ("retainer account constitutes property of the [d]ebtors that satisfies the [s]ection 109(a)")

21.     *Second*, the Cayman Proceeding is entitled to recognition as a foreign main proceeding. The Cayman Proceeding is a "collective . . . proceeding" because it "considers the rights and obligations of all creditors." *See, e.g.*, *In re Ashapura Minechem Ltd.*, No. 11-14668 (JMP) (Bankr. S.D.N.Y. Nov. 22, 2011), ECF No. 34, at 6 (quoting *In re Betcorp Ltd.*, 400 B.R.

9

266, 281 (Bankr. D. Nev. 2009)).  In addition, the Cayman Proceeding is subject to the oversight of the Grand Court. Robinson Declaration ¶ 28.

22.     **Third**, the Cayman Proceeding is a foreign main proceeding because Ascentra's "center of main interests" or "COMI" is the Cayman Islands, the forum where Ascentra is organized and incorporated. Pursuant to section 1516(c) of the Bankruptcy Code, in the absence of evidence to the contrary, the debtor's registered office, which in this case is the Cayman Islands, is presumed to be its COMI. 11 U.S.C. §1516(c). *See also In re ABC Learning Centres Ltd.*, 445 B.R. 318, 333 (Bankr. D. Del. 2010) (holding that debtor's registered jurisdiction was its COMI where debtor established the section 1516 presumption, and no evidence was presented rebutting that presumption).  Ascentra's registered office is in the Cayman Islands and has been so since its formation. Moreover, as set forth in the Robinson Declaration filed in support of the Verified Petition, since June 1, 2021, all of the managerial decisions for Ascentra have been carried out from the Cayman Islands.  Robinson Declaration ¶¶ 26, 29.

23.     **Fourth**, the Petitioners who were appointed by the Grand Court to administer the liquidation of Ascentra, are duly appointed and authorized "foreign representatives" within the meaning of section 101(24) of the Bankruptcy Code. Robinson Declaration ¶ 28, Ex. C.

24.     **Fifth**, the Verified Petition meets the requirements of section 1515 of the Bankruptcy Code because: (i) the Verified Petition is accompanied by a certified copy of the Supervision Order authorizing the Petitioners to act as foreign representatives; (ii) the Petitioners submitted a declaration containing a statement identifying the Cayman Proceeding as the only known "foreign proceeding" with respect to Ascentra; (iii) all documents provided pursuant to section 1515(b) of the Bankruptcy Code have been translated into English; and (iv) the Verified Petition satisfies Bankruptcy Rule 1007(a)(4).

25.     Accordingly, the Petitioners will successfully demonstrate that the Cayman Proceeding constitutes a "foreign main proceeding" entitled to chapter 15 recognition. *See In re STX Pan Ocean Co.*, No. 13-12046 (SCC) (Bankr. S.D.N.Y. July 1, 2013), [Docket No. 30] (granting provisional relief because the petitioner demonstrated a likelihood of success that the company is subject to a pending foreign main proceeding.); *In re Gerova Fin. Grp., Ltd.*, No.12-13641 (MEW) (Bankr. S.D.N.Y. Aug. 24, 2012) [Docket No. 21] (same).

### 2.     Ascentra Will Suffer Irreparable Harm Absent Provisional Relief

26.     Provisional relief is urgently needed to avoid irreparable harm because there is a material risk that Planet Payment may transfer the Planet Payment Funds to offshore accounts pending recognition of Ascentra's chapter 15 application. SPGK's summary income statement shows that it has earned $284 million in net income since 2015. Robinson Declaration ¶ 17, Ex. F. The current dispute amongst the beneficial owners of Ascentra (*i.e.*, primarily IR-P's shareholders) arises from SPGK's failure to transfer any proceeds from the sale of Ascentra products (either on a gross revenue or net income basis) to Ascentra for further distribution to its shareholders (after satisfaction of the group's liabilities related to such sales). *Id*. At a minimum, SPGK is holding over $200 million that should be distributed to Ascentra's shareholders, the majority of which shares are beneficially held by U.S. parties. *Id*.

27.     Each agreement material to the shareholders' dispute is governed by Cayman law. Through counsel, the Liquidators have requested (a) Planet Payment provide all monthly statements for the card processing accounts to ascertain the origin of funds, (b) Planet Payment not transfer the funds unless jointly agreed to by SPGK and the Liquidators and (c) SPGK deposit the Planet Payment funds into the Grand Court until such time as the dispute is resolved.  Robinson Declaration ¶ 27. Planet Payment has not provided any information or assurances regarding our requests.  *Id*. Further, SPGK has written to Planet Payment demanding that Planet Payment not

