**Hearing Date and Time: July 20, 2023 at 10:00 a.m. (ET)**
**Objection Deadline: July 13, 2023**
**Reply Deadline: July 17, 2023**

Robert J. Feinstein
Bradford J. Sandler
Jeffrey M. Dine
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 34th Floor
New York, New York 10017
Telephone:   (212) 561-7700
Facsimile:   (212) 561-7777
E-Mail:   rfeinstein@pszjlaw.com
  bsandler@pszjlaw.com
  jdine@pszjlaw.com

*Counsel for Shang Peng Gao Ke Inc. SEZC and SPGK Pte Ltd*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Case No. 21-11854 (DSJ) |
| ASCENTRA HOLDINGS, INC. (in Official Liquidation), | Chapter 15 |
| Debtor in a Foreign Proceeding.[1] | |

**MOTION OF SHANG PENG GAO KE INC. SEZC AND**
**SPGK PTE LTD. PURSUANT TO 11 U.S.C. §§ 1517(d) AND 1520(c)**
**FOR AN ORDER TERMINATING THE RECOGNITION ORDER**

---

[1]   The Debtor's company registration number is 283719.  The Debtor's registered office is c/o JTC (Cayman) Ltd., 94 Solaris Avenue, Second Floor, Camana Bay, PO Box 30745, Grand Cayman, Cayman Islands, KY1-1203.

# TABLE OF CONTENTS

**I. PRELIMINARY STATEMENT** ............................................................................................... 1

**II. JURISDICTION, VENUE, AND STATUTORY BASIS** ..................................................... 4

**III. STATEMENT OF FACTS AND PROCEDURAL HISTORY** ........................................ 5

    A.   Ascentra ........................................................................................................................... 5

    B.   Procedural History Of Ascentra's Petition For  Voluntary Liquidation In The Cayman
Islands .................................................................................................................................... 5

    C.   The JOLs File The Petition For Recognition ...................................................................... 9

    D.   The Singapore Court Denies Recognition To The Cayman Proceeding .......................... 11

**IV. ARGUMENT** ......................................................................................................................... 11

    A.   Section 1517(d) Permits The Court To Terminate Or Modify The Recognition Order .... 11

    B.   The Recognition Order Should Be Terminated Because The Cayman Proceeding  Does
Not Constitute a Foreign Proceeding Under 11 U.S.C. § 101(23) ........................................ 14

    C.   The Cayman Proceeding Is Not A Collective Proceeding ................................................ 16

    D.   The Cayman Proceeding Is Not Authorized Or Conducted  Under A Law Relating To
Insolvency Or The Adjustment Of Debt ............................................................................... 20

    E.   The Cayman Proceeding is Not for the Purpose of Reorganization or Liquidation .......... 28

    F.   No Party Will Be Prejudiced By Termination Of Recognition ......................................... 30

**V. CONCLUSION** ........................................................................................................................ 31

DOCS_NY:47696.13 78263/001

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Armada (Singapore) Pte Ltd. v. Shah (In re Ashapura Minechem Ltd.)*, 480 B.R. 129 (S.D.N.Y. 2012) ............................................................................................................................... passim

*Baiz v. Ortiz (In re Estrategias en Valores, S.A.)*, 2020 U.S. Dist. LEXIS 66066 (S.D. Fla. Apr. 13, 2020) .......................................................................................................................... 13

*Fraternal Composite Servs. v. Karczewski*, 315 B.R. 253 (N.D.N.Y. 2004) .............................. 23

*In re AJW Offshore Ltd.*, No. 13-70078 (Bankr. E.D.N.Y. Feb. 5, 2013) ................................... 16

*In re Ashapura Minechem Ltd.*, 2011 Bankr. LEXIS 4617 (Bankr. S.D.N.Y. Nov. 22, 2011) ..... 14

*In re Basis Yield Alpha Fund* (*Master*), 381 B.R. 37 (Bankr. S.D.N.Y. 2008) ......................... 14, 15

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122 (Bankr. S.D.N.Y. 2007) ................................................................................................... 15

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325 (S.D.N.Y. 2008) ............................................................................................................... 14

*In re Betcorp Ltd.*, 400 B.R. 266 (Bankr. D. Nev. 2009) ............................................................ 25

*In re British Am. Ins. Co. Ltd.*, 425 B.R. 884 (Bankr. S.D. Fla. 2010) ....................................... 17

*In re Cohoes Indus. Terminal*, 931 F.2d 222 (2d Cir. 1991) ...................................................... 23

*In re Comair Ltd.*, 2023 Bankr. LEXIS 363 (Bankr. S.D.N.Y. Feb. 12, 2023) ........................... 13

*In re Cozumel Caribe, S.A. de C.V.*, 508 B.R. 330 (Bankr. S.D.N.Y. 2014) .............................. 13

*In re Ernst & Young, Inc.*, 383 B.R. 773 (Bankr. D. Colo. 2008) ............................................... 12

*In re Foreign Econ. Indus. Bank Ltd., "Vneshprombank" Ltd.*, 607 B.R. 160 (Bankr. S.D.N.Y. 2019) ................................................................................................................................ 12

*In re Global Cord Blood Corp.*, 2022 Bankr. LEXIS 3426 (Bankr. S.D.N.Y. Dec. 5, 2022) passim

*In re JPA No. 111 Co.*, 2022 Bankr. LEXIS 259 (Bankr. S.D.N.Y. Feb. 1, 2022) ..................... 23

*In re Oi Brasil Holdings Coöperatief U.A.*, 578 B.R. 169 (Bankr. S.D.N.Y. 2017) ................... 12

*In re Oversight & Control Comm'n of Avanzit, S.A.*, 385 B.R. 525 (Bankr. S.D.N.Y. 2008) ...... 12

*In re Serviços de Petróleo Constellation S.A.*, 600 B.R. 237 (Bankr. S.D.N.Y. 2019) ......... 14, 20

*In re SPhinX, LTD.*, 351 B.R. 103 (Bankr. S.D.N.Y. 2006) ........................................................ 12

*In Re Sturgeon Central Asia Balanced Fund*, [2020] EWHC 123 (Ch) ...................................... 26

*Re Ascentra Holdings, Inc (in official liquidation) and others (SPGK Pte Ltd, non-party)* [2023] SGHC 82 .......................................................................................................................... 1

*United Securities Sdn Bhd (in receivership and liquidation) and another v United Overseas Bank Ltd* [2021] 2 SLR 950 ...................................................................................................... 25

**Statutes**

11 U.S.C. § 101(23) ....................................................................................................... passim

11 U.S.C. § 1508 ................................................................................................................. 14

11 U.S.C. § 1517(a)(1) ........................................................................................................ 15

11 U.S.C. § 1517(d) ................................................................................................... 4, 12, 30

11 U.S.C. § 1520(c) ............................................................................................................... 4

28 U.S.C. § 1334 ................................................................................................................... 4

28 U.S.C. § 157(b) ................................................................................................................ 4

8 Del. C. § 226 ........................................................................................................ 19
Cayman Islands Companies Act § 110(4)(a) ............................................................ 8
Cayman Islands Companies Act § 116(c) ................................................................ 5
Cayman Islands Companies Act § 124(1) ................................................................ 6
Insolvency, Restructuring and Dissolution Act 2018 (2020 Rev. Ed.), Third Sched. Art. 2(*h*) ... 21
N.Y. Bus. Corp. L. § 1104 ...................................................................................... 19

**Rules**

CWR O.10.r.1(2)(b) ............................................................................................. 8, 10
CWR O.11 r.1(b) ...................................................................................................... 8
CWR O.13 r.1(4) ...................................................................................................... 6
CWR O.15 r.1(1) ...................................................................................................... 6
CWR O.16 r.1 ........................................................................................................... 9
CWR O.16 r.1(1) ...................................................................................................... 7
CWR O.16 r.1(3) ...................................................................................................... 7
CWR O.18 ................................................................................................................ 9
CWR O.8 r.1(1), (3) ................................................................................................. 7
CWR O.8 r.1(5) ........................................................................................................ 7
CWR O.8 r.4(2) ........................................................................................................ 8
CWR O.9 r.1(3) ........................................................................................................ 8
Fed. R. Bankr. P. 9013 ............................................................................................. 4
Fed. R. Bankr. P. 9024 ........................................................................................... 12

