# EXHIBIT 11

[2012 (1) CILR 445]

IN THE MATTER OF CONSISTENT RETURN LIMITED

GRAND COURT, FINANCIAL SERVICES DIVISION (Jones, J.): May 18th, 2012

Companies—winding up under court's supervision—application by voluntary liquidators—petition may be struck out if supervision order would serve no useful purpose—if company solvent, would not enable liquidators to invoke CWR, O.18, rr. 6 and 7 to pay creditors pro rata sum, as creditors to be paid in full—would enable to invoke O.16, r.1(3) to require creditors to submit proofs of debt, but could alternatively request them to issue writs—invariably increases cost of liquidation

   Consistent Return Ltd.'s joint voluntary liquidators sought an order that the liquidation be continued under the Grand Court's supervision.

   The company operated as an open-ended investment fund and was at all material times solvent. In 2009, it was put into voluntary liquidation and the liquidators were appointed. A number of proofs of debt were received from alleged creditors, including from contingent creditors claiming under indemnities provided for in the articles and an investment management agreement; but, even if all these proofs were admitted in full, the company would have remained solvent. The liquidators wished to pay the admitted debts and make a distribution to the holders of participating shares, but were concerned that their actions could be subject to later challenge; hence, in 2012, they petitioned for an order under the Companies Law (2011 Revision), s.131(b) that the voluntary liquidation continue under the supervision of the court on the ground that this would facilitate a more effective liquidation in the interests of the contributories and creditors.

   The liquidators issued a summons for directions, submitting that a supervision order was appropriate as (i) the liquidators could then invoke CWR, O.18, rr. 6 and 7 to pay creditors a pro rata sum; (ii) in respect of disputed debts, they could additionally invoke O.16, r.1(3) to require creditors to submit proofs of debt and accordingly be dealt with under the statutory provisions relating to appeals against rejections or expunging admissions; and (iii) it would be of assistance in the resolution of the indemnity claims.

   **Held,** dismissing the petition:

   The court would, by agreement with the liquidators, summarily dismiss the petition as disclosing no reasonable prospect of success. A supervision order would serve no useful purpose as (i) it would not enable the

---

2012 (1) CILR 446

liquidators to invoke CWR, O.18, rr. 6 and 7, which only applied to insolvent liquidations—in solvent liquidations, O.16, r.1(1) made it clear that creditors were to be paid in full; (ii) although it would enable the liquidators to invoke O.16, r.1(3), they could not force an unwilling creditor to submit a proof of debt, whereas they could necessarily protect themselves by putting any disputed creditors on notice that they must issue a writ, failing which the company's assets could be distributed without regard to their interests; (iii) the nature of the indemnity claims had not been explained and the liquidators were not aware of any event which could have triggered such claims—having regard to the fact that the liquidation was now approaching its third year, the existence of these provisions was probably academic; and (iv) it would increase the cost of the liquidation by requiring the making of various legal applications to the court (paras. 8–11).

Legislation construed:

Companies Law (2011 Revision), s.131(b): The relevant terms of this sub-section are set out at para. 2.

Companies Winding Up Rules 2008, O.16, r.1(1): The relevant terms of this sub-rule are set out at para. 8.

O.16, r.1(3): "The official liquidator of a solvent company which is being wound up by the Court may require a creditor to submit a proof of debt if there is a doubt or dispute about the existence of the debt or the amount owing to the creditor."

O.18, r.6(1): "As soon as the official liquidator determined that he has realised sufficient assets to be able to pay a dividend, he shall give notice of his intention to declare an interim or final dividend, as the case may be."

O.18, r.7(1): "When the official liquidator has—

(a)   realised all the company's assets, or so much of the assets as can, in his opinion, be realised without needlessly protracting the liquidation; and

(b)   divided any unrealized asset amongst the creditors in specie, if and to the extent that it was practical to do so,

he shall give notice of his intention to declare a final dividend . . ."

*Ms. S. Corbett* and *R. Bell* for the petitioners.

1   **JONES, J.:** Consistent Return Ltd. ("the company") was incorporated on March 2nd, 2007 and carried on business as an open-ended investment fund, although it was never registered as such pursuant to the Mutual Funds Law. Its authorized share capital is US$100,000 divided into 50,000 voting shares of US$1 each and 50m. non-voting participating shares of US$0.001 each. Its business was managed by Real Estate Investment Management Ltd. ("the investment manager") pursuant to an investment management agreement ("the IMA"). The investment manager was owned

---

2012 (1) CILR 447

and controlled by Mr. Stefan Seuss, and his wife, Mrs. Katrin Seuss, served as the company's sole director. By a unanimous written resolution signed by the company's voting shareholder on July 8th, 2009, the company was put into voluntary liquidation and Messrs. Geoffrey Varga and Nicolas Matthews of Kinetic Partners (Cayman) Ltd. were appointed as joint voluntary liquidators ("the liquidators"). A declaration of solvency was signed by the company's sole director and filed with the Registrar of Companies on July 29th, 2009.

