**Hearing Date and Time: July 20, 2023 at 10:00 a.m. (ET)**
**Objection Deadline: July 13, 2023**
**Reply Deadline: July 17, 2023**

Robert J. Feinstein
Bradford J. Sandler
Jeffrey M. Dine
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 34th Floor
New York, New York 10017
Telephone:    (212) 561-7700
Facsimile:    (212) 561-7777
E-Mail:       rfeinstein@pszjlaw.com
              bsandler@pszjlaw.com
              jdine@pszjlaw.com

*Counsel for Shang Peng Gao Ke Inc. SEZC and SPGK Pte Ltd*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ASCENTRA HOLDINGS, INC. (in Official Liquidation),<br><br>     Debtor in a<br>     Foreign Proceeding.[1] | Case No. 21-11854 (DSJ)<br><br>Chapter 15 |

**MOTION OF SHANG PENG GAO KE INC. SEZC AND**
**SPGK PTE LTD. PURSUANT TO 11 U.S.C. § 1522(c)**
**TO TERMINATE RESTRAINT**

---

[1]    The Debtor's company registration number is 283719.  The Debtor's registered office is c/o JTC (Cayman) Ltd., 94 Solaris Avenue, Second Floor, Camana Bay, PO Box 30745, Grand Cayman, Cayman Islands, KY1-1203.

## TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ...................................................................................1

II. JURISDICTION, VENUE, AND STATUTORY BASIS .......................................4

III. STATEMENT OF FACTS AND PROCEDURAL HISTORY................................5

IV. ARGUMENT..........................................................................................................8

    A.     The Standard For Termination Of Chapter 15 Relief ...............................8

    B.     The Restraint Should Be Vacated As Outside This Court's Authority ..................9

    C.     The Restraint Should Be Vacated For  Failing To Meet The Injunction
          Standard ..................................................................................................14

          1.     The JOLs Cannot Demonstrate Irreparable Harm .....................15

          2.     The JOLs Cannot Demonstrate A Clear  Likelihood Of Success On
               The Merits...................................................................................17

          3.     The Balance Of The Equities Weighs In SPGK's Favor ...........20

          4.     The Restraint Is Not In The Public Interest ...............................21

          5.     The JOLs Cannot Show Irreparable Harm, Sufficiently Serious
               Questions Going To The Merits, And A Balance Of Hardships
               Tipping In Their Favor................................................................22

    D.     The Interests Of Creditors and Other Interested Entities  Will Be
          Sufficiently Protected If The Restraint Is Terminated ...........................23

V. CONCLUSION .......................................................................................................24

DOCS_NY:47467.14 78263/001

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*273 Lee Ave. Tenants Ass'n v. Steinmetz*, 2017 U.S. Dist. LEXIS 228086 (E.D.N.Y. Oct. 3, 2017) ................................................................................................................ 22

*A.V. by Versace, Inc.*, 1997 U.S. Dist. LEXIS 688 (S.D.N.Y. Jan. 28, 1997) ............................. 22

*ACLU v. Clapper*, 785 F.3d 787 (2d Cir. 2015) ........................................................... 15

*Amusement Indus. v. Citigroup Glob. Mkts. Realty Corp. (In re First Republic Grp. Realty, LLC)*, 421 B.R. 659 (Bankr. S.D.N.Y. 2009) ....................................................................... 15

*Bilalov v. Gref*, 2022 U.S. Dist. LEXIS 241527 (S.D.N.Y. Mar. 18, 2022) ................................. 17

*Frey v. Nigrelli*, 2023 U.S. Dist. LEXIS 65459 (S.D.N.Y. Apr. 13, 2023 ................................. 20

*GEOMC Co., Ltd. v. Calmare Therapeutics, Inc.*, 2021 U.S. Dist. LEXIS 172950 (D. Conn. Sep. 13, 2021) ................................................................................................... 10, 19

*Grupo Mexicano De Desarrollo v. All. Bond Fund*, 527 U.S. 308 (1999) ................... 3, 9, 10, 11

*Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738 (2d Cir. 1953) ................................... 22

*Hanson Trust PLC v. SCM Corp.*, 774 F.2d 47 (2d Cir. 1985) ................................................. 15

*Hodnett v. Medalist Partners Opportunity Master Fund II-A, L.P.*, 2021 U.S. Dist. LEXIS 27205 (S.D.N.Y. Feb. 12, 2021) ................................................................................ 16

*In re Alitalia-Linee Aeree Italiane, S.p.A.*, No. 08-14321-brl (Bankr. S.D.N.Y. Nov. 13, 2008) 13

*In re Beechwood RE*, 2019 Bankr. LEXIS 2077 (Bankr. S.D.N.Y. Jul. 10, 2019) ..................... 14

*In re Compania Mexicana de Aviacion, S.A.*, No. 10-14182-mg (Bankr. S.D.N.Y. Aug. 18, 2010) ......................................................................................................................... 13

*In re Innua Can., Ltd.*, 2009 Bankr. LEXIS 994 (Bankr. D.N.J. Mar. 25, 2009) ........................ 13

*In re Japan Airlines Corp.*, No. 10-10198-jmp (Bankr. S.D.N.Y. Jan. 28, 2010) ...................... 13

*In re MtGox Co., Ltd.*, No. 14-31229-sgj15 (Bankr. N.D. Tex. Mar. 10, 2014) ........................ 13

*In re Nortel Networks UK Ltd*, 538 B.R. 699 (Bankr. D. Del. 2015) ........................................ 14

*In re Pro-Fit Holdings Ltd.*, 391 B.R. 850 (Bankr. C.D. Cal. 2008) ........................................ 13

*In re SIVEC SRL*, 2011 Bankr. LEXIS 2368 (Bankr. E.D. Okla. June 15, 2011) ....................... 13

*Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70 (2d Cir. 1979) ............................ 23

*Marcus v. Las Uvas Valley Dairies (In re Las Uvas Valley Dairies)*, 2019 Bankr. LEXIS 1883 (Bankr. D.N.M. June 19, 2019) ........................................................................... 11

ii

*Monowise Ltd. Corp. v. Ozy Media, Inc.*, 2018 U.S. Dist. LEXIS 75312 (S.D.N.Y. May 3, 2018) ................................................................................................................................. 16

*Peterson v. Wells Fargo Bank, N.A. (In re Peterson)*, 2018 Bankr. LEXIS 590 (Bankr. D. Conn. Mar. 2, 2018) ................................................................................... 14, 22

