# EXHIBIT 2

## STATUTORY INSTRUMENTS

### 2009 No. 1379

## CARIBBEAN AND NORTH ATLANTIC TERRITORIES

# The Cayman Islands Constitution Order 2009

| | |
|---|---|
| *Made -  -   -   -   -* | *10th June 2009* |
| *Laid before Parliament* | *17th June 2009* |
| *Coming into force in accordance with section 1(2)* | |



£10.50

STATUTORY INSTRUMENTS

## 2009 No. 1379

## CARIBBEAN AND NORTH ATLANTIC TERRITORIES

## The Cayman Islands Constitution Order 2009

| | |
|---|---|
| *Made* - - - - | *10th June 2009* |
| *Laid before Parliament* | *17th June 2009* |
| *Coming into force in accordance with section 1(2)* | |

At the Court at Buckingham Palace, the 10th day of June 2009

Present,

The Queen's Most Excellent Majesty in Council

Her Majesty, in exercise of the powers conferred upon Her by sections 5 and 7 of the West Indies Act 1962(**a**) and of all other powers enabling Her to do so, is pleased, by and with the advice of Her Privy Council, to order, and it is ordered, as follows:

**Citation and commencement**

1.—(1) This Order may be cited as the Cayman Islands Constitution Order 2009.

(2) This Order shall come into force on such day as the Governor, acting in his or her discretion, shall appoint by proclamation published in a Government Notice.

**Interpretation**

2.—(1) In this Order—

"the appointed day" means the day appointed by the Governor under section 1(2);

"the Constitution" means the Constitution set out in Schedule 2;

"the former Constitution" means the Constitution established by the Cayman Islands (Constitution) Order 1972(**b**);

"the Legislative Assembly" means the Legislative Assembly established by the Constitution;

"the former Legislative Assembly" means the Legislative Assembly established by the former Constitution.

(2) Section 124 of the Constitution shall apply for the purposes of interpreting sections 1 to 9 of this Order and otherwise in relation to them as it applies for the purposes of interpreting and in relation to the Constitution.

---

(**a**) 1962 c.19.
(**b**) S.I. 1972/1101, amended by S.I. 1984/126, 1987/2199, 1992/226, 1993/3143, 2003/1515, 2004/2029, 2004/2673, 2008/3127.

**Revocations**

**3.** The instruments specified in Schedule 1 are revoked with effect from the appointed day.

**Establishment of Constitution**

**4.**—(1) Subject to subsections (2), (3), (4) and (5), Schedule 2 shall have effect as the Constitution of the Cayman Islands from the appointed day.

(2) Part I of the Constitution shall have effect from the day three years after the appointed day; but section 6(2) and (3) of the Constitution shall have effect from the day four years after the appointed day.

(3) Until the Legislative Assembly is next dissolved after the appointed day—

   (a)  section 44(1)(b) of the Constitution shall have effect as if the reference to "six other Ministers" were a reference to "four other Ministers";

   (b)  section 44(2) of the Constitution shall have no effect;

   (c)  section 60(1)(b) of the Constitution shall have effect as if the reference to "eighteen elected members" were a reference to "fifteen elected members";

   (d)  section 60(2) of the Constitution shall have no effect.

(4) Until the Judicial and Legal Services Commission has been constituted in accordance with section 105 of the Constitution, power to make appointments to the offices to which section 106 of the Constitution applies shall vest in the Governor, acting in his or her discretion.

(5) Until a person has been appointed to the office of Director of Public Prosecutions in accordance with section 106 of the Constitution or subsection (4) of this section, section 57 of the Constitution shall have effect as if the references to the Director of Public Prosecutions were references to the Attorney General.

**Existing laws**

**5.**—(1) Subject to this section, the existing laws shall have effect on and after the appointed day as if they had been made in pursuance of the Constitution and shall be read and construed with such modifications, adaptations, qualifications and exceptions as may be necessary to bring them into conformity with the Constitution.

(2) The Legislature may by law make such amendments to any existing law as appear to it to be necessary or expedient for bringing that law into conformity with the Constitution or otherwise for giving effect to the Constitution; and any existing law shall have effect accordingly from such day, not being earlier than the appointed day, as may be specified in the law made by the Legislature.

(3) In this section "existing laws" means laws and instruments (other than Acts of Parliament of the United Kingdom and instruments made under them) having effect as part of the law of the Cayman Islands immediately before the appointed day.

**Existing offices and officers**

**6.**—(1) Any office (except that of Chief Secretary) established by or under the former Constitution and existing immediately before the appointed day shall on and after that day, so far as is consistent with the Constitution, continue as if it had been established by or under the Constitution.

(2) Any person who immediately before the appointed day holds or is acting in any office continued by virtue of subsection (1) shall, on and after that day, continue to hold or act in that office as if he or she had been appointed to hold or act in it in accordance with or under the Constitution.

(3) Any person to whom subsection (2) applies who, before the appointed day, has made any oath required to be made before assuming the functions of his or her office shall be deemed to have made any like oath so required by the Constitution or any other law.

(4) The person who, immediately before the appointed day, holds the office of Leader of Government Business shall, on and after that day, hold the office of Premier in accordance with the Constitution.

**Legislative Assembly**

**7.**—(1) Any person (except the Chief Secretary and the Financial Secretary) who immediately before the appointed day is a member of the former Legislative Assembly shall on that day become a member of the Legislative Assembly, shall be deemed to have complied with section 60(3) of the Constitution, and shall hold his or her seat in accordance with the Constitution.

(2) The Standing Orders of the former Legislative Assembly as in force immediately before the appointed day shall, except as may be otherwise provided under section 71 of the Constitution, have effect on and after that day as if they had been made under that section, but they shall be read and construed with such modifications, adaptations, qualifications and exceptions as may be necessary to bring them into conformity with the Constitution.

(3) The Governor shall dissolve the Legislative Assembly not later than the expiration of four years from the date when the former Legislative Assembly first met after the last general election before the appointed day.

**Electoral districts**

**8.**—(1) As soon as practicable after the appointed day, and before the Legislative Assembly is dissolved in accordance with section 7(3), the Governor shall appoint an Electoral Boundary Commission in accordance with section 88 of the Constitution.

(2) The Commission so appointed shall, as soon as practicable and in accordance with section 89 of the Constitution, review the electoral district boundaries and submit a report to the Governor and the Legislative Assembly containing its recommendations for changes in the boundaries of the electoral districts with a view to the Legislative Assembly consisting of eighteen elected members.

**Pending legal proceedings**

**9.**—(1) Any cause, matter or appeal pending before the Grand Court or any appeal or application pending before the Court of Appeal immediately before the appointed day may, on and after that day, be continued, determined or appealed against as if such cause, matter or appeal had been instituted or was pending before the Grand Court, or such appeal or application made to the Court of Appeal, as the case may be, as those courts are respectively constituted by the Constitution.

(2) Any decree or order of the Grand Court or the Court of Appeal given or made before the appointed day, in so far as it has not been fully executed or enforced, may be executed or enforced on or after that day as if it were a decree or order of the Grand Court or the Court of Appeal, as the case may be, as those courts are respectively constituted by the Constitution.

(3) Any matter pending immediately before the appointed day before a tribunal appointed under section 49J(4) of the former Constitution may, on and after that day, be continued and reported upon as if the former Constitution were still in force, and after the tribunal has reported, section 96 of the Constitution shall have effect as if the matter had been referred to and considered by the Judicial and Legal Services Commission and as if the report of the tribunal were a report of the Judicial and Legal Services Commission under that section.

(4) Any judge of the Grand Court who immediately before the appointed day is suspended pursuant to section 49J(6) of the former Constitution shall, on and after that day, remain suspended from performing the functions of his or her office unless the Governor, acting in his or her discretion, revokes the suspension; but the suspension shall in any case cease to have effect—

(a) if the tribunal appointed under section 49J(4) of the former Constitution advises the Governor that he or she should not request that the question of the removal of the judge be referred by Her Majesty to the Judicial Committee of Her Majesty's Privy Council; or

(b) if the Judicial Committee advises Her Majesty that the judge ought not to be removed from office.

*Judith Simpson*
Clerk of the Privy Council

## SCHEDULE 1

### Revocations

The Cayman Islands (Constitution) Order 1972 (S.I. 1972/1101)

The Cayman Islands (Constitution) (Amendment) Order 1984 (S.I.1984/126)

The Cayman Islands (Constitution) (Amendment) Order 1987 (S.I. 1987/2199)

The Cayman Islands (Constitution) (Amendment) Order 1992 (S.I. 1992/226)

The Cayman Islands (Constitution) (Amendment) Order 1993 (S.I. 1993/3143)

The Cayman Islands (Constitution) (Amendment) Order 2003 (S.I. 2003/1515)

The Cayman Islands (Constitution) (Amendment) Order 2004 (S.I. 2004/2029)

The Cayman Islands (Constitution) (Amendment No.2) Order 2004 (S.I. 2004/2673)

The Cayman Islands (Constitution) (Amendment) Order 2008 (S.I. 2008/3127)

The Instructions issued under the Royal Sign Manual and Signet to the Governor of the Cayman Islands on 26th July 1972

## SCHEDULE 2

### The Constitution of the Cayman Islands

## CONTENTS

### PART I
### BILL OF RIGHTS, FREEDOMS AND RESPONSIBILITIES

1.      Guarantee of Rights, Freedoms and Responsibilities
2.      Life
3.      Torture and inhuman treatment
4.      Slavery or forced or compulsory labour
5.      Personal liberty
6.      Treatment of prisoners
7.      Fair trial
8.      No punishment without law
9.      Private and family life
10.     Conscience and religion
11.     Expression
12.     Assembly and association

| | |
|---|---|
| 13. | Movement |
| 14. | Marriage |
| 15. | Property |
| 16. | Non-discrimination |
| 17. | Protection of children |
| 18. | Protection of the environment |
| 19. | Lawful administrative action |
| 20. | Education |
| 21. | Public emergencies |
| 22. | Protection of persons detained under emergency laws |
| 23. | Declaration of incompatibility |
| 24. | Duty of public officials |
| 25. | Interpretive obligation |
| 26. | Enforcement of rights and freedoms |
| 27. | Remedies |
| 28. | Interpretation of the Bill of Rights |

## PART II
### THE GOVERNOR

| | |
|---|---|
| 29. | The office of Governor |
| 30. | Oaths to be taken by the Governor |
| 31. | Functions of the Governor |
| 32. | Exercise of the Governor's functions |
| 33. | The Governor may act contrary to the advice of the Cabinet |
| 34. | The office of Deputy Governor |
| 35. | Acting Governor |
| 36. | Temporary exercise of certain functions of the Governor |
| 37. | Emoluments, personal staff and expenditure of the Governor |
| 38. | Powers to dispose of land |
| 39. | Powers of pardon, etc. |
| 40. | Advisory Committee on the Prerogative of Mercy |
| 41. | Public seal |
| 42. | Constitution of offices |

## PART III
### THE EXECUTIVE

| | |
|---|---|
| 43. | Executive authority |
| 44. | The Cabinet |
| 45. | Meetings of the Cabinet |
| 46. | Proceedings in and quorum of the Cabinet |
| 47. | Attendance of persons at meetings |
| 48. | Cabinet Secretary |
| 49. | Appointment of the Premier and other Ministers |
| 50. | Functions of the Premier |
| 51. | Tenure of office of the Premier |
| 52. | Tenure of office of Ministers |
| 53. | Performance of functions of Ministers in certain events |

54.     Allocation of responsibilities to Ministers
55.     Special responsibilities of the Governor
56.     Attorney General
57.     Director of Public Prosecutions
58.     National Security Council

## PART IV
### THE LEGISLATURE

59.     Composition of the Legislature and power to make laws
60.     The Legislative Assembly
61.     Qualifications for elected membership of the Legislative Assembly
62.     Disqualifications for elected membership
63.     Tenure of office of elected members
64.     Delay in vacation of seat to allow for an appeal
65.     Speaker and Deputy Speaker
66.     Determination of questions as to membership of the Legislative Assembly
67.     Penalty for sitting or voting in the Legislative Assembly when unqualified
68.     Leader of the Opposition
69.     Power to provide for a referendum
70.     People-initiated referendums
71.     Standing Orders and committees
72.     Presiding in the Legislative Assembly
73.     The Legislative Assembly may transact business notwithstanding vacancies
74.     Quorum
75.     Voting
76.     Summoning of persons to assist the Legislative Assembly
77.     Introduction of Bills
78.     Assent to Bills
79.     Return of Bills by the Governor
80.     Disallowance of laws
81.     Governor's reserved power
82.     Privileges of the Legislative Assembly and its members
83.     Sessions of the Legislative Assembly
84.     Prorogation and dissolution
85.     Recalling dissolved Legislative Assembly
86.     General elections and bye-elections
87.     Public Accounts Committee
88.     Electoral Boundary Commission
89.     Review and alteration of electoral district boundaries
90.     Qualifications of electors
91.     Disqualifications of electors
92.     Right to vote at elections
93.     Law as to elections

## PART V
### THE JUDICATURE
#### The Grand Court
94.     Constitution and jurisdiction of the Grand Court

95.    Composition of the Grand Court
96.    Tenure of office of judges of the Grand Court
97.    Acting judges of the Grand Court
98.    Oaths to be taken by judges of the Grand Court

The Court of Appeal

99.    Constitution and jurisdiction of the Court of Appeal
100.   Composition of the Court of Appeal
101.   Tenure of office of judges of the Court of Appeal
102.   Acting judges of the Court of Appeal
103.   Oaths to be taken by judges of the Court of Appeal

Other matters

104.   Subordinate courts
105.   Judicial and Legal Services Commission
106.   Functions of Judicial and Legal Services Commission
107.   Judicial administration

## PART VI

## THE PUBLIC SERVICE

108.   Overriding duty of public officers
109.   Appointment, etc., of public officers
110.   Applicability of pensions law

## PART VII

## FINANCE

111.   Revenue and Expenditure
112.   Reporting
113.   Public debt
114.   Auditor General
115.   Financial Secretary

## PART VIII

## INSTITUTIONS SUPPORTING DEMOCRACY

116.   Human Rights Commission
117.   Commission for Standards in Public Life
118.   Constitutional Commission
119.   Advisory District Councils
120.   Complaints Commissioner
121.   Register of Interests
122.   Freedom of information

## PART IX

## MISCELLANEOUS

123.   Official language of the Cayman Islands
124.   Interpretation
125.   Power reserved to Her Majesty

SCHEDULE TO THE CONSTITUTION
FORMS OF OATHS AND AFFIRMATIONS

# THE CONSTITUTION OF THE CAYMAN ISLANDS

The people of the Cayman Islands, recalling the events that have shaped their history and made them what they are, and acknowledging their distinct history, culture and Christian heritage and its enduring influence and contribution in shaping the spiritual, moral and social values that have guided their development and brought peace, prosperity and stability to those islands, through the vision, forbearance, and leadership of their people, who are loyal to Her Majesty the Queen;

Affirm their intention to be—

- A God-fearing country based on traditional Christian values, tolerant of other religions and beliefs.
- A country with open, responsible and accountable government, that includes a working partnership with the private sector and continuing beneficial ties with the United Kingdom.
- A country in which religion finds its expression in moral living and social justice.
- A caring community based on mutual respect for all individuals and their basic human rights.
- A country committed to the democratic values of human dignity, equality and freedom.
- A community that practises honest and open dialogue to ensure mutual understanding and social harmony.
- A safe, secure and law-abiding community.
- A country that is free from crime and drug abuse.
- A country with an education system that identifies and develops on a continuing basis the abilities of each person, allowing them to reach their full potential and productivity.
- A community that encourages and prepares young people to assume leadership roles.
- A country that provides a comprehensive healthcare system.
- A community protective of traditional Caymanian heritage and the family unit.
- A country that honours the sacrifice of its seafaring men who left the shores of the Islands to enhance the quality of life of their people, and in doing so established themselves amongst the finest within the global maritime community of that time and through their remittances, endeavours and experiences built the foundations of the Cayman Islands' modern economy.
- A country that honours and acknowledges the important contribution of Caymanian women who during the absence of the seafaring men of the Islands managed the affairs of their homes, businesses and communities and passed on the values and traditions of the Islands' people.
- A country with a vibrant diversified economy, which provides full employment.
- A country that makes optimal use of modern technology.
- A country that manages growth and maintains prosperity, while protecting its social and natural environment.
- A country that respects, protects and defends its environment and natural resources as the basis of its existence.
- A country that fosters the highest standards of integrity in the dealings of the private and public sectors.

- A country with an immigration system that protects Caymanians, gives security to long-term residents and welcomes legitimate visitors and workers.
- A country that plays its full part in the region and in the international community.

Now, therefore, the following provisions shall have effect as the Constitution of the Cayman Islands.

# PART I

## BILL OF RIGHTS, FREEDOMS AND RESPONSIBILITIES

**Guarantee of Rights, Freedoms and Responsibilities**

Whereas all peoples have the right of self-determination and by virtue of that right they freely determine their political status and freely pursue their economic, social and cultural development and may, for their own ends, freely dispose of their natural wealth and resources without prejudice to any obligations arising out of international economic co-operation, based upon the principle of mutual benefit and international law;

**1.**—(1) This Bill of Rights, Freedoms and Responsibilities is a cornerstone of democracy in the Cayman Islands.

(2) This Part of the Constitution—

(a) recognises the distinct history, culture, Christian values and socio-economic framework of the Cayman Islands and it affirms the rule of law and the democratic values of human dignity, equality and freedom;

(b) confirms or creates certain responsibilities of the government and corresponding rights of every person against the government; and

(c) does not affect, directly or indirectly, rights against anyone other than the government except as expressly stated.

(3) In this Part "government" shall include public officials (as defined in section 28) and the Legislature, but shall not include the courts (except in respect of sections 5, 7, 19 and 23 to 27 inclusive).

**Life**

**2.**—(1) Everyone's right to life shall be protected by law.

(2) No person shall intentionally be deprived of his or her life.

(3) A person shall not be regarded as having been deprived of his or her life in contravention of this section if he or she dies as a result of the use, to such extent and in such circumstances as are permitted by law, of such force as is absolutely necessary—

(a) for the defence of any person from violence;

(b) in order to effect a lawful arrest or to prevent the escape of a person lawfully detained;

(c) for the purpose of suppressing a riot, insurrection or mutiny;

or if he or she dies as a result of a lawful act of war.

**Torture and inhuman treatment**

**3.** No person shall be subjected to torture or inhuman or degrading treatment or punishment.

**Slavery or forced or compulsory labour**

**4.**—(1) No person shall be held in slavery or servitude.

(2) No person shall be required to perform forced or compulsory labour.

(3) For the purposes of this section, forced or compulsory labour does not include—

    (a)  any labour required in consequence of the sentence or order of a court;

    (b)  any labour required of a member of a disciplined force in pursuance of his or her duties as such or, in the case of conscientious objectors, labour that they are required to perform in place of such service;

    (c)  labour required of any person while he or she is lawfully detained that is reasonably necessary in the interests of hygiene or for the maintenance of the place in which he or she is detained; or

    (d)  any labour required during a period of public emergency or in the event of any other emergency or calamity that threatens the life or well-being of the community, to the extent that the requiring of such labour is reasonably justifiable, in the circumstances of any situation arising or existing during that period or as a result of that other emergency or calamity, for the purpose of dealing with that situation.

