PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, NY 10019-6131
Telephone: 212-858-1000
Facsimile: 212-858-1500
John A. Pintarelli
Hugh M. McDonald
Kwame O. Akuffo

PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, 36th Floor
Los Angeles, CA 90017-5524
Telephone: 213-488-3655
Facsimile:  213-629-1033
Claire K. Wu (admitted *pro hac vice*)

*Attorneys for Foreign Representatives*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | : Chapter 15 |
| | : |
| | : Case No. 21-11854 (DSJ) |
| Ascentra Holdings, Inc. (In Official Liquidation),[1] | : |
| | : **Related Docket No. 42** |
| Debtor in a Foreign Proceeding. | : |

## FOREIGN REPRESENTATIVES' OBJECTION TO MOTION OF SHANG PENG GAO KE INC. SEZC AND SPGK PTE LTD. PURSUANT TO 11 U.S.C. § 1522(c) TO TERMINATE RESTRAINT

---

[1] The Debtor's company registration number is 283719. The Debtor's registered office is c/o JTC (Cayman) Ltd., 94 Solaris Avenue, Second Floor, Camana Bay, PO Box 30745, Grand Cayman, Cayman Islands, KY1-1203.

## Table of Contents

Page

INTRODUCTION ................................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND................................................................ 4

A.  The Provisional Relief Application and Order ....................................................... 5

B.  The Recognition Order ............................................................................................ 7

C.  Activities in Chapter 15 Proceeding and Cayman Proceeding ................................ 7

D.  The Planet Payment Stipulated Consent Order........................................................ 8

E.  The August 10, 2023 Deposition of Ryunosuke Yoshida......................................... 9

F.  Mr. Yoshida's Testimony Supports Ascentra's Claim to the Funds ..................... 21

THE RESTRAINT MOTION SHOULD BE DENIED............................................................ 23

A.  The Restraint Motion Should Be Denied as Moot.................................................. 23

B.  The Granting of the Restraint Was Within This Court's Authority........................ 24

C.  The Standards for an Injunction Were Satisfied and Properly Applied by the Court............ 25

D.  The Liquidators Also Satisfy the Alternative Test for an Injunction...................... 28

E.  The Interests of Creditors and Other Interested Entities Will Not Be Sufficiently Protected if
the Restraint is Lifted.............................................................................................. 29

CONCLUSION........................................................................................................................ 30

4870-4298-8411

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anaconda-Ericsson Inc. v. Hessen (In re Teltronics Servs., Inc.*),
  762 F.2d 185 (2d Cir. 1985)........................................................................................26

*Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*,
  527 U.S. 308 (1999).................................................................................................24

*H. Sand & Co., Inc. v. Airtemp Corp.*,
  934 F.2d 450 (2d Cir. 1991)......................................................................................25

*Marcus v. Las Uvas Valley Dairies (In re Las Uvas Valley Dairies*),
  Nos. 17-12356-t11, 19-1009, 2019 Bankr. LEXIS 1883
  (Bankr. D.N.M. June 19, 2019) ................................................................................24

*In re Owens Corning*,
  419 F.3d 195 (3d Cir. 2005)......................................................................................25

*Rubin v. Pringle (In re Focus Media, Inc.)*,
  387 F.3d 1077 (9th Cir. 2004) ..................................................................................25

### <u>Statutes and Codes</u>

United States Code
  11 U.S.C. § 1522(a) ..................................................................................................28

4870-4298-8411

Graham Robinson and Ivy Chua Suk Lin, the duly appointed joint official liquidators and foreign representatives (the "**Liquidators**" or "**Foreign Representatives**") of Ascentra Holdings, Inc. (In Official Liquidation), by and through their undersigned counsel, hereby submit this objection (the "**Objection**")[2] to the *Motion of Shang Peng Gao Ke Inc. SEZC and SPGK PTE Ltd. Pursuant to 11 U.S.C. § 1522(c) to Terminate Restraint* [ECF No. 42] (the "**Restraint Motion**")[3] filed by Shang Peng Gao Ke Inc. SEZC and SPGK Pte Ltd. (collectively, "**SPGK**"). In support thereof, the Foreign Representatives submit the *Declaration of John A. Pintarelli* ("**Pintarelli Decl.**") and respectfully represent as follows.

## INTRODUCTION

Nearly two years after entry of the *Order Granting Emergency Request for Provisional Relief Pursuant to Sections 1519 and 105(a) of the Bankruptcy Code* [ECF No. 17] (the "**Provisional Relief Order**"), SPGK now asks this Court, without any legitimate basis, to terminate the restraint imposed on it and allow it to access the Planet Payment Funds (defined below). SPGK seeks this relief, despite (a) having consented to the restraint until a court determined proper ownership of the funds *on the merits*, and (b) specifically reserving the right to commence an action in any judicial forum to resolve ownership of the Planet Payment Funds. Instead of seeking an adjudication of ownership of the funds on the merits, SPGK sat on its rights under the guise of being "patient" and giving the Liquidators "time to bring their case," but these statements—and the overall picture painted by SPGK—are simply not an accurate representation of the facts and circumstances. For instance, during the time since the Provisional Relief Order

---

[2] Filed contemporaneously herewith is the *Foreign Representatives' Objection to Motion of Shang Peng Gao Ke Inc. SEZC and SPGK Pte Ltd. Pursuant to 11 U.S.C. §§1517(d) and 1520(c) for an Order Terminating the Recognition Order* (the "**Termination Objection**").

[3] Capitalized terms used but not defined herein have the meanings ascribed to them in the Restraint Motion.

was entered, SPGK has not been transparent or cooperative.  As came to light during the deposition of Mr. Ryunosuke Yoshida, SPGK's sole shareholder, Mr. Yoshida failed to disclose and turn over all documents relating to Ascentra to the Liquidators as required by Cayman law.  Furthermore, Mr. Yoshida admitted there was no contract that authorized SPGK to sell Ascentra's products (despite stating in his declaration that there was a "binding" contract whereby SPGK agreed to purchase physical products from "Ascentra group companies"); SPGK has not paid any monies to Ascentra (despite stating in his declaration that SPGK agreed to pay royalties for an alleged license obtained from "Ascentra group companies"); and, most shockingly, admitted in his deposition testimony that, if the restraint on transfer of the Planet Payment Funds was lifted, SPGK would transfer the funds offshore, removing these valuable assets from this Court's jurisdiction and out of the reach of the Liquidators.

At its core, the Restraint Motion is designed to obtain declaratory relief that SPGK owns the Planet Payment Funds.  Indeed, the Restraint Motion contains multiple blanket assertions that the funds at issue are "unquestionably legally owned by SPGK," "SPGK's money," and "SPGK's property."  However, as revealed in Mr. Yoshida's deposition, SPGK was and remains nothing more than a shell company that is now being wound down (and has approximately $150 million in a bank account in Taiwan in the name of SPGK Pte Ltd).

