**Hearing Date and Time: November 9, 2023 at 10:00 a.m. (Prevailing Eastern Time)**

PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, NY 10019-6131
Telephone: 212-858-1000
Facsimile: 212-858-1500
John A. Pintarelli
Hugh M. McDonald
Kwame O. Akuffo

PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, 36th Floor
Los Angeles, CA 90017-5524
Telephone: 213-488-3655
Facsimile:  213-629-1033
Claire K. Wu (admitted *pro hac vice*)

*Attorneys for Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | : Chapter 15 |
| | : |
| | : Case No. 21-11854 (DSJ) |
| Ascentra Holdings, Inc. (In Official Liquidation)[1] | : |
| | : **Related Docket No. 37** |
| Debtor in a Foreign Proceeding. | : |
| | : |

**FOREIGN REPRESENTATIVES' OBJECTION TO MOTION OF SHANG PENG
GAO KE INC. SEZC AND SPGK PTE LTD. PURSUANT TO 11 U.S.C. §§ 1517(D)
AND 1520(C) FOR AN ORDER TERMINATING THE RECOGNITION ORDER**

---

[1]  The Debtor's company registration number is 283719. The Debtor's registered office is c/o JTC (Cayman) Ltd., 94 Solaris Avenue, Second Floor, Camana Bay, PO Box 30745, Grand Cayman, Cayman Islands, KY1-1203.

## Table of Contents

**Page**

INTRODUCTION ................................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND........................................................... 3

    A.  Ascentra and Commencement of Cayman Proceeding.......................................... 3

    B.  Chapter 15 Recognition of Cayman Proceeding.................................................... 5

    C.  SPGK's Motion to Terminate the Recognition Order ........................................... 6

ARGUMENT ...................................................................................................................... 7

    A.  SPGK Lacks Standing to Seek Termination of the Recognition Order.............................. 7

    B.  SPGK's Motion is Barred by Laches................................................................... 9

        a.  SPGK's Delayed Request to Terminate the Recognition Order is not Excusable........ 9

        b.  Prejudice to Ascentra ................................................................................. 11

    C.  SPGK's Motion Is Procedurally Improper ...................................................... 12

    D.  Discretionary Authority to Modify or Terminate Recognition Order ............................ 12

    E.  Grounds for Granting the Recognition Order Were Not Partially or Fully Lacking........ 13

        i.  Cayman Proceeding is a Collective Proceeding ................................................. 14

        ii.  Cayman Proceeding is Conducted under a Law Relating to Insolvency ............. 21

        iii.  Cayman Proceeding is Terminal.......................................................................... 26

    F.  Termination of the Recognition Order Would be Prejudicial to Ascentra ...................... 28

## **<u>TABLE OF AUTHORITIES</u>**

<u>**Page(s)**</u>

**Cases**

*In re Ascot Fund Ltd.*,
603 B.R. 271 (Bankr. S.D.N.Y. 2019) ....................................................................15

*In re Ashapura Minechem Ltd.*,
480 B.R. 129 (S.D.N.Y. 2012)................................................................14, 17, 21

*In re B.C.I. Fins. Pty Ltd.*,
583 B.R. 288 (Bankr. S.D.N.Y. 2018)....................................................................24

*In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*,
238 B.R. 25 (Bankr. S.D.N.Y. 1999)......................................................................15

*In re Bd. Of Dirs. Of Telecom Argentina S.A.*,
No. 05-17811, 2006 WL 686867 (Bankr. S.D.N.Y. Feb. 24, 2006), *aff'd*, 528 F.3d 162 (2d
Cir. 2008) .................................................................................................................14

*In re Betcorp Ltd.*,
400 B.R. 266 (Bankr. D. Nev. 2009) ................................................................14, 15

*In re Chiquita Brands Int'l, Inc.*,
No. 08-MD-01916, 13-80146-Civ (KAM), 2017 WL 5447714 (S.D. Fla. Apr. 26, 2017),
*aff'd sub nom. DOES 1-98 v. Boies, Schiller & Flexner, LLP*, 709 F. Appx. 684 (11th Cir.
2017) ..........................................................................................................................8

*In re Comair Ltd.*,
No. 21-10298, 2023 WL 1971618 (Bankr. S.D.N.Y. Feb. 12, 2023)......................28

*In re Cozumel Caribe, SA de CV*,
508 B.R. 330 (Bankr. S.D.N.Y. 2014) ...................................................................13

*In re DeArakie*,
199 B.R. 821 (Bankr. S.D.N.Y. 1996) .....................................................................9

*In re Energy Future Holdings Corp.*,
585 B.R. 341 (Bankr. D. Del. 2018), *aff'd*, 7873 F. App'x 89 (3d Cir. 2019) .......20

*Fed. Ins. Co. v. United States*,
882 F.3d 348 (2d Cir. 2018)......................................................................................9

*In re Global Cord Blood Corp.*,
    No. 22-11347, 2022 WL 17478530 (Bankr. S.D.N.Y. Dec. 5, 2022) (Jones, David S.). *passim*

*In re Loy*,
    448 B.R. 420 (Bankr. E.D.Va. 2011) .......................................................................13

*In re Mohr*,
    538 B.R. 882 (Bankr. S.D. Ga. 2015) .......................................................................7

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992)......................................................................................22

*In re Ocean Rig UDW Inc.*,
    764 F. Appx. 46 (2d Cir. 2019)............................................................................7

*In re Oi S.A.*,
    587 B.R. 253 (Bankr. S.D.N.Y. 2018)......................................................................14

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
    580 U.S. 328 (2017) .......................................................................................9

*Stone v. Williams*,
    873 F.2d 620 (2d Cir. 1989), *vacated on other grounds*, 891 F.2d 401 (2d Cir. 1989)............9

*In re Timberline Energy Corp.*,
    No. 81-00522, 1989 Bankr. LEXIS 2437 (Bankr. N.D.N.Y. Dec. 4, 1989)............................8

*In re Zhejiang Topoint Photovoltaic Co. Ltd.*,
    600 B.R. 312 (Bankr. D.N.J. 2019) ........................................................................13

*Zuckerman v. Metro. Museum of Art*,
    928 F.3d 186 (2d Cir. 2019)..............................................................................9

## Statutes and Codes

United States Code
    Title 11 ................................................................................................1, 5, 6, 25
    Title 11, Section 101(23) ...........................................................................13, 14, 23, 26
    Title 11, Section 1501(a)(1) and (3) ................................................................25
    Title 11, Section 1507(b)(1).........................................................................25
    Title 11, Sections 1517(d) and 1520(c)..............................................................1
    Title 11, Section 1522(c)............................................................................1

Bankruptcy Code
    Section 1517(d)....................................................................................12, 13
    Sections 1519 and 105(a)..............................................................................5

Companies Act
    Part V ........................................................................................................22, 23, 24, 27
    Section 110(1)(a) ......................................................................................................27
    Section 116(c) ............................................................................................................4
    Section 124..........................................................................................................4, 16
    Section 124(1)............................................................................................................4
    Section 131(b)............................................................................................................4
    Sections 138-150......................................................................................................17
    Section 139(1)..........................................................................................................18
    Section 152..............................................................................................................27

<u>Rules and Regulations</u>

Cayman Winding Up Rules 2018
    Rule 1(1) ....................................................................................................................4

Graham Robinson and Ivy Chua Suk Lin, the duly appointed joint official liquidators and foreign representatives (the "**Liquidators**" or "**Foreign Representatives**") of Ascentra Holdings, Inc. (In Official Liquidation), submit this objection (the "**Objection**")[2] to the *Motion of Shang Peng Gao Ke Inc. SEZC and SPGK Pte Ltd. Pursuant to 11 U.S.C. §§ 1517(d) and 1520(c) For An Order Terminating The Recognition Order* [ECF No. 37] (the "**Motion**") filed by Shang Peng Gao Ke Inc. SEZC and SPGK Pte Ltd. (collectively, "**SPGK**"). As support, the Foreign Representatives submit the *Declaration of Honourable Alexander Gray Henderson, KC* ("**Henderson Decl.**"), a former Judge of the Grand Court of the Cayman Islands (the "**Grand Court**"), and the *Declaration of John A. Pintarelli* ("**Pintarelli Decl.**"), and represent as follows.

