## **Exhibit 4**

Pearson Deposition Transcript (with exhibits)

**CERTIFIED COPY**

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

_____

IN RE:                              )

ASCENTRA HOLDINGS, INC. (IN    ) CASE NO. 21-11854

OFFICIAL LIQUIDATION),          )         (DSJ)

                                    ) CHAPTER 15

DEBTOR IN A                     )

FOREIGN PROCEEDING             )

_____)

DEPOSITION OF

KATHARINE LUCY BLADEN PEARSON

AUGUST 8TH 2023

AMY COLEY, COURT REPORTER
1010064





**BARKLEY**
*Court Reporters*
barkley.com

(310) 207-8000 Los Angeles     (415) 433-5777 San Francisco    (949) 955-0400 Irvine            (858) 455-5444 San Diego
(310) 207-8000 Century City     (408) 885-0550 San Jose         (760) 322-2240 Palm Springs      (800) 222-1231 Carlsbad
(916) 922-5777 Sacramento       (800) 222-1231 Martinez         (702) 366-0500 Las Vegas         (800) 222-1231 Monterey
(951) 686-0606 Riverside        (818) 702-0202 Woodland Hills   (702) 366-0500 Henderson         (516) 277-9494 Garden City
(212) 808-8500 New York City    (347) 821-4611 Brooklyn         (518) 490-1910 Albany            (914) 510-9110 White Plains
(312) 379-5566 Chicago          00+1+800 222 1231 Paris         00+1+800 222 1231 Dubai          001+1+800 222 1231 Hong Kong

1          UNITED STATES BANKRUPTCY COURT

2          SOUTHERN DISTRICT OF NEW YORK

3

4    _____

5    IN RE:                        )

6    ASCENTRA HOLDINGS, INC. (IN   ) CASE NO. 21-11854

7    OFFICIAL LIQUIDATION),        )        (DSJ)

8                                  ) CHAPTER 15

9    DEBTOR IN A                   )

10   FOREIGN PROCEEDING            )

11   _____)

12

13              DEPOSITION OF

14       KATHARINE LUCY BLADEN PEARSON

15                  ON

16       TUESDAY, AUGUST 8TH 2023

17

18          TAKEN AT THE OFFICES OF:

19          PILLSBURY WINTHROP SHAW PITTMAN LLP

20          TOWER 42, LEVEL 23,

21          25 OLD BROAD STREET,LONDON EC2N 1HQ

22

23          MAGNA LEGAL SERVICES

24              866-624-6221

25

1

```
 1                    A P P E A R A N C E S

 2

 3    ON BEHALF OF THE PETITIONER (GRAHAM ROBINSON):

 4

 5            PILLSBURY WINTHROP SHAW PITTMAN LLP

 6            31 WEST 52ND STREET

 7            NEW YORK, NY 10019-6131

 8                    BY:  MR. HUGH MCDONALD

 9                         MR. JOHN PINTARELLI

10

11            TWENTY ESSEX

12            20 ESSEX STREET

13            LONDON WC2R 3AL

14                    BY:  MISS BLAIR LEAHY

15

16    ON BEHALF OF THE DEBTOR:

17                    PACHULSKI STANG ZIEHL & JONES

18                    780 THIRD AVENUE

19                    34TH FLOOR

20                    NEW YORK

21                    NEW YORK 10017-2024

22                    BY:  MR. JOHN A. MORRIS

23                         MISS BETH LEVINE

24                         MR. JEFFREY DINE

25
```

2

```
 1                    HARNEY WESTWOOD & RIEGELS

 2                    3RD FLOOR

 3                    HARBOUR PLACE

 4                    103 SOUTH CHURCH STREET

 5                    GRAND CAYMAN

 6                    HY1-1002

 7                    CAYMAN ISLANDS

 8

 9              BY:  MR. ANDREW JOHNSTONE

10                   MISS MINA WU (VIA ZOOM)

11

12   COURT REPORTER:

13

14         AMY COLEY

15         MARTEN WALSH CHERER LTD

16         2ND FLOOR

17         QUALITY HOUSE

18         6-9 QUALITY COURT

19         CHANCERY LANE

20         LONDON WC2A 1HP

21

22

23

24

25
```

3

I N D E X

DEPONENT                                          PAGE

MISS KATHARINE LUCY BLADEN PEARSON

QUESTIONS BY MR. MCDONALD                    5 - 7

QUESTIONS BY MISS LEAHY                       7 - 203


- - - - - - - - -


EXHIBITS MARKED DURING THIS DEPOSITION

EXHIBIT                                        PAGE

1    .........................    7
2    .........................    15
3    .........................    17
4    .........................    86
5    .........................    90
6    .........................    93
7    .........................    107
8    .........................    168

4

```
1                THE COURT REPORTER:  WE ARE GOING

2   ON THE RECORD AT 10.11 A.M.

3                MR. MCDONALD:  COURT REPORTER,

4   COULD YOU PLEASE SWEAR THE WITNESS?

5       MISS KATHARINE LUCY BLADEN PEARSON, SWORN

6                QUESTIONS BY MR. MCDONALD

7   BY MR. MCDONALD:

8           Q.    HI, GOOD MORNING.  MY NAME IS HUGH

9   MCDONALD.  I AM WITH PILLSBURY WINTHROP SHAW

10  PITTMAN.  WE HAVE JOHN PINTARELLI, AND BLAIR LEAHY

11  OF TWENTY ESSEX.  WE REPRESENT GRAHAM ROBINSON,

12  WHO IS STANDING AT THE END OF THE TABLE HERE AS

13  THE LIQUIDATOR OF ASCENTRA HOLDINGS.

14                WE ARE HERE TODAY FOR THE KATIE

15  PEARSON'S DEPOSITION.

16                JUST A FEW GROUNDS RULES.  THIS IS

17  AN AMERICAN DEPOSITION, PRODUCED IN AMERICAN

18  PROCEEDING.  YOU MAY NOT BE TOTALLY FAMILIAR WITH

19  THAT, BUT YOU ARE UNDER OATH.  YOU HAVE SUBMITTED

20  TO US COURT JURISDICTION, SO YOU ARE SWEARING TO

21  TELL THE TRUTH UNDER US LAW.  DO YOU UNDERSTAND

22  THAT?

23          A.    YES.

24          Q.    OKAY.  WE WOULD LIKE TO HAVE THE

25  DEPOSITION TRANSCRIPT READ AND ANY CORRECTIONS
```

5

1   MADE AND SIGNED, AND RETURNED TO US, JUST IN CASE

2   SHE IS UNAVAILABLE AT THE TIME OF THE HEARING, IF

3   THAT IS OKAY?

4               MR. MORRIS:  NO PROBLEM.

5               MR. MCDONALD:  OKAY.

6   BY MR. MCDONALD:

7       Q.      AS FOR OBJECTIONS, WE WOULD LIKE TO

8   PRESERVED ALL OBJECTIONS UNTIL THE HEARING.  THERE

9   MAY BE OBJECTIONS TO THE FORM OF THE QUESTION.

10  YOUR COUNSEL MAY HAVE TOLD YOU THAT.  PLEASE

11  CONTINUED TO ANSWER AT THAT POINT.

12      A.      SURE.

13      Q.      OKAY.  AS WITH EVERY AMERICAN

14  DEPOSITION, YOU ARE UNDER OATH.  YOU REMAIN UNDER

15  OATH DURING THE ENTIRE COURSE OF THE DAY, SO THAT

16  IS IN CONSULTATION WITH YOUR COUNSEL.

17      A.      YES.

18      Q.      WE WOULD ANTICIPATE THE ONLY TIME

19  YOU WILL BE CONSULTING WITH COUNSEL, AND I CANNOT

20  EVEN IMAGINE THIS OCCURRING, WOULD BE ATTORNEY

21  CLIENT PRIVILEGE QUESTION, BEING AN EXPERT.

22      A.      OKAY.

23      Q.      OKAY?

24      A.      YES.

25      Q.      WE WILL BE TAKING REGULAR BREAKS.

KATHARINE LUCY BLADEN PEARSON

```
 1   IF AT ANY POINT YOU NEED A BREAK, JUST LET US KNOW

 2   AND WE WILL TRY TO WORK THAT IN AT THE APPROPRIATE

 3   POINT.

 4              MISS LEAHY WILL BE CONDUCTING THE

 5   DEPOSITION FOR THE DAY.

 6              I WILL TURN OVER TO YOU.

 7              MISS LEAHY:  THANKS.

 8              QUESTIONS BY MISS LEAHY

 9   BY MISS LEAHY:

10        Q.     GOOD MORNING, MISS PEARSON.

11        A.     GOOD MORNING.

12        Q.     I AM GOING TO BE ASKING YOU SOME

13   QUESTIONS ABOUT THE DECLARATION THAT WAS SUBMITTED

14   IN YOUR NAME IN THE CHAPTER 15 PROCEEDINGS IN

15   RELATION TO ASCENTRA HOLDINGS.  WE ARE GOING TO

16   HAND YOU A COPY OF YOUR DECLARATION, WHICH IS

17   EXHIBIT A IN THESE PROCEEDINGS.

18        (EXHIBIT 1 MARKED FOR IDENTIFICATION)

19   BY MISS LEAHY:

20        Q.     DID YOU WRITE THE DECLARATION

21   YOURSELF?

22        A.     I DID NOT WRITE THE FIRST DRAFT

23   MYSELF.

24        Q.     WHO WROTE THE FIRST DRAFT?

25        A.     GRAEME HALKERSTON AT WILBERFORCE
```

7

1   CHAMBERS, IN LONDON.

2        Q.    I SEE.  DID YOU RESEARCH ANY PART

3   OF THE LAW THAT WAS SET OUT IN THE FIRST DRAFT?

4        A.    YES, I CHECKED THE FIRST DRAFT

5   EXTREMELY THOROUGHLY.  I CHECKED ALL OF THE

6   AUTHORITIES THAT WERE REFERRED TO.  I DID SOME

7   ADDITIONAL RESEARCH OF MY OWN BEFORE THE

8   DECLARATION WAS FINALISED.

9        Q.    WHY DID YOU NOT MAKE REFERENCE TO

10  THE FACT THAT YOU WERE ASSISTED IN THE PREPARATION

11  OF THE DECLARATION IN THE BODY OF THE DECLARATION?

12            MR. MORRIS:  OBJECTION TO THE FORM

13  OF THE QUESTION.

14        A.    WELL, IT IS MY DECLARATION.  I AM

15  HAPPY WITH CONTENTS.  I HAD SATISFIED MYSELF OF

16  THE CONTENTS OF IT AND I WAS HAPPY TO SUBMIT IT IN

17  MY OWN NAME GO.

18  BY MISS LEAHY:

19        Q.    DO YOU WANT TO MAKE ANY CHANGES TO

20  THE DECLARATION BEFORE WE PROCEED TODAY?

21        A.    NO.

22        Q.    ARE THE OPINIONS STATED IN THE

23  DECLARATION ALL TRUE TO THE BEST OF YOUR KNOWLEDGE

24  AND BELIEF?

25        A.    YES.

8

1          Q.    IN THE DECLARATION, YOU IDENTIFIED

2    THREE TYPES OF CAYMAN LIQUIDATION: VOLUNTARY,

3    COMPULSORY AND COURT SUPERVISED LIQUIDATION,

4    RIGHT?

5          A.    YES.

6          Q.    I THINK WE CAN AGREE THAT THE

7    PURPOSE OF ALL THREE TYPES OF PROCEEDINGS IS TO

8    FINALLY WIND UP THE DEBTOR'S AFFAIRS AND BRING THE

9    EXISTENCE OF THE DEBTOR TO AN END?

10              MR. MORRIS:   OBJECTION TO THE FORM

11   OF THE QUESTION.

12         A.    YES.

13   BY MISS LEAHY:

14         Q.    ALL THREE TYPES OF PROCEEDING ARE

15   TERMINAL PROCESSES, ARE THEY NOT?

16         A.    YES.

17         Q.    NOW, THE ESSENTIAL DIFFERENCES

18   BETWEEN A VOLUNTARY LIQUIDATION AND THE OTHER TWO

19   TYPES OF LIQUIDATION YOU HAVE IDENTIFIED ARE --

20   I AM GOING TO SUMMARISE THEM AND TELL ME WHETHER

21   YOU AGREE -- FIRST OF ALL, VOLUNTARY LIQUIDATIONS

22   ARE ALWAYS SOLVENT LIQUIDATIONS, WHEREAS THE OTHER

23   TWO TYPES OF LIQUIDATIONS MAY BE SOLVENT OR

24   INSOLVENT LIQUIDATIONS; IS THAT CORRECT?

25         A.    YES.

9

1          Q.     BOTH COMPULSORY AND COURT

2    SUPERVISED LIQUIDATIONS ARE INITIATED BY A COURT

3    ORDER AND PROCEED UNDER THE SUPERVISION OF THE

4    COURT, WHEREAS VOLUNTARY LIQUIDATIONS ARE USUALLY

5    INITIATED BY THE COMPANY ITSELF; IS THAT RIGHT?

6          A.     YES.

7          Q.     LIQUIDATORS IN COMPULSORY AND COURT

8    SUPERVISED LIQUIDATIONS ARE APPOINTED BY THE

9    COURT, WHEREAS VOLUNTARY LIQUIDATORS ARE APPOINTED

10   BY THE COMPANY.  THAT IS RIGHT, IS IT NOT?

11         A.     YES.

12         Q.     LIQUIDATORS IN COMPULSORY AND COURT

13   SUPERVISED LIQUIDATIONS ARE OFFICERS OF THE COURT

14   BUT VOLUNTARY LIQUIDATORS ARE NOT OFFICERS OF THE

15   COURT.  THAT IS RIGHT AS WELL, IS IT NOT?

16         A.     VOLUNTARY LIQUIDATORS CAN BE

17   OFFICERS OF THE COURT BUT THEY DO NOT HAVE TO BE.

18         Q.     BUT UNDER THE STATUTE THEY ARE NOT

19   OFFICERS OF THE COURT, ARE THEY?

20         A.     THAT IS CORRECT, BUT CAYMAN

21   INSOLVENCY PRACTITIONERS, WHO ARE OFFICERS OF THE

22   COURT, OFTEN TAKE APPOINTMENTS AS VOLUNTARY

23   LIQUIDATOR AS WELL.

24         Q.     IS THERE NOT A DIFFERENCE BETWEEN

25   SOMEBODY WHO IS QUALIFIED TO BE AN OFFICIAL

10

1   LIQUIDATOR, WHO TAKES AN APPOINTMENT AS A

2   VOLUNTARY LIQUIDATOR, AND SOMEBODY WHO IS

3   QUALIFIED TO TAKE AN APPOINTMENT AS AN OFFICIAL

4   LIQUIDATOR AND DOES?  IN THE FORMER CASE, THE

5   PERSON IS QUALIFIED BUT NOT AN OFFICER OF THE

6   COURT BUT IN THE LATTER CASE HE IS QUALIFIED AND

7   AN OFFICER OF THE COURT.  IS THAT NOT THE CASE?

8           A.    YES, YES.

9           Q.    THE PROCEDURE FOR INITIATING A

10  COMPULSORY LIQUIDATION DIFFERS OBVIOUSLY FROM THE

11  PROCEDURE FOR INITIATING A COURT SUPERVISED

12  LIQUIDATION, AND WE WILL DEAL WITH THAT IN DUE

13  COURSE.  BUT OTHER THAN THAT, AS SOON AS A

14  SUPERVISION ORDER IS MADE, THE SAME RULES AND

15  PROCEDURES APPLY TO THE CONDUCT OF THE LIQUIDATION

16  AS APPLIED TO THE CONDUCT OF A COMPULSORY

17  LIQUIDATION, DO THEY NOT?

18          A.    YES.

19          Q.    SO THAT IS WHY WE DO NOT TALK

20  ABOUT -- IN PRACTICE IN THE CAYMAN ISLANDS, WE DO

21  NOT TALK ABOUT SUPERVISED AND COMPULSORY

22  LIQUIDATIONS GENERALLY, WE JUST TALK ABOUT

23  OFFICIAL LIQUIDATIONS.  THAT IS RIGHT, IS IT NOT?

24          A.    YES.

25          (EXHIBIT 1 MARKED FOR IDENTIFICATION)

11

1   BY MISS LEAHY:

2          Q.     IN YOUR DECLARATION, AND PLEASE

3   TURN IT UP IF WOULD LIKE TO, AT PARAGRAPH 44, PAGE

4   12 ----

5                  MR. MORRIS:  DO YOU HAVE A COPY FOR

6   ME?

7   BY MISS LEAHY:

8          Q.     IT IS PAGE 12.  YOU SEE THE HEADING

9   IS "DIFFERENCES BETWEEN INSOLVENT COMPULSORY

10  LIQUIDATION AND SOLVENT COURT-SUPERVISED

11  LIQUIDATION"?  THEN IN PARAGRAPH 44 YOU SAY:

12  "THERE ARE VERY SIGNIFICANT DIFFERENCES BETWEEN

13  THE CONDUCT OF THE SUPERVISED WINDING UP OF A

14  SOLVENT COMPANY AND THE CONDUCT OF A COMPULSORY

15  LIQUIDATION OF AN INSOLVENT COMPANY."  I JUST WANT

16  TO UNPACK THAT A LITTLE BIT, BECAUSE I DO NOT

17  THINK YOU ARE TRYING TO SAY THAT THERE IS ANY

18  DIFFERENCE BETWEEN A SUPERVISED WINDING UP OF A

19  SOLVENT LIQUIDATION AND A COMPULSORY LIQUIDATION

20  OF A SOLVENT COMPANY, ARE YOU?

21         A.     NO, NO.

22         Q.     THEY WOULD BE MATERIALLY THE SAME,

23  WOULD THEY NOT?

24         A.     YES.  ONCE IT IS IN LIQUIDATION,

25  THE DIFFERENCE IS WHETHER IT IS SOLVENT OR

12

1    INSOLVENT.  AS YOU HAVE ALREADY SAID, THE ROUTES

2    BY WHICH IT GETS INTO LIQUIDATION IS DIFFERENT

3    DEPENDING ON WHETHER IT IS A COMPULSORY

4    LIQUIDATION OR A VOLUNTARY THAT COMES UNDER COURT

5    SUPERVISION.

6         Q.    SO THE POINT YOU WERE SEEKING TO

7    MAKE THERE IS SIMPLY THAT ONCE THE COMPANY IS IN

8    INSOLVENT LIQUIDATION, THERE ARE DIFFERENCES

9    BETWEEN -- SORRY, ONCE THE COMPANY IS IN OFFICIAL

10   LIQUIDATION, THERE ARE DIFFERENCES BETWEEN THE

11   PROCEDURE THAT APPLIES TO THE COMPANY IF IT IS

12   SOLVENT AND THE PROCEDURES WHICH APPLY IF IT IS

13   INSOLVENT?

14        A.    YES.

15        Q.    BUT IT DOES NOT MATTER WHETHER IT

16   ORIGINATED AS A COURT SUPERVISED LIQUIDATION OR A

17   COMPULSORY LIQUIDATION?

18             MR. MORRIS:  OBJECTION TO THE FORM

19   OF THE QUESTION.

20        A.    YES.

21   BY MISS LEAHY:

22        Q.    I WANT TO, FIRST, LOOK AT WHAT

23   SOLVENT AND INSOLVENT OFFICIAL LIQUIDATIONS HAVE

24   IN COMMON.

25        A.    OKAY.

13

1          Q.     THEN WE WILL EXPLORE AFTER THAT

2    WHAT YOU SAY THE DIFFERENCES ARE BETWEEN THE TWO.

3    WHETHER THE OFFICIAL LIQUIDATION IS SOLVENT OR

4    INSOLVENT, THEY BOTH WILL HAVE BEEN INITIATED BY A

5    COURT ORDER, WILL THEY NOT?

6          A.     YES.

7          Q.     WHETHER THE OFFICIAL LIQUIDATION IS

8    SOLVENT OR INSOLVENT, IT WILL BE SUPERVISED BY THE

9    COURT, WILL IT NOT?

10          A.     YES.

11          Q.     AND WHETHER THE LIQUIDATION IS

12    SOLVENT OR INSOLVENT, THE LIQUIDATORS WILL BE

13    APPOINTED BY THE COURT?

14          A.     YES.

15          Q.     AND WHETHER THE LIQUIDATION IS

16    SOLVENT OR INSOLVENT, THE OFFICIAL LIQUIDATOR MUST

17    GIVE NOTICE OF HIS APPOINTMENTS TO ALL CREDITORS

18    AND CONTRIBUTORIES?

19          A.     YES.

20          Q.     AND WHETHER THE LIQUIDATION IS

21    SOLVENT OR INSOLVENT, THE PRIMARY FUNCTION OF THE

22    LIQUIDATOR IS THE SAME, WHICH IS TO COLLECT AND

23    REALISE AND DISTRIBUTE THE DEBTOR'S ASSETS TO HIS

24    CREDITORS AND IF THERE IS A SURPLUS TO THE PERSONS

25    ENTITLED?

14

```
 1              MR. MORRIS:  OBJECTION TO THE FORM

 2    OF THE QUESTION.

 3         A.    YES.

 4    BY MISS LEAHY:

 5         Q.    AND WHETHER THE LIQUIDATION IS

 6    SOLVENT OR INSOLVENT DURING THE PENDENCY OF THE

 7    LIQUIDATION NO CREDITOR OR OTHER CLAIMANT CAN

 8    BRING ANY PROCEEDING OR CONTINUE ANY PROCEEDING

 9    AGAINST THE DEBTOR COMPANY WITHOUT THE LEAVE OF

10    THE CAYMAN COURT.  THAT IS RIGHT, IS IT NOT?

11         A.    YES.

12         Q.    AND THAT IS PURSUANT TO SECTION 97

13    OF THE COMPANIES ACT, IS IT NOT?

14         A.    WELL, I DO NOT HAVE THE COMPANIES

15    ACT ----

16         Q.    WE HAVE A COPY THAT WE CAN HAND UP

17    AS EXHIBIT B?  WOULD YOU LIKE TO CHECK?

18              MR. MORRIS:  TWO.

19              MISS LEAHY:  TWO.  TWO COPIES.

20         (EXHIBIT 2 MARKED FOR IDENTIFICATION)

21              MR. MORRIS:  WHICH SECTION ARE YOU

22    ON?

23              MISS HEALY:  IT IS SECTION 97.

24              MR. MORRIS:  THANK YOU.

25              MISS HEALY:  PAGE 78.
```

15

1          A.     YES.

2     BY MISS HEALY:  IT IS SECTION 97?

3          A.     YES, YES, IT IS.

4               MR. MORRIS:  I APOLOGISE FOR

5     INTERRUPTING, BUT ARE WE MARKING THESE DOCUMENTS

6     AS EXHIBITS?

7               MR. MCDONALD:  THIS IS EXHIBIT

8     NUMBER 2.

9               MISS HEALY:  NUMBER 2, SORRY.

10              A SPEAKER:  I BELIEVE WE MARKED THE

11     FIRST ONE AS A.

12              MR. MORRIS:  WE DID IT AS 1,

13     ACTUALLY.

14              A SPEAKER 2:  OKAY.

15              MR. MCDONALD:  SORRY FOR THE

16     CONFUSION.

17              MR. MORRIS:  SO, TO BE CLEAR ----

18              MR. MCDONALD:  TO BE CLEAR, THE

19     DECLARATION IS EXHIBIT 1.

20              MR. MORRIS:  OKAY.

21              MR. MCDONALD:  THE COMPANIES ACT IS

22     EXHIBIT 2.

23              MR. MORRIS:  THANK YOU.

24     BY MISS LEAHY:

25          Q.     MISS PEARSON, I DO NOT EXPECT YOU

16

1   FOR A MOMENT TO HAVE MEMORIZED THE ENTIRE

2   COMPANIES ACT AND ALL THE SECTIONS OR THE RULES,

3   SO IF YOU AT ANY POINT WANT TO JUST CHECK A

4   SECTION, PLEASE FEEL FREE TO SAY SO AND WE CAN

5   TURN IT UP.

6            A.    YES.  THANK YOU.

7            Q.    IT IS RIGHT ALSO THAT SECTION 97

8   HAS EXTRATERRITORIAL EFFECT, DOES IT NOT?

9            A.    YES.

10           Q.    BECAUSE OF SECTION 97, WHETHER THE

11  COMPANY IS INSOLVENT OR INSOLVENT LIQUIDATION, IT

12  IS SIMPLY NOT POSSIBLE FOR THE CREDITORS TO TAKE

13  ANY PROCEEDINGS AGAINST THE COMPANY WITHOUT THE

14  LEAVE OF THE COURT?

15           A.    YES.

16           Q.    NOW, IT IS ALSO RIGHT, IS IT NOT,

17  THAT ORDER 8 OF THE COMPANIES WINDING UP RULES

18  APPLIES TO EVERY LIQUIDATION?

19           A.    DO YOU HAVE A COPY OF ORDER 8?

20           Q.    SURE, AND THIS WILL BE EXHIBIT 3.

21       (EXHIBIT 3 MARKED FOR IDENTIFICATION)

22           A.    THANK YOU.

23           Q.    IF YOU JUST WANT TO REMIND YOURSELF

24  OF ORDER 8, RULE 1, AND THEN I CAN ASK YOU SOME

25  QUESTIONS?

17

KATHARINE LUCY BLADEN PEARSON

1        A.      OKAY.

2        Q.      SO, THE FIRST QUESTION IS IN EVERY

3   LIQUIDATION, WHETHER SOLVENT OR INSOLVENT, THE

4   LIQUIDATOR MUST, FIRST, MAKE A SUMMARY

5   DETERMINATION AS TO WHETHER THE COMPANY IS SOLVENT

6   INSOLVENT OR OF DOUBTFUL INSOLVENCY?  THAT IS

7   RIGHT?

8        A.      YES.

9        Q.      AND HE ALSO MUST KEEP THAT DECISION

10  UNDER REVIEW, MUST HE NOT?

11       A.      YES.

12       Q.      SO, FOR EXAMPLE, HE MIGHT INITIALLY

13  SAY, WELL, THE COMPANY IS SOLVENT, BUT THEN CHANGE

14  HIS MIND AND SAY, WELL, ACTUALLY, I THINK NOW IT

15  IS INSOLVENT.  IN THOSE CIRCUMSTANCES, HE IS DUTY

16  BOUND TO MAKE A REVISED DETERMINATION, IS HE NOT?

17       A.      YES.

18       Q.      AND HE COULD IN PRINCIPLE CHANGE

19  HIS MIND ON MULTIPLE OCCASIONS, COULD HE NOT?

20       A.      YES.

21       Q.      THEN WHETHER THE LIQUIDATION IS

22  SOLVENT OR INSOLVENT, THE OFFICIAL LIQUIDATOR HAS

23  THE SAME POWERS, AND THEY ARE THE POWERS SET OUT

24  IN SCHEDULE 3 TO THE ACT.  THAT IS RIGHT, IS IT

25  NOT?  WOULD YOU LIKE TO TURN UP SCHEDULE 3?

1              A.      YES, I WILL.

2              Q.      YOU WILL FIND IT ON PAGE 199.

3              A.      YES.  YES, THAT IS CORRECT.

4              Q.      SO THE POWERS IN PART 1 ARE POWERS

5    THAT ARE EXERCISABLE WITH SANCTION AND THE POWERS

6    IN PART 2 ARE POWERS THAT ARE EXERCISABLE WITHOUT

7    SANCTION, CORRECT?

8              A.      YES.

9              Q.      THEN IF WE LOOK AT PART 1, WE SEE A

10   WHOLE LIST OF POWERS FOR WHICH THE LIQUIDATOR HAS

11   TO APPLY TO COURT FOR SANCTION TO EXERCISE.  IT IS

12   RIGHT, IS IT NOT, THAT RULE 4 PROVIDES THAT HE HAS

13   POWER TO PAY ANY CLASS OF CREDITORS IN FULL?

14             A.      YES.

15             Q.      AND THAT IS THE CASE WHETHER THE

16   COMPANY IS INSOLVENT OR SOLVENT?

17             A.      YES.

18             Q.      AND WE WILL SEE IN RULE 5 HE ALSO

19   HAS POWER TO MAKE ANY COMPROMISE OR ARRANGEMENT

20   WITH CREDITORS OR PERSONS CLAIMING TO BE

21   CREDITORS.

22             A.      YES.

23             Q.      THAT IS RIGHT, IS IT NOT, IN BOTH

24   SOLVENT AND INSOLVENT LIQUIDATIONS?

25             A.      YES, WITH THE SANCTION OF THE

19

1   COURT, YES.

2          Q.     YES.   THEN IN RULE 6, HE ALSO HAS,

3   "POWER TO COMPROMISE ON SUCH TERMS AS MAY BE

4   AGREED ALL DEBTS AND LIABILITIES CAPABLE OF

5   RESULTING IN DEBTS, AND ALL CLAIMS (PRESENT OR

6   FUTURE, CERTAIN OR CONTINGENT, ASCERTAINED OR

7   STANDING ONLY IN DAMAGES) ..."  I AM NOT GOING TO

8   READ THE WHOLE THING, BUT WE SEE THAT THE POWER IN

9   6 AGAIN IS A POWER EXERCISABLE WITH THE SANCTION

10  OF THE COURT IN SOLVENT AND INSOLVENT

11  LIQUIDATIONS?

12         A.     YES.

13         Q.     NOW, IN THE OFFICIAL LIQUIDATION,

14  WHETHER IT IS SOLVENT OR INSOLVENT, CREDITORS CAN

15  APPLY TO COURT TO SEEK THE REMOVAL OF THE OFFICIAL

16  LIQUIDATOR, CAN THEY NOT?

17         A.     I WOULD NEED TO CHECK THE SECTION.

18         Q.     SECTION 107.

19         A.     SO YES, BUT IF THE COMPANY WERE

20  SOLVENT, AND THAT APPLICATION WERE MADE BY A

21  CREDITOR, THEN THE COURT WOULD GIVE THE CREDITOR'S

22  VIEWS VERY LITTLE WEIGHT, IF ANY.

23         Q.     OKAY.  SO LET US PUT OURSELVES IN

24  THAT SOLVENT SITUATION.

25         A.     YES.

20

1          Q.     YOU ACCEPT THAT THE CREDITOR HAS

2    STANDING TO APPLY TO COURT?

3          A.     UNDER THAT SECTION.

4          Q.     UNDER THAT SECTION?

5          A.     YES.

6          Q.     TO SEEK THE REMOVAL?

7          A.     YES.

8          Q.     AND LET US TEST IT THIS WAY.

9    IMAGINE THAT THE LIQUIDATOR IS ACTING IN SUCH A

10   MANNER THAT HE IS PUTTING THE INTERESTS OF

11   CREDITORS AT RISK, ARE YOU SAYING IN THAT

12   SITUATION THAT THE COURT WOULD GIVE NO WEIGHT TO

13   THE VIEWS OF CREDITORS?

14              MR. MORRIS:  OBJECTION TO THE FORM

15   OF THE QUESTION.

16          A.     SO, WHAT DO YOU MEAN BY HE IS

17   ACTING IN SUCH A MANNER THAT HE IS PUTTING THE

18   VIEWS OF THE INTERESTS OF THE CREDITORS AT RISK,

19   BECAUSE IF IT IS A SOLVENT LIQUIDATION, HE IS

20   MEANT TO BE PAYING THE CREDITORS IN THE ORDINARY

21   COURSE?

22   BY MISS LEAHY:

23          Q.     LET US TAKE AN EXAMPLE OF A COMPANY

24   THAT IS VERY CLEARLY SOLVENT, OKAY, BUT THE ASSETS

25   HAVE NOT BEEN REALISED AS YET, SO THE LIQUIDATOR

21

1    IS NOT ABLE TO PAY THE CREDITOR'S CLAIMS AS THEY

2    FALL DUE?

3          A.      MMM-HMM.

4          Q.      ONE OF THE ASSETS THAT IS AVAILABLE

5    TO BE REALISED IS A PROPERTY, WHICH HE IS GOING TO

6    SELL, AND ANOTHER ASSET THAT IS AVAILABLE

7    POTENTIALLY TO BE REALISED IS A CLAIM, A CAUSE OF

8    ACTION.  NOW, IF HE BRINGS THE CAUSE OF ACTION AND

9    LOSES, THERE IS A RISK THAT THE CREDITORS WILL NOT

10   BE PAID THEIR STATUTORY INTEREST TO WHICH THEY ARE

11   ENTITLED, BUT IF HE DOES NOT BRING THE CLAIM, THEN

12   THERE IS GOING TO BE LESS MONEY AVAILABLE FOR THE

13   SHAREHOLDERS.  NOW, IN THAT SITUATION IF THE

14   LIQUIDATOR WAS SEEKING TO PURSUE THE LITIGATION,

15   DO YOU NOT THINK THAT THE COURT WOULD HEAR THE

16   CREDITORS AND GIVE THEIR VIEWS SOME WEIGHT?

17          MR. MORRIS:  OBJECTION TO THE FORM

18   OF THE QUESTION.

19          A.      THERE IS QUITE A LOT IN THAT

20   QUESTION THAT I WOULD WANT TO UNPACK AND SPEND

21   SOME TIME THINKING ABOUT IF I WAS CONFRONTED.

22   BY MISS LEAHY:

23          Q.      OKAY.  CAN YOU IMAGINE ANY

24   SITUATION IN WHICH CREDITORS OF A SOLVENT COMPANY

25   IN WHICH THEIR INTERESTS MIGHT BE AT RISK BY THE

22

1    ACTIONS OF A LIQUIDATOR?

2            A.      I MEAN, IN AN EXAMPLE LIKE THE ONE

3    THAT YOU HAVE JUST GIVEN I WOULD QUERY WHETHER

4    THERE IS A SOLVENT COMPANY, BECAUSE IF THERE IS A

5    QUESTION AS TO WHETHER THE CREDITORS ARE GOING TO

6    BE PAID IN FULL, THEN THE LIQUIDATOR NEEDS TO BE

7    THINKING ABOUT CHANGING HIS SOLVENCY DETERMINATION

8    AND CHANGING IT TO DOUBTFUL SOLVENCY.  YOU KNOW,

9    YOU DO HAVE THIS DOUBTFUL SOLVENCY CATEGORY TO

10   COVER QUESTIONS WHERE -- CASES WHERE YOU DO NOT

11   KNOW FOR SURE IF IT IS GOING TO BE SOLVENT OR NOT.

12   IN MY EXPERIENCE THAT CATEGORY IS USED QUITE A LOT

13   FOR THE VERY REASON THAT THE LIQUIDATOR DOES NOT

14   KNOW IF CREDITORS ARE GOING TO BE MADE WHOLE AT

15   THE END OF THE PROCESS, AND PROBABLY THEY ARE, BUT

16   IT IS SAFER TO GO WITH DOUBTFUL SOLVENCY THAN TO

17   CERTIFY THE COMPANY AS SOLVENT AND REMOVE

18   CREDITORS FROM THE PROCESS ENTIRELY.

19           Q.      BUT WHAT IF HE WAS ESSENTIALLY

20   WANTING TO PURSUE LITIGATION THAT IF HE DID NOT

21   PURSUE -- STAND BACK.  HE WANTS TO PURSUE THIS

22   LITIGATION.  IF HE DOES NOT PURSUE IT, CREDITORS

23   WILL DEFINITELY BE PAID IN FULL WITH STATUTORY

24   INTEREST.  IF HE DOES PURSUE IT, THERE IS A RISK

25   THAT THEY WILL NOT BE PAID IN FULL WITH STATUTORY

23

1  INTEREST.  SO IN THAT SITUATION IS THE COMPANY

2  SOLVENT OR OF DOUBTFUL SOLVENCY?

3         MR. MORRIS:  OBJECTION TO THE FORM

4  OF THE QUESTION.

5  BY MISS LEAHY:

6         Q.    I SUGGEST TO YOU IT IS OBVIOUSLY

7  STILL SOLVENT?

8         MR. MORRIS:  OBJECTION TO THE FORM

9  OF THE QUESTION.

10        A.    I MEAN, THIS IS A VERY -- IT IS A

11  DIFFICULT QUESTION TO ANSWER HYPOTHETICALLY, AND

12  IT IS ONE THAT I WOULD WANT TO GIVE A LOT MORE

13  THOUGHT TO, BUT I THINK THERE IS DEFINITELY AN

14  ARGUMENT IN A CASE LIKE THAT, YOU KNOW, THAT A

15  COMPANY LIKE THAT IS OF DOUBTFUL SOLVENCY BECAUSE

16  THERE IS A QUESTION MARK OVER WHETHER THE

17  CREDITORS ARE GOING TO BE MADE WHOLE AT THE END OF

18  THE DAY, AND THAT IS THE WHOLE POINT OF THE

19  DETERMINATION.

20  BY MISS LEAHY:

21        Q.    THE QUESTION MARK ONLY ARISES IF

22  THE LIQUIDATOR PURSUES LITIGATION?

23        A.    YES.

24        Q.    SO IN THAT CASE HOW CAN YOU SAY

25  THAT THE SOLVENCY IS DOUBTFUL?  HE DOES NOT HAVE

24

1   TO PURSUE THE LITIGATION, DOES HE?

2          A.     NO, NO, HE DOES NOT HAVE TO, BUT,

3   I MEAN, YOU KNOW, MY INITIAL RESPONSE IS THAT

4   THERE WOULD BE A QUESTION MARK OVER WHETHER THE

5   COMPANY IS GOING TO BE SOLVENT AND THEREFORE, YOU

6   KNOW, PERHAPS IT IS OF DOUBTFUL SOLVENCY RATHER

7   THAN SOLVENT.  IF THE LIQUIDATOR IS GOING TO TAKE

8   A COURSE THAT CERTAINLY IF HE PURSUES THAT

9   LITIGATION AND THERE IS A RISK THAT HE IS GOING TO

10  LOOSE AND THEREFORE THE CREDITORS ARE GOING TO

11  LOSE THEIR ENTITLEMENT TO INTEREST POSSIBLY IN

12  PART OF THEIR CLAIM, THEN THAT CERTAINLY BRINGS IT

13  INTO THE REALM OF DOUBTFUL SOLVENCY, RATHER THAN

14  SOLVENCY.

15         Q.     IN WHICH SITUATION YOU WOULD SAY

16  THAT COURT WOULD GIVE WEIGHT TO THE VIEWS OF THE

17  CREDITORS?

18         A.     IF IT IS OF DOUBTFUL SOLVENCY, YES,

19  ABSOLUTELY.

20         Q.     I SEE.  WHAT ABOUT A MORE EXTREME

21  EXAMPLE THAT WE HOPE WOULD NEVER ARISE, THAT WE

22  HAVE A NAUGHTY LIQUIDATOR WHO IS HELPING HIMSELF

23  TO THE FUNDS THAT HE IS REALISING.  NOBODY KNOWS

24  PRECISELY HOW MUCH IS TAKEN, SO NOBODY KNOWS THE

25  EXACT AMOUNT, BUT IT IS VERY CLEAR THAT THERE IS

25

1   ENOUGH MONEY LEFT FOR THE CREDITORS TO BE PAID IN

2   FULL.  IT IS JUST UNCLEAR WHETHER THE SHAREHOLDERS

3   WILL GET PAID AS MUCH AS THEY HOPED.  IN THAT

4   SITUATION, IF A CREDITOR DECIDED TO APPLY TO COURT

5   TO REMOVE THE LIQUIDATOR, WOULD YOU SAY THAT THE

6   COURT WOULD NOT GIVE THE CREDITORS' VIEWS ANY

7   WEIGHT?

8         A.    I MEAN, AGAIN YOU ARE ASKING ME

9   THESE SITUATIONS ON THE HOOF.  GENERALLY, THESE

10  ARE THINGS THAT I WOULD GO AWAY AND THINK ABOUT

11  AND DO SOME RESEARCH.  BUT, YOU KNOW, IT SEEMS TO

12  ME LIKE QUITE A FARFETCHED SCENARIO, THAT YOU

13  WOULD HAVE A SITUATION LIKE THAT AND IT WOULD BE

14  THE -- WHY WOULD A CREDITOR BE THE ONE BRINGING

15  THE APPLICATION IN THAT CASE?  WHY WOULD IT NOT BE

16  A SHAREHOLDER, BECAUSE THEY ARE THE ONES THAT ARE

17  PREJUDICED, THEY ARE THE ONES THAT ARE GOING TO

18  LOSE OUT?

19        Q.    BUT WE NEED TO LOOK AT THIS AS A

20  MATTER OF PRINCIPLE.

21        A.    YES.

22        Q.    THE QUESTION IS I WANT TO

23  UNDERSTAND IN WHAT CIRCUMSTANCES YOU SAY THE COURT

24  MIGHT GIVE SOME WEIGHT TO THE VIEWS OF CREDITORS

25  EVEN THOUGH THE COMPANY IS SOLVENT.

26

1        A.      HMM.

2        Q.      I THINK YOU ARE SUGGESTING THAT THE

3   COURT WOULD JUST ALWAYS IGNORE THE VIEWS OF

4   CREDITORS ----

5              MR. MORRIS:  OBJECTION TO THE FORM

6   OF THE QUESTION.

7   BY MISS LEAHY:

8        Q.      ---- ON AN APPLICATION FOR REMOVAL?

9              MR. MORRIS:  IT MISSTATES THE

10  TESTIMONY.

11       A.      FOR AN APPLICATION FOR REMOVAL OF A

12  LIQUIDATOR OF SOLVENT COMPANY, THE VIEWS OF

13  CREDITORS ARE GOING TO BE GIVEN VERY LITTLE

14  WEIGHT.

15  BY MISS LEAHY:

16       Q.      REGARDLESS OF THE FACTS?

17       A.      PRETTY MUCH, YES.

18       Q.      I SEE.  NOW TERMINATION.  IT IS

19  RIGHT THAT ONCE THE LIQUIDATORS HAVE CARRIED OUT

20  THEIR DUTIES, AND THE AFFAIRS OF THE DEBTOR ARE

21  FULLY WOUND UP, THEY HAVE TO OBTAIN AN ORDER FROM

22  THE COURT THAT THE COMPANY BE DISSOLVED, DO THEY

23  NOT?

24       A.      YES.

25       Q.      THAT IS THE SAME WHETHER THE

27

1   COMPANY IS INSOLVENT OR SOLVENT?

2          A.     YES.

3          Q.     THERE IS NO PRESCRIBED TIME FRAME

4   IN WHICH THE LIQUIDATORS MUST ACTUALLY OBTAIN AN

5   ORDER FROM THE CAYMAN COURT THAT THE COMPANY BE

6   DISSOLVED, IS THERE?

7          A.     NO.

8          Q.     AND THE COURT ACTUALLY RETAINS A

9   DISCRETION AS TO WHETHER TO GRANT THE LIQUIDATOR'S

10  REQUEST OR NOT, DOES IT NOT?

11         A.     CAN WE LOOK AT THE SECTION ON

12  DISSOLUTION?

13         Q.     152.

14         A.     COULD YOU REPEAT YOUR QUESTION?

15         Q.     DOES THE COURT RETAIN A DISCRETION

16  WHETHER OR NOT TO GRANT THE DISSOLUTION ORDER?

17         A.     NOT ACCORDING TO 152(1).  THAT SAYS

18  THE COURT SHALL MAKE AN ORDER THAT THE COMPANY BE

19  DISSOLVED.  OBVIOUSLY THERE IS A QUESTION ABOUT

20  WHETHER THE AFFAIRS OF THE COMPANY HAVE BEEN

21  COMPLETELY WOUND UP, AND THE LIQUIDATOR WILL NEED

22  TO SATISFY THE COURT THAT THAT IS THE CASE.  IF

23  THE COURT IS NOT SATISFIED, THEN IT WILL NOT MAKE

24  THE ORDER, BUT ----

25         Q.     I THINK WE ARE AGREED ON THAT.

28

1           A.    YES.  MY READING, YOU KNOW --

2    AGAIN, OFF THE TOP OF MY HEAD, MY READING OF THAT

3    SECTION WOULD BE THAT IF THE COURT IS SATISFIED

4    THAT THE AFFAIRS OF THE COMPANY HAVE BEEN

5    COMPLETELY WOUND UP, THEN IT SHALL MAKE THE ORDER.

6    THAT LANGUAGE IS MANDATORY AND IT DOES NOT HAVE A

7    DISCRETION.

8           Q.    GOOD.  JUST TO RECAP ON WHAT

9    I THINK IS SOME COMMON GROUND THAT WE HAVE

10   ESTABLISHED BEFORE WE GO ON TO THE SLIGHTLY MORE

11   CONTENTIOUS AREAS, FIRST OF ALL, A COMPANY CAN

12   ONLY ENTER OFFICIAL LIQUIDATION IF A COURT MAKES

13   AN ORDER TO THAT EFFECT?

14          A.    YES.

15          Q.    ONCE THE COMPANY ENTERS INTO

16   OFFICIAL LIQUIDATION, THE PROCEEDING IS SUPERVISED

17   BY THE CAYMAN COURT?

18          A.    YES.

19          Q.    THE OFFICIAL LIQUIDATOR IS

20   APPOINTED BY THE CAYMAN COURT AND MUST GIVE NOTICE

21   OF THE LIQUIDATION TO ALL CREDITORS?

22          A.    YES.

23          Q.    THE OFFICIAL LIQUIDATOR'S PRIMARY

24   FUNCTION TO COLLECT IN AND DISTRIBUTE THE ASSETS

25   OF THE COMPANY, FIRST TO THE CREDITORS AND THEN TO

29

1    THE SHAREHOLDERS?

2         A.    YES.

3         Q.    BECAUSE OF THE SECTION 97 STAY, IT

4    IS NOT POSSIBLE FOR PEOPLE MAKING CLAIMS AGAINST

5    THE DEBTOR TO COMMENCE OR CONTINUE LITIGATION

6    AGAINST HIM WITHOUT THE LEAVE OF THE COURT?

7         A.    YES.

8         Q.    OR IT, I SHOULD SAY.

9         A.    YES.

10        Q.    RATHER THAN HIM.

11        A.    YES.

12        Q.    THE OFFICIAL LIQUIDATOR HAS TO MAKE

13   A DETERMINATION ON A SUMMARY BASIS AS TO WHETHER

14   THE COMPANY IS SOLVENT OR INSOLVENT OR OF DOUBTFUL

15   SOLVENCY AND CONTINUOUSLY KEEP THAT DETERMINATION

16   UNDER REVIEW?

17        A.    YES.

18        Q.    THE OFFICIAL LIQUIDATOR HAS THE

19   POWERS SET OUT IN SCHEDULE 3 OF THE ACT, INCLUDING

20   THE POWER TO COMPROMISE CREDITORS' CLAIMS?

21        A.    YES.

22        Q.    THE OFFICIAL LIQUIDATOR IS REQUIRED

23   TO APPLY TO COURT FOR SANCTION TO EXERCISE ANY OF

24   THE POWERS IN PART 1 OF SCHEDULE 3?  THAT IS

25   RIGHT, IS IT NOT?

30

KATHARINE LUCY BLADEN PEARSON

1          A.    YES.

2          Q.    CREDITORS HAVE STANDING TO APPLY TO

3    COURT TO REMOVE THE OFFICIAL LIQUIDATOR?

4          A.    YES.

5          Q.    AND AN OFFICIAL LIQUIDATION MAY NOT

6    BE TERMINATED EXCEPT BY ORDER OF THE CAYMAN COURT?

7          A.    YES.

8          Q.    NOW I WANT TO START TO ADDRESS WHAT

9    YOU SAY ARE SIGNIFICANT DIFFERENCES BETWEEN AN

10   INSOLVENT AND A SOLVENT OFFICIAL LIQUIDATION. I AM

11   JUST GOING TO TAKE SOME WATER.

12         A.    OKAY.

13         Q.    FIRST OF ALL, DEALING WITH CREDITOR

14   CLAIMS ----

15         A.    YES.

16         Q.    ---- WE HAVE SEEN WHEN WE LOOKED AT

17   SCHEDULE 3 THAT THE LIQUIDATOR HAS POWER TO AGREE

18   AND SETTLE AND COMPROMISE CREDITORS' CLAIMS?

19         A.    YES, WITH SANCTION, YES.

20         Q.    WITH SANCTION?

21         A.    YES.

22         Q.    AND THAT IS THE SAME IN BOTH

23   SOLVENT AND INSOLVENT LIQUIDATIONS?

24         A.    YES.

25         Q.    IN AN INSOLVENT LIQUIDATION, A

31

1    CREDITOR ASSERTING A CLAIM AGAINST THE ESTATE MUST

2    FILE A PROOF OF DEBT.  THAT IS RIGHT, IS IT NOT?

3           A.    YES.

4           Q.    AND IF HE DOES NOT FILE A PROOF OF

5    DEBT HE IS NOT GOING TO BE ENTITLED TO ANY

6    DIVIDEND, IS HE?

7           A.    NO.

8           Q.    IN A SOLVENT LIQUIDATION, THE

9    OFFICIAL LIQUIDATOR CAN REQUEST A CREDITOR TO

10   SUBMIT A PROOF OF DEBT IN CERTAIN CIRCUMSTANCES?

11          A.    YES.

12          Q.    AND IF THE CREDITOR DOES NOT SUBMIT

13   A PROOF OF DEBT THE LIQUIDATOR CAN PUT HIM ON

14   NOTICE THAT HE IS REJECTING THE DEBT?

15          A.    YES.  CAN WE HAVE A LOOK AT ORDER

16   16, RULE 3?

17          Q.    OF COURSE.  PAGE 93.

18          A.    YES.

19          Q.    IS THERE ANY PARTICULAR

20   PROVISION ----

21          A.    I WAS LOOKING AT ORDER 16 OF THE

22   COMPANIES WINDING UP RULES, WHICH IS PAGE 79.

23   I AM NOT SURE ----

24          Q.    FOR SOME REASON IT IS 93 OF MINE.

25          A.    OKAY.  BUT WE HAVE ORDER 16?

32

1          Q.      ORDER 16 IS OVER THE SAME PAGE, BUT

2     JUST NOT LITERALLY.

3          A.      THAT IS FINE.  I JUST WANTED TO

4     DOUBLE-CHECK ORDER 16, RULE 1(3).

5          Q.      1(3), WHICH IS, "THE OFFICIAL

6     LIQUIDATOR OF A SOLVENT COMPANY WHICH IS BEING

7     WOUND UP BY THE COURT MAY REQUIRE A CREDITOR TO

8     SUBMIT A PROOF OF DEBT ..."

9          A.      YES, YES.

10         Q.      YES.  AND THE CIRCUMSTANCES ARE IF

11    THERE IS A DOUBT OR DISPUTE ABOUT THE EXISTENCE OF

12    THE DEBT OR THE AMOUNT OWING TO THE CREDITOR?

13         A.      YES.

14         Q.      JUST IN THAT SITUATION?

15         A.      YES.

16         Q.      THERE IS NO DISPUTE HE DOES NOT

17    HAVE TO REQUIRE THE CREDITOR ----

18         A.      NO.

19         Q.      ---- TO SUBMIT A PROOF OF DEBT?

20         A.      NO.

21         Q.      AND THAT WOULD BE POINTLESS, WOULD

22    IT NOT, IF THERE IS NO DISPUTE ABOUT THE DEBT FOR

23    THE LIQUIDATOR TO REQUIRE THE CREDITOR TO FILE A

24    PROOF OF DEBT?

25                 MR. MORRIS:  OBJECTION TO THE FORM

33

1  OF THE QUESTION.

2          A.      YES, IT WOULD, BECAUSE IF THERE IS

3  NO DISPUTE ABOUT THE EXISTENCE OF THE DEBT OR THE

4  AMOUNT OWING, THEN THE LIQUIDATOR IS SUPPOSED TO

5  PAY THOSE DEBTS IN THE ORDINARY COURSE.

6  BY MISS LEAHY:

7          Q.      AND IF THERE IS A DISPUTE AND THE

8  LIQUIDATOR ASKED THE CREDITOR IN THE SOLVENT

9  LIQUIDATION TO SUBMIT A PROOF OF DEBT, IT IS

10  RIGHT, IS IT NOT, THAT THE PROCEDURE THAT APPLIES

11  TO THE ADJUDICATION OF THAT PROOF OF DEBT IS THE

12  SAME AS THE PROCEDURE THAT APPLIES IN THE CONTEXT

13  OF AN INSOLVENT LIQUIDATION?

14          A.      IT IS, EXCEPT THAT THE LIQUIDATOR

15  CANNOT FORCE THE CREDITOR TO SUBMIT THE PROOF OF

16  DEBT.  SO IT HAS TO BE CONSENTED TO ON BOTH SIDES,

17  BASICALLY.

18          Q.      I MEAN, OBVIOUSLY IN THE INSOLVENT

19  SITUATION, THE LIQUIDATOR CANNOT FORCE THE

20  CREDITOR TO SUBMIT A DEBT?

21          A.      YES, A PROOF OF DEBT, YES.

22          Q.      A PROOF OF DEBT.  HE CANNOT FORCE

23  THE CREDITOR TO DO THAT, CAN HE?

24          A.      NO.

25          Q.      BUT IF THE CREDITOR DOES NOT DO IT,

34

1   AS WE HAVE ALREADY ESTABLISHED, HE LOSES HIS

2   ENTITLEMENT TO A DIVIDEND?

3          A.    YES.

4          Q.    THAT IS RIGHT?

5          A.    YES.

6          Q.    IF WE GO THEN TO THE SOLVENT

7   SITUATION, AND THE CREDITOR REFUSES TO FILE A

8   PROOF OF DEBT AND THE LIQUIDATOR SAYS, WELL, I AM

9   GOING TO REJECT YOUR DEBT THEN, YOU KNOW, BECAUSE,

10  AS YOU KNOW, IT IS DISPUTED, YOU HAVE NOT FILED A

11  PROOF, I CANNOT ADJUDICATE ON IT, THE CREDITOR IN

12  THAT SITUATION HAS A CHOICE, DOES HE NOT, HE CAN

13  EITHER APPLY TO COURT UNDER SECTION 97 FOR LEAVE

14  TO BRING A CLAIM OR HE CAN SIMPLY ABANDON HIS

15  CLAIM?  THOSE ARE HIS CHOICES, ARE THEY NOT?

16         A.    I WOULD SAY HE HAS THREE CHOICES.

17  HE CAN EITHER FILL IN THE PROOF OF DEBT AND HAVE

18  HIS CLAIM ADJUDICATED ----

19         Q.    YES, OF COURSE.

20         A.    ---- THROUGH THE PROOF OF DEBT

21  PROCESS OR HE CAN APPLY UNDER SECTION 97 FOR LEAVE

22  TO LIFT THE STAY AND HAVE HIS CLAIM DETERMINED BY

23  LITIGATION OUTSIDE THE PROOF OF DEBT PROCESS OR HE

24  CAN ABANDON HIS CLAIM.

25         Q.    I COMPLETELY AGREE WITH THAT.  MY

35

1  QUESTION WAS PUT ON THE ASSUMPTION THAT HE HAD

2  DECIDED NOT TO SUBMIT A PROOF OF DEBT.

3         A.    YES.

4         Q.    NOW, JUST DEALING VERY BRIEFLY WITH

5  SECTION 97, IF THE CREDITOR MAKES AN APPLICATION

6  UNDER SECTION 97, HE HAS TO PERSUADE THE COURT,

7  FIRST OF ALL, THAT HIS CLAIM IS ARGUABLE AND,

8  SECOND OF ALL, THAT IT IS FAIR IN ALL THE

9  CIRCUMSTANCES FOR THE CLAIM TO BE LITIGATED

10  OUTSIDE THE LIQUIDATION, AS YOU PUT IT, RATHER

11  THAN THROUGH THE PROOF OF DEBT PROCESS IN THE

12  LIQUIDATION.  THAT IS RIGHT, IS IT NOT?

13         A.    I MEAN, THAT IS QUITE A BIG

14  QUESTION.  THAT IS SOMETHING THAT AGAIN I WOULD

15  WANT THE GIVE SOME MORE CONSIDERATION TO, BUT THAT

16  SOUNDS ----

17         Q.    WHAT IS THE TEST UNDER SECTION 97?

18         A.    ---- RIGHT, YES.  IT IS WHETHER IT

19  IS ----

20            MR. MORRIS:  YOU HAVE INTERRUPTED

21  HER A FEW TIMES.  I KNOW YOU DO NOT MEAN TO DO

22  THAT, BUT PLEASE ALLOW HER TO FINISH HER ANSWER.

23            MISS LEAHY:  I AM SO SORRY, I DID

24  NOT REALISE I WAS INTERRUPTING YOU.

25         A.    YES, I MEAN, THE CREDITOR WOULD

36

KATHARINE LUCY BLADEN PEARSON

1   HAVE TO SHOW THAT IT WAS FAIR FOR HIM OR HER TO BE

2   PERMITTED TO BRING THE CLAIM OUTSIDE OF THE PROOF

3   OF DEBT PROCESS IN THE SITUATION THAT WE ARE

4   TALKING ABOUT.

5   BY MISS LEAHY:

6         Q.    HE WOULD ALSO HAVE TO SHOW THAT HIS

7   CLAIM WAS ARGUABLE, WOULD HE NOT?

8         A.    YES.

9         Q.    BECAUSE THE COURT DOES NOT ACT IN

10  VAIN, DOES IT?

11        A.    YES, THE COURT IS NOT GOING TO LIFT

12  THE STAY IN ORDER TO ALLOW SOMEONE TO BRING A

13  COMPLETELY FRIVOLOUS CLAIM THAT HAS GOT NO

14  PROSPECT OF SUCCESS.

15        Q.    AS YOU SAID, HE COULD GO UNDER

16  SECTION THE 97 OR HE COULD JUST SUBMIT A PROOF OF

17  DEBT, RIGHT?

18        A.    YES.

19        Q.    IN THE REAL WORLD, THE CREDITOR IS

20  GENERALLY GOING TO SUBMIT A PROOF OF DEBT RATHER

21  THAN JUMP THROUGH THE SECTION 97 HOOPS, IS HE NOT?

22              MR. MORRIS:  OBJECTION TO THE FORM

23  OF THE QUESTION.

24        A.    I AM NOT SURE THAT YOU CAN

25  GENERALISE THAT WAY.  I THINK, YOU KNOW, WE ARE

37

1  TALKING ABOUT THIS IN A HYPOTHETICAL SITUATION,

2  BUT I THINK, YOU KNOW, DEPENDING ON THE NATURE OF

3  THE CLAIM AND THE SIZE OF THE CLAIM, I COULD

4  CERTAINLY ENVISAGE THAT THERE COULD BE

5  CIRCUMSTANCES WHERE A CREDITOR WOULD WANT TO HAVE

6  HIS OR HER CLAIM DETERMINED IN A FULL LITIGATION

7  RATHER THAN USING THE PROOF OF DEBT PROCEDURE.

8  BY MISS LEAHY:

9      Q.    AND IN AN INSOLVENT LIQUIDATION A

10 CREDITOR CAN ALSO APPLY TO THE COURT UNDER SECTION

11 97 AND SAY I DO NOT WANT TO USE THE PROOF OF DEBT

12 PROCEDURE, I WOULD LIKE TO ACTUALLY HAVE MY CLAIM

13 DETERMINED IN ORDINARY PROCEEDINGS.  THAT IS

14 RIGHT, IS IT NOT?

15     A.    IN AN INSOLVENT LIQUIDATION YOU CAN

16 APPLY UNDER SECTION 97 TO LIFT THE STAY, YES.

17     Q.    YES.  SO IN REAL TERMS, THERE IS NO

18 DIFFERENCE BETWEEN THE PROCESS THAT APPLIES FOR

19 CREDITOR CLAIMS IN A SOLVENT LIQUIDATION AND AN

20 INSOLVENT LIQUIDATION IS THERE?

21          MR. MORRIS:  OBJECTION TO THE FORM

22 OF THE QUESTION.

23     A.    THERE IS.  THERE IS A BIG

24 DIFFERENCE.  WE ARE TALKING AT THE MOMENT ABOUT

25 DISPUTED CLAIMS, BUT THE BIG DIFFERENCE ARISES IN

38

1    RELATION TO THE VAST MAJORITY OF CLAIMS, WHICH ARE

2    NOT DISPUTED, WHERE IN A SOLVENT LIQUIDATION THEY

3    ARE PAID IN THE ORDINARY COURSE AS AND WHEN THEY

4    ARISE.  IN AN INSOLVENT LIQUIDATION, THE

5    LIQUIDATOR CANNOT PAY THEM IN THE ORDINARY COURSE,

6    HOWEVER MUCH HE MAY WANT TO, BECAUSE THEY HAVE TO

7    BE PAID RATABLY WITH THE OTHER CLAIMS AS PART OF A

8    COLLECTIVE PROCESS.

9    BY MISS LEAHY:

10          Q.     I AM VERY SORRY, I MUST HAVE PUT MY

11   QUESTION UNCLEARLY.  I AM LOOKING AT THE SITUATION

12   WHERE THE DEBTS ARE DISPUTED AND THE PROCESS THAT

13   APPLIES TO DISPUTED DEBTS, OKAY?

14          A.     MMM-HMM.

15          Q.     LET US JUST BREAK THE QUESTION

16   DOWN.  WE ARE DEALING SOLELY WITH DISPUTED DEBTS,

17   OKAY?  THAT IS NUMBER 1.  NUMBER 2, WE ARE

18   LOOKING, FIRST OF ALL, AT SOLVENT LIQUIDATIONS

19   WHERE, AS YOU RIGHTLY IDENTIFIED, THE CREDITOR HAS

20   THREE CHOICES ESSENTIALLY: ABANDON HIS CLAIM, PUT

21   IN A PROOF, APPLY UNDER SECTION 97.  THAT IS

22   CORRECT?  THEN, LOOKING AT INSOLVENT LIQUIDATIONS,

23   THE CREDITOR HAS THREE CHOICES, DOES HE NOT:

24   ABANDON HIS CLAIM, PUT IN A PROOF, APPLY UNDER

25   SECTION 97?

```
1              MR. MORRIS:  OBJECTION TO THE FORM

2   OF THE QUESTION.

3         A.    YES.

4   BY MISS LEAHY:

5         Q.    THAT IS RIGHT, IS IT NOT?

6         A.    YES.

7         Q.    SO IN FACT THE PROCEDURE THAT

8   APPLIES TO DISPUTED CREDITOR CLAIMS IN A SOLVENT

9   AND INSOLVENT LIQUIDATION IS THE SAME?

10             MR. MORRIS:  OBJECTION TO THE FORM

11  OF THE QUESTION.

12        A.    YOU ARE TALKING ABOUT THE PROCEDURE

13  FOR RESOLVING THE DISPUTE.

14  BY MISS LEAHY:

15        Q.    YES, I AM.

16        A.    YES.

17        Q.    THAT IS ALL I AM ASKING YOU ABOUT.

18        A.    OKAY.  SO THE PROCEDURE FOR

19  RESOLVING THE DISPUTE IS THE SAME, BUT ONCE THE

20  DISPUTE IS RESOLVED, BECAUSE ONCE THAT DISPUTE IS

21  RESOLVED, WHICHEVER PROCESS IT IS RESOLVED BY,

22  THEN, YOU KNOW, THE DISPUTE IS GONE.  THEN AGAIN,

23  YOU KNOW, YOU ARE IN A VERY DIFFERENT SITUATION AS

24  YOU ARE WITH THE DEBTS THAT WERE NOT DISPUTED IN

25  THE FIRST PLACE WHERE IF IT IS A SOLVENT
```

40

1   LIQUIDATION, THEY ARE GETTING PAID, YOU KNOW,

2   STRAIGHT AWAY, AND IF IT IS AN INSOLVENT

3   LIQUIDATION, THEY ARE GETTING PAID PARI PASSU AS

4   PART OF A COLLECTIVE PROCESS.

5          Q.     I AM DEFINITELY GOING TO BE DEALING

6   WITH THAT POINT, SO DO NOT WORRY.

7          A.     YES.

8          Q.     I JUST WANT TO STAY FOCUSED ON THE

9   PROCEDURE BEFORE WE GET ON TO THAT, OKAY?  JUST

10  FOR COMPLETENESS, IT IS RIGHT THAT IF A CREDITOR

11  IN A SOLVENT OR INSOLVENT LIQUIDATION SUBMITS A

12  PROOF OF DEBT, THE LIQUIDATOR ACTING IN A QUASI

13  JUDICIAL CAPACITY MUST ADJUDICATE ON THAT PROOF OF

14  DEBT?

15         A.     YES.

16         Q.     AND THE LIQUIDATOR CAN ADMIT IT,

17  REJECT IT IN WHOLE OR REJECT IT IN PART, CAN HE

18  NOT?

19         A.     YES.

20         Q.     AND IF HE REJECTS IT IN WHOLE OR IN

21  PART, THE CREDITOR HAS A RIGHT OF APPEAL TO THE

22  COURT?

23         A.     YES.

24         Q.     AND THAT IS THE SAME WHETHER IT IS

25  A SOLVENT OR INSOLVENT LIQUIDATION?

41

1        A.    YES.

2        Q.    CORRECT.  IT IS ALSO RIGHT THAT IF

3  THE LIQUIDATOR ADMITS A DEBT THAT CREDITORS HAVE A

4  RIGHT TO APPLY TO COURT TO EXPUNGE THE PROOF?

5        A.    YES.

6              MR. MORRIS:  I AM SORRY, MAY I HAVE

7  THE QUESTION READ BACK.

8              MISS LEAHY:  WE HAVE IT ON HERE.

9              MR. MCDONALD:  YES.

10             THE COURT REPORTER:  "IT IS ALSO

11  RIGHT THAT IF THE LIQUIDATOR ADMITS A DEBT THAT

12  CREDITORS HAVE A RIGHT TO APPLY TO COURT TO

13  EXPUNGE THE PROOF."

14       A.    YES.

15  BY MISS LEAHY:

16       Q.    NOW, JUST MOVING ON TO THE POINT

17  THAT YOU WERE EMPHASISING, WHICH IS THAT ONCE THE

18  ADJUDICATION HAS COMPLETED, THE LIQUIDATOR IN A

19  SOLVENT COMPANY CAN PAY THE CREDITORS IN FULL,

20  I THINK IS YOUR POINT, WHEREAS IN AN INSOLVENT

21  LIQUIDATION HE HAS TO WAIT UNTIL THE END OF THE

22  LIQUIDATION BEFORE HE CAN DECLARE A DIVIDEND.  AM

23  I ACCURATELY SUMMARISING YOUR POINT?

24       A.    YES.  I MEAN, HE DOES NOT HAVE TO

25  WAIT UNTIL THE END OF THE LIQUIDATION NECESSARILY,

42

KATHARINE LUCY BLADEN PEARSON

1   BUT HE HAS TO WAIT UNTIL THERE ARE SUFFICIENT

2   ASSETS AND THEN HE HAS TO DECLARE A DIVIDEND, AND

3   HE HAS TO PAY ALL THE CREDITORS AT THE SAME TIME.

4         Q.     YES.  WHAT ABOUT A COMPANY THAT IS

5   SOLVENT, IT HAS A HUGE REAL ESTATE EMPIRE AND THE

6   LIQUIDATOR IS GRADUALLY AFFECTING SALES OF THE

7   REAL ESTATE, IN THAT SITUATION, BECAUSE HE HAS NOT

8   REALISED THE COMPANY'S ASSETS AS YET, HE CANNOT

9   PAY THE CREDITORS' CLAIM AS THEY FALL DUE, CAN HE?

10        A.     NO.

11        Q.     BUT THE COMPANY IS STILL SOLVENT?

12        A.     WELL, IT DEPENDS WHICH TEST OF

13  SOLVENCY YOU ARE USING, WHETHER YOU ARE USING THE

14  CASH FLOW TEST OR THE BALANCE SHEET TEST.

15        Q.     SO IN THE SITUATION WHERE A

16  LIQUIDATOR HAS TO MAKE A SUMMARY DETERMINATION OF

17  WHETHER THE COMPANY IS SOLVENT OR INSOLVENT OR OF

18  DOUBTFUL SOLVENCY, HE PLAINLY APPLIES A BALANCE

19  SHEET TEST, DOES HE NOT?

20        A.     YES.

21        Q.     IF ONE STANDS BECOME AND THINKS

22  ABOUT THE PURPOSE OF THE DETERMINATION ----

23        A.     YES.

24        Q.     ---- IT IS TO WORK OUT WHETHER

25  CREDITORS ARE GOING TO BE PAID IN FULL OR NOT,

43

1  RIGHT?

2          A.    YES, YES.

3          Q.    AND IF THERE IS JUST SOME CASH FLOW

4  DIFFICULTIES, IT DOES NOT MEAN CREDITORS ARE NOT

5  GOING TO BE PAID IN FULL, IT IS JUST A TEMPORARY

6  SHORTAGE OF CASH, RIGHT?

7          A.    YES.

8                MR. MORRIS:  OBJECTION TO THE FORM

9  OF THE QUESTION.

10  BY MISS LEAHY:

11          Q.    SO WHAT THE LIQUIDATOR IS

12  INTERESTED IN DOING IS ESTABLISHING WHETHER IT IS

13  BALANCE SHEET INSOLVENT OR NOT?

14                MR. MORRIS:  OBJECTION TO THE FORM

15  OF THE QUESTION.

16                MR. MCDONALD:  WHAT IS THE BASIS OF

17  THE OBJECTION TO THE FORM?

18                MR. MORRIS:  IT ASSUMES FACTS NOT

19  IN EVIDENCE.

20                MISS LEAHY:  IT IS AN HYPOTHETICAL

21  QUESTION.

22                MR. MORRIS:  I UNDERSTAND THAT.

23                MISS LEAHY:  THIS IS AN EXPERT

24  WITNESS.

25                MR. MORRIS:  RIGHT.  CAN I HAVE THE

44

1    QUESTION READ BACK AND I WILL TELL YOU EXACTLY

2    WHAT THE CALL IS?

3              THE COURT REPORTER:  "SO WHAT THE

4    LIQUIDATOR IS INTERESTED IN DOING IS ESTABLISHING

5    WHETHER IT IS BALANCE SHEET INSOLVENT OR NOT?"

6              MR. MORRIS:  YOU KNOW WHAT, I HAVE

7    MADE THE OBJECTION.  NOW I WOULD HAVE TO HAVE THE

8    QUESTION BEFORE THAT READ BACK, AND IT IS JUST NOT

9    WORTH IT.

10             MR. MCDONALD:  OKAY.  CAN YOU READ

11   THAT BACK ONE MORE TIME?

12             MISS LEAHY:  FOR THE BENEFIT OF

13   BOTH MYSELF AND THE WITNESS, I THINK I AM JUST

14   GOING TO REPEAT THE QUESTION, BECAUSE I MIGHT BE A

15   BIT LOST NOW.

16             MR. MORRIS:  YES, THAT IS FINE.

17   BY MISS LEAHY:

18        Q.    WE WERE DISCUSSING THE ORDER 8

19   DETERMINATION?

20        A.    YES.

21        Q.    AND IN THAT CONTEXT WHAT I WAS

22   SUGGESTING TO YOU IS THE LIQUIDATOR WAS INTERESTED

23   IN DETERMINING WHETHER THE COMPANY WAS BALANCE

24   SHEET SOLVENT OR NOT.  WOULD YOU AGREE WITH THAT?

25        A.    PRINCIPALLY, YES, YES.  YES.

45

1      Q.      PRINCIPALLY?  IS THERE A SHADOW OF

2   DOUBT THERE, AND WHY IS THAT?

3      A.      WELL, IT IS A SUMMARY

4   DETERMINATION.

5      Q.      YES.

6      A.      AND IF YOU ARE THE LIQUIDATOR AND

7   YOU DETERMINE IT TO BE SOLVENT, THEN YOU GET

8   YOURSELF INTO ORDER 16, RULE 1 AND HAVING TO PAY

9   CREDITORS AS THEY FALL DUE.  SO, IF YOU HAVE A

10  COMPANY, EVEN, YOU KNOW, IN YOUR HYPOTHETICAL

11  SITUATION WHERE IT HAS A LOT OF ILLIQUID ASSETS

12  AND IT IS GOING TO BE ABLE TO PAY EVERYONE IN FULL

13  AT THE END OF THE DAY BUT ITS CASH FLOW INSOLVENT

14  SO IT CANNOT -- THE LIQUIDATOR CANNOT COMPLY WITH

15  ORDER 16, RULE 1 AND PAY ITS DEBTS IN THE ORDINARY

16  COURSE, THEN, YOU KNOW, IF I WAS ADVISING A

17  LIQUIDATOR IN THAT KIND OF SITUATION IN THE COURSE

18  OF MY PRACTICE, FIRSTLY, I WOULD TAKE A LOT MORE

19  TIME TO CONSIDER THE ISSUE THAN I HAVE GOT RIGHT

20  NOW, BUT MY FIRST BLUSH VIEW IS THAT YOU MIGHT IN

21  THAT SITUATION WANT TO THINK ABOUT WHETHER IT IS

22  TRULY SOLVENT OR WHETHER YOU WANT TO ADMIT AN

23  ELEMENT OF CASH FLOW SOLVENCY INTO YOUR

24  DETERMINATION AND THINK ABOUT WHETHER IT IS OF

25  DOUBTFUL SOLVENCY.

46

1        Q.     OKAY.  SO IN THAT SITUATION, WOULD

2   YOU SUGGEST IT IS APPROPRIATE THAT CREDITORS HAVE

3   -- IT DOES NOT MATTER WHETHER WE CLASSIFY IT AS

4   DOUBTFUL SOLVENCY OR WHAT, BUT THE SITUATION WE

5   ARE DISCUSSING, WOULD YOU SUGGEST THAT CREDITORS'

6   VIEWS SHOULD BE TAKEN INTO ACCOUNT BY THE COURT?

7        A.     WHETHER THEY SHOULD BE AS A MATTER

8   OF PRINCIPLE OR WHETHER THEY WOULD BE UNDER OUR

9   STATUTORY REGIME, THOSE ARE TWO DIFFERENT THINGS,

10  SO WHICH IS YOUR QUESTION?

11       Q.     AS A MATTER OF PRINCIPLE SHOULD

12  THEY BE TAKEN INTO ACCOUNT IN THAT SITUATION?

13  WHAT IS YOUR VIEW?

14       A.     AS A MATTER OF PRINCIPLE WHERE, YOU

15  KNOW, CREDITORS ARE NOT GETTING PAID IN THE

16  ORDINARY COURSE, I WOULD SAY THERE IS AT LEAST AN

17  ARGUMENT THAT THEY SHOULD BE.

18       Q.     BUT YOU WOULD SAY THAT UNDER THE

19  RULES THEY ARE BARRED FROM PARTICIPATING IN THE

20  WINDING UP?

21       A.     IF THE LIQUIDATOR HAS DETERMINED

22  THE COMPANY TO BE SOLVENT.  THAT IS WHY I QUERY

23  WHETHER IN THAT SITUATION THE LIQUIDATOR SHOULD

24  DETERMINE IT TO BE OF DOUBTFUL SOLVENCY, BECAUSE

25  THAT WAY YOU BRING THE CREDITORS IN AND YOU GIVE

47

1   THEM A SEAT AT THE TABLE.

2          Q.     AND WHAT IF THE CREDITORS WENT TO

3   COURT AND SAID TO THE JUDGE, THE LIQUIDATOR HAS

4   DETERMINED THAT IT IS SOLVENT, I AM NOT GETTING

5   PAID IN THE ORDINARY COURSE AND THEREFORE I AM

6   POTENTIALLY AT RISK OF NOT BEING PAID IN FULL,

7   I WANT YOU TO HEAR ME ON THE FOLLOWING

8   APPLICATIONS, WOULD THE COURT ENTERTAIN THAT

9   APPLICATION?

10         A.     IT IS AN INTERESTING QUESTION, IS

11  IT NOT?  I MEAN, AGAIN, THIS IS SOMETHING THAT I

12  WOULD WANT TO THINK ABOUT A LOT MORE, BUT I WOULD

13  HAVE THOUGHT, YOU KNOW, IN THAT CASE, THEN THE

14  COURT MIGHT WELL SAY TO THE LIQUIDATORS, LOOK, YOU

15  HAVE CERTIFIED THIS COMPANY TO BE SOLVENT BUT YOUR

16  CREDITORS ARE NOT GETTING PAID, THE COURT MIGHT

17  SAY TO THE LIQUIDATOR RECERTIFY IT AS DOUBTFUL

18  SOLVENCY, GIVE YOUR CREDITORS A SEAT, GIVE THEM A

19  VOICE, THEY NEED TO BE HEARD.

20         Q.     BUT THE COURT COULD ONLY DO THAT IF

21  IT WAS PREPARED TO HEAR THE CREDITOR IN THE FIRST

22  INSTANCE.  THAT IS RIGHT, IS IT NOT?

23         A.     WELL, NO, I AM NOT SURE I AGREE

24  WITH THAT, BECAUSE THE COURT CAN -- I MEAN,

25  SOMEONE WOULD HAVE TO DRAW THE SITUATION TO THE

48

1  COURT'S ATTENTION.

2        Q.      THAT IS MY POINT.  SO THE CREDITOR

3  HAS TO APPLY TO COURT SAYING YOU NEED TO GIVE

4  DIRECTIONS TO YOUR OFFICERS BECAUSE THEY HAVE MADE

5  THIS DETERMINATION, AND IT IS NOT FAIR.  THE

6  CREDITOR WOULD HAVE TO MAKE THAT APPLICATION TO

7  COURT, WOULD IT NOT?

8        A.      WELL, I DO NOT THINK THE COURT

9  WOULD NECESSARILY NEED A FORMAL APPLICATION FROM A

10 CREDITOR.

11       Q.     A LETTER INSTEAD?

12       A.      THE COURT WOULD NEED TO KNOW THAT

13 CREDITORS WERE NOT GETTING PAID.  THE COURT WOULD

14 WANT TO SEE EVIDENCE FROM THE LIQUIDATOR.

15 I CANNOT CONCEIVE -- I MEAN, YOU KNOW, IN THIS

16 THESE KIND OF SITUATIONS IT IS THE LIQUIDATOR'S

17 DUTY TO ASSIST THE COURT AND TO APPRISE THE COURT

18 OF THE FACTUAL SITUATION AND WHAT IS GOING ON IN

19 THE LIQUIDATION.  SO, YOU KNOW, WE ARE DEALING

20 WITH THESE HYPOTHETICAL SCENARIOS WHICH ARE

21 DIFFICULT TO DEAL WITH IN THEORY, BUT IN PRACTICE

22 I CANNOT ENVISAGE A CAYMAN LIQUIDATOR WHO WOULD

23 NOT PUT IN A REPORT AND WHO WOULD NOT ADMIT AND

24 ACCEPT, LOOK, YES, I CANNOT PAY THESE CREDITORS.

25 THIS IS THE SITUATION.  I HAVE GOT ALL THIS REAL

49

KATHARINE LUCY BLADEN PEARSON

1    ESTATE.  I AM HOPING TO SELL IT WITHIN THIS TIME

2    FRAME BUT I HAVE THESE DEBTS AND THE DEBTS ARE

3    DUE.  YOU KNOW, THE LIQUIDATOR'S ROLE IS TO BE

4    NEUTRAL AND TO ASSIST THE COURT AND SET OUT THE

5    FACTS.  SO, I THINK IN THE SITUATION THAT YOU ARE

6    TALKING ABOUT, I DO NOT THINK YOU WOULD NEED A

7    FORMAL APPLICATION NECESSARILY FROM THE CREDITOR.

8    OBVIOUSLY SOMEONE SOMEHOW IS GOING TO HAVE TO

9    BRING IT TO THE JUDGE'S ATTENTION, BUT I THINK IT

10   IS REALLY THE LIQUIDATOR'S ROLE TO SET OUT THE

11   FACTUAL POSITION.  THE JUDGE CAN GIVE HIS OR HER

12   OWN OFFICERS WHATEVER DIRECTION HE OR SHE THINKS

13   FIT, WITH OR WITHOUT AN APPLICATION FROM THEM OR

14   FROM ANOTHER PARTY.

15        Q.   I THINK WHAT YOU ARE SAYING IS THAT

16   THERE ARE MECHANISMS IN PLACE TO PROTECT THE

17   INTEREST OF CREDITORS, EVEN IF A CREDITOR CANNOT

18   ACTUALLY BRING AN APPLICATION TO COURT ITSELF?

19        MR. MORRIS:  OBJECTION TO THE FORM

20   OF THE QUESTION.

21        A.   NO, I DO NOT THINK THAT IS WHAT

22   I AM SAYING, BECAUSE THERE IS NOT A FORMAL

23   MECHANISM FOR A CREDITOR.

24   BY MISS LEAHY:

25        Q.   I DID NOT SAY THE WORD "FORMAL".

50

1    I SAID THERE ARE MECHANISMS IN PLACE TO PROTECT

2    THE INTEREST OF CREDITORS, AND YOU SEEM TO ME TO

3    HAVE JUST GIVEN AN EXAMPLE.  YOU SAID THE

4    LIQUIDATOR HAS TO REPORT TO THE COURT, THE

5    LIQUIDATOR IS AN OFFICER OF THE COURT WHO HAS A

6    DUTY TO BE NEUTRAL AND THE COURT HAS GOT THE POWER

7    TO GIVE DIRECTIONS TO ITS OFFICERS.  I AM SLIGHTLY

8    PARAPHRASING YOUR EVIDENCE, BUT I THOUGHT THAT WAS

9    THE GIST OF IT.

10          A.    YES.

11          Q.    IS IT WRONG TO SAY THERE ARE

12   MECHANISMS IN PLACE TO PROTECT THE INTEREST OF

13   CREDITORS?

14                MR. MORRIS:  OBJECTION TO THE FORM

15   OF THE QUESTION.

16          A.    THE MECHANISM WOULD BE FOR THE

17   JUDGE TO -- YOU KNOW, FOR THE LIQUIDATOR TO CHANGE

18   HIS OR HER SOLVENCY DETERMINATION AND BRING THE

19   CREDITORS IN, BECAUSE SO LONG AS IT REMAINS

20   SOLVENT THERE IS NOT A MECHANISM FOR CREDITORS TO

21   BE HEARD.  AS SOON AS THE DETERMINATION IS CHANGED

22   TO DOUBTFUL SOLVENCY, YOU KNOW, THEN THEY ARE IN

23   AND CREDITORS AND CONTRIBUTORIES HAVE A VOICE.

24   BY MISS LEAHY:

25          Q.    HENCE THE INITIAL STAGE WHERE

51

1   I THINK YOU ARE SAYING THE CREDITOR CANNOT MAKE AN

2   APPLICATION.

3           A.     HMM.

4           Q.     YOU SAY THAT THE CREDITOR IS NOT AT

5   RISK IN THAT SITUATION BECAUSE OF COURSE EITHER

6   THROUGH A REPORT OR THROUGH SOME OTHER MECHANISM

7   THE COURT CAN DIRECT THE LIQUIDATOR TO CHANGE THE

8   DETERMINATION, RIGHT?

9           A.     HMM.

10          Q.     SO THAT IS THE COURT INTERVENING,

11  IS IT NOT, ON BEHALF OF THE CREDITORS TO ASSIST

12  THEM?

13          A.     YES, IN THAT SITUATION, YES,

14  ALTHOUGH I THINK -- WE ARE IN QUITE A FARFETCHED

15  HYPOTHETICAL SITUATION HERE.  I THINK WHAT IS FAR

16  MORE LIKELY IS THAT THE LIQUIDATOR WOULD OF HIS OR

17  HER OWN INITIATIVE CHANGE THE DETERMINATION

18  BECAUSE LIQUIDATORS DO NOT TYPICALLY WANT TO SHUT

19  CREDITORS OUT.

20          Q.     FINE.  WE ARE JUST GOING TO TAKE A

21  SHORT BREAK.

22          A.     OKAY.

23          Q.     AS EXPLAINED BEFORE, YOU REMAIN

24  UNDER OATH DURING THE BREAKS.

25          A.     YES.

52

1    Q.    SO PLEASE DO NOT DISCUSS YOUR

2  EVIDENCE WITH YOUR SIDE?

3    A.    YES, THAT IS FINE.

4    Q.    TEN MINUTES?

5    A.    SURE.

6    (A SHORT BREAK FROM 11.06 A.M. TO 11.20 A.M.)

7    THE COURT REPORTER:  WE ARE GOING

8  BACK ON THE RECORD AT 11.20.

9  BY MISS LEAHY:

10   Q.    MISS PEARSON, IN EVERY LIQUIDATION,

11 SOLVENT OR INSOLVENT, THE CREDITORS HAVE TO SUBMIT

12 THEIR CLAIMS TO THE LIQUIDATOR, DO THEY NOT?

13   A.    YES.

14   Q.    AND IT IS THE LIQUIDATOR WHO

15 DECIDES WHETHER THE CLAIMS ARE DISPUTED OR NOT, IS

16 IT NOT?

17   A.    YES.

18   Q.    AND IT IS ALSO THE LIQUIDATOR WHO

19 AFFECTS PAYMENT OF CLAIMS WHICH HE DOES NOT

20 DISPUTE; THAT IS CORRECT?

21   A.    YES.

22   Q.    ONCE A CREDITOR IS PAID IN FULL,

23 WITH STATUTORY INTEREST, THEY ARE ACTUALLY NO

24 LONGER A CREDITOR OF THE COMPANY, ARE THEY?

25   A.    NO.

53

1     Q.     SO THEREFORE THEY OBVIOUSLY DO NOT

2  HAVE ANY INTEREST WHATSOEVER IN THE LIQUIDATION OF

3  PROCEEDINGS, DO THEY?

4     A.     NO.

5     Q.     BUT UNTIL THAT TIME COMES, THEY

6  HAVE GOT EXTANT CLAIMS AGAINST THE COMPANY, THAT

7  THEY ARE BARRED FROM ENFORCING WITHOUT THE LEAVE

8  OF THE COURT.  THAT IS RIGHT?

9     A.     YES.

10     Q.     SO EVEN IF EVERYONE HOPES AND

11  ANTICIPATES THAT THEY ARE GOING TO BE PAID IN FULL

12  WITH INTEREST, UNLESS AND UNTIL THEY ARE, THERE IS

13  A RISK THAT THEY MIGHT NOT BE?

14     A.     YES.

15     Q.     AND FOR AS LONG AS THAT RISK

16  SUBSISTS, THE OFFICIAL LIQUIDATOR IS DUTY BOUND

17  NOT TO TAKE STEPS TO HARM THOSE CREDITORS'

18  INTEREST?

19     A.     WELL, I MEAN, IN THE SAME WAY THAT

20  IF I OWE SOMEONE MONEY, I AM, YOU KNOW, DUTY

21  BOUND.  YOU SAY DUTY BOUND NOT TO KIND OF GO AND

22  HIDE ALL MY ASSETS AND NOT PAY THEM.  WHAT DO YOU

23  MEAN BY DUTY BOUND?

24     Q.     WELL, HE CANNOT PRIORITIES THE

25  INTEREST OF THE SHAREHOLDERS OVER THE INTEREST OF

54

1  THE CREDITORS WHILE THERE REMAINS A RISK THAT THE

2  CREDITORS MIGHT NOT BE PAID IN FULL?

3           MR. MORRIS:  I AM SORRY ARE WE IN A

4  SOLVENT OR INSOLVENT SITUATION?

5           MISS LEAHY:  WE ARE IN A SOLVENT

6  SITUATION.

7           MR. MORRIS:  OBJECTION TO THE FORM

8  OF THE QUESTION.

9       A.    SORRY, DID YOU SAY SOLVENT OR

10 INSOLVENT?

11 BY MISS LEAHY:

12      Q.    SOLVENT.

13      A.    WELL, I MEAN, I THINK I SAID YES TO

14 YOU WHEN YOU SAID THAT THERE IS A RISK THAT THE

15 CREDITORS MAY NOT GET PAID IN FULL.  PERHAPS

16 I SHOULD NOT HAVE SAID YES BECAUSE -- I GUESS

17 THERE IS ALWAYS A RISK.  YOU KNOW, I ISSUE AN

18 INVOICE TO A CLIENT, UNTIL THEY HAVE PAID ME THERE

19 IS A RISK I MIGHT NOT GET PAID.  YOU KNOW, IS IT A

20 REAL RISK?  YOU KNOW, DOES IT MEAN THAT THEY ARE

21 INSOLVENT?  NO.  IT IS A THEORETICAL RISK THERE IS

22 A VERY SMALL RISK, BUT I THINK YOU ARE TAKING THAT

23 ASSUMPTION AND TRYING TO TAKE IT -- CAN WE ----

24      Q.    I AM SO SORRY, I JUST DID NOT THINK

25 IT WOULD BE CONTROVERSIAL TO SAY THAT A LIQUIDATOR

55

1 WHO IS AN OFFICER OF THE COURT SHOULD NEVER DO

2 SOMETHING, IN FACT IS DUTY BOUND NOT TO TAKE ANY

3 STEPS THAT WOULD HARM THE INTEREST OF THE

4 CREDITORS OF THE COMPANY, WHETHER IT IS SOLVENT OR

5 INSOLVENT.

6          A.    YES.  I MEAN, YES, HE IS NOT GOING

7 TO START, YOU KNOW, HIDING ASSETS OR, YOU KNOW,

8 TRYING TO -- HE IS NOT GOING TO START DOING THINGS

9 TO EVADE PAYING THE COMPANY'S DEBTS.

10          Q.    IT IS MORE THAT HE -- LESS THAN HE

11 WILL NOT, BUT HE SHOULD NOT?

12          A.    NO, HE SHOULD NOT, NO.  AS I SAY, I

13 THINK I AM GETTING -- I THINK IT IS THE DUTY BOUND

14 PART THAT I AM KIND OF TAKING ISSUE WITH BECAUSE

15 HIS DUTIES ARE TO HIS STAKEHOLDERS, WHICH IN THAT

16 CASE ARE THE SHAREHOLDERS.

17          Q.    BUT IT DOES NOT MEAN THAT THE

18 INTEREST OF CREDITORS ARE SUBORDINATED TO THE

19 INTEREST OF THE SHAREHOLDERS, DOES IT?  YOU ARE

20 NOT SUGGESTING THAT?

21          A.    NO, CERTAINLY NOT THAT THEY ARE

22 SUBORDINATED, IT IS JUST THAT THEY ARE GOING TO

23 GET PAID SO THEY DO NOT HAVE A FINANCIAL INTEREST

24 IN THE LIQUIDATION.  THEY ARE NOT A STAKEHOLDER IN

25 THE LIQUIDATION.  THEY ARE NOT BEARING THE COSTS

56

1   OF THE LIQUIDATION AND THEY ARE NOT AFFECTED BY

2   THE STEPS THAT THE LIQUIDATOR IS TAKING IN TERMS

3   OF REALISING THE ASSETS, BECAUSE THEY ARE NOT

4   GOING TO GET A SHARE OF THOSE ASSETS BECAUSE THEY

5   ARE GETTING PAID THEIR WHOLE CLAIM ANYWAY.

6           Q.    WE MAY JUST BE GOING AROUND IN

7   CIRCLES, BUT I THOUGHT YOU ACKNOWLEDGED THAT THERE

8   WAS A RISK, EVEN IF YOU WANT TO CALL IT A

9   THEORETICAL RISK, THAT THEY MIGHT NOT GET PAID IN

10  FULL.  MY POINT TO YOU IS WHILE THAT RISK

11  SUBSISTS, THEN SURELY THE LIQUIDATOR CANNOT AND

12  SHOULD NOT DO ANYTHING THAT MIGHT HARM THE

13  INTEREST OF CREDITORS?

14          MR. MORRIS:  OBJECTION TO THE FORM

15  OF THE QUESTION.

16          A.    YES, I AGREE THAT HE CANNOT AND

17  SHOULD NOT BE TAKING STEPS THAT WOULD CHANGE HIM

18  FROM BEING ABLE TO PAY CREDITORS TO BEING UNABLE

19  TO PAY THEM.

20  BY MISS HEALY:

21          Q.    AND THE COURT IS NOT GOING TO

22  SANCTION THE EXERCISE OF A POWER THAT MIGHT PUT

23  THE CREDITORS INTEREST AT RISK, IS IT?

24          A.    NO.

25          Q.    SO IF A LIQUIDATOR GOES TO COURT

57

1   AND APPLIES FOR SANCTION TO COMMENCE LITIGATION --

2   WE SEE THEM ALL THE TIME -- THE COURT WILL HAVE

3   REGARD WHEN IT IS CONSIDERING THE LIQUIDATOR'S

4   REPORT TO THE INTEREST OF ANY CREDITORS WHO HAVE

5   NOT YET BEEN PAID, WILL IT NOT?

6          A.    WELL, I THINK THE COURT --

7   CERTAINLY THE COURT WOULD NOT SANCTION THE

8   LIQUIDATOR TAKING A STEP THAT JEOPARDIZED HIS

9   ABILITY TO PAY THOSE CREDITORS, BUT PROVIDED THEY

10  ARE GOING TO BE PAID, AND WHATEVER STEP HE IS

11  SEEKING SANCTION OF DOES NOT JEOPARDIZE THAT,

12  THEN, YOU KNOW, THEY ARE OUT, THEY ARE NOT THE

13  STAKEHOLDERS IN THE LIQUIDATION.  SO IT IS THE

14  SHAREHOLDERS' VIEWS AS TO WHAT THE LIQUIDATOR

15  SHOULD BE DOING THAT CARRY WEIGHT WITH THE COURT.

16         Q.    SO LET US TAKE AN APPLICATION FOR

17  SANCTION BY THE LIQUIDATOR ----

18         A.    YES.

19         Q.    ---- WHICH THE COURT, LET US JUST

20  SAY, IS JUST A LITTLE WORRIED MIGHT PUT THE

21  CREDITORS' INTEREST AT RISK AND THE LIQUIDATOR

22  SAYS, WELL, I AM SOLVENT.  IN THAT SITUATION, THE

23  COURT HAS A NUMBER OF OPTIONS, DOES IT NOT?  IT

24  COULD JUST REFUSE SANCTION.  THAT IS ONE OPTION.

25  ANOTHER OPTION IS THAT IT COULD DIRECT NOTICE TO

58

1    BE GIVEN TO THE CREDITORS SO THEY COULD COME AND

2    MAKE REPRESENTATIONS.

3            A.      MMM-HMM.

4            Q.      AND THE THIRD OPTION, AND YOU CAN

5    ANSWER THE QUESTION AT THE END IF YOU PREFER, IS

6    THAT YOU COULD SAY TO THE LIQUIDATOR, ACTUALLY,

7    I WANT TO HEAR ADVERSARIAL ARGUMENT ON THIS.  SO

8    YOU, LIQUIDATOR, YOU BE THE VOICE OF THE UNSECURED

9    CREDITORS AND THE SHAREHOLDERS CAN HAVE THEIR OWN

10   REPRESENTATIVE.  THEY CAN COME TO COURT BY

11   MISS PEARSON AND SHE CAN PERSUADE ME AS TO WHY

12   I SHOULD GIVE SANCTION.  THOSE ARE SORT OF THE

13   THREE -- OR HE COULD BE PERSUADED THAT HE SHOULD

14   NOT, BUT THOSE ARE THE THREE -- IF THE COURT HAS

15   GOT ANY DOUBT, THOSE ARE THE SORT OF THREE OPTIONS

16   AVAILABLE TO THE COURT, ARE THEY NOT?

17           A.      WELL, I THINK THERE IS ANOTHER

18   OPTION THAT I THINK IS POSSIBLY MORE LIKELY THAN

19   THE ONES THAT YOU HAVE OUTLINED, WHICH IS THAT IF

20   THE COURT THINKS THE CREDITORS NEED A VOICE AND

21   THEY NEED TO BE HEARD ON THE SANCTION APPLICATION,

22   THEN THE OBVIOUS STEP WOULD BE TO TELL THE

23   LIQUIDATOR TO CHANGE HIS OR HER SOLVENCY

24   DETERMINATION.  THEN IF IT IS DOUBTFUL SOLVENCY,

25   THEN BOTH CREDITORS AND CONTRIBUTORIES CAN BE

59

1   HEARD ON THE SANCTION APPLICATION AND THE COURT

2   CAN PAY ATTENTION TO EVERYBODY'S VIEWS.  I THINK

3   IT WOULD BE VERY UNLIKELY THAT THERE WOULD BE A

4   SOLVENT LIQUIDATION AND THE JUDGE WOULD, YOU KNOW,

5   PERMIT IT TO BE CONTINUING AS A SOLVENT

6   LIQUIDATION BUT STILL SAY, OH, BUT THE CREDITORS

7   NEED TO BE HEARD, SO I AM GOING TO ALLOW THEM TO

8   BE HEARD EVEN THOUGH THE ACT SPECIFICALLY SAYS

9   THAT THEY DO NOT HAVE STANDING TO BE HEARD ON A

10  SANCTION APPLICATION BY THE LIQUIDATOR OF A

11  SOLVENT COMPANY.

12          Q.    SHALL WE JUST LOOK AT THE RELEVANT

13  PROVISIONS?  TURN TO ORDER 11 -- WE DO NOT HAVE

14  THE SAME PAGE NUMBERS IN THE ORDER -- IT IS PAGE

15  74 ON MINE.

16          A.    OKAY, I WILL FIND IT.  YES.

17          Q.    WE CAN AGREE THAT IN A SOLVENT

18  LIQUIDATION CREDITORS DO NOT HAVE STANDING TO MAKE

19  A SANCTION APPLICATION?

20          A.    YES.

21          Q.    THAT IS COMMON GROUND?

22          A.    YES.

23          Q.    WE CAN ALSO AGREE THAT IN AN

24  INSOLVENT LIQUIDATION CONTRIBUTORIES DO NOT HAVE

25  STANDING TO MAKE AN APPLICATION?

60

1          A.     YES.

2          Q.     BUT I AM WANTING JUST TO LOOK AT

3    THE MOMENT AT LIQUIDATOR'S APPLICATIONS FOR

4    SANCTION, OKAY?

5          A.     YES.

6          Q.     IF YOU GO TO RULE 2 OF ORDER 11 AND

7    THEN GO TO 2(1):  "EVERY SANCTION APPLICATION MADE

8    BY THE OFFICIAL LIQUIDATOR SHALL BE SERVED ON",

9    AND THEN, "(A) EACH MEMBER OF THE LIQUIDATION

10   COMMITTEE; OR (B) COUNSEL TO THE LIQUIDATION

11   COMMITTEE ... AND (C) SUCH OTHER CREDITORS OR

12   CONTRIBUTORIES AS THE COURT MAY DIRECT."

13         A.     YES.

14         Q.     SO THE COURT, ON THE FACE OF RULE

15   2(1), HAS GOT POWER ON AN APPLICATION BY THE

16   OFFICIAL LIQUIDATOR TO DIRECT THAT OTHER CREDITORS

17   OR CONTRIBUTORIES ARE TO BE SERVED.  THEN, I KNOW

18   YOU REFERENCE THIS IN YOUR DECLARATION, IF YOU GO

19   OVER TO RULE 3, AND I THINK IT IS 3(4) THAT YOU

20   MADE REFERENCE TO, IT SAYS:  "IN ADDITION TO THOSE

21   WHO WERE ENTITLED TO BE SERVED IN ACCORDANCE WITH

22   RULE 2, THE COURT MAY ALLOW THE FOLLOWING CLASSES

23   OF PERSONS TO BE HEARD."  THEN WE HAVE, "(A) ANY

24   OTHER CREDITOR, IF THE COMPANY IS INSOLVENT; (B)

25   ANY OTHER CONTRIBUTORY, IF THE COMPANY IS

1   SOLVENT", AND THEN THE DOUBTFUL SOLVENCY

2   PROVISION.  I THINK WHAT YOU ARE SAYING IS THAT

3   SOMEHOW RULE 3(4) GOVERNS RULE 2(1) AND THEREFORE

4   THE COURT CAN ONLY DIRECT THAT ANOTHER CREDITOR OR

5   CONTRIBUTORY OR -- ANOTHER CREDITOR IS SERVED IF

6   THE COMPANY IS INSOLVENT.  IS THAT WHAT YOU ARE

7   SAYING?

8           A.    I AM NOT SAYING THAT 3(4) GOVERNS

9   2(1), BUT IF WE LOOK AT THE ACT, AT SECTION

10  110 ----

11          Q.    THAT IS PAGE 64.

12          A.    IT IS 84 IN MINE.

13          Q.    IT IS 84.  IT IS JUST MY EYESIGHT.

14          A.    SO IF WE LOOK AT SECTION 110(4)(A),

15  IT SAYS: "IN THE CASE OF A SOLVENT COMPANY, A

16  SANCTION APPLICATION MAY ONLY BE HEARD BY A

17  CONTRIBUTORY AND THE CREDITORS SHALL HAVE NO RIGHT

18  TO BE HEARD."

19          Q.    YES.

20          A.    SO I WOULD READ NO RIGHT TO BE

21  HEARD AS MEANING ON A SANCTION APPLICATION MADE BY

22  ANOTHER CONTRIBUTORY OR MADE BY THE LIQUIDATOR,

23  HIM OR HERSELF.

24          Q.    WHERE DO YOU READ THE WORDS "OR THE

25  LIQUIDATOR, HIM OR HERSELF" INTO THAT RULE?

62

1        A.        WELL, JUST COMMON SENSE, BECAUSE

2   OTHERWISE YOU ARE READING IT AS THE CREDITORS

3   SHALL HAVE NO RIGHT TO BE HEARD ON A SANCTION

4   APPLICATION MADE BY A CONTRIBUTORY, BUT YOU ARE

5   SAYING THEY DO HAVE THE RIGHT TO BE HEARD ON A

6   SANCTION APPLICATION MADE BY THE LIQUIDATOR, AND

7   WHY SHOULD THERE BE A DISTINCTION THERE?

8        Q.        WELL, THEY ARE VERY DIFFERENT

9   APPLICATIONS, ARE THEY NOT, BECAUSE THE LIQUIDATOR

10  HAS TO APPLY TO COURT TO EXERCISE HIS POWERS UNDER

11  THE PART 1 OF SCHEDULE 3, SO THE LIQUIDATOR HAS TO

12  MAKE SIGNIFICANT AND NUMEROUS APPLICATIONS FOR

13  SANCTION, DOES HE NOT?

14       A.        YES, THE LIQUIDATOR MAKES -- IT IS

15  MUCH MORE COMMON, I AGREE, IF THIS IS YOUR POINT,

16  FOR A SANCTION APPLICATION TO BE MADE BY A

17  LIQUIDATOR THAN BY A CREDITOR OR A CONTRIBUTORY.

18  I AGREE WITH THAT, BUT I DO NOT SEE WHY THAT WOULD

19  MEAN THAT THERE IS A DIFFERENCE IN TERMS OF WHO

20  HAS STANDING TO BE HEARD BECAUSE OF WHO IS

21  BRINGING THE APPLICATION.  THEN ALSO IF YOU ARE

22  SAYING THAT A CREDITOR HAS THE RIGHT TO BE HEARD

23  ON A SANCTION APPLICATION IN RELATION TO A SOLVENT

24  COMPANY, IF IT IS BROUGHT BY THE LIQUIDATOR BUT

25  NOT BY A CONTRIBUTORY, THEN THAT JUST GOES AGAINST

63

1  THE GRAIN OF ALL OF THE CASE LAW THAT SAYS IT IS

2  THE PEOPLE WITH THE ECONOMIC INTEREST IN THE

3  LIQUIDATION THAT HAVE THE RIGHT TO BE HEARD, AND

4  THEREFORE ON A SOLVENT LIQUIDATION IT IS THE

5  CONTRIBUTORIES AND ON AN INSOLVENT LIQUIDATION IT

6  IS THE CREDITORS.

7          Q.     OKAY.  I THINK THERE ARE TWO POINTS

8  THERE.  THE SECOND POINT, THE CASE LAW POINT,

9  I WILL COME BACK TO IN A MOMENT.  JUST FOCUS ON,

10  IF YOU LIKE, THE STANDING POINT AS OPPOSED TO WHAT

11  I CALL THE WEIGHT POINT.

12          A.     MMM-HMM.

13          Q.     IF YOU LOOK AT SECTION 110, THE

14  HEADING IS "FUNCTION AND POWERS OF OFFICIAL

15  LIQUIDATORS", AND IF YOU GO TO SUBSECTION (3),

16  "THE EXERCISE BY THE LIQUIDATOR OF THE POWERS

17  CONFERRED BY THIS SECTION IS SUBJECT TO THE

18  CONTROL OF THE COURT", AND "SUBJECT TO (5), ANY

19  CREDITOR OR CONTRIBUTORY MAY APPLY TO THE COURT

20  WITH RESPECT TO THE EXERCISE OF PROPOSED EXERCISE

21  OF SUCH POWERS."  THEN IN (4) IS THE SECTION THAT

22  YOU WERE REFERENCING.  SO (4) IS EXPLAINING WHO

23  MAY MAKE THE APPLICATION, CALLED THE SANCTION

24  APPLICATION, REFERENCED IN (3), RIGHT?

25          A.     WELL, WHO MAY MAKE IT AND WHO MAY

64

1    BE HEARD.

2           Q.    BUT (3) IS TALKING ABOUT WHO MAY

3    MAKE AN APPLICATION, RIGHT, AND THEN (4)

4    ESSENTIALLY CAVEATS THAT, BUT IT IS NOT IN ANY WAY

5    DEALING WITH THE LIQUIDATOR MAKING AN APPLICATION?

6    IT IS SOLELY DEALING WITH CREDITORS AND

7    CONTRIBUTORIES' APPLICATIONS?

8           A.    NO, I DO NOT AGREE.

9           Q.    THEN IF YOU GO BACK TO ORDER 11,

10   AND LOOK AT RULE 2 AGAIN, WE SEE THAT THE COURT

11   HAS GOT POWER TO ORDER "SUCH OTHER CREDITORS OR

12   CONTRIBUTORIES AS THE COURT MAY DIRECT" TO BE

13   SERVED", YES?

14          A.    YES.

15          Q.    AND THEN IF YOU GO TO RULE 3(4),

16   "IN ADDITION TO THOSE WHO ARE ENTITLED TO BE

17   SERVED IN ACCORDANCE WITH RULE 2, THE COURT MAY

18   ALLOW THE FOLLOWING CLASSES OF PERSONS TO BE

19   HEARD." RIGHT?

20          A.    YES.

21          Q.    SO THE PERSONS WHO CAN BE HEARD IS

22   EVERY PERSON THE COURT HAS DIRECTED BE SERVED WITH

23   THE APPLICATION AND ANY OTHER CREDITOR IF THE

24   COMPANY IS INSOLVENT.  SO ACTUALLY AS A MATTER OF

25   FACT THE COURT DOES HAVE POWER, DOES IT NOT, TO

65

1    SIMPLY DIRECT THAT THE CREDITOR OF A SOLVENT

2    COMPANY IS GIVEN NOTICE OF THE APPLICATION AND

3    THEREFORE THAT CREDITOR BECOMES A PERSON THAT IT

4    IS ENTITLED TO HEAR FROM IN SUBMISSIONS, IN DUE

5    COURSE?

6             A.    NO, I DO NOT READ RULE 2(3)(D) AS

7    MEANING THAT THE COURT MAY DIRECT A SANCTION

8    APPLICATION, IN RELATION TO A SOLVENT COMPANY,

9    SHOULD BE SERVED UPON CREDITORS.  YOU KNOW, IF YOU

10   READ THE WHOLE OF THE ACT AND THE WHOLE OF THE

11   RULES, YOU WILL SEE ALL THROUGH IT THERE IS A

12   DISTINCTION MADE BETWEEN SOLVENT COMPANIES AND

13   INSOLVENT COMPANIES.  IN SOLVENT COMPANIES, IT IS

14   THE CONTRIBUTORIES WHO GET NOTICE, WHO HAVE THE

15   RIGHT TO BE HEARD, WHO CAN MAKE APPLICATIONS, WHO

16   CAN SIT ON THE LIQUIDATION COMMITTEE AND SO FORTH.

17   IN INSOLVENT COMPANIES, IT IS THE CREDITORS.  IN

18   COMPANIES THAT ARE OF DOUBTFUL SOLVENCY, IT IS

19   BOTH.  SO I WOULD READ 2(3)(D) AS MEANING SUCH

20   OTHER CREDITORS IN THE CASE OF AN INSOLVENT

21   COMPANY OR CONTRIBUTORIES IN THE CASE OF A SOLVENT

22   COMPANY AS THE COURT MAY DIRECT.

23            Q.    SO YOU ARE ACTUALLY SAYING RULE

24   3(4) GOVERNS RULE 2(1), WHICH IS WHERE WE STARTED,

25   AND YOU SAID IT WAS NOT?

66

1          A.      I AM NOT SAYING IT IS BECAUSE OF

2    RULE 3(4).   I AM JUST SAYING IT IS BECAUSE OF THE

3    WHOLE SCHEME OF THE ACT AND THE RULES.  OBVIOUSLY

4    THE ACT TAKES PRECEDENCE OVER THE RULES.

5          Q.      BUT WE SAW THAT THE ACT DOES NOT

6    SAY AND IT IS NOT REFERRING TO LIQUIDATOR'S

7    APPLICATIONS, RIGHT?  I KNOW YOU DISAGREE WITH ME

8    ON THAT.

9          A.      HMM.

10         Q.      ASSUME I AM RIGHT, ON THAT BASIS,

11   WOULD YOU AGREE THAT THE COURT HAS GOT POWER --

12   JUST ON THAT ASSUMPTION, WHICH I KNOW YOU DO NOT

13   AGREE WITH, WOULD YOU ACCEPT THAT THE COURT CAN

14   DIRECT SERVICE ON A CREDITOR IN A SOLVENT

15   LIQUIDATION?

16         A.      HANG ON, WHAT AM I ASSUMING?  I AM

17   ASSUMING ----

18         Q.      THAT SECTION 110 DOES NOT HAVE THE

19   EFFECT THAT YOU SAY IT HAS.  YOU SAY SECTION 110

20   APPLIES TO LIQUIDATOR APPLICATIONS AND

21   CONTRIBUTORY APPLICATIONS.

22         A.      YES.

23         Q.      I SAY IT IS ONLY TALKING ABOUT

24   APPLICATIONS THAT COULD IN PRINCIPLE BE MADE BY A

25   CREDITOR AND A CONTRIBUTORY AND IT IS NOT TALKING

67

1   ABOUT APPLICATIONS THAT COULD BE BROUGHT BY THE

2   LIQUIDATOR HIMSELF?

3          A.    SO YOU ARE TALKING ABOUT 110(4)(A),

4   CORRECT?

5          Q.    YES.

6          A.    SO I AM ASSUMING THAT 110(4)(A)

7   DOES NOT APPLY TO ----

8          Q.    TO LIQUIDATORS.

9          A.    ---- SANCTION APPLICATIONS MADE BY

10   THE LIQUIDATOR?

11          Q.    CORRECT, YES.  I KNOW YOU DISAGREE

12   WITH THAT.

13          A.    OKAY.

14          Q.    I ABSOLUTELY ACCEPT THAT.  I JUST

15   WANT YOU TO ASSUME THAT FOR PRESENT PURPOSES.

16          A.    OKAY.  MAYBE WE ASSUME THAT 110(4)

17   DOES NOT EXIST, JUST IGNORE 110(4).

18          Q.    IT HAS JUST BEEN REPEALED.

19          A.    OKAY.  SO, LEAVING ASIDE 110(4),

20   THAT IS JUST ONE OF MANY EXAMPLES THROUGHOUT THE

21   COMPANIES ACT AND THE RULES, AND I AM SURE YOU

22   HAVE BEEN THROUGH THEM WITH A FINE-TOOTH COMB, AS

23   I HAVE, WHERE THE DISTINCTION IS MADE BETWEEN THE

24   CREDITORS IN AN INSOLVENT LIQUIDATION AND THE

25   CONTRIBUTORIES ON A SOLVENT ONE.

68

1      Q.      WE WILL BE COMING ON TO SOME OF

2   THOSE RULES.

3      A.      YES.

4      Q.      I REALLY JUST WANT TO STICK WITH

5   SANCTION APPLICATION FOR THE MOMENT ----

6      A.      YES.

7      Q.      ---- JUST TO KEEP THINGS CLEAR.

8      A.      HMM.

9      Q.      SO SECTION 110 DOES NOT EXIST?

10     A.      OKAY.  BUT IF SECTION 110 DOES NOT

11  ITSELF, THEN THERE ARE NO SANCTION APPLICATIONS AT

12  ALL.  JUST SAY SECTION 110(4) DOES NOT EXIST.

13     Q.      FINE.  THAT IS FINE.  I JUST DO NOT

14  WANT TO BE TOO CONTROVERSIAL ABOUT IT.  THAT IS

15  FINE.  IF YOU GO BACK TO ORDER 11 ----

16     A.      YES.

17     Q.      ---- WOULD YOU ACCEPT MY READING OF

18  ORDER 11, WHICH IS THAT THE COURT CAN DIRECT

19  SERVICE ON A CREDITOR IN A SOLVENT LIQUIDATION?

20     A.      IF YOU WERE READING ORDER 11 RULE

21  2(3)(D) IN ISOLATION, WITHOUT REGARD TO THE REST

22  OF THE COMPANIES WINDING UP RULES AND THE

23  COMPANIES ACT, THEN I WOULD AGREE, BUT IF YOU ARE

24  READING IT IN CONTEXT, AND EVEN WITHOUT SECTION

25  110(4), YOU KNOW, THAT SECTION DID NOT EXIST, IF

69

1   YOU READ IT IN THE CONTEXT OF THE REMAINDER OF THE

2   RULES AND THE ACT AND THE CASE LAW, THEN IT IS

3   CLEAR THAT THERE IS A DISTINCTION BETWEEN THE

4   CREDITORS HAVING THE ECONOMIC INTEREST IN AN

5   INSOLVENT WINDING UP AND THE CONTRIBUTORIES HAVING

6   THE ECONOMIC INTEREST IN A SOLVENT WINDING UP.  SO

7   I WOULD SAY EVEN IF WE DID NOT HAVE SECTION

8   110(4), YOU WOULD HAVE TO READ ORDER 11, RULE

9   (2)(3)(D) IN THAT CONTEXT.

10          Q.    DOES THAT BRING US ONTO THIS

11  DISTINCTION BETWEEN STANDING AND WEIGHT THAT YOU

12  SORT OF RAISED EARLIER, THAT YOU RAISED IN THE

13  CONTEXT OF REMOVAL APPLICATIONS UNDER SECTION 107?

14          A.    YES.

15          Q.    YOU ACCEPTED THAT EVEN IN A SOLVENT

16  LIQUIDATION THE CREDITOR HAS GOT STANDING.

17          A.    HMM.

18          Q.    BUT YOU SAID, WELL, THE COURT WOULD

19  NOT GIVE THE CREDITORS' VIEW MUCH WEIGHT, RIGHT?

20          A.    YES.

21          Q.    YOU WOULD ACCEPT THAT STANDING AND

22  WEIGHT ARE DIFFERENT THINGS?

23          A.    YES.

24          Q.    I THINK THAT IS WHAT I WANT TO KNOW

25  IN TERMS OF SECTION 110 WHATEVER, SUB-RULE (4),

70

1    DOES NOT EXIST.

2         A.    OKAY.

3         Q.    ARE YOU SAYING THAT A CREDITOR

4    WOULD NEVER HAVE STANDING TO PARTICIPATE IN A

5    LIQUIDATOR'S SANCTION APPLICATION OR ARE YOU

6    SAYING, WELL, ACTUALLY WHEN YOU LOOK AT THE ACT AS

7    A WHOLE, YOU LOOK AT THE CASE LAW AND THE COURT

8    WOULD GIVE THE CREDITOR'S VIEW VERY LITTLE WEIGHT?

9         A.    WELL, I THINK THE ACTUAL POSITION,

10   GIVEN SUB-RULE (4), IS THAT THEY DO NOT HAVE

11   STANDING, BUT POSSIBLY IF WE TAKE THAT SECTION

12   AWAY ----

13        Q.    THAT IS WHERE IT IS CONTROVERSIAL,

14   BECAUSE WE DO NOT AGREE WITH YOUR INTERPRETATION.

15        A.    YES, WE DO NOT AGREE.  OKAY, PUT

16   THAT TO ONE SIDE.  POSSIBLY YOU ARE INTO THE KIND

17   OF STANDING -- YOU KNOW, POSSIBLY YOU WOULD GET

18   INTO THE SITUATION THAT WE HAVE GOT IN A REMOVAL

19   APPLICATION WHERE THEY TECHNICALLY HAVE STANDING.

20   TECHNICALLY HERE, YOU KNOW, THE JUDGE COULD DIRECT

21   THEM TO BE SERVED, BUT THEN WHAT IS THE POINT OF

22   SERVING THEM WHEN THEIR VIEWS ARE NOT GIVEN ANY

23   WEIGHT.

24        Q.    WELL, THIS BRINGS US BACK TO AN

25   EARLIER ANSWER YOU GAVE, WHICH WAS IN THE

71

1   SITUATION THAT I POSITED TO YOU WHERE THE JUDGE

2   WAS A LITTLE BIT CONCERNED THAT THERE MIGHT BE A

3   RISK TO THE CREDITORS AND I SAID HE HAS ALL THESE

4   OPTIONS.  YOU SAID WHAT HE CAN DO IS JUST DIRECT

5   THE LIQUIDATOR TO CHANGE THE DETERMINATION.

6          A.    HMM.

7          Q.    ACTUALLY, THE EASIEST THING TO DO,

8   IF HE HAS THE POWER TO DO IT, IS JUST DIRECT THE

9   LIQUIDATOR TO SERVE THE CREDITOR, IS IT NOT?

10         A.    WELL, NOT REALLY BECAUSE HE IS ONLY

11  GOING TO DIRECT THE LIQUIDATOR TO SERVE THE

12  CREDITORS IF HE WANTS TO HEAR FROM THE CREDITORS.

13  IF THE COMPANY HAS BEEN DETERMINED TO BE SOLVENT,

14  THEN THE CREDITORS' VIEWS ARE NOT GIVEN ANY

15  WEIGHT.  IF I WAS THE JUDGE, I WOULD RATHER

16  I THINK HAVE -- THEN THE JUDGE IS GETTING HIMSELF

17  INTO A VERY DIFFICULT POSITION WHERE HE IS TAKING

18  INTO ACCOUNT THE VIEWS OF A CREDITOR IN A SOLVENT

19  WINDING UP WHICH GOES CONTRARY TO THE WHOLE SCHEME

20  AND ALL THE AUTHORITY IN CAYMAN AND ELSEWHERE.

21  WHY NOT JUST SAY TO THE LIQUIDATOR, LOOK, YOU

22  KNOW, THIS SOLVENCY SITUATION HERE IS NOT AS CLEAR

23  CUT AS MAYBE IT APPEARED WHEN YOU FIRST DID YOUR

24  SOLVENCY DETERMINATION.  FILE A NEW CERTIFICATE

25  AND LET US BRING THE CREDITORS IN.


72

1          Q.     RIGHT.  I THINK WE MIGHT BE GOING

2    AROUND IN CIRCLES HERE, BECAUSE I THINK THERE ARE

3    CERTAIN HYPOTHESIS THAT WERE BUILT INTO YOUR

4    EARLIER ANSWERS THAT HAVE BEEN LOST IN THE

5    SUBSEQUENT ANSWER.  I THINK YOU AGREED THAT THE

6    COURT WOULD NOT SANCTION THE EXERCISE OF A POWER

7    THAT MIGHT BE PUT THE INTEREST OF CREDITORS AT

8    RISK?

9          A.     YES.

10         Q.     SO, YOUR LIQUIDATOR TURNS UP AND HE

11   SAYS, WELL, YOU KNOW, BALANCE SHEET SOLVENT.  THIS

12   IS WHAT I WANT TO DO.  THE JUDGE SAYS, WELL, THAT

13   KIND OF SOUNDS FINE, BUT I AM JUST A LITTLE BIT

14   WORRIED ABOUT THE CREDITORS' INTEREST.  THAT WAS

15   THE SITUATION THAT WE WERE DEALING WITH, RIGHT?

16   I SUGGESTED TO YOU THAT HE HAD THREE OPTIONS:

17   REFUSE SANCTION; TELL THE LIQUIDATOR THAT HE

18   WANTED ADVERSARIAL ARGUMENT, AND SO MAKE THE

19   LIQUIDATOR BE THE VOICE OF THE CREDITOR AND MAKE

20   THE SHAREHOLDERS TURN UP BY YOURSELF OR LEARNED

21   CAYMAN COUNSEL, OR HE COULD ACTUALLY DIRECT THAT

22   THE LIQUIDATORS GIVE NOTICE OF THE APPLICATION TO

23   A CREDITOR AND THEY COULD TURN UP.  IF THEY WANTED

24   TO, OF COURSE ONCE THEY HAVE HAD NOTICE AND THEY

25   DO NOT TURN UP, THEN THAT IS THE END OF IT, BUT

73

1    THEY COULD TURN UP IF THEY WANTED TO.  I POSITED

2    THOSE THREE SITUATIONS AND YOU SAID NO, THE

3    SIMPLEST THING TO DO WOULD BE TO DIRECT THE

4    LIQUIDATOR TO CHANGE THE DETERMINATION OF

5    SOLVENCY.  SO I JUST DO NOT UNDERSTAND WHY YOU SAY

6    THAT IS SIMPLER THAN SIMPLY JUST DIRECTING, FOR

7    EXAMPLE, THE LIQUIDATOR TO GIVE NOTICE TO THE

8    CREDITORS?

9          A.     I THINK IT IS SIMPLER BECAUSE IF HE

10   WANTS TO TAKE INTO ACCOUNT THEIR INTERESTS AND THE

11   COMPANY IS STILL SOLVENT, THEN, YOU KNOW, THAT IS

12   CONTRARY TO THE SCHEME AND THE CASE LAW AND THE

13   WHOLE WEIGHT OF CAYMAN AND ENGLISH INSOLVENCY LAW,

14   WHEREAS IF IT IS OF DOUBTFUL SOLVENCY, THEN, YOU

15   KNOW, HE IS ABSOLUTELY RIGHT TO TAKE ACCOUNT OF

16   THE CREDITORS.

17         Q.     RIGHT.  I THINK I AM GOING TO MOVE

18   ON.  I AM JUST GOING TO FINISH BY SUGGESTING TO

19   YOU THAT WHERE A COMPANY IS BALANCE SHEET SOLVENT,

20   THE COURT WILL NOT SANCTION AN EXERCISE OF POWER

21   THAT MIGHT PUT THE CREDITORS' INTEREST AT RISK,

22   AND I THINK YOU AGREE WITH THAT?

23         A.     YES.

24         Q.     AND IN THAT SITUATION IT WILL

25   EITHER REFUSE SANCTION OR ASK TO HEAR ADVERSARIAL

74

1  ARGUMENT ON THE POINT OR, ALTERNATIVELY, IT WILL

2  DIRECT THAT THE CREDITORS ARE SERVED.  THOSE ARE

3  THE ONLY THREE THINGS THAT THE COURT WOULD DO IN

4  THAT SITUATION?

5          A.    NO, I DO NOT AGREE WITH THAT.

6          Q.    YOU MENTIONED REPORTING.

7          A.    MMM-HMM.

8          Q.    IN A SOLVENT LIQUIDATION, THE

9  LIQUIDATORS ARE REQUIRED TO REPORT TO THE

10 CONTRIBUTORIES?

11         A.    YES.

12         Q.    RIGHT.  NOW, CREDITORS IN A SOLVENT

13 LIQUIDATION ARE ENTITLED TO OBTAIN COPIES OF ALL

14 THE REPORTS AND ALL THE DOCUMENTS FILED BY THE

15 OFFICIAL LIQUIDATOR AT COURT, ARE THEY NOT?

16         A.    THEY ARE ENTITLED TO ACCESS THE

17 COURT FILE, YES.

18         Q.    YES.  AND JUST BECAUSE THE OFFICIAL

19 LIQUIDATOR IS NOT OBLIGED OR REQUIRED TO REPORT TO

20 THE CREDITORS DOES NOT MEAN THAT HE WILL NOT DO

21 SO, DOES IT?

22         A.    WELL, I THINK IT DOES MEAN THAT HE

23 WILL NOT DO SO.

24         Q.    HE IS JUST TOLD HE DOES NOT HAVE

25 TO, BUT IF HE THOUGHT THAT THERE WAS SOMETHING

75

1   IMPORTANT TO COMMUNICATE TO THE CREDITORS, SUCH AS

2   THE DATE ON WHICH THEY MIGHT GET PAYMENT OR HOW HE

3   WOULD LIKE THEM TO PROVE, AND I MEAN THAT IN A

4   NON-TECHNICAL SENSE, THEIR DEBTS, HE MIGHT WANT TO

5   REPORT TO THEM IN COMMUNICATION AND GIVE THEM AN

6   UPDATE ON THE LIQUIDATION, MIGHT HE NOT?

7          A.    I MEAN, HE MIGHT, BUT MY EXPERIENCE

8   OF ACTING FOR LIQUIDATORS IS THAT THEY ARE QUITE

9   CAUTIOUS IN TERMS OF WHO THEY SHARE INFORMATION

10  WITH.  SO THEY ARE ALWAYS ASTUTE OBVIOUSLY TO

11  FOLLOW THE RULES AND THE ACT AND COMPLY WITH THEIR

12  REPORTING OBLIGATIONS AS SET OUT IN THE ACT, BUT

13  THEY ARE NOT GOING TO GO BEYOND THAT, BECAUSE IF

14  THEY GO BEYOND THAT THEY MAY BREACH CAYMAN'S

15  CONFIDENTIALITY LAWS AND DATA PROTECTION LAWS, AND

16  THINGS OF THAT NATURE.  SO ----

17         Q.    SORRY.

18         A.    SO, YES, IN MY EXPERIENCE I WOULD

19  BE SURPRISED TO FIND A LIQUIDATOR GOING BEYOND HIS

20  STATUTORY REPORTING OBLIGATIONS.

21         Q.    PART OF THE LIQUIDATOR'S STATUTORY

22  REPORTING OBLIGATIONS IS TO REPORT TO THE COURT,

23  IS IT NOT?

24         A.    YES.

25         Q.    SO THAT REPORT WOULD BE FILED AT

76

1  COURT, WILL IT NOT?

2       A.    YES.

3       Q.    SO THERE IS NO REASON WHY THE

4  LIQUIDATOR WOULD NOT SEND THAT TO CREDITORS IF HE

5  THOUGHT THAT MIGHT ASSIST, IS THERE?

6       A.    WELL, THE REPORTS ARE OFTEN SEALED,

7  SO HE OBVIOUSLY WILL NOT BE SENDING ANYTHING THAT

8  IS SEALED.  IF IT IS ON THE COURT FILE AND THE

9  CREDITOR HAS ACCESS TO THE COURT FILE, THEN, YOU

10  KNOW, POSSIBLY HE COULD.  YOU KNOW, IF YOU HAVE

11  GOT A SOLVENT LIQUIDATION, THE CREDITORS ARE MEANT

12  TO BE GETTING PAID IN THE ORDINARY COURSE, SO THEY

13  SHOULD NOT HAVE NEED TO GET COPIES OF THE

14  LIQUIDATOR'S REPORTS BECAUSE THEY ARE JUST GETTING

15  PAID.  IT IS ----

16       Q.    NOT IF THEIR DEBTS ARE DISPUTED,

17  THOUGH?

18       A.    THAT IS TRUE, BUT, YOU KNOW, LIKE

19  ANY COMPANY IN LITIGATION OVER A DEBT IS NOT GOING

20  TO BE SENDING ITS INFORMATION TO THE COUNTER-PARTY

21  TO THE DISPUTE.  A COMPANY IN SOLVENT LIQUIDATION

22  VIS-À-VIS A CREDITOR IS IN THE SAME POSITION.

23       Q.    A COMPANY IN SOLVENT LIQUIDATION IS

24  STILL A CLASS REMEDY, YOU WOULD ACCEPT THAT, WOULD

25  YOU?

77

1          A.     IT IS A CLASS REMEDY FOR THE

2    BENEFIT OF THE SHAREHOLDERS.

3          Q.     ONLY BECAUSE THE ASSUMPTION IS THAT

4    THE CREDITORS ARE GOING TO BE PAID OUT IN FULL

5    WITH INTEREST?

6          A.     YES.

7          Q.     SO IT IS NOT A CLASS REMEDY FOR THE

8    BENEFIT OF THE SHAREHOLDERS BECAUSE SOMEHOW IN A

9    SOLVENT LIQUIDATION THE CREDITORS' INTEREST ARE

10   SUBORDINATED TO THOSE OF THE SHAREHOLDERS.  THAT

11   IS NOT WHAT YOU ARE SAYING?

12         A.     NO.

13         Q.     UNLESS AND UNTIL A CREDITOR,

14   WHETHER HIS CLAIM IS DISPUTED OR NOT, IS PAID, HE

15   IS STILL A CREDITOR OF THE COMPANY AND HIS

16   INTERESTS TRUMP THOSE OF THE SHAREHOLDER, DO THEY

17   NOT?

18         A.     YES.

19         Q.     AND OF COURSE A CREDITOR WHO HAS

20   NOT BEEN PAID, WHETHER IT IS DISPUTED OR NOT, WILL

21   WANT TO KNOW WHAT IS ACTUALLY HAPPENING IN THE

22   LIQUIDATION, WILL HE NOT?

23         A.     HE MAY WELL.

24         Q.     YES.  AND A LIQUIDATOR ACTING

25   NEUTRALLY MAY WELL FIND THAT IT IS APPROPRIATE NOT

78

1    TO JUST REPORT TO THE CONTRIBUTORS BUT ALSO SEND

2    EVEN IF IT IS JUST A COPY OF THE SAME REPORT TO

3    THE EXTANT CREDITORS TO KEEP THEM UP-TO-DATE?

4            A.      WELL, HE MAY.  YOU KNOW, HE MAY,

5    BUT HE MAY NOT.  IT IS A FACT SPECIFIC

6    DETERMINATION, SO I AM NOT SURE I CAN KIND OF

7    HYPOTHETICALLY SAY ----

8            Q.      I JUST WANT TO SAY IN PRINCIPLE.

9            A.      IN PRINCIPLE HE MAY.

10           Q.      IN PRINCIPLE HE MAY.  IN FACT THE

11   COURT MAY ALSO DIRECT HIM TO COMMUNICATE WITH THE

12   CREDITORS IN RELATION TO THE PROGRESS OF THE

13   LIQUIDATION, SOLVENT OR NOT, MAY IT NOT?

14           A.      I THINK THIS GETS BACK TO THE POINT

15   THAT WE HAVE ALREADY DISCUSSED IN RELATION TO

16   SANCTION APPLICATIONS, BUT I THINK IT IS UNLIKELY

17   THAT YOU WOULD HAVE A SITUATION WHERE YOU HAVE A

18   SOLVENT LIQUIDATION AND THE COURT WOULD SAY, OH,

19   BUT IN ADDITION TO YOUR OBLIGATIONS UNDER ORDER 8

20   TO REPORT TO SHAREHOLDERS, I WANT YOU TO START

21   SENDING YOUR REPORT TO THE CREDITORS AS WELL.

22   I THINK IF YOU HAVE GOT TO THAT STAGE, THEN

23   I THINK THE MORE LIKELY THING FOR THE JUDGE TO DO

24   IS TO DIRECT THE LIQUIDATOR TO CHANGE THE SOLVENCY

25   DETERMINATION OR EVEN MORE LIKELY THAN THAT THE

79

1    LIQUIDATOR WOULD DO IT HIMSELF OR HERSELF WITHOUT

2    NEEDING THE JUDGE TO TELL HIM OR HER TO DO IT.

3         Q.    I THINK WHAT YOU ARE SAYING IS THAT

4    THE SORT OF FACTUAL HYPOTHESIS THAT I AM WORKING

5    WITH IS FARFETCHED AND THAT CREDITORS' INTEREST

6    ARE JUST SIMPLY NEVER REALLY GOING TO BE AT RISK

7    EVEN IN A SOLVENT LIQUIDATION.  IS THAT WHAT YOU

8    ARE SAYING?

9         A.    YES, YES.

10        Q.    AND THAT IS BECAUSE YOU WILL ONLY

11   HAVE SOMETHING THAT IS TRULY A SOLVENT LIQUIDATION

12   WHERE THE -- I THINK YOU ARE BASICALLY SAYING IT

13   IS GUARANTEED OR ALMOST GUARANTEED THAT THE

14   CREDITORS ARE GOING TO BE PAID IN FULL WITH ALL

15   THE STATUTORY INTEREST THAT THEY ARE ENTITLED TO?

16        A.    YES.

17        Q.    BUT IF THERE WAS EVER A RISK,

18   HOWEVER SMALL, THE COURT OR THE LIQUIDATOR WOULD

19   ENSURE THAT THEY DID NOT DO ANYTHING TO HARM THE

20   CREDITORS' INTEREST UNTIL THOSE CREDITORS HAD BEEN

21   PAID IN FULL?

22        MR. MORRIS:  OBJECTION.  ASKED AND

23   ANSWERED MANY TIMES.

24        A.    YES.

25   BY MISS LEAHY:

80

KATHARINE LUCY BLADEN PEARSON

1          Q.     IN YOUR DECLARATION, YOU CAN TURN

2   IT UP IF YOU LIKE, IF YOU GO TO PAGE 21, PARAGRAPH

3   72, CAN YOU JUST REMIND YOURSELF OF THE CONTENT?

4   (PAUSE)

5          A.     YES.

6          Q.     YOU SAY, "MR. ROBINSON DOES NOT

7   EXPLAIN THAT THE CREDITORS OF ASCENTRA ARE IN FACT

8   BARRED AS A MATTER OF LAW FROM PARTICIPATING IN

9   THE WINDING UP."

10         A.     YES.

11         Q.     WE HAVE ALREADY ESTABLISHED THAT

12  CREDITORS OF A SOLVENT LIQUIDATION GET NOTICE OF

13  THE LIQUIDATION, RIGHT?

14         A.     YES.

15         Q.     AND WE HAVE ALREADY ESTABLISHED, AS

16  YOUR COUNSEL HAS POINTED OUT, THAT IN A SOLVENT

17  LIQUIDATION NEITHER THE COURT NOR THE LIQUIDATOR

18  WILL DO ANYTHING TO HARM THE INTEREST OF THE

19  CREDITORS, RIGHT?

20         A.     YES.

21         Q.     AND WE HAVE ALSO ESTABLISHED THAT A

22  CREDITOR IN A SOLVENT LIQUIDATION HAS STANDING TO

23  MAKE A REMOVAL APPLICATION?

24         A.     ALTHOUGH ITS VIEWS WILL BE GIVEN

25  LITTLE TO NO WEIGHT.

81

1          Q.      IT IS GOT STANDING TO MAKE A

2     REMOVAL APPLICATION?

3          A.      YES.

4          Q.      SO YOU ARE ACTUALLY WRONG TO SAY

5     THAT THE CREDITORS ARE BARRED FROM PARTICIPATION

6     IN THE WINDING UP, ARE YOU NOT, BECAUSE THAT

7     SUGGESTS THAT THERE IS JUST SIMPLY NO -- THEY HAVE

8     NO ABILITY TO PARTICIPATE AT ALL IN THE WINDING UP

9     PROCESS.  BUT THAT IS NOT QUITE RIGHT, IS IT?

10          A.      WELL, I THINK THE ONLY ABILITY THAT

11    YOU HAVE POINTED OUT AFTER THE COMPANY GOES INTO

12    LIQUIDATION IS THE ABILITY IN SECTION 107 TO BRING

13    A REMOVAL APPLICATION, BUT THEN, YOU KNOW, THAT IS

14    ONE OF THOSE CASES WHERE, OKAY, TECHNICALLY THEY

15    MIGHT BE ABLE TO DO IT BUT THE COURT IS NOT GOING

16    TO GIVE THEIR VIEWS ANY WEIGHT.  I MEAN, IF YOU

17    CALL THAT PARTICIPATING, IF YOU CALL THE RIGHT TO

18    BRING A REMOVAL APPLICATION ON WHICH THE COURT IS

19    NOT GOING TO GIVE YOUR VIEWS ANY WEIGHT, A RIGHT

20    TO PARTICIPATE IN THE WINDING UP, THEN, YES,

21    I AGREE WITH YOU, BUT I DO NOT THINK THAT IS

22    REALLY WHAT YOU MEAN BY -- WHAT ONE WOULD MEAN BY

23    PARTICIPATING IN THE WINDING UP.  IT IS CERTAINLY

24    NOT WHAT I MEANT.  PARTICIPATING IN THE WINDING UP

25    IS RECEIVING THE LIQUIDATOR'S REPORTS, IT IS

82

1    SITTING ON THE LIQUIDATION COMMITTEE, IT IS BEING

2    HEARD ON SANCTION APPLICATIONS AND GETTING NOTICE

3    OF THOSE APPLICATIONS.

4         Q.    WHAT ABOUT BEING ABLE TO APPEAL TO

5    THE COURT A REJECTION OF YOUR PROOF OF DEBT?

6         A.    WELL, I MEAN, YOU ARE ONLY ENTITLED

7    TO SUBMIT A PROOF OF DEBT IF THE LIQUIDATOR

8    INVITES YOU TO SUBMIT ONE, WHICH HE IS ONLY ABLE

9    TO DO IN THE LIMITED CIRCUMSTANCES SET OUT IN

10   ORDER 16, RULE 1(3), WHICH IS WHERE THERE IS A

11   DOUBT OR DISPUTE ABOUT THE EXISTENCE OF THE DEBT

12   OR THE AMOUNT OWING.  SO, THE VAST MAJORITY OF

13   CREDITORS IN A SOLVENT LIQUIDATION WOULD NOT GET

14   ANYWHERE NEAR THE PROOF OF DEBT PROCEDURE BECAUSE

15   THEY ARE JUST PAID IN THE ORDINARY COURSE.

16        Q.    YES.  I MEAN, IF THE DEBT IS

17   ADMITTED IN FULL AND IT IS PAID IN FULL, THEY DO

18   NOT NEED TO PARTICIPATE IN THE WINDING UP, DO

19   THEY?

20        A.    NO.

21        Q.    SO THE ONLY PEOPLE WHO MIGHT WANT

22   TO PARTICIPATE IN THE WINDING UP ARE THOSE WHO

23   DEBTS ARE DISPUTED, RIGHT, OR WHO HAVE NOT BEEN

24   PAID?  THEY ARE THE PEOPLE WHO WOULD WANT TO

25   PARTICIPATE, RIGHT?

83

1          A.     YES, THE PEOPLE WHO HAVE NOT BEEN

2     PAID, YES.

3          Q.     YES.  AND THEY CAN PARTICIPATE, CAN

4     THEY NOT, BECAUSE NOT ONLY HAVE WE GOT REMOVAL, WE

5     ALSO GOT THE PROOF OF DEBT PROCEDURE.  WE HAVE

6     ALSO GOT SECTION 97 AND ----

7          A.     REMOVAL WE ALREADY TALKED ABOUT.

8     THE PROOF OF DEBT PROCEDURE ONLY KICKS IN IF THE

9     LIQUIDATOR INVITES THEM TO SUBMIT A PROOF OF DEBT,

10    SO, YOU KNOW, THAT REQUIRES A STEP BY THE

11    LIQUIDATOR FIRST.

12         Q.     PAUSING JUST THERE, HE WILL REQUIRE

13    A PROOF OF DEBT IF THE DEBT IS DISPUTED, WILL HE

14    NOT?

15         A.     HE CAN.  HE DOES NOT HAVE TO, BUT

16    HE CAN.

17         Q.     WHAT WOULD HE DO THEN?  WHAT ELSE

18    WOULD HE DO IF HE DISPUTES THE DEBT?

19         A.     HE COULD LET THE CREDITOR -- HE

20    COULD JUST NOT PAY IT AND LET THE CREDITOR APPLY

21    FOR A LIFTING OF THE STAY AND SUE THE COMPANY.

22         Q.     YES, AND THEN THE CREDITOR HAS

23    ACCESS TO COURT.  SO IT IS PARTICIPATING IN THE

24    LIQUIDATION, IS IT NOT?

25         A.     NO, BECAUSE THAT WOULD BE A

84

1   SEPARATE ACTION OUTSIDE OF THE LIQUIDATION.  THAT

2   WOULD NOT BE PART OF THE LIQUIDATION AT ALL.

3        Q.    SECTION 97 IS NOT A SEPARATE

4   APPLICATION OUTSIDE THE LIQUIDATION.  IT IS AN

5   APPLICATION IN THE LIQUIDATION, IS IT NOT?

6        A.    YES, OKAY, THE SECTION 97

7   APPLICATION WOULD BE TO LIFT THE STAY ----

8        Q.    YES.

9        A.    ---- THAT IS IMPOSED AS A RESULT,

10  BUT THE POINT OF THAT APPLICATION WOULD BE TO

11  BRING A SEPARATE CLAIM THAT WOULD BE HEARD OUTSIDE

12  THE LIQUIDATION.

13       Q.    CAN I ASK YOU WHY YOU HAVE

14  SUGGESTED THAT MR. ROBINSON OUGHT TO HAVE BROUGHT

15  TO THE ATTENTION OF THE US COURT THE FACT THAT YOU

16  SAY CREDITORS ARE BARRED FROM PARTICIPATING IN THE

17  WINDING UP?  WHY DO YOU THINK IT WAS IMPORTANT

18  THAT HE BROUGHT THAT PARTICULAR, YOU SAY IS A FACT

19  OF CAYMAN LAW, TO THE ATTENTION OF THE NEW YORK

20  COURT?

21       A.    I THINK THE PARAGRAPHS THAT I HAVE

22  IDENTIFIED AT PARAGRAPHS 72 AND 73 AND 74 AS WELL

23  ARE MISLEADING.  SHALL WE TAKE THEM ONE BY ONE?

24       Q.    IF YOU COULD JUST SUMMARISE WHY

25  THEY ARE MISLEADING?  PARTICULARLY, I AM MUCH MORE

85

1   INTERESTED AT THE MOMENT IN TRYING TO CONCENTRATE

2   ON THE PARAGRAPH WE WERE JUST LOOKING AT.  DO YOU

3   SAY THAT PARAGRAPH ON ITS OWN IS MISLEADING OR IS

4   IT THE COMBINED EFFECT OF VARIOUS PARAGRAPHS OF

5   MR. ROBINSON'S DECLARATION THAT YOU SAY ARE

6   MISLEADING?

7          A.    DO YOU HAVE A COPY OF

8   MR. ROBINSON'S DECLARATION?

9          Q.    WE DO.  WE CAN PUT IT IN AS AN

10  EXHIBIT.  CAN I CHECK, DID YOU DRAFT THAT SECTION

11  OF YOUR REPORT, SAYING THAT MR. ROBINSON'S

12  DECLARATION WAS MISLEADING, OR WAS THE FIRST DRAFT

13  PREPARED BY THE BARRISTER AT WILBERFORCE CHAMBERS?

14         A.    THE FIRST DRAFT OF THE WHOLE THING

15  WAS PREPARED BY GRAEME HALKERSTON, BUT I WENT

16  THROUGH IT VERY CAREFULLY MYSELF AND SATISFIED

17  MYSELF OF IT OBVIOUSLY BEFORE SIGNING IT.

18         Q.    YOU ARE NOT ALLEGING, ARE YOU, THAT

19  MR. ROBINSON DELIBERATELY SOUGHT TO MISLEAD THE US

20  COURT, ARE YOU?

21         A.    NO, OF COURSE NOT.

22         Q.    THIS IS EXHIBIT 4.

23      (EXHIBIT 4 MARKED FOR IDENTIFICATION)

24         A.    THANK YOU.  OKAY, AT PARAGRAPH 72

25  WE ARE REFERRING TO PARAGRAPH 27 OF MR. ROBINSON'S

1   DECLARATION.  I THINK WHAT IS MISLEADING THERE IS

2   THE STATEMENT THAT "ALL MAJOR STAKEHOLDERS ARE

3   ACTIVELY PARTICIPATING IN THE CAYMAN PROCEEDING",

4   BECAUSE I THINK IN THE ORDINARY READING OF THE

5   WORD "STAKEHOLDERS", CERTAINLY AS A CAYMAN

6   INSOLVENCY LAWYER, AND I WOULD SURMISE THE SAME

7   FOR THE US BANKRUPTCY COURT, YOU WOULD READ

8   STAKEHOLDERS AS MEANING CREDITORS AND

9   SHAREHOLDERS.  IN FACT CREDITORS ARE NOT

10  PARTICIPATING IN THE CAYMAN PROCEEDING.

11          Q.    OKAY.  JUST PAUSING THERE ----

12          A.    YES.

13          Q.    ---- THE FIRST QUESTION IS, DO YOU

14  KNOW WHETHER ANY CREDITORS HAVE SUBMITTED PROOF,

15  FORMAL OR INFORMAL, IN THE LIQUIDATION OF

16  ASCENTRA?

17          A.    NO, I DO NOT.

18          Q.    SO YOU DO NOT KNOW FOR A FACT THAT

19  CREDITORS ARE NOT PARTICIPATING IN THE LIQUIDATION

20  OF ASCENTRA, DO YOU?

21          A.    NO.

22          Q.    RIGHT.  THEN IN TERMS OF MAJOR

23  STAKEHOLDERS, ARE YOU AWARE OF WHAT THE SIZE OF

24  THE CREDITOR BODY IS?

25          A.    NO.

87

1        Q.      NO.  SO YOU DO NOT KNOW WHETHER ANY

2   CREDITORS COULD BE CONSIDERED MAJOR STAKEHOLDERS

3   OF ASCENTRA, DO YOU?

4        A.      NO.

5        Q.      SO HOW CAN YOU SAY THAT

6   MR. ROBINSON'S STATEMENT IS MISLEADING?

7        A.      WELL, BECAUSE I AM FAMILIAR WITH

8   THE CAYMAN PROCESS AND I KNOW THAT CREDITORS ARE

9   NOT ABLE TO ACTIVELY PARTICIPATE IN THE SOLVENT

10  LIQUIDATION OF A CAYMAN ISLANDS COMPANY.

11       Q.      BUT YOU JUST TOLD ME YOU DID NOT

12  KNOW WHETHER ANY CREDITORS WERE MAJOR

13  STAKEHOLDERS?

14       A.      THAT IS TRUE.  OKAY, SO IF MAJOR

15  STAKEHOLDERS -- IF ALL THE STAKEHOLDERS ARE

16  SHAREHOLDERS, AND THERE ARE NO ----

17       Q.      I DID NOT SAY THAT.

18       A.      OKAY.

19       Q.      I SAID YOU DO NOT KNOW.  THERE IS

20  NO EVIDENCE AS TO WHETHER THERE ARE ANY CREDITORS

21  THAT WOULD CONSTITUTE A MAJOR STAKEHOLDER.

22       A.      I AM NOT FAMILIAR WITH THE FACTS OF

23  THE CASE AND THE CONSTITUENTS IN THE LIQUIDATION,

24  THAT IS RIGHT.

25       Q.      AND WOULD YOU ACCEPT THAT UNLESS

KATHARINE LUCY BLADEN PEARSON

1    YOU KNEW THAT THERE WERE CREDITORS WHO WERE OWED

2    SUBSTANTIAL SUMS OF MONEY, VERY SUBSTANTIAL SUMS

3    OF MONEY, THEN YOU SHOULD NOT BE SUGGESTING THAT

4    MR. ROBINSON'S STATEMENT IS MISLEADING WHEN HE

5    REFERS TO MAJOR STAKEHOLDERS?

6              MR. MORRIS:  OBJECTION TO THE FORM

7    OF THE QUESTION.

8              MR. MCDONALD:  I AM SORRY, JUST

9    READ THAT AGAIN.  HE OBJECTED WHILE YOU WERE

10   SPEAKING.  IF YOU COULD HOLD YOUR OBJECTION UNTIL

11   SHE FINISHES HER QUESTION, THAT WOULD BE HELP.

12             MR. MORRIS:  SUPER.

13             MR. MCDONALD:  OKAY?  THANK YOU.

14   BY MISS LEAHY:

15        Q.    DO YOU ACCEPT THAT UNLESS YOU HAD

16   KNOWLEDGE OF THE FACT THAT THERE WERE CREDITORS

17   WHO WERE OWED SUBSTANTIAL SUMS OF MONEY BY THE

18   COMPANY THEN YOU SHOULD NOT BE SUGGESTING IN YOUR

19   DECLARATION THAT MR. ROBINSON'S STATEMENT IS

20   MISLEADING WHEN HE REFERS TO MAJOR STAKEHOLDERS?

21             MR. MORRIS:  OBJECTION TO THE FORM

22   OF THE QUESTION.

23        A.    WELL, I STILL THINK TO ME THE WORD

24   "STAKEHOLDERS" CARRIES THE CONNOTATION OF

25   CREDITORS AND SHAREHOLDERS.  IF IT WERE THE CASE

89

1   THAT THERE WERE NO CREDITORS AND IT WAS ONLY

2   SHAREHOLDERS THAT HAD AN INTEREST IN THIS COMPANY,

3   WHY WOULD YOU NOT JUST SAY ALL THE SHAREHOLDERS

4   ARE ACTIVELY PARTICIPATING?

5   BY MISS LEAHY:

6          Q.    CAN WE LOOK AT THE DECLARATION THAT

7   YOU MADE IN TCA GLOBAL?

8          A.    OKAY.

9          Q.    DO YOU RECALL THAT?

10         A.    WHICH ONE?  CAN I SEE A COPY OF IT?

11         Q.    YES, WE WILL SHOW IT TO YOU.  I DID

12  NOT KNOW YOU HAD MADE MANY.  I HAVE ONLY SEEN ONE.

13         A.    I HAVE MADE TWO.

14         Q.    YOU HAVE MADE TWO.  THIS IS EXHIBIT

15  5.

16         (EXHIBIT 5 MARKED FOR IDENTIFICATION)

17         A.    THANK YOU.

18         Q.    DOES THIS LOOK FAMILIAR?

19         A.    YES.

20         Q.    MY UNDERSTANDING IS THIS WAS AN

21  INSOLVENT LIQUIDATION, NOT A SOLVENT LIQUIDATION.

22         A.    IT IS OF DOUBTFUL SOLVENCY.

23         Q.    DOUBTFUL SOLVENCY?

24         A.    YES.

25         Q.    OKAY.  WHERE DOES YOUR DECLARATION

90

1   STATE THAT IT IS OF DOUBTFUL SOLVENCY?

2           A.     I WILL NEED TO READ THIS.  THIS IS

3   SOMETHING THAT I SIGNED TWO AND A HALF YEARS AGO.

4   DO YOU WANT ME TO READ IT?

5           Q.     NO, FAIR ENOUGH.  I JUST DID NOT

6   SEE A REFERENCE TO THAT.  DO YOU RECALL WHETHER

7   ULTIMATELY IT WAS SOLVENT OR INSOLVENT AT THE END

8   OF THE ----

9           A.     IT IS STILL GOING ON.

10          Q.     IT IS STILL GOING ON.  THEY HAVE

11  NOT MADE ANOTHER DETERMINATION?

12          A.     NO.

13          Q.     AND THE DETERMINATION, THE FORMAL

14  DETERMINATION WAS DOUBTFUL?

15          A.     YES.

16          Q.     DID IT CHANGE AT ANY POINT?

17          A.     NO.

18          Q.     I AM GOING TO HAVE TO COME BACK TO

19  THAT BECAUSE I HAVE LOST MY REFERENCE.

20          A.     OKAY.

21          Q.     I WILL COME BACK TO THAT IN A

22  MOMENT.  CAN WE TAKE ANOTHER FIVE-MINUTE BREAK,

23  BECAUSE I JUST WANT TO FIND MY REFERENCE RATHER

24  THAN GOING OUT ----

25          A.     SURE.

91

1              MR. MORRIS:  SURE.

2              MISS LEAHY:  LET US SAY 10 MINUTES,

3    BECAUSE BY THE TIME WE ALL GET OUT OF THE ROOM AND

4    GET BACK IN, WE NEED TO TAKE THAT.

5         A.    SURE.

6              THE COURT REPORTER:  WE ARE GOING

7    OFF THE RECORD AT 12.17 P.M.

8       (A SHORT BREAK FROM 12.17 P.M. TO 12.35 P.M.)

9              THE COURT REPORTER:  WE ARE GOING

10   BACK ON THE RECORD AT 12.35 P.M.

11   BY MISS LEAHY:

12        Q.    MISS PEARSON, YOU WILL RECALL

13   EARLIER THIS MORNING WE WERE HAVING A DISCUSSION

14   ABOUT WHAT TEST THE LIQUIDATOR SHOULD APPLY WHEN

15   HE IS SUMMARILY DETERMINING WHETHER A COMPANY IS

16   SOLVENT, INSOLVENT OR OF DOUBTFUL SOLVENCY?

17        A.    YES.

18        Q.    AND I SUGGESTED TO YOU THAT HE

19   WOULD HAVE TO APPLY A BALANCE SHEET TEST, DO YOU

20   RECALL?

21        A.    MMM-HMM.

22        Q.    I THINK YOU DISAGREED WITH ME ON

23   THAT?

24        A.    WELL, I DO NOT KNOW.  I DO NOT

25   RECALL.

92

KATHARINE LUCY BLADEN PEARSON

1    Q.    DO YOU HAVE A VIEW ON IT?

2         A.    HONESTLY, IT IS SOMETHING THAT I

3    WOULD WANT TO GO AWAY AND THINK ABOUT IN AN IDEAL

4    WORLD.  I THINK YOU ARE PROBABLY RIGHT THAT IT IS

5    A BALANCE SHEET TEST.

6         Q.    YES.

7         A.    BUT THE GENERAL TEST FOR INSOLVENCY

8    UNDER CAYMAN LAW, YOU KNOW, IS IT IS A CASH FLOW

9    TEST BUT THERE IS AN ELEMENT OF FUTURITY TO IT AS

10   WELL.  I THINK YOU ARE RIGHT THAT IT IS BASICALLY

11   A BALANCE SHEET TEST, BUT I WOULD NOT WANT TO SAY

12   DEFINITIVELY THAT IT IS BALANCE SHEET.  YOU ARE

13   GOING TO A SHOW ME SOMETHING NOW THAT SAYS ----

14        Q.    I AM GOING TO BE HELPFUL AND I AM

15   GOING TO SHOW YOU A DECISION OF MR. ANDREW JONES.

16        A.    OKAY.

17        Q.    IT WAS IN THE HERALD LIQUIDATION,

18   WHICH I THINK YOU MIGHT BE FAMILIAR WITH.

19        A.    OKAY.  YES.

20      (EXHIBIT 6 MARKED FOR IDENTIFICATION)

21        Q.    I THINK THE QUICKEST THING TO DO IS

22   IF I COULD ASK YOU TO LOOK AT PARAGRAPH 5, AND IF

23   YOU WOULD NOT MIND READING THE WHOLE OF PARAGRAPH

24   5 TO YOURSELF?  (PAUSE FOR READING)

25        A.    OKAY.

93

1          Q.     I WAS ALSO GOING TO INVITE YOU TO

2     READ PARAGRAPH 9(3) ON PAGE 6?  (PAUSE FOR

3     READING)

4          A.     WHICH WAS THE OTHER PARAGRAPH?

5     I HAVE READ PARAGRAPH 5.

6          Q.     THANK YOU.  AND 9(3) ON PAGE 6.

7     (PAUSE FOR READING)

8          A.     CAN I QUICKLY READ THE REST OF IT?

9          Q.     ABSOLUTELY, FEEL FREE.  (PAUSE FOR

10    READING)

11         A.     OKAY.

12         Q.     THANK YOU.  I WANT TO DRAW OUT TWO

13    POINTS FROM THAT DECISION.

14         A.     YES.

15         Q.     THE FIRST IS THAT THE JUDGE THERE

16    CONSIDERED THAT THE APPROPRIATE TEST TO APPLY WAS

17    A BALANCE SHEET TEST.

18         A.     YES.

19         Q.     THAT IS POINT NUMBER 1.  POINT

20    NUMBER 2 IS HE SAID THAT DOUBTFUL SOLVENCY IS NOT

21    A FALL-BACK POSITION.  HOWEVER HARD THE

22    DETERMINATION IS, YOU SHOULD TRY TO MAKE IT.

23         A.     YES.

24         Q.     AND WOULD YOU AGREE WITH ME THAT

25    THAT IS BECAUSE IT IS ACTUALLY A QUITE IMPORTANT

94

1    DECISION IN TERMS OF WHO GETS TO SIT ON THE

2    LIQUIDATION COMMITTEE?

3            A.      YES, IT IS A FUNDAMENTAL DECISION.

4            Q.      IN LIGHT OF THIS AUTHORITY, I JUST

5    WANT US TO REVISIT A DISCUSSION WE HAD EARLIER

6    ABOUT THE REAL ESTATE COMPANY.

7            A.      OKAY.

8            Q.      DO YOU RECALL THAT IS A REAL ESTATE

9    COMPANY AND IT IS IN SOLVENT LIQUIDATION, AND ALL

10   THE LIQUIDATOR HAS TO DO IS TO SELL OFF ALL ITS

11   PROPERTY.  THAT IS THE FACTUAL HYPOTHESIS THAT WE

12   ARE WORKING ON.  HE HAD NOT AS YET BEEN ABLE TO

13   SELL OFF THE PROPERTY AND SO HE WAS NOT ABLE TO

14   PAY THE CREDITORS AS THEIR DEBTS FELL DUE.

15           A.      YES.

16           Q.      AND THEY ALL WERE GOING TO HAVE TO

17   WAIT UNTIL THE PROPERTY WAS REALISED?

18           A.      MMM-HMM.

19           Q.      NOW, BY THIS AUTHORITY, DO YOU

20   ACCEPT THAT THAT COMPANY SHOULD HAVE BEEN

21   DETERMINED AS SOLVENT FOR THE PURPOSES OF ORDER 8?

22           A.      IF YOU FOLLOW THE APPROACH THAT

23   JONES TOOK IN THIS CASE, THEN YES.

24           Q.      AND IF THE LIQUIDATOR WAS

25   PROPOSING, WHILE HE WAS WAITING FOR THE REAL

95

1   ESTATE TO BE REALISED, TO COMMENCE LITIGATION

2   AGAINST A THIRD PARTY, WHICH IF UNSUCCESSFUL WOULD

3   MEAN THAT THE CREDITORS WOULD NOT RECEIVE

4   STATUTORY INTEREST IN THAT SITUATION, WOULD YOU

5   AGREE THAT THE COMPANY IS STILL SOLVENT?

6         A.    WELL, I THINK THAT IS A VERY

7   DIFFICULT QUESTION TO ANSWER IN THE HYPOTHETICAL.

8   YOU ARE SAYING IF HE WAS CONSIDERING COMMENCING

9   ----

10        Q.    HE HAS NOT STARTED THE LITIGATION.

11        A.    OKAY.

12        Q.    HE IS CONSIDERING STARTING THE

13   LITIGATION?

14        A.    BUT OBVIOUSLY, YOU KNOW, THE

15   LIQUIDATOR IN THAT CASE NEEDS TO MAKE AN

16   ASSESSMENT.  IS HE GOING TO START ----

17        Q.    YES.

18        A.    ---- THE LITIGATION?

19        Q.    YES.

20        A.    THAT IS THE FIRST VARIABLE, AND

21   THEN THERE IS AN ASSESSMENT OF THE PROSPECTS, THE

22   MERITS OF THE LITIGATION.

23        Q.    WHAT DOES HE TELL THE COURT WHEN HE

24   GOES FOR SANCTION?  HE HAS TO GO FOR SANCTION TO

25   COMMENCE ----

96

1           A.      HE HAS TO GO FOR SANCTION.  ON THE

2    SANCTION APPLICATION, HE OBVIOUSLY HAS TO DRAW THE

3    COURT'S ATTENTION TO THE MERITS OF THE LITIGATION

4    AND THE ADVICE THAT HE HAS RECEIVED ON THAT.

5    SORRY, WHAT IS YOUR QUESTION?  WHAT DOES HE TELL

6    THE COURT?

7           Q.      YES.  IS HE TELLING THE COURT THAT

8    THIS IS A SOLVENT LIQUIDATION AND THAT THE COURT

9    ONLY NEEDS TO TAKE INTO ACCOUNT THE INTEREST OF

10   THE SHAREHOLDERS?

11               MR. MORRIS:  I AM GOING TO OBJECT

12   TO THE HYPOTHETICAL AS INCOMPLETE.

13               MISS LEAHY:  I WILL HAVE TO READ MY

14   QUESTION.

15               MR. MORRIS:  I CAN ELABORATE IF YOU

16   WOULD LIKE, BUT I DO NOT WANT TO SCUTTLE THE

17   RECORD IF YOU DO NOT WANT ME TO.

18   BY MISS LEAHY:

19           Q.      THE LIQUIDATOR GOES TO COURT FOR

20   SANCTION ----

21           A.      MMM-HMM.

22           Q.      ---- TO COMMENCE LITIGATION.

23           A.      OKAY.

24           Q.      HE SAYS I WOULD LIKE TO COMMENCE

25   THIS LITIGATION.

97

1          A.     YES.

2          Q.     PROSPECTS OF SUCCESS ARE 65%.

3          A.     OKAY.

4          Q.     IF I BRING THIS LITIGATION AND

5    SUCCEED, THE SHAREHOLDERS ARE GOING TO GET 50P IN

6    THE POUND.

7          A.     MMM-HMM.

8          Q.     IF I DO NOT BRING THIS LITIGATION,

9    THE SHAREHOLDERS ARE ONLY GOING TO GET 25P IN THE

10   POUNDS, SAY.

11         A.     MMM-HMM.

12         Q.     IF I BRING THIS LITIGATION AND

13   LOSE, I MAY NOT HAVE SUFFICIENT MONEY TO PAY THE

14   CREDITORS' INTEREST ON THEIR DEBTS.  WHEN HE GOES

15   TO COURT, DOES HE TELL THE COURT, I HAVE

16   DETERMINED THAT IT IS SOLVENT AND YOU ONLY NEED TO

17   TAKE INTO ACCOUNT THE INTEREST OF THE

18   SHAREHOLDERS?

19         A.     SO AT THIS POINT HE IS ALREADY GOT

20   A LIQUIDATION COMMITTEE, WHICH IS MADE UP OF

21   SHAREHOLDERS ONLY, BECAUSE HE HAS ALREADY

22   DETERMINED THE COMPANY TO BE SOLVENT.

23         Q.     YES.

24         A.     SO BEFORE MAKING HIS SANCTION

25   APPLICATION HE WILL HAVE CONSULTED WITH THAT

1   LIQUIDATION COMMITTEE.  SO PROBABLY IN HIS

2   SANCTION APPLICATION HE IS GOING TO TELL THE COURT

3   WHAT THE LIQUIDATION COMMITTEE THINKS.  HE IS

4   GOING TO TELL THEM THE ADVICE THAT HE HAS RECEIVED

5   ON THE MERITS.  WHAT IS YOUR QUESTION?

6        Q.    WHAT IS HE GOING TO SAY ABOUT THE

7   INTEREST OF CREDITORS?  THAT IS ALL I AM TRYING TO

8   GET TO IN THIS SITUATION, BECAUSE YOU HAVE SAID ON

9   A NUMBER OF OCCASIONS, LOOK, ONCE WE ARE IN A

10  SOLVENT LIQUIDATION, THE LIQUIDATOR ACTS IN THE

11  INTEREST OF THE SHAREHOLDERS.  SO WHAT I AM TRYING

12  TO POSIT TO YOU IS THE SLIGHTLY COMPLICATED

13  SITUATION ----

14       A.    YES.

15       Q.    ---- AND SAY HE IS ON HIS SANCTION

16  APPLICATION, YOU SAY CREDITORS HAVE NO RIGHT TO BE

17  HEARD, HOW ARE CREDITORS PROTECTED IN THIS

18  SITUATION?  THAT IS WHAT I AM TRYING TO

19  UNDERSTAND.

20       A.    HMM, YES.  I THINK THE PROTECTION

21  FOR THE CREDITORS IS THE OBLIGATION ON THE

22  LIQUIDATOR TO KEEP HIS OR HER SOLVENCY

23  DETERMINATION UNDER REVIEW.  SO, IN A SITUATION

24  LIKE YOUR HYPOTHETICAL WHERE THE LIQUIDATOR HAS

25  DECIDED TO BRING LITIGATION AND THE EFFECT OF

99

1   COMMENCING THE LITIGATION IS THAT THERE IS NOW A

2   RISK, WHICH THERE WAS NOT BEFORE, THAT CREDITORS

3   MAY NOT BE PAID IN FULL, THEN THAT IS A POINT AT

4   WHICH THE LIQUIDATOR SHOULD BE CONSIDERING

5   CHANGING HIS DETERMINATION FROM SOLVENT TO

6   DOUBTFUL SOLVENCY.

7          Q.     ARE YOU SAYING THAT HE SHOULD MAKE

8   THE DETERMINATION BEFORE HE GOES TO COURT FOR

9   SANCTION OR AFTER HE GETS SANCTION?

10         A.     ERM ----

11         Q.     PUT IT THIS WAY.  IF HE DOES NOT

12  MAKE THE DETERMINATION BEFORE HE GOES TO COURT, ON

13  YOUR EVIDENCE CREDITORS DO NOT GET A SAY?

14         A.     YES, CORRECT.  SO IT SHOULD BE

15  BEFORE SO THAT CREDITORS HAVE THE RIGHT TO BE

16  HEARD ON THE QUESTION OF WHETHER THE LITIGATION IS

17  COMMENCED.

18         Q.     AND THEN THE COURT HAS TO MAKE A

19  DETERMINATION AND THE COURT RULES THAT IT IS NOT

20  GOING TO GRANT SANCTION.  THAT IS THE ASSUMPTION.

21  IS IT YOUR POSITION THEN THAT THE LIQUIDATOR WOULD

22  HAVE TO CHANGE HIS DETERMINATION IMMEDIATELY AGAIN

23  AFTER THAT RULING CAME OUT AND DETERMINE THAT THE

24  COMPANY WAS SOLVENT BECAUSE HE WAS NOT BRINGING

25  THE LITIGATION?

1          A.      SORRY, I AM GETTING A BIT -- I AM

2    TRYING TO KEEP UP WITH ALL MY ASSUMPTIONS.  I AM

3    ASSUMING THAT HE HAS BROUGHT HIS SANCTION

4    APPLICATION AND THE SANCTION HAS BEEN REFUSED, SO

5    HE IS NOT GOING TO BRING HIS LITIGATION, BUT HE

6    STILL HAS ALL OF HIS PROPERTIES THAT HE IS GOING

7    TO SELL.  YES, I MEAN, AT FIRST BLUSH WITHOUT

8    GIVING THIS SITUATION THE PROPER CONSIDERATION

9    THAT I WOULD IF IT AROSE DURING THE COURSE OF MY

10   PRACTICE, AT FIRST BLUSH MY IMPRESSION IS YES.

11          Q.      I WILL JUST BREAK IT DOWN AGAIN SO

12   THAT YOU ARE COMFORTABLE WITH THE QUESTION BECAUSE

13   I CAN APPRECIATE THERE HAVE BEEN A LOT OF

14   DIFFERENT HYPOTHESES THERE.

15          A.      OKAY.

16          Q.      TO GO OVER IT AGAIN, THE LIQUIDATOR

17   HAS DETERMINED THAT THE COMPANY IS SOLVENT.

18          A.      YES.

19          Q.      BUT HE WANTS TO BRING THIS

20   LITIGATION AND THAT PUTS THE SOLVENCY AT RISK.

21          A.      MMM-HMM.

22          Q.      SO YOU HAVE SAID IN THAT SITUATION

23   THE SENSIBLE THING FOR HIM TO DO WOULD BE TO

24   DETERMINE THAT THE COMPANY WAS OF INSOLVENT OR

25   DOUBTFUL SOLVENCY ----

101

```
 1              A.      MMM-HMM.

 2              Q.      ---- AND THEN MAKE AN APPLICATION

 3      FOR SANCTION TO COURT.

 4              A.      YES.

 5              Q.      THEN MY NEXT PART OF THE HYPOTHESIS

 6      WAS THE COURT HAS RULED THAT HE SHOULD NOT HAVE

 7      SANCTION.

 8              A.      MMM-HMM.

 9              Q.      IT FOLLOWS THAT HE IS NOT GOING TO

10      BE BRINGING THE LITIGATION.  SO IT FOLLOWS THAT

11      THIS RISK OF INSOLVENCY THAT THE LIQUIDATOR WAS

12      TRYING TO ADDRESS WHEN HE MADE HIS REDETERMINATION

13      IS NO LONGER THERE.

14              A.      HMM.

15              Q.      ALL I WANTED TO KNOW IS WHETHER IN

16      THAT SITUATION THE LIQUIDATOR SHOULD THEN MAKE A

17      FURTHER REDETERMINATION?

18              A.      OKAY.

19              Q.      DOES THAT MAKE SENSE?

20              A.      YES.

21              Q.      IS THAT CLEARER?

22              A.      YES.

23              Q.      OKAY.  YOU WOULD SAY YES, HE

24      SHOULD?

25              A.      YES.  I MEAN, AT FIRST BLUSH, YOU
```

1   KNOW, ASSUMING ALL OF THIS AND DOING IT

2   HYPOTHETICALLY IN THIS VERY ARTIFICIAL SITUATION,

3   YES, BUT, YOU KNOW, IN REAL LIFE YOU WOULD GIVE IT

4   A LOT MORE CONSIDERATION AND YOU WOULD HAVE A LOT

5   MORE FACTS AT YOUR FINGER TIPS, BUT IN PRINCIPLE,

6   YES.

7        Q.    IN REAL LIFE IN FACT A LIQUIDATOR

8   WOULD NOT GO TO ALL THIS TROUBLE OF DETERMINING

9   AND REDETERMINING.  WHAT HE WOULD DO IS INVITE THE

10  COURT TO DIRECT THAT THE CREDITORS BE SERVED SO

11  THEY COULD MAKE REPRESENTATIONS IF THEY WISHED TO.

12  IS THAT NOT WHAT HE WOULD DO IN REAL LIFE?

13       A.     IN REAL LIFE, IN MY EXPERIENCE,

14  I KNOW EXACTLY WHAT JONES SAID IN THE HERALD

15  DECISION THAT YOU HAVE JUST SHOWN ME THAT THE

16  LIQUIDATOR SHOULD NOT DO, BUT IN MY EXPERIENCE

17  THEY OFTEN GO WITH A DOUBTFUL SOLVENCY

18  DETERMINATION AT THE START OF THE LIQUIDATION

19  BECAUSE THEY DO NOT HAVE SUFFICIENT INFORMATION AT

20  THAT POINT TO SAY FOR SURE THAT CREDITORS ARE

21  GOING TO BE PAID IN FULL.  HAVING DETERMINED THE

22  COMPANY TO BE OF DOUBTFUL SOLVENCY, BOTH THE

23  CREDITORS AND THE SHAREHOLDERS ARE REPRESENTED ON

24  THE LIQUIDATION COMMITTEE, THEY BOTH GET THE

25  REPORTS AND THEY BOTH HAVE A RIGHT TO PARTICIPATE.

1   THEN YOU KIND OF AVOID ALL OF THESE HYPOTHETICAL

2   TYPE SITUATIONS THAT YOU ARE TRYING TO TAKE ME

3   THROUGH.

4          Q.     YES, BUT, I MEAN, HAVING READ THAT

5   DECISION, ONE SEES THAT IT IS NOT THE FALL-BACK

6   POSITION, RIGHT, AND YOU ACCEPT THAT?

7          A.     I ACCEPT THAT IS WHAT JONES SAID ON

8   HERALD.

9          Q.     YOU ALSO ACCEPTED, I THOUGHT, THAT

10  THERE WAS A GOOD REASON FOR WHAT HE DETERMINED IN

11  HERALD, NAMELY THAT IT IS SUCH A FUNDAMENTALLY

12  IMPORTANT THING WHO GETS TO SIT ON THE LIQUIDATION

13  COMMITTEE AND WHO GETS TO ESSENTIALLY HAVE A SAY,

14  A SIGNIFICANT SAY IN HOW THE LIQUIDATOR CONDUCTS

15  THE LIQUIDATION?

16         A.     BUT WHAT HE WAS SAYING -- SO THE

17  APPLICATION THAT WAS BEFORE HIM ON HERALD WAS AN

18  APPLICATION BY THE LIQUIDATORS TO FORM A

19  LIQUIDATION COMMITTEE THAT DID NOT COMPLY WITH THE

20  RULES.

21         Q.     YES.

22         A.     SO THEY HAD DETERMINED IT TO BE OF

23  DOUBTFUL SOLVENCY.

24         Q.     YES.

25         A.     BUT THEY WANTED TO HAVE A

104

1    LIQUIDATION COMMITTEE THAT WAS COMPRISED OF

2    SHAREHOLDERS ONLY.  JONES SAID NO, AND HE SAID NO

3    BECAUSE THE LIQUIDATION COMMITTEE HAS TO REFLECT

4    THOSE WHO HAVE THE UNDERLYING ECONOMIC INTEREST.

5    SO THAT WAS WHY HE SENT THE LIQUIDATORS BACK TO

6    THE DRAWING BOARDS TO ACTUALLY LOOK MORE CAREFULLY

7    AT THE FINANCIAL SITUATION OF THE COMPANY AND

8    REVISIT THEIR SOLVENCY DETERMINATION.

9            Q.    YES, BECAUSE IT WOULD BE VERY

10   UNFAIR IF THEY WERE RIGHT THAT IT WAS THEREFORE

11   DOUBTFULLY SOLVENT.  IT WOULD BE TERRIBLY UNFAIR

12   TO THE CREDITORS IF THEY DID NOT HAVE A SEAT ON

13   THE LIQUIDATION COMMITTEE, CORRECT?

14           A.    YES.

15           Q.    AND IF IN FACT IT WAS INSOLVENT, IT

16   WOULD BE UNFAIR ON THE CREDITORS IF THE

17   CONTRIBUTORIES HAD A SEAT AT THE LIQUIDATION

18   TABLE?

19               MR. MORRIS:  OBJECTION TO THE FORM

20   OF THE QUESTION.

21           A.    YES.

22   BY MISS LEAHY:

23           Q.    AND IF IT WAS SOLVENT, IT WOULD BE

24   UNFAIR ON THE CONTRIBUTORIES IF THE CREDITORS HAD

25   A SEAT AT THE TABLE?

                         105

1           MR. MORRIS:  OBJECTION TO THE FORM

2    OF THE QUESTION.

3           MISS LEAHY:  WHAT IS THE BASIS OF

4    THE OBJECTION?

5           MR. MORRIS:  I AM JUST READING THE

6    OPINION.  IT SAYS THERE ARE NO ORDINARY CREDITORS.

7    SO YOUR HYPOTHETICAL IS COMPLETELY UNTETHERED, AT

8    LEAST IN MY READING OF THE OPINION.  IN PARAGRAPH

9    5 IT SAYS SPECIFICALLY "THERE ARE NO ORDINARY

10   CREDITORS (APART FROM THE PETITIONER'S CLAIM FOR

11   THE COSTS OF THE PETITION)."  SO WHEN YOU TALK

12   ABOUT CREDITORS, LIKE IN THE CONTEXT OF THIS CASE,

13   I SAYS THERE ARE NONE.

14           MISS LEAHY:  I AM JUST MAKING SOME

15   GENERAL PROPOSITIONS HERE.

16           MR. MORRIS:  I THOUGHT YOU WERE

17   TALKING ABOUT THIS CASE.

18           MISS LEAHY:  NO, I AM EXTRACTING

19   FROM THE PRINCIPLE THAT IS IN THAT CASE.

20           MR. MORRIS:  OKAY.  I APPRECIATE

21   THAT.

22           MISS LEAHY:  COUNSEL HAS READ IT IN

23   FULL.  I AM SURE SHE IS MORE THAN ABLE TO TELL ME

24   WHAT IT SAYS AND DOES NOT SAY.

25           MR. MORRIS:  I WOULD NOT HAVE SAID

106

1   ANYTHING IF YOU DID NOT ASK.

2                   MISS LEAHY:  I WISH I HAD NOT NOW.

3                   MR. MORRIS:  I BET.  (LAUGHTER)

4   BY MISS LEAHY:

5           Q.      EXHIBIT 7.

6           (EXHIBIT 7 MARKED FOR IDENTIFICATION)

7                   LET ME HAND UP TO YOU SECTION 101

8   OF THE US BANKRUPTCY CODE.

9           A.      OKAY.

10          Q.      IT IS EXHIBIT 7.

11          A.      THANK YOU.

12          Q.      WE ARE ONLY GOING TO LOOK AT ONE

13  DEFINITION, WHICH IS THE DEFINITION OF FOREIGN

14  PROCEEDING, WHICH I AM SURE YOU ARE FAMILIAR WITH.

15  THAT IS SUBSECTION (23).  I THINK IT IS PAGE 5 OF

16  YOUR PRINTOUT.

17          A.      YES.

18          Q.      DO YOU WANT TO KEEP THAT OPEN

19  BESIDE YOU BECAUSE I AM GOING TO REFER TO IT A FEW

20  TIMES?

21          A.      OKAY.

22          Q.      THE CONTEXT IN WHICH YOU ARE GIVING

23  YOUR EVIDENCE IS THIS.  AS I AM SURE YOU KNOW, THE

24  US COURT AT SOME POINT HAS TO DECIDE WHETHER THE

25  CAYMAN PROCEEDING IS A FOREIGN PROCEEDING WITHIN

1   THE MEANING OF SECTION 101(23) OF THE BANKRUPTCY

2   CODE, OKAY?

3          A.    YES.

4          Q.    WE HAVE THIS DEFINITION IN

5   SUBSECTION (23).  IT IS ONE THAT IS FAMILIAR TO

6   MOST PEOPLE PRACTISING IN INSOLVENCY AND

7   RESTRUCTURING BECAUSE IT DERIVES FROM THE UNCITRAL

8   MODEL LAW.  I JUST WANTED TO TAKE IT IN STAGES,

9   BECAUSE THERE ARE A NUMBER OF WORDS IN THIS

10  DEFINITION THAT ARE CONTROVERSIAL IN THE CHAPTER

11  15 PROCEEDINGS, WHICH I AM SURE YOU ARE AWARE OF.

12  COULD YOU LOOK AT THE VERY LAST PART OF THE

13  DEFINITION?  WE HAVE, "... UNDER A LAW RELATING TO

14  INSOLVENCY OR ADJUSTMENT OF DEBT", AND THEN THIS

15  IS THE PART I WANT TO EMPHASISE, "IN WHICH

16  PROCEEDING THE ASSETS AND AFFAIRS OF THE DEBTOR

17  ARE SUBJECT TO CONTROL OR SUPERVISION BY A FOREIGN

18  COURT, FOR THE PURPOSE OF REORGANIZATION OR

19  LIQUIDATION."  CAN WE AGREE THAT THE CAYMAN

20  PROCEEDING IS ONE IN WHICH THE ASSETS AND AFFAIRS

21  OF ASCENTRA ARE SUBJECT TO THE SUPERVISION OF THE

22  CAYMAN COURT FOR THE PURPOSES OF LIQUIDATION?

23         A.    YES.

24         Q.    I THOUGHT THAT WAS GOING TO BE

25  UNCONTROVERSIAL.  SO NOW I AM COMING ON TO THE

108

1   NEXT QUESTION, WHICH I DO NOT KNOW YOUR VIEW ON

2   BUT IT RELATES TO THE PHRASE IN THE FIRST PART OF

3   THE DEFINITION.  WE SEE A PHRASE "COLLECTIVE

4   JUDICIAL OR ADMINISTRATIVE PROCEEDING IN A FOREIGN

5   COUNTRY".  I JUST WANT TO FOCUS ON THE WORDS

6   "JUDICIAL PROCEEDING", OKAY?  ALL OFFICIAL

7   LIQUIDATION, SOLVENT OR INSOLVENT, ARE INITIATED

8   AND SUPERVISED BY THE CAYMAN COURT AND CAN ONLY BE

9   TERMINATED BY THE CAYMAN COURT, RIGHT?  WE

10  ESTABLISHED ALL OF THAT EARLIER?

11          A.    YES.

12          Q.    SO YOU WOULD AGREE, WOULD YOU NOT,

13  THAT OFFICIAL LIQUIDATIONS ARE JUDICIAL

14  PROCEEDINGS?

15          A.    YES.  I MEAN, I SHOULD SAY WITH ALL

16  OF THIS THAT IT IS NOT REALLY FOR ME TO INTERPRET

17  THE US BANKRUPTCY CODE.  I MEAN, I CAN GIVE YOU MY

18  OPINION ON IT, BUT OBVIOUSLY IT IS A MATTER FOR

19  THE NEW YORK COURT.  BUT TO MY UNDERSTANDING OF

20  THE WORDS USED, I WOULD SAY THAT IT IS A JUDICIAL

21  PROCEEDING.

22          Q.    ACTUALLY, I AM QUITE INTERESTED IN

23  THIS, BECAUSE YOU KNOW IN THE TCA GLOBAL MATTER

24  THAT WE DISCUSSED EARLIER, WHICH WAS EXHIBIT 5,

25  YOU ACTUALLY DID GIVE AN OPINION ON WHETHER THE

109

KATHARINE LUCY BLADEN PEARSON

1    CAYMAN PROCEEDINGS IN THAT CASE WERE A JUDICIAL

2    PROCEEDING?

3            A.    OKAY.

4            Q.    IS THERE A REASON WHY IN THIS CASE

5    YOU HAVE NOT IN YOUR DECLARATION SOUGHT TO OPINE

6    ON WHETHER YOU CONSIDERED THE PROCEEDING TO BE A

7    JUDICIAL PROCEEDING OR NOT?

8            A.    DO YOU WANT TO TAKE ME TO THE

9    RELEVANT PARAGRAPH OF THE TCA DECLARATION?

10           Q.    YES, SURE.  YOU GO TO 19,

11   I BELIEVE, ON PAGE 5.  ROGUE REFERENCE; IT MUST BE

12   PARAGRAPH 19.

13                 MR. MCDONALD:  PARAGRAPH 19, PAGE 7

14   OF 10 AT THE TOP.

15   BY MISS LEAHY:

16           Q.    YOU SAY, "THE WINDING UP PROCEEDING

17   IS ALSO A JUDICIAL PROCEEDING IN THE SENSE THAT IT

18   IS INITIATED BY ORDER OF, PRESIDED OVER AND

19   SIGNIFIES BY, AND MAY NOT BE TERMINATED EXCEPT BY

20   ORDER OF, THE CAYMAN COURT."

21           A.    YES.  I MEAN, AS I HAVE JUST SAID,

22   I DO THINK IT IS A JUDICIAL PROCEEDING.  I DO NOT

23   THINK IT IS REALLY MY FUNCTION -- CERTAINLY THE

24   EVIDENCE THAT I HAVE GIVEN IN THE ASCENTRA

25   PROCEEDING IS FOCUSED ON THE NATURE OF THE CAYMAN

110

1   PROCEEDING, BUT I WOULD NOT GO SO FAR AS TO TRY

2   AND APPLY THE US BANKRUPTCY CODE, BECAUSE THAT

3   IS NOT ----

4          Q.     WHAT PRECISE QUESTIONS WERE YOU

5   INSTRUCTED TO ADVISE ON?

6          A.     IN THIS CASE?

7          Q.     NO, IN THIS CASE, IN ASCENTRA?

8          A.     IN ASCENTRA?

9          Q.     YES.

10         A.     THE ISSUES THAT ARE SET OUT AT

11  PARAGRAPH 9 OF MY DECLARATION.

12         Q.     THESE ARE THE PRECISE ISSUES THAT

13  WERE SET OUT IN YOUR FORMAL LETTER OF INSTRUCTION,

14  ARE THEY?

15         A.     YES, I THINK SO.

16         Q.     YOU WERE NEVER ASKED WHETHER IN

17  YOUR OPINION THE CAYMAN PROCEEDING WAS A JUDICIAL

18  PROCEEDING?

19         A.     NO, NO, BECAUSE THAT IS OBVIOUSLY

20  WHAT THE COURT IS GOING TO HAVE TO DETERMINE.

21         Q.     THAT IS WHY I AM CONFUSED, BECAUSE

22  IN TCA YOU SEEMED TO THINK THAT YOU COULD GIVE AN

23  OPINION ON THAT.  SO WHAT IS THE DIFFERENCE

24  BETWEEN THE TWO CASES?

25         A.     THEY ARE DIFFERENT CASES.  BY THE

111

1  US LAWYERS INSTRUCTING ME IN EACH CASE, I WAS

2  ASKED, YOU KNOW, DIFFERENT QUESTIONS.

3       Q.    RIGHT, OKAY.  BUT YOU UNDERSTOOD

4  THAT YOU WERE GIVING THIS ADVICE IN A CONTEXT

5  WHERE SHANG PENG WAS CONTESTING THAT THE CAYMAN

6  PROCEEDING WAS NOT A FOREIGN PROCEEDING?

7       A.    YES.

8       Q.    AND IT WAS CONSIDERED THAT YOU

9  SHOULD OPINE ON THE DIFFERENCES BETWEEN A SOLVENT

10  AND INSOLVENT LIQUIDATION BECAUSE?  WHY DO YOU

11  THINK THAT IS RELEVANT?  WHY IS IT RELEVANT TO

12  THAT DEBATE?

13       MR. MORRIS:  OBJECTION TO THE FORM

14  OF THE QUESTION.

15       A.    WELL, BECAUSE I UNDERSTAND THAT IT

16  IS RELEVANT -- WELL, I HAVE SEEN SPGK'S MOTION TO

17  DISMISS, SO I KNOW WHICH LIMBS OF SECTION 101(23)

18  THEY ARE CHALLENGING.  BUT MY UNDERSTANDING IS

19  THAT MY ROLE IS SIMPLY TO EXPLAIN THE CAYMAN

20  PROCESS AND NOT TO TAKE THAT FURTHER STEP OF

21  TRYING TO APPLY THAT TO SECTION (23).

22  BY MISS LEAHY:

23       Q.    FROM OUR PERSPECTIVE, WE CONSIDER

24  THAT THE US COURT WOULD BE TREMENDOUSLY ASSISTED

25  BY KNOWING WHAT CAYMAN LAW EXPERTS CONSIDERED THE

112

1    STATUS OF THE CAYMAN PROCEEDINGS TO BE, AND THAT

2    IS WHY WE ARE EXPLORING THOSE DEFINITIONS WITH

3    YOU, YES?

4            A.    OKAY.

5            Q.    I THINK WE HAVE AGREED THAT THE

6    CAYMAN PROCEEDING IS A JUDICIAL PROCEEDING?

7            A.    YES.

8            Q.    AND THAT REALLY FOLLOWS FROM SOME

9    PRETTY BASIC PROPOSITIONS THAT WE AGREED AT THE

10   VERY OUTSET?

11           A.    YES.

12           Q.    I THINK WE CAN ALSO AGREE THAT A

13   VOLUNTARY LIQUIDATION IS NOT A JUDICIAL

14   PROCEEDING?

15           A.    YES, I WOULD AGREE WITH THAT.

16           Q.    THE NEXT QUESTION IS WHETHER

17   OFFICIAL LIQUIDATIONS ARE COLLECTIVE JUDICIAL

18   PROCEEDINGS.

19           A.    YES.

20           Q.    NOW, WE HAVE ALREADY ESTABLISHED

21   THE FOLLOWING, WHETHER THE WINDING UP IS SOLVENT

22   OR INSOLVENT, LIQUIDATION IS A CLASS REMEDY?

23           A.    YES.

24           Q.    THE LIQUIDATOR IS UNDER THE

25   ULTIMATE SUPERVISION OF THE CAYMAN COURT, ALL

113

1   INDIVIDUAL CLAIMS AGAINST THE DEBTOR ARE STAYED,

2   CORRECT, AND THERE IS A PROOFING PROCEDURE

3   AVAILABLE FOR THE RESOLUTION OF THE CLAIMS OF

4   CREDITORS?  THAT IS RIGHT, IS IT NOT?

5          A.    IT IS RIGHT TO SAY FOR THE LAST BIT

6   ABOUT THE PROOFING PROCEDURE, WHICH IN A SOLVENT

7   LIQUIDATION ONLY APPLIES TO DISPUTED DEBTS,

8   WHEREAS IN THE INSOLVENT LIQUIDATION IT APPLIES TO

9   ALL DEBTS.

10         Q.    OKAY.  YOU ALSO ACCEPTED THAT --

11  I THOUGHT YOU DID, BUT I WILL JUST ASK IT AS A NEW

12  QUESTION.  IT IS ABSOLUTELY RIGHT THAT IF YOU ARE

13  IN A SOLVENT LIQUIDATION AND YOU CLAIM TO BE A

14  CREDITOR OF THE COMPANY, YOU ARE GOING TO HAVE TO

15  NOTIFY THE LIQUIDATOR IN SOME WAY.  SO EVEN IF YOU

16  DO NOT FILL IN A FORMAL PROOF OF DEBT, YOU ARE

17  GOING TO HAVE TO WRITE TO HIM, E-MAIL HIM OR TELL

18  HIM THAT YOU ARE A CREDITOR?

19         A.    SEND HIM AN INVOICE LIKE YOU

20  NORMALLY WOULD.

21         Q.    EXACTLY, EXACTLY.  SO IT IS JUST A

22  DIFFERENT FORM ESSENTIALLY, IS IT NOT, BETWEEN THE

23  TWO PROCESSES?

24              MR. MORRIS:  OBJECTION TO THE FORM

25  OF THE QUESTION.

114

KATHARINE LUCY BLADEN PEARSON

1      A.      WELL, I WOULD SAY THERE IS A BIG

2   DIFFERENCE BETWEEN SENDING AN INVOICE TO A COMPANY

3   THAT IS NOT IN ANY LIQUIDATION PROCESS OR TO A

4   COMPANY THAT IS IN A SOLVENT LIQUIDATION PROCESS

5   AND GETTING PAID IN THE ORDINARY COURSE OF

6   BUSINESS AND ON THE OTHER HAND SUBMITTING A PROOF

7   OF DEBT IN AN INSOLVENT LIQUIDATION AND WAITING

8   UNTIL THE LIQUIDATOR HAS SOME FUNDS TO DISTRIBUTE

9   AND THEN GETTING PAID PARI PASSU WITH EVERYBODY

10  ELSE.

11  BY MISS LEAHY:

12      Q.      OKAY.  I DO NOT WANT TO GO OVER ALL

13  THAT GROUND AGAIN.  MY QUESTION THIS TIME

14  I THOUGHT WAS UNCONTROVERSIAL, SO I AM GOING TO

15  TRY TO RE-PUT IT IN A WAY THAT WE MIGHT BE ABLE TO

16  REACH AGREEMENT.

17      A.      OKAY.

18      Q.      I AM NOT GOING TO USE THE WORD

19  "MECHANISM" BECAUSE I THINK THAT IS GOING TO BE

20  OBJECTED TO AS WELL.  THERE ARE PROVISIONS IN THE

21  RULES AND THE ACT THAT ENABLE A LIQUIDATOR TO

22  RESOLVE THE CLAIMS OF CREDITORS IN BOTH A SOLVENT

23  AND INSOLVENT LIQUIDATION?

24      A.      YES.

25      Q.      THANK YOU.  A SOLVENT LIQUIDATION,

115

1  AND WE SAID THIS IS A CLASS REMEDY, SO IT IS NOT A

2  TWO-PARTY DISPUTE, RIGHT?

3        A.    NO.

4        Q.    SO YOU WOULD AGREE, WOULD YOU NOT,

5  THAT A CAYMAN LIQUIDATION IS NOT JUST A JUDICIAL

6  PROCEEDING, IT IS A COLLECTIVE JUDICIAL

7  PROCEEDING?

8        A.    YES, IT IS A COLLECTIVE JUDICIAL

9  PROCEEDING FOR THE BENEFIT OF ASCENTRA

10  SHAREHOLDERS.

11        Q.    WHY DID YOU CAVEAT IT IN THAT WAY?

12  I DO NOT FOLLOW, BECAUSE THE CREDITORS ALSO GET

13  PAID BY THE LIQUIDATOR, DO THEY NOT?

14        A.    THEY GET PAID, BUT THEY ARE GOING

15  TO GET PAID ANYWAY.  SO THERE IS NO BENEFIT TO

16  THEM FROM THE COMPANY BEING IN A SOLVENT

17  LIQUIDATION PROCESS AS OPPOSED TO IT NOT BEING IN

18  ANY PROCESS AT ALL.  IT MAKES NO DIFFERENCE TO

19  THEM BECAUSE THEY ARE GOING TO GET PAID.

20        Q.    THE LIQUIDATOR IS HAVING TO COLLECT

21  AND REALISE THE ASSETS OF THE COMPANY, CORRECT?

22        A.    YES.

23        Q.    AND THE LIQUIDATION IS UNDER THE

24  SUPERVISION OF THE COURT, SO THE CREDITORS BENEFIT

25  FROM THAT PROTECTION TOO, DO THEY NOT?

116

```
 1            A.    WELL, IF IT IS SOLVENT, THE

 2   CREDITORS DO NOT NEED THE PROTECTION OF THE COURT

 3   BECAUSE THEY ARE GOING TO GET PAID.

 4            Q.    WHAT IF THE LIQUIDATION GOT THE

 5   DETERMINATION WRONG?  IT TURNS OUT THE COMPANY IS

 6   INSOLVENT -- WE HAVE HEARD OF THAT HAPPENING -- IN

 7   THAT SITUATION DO YOU THINK CREDITORS NEVER NEED

 8   THE PROTECTION OF THE COURT BECAUSE THERE IS A

 9   SOLVENCY DETERMINATION?  THAT CANNOT BE RIGHT, CAN

10   IT?

11            A.    SORRY, WHAT IS YOUR QUESTION?

12            Q.    THE CREDITORS NEVER NEED THE

13   PROTECTION OF THE COURT WHERE THERE HAS BEEN A

14   DETERMINATION OF SOLVENCY.  YOU ARE NOT GOING THAT

15   FAR, ARE YOU?

16            A.    YOU ARE ASKING ME DO CREDITORS

17   NEVER NEED THE ----

18            Q.    PROTECTION OF THE COURT.

19            A.    ---- PROTECTION OF THE COURT

20   BECAUSE ----

21            Q.    AFTER A SOLVENCY DETERMINATION HAS

22   BEEN MADE?

23            A.    SO WE ARE NOW THINKING OF

24   HYPOTHETICAL SITUATIONS WHERE A SOLVENCY

25   DETERMINATION HAS BEEN MADE BUT ----
```

117

1          Q.     ALL I AM SAYING IS THAT -- ALL

2    I SAID WAS THAT THERE IS OBVIOUSLY ALWAYS A RISK

3    THAT AN OFFICE HOLDER MIGHT HAVE GOT THE

4    DETERMINATION WRONG.

5          A.     YES.

6          Q.     YOU SAW THAT IN THE ----

7          A.     HERALD.

8          Q.     HERALD CASE.  IT IS JUST A SUMMARY

9    DETERMINATION, RIGHT?

10          A.     YES.

11          Q.     SO THE LIQUIDATOR COMES ALONG AND

12    SAYS I THINK THIS IS COMPANY IS SOLVENT.  A YEAR

13    DOWN THE LINE HE SAYS IT IS INSOLVENT, RIGHT?

14          A.     YES.

15          Q.     IN THE BACKGROUND, IN THIS YEARLONG

16    PERIOD, ARE YOU SAYING THAT THE CREDITORS ARE NOT

17    EVER IN ANY WAY EXPOSED?

18          A.     WELL, WHAT SHOULD BE HAPPENING IN

19    THE YEARLONG PERIOD AFTER HE HAS ISSUED HIS

20    SOLVENCY DETERMINATION IS THAT THE CREDITORS ARE

21    PAID IN THE ORDINARY COURSE OF BUSINESS.  SO THEY

22    ARE SUBMITTING THEIR INVOICES AND GETTING PAID AS

23    THEIR DEBTS FALL DUE AS IF THE COMPANY WERE NOT IN

24    A PROCESS AT ALL.

25          Q.     BUT THAT MIGHT NOT HAPPEN FOR

118

1   REASONS THAT WE EXPLORED EARLIER; FOR EXAMPLE,

2   THERE IS SOME ILLIQUID ASSETS THAT HAVE TO BE

3   REALISED?

4          A.    YES, YES.

5          Q.    YES?  IS THAT NOT THE SORT OF

6   SITUATION WHERE THERE IS A RISK OF THE INITIAL

7   DETERMINATION TURNING OUT TO BE WRONG?

8          A.    YES, AND HAVING TO BE REVISITED,

9   YES.

10         Q.    YES.

11         A.    YES.

12         Q.    SO DURING THAT YEARLONG PERIOD, THE

13  CREDITORS ARE AT LEAST, YOU KNOW, THEORETICALLY AT

14  RISK, ARE THEY NOT, THAT THEY WILL NOT GET PAID IN

15  FULL?

16         A.    BUT THEN THIS COMES BACK TO ONE OF

17  YOUR QUESTIONS EARLIER AS WELL, THAT THERE IS

18  ALWAYS A RISK AS A CREDITOR, YOU KNOW, YOU ISSUE

19  AN INVOICE AND THERE IS ALSO A RISK THAT YOU MIGHT

20  NOT GET PAID.

21         Q.    OKAY.  I THINK BEFORE YOU WERE

22  SUGGESTING THAT THE RISKS I WAS TALKING ABOUT WERE

23  FARFETCHED, WHEREAS I THINK I AM GIVING YOU A

24  SLIGHTLY MORE REALISTIC EXAMPLE, PERHAPS YOU MIGHT

25  ACCEPT NOW, THAT THE LIQUIDATOR COULD SIMPLY HAVE

119

1  GOT THE DETERMINATION WRONG THE FIRST TIME AROUND,

2  THROUGH NO FAULT OF HIS OWN, HE IS JUST DOING HIS

3  BEST ----

4       A.    YES.

5       Q.    ---- AND THEN SUBSEQUENTLY FINDS

6  THAT, IN FACT, LOOKING AT THINGS MORE CLOSELY, OR

7  MORE INFORMATION COMING TO LIGHT, THAT THE COMPANY

8  IS INSOLVENT?

9       A.    YES.

10       Q.    THAT IS NOT FARFETCHED, IS IT, THAT

11  RISK ----

12       A.    THAT COULD HAPPEN.

13       Q.    IT IS NOT REALLY RIGHT, IS IT, TO

14  SAY THAT IT IS A COLLECTIVE JUDICIAL PROCEEDING

15  FOR THE BENEFIT JUST OF SHAREHOLDERS?

16            MR. MORRIS:  OBJECTION TO THE FORM

17  OF THE QUESTION.

18       A.    I THINK THAT IS CORRECT.

19  BY MISS LEAHY:

20       Q.    SHAREHOLDERS CANNOT GET PAID BEFORE

21  THE CREDITORS ARE PAID, CAN THEY?

22       A.    NO.

23       Q.    EVER?

24       A.    NO.

25       Q.    AND SHAREHOLDERS CANNOT GET PAID IN

120

1   FACT BEFORE THE CREDITORS, NOT ONLY GET PAID 100%

2   IN THE POUND BUT ALSO GET STATUTORY INTEREST ON

3   THEIR DEBTS, CORRECT?

4          A.     CORRECT.

5          Q.     AND THE PERSON WHO ADJUDICATES ON

6   THE CREDITORS' CLAIMS AND WHO REALISES THE ASSETS

7   TO PAY THE CREDITORS AND CALCULATES THE STATUTORY

8   INTEREST AND PAYS THE CREDITORS IS THE OFFICIAL

9   LIQUIDATOR, RIGHT?

10         A.     YES.

11         Q.     SO IT IS A COLLECTIVE JUDICIAL

12  PROCEEDING FOR THE BENEFIT OF THE CREDITORS AND

13  THE SHAREHOLDERS, IS IT NOT?

14         A.     WELL, NO, BECAUSE THE CREDITORS ARE

15  GOING TO GET PAID ANYWAY.  THE CREDITORS WOULD GET

16  PAID IF IT WAS NOT IN THAT PROCESS.  THE PROCESS

17  IS TO WIND UP THE COMPANY AND RETURN THE ASSETS TO

18  THE SHAREHOLDERS WHO IF IT WAS NOT IN THAT PROCESS

19  WOULD BE STUCK FOREVER IN A DEADLOCKED COMPANY.

20         Q.     BUT YOU DO NOT KNOW THAT

21  DEFINITIVELY, DO YOU, AT THE OUTSET OF THE

22  LIQUIDATION BECAUSE ALL THAT THE LIQUIDATOR IS

23  DOING IS MAKING A SUMMARY DETERMINATION, RIGHT?

24              MR. MORRIS:  OBJECTION.  ASKED AND

25  ANSWERED.

121

1          MISS LEAHY:  I DID NOT ASK THAT

2    QUESTION BEFORE.

3          MR. MORRIS:  YOU HAD ASKED A FORM

4    OF THIS QUESTION PROBABLY 20 TIMES.

5          A.    THE DETERMINATION CAN CHANGE, YES.

6    BY MISS LEAHY:

7          Q.    YES.  SO THEREFORE YOU CANNOT SAY

8    THE MINUTE A DETERMINATION IS MADE, WHICH HAS TO

9    BE MADE WITHIN THE FIRST 28 DAYS OF THE COMPANY

10   GOING INTO OFFICIAL LIQUIDATION, THAT FROM THAT

11   POINT ON THE JUDICIAL PROCEEDING IS SOLELY FOR THE

12   BENEFIT OF THE SHAREHOLDERS?

13         MR. MORRIS:  OBJECTION.  ASKED AND

14   ANSWERED.

15         A.    WELL, IT IS UNTIL IT IS CHANGED.

16   BY MISS LEAHY:

17         Q.    OKAY.  I WANT THEN TO UNDERSTAND

18   WHAT YOU ARE SAYING SHOULD HAPPEN IN THE CONTEXT

19   OF RECOGNITION PROCEEDINGS, RIGHT?  I KNOW YOU

20   PRACTICE IN INSOLVENCY, RESTRUCTURING, FRAUD AND

21   NO DOUBT YOU HAD TO APPLY OR GET ASSISTANCE FROM

22   FOREIGN LAWYERS TO APPLY IN DIFFERENT

23   JURISDICTIONS FOR RECOGNITION UNDER THE MODEL LAW,

24   THAT IS RIGHT?

25         A.    YES.

122

1    Q.    ARE YOU SAYING THAT NO CAYMAN

2  COMPANY IN SOLVENT LIQUIDATION COULD EVER MAKE A

3  SUCCESSFUL APPLICATION FOR RECOGNITION UNDER THE

4  MODEL LAW?

5    A.    I DO NOT THINK THAT IS REALLY A

6  QUESTION FOR ME BECAUSE I THINK THAT IS A QUESTION

7  FOR WHICHEVER COURT IS DETERMINING THE

8  APPLICATION.

9    MR. MORRIS:  I AM JUST GOING TO

10  BELATEDLY OBJECT ON THE GROUNDS THAT THIS IS

11  BEYOND THE SCOPE OF HER OPINIONS AS SET FORTH IN

12  HER DECLARATION.

13  BY MISS LEAHY:

14    Q.    IS EVERY SINGLE SOLVENT CAYMAN

15  LIQUIDATION NOT A COLLECTIVE PROCEEDING?

16    A.    IT DEPENDS WHAT YOU MEAN BY A

17  COLLECTIVE.  I THINK WE HAVE ALREADY AGREED THAT

18  IT IS A COLLECTIVE PROCEEDING, BUT I SAID IT IS A

19  COLLECTIVE PROCEEDING FOR THE BENEFIT OF

20  SHAREHOLDERS.

21    Q.    OKAY.  PUT THE QUESTION ANOTHER

22  WAY.  IS EVERY SOLVENT CAYMAN LIQUIDATION

23  COLLECTIVE PROCEEDING FOR THE BENEFIT EXCLUSIVELY

24  OF THE SHAREHOLDERS?

25    A.    IF IT IS SOLVENT, YES.

123

1        Q.      RIGHT.  AND WHAT IF THE LIQUIDATOR

2   DETERMINES INITIALLY THAT IT IS INSOLVENT,

3   RIGHT ----

4        A.      OKAY.

5        Q.      ---- IS THAT A COLLECTIVE

6   PROCEEDING FOR THE BENEFIT OF CREDITORS OR IS IT A

7   COLLECTIVE PROCEEDING FOR THE BENEFIT OF CREDITORS

8   AND SHAREHOLDERS?

9        A.      SO IF IT IS INSOLVENT, IT IS FOR

10  THE BENEFIT OF CREDITORS.

11       Q.      AND SOLELY AND EXCLUSIVELY FOR THE

12  BENEFIT OF CREDITORS?

13       A.      YES.

14       Q.      BUT IF THERE IS A SURPLUS, A

15  LIQUIDATOR IS REQUIRED TO PAY THE SURPLUS OVER TO

16  THE STAKEHOLDERS, RIGHT?

17       A.      YES, YES.

18       Q.      YES.  AND IF A LIQUIDATOR MAKES A

19  DETERMINATION THAT THE COMPANY IS INSOLVENT AND

20  GETS CHAPTER 15 RECOGNITION IN THE UNITED STATES,

21  IN YOUR OPINION WOULD HE BE REQUIRED TO APPLY TO

22  THE FOREIGN COURT TO TERMINATE THAT CHAPTER 15

23  PROCEEDING ON THE BASIS THAT HE HAD MADE A NEW

24  DETERMINATION THAT THE COMPANY IS SOLVENT?

25               MR. MORRIS:  OBJECTION.  IT IS

124

1  BEYOND THE SCOPE OF THE OPINIONS BEING OFFERED,

2  BUT YOU CAN ANSWER.

3         A.    IF THAT HAPPENED ON ONE OF MY CASES

4  I WOULD ADVISE THE LIQUIDATOR TO ASK HIS OR HER US

5  LAWYERS FOR ADVICE ON THAT QUESTION.

6  BY MISS LEAHY:

7         Q.    IF YOU HAD RECEIVED ADVICE FROM THE

8  US LAWYER THAT A COLLECTIVE PROCEEDING WAS ONLY A

9  COLLECTIVE PROCEEDING FOR THE BENEFIT OF

10  SHAREHOLDERS, DO YOU THINK THE LIQUIDATOR WOULD BE

11  UNDER AN OBLIGATION AS A MATTER OF CAYMAN LAW TO

12  APPLY FOR THE DISMISSAL OF THE CHAPTER 15

13  PROCEEDING IN THE US?

14         MR. MORRIS:  SAME OBJECTION.

15         A.    DO YOU MEAN SHAREHOLDERS OR

16  CREDITORS IN THAT QUESTION?

17  BY MISS LEAHY:

18         Q.    AT THIS STAGE IN TIME YOU ARE

19  SAYING IT IS FOR THE BENEFIT OF SHAREHOLDERS

20  EXCLUSIVELY?

21         A.    YES.  BUT YOU SAID IF THE

22  LIQUIDATOR HAD RECEIVED ADVICE FROM HIS OR HER US

23  LAWYERS.

24         Q.    I AM SORRY, I DID MEAN CREDITORS,

25  YOU ARE ABSOLUTELY RIGHT.  I AM GETTING MYSELF IN

125

1   KNOTS.  YOU ARE ABSOLUTELY RIGHT, YES.

2          A.     WELL, YOU KNOW, I WOULD TELL THE

3   LIQUIDATOR TO FOLLOW HIS OR HER US LAWYERS' ADVICE

4   IN THAT SITUATION.  I WOULD NOT CONSIDER IT TO BE

5   A QUESTION FOR ME.  OBVIOUSLY I WOULD WORK CLOSELY

6   WITH THE LIQUIDATOR AROUND THE US LAWYERS, BUT ON

7   THOSE MATTERS I WOULD DEFER TO US COUNSEL.

8          Q.     OKAY.  WHAT IF THERE WAS STILL

9   ASSETS IN THE UNITED STATES TO REALISE FOR THE

10  BENEFIT OF THE SHAREHOLDERS, WHAT IS THE

11  LIQUIDATOR GOING TO DO IN THAT SITUATION?  WHAT

12  ARE YOU GOING TO ADVICE HIM TO DO?

13         A.     I AM NOT GOING TO ADVICE HIM.  I AM

14  GOING TO TELL HIM TO SEEK US COUNSEL'S ADVICE.

15         Q.     WHY DO YOU NORMALLY RECOMMEND TO A

16  LIQUIDATOR -- YOU ARE VERY EXPERIENCED IN

17  INSOLVENCY LAW, SO WHY DO YOU RECOMMEND NORMALLY

18  TO YOUR LIQUIDATOR CLIENT THAT HE OR SHE SHOULD GO

19  TO THE US OR ANOTHER JURISDICTION TO GET

20  RECOGNITION?  WHY DO YOU DO THAT?

21         A.     IT IS OBVIOUSLY BECAUSE THERE ARE

22  ASSETS THERE OR INFORMATION OR WHATEVER THAT YOU

23  NEED TO GET FROM ----

24         Q.     AND THAT IS THE MOST ECONOMIC WAY

25  OF DOING IT, IS IT NOT?

126

1        A.    YES.

2        Q.    YES.  SO YOU ARE SAYING THAT,

3   BASICALLY, ANY COMPANY THAT EVEN IS TEMPORARILY IN

4   SOLVENT LIQUIDATION IN THE CAYMAN ISLANDS CANNOT

5   USE THE UNCITRAL MODEL LAW TO GO TO NEW YORK,

6   POTENTIALLY ANYWHERE I THINK FROM WHAT YOU ARE

7   SAYING, TO COLLECT IN THE ASSETS OF THE ESTATE?

8              MR. MORRIS:  OBJECTION TO THE FORM

9   OF THE QUESTION.

10             A.    I AM NOT SAYING THAT, BECAUSE THAT

11  IS BEYOND THE SCOPE OF MY DECLARATION AND IT IS

12  BEYOND THE SCOPE OF MY EXPERTISE.  I ACT FOR

13  CAYMAN LIQUIDATORS AND WHEN THERE ARE ISSUES

14  REGARDING RECOGNITION IN FOREIGN JURISDICTIONS OR

15  ASSETS IN FOREIGN JURISDICTIONS, THEN I WILL TELL

16  THEM TO SEEK ADVICE FROM PROPERLY QUALIFIED

17  LAWYERS IN THE RELEVANT JURISDICTION.  I WOULD NOT

18  BE THE ONE ADVISING THEM ON WHAT STEPS ARE AROUND

19  OR WHAT IS AVAILABLE IN THE US, OR ANY

20  JURISDICTION OUTSIDE CAYMAN.

21             Q.    HAVE YOU PREVIOUSLY EVER, THROUGH

22  YOUR FOREIGN CO-COUNSEL, SOUGHT RECOGNITION IN

23  ANOTHER JURISDICTION OF A SOLVENT CAYMAN COMPANY?

24             A.    OF THE LIQUIDATORS OF A SOLVENT

25  CAYMAN COMPANY?

                        127

1        Q.      YES.  I AM SORRY, YES.

2        A.      I DO NOT THINK SO, NO, NO.

3        Q.      ARE YOU FAMILIAR WITH THE ASCOT

4   FUND CASE?

5        A.      I HAVE HEARD OF IT.

6        Q.      THAT WAS A SOLVENT LIQUIDATION.

7        A.      IF YOU SAY SO.  I WOULD NEED TO GO

8   BACK AND ----

9        Q.      TAKE IT FROM ME FOR NOW.  I DO NOT

10  THINK THAT WILL PROVE TO BE CONTROVERSIAL.

11       A.      OKAY.

12       Q.      THAT IS A CASE WHERE CHAPTER 15

13  RECOGNITION WAS APPLIED FOR SUCCESSFULLY?

14       A.      OKAY.

15       Q.      DOES THAT SURPRISE YOU AT ALL?

16       A.      IT DOES NOT -- I MEAN, THIS IS WAY

17  BEYOND THE SCOPE OF MY -- I HAVE SAID THIS

18  ALREADY, IT IS BEYOND THE SCOPE OF MY DECLARATION.

19  IT IS BEYOND THE SCOPE OF MY EXPERTISE.  LEAVING

20  THAT TO ONE SIDE, IT DOES NOT SURPRISE ME THAT

21  MUCH BECAUSE I THINK, YOU KNOW, FOR A CERTAIN

22  PERIOD THE COURTS WERE NOT SCRUTINIZING THE

23  RECOGNITION APPLICATIONS UNDER THE MODEL LAW AND A

24  VERY BROAD APPROACH WAS BEING TAKEN.  NOW CERTAIN

25  COURTS ARE TAKING A NARROWER APPROACH.  THAT IS MY

128

1    OVERALL IMPRESSION, BUT I AM ONLY QUALIFIED TO

2    ADVISE ON CAYMAN LAW.  AS YOU KNOW, CAYMAN HAS NOT

3    ADOPTED THE MODEL LAW.  SO THAT IS MY OWN

4    IMPRESSION, BUT I AM NOT SURE ----

5           Q.     IN THE TCA CASE YOU DID NOT

6    HESITATE TO GIVE YOUR OPINIONS ON THE MEANING OF

7    THE DEFINITION WE ARE NOW LOOKING AT, OKAY?

8    I MEAN, I CAN SHOW YOU OTHER SECTIONS.  DO YOU

9    WANT TO SEE SOME MORE OF YOUR -- IS THIS IT?  IF

10   YOU GO TO PAGE 7, PARAGRAPH 18:  "THE WINDING UP

11   PROCEEDING IS 'COLLECTIVE' IN NATURE IN THAT IT

12   PROVIDES A MECHANISM FOR THE RESOLUTION OF THE

13   CLAIMS OF ALL THE CREDITORS AND SHAREHOLDERS OF

14   THE DEBTOR, AND CLAIMS TOGETHER RATHER THAN MERELY

15   THE RESOLUTION OF A TWO-PARTY DISPUTE."

16          A.     YES.

17          Q.     YES?

18          A.     YES.

19          Q.     AT 19, WE HAVE SEEN ALREADY IT IS A

20   JUDICIAL PROCEEDING?

21          A.     MMM-HMM.

22          Q.     AT 20:  "ON THE WHOLE, THE WINDING

23   UP PROCEEDING IS DESIGNED TO BENEFIT CREDITORS AND

24   SHAREHOLDERS ON A COLLECTIVE BASIS."

25          A.     YES.

1      Q.      CREDITORS AND A SHAREHOLDERS ON A

2  COLLECTIVE BASIS?

3      A.      YES, BECAUSE IT WAS OF DOUBTFUL

4  SOLVENCY.

5      Q.      IT WAS DOUBTFUL SOLVENCY, I SEE.

6  BUT AT SOME POINT IT WAS GOING TO BE SOLVENT OR

7  INSOLVENT, RIGHT?

8      A.      YES.

9      Q.      A COMPANY DOES NOT REMAIN OF

10  DOUBTFUL SOLVENCY FOR THE ENTIRE LIQUIDATION

11  PROCESS.  AT SOME POINT EVERYTHING WILL

12  CRYSTALLISED, WILL IT NOT?

13      A.      YES.

14      Q.      SO WHAT ARE YOU SAYING, THAT YOU

15  THINK YOU SHOULD ONLY BE ABLE TO GET CHAPTER 15

16  RECOGNITION IF IT IS DESIGNED TO BENEFIT BOTH THE

17  CREDITORS AND THE SHAREHOLDERS, OR JUST THE

18  CREDITORS, BUT YOU SHOULD NOT EVER GET CHAPTER 15

19  RECOGNITION IF IT IS DESIGNED SOLELY TO BENEFIT

20  THE SHAREHOLDERS?

21           MR. MORRIS:  OBJECTION.  BEYOND THE

22  SCOPE.

23      A.      THAT IS WAY BEYOND THE SCOPE OF MY

24  DECLARATION.  IT IS BEYOND THE SCOPE OF MY

25  EXPERTISE.  IT IS NOT REALLY SOMETHING THAT I HAVE

130

1   A PERSONAL VIEW ON ONE WAY OR THE OTHER, YOU KNOW,

2   WHEN CHAPTER 15 SHOULD BE AVAILABLE.

3   BY MISS LEAHY:

4           Q.     IN PARAGRAPH 20, YOU DO NOT MAKE

5   ANY REFERENCE -- I MEAN, I CANNOT FIND A REFERENCE

6   TO DOUBTFUL SOLVENCY ANYWHERE IN THIS.  YOU DID

7   NOT SEEM TO NEED TO DRAW IT TO THE COURT'S

8   ATTENTION IN THIS CASE THAT IT WAS OF DOUBTFUL

9   SOLVENCY.  YOU CAN READ IT IF YOU WANT TO, AND WE

10  MIGHT HAVE A BREAK WHEN YOU CAN DO THAT, BUT LOOK

11  AT PARAGRAPH 20, WHAT YOU SAY THERE IS NOT SUBJECT

12  TO THE CAVEAT THAT THIS IS A COMPANY WHERE THE

13  DETERMINATION IS ONE OF DOUBTFUL SOLVENCY.

14          MR. MORRIS:  OBJECTION.

15  ARGUMENTATIVE.

16          A.     NO, IT IS NOT STATED IN THERE, BUT

17  IT DOES NOT NEED TO BE STATED BECAUSE IT IS

18  BECAUSE IT IS OF DOUBTFUL SOLVENCY THAT ALL OF

19  THIS IS TRUE.

20  BY MISS LEAHY:

21          Q.     BUT YOU CRITICISED MR. ROBINSON FOR

22  NOT MENTIONING THE FACT THAT THE COMPANY WAS

23  SOLVENT?

24          A.     YES, BECAUSE HE THEN, YOU KNOW,

25  WENT ON TO TALK ABOUT CREDITORS' CLAIMS AND, YOU

131

1  KNOW, IT BEING FOR THE BENEFIT OF CREDITORS.  WE

2  CAN LOOK -- YOU KNOW, THERE WERE OTHER ASPECTS OF

3  HIS DECLARATION AND MR. COWAN'S DECLARATION ----

4         Q.     YES, WE CAN LOOK AT THOSE IN DUE

5  COURSE?

6         A.     ---- THAT WERE MISLEADING IN THE

7  CONTEXT OF A SOLVENT COMPANY.

8         Q.     YOU SAID THAT YOU WERE NOT ALLEGING

9  THAT THEY HAD DELIBERATELY SOUGHT TO MISLEAD THE

10  COURT?

11         A.     NO.

12         Q.     WHAT ARE YOU ALLEGING, THOUGH?

13         A.     JUST THAT THOSE CERTAIN PARAGRAPHS

14  THAT I IDENTIFIED ARE MISLEADING.  I AM NOT

15  ALLEGING ANYTHING MORE THAN THAT.

16         Q.     OKAY.  WOULD YOU NOT CONSIDER THAT

17  IT IS MISLEADING TO SAY, AS YOU SAID IN YOUR

18  AFFIDAVIT, THAT CREDITORS ARE BARRED FROM

19  PARTICIPATING IN SOLVENT LIQUIDATIONS?

20         A.     NO.

21         Q.     EVEN THOUGH WE HAVE DISCUSSED

22  VARIOUS MECHANISMS, BECAUSE I HAVE JUST SEEN IT IN

23  YOUR AFFIDAVIT, WHEREBY CREDITORS CAN PARTICIPATE

24  IN A SOLVENT LIQUIDATION?

25                 MR. MORRIS:  OBJECTION TO THE FORM

132

1  OF THE QUESTION.  ARGUMENTATIVE.

2        A.    I DO NOT WANT TO GO BACK OVER

3  EVERYTHING THAT WE HAVE ALREADY DISCUSSED, BUT

4  I THINK THE ONLY MECHANISMS THAT WE HAVE

5  IDENTIFIED ARE THAT THE LIQUIDATOR CAN SEND THEM A

6  PROOF OF DEBT AND IF BOTH THE LIQUIDATOR AND THE

7  CREDITOR AGREE, THEIR DISPUTED CLAIM CAN BE

8  RESOLVED THROUGH THE PROOF OF DEBT PROCESS, BUT

9  THEY DO NOT HAVE TO BE, AND THAT ACCORDING TO THE

10  ACT THEY CAN BRING AN APPLICATION FOR THE

11  LIQUIDATOR'S REMOVAL BUT THEIR VIEWS ON THAT

12  APPLICATION WOULD BE GIVEN NO WEIGHT.  SO I DO NOT

13  ACCEPT THAT SAYING THEY ARE BARRED WHEN THOSE ARE

14  THE ONLY TWO THINGS THAT WE HAVE IDENTIFIED THAT

15  THEY CAN DO IS MISLEADING.

16  BY MISS LEAHY:

17        Q.    THE ONLY THING THAT CREDITORS

18  REALLY CARE ABOUT IS GETTING PAID, IS IT NOT, IF

19  WE ARE HONEST ABOUT IT?

20        A.    YES.

21        Q.    AND THEY DO GET TO ENGAGE WITH THE

22  LIQUIDATOR TO ENSURE THEY GET PAID IN ONE WAY OR

23  ANOTHER, DO THEY NOT, IN A SOLVENT LIQUIDATION?

24              MR. MORRIS:  OBJECTION TO THE FORM

25  OF THE QUESTION.

133

1          A.     YES, IN THE SAME WAY THAT THEY

2    WOULD WITH A COMPANY THAT WAS NOT IN LIQUIDATION

3    AT ALL.

4    BY MISS LEAHY:

5          Q.     BUT IT IS WITH THE LIQUIDATOR?

6          A.     YES.

7          Q.     YES.  AND ALSO, AS WE HAVE

8    IDENTIFIED, THE LIQUIDATION IS A TERMINAL PROCESS,

9    SO IT IS ABOUT WINDING DOWN THE COMPANY TO PAY

10   YOUR DEBTS, RIGHT?

11         A.     YES.

12         Q.     BUT YOU COULD VERY, VERY FREQUENTLY

13   HAVE A COMPANY THAT IS DEEMED UNABLE TO PAY ITS

14   DEBTS BECAUSE IT HAS NOT PAID A SINGLE INVOICE ON

15   TIME BUT IS BALANCE SHEET SOLVENT AND IN FACT ABLE

16   TO PAY ALL ITS CREDITORS IN FULL WITH STATUTORY

17   INTEREST IN A MASSIVE, MASSIVE DIVIDEND TO

18   SHAREHOLDERS.  THAT IS VERY POSSIBLE, IS IT NOT?

19         A.     YES.

20         Q.     I JUST WANT TO CHECK THE TIME.

21   I THINK WE SHOULD PROBABLY HAVE A SHORT BREAK.

22   FIFTEEN MINUTES?  IS THAT ENOUGH TIME FOR SNACKS?

23         A.     YES.

24                MR. MORRIS:  IT IS 1.33.  WE WILL

25   BE BACK AT 1.45?

134

1          MISS LEAHY:  LET US SAY 1.55.

2       (A SHORT BREAK FROM 1.33 P.M. TO 1.55 P.M.)

3              THE COURT REPORTER:  WE ARE BACK ON

4    THE RECORD AT 13.55.

5    BY MISS LEAHY:

6          Q.    I WANT TO MOVE ON FROM COLLECTIVE

7    JUDICIAL PROCEEDINGS TO ANOTHER PART OF THE TEST,

8    IF YOU COULD LOOK AGAIN AT THE BANKRUPTCY CODE,

9    AND SUBSECTION (23), PLEASE?

10         A.    OKAY.

11         Q.    WE HAVE ADDRESSED JUDICIAL

12   PROCEEDING, WE HAVE DISCUSSED AND NOT AGREED ON

13   OTHER PARTS OF THE DEFINITION, BUT I NOW WANT TO

14   LOOK AT THE PHRASE "UNDER A LAW RELATING TO

15   INSOLVENCY".

16         A.    MMM-HMM.

17         Q.    PART 5 OF THE COMPANIES ACT IS A

18   PART THAT DEALS WITH THE WINDING UP OF COMPANIES?

19         A.    YES.

20         Q.    AND ALL OFFICIAL LIQUIDATIONS,

21   SOLVENT OR INSOLVENT, MUST START LIFE OR MUST BE

22   INITIATED UNDER PART 5 OF COMPANIES ACT?

23         A.    YES.

24         Q.    AND PART 5 OF THE ACT IS A LAW

25   RELATING TO INSOLVENCY, IS IT NOT?

135

1        A.      WELL, THAT IS I THINK BEYOND THE

2   SCOPE OF MY EXPERTISE AND BEYOND THE SCOPE OF MY

3   OPINION, BECAUSE THAT IS, YOU KNOW, APPLYING

4   SECTION 23.

5        Q.      IN THE TCA GLOBAL CASE YOU OPINED

6   THAT THE PROCEEDING WAS UNDER A LAW RELATING TO

7   INSOLVENCY.  DO YOU WANT TO HAVE A LOOK AT THAT?

8        A.      YES, OKAY.  WHICH PARAGRAPH IS IT?

9        Q.      I WILL HAVE TO FIND IT.  IF YOU GO

10  TO PARAGRAPH 16 ON PAGE 6, IF YOU GO TO THE LAST

11  SENTENCE.

12       A.      OKAY.

13       Q.      SO IN THAT CASE YOU CONSIDERED

14  YOURSELF TO HAVE APPROPRIATE EXPERTISE TO OPINE ON

15  THAT QUESTION, OKAY?

16       A.      YES.

17       Q.      WHAT HAS CHANGED SINCE YOU MADE

18  THAT AFFIDAVIT?

19       A.      WELL, TCA IS A VERY DIFFERENT CASE.

20  TCA IS A COMPANY THAT WAS PUT INTO LIQUIDATION

21  FOLLOWING A CREDITORS' WINDING UP PETITION AND WAS

22  THEN CERTIFIED BY THE LIQUIDATORS TO BE OF

23  DOUBTFUL SOLVENCY, SO ----

24       Q.      CAN I JUST PAUSE YOU THERE, BECAUSE

25  I THINK WE MAY BE MILES APART.  I KNOW THAT THE

1   FACTS ARE DIFFERENT.  I AM JUST ASKING WHAT HAS

2   CHANGED IN TERMS OF YOUR EXPERIENCE, THAT YOU ONCE

3   THOUGHT YOU COULD OPINE ON THIS QUESTION AND NOW

4   YOU NO LONGER THINK YOU CAN OPINE ON THIS

5   QUESTION?

6           MR. MORRIS:  OBJECTION TO THE FORM

7   OF THE QUESTION.  YOU CAN ANSWER.

8       A.    I MEAN, BOTH IN TCA AND IN THIS

9   CASE I WAS GUIDED BY MY US ATTORNEYS AS TO WHAT

10   WAS APPROPRIATE TO INCLUDE IN MY DECLARATION AND

11   WHAT WAS NOT APPROPRIATE TO INCLUDE.

12   BY MISS LEAHY:

13       Q.    HOW WERE YOU SO GUIDED?  IN YOUR

14   INSTRUCTIONS?

15       A.    YES.

16       Q.    RIGHT.  SO DID YOUR WRITTEN

17   INSTRUCTIONS TO YOU ASKING YOU TO OPINE ON CERTAIN

18   THINGS SAY WE DO NOT WISH YOU TO OPINE ON THE

19   FOLLOWING MATTERS?

20       A.    NO.  I HAD A WRITTEN LETTER OF

21   INSTRUCTIONS.  I AM NOT SURE TO WHAT EXTENT I AM

22   SUPPOSED TO TALK ABOUT MY CONVERSATIONS WITH ----

23       Q.    THE SCOPE OF THE INSTRUCTIONS THAT

24   ARE PRIVILEGED, AND I AM SURE THERE WILL BE

25   INTERVENTIONS.

1          A.     ---- PACHULSKI.  YOU KNOW, I HAD A

2   WRITTEN LETTER OF INSTRUCTIONS FROM THEM AND

3   SUBSEQUENTLY A CALL WITH THEM TO DISCUSS THE SCOPE

4   OF THE OPINION.  THEY CONFIRMED MY UNDERSTANDING,

5   WHICH WAS THAT MY ROLE WAS SOLELY TO OPINE ON THE

6   ISSUES THAT ARE SET OUT AT PARAGRAPH 9 OF MY

7   DECLARATION WHICH RELATE TO THE CAYMAN PROCESS AND

8   THAT MY ROLE WAS NOT TO TAKE THE FURTHER STEP OF

9   SEEKING TO OPINE ON WHETHER THE PROCESS WAS A

10  FOREIGN PROCEEDING.

11         Q.     OKAY.  YOU ARE A HIGHLY QUALIFIED

12  LAWYER AND YOU HAVE EXPERIENCE IN INSOLVENCY AND

13  RESTRUCTURING AND THE MODEL LAW, WE ALREADY

14  ESTABLISHED THAT.

15         A.     YES.

16         Q.     AND WE HAVE SEEN A DECLARATION THAT

17  YOU HAVE MADE IN OTHER PROCEEDINGS WHERE YOU DID

18  CONSIDER THAT YOU HAD SUFFICIENT QUALIFICATIONS

19  AND EXPERIENCE TO SAY WHETHER SOMETHING WAS OR WAS

20  NOT A LAW RELATING TO INSOLVENCY, OKAY?  SO I WANT

21  TO NOW ASK YOU SOME QUESTIONS, AND OBJECTION MAY

22  BE TAKEN IN DUE COURSE TO THOSE QUESTIONS, BUT

23  I AM GOING TO ASK YOU SOME QUESTIONS ABOUT YOUR

24  OPINION AS A CAYMAN LAWYER ON WHETHER THE CAYMAN

25  PROCEEDING IS A PROCEEDING UNDER A LAW RELATING TO

138

1    INSOLVENCY.

2         A.    OKAY.

3         Q.    I JUST WANT TO START AGAIN WITH IS

4    PART 5 OF THE ACT A LAW RELATING TO INSOLVENCY?

5         A.    WELL, IT IS A PART OF THE COMPANIES

6    ACT AND THE COMPANIES ACT IS A LAW WHICH DEALS

7    WITH ALL ASPECTS OF THE LIFE CYCLE OF A COMPANY IN

8    THE CAYMAN ISLANDS, INCLUDING THEIR INSOLVENCY.

9         Q.    YES.  OKAY.  COULD I ASK THE

10   QUESTION AGAIN?  IS PART 5 OF THE ACT A LAW

11   RELATING TO INSOLVENCY?

12              MR. MORRIS:  OBJECTION.  ASKED AND

13   ANSWERED.

14              MISS LEAHY:  NO, IT WAS NOT

15   ANSWERED.

16              MR. MORRIS:  YOU DO NOT THINK IT

17   WAS.  I AM JUST GOING TO PRESERVE MY OBJECTION.

18              MISS LEAHY:  I AM NOT USED TO THESE

19   OBJECTIONS.

20              MR. MORRIS:  YES.

21        A.    I MEAN, I KNOW I HAVE READ FOR

22   BACKGROUND, YOU KNOW, VARIOUS DECISIONS ON WHAT

23   DOES AND DOES NOT CONSTITUTE A LAW RELATING TO

24   INSOLVENCY AND I KNOW THERE IS A DEBATE ABOUT, YOU

25   KNOW, WHETHER IT HAS TO BE A SPECIFIC LAW THAT

139

1  JUST DEALS WITH INSOLVENT COMPANIES OR WHETHER

2  SOLVENT AND INSOLVENT ARE MIXED UP IN THE SAME LAW

3  OR THE SAME SECTION AND WHETHER THAT MAKES A

4  DIFFERENCE.  HONESTLY, I DO NOT THINK IT IS

5  SOMETHING ON WHICH I AM QUALIFIED TO OPINE.

6  BY MISS LEAHY:

7          Q.    BECAUSE?

8          A.    WELL, BECAUSE IT IS A QUESTION OF

9  US LAW, AND I AM NOT A US LAWYER.

10         Q.    BUT YOU ARE A LAWYER AND I AM

11  ASKING YOU ----

12         A.    I AM A LAWYER.  I AM A CAYMAN

13  LAWYER AND I CAN OPINE ON THE MEANING OF SECTIONS

14  OF CAYMAN LEGISLATION, BUT ----

15         Q.    THE US JUDGE I AM SURE WILL BE VERY

16  INTERESTED TO KNOW WHETHER A CAYMAN LAWYER THINKS

17  THAT PART 5 OF THE ACT IS A LAW RELATING TO

18  INSOLVENCY.  THAT IS OUR POSITION, AND THAT IS WHY

19  I AM GOING TO CONTINUE TO ASK YOU QUESTIONS ABOUT

20  IT.

21         A.    I MEAN, PARTS OF ITS ARE AND PARTS

22  OF IT ARE NOT.

23         Q.    PARTS OF PART 5 ARE AND PARTS OF 5

24  ARE NOT, IS THAT WHAT YOU ARE SAYING?

25         A.    YES.

1   Q.    RIGHT, I SEE.  LET US GO THROUGH A

2   FEW HYPOTHESES.

3   A.    OKAY.

4   Q.    A CREDITOR PRESENTS A PETITION FOR

5   THE WINDING UP OF A CAYMAN COMPANY ON THE BASIS

6   THAT IT IS UNABLE TO PAY ITS DEBTS AS THEY FALL

7   DUE, THE COURT MAKES A WINDING UP ORDER, WAS THE

8   WINDING UP ORDER MADE UNDER A LAW RELATING TO

9   INSOLVENCY?

10   MR. MORRIS:  OBJECTION TO THE FORM

11   OF THE QUESTION TO THE EXTENT THAT IT IS CALLING

12   FOR THE INTERPRETATION OF US LAW, BUT OTHERWISE

13   YOU CAN ANSWER.

14   A.    SO WE ARE TALKING ABOUT A CREDITOR

15   OF A CAYMAN COMPANY?

16   BY MISS LEAHY:

17   Q.    YES.

18   A.    IT IS CAYMAN COMPANY THAT IS BEING

19   WOUND UP ON A CREDITOR'S PETITION?

20   Q.    ALWAYS IN CAYMAN, YES.

21   A.    YES.  SO YES.

22   Q.    YES.  TWO WEEKS LATER, SAME FACTS,

23   THE OFFICIAL LIQUIDATOR MAKES AN ORDER 8

24   DETERMINATION AND DETERMINES THAT THE COMPANY IS

25   INSOLVENT.

141

1          A.     MMM-HMM.

2          Q.     IN THAT SITUATION THE OFFICIAL

3   LIQUIDATION IS AN INSOLVENT LIQUIDATION, CORRECT?

4          A.     YES.

5          Q.     SORRY IT IS THE SAME QUESTION

6   AGAIN, AND YOU PROBABLY WILL HAVE THE SAME ANSWER

7   THROUGHOUT, BUT WAS THE WINDING UP ORDER MADE

8   UNDER A LAW RELATING TO INSOLVENCY?

9          A.     YES.

10         Q.     RIGHT.  SAME FACTS, BUT RATHER THAN

11  MAKE A SOLVENCY DETERMINATION, THE OFFICIAL

12  LIQUIDATOR MAKES A SOLVENCY DECLARATION, RIGHT?

13  IN THIS SCENARIO THE OFFICIAL LIQUIDATION IS A

14  SOLVENT LIQUIDATION?

15         A.     OKAY.

16         Q.     WAS THE WINDING UP ORDER MADE UNDER

17  A LAW RELATING TO INSOLVENCY?

18         A.     THAT IS AN INTERESTING QUESTION, IS

19  IT NOT?  WELL, I THINK IT IS INTERESTING.  IT IS

20  QUITE UNLIKELY AS WELL, BECAUSE YOU HAVE GOT

21  COMPANY BEING WOUND UP ON A CREDITOR'S PETITION

22  BUT THEN THE LIQUIDATOR CERTIFYING IT AS SOLVENT.

23         Q.     I AM NOT INTERESTED IN THE

24  LIKELIHOOD OF IT.

25         A.     OKAY.

142

1          Q.     I AM INTERESTED IN MY HYPOTHESIS.

2          A.     OKAY.

3          Q.     I WANT TO KNOW WHETHER THE WINDING

4    UP ORDER MADE ON THE CREDITOR'S PETITION WAS MADE

5    UNDER A LAW RELATING TO INSOLVENCY.

6          A.     WELL, A WINDING UP ORDER IN THIS

7    CASE WAS MADE UNDER ----

8          Q.     I AM NOT TALKING ABOUT THIS CASE.

9    I AM ----

10         A.     THE HYPOTHETICAL CASE?

11         Q.     YES, SORRY.

12         A.     THIS CASE THAT WE ARE TALKING

13   ABOUT, THIS HYPOTHETICAL CASE.

14              MISS LEAHY:  DO YOU HAVE SOMETHING

15   YOU WOULD LIKE TO CONTRIBUTE TO THE DEPOSITION?

16              MR. JOHNSTONE:  NO, NO, I WAS

17   LAUGHING AT THE EXCHANGE, WHICH I THOUGH WAS

18   FUNNY, AND I LAUGHED.

19              MISS LEAHY:  OKAY, FINE.  IT IS

20   JUST THAT SOMETIMES IT CAN BE QUITE DIFFICULT FOR

21   THE TRANSCRIPT.

22              MR. JOHNSTONE:  I AM SORRY.

23         A.     OKAY, THIS IS A WINDING UP ORDER

24   ----

25              MR. MORRIS:  I AM SORRY, WHERE ARE

143

1    YOU POINTING TO?

2          A.    SORRY, IN THE COMPANIES ACT,

3    EXHIBIT 2.  SO, A WINDING UP ORDER MADE UNDER

4    SECTION 92D ON THE GROUND THAT THE COMPANY IS

5    UNABLE TO PAY ITS DEBTS, SO IN MY OPINION, TO THE

6    EXTENT THAT MY OPINION IS RELEVANT ----

7    BY MISS LEAHY:

8          Q.    ALL CAVEATS HEARD AND EXCEPTED BY

9    THE WAY.

10         A.    ---- THE WINDING UP ORDER IN THIS

11   HYPOTHETICAL CASE IS MADE UNDER A LAW RELATING TO

12   INSOLVENCY, BUT QUERY WHETHER IN THE UNUSUAL TURN

13   OF EVENTS THAT THE LIQUIDATOR THEN CERTIFIES IT AS

14   SOLVENT, WHETHER IT IS THEN A PROCEEDING UNDER A

15   LAW RELATING TO INSOLVENCY, BECAUSE IT IS THEN

16   PROCEEDING AS A SOLVENT LIQUIDATION, AND AS WE

17   HAVE ALREADY DISCUSSED AT LENGTH, THE CREDITORS

18   HAVE ONLY A VERY, VERY LIMITED ROLE TO PLAY, SO

19   WHETHER IT IS A NOW A PROCEEDING UNDER A LAW

20   RELATING TO INSOLVENCY I DO NOT KNOW.  I WOULD SAY

21   NO.  BUT THIS IS KIND OF WHAT WE DISCUSSED AT THE

22   START.  SO THERE IS THE GATEWAY BY WHICH THE

23   COMPANY GETS INTO THE INSOLVENCY PROCEEDING AND,

24   YOU KNOW, IT CAN BE AN OFFICIAL -- YOU KNOW, IT

25   CAN BE A WINDING UP PETITION OR IT CAN BE

1  VOLUNTARY THAT GOES UNDER SUPERVISION.  SO WE HAVE

2  GOT THE GATEWAY, WHICH IS ONE THING, AND THEN WE

3  HAVE THE PROCEEDING ITSELF, WHICH DEPENDS ON THE

4  SOLVENCY DETERMINATION.

5          Q.     OKAY.  AT THE VERY START I THINK WE

6  ESTABLISHED A LOT OF COMMON GROUND ----

7          A.     YES.

8          Q.     ---- AND THE NUMEROUS PROVISIONS OF

9  PART 5 OF THE COMPANIES ACT THAT APPLY TO BOTH

10  SOLVENT AND INSOLVENT LIQUIDATIONS, DID WE NOT?

11          A.     YES.

12          Q.     AND I THINK WE ESTABLISHED FAR MORE

13  PROVISIONS OF THE ACT THAT APPLIED TO BOTH FORMS

14  OF INSOLVENCY THAN WE FOUND PROVISIONS OF THE ACT

15  THAT ONLY APPLIED TO ONE OR OTHER FORM OF

16  PROCEEDING?

17          MR. MORRIS:  OBJECTION TO THE FORM

18  OF THE QUESTION.

19          A.     THAT IS ----

20  BY MISS LEAHY:

21          Q.     BOTH FORMS OF LIQUIDATION.  SO WE

22  HAVE ESTABLISHED FAR MORE PROVISIONS OF THE ACT

23  THAT APPLIED TO BOTH FORMS OF THE LIQUIDATION THAN

24  WE FOUND PROVISIONS OF THE ACT THIS ONLY APPLIED

25  TO ONE OR OTHER FORM OF PROCEEDING.

145

1          MR. MORRIS:  OBJECTION TO THE FORM

2    OF THE QUESTION.

3          A.    YES, I MEAN, THERE ARE A LOT OF

4    PROVISIONS THAT APPLY TO BOTH.  THERE ARE A LOT OF

5    PROVISIONS THAT APPLY TO BOTH BUT THAT

6    SPECIFICALLY STATE IF IT IS SOLVENT,

7    CONTRIBUTORIES.  IF IT IS INSOLVENT, CREDITORS.

8    WHETHER THERE ARE MORE OF ONE OR THE OTHER I AM

9    NOT SURE, BUT IT IS HELPFUL FOR US TO GO THROUGH

10   SECTION BY SECTION AND DO A TALLY.

11   BY MISS LEAHY:

12         Q.    COME ON!  WE WENT THROUGH ----

13         A.    YOU WENT THROUGH A FEW THAT YOU

14   PICKED OUT, BUT YES, I ACCEPT THAT THERE ARE A LOT

15   OF ----

16         Q.    THIS ENTIRE DECLARATION IS DESIGNED

17   TO SET OUT THE DIFFERENCES BETWEEN A SOLVENT

18   LIQUIDATION AND AN INSOLVENT LIQUIDATION.  SO IF

19   YOU HAD IDENTIFIED ANY MORE PROVISIONS THAT WERE

20   HELPFUL TO YOUR ANALYSIS, THAT THERE ARE

21   SIGNIFICANT DIFFERENCES BETWEEN THE TWO FORMS OF

22   PROCEDURE, YOU WOULD HAVE SET THEM OUT IN YOUR

23   DECLARATION, WOULD YOU NOT?

24         MR. MORRIS:  OBJECTION.

25   ARGUMENTATIVE.

146

1          A.     YES, I MEAN, I WOULD HAVE SET

2     OUT -- YES, YES, I AGREE.

3     BY MISS LEAHY:

4          Q.     ALL YOU WERE ABLE TO SHOW WAS A

5     HANDFUL OF DIFFERENCES BETWEEN THE TWO TYPES OF

6     PROCEDURE?

7               MR. MORRIS:  OBJECTION TO THE FORM

8     OF THE QUESTION.

9          A.     VERY IMPORTANT DIFFERENCES.

10    BY MISS LEAHY:

11         Q.     VERY IMPORTANT DIFFERENCES?

12         A.     YES.

13         Q.     OKAY, WE WILL NOT GO OVER THAT

14    AGAIN.  YOU HAVE GOT THE INSOLVENCY -- SORRY, THE

15    COMPANIES ACT, AND THAT WAS REALLY A SLIP OF THE

16    TONGUE, BECAUSE, AS YOU KNOW, IN ENGLAND WE HAVE

17    THE INSOLVENCY ACT.

18         A.     YES.

19         Q.     YOU HAVE THE COMPANIES ACT THERE.

20    IF YOU JUST FLICK THROUGH SECTIONS 138-150, WE CAN

21    SEE ALL THE PROVISIONS APPLY TO BOTH FORMS OF

22    PROCEEDING.

23         A.     WELL, NO.  138 I THINK DOES, BUT

24    139 AND 140, WHICH ARE ABOUT THE PAYMENT OF DEBTS,

25    THOSE APPLY IN INSOLVENT LIQUIDATION.

147

1    Q.    WHY DOES NOT 139(1) APPLY IN A

2  SOLVENT LIQUIDATION?  I AM SORRY, I DO NOT FOLLOW

3  THAT.

4    A.    THIS IS, YOU KNOW, THE PROOF OF

5  DEBT PROCEDURE, WHICH IS NOT GENERALLY USED IN A

6  SOLVENT LIQUIDATION.  WE HAVE ALREADY LOOKED AT

7  ORDER 16, RULE 1(3).  I KNOW THAT A LIQUIDATOR CAN

8  REQUEST A PROOF OF DEBT FOR A DEBT WHOSE EXISTENCE

9  OR AMOUNT IS DISPUTED ----

10   Q.    YES.

11   A.    ---- IN A SOLVENT LIQUIDATION.  BUT

12  YOU KNOW, 139(1) AND ORDER 16 GENERALLY BEING USED

13  FOR ALL DEBTS OF THE COMPANY, THAT IS ONLY THE

14  CASE IN AN INSOLVENT LIQUIDATION.

15   Q.    FIRST OF ALL, IT DOES NOT SAY THAT

16  IT ONLY APPLIES TO AN INSOLVENT LIQUIDATION, DOES

17  IT?

18   A.    WELL, NO, BUT, I MEAN -- IT DOES

19  NOT SPECIFICALLY SAY INSOLVENT, NO.

20   Q.    GO BACK TO SECTION 131.  ACTUALLY

21  THIS IS THE EASIEST WAY TO MAKE THIS POINT.  131

22  IS AN APPLICATION FOR A SUPERVISION ORDER.  WE

23  ALSO KNOW THAT THE LIQUIDATOR IS REQUIRED TO APPLY

24  UNDER 124 AS WELL IN CERTAIN CIRCUMSTANCES.

25   A.    YES.

148

KATHARINE LUCY BLADEN PEARSON

1          Q.     THEN IF YOU GO TO 133, EFFECT OF A

2     SUPERVISION ORDER.

3          A.     YES.

4          Q.     RIGHT?

5          A.     YES.

6          Q.     SO AGAIN WHY DOES 139(1) APPLY,

7     BECAUSE IT SEEMS TO ON ITS TERMS, DOES IT NOT, AND

8     THIS IS THE MAIN STATUTE?

9          A.     HANG ON, ARE YOU ASKING ME ABOUT

10    133 ----

11          MR. MORRIS:  OBJECTION TO THE FORM

12    OF THE QUESTION.

13          A.     ---- OR 139?

14    BY MISS LEAHY:

15          Q.     139(1).  WHY DOES IT NOT APPLY TO

16    SOLVENT LIQUIDATIONS?

17          A.     WELL, IT IS ADMISSIBLE TO PROOF.

18    SO THIS IS TALKING ABOUT THE LIQUIDATOR CALLING

19    FOR PROOFS OF DEBT AND PAYING OUT UNDER SECTION

20    140 PARI PASSU.

21          Q.     IT IS NOT TALKING ABOUT PROOF OF

22    DEBT, IS IT?  IT IS ABOUT SAYING WHO IS ENTITLED

23    TO MAKE A CLAIM AGAINST THE ESTATE.  THAT IS WHAT

24    IT IS SAYING.  IT NOT SAYING HOW THEY SHOULD MAKE

25    THAT CLAIM.  IT IS SAYING WHO IS ENTITLED TO MAKE

149

1   A CLAIM.

2          A.     YES.

3          Q.     SO IT DOES APPLY TO SOLVENT

4   LIQUIDATIONS, DOES IT NOT, BECAUSE A LIQUIDATOR OF

5   A SOLVENT LIQUIDATION HAS TO KNOW WHAT CLASS OF

6   CREDITOR IS ENTITLED TO ACTUALLY MAKE A CLAIM

7   AGAINST THE COMPANY?

8          A.     OKAY.  WELL, IT APPLIES TO SOLVENT

9   LIQUIDATIONS IN THE SAME WAY THAT IT APPLIES TO

10  THE WORLD TO ANY COMPANY.  I MEAN, IT IS JUST

11  SAYING ANY CREDITOR CAN MAKE A CLAIM.

12         Q.     YES.  I AM SORRY, I DO NOT

13  UNDERSTAND THE DISTINCTION YOU ARE TRYING TO DRAW

14  BETWEEN HOW IT APPLIES TO A SOLVENT LIQUIDATION

15  AND HOW IT APPLIES TO AN INSOLVENT LIQUIDATION?

16  IT APPLIES IN THE SAME WAY TO BOTH, DOES IT NOT?

17         A.     I MEAN, I AGREE THAT CREDITORS CAN

18  CLAIM AGAINST THE COMPANY IN A SOLVENT AND AN

19  INSOLVENT LIQUIDATION.  IT IS JUST THAT THE PROOF

20  OF DEBT PROCEDURE DOES NOT APPLY IN A SOLVENT

21  LIQUIDATION.

22         Q.     IT CAN APPLY, CAN IT NOT?

23         A.     IT CAN IN THE CIRCUMSTANCES WE HAVE

24  ALREADY DISCUSSED.

25         Q.     AND IT CAN BE DISAPPLIED IN A

150

1    SOLVENT -- IN AN INSOLVENT LIQUIDATION, AS WE HAVE

2    DISCUSSED?

3          A.    YES.

4          Q.    YES.  I AM NOT GOING TO GO THROUGH

5    ALL OF THESE, BECAUSE WE HAVE SEEN WHAT 133 SAYS?

6          A.    YES.

7          Q.    YES?

8          A.    YES, BUT 133 IS JUST -- IT IS ABOUT

9    THE GATEWAY.  SO IT IS SAYING BECAUSE THE EFFECT

10   OF A SUPERVISION ORDER IS THE SAME AS THE EFFECT

11   OF AN ORDER THAT THE COMPANY BE WOUND UP BY THE

12   COURT SO IT BRINGS IT INTO THE SAME POSITION AS IF

13   IT WERE IN OFFICIAL LIQUIDATION, BUT THERE IS

14   STILL A BIG DISTINCTION BETWEEN SOLVENT AND

15   INSOLVENT OFFICIAL LIQUIDATION.

16         Q.    IS SECTION 139(1) A LAW RELATING TO

17   INSOLVENCY?

18         A.    I MEAN, IN MY OPINION, PROBABLY

19   YES.

20         Q.    WHAT ABOUT SECTION 138, WHILE WE

21   ARE ON THAT PAGE?

22         A.    WELL, I MEAN, IN MY OPINION IF YOU

23   ARE TALKING ABOUT -- I MEAN, IF YOU ARE TALKING

24   ABOUT AN INSOLVENT COMPANY, PROBABLY YES.  IF YOU

25   ARE TALKING ABOUT A SOLVENT COMPANY, PROBABLY NOT.

151

1          Q.     OH MY GOODNESS!  SO THE GRANULARITY

2   IS THIS, THAT SOME SECTIONS OF THE ACT YOU SAY ARE

3   LAWS RELATING TO INSOLVENCY BUT SOME SECTIONS OF

4   THE ACT THAT ARE LAWS RELATING TO INSOLVENCY ARE

5   ONLY LAWS RELATING TO INSOLVENCY IF THE COMPANY IS

6   INSOLVENT.  IS WHAT YOU ARE SAYING?

7               MR. MORRIS:  OBJECTION.

8   ARGUMENTATIVE AND I MOVE TO STRIKE THE PRELIMINARY

9   COMMENT.

10               MR. MCDONALD:  SHE CAN ANSWER.

11          A.     I MEAN, I AM TRYING TO ANSWER YOUR

12   QUESTIONS.  I AM NOT SURE IT IS PARTICULARLY A

13   FRUITFUL LINE OF QUESTIONING, BUT I AM DOING MY

14   BEST.

15   BY MISS LEAHY:

16          Q.     WE THINK IT IS A VERY FRUITFUL LINE

17   OF QUESTIONING.

18               MR. MORRIS:  WE DO, BY THE WAY.

19   PLEASE STOP THE COMMENTARY WITH MY EXPERT.  JUST

20   ASK THE QUESTIONS.  JUST ASK THE QUESTIONS.

21               MISS LEAHY:  I COULD START TO ----

22               MR. MCDONALD:  SHE HAS ----

23               MR. MORRIS:  JUST ASK THE

24   QUESTIONS.  I KNOW IT IS GETTING FRUSTRATING, BUT

25   LET US FINISH THIS UP.

152

1              MISS LEAHY:  IS IT GETTING

2   FRUSTRATING?  RIGHT.

3              MR. MORRIS:  IT LOOKS LIKE IT.

4              MISS LEAHY: I THINK THIS IS NOT

5   HELPFUL.

6              MR. MORRIS:  I KNOW.  SO PLEASE

7   JUST ASK THE QUESTIONS.

8              MISS LEAHY:  WE ARE HAVING A VERY

9   RESPECTFUL, POLITE DISCUSSION AND IT WOULD BE

10  HELPFUL IF WE DID NOT HAVE THIS SORT OF

11  INTERVENTION ON A REGULAR BASIS.

12             MR. MORRIS:  I AM FORCED TO DEFEND

13  MY EXPERT WHEN THE QUESTIONS BECOME HOSTILE.

14  BY MISS LEAHY:

15        Q.    I WANT TO ASK THIS QUESTION AGAIN

16  BECAUSE I REALLY WANT TO UNDERSTAND YOUR EVIDENCE

17  ON THIS POINT AND THE LEVEL OF GRANULARITY THAT

18  YOU SAY SHOULD BE APPLIED TO THE QUESTION OF

19  WHETHER SOMETHING IS LAW RELATING TO INSOLVENCY.

20  YOU SAID THAT YOU THOUGHT SECTION 139 WAS A LAW

21  RELATING TO INSOLVENCY.  WHEN I ASKED YOU ABOUT

22  SECTION 138, YOU GAVE A DIFFERENT ANSWER.  YOUR

23  ANSWER WAS THAT SECTION 138 WAS A LAW RELATING TO

24  INSOLVENCY IF THE COMPANY WAS INSOLVENT, BUT IT

25  WAS NOT IF THE COMPANY WAS SOLVENT, RIGHT?  CAN

153

1  YOU EXPLAIN THE DIFFERENCE IN YOUR ANSWERS IN

2  RELATION TO 139 AND 138?

3          A.     WELL, MY VIEW, AS WE HAVE ALREADY

4  DISCUSSED, IS THAT 139 RELATES TO THE PROCEDURE

5  FOR PROVING DEBTS IN AN INSOLVENT LIQUIDATION.

6          Q.     OKAY.  WHAT ABOUT SECTION 142,

7  WOULD YOU SAY THAT IS A LAW RELATING TO

8  INSOLVENCY?

9          A.     SECTION 142 IS JUST PRESERVING THE

10  POSITION FOR SECURED CREDITORS TO ENFORCE THEIR

11  SECURITY AND ----

12          Q.     IN A LIQUIDATION?

13          A.     IN A LIQUIDATION.  THAT WOULD HAVE

14  TO APPLY FOR BOTH INSOLVENT AND SOLVENT

15  LIQUIDATIONS BECAUSE THE STATUTORY STAY APPLIES

16  WHETHER THE LIQUIDATION IS SOLVENT OR INSOLVENT.

17          Q.     YES.  SO DO YOU THINK IT IS A LAW

18  RELATING TO INSOLVENCY, OR NOT?

19          A.     WELL, I MEAN, ARGUABLY AS WITH MY

20  ANSWER TO SECTION 138, IT WOULD DEPEND ON WHETHER

21  THE LIQUIDATION IS SOLVENT OR INSOLVENT.

22          Q.     IF YOU CHANGE THE DETERMINATION OF

23  THE LIQUIDATION FROM INSOLVENT TO SOLVENT, THEN

24  YOU ALSO CHANGE THE DETERMINATION OF THAT

25  PARTICULAR SECTION OF THE ACT AS WELL, DO YOU?

154

```
 1          A.      POSSIBLY.  I MEAN, I REALLY THINK

 2   THIS IS BEYOND THE SCOPE -- YOU KNOW, WE HAVE

 3   DISCUSSED WHETHER THIS IS SOMETHING THAT I CAN

 4   OPINE ON.  YOU ARE PUSHING ME TO OPINE ON IT, SO

 5   I AM TRYING.

 6          Q.      YES, I APPRECIATE THAT.

 7          A.      I KNOW IT IS VERY CONTRITE.

 8          Q.      JUST ONE MORE.

 9          A.      OKAY.

10          Q.      SECTION 97.

11          A.      OKAY.

12          Q.      THAT IS THE STAYING PROVISION.

13          A.      YES.

14          Q.      IS THAT A LAW RELATING TO

15   INSOLVENCY?

16          A.      YOU KNOW, AGAIN, AS WE HAVE

17   DISCUSSED, SECTION 97 APPLIES TO BOTH SOLVENT AND

18   INSOLVENT LIQUIDATIONS.  I THINK MY ANSWER IN

19   RELATION TO THAT SECTION WOULD BE THE SAME AS MY

20   ANSWER IN RELATION TO 138 AND THE OTHER SECTIONS

21   THAT WE HAVE LOOKED AT THAT APPLY TO BOTH.

22          Q.      OKAY.  HOWEVER PAINFUL IT IS,

23   I WANT TO TAKE YOU THROUGH A FEW MORE HYPOTHESES.

24          A.      OKAY.

25          Q.      THIS TIME THE DEBTOR IS IN
```

155

1   VOLUNTARY LIQUIDATION.

2           A.      OKAY.

3           Q.      THE CREDITOR APPLIES TO COURT FOR A

4   SUPERVISION ORDER ON THE BASIS THAT THE COMPANY IS

5   UNABLE TO PAY ITS DEBTS.

6           A.      OKAY.

7                   MR. MORRIS:  I APOLOGISE, DID YOU

8   SAY ----

9                   MISS LEAHY:  VOLUNTARY LIQUIDATION.

10                  MR. MORRIS:  VOLUNTARY LIQUIDATION.

11          A.      SO THE CREDITOR IS APPLYING FOR A

12  SUPERVISION ORDER?

13  BY MISS LEAHY:

14          Q.      UNDER SECTION 131.

15          A.      OKAY.

16          Q.      THE COURT MAKES A SUPERVISION

17  ORDER.  IS THE OFFICIAL LIQUIDATION A SOLVENT OR

18  AN INSOLVENT LIQUIDATION?

19          A.      WELL, THAT IS FOR THE LIQUIDATOR TO

20  DETERMINE.

21          Q.      RIGHT.  AND WAS THE WINDING UP

22  ORDER MADE UNDER A LAW RELATING TO INSOLVENCY?

23          A.      IF THE SUPERVISION APPLICATION WAS

24  MADE UNDER SECTION 131A, THEN I WOULD SAY YES.

25          Q.      BUT WOULD YOU SAY NO IF IT WAS MADE

156

1    UNDER SECTION 131B?

2            A.      YES, I WOULD.

3            Q.      SO ON YOUR UNDERSTANDING OF LAW

4    RELATING TO INSOLVENCY, YOU COULD EVEN DIVIDE UP

5    SECTIONS.  SOME PARTS OF SECTIONS CAN BE A LAW

6    RELATING TO INSOLVENCY AND OTHER PARTS OF THE

7    SECTION CANNOT BE A LAW RELATING TO INSOLVENCY?

8            A.      COULD BE.

9            Q.      IS THAT YOUR OPINION?

10           A.      TO THE EXTENT THAT I HAVE AN

11   OPINION, YES.

12           Q.      SAME FACTS, VOLUNTARY LIQUIDATION

13   AGAIN.  THIS TIME THE OFFICIAL LIQUIDATOR MAKES AN

14   ORDER 8 DETERMINATION THAT THE COMPANY IS SOLVENT.

15   WAS THE SUPERVISION ORDER MADE UNDER A LAW

16   RELATING TO INSOLVENCY?

17           A.      THE SUPERVISION ORDER WILL STILL BE

18   MADE UNDER SECTION 131A.

19           Q.      MMM-HMM.

20           A.      SO I WOULD SAY THE SUPERVISION

21   ORDER WAS MADE UNDER A LAW RELATING TO INSOLVENCY

22   BUT THE PROCEEDING IS NOT NOW PROCEEDING UNDER A

23   LAW RELATING TO INSOLVENCY.

24           Q.      OKAY.  GOING BACK TO A COURT

25   COMPULSORY ORDER ----

157

1          A.     OKAY.

2          Q.     ---- A COURT MAKES A WINDING UP

3    ORDER ON THE PETITION OF A CREDITOR WHO SAYS THAT

4    THE COMPANY IS UNABLE TO PAY ITS DEBTS AS THEY

5    FALL DUE.

6          A.     YES.

7          Q.     THE OFFICIAL LIQUIDATOR MAKES AN

8    ORDER 8 DECLARATION THAT THE COMPANY IS INSOLVENT

9    AND ONE MONTH LAYER HE CHANGES HIS MIND AND MAKES

10   A NEW ORDER 8 DECLARATION THAT THE COMPANY IS IN

11   FACT INSOLVENT.

12         A.     OKAY.

13         Q.     SO CREDITOR'S PETITION, COMPANY

14   UNABLE TO PAY ITS DEBTS, WINDING UP ORDER MADE BY

15   THE COURT, DETERMINATION OF INSOLVENCY FOLLOWED BY

16   A DETERMINATION OF SOLVENCY.

17         A.     MMM-HMM.

18         Q.     IS THE OFFICIAL LIQUIDATION

19   COMPULSORY ORDER MADE UNDER A LAW RELATING TO

20   INSOLVENCY?  I THINK YOUR ANSWER TO THAT IS YES,

21   AND IN YOUR PREVIOUS ANSWERS.

22         A.     YES.

23         Q.     DID THE STATUS OF THAT ORDER CHANGE

24   AT ANY TIME DURING THE VARIOUS DETERMINATIONS THAT

25   THE OFFICIAL LIQUIDATOR MADE?

1          A.      SO NOT THE STATUS OF THE ORDER BUT

2    THE STATUS OF THE PROCEEDING.

3          Q.      CAN YOU EXPLAIN TO ME HOW YOU

4    DIFFERENTIATE THE PROCEEDING FROM THE INITIATION

5    ORDER, BECAUSE WHEN ONE LOOKS AT AN INITIATION

6    ORDER IN THE CAYMAN ISLANDS IT SAYS IN OFFICIAL

7    LIQUIDATION, RIGHT?

8          A.      YES.

9          Q.      YOU DO NOT SEE ANY ORDERS OR ANY

10   TITLES WHICH SAY IN SOLVENT OFFICIAL LIQUIDATION

11   OR INSOLVENT OFFICIAL LIQUIDATION?

12         A.      NO, THAT IS CORRECT.

13         Q.      AND THE NUMBER, THAT IS THE FSD

14   NUMBER, THAT IS APPLIED TO THE ORDER, THE ORIGINAL

15   ORDER, IS THE PROCEEDING NUMBER, RIGHT?

16         A.      YES.

17         Q.      AND THAT NEVER CHANGES THROUGHOUT

18   THE LIFE OF THE INSOLVENCY?

19         A.      NO.

20         Q.      SO THE PROCEEDING IS THE OFFICIAL

21   LIQUIDATION INITIATED BY THAT ORIGINAL WINDING UP

22   ORDER UNDER FSD NUMBER 51 OF 2017, LET US SAY?

23         A.      YES.

24         Q.      SO THAT IS WHY I AM STRUGGLING TO

25   UNDERSTAND THIS DISTINCTION THAT YOU ARE TRYING TO

159

1    DRAW BETWEEN WHETHER THE ORDER ITSELF WAS MADE

2    UNDER A LAW RELATING TO INSOLVENCY AND WHETHER THE

3    PROCEEDING, THE OFFICIAL LIQUIDATION, IS

4    PROCEEDING UNDER A LAW RELATING TO INSOLVENCY?

5           A.    I MEAN, I AM NOT REALLY TRYING TO

6    DRAW ANY DISTINCTIONS.  YOU KNOW, IT IS REALLY NOT

7    SOMETHING ON WHICH I FEEL QUALIFIED TO OPINE, BUT

8    YOU ARE PUSHING ME TO AND I AM TRYING TO ANSWER

9    THE QUESTIONS AS BEST I CAN.

10          Q.    OKAY.  I JUST WANT TO LOOK VERY

11   BRIEFLY AT FACTS THAT ARE MORE RELEVANT TO THIS

12   PARTICULAR CASE.

13          A.    OKAY.

14          Q.    BECAUSE I THINK YOU KNOW HERE THAT

15   WHAT ACTUALLY OCCURRED WAS THAT THERE WAS A

16   VOLUNTARY LIQUIDATION.

17          A.    YES.

18          Q.    AND THAT THE DIRECTORS DID NOT SIGN

19   THE DECLARATIONS OF SOLVENCY.

20          A.    YES.

21          Q.    AND THEREFORE THE LIQUIDATOR WAS

22   OBLIGATED TO APPLY TO COURT UNDER SECTION 124 FOR

23   A SUPERVISION ORDER?

24          A.    YES.

25          Q.    NOW, THE REASON THAT A LIQUIDATOR

160

1    IS REQUIRED TO APPLY TO COURT FOR A SUPERVISION

2    ORDER WHERE A DECLARATION FOR SOLVENCY HAS NOT

3    BEEN SIGNED BY ALL THE DIRECTORS IS BECAUSE IN

4    THAT SITUATION THE COMPANY IS DEEMED INSOLVENT,

5    RIGHT?

6             A.    WELL, I KNOW THERE HAVE BEEN A

7    COUPLE OF FIRST INSTANCE CASES IN CAYMAN WHERE THE

8    JUDGES HAVE SUGGESTED THAT THAT IS THE REASON THAT

9    SECTION 134 SAYS WHAT IT SAYS.  I AM NOT CONVINCED

10   THAT THEY ARE RIGHT, BUT I ACCEPT THAT THOSE

11   DECISIONS ARE OUT THERE, AND THAT IS WHAT THEY

12   SAY.

13            Q.    THAT IS VERY FAIR OF YOU.  IF WE

14   JUST STAND BACK AND WE LOOK AT A VOLUNTARY

15   LIQUIDATION AND SEE ONE OF ITS KEY DISTINGUISHING

16   FEATURES, WHICH IS THAT IT MUST ALWAYS BE A

17   SOLVENT LIQUIDATION, CORRECT?

18            A.    YES.

19            Q.    SO IF IT MUST ALWAYS BE A SOLVENT

20   LIQUIDATION, THEN THERE NEEDS TO BE SOME EARLY

21   MECHANISM TO ESTABLISH WHETHER THERE IS AT LEAST A

22   RISK OF INSOLVENCY?

23            A.    YES.

24            Q.    TO PUT IT ANOTHER WAY, WHAT IS THE

25   LIQUIDATOR SUPPOSED TO DO?  HE HAS JUST GOT HIS

161

1    FEET UNDER THE TABLE.  THERE ARE DIFFERENT THINGS

2    HE COULD DO, BUT WHAT THE LEGISLATION PRESCRIBES

3    IS THAT HE ASKS FOR DECLARATIONS OF SOLVENCY ----

4         A.    YES.

5         Q.    ---- AND THEN PRESCRIBES THAT IF

6    THEY ARE NOT SIGNED THE LIQUIDATOR HAS NO CHOICE

7    AT ALL, HE HAS TO MAKE AN APPLICATION TO COURT,

8    CORRECT?

9         A.    YES.

10        Q.    WHEN HE GOES TO COURT, SOMETIMES HE

11   HAS TO GIVE NOTICE TO THE CREDITORS AND THE

12   CONTRIBUTORIES, CORRECT?

13        A.    YES.

14        Q.    THEY CAN APPEAR, BUT THEY CAN ONLY

15   MAKE REPRESENTATIONS AS TO WHO IS GOING TO BE

16   APPOINTED OFFICIAL LIQUIDATOR, CORRECT?

17        A.    YES.

18        Q.    THEY CANNOT STOP THE COMPANY BEING

19   FLIPPED OR CONVERTED INTO OFFICIAL LIQUIDATION?

20        A.    CORRECT.

21        Q.    BECAUSE THE SAME SORT OF DEEMING

22   PROCESS IS UNDERTAKEN AS IS UNDERTAKEN WHERE A

23   CREDITOR PRESENTS A PETITION ON THE BASIS THAT ITS

24   INVOICE HAS NOT BEEN PAID?

25        A.    WELL, YOU SEE, THIS IS WHERE I AM

162

1   NOT SURE THAT THOSE FIRST INSTANCE DECISIONS ARE

2   RIGHT, BECAUSE YOU HAVE OFFICIAL LIQUIDATION ON A

3   CREDITOR'S PETITION BUT A LOT OF CAYMAN OFFICIAL

4   LIQUIDATIONS ARE ACTUALLY STARTED BY A

5   SHAREHOLDER'S PETITION, AND YOU HAVE THE JUST AND

6   EQUITABLE WINDING UP ----

7            Q.    YES.

8            A.    ---- JURISDICTION.  IN ORDER TO

9   SUCCEED ON A J AND E PETITION, THE SHAREHOLDER HAS

10  TO SHOW THAT THERE IS GOING TO BE A SURPLUS

11  AVAILABLE FOR DISTRIBUTION.  SO IT HAS TO SHOW

12  THAT IT HAS A TANGIBLE INTEREST ----

13           Q.    INTEREST, YES.

14           A.    ---- IN THE PROCEEDINGS.  SO THOSE

15  COMPANIES THAT ARE GOING INTO OFFICIAL LIQUIDATION

16  ARE BY DEFINITION SOLVENT.

17           Q.    MMM-HMM.

18           A.    I DO NOT REALLY HAVE A VIEW ON IT

19  ONE WAY OR THE OTHER, BUT I AM NOT SURE THAT THOSE

20  OBITER DICTA OF JONES AND QUINN, THOSE DECISIONS,

21  WHERE THEY SAY THAT THE REASON THAT IT IS GOING

22  INTO LIQUIDATION IS BECAUSE THERE IS A REBUTTABLE

23  PRESUMPTION OF INSOLVENCY.  I AM JUST NOT

24  CONVINCING THAT THAT IS THE CASE BECAUSE ----

25           Q.    THIS IS SOLELY BECAUSE ----

1          MR. MORRIS:  LET HER FINISH,

2   PLEASE.

3          MISS LEAHY:  I THOUGHT SHE HAD.

4          MR. MORRIS:  SHE HAD NOT.

5      A.    I JUST SEE THE SITUATION OF A

6   COMPANY IN VL THAT IS COMING UNDER COURT

7   SUPERVISION BECAUSE THE DIRECTORS HAVE NOT SIGNED

8   THE DECLARATION OF SOLVENCY.  I DO NOT SEE WHY

9   THAT IS MORE AKIN TO A COMPANY THAT IS GOING INTO

10  LIQUIDATION ON A CREDITOR'S PETITION THAN IT IS TO

11  A COMPANY THAT IS GOING INTO COMPULSORY

12  LIQUIDATION ON A SHAREHOLDER'S PETITION.

13  BY MISS LEAHY:

14      Q.    LET ME SUGGEST SOME REASONS TO YOU

15  IF I MAY.

16      A.    OKAY.

17      Q.    FIRST OF ALL, ON A J AND E PETITION

18  THE COMPANY IS -- THE BUSINESS, IF IT IS A TRADING

19  BUSINESS, CAN CONTINUE TO TRADE AND PAY ITS

20  CREDITORS IN THE ORDINARY WAY, CAN IT NOT?

21      A.    YOU MEAN AFTER ITS ----

22      Q.    AFTER IT HAS PRESENTED THE

23  PETITION.  AFTER THE PETITION HAS BEEN PRESENTED.

24      A.    SO YOU STILL HAVE TO APPLY FOR A

25  VALIDATION ORDER UNDER SECTION 99, IF THAT IS WHAT

164

1   YOU ARE GETTING AT.

2          Q.      SURE.  IT IS A RUBBER-STAMPING

3   EXERCISE IN THE CASE OF A SOLVENT COMPANY ----

4          A.      NOT NECESSARILY, NO.

5          Q.      ---- THAT IS APPLYING FOR J AND E?

6          A.      NO, IT IS NOT A RUBBER-STAMPING

7   EXERCISE.

8          Q.      OKAY.  BUT YOU HAVE ----

9          A.      IF YOU LOOK AT THE ----

10         MR. MORRIS:  ONE OF YOU NEEDS TO

11  LET THE OTHER FINISH, I WILL PUT IT THAT WAY.

12  (LAUGHTER)

13  BY MISS LEAHY:

14         Q.      WE DO NOT NEED TO HAVE A DEBATE

15  ABOUT THIS.

16         A.      NO.

17         Q.      LET US ACCEPT IT IS NOT.

18         A.      OKAY.

19         Q.      YOU GO AND GET YOUR VALIDATION

20  ORDER, OKAY?

21         A.      YES.

22         Q.      IT IS A J AND E PETITION, SO THERE

23  IS GOING TO BE A BIG DEBATE AS TO WHETHER SOMEBODY

24  BEHAVED BADLY OR NOT DURING THE COURSE OF THE

25  RELATIONSHIP.

1        A.     YES, HMM-MMM.

2        Q.     AND THAT IS GOING TO TAKE SOME TIME

3   TO COME ON AND BE FINALLY DETERMINED, CORRECT?

4        A.     YES.

5        Q.     IT IS NOT LIKE A CREDITORS'

6   PETITION FOR A WINDING UP ORDER, IS IT?  IT CAN

7   TAKE MANY MONTHS, SOMETIMES YEARS FOR THE PETITION

8   TO BE FINALLY DETERMINED IN THE CASE OF A J AND E?

9        A.     YES.

10       Q.     AND AT THE END OF IT, EVEN IF THE

11  PETITION IS SUCCESSFUL, THEY MIGHT NOT NECESSARILY

12  EITHER HAVE PETITIONED FOR OR WANT AN ACTUAL

13  WINDING UP ORDER, RIGHT?

14       A.     SO AT THE END OF A J AND E ----

15       Q.     YES.

16       A.     YES, THERE ARE ALTERNATIVE

17  REMEDIES.

18       Q.     YES.  WHEREAS WHEN WE ARE DEALING

19  WITH A VOLUNTARY LIQUIDATION, AS WE HAVE

20  DISCUSSED, AT THE VERY OUTSET IT IS A TERMINAL

21  PROCESS WHERE THE INTENTION OF THE OFFICIAL

22  LIQUIDATOR IS TO GET IN THE ASSETS, DISTRIBUTE

23  THEM AND THEN DISSOLVE THE COMPANY, CORRECT?

24       A.     YES.

25       Q.     SO THERE IS IN FACT SIGNIFICANT

166

1    DIFFERENCES BETWEEN THE TWO FORMS OF PROCESSES?

2            A.      I MEAN, THERE ARE DIFFERENCES.

3    I AM NOT SAYING THAT THEY ARE THE SAME.  I AM NOT

4    SURE IT IS VERY RELEVANT, BUT I AM NOT SURE THAT A

5    VL COMING UNDER COURT SUPERVISION IS NECESSARILY,

6    YOU KNOW, MORE AKIN TO THE CREDITORS' WINDING UP

7    ROUTE THAN THE SHAREHOLDERS' WINDING UP ROUTE.

8    ALL THE OTHER ROUTES, WE ALSO HAVE 92C WHERE THE

9    PERIOD FIXED FOR THE DURATION OF THE COMPANY

10   EXPIRES.  IT JUST SEEMS TO ME THAT IN THOSE TWO

11   CASES, AND IT IS ONLY MENTIONED VERY BRIEFLY AND

12   OBITER, IT IS NOT PART OF THE REASONING FOR THE

13   DECISIONS AT ALL, THE JUDGES SEEM TO ME TO BE

14   PROCEEDING ON THE BASIS THAT THE ONLY REASON FOR

15   GOING INTO OFFICIAL LIQUIDATION IS INSOLVENCY, AND

16   THAT IS OBVIOUSLY NOT THE CASE.  I DO NOT THINK

17   ANYTHING TURNS ON IT, AND I HAVE NOT GIVEN IT A

18   HUGE AMOUNT OF CONSIDERATION.

19           Q.      OKAY.  JUST TO WRAP THIS UP, I WILL

20   SUGGEST TO YOU THAT THE ONLY REASON THAT A COMPANY

21   HAS TO CONVERT FROM VOLUNTARY LIQUIDATION, HAS TO,

22   IS REQUIRED TO, IS BECAUSE IT IS INSOLVENT.  THERE

23   ARE ----

24           A.      I DO NOT AGREE WITH THAT.

25           Q.      COULD I ASK YOU TO TURN TO

167

1   PARAGRAPH 71 OF YOUR DECLARATION IN THESE

2   PROCEEDINGS, PLEASE, AND CAN YOU JUST REMIND

3   YOURSELF OF THAT?  (PAUSE FOR READING)

4          A.    YES.

5          Q.    IN THIS PARAGRAPH YOU ARE CRITICAL

6   OF MR.  COWAN'S DECLARATION?

7          A.    YES.

8          Q.    WHY DO YOU THINK IT WAS RELEVANT --

9   SORRY, I WILL PUT IT ANOTHER WAY.  WHY DO YOU

10  THINK THAT MR. COWAN SHOULD HAVE TOLD THE COURT

11  THAT IN A SOLVENT LIQUIDATION THERE IS NOT A

12  DIVIDEND BUT IN FACT THE CREDITORS GET PAID IN

13  FULL?

14         A.    CAN WE SEE MR. COWAN'S DECLARATION?

15         Q.    OF COURSE.  WE DID NOT HAND THAT

16  UP.  IT IS IN MY DIVIDER 2.

17         (EXHIBIT 8 MARKED FOR IDENTIFICATION)

18  BY MISS LEAHY:

19         Q.    PARAGRAPH 25 ON PAGE 7.

20         A.    YES.

21         Q.    THAT IS A PARAGRAPH YOU ARE

22  CRITICISING?

23         A.    YES.

24         Q.    NOW, YOU ACCEPT THAT WHAT IS STATED

25  IN PARAGRAPH 25 IS A CORRECT STATEMENT OF CAYMAN

168

1   LAW?

2         A.    YES.

3         Q.    WHY DO YOU CONSIDER THAT MR. COWAN

4   SHOULD HAVE GONE FURTHER AND EXPLAINED THAT IN A

5   SOLVENT LIQUIDATION THE CREDITORS ARE NOT PAID

6   RATABLY BUT THEY ARE PAID, AS YOU SAY, IN THE

7   ORDINARY COURSE RATHER THAN PURSUANT TO A

8   COLLECTIVE PROCESS.

9         A.    PURSUANT TO?

10        Q.    A COLLECTIVE PROCESS, YOU SAY.  WHY

11  DO YOU THINK HE NEEDED TO TELL THE COURT THAT?

12              MR. MORRIS:  OBJECTION.

13        A.    I THINK THAT PARAGRAPH 25 OF

14  MR. COWAN'S DECLARATION GIVES THE IMPRESSION THAT

15  THE CREDITORS IN THIS PROCEEDING ARE GOING TO BE

16  PAID ON PARI PASSU BASIS.

17  BY MISS LEAHY:

18        Q.    WHY DOES THAT MATTER?

19        A.    WELL, IT IS MISLEADING.  IT

20  SUGGESTS TO THE COURT THAT SOMETHING IS GOING TO

21  HAPPEN THAT IS NOT ACTUALLY THE CASE.

22        Q.    BUT WOULD NOT ALL CREDITORS BE

23  DELIGHTED TO BE PAID IN FULL RATHER THAN RECEIVE A

24  RATEABLE DIVIDEND?

25        A.    YES.

169

1    Q.    AND IS NOT ANY FOREIGN COURT

2  LOOKING AT THE PROCESS IT IS GOING TO RECOGNISE BE

3  CONCERNED TO ENSURE THAT CREDITORS ARE TREATED

4  EQUALLY?  THAT IS ALL IT WANTS, RIGHT, TO ENSURE

5  THAT CREDITORS ARE TREATED EQUALLY?

6              MR. MORRIS:  OBJECTION TO THE FORM

7  OF THE QUESTION.

8    A.    I MEAN, I DO NOT THINK IT IS REALLY

9  FOR ME TO SAY WHAT THE NEW YORK COURT WANTS.

10 BY MISS LEAHY:

11   Q.    DO YOU THINK A CAYMAN COURT WOULD

12 BE INTERESTED TO KNOW WHETHER ANY LIQUIDATOR

13 SEEKING COMMON LAW RECOGNITION IN THE CAYMAN

14 ISLANDS THAT THE DOMESTIC INSOLVENCY THAT APPLIED

15 TREATED CREDITORS EQUALLY?

16   A.    YES.  I MEAN, OUR TEST IS

17 DIFFERENT, AS YOU KNOW, BUT YES.

18   Q.    YES, YES.  THANK YOU.  WHAT DOES

19 PARI PASSU MEAN?

20   A.    PARI PASSU MEANS ON AN EQUAL STEP.

21   Q.    YES.

22   A.    EQUALLY, AT THE SAME TIME, RATABLY.

23   Q.    OKAY.  NOT NECESSARILY RATABLY.

24 I MEAN, IT COULD BE RATABLY OF 100 PENCE IN THE

25 POUND?

170

1           A.    YES.

2           Q.    DO YOU JUST WANT TO LOOK AGAIN AT

3    MR. COWAN'S PARAGRAPH 25, AND TELL ME WHETHER YOU

4    STILL THINK IT IS MISLEADING?

5           A.    WELL, I DO.  I KNOW WHAT YOU ARE

6    TRYING TO GET AT.

7           Q.    WHAT AM I TRYING TO GET AT?

8           A.    YOU ARE TRYING TO SUGGEST THAT THE

9    CREDITORS ARE BEING PAID PARI PASSU BECAUSE THEY

10   ARE ALL BEING PAID IN THE ORDINARY COURSE OF

11   BUSINESS.

12          Q.    WELL, EVEN IF YOU DO NOT AGREE WITH

13   THAT, I THINK THERE IS SOME COMMON GROUND BETWEEN

14   US, WHICH IS THAT CREDITORS PREFER TO BE PAID 100

15   PENCE IN THE POUND ----

16          A.    YES.

17          Q.    ---- THAN ----

18                MR. MORRIS:  I WILL STIPULATE TO

19   THAT.  (LAUGHTER) HOW ABOUT THAT?

20   BY MISS LEAHY:

21          Q.    SO WE HAVE THAT IN THE BANK, OKAY?

22          A.    YES, OKAY.

23          Q.    SO ON THAT BASIS, HOW IS MR. COWAN

24   POTENTIALLY MISLEADING THE US COURT?

25          A.    WELL, BECAUSE SAYING THAT -- AS AN

171

1   INSOLVENCY LAWYER IN ANY JURISDICTION, I THINK WE

2   ALL UNDERSTAND WHAT CREDITORS BEING PAID PARI

3   PASSU MEANS.  IT MEANS EVERYBODY BEING PAID THE

4   SAME SENSE ON THE DOLLAR AT THE SAME TIME AS PART

5   OF A COLLECTIVE PROCESS FOR THE ASSESSMENT OF

6   CLAIMS AND THEN THE PAYMENT OF THOSE CLAIMS.  THAT

7   IS NOT WHAT HAPPENS IN THE COURSE OF A SOLVENT

8   LIQUIDATION.

9         Q.     WE AGREED THAT IT MIGHT HAPPEN IN

10  THE COURSE OF A SOLVENT LIQUIDATION, DID WE NOT?

11        A.      WELL, NO, THE WHOLE THING IS NOT

12  GOING TO HAPPEN IN THE COURSE OF A SOLVENT

13  LIQUIDATION, BECAUSE IT IS ONLY DISPUTED DEBTS

14  THAT ARE POTENTIALLY SUBJECT TO THE PROOF OF DEBT

15  PROCESS.

16        Q.     NO, BUT WE ALSO AGREED I THOUGHT

17  THAT A LIQUIDATOR WHO DID NOT HAVE THE CASH TO PAY

18  THE CREDITORS UNTIL HE HAD MADE REALISATIONS WOULD

19  NOT BE ABLE TO PAY IN THE ORDINARY COURSE?

20        A.     OKAY.

21        Q.     YOU DO NOT AGREE WITH THAT?  WHAT

22  DO YOU SAY THE LIQUIDATOR SHOULD DO IN THAT

23  SITUATION?

24              MR. MORRIS:  OBJECTION.  ASKED AND

25  ANSWERED.

172

1          A.      I THINK WE HAVE ALREADY COVERED

2    THAT.

3    BY MISS LEAHY:

4          Q.      I AM NOT SURE.  I THOUGHT WE AGREED

5    IT, BUT NOW YOU SEEM TO BE DISAGREEING.  THAT IS

6    WHY I AM NOT SURE.

7          A.      SO WHAT IS THE QUESTION?

8          Q.      THERE ARE A COUPLE OF SCENARIOS

9    ----

10         A.      YES.

11         Q.      ---- WHERE IN A SOLVENT

12   LIQUIDATION, AT LEAST A COUPLE OF SCENARIOS IN A

13   SOLVENT LIQUIDATION, WHERE A LIQUIDATOR MAY NOT BE

14   ABLE TO PAY EACH CREDITOR AS THE DEBT FALLS DUE IN

15   FULL.

16         A.      YES.

17         Q.      ONE OF THE SITUATIONS THAT WE

18   DISCUSSED I THOUGHT AND AGREED, BUT THAT IS JUST

19   CHECKING, ONE OF THE DISCUSSIONS WE DISCUSSED WAS

20   WHERE THE COMPANY IS -- THERE IS A MASSIVE BALANCE

21   SHEET SURPLUS BUT THE LIQUIDATOR HAS TO GO AND

22   REALISE THE SOME ASSETS BEFORE HE CAN START PAYING

23   THE CREDITORS?

24         A.      YES.

25         Q.      YOU AGREE WITH THAT?

173

1          A.     YES.

2          Q.     THAT IS ONE SITUATION.  ANOTHER

3    SITUATION IS WHERE ALTHOUGH THE COMPANY SEEMS TO

4    BE SOLVENT AT THE OUTSET, SUBSEQUENTLY THE

5    LIQUIDATOR REALISES THAT IT IS INSOLVENT, YES?

6          A.     YES.

7          Q.     SO IN THOSE SITUATIONS THE

8    TREATMENT OF CREDITORS IS GOING TO BE VERY SIMILAR

9    TO THE TREATMENT OF CREDITORS IN AN INSOLVENT

10   LIQUIDATION, IS IT NOT?

11         A.     WELL, IN THE SECOND SITUATION WHERE

12   THE COMPANY SUBSEQUENTLY BECOMES INSOLVENT, IT IS

13   BECAUSE THE LIQUIDATOR IS GOING TO HAVE TO REVISIT

14   HIS OR HER SOLVENCY CERTIFICATION AND GET PROOF OF

15   DEBT AND EVERYONE IS GOING TO GET LESS THAN 100

16   CENTS ON THE DOLLAR.  IN YOUR FIRST SITUATION,

17   I MEAN, I DO NOT THINK -- SO EVERYONE IS GOING TO

18   HAVE TO WAIT IN THE SAME WAY THAT THEY WOULD IN AN

19   INSOLVENT LIQUIDATION, BUT I WOULD NOT SEE THE

20   LIQUIDATOR IN THAT SITUATION SENDING OUT PROOFS OF

21   DEBT, FOR EXAMPLE.  I THINK HE OR SHE WOULD

22   PROBABLY, IF THE DEBTS ARE NOT DISPUTED, RELY ON

23   THE INVOICES OR WHATEVER HE OR SHE HAD RECEIVED

24   FROM THE CREDITORS IN THE ORDINARY COURSE.

25         Q.     OKAY, RIGHT.

174

1          A.     I MEAN, THEY ARE ALL GOING TO GET

2   PAID AT THE SAME TIME WHEN THE LIQUIDATOR COMES

3   INTO FUNDS.  I AGREE WITH THAT, IF THAT IS YOUR

4   QUESTION.

5          Q.     I AM SAYING THAT IN AN INSOLVENT

6   LIQUIDATION THAT CREDITORS WILL GET PAID AT THE

7   SAME TIME WHEN THERE ARE SUFFICIENT FUNDS TO MAKE

8   A DIVIDEND?

9          A.     THAT IS TRUE.

10          Q.     I AM STILL TRYING TO UNDERSTAND

11   PARAGRAPH 25 AND YOUR COMPLAINT IN RELATION TO IT.

12   COULD WE JUST GO BACK TO WHAT WE DISCUSSED BEFORE

13   ABOUT IN A CAYMAN COURT WHERE THERE WAS AN

14   APPLICATION FOR COMMON LAW RECOGNITION?

15          A.     YES.

16          Q.     I THINK YOU AGREED THAT THE JUDGE

17   WOULD BE CONCERNED TO KNOW WHETHER THE DOMESTIC

18   INSOLVENCY LAW TREATED CREDITORS EQUALLY.

19          A.     YES.

20          Q.     SO THE FOREIGN INSOLVENCY LAW, THE

21   DOMESTIC ONE, IS THE SAME AS CAYMAN LAW IT

22   TRANSPIRES?

23          A.     OKAY.

24          Q.     AND THE COMPANY IS IN FACT IN A

25   SOLVENT LIQUIDATION?

175

1          A.     OKAY.

2          Q.     THE LIQUIDATOR APPLIES FOR COMMON

3     LAW RECOGNITION AND IN THE EVIDENCE IN SUPPORT OF

4     THAT APPLICATION THERE IS A STATEMENT, THE SAME AS

5     IN PARAGRAPH 25, THAT A GENERAL PRINCIPLE

6     UNDERLYING, SAY THE LAW OF ZOGLAND, THE INSOLVENCY

7     REGIME IS THAT CREDITORS ARE TREATED ON A PARI

8     PASSU BASIS SUBJECT TO CERTAIN EXCEPTIONS?

9          A.     MMM-HMM.

10         Q.     WOULD YOU SAY THAT WAS MISLEADING?

11              MR. MORRIS:  OBJECTION TO THE FORM

12    OF THE QUESTION.

13         A.     IF WE ARE TALKING ABOUT CAYMAN

14    COURT RECOGNISING FOREIGN LIQUIDATORS, CAN WE HAVE

15    A LOOK AT SECTION 240?

16    BY MISS LEAHY:

17         Q.     SURE.

18         A.     I MEAN, IT IS A DIFFERENT TEST FROM

19    THE TEST THAT THE US COURT IS LOOKING AT.

20         Q.     THAT IS WHY I HAVE WALKED AWAY FROM

21    THAT, BECAUSE YOU SAID YOU FELT UNCOMFORTABLE IN

22    THAT AREA.

23         A.     YES.

24         Q.     I AM JUST ASKING YOU AS A CAYMAN

25    LAWYER.


                           176

1          A.     YES.  I MEAN, IF YOU LOOK AT

2    SECTION 241, WHAT THE CAYMAN COURT NEEDS IS A

3    FOREIGN BANKRUPTCY PROCEEDING, AND THE COMPANY IN

4    QUESTION IS REFERRED TO THROUGHOUT THAT SECTION AS

5    THE DEBTOR.  YOU KNOW, IF IT WAS A COMPANY IN A

6    SOLVENT LIQUIDATION PROCESS LIKE THIS ONE, YOU

7    WOULD HAVE A QUESTION, AND IT IS A QUESTION TO

8    WHICH I DO NOT KNOW THE ANSWER OFF THE TOP OF MY

9    HEAD, AS TO WHETHER THAT CONSTITUTES A FOREIGN

10   BANKRUPTCY PROCEEDING AND WHETHER THAT COMPANY

11   QUALIFIES AS A DEBTOR FOR THE PURPOSE OF SECTION

12   241.

13         Q.     OKAY.  I AM NOT GOING TO DEBATE

14   THAT WITH YOU.  I WAS REALLY ASKING ABOUT THIS

15   POINT, WHICH IS THIS, WHATEVER THAT SECTION MEANS,

16   THAT THE CAYMAN COURT AS A MINIMUM WOULD HAVE TO

17   BE SATISFIED THAT CREDITORS ARE GOING TO BE

18   TREATED EQUALLY BEFORE IT WOULD EVER RECOGNISE ANY

19   FORM OF FOREIGN PROCEEDING.  DO YOU AGREE WITH

20   THAT?

21         A.     YES.

22         Q.     OR PARI PASSU, IF YOU LIKE?

23         A.     YES.

24         Q.     I AM REALLY JUST TRYING TO

25   UNDERSTAND WHY YOU SAY IN THAT SORT OF CONTEXT

177

1    PARAGRAPH 25 ON ITS OWN IS MISLEADING.

2              MR. MORRIS:  OBJECTION.  ASKED AND

3    ANSWERED.

4         A.    I THINK IT IS MISLEADING BECAUSE IT

5    IMPLIES THAT CREDITORS ARE GOING TO BE PAID AS

6    PART OF A COLLECTIVE PROCESS FOR THE ADJUDICATION

7    OF DEBTS AND DISTRIBUTION OF DIVIDENDS AS THEY

8    WOULD IN AN INSOLVENT LIQUIDATION.

9    BY MISS LEAHY:

10        Q.    BUT YOU ACCEPTED THAT IT WAS A

11   COLLECTIVE PROCESS EARLIER?

12        A.    FOR THE BENEFIT OF THE

13   SHAREHOLDERS.

14        Q.    IT IS STILL A COLLECTIVE PROCESS,

15   IS IT NOT, EVEN IF IT MIGHT BE FOR THE BENEFIT OF

16   SHAREHOLDERS?

17        A.    YES.

18        Q.    I AM GOING TO MOVE ON BECAUSE WE

19   ARE NOT GETTING ANYWHERE WITH THIS.  I GUESS I

20   JUST WANT TO SUGGEST TO YOU THAT THERE IS NOTHING

21   AT ALL MISLEADING ABOUT THAT STATEMENT,

22   PARTICULARLY IN CIRCUMSTANCES WHERE MR. COWAN WAS

23   NOT SUGGESTING THAT CREDITORS ARE GOING TO DO

24   BETTER IN ASCENTRA THAN THEY WOULD IN A DIFFERENT

25   TYPE OF LIQUIDATION?

178

```
 1                    MR. MORRIS:  I MOVE TO STRIKE.

 2    THAT IS NOT A QUESTION.  IT IS JUST A STATEMENT OF

 3    COUNSEL.

 4           A.    I DO NOT AGREE.

 5    BY MISS LEAHY:

 6           Q.    EARLIER YOU WERE SAYING THAT YOU

 7    WERE NOT ASKED TO CONSIDER THE APPLICATION OF THE

 8    DEFINITION OF SECTION 101(23) IN YOUR DECLARATION?

 9           A.    MMM-HMM.

10           Q.    YOU HAVE NEVERTHELESS SUGGESTED

11    THAT BOTH MR. ROBINSON AND MR. COWAN SHOULD HAVE

12    SAID CERTAIN THINGS IN THEIR DECLARATION, RIGHT?

13           A.    YES.

14           Q.    AND YOU SAY THAT IT WAS MISLEADING

15    OF THEM NOT TO SAY THOSE THINGS?

16           A.    YES.

17           Q.    ARE YOU NOT BY SAYING THAT THEIR

18    EVIDENCE IS MISLEADING ESSENTIALLY IMPLICITLY

19    OPINING THAT A SOLVENT CAYMAN WINDING UP WITH ALL

20    ITS FEATURES IS NOT A COLLECTIVE JUDICIAL

21    PROCEEDING?

22                    MR. MORRIS:  OBJECTION TO THE FORM

23    OF THE QUESTION.

24           A.    NO.

25    BY MISS LEAHY:
```

179

1      Q.      WELL, THEN WHY ARE YOU SAYING THAT

2  HE OUGHT TO, OR THEY OUGHT TO HAVE BROUGHT CERTAIN

3  OF THESE FEATURES OF SOLVENT LIQUIDATIONS TO THE

4  ATTENTION OF THE COURT?

5      A.      I AM SAYING THAT I THINK THEY ARE

6  IMPORTANT FEATURES AND THAT THEY ARE RELEVANT TO

7  WHAT THE COURT HAD TO DETERMINE.

8      Q.      RELEVANCE AND IMPORTANCE, AS YOU

9  SAY, OBVIOUSLY TURNS ON THE CONTEXT?

10     A.      YES.

11     Q.      THE CONTEXT HERE IS THAT THE COURT

12  HAS TO DETERMINE WHETHER THE CAYMAN LIQUIDATION IS

13  A FOREIGN PROCEEDING?

14     A.      YES.

15     Q.      IF YOU HAVE NO OPINION AT ALL AS TO

16  WHETHER SOLVENT CAYMAN LIQUIDATION IS A FOREIGN

17  PROCEEDING, THEN YOU CANNOT LOOK AT MR. COWAN'S

18  AND MR. ROBINSON'S EVIDENCE AND SAY THAT THERE WAS

19  MATERIAL FACTS THAT THEY OUGHT TO HAVE BROUGHT TO

20  THE JUDGE IN NEW YORK'S ATTENTION, CAN YOU?

21          MR. MORRIS:  OBJECTION TO THE FORM

22  OF THE QUESTION.

23     A.      I THINK I CAN.

24  BY MISS LEAHY:

25     Q.      SHOULD YOU NOT HAVE STOPPED YOUR

180

1    OPINION AT PARAGRAPH 68 AND NOT GONE ON TO

2    CRITIQUE MR. ROBINSON AND MR. COWAN?

3              MR. MORRIS:   OBJECTION TO THE FORM

4    OF THE QUESTION.

5         A.    NO.

6    BY MISS LEAHY:

7         Q.    THERE IS NO PART OF YOUR STATEMENT

8    FROM PARAGRAPH 69 TO PARAGRAPH 76 THAT YOU

9    CONSIDER YOU SHOULD CHANGE OR ANY OF THE

10   ALLEGATIONS YOU MAKE THERE ABOUT THE CONTENT OF

11   MR. COWAN AND MR. ROBINSON'S EVIDENCE THAT YOU

12   SHOULD WITHDRAW?

13        A.    NO.

14        Q.    I JUST WANT TO ASK YOU AGAIN SOME

15   QUESTIONS ABOUT STANDING IN CAYMAN PROCEEDINGS,

16   BUT THEY ARE SLIGHTLY MOVING ON FROM PRECISELY THE

17   SAME AS WE DISCUSSED OVER AND OVER AGAIN THIS

18   MORNING.

19        A.    OKAY.

20        Q.    SLIGHTLY DIFFERENT TOPIC.  I AM

21   MUCH MORE INTERESTED IN THIRD PARTIES WHO ARE NOT

22   CREDITORS AND CONTRIBUTORIES AND WHAT STANDING

23   THEY MIGHT HAVE, IN SOME WAY, TO PARTICIPATE IN

24   THE WINDING UP.

25        A.    OKAY.

181

1          Q.     SO WE HAVE A SITUATION -- FOR

2     EXAMPLE, I AM GOING TO START WITH A CREDITOR AND

3     THEN JUST BUILD IT UP.

4          A.     OKAY.

5          Q.     WE HAVE A SITUATION WHERE WE HAVE A

6     CREDITOR, AND IT IS AN INSOLVENT LIQUIDATION.

7          A.     OKAY.

8          Q.     WE BOTH AGREE THE CREDITOR HAS

9     STANDING TO COME ALONG TO COURT AND MAKE

10    REPRESENTATIONS ON THE LIQUIDATOR'S SANCTION

11    APPLICATION?

12         A.     YES.

13         Q.     WHAT THE LIQUIDATOR IS TRYING TO DO

14    IS GET SANCTION TO COMMENCE LITIGATION, RIGHT?

15         A.     OKAY.

16         Q.     WHEN ACTUALLY THE LIQUIDATOR WANTS

17    TO COMMENCE LITIGATION AGAINST THAT PARTICULAR

18    CREDITOR.

19         A.     OKAY.

20         Q.     WOULD YOU AGREE THAT ON THOSE FACTS

21    THE COURT WOULD NOT GIVE THE CREDITOR'S VIEWS ANY

22    WEIGHT BECAUSE THE CREDITOR'S INTEREST ARE ADVERSE

23    TO THE INSOLVENT ESTATE?

24         A.     WELL, I MEAN, IT IS ALWAYS FACT

25    SPECIFIC.


                          182

1        Q.      MMM.

2        A.      SO YOU WOULD HAVE TO LOOK AT THE

3   FACTS OF THE PARTICULAR CASE AND THE NATURE OF THE

4   CLAIM AND WHATEVER.  YOU KNOW, OFF THE TOP OF MY

5   HEAD AND WITHOUT DOING THAT ANALYSIS, I THINK IT

6   IS LIKELY THAT THE COURT WOULD EXCLUDE THAT

7   CREDITOR FROM BEING HEARD FROM THAT SANCTION

8   APPLICATION, BECAUSE ALSO IT WOULD TIP THE

9   CREDITOR OFF THAT THE LIQUIDATOR WAS ABOUT TO

10  BRING THE PROCEEDINGS AGAINST HIM OR HER.

11       Q.      MMM.  BUT THE LIQUIDATOR MAY HAVE

12  ALREADY SENT A LETTER BEFORE CLAIM, THE CREDITOR

13  MAY KNOW ABOUT IT, THE COURT WOULD HAVE, IF YOU

14  LIKE, THE POSSIBILITY, WHICH IS OFTEN USED IN

15  TRUST LITIGATION AND INSOLVENCY LITIGATION, TO

16  READ SOME OF THE EVIDENCE BEHIND CLOSED DOORS, SO

17  TO SPEAK, AND NOT SHARE IT WITH CREDITOR.  YOU ARE

18  FAMILIAR WITH THAT SORT OF IN-BETWEEN PROCESS?

19       A.      YES.

20       Q.      YOU ARE VERY RIGHT TO SAY IT ALL

21  TURNS ON THE FACTS, BUT LET US JUST ASSUME HERE

22  THAT THE LIQUIDATOR HAS ADVICE FROM WILBERFORCE

23  CHAMBERS TO THE EFFECT THAT HE HAS A 65% CHANCE OF

24  SUCCESS, BECAUSE WE ARE NOT GOING TO SEE MUCH

25  HIGHER THAN THAT, ARE WE, AND WHAT THE CREDITOR IS

183

1    SAYING IS YOU SHOULD NOT ALLOW HIM TO BRING THIS

2    VEXATIOUS LITIGATION AGAINST ME BECAUSE IT IS

3    HOPELESS?

4             A.     MMM-HMM.

5             Q.     ON THOSE FACTS, THE COURT HAS TO

6    WEIGH EVERYTHING OBVIOUSLY, BUT THE CREDITOR DOES

7    NOT HAVE AN OPINION ON LEADING COUNSEL AT

8    WILBERFORCE CHAMBERS.

9             A.     MMM.

10            Q.     IT WOULD VERY RARE THAT THE COURT

11   WOULD GIVE MUCH WEIGHT TO THAT PARTICULAR

12   CREDITOR'S VIEW, WOULD IT NOT?

13            A.     YES, I MEAN, IT IS FACT SPECIFIC,

14   BUT YES.  GENERALLY, YES.

15            Q.     I JUST WANT TO COME ON TO A

16   DIFFERENT SITUATION WHERE THE INDIVIDUAL IS NOT A

17   CREDITOR, OKAY, NOT A CONTRIBUTORY, AND THE

18   LIQUIDATOR IS TRYING TO SUE THIS PERSON, THIS

19   THIRD PARTY, AND THE LIQUIDATOR APPLIES FOR

20   SANCTION AND HE ADVERTISES HIS APPLICATION.

21            A.     MMM-HMM.

22            Q.     SO THE THIRD PARTY GETS WINDS OF

23   IT.

24            A.     OKAY.

25            Q.     DOES THE THIRD PARTY HAVE STANDING

184

1   TO APPEAR ON THE APPLICATION?

2           A.    NO.

3           Q.    NEXT AND FINAL SCENARIO.

4           A.    OKAY.

5           Q.    THE LIQUIDATOR STARTS CHAPTER 15

6   PROCEEDINGS IN THE US TO GET RECOGNITION AND TO

7   FREEZE ASSETS WHICH HE THINKS BELONGS TO THE

8   COMPANY, BUT HE IS INTENDING TO BRING PROCEEDINGS

9   IN THE CAYMAN ISLANDS, FOR WHICH HE NEEDS

10  SANCTION, IN ORDER TO PROVE OR ESTABLISH THAT THE

11  ASSETS DO BELONG TO THE COMPANY, YES?  THE PERSON

12  CLAIMING TITLE TO THE ASSET IS THE THIRD PARTY WE

13  WERE PREVIOUSLY DISCUSSING, NOT A CONTRIBUTORY,

14  NOT A CREDITOR.  THAT THIRD PARTY COULD NOT COME

15  TO THE CAYMAN COURT UNDER ANY PROVISION OF THE

16  RULES OR THE ACT, COULD HE, AND GET A DIRECTION

17  FROM THE COURT, THE CAYMAN COURT THAT IS, THAT THE

18  LIQUIDATOR SHOULD APPLY TO DISMISS THE CHAPTER 15

19  PROCEEDINGS?

20          A.    I WANT TO MAKE SURE I HAVE

21  UNDERSTOOD YOUR QUESTION.  SO YOU HAVE GOT A THIRD

22  PARTY.

23          Q.    YES?

24          A.    THE LIQUIDATOR HAS CHAPTER --

25  ACTUALLY, IT MIGHT BE EASIER IF YOU JUST REPEAT

185

1    YOUR QUESTION, SORRY.

2            Q.    YOU KNOW SOMETIMES WHEN A

3    LIQUIDATION ORDER IS MADE, SOMETIMES THE COURT

4    WILL EXPRESSLY PROVIDE IN THE LIQUIDATION ORDER

5    THAT YOU HAVE EXPRESS POWER SANCTION TO GO AND

6    APPLY FOR CHAPTER 15.

7            A.    YES.

8            Q.    I AM KIND OF DOING A SLIGHT REVERSE

9    SCENARIO HERE.

10           A.    OKAY.

11           Q.    WE ARE BACK WITH THE THIRD PARTY,

12   NOT A CREDITOR, NOT A CONTRIBUTORY.

13           A.    YES, A DEBTOR.

14           Q.    WELL ----

15           A.    CONTINGENT DEBTOR.

16           Q.    ---- THERE IS A POT OF ASSETS AND

17   THE LIQUIDATOR SAYS THEY ARE THE COMPANY'S ASSETS.

18           A.    OKAY.

19           Q.    AND THE THIRD PARTY SAYS, NO, THEY

20   ARE MY ASSETS.

21           A.    OKAY.

22           Q.    NOW, POTENTIALLY THE THIRD PARTY

23   HAS -- THEY ARE IN A BANK ACCOUNT, OR SOMETHING,

24   IN THE US.

25           A.    OKAY.

186

1          Q.     THE LIQUIDATOR GOES TO THE US AND

2   GETS CHAPTER 15 RELIEF.

3          A.     OKAY.

4          Q.     AND THAT HAS THE EFFECT OF FREEZING

5   THAT POT OF ASSETS.

6          A.     YES.

7          Q.     IT IS STILL TO BE DETERMINED WHO

8   OWNS THIS POT OF ASSETS.

9          A.     YES.

10         Q.     THE LIQUIDATOR IS CONVINCED THEY

11  ARE HIS, THE THIRD PARTY IS CONVINCED THEY ARE

12  THEIRS.

13         A.     MMM-HMM.

14         Q.     SO THE LIQUIDATOR IS GOING TO BRING

15  PROCEEDINGS IN THE CAYMAN ISLANDS TO GET THAT

16  ISSUE DETERMINED.  THE PROCEEDINGS IN THE US DOES

17  NOT MATTER.

18         A.     OKAY.

19         Q.     BUT HE HAS TO STILL GET SANCTION.

20         A.     YES.

21         Q.     AND HE HAS NOT GONE TO COURT TO GET

22  SANCTION YET.

23         A.     MMM-HMM.

24         Q.     BUT HE IS GOING TO.

25         A.     YES.

1      Q.      CAN THAT THIRD PARTY COME TO THE

2   CAYMAN COURT AND SAY YOU SHOULD DIRECT THE

3   LIQUIDATOR TO DISMISS THE CHAPTER 15 PROCEEDINGS

4   BECAUSE THOSE FROZEN ASSETS ARE MY ASSETS?

5      A.      THIS IS QUITE INVOLVED FOR A

6   HYPOTHETICAL SCENARIO, BUT OFF THE TOP OF MY HEAD,

7   AND ASSUMING THAT I AM FOLLOWING YOU CORRECTLY,

8   I CANNOT THINK OF AN AVENUE FOR THAT THIRD PARTY

9   TO HAVE STANDING TO GET ANY DIRECTION FROM THE

10  CAYMAN COURT.

11     Q.    A FEW SWEEP UP QUESTIONS.  I AM NOT

12  GOING TO BE LONG NOW.

13     A.     OKAY.

14          MR. MORRIS:  MAY WE TAKE JUST A

15  FIVE-MINUTE BREAK?

16          MR. MCDONALD:  YES, I WAS GOING TO

17  SUGGEST A FIVE-MINUTE BREAK.

18          MISS LEAHY:  YES, SURE.

19          MR. MORRIS:  AND YOU JUST HAVE FEW

20  MORE MINUTES?

21          THE COURT REPORTER:  WE ARE GOING

22  OFF THE RECORD AT 15.05.

23    (A SHORT BREAK FROM 3.05 P.M. TO 3.15 P.M.)

24          THE COURT REPORTER:  WE ARE BACK ON

25  THE RECORD AT 15.15.

188

1  BY MISS LEAHY:

2    Q. MISS PEARSON, I JUST WANT TO ASK

3  YOU A FEW QUESTIONS ABOUT YOUR EXPERIENCE IN THE

4  CAYMAN ISLANDS.  I UNDERSTAND YOU WENT TO THE

5  CAYMAN ISLANDS IN 2009.

6    A. YES.

7    Q. SO YOU WERE A RELATIVELY JUNIOR

8  PRACTITIONER AT THAT STAGE?

9    A. YES.

10   Q. THAT IS WHY I AM NOT GOING TO ASK

11 YOU ABOUT YOUR INITIAL EXPERIENCE.

12   A. OKAY.

13   Q. NOW, JUST IN TERMS OF EXPERT

14 EVIDENCE AS A CAYMAN LAWYER, HOW MANY TIMES HAVE

15 YOU PROVIDED EXPERT EVIDENCE ON CAYMAN LAW?

16   A. SO FOR US PROCEEDINGS OR ----

17   Q. JUST OVERALL.

18   A. JUST RUNNING THROUGH THEM?

19   Q. YES.

20   A. FOR THE US, I THINK AROUND SIX

21 TIMES, FOR HONG KONG LITIGATION, ONCE AND FOR

22 ARBITRATION PROCEEDINGS AT LEAST TWICE.

23   Q. SO SAY TEN TIMES APPROXIMATELY?

24   A. GETTING UP THERE ----

25   Q. THERE OR THEREABOUTS?

189

KATHARINE LUCY BLADEN PEARSON

1          A.     YES.

2          Q.     OF THOSE, HOW MANY CAN YOU RECALL

3    RELATED TO A RECOGNITION APPLICATION?

4          A.     I THINK THE ONLY TWO RELATING TO

5    RECOGNITION ARE THE ONE IN THESE PROCEEDINGS AND

6    THE ONE IN TCA, WHICH YOU ALREADY FOUND.

7          Q.     AND HAVE YOU EVER BEEN DEPOSED

8    BEFORE?

9          A.     NO.

10         Q.     YOU HAVE NOT BEEN DEPOSED BEFORE.

11   HAVE YOU EVER BEEN CROSS-EXAMINED BEFORE?

12         A.     NO.

13         Q.     THEN JUST IN TERMS OF YOUR ADVOCACY

14   EXPERIENCE, DO YOU REGULARLY ATTEND COURT IN THE

15   CAYMAN ISLANDS AS LEAD COUNSEL OR AS SOLE COUNSEL?

16         A.     YES.

17         Q.     AND WHAT ARE THE NATURE OF THE

18   APPLICATIONS THAT YOU DO AS LEAD OR SOLE COUNSEL?

19         A.     THE MOST RECENT ONE THAT I DID WAS

20   A NORWICH PHARMACAL APPLICATION, BUT OVER THE

21   YEARS I HAVE COVERED THE WHOLE RANGE OF LITIGATION

22   AND INSOLVENCY MATTERS.  SO I HAVE APPEARED ON

23   NUMEROUS WINDING UP PETITIONS.  I HAVE APPEARED

24   ON, YOU KNOW, NUMEROUS HEARINGS IN THE CONTEXT OF

25   LONG-RUNNING LIQUIDATION PROCEEDINGS WHERE I HAVE

190

1  BEEN ACTING FOR STAKEHOLDERS.

2          Q.    WHEN YOU SAY YOU APPEARED, JUST TO

3  CLARIFY, YOU ----

4          A.    I AM TALKING ABOUT ME DOING THE

5  ADVOCACY.  OBVIOUSLY, BECAUSE THERE IS A LOT OF

6  OTHER HEARINGS WHERE WE INSTRUCT LEADING COUNSEL

7  FROM THE UK, I WILL GO AND SIT NEXT TO COUNSEL,

8  YES.

9          Q.    YES, OKAY.  WHAT WAS THE LONGEST

10 HEARING THAT YOU HAVE EVER DONE THE ADVOCACY FOR?

11          MR. MORRIS:  YOU MEAN IN TERMS OF

12 TIME?

13          MISS LEAHY:  YES, AS IN THE NUMBER

14 OF DAYS IN COURT.

15          A.    PROBABLY A DAY.  YES, A DAY OR

16 LESS.  I DO NOT THINK I HAVE EVER DONE ONE THAT

17 HAS BEEN LONGER THAN ONE DAY FOR, YOU KNOW, A

18 SINGLE HEARING.

19 BY MISS HEALY:

20          Q.    HAVE YOU EVER MADE ANY APPLICATIONS

21 FOR STAKEHOLDERS IN THE CONTEXT OF A SOLVENT

22 LIQUIDATION, A SOLVENT OFFICIAL LIQUIDATION, JUST

23 TO BE CLEAR?

24          A.    I CANNOT THINK OF ONE OFF THE TOP

25 OF MY HEAD, BUT I COULD NOT SAY FOR SURE THAT I

191

1  HAVE NOT.

2          Q.     FAIR ENOUGH.  ALSO, HENDERSON J,

3  HAVE YOU EVER APPEARED AS LEAD OR SOLE COUNSEL IN

4  FRONT OF HENDERSON J?

5          A.     I HAVE CERTAINLY APPEARED WITH

6  LEADING COUNSEL BEFORE HIM.  I CANNOT THINK OF A

7  TIME THAT I APPEARED AS THE ADVOCATE BEFORE HIM,

8  BUT I MAY HAVE DONE.  AS I AM A SURE YOU KNOW, HE

9  RETIRED FROM THE BENCH A NUMBER OF YEARS AGO, SO

10  I AM TRYING TO REMEMBER WHAT HAPPENED A NUMBER OF

11  YEARS AGO.

12          Q.     AND IN YOUR OPINION IS HE A

13  RESPECTED JURIST?

14          A.     YES.

15          Q.     THANK YOU.  I AM GOING TO NOW ASK

16  YOU SOME FINAL QUESTIONS.

17          A.     OKAY.

18          Q.     YOU VERY HELPFULLY EXPLAINED

19  EARLIER THE SCOPE OF YOUR INSTRUCTIONS, BUT I JUST

20  WANT TO ASK YOU SOME QUESTIONS ABOUT YOUR TERMS OF

21  ENGAGEMENT, AND SPECIFICALLY TO BE BEGIN WITH WHAT

22  YOUR FEE STRUCTURE IS.  BY THAT I MEAN ARE YOU

23  GETTING PAID BY THE HOUR, ARE YOU GETTING PAID A

24  FLAT FEE OR ARE YOU GETTING PAID ON SOME OTHER

25  BASIS?

                        192

1        A.     I AM GETTING PAID BY THE HOUR.

2        Q.     BY THE HOUR, OKAY.  HAVE YOU AGREED

3    ANY FORM OF SUCCESS FEE?

4        A.     NO.

5        Q.     IS THAT PERMISSIBLE IN THE CAYMAN

6    ISLANDS?  I SUPPOSE THIS IS US PROCEEDINGS.

7        A.     WELL, IT IS BUT NOT -- I DO NOT

8    KNOW IF IT IS PERMISSIBLE, BUT IT WOULD BE HIGHLY

9    INAPPROPRIATE IN MY OPINION FOR AN EXPERT TO HAVE

10   A SUCCESS FEE.

11       Q.     AND THEN LINKED TO THAT -- I KNOW

12   YOU CO-FOUNDED YOUR OWN FIRM IN MAY 2022.

13       A.     YES.

14       Q.     MANY CONGRATULATIONS.

15       A.     THANK YOU.

16       Q.     BUT PRIOR TO THAT YOU WERE A

17   PARTNER AT HARNEYS FOR A NUMBER OF YEARS?

18       A.     YES.

19       Q.     HARNEYS OF COURSE ARE SHANG PENG'S

20   CAYMAN ISLANDS' ATTORNEYS?

21       A.     YES.

22       Q.     DO YOU FEEL THAT YOU ARE

23   SUFFICIENTLY INDEPENDENT, IN LIGHT OF HOW RECENT

24   YOUR DEPARTURE FROM HARNEYS WAS, TO PROVIDE EXPERT

25   EVIDENCE IN THIS MATTER?

193

1          A.     YES.

2          Q.     I AM AFRAID I DO WANT TO GO BACK TO

3   THE BARRISTER FROM WILBERFORCE AGAIN AND JUST GET

4   SOME CLARITY ON THIS.

5          A.     YES.

6          Q.     WHY DID YOU INSTRUCT A BARRISTER TO

7   PREPARE THE FIRST DRAFT OF YOUR EXPERT OPINION FOR

8   YOU?

9          A.     WHEN I WAS AT HARNEYS, I WAS

10  OBVIOUSLY PART OF A LARGE TEAM.

11         Q.     YES.

12         A.     AND WHEN I GAVE EXPERT EVIDENCE

13  THERE I WOULD GENERALLY HAVE AN ASSOCIATE PREPARE

14  THE FIRST DRAFT FOR ME.  SINCE CO-FOUNDING

15  CLARITAS, I HAVE NOT YET BUILT UP A TEAM OF

16  ASSOCIATES, SO WHAT I HAVE BEEN DOING INSTEAD IS

17  RELYING ON THE LONDON BAR TO DO A LOT OF THE WORK

18  THAT IN A LARGER FIRM WOULD BE UNDERTAKEN BY AN

19  ASSOCIATE.

20         Q.     AND DO YOU KNOW WHAT CALL THIS

21  PARTICULAR BARRISTER IS?

22         A.     GRAEME?

23         Q.     YES.

24         A.     YES, HE IS VERY SENIOR.  HE IS,

25  I WOULD SAY, BETWEEN 20 AND 30 YEARS CALL.

                          194

1    I CANNOT BE EXACT.

2         Q.    YOU DO NOT KNOW.  THAT IS FINE, DO

3    NOT WORRY.  IS HE KING'S COUNSEL?

4         A.    NO.

5         Q.    NO.  DO YOU KNOW WHETHER ANY OTHER

6    EXPERTS WERE APPROACHED BEFORE YOU TO PROVIDE AN

7    OPINION ON THIS MATTER?

8         A.    I DO NOT KNOW.

9              MISS LEAHY:  THANK YOU VERY, VERY

10   MUCH INDEED FOR ATTENDING TODAY, AND FOR YOUR

11   PATIENCE.  WE ARE PLEASED TO SAY WE HAVE FINISHED.

12        A.    OKAY.  THANK YOU.

13             THE COURT REPORTER:  THE DEPOSITION

14   IS CONCLUDED.  OFF THE RECORD AT 15.24.

15        (THE DEPOSITION CONCLUDED AT 3.24 P.M.)

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF WITNESS

I, KATHARINE LUCY BLADEN PEARSON, AM THE
DEPONENT IN THE FOREGOING DEPOSITION.  I HAVE READ
THE FOREGOING DEPOSITION AND, HAVING MADE SUCH
CHANGES AND CORRECTIONS AS I DESIRED, I CERTIFY
THAT THE TRANSCRIPT IS A TRUE AND ACCURATE RECORD
OF MY RESPONSES TO THE QUESTIONS PUT TO ME ON 8TH
AUGUST, 2023.

SIGNED  ...............................
        KATHARINE LUCY BLADEN PEARSON

DATED THIS ........ DAY OF ............... 2023

196

KATHARINE LUCY BLADEN PEARSON

1          CERTIFICATE OF COURT REPORTER

2

3          I, AMY COLEY, ACCREDITED COURT REPORTER,

4     DO HEREBY CERTIFY THAT I TOOK THE STENOGRAPH NOTES

5     OF THE FOREGOING, AND THAT THE TRANSCRIPT THEREOF

6     IS A TRUE AND ACCURATE RECORD TRANSCRIBED TO THE

7     BEST OF MY SKILL AND ABILITY.

8

9          I FURTHER CERTIFY THAT I AM NEITHER

10    COUNSEL FOR, RELATED TO, NOR EMPLOYED BY ANY OF

11    THE PARTIES TO THE ACTION IN WHICH THE DEPOSITION

12    WAS TAKEN AND THAT I AM NOT A RELATIVE OR EMPLOYEE

13    OF ANY ATTORNEY OR COUNSEL EMPLOYED BY THE PARTIES

14    HERETO, NOR FINANCIALLY OR OTHERWISE INTERESTED IN

15    THE OUTCOME OF THE ACTION.

16

19          *Amy Coley*

20    SIGNED                    ............

21                    AMY COLEY

22

23

24

25

197

1          E R R A T A

2      (PLEASE MAKE ANY CORRECTIONS HERE,

3          NOT IN THE TRANSCRIPT)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## A

**ABANDON (4)**
35:14,24;39:20,24
**ABILITY (4)**
58:9;82:8,10,12
**ABLE (16)**
22:1;46:12;57:18;
82:15;83:4,8;88:9;
95:12,13;106:23;
115:15;130:15;
134:15;147:4;
172:19;173:14
**ABSOLUTELY (7)**
25:19;68:14;
74:15;94:9;114:12;
125:25;126:1
**ACCEPT (18)**
21:1;49:24;67:13;
68:14;69:17;70:21;
77:24;88:25;89:15;
95:20;104:6,7;
119:25;133:13;
146:14;161:10;
165:17;168:24
**ACCEPTED (4)**
70:15;104:9;
114:10;178:10
**ACCESS (3)**
75:16;77:9;84:23
**ACCORDANCE (2)**
61:21;65:17
**ACCORDING (2)**
28:17;133:9
**ACCOUNT (8)**
47:6,12;72:18;
74:10,15;97:9;
98:17;186:23
**ACCURATE (1)**
196:7
**ACCURATELY (1)**
42:23
**ACKNOWLEDGED (1)**
57:7
**ACT (43)**
15:13,15;16:21;
17:2;18:24;30:19;
37:9;60:8;62:9;
66:10;67:3,4,5;
68:21;69:23;70:2;
71:6;76:11,12;
115:21;127:12;
133:10;135:17,22,
24;139:4,6,6,10;
140:17;144:2;145:9,
13,14,22,24;147:15,
17,19;152:2,4;
154:25;185:16
**ACTING (6)**
21:9,17;41:12;
76:8;78:24;191:1
**ACTION (3)**

22:8,8;85:1
**ACTIONS (1)**
23:1
**ACTIVELY (3)**
87:3;88:9;90:4
**ACTS (1)**
99:10
**ACTUAL (2)**
71:9;166:12
**ACTUALLY (26)**
16:13;18:14;28:4,
8;38:12;50:18;
53:23;59:6;65:24;
66:23;71:6;72:7;
73:21;78:21;82:4;
94:25;105:6;109:22,
25;148:20;150:6;
160:15;163:4;
169:21;182:16;
185:25
**ADDITION (3)**
61:20;65:16;79:19
**ADDITIONAL (1)**
8:7
**ADDRESS (2)**
31:8;102:12
**ADDRESSED (1)**
135:11
**ADJUDICATE (2)**
35:11;41:13
**ADJUDICATED (1)**
35:18
**ADJUDICATES (1)**
121:5
**ADJUDICATION (3)**
34:11;42:18;178:6
**ADJUSTMENT (1)**
108:14
**ADMINISTRATIVE (1)**
109:4
**ADMISSIBLE (1)**
149:17
**ADMIT (3)**
41:16;46:22;49:23
**ADMITS (2)**
42:3,11
**ADMITTED (1)**
83:17
**ADOPTED (1)**
129:3
**ADVERSARIAL (3)**
59:7;73:18;74:25
**ADVERSE (1)**
182:22
**ADVERTISES (1)**
184:20
**ADVICE (12)**
97:4;99:4;112:4;
125:5,7,22;126:3,12,
13,14;127:16;183:22
**ADVISE (3)**
111:5;125:4;129:2
**ADVISING (2)**

46:16;127:18
**ADVOCACY (3)**
190:13;191:5,10
**ADVOCATE (1)**
192:7
**AFFAIRS (6)**
9:8;27:20;28:20;
29:4;108:16,20
**AFFECTED (1)**
57:1
**AFFECTING (1)**
43:6
**AFFECTS (1)**
53:19
**AFFIDAVIT (3)**
132:18,23;136:18
**AFRAID (1)**
194:2
**AGAIN (25)**
20:9;26:8;29:2;
36:14;40:22;48:11;
65:10;89:9;100:22;
101:11,16;115:13;
135:8;139:3,10;
142:6;147:14;149:6;
153:15;155:16;
157:13;171:2;
181:14,17;194:3
**AGAINST (15)**
15:9;17:13;30:4,6;
32:1;54:6;63:25;
96:2;114:1;149:23;
150:7,18;182:17;
183:10;184:2
**AGO (3)**
91:3;192:9,11
**AGREE (39)**
9:6,21;31:17;
35:25;45:24;48:23;
57:16;60:17,23;
63:15,18;65:8;67:11,
13;69:23;71:14,15;
74:22;75:5;82:21;
94:24;96:5;108:19;
109:12;113:12,15;
116:4;133:7;147:2;
150:17;167:24;
171:12;172:21;
173:25;175:3;
177:19;179:4;182:8,
20
**AGREED (13)**
20:4;28:25;73:5;
113:5,9;123:17;
135:12;172:9,16;
173:4,18;175:16;
193:2
**AGREEMENT (1)**
115:16
**AKIN (2)**
164:9;167:6
**ALLEGATIONS (1)**
181:10

**ALLEGING (4)**
86:18;132:8,12,15
**ALLOW (6)**
36:22;37:12;60:7;
61:22;65:18;184:1
**ALMOST (1)**
80:13
**ALONG (2)**
118:11;182:9
**ALTERNATIVE (1)**
166:16
**ALTERNATIVELY (1)**
75:1
**ALTHOUGH (3)**
52:14;81:24;174:3
**ALWAYS (10)**
9:22;27:3;55:17;
76:10;118:2;119:18;
141:20;161:16,19;
182:24
**AMERICAN (3)**
5:17,17;6:13
**AMOUNT (6)**
25:25;33:12;34:4;
83:12;148:9;167:18
**AMY (1)**
3:14
**ANALYSIS (2)**
146:20;183:5
**ANDREW (2)**
3:9;93:15
**ANSWERED (7)**
80:23;121:25;
122:14;139:13,15;
172:25;178:3
**ANTICIPATE (1)**
6:18
**ANTICIPATES (1)**
54:11
**APART (2)**
106:10;136:25
**APOLOGISE (2)**
16:4;156:7
**APPEAL (2)**
41:21;83:4
**APPEAR (2)**
162:14;185:1
**APPEARED (7)**
72:23;190:22,23;
191:2;192:3,5,7
**APPLICATION (70)**
20:20;26:15;27:8,
11;36:5;48:9;49:6,9;
50:7,13,18;52:2;
58:16;59:21;60:1,10,
19,25;61:7,15;62:16,
21;63:4,6,16,21,23;
64:23,24;65:3,5,23;
66:2,8;69:5;71:5,19;
73:2;81:23;82:2,13,
18;85:4,5,7,10;97:2;
98:25;99:2,16;
101:4;102:2;104:17,

18;123:3,8;133:10,
12;148:22;156:23;
162:7;175:14;176:4;
179:7;182:11;183:8;
184:20;185:1;190:3,
20
**APPLICATIONS (20)**
48:8;61:3;63:9,12;
65:7;66:15;67:7,20,
21,24;68:1,9;69:11;
70:13;79:16;83:2,3;
128:23;190:18;
191:20
**APPLIED (9)**
11:16;128:13;
145:13,15,23,24;
153:18;159:14;
170:14
**APPLIES (23)**
13:11;17:18;
34:10,12;38:18;
39:13;40:8;43:18;
58:1;67:20;114:7,8;
148:16;150:8,9,14,
15,16;154:15;
155:17;156:3;176:2;
184:19
**APPLY (49)**
11:15;13:12;
19:11;20:15;21:2;
26:4;30:23;31:2;
35:13,21;38:10,16;
39:21,24;42:4,12;
49:3;63:10;64:19;
68:7;84:20;92:14,
19;94:16;111:2;
112:21;122:21,22;
124:21;125:12;
145:9;146:4,5;
147:21,25;148:1,23;
149:6,15;150:3,20,
22;154:14;155:21;
160:22;161:1;
164:24;185:18;
186:6
**APPLYING (3)**
136:3;156:11;
165:5
**APPOINTED (5)**
10:8;9:14:13;
29:20;162:16
**APPOINTMENT (2)**
11:1,3
**APPOINTMENTS (2)**
10:22;14:17
**APPRECIATE (3)**
101:13;106:20;
155:6
**APPRISE (1)**
49:17
**APPROACH (3)**
95:22;128:24,25
**APPROACHED (1)**

195:6
**APPROPRIATE (7)**
7:2;47:2;78:25;
94:16;136:14;
137:10,11
**APPROXIMATELY (1)**
189:23
**ARBITRATION (1)**
189:22
**AREA (1)**
176:22
**AREAS (1)**
29:11
**ARGUABLE (2)**
36:7;37:7
**ARGUABLY (1)**
154:19
**ARGUMENT (5)**
24:14;47:17;59:7;
73:18;75:1
**ARGUMENTATIVE (4)**
131:15;133:1;
146:25;152:8
**ARISE (2)**
25:21;39:4
**ARISES (2)**
24:21;38:25
**AROSE (1)**
101:9
**AROUND (6)**
57:6;73:2;120:1;
126:6;127:18;
189:20
**ARRANGEMENT (1)**
19:19
**ARTIFICIAL (1)**
103:2
**ASCENTRA (12)**
5:13;7:15;81:7;
87:16,20;88:3;
108:21;110:24;
111:7,8;116:9;
178:24
**ASCERTAINED (1)**
20:6
**ASCOT (1)**
128:3
**ASIDE (1)**
68:19
**ASPECTS (2)**
132:2;139:7
**ASSERTING (1)**
32:1
**ASSESSMENT (3)**
96:16,21;172:5
**ASSET (1)**
22:6;185:12
**ASSETS (32)**
14:23;21:24;22:4;
29:24;43:2,8;46:11;
54:22;56:7;57:3,4;
108:16,20;116:21;
119:2;121:6,17;

126:9,22;127:7,15;
166:22;173:22;
185:7,11;186:16,17,
20;187:5,8;188:4,4
**ASSIST (4)**
49:17;50:4;52:11;
77:5
**ASSISTANCE (1)**
122:21
**ASSISTED (2)**
8:10;112:24
**ASSOCIATE (2)**
194:13,19
**ASSOCIATES (1)**
194:16
**ASSUME (4)**
67:10;68:15,16;
183:21
**ASSUMES (1)**
44:18
**ASSUMING (6)**
67:16,17;68:6;
101:3;103:1;188:7
**ASSUMPTION (5)**
36:1;55:23;67:12;
78:3;100:20
**ASSUMPTIONS (1)**
101:2
**ASTUTE (1)**
76:10
**ATTEND (1)**
190:14
**ATTENDING (1)**
195:10
**ATTENTION (9)**
49:1;50:9;60:2;
85:15,19;97:3;
131:8;180:4,20
**ATTORNEY (1)**
6:20
**ATTORNEYS (2)**
137:9;193:20
**AUGUST (1)**
196:9
**AUTHORITIES (1)**
8:6
**AUTHORITY (3)**
72:20;95:4,19
**AVAILABLE (8)**
22:4,6,12;59:16;
114:3;127:19;131:2;
163:11
**AVENUE (1)**
188:8
**AVOID (1)**
104:1
**AWARE (2)**
87:23;108:11
**AWAY (5)**
26:10;41:2;71:12;
93:3;176:20

**B**

**BACK (28)**
23:21;42:7;45:1,8,
11;53:8;64:9;65:9;
69:15;71:24;79:14;
91:18,21;92:4,10;
105:5;119:16;128:8;
133:2;134:25;135:3;
148:20;157:24;
161:14;175:12;
186:11;188:24;
194:2
**BACKGROUND (2)**
118:15;139:22
**BADLY (1)**
165:24
**BALANCE (14)**
43:14,18;44:13;
45:5,23;73:11;
74:19;92:19;93:5,11,
12;94:17;134:15;
173:20
**BANK (2)**
171:21;186:23
**BANKRUPTCY (8)**
87:7;107:8;108:1;
109:17;111:2;135:8;
177:3,10
**BAR (1)**
194:17
**BARRED (7)**
47:19;54:7;81:8;
82:5;85:16;132:18;
133:13
**BARRISTER (4)**
86:13;194:3,6,21
**BASIC (1)**
113:9
**BASICALLY (4)**
34:17;80:12;
93:10;127:3
**BASIS (16)**
30:13;44:16;
67:10;106:3;124:23;
129:24;130:2;141:5;
153:11;156:4;
162:23;167:14;
169:16;171:23;
176:8;192:25
**BEARING (1)**
56:25
**BECOME (2)**
43:21;153:13
**BECOMES (2)**
66:3;174:12
**BEGIN (1)**
192:21
**BEHALF (1)**
52:11
**BEHAVED (1)**
165:24

**BEHIND (1)**
183:16
**BELATEDLY (1)**
123:10
**BELIEF (1)**
8:24
**BELONG (1)**
185:11
**BELONGS (1)**
185:7
**BENCH (1)**
192:9
**BENEFIT (24)**
45:12;78:2,8;
116:9,15,24;120:15;
121:12;122:12;
123:19,23;124:6,7,
10,12;125:9,19;
126:10;129:23;
130:16,19;132:1;
178:12,15
**BESIDE (1)**
107:19
**BEST (4)**
8:23;120:3;
152:14;160:9
**BET (1)**
107:3
**BETTER (1)**
178:24
**BEYOND (16)**
76:13,14,19;
123:11;125:1;
127:11,12;128:17,
18,19;130:21,23,24;
136:1,2;155:2
**BIG (6)**
36:13;38:23,25;
115:1;151:14;
165:23
**BIT (6)**
12:16;45:15;75:2,2;
73:13;101:1;114:5
**BLADEN (3)**
5:5;196:3,16
**BLAIR (1)**
5:10
**BLUSH (4)**
46:20;101:7,10;
102:25
**BOARDS (1)**
105:6
**BODY (2)**
8:11;87:24
**BOTH (28)**
10:1;14:4;19:23;
31:22;34:16;45:13;
59:25;66:19;103:22,
24,25;115:22;
130:16;133:6;137:8;
145:9,13,21,23;
146:4,5;147:21;
150:16;154:14;

155:17,21;179:11;
182:8
**BOUND (7)**
18:16;54:16,21,21,
23;56:2,13
**BREACH (1)**
76:14
**BREAK (13)**
7:1;39:15;52:21;
53:6;91:22;92:8;
101:11;131:10;
134:21;135:2;
188:15,17,23
**BREAKS (2)**
6:25;52:24
**BRIEFLY (3)**
36:4;160:11;
167:11
**BRING (26)**
9:8;15:8;22:11;
35:14;37:2,12;
47:25;50:9,18;
51:18;70:10;72:25;
82:12,18;85:11;98:4,
8,12;99:25;101:5,19;
133:10;183:10;
184:1;185:8;187:14
**BRINGING (4)**
26:14;63:21;
100:24;102:10
**BRINGS (2)**
22:8;25:12;71:24;
151:12
**BROAD (1)**
128:24
**BROUGHT (7)**
63:24;68:1;85:14,
18;101:3;180:2,19
**BUILD (1)**
182:3
**BUILT (2)**
73:3;194:15
**BUSINESS (5)**
115:6;118:21;
164:18,19;171:11

**C**

**CALCULATES (1)**
121:7
**CALL (8)**
45:2;57:8;64:11;
82:17,17;138:3;
194:20,25
**CALLED (1)**
64:23
**CALLING (2)**
141:11;149:18
**CAME (1)**
100:23
**CAN (121)**
9:6;10:16;15:7,16;
17:4,24;20:14,16;

22:23;24:24;28:11;
29:11;32:9,13,15;
34:23;35:12,14,17,
21,24;37:24;38:10,
15;41:16,17;42:19,
22;43:9;44:25;
45:10;48:24;50:11;
52:7;55:23;59:4,9,
10,11,25;60:2,17,23;
62:4;65:21;66:15,
16;67:13;69:18;
72:4;79:6;81:1,3;
84:3,3,15,16;85:13;
86:9,10;88:5;90:6,
10;91:22;94:8;
97:15;101:13;
108:19;109:8,17;
113:12;117:9;
120:21;122:5;125:2;
129:8;131:9,10;
132:2,4,23;133:5,7,
10,15;136:24;137:4,
7;140:13;141:13;
143:20;144:24,25,
25;147:20;148:7;
150:11,17,22,22,23,
25;152:10;153:25;
155:3;157:5;159:3;
160:9;162:14,14;
164:19,20;166:6;
168:2,14;173:22;
176:14;180:20,23;
188:1;190:2

**CAPABLE (1)**
20:4
**CAPACITY (1)**
41:13
**CARE (1)**
133:18
**CAREFULLY (2)**
86:16;105:6
**CARRIED (1)**
27:19
**CARRIES (1)**
89:24
**CARRY (1)**
58:15
**CASE (54)**
6:1;11:4,6,7;
19:15;24:14,24;
26:15;28:22;48:13;
56:16;62:15;64:1,8;
66:20,21;70:2;71:7;
74:12;88:23;89:25;
95:23;96:15;106:12,
17,19;110:1,4;111:6,
7;112:1;118:8;
128:4,12;129:5;
131:8;136:5,13,19;
137:9;143:7,8,10,12,
13;144:11;148:14;
160:12;163:24;
165:3;166:8;167:16;

169:21;183:3
**CASES (7)**
23:10;82:14;
111:24,25;125:3;
161:7;167:11
**CASH (7)**
43:14;44:3,6;
46:13,23;93:8;
172:17
**CATEGORY (2)**
23:9,12
**CAUSE (2)**
22:7,8
**CAUTIOUS (1)**
76:9
**CAVEAT (2)**
116:11;131:12
**CAVEATS (2)**
65:4;144:8
**CAYMAN (88)**
3:5,7;9:2;10:20;
11:20;15:10;28:5;
29:17,20;31:6;
49:22;72:20;73:21;
74:13;85:19;87:3,5,
10;88:8,10;93:8;
107:25;108:19,22;
109:8,9;110:1,20,25;
111:17;112:5,19,25;
113:1,6,25;116:5;
123:1,14,22;125:11;
127:4,13,20,23,25;
129:2,2;138:7,24,24;
139:8;140:12,14,16;
141:5,15,18,20;
159:6;161:7;163:3;
168:25;170:11,13;
175:13,21;176:13,
24;177:2,16;179:19;
180:12,16;181:15;
185:9,15,17;187:15;
188:2,10;189:4,5,14,
15;190:15;193:5,20
**CAYMAN'S (1)**
76:14
**CENTS (1)**
174:16
**CERTAIN (11)**
20:6;32:10;73:3;
128:21,24;132:13;
137:17;148:24;
176:8;179:12;180:2
**CERTAINLY (9)**
25:8,12;38:4;
56:21;58:7;82:23;
87:5;110:23;192:5
**CERTIFICATE (2)**
72:24;196:1
**CERTIFICATION (1)**
174:14
**CERTIFIED (2)**
48:15;136:22
**CERTIFIES (1)**

144:13
**CERTIFY (2)**
23:17;196:6
**CERTIFYING (1)**
142:22
**CHALLENGING (1)**
112:18
**CHAMBERS (4)**
8:1;86:13;183:23;
184:8
**CHANCE (1)**
183:23
**CHANCERY (1)**
3:19
**CHANGE (17)**
18:13,18;51:17;
52:7,17;57:17;
59:23;72:5;74:4;
79:24;91:16;100:22;
122:5;154:22,24;
158:23;181:9
**CHANGED (4)**
51:21;122:15;
136:17;137:2
**CHANGES (4)**
8:19;158:9;
159:17;196:6
**CHANGING (3)**
23:7,8;100:5
**CHAPTER (15)**
7:14;108:10;
124:20,22;125:12;
128:12;130:15,18;
131:2;185:5,18,24;
186:6;187:2;188:3
**CHECK (5)**
15:17;17:3;20:17;
86:10;134:20
**CHECKED (2)**
8:4,5
**CHECKING (1)**
173:19
**CHERER (1)**
3:15
**CHOICE (2)**
35:12;162:6
**CHOICES (4)**
35:15,16;39:20,23
**CHURCH (1)**
3:4
**CIRCLES (2)**
57:7;73:2
**CIRCUMSTANCES (10)**
18:15;26:23;
32:10;33:10;36:9;
38:5;83:9;148:24;
150:23;178:22
**CLAIM (35)**
22:7,11;25:12;
32:1;35:14,15,18,22,
24;36:7,9;37:2,7,13;
38:3,3,6,12;39:20,
24;43:9;57:5;78:14;

85:11;106:10;
114:13;133:7;
149:23,25;150:1,6,
11,18;183:4,12
**CLAIMANT (1)**
15:7
**CLAIMING (2)**
19:20;185:12
**CLAIMS (24)**
20:5;22:1;30:4,20;
31:14,18;38:19,25;
39:1,7;40:8;53:12,
15,19;54:6;114:1,3;
115:22;121:6;
129:13,14;131:25;
172:6,6
**CLARIFY (1)**
191:3
**CLARITAS (1)**
194:15
**CLARITY (1)**
194:4
**CLASS (7)**
19:13;77:24;78:1,
7;113:22;116:1;
150:5
**CLASSES (2)**
61:22;65:18
**CLASSIFY (1)**
47:3
**CLEAR (7)**
16:17,18;25:25;
69:7;70:3;72:22;
191:23
**CLEARER (1)**
102:21
**CLEARLY (1)**
21:24
**CLIENT (3)**
6:21;55:18;126:18
**CLOSED (1)**
183:16
**CLOSELY (2)**
120:6;126:5
**CO-COUNSEL (1)**
127:22
**CODE (5)**
107:8;108:2;
109:17;111:2;135:8
**CO-FOUNDED (1)**
193:12
**CO-FOUNDING (1)**
194:14
**COLEY (1)**
3:14
**COLLECT (4)**
14:22;29:24;
116:20;127:7
**COLLECTIVE (27)**
39:8;41:4;109:3;
113:17;116:6,8;
120:14;121:11;
123:15,17,18,19,23;

124:5,7;125:8,9;
129:24;130:2;135:6;
169:8,10;172:5;
178:6,11,14;179:20
**COLLECTIVE' (1)**
129:11
**COMB (1)**
68:22
**COMBINED (1)**
86:4
**COMFORTABLE (1)**
101:12
**COMING (5)**
69:1;108:25;
120:7;164:6;167:5
**COMMENCE (8)**
30:5;58:1;96:1,25;
97:22,24;182:14,17
**COMMENCED (1)**
100:17
**COMMENCING (2)**
96:8;100:1
**COMMENT (1)**
152:9
**COMMENTARY (1)**
152:19
**COMMITTEE (14)**
61:10,11;66:16;
83:1;95:2;98:20;
99:1,3;103:24;
104:13,19;105:1,3,
13
**COMMON (10)**
13:24;29:9;60:21;
63:1,15;145:6;
170:13;171:13;
175:14;176:2
**COMMUNICATE (2)**
76:1;79:11
**COMMUNICATION (1)**
76:5
**COMPANIES (25)**
15:13,14;16:21;
17:2,17;32:22;66:12,
13,13,17,18;68:21;
69:22,23;135:17,18,
22;139:5,6;140:1;
144:2;145:9;147:15,
19;163:15
**COMPANY (149)**
10:5,10;12:14,15,
20;13:7,9,11;15:9;
17:11,13;18:5,13;
19:16,20;19:21:23;
22:24;23:4,17;24:1,
15;25:5;26:25;
27:12,22;28:1,5,18,
20;29:4,11,15,25;
30:14;33:6;42:19;
43:4,11,17;45:23;
46:10;47:22;48:15;
53:24;54:6;56:4;
60:11;61:24,25;62:6,

15;63:24;65:24;
66:2,8,21,22;72:13;
74:11,19;77:19,21,
23;78:15;82:11;
84:21;88:10;89:18;
90:2;92:15;95:6,9,
20;96:5;98:22;
100:24;101:17,24;
103:22;105:7;
114:14;115:2,4;
116:16,21;117:5;
118:12,23;120:7;
121:17,19;122:9;
123:2;124:19,24;
127:3,23,25;130:9;
131:12,22;132:7;
134:2,9,13;136:20;
139:7;141:5,15,18,
24;142:21;144:4,23;
148:13;150:7,10,18;
151:11,24,25;152:5;
153:24,25;156:4;
157:14;158:4,8,10,
13;161:4;162:18;
164:6,9,11,18;165:3;
166:23;167:9,20;
173:20;174:3,12;
175:24;177:3,5,10;
185:8,11

**COMPANY'S (3)**
43:8;56:9;186:17

**COMPLAINT (1)**
175:11

**COMPLETED (1)**
42:18

**COMPLETELY (5)**
28:21;29:5;35:25;
37:13;106:7

**COMPLETENESS (1)**
41:10

**COMPLICATED (1)**
99:12

**COMPLY (3)**
46:14;76:11;
104:19

**COMPRISED (1)**
105:1

**COMPROMISE (4)**
19:19;20:3;30:20;
31:18

**COMPULSORY (15)**
9:3;10:1,7,12;
11:10,16,21;12:9,14,
19;13:3,17;157:25;
158:19;164:11

**CONCEIVE (1)**
49:15

**CONCENTRATE (1)**
86:1

**CONCERNED (3)**
72:2;170:3;175:17

**CONCLUDED (2)**
195:14,15

**CONDUCT (4)**
11:15,16;12:13,14

**CONDUCTING (1)**
7:4

**CONDUCTS (1)**
104:14

**CONFERRED (1)**
64:17

**CONFIDENTIALITY (1)**
76:15

**CONFIRMED (1)**
138:4

**CONFRONTED (1)**
22:21

**CONFUSED (1)**
111:21

**CONFUSION (1)**
16:16

**CONGRATULATIONS (1)**
193:14

**CONNOTATION (1)**
89:24

**CONSENTED (1)**
34:16

**CONSIDER (8)**
46:19;112:23;
126:4;132:16;
138:18;169:3;179:7;
181:9

**CONSIDERATION (4)**
36:15;101:8;
103:4;167:18

**CONSIDERED (6)**
88:2;94:16;110:6;
112:8,25;136:13

**CONSIDERING (4)**
58:3;96:8,12;
100:4

**CONSTITUENTS (1)**
88:23

**CONSTITUTE (2)**
88:21;139:23

**CONSTITUTES (1)**
177:9

**CONSULTATION (1)**
6:16

**CONSULTED (1)**
98:25

**CONSULTING (1)**
6:19

**CONTENT (2)**
81:3;181:10

**CONTENTIOUS (1)**
29:11

**CONTENTS (2)**
8:15,16

**CONTESTING (1)**
112:5

**CONTEXT (16)**
34:12;45:21;
69:24;70:1,9,13;
106:12;107:22;
112:4;122:18;132:7;

177:25;180:9,11;
190:24;191:21

**CONTINGENT (2)**
20:6;186:15

**CONTINUE (4)**
15:8;30:5;140:19;
164:19

**CONTINUED (1)**
6:11

**CONTINUING (1)**
60:5

**CONTINUOUSLY (1)**
30:15

**CONTRARY (2)**
72:19;74:12

**CONTRIBUTE (1)**
143:15

**CONTRIBUTORIES (18)**
14:18;51:23;
59:25;60:24;61:12,
17;64:5;65:12;
66:14,21;68:25;
70:5;75:10;105:17,
24;146:7;162:12;
181:22

**CONTRIBUTORIES' (1)**
65:7

**CONTRIBUTORS (1)**
79:1

**CONTRIBUTORY (13)**
61:25;62:5,17,22;
63:4,17,25;64:19;
67:21,25;184:17;
185:13;186:12

**CONTRITE (1)**
155:7

**CONTROL (2)**
64:18;108:17

**CONTROVERSIAL (5)**
55:25;69:14;
71:13;108:10;
128:10

**CONVERSATIONS (1)**
137:22

**CONVERT (1)**
167:21

**CONVERTED (1)**
162:19

**CONVINCED (3)**
161:9;187:10,11

**CONVINCING (1)**
163:24

**COPIES (3)**
15:19;75:13;77:13

**COPY (7)**
7:16;12:5;15:16;
17:19;79:2;86:7;
90:10

**CORRECTIONS (2)**
5:25;196:6

**CORRECTLY (1)**
188:7

**COSTS (2)**

56:25;106:11

**COUNSEL (18)**
6:10,16,19;61:10;
73:21;81:16;106:22;
126:7;179:3;184:7;
190:15,15,18;191:6,
7;192:3,6;195:3

**COUNSEL'S (1)**
126:14

**COUNTER-PARTY (1)**
77:20

**COUNTRY (1)**
109:5

**COUPLE (3)**
161:7;173:8,12

**COURSE (35)**
6:15;11:13;21:21;
25:8;32:17;34:5;
35:19;39:3,5;46:16,
17;47:16;48:5;52:5;
66:5;73:24;77:12;
78:19;83:15;86:21;
101:9;115:5;118:21;
132:5;138:22;
165:24;168:15;
169:7;171:10;172:7,
10,12,19;174:24;
193:19

**COURT (226)**
3:12,18;5:1,3,20;
9:3;10:1,2,4,7,9,12,
13,15,17,19,22;11:6,
7,11;13:4,16;14:5,9,
13;15:10;17:14;
19:11;20:1,10,15,21;
21:2,12;22:15;
25:16;26:4,6,23;
27:3,22;28:5,8,15,
18,22,23;29:3,12,17,
20;30:6,23;31:3,6;
33:7;35:13;36:6;
37:9,11;38:10;
41:22;42:4,10,12;
45:3;47:6;48:3,8,14,
16,20,24;49:3,7,8,12,
13,17,17;50:4,18;
51:4,5,6;52:7,10;
53:7;54:8;56:1;
57:21,25;58:2,6,7,
15,19,23;59:10,14,
16,20;60:1;61:12,14,
22;62:4;63:10;
64:18,19;65:10,12,
17,22,25;66:7,22;
67:11,13;69:18;
70:18;71:7;73:6;
74:20;75:3,15,17;
76:22;77:1,8,9;
79:11,18;80:18;
81:17;82:15,18;
83:5;84:23;85:15,
20;86:20;87:7;92:6,
9;96:23;97:6,7,8,19;

98:15,15;99:2;100:8,
12,18,19;102:3,6;
103:10;107:24;
108:18,22;109:8,9,
19;110:20;111:20;
112:24;113:25;
116:24;117:2,8,13,
18,19;123:7;124:22;
132:10;135:3;141:7;
151:12;156:3,16;
157:24;158:2,15;
160:22;161:1;162:7,
10;164:6;167:5;
168:10;169:11,20;
170:1,9,11;171:24;
175:13;176:14,19;
177:2,16;180:4,7,11;
182:9,21;183:6,13;
184:5,10;185:15,17,
17;186:3;187:21;
188:2,10,21,24;
190:14;191:14;
195:13

**COURTS (2)**
128:22,25

**COURT'S (3)**
49:1;97:3;131:7

**COURT-SUPERVISED (1)**
12:10

**COVER (1)**
23:10

**COVERED (2)**
173:1;190:21

**COWAN (7)**
168:10;169:3;
171:23;178:22;
179:11;181:2,11

**COWAN'S (6)**
132:3;168:6,14;
169:14;171:3;
180:17

**CREDITOR (96)**
15:7;20:21;21:1;
26:4,14;31:13;32:1,
9,12;33:7,12,17,23;
34:8,15,20,23,25;
35:7,11;36:5,25;
37:19;38:5,10,19;
39:19,23;40:8;41:10,
21;48:21;49:2,6,10;
50:7,17,23;52:1,4;
53:22,24;61:24;62:4,
5;63:17,22;64:19;
65:23;66:1,3;67:14,
25;69:19;70:16;
71:3;72:9,18;73:19,
23;77:9,22;78:13,15,
19;81:22;84:19,20,
22;87:24;114:14,18;
119:18;133:7;141:4,
14;150:6,11;156:3,
11;158:3;162:23;
173:14;182:2,6,8,18;

183:7,9,12,17,25;
184:6,17;185:14;
186:12

**CREDITORS (197)**
14:17,24;17:12;
19:13,20,21;20:14;
21:11,13,18,20;22:9,
16,24;23:5,14,18,22;
24:17;25:10,17;26:1,
24;27:4,13;29:21,25;
31:2;42:3,12,19;
43:3,25;44:4;46:9;
47:2,15,25;48:2,16,
18;49:13,24;50:17;
51:2,13,19,20,23;
52:11,19;53:11;55:1,
2,15;56:4,18;57:13,
18,23;58:4,9;59:1,9,
20,25;60:6,18;61:11,
16;62:17;63:2;64:6;
65:6,11;66:9,17,20;
68:24;70:4;72:3,12,
12,25;73:7;74:8,16;
75:2,12,20;76:1;
77:4,11;78:4;79:3,
12,21;80:14,20;81:7,
12,19;82:5;83:13;
85:16;87:8,9,14,19;
88:2,8,12,20;89:1,
16,25;90:1;95:14;
96:3;99:7,16,17,21;
100:2,13,15;103:10,
20,23;105:12,16,24;
106:6,10,12;114:4;
115:22;116:12,24;
117:2,7,12,16;
118:16,20;119:13;
120:21;121:1,7,8,12,
14,15;124:6,7,10,12;
125:16,24;129:13,
23;130:1,17,18;
132:1,18,23;133:17;
134:16;144:17;
146:7;150:17;
154:10;162:11;
164:20;168:12;
169:5,15,22;170:3,5,
15;171:9,14;172:2,
18;173:23;174:8,9,
24;175:6,18;176:7;
177:17;178:5,23;
181:22

**CREDITORS' (20)**
26:6;30:20;31:18;
43:9;47:5;54:17;
58:21;70:19;72:14;
73:14;74:21;78:9;
80:5,20;98:14;
121:6;131:25;
136:21;166:5;167:6

**CREDITOR'S (12)**
20:21;22:1;71:8;
141:19;142:21;

143:4;158:13;163:3;
164:10;182:21,22;
184:12

**CRITICAL (1)**
168:5

**CRITICISED (1)**
131:21

**CRITICISING (1)**
168:22

**CRITIQUE (1)**
181:2

**CROSS-EXAMINED (1)**
190:11

**CRYSTALLISED (1)**
130:12

**CUT (1)**
72:23

**CYCLE (1)**
139:7

**D**

**DAMAGES (1)**
20:7

**DATA (1)**
76:15

**DATE (1)**
76:2

**DATED (1)**
196:20

**DAY (8)**
6:15;7:5;24:18;
46:13;191:15,15,17;
196:20

**DAYS (2)**
122:9;191:14

**DEADLOCKED (1)**
121:19

**DEAL (2)**
11:12;49:21

**DEALING (9)**
31:13;36:4;39:16;
41:5;49:19;65:5,6;
73:15;166:18

**DEALS (3)**
135:18;139:6;
140:1

**DEBATE (5)**
112:12;139:24;
165:14,23;177:13

**DEBT (60)**
32:2,5,10,13,14;
33:8,12,19,22,24;
34:3,9,11,16,20,21,
22;35:8,9,17,20,23;
36:2,11;37:3,17,20;
38:7,11,41:12,14;
42:3,11;77:19;83:5,
7,11,14,16;84:5,8,9,
13,13,18;108:14;
114:16;115:7;133:6,
8;148:5,8,8;149:19,
22;150:20;172:14;

173:14;174:15,21

**DEBTOR (12)**
9:9;15:9;27:20;
30:5;108:16;114:1;
129:14;155:25;
177:5,11;186:13,15

**DEBTOR'S (2)**
9:8;14:23

**DEBTS (33)**
20:4,5;34:5;39:12,
13,16;40:24;46:15;
50:2,2;56:9;76:4;
77:16;83:23;95:14;
98:14;114:7,9;
118:23;121:3;
134:10,14;141:6;
144:5;147:24;
148:13;154:5;156:5;
158:4,14;172:13;
174:22;178:7

**DECIDE (1)**
107:24

**DECIDED (3)**
26:4;36:2;99:25

**DECIDES (1)**
53:15

**DECISION (7)**
18:9;93:15;94:13;
95:1,3;103:15;104:5

**DECISIONS (5)**
139:22;161:11;
163:1,20;167:13

**DECLARATION (46)**
7:13,16,20;8:8,11,
11,14,20,23;9:1;
12:2;16:19;61:18;
81:1;86:5,8,12;87:1;
89:19;90:6,25;110:5,
9;111:11;123:12;
127:11;128:18;
130:24;132:3,3;
137:10;138:7,16;
142:12;146:16,23;
158:8,10;161:2;
164:8;168:1,6,14;
169:14;179:8,12

**DECLARATIONS (2)**
160:19;162:3

**DECLARE (2)**
42:22;43:2

**DEEMED (2)**
134:13;161:4

**DEEMING (1)**
162:21

**DEFEND (1)**
153:12

**DEFER (1)**
126:7

**DEFINITELY (3)**
23:23;24:13;41:5

**DEFINITION (10)**
107:13,13;108:4,
10,13;109:3;129:7;

135:13;163:16;
179:8

**DEFINITIONS (1)**
113:2

**DEFINITIVELY (2)**
93:12;121:21

**DELIBERATELY (2)**
86:19;132:9

**DELIGHTED (1)**
169:23

**DEPARTURE (1)**
193:24

**DEPEND (1)**
154:20

**DEPENDING (2)**
13:3;38:2

**DEPENDS (3)**
43:12;123:16;
145:3

**DEPONENT (1)**
196:4

**DEPOSED (2)**
190:7,10

**DEPOSITION (10)**
5:15,17,25;6:14;
7:5;143:15;195:13,
15;196:4,5

**DERIVES (1)**
108:7

**DESIGNED (4)**
129:23;130:16,19;
146:16

**DESIRED (1)**
196:6

**DETERMINATION (58)**
18:5,16;23:7;
24:19;30:13,15;
43:16,22;45:19;46:4,
24;49:5;51:18,21;
52:8,17;59:24;72:5,
24;74:4;79:6,25;
91:11,13,14;94:22;
99:23;100:5,8,12,19,
22;103:18;105:8;
117:5,9,14,21,25;
120:1;121:23;122:5,
8;124:19,24;131:13;
141:24;142:11;
145:4;154:22,24;
157:14;158:15,16

**DETERMINATIONS (1)**
158:24

**DETERMINE (8)**
46:7;47:24;
100:23;101:24;
111:20;156:20;
180:7,12

**DETERMINED (17)**
35:22;38:6,13;
47:21;48:4;72:13;
95:21;98:16,22;
101:17;103:21;

104:10,22;166:3,8;
187:7,16

**DETERMINES (2)**
124:2;141:24

**DETERMINING (4)**
45:23;92:15;
103:8;123:7

**DICTA (1)**
163:20

**DIFFERENCE (12)**
10:24;12:18,25;
38:18,24,25;63:19;
111:23;115:2;
116:18;140:4;154:1

**DIFFERENCES (15)**
9:17;12:9,12;13:8,
10;14:2;31:9;112:9;
146:17,21;147:5,9,
11;167:1,2

**DIFFERENT (19)**
13:2;40:23;47:9;
63:8;70:22;101:14;
111:25;112:2;
114:22;122:22;
136:19;137:1;
153:22;162:1;
170:17;176:18;
178:24;181:20;
184:16

**DIFFERENTIATE (1)**
159:4

**DIFFERS (1)**
11:10

**DIFFICULT (5)**
24:11;49:21;
72:17;96:7;143:20

**DIFFICULTIES (1)**
44:4

**DIRECT (22)**
52:7;58:25;61:12,
16;62:4;65:12;66:1,
7,22;67:14;69:18;
71:20;72:4,8,11;
73:21;74:3;75:2;
79:11,24;103:10;
188:2

**DIRECTED (1)**
65:22

**DIRECTING (1)**
74:6

**DIRECTION (3)**
50:12;185:16;
188:9

**DIRECTIONS (2)**
49:4;51:7

**DIRECTORS (3)**
160:18;161:3;
164:7

**DISAGREE (2)**
67:7;68:11

**DISAGREED (1)**
92:22

**DISAGREEING (1)**

173:5
**DISAPPLIED (1)**
150:25
**DISCRETION (3)**
28:9,15;29:7
**DISCUSS (2)**
53:1;138:3
**DISCUSSED (17)**
79:15;109:24;
132:21;133:3;
135:12;144:17,21;
150:24;151:2;154:4;
155:3,17;166:20;
173:18,19;175:12;
181:17
**DISCUSSING (3)**
45:18;47:5;185:13
**DISCUSSION (3)**
92:13;95:5;153:9
**DISCUSSIONS (1)**
173:19
**DISMISS (3)**
112:17;185:18;
188:3
**DISMISSAL (1)**
125:12
**DISPUTE (15)**
33:11,16,22;34:3,
7;40:13,19,20,20,22;
53:20;77:21;83:11;
116:2;129:15
**DISPUTED (19)**
35:10;38:25;39:2,
12,13,16;40:8,24;
53:15;77:16;78:14,
20;83:23;84:13;
114:7;133:7;148:9;
172:13;174:22
**DISPUTES (1)**
84:18
**DISSOLUTION (2)**
28:12,16
**DISSOLVE (1)**
166:23
**DISSOLVED (3)**
27:22;28:6,19
**DISTINCTION (8)**
63:7;66:12;68:23;
70:3,11;150:13;
151:14;159:25
**DISTINCTIONS (1)**
160:6
**DISTINGUISHING (1)**
161:15
**DISTRIBUTE (4)**
14:23;29:24;
115:8;166:22
**DISTRIBUTION (2)**
163:11;178:7
**DIVIDE (1)**
157:4
**DIVIDEND (8)**
32:6;35:2;42:22;

43:2;134:17;168:12;
169:24;175:8
**DIVIDENDS (1)**
178:7
**DIVIDER (1)**
168:16
**DOCUMENTS (2)**
16:5;75:14
**DOLLAR (2)**
172:4;174:16
**DOMESTIC (3)**
170:14;175:17,21
**DONE (3)**
191:10,16;192:8
**DOORS (1)**
183:16
**DOUBLE-CHECK (1)**
33:4
**DOUBT (5)**
33:11;46:2;59:15;
83:11;122:21
**DOUBTFUL (40)**
18:6;23:8,9,16;
24:2,15,25;25:6,13,
18;30:14;43:18;
46:25;47:4,24;
48:17;51:22;59:24;
62:1;66:18;74:14;
90:22,23;91:1,14;
92:16;94:20;100:6;
101:25;103:17,22;
104:23;130:3,5,10;
131:6,8,13,18;
136:23
**DOUBTFULLY (1)**
105:11
**DOWN (4)**
39:16;101:11;
118:13;134:9
**DRAFT (9)**
7:22,24;8:3,4;
86:10,12,14;194:7,
14
**DRAW (7)**
48:25;94:12;97:2;
131:7;150:13;160:1,
6
**DRAWING (1)**
105:6
**DUE (13)**
11:12;22:2;43:9;
46:9;50:3;66:4;
95:14;118:23;132:4;
138:22;141:7;158:5;
173:14
**DURATION (1)**
167:9
**DURING (7)**
6:15;15:6;52:24;
101:9;119:12;
158:24;165:24
**DUTIES (2)**
27:20;56:15

**DUTY (9)**
18:15;49:17;51:6;
54:16,20,21,23;56:2,
13

# E

**EARLIER (12)**
70:12;71:25;73:4;
92:13;95:5;109:10,
24;119:17;178:11;
179:6;192:19
**EARLY (1)**
161:20
**EASIER (1)**
185:25
**EASIEST (2)**
72:7;148:21
**ECONOMIC (5)**
64:2;70:4,6;105:4;
126:24
**EFFECT (10)**
17:8;29:13;67:19;
86:4;99:25;149:1;
151:9,10;183:23;
187:4
**EITHER (5)**
35:13,17;52:5;
74:25;166:12
**ELABORATE (1)**
97:15
**ELEMENT (2)**
46:23;93:9
**ELSE (2)**
84:17;115:10
**ELSEWHERE (1)**
72:20
**E-MAIL (1)**
114:17
**EMPHASISE (1)**
108:15
**EMPHASISING (1)**
42:17
**EMPIRE (1)**
43:5
**ENABLE (1)**
115:21
**END (12)**
5:12;9:9;23:15;
24:17;42:21,25;
46:13;59:5;73:25;
91:7;166:10,14
**ENFORCE (1)**
154:10
**ENFORCING (1)**
54:7
**ENGAGE (1)**
133:21
**ENGAGEMENT (1)**
192:21
**ENGLAND (1)**
147:16
**ENGLISH (1)**

74:13
**ENOUGH (4)**
26:1;91:5;134:22;
192:2
**ENSURE (4)**
80:19;133:22;
170:3,4
**ENTER (1)**
29:12
**ENTERS (1)**
29:15
**ENTERTAIN (1)**
48:8
**ENTIRE (4)**
6:15;17:1;130:10;
146:16
**ENTIRELY (1)**
23:18
**ENTITLED (13)**
14:25;22:11;32:5;
61:21;65:16;66:4;
75:13,16;80:15;
83:6;149:22,25;
150:6
**ENTITLEMENT (2)**
25:11;35:2
**ENVISAGE (2)**
38:4;49:22
**EQUAL (1)**
170:20
**EQUALLY (6)**
170:4,5,15,22;
175:18;177:18
**EQUITABLE (1)**
163:6
**ERM (1)**
100:10
**ESSENTIAL (1)**
9:17
**ESSENTIALLY (6)**
23:19;39:20;65:4;
104:13;114:22;
179:18
**ESSEX (1)**
5:11
**ESTABLISH (2)**
161:21;185:10
**ESTABLISHED (11)**
29:10;35:1;81:11,
15,21;109:10;
113:20;138:14;
145:6,12,22
**ESTABLISHING (2)**
44:12;45:4
**ESTATE (10)**
32:1;43:5,7;50:1;
95:6,8;96:1;127:7;
149:23;182:23
**EVADE (1)**
56:9
**EVEN (20)**
6:20;26:25;46:10;
50:17;54:10;57:8;

60:8;69:24;70:7,15;
79:2,25;80:7;
114:15;127:3;
132:21;157:4;
166:10;171:12;
178:15
**EVENTS (1)**
144:13
**EVERYBODY (2)**
115:9;172:3
**EVERYBODY'S (1)**
60:2
**EVERYONE (4)**
46:12;54:10;
174:15,17
**EVIDENCE (18)**
44:19;49:14;51:8;
53:2;88:20;100:13;
107:23;110:24;
153:16;176:3;
179:18;180:18;
181:11;183:16;
189:14,15;193:25;
194:12
**EXACT (2)**
25:25;195:1
**EXACTLY (4)**
45:1;103:14;
114:21,21
**EXAMPLE (10)**
18:12;21:23;23:2;
25:21;51:3;74:7;
119:1,24;174:21;
182:2
**EXAMPLES (1)**
68:20
**EXCEPT (3)**
31:6;34:14;110:19
**EXCEPTED (1)**
144:8
**EXCEPTIONS (1)**
176:8
**EXCHANGE (1)**
143:17
**EXCLUDE (1)**
183:6
**EXCLUSIVELY (3)**
123:23;124:11;
125:20
**EXERCISABLE (3)**
19:5,6;20:9
**EXERCISE (11)**
19:11;30:23;
57:22;63:10;64:16,
20,20;73:6;74:20;
165:3,7
**EXHIBIT (22)**
7:17,18;11:25;
15:17,20;16:7,19,22;
17:20,21;86:10,22,
23;90:14,16;93:20;
107:5,6,10;109:24;
144:3;168:17

**EXHIBITS (1)**
16:6
**EXIST (5)**
68:17;69:9,12,25;
71:1
**EXISTENCE (5)**
9:9;33:11;34:3;
83:11;148:8
**EXPECT (1)**
16:25
**EXPERIENCE (11)**
23:12;76:7,18;
103:13,16;137:2;
138:12,19;189:3,11;
190:14
**EXPERIENCED (1)**
126:16
**EXPERT (10)**
6:21;44:23;
152:19;153:13;
189:13,15;193:9,24;
194:7,12
**EXPERTISE (5)**
127:12;128:19;
130:25;136:2,14
**EXPERTS (2)**
112:25;195:6
**EXPIRES (1)**
167:10
**EXPLAIN (4)**
81:7;112:19;
154:1;159:3
**EXPLAINED (3)**
52:23;169:4;
192:18
**EXPLAINING (1)**
64:22
**EXPLORE (1)**
14:1
**EXPLORED (1)**
119:1
**EXPLORING (1)**
113:2
**EXPOSED (1)**
118:17
**EXPRESS (1)**
186:5
**EXPRESSLY (1)**
186:4
**EXPUNGE (2)**
42:4,13
**EXTANT (2)**
54:6;79:3
**EXTENT (4)**
137:21;141:11;
144:6;157:10
**EXTRACTING (1)**
106:18
**EXTRATERRITORIAL (1)**
17:8
**EXTREME (1)**
25:20
**EXTREMELY (1)**

8:5
**EYESIGHT (1)**
62:13

**F**

**FACE (1)**
61:14
**FACT (24)**
8:10;40:7;56:2;
65:25;79:5,10;81:7;
85:15,18;87:9,18;
89:16;103:7;105:15;
120:6;121:1;131:22;
134:15;158:11;
166:25;168:12;
175:24;182:24;
184:13
**FACTS (15)**
27:16;44:18;50:5;
88:22;103:5;137:1;
141:22;142:10;
157:12;160:11;
180:19;182:20;
183:3,21;184:5
**FACTUAL (4)**
49:18;50:11;80:4;
95:11
**FAIR (6)**
36:8;37:1;49:5;
91:5;161:13;192:2
**FALL (6)**
22:2;43:9;46:9;
118:23;141:6;158:5
**FALL-BACK (2)**
94:21;104:5
**FALLS (1)**
173:14
**FAMILIAR (9)**
5:18;88:7,22;
90:18;93:18;107:14;
108:5;128:3;183:18
**FAR (5)**
52:15;111:1;
117:15;145:12,22
**FARFETCHED (5)**
26:12;52:14;80:5;
119:23;120:10
**FAULT (1)**
120:2
**FEATURES (4)**
161:16;179:20;
180:3,6
**FEE (4)**
192:22,24;193:3,
10
**FEEL (4)**
17:4;94:9;160:7;
193:22
**FEET (1)**
162:1
**FELL (1)**
95:14

**FELT (1)**
176:21
**FEW (9)**
5:16;36:21;
107:19;141:2;
146:13;155:23;
188:11,19;189:3
**FIFTEEN (1)**
134:22
**FILE (8)**
32:2,4;33:23;35:7;
72:24;75:17;77:8,9
**FILED (3)**
35:10;75:14;76:25
**FILL (2)**
35:17;114:16
**FINAL (2)**
185:3;192:16
**FINALISED (1)**
8:8
**FINALLY (3)**
9:8;166:3,8
**FINANCIAL (2)**
56:23;105:7
**FIND (7)**
19:2;60:16;76:19;
78:25;91:23;131:5;
136:9
**FINDS (1)**
120:5
**FINE (10)**
33:3;45:16;52:20;
53:3;69:13,13,15;
73:13;143:19;195:2
**FINE-TOOTH (1)**
68:22
**FINGER (1)**
103:5
**FINISH (5)**
36:22;74:18;
152:25;164:1;
165:11
**FINISHED (1)**
195:11
**FINISHES (1)**
89:11
**FIRM (2)**
193:12;194:18
**FIRST (37)**
7:22,24;8:3,4;
9:21;13:22;16:11;
18:2,4;29:11,25;
31:13;36:7;39:18;
40:25;46:20;48:21;
72:23;84:11;86:12,
14;87:13;94:15;
96:20;101:7,10;
102:25;109:2;120:1;
122:9;148:15;161:7;
163:1;164:17;
174:16;194:7,14
**FIRSTLY (1)**
46:18

**FIT (1)**
50:13
**FIVE-MINUTE (3)**
91:22;188:15,17
**FIXED (1)**
167:9
**FLAT (1)**
192:24
**FLICK (1)**
147:20
**FLIPPED (1)**
162:19
**FLOOR (2)**
3:2,16
**FLOW (5)**
43:14;44:3;46:13,
23;93:8
**FOCUS (2)**
64:9;109:5
**FOCUSED (2)**
41:8;110:25
**FOLLOW (5)**
76:11;95:22;
116:12;126:3;148:2
**FOLLOWED (1)**
158:15
**FOLLOWING (7)**
48:7;61:22;65:18;
113:21;136:21;
137:19;188:7
**FOLLOWS (3)**
102:9,10;113:8
**FORCE (3)**
34:15,19,22
**FORCED (1)**
153:12
**FOREGOING (2)**
196:4,5
**FOREIGN (19)**
107:13,25;108:17;
109:4;112:6;122:22;
124:22;127:14,15,
22;138:10;170:1;
175:20;176:14;
177:3,9,19;180:13,
16
**FOREVER (1)**
121:19
**FORM (50)**
6:9;8:12;9:10;
13:18;15:1;21:14;
22:17;24:3,8;27:5;
33:25;37:22;38:21;
40:1,10;44:8,14,17;
50:19;51:14;55:7;
57:14;89:6,21;
104:18;105:19;
106:1;112:13;
114:22,24;120:16;
122:3;127:8;132:25;
133:24;137:6;
141:10;145:15,17,
25;146:1;147:7;

149:11;170:6;
176:11;177:19;
179:22;180:21;
181:3;193:3
**FORMAL (8)**
49:9;50:7,22,25;
87:15;91:13;111:13;
114:16
**FORMER (1)**
11:4
**FORMS (6)**
145:13,21,23;
146:21;147:21;
167:1
**FORTH (2)**
66:16;123:11
**FOUND (3)**
145:14,24;190:6
**FRAME (2)**
28:3;50:2
**FRAUD (1)**
122:20
**FREE (2)**
17:4;94:9
**FREEZE (1)**
185:7
**FREEZING (1)**
187:4
**FREQUENTLY (1)**
134:12
**FRIVOLOUS (1)**
37:13
**FRONT (1)**
192:4
**FROZEN (1)**
188:4
**FRUITFUL (2)**
152:13,16
**FRUSTRATING (2)**
152:24;153:2
**FSD (2)**
159:13,22
**FULL (29)**
19:13;23:6,23,25;
26:2;38:6;42:19;
43:25;44:5;46:12;
48:6;53:22;54:11;
55:2,15;57:10;78:4;
80:14,21;83:17,17;
100:3;103:21;
106:23;119:15;
134:16;168:13;
169:23;173:15
**FULLY (1)**
27:21
**FUNCTION (4)**
14:21;29:24;
64:14;110:23
**FUND (1)**
128:4
**FUNDAMENTAL (1)**
95:3
**FUNDAMENTALLY (1)**

104:11
**FUNDS (4)**
25:23;115:8;
175:3,7
**FUNNY (1)**
143:18
**FURTHER (4)**
102:17;112:20;
138:8;169:4
**FUTURE (1)**
20:6
**FUTURITY (1)**
93:9

**G**

**GATEWAY (3)**
144:22;145:2;
151:9
**GAVE (3)**
71:25;153:22;
194:12
**GENERAL (3)**
93:7;106:15;176:5
**GENERALISE (1)**
37:25
**GENERALLY (7)**
11:22;26:9;37:20;
148:5,12;184:14;
194:13
**GETS (10)**
13:2;79:14;95:1;
100:9;104:12,13;
124:20;144:23;
184:22;187:2
**GIST (1)**
51:9
**GIVEN (12)**
23:3;27:13;51:3;
59:1;66:2;71:10,22;
72:14;81:24;110:24;
133:12;167:17
**GIVES (1)**
169:14
**GIVING (4)**
101:8;107:22;
112:4;119:23
**GLOBAL (3)**
90:7;109:23;136:5
**GOES (12)**
57:25;63:25;
72:19;82:11;96:24;
97:19;98:14;100:8,
12;145:1;162:10;
187:1
**GOOD (5)**
5:8;7:10,11;29:8;
104:10
**GOODNESS! (1)**
152:1
**GOVERNS (3)**
62:3,8;66:24
**GRADUALLY (1)**

43:6
**GRAEME (3)**
7:25;86:15;194:22
**GRAHAM (1)**
5:11
**GRAIN (1)**
64:1
**GRAND (1)**
3:5
**GRANT (3)**
28:9,16;100:20
**GRANULARITY (2)**
152:1;153:17
**GROUND (6)**
29:9;60:21;
115:13;144:4;145:6;
171:13
**GROUNDS (2)**
5:16;123:10
**GUARANTEED (2)**
80:13,13
**GUESS (2)**
55:16;178:19
**GUIDED (2)**
137:9,13

**H**

**HALF (1)**
91:3
**HALKERSTON (2)**
7:25;86:15
**HAND (5)**
7:16;15:16;107:7;
115:6;168:15
**HANDFUL (1)**
147:5
**HANG (2)**
67:16;149:9
**HAPPEN (6)**
118:25;120:12;
122:18;169:21;
172:9,12
**HAPPENED (2)**
125:3;192:10
**HAPPENING (3)**
78:21;117:6;
118:18
**HAPPENS (1)**
172:7
**HAPPY (2)**
8:15,16
**HARBOUR (1)**
3:3
**HARD (1)**
94:21
**HARM (5)**
54:17;56:3;57:12;
80:19;81:18
**HARNEY (1)**
3:1
**HARNEYS (4)**
193:17,19,24;

194:9
**HEAD (5)**
29:2;177:9;183:5;
188:6;191:25
**HEADING (2)**
12:8;64:14
**HEALY (6)**
15:23,25;16:2,9;
57:20;191:19
**HEAR (7)**
22:15;48:7,21;
59:7;66:4;72:12;
74:25
**HEARD (28)**
48:19;51:21;
59:21;60:1,7,8,9;
61:23;62:16,18,21;
63:3,5,20,22;64:3;
65:1,19,21;66:15;
83:2;85:11;99:17;
100:16;117:6;128:5;
144:8;183:7
**HEARING (4)**
6:2,8;191:10,18
**HEARINGS (2)**
190:24;191:6
**HELP (1)**
89:11
**HELPFUL (5)**
93:14;146:9,20;
153:5,10
**HELPFULLY (1)**
192:18
**HELPING (1)**
25:22
**HENCE (1)**
51:25
**HENDERSON (2)**
192:2,4
**HERALD (7)**
93:17;103:14;
104:8,11,17;118:7,8
**HERSELF (3)**
62:23,25;80:1
**HESITATE (1)**
129:6
**HI (1)**
5:8
**HIDE (1)**
54:22
**HIDING (1)**
56:7
**HIGHER (1)**
183:25
**HIGHLY (2)**
138:11;193:8
**HIMSELF (4)**
25:22;68:2;72:16;
80:1
**HMM (9)**
27:1;52:3,9;67:9;
69:8;70:17;72:6;
99:20;102:14

**HMM-MMM (1)**
166:1
**HOLD (1)**
89:10
**HOLDER (1)**
118:3
**HOLDINGS (2)**
5:13;7:15
**HONEST (1)**
133:19
**HONESTLY (2)**
93:2;140:4
**HONG (1)**
189:21
**HOOF (1)**
26:9
**HOOPS (1)**
37:21
**HOPE (1)**
25:21
**HOPED (1)**
26:3
**HOPELESS (1)**
184:3
**HOPES (1)**
54:10
**HOPING (1)**
50:1
**HOSTILE (1)**
153:13
**HOUR (3)**
192:23;193:1,2
**HOUSE (1)**
3:17
**HUGE (2)**
43:5;167:18
**HUGH (1)**
5:8
**HY-1002 (1)**
3:6
**HYPOTHESES (3)**
101:14;141:2;
155:23
**HYPOTHESIS (5)**
73:3;80:4;95:11;
102:5;143:1
**HYPOTHETICAL (15)**
38:1;44:20;46:10;
49:20;52:15;96:7;
97:12;99:24;104:1;
106:7;117:24;
143:10,13;144:11;
188:6
**HYPOTHETICALLY (3)**
24:11;79:7;103:2

**I**

**IDEAL (1)**
93:3
**IDENTIFICATION (9)**
7:18;11:25;15:20;
17:21;86:23;90:16;

93:20;107:6;168:17
**IDENTIFIED (9)**
9:1;19;39:19;
85:22;132:14;133:5,
14;134:8;146:19
**IGNORE (2)**
27:3;68:17
**ILLIQUID (2)**
46:11;119:2
**IMAGINE (3)**
6:20;21:9;22:23
**IMMEDIATELY (1)**
100:22
**IMPLICITLY (1)**
179:18
**IMPLIES (1)**
178:5
**IMPORTANCE (1)**
180:8
**IMPORTANT (7)**
76:1;85:17;94:25;
104:12;147:9,11;
180:6
**IMPOSED (1)**
85:9
**IMPRESSION (4)**
101:10;129:1,4;
169:14
**INAPPROPRIATE (1)**
193:9
**IN-BETWEEN (1)**
183:18
**INCLUDE (2)**
137:10,11
**INCLUDING (2)**
30:19;139:8
**INCOMPLETE (1)**
97:12
**INDEED (1)**
195:10
**INDEPENDENT (1)**
193:23
**INDIVIDUAL (2)**
114:1;184:16
**INFORMAL (1)**
87:15
**INFORMATION (5)**
76:9;77:20;
103:19;120:7;
126:22
**INITIAL (4)**
25:3;51:25;119:6;
189:11
**INITIALLY (2)**
18:12;124:2
**INITIATED (7)**
10:2,5;14:4;109:7;
110:18;135:22;
159:21
**INITIATING (2)**
11:9,11
**INITIATION (2)**
159:4,5

**INITIATIVE (1)**
52:17
**INSOLVENCY (64)**
10:21;18:6;74:13;
87:6;93:7;102:11;
108:6,14;122:20;
126:17;135:15,25;
136:7;138:12,20;
139:1,4,8,11,24;
140:18;141:9;142:8,
17;143:5;144:12,15,
20,23;145:14;
147:14,17;151:17;
152:3,4,5;153:19,21,
24;154:8,18;155:15;
156:22;157:4,6,7,16,
21,23;158:15,20;
159:18;160:2,4;
161:22;163:23;
167:15;170:14;
172:1;175:18,20;
176:6;183:15;
190:22
**INSOLVENT (116)**
9:24;12:9,15;13:1,
8,13,23;14:4,8,12,16,
21;15:6;17:11,11;
18:3,6,15,22;19:16,
24;20:10,14;28:1;
30:14;31:10,23,25;
34:13,18;38:9,15,20;
39:4,22;40:9;41:2,
11,25;42:20;43:17;
44:13;45:5;46:13;
53:11;55:4,10,21;
56:5;60:24;61:24;
62:6;64:5;65:24;
66:13,17,20;68:24;
70:5;90:21;91:7;
92:16;101:24;
105:15;109:7;
112:10;113:22;
114:8;115:7,23;
117:6;118:13;120:8;
124:2,9,19;130:7;
135:21;140:1,2;
141:25;142:3;
145:10;146:7,18;
147:25;148:14,16,
19;150:15,19;151:1,
15,24;152:6;153:24;
154:5,14,16,21,23;
155:18;156:18;
158:8,11;159:11;
161:4;167:22;174:5,
9,12,19;175:5;178:8;
182:6,23
**INSTANCE (3)**
48:22;161:7;163:1
**INSTEAD (2)**
49:11;194:16
**INSTRUCT (2)**
191:6;194:6

**INSTRUCTED (1)**
111:5
**INSTRUCTING (1)**
112:1
**INSTRUCTION (1)**
111:13
**INSTRUCTIONS (6)**
137:14,17,21,23;
138:2;192:19
**INTENDING (1)**
185:8
**INTENTION (1)**
166:21
**INTEREST (47)**
22:10;23:24;24:1;
25:11;50:17;51:2,
12;53:23;54:2,12,18,
25,25;56:3,18,19,23;
57:13,23;58:4,21;
64:2;70:4,6;73:7,14;
74:21;78:5,9;80:5,
15,20;81:18;90:2;
96:4;97:9;98:14,17;
99:7,11;105:4;121:2,
8;134:17;163:12,13;
182:22
**INTERESTED (10)**
44:12;45:4,22;
86:1;109:22;140:16;
142:23;143:1;
170:12;181:21
**INTERESTING (3)**
48:10;142:18,19
**INTERESTS (5)**
21:10,18;22:25;
74:10;78:16
**INTERPRET (1)**
109:16
**INTERPRETATION (2)**
71:14;141:12
**INTERRUPTED (1)**
36:20
**INTERRUPTING (2)**
16:5;36:24
**INTERVENING (1)**
52:10
**INTERVENTION (1)**
153:11
**INTERVENTIONS (1)**
137:25
**INTO (28)**
13:2;25:13;29:15;
46:8,23;47:6,12;
62:25;71:16,18;
72:17,18;73:3;
74:10;82:11;97:9;
98:17;122:10;
136:20;144:23;
151:12;162:19;
163:15,22;164:9,11;
167:15;175:3
**INVITE (2)**
94:1;103:9

**INVITES (2)**
83:8;84:9
**INVOICE (6)**
55:18;114:19;
115:2;119:19;
134:14;162:24
**INVOICES (2)**
118:22;174:23
**INVOLVED (1)**
188:5
**ISLANDS (13)**
3:7;11:20;88:10;
127:4;139:8;159:6;
170:14;185:9;
187:15;189:4,5;
190:15;193:6
**ISLANDS' (1)**
193:20
**ISOLATION (1)**
69:21
**ISSUE (5)**
46:19;55:17;
56:14;119:18;
187:16
**ISSUED (1)**
118:19
**ISSUES (4)**
111:10,12;127:13;
138:6

**J**

**JEOPARDIZE (1)**
58:11
**JEOPARDIZED (1)**
58:8
**JOHN (1)**
5:10
**JOHNSTONE (3)**
3:9;143:16,22
**JONES (6)**
93:15;95:23;
103:14;104:7;105:2;
163:20
**JUDGE (15)**
48:3;50:11;51:17;
60:4;71:20;72:1,15,
16;73:12;79:23;
80:2;94:15;140:15;
175:16;180:20
**JUDGES (2)**
161:8;167:13
**JUDGE'S (1)**
50:9
**JUDICIAL (23)**
41:13;109:4,6,13,
20;110:1,7,17,22;
111:17;113:6,13,17;
116:5,6,8;120:14;
121:11;122:11;
129:20;135:7,11;
179:20
**JUMP (1)**

37:21
**JUNIOR (1)**
189:7
**JURISDICTION (7)**
5:20;126:19;
127:17,20,23;163:8;
172:1
**JURISDICTIONS (3)**
122:23;127:14,15
**JURIST (1)**
192:13

**K**

**KATHARINE (3)**
5:5;196:3,16
**KATIE (1)**
5:14
**KEEP (7)**
18:9;30:15;69:7;
79:3;99:22;101:2;
107:18
**KEY (1)**
161:15
**KICKS (1)**
84:8
**KIND (10)**
46:17;49:16;
54:21;56:14;71:16;
73:13;79:6;104:1;
144:21;186:8
**KING'S (1)**
195:3
**KNEW (1)**
89:1
**KNOTS (1)**
126:1
**KNOWING (1)**
112:25
**KNOWLEDGE (2)**
8:23;89:16
**KNOWS (2)**
25:23,24
**KONG (1)**
189:21

**L**

**LANE (1)**
3:19
**LANGUAGE (1)**
29:6
**LARGE (1)**
194:10
**LARGER (1)**
194:18
**LAST (3)**
108:12;114:5;
136:10
**LATER (1)**
141:22
**LATTER (1)**
11:6

**LAUGHED (1)**
143:18
**LAUGHING (1)**
143:17
**LAUGHTER (3)**
107:3;165:12;
171:19
**LAW (70)**
5:21;8:3;64:1,8;
70:2;71:7;74:12,13;
81:8;85:19;93:8;
108:8,13;112:25;
122:23;123:4;
125:11;126:17;
127:5;128:23;129:2,
3;135:14,24;136:6;
138:13,20,25;139:4,
6,10,23,25;140:2,9,
17;141:8,12;142:8,
17;143:5;144:11,15,
19;151:16;153:19,
20,23;154:7,17;
155:14;156:22;
157:3,5,7,15,21,23;
158:19;160:2,4;
169:1;170:13;
175:14,18,20,21;
176:3,6;189:15
**LAWS (2)**
76:15,15;152:3,4,5
**LAWYER (12)**
87:6;125:8;
138:12,24;140:9,10,
12,13,16;172:1;
176:25;189:14
**LAWYERS (6)**
112:1;122:22;
125:5,23;126:6;
127:17
**LAWYERS' (1)**
126:3
**LAYER (1)**
158:9
**LEAD (3)**
190:15,18;192:3
**LEADING (3)**
184:7;191:6;192:6
**LEAHY (108)**
5:10;7:4,7,8,9,19;
8:18;9:13;12:1,7;
13:21;15:4,19;
16:24;21:22;22:22;
24:5,20;27:7,15;
34:6;36:23;37:5;
38:8;39:9;40:4,14;
42:8,15;44:10,20,23;
45:12,17;50:24;
51:24;53:9;55:5,11;
80:25;89:14;90:5;
92:2,11;97:13,18;
105:22;106:3,14,18,
22;107:2,4;110:15;
112:22;115:11;

120:19;122:1,6,16;
123:13;125:6,17;
131:3,20;133:16;
134:4;135:1,5;
137:12;139:14,18;
140:6;141:16;
143:14,19;144:7;
145:20;146:11;
147:3,10;149:14;
152:15,21;153:1,4,8,
14;156:9,13;164:3,
13;165:13;168:18;
169:17;170:10;
171:20;173:3;
176:16;178:9;179:5,
25;180:24;181:6;
188:18;189:1;
191:13;195:9

**LEARNED (1)**
73:20
**LEAST (6)**
47:16;106:8;
119:13;161:21;
173:12;189:22
**LEAVE (6)**
15:9;17:14;30:6;
35:13,21;54:7
**LEAVING (2)**
68:19;128:19
**LEFT (1)**
26:1
**LEGISLATION (2)**
140:14;162:2
**LENGTH (1)**
144:17
**LESS (4)**
22:12;56:10;
174:15;191:16
**LETTER (5)**
49:11;111:13;
137:20;138:2;
183:12
**LEVEL (1)**
153:17
**LIABILITIES (1)**
20:4
**LIFE (7)**
103:3,7,12,13;
135:21;139:7;
159:18
**LIFT (4)**
35:22;37:11;
38:16;85:7
**LIFTING (1)**
84:21
**LIGHT (3)**
95:4;120:7;193:23
**LIKELIHOOD (1)**
142:24
**LIKELY (5)**
52:16;59:18;
79:23,25;183:6
**LIMBS (1)**

112:17
**LIMITED (2)**
83:9;144:18
**LINE (3)**
118:13;152:13,16
**LINKED (1)**
193:11
**LIQUIDATION (234)**
9:2,3,18,19;11:10,
12,15,17;12:10,11,
15,19,19,24;13:2,4,8,
10,16,17;14:3,7,11,
15,20;15:5,7;17:11,
18;18:3,21;20:13;
21:19;29:12,16,21;
31:5,10,25;32:8;
34:9,13;36:10,12;
38:9,15,19,20;39:2,
4;40:9;41:1,3,11,25;
42:21,22,25;49:19;
53:10;54:2;56:24,
25;57:1;58:13;60:4,
6,18,24;61:9,10;
64:3,4,5;66:16;
67:15;68:24;69:19;
70:16;75:8,13;76:6;
77:11,21,23;78:9,22;
79:13,18;80:7,11;
81:12,13,17,22;
82:12;83:1,13;
84:24;85:1,2,4,5,12;
87:15,19;88:10,23;
90:21,21;93:17;95:2,
9;97:8;98:20;99:1,3,
10;103:18,24;
104:12,15,19;105:1,
3,13,17;108:19,22;
109:7;112:10;
113:13,22;114:7,8,
13;115:3,4,7,23,25;
116:5,17,23;117:4;
121:22;122:10;
123:2,15,22;127:4;
128:6;130:10;
132:24;133:23;
134:2,8;136:20;
142:3,3,13,14;
144:16;145:21,23;
146:18,18;147:25;
148:2,6,11,14,16;
150:5,14,15,19,21;
151:1,13,15;154:5,
12,13,16,21,23;
156:1,9,10,17,18;
157:12;158:18;
159:7,10,11,21;
160:3,16;161:15,17,
20;162:19;163:2,15,
22;164:10,12;
166:19;167:15,21;
168:11;169:5;172:8,
10,13;173:12,13;
174:10,19;175:6,25;

177:6;178:8,25;
180:12,16;182:6;
186:3,4;190:25;
191:22,22
**LIQUIDATIONS (28)**
9:21,22,23,24;
10:2,4,8,13;11:22,
23;13:23;19:24;
20:11;31:23;39:18,
22;109:13;113:17;
132:19;135:20;
145:10;149:16;
150:4,9;154:15;
155:18;163:4;180:3
**LIQUIDATOR (199)**
5:13;10:23;11:1,2,
4;14:16,22;18:4,22;
19:10;20:16;21:9,
25;22:14;23:1,6,13;
24:22;25:7,22;26:5;
27:12;28:21;29:19;
30:12,18,22;31:3,17;
32:9,13;33:6,23;
34:4,8,14,19;35:8;
39:5;41:12,16;42:3,
11,18;43:6,16;44:11;
45:4,22;46:6,14,17;
47:21,23;48:3,17;
49:14,22;51:4,5,17;
52:7,16;53:12,14,18;
54:16;55:25;57:2,11,
25;58:8,14,17,21;
59:6,8,23;60:10;
61:8,16;62:22,25;
63:6,9,11,14,17,24;
64:16;65:5;67:20;
68:2,10;72:5,9,11,
21;73:10,17,19;74:4,
7;75:15,19;76:19;
77:4;78:24;79:24;
80:1,18;81:17;83:7;
84:9,11;92:14;95:10,
24;96:15;97:19;
99:10,22,24;100:4,
21;101:16;102:11,
16;103:7,16;104:14;
113:24;114:15;
115:8,21;116:13,20;
118:11;119:25;
121:9,22;124:1,15,
18;125:4,10,22;
126:3,6,11,16,18;
133:5,6,22;134:5;
141:23;142:12,22;
144:13;148:7,23;
149:18;150:4;
156:19;157:13;
158:7,25;160:21,25;
161:25;162:6,16;
166:22;170:12;
172:17,22;173:13,
21;174:5,13,20;
175:2;176:2;182:13,

16;183:9,11,22;
184:18,19;185:5,18,
24;186:17;187:1,10,
14;188:3
**LIQUIDATORS (21)**
10:7,9,12,14,16;
14:12;27:19;28:4;
48:14;52:18;64:15;
68:8;73:22;75:9;
76:8;104:18;105:5;
127:13,24;136:22;
176:14
**LIQUIDATOR'S (14)**
28:9;29:23;49:16;
50:3,10;58:3;61:3;
67:6;71:5;76:21;
77:14;82:25;133:11;
182:10
**LIST (1)**
19:10
**LITERALLY (1)**
33:2
**LITIGATED (1)**
36:9
**LITIGATION (36)**
12:14;23:20,22;
24:22;25:1,9;30:5;
35:23;38:6;58:1;
77:19;96:1,10,13,18,
22;97:3,22,25;98:4,
8,12;99:25;100:1,16,
25;101:5,20;102:10;
182:14,17;183:15,
15;184:2;189:21;
190:21
**LITTLE (8)**
12:16;20:22;
27:13;58:20;71:8;
72:2;73:13;81:25
**LONDON (3)**
3:20;8:1;194:17
**LONG (3)**
51:19;54:15;
188:12
**LONGER (4)**
53:24;102:13;
137:4;191:17
**LONGEST (1)**
191:9
**LONG-RUNNING (1)**
190:25
**LOOK (37)**
13:22;19:9;26:19;
28:11;32:15;48:14;
49:24;60:12;61:2;
62:9,14;64:13;
65:10;71:6,7;72:21;
90:6,18;93:22;99:9;
105:6;107:12;
108:12;131:10;
132:2,4;135:8,14;
136:7;160:10;
161:14;165:9;171:2;

176:15;177:1;
180:17;183:2
**LOOKED (3)**
31:16;148:6;
155:21
**LOOKING (9)**
32:21;39:11,18,
22;86:2;120:6;
129:7;170:2;176:19
**LOOKS (2)**
153:3;159:5
**LOOSE (1)**
25:10
**LOSE (3)**
25:11;26:18;98:13
**LOSES (2)**
22:9;35:1
**LOST (3)**
45:15;73:4;91:19
**LOT (16)**
22:19;23:12;
24:12;46:11,18;
48:12;101:13;103:4,
4;145:6;146:3,4,14;
163:3;191:5;194:17
**LTD (1)**
3:15
**LUCY (3)**
5:5;196:3,16

**M**

**MAIN (1)**
149:8
**MAJOR (8)**
87:2,22;88:2,12,
14,21;89:5,20
**MAJORITY (2)**
39:1;83:12
**MAKES (14)**
29:12;36:5;63:14;
116:18;124:18;
140:3;141:7,23;
142:12;156:16;
157:13;158:2,7,9
**MAKING (5)**
30:4;65:5;98:24;
106:14;121:23
**MANDATORY (1)**
29:6
**MANNER (2)**
21:10,17
**MANY (7)**
68:20;80:23;
90:12;166:7;189:14;
190:2;193:14
**MARK (3)**
24:16,21;25:4
**MARKED (10)**
7:18;11:25;15:20;
16:10;17:21;86:23;
90:16;93:20;107:6;
168:17

**MARKING (1)**
16:5
**MARTEN (1)**
3:15
**MASSIVE (3)**
134:17,17;173:20
**MATERIAL (1)**
180:19
**MATERIALLY (1)**
12:22
**MATTER (15)**
13:15;26:20;47:3,
7,11,14;65:24;81:8;
109:18,23;125:11;
169:18;187:17;
193:25;195:7
**MATTERS (3)**
126:7;137:19;
190:22
**MAY (45)**
5:18;6:9,10;9:23;
20:3;31:5;33:7;39:6;
42:6;55:15;57:6;
61:12,22;62:16;
64:19,23,25,25;65:2,
12,17;66:7,22;76:14;
78:23,25;79:4,4,5,9,
10,11,13;98:13;
100:3;110:19;
136:25;138:21;
164:15;173:13;
183:11,13;188:14;
192:8;193:12
**MAYBE (2)**
68:16;72:23
**MCDONALD (19)**
5:3,6,7,9;6:5,6;
16:7,15,18,21;42:9;
44:16;45:10;89:8,
13;110:13;152:10,
22;188:16
**MEAN (72)**
21:16;23:2;24:10;
25:3;26:8;34:18;
36:13,21,25;42:24;
44:4;48:11,24;
49:15;54:19,23;
55:13,20;56:6,17;
63:19;75:20,22;76:3,
7;82:16,22,22;83:6,
16;96:3;101:7;
102:25;104:4;
109:15,17;110:21;
123:16;125:15,24;
128:16;129:8;131:5;
137:8;139:21;
140:21;146:3;147:1;
148:18;150:10,17;
151:18,22,23;
152:11;154:19;
155:1;160:5;164:21;
167:2;170:8,16,19,
24;174:17;175:1;

176:18;177:1;
182:24;184:13;
191:11;192:22
**MEANING (7)**
62:21;66:7,19;
87:8;108:1;129:6;
140:13
**MEANS (4)**
170:20;172:3,3;
177:15
**MEANT (3)**
21:20;77:11;82:24
**MECHANISM (7)**
50:23;51:16,20;
52:6;115:19;129:12;
161:21
**MECHANISMS (5)**
50:16;51:1,12;
132:22;133:4
**MEMBER (1)**
61:9
**MEMORIZED (1)**
17:1
**MENTIONED (2)**
75:6;167:11
**MENTIONING (1)**
131:22
**MERELY (1)**
129:14
**MERITS (3)**
96:22;97:3;99:5
**MIGHT (37)**
18:12;22:25;
26:24;45:14;46:20;
48:14,16;54:13;55:2,
19;57:9,12,22;58:20;
72:2;73:1,7;74:21;
76:2,4,6,7;77:5;
82:15;83:21;93:18;
115:15;118:3,25;
119:19,24;131:10;
166:11;172:9;
178:15;181:23;
185:25
**MILES (1)**
136:25
**MINA (1)**
3:10
**MIND (4)**
18:14,19;93:23;
158:9
**MINE (3)**
32:24;60:15;62:12
**MINIMUM (1)**
177:16
**MINUTE (1)**
122:8
**MINUTES (4)**
53:4;92:2;134:22;
188:20
**MISLEAD (2)**
86:19;132:9
**MISLEADING (22)**

85:23,25;86:3,6,
12;87:1;88:6;89:4,
20;132:6,14,17;
133:15;169:19;
171:4,24;176:10;
178:1,4,21;179:14,
18
**MISS (121)**
3:10;5:5;7:4,7,8,9,
10,19;8:18;9:13;
12:1,7;13:21;15:4,
19,23,25;16:2,9,24,
25;21:22;22:22;
24:5,20;27:7,15;
34:6;36:23;37:5;
38:8;39:9;40:4,14;
42:8,15;44:10,20,23;
45:12,17;50:24;
51:24;53:9,10;55:5,
11;57:20;59:11;
80:25;89:14;90:5;
92:2,11,12;97:13,18;
105:22;106:3,14,18,
22;107:2,4;110:15;
112:22;115:11;
120:19;122:1,6,16;
123:13;125:6,17;
131:3,20;133:16;
134:4;135:1,5;
137:12;139:14,18;
140:6;141:16;
143:14,19;144:7;
145:20;146:11;
147:3,10;149:14;
152:15,21;153:1,4,8,
14;156:9,13;164:3,
13;165:13;168:18;
169:17;170:10;
171:20;173:3;
176:16;178:9;179:5,
25;180:24;181:6;
188:18;189:1,2;
191:13,19;195:9
**MISSTATES (1)**
27:9
**MIXED (1)**
140:2
**MMM (2)**
183:1,11;184:9
**MMM-HMM (25)**
22:3;39:14;59:3;
64:12;75:7;92:21;
95:18;97:21;98:7,
11;101:21;102:1,8;
129:21;135:16;
142:1;157:19;
158:17;163:17;
176:9;179:9;184:4,
21;187:13,23
**MODEL (7)**
108:8;122:23;
123:4;127:5;128:23;
129:3;138:13

**MOMENT (7)**
17:1;38:24;61:3;
64:9;69:5;86:1;
91:22
**MONEY (7)**
22:12;26:1;54:20;
89:2,3,17;98:13
**MONTH (1)**
158:9
**MONTHS (1)**
166:7
**MORE (34)**
24:12;25:20;
29:10;36:15;45:11;
46:18;48:12;52:16;
56:10;59:18;63:15;
79:23,25;85:25;
103:4,5;105:6;
106:23;119:24;
120:6,7;129:9;
132:15;145:12,22;
146:8,19;155:8,23;
160:11;164:9;167:6;
181:21;188:20
**MORNING (5)**
5:8;7:10,11;92:13;
181:18
**MORRIS (103)**
6:4;8:12;9:10;
12:5;13:18;15:1,18,
21,24;16:4,12,17,20,
23;21:14;22:17;
24:3,8;27:5,9;33:25;
36:20;37:22;38:21;
40:1,10;42:6;44:8,
14,18,22,25;45:6,16;
50:19;51:14;55:3,7;
57:14;80:22;89:6,12,
21;92:1;97:11,15;
105:19;106:1,5,16,
20,25;107:3;112:13;
114:24;120:16;
121:24;122:3,13;
123:9;124:25;
125:14;127:8;
130:21;131:14;
132:25;133:24;
134:24;137:6;
139:12,16,20;
141:10;143:25;
145:17;146:1,24;
147:7;149:11;152:7,
18,23;153:3,6,12;
156:7,10;164:1,4;
165:10;169:12;
170:6;171:18;
172:24;176:11;
178:2;179:1,22;
180:21;181:3;
188:14,19;191:11
**MOST (3)**
108:6;126:24;
190:19

**MOTION (1)**
112:16
**MOVE (5)**
74:17;135:6;
152:8;178:18;179:1
**MOVING (2)**
42:16;181:16
**MUCH (12)**
25:24;26:3;27:17;
39:6;63:15;70:19;
85:25;128:21;
181:21;183:24;
184:11;195:10
**MULTIPLE (1)**
18:19
**MUST (14)**
14:16;18:4,9,10;
28:4;29:20;32:1;
39:10;41:13;110:11;
135:21,21;161:16,19
**MYSELF (6)**
7:23;8:15;45:13;
86:16,17;125:25

**N**

**NAME (3)**
5:8;7:14;8:17
**NAMELY (1)**
104:11
**NARROWER (1)**
128:25
**NATURE (6)**
38:2;76:16;
110:25;129:11;
183:3;190:17
**NAUGHTY (1)**
25:22
**NEAR (1)**
83:14
**NECESSARILY (7)**
42:25;49:9;50:7;
165:4;166:11;167:5;
170:23
**NEED (26)**
7:1;20:17;26:19;
28:21;48:19;49:3,9,
12;50:6;59:20,21;
60:7;77:13;83:18;
91:2;92:4;98:16;
117:2,7,12,17;
126:23;128:7;131:7,
17;165:14
**NEEDED (1)**
169:11
**NEEDING (1)**
80:2
**NEEDS (7)**
23:6;96:15;97:9;
161:20;165:10;
177:2;185:9
**NEITHER (1)**
81:17

**NEUTRAL (2)**
50:4;51:6
**NEUTRALLY (1)**
78:25
**NEVERTHELESS (1)**
179:10
**NEW (9)**
72:24;85:19;
109:19;114:11;
124:23;127:5;
158:10;170:9;
180:20
**NEXT (5)**
102:5;109:1;
113:16;185:3;191:7
**NOBODY (2)**
25:23,24
**NONE (1)**
106:13
**NON-TECHNICAL (1)**
76:4
**NOR (1)**
81:17
**NORMALLY (3)**
114:20;126:15,17
**NORWICH (1)**
190:20
**NOTICE (12)**
14:17;29:20;
32:14;58:25;66:2,
14;73:22,24;74:7;
81:12;83:2;162:11
**NOTIFY (1)**
114:15
**NUMBER (17)**
16:8;9;39:17,17;
58:23;94:19,20;
99:9;108:9;159:13,
14,15,22;191:13;
192:9,10;193:17
**NUMBERS (1)**
60:14
**NUMEROUS (4)**
63:12;145:8;
190:23,24

**O**

**OATH (4)**
5:19;6:14,15;
52:24
**OBITER (2)**
163:20;167:12
**OBJECT (2)**
97:11;123:10
**OBJECTED (2)**
89:9;115:20
**OBJECTION (60)**
8:12;9:10;13:18;
15:1;21:14;22:17;
24:3,8;27:5;33:25;
37:22;38:21;40:1,
10;44:8,14,17;45:7;

50:19;51:14;55:7;
57:14;80:22;89:6,10,
21;105:19;106:1,4;
112:13;114:24;
120:16;121:24;
122:13;124:25;
125:14;127:8;
130:21;131:14;
132:25;133:24;
137:6;138:21;
139:12,17;141:10;
145:17;146:1,24;
147:7;149:11;152:7;
169:12;170:6;
172:24;176:11;
178:2;179:22;
180:21;181:3
**OBJECTIONS (4)**
6:7,8,9;139:19
**OBLIGATED (1)**
160:22
**OBLIGATION (2)**
99:21;125:11
**OBLIGATIONS (4)**
76:12,20,22;79:19
**OBLIGED (1)**
75:19
**OBTAIN (3)**
27:21;28:4;75:13
**OBVIOUS (1)**
59:22
**OBVIOUSLY (22)**
11:10;24:6;28:19;
34:18;50:8;54:1;
67:3;76:10;77:7;
86:17;96:14;97:2;
109:18;111:19;
118:2;126:5,21;
167:16;180:9;184:6;
191:5;194:10
**OCCASIONS (2)**
18:19;99:9
**OCCURRED (1)**
160:15
**OCCURRING (1)**
6:20
**OFF (11)**
29:2;92:7;95:10,
13;177:8;183:4,9;
188:6,22;191:24;
195:14
**OFFERED (1)**
125:1
**OFFICE (1)**
118:3
**OFFICER (4)**
11:5,7;51:5;56:1
**OFFICERS (8)**
10:13,14,17,19,21;
49:4;50:12;51:7
**OFFICIAL (60)**
10:25;11:3,23;
13:9,23;14:3,7,16;

18:22;20:13,15;
29:12,16,19,23;
30:12,18,22;31:3,5,
10;32:9;33:5;54:16;
61:8,16;64:14;75:15,
18;109:6,13;113:17;
121:8;122:10;
135:20;141:23;
142:2,11,13;144:24;
151:13,15;156:17;
157:13;158:7,18,25;
159:6,10,11,20;
160:3;162:16,19;
163:2,3,15;166:21;
167:15;191:22
**OFTEN (4)**
10:22;77:6;
103:17;183:14
**ON! (1)**
146:12
**ONCE (13)**
12:24;13:7,9;
27:19;29:15;40:19,
20;42:17;53:22;
73:24;99:9;137:2;
189:21
**ONE (50)**
16:11;22:4;23:2;
24:12;26:14;43:21;
45:11;58:24;68:20,
25;71:16;82:14,22;
83:8;85:23,23;90:10,
12;104:5;107:12;
108:5,20;119:16;
125:3;127:18;
128:20;131:1,13;
133:22;145:2,15,25;
146:8;155:8;158:9;
159:5;161:15;
163:19;165:10;
173:17,19;174:2;
175:21;177:6;190:5,
6,19;191:16,17,24
**ONES (3)**
26:16,17;59:19
**ONLY (47)**
6:18;20:7;24:21;
29:12;48:20;62:4,
16;67:23;72:10;
75:3;78:3;80:10;
82:10;83:6,8,21;
84:4,8;90:1,12;97:9;
98:9,16,21;105:2;
107:12;109:8;114:7;
121:1;125:8;129:1;
130:15;133:4,14,17;
144:18;145:15,24;
148:13,16;152:5;
162:14;167:11,14,
20;172:13;190:4
**ONTO (1)**
70:10
**OPEN (1)**

107:18
**OPINE (14)**
110:5;112:9;
136:14;137:3,4,17,
18;138:5,9;140:5,13;
155:4,4;160:7
**OPINED (1)**
136:5
**OPINING (1)**
179:19
**OPINION (23)**
106:6,8;109:18,
25;111:17,23;
124:21;136:3;138:4,
24;144:5,6;151:18,
22;157:9,11;180:15;
181:1;184:7;192:12;
193:9;194:7;195:7
**OPINIONS (4)**
8:22;123:11;
125:1;129:6
**OPPOSED (2)**
64:10;116:17
**OPTION (4)**
58:24,25;59:4,18
**OPTIONS (4)**
58:23;59:15;72:4;
73:16
**ORDER (85)**
10:3;11:14;14:5;
17:17,19,24;27:21;
28:5,16,18,24;29:5,
13;31:6;32:15,21,25;
33:1,4;37:12;45:18;
46:8,15;60:13,14;
61:6;65:9,11;69:15,
18,20;70:8;79:19;
83:10;95:21;110:18,
20;141:7,8,23;142:7,
16;143:4,6,23;144:3,
10;148:7,12,22;
149:2;151:10,11;
156:4,12,17,22;
157:14,15,17,21,25;
158:3,8,10,14,19,23;
159:1,5,6,14,15,22;
160:1,23;161:2;
163:8;164:25;
165:20;166:6,13;
185:10;186:3,4
**ORDERS (1)**
159:9
**ORDINARY (20)**
21:20;34:5;38:13;
39:3,5;46:15;47:16;
48:5;77:12;83:15;
87:4;106:6,9;115:5;
118:21;164:20;
169:7;171:10;
172:19;174:24
**ORIGINAL (2)**
159:14,21
**ORIGINATED (1)**

13:16
**OTHERWISE (2)**
63:2;141:12
**OUGHT (4)**
85:14;180:2,2,19
**OURSELVES (1)**
20:23
**OUT (31)**
8:3;18:23;26:18;
27:19;30:19;43:24;
50:4,10;52:19;
58:12;76:12;78:4;
81:16;82:11;83:9;
91:24;92:3;94:12;
100:23;111:10,13;
117:5;119:7;138:6;
146:14,17,22;147:2;
149:19;161:11;
174:20
**OUTLINED (1)**
59:19
**OUTSET (4)**
113:10;121:21;
166:20;174:4
**OUTSIDE (7)**
35:23;36:10;37:2;
85:1,4,11;127:20
**OVER (17)**
7:6;24:16;25:4;
33:1;54:25;61:19;
67:4;77:19;101:16;
110:18;115:12;
124:15;133:2;
147:13;181:17,17;
190:20
**OVERALL (2)**
129:1;189:17
**OWE (1)**
54:20
**OWED (2)**
89:1,17
**OWING (3)**
33:12;34:4;83:12
**OWN (10)**
8:7,17;50:12;
52:17;59:9;86:3;
120:2;129:3;178:1;
193:12
**OWNS (1)**
187:8

**P**

**PACHULSKI (1)**
138:1
**PAGE (20)**
12:3,8;15:25;19:2;
32:17,22;33:1;60:14,
14;62:11;81:2;94:2,
6;107:15;110:11,13;
129:10;136:10;
151:21;168:19
**PAID (79)**

22:10;23:6,23,25;
26:1,3;39:3,7;41:1,3;
43:25;44:5;47:15;
48:5,6,16;49:13;
53:22;54:11;55:2,15,
18,19;56:23;57:5,9;
58:5,10;77:12,15;
78:4,14,20;80:14,21;
83:15,17,24;84:2;
100:3;103:21;115:5,
9;116:13,14,15,19;
117:3;118:21,22;
119:14,20;120:20,
21,25;121:1,15,16;
133:18,22;134:14;
162:24;168:12;
169:5,6,16,23;171:9,
10,14;172:2,3;175:2,
6;178:5;192:23,23,
24;193:1

**PAINFUL (1)**
155:22
**PARAGRAPH (36)**
12:3,11;81:2;86:2,
3,24,25;93:22,23;
94:2,4,5;106:8;
110:9,12,13;111:11;
129:10;131:4,11;
136:8,10;138:6;
168:1,5,19,21,25;
169:13;171:3;
175:11;176:5;178:1;
181:1,8,8
**PARAGRAPHS (4)**
85:21,22;86:4;
132:13
**PARAPHRASING (1)**
51:8
**PARI (10)**
41:3;115:9;
149:20;169:16;
170:19,20;171:9;
172:2;176:7;177:22
**PART (34)**
8:2;19:4,6,9;
25:12;30:24;39:7;
41:4,17,21;56:14;
63:11;76:21;85:2;
102:5;108:12,15;
109:2;135:7,17,18,
22,24;139:4,5,10;
140:17,23;145:9;
167:12;172:4;178:6;
181:7;194:10
**PARTICIPATE (11)**
71:4;82:8,20;
83:18,22,25;84:3;
88:9;103:25;132:23;
181:23
**PARTICIPATING (12)**
47:19;81:8;82:17,
23,24;84:23;85:16;
87:3,10,19;90:4;

132:19
**PARTICIPATION (1)**
82:5
**PARTICULAR (8)**
32:19;85:18;
154:25;160:12;
182:17;183:3;
184:11;194:21
**PARTICULARLY (3)**
85:25;152:12;
178:22
**PARTIES (1)**
181:21
**PARTNER (1)**
193:17
**PARTS (7)**
135:13;140:21,21,
23,23;157:5,6
**PARTY (14)**
50:14;96:2;
184:19,22,25;
185:12,14,22;
186:11,19,22;
187:11;188:1,8
**PASSU (10)**
41:3;115:9;
149:20;169:16;
170:19,20;171:9;
172:3;176:8;177:22
**PATIENCE (1)**
195:11
**PAUSE (7)**
81:4;93:24;94:2,7,
9;136:24;168:3
**PAUSING (2)**
84:12;87:11
**PAY (33)**
19:13;22:1;34:5;
39:5;42:19;43:3,9;
46:8,12,15;49:24;
54:22;57:18,19;
58:9;60:2;84:20;
95:14;98:13;121:7;
124:15;134:9,13,16;
141:6;144:5;156:5;
158:4,14;164:19;
172:17,19;173:14
**PAYING (4)**
21:20;56:9;
149:19;173:22
**PAYMENT (4)**
53:19;76:2;
147:24;172:6
**PAYS (1)**
121:8
**PEARSON (9)**
5:5;7:10;16:25;
53:10;59:11;92:12;
189:2;196:3,16
**PEARSON'S (1)**
5:15
**PENCE (2)**
170:24;171:15

**PENDENCY (1)**
15:6
**PENG (1)**
112:5
**PENG'S (1)**
193:19
**PEOPLE (6)**
30:4;64:2;83:21,
24;84:1;108:6
**PERHAPS (3)**
25:6;55:15;119:24
**PERIOD (5)**
118:16,19;119:12;
128:22;167:9
**PERMISSIBLE (2)**
193:5,8
**PERMIT (1)**
60:5
**PERMITTED (1)**
37:2
**PERSON (6)**
11:5;65:22;66:3;
121:5;184:18;
185:11
**PERSONAL (1)**
131:1
**PERSONS (5)**
14:24;19:20;
61:23;65:18,21
**PERSPECTIVE (1)**
112:23
**PERSUADE (2)**
36:6;59:11
**PERSUADED (1)**
59:13
**PETITION (22)**
106:11;136:21;
141:4,19;142:21;
143:4;144:25;158:3,
13;162:23;163:3,5,9;
164:10,12,17,23,23;
165:22;166:6,7,11
**PETITIONED (1)**
166:12
**PETITIONER'S (1)**
106:10
**PETITIONS (1)**
190:23
**PHARMACAL (1)**
190:20
**PHRASE (3)**
109:2,3;135:14
**PICKED (1)**
146:14
**PILLSBURY (1)**
5:9
**PINTARELLI (1)**
5:10
**PITTMAN (1)**
5:10
**PLACE (5)**
3:3;40:25;50:16;
51:1,12

**PLAINLY (1)**
43:18
**PLAY (1)**
144:18
**PLEASE (11)**
5:4;6:10;12:2;
17:4;36:22;53:1;
135:9;152:19;153:6;
164:2;168:2
**PLEASED (1)**
195:11
**PM (9)**
92:7,8,8,10;135:2,
2;188:23,23;195:15
**POINT (34)**
6:11;7:1,3;13:6;
17:3;24:18;41:6;
42:16,20,23;49:2;
57:10;63:15;64:8,8,
10,11;71:21;75:1;
79:14;85:10;91:16;
94:19,19;98:19;
100:3;103:20;
107:24;122:11;
130:6,11;148:21;
153:17;177:15
**POINTED (2)**
81:16;82:11
**POINTING (1)**
144:1
**POINTLESS (1)**
33:21
**POINTS (2)**
64:7;94:13
**POLITE (1)**
153:9
**POSIT (1)**
99:12
**POSITED (2)**
72:1;74:1
**POSITION (10)**
50:11;71:9;72:17;
77:22;94:21;100:21;
104:6;140:18;
151:12;154:10
**POSSIBILITY (1)**
183:14
**POSSIBLE (3)**
17:12;30:4;134:18
**POSSIBLY (7)**
25:11;59:18;
71:11,16,17;77:10;
155:1
**POT (3)**
186:16;187:5,8
**POTENTIALLY (6)**
22:7;48:6;127:6;
171:24;172:14;
186:22
**POUND (4)**
98:6;121:2;
170:25;171:15
**POUNDS (1)**

98:10
**POWER (17)**
19:13,19;20:3,8,9;
30:20;31:17;51:6;
57:22;61:15;65:11,
25;67:11;72:8;73:6;
74:20;186:5
**POWERS (13)**
18:23,23;19:4,4,5,
6,10;30:19,24;63:10;
64:14,16,21
**PRACTICE (5)**
11:20;46:18;
49:21;101:10;
122:20
**PRACTISING (1)**
108:6
**PRACTITIONER (1)**
189:8
**PRACTITIONERS (1)**
10:21
**PRECEDENCE (1)**
67:4
**PRECISE (2)**
111:4,12
**PRECISELY (2)**
25:24;181:16
**PREFER (2)**
59:5;171:14
**PREJUDICED (1)**
26:17
**PRELIMINARY (1)**
152:8
**PREPARATION (1)**
8:10
**PREPARE (2)**
194:7,13
**PREPARED (3)**
48:21;86:13,15
**PRESCRIBED (1)**
28:3
**PRESCRIBES (2)**
162:2,5
**PRESENT (2)**
20:5;68:15
**PRESENTED (2)**
164:22,23
**PRESENTS (2)**
141:4;162:23
**PRESERVE (1)**
139:17
**PRESERVED (1)**
6:8
**PRESERVING (1)**
154:9
**PRESIDED (1)**
110:18
**PRESUMPTION (1)**
163:23
**PRETTY (2)**
27:17;113:9
**PREVIOUS (1)**
158:21

**PREVIOUSLY (2)**
127:21;185:13
**PRIMARY (2)**
14:21;29:23
**PRINCIPALLY (2)**
45:25;46:1
**PRINCIPLE (12)**
18:18;26:20;47:8,
11,14;67:24;79:8,9,
10;103:5;106:19;
176:5
**PRINTOUT (1)**
107:16
**PRIOR (1)**
193:16
**PRIORITIES (1)**
54:24
**PRIVILEGE (1)**
6:21
**PRIVILEGED (1)**
137:24
**PROBABLY (11)**
23:15;93:4;99:1;
122:4;134:21;142:6;
151:18,24,25;
174:22;191:15
**PROBLEM (1)**
6:4
**PROCEDURE (21)**
11:9,11;13:11;
34:10,12;38:7,12;
40:7,12,18;41:9;
83:14;84:5,8;114:2,
6;146:22;147:6;
148:5;150:20;154:4
**PROCEDURES (2)**
11:15;13:12
**PROCEED (2)**
8:20;10:3
**PROCEEDING (78)**
5:18;9:14;15:8,8;
29:16;87:3,10;
107:14,25,25;
108:16,20;109:4,6,
21;110:2,6,7,16,17,
22,25;111:1,17,18;
112:6,6;113:6,6,14;
116:6,7,9;120:14;
121:12;122:11;
123:15,18,19,23;
124:6,7,23;125:8,9,
13;129:11,20,23;
135:12;136:6;
138:10,25,25;
144:14,16,19,23;
145:3,16,25;147:22;
157:22,22;159:2,4,
15,20;160:3,4;
167:14;169:15;
177:3,10,19;179:21;
180:13,17
**PROCEEDINGS (29)**
7:14,17;9:7;17:13;

38:13;54:3;108:11;
109:14;110:1;113:1,
18;122:19;135:7;
138:17;163:14;
168:2;181:15;
183:10;185:6,8,19;
187:15,16;188:3;
189:16,22;190:5,25;
193:6
**PROCESS (39)**
23:15,18;35:21,
23;36:11;37:3;
38:18;39:8,12;
40:21;41:4;82:9;
88:8;112:20;115:3,
4;116:17,18;118:24;
121:16,16,18;
130:11;133:8;134:8;
138:7,9;162:22;
166:21;169:8,10;
170:2;172:5,15;
177:6;178:6,11,14;
183:18
**PROCESSES (3)**
9:15;114:23;167:1
**PRODUCED (1)**
5:17
**PROGRESS (1)**
79:12
**PROOF (49)**
32:2,4,10,13;33:8,
19,24;34:9,11,15,21,
22;35:8,11,17,20,23;
36:2,11;37:2,16,20;
38:7,11;39:21,24;
41:12,13;42:4,13;
83:5,7,14;84:5,8,9,
13;87:14;114:16;
115:6;133:6,8;148:4,
8;149:17,21;150:19;
172:14;174:14
**PROOFING (2)**
114:2,6
**PROOFS (2)**
149:19;174:20
**PROPER (1)**
101:8
**PROPERLY (1)**
127:16
**PROPERTIES (1)**
101:6
**PROPERTY (4)**
22:5;95:11,13,17
**PROPOSED (1)**
64:20
**PROPOSING (1)**
95:25
**PROPOSITIONS (2)**
106:15;113:9
**PROSPECT (1)**
37:14
**PROSPECTS (2)**
96:21;98:2

**PROTECT (3)**
50:16;51:1,12
**PROTECTED (1)**
99:17
**PROTECTION (8)**
76:15;99:20;
116:25;117:2,8,13,
18,19
**PROVE (3)**
76:3;128:10;
185:10
**PROVIDE (3)**
186:4;193:24;
195:6
**PROVIDED (2)**
58:9;189:15
**PROVIDES (2)**
19:12;129:12
**PROVING (1)**
154:5
**PROVISION (4)**
32:20;62:2;
155:12;185:15
**PROVISIONS (11)**
60:13;115:20;
145:8,13,14,22,24;
146:4,5,19;147:21
**PURPOSE (4)**
9:7;43:22;108:18;
177:11
**PURPOSES (3)**
68:15;95:21;
108:22
**PURSUANT (3)**
15:12;169:7,9
**PURSUE (3)**
22:14;23:20,21,21,
22,24;25:1
**PURSUES (2)**
24:22;25:8
**PUSHING (2)**
155:4;160:8
**PUT (21)**
20:23;32:13;36:1,
10;39:10,20,24;
49:23;57:22;58:20;
71:15;73:7;74:21;
86:9;100:11;123:21;
136:20;161:24;
165:11;168:9;196:8
**PUTS (1)**
101:20
**PUTTING (2)**
21:10,17

**Q**

**QUALIFICATIONS (1)**
138:18
**QUALIFIED (9)**
10:25;11:3,5,6;
127:16;129:1;
138:11;140:5;160:7

**QUALIFIES (1)**
177:11
**QUALITY (2)**
3:17,18
**QUASI (1)**
41:12
**QUERY (3)**
23:3;47:22;144:12
**QUICKEST (1)**
93:21
**QUICKLY (1)**
94:8
**QUINN (1)**
163:20
**QUITE (12)**
22:19;23:12;
26:12;36:13;52:14;
76:8;82:9;94:25;
109:22;142:20;
143:20;188:5

**R**

**RAISED (2)**
70:12,12
**RANGE (1)**
190:21
**RARE (1)**
184:10
**RATABLY (5)**
39:7;169:6;
170:22,23,24
**RATEABLE (1)**
169:24
**RATHER (12)**
25:6,13;30:10;
36:10;37:20;38:7;
72:15;91:23;129:14;
142:10;169:7,23
**REACH (1)**
115:16
**READ (27)**
5:25;20:8;42:7;
45:1,8,10;62:20,24;
66:6,10,19;70:1,8;
87:7;89:9;91:2,4;
94:2,5,8;97:13;
104:4;106:22;131:9;
139:21;183:16;
196:4
**READING (15)**
29:1,2;63:2;69:17,
20,24;87:4;93:23,24;
94:3,7,10;106:5,8;
168:3
**REAL (13)**
37:19;38:17;43:5,
7;49:25;55:20;95:6,
8,25;103:3,7,12,13
**REALISATIONS (1)**
172:18
**REALISE (5)**
14:23;36:24;

116:21;126:9;
173:22
**REALISED (7)**
21:25;22:5,7;43:8;
95:17;96:1;119:3
**REALISES (2)**
121:6;174:5
**REALISING (1)**
25:23;57:3
**REALISTIC (1)**
119:24
**REALLY (21)**
50:10;69:4;72:10;
80:6;82:22;109:16;
110:23;113:8;
120:13;123:5;
130:25;133:18;
147:15;153:16;
155:1;160:5,6;
163:18;170:8;
177:14,24
**REALM (1)**
25:13
**REASON (10)**
23:13;32:24;77:3;
104:10;110:4;
160:25;161:8;
163:21;167:14,20
**REASONING (1)**
167:12
**REASONS (2)**
119:1;164:14
**REBUTTABLE (1)**
163:22
**RECALL (7)**
90:9;91:6;92:12,
20,25;95:8;190:2
**RECAP (1)**
29:8
**RECEIVE (2)**
96:3;169:23
**RECEIVED (5)**
97:4;99:4;125:7,
22;174:23
**RECEIVING (1)**
82:25
**RECENT (2)**
190:19;193:23
**RECERTIFY (1)**
48:17
**RECOGNISE (2)**
170:2;177:18
**RECOGNISING (1)**
176:14
**RECOGNITION (17)**
122:19,23;123:3;
124:20;126:20;
127:14,22;128:13,
23;130:16,19;
170:13;175:14;
176:3;185:6;190:3,5
**RECOMMEND (2)**
126:15,17

**RECORD (10)**
5:2;53:8;92:7,10;
97:17;135:4;188:22,
25;195:14;196:7

**REDETERMINATION (2)**
102:12,17

**REDETERMINING (1)**
103:9

**REFER (1)**
107:19

**REFERENCE (9)**
8:9;61:18,20;91:6,
19,23;110:11;131:5,
5

**REFERENCED (1)**
64:24

**REFERENCING (1)**
64:22

**REFERRED (2)**
8:6;177:4

**REFERRING (2)**
67:6;86:25

**REFERS (2)**
89:5,20

**REFLECT (1)**
105:3

**REFUSE (3)**
58:24;73:17;74:25

**REFUSED (1)**
101:4

**REFUSES (1)**
35:7

**REGARD (2)**
58:3;69:21

**REGARDING (1)**
127:14

**REGARDLESS (1)**
27:16

**REGIME (2)**
47:9;176:7

**REGULAR (2)**
6:25;153:11

**REGULARLY (1)**
190:14

**REJECT (3)**
35:9;41:17,17

**REJECTING (1)**
32:14

**REJECTION (1)**
83:5

**REJECTS (1)**
41:20

**RELATE (1)**
138:7

**RELATED (1)**
190:3

**RELATES (2)**
109:2;154:4

**RELATING (38)**
108:13;135:14,25;
136:6;138:20,25;
139:4,11,23;140:17;
141:8;142:8,17;

143:5;144:11,15,20;
151:16;152:3,4,5;
153:19,21,23;154:7,
18;155:14;156:22;
157:4,6,7,16,21,23;
158:19;160:2,4;
190:4

**RELATION (10)**
7:15;39:1;63:23;
66:8;79:12,15;
154:2;155:19,20;
175:11

**RELATIONSHIP (1)**
165:25

**RELATIVELY (1)**
189:7

**RELEVANCE (1)**
180:8

**RELEVANT (11)**
60:12;110:9;
112:11,11,16;
127:17;144:6;
160:11;167:4;168:8;
180:6

**RELIEF (1)**
187:2

**RELY (1)**
174:22

**RELYING (1)**
194:17

**REMAIN (3)**
6:14;52:23;130:9

**REMAINDER (1)**
70:1

**REMAINS (2)**
51:19;55:1

**REMEDIES (1)**
166:17

**REMEDY (5)**
77:24;78:1,7;
113:22;116:1

**REMEMBER (1)**
192:10

**REMIND (3)**
17:23;81:3;168:2

**REMOVAL (13)**
20:15;21:6;27:8,
11;70:13;71:18;
81:23;82:2,13,18;
84:4,7;133:11

**REMOVE (3)**
23:17;26:5;31:3

**REORGANIZATION (1)**
108:18

**REPEALED (1)**
68:18

**REPEAT (3)**
28:14;45:14;
185:25

**REPORT (14)**
49:23;51:4;52:6;
58:4;75:9,19;76:5,
22,25;79:1,2,20,21;

86:11

**REPORTER (12)**
3:12;5:1,3,12,10;
45:3;53:7;92:6,9;
135:3;188:21,24;
195:13

**REPORTING (4)**
75:6;76:12,20,22

**REPORTS (5)**
75:14;77:6,14;
82:25;103:25

**REPRESENT (1)**
5:11

**REPRESENTATIONS (1)**
59:2;103:11;
162:15;182:10

**REPRESENTATIVE (1)**
59:10

**REPRESENTED (1)**
103:23

**RE-PUT (1)**
115:15

**REQUEST (3)**
28:10;32:9;148:8

**REQUIRE (4)**
33:7,17,23;84:12

**REQUIRED (8)**
30:22;75:9,19;
124:15,21;148:23;
161:1;167:22

**REQUIRES (1)**
84:10

**RESEARCH (3)**
8:2,7;26:11

**RESOLUTION (3)**
114:3;129:12,15

**RESOLVE (1)**
115:22

**RESOLVED (4)**
40:20,21,21;133:8

**RESOLVING (2)**
40:13,19

**RESPECT (1)**
64:20

**RESPECTED (1)**
192:13

**RESPECTFUL (1)**
153:9

**RESPONSE (1)**
25:3

**RESPONSES (1)**
196:8

**REST (2)**
69:21;94:8

**RESTRUCTURING (3)**
108:7;122:20;
138:13

**RESULT (1)**
85:9

**RESULTING (1)**
20:5

**RETAIN (1)**
28:15

**RETAINS (1)**
28:8

**RETIRED (1)**
192:9

**RETURN (1)**
121:17

**RETURNED (1)**
6:1

**REVERSE (1)**
186:8

**REVIEW (3)**
18:10;30:16;99:23

**REVISED (1)**
18:16

**REVISIT (3)**
95:5;105:8;174:13

**REVISITED (1)**
119:8

**RIEGELS (1)**
3:1

**RIGHT (109)**
9:4;10:5,10,15;
11:23;15:10;17:7,
16;18:7,24;19:12,23;
27:19;30:25;32:2;
34:10;35:4;36:12,
18;37:17;38:14;
40:5;41:10,21;42:2,
4,11,12;44:1,6,25;
46:19;48:22;52:8;
54:8;62:17,20;63:3,
5,22;64:3,24;65:3,
19;66:15;67:7,10;
70:19;73:1,15;74:15,
17;75:12;81:13,19;
82:9,17,19;83:23,25;
87:22;88:24;93:4,
10;99:16;100:15;
103:25;104:6;
105:10;109:9;112:3;
114:4,5,12;116:2;
117:9;118:9,13;
120:13;121:9,23;
122:19,24;124:1,3,
16;125:25;126:1;
130:7;134:10;
137:16;141:1;
142:10,12;149:4;
153:2,25;156:21;
159:7,15;161:5,10;
163:2;166:13;170:4;
174:25;179:12;
182:14;183:20

**RIGHTLY (1)**
39:19

**RISK (39)**
21:11,18;22:9,25;
23:24;25:9;48:6;
52:5;54:13,15;55:1,
14,17,19,20,21,22;
57:8,9,10,23;58:21;
72:3;73:8;74:21;
80:6,17;100:2;

101:20;102:11;
118:2;119:6,14,18,
19;120:11;161:22

**RISKS (1)**
119:22

**ROBINSON (7)**
5:11;81:6;85:14;
86:19;131:21;
179:11;181:2

**ROBINSON'S (9)**
86:5,8,11,25;88:6;
89:4,19;180:18;
181:11

**ROGUE (1)**
110:11

**ROLE (6)**
50:3,10;112:19;
138:5,8;144:18

**ROOM (1)**
92:3

**ROUTE (2)**
167:7,7

**ROUTES (2)**
13:1;167:8

**RUBBER-STAMPING (2)**
165:2,6

**RULE (26)**
17:24;19:12,18;
20:2;32:16;33:4;
46:8,15;61:6,14,19,
22;62:3,3,25;65:10,
15,17;66:6,23,24;
67:2;69:20;70:8;
83:10;148:7

**RULED (1)**
102:6

**RULES (18)**
5:16;11:14;17:2,
17;32:22;47:19;
66:11;67:3,4;68:21;
69:2,22;70:2;76:11;
100:19;104:20;
115:21;185:16

**RULING (1)**
100:23

**RUNNING (1)**
189:18

## S

**SAFER (1)**
23:16

**SALES (1)**
43:6

**SAME (42)**
11:14;12:22;
14:22;18:23;27:25;
31:22;33:1;34:12;
40:9,19;41:24;43:3;
54:19;60:14;77:22;
79:2;87:6;125:14;
134:1;140:2,3;
141:22;142:5,6,10,

150:9,16;151:10,12;
155:19;157:12;
162:21;167:3;
170:22;172:4,4;
174:18;175:2,7,21;
176:4;181:17

**SANCTION (63)**
19:5,7,11,25;20:9;
30:23;31:19,20;
57:22;58:1,7,11,17,
24;59:12,21;60:1,10,
19;61:4,7;62:16,21;
63:3,6,13,16,23;
64:23;66:7;68:9;
69:5,11;71:5;73:6,
17;74:20,25;79:16;
83:2;96:24,24;97:1,
2,20;98:24;99:2,15;
100:9,9,20;101:3,4;
102:3,7;182:10,14;
183:7;184:20;
185:10;186:5;
187:19,22

**SATISFIED (5)**
8:15;28:23;29:3;
86:16;177:17

**SATISFY (1)**
28:22

**SAW (2)**
67:5;118:6

**SAYING (49)**
21:11;49:3;50:15,
22;52:1;62:2,7,8;
63:5,22;66:23;67:1,
2;71:3,6;78:11;80:3,
8,12;86:11;96:8;
100:7;104:16;118:1,
16;122:18;123:1;
125:19;127:2,7,10;
130:14;133:13;
140:24;149:22,24,
24,25;150:11;151:9;
152:6;167:3;171:25;
175:5;179:6,17;
180:1,5;184:1

**SCENARIO (5)**
26:12;142:13;
185:3;186:9;188:6

**SCENARIOS (3)**
49:20;173:8,12

**SCHEDULE (6)**
18:24,25;30:19,
24;31:17;63:11

**SCHEME (3)**
67:3;72:19;74:12

**SCOPE (19)**
123:11;125:1;
127:11,12;128:17,
18,19;130:22,23,24;
136:2,2;137:23;
138:3;155:2;192:19

**SCRUTINIZING (1)**
128:22

**SCUTTLE (1)**
97:16

**SEALED (2)**
77:6,8

**SEAT (5)**
48:1,18;105:12,17,
25

**SECOND (3)**
36:8;64:8;174:11

**SECTION (83)**
15:12,21,23;16:2;
17:4,7,10;20:17,18;
21:3,4;28:11;29:3;
30:3;35:13,21;36:5,
6,17;37:16,21;38:10,
16;39:21,25;62:9,14;
64:13,17,21;67:18,
19;69:9,10,12,24,25;
70:7,13,25;71:11;
82:12;84:6;85:3,6;
86:10;107:7;108:1;
112:17,21;136:4;
140:3;144:4;146:10,
10;148:20;149:19;
151:16,20;153:20,
22,23;154:6,9,20,25;
155:10,17,19;
156:14,24;157:1,7,
18;160:22;161:9;
164:25;176:15;
177:2,4,11,15;179:8

**SECTIONS (9)**
17:2;129:8;
140:13;147:20;
152:2,3;155:20;
157:5,5

**SECURED (1)**
154:10

**SECURITY (1)**
154:11

**SEEK (4)**
20:15;21:6;
126:14;127:16

**SEEKING (5)**
13:6;22:14;58:11;
138:9;170:13

**SEEM (4)**
51:2;131:7;
167:13;173:5

**SEEMED (1)**
111:22

**SEEMS (4)**
26:11;149:7;
167:10;174:3

**SEES (1)**
104:5

**SELL (5)**
22:6;50:1;95:10,
13;101:7

**SEND (4)**
77:4;79:1;114:19;
133:5

**SENDING (5)**

77:7,20;79:21;
115:2;174:20

**SENIOR (1)**
194:24

**SENSE (5)**
63:1;76:4;102:19;
110:17;172:4

**SENSIBLE (1)**
101:23

**SENT (2)**
105:5;183:12

**SENTENCE (1)**
136:11

**SEPARATE (3)**
85:1,3,11

**SERVE (2)**
72:9,11

**SERVED (11)**
61:8,17,21;62:5;
65:13,17,22;66:9;
71:21;75:2;103:10

**SERVICE (2)**
67:14;69:19

**SERVING (1)**
71:22

**SET (14)**
8:3;18:23;30:19;
50:4,10;76:12;83:9;
111:10,13;123:11;
138:6;146:17,22;
147:1

**SETTLE (1)**
31:18

**SHADOW (1)**
46:1

**SHALL (7)**
28:18;29:5;60:12;
61:8;62:17;63:3;
85:23

**SHANG (2)**
112:5;193:19

**SHARE (3)**
57:4;76:9;183:17

**SHAREHOLDER (3)**
26:16;78:16;163:9

**SHAREHOLDERS (47)**
22:13;26:2;30:1;
54:25;56:16,19;
59:9;73:20;78:2,8,
10;79:20;87:9;
88:16;89:25;90:2,3;
97:10;98:5,9,18,21;
99:11;103:23;105:2;
116:10;120:15,20,
25;121:13,18;
122:12;123:20,24;
124:8;125:10,15,19;
126:10;129:13,24;
130:1,17,20;134:18;
178:13,16

**SHAREHOLDERS' (2)**
58:14;167:7

**SHAREHOLDER'S (2)**

163:5;164:12

**SHAW (1)**
5:9

**SHEET (14)**
43:14,19;44:13;
45:5,24;73:11;
74:19;92:19;93:5,11,
12;94:17;134:15;
173:21

**SHORT (6)**
52:21;53:6;92:8;
134:21;135:2;
188:23

**SHORTAGE (1)**
44:6

**SHOW (9)**
37:1,6;90:11;
93:13,15;129:8;
147:4;163:10,11

**SHOWN (1)**
103:15

**SHUT (1)**
52:18

**SIDE (3)**
53:2;71:16;128:20

**SIDES (1)**
34:16

**SIGN (1)**
160:18

**SIGNED (6)**
6:1;91:3;161:3;
162:6;164:7;196:15

**SIGNIFICANT (6)**
12:12;31:9;63:12;
104:14;146:21;
166:25

**SIGNIFIES (1)**
110:19

**SIGNING (1)**
86:17

**SIMILAR (1)**
174:8

**SIMPLER (2)**
74:6,9

**SIMPLEST (1)**
74:3

**SIMPLY (9)**
13:7;17:12;35:14;
66:1;74:6;80:6;82:7;
112:19;119:25

**SINGLE (3)**
123:14;134:14;
191:18

**SIT (4)**
66:16;95:1;
104:12;191:7

**SITTING (1)**
83:1

**SITUATION (68)**
20:24;21:12;
22:13,24;24:1;
25:15;26:4,13;
33:14;34:19;35:7,

12;37:3;38:1;39:11;
40:23;43:7,15;46:11,
17,21;47:1,4,12,23;
48:25;49:18,25;
50:5;52:5,13,15;
55:4,6;58:22;71:18;
72:1,22;73:15;
74:24;75:4;79:17;
96:4;99:8,13,18,23;
101:8,22;102:16;
103:2;105:7;117:7;
119:6;126:4,11;
142:2;161:4;164:5;
172:23;174:2,3,11,
16,20;182:1,5;
184:16

**SITUATIONS (7)**
26:9;49:16;74:2;
104:2;117:24;
173:17;174:7

**SIX (1)**
189:20

**SIZE (2)**
38:3;87:23

**SLIGHT (1)**
186:8

**SLIGHTLY (6)**
29:10;51:7;99:12;
119:24;181:16,20

**SLIP (1)**
147:15

**SMALL (2)**
55:22;80:18

**SNACKS (1)**
134:22

**SOLE (3)**
190:15,18;192:3

**SOLELY (7)**
39:16;65:6;
122:11;124:11;
130:19;138:5;
163:25

**SOLVENCY (65)**
23:7,8,9,16;24:2,
15,25;25:6,13,14,18;
30:15;43:13,18;
46:23,25;47:4,24;
48:18;51:18,22;
59:23,24;62:1;
66:18;72:22,24;74:5,
14;79:24;90:22,23;
91:1;92:16;94:20;
99:22;100:6;101:20,
25;103:17,22;
104:23;105:8;117:9,
14,21,24;118:20;
130:4,5,10;131:6,9,
13,18;136:23;
142:11,12;145:4;
158:16;160:19;
161:2;162:3;164:8;
174:14

**SOLVENT (200)**

9:22,23;12:10,14,
19,20,25;13:12,23;
14:3,8,12,16,21;
15:6;18:3,5,13,22;
19:16,24;20:10,14,
20,24;21:19,24;
22:24;23:4,11,17;
24:2,7;25:5,7;26:25;
27:12;28:1;30:14;
31:10,23;32:8;33:6;
34:8;35:6;38:19;
39:2,18;40:8,25;
41:11,25;42:19;43:5,
11,17;45:24;46:7,22;
47:22;48:4,15;
51:20;53:11;55:4,5,
9,12;56:4;58:22;
60:4,5,11,17;62:1,
15;63:23;64:4;66:1,
8,12,13,21;67:14;
68:25;69:19;70:6,
15;72:13,18;73:11;
74:11,19;75:8,12;
77:11,21,23;78:9;
79:13,18;80:7,11;
81:12,16,22;83:13;
88:9;90:21;91:7;
92:16;95:9,21;96:5;
97:8;98:16,22;
99:10;100:5,24;
101:17;105:11,23;
109:7;112:9;113:21;
114:6,13;115:4,22,
25;116:16;117:1;
118:12;123:2,14,22,
25;124:24;127:4,23,
24;128:6;130:6;
131:23;132:7,19,24;
133:23;134:15;
135:21;140:2;
142:14,22;144:14,
16;145:10;146:6,17;
148:2,6,11;149:16;
150:3,5,8,14,18,20;
151:1,14,25;153:25;
154:14,16,21,23;
155:17;156:17;
157:14;159:10;
161:17,19;163:16;
165:3;168:11;169:5;
172:7,10,12;173:11,
13;174:4;175:25;
177:6;179:19;180:3,
16;191:21,22

**SOMEBODY (3)**
10:25;11:2;165:23

**SOMEHOW (3)**
50:8;62:3;78:8

**SOMEONE (4)**
37:12;48:25;50:8;
54:20

**SOMETIMES (5)**
143:20;162:10;

166:7;186:2,3

**SOON (2)**
11:13;51:21

**SORRY (26)**
13:9;16:9,15;
36:23;39:10;42:6;
55:3,9,24;76:17;
89:8;97:5;101:1;
117:11;125:24;
128:1;142:5;143:11,
22,25;144:2;147:14;
148:2;150:12;168:9;
186:1

**SORT (9)**
59:12,15;70:12;
80:4;119:5;153:10;
162:21;177:25;
183:18

**SOUGHT (4)**
86:19;110:5;
127:22;132:9

**SOUNDS (2)**
36:16;73:13

**SOUTH (1)**
3:4

**SPEAK (1)**
183:17

**SPEAKER (2)**
16:10,14

**SPEAKING (1)**
89:10

**SPECIFIC (4)**
79:5;139:25;
182:25;184:13

**SPECIFICALLY (5)**
60:8;106:9;146:6;
148:19;192:21

**SPEND (1)**
22:20

**SPGK'S (1)**
112:16

**STAGE (4)**
51:25;79:22;
125:18;189:8

**STAGES (1)**
108:8

**STAKEHOLDER (2)**
56:24;88:21

**STAKEHOLDERS (16)**
56:15;58:13;87:2,
5,8,23;88:2,13,15,
15;89:5,20,24;
124:16;191:1,21

**STAND (2)**
23:21;161:14

**STANDING (3)**
5:12;20:7;21:2;
31:2;60:9,18,25;
63:20;64:10;70:11,
16,21;71:4,11,17,19;
81:22;82:1;181:15,
22;182:9;184:25;
188:9

**STANDS (1)**
43:21

**START (13)**
31:8;56:7,8;79:20;
96:16;103:18;
135:21;139:3;
144:22;145:5;
152:21;173:22;
182:2

**STARTED (3)**
66:24;96:10;163:4

**STARTING (1)**
96:12

**STARTS (1)**
185:5

**STATE (2)**
91:1;146:6

**STATED (4)**
8:22;131:16,17;
168:24

**STATEMENT (9)**
87:2;88:6;89:4,19;
168:25;176:4;
178:21;179:2;181:7

**STATES (2)**
124:20;126:9

**STATUS (4)**
113:1;158:23;
159:1,2

**STATUTE (2)**
10:18;149:8

**STATUTORY (13)**
22:10;23:23,25;
47:9;53:23;76:20,
21;80:15;96:4;
121:2,7;134:16;
154:15

**STAY (8)**
30:3;35:22;37:12;
38:16;41:8;84:21;
85:7;154:15

**STAYED (1)**
114:1

**STAYING (1)**
155:12

**STEP (7)**
58:8,10;59:22;
84:10;112:20;138:8;
170:20

**STEPS (5)**
54:17;56:3;57:2,
17;127:18

**STICK (1)**
69:4

**STILL (20)**
24:7;43:11;60:6;
74:11;77:24;78:15;
89:23;91:9,10;96:5;
101:6;126:8;151:14;
157:17;164:24;
171:4;175:10;
178:14;187:7,19

**STIPULATE (1)**

171:18

**STOP (2)**
152:19;162:18

**STOPPED (1)**
180:25

**STRAIGHT (1)**
41:2

**STREET (1)**
3:4

**STRIKE (2)**
152:8;179:1

**STRUCTURE (1)**
192:22

**STRUGGLING (1)**
159:24

**STUCK (1)**
121:19

**SUBJECT (7)**
64:17,18;108:17,
21;131:11;172:14;
176:8

**SUBMISSIONS (1)**
66:4

**SUBMIT (15)**
8:16;32:10,12;
33:8,19;34:9,15,20;
36:2;37:16,20;
53:11;83:7,8;84:9

**SUBMITS (1)**
41:11

**SUBMITTED (3)**
5:19;7:13;87:14

**SUBMITTING (2)**
115:6;118:22

**SUBORDINATED (3)**
56:18,22;78:10

**SUB-RULE (2)**
70:25;71:10

**SUBSECTION (4)**
64:15;107:15;
108:5;135:9

**SUBSEQUENT (1)**
73:5

**SUBSEQUENTLY (4)**
120:5;138:3;
174:4,12

**SUBSISTS (2)**
54:16;57:11

**SUBSTANTIAL (3)**
89:2,2,17

**SUCCEED (2)**
98:5;163:9

**SUCCESS (5)**
37:14;98:2;
183:24;193:3,10

**SUCCESSFUL (2)**
123:3;166:11

**SUCCESSFULLY (1)**
128:13

**SUE (2)**
84:21;184:18

**SUFFICIENT (5)**
43:1;98:13;

103:19;138:18;
175:7

**SUFFICIENTLY (1)**
193:23

**SUGGEST (8)**
24:6;47:2,5;
164:14;167:20;
171:8;178:20;
188:17

**SUGGESTED (5)**
73:16;85:14;
92:18;161:8;179:10

**SUGGESTING (8)**
27:2;45:22;56:20;
74:18;89:3,18;
119:22;178:23

**SUGGESTS (2)**
82:7;169:20

**SUMMARILY (1)**
92:15

**SUMMARISE (2)**
9:20;85:24

**SUMMARISING (1)**
42:23

**SUMMARY (6)**
18:4;30:13;43:16;
46:3;118:8;121:23

**SUMS (3)**
89:2,2,17

**SUPER (1)**
89:12

**SUPERVISED (12)**
9:3;10:2,8,13;
11:11,21;12:13,18;
13:16;14:8;29:16;
109:8

**SUPERVISION (22)**
10:3;11:14;13:5;
108:17,21;113:25;
116:24;145:1;
148:22;149:2;
151:10;156:4,12,16,
23;157:15,17,20;
160:23;161:1;164:7;
167:5

**SUPPORT (1)**
176:3

**SUPPOSE (1)**
193:6

**SUPPOSED (3)**
34:4;137:22;
161:25

**SURE (36)**
6:12;17:20;23:11;
32:23;37:24;48:23;
53:5;68:21;79:6;
91:25;92:1,5;
103:20;106:23;
107:14,23;108:11;
110:10;129:4;
137:21,24;140:15;
146:9;152:12;163:1,
19;165:2;167:4,4;

173:4,6;176:17;
185:20;188:18;
191:25;192:8
**SURELY (1)**
57:11
**SURMISE (1)**
87:6
**SURPLUS (5)**
14:24;124:14,15;
163:10;173:21
**SURPRISE (2)**
128:15,20
**SURPRISED (1)**
76:19
**SWEAR (1)**
5:4
**SWEARING (1)**
5:20
**SWEEP (1)**
188:11
**SWORN (1)**
5:5

**T**

**TABLE (5)**
5:12;48:1;105:18,
25;162:1
**TALK (6)**
11:19,21,22;
106:11;131:25;
137:22
**TALKED (1)**
84:7
**TALKING (21)**
37:4;38:1,24;
40:12;50:6;65:2;
67:23,25;68:3;
106:17;119:22;
141:14;143:8,12;
149:18,21;151:23,
23,25;176:13;191:4
**TALLY (1)**
146:10
**TANGIBLE (1)**
163:12
**TCA (10)**
90:7;109:23;
110:9;111:22;129:5;
136:5,19,20;137:8;
190:6
**TEAM (2)**
194:10,15
**TECHNICALLY (3)**
71:19,20;82:14
**TELLING (1)**
97:7
**TEMPORARILY (1)**
127:3
**TEMPORARY (1)**
44:5
**TEN (2)**
53:4;189:23

**TERMINAL (3)**
9:15;134:8;166:20
**TERMINATE (1)**
124:22
**TERMINATED (3)**
31:6;109:9;110:19
**TERMINATION (1)**
27:18
**TERMS (14)**
20:3;38:17;57:2;
63:19;70:25;76:9;
87:22;95:1;137:2;
149:7;189:13;
190:13;191:11;
192:20
**TERRIBLY (1)**
105:11
**TEST (18)**
21:8;36:17;43:12,
14,14,19;92:14,19;
93:5,7,9,11;94:16,
17;135:7;170:16;
176:18,19
**TESTIMONY (1)**
27:10
**THANKS (1)**
7:7
**THEIRS (1)**
187:12
**THEORETICAL (2)**
55:21;57:9
**THEORETICALLY (1)**
119:13
**THEORY (1)**
49:21
**THEREABOUTS (1)**
189:25
**THEREFORE (10)**
25:5;10;48:5;54:1;
62:3;64:4;66:3;
105:10;122:7;
160:21
**THINKING (3)**
22:21;23:7;117:23
**THIRD (15)**
59:4;96:2;181:21;
184:19,22,25;
185:12,14,21;
186:11,19,22;
187:11;188:1,8
**THOROUGHLY (1)**
8:5
**THOUGH (6)**
26:25;60:8;77:17;
132:12,21;143:17
**THOUGHT (17)**
24:13;48:13;51:8;
57:7;75:25;77:5;
104:9;106:16;
108:24;114:11;
115:14;137:3;
153:20;164:3;
172:16;173:4,18

**THREE (12)**
9:2,7,14;35:16;
39:20,23;59:13,14,
15;73:16;74:2;75:3
**THROUGHOUT (4)**
68:20;142:7;
159:17;177:4
**TIMES (3)**
36:21;80:23;
107:20;122:4;
189:14,21,23
**TIP (1)**
183:8
**TIPS (1)**
103:5
**TITLE (1)**
185:12
**TITLES (1)**
159:10
**TODAY (3)**
5:14;8:20;195:10
**TOGETHER (1)**
129:14
**TOLD (4)**
6:10;75:24;88:11;
168:10
**TONGUE (1)**
147:16
**TOOK (1)**
95:23
**TOP (6)**
29:2;110:14;
177:8;183:4;188:6;
191:24
**TOPIC (1)**
181:20
**TOTALLY (1)**
5:18
**TRADE (1)**
164:19
**TRADING (1)**
164:18
**TRANSCRIPT (3)**
5:25;143:21;196:7
**TRANSPIRES (1)**
175:22
**TREATED (6)**
170:3,5,15;
175:18;176:7;
177:18
**TREATMENT (2)**
174:8,9
**TREMENDOUSLY (1)**
112:24
**TROUBLE (1)**
103:8
**TRUE (6)**
8:23;77:18;88:14;
131:19;175:9;196:7
**TRULY (2)**
46:22;80:11
**TRUMP (1)**
78:16

**TRUST (1)**
183:15
**TRUTH (1)**
5:21
**TRY (4)**
7:2;94:22;111:1;
115:15
**TRYING (25)**
12:17;55:23;56:8;
86:1;99:7,11,18;
101:2;102:12;104:2;
112:21;150:13;
152:11;155:5;
159:25;160:5,8;
171:6,7,8;175:10;
177:24;182:13;
184:18;192:10
**TURN (12)**
7:6;12:3;17:5;
18:25;60:13;73:20,
23,25;74:1;81:1;
144:12;167:25
**TURNING (1)**
119:7
**TURNS (5)**
73:10;117:5;
167:17;180:9;
183:21
**TWENTY (1)**
5:11
**TWICE (1)**
189:22
**TWO (21)**
9:18,23;14:2;
15:18,19,19;47:9;
64:7;90:13,14;91:3;
94:12;111:24;
114:23;133:14;
141:22;146:21;
147:5;167:1,10;
190:4
**TWO-PARTY (2)**
116:2;129:15
**TYPE (2)**
104:2;178:25
**TYPES (2)**
9:2,7,14,19,23;
147:5
**TYPICALLY (1)**
52:18

**U**

**UK (1)**
191:7
**ULTIMATE (1)**
113:25
**ULTIMATELY (1)**
91:7
**UNABLE (7)**
57:18;134:13;
141:6;144:5;156:5;
158:4,14

**UNAVAILABLE (1)**
6:2
**UNCITRAL (2)**
108:7;127:5
**UNCLEAR (1)**
26:2
**UNCLEARLY (1)**
39:11
**UNCOMFORTABLE (1)**
176:21
**UNCONTROVERSIAL (2)**
108:25;115:14
**UNDER (69)**
5:19,21;6:14,14;
10:3,18;13:4;18:10;
21:3,4;30:16;35:13,
21;36:6,17;37:15;
38:10,16;39:21,24;
47:8,18;52:24;
63:10;70:13;79:19;
93:8;99:23;108:13;
113:24;116:23;
122:23;123:3;
125:11;128:23;
135:14,22;136:6;
138:25;141:8;142:8,
16;143:5,7;144:3,11,
14,19;145:1;148:24;
149:19;156:14,22,
24;157:1,15,18,21,
22;158:19;159:22;
160:2,4,22;162:1;
164:6,25;167:5;
185:15
**UNDERLYING (2)**
105:4;176:6
**UNDERSTOOD (2)**
112:3;185:21
**UNDERTAKEN (3)**
162:22,22;194:18
**UNFAIR (4)**
105:10,11,16,24
**UNITED (2)**
124:20;126:9
**UNLESS (4)**
54:12;78:13;
88:25;89:15
**UNLIKELY (3)**
60:3;79:16;142:20
**UNPACK (2)**
12:16;22:20
**UNSECURED (1)**
59:8
**UNSUCCESSFUL (1)**
96:2
**UNTETHERED (1)**
106:7
**UNUSUAL (1)**
144:12
**UP (78)**
9:8;12:3,13,18;
15:16;17:5,17;
18:25;27:21;28:21;

29:5;32:22;33:7;
47:20;69:22;70:5,6;
72:19;73:10,20,23,
25;74:1;81:2,9;82:6,
8,20,23,24;83:18,22;
85:17;98:20;101:2;
107:7;110:16;
113:21;121:17;
129:10,23;135:18;
136:21;140:2;141:5,
7,8,19;142:7,16,21;
143:4,6,23;144:3,10,
25;151:11;152:25;
156:21;157:4;158:2,
14;159:21;163:6;
166:6,13;167:6,7,19;
168:16;179:19;
181:24;182:3;
188:11;189:24;
190:23;194:15

**UPDATE (1)**
76:6
**UPON (1)**
66:9
**UP-TO-DATE (1)**
79:3
**USE (3)**
38:11;115:18;
127:5
**USED (6)**
23:12;109:20;
139:18;148:5,12;
183:14
**USING (3)**
38:7;43:13,13
**USUALLY (1)**
10:4

**V**

**VAIN (1)**
37:10
**VALIDATION (2)**
164:25;165:19
**VARIABLE (1)**
96:20
**VARIOUS (4)**
86:4;132:22;
139:22;158:24
**VAST (2)**
39:1;83:12
**VEXATIOUS (1)**
184:2
**VIA (1)**
3:10
**VIEW (10)**
46:20;47:13;
70:19;71:8;93:1;
109:1;131:1;154:3;
163:18;184:12
**VIEWS (20)**
20:22;21:13,18;
22:16;25:16;26:6,

24;27:3,12;47:6;
58:14;60:2;71:22;
72:14,18;81:24;
82:16,19;133:11;
182:21
**VIS-À-VIS (1)**
77:22
**VL (2)**
164:6;167:5
**VOICE (5)**
19;19:51:23;59:8,
20;73:19
**VOLUNTARY (20)**
9:2,18,21;10:4,9,
14,16,22;11:2;13:4;
113:13;145:1;156:1,
9,10;157:12;160:16;
161:14;166:19;
167:21

**W**

**WAIT (5)**
42:21,25;43:1;
95:17;174:18
**WAITING (2)**
95:25;115:7
**WALKED (1)**
176:20
**WALSH (1)**
3:15
**WANTS (7)**
23:21;72:12;
74:10;101:19;170:4,
9;182:16
**WATER (1)**
31:11
**WAY (29)**
21:8;37:25;47:25;
54:19;65:4;100:11;
114:15;115:15;
116:11;118:17;
123:22;126:24;
128:16;130:23;
131:1;133:22;134:1;
144:9;148:21;150:9,
16;152:18;161:24;
163:19;164:20;
165:11;168:9;
174:18;181:23
**WC2A (1)**
3:20
**WEEKS (1)**
141:22
**WEIGH (1)**
184:6
**WEIGHT (22)**
20:22;21:12;
22:16;25:16;26:7,
24;27:14;58:15;
64:11;70:11,19,22;
71:8,23;72:15;
74:13;81:25;82:16,

19;133:12;182:22;
184:11
**WESTWOOD (1)**
3:1
**WHATSOEVER (1)**
54:2
**WHEREAS (8)**
9:22;10:4,9;42:20;
74:14;114:8;119:23;
166:18
**WHEREBY (1)**
132:23
**WHICHEVER (2)**
40:21;123:7
**WHOLE (19)**
19:10;20:8;23:14;
24:17,18;41:17,20;
57:5;66:10,10;67:3;
71:7;72:19;74:13;
86:14;93:23;129:22;
172:11;190:21
**WHOSE (1)**
148:8
**WILBERFORCE (5)**
7:25;86:13;
183:22;184:8;194:3
**WIND (2)**
9:8;121:17
**WINDING (48)**
12:13,18;17:17;
32:22;47:20;69:22;
70:5,6;72:19;81:9;
82:6,8,20,23,24;
83:18,22;85:17;
110:16;113:21;
129:10,22;134:9;
135:18;136:21;
141:5,7,8;142:7,16;
143:3,6,23;144:3,10,
25;156:21;158:2,14;
159:21;163:6;166:6,
13;167:6,7;179:19;
181:24;190:23
**WINDS (1)**
184:22
**WINTHROP (1)**
5:9
**WISH (2)**
107:2;137:18
**WISHED (1)**
103:11
**WITHDRAW (1)**
181:12
**WITHIN (3)**
50:1;107:25;122:9
**WITHOUT (11)**
15:9;17:13;19:6;
30:6;50:13;54:7;
69:21,24;80:1;
101:7;183:5
**WITNESS (4)**
5:4;44:24;45:13;
196:1

**WORD (4)**
50:25;87:5;89:23;
115:18
**WORDS (4)**
62:24;108:9;
109:5,20
**WORK (4)**
7:2;43:24;126:5;
194:17
**WORKING (2)**
80:4;95:12
**WORLD (3)**
37:19;93:4;150:10
**WORRIED (2)**
58:20;73:14
**WORRY (2)**
41:6;195:3
**WORTH (1)**
45:9
**WOUND (7)**
27:21;28:21;29:5;
33:7;141:19;142:21;
151:11
**WRAP (1)**
167:19
**WRITE (3)**
7:20,22;114:17
**WRITTEN (3)**
137:16,20;138:2
**WRONG (6)**
51:11;82:4;117:5;
118:4;119:7;120:1
**WROTE (1)**
7:24
**WU (1)**
3:10

**Y**

**YEAR (1)**
118:12
**YEARLONG (3)**
118:15,19;119:12
**YEARS (7)**
91:3;166:7;
190:21;192:9,11;
193:17;194:25
**YORK (4)**
85:19;109:19;
127:5;170:9
**YORK'S (1)**
180:20

**Z**

**ZOGLAND (1)**
176:6
**ZOOM (1)**
3:10

**1**

**1 (13)**

7:18;11:25;16:12,
19;17:24;19:4,9;
30:24;39:17;46:8,
15;63:11;94:19
**1.33 (2)**
134:24;135:2
**1.45 (1)**
134:25
**1.55 (2)**
135:1,2
**10 (2)**
92:2;110:14
**10.11 (1)**
5:2
**100 (3)**
170:24;171:14;
174:15
**100% (1)**
121:1
**101 (1)**
107:7
**10123 (3)**
108:1;112:17;
179:8
**103 (1)**
3:4
**107 (3)**
20:18;70:13;82:12
**11 (7)**
60:13;61:6;65:9;
69:15,18,20;70:8
**11.06 (1)**
53:6
**11.20 (2)**
53:6,8
**110 (7)**
62:10;64:13;
67:18,19;69:9,10;
70:25
**1104 (6)**
68:16,17,19;69:12,
25;70:8
**1104A (3)**
62:14;68:3,6
**12 (2)**
12:4,8
**12.17 (2)**
92:7,8
**12.35 (2)**
92:8,10
**124 (2)**
148:24;160:22
**13 (4)**
33:4,5;83:10;
148:7
**13.55 (1)**
135:4
**131 (3)**
148:20,21;156:14
**131A (2)**
156:24;157:18
**131B (1)**
157:1

**133 (4)**
149:1,10;151:5,8
**134 (1)**
161:9
**138 (7)**
147:23;151:20;
153:22,23;154:2,20;
155:20
**138-150 (1)**
147:20
**139 (5)**
147:24;149:13;
153:20;154:2,4
**1391 (5)**
148:1,12;149:6,
15;151:16
**140 (2)**
147:24;149:20
**142 (2)**
154:6,9
**15 (14)**
7:14;108:11;
124:20,22;125:12;
128:12;130:15,18;
131:2;185:5,18;
186:6;187:2;188:3
**15.05 (1)**
188:22
**15.15 (1)**
188:25
**15.24 (1)**
195:14
**152 (1)**
28:13
**1521 (1)**
28:17
**16 (11)**
32:16,21,25;33:1,
4;46:8,15;83:10;
136:10;148:7,12
**18 (1)**
129:10
**19 (4)**
110:10,12,13;
129:19
**199 (1)**
19:2
**1HP (1)**
3:20

**2**

**2 (14)**
15:20;16:8,9,14,
22;19:6;39:17;61:6,
22;65:10,17;94:20;
144:3;168:16
**20 (5)**
122:4;129:22;
131:4,11;194:25
**2009 (1)**
189:5
**2017 (1)**

159:22
**2022 (1)**
193:12
**2023 (2)**
196:9,20
**21 (6)**
61:7,15;62:3,9;
66:24;81:2
**23 (5)**
107:15;108:5;
112:21;135:9;136:4
**23D (4)**
66:6,19;69:21;
70:9
**240 (1)**
176:15
**241 (2)**
177:2,12
**25 (7)**
168:19,25;169:13;
171:3;175:11;176:5;
178:1
**25P (1)**
98:9
**27 (1)**
86:25
**28 (1)**
122:9
**2ND (1)**
3:16

**3**

**3 (13)**
17:20,21;18:24,
25;30:19,24;31:17;
32:16;61:19;63:11;
64:15,24;65:2
**3.05 (1)**
188:23
**3.15 (1)**
188:23
**3.24 (1)**
195:15
**30 (1)**
194:25
**34 (6)**
61:19;62:3,8;
65:15;66:24;67:2
**3RD (1)**
3:2

**4**

**4 (8)**
19:12;64:21,22;
65:3;70:25;71:10;
86:22,23
**44 (2)**
12:3,11

**5**

**5 (20)**
19:18;64:18;
90:15,16;93:22,24;
94:5;106:9;107:15;
109:24;110:11;
135:17,22,24;139:4,
10;140:17,23,23;
145:9
**50P (1)**
98:5
**51 (1)**
159:22

**6**

**6 (6)**
20:2,9;93:20;94:2,
6;136:10
**64 (1)**
62:11
**65% (2)**
98:2;183:23
**68 (1)**
181:1
**69 (1)**
181:8
**6-9 (1)**
3:18

**7**

**7 (6)**
107:5,6,10;
110:13;129:10;
168:19
**71 (1)**
168:1
**72 (3)**
81:3;85:22;86:24
**73 (1)**
85:22
**74 (2)**
60:15;85:22
**76 (1)**
181:8
**78 (1)**
15:25
**79 (1)**
32:22

**8**

**8 (11)**
17:17,19,24;
45:18;79:19;95:21;
141:23;157:14;
158:8,10;168:17
**84 (2)**
62:12,13
**8TH (1)**
196:8

**9**

**9 (2)**
111:11;138:6
**92C (1)**
167:8
**92D (1)**
144:4
**93 (4)**
32:17,24;94:2,6
**97 (22)**
15:12,23;16:2;
17:7,10;30:3;35:13,
21;36:5,6,17;37:16,
21;38:11,16;39:21,
25;84:6;85:3,6;
155:10,17
**99 (1)**
164:25