**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re | Case No. 21-11854 (DSJ) |
| ASCENTRA HOLDINGS, INC. (in Official Liquidation), | Chapter 15 |
| Debtor in a Foreign Proceeding. |  |

**DECLARATION OF KATHARINE LUCY BLADEN PEARSON**
**IN SUPPORT OF MOTION OF SHANG PENG GAO KE INC. SEZC AND**
**SPGK PTE LTD. PURSUANT TO 11 U.S.C. §§ 1517(d) AND 1520(c)**
**FOR AN ORDER TERMINATING THE RECOGNITION ORDER**

I, Katharine Lucy Bladen Pearson, hereby declare that:

1.    I am an Attorney-at-Law in the Cayman Islands and a Partner and Co-Founder of the firm Claritas Legal Limited (**Claritas**).  Prior to co-founding Claritas in May 2022, I was a partner in the Cayman Islands office of global offshore law firm, Harneys.

2.    I was first admitted as a solicitor in England and Wales in 2006 where I trained at Freshfields Bruckhaus Deringer LLP and subsequently practised at leading fraud litigation firm, Peters & Peters Solicitors LLP.

3.    I moved to the Cayman Islands in 2009 and practised in the litigation and insolvency department of Appleby for several years, before joining Harneys in 2016.

4.    I frequently appear before the courts of the Cayman Islands and regularly advise stakeholders in Cayman Islands companies on high-value and high-profile litigation, liquidation and restructuring issues.

5.    I am recommended by Chambers Global (2023), where client sources report that "*Katie has a wealth of experience in the Cayman Islands. She is very strong tactically*" and "*she is a very capable, very able lawyer and someone I absolutely trust.  Katie is a really fantastic lawyer and someone with a lot of integrity.*"

1



**EXHIBIT**

_1_

6.     I am also recognized as a *"next generation partner"* in Legal 500 (2023), by Who's Who Legal (2023) as a Thought Leader in Asset Recovery and am included in Who's Who Legal: Thought Leaders Global Investigations Review 2023.

7.     A copy of my CV is attached to this declaration as **Exhibit 1**.

**Instructions and overview**

8.     I have been asked by Pachulski Stang Ziehl & Jones LLP, attorneys for Shang Peng Gao Ke Inc. SEZC and SPGK Pte Ltd (together **SPGK**) to consider the issues of Cayman law that arise in relation to the Chapter 15 recognition proceeding of Ascentra Holdings, Inc. (**Ascentra**) pending in the United States Bankruptcy Court for the Southern District of New York (the **Chapter 15 Proceeding**).

9.     In particular, I have been asked to provide a declaration that addresses the following issues:

   a.  A description of the process for the voluntary liquidation of a solvent Cayman Islands company under Sections 116 and 124 (and all related provisions, rules and orders) of the Cayman Islands Companies Act (the **Companies Act** or the **Act**) as applicable to Ascentra's proceeding in the Grand Court of the Cayman Islands (the **Cayman Proceeding**), with particular attention to the role of creditors (if any) in such a proceeding. A copy of relevant sections of the Companies Act is attached as Exhibit A to the *Declaration of Guy Cowan in Support of Chapter 15 Petition for Recognition as Foreign Main Proceeding* (the **Cowan Declaration**), ECF No. 5.

   b.  An explanation of the application of such provisions to the conduct of the Cayman Proceeding.

2

10. By way of an overview of my declaration on the applicable procedures:

    a. The voluntary winding up of a Cayman Islands company pursuant to sections 90 and 116 of the Companies Act arises as the result of administrative steps by the company, and in the usual case upon the passing of a special resolution by the shareholders. There is no requirement that the company is insolvent.

    b. There is no obligation upon the company to notify creditors of any proposal that the company be wound up on a voluntary basis. Creditors have no right of participation in the decision to wind up the company.

    c. There is no obligation upon the company or the voluntary liquidator to notify creditors that the company has commenced a voluntary winding up.

    d. A voluntary liquidator is obliged to apply for an order to bring the winding up under the supervision of the Court if all the directors do not file a formal declaration of solvency within 28 days. It is not uncommon for directors not to file such a declaration when there is a dispute within the company and such failures do not indicate that the company is or could be insolvent.

    e. An application to bring a voluntary winding up under the supervision of the Court can be determined administratively without the need for a hearing. For this to happen, the voluntary liquidator does have to give creditors notice of the application.

    f. If the Court makes a supervision order an official liquidator is appointed. The official liquidator must formally certify whether the company is considered insolvent, solvent or of doubtful solvency.

    g. The procedures which apply to the Court supervised winding up of a solvent company and the liquidation of an insolvent company are very different. For example, in a solvent winding up:

        i. Only shareholders are entitled to vote on membership of the liquidation committee. Creditors are not entitled to vote.

        ii. Only shareholders are entitled to be members of the liquidation committee. Creditors are not entitled to be members of the committee.

        iii. Only shareholders are entitled to be heard on Court sanction applications made by the official liquidator. Creditors are barred from such applications.

3

    iv.    Only shareholders are entitled to bring a sanction application challenging decisions of the liquidator. Creditors are barred from making such applications and from being heard on such applications.

    v.    The rules in an insolvent liquidation as to the distribution of dividends to creditors, the mandatory adjudication of creditor claims by the official liquidator and the obligation to pay creditors of the same ranking at the same time do not apply in a court supervised solvent winding up. Creditor claims are to be paid in the ordinary course as if the company were carrying on business.

  h.  The reason for the distinction between the rules governing an insolvent liquidation and a solvent voluntary winding up is straightforward; in contrast to an insolvency proceeding, a creditor in a solvent voluntary winding up is considered as having no economic interest in the winding up process.