11

share any information with Ascentra or the Foreign Representatives. *Id*. Moreover, Mr. Yoshida, the sole beneficial owner of SPGK, has refused to deposit the funds into the Grand Court. *Id*. SPGK's position is contrary to its short-lived arrangements as distributor of Ascentra products, the cancellation of which required SPGK to turn over all assets and monies SPGK derived from sales of Ascentra products. Robinson Declaration Ex. D, Ex. E.  Accordingly, the funds should remain where they are, absent a court order resolving the dispute or a consensual settlement, which does not appear likely at this stage.  The Liquidators should also be permitted to take discovery of the Planet Payment accounts. Failure to grant provisional relief to maintain the *status quo* would create an extraordinary burden on the Petitioners and cause them to expend significant assets to trace and recover the Planet Payment Funds from an entity and person that is not otherwise subject to the jurisdiction of this Court, which may be difficult should Mr. Yoshida further transfer the funds to a non-cooperative jurisdiction.  *See In re Netia Holdings, S.A.*, 278 B.R. 344, 352 (Bankr. S.D.N.Y. 2002) ("It is well established, at least in this district, that the dissipation of the finite resources of an insolvent estate constitutes irreparable injury."); *In re Caldas*, 274 B.R. 583, 598 (Bankr. S.D.N.Y. 2002) (same).

28.    As noted in the Verified Petition, Ascentra entered into an MOU with SPGK, which among other things, provided SPGK an exclusive license to sell Ascentra's software in the PRC in exchange for a royalties equal to about 77% of the net revenues generated from such sales (thus Mr. Yoshida and his predecessor would retain their 23% of the net income, equal to their equity interest). [2] Robinson Declaration Ex. D.  Because the terms of the MOU were never fully implemented, Ascentra and SPGK entered into the Cancellation Agreement in which the parties

---

[2]  The MOU also required Mr. Yoshida's predecessor to tender his IR-P shares for cancellation in exchange for retaining 23% of the net income generated from sales. Mr. Homma's failure to tender his Ascentra shares is one of the reasons the MOU was cancelled.

agreed to take all appropriate or necessary actions to remit all of the net revenues generated by SPGK and SPGK's proprietary brand names to Ascentra. Robinson Declaration Ex. E. Based on the Petitioners' preliminary investigation, SPGK has not remitted any funds, including the Planet Payment Funds, as of the date of this filing.  Robinson Declaration ¶ 21.  As described earlier, the Planet Payment Funds constitute approximately $67 million of the more than $280 million in net income generated from the sale of Ascentra products over the last 5 years, which under the Cancellation Agreement, amongst other agreements, SPGK was to hold for the benefit of and return to Ascentra, which it has not. *Id*. at 17.

29.     To avoid irreparable damage to Ascentra and its stakeholders, immediate imposition of the automatic stay against any transfer of the Planet Payment Funds is necessary. Granting provisional relief will allow the Petitioners to carry on and wind up Ascentra in the Cayman Proceeding, which includes obtaining chapter 15 relief, and protecting such assets until the Grand Court can resolve the disputed issues under Cayman law so that the Petitioners can make the statutory distributions to Ascentra's stakeholders. If the Planet Payment Funds are transferred, it would irreparably undermine the Cayman Islands' principle of providing equal treatment to stakeholder holding similar claims. *See* Robinson Declaration ¶ 23; *see also, In re Garcia Avila*, 296 B.R. 95, 114 (Bankr. S.D.N.Y. July 31, 2003) ("irreparable harm is present when the failure to enjoin local actions will disrupt the orderly reconciliation of claims and fair distribution of assets in a single, centralized forum"); *In re Brierley*, 145 B.R. 151, 168 (Bankr. S.D.N.Y. 1992) ("Harm to the estate exists from the failure to grant injunctive relief in the form of disruption of an orderly determination of claims and the fair distribution . . . in a single case.") (internal quotation marks and citation omitted); *In re Rubin*, 160 B.R. 269, 283 (Bankr. S.D.N.Y. 1993) (there's "[little

dispute regarding the notion that the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury.") (citation omitted).

30.     The Liquidators therefore request this Court to maintain the *status quo* and allow them to obtain discovery from relevant parties about the timing and source of the Planet Payment Funds, which information SPGK to date has refused to share so as to preserve its resources.

### 3.     Balance of Hardships Favor the Petitioners

31.     Granting provisional relief will not result in significant hardships to creditors or other interested parties. Section 1522 of the Bankruptcy Code permits courts to grant relief under section 1519 if the "interests of the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522. Legislative history of this section suggests it was intended to ensure "the foreign proceeding [is not] seriously and unjustifiably injuring United States creditors." H. Rep. No. 109-31, 109th Cong., 1st Sess. 11 (2005) (emphasis added).

32.     Indeed, creditors and other interested parties would benefit from the imposition of the automatic stay against the Planet Payment Funds. In essence, the Petitioners are attempting to ensure an orderly administration of Ascentra's financial affairs under the Cayman Proceeding in a manner that protects all stakeholders. Granting provisional relief would ensure this outcome, preserve the *status quo* until the Court decides the issue on recognition, preserve resources that would otherwise be spent to investigate, trace and potentially litigate, and ultimately recover Ascentra's assets, and allow the Petitioners to proceed with additional investigations to determine and recover Ascentra's assets and maximize value for all stakeholders. *See* Robinson Declaration ¶ 23; *see also Innua*, 2009 WL 1025088, at *4 (finding a temporary maintaining of the status quo pending recognition of the foreign proceedings actually served to benefit creditors "by allowing for an orderly administration of the Foreign Debtors' financial affairs," tipping the balance of harm in favor of the foreign representative); *In re STX Pan Ocean Co.*, No. 13-12046 (SCC), (Bankr.