**Other Authorities**

*Cross-Border Insolvency: Guide to Enactment of the UNCITRAL Model Law on Cross-Border Insolvency* (1997) ...................................................................................... 14
H.R. Rep. No. 109-31, Pt. 1, 109th Cong., 1st Sess. 118 (2005) ............................. 21
Model Law on Cross-Border Insolvency (30 May 1997) ......................................... 11
*UNCITRAL Model Law on Cross-Border Insolvency with Guide to Enactment and Interpretation* (2013) ....................................................................... 14, 18, 24, 28

DOCS_NY:47696.13 78263/001

Interested parties Shang Peng Gao Ke Inc. SEZC ("SPGK Cayman") and SPGK Pte Ltd ("SPGK Singapore," and together with SPGK Cayman, "SPGK"), by and through their undersigned counsel, hereby submit this combined motion and memorandum of law with accompanying declarations (the "Motion") to terminate the recognition order [ECF No. 22] (the "Recognition Order") in this proceeding (the "Recognition Proceeding") under chapter 15 of title 11 of the United States Code (the "Bankruptcy Code") and respectfully state as follows:[2]

## I.
## PRELIMINARY STATEMENT

1.       The Recognition Order should be terminated because the underlying proceeding (the "Cayman Proceeding") in the Grand Court of the Cayman Islands (the "Cayman Court") concerning debtor in a foreign proceeding Ascentra Holdings, Inc. ("Ascentra") does not qualify as a "foreign proceeding" that is eligible for recognition under chapter 15 of the Bankruptcy Code.

2.       In fact, as the High Court of the Republic of Singapore observed in denying recognition to the Cayman Proceeding, Ascentra, the supposed debtor, is "hopelessly and irretrievably solvent."  *Re Ascentra Holdings, Inc (in official liquidation) and others (SPGK Pte Ltd, non-party)* [2023] SGHC 82, at 7.  A copy of this decision (the "Singapore Decision") is attached as Exhibit 5 to the Declaration of Andrew Johnstone dated June 30, 2023 ("Johnstone Decl.").

3.       A mere six days after the Cayman Court granted Ascentra's Joint Official Liquidators' ("JOLs") petition for supervision and issued the Supervision Order, the JOLs certified to the Cayman Court that Ascentra should be treated as solvent for the purposes of the Cayman

---

[2]    This submission is without prejudice to any claims or defenses that SPGK may assert (including in the Cayman Proceeding), as to which SPGK reserves its rights.

Companies Act and the associated Companies Winding-Up Rules ("CWR").  Johnstone Decl.
Ex. 2.

4. Then-Voluntary Liquidator (now JOL) Mr. Robinson was completely
candid with Ascentra's shareholders about his intention in seeking the Cayman Court's supervision
of the company's solvent liquidation by the Cayman Proceeding: "My aim as liquidator of
Ascentra and IR-P is to ensure that all the *shareholders* receive their share of the surplus and not
just Ryu[nosuke "Luke" Yoshida, beneficial owner of SPGK] or Yoshio [Matsuura] through
SPGK." Johnstone Decl. Ex. 1, at 16 (emphasis added).  He reasoned that: "The Court liquidation
gives the liquidator considerable [*sic*] more powers in investigating the affairs of the Company
and its directors and issuing claims to recover funds and protect the assets for Ascentra." *Id.* at 15.

5. The Cayman Proceeding has never been for the benefit of Ascentra's
creditors, nor has the Recognition Proceeding.  Instead, the JOLs have leveraged Ascentra's
Cayman Islands voluntary solvent liquidation into a United States bankruptcy-based proceeding
to gain a litigation advantage over SPGK.  But there is no basis in chapter 15 for the JOLs'
shopping forum to this Court, as the solvent Cayman Proceeding is not a "foreign proceeding" as
defined in section 101(23) of the Bankruptcy Code.

6. In the first instance, the JOLs' certification means that, rather than entering
into any process of determining or adjusting Ascentra's debts to ensure equal treatment of creditors
under the supervision of the Cayman Court, the JOLs instead simply pay the company's debts in
the ordinary course, and any creditors will be paid in full.

7. Not only is there no collective adjustment of Ascentra's debts, Ascentra's
creditors, if any, are effectively divested of any voice in the Cayman Proceeding; for example,
only Ascentra's shareholders ("contributories") may vote at meetings called by the JOLs, and only

2

shareholders may serve on Ascentra's liquidation committee.  Creditors also have no right to financial reports made by the JOLs.

8.      The Cayman Proceeding does not meet the definition of a "foreign proceeding" appropriate for recognition under chapter 15 of the Bankruptcy Code for three reasons, each of which is based upon the indisputable fact that Ascentra is neither insolvent nor facing financial distress.

9.      First, the Cayman Proceeding is not a foreign proceeding under section 101(23) of the Bankruptcy Code because, like the Cayman proceeding this Court considered in *In re Global Cord Blood Corp.*, No. 22-11347-dsj, 2022 Bankr. LEXIS 3426 (Bankr. S.D.N.Y. Dec. 5, 2022) ("*Global Cord*"), it is not a "collective proceeding" because it does not speak to the treatment or potential benefit of creditors and does not consider the creditor body as a whole. Creditors do not figure into the proceeding because they face no danger of failing to be paid in full, their debts are not subject to adjustment, and they have no say in the proceeding.

10.     Second, the Cayman Proceeding does not arise "under a law relating to insolvency or the adjustment of debts" because it is a proceeding under the provisions of the Companies Act related to solvent entities, not insolvent entities, and there is no provision for a solvent entity to adjust its debts.  Notably, the Singapore Court denied recognition on this ground, finding in considering the JOLs' application there that the Cayman Islands' statutory regime for the supervised liquidation of solvent companies is not such a law.  The Singapore Court carefully considered the scope of the words "relating to" and found that it could not go so far as to include within the scope of those words the Cayman voluntary liquidation regime, which, although it is included within a comprehensive statute that also contains provisions concerning insolvent companies and other corporate law matters, only applies to solvent companies.  SPGK submits

that the Singapore Court's very thorough analysis is persuasive and that, particularly in the absence of circuit court authority interpreting this element, the Court should follow it.

11.     Third, the Cayman Proceeding is not a foreign proceeding filed for the purpose of reorganization or liquidation.  As in *Global Cord*, the Cayman Proceeding is not a liquidation or reorganization for the benefit of the foreign company's creditors.  Instead, as they have told the Court in their status reports, they are working on behalf of the beneficial owners to investigate claims against SPGK and other parties and recover disputed funds purportedly owed by SPGK to Ascentra (that would ultimately be distributable to the beneficial owners).

12.     This Court has the power to modify or terminate recognition where the grounds for granting recognition "were fully or partially lacking or have ceased to exist." 11 U.S.C. § 1517(d).  The Court should terminate recognition of the Cayman Proceeding as the grounds for recognizing it were and are lacking.

## II.
## JURISDICTION, VENUE, AND STATUTORY BASIS

13.     This Court has subject matter jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1410(3), where the interests of justice are served by hearing this Motion where the Recognition Proceeding is pending.

15.     The statutory basis for the Motion is 11 U.S.C. § 1517(d) and 1520(c) and Federal Rule of Bankruptcy Procedure 9013.

## III.
## STATEMENT OF FACTS AND PROCEDURAL HISTORY[3]

**A.     Ascentra**

16.     Ascentra, previously known as Interush Holdings, Inc. ("Interush"), was incorporated as an exempted company in the Cayman Islands in December 2013. *See Declaration of Graham Robinson in Support of Chapter 15 Petition for Recognition as Foreign Main Proceeding and Emergency Application for Provisional Relief* ("Robinson Decl."), ECF No. 4.

17.     Ascentra was engaged in the sale of health and beauty products and software in East Asia through a personal marketing referral program that utilized e-commerce and onshore consultant support platforms. *See* Robinson Decl. ¶ 13.

**B.     Procedural History Of Ascentra's Petition For Voluntary Liquidation In The Cayman Islands**

18.     Since 2018, the then-principals of Ascentra (Mr. Matthews, Mr. Homma, Mr. Yoshida, and Mr. Matsuura, and later without Mr. Homma) have disagreed about the "strategic direction of the business." Robinson Decl. ¶ 19.