2   On April 23rd, 2012, the liquidators presented a petition for an order pursuant to s.131(b) of the Companies Law (2011 Revision) that the voluntary liquidation continue under the supervision of the court on the ground that "the supervision of the Court will facilitate a more effective, economic or expeditious liquidation of the company in the interests of the contributories and creditors." I emphasize that the supervision petition is *not* presented on the ground that the company is or is likely to become insolvent. As required by CWR, O.15, r.3(3), the liquidators have issued a summons for directions, pursuant to which I should either (a) make a supervision order if I am satisfied that the company's members consent or do not object to an order being made; or (b) fix a hearing date and give directions for the trial of the petition. Alternatively, it must be open to the court in the exercise of its inherent jurisdiction to strike out a supervision petition if it discloses no reasonable cause of action or to dismiss it summarily if it has no prospect of success.

3   The evidence in support of the petition is contained in two affidavits sworn by Mr. Geoffrey Varga, the first of which merely verifies the truth of the content of the petition. The evidence contained in the second affidavit is brief and to the point. The liquidators'

annual reports and accounts have not been put in evidence. The company's assets are described in para. 7 of the second affidavit as follows:

(a) cash of about US$15m.;

(b) shares in a wholly-owned subsidiary called Consistent Income LLC, which has cash of about US$64,000;

(c) shares in a wholly-owned subsidiary called ERE Investments LLC, "from which it is expected there will be no recovery";

(d) claims for €386,146.47 and €2,150,351.13 lodged in the liquidation of two insolvent companies in Germany from which Mr. Varga currently anticipates receiving a distribution of approximately €900,000 (about US$1.2m.);

(e) a receivable of US$521,000 (including interest) due from a related party; and

---

2012 (1) CILR 448

(f) an investment in an insolvent company called K1 Invest Ltd., whose official liquidators have advised that it is "highly unlikely" that any surplus will be available for distribution to shareholders.

4   Paragraph 7 of the affidavit is silent about whether the related party debt is thought to be recoverable and, if so, what work may need to be undertaken in order to recover it. However, para. 15 tends to suggest that no further work will be undertaken at all on the basis that the liquidators will simply wait for the German administrator to make his distribution and that the other assets will be written off. Mr. Varga says that tax returns will need to be filed in Florida and Germany in order to complete the dissolution of the two remaining subsidiaries. The evidence therefore leads to the conclusion that the company probably has current gross realizable assets of about US$16.2m.

5   The company's liabilities are addressed in para. 9 of Mr. Varga's second affidavit. He says that US$1,633 is owing to Mrs. Katrin Seuss in respect of unpaid director's fees; US$7,451 is owing to the investment manager; and US$3,492.48 is owing to Intertrust Bank (Cayman) Ltd. in respect of administration services. If these sums are properly due and owing, they should have been paid. Mr. Varga says that "we are minded to admit [these claims] in full" but he does not explain why payment has been withheld. It follows that the company's total liabilities are about US$12,576 plus the liquidators' own outstanding fees and expenses about which I have no evidence.

6   The basis upon which the liquidators seek a supervision order is pleaded in their petition as follows:

"19.   The petitioners have received a number of proofs of debt from alleged creditors, including from contingent creditors based upon indemnities contained in the articles and the IMA. Even if all of these proofs of debts were admitted in full, the petitioners believe that the company will be solvent.

20.   The petitioners have considered these proofs of debt and now wish to pay those debts which have been admitted and make a distribution to the holders of participating shares. However, in the absence of a formal process for adjudication, the payment of dividends and/or the making of distributions for the voluntary liquidation of the company, the petitioners consider that there is a risk that their adjudication and subsequent payment of dividends or the making of distributions could be subject to challenge.

21.   The petitioners can obtain certainty in respect of their adjudication and subsequent payment of dividends or the making of distributions if the liquidation of the company is continued under the supervision of the court as O.16 of the CWR (Proof of Debts in

2012 (1) CILR 449

Official Liquidation) and O.18 of the CWR (Collection and Distribution of Company's Assets by its Official Liquidator) will apply in such circumstances.

22.   In the circumstances, the supervision of the liquidation of the company by the court will therefore facilitate a more effective, economic and expeditious winding up of the company in the interests of the contributories and creditors."