*Sussman v. Crawford*, 488 F.3d 136 (2d Cir. 2007) ................................................... 15

*TomGal LLC v. Castano*, 2022 U.S. Dist. LEXIS 231415 (S.D.N.Y. Dec. 19, 2022) .......... 20, 21

*Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964 (2d Cir. 1995) ....................................... 16

*United States v. Gelzer*, 50 F.3d 1133 (2d Cir. 1995) .................................................... 18

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ..................................................... 20, 21

**Statutes**

11 U.S.C. § 105(a) ............................................................................................. 12

11 U.S.C. § 1519(e) ................................................................................... 3, 9, 14

11 U.S.C. § 1521(e) ................................................................................... 3, 9, 14

11 U.S.C. § 1522(a) ................................................................................ 4, 9, 23

11 U.S.C. § 1522(c) ............................................................................ 1, 3, 4, 8

11 U.S.C. § 362 ................................................................................................. 12

28 U.S.C. § 1334 ................................................................................................. 4

28 U.S.C. § 1410(3) ............................................................................................. 4

28 U.S.C. § 157 ................................................................................................... 4

28 U.S.C. § 157(b)(2)(P) ....................................................................................... 4

**Rules**

Fed. R. Bankr. P. 7065 .......................................................................................... 12

Fed. R. Bankr. P. 9013 ............................................................................................ 4

Fed. R. Civ. P. 65 ................................................................................................. 12

Fed. R. Evid. 901(a) ............................................................................................ 18

**Treatises**

Michael G. Williamson, *Practical Evidence Manual* (2021) ....................................... 18

DOCS_NY:47467.14 78263/001

Interested parties Shang Peng Gao Ke Inc. SEZC ("SPGK Cayman") and SPGK Pte Ltd ("SPGK Singapore," and together with SPGK Cayman, "SPGK"), by and through their undersigned counsel, hereby submit this combined motion and memorandum of law with accompanying declarations in support of their Motion Pursuant to 11 U.S.C. § 1522(c) to Terminate Restraint (the "Termination Motion").[2]

# I.
## PRELIMINARY STATEMENT

1.      Debtor in a foreign proceeding Ascentra Holding, Inc. ("Ascentra") is a solvent Cayman Islands company that is in no financial distress.  After entering a voluntary solvent liquidation in the Cayman Islands, in which creditors have no say or participation,[3] Ascentra initiated this chapter 15 proceeding for the primary purpose of restraining SPGK from access to funds unquestionably legally owned by SPGK.

2.      Here, the Court granted Ascentra a restraint of those funds based on Ascentra's assertions that those funds *really* belong to *it*, based on a claim it says it has under contract law pursuant to a purported "Cancellation Agreement" by which SPGK supposedly assigned all its assets to Ascentra in early 2018.  But Ascentra's Joint Official Liquidators ("JOLs") have no basis to authenticate the Cancellation Agreement, and no party to the Cancellation Agreement had *ever* made *any* effort to perform or demand performance under it.  Even as of today, the JOLs have not brought any proceeding to adjudicate their supposed claim.

3.      But now, years later, brandishing this supposed agreement, the JOLs took advantage of the highly expedited and foreign-debtor-favorable procedures of chapter 15 of title 11

---

[2]    This submission is without prejudice to any claims or defenses that SPGK may assert (including in the Cayman Proceeding), as to which SPGK reserves its rights.

[3]    SPGK has concurrently filed a motion to terminate the Recognition Order in this proceeding on the basis that Ascentra's Cayman Companies Act proceeding is not a proper subject for a recognition, as it is for a solvent company and is not a collective action for the benefit of creditors [ECF No. 37].

of the United States Code (the "<u>Bankruptcy Code</u>") to obtain a restraint on SPGK's funds. Those funds, amounting to more than $72 million, were derived solely from sales of products and software by SPGK in the People's Republic of China ("<u>PRC</u>"), held at SPGK's credit card payment processor, Planet Payment (the "<u>SPGK Planet Payment Funds,</u>"), prior to recognition on nothing other than their say-so.

4.      In response to the JOLs' "emergency" request (*Emergency Request for Provisional Relief Pursuant to Sections 1519 and 105(a) of the Bankruptcy Code* (the "<u>Emergency Request</u>," ECF No. 9), the Court issued an order (the "<u>Provisional Restraint Order</u>," ECF No. 17) provisionally restraining the SPGK Planet Payment Funds pursuant to section 1519 of the Bankruptcy Code on November 2, 2021. That restraint was embodied in the Court's order recognizing Ascentra's Cayman Islands proceeding on November 2, 2021 (the "<u>Recognition Order</u>," ECF No. 22) ¶ 9. For a year and a half, SPGK's money has been held in a non-interest-bearing bank deposit account, shrinking from inflation, while the JOLs have not sought a determination of their claimed right to the funds.

5.      SPGK's inability to receive a return on its $72 million, at a time of record inflation, has damaged SPGK by millions of dollars.

6.      In all this time, Ascentra's JOLs have not commenced any action in the Cayman Islands or in this proceeding to prove their purported entitlement to SPGK's money frozen at Planet Payment. Instead of taking appropriate actions as officers of the Cayman court and as foreign representatives in this Court to dissolve the restraint, the JOLs have allowed the baseless restraint to continue for no cognizable reason.

7.      SPGK has been patient. SPGK, in good faith, has given the JOLs time to bring their case, while its assets devalue in a high-inflation economy. But SPGK cannot stand by

2

any longer, while the JOLs sit back and allow SPGK's property to waste.  By this Termination
Motion, SPGK seeks to terminate the restraint pursuant to section 1522(c) of the Bankruptcy Code,
which provides that the Court may modify or terminate relief granted pursuant to sections 1519 or
1521 of the Bankruptcy Code "at the request of . . . an entity affected by relief" granted under
chapter 15.  11 U.S.C. § 1522(c).

8.      There are two grounds for termination.  The first is that, under the Supreme
Court's holding in *Grupo Mexicano de Desarrollo v. All. Bond Fund*, 527 U.S. 308, 333 (1999)
("*Grupo Mexicano*"), this Court does not have authority to restrain the funds of third party SPGK
absent a statutory or equitable basis.  Here, the JOLs' claim is solely for breach of contract,
compensable in money damages, and they do not hold a judgment.  That is not enough to support
the extraordinary remedy of an injuction.  Absent authority, the restraint must be terminated.