**Personal liberty**

**5.**—(1) No one shall be deprived by government of liberty and security of the person.

(2) The right to liberty does not extend to the following measures taken in relation to a person in accordance with a procedure prescribed by law—

    (a)  in execution of the sentence or order of a court, whether in the Cayman Islands or elsewhere, in respect of a criminal offence under any law of which he or she has been convicted or in consequence of his or her unfitness to plead to a criminal charge;

    (b)  in execution of an order of a court punishing him or her for contempt of that court or of another court;

    (c)  in execution of the order of a court made in order to secure the fulfilment of any obligation imposed on him or her by law; but no person shall be deprived of his or her liberty merely on the ground of inability to fulfil a contractual obligation;

    (d)  for the purpose of bringing him or her before a court in execution of the order of a court;

    (e)  on reasonable suspicion that he or she has committed, is committing or is about to commit a criminal offence under any law;

    (f)  in the case of a minor, under the order of a court or with the consent of his or her parent or guardian, for the purpose of his or her education or welfare;

    (g)  for the purpose of preventing the spread of an infectious or contagious disease;

    (h)  in the case of a person who is, or is reasonably suspected to be, of unsound mind, addicted to drugs or alcohol, or a vagrant, for the purpose of his or her care or treatment or the protection of the community;

    (i)  for the purpose of preventing the unlawful entry of that person into the Cayman Islands, or for the purpose of effecting the expulsion, extradition or other lawful removal of that person from the Cayman Islands, or for the purpose of restricting that person while he or she is being conveyed through the Cayman Islands in the course of his or her extradition or removal as a convicted person from one country to another;

    (j)  in execution of the order of a court detaining a person charged with a criminal offence in respect of whom a special verdict has been returned that he or she was guilty of the act or omission charged but was insane when he or she did the act or made the omission.

(3) Any person who is arrested or detained has the right to remain silent and shall be informed promptly, in a language that he or she understands, of the reason for his or her arrest or detention.

(4) Any person who is arrested or detained shall have the right, at any stage and at his or her own expense, to retain and instruct without delay a legal practitioner of his or her own choice, and to hold private communication with him or her, and in the case of a minor he or she shall also be afforded a reasonable opportunity of communication with his or her parents or guardian; but when

a person arrested or detained is unable to retain a legal practitioner of his or her own choice or be represented by a legal practitioner at the public expense in accordance with section 7(2)(d), he or she may be represented, and hold private communication with, such person as the court may approve.

(5) Any person who is arrested or detained—

    (a)  for the purpose of bringing him or her before a court in the execution of the order of a court; or

    (b)  on reasonable suspicion of his or her having committed, or being about to commit, a criminal offence,

and who is not released, shall be brought promptly before a court; and if any person arrested or detained in such a case as in mentioned in subsection (2)(e) is not tried within a reasonable time he or she shall (without prejudice to any further proceedings that may be brought against him or her) be released either unconditionally or on reasonable conditions, including in particular such conditions as are reasonably necessary to ensure that he or she appears at a later date for trial or for proceedings preliminary to trial, and such conditions may include bail.

(6) Any person who is deprived of his or her liberty by arrest or detention shall be entitled to take proceedings by which the lawfulness of his or her detention shall be decided speedily by a court and his or her release ordered if the detention is not lawful, and he or she shall be entitled to compensation if unlawfully arrested or detained; but a judicial officer or an officer of a court or a police officer acting in pursuance of the order of a judicial officer shall not be personally liable to pay compensation under this subsection in respect of anything done by him or her in good faith in the discharge of the functions of his or her office, and any liability to pay any such compensation in respect of that thing shall be a liability of the Crown.

**Treatment of prisoners**

    **6.**—(1) All persons deprived of their liberty (in this section referred to as "prisoners") have the right to be treated with humanity and with respect for the inherent dignity of the human person.

(2) Save where the interests of defence, public safety, public order, public morality, public health or the administration of justice otherwise require, unconvicted prisoners shall be segregated from convicted prisoners; and every unconvicted prisoner shall be entitled to be treated in a manner appropriate as an unconvicted person.

(3) Juvenile prisoners shall be segregated from adult prisoners and every juvenile prisoner shall be treated in a manner appropriate to his or her age and legal status and, if he or she is an unconvicted prisoner and unless he or she is earlier released, shall have any criminal proceedings against him or her pursued with the greatest possible expedition.

**Fair trial**

    **7.**—(1) Everyone has the right to a fair and public hearing in the determination of his or her legal rights and obligations by an independent and impartial court within a reasonable time.

(2) Everyone charged with a criminal offence has the following minimum rights—

    (a)  to be presumed innocent until proved guilty according to law;

    (b)  to be informed promptly, in a language which he or she understands and in detail, of the nature and cause of the accusation against him or her;

    (c)  to have adequate time and the facilities for the preparation of his or her defence;

    (d)  to defend himself or herself in person or through legal assistance of his or her own choosing or, if he or she has not sufficient means to pay for legal assistance and the interests of justice so require, through a legal representative at public expense provided through an established public legal aid scheme as prescribed by law;

    (e)  to examine or have examined witnesses against him or her and to obtain the attendance and examination of witnesses on his or her behalf under the same conditions as witnesses against him or her;

    (f)   to have the free assistance of an interpreter if he or she cannot understand or speak the language used in court;

and, except with his or her own consent, the trial shall not take place in his or her absence, unless he or she so behaves in the court as to render the continuance of the proceedings in his or her presence impracticable and the court has ordered him or her to be removed and the trial to proceed in his or her absence, or unless, having had reasonable notice of the hearing and of the nature of the offence charged, he or she is voluntarily absent from the proceedings.

(3) When a person is tried for any criminal offence, the accused person or any person authorised by him or her shall, if he or she so requires and subject to payment of such reasonable fee as may be prescribed by law, be given within a reasonable time after judgment a copy for the use of the accused person of any record of the proceedings made by or on behalf of the court.

(4) No person who shows that he or she has been tried by a competent court for a criminal offence and either convicted or acquitted shall again be tried for that offence or for any other criminal offence of which he or she could have been convicted at the trial for that offence, save on the order of a superior court in the course of appeal or review proceedings relating to the conviction or acquittal.

(5) No person shall be tried for a criminal offence if he or she shows that he or she has been lawfully pardoned for that offence.

(6) No person who is tried for a criminal offence shall be compelled to give evidence at the trial.

(7) Every person who has been convicted by a court of a criminal offence shall have the right to appeal to a superior court against his or her conviction or his or her sentence or both as may be prescribed by law; but—

    (a)   nothing in any law shall be held to contravene this subsection—

        (i)   to the extent that it precludes an appeal by a person against his or her conviction of an offence if he or she pleaded guilty to that offence at his or her trial; or

        (ii)   to the extent that it makes reasonable provision with respect to the grounds on which any such appeal may be made or with respect to the practice and procedure to be observed in relation to the making, hearing and disposal of any such appeal; and

    (b)   this subsection shall not apply in relation to the conviction of a person by a superior court, or in relation to his or her sentence on such conviction, if he or she was convicted by that court on an appeal against his or her acquittal by a lower court.

(8) When a person has, by a final decision of a court, been convicted of a criminal offence and, subsequently, on the ground that a newly-disclosed fact shows that there has been a miscarriage of justice his or her conviction has been quashed or he or she has been pardoned, he or she shall be compensated out of public funds for any punishment that he or she has suffered as a result of the conviction unless it is proved that the non-disclosure in time of that fact was wholly or partly his or her fault.

(9) All proceedings instituted in any court for the determination of the existence or extent of any civil right or obligation, including the announcement of the decision of the court, shall be held in public.

(10) Nothing in subsection (1) or (9) shall prevent the court from excluding from the proceedings persons other than the parties to them and their legal representatives to such extent as the court—

    (a)   may be empowered by law to do and may consider necessary or expedient in circumstances where publicity would prejudice the interests of justice, or in interlocutory proceedings, or in the interests of public morality, the welfare of minors or the protection of commercial confidence or of the private lives of persons concerned in the proceedings; or

    (b)   may be empowered or required by law to do in the interests of defence, public safety, or public order.

(11) Nothing in any law or done under its authority shall be held to contravene—

(a)  subsection (2)(a), to the extent that the law in question imposes on any person charged with a criminal offence the burden of proving particular facts;

(b)  subsection (2)(e), to the extent that the law in question imposes conditions that must be satisfied if witnesses called to testify on behalf of an accused person are to be paid their expenses out of public funds;

(c)  subsection (4), to the extent that the law in question authorises a court to try a member of a disciplined force for a criminal offence notwithstanding any trial and conviction or acquittal of that member under the disciplinary law of that force, save that any court so trying such a member and convicting him or her shall in sentencing him or her to any punishment take into account any punishment imposed on him or her under that disciplinary law.

(12) In this section, "legal representative" means a person entitled to practise in the Cayman Islands as an attorney-at-law.

### No punishment without law

**8.**—(1) No one shall be held guilty of any criminal offence on account of any act or omission which did not constitute a criminal offence under national or international law at the time when it was committed; nor shall a heavier penalty be imposed than the one that was applicable at the time the criminal offence was committed.

(2) This section shall not prejudice the trial and punishment of any person for any act or omission which, at the time when it was committed, was criminal according to the general principles of law recognised by civilised nations.

### Private and family life

**9.**—(1) Government shall respect every person's private and family life, his or her home and his or her correspondence.

(2) Except with his or her own consent or as permitted under subsection (3), no person shall be subjected to the search of his or her person or his or her property or the entry of persons on his or her premises.

(3) Nothing in any law or done under its authority shall be held to contravene this section to the extent that it is reasonably justifiable in a democratic society—

(a)  in the interests of defence, public safety, public order, public morality, public health, town and country planning, or the development or utilisation of any other property in such a manner as to promote the public benefit;

(b)  for the purpose of protecting the rights and freedoms of other persons;

(c)  to enable an agent of the Government or a public body established by law to enter on the premises of any person in order to inspect those premises or anything on them for the purpose of any tax, rate or due or in order to carry out work connected with any property that is lawfully on those premises and that belongs to the Government or that public body;

(d)  to authorise, for the purpose of enforcing the judgment or order of a court, the search of any person or property by order of a court or the entry on any premises by such order; or

(e)  to regulate the right to enter or remain in the Cayman Islands.

### Conscience and religion

**10.**—(1) No person shall be hindered by government in the enjoyment of his or her freedom of conscience.

(2) Freedom of conscience includes freedom of thought and of religion or religious denomination; freedom to change his or her religion, religious denomination or belief; and freedom, either alone or in community with others, both in public and in private, to manifest and

propagate his or her religion or belief in worship, teaching, practice, observance and day of worship.

(3) Except with his or her consent or, in the case of a minor, the consent of his or her parent or guardian, no person attending any place of education shall be required to receive religious instruction or to take part in or attend any religious ceremony or observance that relates to a religion other than his or her own.

(4) No religious community or denomination shall be prevented from or hindered in providing religious instruction for persons of that community or denomination in the course of any education provided by that community or denomination whether or not that community or denomination is in receipt of any government subsidy, grant or other form of financial assistance designed to meet, in whole or in part, the cost of such education; and this right includes the right of any school or community educational institution to impose requirements on employment, admission or curriculum-design necessary to maintain the religious ethos of that school or institution, subject to applicable employment laws in force.

(5) No person shall be compelled to take any oath which is contrary to his or her religion or belief or to take any oath in a manner which is contrary to his or her religion or belief.

(6) Nothing in any law or done under its authority shall be held to contravene this section to the extent that it is reasonably justifiable in a democratic society—

    (a)  in the interests of defence, public safety, public order, public morality or public health; or

    (b)  for the purpose of protecting the rights and freedoms of other persons, including the right to observe and practise any religion or belief without the unsolicited intervention of adherents of any other religion or belief.

(7) If a court's determination of any question arising under this Part might affect the exercise by a religious organisation (itself or its members collectively) of the right to freedom of conscience as protected by this section, it must have particular regard to the importance of that right.

### Expression

**11.**—(1) No person shall be hindered by government in the enjoyment of his or her freedom of expression, which includes freedom to hold opinions and to receive and impart ideas and information without interference, and freedom from interference with his or her correspondence or other means of communication.

(2) Nothing in any law or done under its authority shall be held to contravene this section to the extent that it is reasonably justifiable in a democratic society—

    (a)  in the interests of defence, public safety, public order, public morality or public health;

    (b)  for the purpose of protecting the rights, reputations and freedoms of other persons or the private lives of persons concerned in legal proceedings, preventing the disclosure of information received in confidence, maintaining the authority and independence of the courts, or regulating telecommunications, posts, broadcasting or other means of communication, or public shows or entertainments; or

    (c)  for the imposition of restrictions on public officers in the interests of the proper performance of their functions.

### Assembly and association

**12.**—(1) No person shall be hindered by government in the enjoyment of his or her freedom of peaceful assembly and association, that is to say, his or her right to assemble freely and associate with other persons and in particular to form or belong to political parties or to form or belong to trade unions or other associations for the protection of his or her interests.

(2) Nothing in any law or done under its authority shall be held to contravene this section to the extent that it is reasonably justifiable in a democratic society—

    (a)  in the interests of defence, public safety, public order, public morality or public health;

    (b)  for the purpose of protecting the rights and freedoms of other persons; or

(c) for the imposition of restrictions on public officers in the interests of the proper performance of their functions.

**Movement**

**13.**—(1) No person shall be hindered by government in the enjoyment of his or her freedom of movement, that is to say, the right to move freely throughout the Cayman Islands, the right to reside in any part of the Cayman Islands, the right to enter the Cayman Islands, the right to leave the Cayman Islands and immunity from expulsion from the Cayman Islands.

(2) Nothing in any law or done under its authority shall be held to contravene this section to the extent that the law in question makes provision—

    (a) for the imposition of restrictions on the movement or residence within the Cayman Islands or on the right to leave the Cayman Islands of persons generally or any class of persons that are reasonably justifiable in a democratic society—

        (i) in the interests of defence, public safety, public order, public morality or public health; or

        (ii) for the purpose of protecting the rights and freedoms of other persons;

    (b) for the removal of a person from the Cayman Islands to be tried or punished in some other country for a criminal offence under the law of that country or to undergo imprisonment in some other country in execution of the sentence of a court in respect of a criminal offence under the law of the Cayman Islands of which he or she has been convicted;

    (c) for the imposition of restrictions on the movement or residence within the Cayman Islands or the right to leave the Cayman Islands of public officers that are reasonably required for the purpose of ensuring the proper performance of their functions;

    (d) for the imposition of restrictions on any person who is not a Caymanian or a permanent resident; but—

        (i) no restriction may be imposed by virtue only of this paragraph on the right of any such person, so long as he or she is lawfully present in the Cayman Islands, to move freely throughout the Cayman Islands and to reside anywhere in the Cayman Islands;

        (ii) no restriction may be imposed by virtue only of this paragraph on the right of any such person to leave the Cayman Islands; and

        (iii) no such person shall be liable, by virtue only of this paragraph, to be expelled from the Cayman Islands unless the requirements specified in subsection (3) are satisfied;

    (e) for the imposition of restrictions on the acquisition or use by any person of land or other property in the Cayman Islands;

    (f) for the imposition of restrictions, by order of a court, on the movement or residence within the Cayman Islands of any person or on any person's right to leave the Cayman Islands either in consequence of his or her having been found guilty of a criminal offence under the law of the Cayman Islands or for the purpose of ensuring a fair trial or that he or she appears before a court at a later date for trial or for proceedings relating to his or her extradition or lawful removal from the Cayman Islands; or

    (g) for the imposition of restrictions on the right of any person to leave the Cayman Islands that are reasonably justifiable in a democratic society in order to secure the fulfilment of any obligation imposed on that person by law.

(3) The requirements to be satisfied for the purposes of subsection (2)(d)(iii) are as follows—

    (a) the decision to expel that person is taken by an authority, in a manner and on grounds prescribed by law;

    (b) that person has the right to submit reasons against his or her expulsion to a competent authority prescribed by law;

    (c) that person has the right, save where a court has recommended his or her deportation, to have his or her case reviewed by a competent authority prescribed by law; and

15

(d) that person has the right to be represented for the purposes of paragraphs (b) and (c) before the competent authority or some other person or authority designated by the competent authority;

but paragraphs (b), (c) and (d) shall not apply where the interests of defence, public safety or public order so require.

(4) Any restriction on a person's freedom of movement which is involved in his or her lawful detention shall not be held to contravene this section.

(5) In this section "permanent resident" has the meaning ascribed to it in the laws of the Cayman Islands for the time being in force.

### Marriage

**14.**—(1) Government shall respect the right of every unmarried man and woman of marriageable age (as determined by law) freely to marry a person of the opposite sex and found a family.

(2) No person shall be compelled to marry without his or her free and full consent.

(3) Nothing in any law or done under its authority shall be held to contravene subsection (1) to the extent that the law makes provision that is reasonably justifiable in a democratic society—

(a) in the interests of public order, public morality or public health;

(b) for regulating, in the public interest, the procedures and modalities of marriage; or

(c) for protecting the rights and freedoms of others.

(4) Spouses shall be entitled to equal rights and shall be subject to equal responsibilities as between themselves and as regards their children both during and after marriage, but this equality of rights and responsibilities shall be subject to such arrangements or measures as may be agreed, or as may be ordered by a court, in the interests of their children.

### Property

**15.**—(1) Government shall not interfere in the peaceful enjoyment of any person's property and shall not compulsorily take possession of any person's property, or compulsorily acquire an interest in or right over any person's property of any description, except in accordance with law and where—

(a) the interference, taking of possession or acquisition is necessary or expedient in the interests of defence, public safety, public order, public morality, public health, town and country planning or the development or utilisation of any property in such manner as to promote the public benefit or the economic well-being of the community; and

(b) there is reasonable justification for the causing of any hardship that may result to any person having an interest in or right over the property; and

(c) provision is made by a law applicable to that interference, taking of possession or acquisition—

(i) for the prompt payment of adequate compensation; and

(ii) securing to any person having an interest in or right over the property a right of access to the Grand Court, whether direct or on appeal from any other authority, for the determination of his or her interest or right, the legality of the interference with, taking of possession or acquisition of the property, interest or right, and the amount of any compensation to which he or she is entitled, and for the purpose of obtaining prompt payment of that compensation; and

(iii) giving to any party to proceedings in the Grand Court relating to such a claim the same rights of appeal as are accorded generally to parties to civil proceedings in that Court sitting as a court of original jurisdiction.

(2) Nothing in any law or done under its authority shall be held to contravene subsection (1)—

(a) to the extent that the law in question makes provision for the interference with, taking of possession or acquisition of any property, interest or right—

    (i) in satisfaction of any tax, rate or due;

    (ii) by way of penalty for breach of any law or forfeiture in consequence of a breach of any law;

    (iii) as an incident of a lease, tenancy, mortgage, charge, bill of sale, pledge or contract;

    (iv) by way of taking of a sample for the purposes of any law;

    (v) where the property consists of an animal, on its being found trespassing or straying;

    (vi) in the execution of judgments or orders of a court;

    (vii) by reason of its being in a dilapidated or dangerous state or injurious to the health of human beings, animals or plants;

    (viii) in consequence of any law with respect to prescription or the limitation of actions; or

    (ix) for so long only as may be necessary for the purposes of any examination, investigation, trial or inquiry, or, in the case of land, for the purposes of carrying out on it work of reclamation, drainage, soil conservation or the conservation of other natural resources or work relating to agricultural development or improvement (being work relating to such development or improvement that the owner or occupier of the land has been required, and has, without reasonable and lawful excuse, refused or failed to carry out),

except so far as that provision of law or, as the case may be, the thing done under its authority is shown not to be reasonably justifiable in a democratic society; or

(b) to the extent that the law in question makes provision for the taking of possession or acquisition of any of the following property (including an interest in or right over property), that is to say—

    (i) enemy property;

    (ii) property of a person who has died, a person of unsound mind or a minor, for the purpose of its administration for the benefit of the persons entitled to the beneficial interest in it;

    (iii) property of a person adjudged bankrupt or a body corporate in liquidation, for the purpose of its administration for the benefit of the creditors of the bankrupt or body corporate and, subject thereto, for the benefit of other persons entitled to the beneficial interest in the property; or

    (iv) property subject to a trust, for the purpose of vesting the property in persons appointed as trustees under the instrument creating the trust or by a court or, by order of a court, for the purpose of giving effect to the trust.