SPGK's strategy is particularly confounding as SPGK itself negotiated the right (memorialized in both the Provisional Relief Order and Recognition Order) to commence an action in any non-US judicial forum to adjudicate the dispute regarding ownership of the Planet Payment Funds, but never pursued or exercised such right.  If SPGK's inability to receive a return on the Planet Payment Funds was indeed as critical as SPGK leads this Court to believe and SPGK had the ability to proactively bring its own claim at any point—why didn't SPGK commence its own

2

action?  Instead, SPGK attempts to distract from its own errors by accusing the Liquidators of not taking appropriate action and bringing a claim in the interim period.  However, as set forth in multiple status reports to this Court, the Liquidators were actively conducting an investigation into the affairs of Ascentra: the Liquidators issued subpoenas and obtained discovery and information from a number of sources, including Planet Payment, Inc. ("**Planet Payment**"), Ever Innovation Inc. ("**EII**"), and EII's directors and officers; received voluminous documents (in excess of 9.5 million documents); examined witnesses in the U.S.; conducted informal interviews in the Cayman Islands; corresponded with various parties regarding potential claims against and interests in Ascentra; sought the recognition of the Cayman Proceeding in Singapore and subsequently litigated the Singapore High Court's decision through appeal (where a decision from the appellate court is now pending); worked to liquidate and wind up its subsidiaries in various jurisdictions; and synthesized potential claims against various entities and individuals related to Ascentra, including SPGK and Mr. Yoshida.

It is important to note that there is no time limit for the Liquidators to bring their claims other than under the appropriate statute of limitations and SPGK does not attempt to allege that such claims are somehow time-barred.  Additionally, any allegations by SPGK that the Liquidators only have a breach of contract claim against SPGK are meritless, when Mr. Yoshida himself admitted there is no contract between SPGK and Ascentra, and the Provisional Relief Order (which was never appealed) contains specific findings that the Liquidators asserted colorable *contractual and equitable* claims.

Even if this Court decides that SPGK has stated a plausible claim, the relief sought by SPGK is now moot.  On August 28, 2023, SPGK, Planet Payment, and the Liquidators entered into a stipulated consent order (the "**Stipulated Consent Order**") for the transfer of the Planet

3

Payment Funds from Planet Payment into this Court's Disputed Ownership Fund, which Stipulated Consent Order this Court signed and entered on August 29, 2023 [ECF No. 60].  As with the Recognition Order, SPGK stipulated and agreed that the ownership of the Planet Payment Funds is disputed and thus, the funds cannot be released without this Court making a determination of ownership (or recognizing and enforcing an order making a similar determination from another court with appropriate jurisdiction).

For the reasons set forth herein, the Restraint Motion should be denied.  SPGK consented to the Court entering an order making the automatic stay applicable to, and restraining parties from, transferring the Planet Payment Funds.  This Court made specific findings that the preliminary injunction standards for such restraint were satisfied and also stated, as an alternative basis, that such relief could be granted under the Court's inherent authority.  Mr. Yoshida, SPGK's sole shareholder, *admitted* he would move the Planet Payment Funds out of the reach of the Liquidators and this Court if given the opportunity.  As such, the practical result of the relief sought is that SPGK would be permitted to remove assets from this Court's jurisdiction without *any* determination as to ownership.  Accordingly, the bases for the original grant of restraint still exist, only now, stronger and more supportable.

## FACTUAL AND PROCEDURAL BACKGROUND

The Foreign Representatives' objection to SPGK's motion to terminate the Recognition Order (the "**Termination Motion**") is filed contemporaneously herewith.  In an effort to avoid redundancy, the facts set forth therein are incorporated by reference.  However, the most salient facts for purposes of the instant Objection are as follows.

4870-4298-8411

A.      The Provisional Relief Application and Order

On October 28, 2021, the Liquidators filed an *Emergency Request for Provisional Relief Pursuant to Sections 1519 and 105(a) of the Bankruptcy Code* [ECF No. 9] (the "**Provisional Application**").  By the application, the Liquidators sought provisional relief under section 1519 of the Bankruptcy Code, including making the automatic stay apply to funds held in a payment processing account maintained by Planet Payment in the name of SPGK (the "**Planet Payment Funds**").  The Liquidators stated Ascentra held "a contractual and equitable entitlement" to the Planet Payment Funds based on the MOU and Cancellation Agreement.  ECF No. 9, ¶ 1.  The Liquidators asserted there was a material risk that the funds may be transferred outside the territorial jurisdiction of the U.S. to accounts controlled by an individual over whom the Court otherwise had no jurisdiction.  *Id.*  Absent provisional relief, the Liquidators would face an extraordinary burden to trace and recover the funds.  *Id.*, ¶ 2.  These facts have not changed.

On November 1, 2021, SPGK filed a limited objection and reservation of rights to the Provisional Application [ECF No. 15], stating it "does not object to the provisional stay relief requested" and requesting certain modifications to the then proposed order.  *See* ECF No. 15 ¶ 3. On that same date, the Court held a hearing on the Provisional Application and ruled as follows:

> I do think that the potentially irretrievable transfer out of the U.S. of assets that you claim an entitlement to would satisfy the irreparable harm clause.  And in circumstances, it completely makes sense to preserve the status quo.  So whether the theoretical basis is that that's an adequate showing of irreparable harm, to meet that standard, the preliminary injunction standard, or it's an exercise of the Court's inherent authority, I'm fine either way.
> . . .
> I wanted to make clear orally on the record, in a way that I think doesn't need to be reflected in the order, that in the alternative, I would consider this an appropriate order to enter based on the Court's inherent authority to preserve its jurisdiction and ensure efficient advocacy or adjudication of the Chapter 15 petition and the dispute before the Court.  So to the extent anyone ever questions

4870-4298-8411

whether the PI standard was adequately met to justify this order, that
would be my alternative rationale.

Pintarelli Decl., Exhibit 1 (Nov. 1, 2021, Hr'g Trans. at 19:14-21:20).