## INTRODUCTION

Bankruptcy courts have discretionary power to modify or terminate recognition of a foreign proceeding if the grounds to do so were partially or fully lacking or have ceased to exist based on new facts. In exercising such discretion, courts must consider prejudice to the non-moving party's reliance on a recognition order.  Without adducing new facts to show that the grounds for recognition of the Cayman Proceeding[3] have ceased, SPGK asks this Court to revisit its decision to recognize the Cayman Proceeding and terminate this case because the Foreign Representatives did not disclose that the Cayman Proceeding is a solvent liquidation under Cayman Islands law, and Mr. Graham Robinson and Mr. Guy Cowan, Ascentra's declarants in support of the Chapter 15 petition, misled the Court (not true) about the then status of the Cayman Proceeding and Cayman Islands law, in their declarations.

---

[2] Filed contemporaneously herewith is the *Foreign Representatives' Objection to Motion of Shang Peng Gao Ke Inc. SEZC and SPGK Pte Ltd. Pursuant to 11 U.S.C. § 1522(c) to Terminate Restraint* (the "**Restraint Objection**").

[3] Capitalized terms used but not defined herein have the meanings ascribed to them below and in the Motion.

The legal narratives pressed by SPGK are not what the Motion is about.  Instead, it is part of a double-barrel attack designed to claim ownership to the Planet Payment Funds. Prior to entry of the Recognition Order, SPGK was aware of the  financial status of the Cayman Proceeding, present at the initial hearings in this case and only objected to preserve its right to commence a proceeding in another forum to push its claim to the Planet Payment Funds.

Regarding the Planet Payment Funds, SPGK's ultimate beneficial owner and shareholder, Ryunosuke Yoshida, confirmed this Court's initial concern that if SPGK gained access to the funds, SPGK would move them offshore (in this case Taiwan) and away from this Court's jurisdiction. To achieve this nefarious result, SPGK has assembled a new legal team and a legal expert with contrived opinions about Cayman Islands law to challenge this Court's recognition decision because it was allegedly misled and the Cayman Proceeding should not be recognized as a "foreign proceeding" if it satisfies all creditor claims in full under Cayman Islands law – *i.e.* a "solvent liquidation".

These contentions lack any support and, if SPGK believed there is, it failed to raise them earlier and at any point in this case.  Ironically, Mr. Yoshida refused to submit a declaration of solvency in the Cayman Proceeding and submitted a Statement of Affairs in which he concluded that Ascentra had insufficient assets to satisfy creditor claims, which was largely predicated on SPGK's assertion of claims to certain assets to which Ascentra also claims ownership.

Indeed, SPGK could not have raised an objection then or now because it has no standing to advocate against recognition.  SPGK is neither a creditor nor a shareholder of Ascentra. It is merely a potential litigation target that was stopped from transferring disputed assets from this jurisdiction – an injunction that it consented to by acknowledging that doing so would constitute irreparable harm to Ascentra. Putting aside the lack of standing and clear waiver to object, SPGK

and its supposed expert are wrong that solvent liquidations under Cayman Islands law could never qualify as a "foreign proceeding" because such liquidations are not collective, authorized under a law relating to insolvency or adjustment of debt, and for purposes of liquidation or reorganization. On the contrary, an official liquidation, as is Ascentra's, is a terminal proceeding arising under a Cayman Islands law relating to insolvency or adjustment of debt and is collective and designed to maximize value for all stakeholders, both creditors and shareholders. Satisfying creditor claims (regardless of rank or priority) is the objective of every liquidation proceeding under U.S. and Cayman Islands law. But, SPGK posits that if the recovery results in satisfaction of creditor claims, the proceeding should not have been recognized in the first place. SPGK's position taken to its logical conclusion would mean that any time a U.S. Chapter 11 case results in creditors being paid in full, such case is no longer eligible for recognition under the Model Law.

This result is unprecedented for a reason – it is squarely against the very reason the U.S. and many nations have adopted the Model Law. How else can a bankruptcy trustee or liquidator recover assets to satisfy creditor claims? The patent absurdity of SPGK's legal positions, including the lack of any misrepresentation to this Court, demonstrates that the Motion is baseless. The Motion should be denied accordingly because the grounds for recognizing the Cayman Proceeding were not partially or fully lacking, and termination of the Recognition Order would prejudice Ascentra after relying on it for nearly two years.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    <u>Ascentra and Commencement of Cayman Proceeding</u>

Ascentra operated as a global e-commerce company that sold health and beauty products in Hong Kong, Japan, Taiwan and the People's Republic of China. Three shareholders indirectly owned a majority of the company, including Yoshio Matsuura, and Ryunosuke Yoshida ("**Yoshida**"), who filed a declaration in support of SPGK's motion to terminate restraint on the

Planet Payment Funds [ECF No. 42].  As a result of various shareholder disputes over the strategic direction of the company, on June 1, 2021, the shareholders placed Ascentra into voluntary liquidation pursuant to section 116(c) of the Cayman Islands Companies Act (Rev. 2021) (the "**Companies Act**"), and Mr. Robinson was appointed as voluntary liquidator. Messrs. Matsuura and Yoshida were the only directors of Ascentra immediately before it was placed into voluntary liquidation.

In the Cayman Islands, where Ascentra was incorporated, a voluntary liquidation must proceed under court supervision if the company's directors fail to sign a declaration of solvency within twenty-eight (28) days after the commencement of the liquidation. *See* Companies Act, § 124[4]; Order 14, r.1(1) of the Cayman Winding Up Rules 2018 ("**CWR**").  Neither of Ascentra's directors, i.e., Messrs. Matsuura and Yoshida, signed a solvency declaration within that period, and each "confirmed in writing that they were unwilling to do so." ECF No. 4, Ex. B at ¶ 6.

On September 17, 2021, the Grand Court entered a supervision order (cause no. FSD 189 of 2021) (the "**Supervision Order**") based on an application made by Mr. Robinson under section 124(1) of the Companies Act (the "**Cayman Proceeding**"). *See* Pintarelli Decl., Ex. 1. On September 23, 2021, the Liquidators filed a certificate of solvency, stating that Ascentra be treated as a solvent company in the Cayman Proceeding.  *See* Pintarelli Decl., Ex. 2.  The certificate also states that the "Liquidators may change their determination from time to time in the light of changes of relevant circumstances and/or their assessment of the Company's financial position." *Id.* However, on November 9, 2021, Mr. Yoshida filed a Statement of Affairs of Ascentra Holdings, Inc. (the "**Statement of Affairs**") in which he concluded that there was a deficiency of

---

[4] Notwithstanding a declaration of solvency being made in accordance with section 124 of the Companies Act, a liquidator may seek a supervision order if "the supervision of the Court will facilitate a more effective, economic or expeditious liquidation of the company in the interests of contributories and creditors." Henderson, Decl., Ex. 1 (Companies Act, § 131(b)).

$39,069,268.77 (*i.e.*, there are not enough assets to satisfy creditor claims). *See* Pintarelli Decl., Ex. 3. The Statement of Affairs lists several "Preferential Creditors" and general unsecured creditors that Mr. Yoshida believed have claims against Ascentra. *See id.* at 6-7.

      B.     <u>Chapter 15 Recognition of Cayman Proceeding</u>

      On October 27, 2021, the Liquidators filed an amended petition for recognition under Chapter 15 of Title 11 of the United States Code (the "**Bankruptcy Code**"). The petition was followed by the *Verified Petition for Recognition of Foreign Insolvency Proceeding and Application for Additional Relief Under Chapter 15 of the Bankruptcy Code, and Memorandum of Law In Support Thereof* (the "**Verified Petition**") [ECF No. 3], and *Emergency Request for Provisional Relief Pursuant to Sections 1519 and 105(a) of the Bankruptcy Code* (the "**Provisional Application**") [ECF No. 9] to, among other things, enjoin the transfer of funds (the "**Planet Payment Funds**") held in an account maintained by Planet Payment Inc. ("**Planet Payment**").