11.    Applying these principles to the Cayman Proceeding:

  a.  The winding up of Ascentra is a solvent winding up.

  b.  The creditors of Ascentra had no legal role in the winding up process other than in respect of the narrow issue as to whether a supervision order could be made administratively without a Court hearing.

  c.  Only shareholders of Ascentra were entitled to vote for the liquidation committee and be members of the liquidation committee.

  d.  Only the shareholders of Ascentra are entitled to be heard on a sanction application and only shareholders can bring a sanction application challenging the liquidator. Creditors are not entitled to issue, or be represented in connection with, a sanction application.

  e.  The creditors of Ascentra are to be paid in the ordinary course as if the company continued carrying on business. There is no dividend process and different creditors can be paid at different times.

12.    I have reviewed the documents listed in Appendix 1 hereto.

**Cayman Islands Law**

13. The Cayman Islands is a self-governing Overseas Territory of the United Kingdom with the British monarch as the head of state. It has a constitution (the **Constitution**) that was promulgated by the Cayman Islands Constitution Order 2009, a UK statutory instrument, and was most recently amended in 2020. The Constitution provides for executive authority to be exercised by a Governor and a Cabinet,[1] for an independent legislature,[2] judiciary,[3] and a bill of rights.[4]

14. The judiciary consists of a Grand Court headed by a Chief Justice.[5] Appeal from the Grand Court's decisions lies to the Court of Appeal,[6] and from the Court of Appeal to the Judicial Committee of the Privy Council (**the Privy Council**).[7] Therefore, the Privy Council is the highest court of the Cayman Islands.

15. The legal system of the Cayman Islands is a common law system, and the doctrine of judicial precedent applies. The Privy Council's judgments in relation to Cayman Islands law matters are binding on all other Cayman Islands courts. When the Privy Council hears an appeal from a court which is not a Cayman Islands court, its decision is not binding on Cayman Islands courts but is treated by those courts as highly persuasive. Decisions of the English courts are also of persuasive authority in respect of issues of common law or the application of statutory provisions that are the same or materially similar to Cayman Islands legislation.

---

[1] Parts II and III of the Constitution (The Cayman Islands Constitution Order 2009 (as amended)). A copy of the Cayman Islands Constitution Order 2009 is attached to this declaration as **Exhibit 2.**
[2] Part IV of the Constitution.
[3] Part V of the Constitution.
[4] Part I of the Constitution.
[5] Articles 94-98 of the Constitution.
[6] Articles 99-103 of the Constitution.
[7] Article 26(3) of the Constitution.

**Background**

16. On 1 June 2021 the shareholders of Ascentra passed unanimously a resolution to wind up the company on a voluntary basis and that Graham Robinson be appointed as voluntary liquidator. A copy of that resolution is at Exhibit A to the *Declaration of Graham Robinson in Support of Chapter 15 Petition for Recognition as Foreign Main Proceeding and Emergency Application for Provisional Relief* (the **Robinson Declaration**), ECF No. 4.

17. Two of the directors of Ascentra failed to provide statutory declarations of solvency within 28 days of the passing of the resolution. As a result pursuant to s.124 of the Companies Act, the voluntary liquidator was required to present a petition to bring the voluntary winding up under the Court's supervision and did so on 2 July 2021 (the **Supervision Application**). The Supervision Application sought the appointment of Mr Robinson and Ivy Chua as the joint official liquidators of the company. A copy of the Supervision Application is at Exhibit B to the Robinson Declaration.

18. Following the presentation of the Supervision Application, on 12 August 2021 Mr Robinson wrote to Ascentra's shareholders and SPGK seeking their approval of the Supervision Application. The purpose of this request was to seek to obtain an order of the Court without the need for a hearing. A copy of that letter is attached as pages 8-9 of Exhibit 1 to the *Declaration of Andrew Johnstone in Support of Motion of Shang Peng Gao Ke Inc. SEZC and SPGK Pte Ltd. Pursuant to 11 U.S.C. §§ 1517(d) and 1520(c) for an Order Terminating the Recognition Order* (the **Johnstone Declaration**).

19. SPGK initially objected to both the appointment of the proposed joint official liquidators and the proposal that the Supervision Application be determined on an administrative basis. On 7 September 2021 SPGK informed Mr Robinson that it withdrew these objections. Mr Robinson informed the shareholders of this by an email dated 10 September 2021. Ex. 1 to Johnstone Decl. at 17–19. The shareholders

subsequently confirmed that they did not object to the Supervision Application being determined on an administrative basis. Ex. 1 to Johnstone Decl. at 10-16.

20.    On 13 September 2021 Mr Robinson wrote to the Grand Court and requested that the Court grant the relief sought on an administrative basis. Ex. 1 to Johnstone Decl. at 1–3.

21.    On 17 September 2021, Justice Doyle made an order (the **Supervision Order**) appointing Mr Robinson and Ms Chua as joint official liquidators (together the **JOLs**). A copy of the Supervision Order is at Exhibit C to the Robinson Declaration.

22.    On 23 September 2021 the JOLs certified that Ascentra be treated as a solvent company for the purposes of s.110(4) of the Act and Orders 8 and 9 of the Companies Winding Up Rules (the **CWR**). A copy of the JOLs' certification is at Exhibit 2 to the Johnstone Declaration. I understand that there has been no subsequent revision to that certificate.