14

S.D.N.Y. Jul. 1, 2013) [Docket No. 30] (noting "the commencement or continuation of any action or proceeding in the United States against the Company or any of its assets within the territorial jurisdiction of the United States . . . shall be enjoined . . . as it will maintain the status quo until the recognition hearing."). Moreover, the requested relief will allow the Liquidators to conserve limited assets that would otherwise be spent on engaging additional legal counsel to seek restraining orders in other jurisdictions, if they are, in fact, able to determine the jurisdictions in which the Planet Payment Funds are eventually transferred.

33.    Separately, temporarily maintaining the *status quo* will not significantly harm SPGK and other interested parties. The provisional relief will only stay the transfer of a small portion of the funds claimed by Ascentra against SPGK for several weeks until a hearing on the Petitioners' chapter 15 petition to recognize the Cayman Proceeding. Moreover, there is no risk that the Planet Payment Funds will be dissipated in any way because the Petitioners are not seeking to have the funds entrusted to them for distribution in the Cayman Proceeding.

34.    Further, SPGK has possession of a significant amount of funds (in addition to the Planet Payment Funds) claimed by Ascentra as payable under various agreements and for the sale of Ascentra's products, which funds are distributable to Ascentra's stakeholders. Robinson Declaration ¶ 17. While $67 million is not immaterial, those funds constitute only a portion of the "net profits" generated by the sale of Ascentra products. The funds in question are not necessary to pay the limited ordinary course obligations of the entities that are in the process of being liquidated, as SPGK has more than $160 million to pay such obligations in bank accounts in other jurisdictions. *Id.*

4.    <u>Requested Relief is in the Public Interest</u>

35.    Finally, the requested relief is consistent with the objectives of chapter 15. Particularly, the requested relief would effectuate the objectives of chapter 15 of "cooperation

15

between courts of the United States . . . and the courts and other competent authorities of countries," "fair and efficient administration od cross-border insolvencies that protects the interest of all creditors, and other interested parties," and "protection and maximization of the value" 11 U.S.C. § 1501(a). Absent provisional relief, there is a material risk that Ascentra's assets will be transferred, thereby creating an extraordinary burden on the Petitioners to trace and recover the assets to the detriment of all stakeholders. Moreover, the majority of the equity interest that would benefit from Ascentra's recovery of the Planet Payment Funds are United States citizens or parties domiciled in the United States. Accordingly, the Petitioners submit the provisional relief is in accordance with the public interest.

## VI.    WAIVER OF FEDERAL RULE OF CIVIL PROCEDURE 65(C)

36.    Bankruptcy Rule 7065 provides that "a temporary restraining order or preliminary injunction may be issued on application of a debtor, trustee, or debtor in possession without compliance with Rule 65(c)" of the Federal Rules of Civil Procedure. To the extent the Court applies Rule 65(c), the Petitioners believe that the security requirements imposed by that rule are unwarranted under the circumstances and therefore respectfully requests a waiver of such requirements pursuant to Bankruptcy Rule 7065.

## VII.    SATISFACTION OF LOCAL RULE 9013-1(a)

37.    This Application includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to this Application. Accordingly, the Petitioners submit that the Application satisfies Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York.

## VIII.    NOTICE

38.    Notice of this provisional relief application will be served by email or overnight mail to all entities against whom provisional relief is being sought under section 1519 of the

16

Bankruptcy Code. Notice of this provisional relief application will be served to the following parties in the manner set forth in the *Motion for Order Specifying Form and Manner of Service of Notice and Scheduling Recognition Hearing*, filed contemporaneously herewith: (i) the United States Trustee for the Southern District of New York; (ii) all known parties in interest domiciled in the United States; and (iii) all parties that have filed a notice of appearance in this chapter 15 case. The Petitioners submit that no other or further notice is necessary or required.

## IX.   NO PRIOR REQUEST

No prior request for the relief sought in this Petition has been made to this or any other court.

**WHEREFORE**, for the foregoing reasons, Petitioners respectfully request entry of the

Provisional Relief Order attached hereto as **Exhibit A** and granting such other and further relief

as the Court deems just and proper.

New York, New York
Dated:  October 28, 2021

                         Respectfully submitted,

                         PILLSBURY WINTHROP SHAW PITTMAN LLP

                         */s/ John A. Pintarelli*
                         John A. Pintarelli
                         Kwame O. Akuffo
                         31 West 52nd Street
                         New York, NY 10019-6131
                         Telephone: 212-858-1000
                         Facsimile: 212-858-1500

                         Claire K. Wu (*pro hac vice* pending)
                         725 South Figueroa Street, 36th Floor
                         Los Angeles, CA 90017-5524
                         Telephone: 213-488-3655
                         Facsimile:  213-629-1033

                         *Attorneys for Petitioners Graham Robinson and Ivy*
                         *Chua, in their capacities as Joint Official*
                         *Liquidators of Ascentra Holdings, Inc. (in Official*
                         *Liquidation)*

18