19.     On June 1, 2021, the shareholders of Ascentra unanimously resolved to place Ascentra in voluntary liquidation in the Cayman Islands pursuant to section 116(c) of the Cayman Islands Companies Act (Rev. 2021) (the "Companies Act"), and they appointed Mr. Robinson as Ascentra's voluntary liquidator. Robinson Decl. ¶ 22 & Ex. A; *see also* Companies Act § 116(c) (providing that a company may wind up voluntarily by special resolution); Pearson Decl. ¶ 31–33.

---

[3]     Solely for the purposes of this Motion, SPGK will rely on the factual assertions made by Mr. Robinson in his declaration (ECF No. 4). As set forth in more detail in SPGK's Motion to Terminate Restraint filed concurrently with this Motion, Mr. Robinson's declaration was made without personal knowledge in significant respects and is erroneous, has serious omissions, and elides key facts. Nonetheless, as the JOLs presumably believed that Mr. Robinson's declaration set forth their best case, and the Court relied on it in granting recognition, SPGK will accept it *arguendo* for this Motion only, except where SPGK submits contradictory or further factual information.

DOCS_NY:47696.13 78263/001

20.     Under Section 124 of the Companies Act, where a company is being wound up voluntarily under section 116, the liquidation will proceed under the supervision of the Cayman Court unless the directors have signed a declaration of solvency in a prescribed form.  Companies Act § 124(1); Pearson Decl. ¶ 37.

21.     There are many reasons that a director might not sign a declaration of solvency, even where the company at issue is solvent.  Pearson Decl. ¶ 38.

22.     The directors of Ascentra at the time the shareholders elected to place the company into voluntary liquidation were Mr. Matsuura and Mr. Yoshida.  Neither of them submitted declarations of solvency.  Robinson Decl. ¶¶ 10, 24 & Ex. B ¶ 6.

23.     Under the Companies Act, if the voluntary liquidator does not receive declarations of solvency within 28 days of the commencement of liquidation, the voluntary liquidator or other authorized party must apply for a supervision order under section 124 of the Companies Act.  Companies Act § 124(1); CWR O.13 r.1(4), O.15 r.1(1).  *See* Pearson Decl. ¶ 37.

24.     On July 2, 2021, as required under section 124 of the Companies Act, Mr. Robinson as voluntary liquidator filed the *Petition for Court Supervision of a Voluntary Liquidation* (the "Cayman Petition") in the Cayman Court, on the basis that the directors had not provided declarations of solvency.  Robinson Decl. ¶ 25 & Ex. B. ¶ 6.

25.     On September 17, 2021, the Grand Court entered its Supervision Order (the "Supervision Order") that authorized Mr. Robinson and Ivy Chua Suk Lin to act jointly and severally as the JOLs of Ascentra.  Robinson Decl., Ex. C (Supervision Order).

26.     The issuance of a supervision order does not determine the particulars of the Cayman Court's supervisory role.  Instead, in a proceeding under section 124 of the Companies Act, the liquidators are required to file a certification that the subject company is solvent, insolvent,

6

or "of doubtful solvency" within 28 days of the entry of the Supervision Order.  CWR O.8 r.1(1),

(3).  That certification sets the track by which the court's supervision will be effected, including

whether debts are paid in the ordinary course (for a solvent entity) or are subject to a procedure for

proof, priority, allowance, and adjustment.  Pearson Decl. ¶ 49.

27.     On September 23, 2021, the JOLs filed a certification of solvency (the

"Solvency Certificate"), certifying their determination that Ascentra "should be treated as solvent,

for purposes of section 110(4) of the Companies Act and CWR Order 8 and 9."  Johnstone Decl.

¶ 11 & Ex. 2.

28.     The JOLs' filing the Solvency Certificate stating that Ascentra should be

treated as solvent effectively divested Ascentra's creditors of any interest or representation in the

Cayman Proceeding:

    a.   The JOLs "shall pay the debts owing to [Ascentra's] creditors in the

ordinary course and in the currency of the obligation as if the company were

still carrying on business."  CWR O.16 r.1(1).  With respect to a solvent

company, the liquidator "may require a creditor to submit a proof of debt if

there is a doubt or dispute about the existence of the debt or the amount

owing to the creditor."  CWR O.16 r.1(3).  Creditors of solvent companies

are not otherwise required to submit a proof of debt.  Thus, payments to

creditors are made in the ordinary course, and not under the dividend regime

set out in CWR O.18.  Assets of a solvent entity are therefore not distributed

to creditors on the basis of priority.  *See* Pearson Decl. ¶¶ 56–63.

    b.   Meetings convened by the JOLs only include contributories.  CWR O.8

r.1(5); Pearson Decl. ¶¶ 49–51.

    c.   Creditors are not entitled to notice of contributories' meetings.  CWR O.8 r.4(2); Pearson Decl. ¶ 51.

    d.   Only contributories serve on the liquidation committee.  CWR O.9 r.1(3); Pearson Decl. ¶ 48.

    e.   Creditors do not receive the liquidators' reports and accounts.  CWR O.10.r.1(2)(b); Pearson Decl. ¶ 52.

    f.   Creditors have no standing to apply to the Cayman Court for sanction, that is, "for an order directing the [JOLs] to exercise or refrain from exercising any of [their] powers in a particular way, nor to be heard on a sanction application made by the liquidator or a contributory.  Companies Act § 110(4)(a); CWR O.11 r.1(b); Pearson Decl. ¶ 53–55.

    g.   Consistent with the CWR, the JOLs solicited contributories only to join Ascentra's liquidation committee.  Johnstone Decl. ¶ 12 & Ex. 3 (JOLs letter to contributories dated 14 October 2021).

    h.   Ascentra's liquidation committee consists only of contributories.  Johnstone Decl. ¶ 13 & Ex. 4 (CWR Form 15 filed 3 November 2021).

29.    According to Mr. Robinson, Ascentra does not have known pre-liquidation petition creditors.  Mr. Robinson, one of the JOLs, affirmed that "Ascentra's main liabilities as of December 31, 2021, include the costs incurred by the [JOLs] and certain ordinary course operating expenses for storage and maintenance of Ascentra's information until such time the [JOLs] complete their investigation."  Robinson Decl. ¶ 18.  "Ascentra may have other contingent liabilities that are the subject of the [JOLs'] investigation."  Petition for Recognition (ECF No. 3) ¶ 20.

**C.      The JOLs File The Petition For Recognition**

30.      The JOLs filed their petition for recognition in this Court on October 27, 2021, supported primarily by Mr. Robinson's declaration and the declaration of Guy Cowan, a Cayman Islands lawyer for the JOLs.  *See Pet. for Recognition* (ECF No. 3); Robinson Decl. (ECFR No. 4); *Declaration of Guy Cowan in Support of Chapter 15 Petition for Recognition as Foreign Main Proceeding* ("Cowan Decl.") (ECF No. 5).  The Petition, and the Robinson and Cowan declarations, do not accurately represent the non-existent role in the Cayman Proceeding of creditors (which as set out at ¶ 29 appear to be limited to certain operating costs of Ascentra). For example:

a. That the Cayman Proceeding encompasses all the creditors and stakeholders of Ascentra.  Pet. for Recognition ¶ 4.  As set forth above, creditors have no say in the Cayman Proceeding, and their debts are paid in the ordinary course and are not subject to adjustment on the basis of any inability of Ascentra to pay its debts.  *See* Pearson Decl. ¶ 74, 76(b)(ii).

b. That it is the responsibility of the JOLs to "maximize the recovery of Ascentra's assets for the benefit of all stakeholders and make distributions in accordance with the Cayman statutory distribution scheme."  Pet. for Recognition ¶ 25.  However, under the CWRs, Ascentra's creditors are paid in the ordinary course (CWR O.16 r.1) and not under the dividend distribution scheme (CWR O.18), and of course there is no danger of them failing to be paid in full and on time;  *See* Pearson Decl. ¶ 10(g)(v).

c. That it is the JOLs' duty to "report to Ascentra's creditors and other stakeholders upon the affairs of Ascentra and the manner in which it is being wound up."  Pet. for Recognition ¶ 29; Cowan Decl. ¶ 28.  But under the

9

Companies Winding Up Rules, the liquidators report only to contributories, not creditors.  CWR O.10.r.1(2)(b); *see* Pearson Decl. ¶ 52, 76(b)(i).