7   The "proofs of debt" referred to in the petition are those described in para. 9 of Mr. Varga's second affidavit and it is only those submitted by Herr Tobias Hoefer ("Mr. Hoefer") and described in sub-paras. (d) and (e) which are disputed. Mr. Hoefer, in his capacity as liquidator of Mr. Helmut Kiener, has submitted two claims, one for US$560,000 and one for US$11,585,000. The claim for US$560,000 is "in respect of funds which were allegedly paid by Mr. Kiener in respect of rental payments on one of the properties owned by Consistent Income LLC," which is the company's subsidiary incorporated in Florida. The other claim is for repayment of US$11,585,000 "allegedly advanced to the company by Atlantic Management Consultancy Ltd. which we understand was used to make improvements to properties owned by Consistent Income LLC pursuant to a Master Option Agreement entered into between Atlantic Management Consultancy Ltd. and the company." This is the totality of the evidence about these claims. Mr. Varga's affidavit simply states that the liquidators are "minded to reject" both claims, but does not state his reasons for having reached this conclusion. He says that the liquidators have written to Mr. Hoefer on six separate occasions querying the basis of these claims and seeking further information, but they have not received any response. The implication is that Mr. Hoefer is not intending to pursue his claims, but the liquidators cannot be sure about this unless and until they formally reject the claims and put him on notice that he must issue a writ, failing which the company's liquidation will be concluded and its assets will be distributed to its participating shareholders.

8   The reason why the liquidators have not taken this obvious step is that they believe that it will be easier and more efficient to deal with Mr. Hoefer's claims (if he is still in fact intending to pursue them) if the liquidation is continued under the supervision of the court. There are three limbs to this argument. First, it is said that the liquidators would be able to invoke the provisions of CWR, O.18, r.6 and/or r.7. However, as I pointed out during the course of Ms. Corbett's submissions, these rules apply only to insolvent liquidations. The evidence before the court is that the company is solvent and will be solvent in any event, even if both of Mr. Hoefer's claims were to be paid in full. The possibility of having to pay a "dividend" to creditors will not arise. CWR, O.16, r.1(1) makes it perfectly clear that the creditors of a solvent company are entitled to be paid in full "in the ordinary course and in the currency of the obligation as

2012 (1) CILR 450

if the company were still carrying on business." It follows that the liquidators should already have paid the amounts owing to the three undisputed creditors. It also follows that, if and when Mr. Hoefer makes good his claim, the liquidators will have to pay it in full in the ordinary course as if the company were still carrying on business. CWR, O.18, rr. 6 and 7 will never come into play.

9   Secondly, it is said that the liquidators could invoke the provisions of CWR, O.16, r.1(3) if the liquidation were brought under the supervision of the court. This is true. The rule provides that an official liquidator of a solvent company which is being wound up under the supervision of the court may require a creditor whose claim is disputed to

submit a formal proof of debt, in which case the provisions relating to appealing against
its rejection or expunging its admission will be brought into play, effectively as an
alternative to the commencement by the creditor of a freestanding action against the
company. The liquidators could invoke this rule, but they cannot force Mr. Hoefer to
submit a proof of debt, nor is there any mechanism for extinguishing or barring his
cause of action without bringing the liquidation to a conclusion and dissolving the
company. The proper course is to reject his claim and put him on notice that if he wishes
to pursue it, he must issue a writ, failing which the company's assets will be distributed
without regard to his claim. Provided that he is properly put on notice of the liquidators'
intention to distribute the whole or practically the whole of the assets and given a
reasonable opportunity in which to commence proceedings against the company before
the distribution is made, he will not be in a position to complain that the liquidators
have proceeded on the basis that his claim has been abandoned.

10    Thirdly, it is said that Mrs. Katrin Seuss has made a claim for an indemnity under a
provision in the company's articles of association and that the investment manager has
made a similar claim on the basis of the contractual indemnity provision contained in
the IMA. The nature of these claims and the circumstances in which they were made is
not explained in the affidavit evidence. It may be that they did nothing more than draw
the indemnity provisions to the liquidators' attention at the beginning of the liquidation
in anticipation of some claim being made against them. In any event, the liquidators are
not aware of any occurrence which could trigger the directors' and or investment
manager's right to claim an indemnity against the company. Bearing in mind that the
liquidation is now approaching its third anniversary, it is reasonable to infer from this
evidence that the existence of such indemnity provisions (which one would ordinarily
expect to see in the articles of association and the professional service providers'
contracts in the case of every mutual fund) is academic.

11    For these reasons it seemed to me, on the basis of the evidence presently before
the court, that it would serve no useful purpose to

---

continue this liquidation under the supervision of the court. It is difficult to see how the
involvement of the court will enable this liquidation to be brought to a conclusion more
effectively or expeditiously. It will certainly not facilitate a more economic resolution of
the outstanding matters. Continuing the liquidation under the supervision of the court is
bound to increase the cost, if only because it will necessitate engaging lawyers to make
various applications which would otherwise be avoided. In the light of my observations
made during the course of counsel's submissions, the liquidators changed their minds
and invited me to dismiss their petition.

*Order accordingly.*

Attorneys: *Walkers* for the petitioners.