9.      Second, the standard for the grant of relief under sections 1519 and 1521 of
the Bankruptcy Code is the standard for the issuance of a preliminary injunction – a clear
likelihood of success on the merits, actual irreparable harm, and a balance of the equities favoring
the JOLs.  *See* 11 U.S.C. §§ 1519(e), 1521(e).  The JOLs can meet none of these requirements.

10.     Ascentra is not facing irreparable harm, as it had not sought injunctive relief
under the Cancellation Agreement for years, and its claim to the funds at Planet Payment, not
actually asserted in any jurisdiction, would be for monetary damages under a contract and would
not require injunctive relief.

11.     Further, given the JOLs' failure truthfully to present their lack of personal
knowledge and consequent inability to authenticate the supposed Cancellation Agreement,
Ascentra does not have a likelihood of success on the merits of its claims against SPGK.

3

12.     Finally, the balance of the equities tilts firmly in favor of SPGK, which has already lost millions of dollars from its inability to access and invest the funds while the Liquidators have not brought any claim to the funds.

13.     Section 1522(a) of the Bankruptcy Code mandates that the Court may only modify or terminate relief if the interests of creditors, debtors, and other interested entities are "sufficiently protected."  Here, any creditors of Ascentra have no need of protection since Ascentra is solvent.  SPGK's interests will be protected by terminating relief that should never have been granted against it and by restoring SPGK's dominion over its own property.  On the other side of the coin, Ascentra cannot be injured by the termination of relief it should never have been granted and the merits of which it has not pursued.  Even if the restraint is terminated, Ascentra would remain able to pursue claims against SPGK, should it decide to, in the Cayman Islands or elsewhere.  The interests of all parties are thus sufficiently protected by the termination of the restraint.

## II.
## JURISDICTION, VENUE, AND STATUTORY BASIS

14.     The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).  Subject to SPGK's motion to dismiss this chapter 15 proceeding filed simultaneously with the instant motion, venue for this matter is proper in this district pursuant to 28 U.S.C. § 1410(3) as the Recognition Proceeding is pending in this Court.

15.     The statutory basis for the relief requested in this Termination Motion is section 1522(c) of the Bankruptcy Code and Rule 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4

**III.**
**STATEMENT OF FACTS AND PROCEDURAL HISTORY**[4]

16.     Ascentra, prior to its shareholders resolving to put it into voluntary liquidation in the Cayman Islands, was engaged (including through subsidiaries) in the sale of health and beauty products and software and those products' distribution in the Far East, including [Japan, Taiwan, Singapore, Hong Kong, and the PRC].  In 2015, one of Ascentra's principals, Martin Matthews, was prosecuted in Hong Kong on the allegation that Ascentra (then named Interush Holdings, Inc.) was a multi-level marketing scheme.  Matthews was ultimately acquitted. *See generally Declaration of Graham Robinson in Support of Chapter 15 Petition for Recognition as Foreign Main Proceeding and Emergency Application for Provisional Relief* ("Robinson Decl."), ECF No. 4.

17.     Notably, although the JOLs sought the restraint of over $70 million belonging to SPGK, the JOLs nowhere explain SPGK's purpose or business, or how the money actually ended up at Planet Payment.

18.     In fact, SPGK was formed by Motohiko Homma to operate in the PRC separately from Ascentra.  Declaration of Ryunosuke Yoshida ("Yoshida Decl.") ¶¶ 27–31.  Thus, SPGK purchased product from Ascentra's production subsidiaries and vendors, and it distributed and sold Ascentra products in the PRC through its website and a network of affiliates.  Yoshida Decl. ¶ 34.  One consequence of the way that SPGK was structured was that it would take in payment from individual PRC customers by credit card.  Those payments would be processed through a credit card payment processor in the United States, Planet Payment Inc. ("Planet

---

[4]     A capitalized term used but not defined in this Statement of Facts shall have the meaning ascribed to it in the balance of this Termination Motion, and all facts adverted to herein are supported by record citations in the balance of this Termination Motion.

Payment"). Yoshida Decl. ¶¶ 38–39. The credit card processing agreement is between Planet Payment and SPGK Pte. Ltd. Yoshida Decl. ¶ 40 & Ex. 5.

19.     Mr. Homma was the sole owner of SPGK (through a company he owned called Growth Today). Mr. Homma sold SPGK's parent entity and his interest in Ascentra to Mr. Yoshida, who had worked at Ascentra and served as a director.

20.     SPGK's operations in the PRC were successful, generating significant net income. *See* Robinson Decl. ¶ 17 & Ex. F.

21.     Ultimately, there was substantial dissension among Ascentra's principals. Robinson Decl. ¶ 19. On June 1, 2021, by unanimous written resolutions, Ascentra's shareholders resolved to place the Company into voluntary liquidation and appointed Mr. Robinson as voluntary liquidator. On July 2, 2021, Mr. Robinson as voluntary liquidator presented a petition (the "Cayman Petition") to bring the voluntary liquidation under the supervision of the Grand Court of the Cayman Islands (the "Cayman Court"). On September 17, 2021, the Cayman Court made a supervision order (the "Supervision Order") in respect of Ascentra. The JOLs were appointed on that date pursuant to the Supervision Order. On September 23, 2021, the JOLs submitted a certification that Ascentra "should be treated as solvent" for purposes of the Companies Act. Declaration of Andrew Johnstone ("Johnstone Decl.") Ex. 1. Importantly, there is no question that Ascentra is solvent, and creditors (if any) play no part in this solvent liquidation.

22.     The JOLs instituted this chapter 15 proceeding on October 27, 2021. On October 28, 2021, the JOLs claimed to be seeking provisional relief under Bankruptcy Rule 7065 and sections 105, 362, and 1519 of the Bankruptcy Code restraining SPGK's funds at Planet Payment. Emergency Request ¶ 32.

23.     The JOLs asserted entitlement to those funds on the basis of two supposed agreements between Ascentra and SPGK.  The first, a Memorandum of Understanding dated November 3, 2016 (the "MOU," Robinson Decl. Exh. D), provided for SPGK's remittance of funds to Ascentra in return for exclusive distribution rights in the PRC.  But the JOLs themselves concede that the MOU was never put into effect and was abandoned by the parties.  Robinson Decl. ¶ 15; *see also* Yoshida Decl. ¶ 43 & Ex. 6.