(3) Nothing in any law or done under its authority shall be held to contravene subsection (1) to the extent that the law in question makes provision for the interference with or compulsory taking of possession in the public interest of any property, or the compulsory acquisition in the public interest of any interest in or right over property, where that property, interest or right is held by a body corporate established by law for public purposes in which no moneys have been invested other than moneys provided from public funds.

### Non-discrimination

**16.**—(1) Subject to subsections (3), (4), (5) and (6), government shall not treat any person in a discriminatory manner in respect of the rights under this Part of the Constitution.

(2) In this section, "discriminatory" means affording different and unjustifiable treatment to different persons on any ground such as sex, race, colour, language, religion, political or other opinion, national or social origin, association with a national minority, age, mental or physical disability, property, birth or other status.

(3) No law or decision of any public official shall contravene this section if it has an objective and reasonable justification and is reasonably proportionate to its aim in the interests of defence, public safety, public order, public morality or public health.

(4) Subsection (1) shall not apply to any law so far as that law makes provision—

    (a) for the appropriation of revenues or other funds of the Cayman Islands or for the imposition of taxation (including the levying of fees for the grants of licences);

    (b) with respect to the entry into or exclusion from, or the employment, engaging in any business or profession, movement or residence within, the Cayman Islands of persons who are not Caymanian;

    (c) for the application, in the case of persons of any such description of grounds as is mentioned in subsection (2) (or of persons connected with such persons), of the law with respect to adoption, marriage, divorce, burial, devolution of property on death or other like matters that is the personal law applicable to persons of that description; or

    (d) whereby persons of any such description of grounds as is mentioned in subsection (2) may be subjected to any disability or restriction or may be accorded any privilege or advantage which, having regard to its nature and to special circumstances pertaining to those persons or to persons of any other such description, is objectively and reasonably justifiable in a democratic society and there is a reasonable proportionality between the means employed and the purpose sought to be realised.

(5) Nothing in any law shall be held to contravene subsection (1) to the extent that it requires a person to be a Caymanian, or to possess any other qualification (not being a qualification specifically relating to any such description of grounds as is mentioned in subsection (2)) in order to be eligible for appointment to any office in the public service or in a disciplined force or any office in the service of a local government authority or of a body corporate established directly by any law for public purposes.

(6) Subsection (1) shall not apply to anything which is expressly or by necessary implication authorised to be done by any such provision of law as is referred to in subsection (3), (4) or (5).

(7) Subsection (1) is without prejudice to any restriction on the rights and freedoms guaranteed by section 9, 10, 11, 12, 13 or 14 if that restriction would, in accordance with that section, be a restriction authorised for the purposes of that section on the ground that—

    (a) the provision by or under which it is imposed is reasonably required in the interests of a matter, or for the purpose, specified in that section; and

    (b) the provision and the restriction imposed under it are reasonably justifiable in a democratic society.

**Protection of children**

**17.**—(1) In addition to the provisions of this Part which afford protection to children, the Legislature shall enact laws to provide every child and young person under the age of eighteen (referred to in this section as a "child") with such facilities as would aid their growth and development, and to ensure that every child has the right—

    (a) to a name from birth;

    (b) to family care or parental care, or to appropriate alternative care when removed from the family environment;

    (c) to basic nutrition, shelter, basic health care services and social services;

    (d) to be protected from maltreatment, neglect, abuse or degradation;

    (e) to be protected from exploitative labour practices;

    (f) not to be required or permitted to perform work or provide services that—

        (i) are inappropriate for a child of that age; or

        (ii) place at risk the child's well-being, education, physical or mental health or spiritual, moral or social development;

(g) not to be detained except as a measure of last resort, in which case, in addition to the rights a child enjoys under sections 5 and 22, the child may be detained only for the shortest appropriate period of time, and shall be treated in a manner and kept in conditions that take account of his or her age;

(h) to have a legal practitioner assigned to the child by the Government, and at public expense, in civil proceedings affecting the child, if substantial injustice would result; and

(i) not to be used directly in armed conflict, and to be protected in times of armed conflict.

(2) In implementing subsection (1), the Legislature shall proceed on the basis that a child's best interests are of paramount importance in every matter concerning the child.

**Protection of the environment**

**18.**—(1) Government shall, in all its decisions, have due regard to the need to foster and protect an environment that is not harmful to the health or well-being of present and future generations, while promoting justifiable economic and social development.

(2) To this end government should adopt reasonable legislative and other measures to protect the heritage and wildlife and the land and sea biodiversity of the Cayman Islands that—

(a) limit pollution and ecological degradation;

(b) promote conservation and biodiversity; and

(c) secure ecologically sustainable development and use of natural resources.

**Lawful administrative action**

**19.**—(1) All decisions and acts of public officials must be lawful, rational, proportionate and procedurally fair.

(2) Every person whose interests have been adversely affected by such a decision or act has the right to request and be given written reasons for that decision or act.

**Education**

**20.**—(1) This section is without prejudice to section 10.

(2) Government shall seek reasonably to achieve the progressive realisation, within available resources, of providing every child with primary and secondary education which shall, subject to subsection (3), be free.

(3) Every person who is the parent or legal guardian of a child shall be entitled to have his or her child (of whatever age) educated, at his or her own expense unless a law otherwise provides, in a private school (that is to say, a school other than one established by a public authority) and, in such a school, to ensure the religious and moral education of his or her child in accordance with his or her own convictions.

(4) Nothing contained in any law or done under its authority shall be held to contravene subsection (3) to the extent that it is reasonably justifiable in a democratic society and to the extent that the law makes provision requiring private schools, as a condition of their being allowed to operate and on terms no more onerous than are applicable to schools established by a public authority, to satisfy—

(a) such minimum educational standards (including standards relating to the qualifications of teaching staff and other staff) as may be prescribed by or under any law; and

(b) such minimum standards imposed in the interests of public order, public morality or public health as may be so prescribed.

**Public emergencies**

**21.**—(1) A period of public emergency may be declared by the Governor, by proclamation published in the manner provided in subsection (2), when—

    (a)  the well-being or security of the Cayman Islands is threatened by war, invasion, general insurrection, public disorder, natural disaster or other public emergency; and

    (b)  the declaration is considered necessary by the Governor to maintain or restore peace and order.

(2) A proclamation shall be taken to be published if it is published in a Government Notice or in a newspaper published in the Cayman Islands, or if it is posted in prominent public places or announced on the radio.

(3) Without prejudice to the power of the Legislature to make laws under this Constitution, during a period of public emergency the Governor may make such regulations for the Cayman Islands as appear to him or her to be necessary or expedient for securing the public safety, the defence of the Cayman Islands or the maintenance of public order, or for maintaining supplies and services essential to the life of the community.

(4) Regulations made under subsection (3) shall—

    (a)  have effect only prospectively;

    (b)  have effect, subject to this section, notwithstanding the provisions of any other law in force in the Cayman Islands or any rule of law having effect in the Islands;

    (c)  unless previously revoked, expire at the end of the period of public emergency during which they were made unless provision for their continuance in force (with or without modification) is made by the Legislature.

(5) Nothing in any law or done under its authority shall be held to be inconsistent with or in contravention of section 5, section 7 or any provision of sections 9 to 16 (inclusive) to the extent that the law in question authorises the taking during any period of public emergency of measures that are reasonably justifiable for dealing with the situation that exists in the Cayman Islands during that period.

(6) Before exercising any function under subsection (1) or (3) or under any law enacted by the Legislature to like effect, the Governor shall consult the Cabinet or, if that is not practicable in the circumstances, the Premier; but if in the judgement of the Governor it is impracticable for him or her to consult either the Cabinet or the Premier, the function shall be exercised by the Governor acting in his or her discretion.

(7) Where the Governor has consulted the Cabinet or the Premier under subsection (6), the Governor shall not be obliged to act in accordance with any advice given to him or her.

(8) Where any proclamation of emergency has been made by the Governor under subsection (1), a copy of the proclamation shall as soon as practicable be laid before and debated in the Legislative Assembly; and if the Assembly is not due to meet within five days of the making of that proclamation it shall meet within that period or as soon as practicable thereafter.

(9) A proclamation of emergency shall, unless it is sooner revoked by the Governor, cease to be in force at the expiration of a period of fourteen days beginning on the date on which it was made or such longer period as may be provided under subsection (10), but without prejudice to the making of another proclamation of emergency at or before the end of that period.

(10) If at any time while a proclamation of emergency is in force (including any time while it is in force by virtue of this subsection) a resolution is passed by the Legislative Assembly approving its continuation in force for a further period not exceeding three months, beginning on the date on which it would otherwise expire, the proclamation shall, if not sooner revoked, continue in force for that further period.

(11) Nothing in this section or in any emergency regulations shall be construed to preclude the Legislative Assembly from—

    (a)  meeting whenever practicable in accordance with its Standing Orders; and

    (b)  directing that reports relating to the emergency, including the implementation of any emergency regulations, be prepared and presented in such manner and within such periods to the Legislative Assembly as the Assembly may determine.

**Protection of persons detained under emergency laws**

**22.**—(1) When a person is detained by virtue of any law in relation to a period of public emergency the following provisions shall apply—

    (a)   notification shall, not more than ten days after the commencement of his or her detention, be published in a public place (and thereafter as soon as possible in a Government Notice) stating that he or she has been detained and giving particulars of the provision of law by virtue of which his or her detention is authorised;

    (b)   he or she shall (if not sooner released), as soon as reasonably practicable and in any case not more than four days after the commencement of his or her detention, be informed, in a language that he or she understands, of the grounds on which he or she is detained and furnished with a written statement;

    (c)   his or her case shall, not more than 30 days after the commencement of his or her detention and thereafter during the detention at intervals of not more than three months, be reviewed by an independent and impartial tribunal established by law and presided over by a person appointed by the Chief Justice;

    (d)   he or she shall be afforded reasonable opportunity to consult a legal practitioner of his or her own choice and to hold private communication with him or her; and

    (e)   he or she shall, at the hearing of his or her case by the tribunal appointed for its review, be permitted to appear in person or by a legal practitioner of his or her own choice.

(2) For the purposes of subsection (1)(d) and (e), if the detained person is unable to retain a legal practitioner of his or her own choice, the tribunal may approve such person as it deems fit to make representations to it; but nothing in subsection (1)(d) or (e) shall be construed as entitling a detained person to legal representation at public expense.

(3) On any review by a tribunal of the case of a detained person under this section, the tribunal may make recommendations concerning the necessity or expediency of continuing his or her detention to the authority by which it was ordered but, unless it is otherwise provided by law, that authority shall not be obliged to act in accordance with any such recommendations.

**Declaration of incompatibility**

**23.**—(1) If in any legal proceedings primary legislation is found to be incompatible with this Part, the court must make a declaration recording that the legislation is incompatible with the relevant section or sections of the Bill of Rights and the nature of that incompatibility.

(2) A declaration of incompatibility made under subsection (1) shall not constitute repugnancy to this Order and shall not affect the continuation in force and operation of the legislation or section or sections in question.

(3) In the event of a declaration of incompatibility made under subsection (1), the Legislature shall decide how to remedy the incompatibility.

**Duty of public officials**

**24.** It is unlawful for a public official to make a decision or to act in a way that is incompatible with the Bill of Rights unless the public official is required or authorised to do so by primary legislation, in which case the legislation shall be declared incompatible with the Bill of Rights and the nature of that incompatibility shall be specified.

**Interpretive obligation**

**25.** In any case where the compatibility of primary or subordinate legislation with the Bill of Rights is unclear or ambiguous, such legislation must, so far as it is possible to do so, be read and given effect in a way which is compatible with the rights set out in this Part.

**Enforcement of rights and freedoms**

**26.**—(1) Any person may apply to the Grand Court to claim that government has breached or threatened his or her rights and freedoms under the Bill of Rights and the Grand Court shall determine such an application fairly and within a reasonable time.

(2) If, in any proceedings in any court established in the Cayman Islands other than the Grand Court or the Court of Appeal, any issue arises as to the interpretation of the Bill of Rights, the court in which the question has arisen shall refer the question to the Grand Court if it is in its opinion necessary for the issue to be determined.

(3) An appeal shall lie as of right to the Court of Appeal from any final determination of any issue by the Grand Court under the Bill of Rights, and an appeal shall lie as of right from the Court of Appeal to Her Majesty in Council; but no appeal shall lie from a determination by the Grand Court under this section dismissing an application on the ground that it is frivolous or vexatious.

(4) Proceedings under subsection (1) shall be commenced within one year of the decision or act that is claimed to breach the Bill of Rights, or from the date on which such decision or act could reasonably have been known to the complainant; but the Grand Court shall extend time on application by the complainant where such an extension would in the opinion of the Court be in the interests of justice.

(5) Nothing in this section adversely affects the ability of courts to manage their own procedure to ensure that cases are dealt with justly, fairly and expeditiously, including their ability to dismiss applications that are vexatious or unreasonable.

**Remedies**

**27.**—(1) In relation to any decision or act of a public official which the court finds is (or would be) unlawful, it may grant such relief or remedy, or make such order, within its powers as it considers just and appropriate.

(2) No award of damages is to be made unless, taking account of all the circumstances of the case, including—

    (a)  any other relief or remedy granted, or order made, in relation to the act in question (by that or any other court); and

    (b)  the consequences of any decision (of that or any other court) in respect of that act,

the court is satisfied that the award is necessary to afford just satisfaction to the person in whose favour it is made.

**Interpretation of the Bill of Rights**

**28.** In this Part—

"act" includes a failure to act but excludes a failure to introduce before the Legislative Assembly, or for the Legislature to enact, primary legislation;

"Caymanian" has the meaning ascribed to it in the laws of the Cayman Islands for the time being in force;

"contravene" in relation to any requirement includes failure to comply with that requirement, and cognate expressions shall be construed accordingly;

"court" includes tribunal;

"disciplined force" means—

    (a)  a naval, military or air force;

    (b)  any police force or prison service in the Cayman Islands;

"member" of a disciplined force is a person who, under the law regulating the discipline of that force, is subject to that discipline;

"minor" means a person who has not attained the age of eighteen years or such other age as may be prescribed for this purpose by any law;

"primary legislation" means a Law enacted by the Legislature;

"public official"—

   (c) includes a public or governmental body, including any statutory body or company or association in which the Cayman Islands has an interest and which performs a public function or duty;

   (d) includes any organisation or person carrying out a public function or duty, including the Governor, except where the nature of their act is private;

   (e) unless otherwise stated, excludes private schools (whether or not in receipt of government funding, subsidy or other assistance), churches, the Legislature and the courts.

# PART II

## THE GOVERNOR

**The office of Governor**

**29.** There shall be a Governor of the Cayman Islands who shall be appointed by Her Majesty and shall hold office during Her Majesty's pleasure.

**Oaths to be taken by the Governor**

**30.** Before assuming the functions of his or her office, the person appointed to be Governor shall make oaths of allegiance and for the due execution of his or her office before the Chief Justice in the forms set out in the Schedule to this Constitution.

**Functions of the Governor**

**31.**—(1) The Governor shall have such functions as are prescribed by this Constitution and any other law, and such other functions as Her Majesty may from time to time be pleased to assign to him or her in exercise of the Royal prerogative.

(2) The Governor shall exercise his or her functions in accordance with this Constitution and any other law and, subject thereto, in accordance with such instructions (if any) as may be addressed to the Governor by or on behalf of Her Majesty.

(3) In the exercise of his or her functions under subsection (2), the Governor shall endeavour to promote good governance and to act in the best interests of the Cayman Islands so far as such interests are consistent with the interests of the United Kingdom.

(4) Notwithstanding the jurisdiction of the courts in respect of functions exercised by the Governor, the question of whether or not the Governor has in any matter complied with any instructions addressed to him or her by or on behalf of Her Majesty shall not be inquired into in any court.

**Exercise of the Governor's functions**

**32.**—(1) Subject to subsection (2), the Governor shall consult with the Cabinet in the exercise of all functions conferred on him or her by this Constitution or any other law, insofar as it is reasonably practicable to do so and unless the matter is not materially significant such as to require consultation.

(2) The Governor shall not be obliged to consult with the Cabinet in the exercise of—

   (a) any function conferred by this Constitution which the Governor is empowered to exercise in his or her discretion or judgement or in pursuance of instructions addressed to him or her by or on behalf of Her Majesty;

   (b) any function conferred by this Constitution or any other law which the Governor is empowered or directed, either expressly or by necessary implication, to exercise without

consulting the Cabinet or to exercise on the recommendation or advice of, or after consultation with, any person or authority other than the Cabinet; or

    (c)   the special responsibilities of the Governor set out in section 55, other than external affairs.

(3) The Governor shall keep the Cabinet informed concerning the general conduct of all matters for which he or she is responsible, and of any matters that in his or her judgement may involve the economic or financial interests of the Cayman Islands or the enactment of laws under this Constitution.

(4) Where the Governor is by this Constitution or any other law directed to exercise any function after consultation with any person or authority other than the Cabinet he or she shall not be obliged to exercise that function in accordance with the advice of that person or authority.

(5) Where the Governor is by this Constitution or any other law directed to exercise any function in accordance with the recommendation or advice of, or after consultation with, any person or authority, the question of whether or not he or she has so exercised that function shall not be inquired into in any court.

**The Governor may act contrary to the advice of the Cabinet**

**33.**—(1) Subject to subsection (2), in any case where the Governor is required to consult with the Cabinet he or she shall act in accordance with the advice given to him or her by the Cabinet.

(2) The Governor may act against the advice given to him or her by the Cabinet—

    (a)   if he or she is instructed to do so by Her Majesty through a Secretary of State; or

    (b)   if, in his or her judgement, such advice would adversely affect any of the special responsibilities of the Governor set out in section 55.

(3) Whenever the Governor acts otherwise than in accordance with the advice given to him or her by the Cabinet, his or her reasons shall be recorded in the minutes, and any member of the Cabinet may require that there be recorded in the minutes the grounds of any advice or opinion which he or she may have given on the question.

**The office of Deputy Governor**

**34.**—(1) There shall be a Deputy Governor who shall be such person as Her Majesty may designate as such by instructions given through a Secretary of State and who shall hold office during Her Majesty's pleasure.

(2) A person shall not be designated as Deputy Governor unless—

    (a)   he or she is a Caymanian; and

    (b)   he or she holds or has held a senior position in the public service and is still eligible to hold public office.

(3) For the purposes of subsection (2), "senior position in the public service" means head of department or head of a statutory authority or Government-owned company or above.

(4) The Deputy Governor shall have such functions as (subject to this Constitution and any other law) may be delegated to him or her by the Governor, acting in his or her discretion.

(5) Under the authority of the Governor, the Deputy Governor shall be head of the civil service.

**Acting Governor**

**35.**—(1) During any period when the office of Governor is vacant or the Governor is absent from the Cayman Islands or is for any other reason unable to perform the functions of his or her office, those functions shall be assumed and performed by—

    (a)   the Deputy Governor; or

    (b)   if the office of Deputy Governor is vacant or the Deputy Governor is absent from the Cayman Islands or is for any other reason unable to perform those functions, such public

officer, being a Caymanian, as Her Majesty may designate by instructions given through a Secretary of State ("the person designated").

(2) Before assuming the functions of the office of Governor, the Deputy Governor or the person designated shall make the oaths directed by section 30 to be made by the Governor.