The Liquidators incorporated the language discussed at the hearing, including SPGK's

proposed language, into a revised form of order.  On November 2, 2021, the Court entered the

*Order Granting Emergency Request for Provisional Relief Pursuant to Sections 1519 and 105(a)*

*of the Bankruptcy Code* [ECF No. 17] (the "**Provisional Relief Order**"), which reflected the

agreed upon language.  Among other things, in the Provisional Relief Order, the Court made the

following findings and conclusions:

> e.   ***This Court has the authority to grant the provisional relief requested***
> by the Application (the "Provisional Relief") under 11 U.S.C. §§ 105(a),
> 362, 1519, 1521 and 1522.
>
> * * *
>
> g.   ***The Petitioners have asserted colorable contractual and equitable***
> ***claims to funds held in [a] bank account in the name of SPGK***, an entity
> owned by a significant shareholder and director of Ascentra, which account
> is maintained by a credit card processor, Planet Payment, Inc. in New York
> (the "Planet Payment Funds").  ***Petitioners have contended that SPGK has***
> ***refused to deposit the Planet Payment Funds into the Grand Court***.
>
> h.   Protection of Ascentra's assets in the United States is appropriate to
> preserve stakeholder rights to equal treatment and to preserve the ability of
> the Grand Court to enforce the provisions of Cayman Islands law, and
> ***SPGK does not oppose such relief on an interim basis*** (Limited Objection,
> ¶ 2).
>
> i.    ***There is accordingly a material risk of irreparable harm if the***
> ***provisional relief in the Order is not granted.  The relief set forth herein***
> ***will not prejudice any other parties, and the balance of hardships favors***
> ***the grant of such relief.  The public policy of ensuring even-handed***
> ***enforcement of the rules of the foreign proceeding also favors the***
> ***requested relief.***
>
> * * *
>
> BASED ON THE FOREGOING FINDINGS OF FACT AND AFTER
> DUE DELIBERATION AND SUFFICIENT CAUSE APPEARING

6

4870-4298-8411

THEREFOR, AND FOR THE REASONS STATED ON THE RECORD AT THE HEARING ON THE APPLICATION, IT IS HEREBY ORDERED:

6. ***Nothing contained in this Order shall constitute a finding or determination regarding the existence or validity of Ascentra's claims to a property interest in the Planet Payment Funds*** or any other assets or property in which Ascentra has asserted a claim or interest.

7. ***Nothing in this Order shall be construed to (i) limit SPGK from commencing an action in a non-U.S. forum to adjudicate the dispute regarding the ownership of the assets or property claimed by Ascentra, including the Planet Payment Funds*** or (ii) constitute a determination that this Court or another U.S. court is the proper forum for the adjudication of such dispute.

*See* ECF No. 17 (emphasis added).

As is clear from the above, SPGK *consented* to the injunctive relief based upon its acknowledgement that there would be irreparable harm to Ascentra if the Planet Payment Funds were transferred out of reach of this Court's jurisdiction. Additionally, although SPGK specifically negotiated language reserving the right to bring its claim to the Planet Payment Funds outside the U.S., it never pursued or exercised such right.

B.    The Recognition Order

On December 6, 2021, the Court entered the Recognition Order, which extended the provisional relief. Specifically, the Recognition Order (i) enjoined Ascentra and SPGK from transferring the Planet Payment Funds without further order of the Court, and (ii) authorized SPGK to commence an action in any judicial forum to resolve ownership disputes regarding assets claimed by Ascentra, including the Planet Payment Funds. *See* ECF No. 22, ¶¶ 9, 10.

C.    Activities in Chapter 15 Proceeding and Cayman Proceeding

Contrary to SPGK's accusations that the Liquidators have been sitting back and allowing "SPGK's property to waste," and not "taking appropriate actions," the Liquidators have been actively investigating claims and litigating matters in the Cayman Proceeding, the related

4870-4298-8411

liquidation of Ascentra's wholly-owned subsidiary, HEC International, Ltd. (In Official Liquidation) (the "**HEC Proceeding**"), and in Singapore. As set forth in the status reports (the "**Status Reports**") submitted to the Court on June 30, 2022 [ECF No. 26], December 30, 2022 [ECF No. 29], and June 30, 2023 [ECF No. 34], respectively, since entry of the Provisional Relief Order and Recognition Order, the Liquidators have issued subpoenas and obtained voluminous discovery from, among others, Planet Payment, EII, and EII's directors and officers. Indeed, the documents produced are in excess of 9.5 million.[4] As pointed out above, this was a timely exercise that was not helped by Mr. Yoshida's lack of cooperation in turning over Ascentra's books and records in his possession. The Liquidators have also examined witnesses in the U.S. and conducted informal interviews in the Cayman Islands. These activities have aided the Foreign Representatives to better understand what transpired before Ascentra's demise. In the Cayman Proceeding, the Liquidators have pursued an ongoing investigation into the affairs of Ascentra and, on the basis of that investigation and the information gathered as a result, prepared potential claims against various entities and individuals affiliated with Ascentra, including SPGK and Mr. Yoshida. Finally, the appeal before the Court of Appeals of Singapore regarding the Liquidators' application for recognition of the Cayman Proceeding has now taken place and a decision remains pending.

      D.    The Planet Payment Stipulated Consent Order

On August 28, 2023, SPGK, Planet Payment, and the Liquidators entered into the Stipulated Consent Order for the transfer of the Planet Payment Funds from Planet Payment into this Court's Disputed Ownership Fund, which Stipulated Consent Order this Court signed and

---

[4] The EII production alone consists of millions of documents and, among other things, required counsel and paraprofessionals to translate documents to English to understand issues relating to the flow of funds, who knew what and when regarding Ascentra's entitlement to a share of profits earned by SPGK, and the conduct of Ascentra's former officers and directors before the commencement of the Cayman Proceeding.

4870-4298-8411

entered on August 29, 2023 [ECF No. 60].  As set forth therein, SPGK stipulated and agreed that

the ownership of the Planet Payment Funds is disputed.

> E.    The August 10, 2023 Deposition of Ryunosuke Yoshida

On August 10, 2023, the Liquidators conducted a deposition of Mr. Ryunosuke Yoshida in

connection with the Restraint Motion.  Pintarelli Decl., Exhibit 2.  First, as reflected by his

deposition testimony, Mr. Yoshida admitted there was no contract between SPGK and Ascentra

that authorized SPGK to sell Ascentra products:

> Q. To your knowledge, is there any agreement between Ascentra
> Holdings Inc and Shang Peng Gao Ke Inc which permits Shang
> Peng, or license and permits *[it]*, to carry on Ascentra's business?
>
> **A. Can you repeat the question, sorry?**
> * * *
> Q. Are you aware of any agreement between Ascentra Holdings, and
> I will call it SPGK Inc, that permits SPGK to continue the business
> and sell Ascentra products?
>
> **A. Are you talking about signed agreements?**
>
> Q. Yes.
>
> **A. No, I don't think so.**
>
> Q. So no such agreement exists?
>
> **A.  No valid agreement exists.**

Yoshida Dep. Trans. at 172:20-173:16.

> Q. Do you know if any agreements were executed between Ascentra
> and Shang Peng giving Shang Peng distribution rights for Ascentra
> products?
>
> **A.  Are you talking about the exclusive distribution agreement?**
>
> Q. Was there an exclusive distribution agreement?
>
> **A.  It was not signed.  Can you rephrase your question, sorry?**

9

4870-4298-8411

Q. I think you have just answered my question.  I had asked do you know if any agreements were executed between Ascentra and Shang Peng giving Shang Peng distribution rights for Ascentra products?