      SPGK received notice of the Verified Petition and Provisional Application. *See* ECF No. 13. On November 1, 2021, SPGK filed the *Limited Objection and Reservation of Rights of Shang Peng Gao Ke Inc. SEZC and SPGK PTE LTD. to Emergency Request for Provisional Relief Pursuant to Sections 1519 and 105(a) of the Bankruptcy Code*, stating that it "does not object to the provisional stay relief requested" but requested certain modifications to the proposed provisional order. ECF No. 15 ¶ 3. Counsel to the Liquidators made those changes. After a hearing, the Court entered a provisional order that, *inter alia*, stayed the transfer of the Planet Payment Funds because the Liquidators presented a colorable claim and right to the funds. *See* ECF No. 17.

      On November 22, 2021, SPGK filed the *Reservation of Rights of Shang Peng Gao Ke Inc. SEZC and SPGK PTE LTD. to Verified Petition for Recognition of Foreign Insolvency Proceeding and Application for Additional Relief Under Chapter 15 of the Bankruptcy Code*, reserving its

rights to modify the Liquidators' proposed recognition order "in the event a resolution is not achieved." ECF No. 20 at 1. The Liquidators agreed to modify the proposed recognition order to reflect SPGK's comments. *See* ECF No. 54, Ex. 3 at 1.  After a hearing attended by SPGK's former counsel[5] on December 3, 2021,[6] the Court entered an order appointing the Liquidators as Foreign Representatives and recognizing the Cayman Proceeding as a foreign main proceeding (the "**Recognition Order**"). *See* ECF No. 22.

       C.    SPGK's Motion to Terminate the Recognition Order

SPGK filed the Motion to terminate the Recognition Order more than a year and a half after its entry to obtain access to the Planet Payment Funds and remove them from this jurisdiction. SPGK asserts for the first time that the Cayman Proceeding is not a "foreign proceeding" as defined in the Bankruptcy Code and should not have been recognized by this Court. Other than the contrived *Declaration of Katherine L. B. Pearson* ("**Pearson Decl.**") (addressed further below) [ECF No. 45], SPGK bases it Motion on a non-final hair-splitting decision by the High Court for the Republic of Singapore (the "**Singapore High Court**") on April 3, 2023, that denied the Foreign Representatives' application for recognition of the Cayman Proceeding under Singapore law.  An appeal of this decision has been briefed and argued, and the parties are awaiting a decision.

According to the Singapore High Court, the Cayman Proceeding is not a "foreign proceeding" under Singapore law because it is a solvent liquidation. In the ruling, the Singapore High Court acknowledged that "US Bankruptcy Court have accepted that a solvent liquidation may be recognised under Chapter 15," yet stated that U.S. Bankruptcy Courts' "approach does not

---

[5]  Arnold & Porter Kaye Scholer LLP originally served as SPGK's counsel. On April 10, 2023, Pachulski Stang Ziehl & Jones LLP replaced the firm. *See Notice of Substitution of Counsel and Request for Notices*. *See* ECF No. 31.

[6]  SPGK admitted that it was aware of the solvency certificate as early as November 29, 2021, but never raised an issue with counsel to the Foreign Representatives or at the December 3, 2021 hearing.  *See* ECF No. 52 - SPGK Letter, dated July 28, 2023 at 4.

carry any special weight in how the Singapore courts interpret Singapore's adaptation of the Model Law in the Third Schedule." ECF No. 39, Ex. 5 ¶ 117.

Back from Singapore, SPGK urges this Court to reverse course and follow the Singapore High Court's non-binding and non-final decision on an issue of first impression for that court and upend settled law in this and other judicial districts in the United States, and terminate the Recognition Order because SPGK believes that this Court got it wrong when it recognized the Cayman Proceeding in December 2021.  SPGK is wrong, not this Court.

## ARGUMENT

### A.    SPGK Lacks Standing to Seek Termination of the Recognition Order

A preliminary issue before addressing SPGK's baseless Motion is - standing. "Bankruptcy standing is narrower than Article III standing . . . . [T]o have standing to object to a bankruptcy order, a person must have a pecuniary interest in the outcome of the bankruptcy proceedings." *In re Mohr*, 538 B.R. 882, 884 (Bankr. S.D. Ga. 2015) (alteration in original) (citation omitted) (debtor lacked standing to object to creditor's claims where it had already received a discharge, the trustee was performing his duties, and a surplus was not reasonably likely to be generated).

SPGK does not have standing to move to terminate the Recognition Order because it is not a creditor or shareholder of Ascentra and thus has no pecuniary interest in this matter. SPGK has suffered no actual or imminent invasion of a legally protected interest traceable to the Recognition Order such that the termination of this proceeding could redress.  *In re Ocean Rig UDW Inc.*, 764 F. Appx. 46, 48 (2d Cir. 2019) (shareholder "failed to identify any other way her pecuniary interests have been directly and adversely affected by the challenged orders."). To the contrary, SPGK *consented* to entry of the Recognition Order and the inclusion of the restraint on the Planet Payment Funds.  Because SPGK is not a creditor or a shareholder of Ascentra, it did not and could not object to this Court granting recognition to the Cayman Proceeding.

SPGK's status as a potential litigation target is also insufficient to confer standing to move to terminate this proceeding. *See, e.g.*, *In re Chiquita Brands Int'l, Inc.*, No. 08-MD-01916, 13-80146-Civ (KAM), 2017 WL 5447714, at *4 (S.D. Fla. Apr. 26, 2017), *aff'd sub nom. DOES 1-98 v. Boies, Schiller & Flexner, LLP*, 709 F. Appx. 684 (11th Cir. 2017) ("Plaintiffs fail to allege how they are presently impacted based on a contingent liability, and thus fail to allege a cognizable injury in fact for Article III standing purposes.").

Similarly, a third party's status as a potential litigation target in the Cayman Islands is also insufficient to confer standing to contest a liquidator's application (i.e., motion):

> Q. I just want to come on to a different situation where the individual is not a creditor, okay, not a contributory, and the liquidator is trying to sue this person, this third party, and the liquidator applies for sanction and he advertises his application. . . . Q. So the third party gets winds of it. . . Q. Does the third party have standing to appear on the application? A. No.

Pintarelli Decl., Ex. 4 (Pearson Dep. Tr. at 184:15-185:2).

SPGK also claims it is an "interested party." Motion at 5. But even an "interested party" must have a direct pecuniary interest in a bankruptcy proceeding (i.e., a creditor). The term interested party is analogous to "party in interest" under the Bankruptcy Code, and that term "is governed by the Code's purposes" which "are to convert the debtor's estate into cash and distribute it among creditors . . . ." *In re Timberline Energy Corp.*, No. 81-00522, 1989 Bankr. LEXIS 2437 *12 (Bankr. N.D.N.Y. Dec. 4, 1989). In light of that purpose, the Second Circuit requires a "status as either a creditor or a debtor in order to be deemed a party in interest." *Id.* (citing *In re Comcoach Corp.*, 698 F.2d 571, 573 (2d Cir. 1983)). SPGK is not a creditor of Ascentra because it has not filed a proof of debt in the Cayman Proceeding and thus is not a proper interested party.

For the reasons stated, the Motion should be denied for lack of standing.

**B.**    **SPGK's Motion is Barred by Laches**

Courts apply the doctrine of laches to protect a party "against unreasonable, prejudicial delay in commencing [an action]." *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 333 (2017) (citation omitted).  In bankruptcy, laches is crucial because "the chief purpose of the bankruptcy law is to 'secure a prompt and effectual administration and settlement of the estate.'" *See In re DeArakie*, 199 B.R. 821, 827 (Bankr. S.D.N.Y. 1996).