23.    On 14 October 2021 the official liquidators wrote to the shareholders of the company and invited them to the first meeting of shareholders which was to be held on 21 October 2021, giving notice that the election of the liquidation committee would take place at that meeting. That letter stated that fully paid-up registered shareholders of the company were eligible to be members of the liquidation committee. A copy of that letter is at Exhibit 3 to the Johnstone Declaration.

24.    On 29 October 2021, the official liquidators filed a certificate confirming that a liquidation committee had been constituted comprised of shareholders and representatives of shareholders of the company. A copy of that certificate is at Exhibit 4 to the Johnstone Declaration.

**Court supervised liquidations of solvent companies**

*The Cayman law procedure*

25.    The Court supervised winding up of solvent companies was a feature of English company law between 1857 and 1986, the procedure being abolished in 1986[8].

26.    The Cayman law procedure for Court supervised winding up of companies is closely modelled on the prior English process.  As in English law, there are significant differences between the Court-supervised winding up of a solvent company and the compulsory liquidation of an insolvent company.

27.    The primary legal framework regarding the winding up of companies is contained in:

   a.  Part V of the Act, and in particular, for the purposes of this declaration, sections 90, 92, 105, 110, 116-124 and 131-133.

   b.  The CWR, and in particular orders 8, 9, 10, 11, 13, 14, 15 and 16.  A copy of the CWR is attached to this declaration as **Exhibit 4**.

28.    There are three ways in which a company can be wound up under s.90 of the Act, compulsorily, voluntarily or under the supervision of the Court. Section 90 provides:

"90. A company may be wound up —

(a) compulsorily by order of the Court;
(b) voluntarily —
        (i) by virtue of a special resolution;
        (ii) because the period, if any, fixed for the duration of the company by its articles of association has expired; or
        (iii) because the event, if any, has occurred, on the occurrence of which its articles of association provide that the company shall be wound up; or
(c) under the supervision of the Court."

29.    Section 92 identifies the five circumstances in which a company can be wound up by the Court:

"92. A company may be wound up by the Court if —

---

[8] Derek French, Applications to Wind up Companies, Fourth Edition, 10.144. The text indicates that the procedure survives only in the Cayman Islands and the Isle of Man, 10.147.  A copy of the relevant section is attached to this declaration as **Exhibit 3.**

(a) the company has passed a special resolution requiring the company to be wound up by the Court;
(b) the company does not commence its business within a year from its incorporation, or suspends its business for a whole year;
(c) the period, if any, fixed for the duration of the company by the articles of association expires, or whenever the event, if any, occurs, upon the occurrence of which it is provided by the articles of association that the company is to be wound up;
(d) the company is unable to pay its debts; or
(e) the Court is of opinion that it is just and equitable that the company should be wound up."

30.    Most of the bases for the winding up of a Cayman company under section 92 do not require that it be established that the company is insolvent. Only section 92(d) requires that insolvency is established, with the Court having jurisdiction to wind up a company if it is established that "the company is unable to pay its debts" as defined in section 93.

*Voluntary liquidation*

31.    Section 116 sets out the circumstances in which a company can be wound up voluntarily:

"116. A company incorporated and registered under this Act or an existing company may be wound up voluntarily —

(a) when the period, if any, fixed for the duration of the company by its memorandum or articles of association expires;
(b) if the event, if any, occurs, on the occurrence of which the memorandum or articles of association provide that the company is to be wound up;
(c) if the company resolves by special resolution that it be wound up voluntarily; or
(d) if the company in general meeting resolves by ordinary resolution that it be wound up voluntarily because it is unable to pay its debts."

32.    None of the bases set out in section 116 involve creditors or parties outside of the company itself.  Sections 116(a) and 116(b) provide for winding up based on the contents of a company's articles and memorandum of association. Sections 116(c) and 116(d) provide for winding up following the passing of a resolution by the shareholders of the company. There is no obligation to notify creditors or third parties prior to the commencement of the winding up.

33.    If a resolution to wind up is passed, the winding up commences at the time of the passing of the resolution pursuant to section 117(1)(a). From the commencement of the

9

winding up the company shall cease to carry on business except so far as it may be beneficial to its winding up, see section 118(1).

34.    Section 123(1) sets out the notice obligations of a voluntary liquidator.

"123. (1) Within twenty-eight days of the commencement of a voluntary winding up, the liquidator or, in the absence of any liquidator, the directors shall —

(a) file notice of the winding up with the Registrar;
(b) file the liquidator's consent to act with the Registrar;
(c) file the director's declaration of solvency with the Registrar (if the supervision of the court is not sought);
(d) in the case of a company carrying on a regulated business, serve notice of the winding up upon the Authority; and
(e) publish notice of the winding up in the Gazette."

35.    The "Gazette" is a reference to the Cayman Islands Gazette.  This is an official government publication which is treated as a means of giving notice to the world at large as to the contents of any notice published therein. It performs a similar function under Cayman Islands law as the The London Gazette does under English law.

36.    There is no obligation to notify creditors that the company has resolved to wind itself up on a voluntary basis, although CWR O.13 r.2(3) provides that the voluntary liquidator shall provide copies of the documents listed above, as well as the declarations of solvency discussed further at paragraphs 37 to 39 below, on request to any member or creditor of the company.