d.  That under the Companies Act, creditors are treated on a *pari passu* basis. Pet. for Recognition ¶ 33.  That may be true in an insolvent liquidation, but in the Ascentra liquidation all creditors will simply be paid in full in the ordinary course.  Pearson Decl. ¶¶ 56–63, 76(b)(ii).

e.  That all creditors have the opportunity to be heard.  Pet. for Recognition ¶ 34; Cowan Decl. ¶ 27.  They do not.  *See* Pearson Decl. ¶¶ 53–55, 76(b)(iii).

f.  That "all major stakeholders are actively participating in the Cayman Proceeding."  Pet. for Recognition ¶ 41; Robinson Decl. ¶ 27.  The word "stakeholders" cannot meaningfully include creditors, as the JOLs state that Ascentra does not have pre-liquidation creditors and no in-liquidation creditors are in danger of not being paid.  Further, Mr. Robinson admits that resolution of the issues related to the SPGK Planet Payment Funds is to the end of resolving "disputes amongst the beneficial holders of Ascentra's equity . . . by the Grand Court."  Robinson Decl. ¶ 27.

g.  That "the Cayman Proceeding is a collective . . . proceeding because it considers the rights and obligations of all creditors."  Pet. for Recognition ¶ 52 (internal quotation marks omitted).  That is manifestly untrue; in fact creditors are simply paid in the ordinary course and have no say or stake in the Cayman Proceeding.

10

31.     The Court granted the Recognition Order on December 6, 2021.

ECF No. 22.

**D.      The Singapore Court Denies Recognition To The Cayman Proceeding**

32.     On January 6, 2022, the JOLs filed an application in the High Court for the

Republic of Singapore (the "<u>Singapore Court</u>") seeking an order recognizing the Cayman

Proceeding as a foreign main proceeding in Singapore.  Singapore Decision ¶ 15.

33.     Following a series of hearings[4] between March and May of 2022 and entry

of an order denying the petition for recognition in Singapore on May 27, 2022, on April 3, 2023,

the Singapore Court issued the Singapore Decision, which set forth that the JOLs unequivocally

admitted that "Ascentra is and has at all material times been solvent."  Singapore Decision ¶ 16.

After thorough and extensive analysis, the Singapore Court denied recognition on the grounds that

the Cayman Companies Act provisions concerning the liquidation of a solvent company are not

"under a law related to insolvency or adjustment of debts" under Singapore's adoption of the

Model Law on Cross-Border Insolvency (30 May 1997) (the "<u>Model Law</u>") promulgated by the

United Nations Commission on International Trade Law ("<u>UNCITRAL</u>").  Singapore Decision

at 61–63.

## IV.  ARGUMENT

**A.      Section 1517(d) Permits The Court To Terminate Or Modify The Recognition
         Order**

34.     Section 1517(d) of the Bankruptcy Code provides that "[t]he provisions of

this subchapter do not prevent modification or termination of recognition if it is shown that the

grounds for granting it were fully or partially lacking or have ceased to exist, but in considering

---

[4]     The JOLs have appealed the Singapore Decision to the Court of Appeal of the Republic of Singapore.  That
        appeal is presently scheduled to be heard at the end of July or early August 2023.

such action the court shall give due weight to possible prejudice to parties that have relied upon the order granting recognition." 11 U.S.C. § 1517(d).

35.    "As numerous courts have recognized, the recognition process must be sufficiently flexible to achieve the goals of Chapter 15." *In re Oi Brasil Holdings Coöperatief U.A.*, 578 B.R. 169, 203 (Bankr. S.D.N.Y. 2017). "Chapter 15 recognizes that the status of the foreign proceeding can change, and the change can affect the right to recognition before or after it is granted." *In re Oversight & Control Comm'n of Avanzit, S.A.*, 385 B.R. 525, 533 (Bankr. S.D.N.Y. 2008); *see also In re SPhinX, LTD.*, 351 B.R. 103, 112 (Bankr. S.D.N.Y. 2006) (noting that chapter 15 maintains, and in some respects enhances, the "maximum flexibility" of bankruptcy courts in handling ancillary cases in light of principles of international comity and respect for the laws of other nations); *In re Ernst & Young, Inc.*, 383 B.R. 773, 781 (Bankr. D. Colo. 2008) (concluding that the court's recognition ruling was a "summary determination" rather a decision that was "full and final").[5]

36.    Section 1517(d) of the Bankruptcy Code "breaks down the basis for modification or termination into two prongs. The first prong looks backwards to see whether the basis for recognition previously presented to the Court was flawed in some way. The second prong looks forwards to whether something has changed since recognition." *Oi Brasil*, 578 B.R. at 197 (citation omitted) (quoting 11 U.S.C. § 1517(d)). The relief afforded under this provision is discretionary, given that "the language of Section 1517(d) contemplates the Court's *ability* to alter a prior recognition determination if one of the two prongs is satisfied, [but] nothing in Section 1517(d) *requires* it." *Id.* at 198, 202.

---

[5]    This provision has been interpreted to preclude relief under Fed. R. Civ. P. 60(b), despite the rule otherwise being applicable to bankruptcy cases pursuant to Fed. R. Bankr. P. 9024. *See, e.g., In re Foreign Econ. Indus. Bank Ltd., "Vneshprombank" Ltd.*, 607 B.R. 160, 167–68 (Bankr. S.D.N.Y. 2019) (collecting cases).

37.    "The same factors relevant in determining whether to grant recognition are therefore relevant in determining whether to terminate a recognition order." *In re Cozumel Caribe, S.A. de C.V.*, 508 B.R. 330, 335 (Bankr. S.D.N.Y. 2014).[6]

38.    Ultimately, "[s]ection 1517(d) allow[s] courts to adjust their rulings based on changed circumstances, which exhibit[s] 'a policy that the recognition process remain flexible, taking into account the actual facts relevant to the court's decision rather than setting an arbitrary determination point.'" *In re Comair Ltd.*, No. 21-10298-jlg, 2023 Bankr. LEXIS 363, at *26–27 (Bankr. S.D.N.Y. Feb. 12, 2023) (quoting *Oi Brasil*, 578 B.R. at 203).

39.    The Court may use a wide variety of sources in interpreting the provisions of chapter 15 of the Bankruptcy Code, including foreign decisions and the Model Law Enactment Guides:

> [T]he Court also considers foreign case law interpreting identical provisions of the Model Law when interpreting chapter 15's provisions. Because each section within chapter 15 is based on a corresponding article in the Model Law, "if a textual provision of Chapter 15 is unclear or ambiguous, the Court may then consider the Model Law and foreign interpretations of it as part of its interpretive task." *In re OAS S.A.*, 533 B.R. 83, 92 (Bankr. S.D.N.Y. 2015) (internal quotations omitted) (quoting *O'Sullivan v. Loy (In re Loy)*, 432 B.R. 551, 560 (E.D. Va. 2010)). The Court also considers the UNCITRAL Model Law on Cross-Border Insolvency with Guide to Enactment and Interpretation (2013) ("Guide to Enactment") when interpreting chapter 15. *In re OAS S.A.*, 533 B.R. at 92; *see* H.R. Rep. No. 109-31, at 105 (2005); Leif M. Clark, Ancillary & Other Cross-Border Insolvency Cases Under Chapter 15 of the Bankruptcy Code § 3[1][a][i], at 17 (2008). As this Court stated in *Ocean Rig*, because section 1508 of the Bankruptcy Code directs a court interpreting chapter 15 to "consider its international origin, and the need to promote application of this chapter that is consistent with the application of similar statutes adopted by foreign jurisdictions," 11 U.S.C. § 1508, it is therefore appropriate for U.S. bankruptcy courts to consider interpretations

---

[6]    Though the issue has not been definitively decided, the burden of proof under section 1517(d) of the Bankruptcy Code lies with the movant. *Baiz v. Ortiz (In re Estrategias en Valores, S.A.)*, No. 1:19-cv-20397, 2020 U.S. Dist. LEXIS 66066, at *28–30 (S.D. Fla. Apr. 13, 2020).

> from other international jurisdictions that have adopted the Model
> Law. *In re Ocean Rig*, 570 B.R. at 702 n.6; *see also In re Fairfield
> Sentry*, 714 F.3d at 136 (holding that international sources may be
> considered to the extent they assist in "carry[ing] out the
> congressional purpose of achieving international uniformity in
> cross-border insolvency proceedings").