24.     The JOLs thus rely on a different supposed agreement, the "Cancellation Agreement" (Robinson Decl. Ex. E), dated April 3, 2018.  The Cancellation Agreement purports to "cancel" the MOU and require SPGK to turn over all of its revenues and assets to Ascentra.  But the JOLs, who have no personal knowledge of the supposed Cancellation Agreement, did not disclose to the Court that, in the time since the Cancellation Agreement's supposed inception, SPGK had never performed under the Cancellation Agreement, and Ascentra had never asked for performance.  Yoshida Decl. ¶ 47.

25.     In fact, Mr. Yoshida had been removed as a director of Ascentra on March 30, 2018, during a brief interregnum in which the Cancellation Agreement was purportedly created.  Yoshida Decl. ¶ 42.  Mr. Yoshida, a director of Ascentra and of SPGK after the supposed inception of the Cancellation Agreement had never heard of the supposed Cancellation Agreement until shortly before the JOLs commenced this chapter 15 proceeding.  Yoshida Decl. ¶ 46.  The business relationship between Ascentra and SPGK did not change after April 2018.  Yoshida Decl. ¶ 47.

26.     On the basis of Mr. Robinson's declaration, made without personal knowledge, and the incomplete and inaccurate representations concerning the supposed

7

Cancellation Agreement, the Court issued provisional relief restraining, under section 1519 of the

Bankruptcy Code, SPGK's funds at Planet Payment.  Provisional Restraint Order ¶ 4.

27.     That relief was subsequently incorporated in the Recognition Order.

Specifically, the Recognition Order continues the preliminary relief of the Provisional Restraint

Order, forbidding the transfer of funds at Planet Payment pending further order of the Court, which

was presumably intended to give effect to an order based on a final disposition by the courts of the

Cayman Islands.  The Recognition Order provides:

> 9. Ascentra and SPGK shall not transfer any funds in credit card processing
> accounts maintained by Planet Payment Inc. or any of its affiliates in the name of
> SPGK (the "**Planet Payment Funds**") without further order of this Court.
> Nothing contained in this Order shall constitute a finding or determination
> regarding the existence or validity of Ascentra's claims to a property interest in
> the Planet Payment Funds or any other assets or property in which Ascentra has
> asserted a claim or interest.

Recognition Order ¶ 9.

28.     The JOLs have not brought any proceeding in the Cayman Islands to resolve

their claim against SPGK with respect to the SPGK Planet Payment Funds.  Johnstone Decl. ¶ 9.

Planet Payment is holding the SPGK Planet Payment Funds in a non-interest-bearing deposit

account in a United States bank.  Yoshida Decl. ¶ 3 & Ex. 1.

### IV.
### ARGUMENT

**A.     The Standard For Termination Of Chapter 15 Relief**

29.     Section 1522(c) of the Bankruptcy Code provides:

> The court may, at the request of the foreign representative or an entity affected by
> relief granted under section 1519 or 1521, or at its own motion, modify or
> terminate such relief.

11 U.S.C. § 1522(c).

8

30.      SPGK, whose property has been restrained pursuant to the Court's orders, is unquestionably an "entity affected by the relief granted."

31.      Section 1522(a) of the Bankruptcy Code provides that the Court "may modify or terminate relief under subsection (c), only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected."  11 U.S.C. § 1522(a).

32.      Here, the Court was without authority to grant the relief of a preliminary injunction, Ascentra cannot meet the substantive standard for issuance of the relief of restraining the SPGK Planet Payment Funds, and the interests of creditors and other interested entities will be protected if the restraint is terminated.

## B.      The Restraint Should Be Vacated As Outside This Court's Authority

33.      Ascentra's claim – which it has not brought for determination in the courts of the Cayman Islands – is that SPGK has breached the Cancellation Agreement.  But a bare (indeed unstated) claim of breach of contract does not give United States courts authority to issue preliminary injunctions restraining assets.  *Grupo Mexicano*, 527 U.S. at 333.[5]

34.      In *Grupo Mexicano*, the Supreme Court addressed creditors' efforts to restrain assets of a Mexican debtor.  Noteholder creditors filed suit against the debtor in this District for breach of contract, and they sought and received a preliminary injunction restraining the debtor from transferring certain assets.  *Id.* at 312–13.  The Second Circuit affirmed the grant of the injunction.  *Id.* at 313.

35.      The Supreme Court reversed, finding that the grant of a preliminary injunction restraining transfer of assets was historically limited to assets of a judgment debtor, not

---

[5]      Sections 1519(e) and 1521(e) of the Bankruptcy Code each provide that "[t]he standards, procedures and limitations applicable to an injunction shall apply to relief under [the applicable section]."  11 U.S.C. §§ 1519(e), 1521(e).

9

a mere defendant on a contract claim. That was based on "the substantive rule that a general creditor (one without a judgment) had no cognizable interest, either at law or in equity, in the property of his debtor, and therefore could not interfere with the debtor's use of that property." *Id.* at 319–20. The Supreme Court held on that basis that the district courts' injunctive power did not extend to granting a preliminary injunction restraining assets of other than a judgment debtor absent statutory authorization. Instead, "federal courts in this country have traditionally applied the principle that courts of equity will not, as a general matter, interfere with the debtor's disposition of his property at the instance of a nonjudgment creditor." *Id.* at 329. The Supreme Court also recognized a basis for this policy, holding: "Because such a remedy was historically unavailable from a court of equity, we hold that the District Court had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages." *Id.* at 333.

36.    Courts in the Second Circuit have applied the holding in *Grupo Mexicano*. *See, e.g.*, *GEOMC Co., Ltd. v. Calmare Therapeutics, Inc.*, No. 3:14-cv-01222 (VAB), 2021 U.S. Dist. LEXIS 172950, at *11–12 (D. Conn. Sep. 13, 2021) (internal quotation marks omitted) (denying a request for an injunction based on the holding in *Grupo Mexicano* and noting that "[c]ourts in the Second Circuit generally have interpreted *Grupo* to stand for the principle that courts cannot issue preliminary injunctions based solely on the insolvency of debtors where the plaintiffs' underlying claims primarily seek monetary damages").