(3) The Deputy Governor shall cease to perform the functions of the office of Governor after the Governor has notified him or her that he or she is about to resume or assume those functions, and the person designated shall cease to perform those functions after the Governor or Deputy Governor has so notified him or her.

(4) The Governor or the Deputy Governor shall not, for the purposes of this section, be regarded as absent from the Cayman Islands or as unable to perform the functions of his or her office—

(a)  by reason that he or she is in passage from one part of the Cayman Islands to another; or

(b)  at any time when there is a subsisting appointment under section 36.

(5) In this section, "Governor" means the person holding the office of Governor, and "Deputy Governor" means the person holding the office of Deputy Governor.

### Temporary exercise of certain functions of the Governor

36.—(1) Whenever the Governor—

(a)  has occasion to be absent from Grand Cayman but not from the Cayman Islands;

(b)  intends to be absent from the Cayman Islands for a short period; or

(c)  is suffering from any illness which he or she believes will be of short duration,

the Governor may, acting in his or her discretion and by instrument under the public seal, appoint the Deputy Governor (or if the Deputy Governor is not available any other public officer in the Cayman Islands who is a Caymanian) during such absence or illness to perform on his or her behalf such of the functions of the office of Governor as may be specified in the instrument.

(2) The power and authority of the Governor shall not be affected by an appointment under this section, and a person so appointed shall comply with such instructions as the Governor, acting in his or her discretion, may from time to time address to him or her; but the question of whether or not that person has in any matter complied with any such instructions shall not be inquired into in any court.

(3) A person appointed under this section shall hold that appointment for such period as may be specified in the instrument by which he or she is appointed, and the appointment may be revoked at any time by Her Majesty by instructions given through a Secretary of State or by the Governor, acting in his or her discretion.

### Emoluments, personal staff and expenditure of the Governor

37.—(1) The Governor shall receive such emoluments as may for the time being be fixed by a Secretary of State by directions in writing, and those emoluments are hereby charged on and shall be paid out of the revenues of the Cayman Islands.

(2) A law enacted by the Legislature may prescribe the offices that are to constitute the personal staff of the Governor, the salaries and allowances that are to be paid to the members of that staff and the other sums that are to be paid in respect of the expenditure attaching to the office of Governor; but no such law shall apply to such members of the personal staff of the Governor as are recruited and paid under the authority of a Secretary of State.

(3) Any salaries, allowances or other sums prescribed under subsection (2) are hereby charged on and shall be paid out of the revenues of the Cayman Islands.

### Powers to dispose of land

38. Subject to any law for the time being in force in the Cayman Islands, the Governor or any person duly authorised by him or her in writing under his or her hand may, in Her Majesty's name

and on Her Majesty's behalf, make and execute under the public seal grants and dispositions of any land or other immovable property within the Cayman Islands that may be lawfully granted or disposed of by Her Majesty.

## Powers of pardon, etc.

**39.**—(1) The Governor may, in Her Majesty's name and on Her Majesty's behalf—

    (a) grant to any person concerned in or convicted of any offence against any law in force in the Cayman Islands a pardon, either free or subject to lawful conditions;

    (b) grant to any person a respite, either indefinite or for a specified period, from the execution of any sentence passed on that person for such an offence;

    (c) substitute a less severe form of punishment for that imposed by any sentence for such an offence; or

    (d) remit the whole or any part of any sentence passed for such an offence or any penalty or forfeiture otherwise due to Her Majesty on account of such an offence.

(2) In the exercise of his or her powers under this section the Governor shall consult the Committee established by section 40, but he or she shall decide whether to exercise any of those powers in any case in his or her discretion, whether the members of the Committee concur in his or her decision or otherwise.

## Advisory Committee on the Prerogative of Mercy

**40.**—(1) There shall be in and for the Cayman Islands an Advisory Committee on the Prerogative of Mercy, which shall consist of the Attorney General, the Chief Medical Officer and four other members, of which two shall be appointed by the Governor acting after consultation with the Premier and two shall be appointed by the Governor acting after consultation with the Leader of the Opposition.

(2) The Committee shall not be summoned except by the authority of the Governor, acting in his or her discretion; and the Governor shall preside at all meetings of the Committee.

(3) No business shall be transacted at any meeting of the Committee unless there are at least three members present, of whom one shall be the Attorney General.

(4) The office as a member of the Committee of any member appointed by the Governor under subsection (1) shall become vacant if the Governor, acting after consultation with the Premier and the Leader of the Opposition, revokes his or her appointment as a member of the Committee.

(5) Subject to subsection (3), the Committee shall not be disqualified for the transaction of business by reason of any vacancy in its membership, and the validity of the transaction of any business by the Committee shall not be affected by reason only of the fact that some person who was not entitled to do so took part in the proceedings.

(6) Subject to this section the Committee may regulate its own proceedings.

## Public seal

**41.** The Governor shall keep and use the public seal for sealing all things that should pass that seal.

## Constitution of offices

**42.** Subject to this Constitution and any other law, the Governor, in Her Majesty's name and on Her Majesty's behalf, may constitute offices for the Cayman Islands.

# PART III

## THE EXECUTIVE

**Executive authority**

**43.**—(1) The executive authority of the Cayman Islands is vested in Her Majesty.

(2) Subject to this Constitution, the executive authority of the Cayman Islands shall be exercised on behalf of Her Majesty by the Government, consisting of the Governor as Her Majesty's representative and the Cabinet, either directly or through public officers.

(3) Nothing in this section shall preclude persons or authorities other than the Government from exercising such functions as are or may be conferred on them by any law.

**The Cabinet**

**44.**—(1) There shall be a Cabinet in and for the Cayman Islands, which shall consist of—

    (a)  a Premier appointed by the Governor in accordance with section 49(2) or (3);

    (b)  six other Ministers, one of whom shall be Deputy Premier, appointed by the Governor, acting in accordance with the advice of the Premier, from among the elected members of the Legislative Assembly; and

    (c)  the Deputy Governor and the Attorney General, *ex officio*.

(2) The number of Ministers referred to in subsection (1) may be increased by a law made pursuant to section 60(2) which increases the number of elected members of the Legislative Assembly; but in no circumstances may the number of Ministers exceed two-fifths of the total number of elected members of the Assembly.

(3) The Cabinet shall have responsibility for the formulation of policy, including directing the implementation of such policy, insofar as it relates to every aspect of government except those matters for which the Governor has special responsibility under section 55, and the Cabinet shall be collectively responsible to the Legislative Assembly for such policies and their implementation.

(4) Subject to this Constitution, the Cabinet shall determine its own procedures for the conduct of its business.

**Meetings of the Cabinet**

**45.**—(1) The Cabinet shall meet regularly at such times as its rules and procedures may prescribe, and shall also meet whenever the Premier, or the Governor, acting in his or her discretion, so requests.

(2) Upon receiving such a request, the Cabinet Secretary shall summon the Cabinet.

**Proceedings in and quorum of the Cabinet**

**46.**—(1) The Governor shall, so far as is practicable, attend and preside at meetings of the Cabinet.

(2) In the absence of the Governor from any meeting of the Cabinet, the Cabinet shall be chaired by the Premier or, in the absence of the Premier, the Deputy Premier.

(3) The Governor and the Premier shall together set the agenda for every meeting of the Cabinet, and each shall be entitled to inscribe items on the agenda.

(4) A quorum for any meeting of the Cabinet is a majority of Ministers.

(5) Subject to subsection (4), the Cabinet shall not be disqualified for the transaction of business by reason of any vacancy in its membership (including any vacancy not filled when the Cabinet is first constituted or is reconstituted at any time) and the validity of the transaction of business in the Cabinet shall not be affected by reason only of the fact that some person who was not entitled to do so took part in the proceedings.

(6) The Deputy Governor and the Attorney General shall not be entitled to vote in the Cabinet.

**Attendance of persons at meetings**

**47.**—(1) The person presiding over any meeting of the Cabinet may summon any public officer or invite any other person to a meeting of the Cabinet whenever the business before the Cabinet renders the presence of that officer or other person desirable.

(2) If the presence of any person summoned or invited under subsection (1) is objected to by any member of the Cabinet, the person shall only attend the meeting to which he or she has been summoned or invited with the agreement of the Cabinet.

(3) Where an electoral district is not represented in the Cabinet, the member or members of the Legislative Assembly representing that district shall be entitled to attend a meeting convened by the Cabinet once every three months for the purpose of—

    (a) making representations with respect to matters affecting their district; and

    (b) making budgetary representations when the Annual Plan and Estimates are being developed.

**Cabinet Secretary**

**48.**—(1) There shall be—

    (a) a Cabinet Office, which shall be an office in the Government; and

    (b) a Cabinet Secretary, whose office shall be a public office, who shall be a person who is a Caymanian and who shall be appointed by the Governor, acting after consultation with the Premier.

(2) The Cabinet Secretary shall have charge of the Cabinet Office.

(3) The responsibilities of the Cabinet Secretary shall include—

    (a) providing frank and politically neutral advice to the Governor, the Cabinet and the Premier on matters of policy;

    (b) co-ordinating the development and implementation of policy between departments and ministerial portfolios and across the wider Government sector to ensure that Government policy is developed coherently;

    (c) providing for administrative and secretarial support for the Cabinet and the Premier in order to allow high-quality and effective government;

    (d) arranging the business for, and keeping the minutes of, the meetings of the Cabinet or any Cabinet committee and conveying the conclusions reached at the meetings to the appropriate person or authority;

and the Cabinet Secretary shall have such other functions as the Governor, acting after consultation with the Premier, may from time to time direct.

(4) The Cabinet Secretary shall also—

    (a) transmit copies of all papers submitted for consideration by the Cabinet or any Cabinet committee to the Governor and all members of the Cabinet;

    (b) inform the Governor and all members of the Cabinet of the summoning of any meeting of the Cabinet or any Cabinet committee and of the matters to be discussed at any meeting of the Cabinet or any Cabinet committee; and

    (c) furnish the Governor and all members of the Cabinet, as soon as practicable after each meeting of the Cabinet or any Cabinet committee, with a copy of the confirmed minutes of the previous meeting showing the matters discussed and the conclusions reached at the meeting.

**Appointment of the Premier and other Ministers**

**49.**—(1) The Premier shall be appointed by the Governor as follows.

(2) Where a political party gains a majority of the seats of elected members of the Legislative Assembly, the Governor shall appoint as Premier the elected member of the Assembly recommended by a majority of the elected members who are members of that party.

(3) If no political party gains such a majority or if no recommendation is made under subsection (2), the Speaker shall cause a ballot to be held among the elected members of the Legislative Assembly to determine which elected member commands the support of the majority of such members, and shall record the vote of each member voting; and, where such a ballot is held, the Governor shall appoint as Premier the elected member who obtains a majority of the votes of the elected members.

(4) Notwithstanding subsections (2) and (3), the Governor shall not appoint as Premier a person who has held office as Premier during two consecutive parliamentary terms unless at least one parliamentary term has expired since he or she last held that office; and for the purposes of this subsection a parliamentary term shall be deemed to be a period commencing when the Legislative Assembly first meets after being constituted under this Constitution or after its dissolution at any time, and terminating when the Assembly is next dissolved.

(5) After his or her appointment, the Premier shall advise the Governor to appoint the other Ministers.

(6) Appointments of the Premier and the other Ministers shall be made by the Governor by instrument under the public seal.

(7) If occasion arises for making an appointment of any Minister between a dissolution of the Legislative Assembly and the polling in the next following general election, a person who was an elected member of the Assembly immediately before the dissolution may be appointed as a Minister.

(8) The Governor shall without delay report to Her Majesty through a Secretary of State every appointment made under this section.

(9) The members of the Cabinet shall each, before assuming the functions of his or her office, make before the Governor oaths of allegiance and for the due execution of his or her office in the forms set out in the Schedule to this Constitution.

(10) The Governor and the Premier shall confer on a regular basis and the Premier shall brief and keep the Governor fully informed about the policies of the Government and the public affairs of the Cayman Islands.

**Functions of the Premier**

**50.** The Premier shall have such functions as are conferred on him or her by or under this Constitution, and shall exercise those functions in accordance with this Constitution and any other law and in the best interests of the Cayman Islands.

**Tenure of office of the Premier**

**51.**—(1) The Governor shall, by instrument under the public seal, revoke the appointment of the Premier if a motion that the Legislative Assembly should declare a lack of confidence in the Government receives the affirmative votes of not less than two-thirds of the elected members of the Assembly; but before so revoking the Premier's appointment, the Governor shall consult the Premier and may, acting in his or her discretion, dissolve the Assembly instead of revoking the appointment.

(2) The Premier shall vacate his or her office if, after the polling in a general election, the Governor, acting in his or her discretion, informs him or her that he or she is about to appoint another person as Premier.

**Tenure of office of Ministers**

52.—(1) Any Minister shall vacate his or her office—

    (a) if he or she ceases to be a member of the Legislative Assembly for any reason other than its dissolution;

    (b) if he or she is not a member of the Assembly when it first meets after a general election;

    (c) if he or she resigns his or her office by writing under his or her hand addressed to the Governor; or

    (d) if he or she is absent from the Cayman Islands or absent from three consecutive meetings of the Cabinet without—

        (i) in the case of the Premier, having given the Governor prior notice of such absence; or

        (ii) in the case of any other Minister, having obtained written permission for such absence from the Governor, acting in accordance with the advice of the Premier.

(2) A Minister other than the Premier shall also vacate his or her office if—

    (a) the Premier vacates his or her office; or

    (b) his or her appointment is revoked by the Governor, acting in accordance with the advice of the Premier, by instrument under the public seal.

**Performance of functions of Ministers in certain events**

53.—(1) If the Premier is unable, due to illness or absence from the Cayman Islands, to perform the functions of his or her office, the Governor shall authorise the Deputy Premier to perform those functions; and in the absence or illness of the Deputy Premier, the Governor shall authorise another Minister to perform those functions, acting in accordance with the advice of the Premier or, if it is impracticable to obtain the advice of the Premier, acting in his or her discretion but after consulting the Cabinet.

(2) Whenever a Minister other than the Premier is unable, by reason of illness or absence from the Cayman Islands or absence from his or her duties on leave, to perform the functions of his or her office, the Governor, acting in accordance with the advice of the Premier, may—

    (a) appoint a person who is an elected member of the Legislative Assembly to be a temporary Minister; or

    (b) assign responsibility for the performance of the functions of that Minister to another Minister (including the Premier),

and may specify the period for which such person shall be a temporary Minister or for which such other Minister shall perform the functions of that Minister.

(3) If occasion arises for making an appointment under subsection (2)(a) between a dissolution of the Legislative Assembly and the next following general election, subsection (2) shall have effect for the purpose as if the Assembly had not been dissolved.

(4) Subject to this Constitution—

    (a) a temporary Minister shall hold office; and

    (b) a Minister assigned to perform the functions of another Minister shall perform those functions,

until the expiry of the period specified under subsection (2) or, where no period was so specified, until he or she is notified by the Governor in writing that he or she shall cease to hold that office or to perform those functions.

(5) Any authorisation, appointment or assignment under this section shall be made by the Governor by instrument under the public seal, and may be revoked in like manner.

**Allocation of responsibilities to Ministers**

**54.**—(1) The Governor, acting in accordance with the advice of the Premier, shall by directions in writing—

    (a)  charge any Minister with responsibility for the conduct (subject to this Constitution and any other law) of any business of the Government including responsibility for the administration of any department of government;

    (b)  designate the style by which any Minister so charged shall be known,

but a Minister shall be charged with responsibility for finance.

(2) If the persons appointed as Ministers do not include an elected member of the Legislative Assembly representing Cayman Brac and Little Cayman, the Minister with responsibility for District Administration should ensure that the District Commissioner liaises with the members of the Assembly representing Cayman Brac and Little Cayman.

(3) Nothing in this section shall empower the Governor to confer on any Minister authority to exercise any function that is conferred by this Constitution or any other law on any person or authority other than a Minister.

(4) Without prejudice to the generality of subsection (3), except for the purpose of submitting questions relating to such matters to the Cabinet and conducting business relating to such matters in the Legislative Assembly, a Minister shall not be charged under this section with responsibility for—

    (a)  any matter for which the Governor, acting in his or her discretion, is responsible under section 55;

    (b)  the discharge by the courts of their judicial functions;

    (c)  the initiation, conduct and discontinuance of criminal proceedings; or

    (d)  the audit of the accounts of the Cayman Islands or any authority or office of the Government or of the courts.

(5) Ministers shall be collectively responsible to the Legislative Assembly with respect to any matter for which a Minister is responsible under this section.

(6) A Minister charged under subsection (1) with responsibility for the conduct of any business of the Government may be assisted in the discharge of that responsibility by a board, committee or other similar body consisting wholly or partly of persons who are not public officers and established by a law made under this Constitution or by directions in writing given by the Minister concerned; and any such body shall have such advisory, consultative and administrative functions as may be conferred on it by such a law or directions, but, in exercising any such functions, the body shall be subject to the directions of the Minister concerned.

(7) Where a Minister has been charged under subsection (1) with responsibility for the administration of any department of government, the Minister shall (subject to this Constitution and any other law) exercise general direction and control over the department, and, subject to such direction and control, the department shall be under the supervision of a public officer; but two or more departments of government may be placed under the supervision of one public officer.

(8) The Governor, acting in his or her discretion, may at any time call for any official papers or seek any official information or advice available to a Minister with respect to a matter for which that Minister is responsible under this section.

**Special responsibilities of the Governor**

**55.**—(1) The Governor shall be responsible for the conduct, subject to this Constitution and any other law, of any business of the Government with respect to the following matters—

    (a)  defence;

    (b)  external affairs, subject to subsections (3) and (4);

    (c)  internal security including the police, without prejudice to section 58;

    (d) the appointment (including the appointment on promotion or transfer, appointment on contract and appointment to act in an office) of any person to any public office, the suspension, termination of employment, dismissal or retirement of any public officer or taking of disciplinary action in respect of such an officer, the application to any public officer of the terms or conditions of employment of the public service (including salary scales, allowances, leave, passages and pensions) for which financial provision has been made, and the organisation of the public service to the extent that it does not involve new financial provision.

(2) The Governor, acting after consultation with the Premier, may assign or delegate to any member of the Cabinet, by instrument in writing and on such terms and conditions as he or she may impose, responsibility for the conduct on behalf of the Governor of any business in the Legislative Assembly with respect to any of the matters listed in subsection (1).

(3) The Governor shall not enter, agree or give final approval to any international agreement, treaty or instrument that would affect internal policy or require implementation by legislation in the Cayman Islands without first obtaining the agreement of the Cabinet, unless instructed otherwise by a Secretary of State.

(4) The Governor shall, acting after consultation with the Premier, assign or delegate to the Premier or another Minister, by instrument in writing and on the terms and conditions set out in subsection (5), responsibility for the conduct of external affairs insofar as they relate to any matters falling within the portfolios of Ministers, including—

    (a) the Caribbean Community, the Association of Caribbean States, the United Nations Economic Commission for Latin America and the Caribbean, or any other Caribbean regional organisation or institution;

    (b) other Caribbean regional affairs relating specifically to issues that are of interest to or affect the Cayman Islands;

    (c) tourism and tourism-related matters;

    (d) taxation and the regulation of finance and financial services; and

    (e) European Union matters directly affecting the Cayman Islands.