**A.  I don't think so.**

*Id*. at 176:13-177:3.

Q. Can you point to a document that gives Shang Peng the right to sell Ascentra product in the PRC?

**A.  Are you talking about Ascentra Holdings Inc.?**

Q. Yes.

**A. I don't think there's an agreement between Shang Peng – SPGK and Ascentra Holdings Inc. for products supplied, but there is the product supply agreement ---**

Q. That is all I asked.  Is there an agreement between Ascentra and SPGK, and your answer is no?

**A.  Sorry, repeat that again.**

Q. My question was is there an agreement between Ascentra Holdings and SPGK that authorizes SPGK to sell Ascentra products in the PRC?

\* \* \*

**A.  I don't think so.**

*Id*. at 186:11-187:9.

Second, Mr. Yoshida also admitted there was no contract setting forth how much SPGK was paying for these alleged rights:

**A.  I wasn't involved in the pricing, so I don't know.**

Q. You were the sole director of SPGK, were you not?

**A. I was the sole director of SPGK but I think this is for Ascentra to decide, how much margin they are going to put and whether I agree or not.**

Q. Did you agree to a percentage for margin?

4870-4298-8411

**A.  I followed what was being done in the past.**

Q. You followed whatever was the course of conduct with Ascentra on pricing?

**A. I saw – I did not really – I didn't change of the pricing in particular.**

*Id*. at 140:16-141:6.

Third, Mr. Yoshida admitted he was not aware of any monies actually paid by SPGK to Ascentra:

Q. Was the 10% procurement on all procurement from Ascentra ever paid to Ascentra?

**A. No.  Sorry, can I ask again what – can you rephrase that question?**

Q. Yes.  It *[Exhibit 20]* says, "SPGK to share 10% margin on all procurement from Ascentra."  Did SPGK share 10% of all procurement with Ascentra?

**A.  I don't know if it's 10%**

Q. So you don't know?

**A.  I don't know if it's 10%.**

Q. Okay?

**A.  Or whether if it is on all procurement.**

Q. You don't know?

**A.  I don't know.**

Q. As a director of Ascentra, how did you satisfy yourself that 10% was a fair percentage to be allocated to Ascentra?

**A.  I don't remember exactly.**

Q. You don't remember?

**A.  Can you ask your question again?**

11

Q. As a director of Ascentra, how did you satisfy yourself that 10% was a fair percentage to be allocated to Ascentra?

**A. I think – I don't think this was finalized, so I don't exactly know, but I believe the actual margin in the accounting books could have been around this figure.**

Q. In the accounting books?

**A.  Yes.**

Q. Were funds actually transferred?

**A.  I don't know.**

*Id.* at 279:19-280:25.[5]

Fourth, Mr. Yoshida admitted that he would move the Planet Payment Funds offshore if the restraint were lifted:

Q. Your SPGK has moved in the US Bankruptcy Court to lift the restrain *[sic]* that has been imposed on the Planet Payment funds. Are you aware of that?

**A.  I think so.**

Q. If the Court grants that motion, that is lifts the restraint on those funds, where do you intend to have those funds go?
* * *
**A. I believe I would transfer to the Shanghai Commercial Savings Bank in Taiwan.**

*Id.* at 290:6-17.[6]

---

[5]  Exhibit 20 to the Yoshida Dep. Trans. is an email dated October 29, 2020, and also contains a request from Mr. Yoshida to a lawyer at Loeb Smith to prepare a distribution agreement – "Can you help to create a distribution agreement between Ascentra and SPGK?"

[6]  SPGK also has an account in Singapore.  *Id.* at 241:11-16 ("A. DBS Bank is the name of a bank. Q. And where is that bank located? A. Singapore. Q. Singapore. Is that where SPGK PTE had its bank account? A. Yes.").   There is a risk the Planet Payment Funds could be also transferred to Dubai where Mr. Yoshida's new company, "Eight Light Years FZCO," is incorporated. *Id.* at 116:2-9.

4870-4298-8411

Fifth, Mr. Yoshida admitted that he has documents on a Relativity server relating to

Ascentra that had not previously been disclosed and have not been turned over to the Liquidators:

> Q. . . . Can you please elaborate on what information you have
> obtained personally in order to write this declaration?
>
> **A. I have various documents and information such as e-mails,
> such as files under e-mails, past documents, etc.**
>
> Q. And you reviewed those e-mails, files and documents in order to
> prepare this declaration?
>
> **A.  Yes.**
>
> Q. Where do you store these e-mails, files and documents?
>
> **A.  We store it with a third party service provider.**
>
> Q. And who is that?
>
> **A. I believe it is called – sorry, I cannot remember the name on
> top of my head.  It is on a platform called Relativity.**
>
> Q. With a service provider?
>
> **A.  Yes.**
>
> Q. The e-mails, files and documents you have on Relativity, can you
> please tell us for which corporate entities you have this information,
> and by that I mean do you have information relating to Ascentra?
> Do you have information relating to SPGK?   Do you have
> information relating to Growth Today?
> * * *
> **A.  I believe it is put all in one.**

*Id*. at 80:20-81:25.

Sixth, Mr. Yoshida stated that SPGK had approximately $150 million in a bank account in

Taiwan (which the Liquidators also believe belong to the Ascentra estate).

> Q. . . . There are a lot of SPGK entities.  Which SPGK entity has the
> bank account in Taipei?
>
> **A. SPGK Pte Limited.**

13

4870-4298-8411

Q. Pte Limited, Okay.  And what bank account is that currently on?

**A. Shanghai Commercial and Savings Bank.**

Q. Do you have an idea of approximately what the current balance
is in that account?

**A. I haven't checked recently, so I don't remember.**

Q. Your last recollection of a balance?

**A. Approximately maybe 150 mill, more or less.**

*Id*. at 17:25-18:16.

Seventh, Mr. Yoshida confirmed that SPGK was effectively a shell company with no actual

operations and was, in reality, no more than a marketing arm for the products of Ascentra and its

subsidiaries (including Radial IT Systems, Ltd.[7] and iHealthScience LLC), which ran all of the

operations for the Ascentra group, including all corporate functions, website maintenance, banking

(until Mr. Yoshida diverted payments from Planet Payment to accounts controlled by him), sales

management, support and product, including order fulfillment.

Q. And what are the daily operations of SPGK Inc?

**A. Working with law firms.  For example, working with law
firms to wind down entities in mainland China.**

*Id.* at 33:25-34:4.

Q. Which company created the SPGK website?

* * *

**A. Which company created the website?**

Q. Mmm-hmm.

**A. Can you define created?**

Q. Did SPGK have an IT department?

---

[7] On January 3, 2019, Radial IT Systems, Ltd. changed its name to HEC International, Ltd.