Laches requires a showing of "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Fed. Ins. Co. v. United States*, 882 F.3d 348, 365 (2d Cir. 2018) (citation omitted).  Although these elements are related and must be weighed together, "[w]here there is no excuse for delay . . .  [a party] need show little prejudice." *Stone v. Williams*, 873 F.2d 620, 625 (2d Cir. 1989), *vacated on other grounds*, 891 F.2d 401 (2d Cir. 1989).  In certain circumstances, "laches may be decided 'as a matter of law' when the original owner's lack of due diligence and prejudice to the party currently in possession are apparent." *Zuckerman v. Metro. Museum of Art*, 928 F.3d 186, 193-95 (2d Cir. 2019) (citation omitted).

As a matter of law, the Motion should be denied because SPGK slept on its rights to contest the Recognition Order for more than **eighteen** months. Its belated request to terminate it now is inexcusable and would prejudice Ascentra.

    *a.*    *SPGK's Delayed Request to Terminate the Recognition Order is not Excusable*

SPGK's delayed Motion is inexcusable. It was served the Verified Petition, retained U.S. counsel, filed a reservation of rights, consented to relief in a revised proposed recognition order, which included language specifically requested by its counsel, had knowledge of the Liquidators' solvency determination, and appeared at the recognition hearing. Because no party objected to recognition of the Cayman Proceeding, the Court granted the application for recognition.  *See* ECF

9

No. 54, Ex. 4 (Dec. 3, 2021, Hr'g Tr. at 12:20-24) ("Does anybody else want to say anything before I decide the application? Okay. So, hearing from no one, I'm going to grant the application. Granting recognition and relief in aid of a foreign main proceeding.").

SPGK did not appeal the Recognition Order even after the Court stated, "*there's been an ample showing that . . . all the statutory requirements are met.*" *Id.* at 13:9-10 (emphasis added).

SPGK's complete lack of excuse is also demonstrated by the very case it relies upon – the Singapore High Court's decision.  On January 6, 2022, the Foreign Representatives applied for recognition of the Cayman Proceeding in Singapore. SPGK actively participated in the Singapore proceedings and was aware of the Singapore High Court's focus on Ascentra's status as a solvent liquidation.   However, SPGK refused to raise any issue with this Court when the Singapore High Court rendered a bench decision on May 27, 2022 that was appealed in June 2022, and instead *waited* until the Singapore High Court's formal decision on April 3, 2023, (more than a year after solvency became an issue), changed counsel a *week* after the Singapore High Court's ruling (who had nearly three months to review relevant information and filings before preparing the Motion), and before a four-day holiday weekend and a day after the parties' counsel conferred about transferring the Planet Payment Funds into this Court's disputed ownership fund, filed the Motion.

SPGK made a strategic decision to act now despite having had ample time and information. *See* Motion ¶¶ 3, 6. Its reasons for delay, if any, are not "based on a lack of information or some fundamental misunderstanding of the facts." *In Oi Brasil Holdings Coöperatief UA*, 578 B.R. 169, 221 (Bankr. S.D.N.Y. 2017) (among other reasons, declining to terminate the recognition order because the creditor had crucial information about the debtor, and its "failure to object at the Prior Recognition Hearing was a strategic decision, not one based on a lack of information or some fundamental misunderstanding of the facts.").

     *b.*     *Prejudice to Ascentra*

Ascentra would be prejudiced if the Motion was granted because it would expose it to the material risk and irreparable harm addressed in the Provisional Application that the Planet Payment Funds may be transferred outside the U.S. to accounts controlled by an entity or an individual over whom the Court otherwise would have no jurisdiction.

When asked where the Planet Payment Funds would go if the restraint against the Planet Payment Funds is lifted, Mr. Yoshida testified that "I believe I would transfer to the Shanghai Commercial Savings Bank in Taiwan." Yoshida Dep. Tr. at 290:16-17.[7] If true, after the Planet Payment Funds ownership issue is resolved, the Foreign Representatives would be obligated to expend time and resources to recover the funds from Taiwan or anywhere else Mr. Yoshida decides to transfer the funds.  SPGK has an account in Singapore, and the Planet Payment Funds could be transferred there. *Id.* 241:11-16 ("A. DBS Bank is the name of a bank. Q. And where is that bank located? A. Singapore. Q. Singapore. Is that where SPGK PTE had its bank account? A. Yes.").

Also, the funds could be transferred to Dubai where Mr. Yoshida's new company, "Eight Light Years FZCO," is incorporated. *Id.* 116:2-8 ("Q. You said Eight Light Years in Dubai? A. Yes. Q. It is incorporated in Dubai? A. Yes."). Besides being SPGK's director and owner, Mr. Yoshida is employed by Eight Light Years (formed in 2021 or 2022) to provide services to SPGK Inc., and Eight Light Years has accounts in Dubai. *Id.* 32:11-15 ("Q. And where are you employed? . . . A. Eight Lights Years FZCO."); 32:22-33:1 ("A. That is my company. Q. That is your company? And what does that company do? A. Providing services to Shang Peng Gao Ke Inc."); 114:25-115:4 ("Q. Okay. The Eight Light Years entity that you referenced early, when did was that founded? A. I believe it was around 2021 or . . . 2022."); 116:7-12 ("Q. Does it maintain its

---

[7] For Yoshida Deposition Transcript, *see* <u>Exhibit 2</u> to Declaration of John A. Pintarelli for the Restraint Objection.

bank accounts in Dubai? A. Yes. Q. And the money you were paid from SPGK is transferred into Dubai? A. Yes.").

It would be counterproductive and prejudicial to cause the Foreign Representatives (on behalf of Ascentra) to shift their focus now to initiate additional costly proceedings to chase the Planet Payment Funds in Dubai, Singapore, Taiwan or anywhere else the funds could be transferred if the Motion is granted, particularly when SPGK previously stated it had no intention of transferring the Planet Payment Funds.

In sum, the doctrine of laches bars SPGK from seeking to terminate the Recognition Order.

### C.    SPGK's Motion Is Procedurally Improper

The Motion is procedurally improper and should be denied because it implicitly seeks declaratory relief that SPGK owns the Planet Payment Funds. SPGK negotiated that the Recognition Order not "limit SPGK from commencing an action in a non-U.S. forum to adjudicate the dispute regarding the ownership of the assets or property claimed by Ascentra, *including the Planet Payment Funds*." Recognition Order ¶ 10 (emphasis added). *See also* ECF No. 54, Ex. 3 at 1. SPGK cannot abuse the judicial process for its benefit by sidestepping plenary processes to settle who owns the Planet Payment Funds.  If SPGK thinks it owns the funds, it is free to initiate proceedings in a non-US forum.  Its refusal to do so is not a basis to terminate this proceeding.

### D.    Discretionary Authority to Modify or Terminate Recognition Order

SPGK asks this Court to terminate the Recognition Order under section 1517(d) of the Bankruptcy Code because the Liquidators allegedly misled this Court about Cayman Islands law and did not disclose the financial status of the Cayman Proceeding. That section authorizes the Court to modify or terminate the recognition of a foreign proceeding "if it is shown that the grounds for granting it were fully or partially lacking or have ceased to exist, but in considering such action

the court shall give due weight to possible prejudice to parties that have relied upon the order granting recognition." 11 U.S.C. § 1517(d). *See In re Zhejiang Topoint Photovoltaic Co. Ltd.*, 600 B.R. 312, 319 (Bankr. D.N.J. 2019) ("section 1517(d) is permissive, not mandatory.").

To modify or terminate a recognition order, the Court must evaluate whether (i) the grounds for granting recognition were fully or partially lacking or (ii) the grounds for granting recognition have ceased to exist. *See In re Loy*, 448 B.R. 420, 438 (Bankr. E.D.Va. 2011) ("Section 1517(d) provides a two-part disjunctive test."). This requires the Court first to look back "to see whether the basis for recognition previously presented to the Court was flawed in some way" and second look forward "to whether something has changed since recognition." *Oi Brasil*, 578 B.R. at 197.