*Application for Court supervision*

37.    Section 124 provides that a voluntary liquidator must apply to the Court for an order that the winding up continues under the supervision of the Court unless the directors of the company have signed a declaration of solvency within 28 days of the commencement of the voluntary liquidation, which is the date of the passing of the special resolution if the company has entered the process pursuant to section 116(c) of the Act.  The form of such a declaration is prescribed by CWR O.14.

38.    There is no obligation on a director to file a declaration of solvency. It is not uncommon for directors not to file a declaration, particularly when the reasons for the voluntary

10

winding up involve disputes among the members or directors. As such, a director's failure to sign a declaration is not itself a factual indication that the director considers the company insolvent.

39.    If all the directors provide a declaration of solvency the winding up can proceed with no involvement of the Court, the winding up being governed primarily by the provisions of sections 125 to 130 of the Act and CWR O.13. Members or creditors can apply for a supervision order on the grounds set out in section 131 of the Act.

40.    If an application is made under section 124, the procedure is set out in CWR O.15.

    a.    The application can proceed administratively in respect of a solvent winding up, that is "on the papers" without a formal court hearing, if the voluntary liquidator can satisfy the Court that notice has been given to the company's creditors and shareholders and there is no reason to believe any creditor or shareholder objects to the proposed appointment, see O.15, r.5(1).

    b.    Otherwise, the application will proceed to a Court hearing. In the case of a solvent voluntary winding up notice must be given to the company's creditors and shareholders, see O.15, r5(2).

41.    While shareholders and creditors are entitled to make representations as to who should be appointed as official liquidator on an application pursuant to section 124 of the Act, see O. 15, r.5(4), in respect of solvent companies the Court will consider the wishes of shareholders, being the parties with the economic interest in the winding up process and the creditors' views will be given little, if any, weight. The point was made by the Cayman Islands Court of Appeal in *Adamas Global Alternative Investment Management Inc*, Civil Appeals No 17 and 26 of 2019, judgment dated 8 November 2019. A copy of that case is attached to this declaration as **Exhibit 5**. The case considered the identity of a voluntary liquidator appointed on an application under section 131(b) of the Act, but the principles as to the relative roles of the members and creditors apply equally under section 124, as both s.124 and s.131(b) deal with applications for appointment of an official liquidator in the winding up of a solvent company which has previously commenced voluntary liquidation, the procedure for

applications under both sections being governed by the provisions of CWR O.15. Sir

Richard Field JA explained the position at [97]:

> "The last eight words of paragraph (b) require the Court to have regard to the interests of the contributories and creditors. **Where the company is solvent and the shareholders whose votes in general meeting procured the necessary resolution for the voluntary winding up are the sole shareholders with an interest in the winding up, there will be no question of one set of shareholders having an interest in the winding up that is superior to another set of shareholders, unless exceptionally there are disputant groups within the general body of shareholders, in which case the Court might have to decide whether one group's wishes should predominate over the wishes of the other. And since the company is solvent, the creditors' interest in the winding up will be of much lower (if any) significance than that of the contributories.** Where, however, the company is an investment fund and the company is solvent so that all creditors will be paid, as is the case in these two appeals, the Managers with the entitlement to put the fund into the voluntary liquidation will have no financial stake in the winding up and the question arises as to the extent to which the Court in considering the requirements of paragraph (b) can and should have regard to the fact that the Participating Shareholders have the sole stakeholders in the winding up." (emphasis added).

42.    The differences between a liquidator in a voluntary and supervised winding up were explained by the Court of Appeal in *Adamas Global* at [77]-[81]. In a supervised winding up the liquidator is appointed as an "official liquidator", as defined in section 89 of the Act. Unlike a voluntary liquidator an official liquidator is an officer of the Court. To be an official liquidator the appointee must be a "qualified insolvency practitioner", see O.15, r.2., which means "a person who is qualified in accordance with Regulation 4 [of the Insolvency Practitioners' Regulations 2023] to accept appointment by the Court as an official liquidator of a company", see Insolvency Practitioners' Regulations 2023, Regulation 3(2). A copy of the Insolvency Practitioners' Regulations appears as **Exhibit 6** to this declaration. As an official liquidator, a liquidator in a Court supervised winding up is entitled to exercise the powers set out on in sections 101 to 103 of the Act.

***Notice to creditors***

43.    As summarized above:

  a. Creditors have no right of notice of the decision to seek a special resolution that a company commences a voluntary winding up.

    b. Creditors have no specific right of notice that a company has commenced a voluntary winding up.

    c. The voluntary liquidator is obliged to publish a notice of the winding up in the Cayman Islands Gazette.

    d. If the voluntary liquidator wishes a supervision order to be determined on an administrative basis then it is necessary to notify creditors of the application for a supervision order and seek their views as to the same.

***Differences between insolvent compulsory liquidation and solvent Court-supervised liquidation***

44. There are very significant differences between the conduct of the supervised winding up of a solvent company and the conduct of a compulsory liquidation of an insolvent company.

45. Key aspects of an insolvent liquidation under Cayman law are:

    a. The participation of creditors in the administration of the liquidation through representation on the liquidation committee, participation in meetings and reporting.

    b. The ability of creditors to challenge decisions and conduct of the liquidator through the right to appear at and commence sanction applications before the Court.

    c. The equal treatment of creditors within a mandatory *sui generis* process for the adjudication of creditor claims together with a process for the simultaneous payment of a rateable dividend in part payment of creditors' claims.