*In re Serviços de Petróleo Constellation S.A.*, 600 B.R. 237, 273–74 (Bankr. S.D.N.Y. 2019); *see also Global Cord*, 2022 Bankr. LEXIS 3426, at *39; Ex. 1 to Declaration of Jeffrey M. Dine ("Dine Decl.") (*Cross-Border Insolvency: Guide to Enactment of the UNCITRAL Model Law on Cross-Border Insolvency* (1997)) ("1997 Enactment Guide"); Ex. 2 to Dine Decl. (*UNCITRAL Model Law on Cross-Border Insolvency with Guide to Enactment and Interpretation* (2013))" ("2013 Enactment Guide").

40.    Section 1508 of the Bankruptcy Code encourages courts to look to decisions of foreign courts, stating: "In interpreting this chapter, the court shall consider its international origin, and the need to promote an application of this chapter that is consistent with the application of similar statutes adopted by foreign jurisdictions." 11 U.S.C. § 1508.

**B.    The Recognition Order Should Be Terminated Because The Cayman Proceeding Does Not Constitute a Foreign Proceeding Under 11 U.S.C. § 101(23)**

41.    Recognition under section 1517 of the Bankruptcy Code is not a "rubber stamp exercise." *In re Basis Yield Alpha Fund* (*Master*), 381 B.R. 37, 40 (Bankr. S.D.N.Y. 2008). To the contrary, the "recognition regime under chapter 15 is procedurally quite rigid." *Id.* at 46; *see also In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 333 (S.D.N.Y. 2008) ("Recognition turns on the strict application of objective criteria."). The Court "must make an independent determination as to whether the [foreign proceeding] meets the definitional requirements of Sections 1502 and 1517 of the Bankruptcy Code, but 'the determination is a formulaic one.'" *In re Ashapura Minechem Ltd.*, No. 11-14668 (JMP), 2011 Bankr. LEXIS 4617, at *13 (Bankr. S.D.N.Y. Nov. 22, 2011) (quoting *In re Bear Stearns High-*

14

*Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 126 (Bankr. S.D.N.Y.

2007)).  The foreign representative bears the burden of proof of each required element for

recognition.  *See Basis Yield Alpha Fund*, 381 B.R. at 52.

42.    Chapter 15 recognition is only available for a "foreign main proceeding" or

a "foreign nonmain proceeding."  *See* 11 U.S.C. § 1517(a)(1).  Both a foreign main proceeding and

a foreign nonmain proceeding require the existence of a "foreign proceeding," defined as:

> [A] collective judicial or administrative proceeding in a foreign
> country, including an interim proceeding, under a law relating to
> insolvency or adjustment of debt in which proceeding the assets and
> affairs of the debtor are subject to control or supervision by a foreign
> court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

43.    In order to establish that the Cayman Proceeding is a "foreign proceeding,"

the JOLs carry the burden of proving each of the following seven criteria:

> "(i) [the existence of] a proceeding; (ii) that is either judicial or
> administrative; (iii) that is collective in nature; (iv) that is in a foreign
> country; (v) that is authorized or conducted under a law related to
> insolvency or the adjustment of debts; (vi) in which the debtor's
> assets and affairs are subject to the control or supervision of a foreign
> court; and (vii) which proceeding is for the purpose of
> reorganization or liquidation."  *In re Ashapura Minechem Ltd.*, 480
> B.R. 129, 136 (S.D.N.Y. 2012) (quoting *In re Betcorp Ltd.*, 400 B.R.
> 266, 277 (Bankr. D. Nev. 2009)); *In re ENNIA Caribe Holding N.V.*,
> 594 B.R. 631, 638 (Bankr. S.D.N.Y. 2018).  If the JPLs fail to meet
> their burden of proof on any one of these seven "definitional
> elements," then the Cayman Proceeding is not a "foreign
> proceeding" within the meaning of Chapter 15.  *In re Ashapura*,
> 480 B.R. at 136.

*Global Cord*, 2022 Bankr. LEXIS 3426, at *20–21.

44.    In the Recognition Order, the Court ruled that the Cayman Proceeding

constituted a foreign proceeding as defined under section 101(23) of the Bankruptcy Code and

15

thus a foreign main proceeding under section 1517(b)(1) of the Bankruptcy Code. *See* ECF No. 22 at 3–4.

45.    SPGK respectfully submits that the JOLs cannot show that the Cayman Proceeding is a foreign proceeding under section 101(23) of the Bankruptcy Code because it fails at least three of the definitional elements:  (1) it is not a collective proceeding; (2) it is not authorized under a law related to insolvency or the adjustment of debt; and (3) it is not for the purpose of reorganization or liquidation.[7]

## C.    The Cayman Proceeding Is Not A Collective Proceeding

46.    The Cayman Proceeding is not "collective in nature."  This Court's decision in *Global Cord* is on point:  "[A]s to whether the proceeding is 'collective,' relevant case law typically speaks in terms of the proceeding's treatment of and potential benefit to creditors, as well as emphasizing that the proceeding must concern all interests or the interests of a creditor body as a whole, not just individuals."  *Global Cord*, 2022 Bankr. LEXIS 3426, at *21–22.

47.    Thus the prime trait of a collective proceeding is "whether *all* creditors' interests [are] considered in the proceeding." *Armada (Singapore) Pte Ltd. v. Shah (In re Ashapura Minechem Ltd.)*, 480 B.R. 129, 140 (S.D.N.Y. 2012).  The Cayman Proceeding does not satisfy the criteria for a collective proceeding.

48.    Thus, as this Court observed in *Global Cord*:

> One    leading    case,    for    example,    instructs    that    a "collective proceeding is one that considers the rights and objectives of *all* creditors," and that is for the "general benefit of creditors." *In re Ashapura*, 480 B.R. at 136 (citations omitted; emphasis in original).  This concept "contemplates both the consideration and

---

[7]    None of the cases cited by the JOLs as recognizing Cayman proceedings under Chapter 15 (Pet. for Recognition ¶¶ 6, 53) were of solvent companies under Cayman Court supervision pursuant to section 124 of the Companies Act.  Only one, *In re AJW Offshore Ltd.*, No. 13-70078 (Bankr. E.D.N.Y. Feb. 5, 2013), ECF No. 31, was under that section, but the company was evidently of at best doubtful solvency given that its liquidation committee was made up of both creditors and contributories.

> eventual treatment of claims of various types of creditors, as well as the possibility that creditors may take part in the foreign action." *Id.* (citations omitted). And "[o]ther characteristics of a collective proceeding include: . . . provisions for the distribution of assets according to statutory priorities, and a statutory mechanism for creditors to seek court review of the proceeding." *Id.* at 137 (internal citations omitted).

*Global Cord*, 2022 Bankr. LEXIS 3426, at *22–23.

49.     Thus, "[f]or a proceeding to be collective within the meaning of section 101(23), it must be instituted for the benefit of creditors generally rather than for a single creditor or class of creditors." *In re British Am. Ins. Co. Ltd.*, 425 B.R. 884, 902 (Bankr. S.D. Fla. 2010).

50.     "This interpretation is informed by the 'objectives' of Chapter 15 to, among other things, ensure the 'fair and efficient administration of cross-border insolvencies that protects the interests of all creditors,' and the 'suggest[ion]' in the UNCITRAL Guide to Enactment that 'a foreign proceeding must contemplate the involvement of creditors collectively[.]'" *Global Cord*, 2022 Bankr. LEXIS 3426, at *23–24 (citations omitted) (quoting *Ashapura*, 480 B.R. at 137).

51.     The requirement of a collective proceeding is central to effectuating the purpose of chapter 15 of the Bankruptcy Code:

> Courts' consistent focus on the existence of creditor-related proceedings abroad reflects the overall purpose and focus of Chapter 15, and avoids expanding Chapter 15 to provide Bankruptcy Court assistance for any foreign proceeding aimed at counteracting corporate fraud and making victimized corporations or shareholders whole.

*Global Cord*, 2022 Bankr. LEXIS 3426, at *28.

52.     The Court observed that "[t]he purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency." *Id.* This Court has further noted that the "overarching statutory emphasis on 'insolvency' explains and confirms the case law's focus on the role of and impact on

creditors in determining whether a proceeding is 'collective' and thus a 'foreign proceeding' that is eligible to trigger Chapter 15 processes." *Id.* at 29.