37.    The holding in *Grupo Mexicano* applies to the bankruptcy courts:

> [T]he Bankruptcy Code and Rules do not provide for pre-judgment remedies greater than those available under the Federal Rules of Civil Procedure and/or other federal law. Bankruptcy Rule 7065 allows bankruptcy courts to enter injunctions, but clearly does not give bankruptcy courts any powers denied to district courts under *Grupo Mexicano*. The Bankruptcy Code gives trustees several "strong arm" powers and statutory rights of recovery. *See,*

10

*e.g.*, §§ 542, 544, 545, 547, 548, and 549.  Claims under these Code sections must be brought by adversary proceeding, to which, in general, the Federal Rules of Civil Procedure apply.  Together, the Bankruptcy Code and Rules give bankruptcy trustees powerful tools to collect or recover estate assets and pay creditors.  *They do not provide, however, for pre-judgment remedies such as the right to an injunction tying up a defendant's assets.*

*Marcus v. Las Uvas Valley Dairies (In re Las Uvas Valley Dairies)*, No. 17-12356-t11, 2019 Bankr. LEXIS 1883, at *15 (Bankr. D.N.M. June 19, 2019) (emphasis added).  In *Las Uvas Valley Dairies*, the liquidating trustee sought to restrain the defendant, a general partner of the debtor, from transferring assets pending judgment in litigation on various theories.  *Id.* at *5.  The bankruptcy court found that, under *Grupo Mexicano*, it did not have the power to do so and denied the restraint.  *Id.* at *16–17.

38.     If anything, the holding in *Grupo Mexicano* is even more strongly applicable here than in *In re Las Uvas Valley Dairies*.  Here, the JOLs sought and obtained a restraint against property that does not belong to the debtor and that has never been in the possession of the debtor.  The only basis for that restraint is a purported contract, from years before, upon which no party ever acted.  Indeed, the JOLs had not at the time they sought and obtained the restraint, and to this day have not, brought an action here or in the Cayman Islands actually asserting any claim against SPGK in respect of the SPGK Planet Payment Funds.  And even if they had brought an action, on its face such a claim would be legal, not equitable.  The restraint, imposing significant burden and losses on SPGK, is nothing but a free option for the JOLs.

39.     The Supreme Court recognized that bankruptcy and fraudulent transfers may represent exceptions to its holding in *Grupo Mexicano*.  *Grupo Mexicano*, 527 U.S. at 320 & n.4.  But there is no bankruptcy purpose to the restraint here, and no claim of any fraudulent transfer could be or has been asserted by the JOLs.

11

40.    In fact, the JOLs' assertion in seeking the restraint, that it is somehow necessary to "ensure an orderly administration of Ascentra's financial affairs under the Cayman Proceeding in a manner that protects all stakeholders," Emergency Request ¶ 32, is deeply misleading.   The only "stakeholders" that the JOLS are seeking to protect are Ascentra's shareholders, not its creditors.   The JOLs did not disclose to this Court that they had previously certified to the Cayman Court that Ascentra "should be treated as solvent, for purposes of section 110(4) of the Companies Act and CWR Order 8 and 9."  Johnstone Decl. ¶ 6 & Ex. 1.  Creditors play no role on the Liquidation Committee, only shareholders.[6]    Johnstone Decl. ¶¶ 7–8 & Exs. 2, 3.  Indeed, Ascentra may not have any meaningful creditors.  As the JOLs told the Court in seeking recognition:

> Ascentra's main liabilities as of December 31, 2021, include the costs incurred by the Liquidators and certain ordinary course operating expenses for storage and maintenance of Ascentra's information until such time the Liquidators complete their investigation.

Robinson Decl. ¶ 18.   The JOLs have taken advantage of and weaponized this chapter 15 proceeding to obtain an injunction against SPGK where they have not even asserted any claim in any court to the assets in question, and where the conflict is, at root, only an intramural shareholder dispute that has no impact on Ascentra's creditors.  Ascentra's languid pursuit of the assets of a mere contract counterparty has no bankruptcy purpose.

41.    The JOLs' asserted legal basis for the restraint is, at best, somewhat confused, as they cite Federal Rule of Civil Procedure 65/Bankruptcy Rule 7065 as well as sections 362 and 105(a) of the Bankruptcy Code.  Emergency Request at 1–2.  Nonetheless, the JOLs'

---

[6]    *See Motion of Shang Peng Gao Ke Inc. SEZC and SPGK Pte Ltd Pursuant to 11 U.S.C. §§ 1517(d) and 1520(c) for an Order Terminating the Recognition Order*, filed June 30, 2023 (ECF # __) ¶ 28.

12

application seems primarily to rely on applying the automatic stay of section 362 of the Bankruptcy Code to the SPGK Planet Payment Funds. *See, e.g.*, Emergency Request ¶¶ 1, 15, 29.

42. But none of the cases that the JOLs cite in support of the extension of the automatic stay purported to freeze funds in the bank of a nondebtor third party; those cases all relate to pending litigation or the general application of the automatic stay. *See In re Pro-Fit Holdings Ltd.*, 391 B.R. 850, 854–55 (Bankr. C.D. Cal. 2008) (application for provisional relief "under § 1519 to apply § 362 to stay the enforcement of a U.S. district court order" attaching the debtors' assets); *In re SIVEC SRL*, No. 11-80799-TRC, 2011 Bankr. LEXIS 2368, at *2 (Bankr. E.D. Okla. June 15, 2011) (motion to impose the automatic stay to stay a jury trial); *In re Innua Can., Ltd.*, No. 09-16362 (DHS), 2009 Bankr. LEXIS 994, at *5–6 (Bankr. D.N.J. Mar. 25, 2009) (motion for provisional relief to impose the automatic stay "on any and all actions," including application of § 362 "to protect the Foreign Debtors' assets located in the United States"); *In re Compania Mexicana de Aviacion, S.A.*, No. 10-14182-mg, ECF No. 140 ¶ 2 (Bankr. S.D.N.Y. Aug. 18, 2010) (application for provisional relief to impose the automatic stay on "the commencement or continuation of any action or proceeding in the United States against Mexicana"); *In re Japan Airlines Corp.*, No. 10-10198-jmp, ECF No. 38 ¶ 2 (Bankr. S.D.N.Y. Jan. 28, 2010) (application for provisional relief to impose the automatic stay on "[t]he commencement or continuation of any action or proceeding in the United States against the Debtors"); *In re Alitalia-Linee Aeree Italiane, S.p.A.*, No. 08-14321-brl, ECF No. 11, at 4 (Bankr. S.D.N.Y. Nov. 13, 2008) (application for provisional relief including general application of the automatic stay); *In re MtGox Co., Ltd.*, No. 14-31229-sgj15, ECF No. 13 ¶ 1 (Bankr. N.D. Tex. Mar. 10, 2014) (same).