(5) The terms and conditions referred to in subsection (4) are the following—

    (a) separate authority shall be required from or on behalf of a Secretary of State for the commencement of formal negotiation and the conclusion of any treaty or other international agreement by the Government;

    (b) no political declaration, understanding or arrangement in the field of foreign policy shall be signed or supported in the name of the Government without the prior approval of a Secretary of State;

    (c) a formal invitation to a member of government or Head of State of another country to visit the Cayman Islands shall not be issued without prior consultation with the Governor;

    (d) the costs of any activities in pursuance of subsection (4) shall be borne by the Government;

    (e) the Premier or other Minister shall keep the Governor fully informed of any activities in pursuance of subsection (4);

    (f) the Premier or other Minister shall provide the Governor on request all papers and information, including the text of any instrument under negotiation, available to the Premier or other Minister with respect to any activities in pursuance of subsection (4); and

    (g) any directions given by the Governor on any matter which in his or her judgement might affect defence or security shall be complied with.

(6) In the event of any disagreement regarding the exercise of any authority delegated or assigned under subsection (4), the matter shall be referred to a Secretary of State whose decision on the matter shall be final and whose directions shall be complied with.

(7) The Governor may, by directions in writing and with the prior approval of a Secretary of State, delegate or assign such other matters relating to external affairs to the Premier or another Minister designated by the Premier as the Governor thinks fit on such conditions as he or she may impose.

## Attorney General

**56.**—(1) There shall be an Attorney General of the Cayman Islands, whose office shall be a public office and who shall be appointed in accordance with section 106.

(2) The Attorney General shall be the principal legal adviser to the Government and the Legislative Assembly.

## Director of Public Prosecutions

**57.**—(1) There shall be a Director of Public Prosecutions for the Cayman Islands, whose office shall be a public office and who shall be appointed in accordance with section 106.

(2) The Director of Public Prosecutions shall have power, in any case in which he or she considers it desirable to do so—

    (a)  to institute and undertake criminal proceedings against any person before any court in respect of any offence against any law in force in the Cayman Islands;

    (b)  to take over and continue any such criminal proceedings that have been instituted by any other person or authority; and

    (c)  to discontinue at any stage before judgment is delivered any such criminal proceedings instituted or undertaken by himself or herself or any other person or authority.

(3) The powers of the Director of Public Prosecutions under subsection (2) may be exercised by him or her in person or by officers subordinate to him or her acting under and in accordance with his or her general or special instructions.

(4) The powers conferred on the Director of Public Prosecutions by subsection (2)(b) and (c) shall be vested in him or her to the exclusion of any other person or authority; but where any other person or authority has instituted criminal proceedings, nothing in this subsection shall prevent the withdrawal of those proceedings by or at the instance of that person or authority at any stage before the person against whom the proceedings have been instituted has been charged before the court.

(5) For the purposes of this section, any appeal from any determination in any criminal proceedings before any court, or any case stated or question of law reserved for the purpose of any such proceedings, to any other court or to Her Majesty in Council shall be deemed to be part of those proceedings.

(6) In the exercise of the powers conferred on him or her by this section, the Director of Public Prosecutions shall not be subject to the direction or control of any other person or authority.

## National Security Council

**58.**—(1) There shall be in and for the Cayman Islands a National Security Council which shall consist of—

    (a)  the Governor, as Chairman;

    (b)  the Premier;

    (c)  two other Ministers appointed in writing by the Governor, acting in accordance with the advice of the Premier;

    (d)  the Leader of the Opposition or his or her designate;

    (e)  two persons representative of civil society appointed in writing by the Governor, acting after consultation with the Premier and the Leader of the Opposition;

    (f)  the Deputy Governor, *ex officio*;

(g)  the Attorney General, *ex officio;* and

(h)  the Commissioner of Police, *ex officio.*

(2) A Minister appointed under subsection (1)(c) shall vacate his or her seat on the National Security Council if—

(a)  his or her office becomes vacant under section 52; or

(b)  the Governor so directs in writing, acting in accordance with the advice of the Premier.

(3) A person appointed under subsection (1)(e) may be appointed for a period of up to two years, and may be reappointed.

(4) The National Security Council shall advise the Governor on matters relating to internal security, with the exception of operational and staffing matters, and the Governor shall be obliged to act in accordance with the advice of the Council, unless he or she considers that giving effect to the advice would adversely affect Her Majesty's interest (whether in respect of the United Kingdom or the Cayman Islands); and where the Governor has acted otherwise than in accordance with the advice of the Council, he or she shall report to the Council at its next meeting.

(5) The Commissioner of Police shall—

(a)  provide regular briefings to the National Security Council on matters of internal security, including the police force save insofar as to do so would prejudice current operations;

(b)  have responsibility for the day to day operation of the police force and shall report regularly on such operation to the Governor; and

(c)  inform the Premier of any significant security developments in the Cayman Islands, including the occurrence of any significant criminal activity.

(6) Before assuming office each member of the National Security Council shall sign a declaration that he or she will not disclose to any other person, without the permission of the Governor, information acquired as a member of the Council; and, without prejudice to any other penalties that may be imposed under any other law, the Governor, acting in his or her discretion, may by published directions in writing exclude from the activities of the Council, or revoke the membership of the Council of, any member who breaches such a declaration.

(7) Where the Governor has good reason to believe that there has been a breach by a member of the declaration made pursuant to subsection (6), the Governor, acting in his or her discretion, may suspend from the activities of the Council that member while the question of a breach is being investigated; and any such investigation shall be concluded expeditiously.

(8) The National Security Council may invite any person or summon any public officer to attend and participate in, or provide briefings to, the Council on the areas of their work bearing on internal security.

(9) The Governor, acting in his or her discretion, may summon a meeting of the National Security Council whenever he or she considers it desirable to do so, and the Governor shall summon such a meeting whenever the Premier so requests.

(10) Subject to this section, the National Security Council may regulate its own procedure.

(11) The Cabinet Secretary shall be the Secretary to the National Security Council.


# PART IV

## THE LEGISLATURE

### Composition of the Legislature and power to make laws

**59.**—(1) There shall be a Legislature of the Cayman Islands which shall consist of Her Majesty and a Legislative Assembly.

(2) Subject to this Constitution, the Legislature may make laws for the peace, order and good government of the Cayman Islands.

**The Legislative Assembly**

**60.**—(1) The Legislative Assembly shall consist of—

    (a) the Speaker;

    (b) eighteen elected members, who shall be persons qualified for election in accordance with this Constitution and elected in the manner provided for in a law enacted for the purposes of section 93; and

    (c) the Deputy Governor and the Attorney General, *ex officio*.

(2) A law made under section 59(2) may increase the number of elected members of the Legislative Assembly; but no such law shall come into force—

    (a) unless an order by the Governor providing for the electoral districts and their boundaries to take account of the additional elected members in accordance with section 89 has been made; and

    (b) until the dissolution of the Legislative Assembly next following the enactment of such law.

(3) No member of the Legislative Assembly shall be permitted to take part in the proceedings of the Assembly, other than proceedings necessary for the purposes of this subsection or the election of a Speaker, until he or she has made and subscribed before the Assembly oaths of allegiance and for the due execution of his or her office in the forms set out in the Schedule to this Constitution.

**Qualifications for elected membership of the Legislative Assembly**

**61.**—(1) Subject to section 62, a person shall be qualified to be elected as a member of the Legislative Assembly if, and shall not be qualified to be so elected unless—

    (a) he or she is a Caymanian; and

    (b) he or she has attained the age of 21 years; and

    (c) he or she is, at the date of his or her nomination for election, domiciled and resident in the Cayman Islands; and

    (d) he or she is a qualified citizen; and either

    (e) he or she was born in the Cayman Islands, or was born outside the Cayman Islands in the circumstances mentioned in subsection (2)(b), has resided in the Cayman Islands for a period of not less than seven years immediately preceding the date of his or her nomination for election and, subject to subsection (3), the number of days on which he or she was absent from the Cayman Islands in that period does not exceed 400; or

    (f) if he or she was born outside the Cayman Islands, has resided in the Cayman Islands for a period or periods amounting to not less than fifteen years out of the twenty years immediately preceding the date of his or her nomination for election, and, subject to subsection (3), in the seven years immediately preceding the date of his or her nomination for election the number of days on which he or she was absent from the Cayman Islands does not exceed 400.

(2) For the purposes of subsection (1)(d), a qualified citizen is a British overseas territories citizen by virtue of a connection with the Cayman Islands, who either—

    (a) at the date of his or her nomination for election possesses no other citizenship and is pursuing no claim to any other citizenship for which he or she may be eligible; or

    (b) was born outside the Cayman Islands, has or had at least one parent or grandparent who was born in the Cayman Islands and is a Caymanian (or if deceased would if alive have been a Caymanian at the date of nomination for election), and who at the date of his or her nomination for election possesses no other citizenship save for any right he or she may have to some other citizenship by virtue of his or her birth outside the Cayman Islands;

and in this subsection the words "other citizenship" do not include British citizenship acquired by virtue of the British Overseas Territories Act 2002(a).

(3) In ascertaining whether a person has been absent from the Cayman Islands for the purposes of subsection (1)(e) or (f), any period of absence by reason of the following shall be disregarded—

    (a)  the performance of duty on behalf of the Government;

    (b)  attendance as a student at any educational establishment;

    (c)  attendance as a patient at any hospital, clinic or other medical institution;

    (d)  employment as a seaman aboard an ocean-going vessel; or

    (e)  employment as a crew member on any aircraft.

### Disqualifications for elected membership

**62.**—(1) No person shall be qualified to be elected as a member of the Legislative Assembly who—

    (a)  is, by virtue of his or her own act, under any acknowledgement of allegiance, obedience or adherence to a foreign power or state;

    (b)  holds, or is acting in, any public office;

    (c)  has been adjudged or otherwise declared bankrupt under any law in force in any part of the Commonwealth or the United States of America and has not been discharged;

    (d)  is a person certified to be insane or otherwise adjudged to be of unsound mind under any law in force in the Cayman Islands;

    (e)  subject to subsection (2), is serving or has served a sentence of imprisonment (by whatever name called) exceeding twelve months imposed on him or her by a court in any country or substituted by competent authority for some other sentence imposed on him or her by such a court, or is under such a sentence of imprisonment the execution of which has been suspended, or has been convicted by any court in any country of an offence involving dishonesty;

    (f)  is disqualified for election by any law in force in the Cayman Islands by reason of his or her holding, or acting in, any office the functions of which involve—

        (i)  any responsibility for, or in connection with, the conduct of any election; or

        (ii)  any responsibility for the compilation or revision of any electoral register;

    (g)  is a party to, or a partner in a firm or a director or manager of a company which is a party to, any contract with the Government for or on account of the public service and has not, within the period of one month immediately preceding the date of an election in which he or she is a candidate, caused to be published a Government Notice setting out the nature of such contract and his or her interest, or the interest of any such firm or company, in it; or

    (h)  is disqualified for membership of the Assembly by any law in force in the Cayman Islands relating to offences connected with elections.

(2) For the purposes of subsection (1)(e) and section 63(g)—

    (a)  where a person is serving two or more sentences of imprisonment that are required to be served consecutively he or she shall, throughout the whole time during which he or she so serves, be regarded as serving a sentence exceeding twelve months if (but not unless) any one of those sentences exceeds that term; and

    (b)  no account shall be taken of a sentence of imprisonment imposed as an alternative to or in default of the payment of a fine.

---

(a)  2002 c.8.

**Tenure of office of elected members**

**63.** The seat of an elected member of the Legislative Assembly shall become vacant—

(a) upon a dissolution of the Assembly;

(b) if he or she is absent from the sittings of the Assembly for such period and in such circumstances as may be prescribed in the Standing Orders of the Assembly;

(c) if he or she ceases to be a Caymanian;

(d) if he or she ceases to be resident in the Cayman Islands;

(e) if he or she resigns his or her seat by writing under his or her hand addressed to the Governor;

(f) if he or she becomes a party to any contract with the Government for or on account of the public service, or if any firm in which he or she is a partner or any company of which he or she is a director or manager becomes a party to any such contract, or if he or she becomes a partner in a firm or a director or manager of a company which is a party to any such contract; but if in the circumstances it appears to it to be just to do so, the Assembly may exempt any elected member from vacating his or her seat under this paragraph if the member, before or as soon as practicable after becoming a party to the contract, or before or as soon as practicable after becoming otherwise interested in the contract (whether as a partner in a firm or as a director or manager of a company), discloses to the Assembly or, if that is impracticable, to the Clerk of the Assembly the nature of the contract and his or her interest or the interest of the firm or company in it; or

(g) subject to section 64, if any circumstances arise that, if he or she were not a member of the Assembly, would cause him or her to be disqualified for election to it by virtue of any provision of section 62(1) other than paragraph (g).

**Delay in vacation of seat to allow for an appeal**

**64.**—(1) If circumstances such as are referred to in section 63(g) arise because a member is adjudged or declared bankrupt, is certified insane or adjudged of unsound mind, is under sentence of imprisonment, is convicted of an offence involving dishonesty or is convicted of an offence relating to elections, and it is open to the member to appeal against the decision (either with or without the leave of a court or other authority), he or she shall forthwith cease to perform his or her functions as a member of the Legislative Assembly, but, subject to subsection (2), he or she shall not vacate his or her seat until the expiration of a period of 30 days thereafter; but the Governor may, at the request of the member, extend that period to enable the member to pursue any appeal against the decision, save that extensions of time exceeding in the aggregate 150 days shall not be given without the approval of the Assembly.

(2) If, on the determination of any appeal, such circumstances as aforesaid continue to exist and no further appeal is open to the member, or if for any reason, including the refusal of leave to appeal or the expiration of any time for entering an appeal, it ceases to be open to the member to appeal, he or she shall forthwith vacate his or her seat.

(3) If at any time before the member vacates his or her seat such circumstances as aforesaid cease to exist, his or her seat shall not become vacant on the expiration of the period referred to in subsection (1) and he or she may resume the performance of his or her functions as a member.

**Speaker and Deputy Speaker**

**65.**—(1) At the first sitting of the Legislative Assembly after a general election, and as soon as practicable after a vacancy occurs in the relevant office otherwise than on a dissolution of the Assembly, the elected members of the Assembly shall by a majority vote elect—

(a) a Speaker from among the elected members of the Assembly, or persons who are qualified to be elected as members of the Assembly, other than Ministers; and

(b) a Deputy Speaker from among the elected members of the Assembly other than Ministers;

and the election of the Speaker and the Deputy Speaker shall take precedence over any other business of the Assembly.

(2) A person shall vacate the office of Speaker or Deputy Speaker—

(a) upon a dissolution of the Legislative Assembly;

(b) if he or she informs the Assembly, by writing addressed to the Assembly and received by the Clerk of the Assembly, that he or she resigns his or her office;

(c) in any circumstances which, in the case of the Speaker, would cause him or her to vacate his or her seat as, or if he or she were, a member of the Assembly, or, in the case of the Deputy Speaker, if he or she ceases to be an elected member of the Assembly;

(d) if, on the date of his or her election as Speaker or Deputy Speaker, he or she is a party to, or a partner in a firm or a director or manager of a company which is a party to, any contract with the Government or if, on any date after such election he or she or a firm in which he or she is a partner or a company of which he or she is a director or manager becomes a party to any such contract or he or she becomes a partner in a firm or a director or manager of a company which is a party to any such contract, and he or she does not, before the expiration of 30 days from the date in question, disclose to the Assembly or, if that is impracticable, to the Clerk of the Assembly in writing the nature of such contract and his or her interest, or the interest of such a firm or company, in it and the Assembly does not exempt him or her from vacating his or her office under this paragraph;

(e) if he or she becomes a Minister; or

(f) on the passing, by the votes of two-thirds of the elected members of the Assembly, of a motion expressing no confidence in him or her as Speaker or Deputy Speaker, as the case may be.

(3) If the office of Speaker or Deputy Speaker becomes vacant, the Legislative Assembly shall elect another Speaker or Deputy Speaker fulfilling the requirements of subsection (1)(a) and (b).

### Determination of questions as to membership of the Legislative Assembly

**66.**—(1) Any question whether a person has been validly elected as a member of the Legislative Assembly, or whether an elected member of the Assembly has vacated his or her seat in it, shall be determined by the Grand Court, whose decision shall be final and not subject to any appeal.

(2) An application to the Grand Court for the determination of any question whether a person has been validly elected as a member of the Legislative Assembly may be made by—

(a) a person who voted or had the right to vote at the election to which the application relates;

(b) a person claiming to have had the right to be returned at such election;

(c) a person alleging himself or herself to have been a candidate at such election; or

(d) the Attorney General.

(3) An application to the Grand Court for the determination of any question whether an elected member of the Legislative Assembly has vacated his or her seat in it may be made by—

(a) any elected member of the Assembly; or

(b) the Attorney General.

(4) If any application referred to in subsection (2) or (3) is made by a person other than the Attorney General, the Attorney General may intervene and may then appear or be represented in the proceedings.

(5) A law enacted by the Legislature may make provision with respect to—

(a) the time within which, the circumstances and manner in which and the imposition of conditions under which, any application may be made to the Grand Court for the determination of any question under this section;

(b) the powers, practice and procedure of the Grand Court in relation to any such application.

(6) In the exercise of the powers conferred on him or her by this section and section 67, the Attorney General shall not be subject to the direction or control of any other person or authority.

### Penalty for sitting or voting in the Legislative Assembly when unqualified

**67.**—(1) Any person who sits or votes in the Legislative Assembly knowing or having reasonable grounds for knowing that he or she is not entitled to do so shall be liable to a penalty not exceeding 500 dollars for each day on which he or she so sits or votes.

(2) Any such penalty shall be recoverable as a debt by civil action in the Grand Court at the suit of the Attorney General.

### Leader of the Opposition

**68.**—(1) There shall be a Leader of the Opposition who shall be appointed by the Governor.

(2) The Governor shall appoint as the Leader of the Opposition—

   (a) the elected member of the Legislative Assembly recommended by a majority of the elected members of the Assembly who are members of any opposition political party whose numerical strength in the Assembly is greater than that of any other opposition political party;

   (b) if it appears to the Governor that there is no such party but that there is an elected member of the Assembly who would be acceptable as Leader of the Opposition to a majority of the members of the Assembly in opposition to the Government, that member; or

   (c) if it appears to the Governor that there is no such person, then the Governor shall appoint as Leader of the Opposition that person who in his or her opinion would be acceptable to the greatest number of members of the Assembly in opposition to the Government.

(3) If at any time between the polling in a general election and the next following dissolution of the Legislative Assembly the Governor is satisfied that, if the office of the Leader of the Opposition were then vacant, he or she would appoint to that office a person other than the person then holding it, the Governor shall revoke the appointment of the Leader of the Opposition.

(4) The office of the Leader of the Opposition shall also become vacant—

   (a) if for any reason other than a dissolution of the Legislative Assembly the holder of that office ceases to be a member of the Assembly;

   (b) when the Assembly first meets after a general election;

   (c) if the holder of that office becomes a member of the Cabinet; or

   (d) if the holder of that office resigns it by writing under his or her hand addressed to the Governor.

(5) The Governor, acting in accordance with the advice of the Leader of the Opposition, shall appoint a Deputy Leader of the Opposition from among the elected members of the Legislative Assembly in opposition to the Government.

(6) The office of Deputy Leader of the Opposition shall become vacant—

   (a) if his or her appointment is revoked by the Governor, acting in accordance with the advice of the Leader of the Opposition; or

   (b) in any of the circumstances specified in subsection (4)(a), (b), (c) and (d).

(7) In this section "opposition political party" includes a group of members of the Legislative Assembly in opposition to the Government who are prepared to support one of their number as their leader.

### Power to provide for a referendum

**69.** A law enacted by the Legislature may make provision to hold a referendum amongst persons registered as electors in accordance with section 90, on a matter or matters of national importance,

when so resolved by the majority of the elected members of the Assembly; but the question of whether the Cayman Islands should seek any amendment to this Constitution that may result in their independence shall be deemed to be a matter of national importance.