4870-4298-8411

**A. No.**

Q. Did SPGK have engineers?

**A. No.**

Q. Did SPGK have the computer systems to maintain a website?

**A. No.**

*Id.* at 136:21-137:10.

Q. . . . So SPGK did not have an IT department?  It did not have the computer systems, is that correct?

**A. It was outsourced.**

Q. Outsourced?

**A. Yes.**

Q. Do whom did SPGK outsource these functions?

**A. To Exigo, to Planet Payment and other companies.**
                              * * *
**A.  . . . Sorry, can I correct what I said?**

Q. Please.

**A. The subsidiaries of Ascentra is also one of the (unclear).**

Q. Which one?

**A. Radial IT and also iHealthscience.**

Q. What was Radial IT's role?

**A. Radial IT had – there was an agreement signed between SPGK and Radial IT and also iHealthscience.  Radial IT's role was licensing and professional services.  There could have been one more.  Sorry, I cannot remember on the top of my head right now.**

Q. What was being licensed by Radial IT?

4870-4298-8411

**A. The products.  The IT products.**

*Id*. at 138:2-139:9.

Q. Did SPGK have its own payroll department?

**A. It outsourced to a company outside, I believe.  I cannot be
exact, but I think it is Baker Tilly.**

Q. Baker Tilly?

**A. Yes, I believe so.  I might be wrong.**

Q. Who handled the – do you know who or which entity handled the
accounting services for SPGK?

**A. Can you define which entity?**

Q. Well, let us start with did SPGK have its own accounting
department?

**A. It was outsourced.**

Q. To whom?

**A. It was a part of the professional services agreement.  I believe,
based on the agreement, it was Radial IT.**

Q. Radial IT.

**A. But we did also hire Baker Tilly.   We also were in
communications with EY as well.**

*Id.* at 145:2-23.

Finally, in his declaration, Mr. Yoshida makes multiple statements that demonstrate a lack

of credibility.

Mr. Yoshida stated that he had never heard of the Cancellation Agreement.  However, Mr.

Yoshida purchased the shares of Growth Today Inc. ("**Growth Today**") from Mr. Motohiko

Homma, admitted to having the corporate records of Growth Today and, as the purchaser of the

16

company and its sole director, is deemed to have knowledge of corporate records, including the

Cancellation Agreement:

> Q. . . .  How much did you pay Mr. Homma for his shares in Growth Today?
>
> **A. A dollar. 1 US dollar.**
>
> Q. One US dollar?
>
> **A. Yes.**
>
> Q. To be clear, Growth Today owns SPGK Inc, correct?
>
> **A. Shang Peng Gao Ke Inc. SEZC, yes.**
>
> Q. So Mr. Homma sold SPGK effectively to you for one dollar?
>
> **A. Yes.**

*Id*. at 85:25-86:12.

> Q. . . . When you acquired Growth Today, did Mr. Homma give you the corporate records of Growth Today as part of that transaction?
>
> **A. I don't remember.**
>
> Q. Was Mr. Homma a director of Growth Today?
>
> **A. I believe so.**
>
> Q. And did you then become a director of Growth Today?
>
> **A. Yes.**
>
> Q. Do you still own Growth Today?
>
> **A. Yes.**
>
> Q. Are you still its sole director?
>
> **A. Yes.**

* * *

4870-4298-8411

Q. Do you know whether or not Growth Today's corporate records are contained in the files, e-mails and everything that you spoke about that is currently housed on this Relativity database?

**A. I cannot remember.**

Q. Okay.  Since you own the company, would it be reasonable to assume you have its records?

**A. Yes.**

*Id*. at 88:1-89:4.

When confronted with evidence that SPGK was treated as a subsidiary of Ascentra, Mr.

Yoshida attempts to brush the statement aside as a "typo":

Q.  So in your declaration you have a presentation *[Exhibit 3]* that you say Marty Matthews gave?

**A. About?**

Q. About the transition to SPGK.

**A. Yes.**
* * *
Q. If you turn to page 229, on the bottom of that exhibit, or 234 of 448 – there are so many number of these things ---

**A. Yes.**

Q. It is the one that starts at the top of the page "as you can see."
* * *
Q. . . . So, if you go three bullets up, it says, "For any affiliates who holds 3 positions," and those are prior affiliates with Interush Limited, correct?
* * *
**A. . . . Yes.  "For any affiliates who hold 3 positions", I believe so.**

Q. You believe so, yes?

**A. Yes.**

18

Q. Okay.  And there is the ability to collapse three positions into one Shang Peng role if you wish, or it says you can transfer two of the positions to a spouse or an adult child. Do you see that as well?

**A. Yes.**

Q. So, effectively, an affiliate can now become an agent for Shang Peng.  Is that what is meant here?

**A. I believe so.**

Q. So the affiliates that were invited to attend in South Korea, this meeting, were prior affiliates of what was Interush Limited?

**A.  I believe so.**

* * *

Q. Can you, please, go down to the bottom bullet point?

**A. Yes.**

Q. If you could just read that out loud, please?

**A. "Plus, the Shang Peng Gao Ke parent company, which has been renamed Ascentra Holdings, Inc., will continue to provide the PSP Program, and honor the Introduction Bonus Program, and the Loyalty Bonus Program."**

Q. So you were presenting, or Marty was presenting to the former affiliates that Ascentra as parent company of Shang Peng would continue to provide these programmes to the affiliates who were now becoming agents?

**A. I believe this is a typo.  I believe this is a typo.**

*Id.* at 161:3-7, 162:18-23, 163:1-165:3.

At the end of 2020 when it became clear that Ascentra and SPGK could no longer continue as going concerns, Mr. Yoshida sent an email to Mr. Matsuura requesting that he be permitted to retain approximately $30 million as severance and extra compensation.  Yoshida Dep. Trans., Ex. 21.  Mr. Yoshida noted that he asked to step down as "leader of SPGK" at the beginning of 2020. He also states: "As for achievements during this period, since my arrival, SPGK and Ascentra have

19

gone from a loss-making company to a company with record sales of approximately 615M USD." *Id*. However, Mr. Matsuura was not happy with Mr. Yoshida's request and wrote in an email back to Mr. Yoshida that: "$30MM is outrageous for someone who threw up in the middle of a project, has not done any work moving forward since the end of last year, and wants to quit." *Id.*; Yoshida Dep. Trans., 283:5-8. Mr. Yoshida then confirmed that he discussed the contents of the email with Mr. Matsuura during a phone call. Yoshida Dep. Trans. 283:24-284:11. Mr. Matsuura also informed Mr. Yoshida that Mr. Matsuura would be taking control of SPGK at the end of 2020. *Id*. at 285:15-22. This clearly demonstrates that even from Mr. Yoshida's perspective, SPGK and Ascentra were not separate companies.