There is no reason to look forward to determine if anything has changed since recognition because SPGK only argues that the "Court should terminate recognition of the Cayman Proceeding as the grounds for recognizing it were and are lacking." Motion ¶ 12.

Because SPGK asserts that the Cayman Proceeding should never have qualified as a "foreign proceeding," this Objection only addresses that argument. Other relevant factors for granting recognition are not disputed. *See In re Cozumel Caribe, SA de CV*, 508 B.R. 330, 335 (Bankr. S.D.N.Y. 2014) ("The same factors relevant in determining whether to grant recognition are . . . relevant in determining whether to terminate a recognition order.").

### E.   Grounds for Granting the Recognition Order Were Not Partially or Fully Lacking

A foreign proceeding is defined as a "collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23).

13

The definition is broadly applied "to fashion relief that is appropriate to effectuate the objectives . . . chapter [15] in accordance with comity." *In re Oi S.A.*, 587 B.R. 253, 264 (Bankr. S.D.N.Y. 2018). *See also In re Bd. Of Dirs. Of Telecom Argentina S.A.*, No. 05-17811, 2006 WL 686867, at *21 (Bankr. S.D.N.Y. Feb. 24, 2006) (the foreign proceeding definition "is to be broadly construed" [citation omitted]), *aff'd*, 528 F.3d 162 (2d Cir. 2008); 2 Collier on Bankruptcy ¶ 101.23 (16th ed. 2023) ("Courts have construed the definition of 'foreign proceeding' broadly."). Courts look at seven factors in construing section 101(23):

> (i) [the existence of] a proceeding; (ii) that is either judicial or administrative; (iii) that is collective in nature; (iv) that is in a foreign country; (v) that is authorized or conducted under a law related to insolvency or the adjustment of debts; (vi) in which the debtor's assets and affairs are subject to the control or supervision of a foreign court; and (vii) which proceeding is for the purpose of reorganization or liquidation.

*In re Ashapura Minechem Ltd.*, 480 B.R. 129, 136 (S.D.N.Y. 2012) (quoting *In re Betcorp Ltd.*, 400 B.R. 266, 277 (Bankr. D. Nev. 2009)). Only the third, fifth, and seventh factors are in dispute.

     *i.*    *Cayman Proceeding is a Collective Proceeding*

A collective proceeding concerns the "treatment of and potential benefit to creditors" and "all interests or the interests of a creditor body as a whole, not just individuals." *In re Global Cord Blood Corp.*, No. 22-11347, 2022 WL 17478530, at *7 (Bankr. S.D.N.Y. Dec. 5, 2022) (Jones, David S.); *see also In re Betcorp. Ltd.*, 400 B.R. 266, 281 (Bankr. D. Nev. 2009) ("A collective proceeding is one that considers the rights and obligations of all creditors. This is in contrast, for example, to a receivership remedy instigated at the request, and for the benefit, of a single secured creditor."). This concept "contemplates both the consideration and eventual treatment of claims of various types of creditors . . . ." *In re Ashapua Minechem Ltd.*, 480 B.R. 129, 136, 140 (Bankr.

S.D.N.Y. 2012) ("The main test of whether a proceeding is collective is whether *all* creditors' interests were considered in the proceeding.").

In construing collective proceeding, "[t]his Court has taken a broad view of what it means to 'consider' the rights of creditors, holding that a foreign proceeding can be 'collective' even if some creditors are not able to participate directly." *Global Cord*, 2022 WL 17478530, at *8 (citing *In re ENNIA Caribe Holding N.V.*, 594 B.R. 631, 638-39 (Bankr. S.D.N.Y. 2018) [finding proceeding collective despite possibility creditors were not allowed to participate; reasoning that relevant foreign insolvency statute ensured proceedings were in creditors' interest]; *Ashapura*, 480 B.R. at 141 ["even if there were no opportunity . . . for unsecured creditors to participate . . . this may still be a collective proceeding, because it involves parties other than just one class of creditor or just one party-in-interest"]).

Against this backdrop, U.S. courts have recognized foreign proceedings involving solvent debtors. In *Ascot Fund Limited*, Ascot Fund was placed into voluntary liquidation in the Cayman Islands and later under the Grand Court's supervision. *See In re Ascot Fund Ltd.*, 603 B.R. 271, 276 (Bankr. S.D.N.Y. 2019). The liquidators later sought ancillary relief in this Court and, on the petition date, the "company [wa]s determined to be solvent." Pintarelli Decl. Ex. 5, ¶ 20.

This Court recognized Ascot Fund's liquidation for multiple reasons, including that it was "a collective proceeding governed by the Companies Law through which Ascot Fund's financial affairs will be wound up and its assets distributed to creditors, here the shareholders." *Ascot Fund*, 603 B.R. at 278. *See also In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 238 B.R. 25, 48 (Bankr. S.D.N.Y. 1999) (Bermuda scheme of arrangement was a foreign proceeding and "believed to be a solvent one."); *Betcorp.*, 400 B.R. at 281 (solvent voluntary liquidation was a foreign proceeding because "[t]he [solvent] voluntary winding up provisions [under Australian law] provide[d]

substantial evidence that this type of external administration is properly understood as collective.").

Existing precedent show that solvent debtors are not barred from obtaining recognition, and there is no statutory requirement that limits recognition of foreign proceedings to insolvent debtors. Yet, although the Singapore High Court accepted that the Cayman Proceeding is a collective proceeding, SPGK argues that it is not because Ascentra's shareholders are the residual stakeholders. However, Ms. Pearson, SPGK's legal expert, testified that Cayman Islands "official liquidations are collective judicial proceedings." Pintarelli Decl., Ex. 4 (Pearson Dep. Tr. at 113:16-19) ("Q. The next question is whether official liquidations are collective judicial proceedings. A. Yes.").

There is no dispute that upon entry of the Supervision Order, Ascentra was in official liquidation, a terminal process ending in dissolution of the company. *See* Henderson Decl. ¶ 27. Ms. Pearson strained to walk back her prior "collective proceeding" testimony by stating a solvent liquidation is only a collective proceeding for shareholders. *See* Pintarelli Decl., Ex. 4 (Pearson Dep. Tr. at 116:4-10) ("Q. So you agree . . . that a Cayman liquidation is not just a judicial proceeding, it is a collective proceeding? A. Yes, it is a collective judicial proceeding for . . . Ascentra shareholders."). But that is inconsistent with her other testimony about the collective nature of Cayman Islands liquidations.

Upon filing an application for a supervisory order under section 124 of the Companies Act, voluntary liquidators must notify all known creditors and contributories (shareholders), and each has a right to be heard on the appointment of the official liquidators. *See* Pintarelli Decl., Ex. 4 (Pearson Dep. Tr. at 162:10-13) ("Q. When he goes to court . . . he has to give notice to the creditors and the contributories, correct? A. Yes."). If a creditor or shareholder raises a potential conflict

for the voluntary liquidator, the Grand Court will appoint different official liquidators. *See* Pintarelli Decl., Ex. 7 (citing to *Hader Fund* at 9).

Upon their appointment, official liquidators must make a judgment about the solvency of the debtor to determine which group of stakeholders appear most likely to have a financial stake in final outcome of the liquidation. *See* Henderson Decl. ¶ 20. The joint official liquidators (JOLs) "can come to one of three opinions: 'solvent', 'insolvent', or 'of doubtful solvency.'" *Id.*  This determination will have certain procedural implications for the liquidation.  Where the company appears to be solvent, the right of the creditor class to address the Court or to make important decisions is curtailed; if the company appears to be insolvent, the procedural role of the shareholders is restricted. JOLs must make judgments about solvency to inform the Court about which group of stakeholders appears most likely to have a financial stake in the outcome. *Id*. Whatever the JOLs' assessment of solvency may be, throughout the winding up proceeding the Grand Court must consider the interests of both the shareholders and the creditors, although the weight "accorded to the views of each group will vary depending upon the solvency assessment of the JOLs." *Id*. ¶ 22.