46. None of these three aspects apply to creditors in a Court supervised winding up of a solvent company. The reason for the difference is a basic one. A compulsory insolvent liquidation is conducted for the benefit of the creditors, the efficient and effective administration of the liquidation should increase the rateable dividend payable to creditors and it is the creditors who bear the economic burden of the costs of the liquidation process. In contrast, in a solvent Court supervised winding up the process is conducted for the benefit of shareholders and it is the shareholders who bear the

13

economic burden of the costs of liquidation. In a solvent winding up the creditors will be fully paid and will be paid in the ordinary course, those creditors' claims not being subject to the rules as to proof and collective payment that apply in an insolvent liquidation.

### Meetings, liquidation committee and reporting

47.   Section 115(1) of the Act provides that: "The Court shall, as to all matters relating to the winding up, have regard to wishes of the creditors or contributories and for that purpose it may direct reports to be prepared by the official liquidator and meetings of creditors or contributories to be summoned."

48.   The liquidation committee in a Cayman liquidation is established under CWR O.9 and performs a consultative function. Official liquidators will typically consult with the liquidation committee before taking important decisions in the liquidation.[9] The liquidation committee is constituted of representatives of the parties with an economic interest in the liquidation process.   In an insolvent liquidation the committee is comprised of representatives of the creditors.  In contrast, in a solvent Court supervised winding up the liquidation committee comprises solely of shareholders and creditors are barred from any representation or participation in the liquidation committee, see CWR O.9, r.1(5) and O.9, r.1(3).

49.   Upon appointment, an official liquidator is obliged to determine whether the company is solvent, insolvent or of doubtful solvency, see CWR O.8, r.1(1).   The official liquidator must file with the Court a formal certificate of this decision within 28 days of the day on which the winding up order is made, see CWR O.8, r.1(3).

   a.   If the company is determined to be insolvent, for the purposes of convening meetings of stakeholders and establishing a liquidation committee, the first meeting and subsequent meetings shall be convened with creditors only, see CWR O.8, r.1(4).

---

[9] *In the Matter of Herald Fund SPC*, FSD 27 of 2013 (IKJ), judgment of Kawaley J dated 1 April 2021, at [14]-[15].  A copy of that case is attached to this declaration as **Exhibit 7**.

    b. If the company is determined to be solvent, for the purposes of convening meetings of stakeholders and establishing a liquidation committee, the first meeting and subsequent meetings shall be convened with shareholders only, see CWR O.8, r.1(5).

    c. If the company is determined to be doubtful solvency, for the purposes of convening meetings of stakeholders and establishing a liquidation committee, the first meeting and subsequent meetings shall be convened of both creditors and shareholders, see CWR O.8, r.1(6).

50.    The official liquidator is obliged to convene the first meeting of creditors and/ or contributories, at which the liquidation committee is elected, within 28 days of the day on which the winding up order is made: see CWR O.8 r.2(1). Thereafter, he is obliged to convene meetings not less than once a year: see CWR O.8 r.2(3).

51.    If an official liquidator has certified the company as solvent, notice of meetings shall only be given to shareholders and creditors have no notice or voting rights, see CWR O.8, r.4(2) and O.8, r.8.

52.    The official liquidator's reporting requirements are set out in CWR O.10. This provides that, in the case of a solvent company, the official liquidator is required to report to contributories only: see O.10 r.1(2)(b). O.10 r.1(2) provides that, whenever the official liquidator convenes a meeting pursuant to O.8 r.2, he shall send a report and accounts to every person entitled to receive notice of that meeting.

### *Ability to appear on sanction applications*

53.    Just as creditors are barred from the administrative process in a solvent supervised winding up, they are barred from judicial proceedings involving decisions taken during the winding up too. Central to the judicial oversight of a Cayman liquidation is the concept of a sanction application. Sanction applications are required when an official liquidator seeks the Court's approval for a material decision or when a stakeholder wishes to challenge a decision made by the official liquidator. Sanction applications are defined in section 110 of the Act and the procedure for these applications is contained in CWR O.11.

54.   Section 110(4) expressly bars a creditor of a solvent company from making a sanction application or even being able to make representations at the hearing of the application. Section 110(4) provides:

"110(4) In the case of —

(a) a solvent company, a sanction application may only be made by a contributory and the creditors shall have no right to be heard;
(b) an insolvent company, a sanction application may only be made by a creditor and the contributories shall have no right to be heard; and
(c) a company whose solvency is doubtful, a sanction application may be made by both contributories and creditors and both contributories and creditors shall have a right to be heard."

55.   CWR O.11 must be read as subject to section 110, the Act being primary legislation. CWR O.11 confirms that creditors have no right to notice of a sanction application in a solvent supervised liquidation and CWR O.11, r3(4) reaffirms the position that creditors cannot be heard.

***Adjudication of creditor claims***

56.   The mandatory adjudication of creditor claims and the simultaneous payment of a rateable dividend are central legal concepts in a Cayman compulsory insolvent liquidation. The procedural rules governing the adjudication process are set out in CWR O.16, rr.2-21 and the rules for the payment of creditors are at CWR O.18.

57.   None of these rules apply to the treatment of creditors in a Court supervised winding up of a solvent company. While s.140 of the Act refers to the satisfaction of liabilities and the distribution of assets on a *pari passu* basis that is a reference to the collective process of rateable part payment of creditors applying mandatory rules as to the timing and ascertainment of the company's debts[10] and while it may have application to

---

[10] See *In re Dynamics Corp* [1976] 1 Ch 757, Oliver J., cited with approval by the Privy Council on an appeal from the Cayman Islands in *Wight, Pilling and Mackey v Eckhardt Marine G.m.b.H.* [2003 CILR 2011], PC(Cayman) at [26]-[28].  A copy of *In re Dynamics Corp* is attached to this declaration at **Exhibit 8** and a copy of *Wight, Pilling and Mackey v Eckhardt Marine G.m.b.H* is attached to this declaration at **Exhibit 9**.