53.    The 2013 Enactment Guide emphasizes the necessity of addressing creditors:  "Nor is it intended that the Model Law serve as a tool for gathering up assets in a winding up or conservation proceeding that does not also include provision for addressing the claims of creditors."  Ex. 2 to Dine Decl., 2013 Enactment Guide, at 39.

54.    In the Cayman proceeding underlying *Global Cord*, the Cayman Court appointed joint provisional liquidators (together, the "JPLs") "[i]n response to evidence suggesting that a company's board and/or officers caused or allowed an improper expenditure of more than $600 million of corporate funds[.]"  *Global Cord*, 2022 Bankr. LEXIS 3426, at *1.  However, the JPLs had not identified any creditors of the debtor, and they confirmed that the foreign debtor remained solvent.  *Id.* at *8–9.

55.    This Court in *Global Cord* thus concluded that the proceeding in the Cayman Islands helmed by the JPLs:

> [D]oes not satisfy the definitional requirements of section 101(23) . . . because the Cayman Proceeding does not involve fixing or adjusting debts or creditors' rights, and instead serves the current purpose of investigating suspected misconduct, and locating and recovering corporate assets.

*Id.* at *43–44.  The Court found that the Cayman proceeding was not a "collective proceeding" and denied recognition on this basis.  *Id.* at *29.

56.    The same is true here.  The Cayman Proceeding was commenced to benefit Ascentra's owners rather than to benefit creditors generally or to achieve a restructuring for all stakeholders.[8]  On September 27, 2021, the JOLs confirmed in the Solvency Certificate that

---

[8]    In the United States, comparable voluntary solvent liquidations can be accomplished under state corporation

Ascentra "should be treated as solvent for purposes of section 110(4) of the Companies Act and CWR Order 8 and 9." Johnstone Decl. ¶ 11 & Ex 2. The JOLs' certification put Ascentra's liquidation on the statutory track reserved for solvent entities.

57.    Moreover, the Companies Act provisions for voluntary solvent liquidation do not require notice to creditors, do not mandate distribution to creditors according to statutory priorities, and do not provide "a statutory mechanism for creditors to seek court review of the proceeding," all of which are elements required for a proceeding to be "collective." *See In re Ashapura Minechem*, 480 B.R. at 137.

58.    As set out above, Ascentra's creditors (if any) will be paid in the ordinary course as their bills come due, and those bills are not subject to adjustment, much less any consideration of the body of creditors as a whole. Nor will whatever ingathering of assets that the JOLs are attempting affect whether the creditors get paid. Because the creditors' interest in payment is settled in the ordinary course, creditors have no say in the proceeding, nor are they required to submit proofs of debt, so that the amounts due them are not considered and adjusted collectively. *See* ¶ 28 *supra*; Pearson Decl. ¶¶ 44–63. Under the Companies Act and the CWRs, the Cayman Proceeding is run for the benefit of Ascentra's shareholders, not its creditors. *See* ¶¶ 28, 30 *supra*.

59.    Notably, Ascentra's main stated liabilities are the costs of the JOLs themselves and expenses resulting from their work. Robinson Decl. ¶ 18. As with the company in *Global Cord*, Ascentra has few if any creditors, and the Cayman Proceeding was commenced to address disputes among company principals. The Cayman Proceeding has nothing to do with

---

statutes without resort to bankruptcy. *See, e.g.*, 8 Del. C. § 226 (setting forth a procedure for the appointment of a custodian in the event of deadlock); N.Y. Bus. Corp. L. § 1104 (providing for a petition for dissolution in the event of deadlock).

DOCS_NY:47696.13 78263/001

the adjustment of debts of an entity encountering financial distress or insolvency.  Based on

Ascentra's certified solvency and the exclusion of creditors from the Cayman Proceeding, the

Court should rule the same way here as in *Global Cord*.  The Cayman Proceeding is not a

"collective proceeding," and recognition should be terminated on that basis.

**D.      The Cayman Proceeding Is Not Authorized Or Conducted
Under A Law Relating To Insolvency Or The Adjustment Of Debt**

60.      For the Cayman Proceeding to qualify as a foreign proceeding, it must also

be authorized or conducted "under a law relating to insolvency or adjustment of debt."  11 U.S.C.

§ 101(23); *In re Ashapura Minechem*, 480 B.R. at 138.  It is not.  This Court may consider the

Singapore Decision in considering this issue, as well as the 1997 and 2013 Enactment Guides.  *In

re Serviços de Petróleo Constellation S.A.*, 600 B.R. at 273–74; *see also Global Cord*, 2022 Bankr.

LEXIS 3426, at *39.  The Singapore Court's interpretation of section 101(23) of the Bankruptcy

Code with respect to the particular provision, the identical Companies Act provisions, and the

identical debtor in a foreign proceeding is appropriate for this Court's serious consideration, as are

the 1997 and 2013 Enactment Guides.  All point to a finding that the Cayman Proceeding is not

under a law relating to insolvency or the adjustment of debt.

61.      Here, the Cayman Proceeding is not running under the Companies Act

provisions concerning the winding up of insolvent or even doubtfully solvent companies.  Instead,

its supervision is under a set of specific statutory provisions and rules applicable only to the

liquidation of solvent companies.  Because those provisions apply to solvent entities, they do not

implicate concerns of insolvency or severe financial distress relevant to creditors; instead, they are

only concerned with maximizing the distribution to contributories.  Nor does the Model Act

contemplate its application to solvent entities who have no need of the aid it offers to companies

that must protect themselves against creditors.  Singapore Dec. at 33.

62.     Notably, Singapore's implementation of the Model Act, Third Schedule (the "Third Schedule") of the Insolvency, Restructuring and Dissolution Act 2018 (2020 Rev. Ed.) (the "IRDA") contains the same amendment to the Model Law's definition of "foreign proceeding" as does section 101(23) of the Bankruptcy Code, adding the words "adjustment of debt" to "law related to insolvency."   Third Sched. Art. 2(*h*); 11 U.S.C. § 101(23).   That amendment has the same purpose in both Singapore and the United States – to confirm the inclusion of debtors in severe financial distress as well as insolvency.   Singapore Dec. at 35; see *also* H.R. Rep. No. 109-31, Pt. 1, 109th Cong., 1st Sess. 118 (2005).

63.     In Singapore, the JOLs contended that, although Ascentra is solvent, the Companies Act "incorporates a comprehensive and integrated statutory scheme that was enacted to govern the liquidation of *all* Cayman companies, solvent *and* insolvent.  It is therefore 'a law relating to insolvency' within the meaning of Art 2(*h*)."  Singapore Dec. at 9–10.  The JOLs made essentially the same general contention here.  *See* Pet. for Recognition ¶ 51 (stating that "the relevant portions of the Companies Act and related rules that govern the Cayman Proceeding specifically relate to proceedings in the Cayman Islands concerning 'insolvency or adjustment of debt,'" without mentioning that Ascentra is solvent).

64.     Further, the JOLs argued that the Third Schedule does not expressly exclude solvent companies from recognition.  Singapore Dec. at 10.

65.     SPGK argued, as it does here, that "Ascentra's liquidation is not a proceeding under a law relating to insolvency because the specific provisions of the Cayman Act under which Ascentra's liquidation commenced and carries on deal with *solvent* liquidation, not *insolvent* liquidation."  *Id.*

21

66. The Singapore Court undertook a very careful, thorough, multifaceted approach to deciding whether the Cayman Proceeding was under a law relating to insolvency or the adjustment of debt. *Id.* at 10–63. Several aspects of the Singapore Court's decision are particularly relevant here.

67. First, the contention that a provision that does not address insolvency or the adjustment of debts is under a law relating to insolvency simply because it is "found in a statute which . . . deals generally with insolvency . . . subordinates substance entirely to form" and elevates drafting happenstance over meaning. *Id.* at 22–23.