DOCS_NY:47467.14 78263/001

43.     This court does not have authority to enjoin SPGK from dealing with its own assets.   The relief against SPGK restraining the funds held by Planet Payment should be vacated.

**C.      The Restraint Should Be Vacated For
Failing To Meet The Injunction Standard**

44.     By statute, the chapter 15 standard for the issuance of the relief granted to Ascentra is that for the grant of an injunction.   Sections 1519(e) and 1521(e) of the Bankruptcy Code each provide that "[t]he standards, procedures, and limitations applicable to an injunction shall apply to relief" set out under each respective section.   11 U.S.C. §§ 1519(e), 1521(e); *see also In re Beechwood RE*, No. 19-11560 (MG), 2019 Bankr. LEXIS 2077, at *4–5 (Bankr. S.D.N.Y. Jul. 10, 2019) ("In deciding whether to grant provisional relief in this chapter 15 case under section 1519(a) of the Bankruptcy Code, . . . the Court applies the standards for issuance of a preliminary injunction to determine whether the provisional relief should be granted."); *In re Nortel Networks UK Ltd*, 538 B.R. 699, 704–05 (Bankr. D. Del. 2015) (applying the preliminary injunction standard in making a determination under section 1521(e) of the Bankruptcy Code).

45.     The standard for the grant of an injunction in the Second Circuit is well-established:

> [A] party seeking a preliminary injunction must show that either, "[the movant] is likely to succeed on the merits; that [the movant] is likely to suffer irreparable harm in the absence of preliminary relief; that the balance of equities tips in [the movant's] favor; and that an injunction is in the public interest," or alternatively must, "show irreparable harm and either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."

*Peterson v. Wells Fargo Bank, N.A. (In re Peterson)*, No. 10-23429 (AMN), 2018 Bankr. LEXIS 590, at *4 (Bankr. D. Conn. Mar. 2, 2018) (alterations in original) (quoting *ACLU v. Clapper*, 785

14

F.3d 787, 825 (2d Cir. 2015)) (denying a request for an injunction for failure to show a likelihood
of irreparable harm or success on the merits).

46.      The threshold for the grant of injunctive relief is high: "The Second Circuit
recognizes a preliminary injunction as 'one of the most drastic tools in the arsenal of judicial
remedies' that should be granted only in extraordinary circumstances." *Amusement Indus. v.
Citigroup Glob. Mkts. Realty Corp. (In re First Republic Grp. Realty, LLC)*, 421 B.R. 659, 677
(Bankr. S.D.N.Y. 2009) (quoting *Hanson Trust PLC v. SCM Corp.*, 774 F.2d 47, 60 (2d Cir.
1985)).  The movant must carry its burden of persuasion by "a *clear showing*." *Id.* (emphasis in
original) (citing *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007)).

47.      Ascentra cannot satisfy any of the requisites for issuance of an injunction,
and the restraint on transfer of the Planet Payment Funds should therefore be terminated.

### 1.      The JOLs Cannot Demonstrate Irreparable Harm

48.      In the Second Circuit, "irreparable harm is the single most important
prerequisite for the issuance of a preliminary injunction." *Id.* at 678.  The movant must
demonstrate a likelihood of irreparable harm "before the other requirements for the issuance of an
injunction will be considered." *Id.*  The injury must be neither remote nor speculative, but actual
and imminent. *Id.* (internal quotation marks omitted).  "An irreparable harm is one that cannot be
remedied through a monetary award." *Id.*

49.      First, Ascentra's delay in seeking preliminary relief mandates a finding as
a matter of law that Ascentra cannot demonstrate that it will suffer irreparable harm absent
injunctive relief.  It is logical to expect that had Ascentra had any serious concern that it would, in
fact, suffer irreparable harm in the absence of an injunction, it would have moved swiftly and years
ago to obtain such relief.

50.     Ascentra's and the JOLs' delay in bringing any effort to obtain injunctive relief with respect to SPGK's funds at Planet Payment, for years after the Cancellation Agreement was purportedly entered into in 2018, mandates a finding that Ascentra will not be irreparably harmed by the termination of relief.  "Delay in seeking injunctive relief 'may, standing alone, preclude the granting of preliminary injunctive relief, because the failure to act sooner undercuts the sense of urgency' upon which the availability of the remedy is predicated.  *Hodnett v. Medalist Partners Opportunity Master Fund II-A, L.P.*, No. 1:21-cv-00038-MKV, 2021 U.S. Dist. LEXIS 27205, at *15 (S.D.N.Y. Feb. 12, 2021) (quoting *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995)).  Thus, "[t]here is no bright-line rule for how much delay is too much, but courts in this Circuit 'typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months.'"  *Id.* (quoting *Monowise Ltd. Corp. v. Ozy Media, Inc.*, No. 17-CV-8028 (JMF), 2018 U.S. Dist. LEXIS 75312, at *2 (S.D.N.Y. May 3, 2018)).  Here, the "unexplained delay" was three and a half years.

51.     In addition, Ascentra has not brought *any* claim against SPGK in respect of the Cancellation Agreement, much less an equitable one.  Accordingly, there is no reason to credit any assertion by Ascentra that it might, at some vague point in the unknown future, bring an equitable claim, much less that equitable relief in respect of the SPGK Planet Payment Funds would be cognizable from the Cancellation Agreement.  All that could conceivably be at issue here is SPGK's alleged liability for breach of contract.  Further, Ascentra has not even tried to produce evidence that a judgment against SPGK could not be satisfied in another forum, nor is there any reason that this Court should be particularly sympathetic to one foreign company's argument that another company with the same domicile cannot be effectively pursued in the courts of their country of formation.  Nor do the JOLs contend that SPGK is insolvent.

52.     Moreover, the mere possibility of the transfer of funds out of the United States does not present likely irreparable harm by dissipation of assets where:  (a) the JOLs do not contend that SPGK is insolvent; (b) the JOLs cannot show, over a period of years, that SPGK has dissipated funds; and (c) SPGK has actively engaged with the JOLs in the Cayman Islands and elsewhere.  *See Bilalov v. Gref*, No. 20 Civ. 9153 (AT), 2022 U.S. Dist. LEXIS 241527, at *6 (S.D.N.Y. Mar. 18, 2022) ("conclusory assertions do not sufficiently demonstrate that Defendants, who have appeared in this action and are actively litigating this case, are likely to dissipate their assets").