### People-initiated referendums

**70.**—(1) Without prejudice to section 69, a law enacted by the Legislature shall make provision to hold a referendum amongst persons registered as electors in accordance with section 90 on a matter or matters of national importance that do not contravene any part of the Bill of Rights or any other part of this Constitution.

(2) Before a referendum under this section may be held—

- (a) there shall be presented to the Cabinet a petition signed by not less than 25 per cent of persons registered as electors in accordance with section 90;

- (b) the Cabinet shall settle the wording of a referendum question or questions within a reasonable time period as prescribed by law; and

- (c) the Cabinet shall make a determination on the date the referendum shall be held in a manner prescribed by law.

(3) Subject to this Constitution, a referendum under this section shall be binding on the Government and the Legislature if assented to by more than 50 per cent of persons registered as electors in accordance with section 90.

### Standing Orders and committees

**71.**—(1) Subject to this Constitution, the Legislative Assembly may from time to time make, amend and revoke Standing Orders for the regulation and orderly conduct of its own proceedings and the dispatch of business, and for the passing, intituling and numbering of Bills and for their presentation to the Governor for assent; but no such Standing Orders or amendment or revocation of them shall have effect unless they have been approved by the Governor.

(2) Standing Orders must provide for fair procedures, adequate notice of Bills and motions, and a sufficient opportunity for members of the Legislative Assembly (including opposition members) to speak and otherwise participate in the proceedings of the Assembly.

(3) Standing Orders shall not be suspended or revoked without good reason.

(4) In any matter not provided for in Standing Orders, resort shall be had to the usage and practice of the House of Commons of the United Kingdom, which shall be followed as far as the same may be applicable to the Legislative Assembly and not inconsistent with Standing Orders nor with the practice of the Assembly.

(5) In cases of doubt, Standing Orders shall be interpreted in the light of the relevant usage and practice of the House of Commons, but no restriction which the House of Commons has introduced by standing order after the making of such Standing Orders shall be deemed to extend to the Legislative Assembly or its members until the Assembly has by Standing Orders provided for such restriction.

(6) Standing Orders shall make provision for the establishment of a Finance Committee of the Legislative Assembly to consider in detail the estimates of revenue and expenditure of the Cayman Islands laid before the Assembly by the Minister responsible for finance, and to examine and consider all financial Bills and such other matters relating to the finances of the Cayman Islands as may from time to time be referred to it by the Assembly and to report on them to the Assembly.

(7) The Finance Committee shall consist of all the elected members of the Legislative Assembly and shall be chaired by the Minister responsible for finance.

(8) Standing Orders may also establish one or more other standing committees of the Legislative Assembly, each of which may be charged with responsibility for monitoring the conduct of business of the Government for which responsibility has been assigned to a Minister under section 54.

(9) The composition of all such standing committees shall, so far as possible, reflect proportionately the numerical strength of all political parties or groups making up the elected membership of the Legislative Assembly.

(10) Any standing committee so established shall have power to summon any Minister, the Deputy Governor, the Attorney General or any public officer of a department of Government for which a Minister is responsible to appear before it, and to require any Minister or other person so summoned to answer questions and provide information about the conduct of business of the Government by the Minister or department concerned or, as the case may be, by the Deputy Governor or the Attorney General, and to report on its activities to the Legislative Assembly.

### Presiding in the Legislative Assembly

**72.** At sittings of the Legislative Assembly there shall preside—

  (a)  the Speaker; or

  (b)  in the absence of the Speaker, the Deputy Speaker; or

  (c)  in the absence of the Speaker and the Deputy Speaker, such one of the elected members other than a Minister as may be elected by the elected members.

### The Legislative Assembly may transact business notwithstanding vacancies

**73.** The Legislative Assembly shall not be disqualified for the transaction of business by reason of any vacancy in its membership (including any vacancy not filled when the Assembly is first constituted or is reconstituted at any time) and any proceedings in it shall be valid even though some person who was not entitled to do so sat or voted in the Assembly or otherwise took part in those proceedings.

### Quorum

**74.**—(1) If at any sitting of the Legislative Assembly a quorum is not present and any member of the Assembly who is present objects on that account to the transaction of business and, after such interval as may be prescribed in Standing Orders, the person presiding at the sitting ascertains that a quorum is still not present, he or she shall adjourn the Assembly.

(2) For the purposes of this section a quorum shall consist of a majority of the elected members of the Legislative Assembly in addition to the person presiding.

### Voting

**75.**—(1) Save as otherwise provided in this Constitution, all questions proposed for decision in the Legislative Assembly shall be determined by a majority of votes of the members present and voting.

(2) The Speaker or other member presiding shall not vote unless on any question the votes are equally divided, in which case he or she shall have and exercise a casting vote.

(3) The Deputy Governor and the Attorney General shall not be entitled to vote.

### Summoning of persons to assist the Legislative Assembly

**76.** The Speaker or other person presiding may, when in his or her opinion the business before the Legislative Assembly makes it desirable, summon any person to a meeting of the Assembly even though that person is not a member of the Assembly.

### Introduction of Bills

**77.**—(1) Subject to this Constitution and Standing Orders, any member may introduce any Bill or propose any motion for debate in, or may present any petition to, the Legislative Assembly, and the same shall be debated and disposed of according to Standing Orders.

(2) Standing Orders shall require that, except in a case of emergency, every Bill introduced by the Government shall be published at least 21 days before the commencement of the meeting at which it is scheduled to be introduced.

(3) Except on the recommendation of the Minister responsible for finance, the Legislative Assembly shall not—

- (a) proceed upon any Bill (including any amendment to a Bill) which, in the opinion of the Speaker, makes provision for imposing or increasing any tax, for imposing or increasing any charge on the revenues or other funds of the Cayman Islands, for altering any such charge otherwise than by reducing it, or for compounding or remitting any debt due to the Cayman Islands;

- (b) except in the case of a motion proposing a resolution under section 69, proceed upon any motion (including any amendment to a motion) the effect of which, in the opinion of the person presiding in the Assembly, is that provision would be made for any of the purposes aforesaid; or

- (c) receive any petition which, in the opinion of the person presiding in the Assembly, requests that provision be made for any of the purposes aforesaid.

### Assent to Bills

**78.**—(1) A Bill shall not become a law until—

- (a) the Governor has assented to it in Her Majesty's name and on Her Majesty's behalf and has signed it in token of his or her assent; or

- (b) Her Majesty has given Her assent to it through a Secretary of State and the Governor has signified Her assent by proclamation.

(2) When a Bill is presented to the Governor for his or her assent, he or she shall, subject to this Constitution and any instructions addressed to him or her by Her Majesty through a Secretary of State, declare that he or she assents or refuses to assent to it or that he or she reserves the Bill for the signification of Her Majesty's pleasure; but, unless he or she has been authorised by a Secretary of State to assent to it, the Governor shall reserve for the signification of Her Majesty's pleasure any Bill which appears to him or her, acting in his or her discretion—

- (a) to be in any way repugnant to, or inconsistent with, this Constitution;

- (b) to determine or regulate the privileges, immunities or powers of the Legislative Assembly or of its members;

- (c) to be inconsistent with any obligation of Her Majesty or of Her Majesty's Government in the United Kingdom towards any other State or any international organisation;

- (d) to be likely to prejudice the Royal prerogative;

- (e) to affect any matter for which the Governor is responsible under section 55; or

- (f) to affect the integrity or independence of the public service or of the administration of justice.

(3) Before refusing assent to any Bill, the Governor shall explain to the members of the Legislative Assembly why he or she proposes to do so, if necessary in confidence, and shall allow those members the opportunity to submit their views on the matter in writing to a Secretary of State.

### Return of Bills by the Governor

**79.**—(1) Where the Governor decides to return any Bill to the Legislative Assembly when it is presented for his or her assent, he or she shall do so within 60 days of receiving it, transmitting with it any amendments which he or she may recommend and the reasons for them, and the Assembly shall consider such recommendation.

(2) The Governor shall inform the Speaker as soon as practicable that he or she intends to return a Bill in pursuance of subsection (1).

**Disallowance of laws**

**80.**—(1) Any law assented to by the Governor may be disallowed by Her Majesty through a Secretary of State; but no law shall be disallowed until the expiration of a reasonable period notified by a Secretary of State to the Governor with an explanation of the difficulties perceived by the Secretary of State, and the Governor shall forthwith advise the Speaker of that period and those difficulties in order to give the Legislative Assembly an opportunity to reconsider the law in question.

(2) Whenever any law has been disallowed by Her Majesty the Governor shall cause notice of such disallowance to be published by Government Notice and the law shall be annulled with effect from the date of such publication.

(3) Section 16(1) of the Interpretation Act 1978(a) shall apply to the annulment of any law under this section as it applies to the repeal of an Act of Parliament, save that any enactment repealed or amended by or in pursuance of that law shall have effect as from the date of the annulment as if that law had not been made.

**Governor's reserved power**

**81.** If the Governor considers that the enactment of legislation is necessary or desirable with respect to or in the interests of any matter for which he or she is responsible under section 55 but, after consultation with the Premier, it appears to the Governor that the Cabinet is unwilling to support the introduction into the Legislative Assembly of a Bill for the purpose or that the Assembly is unlikely to pass a Bill introduced into it for the purpose, the Governor may, with the prior approval of a Secretary of State, cause a Bill for the purpose to be published in a Government Notice and may (notwithstanding that the Bill has not been passed by the Assembly) assent to it on behalf of Her Majesty; but the Bill shall be so published for at least 21 days prior to assent unless the Governor certifies by writing under his or her hand that the matter is too urgent to permit such delay in the giving of assent and so informs a Secretary of State.

**Privileges of the Legislative Assembly and its members**

**82.** A law made under this Constitution may determine and regulate the privileges, immunities and powers of the Legislative Assembly and its members, but no such privileges, immunities or powers shall exceed those of the House of Commons of the United Kingdom or of its members.

**Sessions of the Legislative Assembly**

**83.**—(1) Subject to this Constitution, the sessions of the Legislative Assembly shall be held at such places and begin at such times as the Governor may from time to time by proclamation appoint.

(2) There shall be at least one session of the Legislative Assembly in every calendar year.

**Prorogation and dissolution**

**84.**—(1) The Governor, acting after consultation with the Premier, and by proclamation, may prorogue the Legislative Assembly, and shall do so annually.

(2) The Governor, acting after consultation with the Premier, may at any time, by proclamation, dissolve the Legislative Assembly.

(3) The Governor shall dissolve the Legislative Assembly at the expiration of four years from the date when the Assembly first meets after any general election unless it has been sooner dissolved pursuant to this Constitution.

---

(a)   1978 c.30.

**Recalling dissolved Legislative Assembly**

85. If, between a dissolution of the Legislative Assembly and the date on which the next ensuing general election is held, a matter arises of a nature and urgency which in the opinion of the Governor makes it necessary for the Assembly to be recalled, the Governor may, acting after consultation with the Premier, summon the Assembly that has been dissolved and that Assembly shall thereupon be deemed (except for the purposes of section 86(1)) not to have been dissolved, but shall be deemed (except as aforesaid) to be dissolved on the date on which the next ensuing general election is held.

**General elections and bye-elections**

86.—(1) A general election of members of the Legislative Assembly shall be held at such time within two months after every dissolution of the Assembly as the Governor shall appoint by proclamation published in a Government Notice.

(2) Whenever any person vacates his or her seat as a member of the Legislative Assembly for any reason other than its dissolution, an election to fill the vacancy shall be held within two months after the occurrence of the vacancy, unless the Assembly is sooner dissolved or the date on which the Assembly must be dissolved under section 84(3) is less than four months after the occurrence of the vacancy.

**Public Accounts Committee**

87.—(1) There shall be a Public Accounts Committee of the Legislative Assembly with power and responsibility to examine the public accounts of the Cayman Islands and the accounts and financial dealings of all authorities, offices and departments of Government, of all courts, and of all Government-owned companies.

(2) The members of the Committee, and any person authorised by it to act on its behalf, shall have access to all books, records, reports and other documents relating to the accounts referred to in subsection (1).

(3) The Committee shall receive reports from the Auditor General as provided in section 114(7).

(4) The Committee shall be re-elected as soon as practicable after the Legislative Assembly first meets following a general election.

**Electoral Boundary Commission**

88.—(1) An Electoral Boundary Commission shall be appointed from time to time at such time as the Governor, acting after consultation with the Premier and the Leader of the Opposition, may determine; but—

   (a) the first such Commission shall be appointed as soon as practicable after the date of commencement of this Constitution; and

   (b) each subsequent Commission shall be appointed not later than eight years after the last Commission submitted its report under section 89.

(2) An Electoral Boundary Commission shall consist of—

   (a) a Chairman who shall be appointed by the Governor, acting in his or her discretion;

   (b) one member appointed by the Governor, acting in accordance with the advice of the Premier; and

   (c) one member appointed by the Governor, acting in accordance with the advice of the Leader of the Opposition.

(3) A person shall not be qualified to be appointed as the Chairman of an Electoral Boundary Commission if he or she is a member of the Legislative Assembly or a public officer.

(4) The Chairman of an Electoral Boundary Commission shall vacate his or her office—

(a) on the day following the date of submission under section 89 of the report of the Commission;

(b) if he or she becomes a member of the Legislative Assembly or a public officer; or

(c) if the Governor, acting in his or her discretion, directs that he or she shall be removed from office for inability to discharge the functions of that office (whether arising from infirmity of body or mind or any other cause) or for misbehaviour.

(5) Any other member of an Electoral Boundary Commission shall vacate his or her office—

(a) on the day following the date of submission under section 89 of the report of the Commission; or

(b) if his or her appointment is revoked by the Governor, acting, in the case of a member appointed under subsection (2)(b), in accordance with the advice of the Premier or, in the case of a member appointed under subsection (2)(c), in accordance with the advice of the Leader of the Opposition.

(6) An Electoral Boundary Commission may regulate its own procedure and, with the consent of the Governor, confer powers and impose duties on any public officer or on any authority of the Government for the purpose of the discharge of its functions.

(7) For the purpose of the discharge of its functions, an Electoral Boundary Commission shall invite views from members of the public and may seek such advice as it considers appropriate.

(8) An Electoral Boundary Commission may act notwithstanding any vacancy in its membership (including any vacancy not filled when appointments of members are first made) and its proceedings shall be valid even though some person who was not entitled to do so took part in them, but any decision of the Commission shall require the concurrence of not less than two members of the Commission.

(9) In the exercise of its functions under this Constitution, an Electoral Boundary Commission shall not be subject to the direction or control of any other person or authority.

### Review and alteration of electoral district boundaries

**89.**—(1) An Electoral Boundary Commission shall, as soon as practicable after its appointment, review the boundaries of the electoral districts into which the Cayman Islands are divided and, taking into account the changes or proposed changes, if any, in the number of electoral districts or of elected members of the Legislative Assembly, shall submit a report to the Governor and the Legislative Assembly containing its recommendations for any changes in the number and boundaries of the electoral districts.

(2) In preparing its report under this section the Commission shall—

(a) take no account of the racial distribution of electors within the Cayman Islands;

(b) take into account the natural boundaries within the Cayman Islands;

(c) have regard to existing electoral districts; and

(d) subject to the foregoing provisions of this subsection, ensure that—

(i) so far as reasonably practicable, across all electoral districts there will be an equal ratio between the number of elected members of the Legislative Assembly representing each electoral district and the number of persons qualified to be registered as electors under section 90 in that district; but

(ii) Cayman Brac and Little Cayman shall (between these two islands) at all times return at least two members to the Legislative Assembly.

(3) As soon as may be after the Commission has submitted a report under subsection (1), the Premier shall lay before the Legislative Assembly for its approval the draft of an order by the Governor for giving effect, whether with or without modifications, to the recommendations contained in the report, and that draft may make provision for any matters which appear to the Premier to be incidental to or consequential upon the other provisions of the draft.

45

(4) Where any draft order laid under this section would give effect to any such recommendations with modifications, the Premier shall lay before the Legislative Assembly together with the draft a statement of the reasons for the modifications.

(5) If the motion for the approval of any draft order laid under this section is rejected by the Legislative Assembly or is withdrawn by leave of the Assembly, an amended draft shall be laid without undue delay by the Premier before the Assembly.

(6) If any draft order laid under this section is approved by resolution of the Legislative Assembly, the Premier shall submit it to the Governor who shall make an order (which shall be published in a Government Notice) in terms of the draft; and that order shall come into force for the determination of the boundaries of the electoral districts to which it relates upon the next dissolution of the Assembly after it is made.

(7) The question of the validity of any order by the Governor purporting to be made under this section and reciting that a draft of the order has been approved by the Legislative Assembly shall not be inquired into in any court.

**Qualifications of electors**

**90.**—(1) Subject to section 91, a person shall be entitled to be registered as an elector in one electoral district only, but he or she shall not be entitled to be registered as an elector for elections to the Legislative Assembly unless—

 (a) he or she was, on the day immediately preceding the date of commencement of this Constitution, entitled to be registered as an elector; or

 (b) he or she—

  (i) is a Caymanian; and

  (ii) has attained the age of eighteen years; and

  (iii) is resident in the Cayman Islands at the date of registration; and

  (iv) has been resident in the Cayman Islands for a period or periods amounting to not less than two years out of the four years immediately preceding the date of registration; or

 (c) on the day of the issue of a writ ordering an election, he or she is otherwise qualified under paragraph (b) but has not attained the age of eighteen years, but he or she will attain that age on or before the polling day at the election.

(2) Any period of absence for any of the purposes specified in section 61(3) shall be disregarded in determining whether a person is or has been resident in the Cayman Islands for the purposes of this section.

**Disqualifications of electors**

**91.**—(1) A person shall not be entitled to be registered as an elector in any electoral district who—

 (a) subject to subsection (2), is serving a sentence of imprisonment (by whatever name called) exceeding twelve months imposed on him or her by a court in any country or substituted by competent authority for some other sentence imposed on him or her by such a court, or is under such a sentence of imprisonment the execution of which has been suspended;

 (b) is a person certified to be insane or otherwise adjudged to be of unsound mind under any law in force in the Cayman Islands; or

 (c) is disqualified for registration as an elector by any law in force in the Cayman Islands relating to offences connected with elections.

(2) For the purposes of subsection (1)(a)—

 (a) where a person is serving two or more sentences of imprisonment that are required to be served consecutively he or she shall, throughout the whole time during which he or she so

serves, be regarded as serving a sentence exceeding twelve months if (but not unless) any one of those sentences exceeds that term;

(b)  no account shall be taken of a sentence of imprisonment imposed as an alternative to or in default of the payment of a fine; and

(c)  no account shall be taken of a sentence of imprisonment imposed by a court outside the Cayman Islands other than a sentence on conviction of an offence constituted by conduct which, if it occurred within the Cayman Islands, would constitute an offence punishable under the law of the Cayman Islands by imprisonment of twelve months or any greater punishment.

**Right to vote at elections**

**92.**—(1) Any person who is registered as an elector in an electoral district shall, while so registered, be entitled to vote at any election in that district for an elected member of the Legislative Assembly, unless he or she is prohibited from so voting by any law in force in the Cayman Islands—

(a)  because he or she is a returning officer; or

(b)  because he or she has been concerned in any offence connected with elections.

(2) No person shall vote at any election in any electoral district who—

(a)  is not registered as an elector in that district;

(b)  has voted in another electoral district at the same election; or

(c)  is for any reason unable to attend to vote in person (except so far as it may be provided by law that such persons may vote).