Mr. Yoshida concludes his declaration by stating that: "The business relationship between Ascentra and SPGK did not change after April 2018." Yoshida Decl. at p.12, ¶ 47. However, Mr. Yoshida acknowledged that in 2019 he changed the bank account to which Planet Payment sent funds to an account in Singapore which he controlled through SPGK Pte. Ltd.[8] Yoshida Dep. Trans., Ex. 12; Yoshida Dep. Trans., 240:25-241:1-16 ("Q. So is it accurate to say that when you learn *[sic]* that SPGK International was processing the Planet Payment funds you reached out to Planet Payment directly? A. I think so. . . . Q. It says he mentioned that you want Planet Payment to deposit in DBS Bank. What is that? A. DBS Bank is the name of a bank. Q. And where is that bank located? A. Singapore. Q. Singapore. Is that where SPGK Pte had its bank account? A. Yes."). In order to induce Planet Payment to make this change, Mr. Yoshida sent an email on September 12, 2019 to a Planet Payment representative in which he stated: "The current status of

---

[8]   Mr. Yoshida never states which SPGK entity is entitled to the funds; he just uses the collectively defined term of SPGK.

SPGK is that it is a Spinoff from the Ascentra Group." Yoshida Dep. Trans., Ex. 13.[9] On

September 29, 2019, Mr. Yoshida executed a Merchant Processing Application with Planet

Payment indicating that it was a "new" account and directing that funds be transferred to a DBS

Bank Ltd. account in Singapore. Yoshida Dep. Trans., Ex. 15. The change in the control over

Ascentra funds was indeed a change in the business relationship between Ascentra and SPGK.

However, Mr. Yoshida's diversion of funds to accounts he controlled does not (and will not)

establish any ownership interest in such funds.

Although the above are just excerpts of Mr. Yoshida's testimony, this Court should assign

little to no weight to Mr. Yoshida's declaration because, as a review of his deposition reflects (and

as the Grand Court found in the HEC Proceeding where Mr. Yoshida submitted an almost identical

affidavit), Mr. Yoshida's proffered testimony is unconvincing, inconsistent, and lacking in

credibility.[10]

F.   Mr. Yoshida's Testimony Supports Ascentra's Claim to the Funds

On December 19, 2022, SPGK issued a summons in the Grand Court appealing the

Liquidators' rejection of a proof of debt filed in the HEC Proceeding. Pintarelli Decl., Exhibit 3.

SPGK argued that it was entitled to a proprietary claim (akin to a trust claim) for $25,800,000 it

---

[9]   Despite his contention that SPGK was spun off from Ascentra, Mr. Yoshida cannot point to any agreement
authorizing this transaction and there is no evidence that SPGK ever paid a penny for this supposed "spin off."
Indeed, the Memorandum of Understanding ("**MOU**") (Yoshida Dep. Trans., Ex. 3) contemplated the sharing of
any profits from Ascentra's PRC business, with Ascentra to receive 77% of all profits. As this transaction was
never concluded, the parties executed the Cancellation Agreement (Yoshida Dep. Trans., Ex. 7) returning
everyone to the *status quo ante – i.e.*, Ascentra owning all of the PRC business, including an assignment of all of
the underlying contracts Mr. Yoshida includes as exhibits to his declaration.

[10]   The declaration submitted by Mr. Yoshida in support of the Restraint Motion is substantially similar to his
Second Affidavit submitted on December 19, 2022 in the HEC Proceeding (the "**Second Affidavit**"). Pintarelli
Decl., Exhibit 4. In ruling against SPGK in that matter, the Honourable Justice David Doyle, Judge of the Grand
Court held: "The documentation provided in support of the claim is woefully inadequate and a lot of it contradicts
and is inconsistent with the position that Mr. Yoshida unconvincingly attempts to persuade the court to accept . . .
The evidence before the court smacks of Mr. Yoshida attempting to invent a proprietary claim." Pintarelli Decl.,
Exhibit 5, ¶ 41; *see also* ¶¶ 40-48. SPGK is now attempting to use the same unfounded declaration to seek a
ruling in its favor on the ownership of a wholly different set of funds.

"loaned" to HEC in January 2021 (in trust for Ascentra) because Ascentra owed $30 million to affiliates (of SPGK) under a Loyalty Bonus Program. Second Affidavit, ¶¶ 89-97. According to SPGK, Ascentra did not have bank accounts and did not have sufficient assets to satisfy the bonus payment. Second Affidavit, ¶¶ 85, 89-97.

Arguably, the real reason the funds were transferred is because the funds held in SPGK's accounts were, in fact, Ascentra's. Why else would Ascentra pay a loyalty bonus to SPGK "affiliates" if all of the sales proceeds were to be retained by SPGK? On the face of SPGK's own argument, as early as January 2021, Ascentra was cash flow insolvent—which meets the Cayman test for insolvency.

Later, during a dispute between Mr. Yoshida and Mr. Yoshio Matsuura over whether Ascentra should make bonus/severance payments to vendors and other individuals (which payments ranged in amount from $5 million - $35 million each,[11] and totaled well over $100 million), Mr. Yoshida emailed at least two Ascentra employees, individuals that were promised significant bonuses, stating that "[Yoshio] is planning to pay the majority of the assets of the company to the vendors." Yoshida Dep. Trans., Ex. 22. Mr. Yoshida testified that "the company" in the email referred to Ascentra and that he believed it would be a breach of their fiduciary duties if Mr. Yoshida and Mr. Matsuura made these payments to the vendors and other individuals. *Id.* at 288:10-14 ("Q. So you believe that Yoshio, the last sentence there, would be violating his fiduciary duty to the company by making any payments without obtaining proper approvals? A. I believe so.").

---

[11] Mr. Matsuura allegedly promised nine (9) individuals at least $10 million each, plus a larger amount for a vendor, in addition to Mr. Yoshida's request for $30 million. Yoshida Dep. Trans., Ex. 22; Yoshida Dep. Trans., 59:22-60:18.

There is only one reasonable conclusion to draw from Mr. Yoshida's email—the funds held in the SPGK Pte. Ltd bank account in Taiwan (and the Planet Payment Funds and other funds derived from the sale of Ascentra products) are, in fact, Ascentra's funds. If the funds were solely SPGK's, Mr. Matsuura would have no say in how those funds were utilized and it certainly would not be a breach of fiduciary duty for either Mr. Matsuura, who was not an officer or director of SPGK, or Mr. Yoshida, who was the sole owner of SPGK.