Regardless of whether the official liquidation proceeds on a solvent or insolvent basis, official liquidators are appointed to wind up the affairs of the company, collect all of its assets and distribute them in accordance with the Cayman statutory scheme. *See generally* Henderson Decl., Ex. 1 (Companies Act §§ 138-150).  Ms. Pearson confirmed that the Cayman statutory scheme is similar to the U.S. priority scheme in that shareholders may not receive a distribution until all creditors are paid in full. *See* Pintarelli Decl., Ex. 4 (Pearson Dep. Tr. 29:23-30:2; 78:13-18). This is consistent with U.S. case law defining a "collective proceeding" as one where the claims of all creditors are treated. *See Ashapura*, 480 B.R. at 136.

Regardless of the financial status of a liquidation, all debts against a debtor are admissible against proof. *See* Henderson Decl., Ex. 2 (Companies Act § 139(1)). While the form of proof may differ depending on the debtor's solvency, the official liquidators may request a creditor to submit a proof of debt if a debt is disputed. *See* Henderson Decl., Ex. 2 (CWR O.16, r.1(3)). If the creditor refuses to submit a proof of debt, the liquidator can notify the creditor that he or she will reject the debt claimed. *See id.* (CWR O.16, r.6(3). A liquidator cannot force a purported creditor to file a proof of debt, regardless of the debtor being solvent or insolvent. *See* Pintarelli Decl., Ex. 4 (Pearson Dep. Tr. at 34:19-24) ("Q. The Liquidator cannot force the creditor to submit a debt? . . . Q. A proof of debt. He cannot force the creditor to do that, can he? A. No."). If a debt is disputed, the CWR provides a procedure to resolve the dispute, which involves a creditor appealing the liquidator's initial rejection of the claim to the Grand Court. *See* Henderson Decl., Ex. 2 (CWR O.16, r.17). That same procedure applies to all official liquidations, whether doubtful solvent, insolvent, or solvent. *Id.*

The collective process described align with Ms. Pearson's declaration in *In re TCA Global Credit Fund Ltd.* (the "**Pearson TCA Global Declaration**") that the Cayman liquidation was:

> 'collective' in nature in that it provides a mechanism for the resolution of the claims of all the creditors and shareholders of the Debtor, and claims together rather than merely the resolution of a two-party dispute. All individual claims against the Debtor are stayed as described above and the Cayman Court will supervise the collection and distribution of the Debtor's property as it is wound up. *See* Cayman Companies Act §§ 138-150 [relating to Part V].

Pintarelli Decl., Ex. 6 (Pearson TCA Global Declaration ¶ 18). The declaration does not reference *TCA Global*'s solvency. *Id*. But Ms. Pearson's reason that the Cayman liquidation was "collective" is that the Companies Act provides a mechanism for resolving the claims of all creditors and shareholders of a Cayman debtor, which is no different in the Cayman Proceeding.

Despite the opinion expressed in the Pearson TCA Global Declaration, Ms. Pearson saw fit to conclude that Mr. Robinson misled the Court by declaring that "all major stakeholders are actively participating in the Cayman Proceeding." Pearson Decl. ¶ 72.  There is nothing misleading about this statement because "Mr. Robinson is quite correct, and Ms. Pearson is wrong. Both the shareholders and the creditors are stakeholders. As long as the company appears to be solvent, the views of the creditors are considerably less compelling than those of the shareholders but both must be taken into account." Henderson Decl. ¶ 32.[8] Moreover, when questioned about such conclusions, Ms. Pearson had no knowledge of the makeup of Ascentra's stakeholders and offered no factual support for her conclusion that Mr. Robinson's statement was misleading:

> A. The first draft of the whole thing was prepared by Graeme Halkerston, but I went through it very carefully myself and satisfied myself of it obviously before signing it. . . .
>
> A. [W]e are referring to paragraph 27 of Mr. Robinson's declaration. I think what is misleading there is the statement that "all major stakeholders are actively participating in the Cayman proceeding", because I think in the ordinary reading of the word "stakeholders", certainly as a Cayman insolvency lawyer, and I would surmise the same for the US Bankruptcy Court, you would read stakeholders as meaning creditors and shareholders. In fact creditors are not participating in the Cayman Proceeding. . . .
>
> Q. [D]o you know whether any creditors have submitted proof, formal or informal, in the liquidation of Ascentra? A. No, I do not.
>
> Q. So you do not know for a fact that creditors are not participating in the liquidation of Ascentra, do you? A. No.
>
> Q. Right. Then in terms of major stakeholders, are you aware of what the size of the creditor body is? A. No.
>
> Q. No. So you do not know whether any creditors could be considered major stakeholders of Ascentra, do you? A. No.
>
> Q. So how can you say that Mr. Robinson's statement is misleading? A. Well, because I am familiar with the Cayman process and I know

---

[8]  Mr. Robinson also disclosed in his declaration that Ascentra's assets exceeded $200 million and its known liabilities were the costs of administration. *See* ECF No. 4 ¶¶ 17-18; *see also* Henderson Decl. ¶ 36. As noted, SPGK never sought to cross-examine Mr. Robinson about these statements and raised no objection at the recognition hearing.

> that creditors are not able to actively participate in the solvent liquidation of a Cayman Islands company.
>
> Q. But you just told me you did not know whether any creditors were major stakeholders? A. That is true. . . .

Pintarelli Decl., Ex. 4 (Pearson Dep. Tr. at 86:14-88:14).

Ms. Pearson also failed to explain how Mr. Cowan misled the Court by stating that "[a] general principle underlying the Cayman Islands' insolvency regime is that creditors are treated on a pari passu basis, subject to certain exceptions." ECF No. 5 ¶ 25. Her reasons are inexplicable:

> Q. Can we see Mr. Cowan's declaration? . . . .
>
> Q. That is a paragraph you are criticising? A. Yes.
>
> Q. Now, you accept that what is stated in paragraph 25 is a correct statement of Cayman law? A. Yes.
>
> Q. Why do you consider that Mr. Cowan should have gone further and explained that in a solvent liquidation the creditors are not paid ratably but they are paid, as you say, in the ordinary course rather than pursuant to a collective process.  A. I think that paragraph 25 of Mr. Cowan's declaration gives the impression that the creditors in this proceeding are going to be paid on *pari passu* basis.
>
> Q. Why does that matter? A. Well, it is misleading. It suggests to the court that something is going to happen that is not actually the case.
>
> Q. But would not all creditors be delighted to be paid in full rather than receive a rateable dividend? A. Yes. . . .
>
> Q. Do you just want to look again at Mr. Cowan's paragraph 25, and tell me whether you still think it is misleading? A. Well, I do. I know what you are trying to get at.
>
> Q. What am I trying to get at? A. You are trying to suggest that the creditors are being paid *pari passu* because they are all being paid in the ordinary course of business.
>
> Q. Well, even if you do not agree with that, I think there is some common ground between us, which is that creditors prefer to be paid 100 pence in the pound ---- A. Yes. . . .

*Id.* (Pearson Dep. Tr. at 168:14 - 169:25; 171:2-16).

Ms. Pearson's opinions lack persuasive force and, quite frankly, is a distinction without a difference. *Pari passu* is a Latin phrase meaning "equal footing". *See In re Energy Future Holdings*

*Corp.*, 585 B.R. 341, 344 n.3 (Bankr. D. Del. 2018) ("Pari passu means 'proportionally; at an equal pace; without preference.'" [citation omitted]), *aff'd*, 7873 F. App'x 89 (3d Cir. 2019). That the Companies Act provides for the payment in full of creditors' debts (plus interest) in the ordinary course and not at the same time does not mean those claims are not treated *pari passu*. Nor does it mean that the creditor claims are not paid ratably, which means "at a proportionate rate". If all creditors are paid one-hundred percent (100%) of their claim, they have each been paid ratably and their claims have been treated *pari passu*.