16

payments to *shareholders* in a solvent Court supervised winding up[11], it does not affect or apply to the payment of creditors in solvent proceedings.

58.     Instead, CWR O.16, r.1(1) provides:

"Where a solvent company is being wound up by the Court, the official liquidator shall pay the debts owing to its creditors in the ordinary course and in the currency of the obligation as if the company were still carrying on business."

59.     The contrast between the regimes applicable to creditors in solvent supervised windings up and insolvent compulsory liquidations was explained by Jones J. in *In the matter of Consistent Return Limited* [2012(1) CILR 445], cited without disapproval by the Court of Appeal in *Adamas Global* at [83]. A copy of *Consistent Return* is attached to this declaration as **Exhibit 11**.

60.     In *Consistent Return*, the voluntary liquidators of a fund applied for a supervision order under section 131(b) of the Act because they wanted to pay admitted debts and make a distribution to the holders of the participating shares but were concerned that their actions could be later challenged. The application was made on the basis that if a supervision order was made, the voluntary liquidators could invoke CWR, O.18, rr. 6 and 7 to pay creditors a pro rata sum and in respect of disputed debts they could invoke CWR O.16, r.1(3) to require creditors to submit their proofs of debt and be dealt with under the statutory provisions relating to appeals against rejections or expunging admissions. Jones J summarily dismissed the liquidators' petition. The liquidation being a solvent liquidation, even after a supervision order the liquidators could not invoke CWR, O.18, rr.6 and 7 and even though they could invoke O.16, r.1(3), they could not force an unwilling creditor to submit a proof of debt, whereas they could protect themselves by putting any disputed creditors on notice that they must issue a writ.

61.     The judgment in *Consistent Return* shows the fundamental differences between a Court supervised solvent winding up and an insolvent liquidation. The voluntary liquidators sought a supervision order because they assumed that would allow them to rely upon

---

[11] See for example, *In the matter of the SPhinX Group of Companies* [2010(1) CILR 234] Smellie CJ. A copy of *In the matter of the SPhinX Group of Companies* is exhibited to this declaration at **Exhibit 10**.

17

the mandatory rules as to the adjudication of creditor claims under CWR O.16 and the payment of dividends under CWR O.18. That was a legally flawed assumption as those provisions only applied to creditor claims in insolvent liquidations. In a solvent Court supervised winding up the official liquidator has to pay creditor claims in full when they fall due, there is no collective payment or dividend process and no legal process to force a creditor to have its claim determined within the winding up proceeding.

62.    Jones J. made the position clear at [8]:

"The reason why the liquidators have not taken this obvious step is that they believe that it will be easier and more efficient to deal with Mr. Hoefer's claims (if he is still in fact intending to pursue them) if the liquidation is continued under the supervision of the court. There are three limbs to this argument. **First, it is said that the liquidators would be able to invoke the provisions of CWR, O.18, r.6 and/or r.7. However, as I pointed out during the course of Ms. Corbett's submissions, these rules apply only to insolvent liquidations.** The evidence before the court is that the company is solvent and will be solvent in any event, even if both of Mr. Hoefer's claims were to be paid in full. **The possibility of having to pay a "dividend" to creditors will not arise. CWR, O.16, r.1(1) makes it perfectly clear that the creditors of a solvent company are entitled to be paid in full "in the ordinary course and in the currency of the obligation as if the company were still carrying on business." It follows that the liquidators should already have paid the amounts owing to the three undisputed creditors. It also follows that, if and when Mr. Hoefer makes good his claim, the liquidators will have to pay it in full in the ordinary course as if the company were still carrying on business. CWR, O.18, rr. 6 and 7 will never come into play."** (emphasis added)

63.    Further, Jones J. confirmed at [9] that the ability of an official liquidator to request a proof of debt under CWR O.16, r1(3) did not engage the mandatory adjudication procedures and rules in the remainder of O.16, which only applied in insolvency proceedings.

"Secondly, it is said that the liquidators could invoke the provisions of CWR, O.16, r.1(3) if the liquidation were brought under the supervision of the court. This is true. The rule provides that an official liquidator of a solvent company which is being wound up under the supervision of the court may require a creditor whose claim is disputed to submit a formal proof of debt, in which case the provisions relating to appealing against its rejection or expunging its admission will be brought into play, effectively as an alternative to the commencement by the creditor of a freestanding action against the company. **The liquidators could invoke this rule, but they cannot force Mr. Hoefer to submit a proof of debt, nor is there any mechanism for extinguishing or barring his cause of action without bringing the liquidation to a conclusion and dissolving the company. The proper course is to reject his claim and put him on notice that if he wishes to pursue it, he must issue a writ, failing which the company's assets will be distributed without regard to his claim.** Provided that he is properly put on notice of the liquidators' intention to distribute the whole or practically the whole of

18

the assets and given a reasonable opportunity in which to commence proceedings against the company before the distribution is made, he will not be in a position to complain that the liquidators have proceeded on the basis that his claim has been abandoned." (emphasis added).