68. The Singapore Court illustrated the point with a hypothetical series of statutes. First, where a country has two separate statutes concerning corporate liquidation and dissolution, one only for solvent companies and one for insolvent companies, a proceeding under the solvent company act would clearly not relate to insolvency. *Id.* at 25. The hypotheticals continued with varying degrees of integration of the same provisions, to the point of complex intermingling. *Id.* at 25–26. On the JOLs' interpretation, the same provisions in an intermingled statute would result in the solvent liquidation coming under a law related to insolvency. *Id.* at 26–27. The Singapore Court considered that this approach was "entirely artificial for the test" of being under a law related to insolvency. *Id.* at 27. At best for the JOLs, the provision is ambiguous. *Id.*

69. Second, the Singapore Court turned to external evidence concerning the requirement. Considering generally the purpose of the Model Law:

> The Model Law provides the procedural tools necessary for national courts to put in place a global collective regime for the benefit of creditors as a class. In the absence of a collective regime, each creditor would move quickly to seize the debtor's assets and gain an advantage over other creditors. The Model Law thus permits courts to consolidate the administration and resolution of an insolvency or rehabilitation in the court of the foreign main proceeding, and to

22

seek relief in other courts to preserve or even enhance value for
creditors collectively until the main proceeding concludes.

*Id.* at 30.

70.     The Singapore Court observed that "[t]he purposes of the Model Law are in

no way engaged when recognition is sought of a foreign proceeding involving a company which

is neither insolvent nor in severe financial distress, *i.e.* a solvent company such as Ascentra." *Id.*

That is because there is no risk of creditors undertaking vulturine assaults on the debtor's assets in

other jurisdictions to the detriment of the body of creditors generally. *Id.*

71.     The Singapore Court then looked to UNCITRAL documents concerning the

drafting and interpretation of the Model Law. Focusing here on the Enactment Guides, the

Singapore Court observed that the 1997 Enactment Guide stated that "the definition of 'insolvency

proceedings' under Art 2(*a*) of the Model Law refers to proceedings that apply to companies which

are in severe financial distress."[9] Singapore Dec. at 34. The Singapore Court thus interpreted the

Model Law as not "at any time intended to draw the net so widely as to bring within it proceedings

relating to a solvent company." *Id.* at 35.

72.     The 2013 Enactment Guide is even clearer:

*Use of the term "insolvency"*

48.     . . . as used in the Model Law, the word "insolvency" relates
to various types of collective *proceedings commenced with respect
to debtors that are in severe financial distress or insolvent. . . . A
judicial or administrative proceeding to wind up a solvent entity
where the goal is to dissolve the entity and other foreign*

---

[9] This is comparable to the requirement that domestic entities must be facing serious financial distress to petition
for bankruptcy relief. *See In re Cohoes Indus. Terminal*, 931 F.2d 222, 228 (2d Cir. 1991) ("Although a debtor
need not be in extremis in order to file such a petition, it must, at least, face such financial difficulty that, if it did
not file at that time, it could anticipate the need to file in the future."); *Fraternal Composite Servs. v. Karczewski*,
315 B.R. 253, 256–57 (N.D.N.Y. 2004) (same, affirming the dismissal of a chapter 11 petition); *see also In re
JPA No. 111 Co.*, No. 21-12075-dsj, 2022 Bankr. LEXIS 259, at *34–35 (Bankr. S.D.N.Y. Feb. 1, 2022) (citing
*Cohoes Indus. Terminal*).

23

> *proceedings not falling within article 2 subparagraph (*a*) are not insolvency proceedings within the scope of the Model Law*. . . .

*Id.* at 36 (quoting 2013 Enactment Guide).

73.    The 2013 Enactment Guide continues:

(ii) *Pursuant to a law relating to insolvency*

73.    . . . A simple proceeding for a solvent legal entity that does not seek to restructure the financial affairs of the entity, but rather *to dissolve its legal status, is likely not one pursuant to a law relating to insolvency or severe financial distress.*

*Id.* at 36–37 (quoting 2013 Enactment Guide).

74.    Applying that understanding of the Model Law to the issue of "a law relating to insolvency," the 2013 Enactment Guide concludes:

(ii) *Pursuant to a law relating to insolvency*

73.    This formulation is used in the Model Law to acknowledge the fact that liquidation and reorganization might be conducted under law that is not labelled as insolvency law (e.g. company law), but which nevertheless deals with or addresses insolvency or severe financial distress.  The purpose was to find a description that was sufficiently broad to encompass a range of insolvency rules irrespective of the type of statute or law in which they might be contained and irrespective of whether the law that contained the rules related exclusively to insolvency. . . .

*Id.* at 38 (quoting 2013 Enactment Guide).

75.    Based on this language, the Singapore Court concluded:

[T]he purpose of the Model Law is to empower a recognising court to extend recognition to a foreign proceeding the subject of which is a company that is insolvent or in severe financial distress.  This conclusion is also consistent with, and indeed confirms that, the ordinary meaning of the words "under a law relating to insolvency" refers to a law that prescribes a set of procedures that apply to a company that is either insolvent or in severe financial distress.

*Id.*  The Enforcement Guides, and the Singapore Court's thoughtful interpretation of them, point strongly toward this Court finding that the Cayman Proceeding is not under a law relating to

24

insolvency or adjustment of debts.

76.    Third, the Singapore Court considered Singapore appellate case law concerning the provision.  One decision of the Court of Appeal (Singapore's highest court) considered the issue in *dicta*, saying that "the court in determining whether a proceeding is conducted 'under a law related to insolvency' should adopt a commonsense approach which focuses on the *substance* of the relevant law.  Specifically, *whether the relevant law* '**deals with or addresses insolvency or severe financial distress**.'" *Id.* at 41 (quoting *United Securities Sdn Bhd (in receivership and liquidation) and another v United Overseas Bank Ltd* [2021] 2 SLR 950, at [66]).

77.    Fourth, the Singapore Court examined United States authority on this issue, particularly *In re Betcorp Ltd.*, 400 B.R. 266 (Bankr. D. Nev. 2009).  In *Betcorp*, the liquidators of a solvent Australian company in liquidation sought recognition in order to stay a patent infringement suit against the company in the United States.  While the court in *Betcorp* found that a foreign company need not be insolvent or contemplating the adjustment of debt to be proceeding under a law for that purpose, the Singapore Court noted that this conclusion was unsupported by any analysis of the policies of the Model Law or the Model Law's preparatory documents. Singapore Dec. at 47.  Further, the Singapore Court accepted that the legislative intent behind the United States' adaptation of the Model Law and section 101(23) of the Bankruptcy Code appears to cover only companies that are insolvent or in severe financial distress.  *Id.* at 50.  Other United States decisions considered by the Singapore Court had similar deficiencies and concerned companies facing financial distress.  *Id.* at 47–48.

78.    The Singapore Court particularly noted that the English High Court has criticized *In re Betcorp*.  *Id.* at 49.  In the case cited by the Singapore Court, the English court

reversed the grant of recognition to a Bermudan company in a solvent liquidation, stating: "In my view a wrong turn was made in *Betcorp* as it was not an insolvent liquidation but a solvent liquidation.  It was necessary to go one step further and ask whether the company was insolvent or in severe financial distress."  *In Re Sturgeon Central Asia Balanced Fund*, [2020] EWHC 123 (Ch) ¶ 121. The judge in *In re Sturgeon*, the Chief Judge of the English specialist insolvency and company court, emphasized that In re Betcorp was decided before the 2014 Enactment Guide and other guidance was issue.  *Id.* ¶ 95.  The judge thus concluded, after examining the 2014 Guide and other materials, that:

> It would be contrary to the stated purpose and object of the Model Law to interpret 'foreign proceeding' to include solvent debtors and more particularly include actions that are subject to a law relating to insolvency but have the purpose of producing a return to members not creditors.

*Id.* ¶ 117. A copy of *In Re Sturgeon* is attached as Exhibit 6 to the Johnstone Declaration.

79.    The Singapore Court then looked at a number of English and Australian decisions that considered liquidations of solvent companies and found that they did not disturb his decision.  Singapore Dec. at 54–60.

80.    The Singapore Court thus concluded its analysis to find that Ascentra's proceeding was not under a law relating to insolvency or the adjustment of debt:

> 165    Having considered the set of provisions which govern Ascentra's liquidation, I accept Mr Kumar's submission that its liquidation does not fulfil the second requirement in *United Securities*, *ie*, that the proceeding "must have its basis in a law relating to insolvency".  I am satisfied that the track under which Ascentra's liquidation was commenced, *ie*, ss 116(*c*) read with 124 of the Cayman Act, does not and cannot apply to a company that is insolvent or in severe financial distress.  On a plain reading of the relevant provisions, it is clear that these provisions apply only to a solvent company.
>
> 166    My conclusion is further strengthened by my finding that Ascentra's liquidation is a procedure that will result in all of

26

> Ascentra's creditors being paid in full, with a surplus returned to shareholders.
>
> 167    In so far as the applicants submit that the Liquidators' determination of solvency relates only to Ascentra's financial position at the time of the determination, and may be subject to change, that may be true in theory.  But all of the evidence suggests that that is not likely to happen.