**2.     The JOLs Cannot Demonstrate A Clear
          Likelihood Of Success On The Merits**

53.     Nor can the JOLs show that they have a clear likelihood of success on the merits of their request for an injunction restraining the SPGK Planet Payment Funds.

54.     First, for the reasons set out in SPGK's motion to dismiss this chapter 15 proceeding, filed contemporaneously herewith, this proceeding is likely to be dismissed.  Thus the JOLs' basis for claiming a likelihood of success on the merits in seeking relief – that recognition was likely to be granted (ECF No. 9 at ¶¶ 19–25) – turns out to be inaccurate.

55.     Second, as to a claim for injunction on the substantive matter here, the JOLs lack personal knowledge of the Cancellation Agreement or the facts and circumstances concerning its drafting, execution, or the reasons why, for years, there was no effort by Ascentra to enforce the supposed contract.

56.     The JOLs therefore have never had a basis to authenticate the Cancellation Agreement under Federal Rule of Evidence 901 and did not disclose their lack of knowledge to the Court in seeking relief.  Because of this, the Cancellation Agreement cannot be the foundation

17

for the grant of an injunction under sections 1519 and 1521 of the Bankruptcy Code, or a preliminary injunction generally.

57.     Federal Rule of Evidence 901(a) provides:  "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  It is the proponent's burden to authenticate evidence by a preponderance of the evidence.  *United States v. Gelzer*, 50 F.3d 1133, 1140–41 (2d Cir. 1995).

58.     The JOLs have failed this basic requirement in that they did not introduce the testimony of anyone with personal knowledge concerning the Cancellation Agreement.  That the JOLs after appointment found a document at the back of a (literal or metaphorical) file drawer does not make it a binding and effective contract.  *See* Michael G. Williamson, *Practical Evidence Manual*  (2021),  at  2023  (available  at  [http://www.flmb.uscourts.gov/judges/tampa/williamson/practical_evidence.pdf](http://www.flmb.uscourts.gov/judges/tampa/williamson/practical_evidence.pdf)))  (noting  that  "I  found  it  in  the  files"  is  an  insufficient predicate for authentication).  The absence of testimony of someone with knowledge, and the absence of any evidence of performance of the Cancellation Agreement, militate strongly against admitting to the Cancellation Agreement into evidence.

59.     Notably, the Cancellation Agreement has a number of irregularities.  For example, it does not contain Japanese and English provisions together, unlike the MOU that it purportedly replaced.  Only two of the three signatories initialed each page.  And the signatories (Ascentra, SPGK Cayman, and Homma) do not match the parties identified at the beginning of the document (Ascentra, Matthews, Homma, Growth Today, Inc.).  The absence of testimony of someone with knowledge, the absence of any evidence of performance of the Cancellation Agreement, and the facial irregularities of the document militate strongly against giving credence

18

to the Cancellation Agreement simply because it looks somewhat like a contract.  The Cancellation

Agreement may bear some resemblance to a duck, but it neither walks nor quacks like one.

60.    Even were the Court to deem the Cancellation Agreement somehow

authenticated, the Court should be profoundly dubious that the Cancellation Agreement was ever

effective, that anyone ever attempted to enforce it, or that it was never waived or otherwise

abandoned.  The absence of any support for the JOLs' assertions concerning the Cancellation

Agreement means that they cannot be said to have a clear likelihood of success on the merits of an

unauthenticated and highly disputed contract.  *See GEOMC*, 2021 U.S. Dist. LEXIS 172950, at

*16 (stating that the court cannot find a likelihood of success where it does not have

sufficient information).

61.    The JOLs reported no facts concerning the creation, execution, or any

course of conduct under the supposed Cancellation Agreement in seeking relief.  Of course, they

themselves are without personal knowledge of the origins and parties' actions in respect of the

Cancellation Agreement, with Mr. Robinson only having been selected as voluntary liquidator of

Ascentra on May 28, 2021.  Robinson Decl. ¶ 22.  Robinson states that Ascentra and SPGK entered

into the Cancellation Agreement on April 3, 2018, *id.* ¶ 15, more than three years prior to his

appointment.  Contrary to his representation that he would make clear which statements in his

declaration were not made upon personal knowledge, *id.* ¶ 6, Mr. Robinson did not disclose that

he in fact *lacked* personal knowledge of the facts and circumstances of the Cancellation

Agreement, and he did not disclose any basis for his statements regarding the

Cancellation Agreement.

62.    Moreover, while he describes the hearsay that he knows of "some tension"

among Ascentra's principals in 2018, *id.* ¶ 20, Mr. Robinson does not explain the relationship

19

between that "tension" and the course of events around the supposed Cancellation Agreement or its evident non-enforcement, including Mr. Matthews's temporary removal of other directors of Ascentra. In that regard, it is telling that the JOLs submitted no statement from anyone at Ascentra with personal knowledge of the principals' "tensions" or the Cancellation Agreement.

63.     Ascentra does not have a likelihood of success on the merits for the additional reason that are no references to Ascentra in the agreement between SPGK Singapore and Planet Payment (the "<u>PP Agreement</u>"), which was executed by Mr. Yoshida. *See* Yoshida Decl. ¶¶ 40–41 & Ex. 5. Ascentra was not a party to the PP Agreement, and there is simply no basis for a determination that it has any rights to funds held by Planet Payment pursuant to that agreement.

64.     Without a likelihood of success of their unsupported assertions concerning the supposed Cancellation Agreement, the JOLs have no basis to seek relief against SPGK. Therefore, they cannot be said to have the "clear likelihood of success on the merits" to support an injunction.

### 3.     The Balance Of The Equities Weighs In SPGK's Favor

65.     The balance of the equities also favors SPGK. In balancing the equities, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *TomGal LLC v. Castano*, No. 22-CV-9516 (JGK), 2022 U.S. Dist. LEXIS 231415, at *15 (S.D.N.Y. Dec. 19, 2022) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)) (denying an injunction based on the finding that the balance of equities favored the defendant). The balance of equities cannot favor a movant who does not show a likelihood of success of the merits. *Frey v. Nigrelli*, No. 21 CV 05334 (NSR), 2023 U.S. Dist. LEXIS 65459, at *12 (S.D.N.Y. Apr. 13, 2023).