**Law as to elections**

**93.** Subject to this Constitution, a law enacted by the Legislature may provide for the election of members of the Legislative Assembly, including (without prejudice to the generality of the foregoing power) the following matters—

(a)  the registration of electors;

(b)  the ascertainment of the qualifications of electors and of candidates for election;

(c)  the division of the Cayman Islands into electoral districts for the purpose of elections;

(d)  the holding of elections;

(e)  the determination of any question whether any person has been validly elected as a member of the Assembly or whether the seat of any elected member in the Assembly has become vacant;

(f)  the definition and trial of offences connected with elections and the imposition of penalties for them, including the disqualification for membership of the Assembly, or for registration as an elector, or for voting at elections, of any person concerned in any such offence; and

(g)  the disqualification for election as members of the Assembly of persons holding or acting in any office the functions of which involve any responsibility for, or in connection with, the conduct of any election or the compilation or revision of any electoral register.

# PART V

## THE JUDICATURE

### The Grand Court

**Constitution and jurisdiction of the Grand Court**

**94.**—(1) There shall be a Grand Court for the Cayman Islands which shall be a superior Court of Record and shall have such jurisdiction and powers as may be conferred on it by this Constitution and any other law.

(2) The Court shall have and use a seal bearing the style of the Court and a device approved by the Chief Justice.

**Composition of the Grand Court**

**95.**—(1) The judges of the Grand Court shall be a Chief Justice and such number of other judges (if any) as may be prescribed by a law made under this Constitution; but the office of a judge shall not, without his or her consent, be abolished during his or her continuance in office.

(2) The judges of the Grand Court shall be persons holding such qualifications for appointment as a judge of the Grand Court as may be prescribed by a law enacted by the Legislature; but a person who has been appointed as a judge of the Grand Court may continue in office notwithstanding any subsequent variation in the qualifications so prescribed.

(3) All the judges of the Grand Court, including the Chief Justice, shall be appointed by the Governor by instrument under the public seal in accordance with section 106.

(4) It shall be lawful for a person qualified for appointment as a judge of the Grand Court to be so appointed (regardless of his or her age) for such term as may be specified in the instrument of appointment, and section 96 shall have effect in relation to any person so appointed as if he or she would attain the retiring age applicable to that office on the day on which the specified term expires.

(5) The emoluments and allowances of a judge of the Grand Court shall be prescribed by law and shall be charged on the revenues of the Cayman Islands, and the emoluments and allowances of a judge shall not, without his or her consent, be reduced during his or her continuance in office.

(6) The Chief Justice shall be the head of the judiciary of the Cayman Islands.

(7) The Chief Justice shall have responsibility for and management of all matters arising in judicature, including responsibility—

    (a) for representing the views of the judiciary to the Government and the Legislative Assembly, including, where appropriate, through the Attorney General;

    (b) for the maintenance of appropriate arrangements for the welfare, training and guidance of the judiciary within available resources;

    (c) subject to paragraph (d), for the maintenance of appropriate arrangements for the deployment of the judiciary and the allocation of work within courts;

    (d) after consultation with the President of the Court of Appeal who shall be responsible for the allocation of work within the Court of Appeal, for the maintenance of appropriate arrangements for the work of that court.

**Tenure of office of judges of the Grand Court**

**96.**—(1) Subject to this section and section 95(4), a judge of the Grand Court shall vacate his or her office when he or she attains the age of 65 years; but—

    (a) the Governor may permit a judge who attains the age of 65 years to continue in office until he or she has attained such later age, not exceeding the age of 70 years, as may have been agreed between that judge and the Governor following the recommendation of the Judicial and Legal Services Commission;

(b)    a judge who has attained the age at which he or she would otherwise vacate office under this subsection may continue in office for such period as may be necessary to enable him or her to deliver judgment or to do any other thing in relation to any proceeding commenced before him or her before he or she attained that age.

(2) A judge of the Grand Court may be removed from office only for inability to discharge the functions of his or her office (whether arising from infirmity of body or mind or any other cause) or for misbehaviour, and shall not be so removed except in accordance with subsection (3).

(3) A judge of the Grand Court shall be removed from office by the Governor by instrument under the public seal if the question of the removal of that judge from office has, at the request of the Governor made in pursuance of subsection (4), been referred by Her Majesty to the Judicial Committee of Her Majesty's Privy Council under section 4 of the Judicial Committee Act 1833(a) or any other enactment enabling Her Majesty in that behalf, and the Judicial Committee has advised Her Majesty that the judge ought to be removed from office for inability as aforesaid or misbehaviour.

(4) If the Governor considers that the question of removing a judge of the Grand Court from office for inability as aforesaid or misbehaviour ought to be investigated, then—

(a)    the Governor shall refer the matter to the Judicial and Legal Services Commission;

(b)    the Judicial and Legal Services Commission shall inquire into the matter and report on the facts of it to the Governor and advise the Governor whether he or she should request that the question of the removal of that judge should be referred by Her Majesty to the Judicial Committee; and

(c)    if the Judicial and Legal Services Commission so advises, the Governor shall request that the question should be referred accordingly.

(5) The Commissions of Inquiry Law as in force on the date of commencement of this Constitution shall, subject to this section, apply as nearly as may be in relation to the Judicial and Legal Services Commission conducting inquiries under subsection (4) or, as the context may require, to the members of that Commission as it applies in relation to Commissions or Commissioners appointed under that Law.

(6) If the question of removing a judge of the Grand Court from office has been referred to the Judicial and Legal Services Commission under subsection (4), the Governor may suspend the judge from performing the functions of his or her office, and any such suspension may at any time be revoked by the Governor, and shall in any case cease to have effect—

(a)    if the Judicial and Legal Services Commission advises the Governor that he or she should not request that the question of the removal of the judge be referred by Her Majesty to the Judicial Committee; or

(b)    if the Judicial Committee advises Her Majesty that the judge ought not to be removed from office.

(7) The powers conferred on the Governor by this section shall be exercised by the Governor acting in his or her discretion.

**Acting judges of the Grand Court**

**97.**—(1) If the office of Chief Justice is vacant, or if the holder of it is for any reason unable to perform the functions of that office, then, until some other person has been appointed to, and has assumed the functions of, that office, or until the holder of that office has resumed those functions, as the case may be, such one of the other judges of the Grand Court or such other person qualified for appointment as a judge of the Grand Court as the Governor, acting in accordance with section 106, may appoint for that purpose shall act in that office.

(2) If the office of a judge of the Grand Court other than the Chief Justice is vacant, or if any such judge is acting as Chief Justice or is for any reason unable to perform the functions of his or

---

(a)   1833 c.41.

her office, the Governor, acting in accordance with section 106, may appoint a person qualified for appointment as a judge of the Grand Court to act as such a judge.

(3) A person may be appointed under subsection (1) or (2) even though he or she has attained the age of 65 years.

(4) Any person appointed under this section to act as a judge of the Grand Court shall, unless he or she is removed from office under section 96, continue so to act for the period of his or her appointment or, if no such period is specified, until his or her appointment is revoked by the Governor, acting in his or her discretion; but a person whose appointment so to act has expired or been revoked may, with the permission of the Governor, acting in his or her discretion, continue so to act for such period as may be necessary to enable him or her to deliver judgment or to do any other thing in relation to any proceeding previously commenced before him or her.

### Oaths to be taken by judges of the Grand Court

**98.** Before assuming the functions of his or her office, every judge of the Grand Court shall make and subscribe before the Governor, or some other person authorised for that purpose by the Governor, acting in his or her discretion, oaths of allegiance and for the due execution of judicial office in the forms set out in the Schedule to this Constitution.

The Court of Appeal

### Constitution and jurisdiction of the Court of Appeal

**99.**—(1) There shall be a Court of Appeal for the Cayman Islands which shall be a superior Court of Record and shall have jurisdiction and powers to hear and determine such appeals from the Grand Court as may be prescribed by this Constitution or any other law.

(2) The Court of Appeal shall, subject to this Constitution and any other law, have all the powers and jurisdiction that are possessed by the Grand Court under any law in force in the Cayman Islands; and decisions of the Court of Appeal in respect of any appeal from the Grand Court shall, subject as aforesaid, be enforced in the Cayman Islands in the same way as decisions of that Court.

(3) Subsection (1) shall not apply to appeals relating to any matter in respect of which this Constitution or any other law provides that the decision of the Grand Court is to be final.

(4) The Court of Appeal shall have and use a seal bearing the style of the Court and a device approved by the President.

### Composition of the Court of Appeal

**100.**—(1) The judges of the Court of Appeal shall be a President and not less than two Justices of Appeal.

(2) The judges of the Court of Appeal shall be appointed by the Governor by instrument under the public seal in accordance with section 106; but the office of a judge shall not, without his or her consent, be abolished during his or her continuance in office.

(3) A person shall be qualified to be appointed as a judge of the Court of Appeal if, and shall not be qualified to be so appointed unless, he or she holds or has held high judicial office.

(4) A judge of the Grand Court may exercise any of the powers of a single judge of the Court of Appeal to such extent as a law enacted by the Legislature may prescribe.

### Tenure of office of judges of the Court of Appeal

**101.**—(1) The judges of the Court of Appeal shall be appointed for such period as may be specified in their respective instruments of appointment; but a person whose appointment as a judge of the Court of Appeal has expired may, with the permission of the Governor, acting in his or her discretion, continue in office for such period as may be necessary to enable him or her to

deliver judgment or to do any other thing in relation to any proceeding previously commenced before him or her.

(2) A judge of the Court of Appeal may be removed from office only for inability to discharge the functions of his or her office (whether arising from infirmity of body or mind or any other cause) or for misbehaviour, and shall not be so removed except in accordance with subsection (3).

(3) A judge of the Court of Appeal shall be removed from office by the Governor by instrument under the public seal if the question of the removal of that judge from office has, at the request of the Governor made in pursuance of subsection (4), been referred by Her Majesty to the Judicial Committee of Her Majesty's Privy Council under section 4 of the Judicial Committee Act 1833 or any other enactment enabling Her Majesty in that behalf, and the Judicial Committee has advised Her Majesty that the judge ought to be removed from office for inability as aforesaid or misbehaviour.

(4) If the Governor considers that the question of removing a judge of the Court of Appeal from office for inability as aforesaid or misbehaviour ought to be investigated, then—

    (a)  the Governor shall refer the matter to the Judicial and Legal Services Commission;

    (b)  the Judicial and Legal Services Commission shall inquire into the matter and report on the facts of it to the Governor and advise the Governor whether he or she should request that the question of the removal of that judge should be referred by Her Majesty to the Judicial Committee; and

    (c)  if the Judicial and Legal Services Commission so advises, the Governor shall request that the question should be referred accordingly.

(5) The Commissions of Inquiry Law as in force on the date of commencement of this Constitution shall, subject to this section, apply as nearly as may be in relation to the Judicial and Legal Services Commission conducting inquiries under subsection (4) or, as the context may require, to the members of that Commission as it applies to Commissions or Commissioners appointed under that Law.

(6) If the question of removing a judge of the Court of Appeal from office has been referred to the Judicial and Legal Services Commission under subsection (4), the Governor may suspend the judge from performing the functions of his or her office, and any such suspension may at any time be revoked by the Governor, and shall in any case cease to have effect—

    (a)  if the Judicial and Legal Services Commission advises the Governor that he or she should not request that the question of the removal of the judge from office should be referred by Her Majesty to the Judicial Committee; or

    (b)  if the Judicial Committee advises Her Majesty that the judge ought not to be removed from office.

(7) The powers conferred on the Governor by this section shall be exercised by the Governor acting in his or her discretion.

### Acting judges of the Court of Appeal

**102.**—(1) If the office of the President of the Court of Appeal is vacant, or if the holder of it is for any reason unable to perform the functions of that office, then, until some other person has been appointed to, and has assumed the functions of, that office or until the holder of it has resumed those functions, as the case may be, such one of the Justices of Appeal or such other person qualified for appointment as a judge of the Court of Appeal as the Governor, acting in accordance with section 106, may appoint for that purpose shall act in the office of the President.

(2) If the office of a Justice of Appeal is vacant, or if any Justice of Appeal is acting as the President or is for any reason unable to perform the functions of his or her office, the Governor, acting in accordance with section 106, may appoint a person qualified for appointment as a judge of the Court of Appeal to act as a Justice of Appeal.

(3) Any person appointed under this section to act as a Justice of Appeal shall, unless he or she is removed from office under section 101, continue so to act for the period of his or her appointment or, if no such period is specified, until his or her appointment is revoked by the

Governor, acting in his or her discretion; but a person whose appointment so to act has expired or been revoked may, with the permission of the Governor, acting in his or her discretion, continue so to act for such period as may be necessary to enable him or her to deliver judgment or to do any other thing in relation to any proceeding previously commenced before him or her.

### Oaths to be taken by judges of the Court of Appeal

**103.** Before assuming the functions of his or her office every judge of the Court of Appeal shall make and subscribe before the Governor, or some other person authorised for that purpose by the Governor, acting in his or her discretion, oaths of allegiance and for the due execution of judicial office in the forms set out in the Schedule to this Constitution.

Other matters

### Subordinate courts

**104.**—(1) A law enacted by the Legislature may establish courts subordinate to the Grand Court.

(2) The Grand Court shall have jurisdiction to supervise the proceedings before any subordinate court and may make such orders, issue such process and give such directions as it may consider appropriate for the purpose of ensuring that justice is duly administered by any such courts.

### Judicial and Legal Services Commission

**105.**—(1) There shall be in and for the Cayman Islands a Judicial and Legal Services Commission which shall consist of—

(a) a Chairman and one other member, neither of whom shall be a lawyer, appointed by the Governor, acting after consultation with the Premier and the Leader of the Opposition;

(b) the President of the Court of Appeal, *ex officio*;

(c) a person appointed by the Governor, acting in his or her discretion, who holds or has held high judicial office in the Cayman Islands and has recent personal knowledge of the courts in the Cayman Islands;

(d) two persons appointed by the Governor, acting in his or her discretion, who hold or have held high judicial office in a Commonwealth country or Ireland, but do not currently hold such office in the Cayman Islands; and

(e) two attorneys-at-law qualified to practise in the Cayman Islands, one with experience in Government service and one with experience in private practice, appointed by the Governor, acting after consultation with representatives of legal professional organisations in the Cayman Islands and, where appropriate, the Attorney General.

(2) No person shall be qualified to be appointed to the Judicial and Legal Services Commission if he or she is a member of, or a candidate for election to, the Legislative Assembly or (except for appointment under subsection (1)(e)) holds or is acting in any public office.

(3) The office of a member of the Judicial and Legal Services Commission shall become vacant—

(a) at the expiration of five years from the date of his or her appointment or such earlier time as may be specified in the instrument by which he or she was appointed;

(b) if he or she resigns office by writing under his or her hand addressed to the Governor;

(c) if he or she becomes a member of, or a candidate for election to, the Legislative Assembly, or (except for a member appointed under subsection (1)(e)) is appointed to or to act in any public office; or

(d) if the Governor, acting in his or her discretion, directs that he or she shall be removed from office for inability to discharge the functions of that office (whether arising from infirmity of body or mind or any other cause) or for misbehaviour.

(4) If the office of a member of the Judicial and Legal Services Commission becomes vacant or if such a member is for any reason unable to perform the functions of that office, the Governor, acting in accordance with subsection (1) for the appointment of that member, may appoint another suitably qualified person to that office for the unexpired term of the previous holder of the office or until the holder of the office is able to resume his or her functions.

(5) Any decision of the Judicial and Legal Services Commission shall require the concurrence of not less than five members of the Commission, and the Commission shall take its decisions in such form and manner as it may determine; but any decision relating to the appointment of the President of the Court of Appeal or the Chief Justice shall require the concurrence of at least two members of the Commission who have judicial experience.

(6) In the exercise of their functions, the Judicial and Legal Services Commission and its members shall not be subject to the direction or control of any other person or authority.

(7) The Judicial and Legal Services Commission may regulate its own procedure, which may include meeting by teleconference or other electronic means of communication.

**Functions of Judicial and Legal Services Commission**

**106.**—(1) Power to make appointments to the offices to which this section applies, and to remove and to exercise disciplinary control over persons holding or acting in such offices, shall vest in the Governor, acting in accordance with the advice of the Judicial and Legal Services Commission; but the Governor, acting in his or her discretion, may act otherwise than in accordance with that advice if he or she determines that compliance with that advice would prejudice Her Majesty's service.

(2) Before exercising the powers vested in the Governor by subsection (1) the Governor may, acting in his or her discretion, once refer the advice of the Judicial and Legal Services Commission back to the Commission for reconsideration by it.

(3) If the Judicial and Legal Services Commission, having reconsidered its original advice under subsection (2), substitutes for it different advice, subsection (2) shall apply to that different advice as it applies to the original advice.

(4) This section applies to the offices of—

    (a)  Chief Justice and other judge of the Grand Court;

    (b)  President of the Court of Appeal and other judge of the Court of Appeal;

    (c)  Attorney General;

    (d)  Director of Public Prosecutions;

    (e)  Magistrate;

    (f)  such other offices in the public service, for appointment to which persons are required to possess legal qualifications, as may be prescribed by any law enacted by the Legislature.

(5) No member of the Judicial and Legal Services Commission shall participate in any proceedings of the Commission which affect him or her personally.

(6) In cases where the Judicial and Legal Services Commission conducts an inquiry under section 96(4) or 101(4), the President of the Court of Appeal and any current judge of the Grand Court who is a member of the Commission shall not participate in that inquiry other than as a witness.

(7) A person holding the office of Attorney General, Director of Public Prosecutions or Magistrate may only be removed from office for inability to discharge the functions of his or her office (whether arising from infirmity of body or mind or any other cause) or for misbehaviour.

(8) Where the issue of the removal from office of any person holding one of the offices mentioned in subsection (4)(c), (d), (e) or (f) has been referred to the Judicial and Legal Services Commission, the Governor may, acting after consultation with the Commission, suspend that person from performing the functions of his or her office pending the outcome of the referral.

(9) Any suspension, removal or disciplinary action taken under this section shall be carried out in accordance with the highest appropriate standards of procedural fairness.

(10) The Judicial and Legal Services Commission shall—

(a)  draw up a code of conduct for the judiciary and a procedure for dealing with complaints; and

(b)  have such other functions as may be conferred on it by a law enacted by the Legislature.

(11) Subject to subsection (6), this section is without prejudice to sections 96 and 101.

### Judicial administration

**107.** The Legislature and the Cabinet shall uphold the rule of law and judicial independence, and shall ensure that adequate funds are provided to support the judicial administration in the Cayman Islands.

# PART VI

## THE PUBLIC SERVICE

### Overriding duty of public officers

**108.** Subject to this Constitution, all public officers must—

(a)  act in accordance with the best interests of the Cayman Islands and not in their own private interests; and

(b)  implement Government policy to the best of their ability and in accordance with the directions given to them by the Cabinet or other responsible person or authority.

### Appointment, etc., of public officers

**109.**—(1) Power to make appointments to public offices, and to transfer, remove or exercise disciplinary control over persons holding or acting in such offices, is, subject to this Constitution, vested in the Governor acting in his or her discretion.

(2) Subject to subsections (3) and (4), the Governor, acting in his or her discretion, may by regulations delegate, to such extent and subject to such conditions as may be specified in the regulations, the powers vested in him or her by subsection (1) to such public officers as may be specified.

(3) Subject to subsection (4), a law enacted by the Legislature may provide for the powers vested in the Governor by subsection (1) to be exercised by public officers subordinate to the Governor, and may enable the Governor to delegate those powers to such public officers in his or her discretion.

(4) No regulations made under subsection (2) shall delegate any powers vested in the Governor in relation to the offices of Financial Secretary, Commissioner of Police, Auditor General, Information Commissioner, Complaints Commissioner or to any office to which section 106 applies, and no law enacted by the Legislature may provide for any person or authority other than the Governor to exercise those powers.