## THE RESTRAINT MOTION SHOULD BE DENIED

### A. The Restraint Motion Should Be Denied as Moot

SPGK's request for relief to terminate the restraint has been rendered moot by subsequent events. SPGK, Planet Payment, and the Liquidators entered into the Stipulated Consent Order. In the Stipulated Consent Order, SPGK stipulates that the ownership of the Planet Payment Funds is disputed. This directly contradicts SPGK's repeated assertions of its claimed ownership of the funds. Further, it makes any resolution by this Court of whether or not there is a likelihood of success on the merits of Ascentra or SPGK's entitlement to the Planet Payment Funds unnecessary at this juncture. Any order by this Court lifting the restraint and permitting SPGK to move the funds would be tantamount to a determination of ownership and such a determination should be left to the court that ultimately presides over the dispute. Additionally, the Stipulated Consent Order provides for the Planet Payment Funds to be transferred into the Disputed Ownership Fund in the Court Registry Investment System and held in an interest-bearing account until further order of the Court. This will protect the interest of all parties pending a decision regarding ownership on the merits. Accordingly, the relief sought by SPGK—termination of the restraint on the Planet Payment Funds—is moot.

4870-4298-8411

### B. The Granting of the Restraint Was Within This Court's Authority

At the outset, SPGK takes the position that this Court "was without authority" to restrain the Planet Payment Funds and the Liquidators' claim "is solely for breach of contract." However, this Court made specific findings in the Provisional Relief Order as to its authority (ECF No. 17, ¶ e) and the Liquidators' assertion of colorable *contractual and equitable* claims (*Id.*, ¶ g).

Notably, SPGK did not appeal the Provisional Relief Order and in fact *consented* to the language in the Provisional Relief Order, even requesting modifications which were agreed to as reflected in the final order. Any attack on these findings now, and attempt by SPGK to "vacate" the restraint, is both misguided and untimely.

In addition, the cases cited by SPGK, *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308 (1999) and *Marcus v. Las Uvas Valley Dairies (In re Las Uvas Valley Dairies)*, Nos. 17-12356-t11, 19-1009, 2019 Bankr. LEXIS 1883 (Bankr. D.N.M. June 19, 2019), are wholly distinguishable. Neither case is a case under chapter 15, whereas here, the Foreign Representatives sought provisional relief under section 1519(a) of the Bankruptcy Code. Further, under the Guide to Enactment and Interpretation of Model Law (the "**Enactment Guide**"), the type of relief that is available to the Foreign Representatives is more than that which is available to a single creditor in an enforcement action, which is consistent with the collective nature of insolvency proceedings. *See* Enactment Guide, ¶ 172.

Moreover, in *Grupo Mexicano*, the Supreme Court considered the issue of whether a federal court had the power, before the entry of a money judgment in a contract case seeking repayment of debt, to issue a preliminary injunction preventing a defendant from transferring assets in its possession *in which no lien or equitable interest was claimed*. In the case at hand, the Foreign Representatives have asserted both contractual and equitable claims to the funds. Where claims are purely legal, some courts (and only one bankruptcy court—*Las Uvas Valley Dairies*

4870-4298-8411

cited by SPGK) have found *Grupo Mexicano* to bar asset-freezing injunctions. Rather, in U.S. Bankruptcy Courts, there is a growing body of authority holding that *Grupo Mexicano* is inapplicable in cases where equitable claims have been asserted and where the desired injunction is issued in a bankruptcy case. *See Rubin v. Pringle (In re Focus Media, Inc.)*, 387 F.3d 1077, 1085 (9th Cir. 2004) ("[W]e hold that where, as here, a party in an adversary bankruptcy proceeding alleges fraudulent conveyance or other equitable causes of action, *Grupo Mexicano* does not bar the issuance of a preliminary injunction freezing assets"); *In re Owens Corning*, 419 F.3d 195, 208 n.14 (3d Cir. 2005) (noting that, had the company in *Grupo Mexicano* been in bankruptcy, the bankruptcy court would have had the authority to implement the remedy the district court lacked authority to order under general equity powers not in the bankruptcy context). Accordingly, this Court was within its authority to order the restraint.

### C. The Standards for an Injunction Were Satisfied and Properly Applied by the Court

This Court made appropriate findings that the standards for an injunction were satisfied. By the Restraint Motion, SPGK asserts the Liquidators cannot satisfy *any* of the requisites for issuance of an injunction: Ascentra is not facing irreparable harm; it cannot establish a likelihood of success on the merits; the balance of the equities weigh in favor of SPGK; and the restraint is not in the public interest. SPGK bases these arguments on an alleged failure by the Liquidators to "truthfully present their lack of personal knowledge and consequent inability to authenticate the supposed Cancellation Agreement." Restraint Motion, at 3. However, as stated in the Foreign Representatives' letter to the Court on August 4, 2023 (the "**August 4 Letter**") [ECF No. 53],[12] SPGK failed to make any evidentiary objection to the reference to the Cancellation Agreement at

---

[12] As also set forth in the August 4 Letter, instead of questioning the authenticity of the Cancellation Agreement, SPGK is really questioning the enforceability of the agreement and the validity of Ascentra's claims to the Planet Payment Funds.

the time the provisional relief and recognition orders were initially sought and granted. As a result, any such objection is waived. *See H. Sand & Co., Inc. v. Airtemp Corp.*, 934 F.2d 450, 455 (2d Cir. 1991) (treating as waived on appeal plaintiff's newfound objections to affidavits submitted with the defendants' motion to dismiss); *Anaconda-Ericsson Inc. v. Hessen (In re Teltronics Servs., Inc.)*, 762 F.2d 185, 192 (2d Cir. 1985) ("[Appellant] waived any objection to the affidavit by failing to move to strike it.").

As for the standards for an injunction, the Foreign Representatives respond as follows:

*Irreparable Harm*. At the time of the Provisional Relief Order, this Court made a finding that there was a material risk of irreparable harm if the provisional relief was not granted. ECF No. 17, ¶ i. Since that time, SPGK's only shareholder, Mr. Yoshida, testified that he would move the Planet Payment Funds offshore if the restraint were lifted. Yoshida Dep. Trans. at 290:11-17 ("Q. If the Court grants that motion, that is lifts the restrain *[sic]* on those funds, where do you intend to have those funds go? A. I believe I would transfer to the Shanghai Commercial Savings Bank in Taiwan."). This undoubtedly satisfies the standard for irreparable harm as the risk that SPGK would relocate the funds is not speculative, but actual and imminent.[13]

In any event, as previously expressed by this Court, as a fallback, the Court can still maintain the restraint based on the inherent powers of the Bankruptcy Court under section 105 of the Bankruptcy Code:

> I do think that the potentially irretrievable transfer out of the U.S. of assets that you claim an entitlement to would satisfy the irreparable harm clause. And in circumstances, it completely makes sense to preserve the status quo. So whether the theoretical basis is that that's an adequate showing of irreparable harm, to meet that standard, the preliminary injunction standard, or it's an exercise of the Court's inherent authority, I'm fine either way.

---

[13] SPGK's cases about delay in seeking injunctive relief are inapposite because the Liquidators sought injunctive relief immediately upon commencement of the chapter 15 proceeding.