Ms. Pearson's conclusions "merely highlight[] criticisms" of the Companies Act and Messrs. Cowan and Robinson "without demonstrating that the process itself [is] not collective." *Ashapura*, 480 B.R. at 142.

In sum, the Cayman Proceeding is a collective proceeding because the Companies Act provides a mechanism for the treatment of the claims of all creditors and shareholders. All stakeholders, both creditors and shareholders, "have a collective stake in the outcome whether the entity proves solvent or not," and the Grand Court is required to consider the interests of both the shareholders and the creditors" throughout the proceeding. Henderson Decl. ¶¶ 22, 24.

*ii.     Cayman Proceeding is Conducted under a Law Relating to Insolvency*

A foreign proceeding must arise "under a law relating to insolvency or adjustment of debts." This phrase is "flexibly worded" to apply to comprehensive statutory schemes such as the Companies Act and "counsels against an unduly grudging application" "by narrowly examining whether the specific subsections of the governing Cayman statutory scheme that are presently being applied [sic] redress insolvency or creditor rights." *Global Cord*, 2022 WL 17478530, at *9 (citing *Betcorp*, 400 B.R. at 282 (for law to be "related to" insolvency, company need not be insolvent or contemplating debt adjustment; unified Australian Corporations Act that governs both

21

insolvencies and other corporate matters suffices); *Ashapura*, 480 B.R. at 138 ["The fact that a proceeding has a 'unified structure of the external administration provisions' favors a finding that the statute meets this criterion."] [citing *Betcorp*, 400 B.R. at 282]).

In that regard, "[t]he relevant test is not whether the currently pending proceeding concerns insolvency or adjustment of debtors, or even whether the current proceeding in some sense relates to those objectives, but rather whether the proceeding is being brought under a 'law' that 'relat[es] to' insolvency or adjustment of debt." *Global Cord*, 2022 WL 178478530 at *9 (alterations in original). In other words, "the key phrase . . . is 'relating to,'" which is understood to be a "broad one - 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'" *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (quoting Black's Law Dictionary 1158 (5th ed. 1979)).

This Court correctly observed that the Companies Act "is a comprehensive statute dealing with multiple questions relating to corporations, including both general corporate governance and remedies for varied types of corporate malfeasance, and insolvencies and the winding up of insolvent entities." *Global Cord*, 2022 WL 17478530, at *9. Ascentra's voluntary liquidation was made an official liquidation and brought under the supervision of the Grand Court upon entry of the Supervision Order. The Companies Act, specifically Part V, is a "law" 'relating to' or 'pertaining to' insolvency and restructuring and governs the liquidation of all Cayman companies regardless of their financial status. *See* Henderson Decl. ¶ 26; Pintarelli Decl., Ex. 4 (Pearson Dep. Tr. at 139:5-8) ("A. Well, it is a part of the Companies Act and the Companies Act is a law which deals with all aspects of the life cycle of a company in the Cayman Islands, including their insolvency.").

Still, SPGK argues that the phrase "under a law relating to insolvency or adjustment of debt" warrants a "deeper analysis" and consideration of the 2013 Enactment Guide "because the specific provisions of the [Companies] Act under which Ascentra's [voluntary] liquidation commenced and carries on deal with *solvent* liquidation, not *insolvent* liquidation." Motion ¶ 65; ¶ 61 (the Cayman Proceeding "is under a set of specific statutory provisions and rules applicable only to the liquidation of solvent companies."). It argues that the Singapore High Court correctly decided that the Cayman Proceeding had no basis in law relating to insolvency or restructuring because "the track under which Ascentra's liquidation was commenced, *ie*, ss 116(c) read with 124 of the [Companies] Act, does not and cannot apply to a company that is insolvent or in severe financial distress" and "it is clear that th[os]e provisions apply only to a solvent company." *Id.* ¶ 80.

An in-depth analysis is not necessary because the phrase is not ambiguous. This Court in *Global Cord* considered the same statutory language construed by the Singapore High Court and determined that section 101(23) "is to be broadly construed" and "[t]his guidance counsels against an unduly grudging application" of specific subsections of a foreign statute, and that the phrase "law relating to insolvency or adjustment of debt" is "flexibly worded" to account for comprehensive statutes such as the Companies Act. *Global Cord*, 2022 WL 17478530 at *6, *9.

Worse for SPGK, its own legal expert stated that she is "familiar with Cayman Islands law relating to insolvency and the adjustment of debt, the Cayman Companies Act . . . ." Pintarelli Decl., Ex. 6 (Pearson TCA Global Declaration ¶ 6). She also testified that Part V of the Companies Act is a law relating to insolvency. *See* Pintarelli Decl., Ex. 4 (Pearson Dep. Tr. at 139:3-8) ("Q. I just want to start again with is Part 5 of the Act a law relating to insolvency? A. Well, it is a part of the Companies Act and the Companies Act is a law which deals with all aspects of the life cycle

of a company in the Cayman Islands, including their insolvency."). The Motion itself does not rely on Ms. Pearson's opinion on "law relating to insolvency or adjustment of debt." *See* Motion ¶¶ 60-83. The only explanation could be that the Singapore High Court's tortured decision was the only support SPGK could find for its failing argument.

Further, Ms. Pearson offered contradictory testimony about whether Part V is a law relating to insolvency, suggesting that some sections of the law can relate to insolvency while others cannot. *See* Pintarelli Decl., Ex. 4 (Pearson Dep. Tr. at 157:3-11) ("Q. So on your understanding of law relating to insolvency, you could even divide up sections. Some parts of sections can be a law relating to insolvency and other parts cannot be a law relating to insolvency? . . . . A. To the extent that I have an opinion, Yes.").

Incredibly, Ms. Pearson goes on to testify that the determination of whether the subsections of Part V relate to a law on insolvency rests on the JOLs' determination of the debtor's solvency, insolvency or doubtful solvency such that the nature of the law could change with a change in the JOLs' determination of the debtor's financial status. *See id.* at 157:12-160:9. The absurdity of Ms. Pearson's testimony shows that her opinions, again, lack any persuasive force. *See In re B.C.I. Fins. Pty Ltd.*, 583 B.R. 288, 300 (Bankr. S.D.N.Y. 2018) (consideration of "foreign law expert declarations" turn on "the persuasive force of the opinions they expressed.").

The Companies Act is a law related to insolvency. And from the point of view of a Cayman Islands judge or attorney, the Companies Act is a law "relating to insolvency" *and* a law "relating to . . . the adjustment of debt". Henderson Decl. ¶ 26. The Companies Act is the overarching authority for the conduct of a liquidation proceeding, even when a debtor is solvent. *Id.*

Adopting SPGK's, and Ms. Pearson's positions would have serious implications for future cross-border restructurings. Under their logic, no solvent U.S. and foreign debtor would be able to

seek ancillary relief in cross-border cases because they would be deemed not to be collective proceedings because shareholders are the residual stakeholders in the case. The financial status of a foreign debtor - should not - influence whether the company can seek ancillary relief under Chapter 15.   The policy of ancillary relief under Chapter 15 is to aid in the realization and maximation of assets by ensuring cooperation between US and foreign courts and that "the fair and efficient administration of cross-border insolvencies that protects the interest of all creditors and interested parties, including the debtor." 11 U.S.C. § 1501(a)(1) and (3).   Further, when a Court makes a determination of whether to grant additional assistance to a foreign representative, section 1507 requires the Court to consider, *inter alia*, whether such additional assistance, consistent with the principles of comity, will reasonably assure the just treatment of all holders of claims against **or interests** in the debtors' property. *See* 11 U.S.C. §1507(b)(1) (emphasis in bold added).