**The Cayman Proceedings**

64.    The winding up of Ascentra is a solvent Court supervised proceeding.

65.    The official liquidators have consistently confirmed that Ascentra is solvent:

    a.    The voluntary liquidator's letter to the Court dated 13 September 2021 invited the Court to make the Supervision Order without a hearing, relying on CWR O.15, r.5(1), notice having been given to shareholders and creditors. Notice to shareholders is a requirement for a solvent liquidation.

    b.    The official liquidators formally certified the solvency of Ascentra on 23 September 2021. That certificate remains in effect.

    c.    By the letter of 14 October 2021, the official liquidators only invited known shareholders to the meeting which elected the liquidation committee and confirmed that only fully paid up shareholders could participate as members of the committee. The letter confirmed that one of the primary functions of the LC was "to be representative of all those who have an economic interest in the liquidation, with LC members acting in a fiduciary capacity".

    d.    Mr Robinson confirmed in an email dated 16 August 2021 to Mari Matthews, a representative of one of the shareholders, that "My aim as liquidator of Ascentra and IR-P is to ensure that all the shareholders receive their share of the surplus and not just Ryu or Yoshio through SPGK". Ex. 1 to Johnstone Decl. at 15–16.

66.    The fact that the proceedings engaged section 124 of the Act and required the appointment of official liquidators is not unusual in a voluntary liquidation which commenced after a significant disagreement between directors and/or shareholders.

67.    The appointment of official liquidators does not mean that the laws and procedures applicable to an insolvent liquidation apply to the Cayman proceedings. In fact, the

Cayman case law shows that certain key laws and procedures applicable to an insolvent liquidation do not apply.

68.    In the Ascentra winding up:

    a.  Creditors are to be paid in the ordinary course as if the company was carrying on business. There is no collective payment process, different creditors can be paid at different times and there is no payment of dividends.   The mandatory procedures in insolvent liquidations for the adjudication of creditor claims and the payment of dividends do not apply. (As *Consistent Return* establishes, the official liquidators can invite creditors to file a proof of debt, but the use of that process to determine claims is voluntary at the election of the creditor, in contrast to an insolvent liquidation in which the proof of debt procedure is mandatory subject to limited exceptions).

    b.  Creditors are barred from participating in a sanction hearing or bringing a sanction application. Shareholders are entitled to bring a sanction application and they are allowed to be heard at any sanction application that takes place.

    c.  Creditors were not entitled to be invited to or vote at the first meeting, at which the members of the liquidation committee were elected, and are not entitled to participate in any subsequent meetings.   Only shareholders were invited and entitled to vote.

    d.  Creditors could not and cannot participate as members of the liquidation committee. Only shareholders are entitled to be members of the committee.

    e.  Creditors are not entitled to receive reports from the official liquidators.  Only shareholders are entitled to receive such reports.

**The declarations of Guy Cowan and Mr Robinson**

69.    I have reviewed the Robinson Declaration and the Cowan Declaration, both dated 27 October 2021 filed in support of the Chapter 15 Proceeding.  I do not comment on all aspects of their evidence, but make the following points in the context of the contents of this declaration.

70.    .Neither Mr Robinson nor Mr Cowan brought to the attention of the Court in their evidence the solvent nature of the winding up proceedings or identified to the Court the key differences between Cayman insolvency proceedings and a solvent Court supervised winding up.

71.    At paragraph 25 of his declaration Mr Cowan refers to the fact that creditors are treated on a *pari passu* basis under the Cayman Islands' insolvency regime.  That is correct.  What he does not explain is that the winding up proceedings are not within the Cayman Islands' insolvency regime, that there will be no dividend or rateable payment to creditors and that in fact the creditors of Ascentra will be paid in the ordinary course rather than pursuant to a collective process. A rateable dividend payment in satisfaction of a larger debt and the collective timing of payments to creditors are central to the legal provisions regarding the treatment of creditors in a Cayman insolvency proceeding. Neither of these are present in the winding up of Ascentra.  As drafted, paragraph 25 gives the impression that the winding up of Ascentra is an insolvency process and is subject to the typical indicia of a Cayman insolvency, neither of which is the case.

72.    Mr Robinson at paragraph 27 states that "all major stakeholders are actively participating in the Cayman Proceeding". Mr Robinson does not explain that the creditors of Ascentra are in fact barred as a matter of law from participating in the winding up, being unable to participate as a member of a liquidation committee and being unable to make a sanction application or even be heard by the Court on a sanction application brought by the liquidators or by shareholders.

73.    At paragraph 36, Mr Robinson states "I respectfully submit that the Cayman Liquidation qualifies as such, since by definition it is a liquidation proceeding pursuant to and governed by the Companies Act under the collective judicial supervision of the Grand Court for the benefit of all of Ascentra's creditors, contributories, and parties in interest." This statement does not reflect Cayman Islands' law.  A solvent supervised winding up is conducted for the benefit of the shareholders, not the creditors, and the creditors' claims are not determined on a collective basis or subject to the supervision of the Grand Court within the winding up proceedings.

74.  Similarly at paragraph 40, Mr Robinson states "All creditors of Ascentra may submit their claims in the Cayman Liquidation, and stakeholders have the right to access the Grand Court and appeal decisions of the Liquidators." First, creditors are not obliged to submit their claims in the winding up proceedings, as explained by Jones J. in *Consistent Return*. Second the reference to "stakeholders" is unfortunate as it fails to explain to the Bankruptcy Court that the rights of access to court and challenge to liquidators' decisions are limited in the case of creditors as explained at paragraphs 53 to 55 above.

75.  Taken as a whole, the evidence of Mr Cowan and Mr Robinson did not provide the Court with a fair representation of the nature of a supervised solvent winding up under Cayman Islands law, and a reader would have the impression that the process is part of and to all intents the same as an insolvent liquidation, which is not the case.