*Id.* at 62–63 (footnote omitted).

81.    The Singapore Court undertook a detailed analysis of the provision and found that Ascentra's liquidation was not under a law related to insolvency or the adjustment of debts.  This Court should do the same and, on such analysis, should come to the same conclusion.

82.    In *Global Cord*, the Court adopted the analysis of *Betcorp*.  *Global Cord*, 2022 Bankr. LEXIS 3426, at *31–32).  This was made without consideration of the Model Law and was adopted without analysis of the Explanatory Guides or other preparatory materials.  *In re Ashapura Minechem Ltd.*, 480 B.R. 129, 138, also cited by the Court in *Global Cord*, simply adopts *Betcorp*'s position without any deeper analysis.  The Court's reliance on *Betcorp* and *Ashapura* for the proposition that their "guidance counsels against an unduly grudging application of this flexibly worded test by narrowly examining whether the specific subsections of the governing Cayman statutory scheme that are presently being applied redress insolvency or creditor rights," *Global Cord*, 2022 Bankr. LEXIS 3426, at *31–32, is ripe for rethinking.  The Singapore Court's analysis leads to the conclusion that relying on provisions' mere propinquity in a wide-ranging company law elevates the form of a law over its substance, and that allowing solvent companies access to the debtor-favorable power-shifting tools of the Bankruptcy Code is a misuse of the bankruptcy power.

83.    The Singapore Court is correct.  Ascentra is not in financial distress and is not proceeding under a law relating to insolvency or the adjustment of debt; it is operating under

a law that in fact does not provide for the adjustment of debt but only for payment in the ordinary course.  Accordingly, the foreign liquidation of Ascentra is not entitled to chapter 15 recognition or relief provided under the Bankruptcy Code.

**E.      The Cayman Proceeding is Not for the Purpose of Reorganization or Liquidation**

84.     The final requirement of section 101(23) of the Bankruptcy Code is that the purpose of the foreign proceeding be for "reorganization or liquidation."   11 U.S.C. § 101(23).

85.     This Court held in *Global Cord* that foreign proceedings that are "designed to prevent dissipation and waste, rather than to liquidate or reorganize [an] insolvency estate," or "proceedings designed to prevent detriment to investors rather than to all creditors," are ineligible for chapter 15 recognition.  *Global Cord*, 2022 Bankr. LEXIS 3426, at *40 (citing 2013 Enactment Guide ¶ 77).  That is precisely the case here, where, as in *Global Cord*, the JOLs are engaged in efforts to pursue supposed assets of Ascentra solely for the benefit of its shareholders, not its creditors, who as a matter of law will be paid in full.

86.     As in *Global Cord*, the JOLs here "were not appointed under Cayman Companies Act sections 104(3), 92(d) or 86, which concern the creation of an arrangement or compromise with creditors—the Companies Act provisions most akin to U.S. reorganization proceedings."  *Id.* at *41.  Nor is the Cayman Proceeding being conducted under the Companies Act regimes for insolvent or doubtfully solvent entities.  In this case the JOLs were appointed under section 124(1) of the Companies Act, which provides for the supervision in the Cayman Proceeding of a liquidation of a *solvent* entity.  The JOLs have told the Cayman Court that the Cayman Proceeding is not an insolvency proceeding, and the provisions and rules under which the Cayman Proceeding is operating protect the interests of contributories, not creditors.  See ¶ 24, *supra*; Pearson Decl. ¶¶ 64–68.

28

87.     As with the Cayman proceeding at issue in *Global Cord*, this "Cayman Proceeding does not involve fixing or adjusting debts or creditors' rights, and instead serves the current purpose of . . . locating and recovering corporate assets."  *Global Cord*, 2022 Bankr. LEXIS 3426, at *44.

88.     Here, the JOLs' stated goal is to trace and recover funds for the benefit of the shareholders, *i.e.*, the beneficial owners that have disagreed about the operations of this company for years.  Robinson Decl. ¶ 23; *see also* Robinson email to Mari Matthews dated 16 August 2021, Johnstone Decl. Ex. 1, at 16 ("My aim as liquidator of Ascentra and IR-P is to ensure that all the *shareholders* receive their share of the surplus and not just Ryu[nosuke "Luke" Yoshida, beneficial owner of SPGK] or Yoshio [Matsuura] through SPGK.").

89.     The JOLs' First Status Report filed in the Recognition Proceeding asserts that the genesis of the Cayman Proceeding is the dispute between Ascentra's "beneficial owners" and SPGK on SPGK's alleged failure to transfer proceeds from the sale of Ascentra's products to Ascentra for further distribution to its shareholders.  *See Letter to Court re Status Report* [ECF No. 26] (June 30, 2022) ("First Status Report") at 4 (Dine Decl. Ex. 3).  Ascentra further asserts that monies held by SPGK should have been distributed to Ascentra's shareholders.  *Id.*

90.     As the JOLs reported to this Court, the Recognition Proceeding was commenced  "to extend the automatic stay to funds held in a payment processing account maintained by Planet Payment Solutions LLC . . . in the name of SPGK." in furtherance of the Cayman Proceeding's objective.  First Status Report at 2; *see also* Ex. 5 to Dine Decl. (Planet Payment Solutions LLC summary report for March 2023).  The JOLs, as set forth in the First and Second Status Reports, served discovery on Planet Payment and another party, Ever Innovation, Inc. ("EII"), which purportedly improperly took technology and agent, customer, and product lists

that were licensed by Ascentra to EII.  Both parties responded to the discovery requests and the

JOLs are "continuing to review and analyze the Planet Payment production as well as continue to

analyze the EII documents that were turned over."  *See Second Letter to Court re Status Report*

[ECF No. 29] (Dec. 30, 2022) (the "Second Status Report") at 2 (Dine Decl. Ex. 4).

91.     The JOLs' focus in the Recognition Proceeding is thus on assessing

transfers and tracing funds and assets that they assert belong to Ascentra for the benefit of

shareholders, not on liquidation or reorganization for the benefit of creditors.  *See* First Status

Report at 3; Pearson Decl. ¶ 46.   As in *Global Cord*, the JOLs' efforts are directed toward

investigating claims and recovering funds in a dispute between the beneficial owners of Ascentra

and SPGK.  The Cayman Proceeding is not a proceeding for liquidating or reorganizing Ascentra

for the benefit of creditors as required of a "foreign proceeding" for the purposes of chapter 15.

As a result, the Recognition Order should be terminated for failure to meet this requirement.

## F.    No Party Will Be Prejudiced By Termination Of Recognition

92.     Section 1517(d) of the Bankruptcy Code requires the Court to "give due

weight to possible prejudice to parties that have relied upon the order granting

recognition." 11 U.S.C. § 1517(d).

93.     No party will be prejudiced by the termination of recognition.  No creditor

has been affected by any act of the JOLs in the Recognition Proceeding or will be affected by

termination of recognition.  Moreover, Ascentra cannot be prejudiced by the termination of an

order granting a recognition to which it never had any right.

## V.  CONCLUSION

94.     For the reasons set forth herein, SPGK respectfully requests that the Court

enter an order terminating its Recognition Order December 6, 2021 and dismissing the Recognition

Proceeding.

Dated: June 30, 2023
New York, New York

                              Respectfully submitted,

                              PACHULSKI STANG ZIEHL & JONES LLP

                              */s/ Jeffrey M. Dine*
                              Robert J. Feinstein
                              Bradford J. Sandler
                              Jeffrey M. Dine
                              780 Third Avenue, 34th Floor
                              New York, New York 10017
                              Telephone:     (212) 561-7700
                              Facsimile:     (212) 561-7777
                              E-Mail:        rfeinstein@pszjlaw.com
                                             bsandler@pszjlaw.com
                                             jdine@pszjlaw.com

                              *Counsel for Shang Peng Gao Ke Inc. SEZC and
                              SPGK Pte. Ltd.*