66.     SPGK has been and continues to be tangibly harmed by the restraint on the SPGK Planet Payment Funds, which have lost value to inflation over the last sixteen months.

67.     Ascentra, by contrast, faces no cognizable harm from the removal of a restraint to which it has no right either jurisdictionally (under *Grupo Mexicano*), which it has not diligently pursued, and as to which it does not have a clear likelihood of success.  As set forth above, it is free to pursue its claims in other fora and to seek proper remedies under proper law in proper places.  Moreover, even in the unlikely event it were to succeed on the merits, there is no basis for concern that Ascentra would be unable to collect on a Cayman Islands judgment against SPGK.

### 4.     The Restraint Is Not In The Public Interest

68.     "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *TomGal LLC*, 2022 U.S. Dist. LEXIS 231415, at *15 (quoting *Winter*, 555 U.S. at 24).

69.     Here, arguably the public consequences to the restraint are, as to the dispute between the parties, minimal.  This is a private contract dispute over the disposition of a sum of money between two non-U.S. parties.  That dispute does not itself implicate the public interest. Any public interest in the enforcement of contracts generally is also minimal here, where the authenticity of a claimed contract is disputed and indeed is not the subject of a substantive proceeding anywhere in the world.

70.     However, the use of chapter 15 to pursue a questionable claim in aid of a questionably-qualified foreign proceeding does implicate public policy and weighs against Ascentra.  SPGK has moved contemporaneously to dismiss this proceeding because the Cayman Islands liquidation of a solvent entity, with no collective creditor involvement, does not qualify as a foreign proceeding appropriate for recognition under chapter 15.  And here, the JOLs have

21

abused the summary and express nature of chapter 15 recognition to obtain a restraint on funds on a questionable contract, using a procedure (seeking a preliminary injunction, not an attachment) as to which the Court does not have authority, all while misleading the Court as to the facts of the supposed Cancellation Agreement and Ascentra's financial state.  The public interest in the integrity of the process of recognition of foreign bankruptcy proceedings and providing appropriate assistance to debtors in foreign proceedings weighs against Ascentra.

**5.      The JOLs Cannot Show Irreparable Harm, Sufficiently Serious Questions Going To The Merits, And A Balance Of Hardships Tipping In Their Favor**

71.     SPGK has shown above that Ascentra cannot satisfy the primary test for issuance of an injunction.  It cannot satisfy the alternative test, a showing of " irreparable harm and either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief" either.  *See Peterson*, 2018 Bankr. LEXIS 590, at *4. Sufficiently serious questions must be "so serious, substantial, difficult and doubtful as to make them a fair ground for litigation for more deliberate investigation." *273 Lee Ave. Tenants Ass'n v. Steinmetz*, No. 16-CV-6942 (WFK) (CLP), 2017 U.S. Dist. LEXIS 228086, at *16–17 (E.D.N.Y. Oct. 3, 2017) (quoting *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953)).

72.     For the reasons set out above, the JOLs cannot show a clear likelihood of success on the merits.  For the same reasons, they have not raised "sufficiently serious" questions going to the merits either. *A.V. by Versace, Inc.*, No. 96 Civ. 9721 (PKL), 1997 U.S. Dist. LEXIS 688, at *8 (S.D.N.Y. Jan. 28, 1997).  Frankly, if they could have raised sufficiently serious questions, they should have brought them to the Cayman Island courts years ago.  That Ascentra has not to date sought a determination of SPGK's putative liability under the supposed

Cancellation Agreement, with, as JOLs themselves say, over $200 million at stake, is the clearest indicator of their own assessment of the merits. The JOLs' conduct belies their words. The JOLs have not demonstrated serious questions going to the merits.

73.     For the same reasons as set forth above, the JOLs have not shown that the balance of hardships tips heavily in their favor. Under the alternative basis for a grant of injunctive relief, if the merits are weaker the hardship must be stronger. *See, e.g.*, *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 74 (2d Cir. 1979) ("In my view, the nature and extent of the threat of irreparable injury required for relief in any given case will vary according to the likelihood of success on the merits; the weaker the case on the merits, the stronger must be the showing of threat of irreparable injury."). But the hardship to Ascentra is non-existent. Ascentra's long delay in seeking injunctive relief itself negates any claim of irreparable harm or hardship. Even setting delay aside, Ascentra will suffer no cognizable irreparable harm or hardship if injunctive relief is denied.

**D.      The Interests Of Creditors and Other Interested Entities**
**         Will Be Sufficiently Protected If The Restraint Is Terminated**

74.     Section 1522(a) of the Bankruptcy Code provides that the Court "may modify or terminate relief under subsection (c), only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a).

75.     The JOLs have admitted that there are essentially no meaningful creditors of Ascentra, *see* Robinson Decl. ¶ 18, and, given that Ascentra is solvent, such creditors as might exist will not be affected by the termination of the restraint.

76.     Termination of the restraint will protect SPGK's interests, which have been harmed by the imposition of a restraint without authority that fails to meet the standards for its issuance.

77.     Ascentra's interests will also be sufficiently protected in the event of termination of the restraint.  Ascentra's ability to bring a substantive case (if it even can) against SPGK will not be affected by the termination of the restraint.  Ascentra has no cognizable interest in maintenance of an injunction that is outside the Court's authority or to which it had no right under the legal standard for its issuance.  Ascentra would remain free to pursue SPGK and its assets pre- or post-judgment in appropriate fora.  That is its only legitimate interest, and it will not be affected by the termination of the restraint.

## V.  CONCLUSION

For the reasons set forth herein, the Court should terminate the restraint on the SPGK Planet Payment Funds and grant such other and further relief that the Court deems just and proper.

Dated: June 30, 2023
New York, New York

Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Jeffrey M. Dine*
Robert J. Feinstein
Bradford J. Sandler
Jeffrey M. Dine
780 Third Avenue, 34th Floor
New York, New York 10017
Telephone:     (212) 561-7700
Facsimile:     (212) 561-7777
E-Mail:        rfeinstein@pszjlaw.com
               bsandler@pszjlaw.com
               jdine@pszjlaw.com

*Counsel for Shang Peng Gao Ke Inc. SEZC and*
*SPGK Pte. Ltd.*

24