### Applicability of pensions law

**110.**—(1) The law applicable to the grant and payment to any officer, or to his or her widow or widower, children, dependants or personal representatives, of any pension, gratuity or other like allowance (in this section referred to as "an award") in respect of the service of that officer in a public office shall be that in force on the relevant day or any later law not less favourable to the person concerned.

(2) For the purposes of this section the relevant day is—

(a)  in relation to an award granted before the appointed day, the day on which the award was granted;

(b) in relation to an award granted or to be granted on or after the appointed day to or in respect of a person who was a public officer before that day, the day immediately before that day;

(c) in relation to an award granted or to be granted to or in respect of a person who first becomes a public officer on or after the appointed day, the day on which he or she becomes a public officer.

(3) In subsection (2) "the appointed day" means the date of commencement of this Constitution.

(4) For the purposes of this section, insofar as the law applicable to an award depends on the option of the person to or in respect of whom it is granted or to be granted, the law for which he or she opts shall be taken to be more favourable to him or her than any other law for which he or she might have opted.

(5) Where any sum is required for the payment of an award and no, or insufficient, provision has been made for it under a law made by the Legislature, that sum shall be charged on and paid out of the revenues of the Cayman Islands.

# PART VII

## FINANCE

**Revenue and Expenditure**

**111.**—(1) The Legislature shall have the authority to levy or change the rates of revenue unless otherwise provided by law.

(2) All Government expenses, assets and the incurrence of liabilities shall require appropriation by the Legislature, unless otherwise provided by law.

(3) A law enacted by the Legislature shall govern the operation of the Government's financial system and processes.

**Reporting**

**112.**—(1) At least one report annually shall be made to the Legislative Assembly on the Government's financial performance and fiscal position.

(2) The content, timing and process for financial reporting and the agencies that are to report to the Legislative Assembly shall be prescribed by law.

**Public debt**

**113.**—(1) Total Government borrowing shall not exceed an amount for which the sum of—

(a) total interest payments;

(b) total other debt servicing expenses, including arrangement fees and sinking fund expenses; and

(c) total principal or amortised debt repayments,

for a financial year is more than a percentage of Government revenue set out in law and agreed with a Secretary of State (calculated using generally accepted accounting practice) for that financial year.

(2) Subject to this Constitution, a law enacted by the Legislature may provide for a higher percentage for a limited period where a matter arises of a nature or urgency which in the opinion of the Cabinet makes it necessary to do so.

(3) For the purposes of this section, "Government borrowing" means borrowing in the name of the Government regardless of whether repayments are made directly by the Government or by a public or governmental body (including any statutory body, company or association).

**Auditor General**

**114.**—(1) There shall be an Auditor General whose office shall be a public office, and power to make appointments to the office of Auditor General, and to remove or exercise disciplinary control over any person holding or acting in that office, is vested in the Governor, acting in his or her discretion.

(2) The Auditor General may be removed from office only for inability to discharge the functions of his or her office (whether arising from infirmity of body or mind or any other cause) or for misbehaviour.

(3) The Auditor General shall have the power and responsibility to audit the public accounts of the Cayman Islands and the accounts and financial dealings of all authorities, offices and departments of Government and of all courts, and the power to undertake value for money investigations in respect of the activities of such authorities, offices and departments.

(4) The Auditor General, and any person authorised by him or her to act on his or her behalf, shall have access to all books, records, reports and other documents relating to the accounts referred to in subsection (3).

(5) The functions of the Auditor General and the accountability of that post and the Audit Office shall be further prescribed by law.

(6) In the exercise of his or her functions, the Auditor General (and any person acting on his or her behalf in the exercise of those functions) shall not be subject to the direction or control of any other person or authority, save that the Auditor General is answerable to the Public Accounts Committee of the Legislative Assembly and must attend upon the Committee at its request.

(7) The Auditor General shall submit reports on his or her activities to the Public Accounts Committee of the Legislative Assembly at least twice every year and as requested by the Committee.

**Financial Secretary**

**115.** There shall be a Financial Secretary who shall be the principal adviser to the Minister responsible for finance, and whose office shall be a public office.

# PART VIII

## INSTITUTIONS SUPPORTING DEMOCRACY

**Human Rights Commission**

**116.**—(1) There shall be in and for the Cayman Islands a Human Rights Commission (referred to in this section as "the Commission").

(2) The Commission's primary responsibility shall be promoting understanding and observance of human rights in the Cayman Islands.

(3) The Commission shall consist of a Chairman and four other members appointed by the Governor, acting after consultation with the Premier and the Leader of the Opposition, at least two of whom shall be experienced lawyers.

(4) In the exercise of their functions, the Commission and its members shall not be subject to the direction or control of any other person or authority.

(5) The Commission shall replace the Human Rights Committee.

(6) The Commission shall have power to—

  (a) receive and investigate complaints of breaches or infringements of any right or freedom contained in the Bill of Rights or international human rights treaties that have been extended to the Cayman Islands, and investigate such possible breaches or infringements on its own initiative;

   (b)  provide advice to persons who consider that their rights or freedoms have been infringed;

   (c)  provide a forum for dealing with complaints by mediation or conciliation or by making recommendations;

   (d)  issue guidance on procedures for dealing with any complaints of breaches or infringements of rights and freedoms;

   (e)  contribute to public education about human rights;

   (f)  issue reports relating to human rights issues on its own initiative;

   (g)  undertake such other functions, for the purpose of fulfilling its primary responsibility under subsection (2), as may be conferred on it by a law enacted by the Legislature.

(7) The Commission shall have no power to—

   (a)  represent or provide representation to parties to litigation;

   (b)  act in a judicial capacity or make binding determinations as to whether any right or freedom contained in the Bill of Rights or any international human rights treaty or instrument has been breached;

   (c)  compel any person to do anything against his or her will;

but any public official to which the Commission addresses a recommendation must respond in writing within a reasonable time, and such responses shall be published by the Commission unless there is a good reason to withhold publication.

(8) The Commission shall make an annual report to the Legislative Assembly about its activities.

(9) Further provision relating to the establishment and operation of the Commission may be made by the Legislature, but such legislation shall not derogate from any provision of this section.

(10) Nothing contained in or done pursuant to this section or any law made under subsection (9) shall—

   (a)  oblige a person to refer any complaint of a breach or infringement of any right or freedom referred to in the Bill of Rights to the Commission; or

   (b)  prevent a person from seeking redress directly from the Grand Court in relation to any breach or infringement of a right or freedom referred to in the Bill of Rights, and the fact that such person had previously sought the assistance of the Commission with respect to such breach or infringement shall not prejudice any legal action.

**Commission for Standards in Public Life**

**117.**—(1) There shall be in and for the Cayman Islands a Commission for Standards in Public Life (referred to in this section as "the Commission").

(2) The Commission shall consist of a Chairman and not less than two nor more than four other members, who shall be appointed by the Governor, acting after consultation with the Premier and the Leader of the Opposition, and who shall be people of the highest integrity with knowledge of practice in the private or public sector.

(3) At least one member of the Commission shall be a chartered or certified accountant of at least ten years' experience.

(4) At least one member of the Commission shall be a legal practitioner who has practised in the Commonwealth for at least ten years.

(5) A person shall not be appointed as a member of the Commission if—

   (a)  he or she is a member of the Legislative Assembly;

   (b)  he or she holds, or has at any time during the preceding three years held, a public office;

   (c)  he or she has at any time during the preceding five years held office in a political party; or

   (d)  he or she is not a Caymanian.

(6) The office of a member of the Commission shall become vacant—

(a)  at the expiration of four years from the date of his or her appointment;

(b)  if the member is absent from three consecutive meetings of the Commission, unless the absence is approved by the Governor;

(c)  if the member resigns office by writing under his or her hand addressed to the Governor;

(d)  if the member is removed from office by the Governor for inability to discharge the functions of his or her office (whether arising from infirmity of body or mind or any other cause) or for misbehaviour; or

(e)  if the member with his or her consent is nominated for election to the Legislative Assembly or is appointed to any public office.

(7) If the office of a member of the Commission is vacant or a member is for any reason unable to perform the functions of his or her office, the Governor, acting in accordance with subsection (2), may appoint a person who is qualified for appointment as a member of the Commission to act as a member of the Commission, and any person so appointed shall, subject to subsection (6), continue so to act until the expiration of his or her term of office.

(8) In the exercise of their functions, the Commission and its members shall not be subject to the direction or control of any other person or authority.

(9) The functions of the Commission shall be—

(a)  to assist in the setting of the highest standards of integrity and competence in public life in order to ensure the prevention of corruption or conflicts of interest;

(b)  to monitor standards of ethical conduct in the Legislative Assembly, the Cabinet, and on the part of public authorities and public officers;

(c)  to supervise the operation of registers of interest and to investigate breaches of established standards;

(d)  to review and establish procedures for awarding public contracts;

(e)  to review and establish procedures for appointing members to public authorities, and the terms of their appointment;

(f)  to recommend codes of conduct to prevent any Minister, public authority or public officer employing their power for any personal benefit or advantage, and to recommend legislation to provide appropriate sanctions;

(g)  to report to the Legislative Assembly at regular intervals, and at least every six months; and

(h)  to exercise such other functions as may be prescribed by a law enacted by the Legislature.

**Constitutional Commission**

**118.**—(1) There shall be in and for the Cayman Islands a Constitutional Commission.

(2) The Constitutional Commission shall consist of a Chairman and two other members appointed by the Governor, acting after consultation with the Premier and the Leader of the Opposition, at least one of whom shall be an experienced lawyer.

(3) The functions of the Constitutional Commission shall be—

(a)  to advise the Government on questions concerning constitutional status and development in the Cayman Islands;

(b)  to publish reports, discussion papers, information papers and other documents on constitutional matters affecting the Cayman Islands;

(c)  to promote understanding and awareness of this Constitution and its values; and

(d)  to exercise such other functions as may be prescribed by a law enacted by the Legislature.

(4) In the exercise of their functions, the Constitutional Commission and its members shall not be subject to the direction or control of any other person or authority.

(5) Subject to this Constitution, further provision relating to the establishment and operation of the Constitutional Commission may be made by the Legislature.

**Advisory District Councils**

**119.** Subject to this Constitution, a law enacted by the Legislature shall provide for the establishment, functions and jurisdiction of Councils for each electoral district to operate as advisory bodies to the elected members of the Legislative Assembly.

**Complaints Commissioner**

**120.**—(1) Subject to this Constitution, a law enacted by the Legislature may make provision for the office, functions and jurisdiction of a Complaints Commissioner, otherwise called an Ombudsman.

(2) The Complaints Commissioner shall be appointed by the Governor, acting after consultation with the Premier and the Leader of the Opposition, by instrument under the public seal.

(3) No person shall be qualified to be appointed as Complaints Commissioner if he or she is or has been within the preceding three years—

    (a) an elected member of the Legislative Assembly; or

    (b) the holder of any office in any political party.

(4) The office of the Complaints Commissioner shall become vacant—

    (a) at the expiration of the period specified in the instrument by which he or she was appointed;

    (b) if he or she resigns office by writing under his or her hand addressed to the Governor;

    (c) if he or she becomes an elected member of the Legislative Assembly or the holder of any office in any political party; or

    (d) if the Governor, acting in his or her discretion, directs that he or she shall be removed from office for inability to discharge the functions of the office (whether arising from infirmity of body or mind or any other cause) or for misbehaviour, or for contravention of subsection (5).

(5) Subject to such exceptions as the Governor, acting in his or her discretion, may authorise by directions in writing, the Complaints Commissioner shall not hold any other office of emolument either in the public service or otherwise nor engage in any occupation for reward other than the duties of his or her office.

(6) In the exercise of his or her functions, the Complaints Commissioner shall not be subject to the direction or control of any other person or authority.

**Register of Interests**

**121.**—(1) There shall be for the Cayman Islands a Register of Interests, which shall be maintained by the Commission for Standards in Public Life.

(2) It shall be the duty of any person to whom this section applies to declare to the Commission for Standards in Public Life, for entry in the Register of Interests, such interests, assets, income and liabilities of that person, or of any other person connected with him or her, as may be prescribed by law.

(3) A person shall make a declaration under subsection (2) upon assuming the functions of his or her office and at such intervals thereafter (being no longer than twelve months) as may be prescribed by law.

(4) This section applies to all members of the Legislative Assembly and the holders of such other offices (except that of the Governor) as may be prescribed by law.

(5) A law enacted by the Legislature shall make provision for giving effect to this section, including the sanctions which may be imposed for a failure to comply with subsection (2) or (3) and, notwithstanding any provision of Part IV of this Constitution, the sanctions which may be imposed may include the suspension of a member of the Legislative Assembly from sitting in it for such period as may be prescribed in such a law.

**Freedom of information**

**122.** A law enacted by the Legislature shall provide for a right of access to information held by public authorities, for the conditions for the exercise of that right, and for restrictions and exceptions to that right in the interests of the security of the Cayman Islands or the United Kingdom, public safety, public order, public morality or the rights or interests of individuals.

# PART IX

## MISCELLANEOUS

**Official language of the Cayman Islands**

**123.** The official language of the Cayman Islands is English.

**Interpretation**

**124.**—(1) In this Constitution, unless it is otherwise provided or required by the context—

"Assembly" means the Legislative Assembly;

"Bill of Rights" means the Bill of Rights, Freedoms and Responsibilities set out in Part I of this Constitution;

"Caymanian" has the meaning ascribed to it in the laws of the Cayman Islands for the time being in force;

"Court of Appeal" means the court established by section 99;

"functions" includes jurisdiction, powers and duties;

"Government" means the Government of the Cayman Islands;

"Government Notice" means a Cayman Islands Government Notice;

"Governor" means the person for the time being holding the office of Governor of the Cayman Islands, and includes any person for the time being lawfully performing the functions of that office and, to the extent to which a person appointed under section 36 is authorised to act (but except where the word "Governor" appears in that section), that person;

"Grand Court" means the court established by section 94;

"high judicial office" means the office of judge of a court having unlimited jurisdiction in civil and criminal matters in some part of the Commonwealth or in Ireland or a court having jurisdiction in appeals from such a court;

"Judicial and Legal Services Commission" means the Commission established by section 105;

"law" includes any instrument having the force of law made in exercise of a power conferred by law;

"Leader of the Opposition" means a Leader of the Opposition appointed under section 68;

"Legislature" means the Legislature established by section 59(1);

"Minister" means a member of the Cabinet who is appointed as the Premier or other Minister;

"oath" includes affirmation;

"political party" means a group of persons who have united to contest election for membership of the Legislative Assembly;

"Premier" means a Premier appointed under section 49;

"public office" means, subject to subsection (2), an office of emolument in the public service;

"public officer" means the holder of any public office, and includes a person appointed to act in any public office;

"the public service" means the service of the Crown in a civil capacity in respect of the government of the Cayman Islands;

"session" means the meetings of the Legislative Assembly commencing when the Assembly first meets after being constituted under this Constitution, or after its prorogation or dissolution at any time, and terminating when the Assembly is prorogued or is dissolved without having been prorogued;

"sitting" means a period during which the Legislative Assembly is sitting continuously without adjournment and includes any period during which the Assembly is in committee.

(2) For the purposes of this Constitution, references to public offices shall not be construed as including—

    (a)   references to the office of Speaker, Deputy Speaker or elected member of the Legislative Assembly, Premier or other Minister, or Leader of the Opposition;

    (b)   except in section 110, references to the office of judge of the Grand Court or the Court of Appeal;

    (c)   references to a member of the Judicial and Legal Services Commission, the Human Rights Commission, the Commission for Standards in Public Life, the Constitutional Commission, an Electoral Boundary Commission, or the Advisory Committee on the Prerogative of Mercy, or to the Complaints Commissioner;

    (d)   references to any office the holder of which is declared by any law in force in the Cayman Islands not to be disqualified for election as a member of the Assembly,

and a person shall not be considered as holding a public office by reason only that he or she is in receipt of a pension or other like allowance in respect of service under the Crown.

(3) Any person who has vacated his or her seat in any body, or has vacated any office established by this Constitution, may, if qualified, again be appointed or elected as a member of that body or to that office, as the case may be, from time to time.

(4) A reference in this Constitution to the holder of an office by the term designating his or her office shall be construed as a reference to any person for the time being acting in that office or otherwise lawfully performing the functions of that office.

(5) Without prejudice to subsection (4)—

    (a)   where the holder of any office constituted by or under this Constitution is on leave of absence pending the relinquishment of that office, the person or authority having power to make appointments to that office may appoint another person to it; and

    (b)   where two or more persons concurrently hold the same office by virtue of paragraph (a), the person last appointed shall in respect of any function conferred on the holder of that office be deemed to be the sole holder of it.

(6) Any power conferred by this Constitution to make any proclamation, rules, regulations or order or to give any directions shall be construed as including a power exercisable in like manner to amend or revoke any such proclamation, rules, regulations, order or directions.

(7) Where a person is required by this Constitution to make an oath he or she shall, if he or she so desires, be permitted to comply with that requirement by making an affirmation in accordance with the Schedule to this Constitution.

(8) For the purposes of this Constitution, the resignation of a member of any body or the holder of any office established by it that is required to be addressed to any person shall, unless otherwise expressly provided, be deemed to have effect from the time at which it is received by that person.

(9) For the purposes of this Constitution, a person shall not be regarded as absent from the Cayman Islands or as unable to perform any of his or her functions under it by reason only that he or she is in passage between any one of the Cayman Islands and another or from one part of any Island to another part.

**Power reserved to Her Majesty**

**125.** There is reserved to Her Majesty full power to make laws for the peace, order and good government of the Cayman Islands.

# SCHEDULE TO THE CONSTITUTION

## FORMS OF OATHS AND AFFIRMATIONS

**126.** Oath of Allegiance

I………………..do swear that I will be faithful and bear true allegiance to Her Majesty Queen Elizabeth the Second, Her Heirs and Successors, according to law. So help me God.

**127.** Oath for due execution of office

I………………..do swear that I will well and truly serve Her Majesty Queen Elizabeth the Second, Her Heirs and Successors, and the people of the Cayman Islands in the office of (here insert the description of the office). So help me God.

**128.** Oath for due execution of judicial office

I………………..do swear that I will well and truly serve Her Majesty Queen Elizabeth the Second, Her Heirs and Successors, and the people of the Cayman Islands in the office of (here insert the description of the office) and that I will do right to all manner of people according to the law without fear or favour, affection or ill-will. So help me God.

**129.** Affirmations

In the forms above respectively set forth, for the word "swear" there shall be substituted the words "solemnly and sincerely affirm and declare", and the words "So help me God" shall be omitted.

## EXPLANATORY NOTE

*(This note is not part of the Order)*

This Order establishes a new Constitution for the Cayman Islands, to replace the Constitution of 1972. The new Constitution includes, for the first time, a Bill of Rights setting out the fundamental rights and freedoms of the individual and provisions for their enforcement. It provides for a Governor as Her Majesty's representative in the Islands, and for a Premier and other Ministers who form a Cabinet together with the Deputy Governor and the Attorney General. It provides for an elected Legislative Assembly, which together with Her Majesty forms the Legislature. It provides for a Grand Court and a Court of Appeal as superior courts, and a Judicial and Legal Services Commission to advise on judicial and senior legal appointments. Provision is also made for a Human Rights Commission, a Commission for Standards in Public Life, and a Constitutional Commission. A new National Security Council is established, as is the new office of Director of Public Prosecutions. Provision is also made for the public service, public finance, a Complaints Commissioner, a Register of Interests, and freedom of information.

© Crown copyright 2009

Printed and published in the UK by The Stationery Office Limited under the authority and superintendence of Carol Tullo, Controller of Her Majesty's Stationery Office and Queen's Printer of Acts of Parliament.

S.I. 2009 No. 1379

The Cayman Islands Constitution Order 2009