*See* Nov. 1, 2021, Hr'g Trans. at 19:14-21.

    ***Likelihood of Success on the Merits****.*  The Liquidators can show that they have a likelihood of success both with respect to the recognition of the instant proceeding and on its claim to the Planet Payment Funds.[14]  First, for the reasons set forth in the Liquidator's concurrently filed objection to SPGK's Termination Motion, there is a substantial likelihood the Liquidators will successfully demonstrate that the Cayman Proceeding qualifies as a foreign proceeding.  Second, as to the Liquidators' claim to the Planet Payment Funds, as set forth in detail above, the contractual and equitable bases remain and indeed are stronger following Mr. Yoshida's deposition.  Third, as set forth in the Status Reports, the Foreign Representatives have obtained voluminous discovery and information from multiple sources, conducted examinations of witnesses in the U.S., conducted interviews in the Cayman Islands, investigated issues in relation to the conduct of Ascentra's former officers and directors prior to the commencement of the liquidation, and based on such investigation and the information obtained as a result, synthesized their claims against SPGK and its shareholder for claims relating to the Planet Payment Funds. Finally, as pointed out above, there is no time limit for the Liquidators to bring their claims other than under the appropriate statute of limitations.

    ***Balance of the Equities****.*  SPGK alleges that it "lost millions of dollars from its inability to access and invest the funds."  Restraint Motion, at 4.  This allegation is negated by the fact that SPGK itself had the right (which it negotiated) to proactively bring its own claim to settle ownership of the Planet Payment Funds.  Further, as set forth above, SPGK is a shell company being wound down and has approximately $150 million in a bank account in Taiwan.  Most

---

[14]  SPGK argues Ascentra must demonstrate a likelihood of success on the merits of its claims against SPGK, but the issue should be focused on a likelihood of success to entitlement of the funds at issue in the Restraint Motion, not all claims to be asserted against SPGK.

4870-4298-8411

importantly, given that SPGK's sole shareholder has testified that the Planet Payment Funds would be moved to Taiwan and thus out of the reach of the Liquidators and this Court (or the Grand Court), with no guarantee of collectability if the Liquidators ultimately obtained a judgment against SPGK, the balance of the equities in lifting the restraint (particularly at this juncture of the case) weighs in favor of the Liquidators.

*Public Interest*.   SPGK (as is now par for the course) pursues an aggressive line of reasoning, arguing that the Liquidators' "questionable claim" in aid of a "questionably-qualified foreign proceeding" implicates public policy and weighs against Ascentra.   Restraint Motion, at 21.   However, SPGK's objective in filing the Restraint Motion and the Termination Motion is obvious—to obtain a determination by this Court of their legal entitlement to the Planet Payment Funds without the initiation of any appropriate proceeding and a full hearing on the merits.   In support of this objective, SPGK manufactured an argument that the Liquidators misled the Court in order to accomplish a specific result.   But the evidence is contrary to SPGK's baseless assertions. Finally, the public's interest in the integrity of the recognition process and the public policy of ensuring even-handed enforcement of the rules of a foreign proceeding, weighs in favor of the Liquidators.

### D.  The Liquidators Also Satisfy the Alternative Test for an Injunction

SPGK also sets forth an alternative test for the issuance of an injunction—a showing of "irreparable harm and either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."   Restraint Motion, at 22.   For the reasons set forth above, the Liquidators are able to satisfy the factors for this alternative test, as well.

4870-4298-8411

**E.  The Interests of Creditors and Other Interested Entities Will Not Be Sufficiently Protected if the Restraint is Lifted**

Section 1522(a) of the Bankruptcy Code provides that the Court "may modify or terminate relief under subsection (c), only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected."  11 U.S.C. § 1522(a).  First, SPGK asserts that creditors of Ascentra "have no need of protection since Ascentra is solvent."  Restraint Motion, at 4.  As set forth in the concurrently filed Termination Objection and *Declaration of Alexander Gray Henderson, KC*, regardless of the financial status of a liquidation, the rights, process and procedure of creditors remain the same, and the proof of debt procedure applies equally to liquidations that are insolvent or solvent.  SPGK conveniently fails to acknowledge that this Court must not only take into account the interests of creditors but also other interested parties such as shareholders and Ascentra.  But for the restraint, SPGK has no interest at all in the outcome of these chapter 15 proceedings.  As a result, "solvency" is not a factor impacting whether or not the interest of creditors will be harmed by a lifting of the stay.

Second, SPGK asserts that if the restraint is terminated, the Liquidators "remain able to pursue claims against SPGK" and the "interests of all parties are thus sufficiently protected by the termination of the restraint."  Restraint Motion, at 4.  Given that SPGK's sole shareholder has admitted the Planet Payment Funds would be moved out of the reach of the Liquidators and transferred to his account in Taiwan where he already has $150 million, with no guarantee of collectability if the Liquidators prevailed against SPGK, the interests of creditors and interested entities would not be "sufficiently protected."  Even if, assuming *arguendo*, Ascentra were only entitled to the 77% of profits as contemplated by the MOU, which it is not limited to,[15] that would

---

[15] The MOU (Yoshida Dep. Trans., Ex. 3) contemplated SPGK retaining 23% of profits in consideration for Mr. Motohiko Homma, the sole shareholder of SPGK prior to selling his share to Mr. Yoshida for $1.00, giving up his

4870-4298-8411

amount to a claim of more than $170 million, which is far in excess of the amount of the Planet Payment Funds that will be paid into the Disputed Ownership Fund.

## CONCLUSION

For the reasons set forth above, the Foreign Representatives respectfully request that this Court (i) deny the Restraint Motion as moot or, alternatively, on the merits with prejudice; (ii) award the Foreign Representatives their fees and costs incurred in connection with this Objection and the Termination Objection; and (iii) grant such other and further relief as is just and proper.

Dated: September 1, 2023
New York, New York

PILLSBURY WINTHROP SHAW PITTMAN LLP

*/s/ John A. Pintarelli*
John A. Pintarelli
Hugh M. McDonald
Kwame O. Akuffo
31 West 52nd Street
New York, NY 10019-6131
Telephone: 212-858-1000
Facsimile: 212-858-1500
john.pintarelli@pillsburylaw.com
hugh.mcdonald@pillsburylaw.com
kwame.akuffo@pillsburylaw.com

Claire K. Wu (admitted *pro hac vice*)
725 South Figueroa Street, 36th Floor
Los Angeles, CA 90017-5524
Telephone: 213-488-3655
Facsimile: 213-629-1033
claire.wu@pillsburylaw.com

*Attorneys for Foreign Representatives*

---

shareholding in IR-P Holdings, Ascentra's parent company, which was the equivalent of a 23% indirect shareholding in Ascentra.