Another implication of denying access to solvent debtors is the impact on cooperation between courts. Ms. Pearson advocates for Cayman liquidators to use the doubtful solvency determination to make a Cayman proceeding a "collective proceeding" if obtaining chapter 15 is necessary – a position the Grand Court has admonished against. *See* Pintarelli Decl., Ex. 4 (Pearson Dep. Tr. at 103:14-21) ("A. I know exactly what Jones said in the *Herald* decision that you have just shown me that the liquidator should not do, but in my experience they often go with a doubtful solvency determination at the start of the liquidation because they do not have sufficient information . . . to say for sure that creditors are going to be paid in full. . . .").

In *Herald*, the Grand Court dismissed an application by certain liquidators to establish a liquidation committee, finding that the composition of the liquidation committee did not comply with the CWR because evidence regarding the liquidators' certification of "doubtful solvency"

showed that "they did not conduct their determination properly." Pintarelli Decl., Ex. 8 (citing to

*In Re Herald Fund SPC (In Official Liquidation)* – FSD 27/13, Grand Court (unreported), Jones

J, 28 January 2014 at 6).   The ruling clarified the Grand Court's powers to direct the formation

and composition of liquidation committees and, importantly, how liquidators must determine

solvency during the early stages of liquidation. In determining solvency, liquidators must apply a

balance sheet test and make "reasonable assumptions about the assets and liabilities which are

contingent or contingent in amount." *Id.* at 3-4. Reasonable assumptions must be "based upon the

relevant circumstances as they presently exist." *Id.* at 4. No matter how difficult determination

exercises are, "[a] certification of 'doubtful solvency' is not a fall-back position which can be

adopted in any case of difficulty without actually conducting any proper analysis of the likely

outcome of the liquidation." *Id.*

Again, Ms. Pearson's simplistic view of the law is at odds with Cayman law.   Her cure is

form over substance – a practice that the Grand Court has made clear is unacceptable.   Rather, it

is clear that her declaration was not her opinion of Cayman law, but rather a piece of advocacy

written to achieve a result.

> *iii.*    *Cayman Proceeding is Terminal*

Section 101(23)'s definition requires that a foreign proceeding be "for the purpose of

reorganization or liquidation." 11 U.S.C. § 101 (23).   SPGK argues that the Cayman Proceeding

is not for either purpose because the Liquidators are investigating claims and tracing and

recovering assets solely for Ascentra's shareholders. Motion ¶ 91. It also argues that the Cayman

Proceeding resembles the Cayman voluntary liquidation in *Global Cord* this Court refused to

recognize because it is "designed to prevent dissipation and waste" and "prevent detriment to

investors rather than to all creditors." *Id.* ¶ 85.

Such positions are absurd, and regardless of how SPGK frames *Global Cord* to fit its legal narrative, this case is distinguishable because the *Global Cord* liquidators declined to pursue liquidation in the Cayman Islands. That "reality" was "fatal to the[ir] effort[s] to establish that the voluntary liquidation was a foreign proceeding because "the mere possibility that a liquidation could occur down the road is not sufficient to make the 'purpose' of the Cayman Proceeding the 'liquidation' of the corporation or its affairs." *Global Cord*, 2022 WL 17478530, at *10-11.

Here, Ascentra's official liquidation is a terminal process. Part V of the Companies Act is designed to finally wind up a company's affairs under an official liquidator and end the company's existence. That process entails:

> a. Identifying, safeguarding, collecting, and realizing the company's assets (which may also include pursuing litigation for the benefit of the estate, which depending on the nature of the claim sometimes will take the form of a claim by the company and sometimes will be a claim by the JOLs themselves).[9]
>
> b. Identifying the company's creditors, and resolving (usually through legal proceedings before the Grand Court) any disputes as to the existence or amount of creditor claims.[10]
>
> c. Distributing the assets to the company's creditors, and to the extent of any surplus, to its shareholders in accordance with their rights and the laws of the Cayman Islands.[11]
>
> d. Meeting various reporting requirements, both to the stakeholders, and to the Grand Court.[12]
>
> e. Once the affairs of the company are fully wound up, the liquidators are required to obtain an order from the Grand Court that the company be dissolved.[13]

---

[9]   *See* Henderson Decl., Ex. 1 (Companies Act § 110(1)(a)).

[10]  *See* Henderson Decl., Ex. 2 (CWR O.16. r.17).

[11]  *See* Henderson Decl., Ex. 1 (Companies Act § 110(1)(a).

[12]  *See* Henderson Decl., Ex. 2 (CWR O.10).

[13]  *See* Henderson Decl., Ex. 1 (Companies Act § 152). It is not possible to reverse a winding up order, other than on appeal (and there is no appeal in the case of the Cayman Proceeding).

### F.      Termination of the Recognition Order Would be Prejudicial to Ascentra

In exercising its discretion to terminate or modify the Recognition Order, "the Court must give due weight to possible prejudice to parties that have relied on the order granting recognition." *In re Comair Ltd.*, No. 21-10298, 2023 WL 1971618, at *9 (Bankr. S.D.N.Y. Feb. 12, 2023) (citation and internal quotation marks omitted).

The Recognition Order has allowed the Foreign Representatives to focus on the orderly administration of Ascentra's financial affairs in the Cayman Proceeding, conduct investigations and gather information, and avoid the material risk of the Planet Payment Funds being transferred outside the US. Among other relief, the Recognition Order authorized the Foreign Representatives to issue subpoenas for witness examination and production of documents. *See* Recognition Order ¶ 8. In reliance, the Foreign Representatives have examined witnesses in the U.S. and issued subpoenas to obtain discovery and information from, among others, Planet Payment and Ever Innovation Inc. (EII) (a U.S. entity that served as the back office of Ascentra and its affiliates) and its directors and officers. The Liquidators and their counsel are putting together additional discovery requests to inform the Liquidators about other potential assets in the United States that would be recoverable for the Ascentra estate.

The review of the EII production alone has been long and challenging. The production consists of millions of documents and, among other things, required counsel and paraprofessionals to translate many documents to English to understand Ascentra's and its affiliates financial affairs and potential claims Ascentra may have against third parties, including SPGK and Mr. Yoshida. In addition, the Liquidators have also been liquidating Ascentra's U.S. and foreign subsidiaries, including HEC International.  That liquidation (also a solvent liquidation) has been delayed by proceedings commenced by SPGK in asserting a "proprietary" claim under Cayman Islands law

(similar to a trust claim). SPGK failed in its claim and the Grand Court's decision stated that Mr. Yoshida was not credible, and it appeared that he was trying to manufacture a claim. Mr. Yoshida's lack of credibility will be addressed in our Restraint Objection.

For all of the reasons stated herein, SPGK fails to show that the basis for which this Court initially granted recognition was fully or partially lacking because the Cayman Proceeding is a collective proceeding under a law relating to insolvency or adjustment of debt and in official liquidation. And termination of the Recognition Order would prejudice the Foreign Representatives efforts toward that end after relying on it for - nearly two years.

[*Remainder of page intentionally left blank*]

**CONCLUSION**

WHEREFORE, the Foreign Representatives respectfully request that the Court (i) deny the

Motion with prejudice; (ii) award the Foreign Representatives their fees and costs incurred in

connection with this Objection and the Objection to the Motion to Terminate Restraint [ECF No.

42]; and (iii) grant such other relief as is just and proper.

Dated: September 1, 2023          PILLSBURY WINTHROP SHAW PITTMAN LLP
      New York, New York

                              */s/ John A. Pintarelli*
                              John A. Pintarelli
                              Hugh M. McDonald
                              Kwame O. Akuffo
                              31 West 52nd Street
                              New York, NY 10019-6131
                              Telephone: 212-858-1000
                              Facsimile:  212-858-1500
                              john.pintarelli@pillsburylaw.com
                              hugh.mcdonald@pillsburylaw.com
                              kwame.akuffo@pillsburylaw.com

                              Claire K. Wu (admitted *pro hac vice*)
                              725 South Figueroa Street, 36th Floor
                              Los Angeles, CA 90017-5524
                              Telephone: 213-488-3655
                              Facsimile:  213-629-1033
                              claire.wu@pillsburylaw.com

                              *Attorneys for Foreign Representatives*