76.  The effect of these declarations is seen in the Verified Petition dated 27 October 2021, ECF No. 3 which provides a selective description of Cayman Islands law and gives a misleading impression of the nature of the winding up of Ascentra and other windings up of that type:

   a.  The petition does not explain that Ascentra is solvent and that the procedures applicable to a solvent winding up apply, including the obligation to deal with creditor claims in the ordinary course rather than applying the rules that apply in an insolvency process. I note by way of illustration that the word "solvent" is not used in the petition.

   b.  The petition makes reference to legal provisions and procedural rules which apply in an insolvent compulsory liquidation without explaining that these rules do not apply to a solvent Court supervised winding up such as the the winding up of Ascentra. By way of example:

   i.  The petition refers at paragraph 29 to an obligation to report to creditors and contributories in s.110 of the Act. This gives the impression that the liquidators in a solvent Court supervised winding up are obliged to report to creditors. That is not true. As explained at paragraph 52 above, CWR O.10, r1(2)(b) provides that in such windings up the liquidator is only obliged to report to shareholders. The petition makes no reference to this provision.

22

ii. Paragraph 33 of the petition give the impression that creditors in all Cayman liquidations are treated on a *pari passu* basis. There is no reference to CWR O.16, r.1 and the fact that as matter of Cayman Islands law creditors in a winding up such as Ascentra's are to be treated and paid in the ordinary manner as if the company had continued to carry on business, as explained at paragraphs 56 to 63 above.

iii. Paragraph 34 states "Cayman liquidation proceedings are fair and equitable **insofar as all creditors have the opportunity to be heard by the Grand Court**" (emphasis added). This statement is misleading and the petition makes no reference to the provisions of the CWR which bar creditors from the participation in Court proceedings, as explained at paragraphs 53 to 55 above.

Date: June 30, 2023
Grand Cayman, Cayman Islands

Katharine Lucy Bladen Pearson
Partner/ Co-Founder, Claritas Legal Limited

23

**SPGK v Ascentra**

**Appendix 1 to Declaration of Katharine Lucy Bladen Pearson**

**Exhibits to this declaration**

1. CV of Katharine Lucy Bladen Pearson
2. Cayman Islands Constitution Order 2009
3. Derek French, Applications to Wind up Companies, 10-144
4. Companies Winding Up Rules
5. *Adamas Global Alternative Investment Management Inc*, Civil Appeals No 17 and 26 of 2019, judgment dated 8 November 2019
6. Insolvency Practitioners Regulations 2023
7. *In the Matter of Herald Fund SPC*, FSD 27 of 2013 (IKJ), judgment of Kawaley J dated 1 April 2021
8. *In Re Dynamics Corporation* [1976] 1 Ch 757
9. *Wight v Eckhardt* [2003 CILR 2011]
10. *In the matter of the SPhinX Group of Companies* [2010(1) CILR 234]
11. *In the matter of Consistent Return Limited* [2012(1) CILR 445]

**Documents Provided to Claritas Legal Limited In Relation To Expert Opinion**

**US proceedings**

Petition for Recognition dated 27 October 2021 (ECF 3)
Recognition Order dated 6 December 2021 (ECF 22)

Robinson Declaration (ECF 4) with exhibits
    A. Shareholder Resolution
    B. Petition for Court Supervision of a Voluntary Liquidation
    C. Supervision Order
    D. Memorandum of Understanding
    E. Cancellation agreement
    F. SPGK Summary Income Statement
    G. Rule 1007 Statement

Cowan Declaration (ECF 5) with exhibits
    A. Exhibit A
        a. Cayman Companies Act (2021 Revision) (excerpts)
        b. The Companies Law (2016 Revision)(As Amended) Insolvency Practitioners' Regulations 2018
        c. Companies Winding Up Rule 14
    B. *160088 Canada Incorporated v. Socoa International Limited* [1998] CILR 256 Judgment)

Johnstone Declaration with Exhibits
    1. Correspondence from Campbells to <u>Cayman Court</u>, dated 13 September 2021
    2. CWR Form No. 13, filed September 23, 2021
    3. Letter from JOLs to contributories dated 14 October 2021

4. CWR Form 15, filed 3 November 2021
5. Order of Singapore High Court dated 27 May 2022 and Singapore Decision, filed 3 April 2023
6. *In Re Sturgeon Central Asia Balanced Fund*, [2020] EWHC 123 (Ch)

Declaration of Jeffrey M Dine with Exhibits
1. *Cross-Border Insolvency: Guide to Enactment of the UNCITRAL Model Law on Cross-Border Insolvency* (1997)
2. *UNCITRAL Model Law on Cross-Border Insolvency with Guide to Enactment and Interpretation* (2013)
3. First Status Report, filed 30 June 2022
4. Second Status Report, filed 30 December 2022
5. March 2023 statement of BMO Harris Bank, N.A. for the SPGK Planet Payment Funds

### Other United States Materials

*In re Global Cord Blood Corp.,* No. 22-11347 (DSJ), 2022 Bankr. LEXIS 3426 (Bankr. S.D.N.Y. Dec. 5, 2022).
*In re Ashapura Minechem Ltd.,* No. 480 B.R. 129 (Bankr. S.D.N.Y. 2011).
*In re Betcorp Ltd.*, 400 B.R. 266 (Bankr. D. Nev. 2009).
Expert declarations in *In re Global Cord Blood*