**CAYMAN ISLANDS**



# COMPANIES ACT

**(2021 Revision)**

Supplement No. 8 published with Legislation Gazette No. 4 of 12th January, 2021.

EXHIBIT

2

| | |
|---|---|
| Law 10 of 1990-18th July, 1990 | Law 14 of 2012-31st August, 2012 |
| Law 3 of 1991-21st February, 1991 | Law 29 of 2012-19th November, 2012 |
| Law 23 of 1991-12th December, 1991 | Law 1 of 2013-10th January, 2013 |
| Law 11 of 1992-13th July, 1992 | Law 6 of 2013-15th March, 2013 |
| Law 3 of 1993-26th March, 1993 | Law 14 of 2015-12th August, 2015 |
| Law 23 of 1993-29th September, 1993 | Law 3 of 2016-6th May, 2016 |
| Law 33 of 1993-29th November, 1993 | Law 2 of 2017-27th February, 2017 |
| Law 2 of 1994-9th March, 1994 | Law 42 of 2017-16th November, 2017 |
| Law 8 of 1994-23rd September, 1994 | Law 37 of 2018-22nd November, 2018 |
| Law 14 of 1996-5th September, 1996 | Law 46 of 2018-17th December, 2018 |
| Law 26 of 1997-9th March, 1998 | Law 10 of 2019-26th July, 2019 |
| Law 4 of 1998-4th March, 1998 | Law 4 of 2020-31st January, 2020 |
| Law 6 of 1998-9th March, 1998 | Law 19 of 2020-20th May, 2020 |
| Law 20 of 1998-15th February, 1999 | Law 56 of 2020-7th December, 2020 |

Consolidated and revised this 31st day of December, 2020.

*Note (not forming part of this Act): This revision replaces the 2020 Revision which should now be discarded.*

**CAYMAN ISLANDS**



# COMPANIES ACT

## (2021 Revision)

## Arrangement of Sections

| Section | Page |
|---|---|

### PART I - Preliminary

1.   Short title ............................................................................................................17
2.   Definitions and interpretation.............................................................................17
3.   Registrar .............................................................................................................20
4.   Signature of Registrar.........................................................................................20

### PART II - Constitution and Incorporation of Companies and Associations - Memorandum of Association

5.    Mode of forming company ..................................................................................21
6.    Mode of limiting liability of members..................................................................21
7.    Memorandum of association ...............................................................................21
8.    Company limited by shares ................................................................................22
9.    Company limited by guarantee ...........................................................................23
10.   Memorandum of association may be altered.......................................................23
11.   Address of registered office may be changed .....................................................23
12.   Signature and effect of memorandum of association .........................................23
13.   Power of company limited by shares to alter its share capital.............................24
14.   Special resolution for reduction of share capital................................................25
15.   Application to court for confirming order, objections by creditors .....................26
16.   Order confirming reduction and powers of Court on making such order ...................27
17.   Registration of order and minute of reduction ...................................................27
18.   Liability of members in respect of reduced shares .............................................28
19.   Penalty for concealment of names of creditors ..................................................28



Companies Act (2021 Revision)          Arrangement of Sections

51.    Notice of situation of registered office ..................................................................54
52.    Publication of name by a limited company ...........................................................55
53.    Penalties on non-publication of name ..................................................................55
54.    Register of mortgages .........................................................................................55
55.    Filing deadline for updated list of directors etc. ..................................................56
55A.  Registrar to make list of directors available for inspection ..................................57
56.    Penalty for failing to notify of changes to the register of directors and officers ..........57
57.    Meetings ..............................................................................................................57
**Provisions for Protection of Members**      **58**
58.    General meetings .................................................................................................58
59.    Accounts and audits ............................................................................................58
60.    Definition of special resolution ............................................................................59
61.    Provisions where no regulations as to meetings ..................................................60
62.    Recording of special resolutions ..........................................................................60
63.    Copies of special resolutions ...............................................................................60
64.    Appointment of inspectors to report on affairs of companies ..............................60
65.    Powers of inspectors ...........................................................................................61
66.    Report of inspectors ............................................................................................61
67.    Inspection by resolution of the company ..............................................................61
68.    Inspectors' report admissible as evidence ...........................................................61
**Notices**      **61**
69.    Returns, etc., to Registrar ....................................................................................61
70.    Service of notices on company .............................................................................62
71.    Postal service ......................................................................................................62
72.    Authentication of summons, notice, etc. ..............................................................62
73.    Minutes of proceedings .......................................................................................62
74.    Security for costs in actions brought by limited companies ..................................62
75.    Declaration in action against members ................................................................63
**Arbitration**      **63**
76.    Power of companies to refer matters to arbitration ...............................................63
**General Penalty**      **63**
77.    General penalty; application of fines ....................................................................63
**Unlimited Liability of Directors and Managers**      **63**
78.    Unlimited liability of directors and managers .......................................................63
79.    Modification of section 49 ....................................................................................63
**Association not for Profit**      **64**
80.    Circumstances in which a company may be registered without "limited" in its name ..........64
80A.  Application for designation under section 80 ........................................................66
80B.  Obligations for companies designated under section 80 ......................................66
80C.  Examination by the Registrar ..............................................................................66
80D.  Exempt from Part XVIIA .....................................................................................67
80E.  Penalty for breach of section 80B ........................................................................67
**Contracts**      **68**
81.    Contracts and other instruments .........................................................................68
82.    Bills of exchange and promissory notes ...............................................................70
83.    Execution of deeds, etc., by attorney ...................................................................70
84.    Power of company to have official seal for use abroad ........................................70
85.    Authentication of documents ...............................................................................71
**Arrangements and Reconstructions**      **71**



Companies Act (2021 Revision)    Arrangement of Sections

125. Avoidance of share transfers ...........................................................................90
126. General meeting at year's end .........................................................................90
127. Final meeting prior to dissolution .....................................................................90
128. Effect of winding up on share capital of company limited by guarantee ...........91
129. Reference of questions to Court .......................................................................91
130. Expenses of voluntary winding up ....................................................................91
**Winding up subject to the supervision of the Court**                               **92**
131. Application for supervision order .......................................................................92
132. Appointment of official liquidator ......................................................................92
133. Effect of supervision order ...............................................................................92
**Offences of fraud, etc.**                                                          **93**
134. Fraud, etc. in anticipation of winding up ...........................................................93
135. Transactions in fraud of creditors ....................................................................93
136. Misconduct in course of winding up ..................................................................94
137. Material omissions from statement relating to company's affairs ......................95
**General provisions**                                                               **95**
138. Getting in the company's property ....................................................................95
139. Provable debts ................................................................................................95
140. Distribution of the company's property .............................................................95
141. Preferential debts ............................................................................................96
142. Secured creditors ............................................................................................96
143. Preferential charge on goods distrained ...........................................................97
144. Effect of execution or attachment .....................................................................97
145. Voidable preference .........................................................................................98
146. Avoidance of dispositions made at an undervalue ............................................98
147. Fraudulent trading ...........................................................................................99
148. Supply of utilities .............................................................................................99
149. Interest on debts ............................................................................................100
150. Currency of the liquidation .............................................................................100
**Dissolution of a Company**                                                        **100**
151. Dissolution following voluntary winding up ......................................................100
152. Dissolution following winding up by the Court .................................................101
153. Unclaimed dividends and undistributed assets ...............................................101
**Insolvency rules and regulations**                                                **101**
154. Insolvency Rules Committee ...........................................................................101
155. Powers of the Insolvency Rules Committee .....................................................102

## PART VI - Removal of Defunct Companies

156. Company not operating may be struck off register ...........................................103
157. Company being wound up may be struck off register for want of liquidator, etc. ....103
158. Registrar to publish fact of company being struck off register .........................103
159. Company, creditor or member may apply to court for company to be reinstated ....103
160. Liability of members of company to remain .....................................................104
161. Registrar not liable for any act performed under this Part ...............................104
162. Vesting of property .........................................................................................104



195.  Power of Registrar to prohibit sale ........................................................................ 116

## PART X - Application of Law to Companies Formed or Registered in the Islands

196.  Application to existing companies ......................................................................... 117
197.  Date of incorporation ........................................................................................... 117
198.  Articles of association remain ............................................................................... 117

## PART XI - General

199.  Fees in lieu of other provisions ............................................................................. 117
200.  Express fees ........................................................................................................ 118
200A. Certificate of good standing ................................................................................. 118

## PART XII - Transfer by Way of Continuation

201.  Application for continuation .................................................................................. 119
202.  Registration under this Part .................................................................................. 121
203.  Amendment, etc., of charter documents ............................................................... 123
204.  Effect of registration under this Part on companies registered under Part IX ......... 123
205.  Notice of registration, etc., to be given in Gazette ................................................. 124
206.  Deregistration of exempted companies including companies registered under this Part ........ 124
207.  Certification of deregistration, etc. ....................................................................... 125
208.  Application of Part IX to deregistered companies .................................................. 126
209.  Notice of deregistration, etc., to be given in the Gazette ....................................... 126

## PART XIII - Reregistration as a Means of an Ordinary Non-resident Company Becoming Exempted

210.  Ordinary non-resident company may be reregistered as exempted company ......................... 126
211.  Effect of reregistration of ordinary non-resident company as an exempted company ............. 127

## PART XIV - Segregated Portfolio Companies

212.  Definitions in this Part ......................................................................................... 128
213.  Applications for registration ................................................................................. 128
214.  Conversions of existing companies ....................................................................... 129
215.  Designation .......................................................................................................... 130
216.  Segregated portfolios ........................................................................................... 130
217.  Shares and dividends ........................................................................................... 131
218.  Company to act on behalf of portfolios .................................................................. 131
219.  Assets ................................................................................................................. 132
220.  Segregated portfolio assets .................................................................................. 133
221.  Segregation of liabilities ....................................................................................... 133
222.  General liabilities and assets ................................................................................ 134
223.  Winding-up of company ........................................................................................ 134
224.  Receivership orders ............................................................................................. 134
225.  Applications for receivership orders ...................................................................... 135
226.  Administration of receivership orders .................................................................... 136



Companies Act (2021 Revision)                                    Arrangement of Sections

256.  Consequences of failure to disclose beneficial ownership ........................................163
257.  Duty of other persons to update register ..................................................................164
258.  Removal of entries from company's beneficial ownership register ............................165
259.  Power of the Grand Court to rectify beneficial ownership register ............................165
**Access to Beneficial Ownership Information**                                                    **166**
260.  Duty of competent authority to establish search platform .........................................166
261.  Duty of Registrar and corporate services providers ..................................................166
262.  Limits on searches that may be executed ................................................................167
263.  Disclosure of beneficial ownership information by the Cayman Islands Monetary Authority ...168
264.  Non-disclosure of information concerning requests for beneficial ownership information........168
**Enforcement – Restrictions Notices**                                                            **168**
265.  Right to issue restrictions notice ..............................................................................168
266.  Effect of restrictions notice ......................................................................................169
267.  Protection of third party rights...................................................................................169
268.  Breach of restrictions an offence .............................................................................170
269.  Company issuing shares in breach of restriction.......................................................170
270.  Relaxation of restrictions ..........................................................................................170
271.  Orders for sale ..........................................................................................................171
272.  Proceeds of sale of relevant interest ........................................................................171
273.  Company may withdraw restrictions notice ...............................................................172
**Offences**                                                                                      **172**
274.  Failure of a company to establish or maintain beneficial ownership register ............172
275.  Failure to comply with notices ..................................................................................172
276.  Failure to provide information ....................................................................................173
277.  Unlawful search or disclosure of beneficial ownership information ...........................173
278.  Offences by officers and directors ............................................................................174
**Supplementary Provisions**                                                                      **174**
279.  Exemptions ................................................................................................................174
280.  Regulations ................................................................................................................175
281.  Transitional provisions................................................................................................176

## PART XVIII - Miscellaneous

282.  Amendment of schedules ...........................................................................................178
283.  Regulations.................................................................................................................178

**SCHEDULE 1**                                                                                    **179**
Table A                                                                                           179
**Regulations for Management of a Company Limited by Shares**                                     **179**
**Preliminary**.........................................................................................................179
**Shares** ...............................................................................................................179
Lien  180
**Calls on Shares** ..............................................................................................180
**Transfer and Transmission of Shares**.............................................................181
**Forfeiture of Shares** ........................................................................................182
**Alteration of Capital** ........................................................................................184
**General Meetings** ............................................................................................185
**Notice of General Meetings** ............................................................................185
**Proceedings at General Meetings** ..................................................................186



Companies Act (2021 Revision)                                    Arrangement of Sections

**ENDNOTES**                                                                **213**

Table of Legislation History: ............................................................................................................213



**CAYMAN ISLANDS**



# COMPANIES ACT

## (2021 Revision)

## PART I - Preliminary

**Short title**

**1.** This Act may be cited as the *Companies Act (2021 Revision)*.

**Definitions and interpretation**

**2.** (1) In this Act —

"**Authority**" means the Cayman Islands Monetary Authority established under section 5(1) of the *Monetary Authority Act (2020 Revision)* and includes a person acting under the Authority's authorisation;

"**bearer share**" means a share in the capital of any company incorporated in the Islands which —

(a) is represented by a certificate that does not record the owner's name; and

(b) is transferable by delivery of the certificate;

"**Cayman Islands exempted limited partnership**" means an exempted limited partnership registered in accordance with section 9 of the *Exempted Limited Partnership Act (2021 Revision)*;

"**Cayman Islands Stock Exchange**" means the Cayman Islands Stock Exchange Company incorporated under section 4 of the *Stock Exchange Company Act (2014 Revision)*;



"**Judge**" means a Judge of the Grand Court;

"**name**", when relating to the name of a company, means a name in the Roman alphabet or Arabic numerals;

"**non-resident company**" bears the meaning ascribed to that term in section 2(1) of the *Local Companies (Control) Act (2019 Revision)*;

"**officer**" in relation to a company, includes a manager or secretary;

"**overseas company**" means a company, body corporate or corporate entity existing under the laws of a jurisdiction outside the Islands;

"**public notice**" means a public notice (whether in digital form or not) affixed by the Registrar at such place as may be determined, from time to time, by the Registrar;

"**Registrar**" means the Registrar of Companies appointed under section 3 and includes, where appropriate, the Deputy Registrar of Companies;

"**regulated business**" means a business which is required to be licensed under one or other of the regulatory laws;

"**regulatory laws**" means any one or more of the following —

(a)    *Banks and Trust Company Act (2021 Revision)*;

(b)    *Building Societies Act (2020 Revision)*;

(c)    *Companies Management Act (2021 Revision)*;

(d)    *Cooperative Societies Act (2020 Revision)*;

(e)    *Insurance Act, 2010* [*Law 32 of 2010*];

(f)    *Money Services Act (2020 Revision)*;

(g)    *Mutual Funds Act (2021 Revision)*;

(h)    *Securities Investment Business Act (2020 Revision)*;

(i)    *Development Bank Act (2018 Revision)*;

(j)    *Directors Registration and Licensing Act, 2014*; and

(k)    *Private Funds Act (2021 Revision)*,

and any other laws that may be prescribed by the Cabinet by regulations made under section 46 of the *Monetary Authority Act (2020 Revision)*;

"**special resolution**" means a special resolution as defined in section 60;

"**special economic zone business**" means any type of business authorised to be carried on in a special economic zone pursuant to any Law in force in the Islands;

"**special economic zone company**" means an exempted company that is registered as such under section 182A;

"**translated name**" means a translation or transliteration of an exempted company's dual foreign name into the English language provided by either a



"**signature**" includes a facsimile of a signature however reproduced and a digital signature.

# PART II - Constitution and Incorporation of Companies and Associations - Memorandum of Association

## Mode of forming company

**5.**    Any one or more persons associated for any lawful purpose may, by subscribing their names to a memorandum of association, and otherwise complying with this Act in respect of registration, form an incorporated company, with or without limited liability.

## Mode of limiting liability of members

**6.**    The liability of the members of a company formed under this Act may, according to the memorandum of association, be limited either to the amount, if any, unpaid on the shares respectively held by them, or to such amount as the members may respectively undertake by the memorandum of association to contribute to the assets of the company in the event of its being wound up.

## Memorandum of association

**7.**    (1)    The memorandum of association shall, subject to subsections (2), (3) and (4) and to sections 8 and 9, contain —

   (a)    the name of the proposed company which in the case of an exempted company, may be preceded by or followed with a dual foreign name, with the addition, in the case of any company not being an exempted company or a company formed on the principle of having no limit placed on the liability of its members, in this Act referred to as an "unlimited company", of the word "Limited" or the abbreviation "Ltd." as the last word in such name; and

   (b)    the part of the Islands in which the registered office of the company is proposed to be situate.

   (2)    No subscriber shall take less than one share.

   (3)    Each subscriber of the memorandum of association shall write opposite to that suscriber's name the number of shares that person takes.

   (4)    The memorandum of association may specify objects for which the proposed company is to be established and may provide that the business of the company shall be restricted to the furtherance of the specified objects. If no objects are specified or if objects are specified but the business of the company is not restricted to the furtherance of those objects, then the company shall have full



### Company limited by guarantee

**9.**　(1)　Subject to subsection (2), where a company is formed on the principle of having the liability of its members limited to such amount as the members respectively undertake to contribute to the assets of the company in the event of the same being wound up, (in this Act referred to as a company limited by guarantee), the memorandum of association shall also contain a declaration that each member undertakes to contribute to the assets of the company, in the event of the same being wound up during the time that that person is a member, or within one year afterwards, for payment of the debts and liabilities of the company contracted before the time at which that person ceases to be a member, and of the costs, charges and expenses of the winding up of the company, and for the adjustment of the rights of the contributories amongst themselves, such amount as may be required, not exceeding a specific amount to be therein named.

　　(2)　Where such a company has more than one class of member, the memorandum of association may contain a declaration that in a winding up of the company the amount of the undertaking of the members of a particular class shall be unlimited.

　　(3)　A company limited by guarantee may have a share capital.

### Memorandum of association may be altered

**10.**　Subject to section 13, a company may, by special resolution, alter its memorandum of association with respect to any objects, powers or other matters specified therein.

### Address of registered office may be changed

**11.**　(1)　A company may, by resolution of the directors, change the address of the registered office of the company to another address in the Islands, and shall, within thirty days from the date on which the resolution is made, file with the Registrar a certified copy of the resolution of the directors authorising the change together with the prescribed amendment fee.

　　(2)　Until subsection (1) is complied with, the company shall not be deemed to have complied with this Act with respect to having a registered office.

### Signature and effect of memorandum of association

**12.**　The memorandum of association shall be signed by each subscriber in the presence of and be attested by at least one witness. It shall, when registered, bind the company and the members thereof to the same extent as if each member had subscribed that person's name and affixed that person's seal thereto and there were in the memorandum contained on the part of that person, that person's heirs, executors and administrators, a covenant to observe all the conditions of such memorandum, subject to this Act, and all monies payable by any member to the company under such memorandum shall be deemed to be a debt due from such member to the company.



Companies Act (2021 Revision)                                                    Section 14

  (b) notwithstanding the requirement for a special resolution in section 31, if the name of the company includes a reference to a currency replaced by the euro, or an abbreviation thereof —

    (i) alter the name of the company to delete the reference or to substitute the reference with a reference to the euro or an abbreviation thereof; and

    (ii) add such further distinguishing wording as the directors consider appropriate; and

  (c) if the memorandum of association or articles of association of the company include a reference or references to a currency replaced by the euro, alter any or all such references in either or both of the memorandum of association and the articles of association by substituting such references with references to the euro or an abbreviation thereof.

 (4) A company may, by resolution of the directors, reverse or vary the re-denomination of currency or any other action taken under subsection (3).

 (5) A copy of any resolution passed under subsection (3) or (4) shall be forwarded to the Registrar within fifteen days and shall be recorded by that person.

 (6) A cancellation of shares or a rounding down of the nominal or par value of shares under this section shall not be deemed to be a reduction of share capital within the meaning of this Act.

 (7) If any action is taken by the company under paragraph (a) of subsection (3) to —

  (a) round up the euro nominal or par value of any issued share in the company, then an amount equal to the increase in nominal or par value of that share shall be transferred from the share premium account or from the profit and loss account (as the directors shall, in their discretion, determine) and shall thereafter be deemed to be and treated as paid up share capital of the company; or

  (b) round down the euro nominal or par value of any issued share in the company, then an amount equal to the decrease in the nominal or par value of that share shall be transferred from the paid up share capital of the company to the share premium account and shall thereafter be deemed to be and treated as share premium for the purposes of this Act.

**Special resolution for reduction of share capital**

**14**. (1) Subject to section 37 and to confirmation by the Court, a company limited by shares or a company limited by guarantee and having a share capital may, if so authorised by its articles, by special resolution reduce its share capital in any way, and in particular (but without prejudice to the generality of the foregoing power) may —



(ii)   if the company does not admit and is not willing to provide for the full amount of the debt or claim, or, if the amount is contingent or not ascertained, then an amount fixed by the Court after the like enquiry and adjudication as if the company were being wound up by the Court.

(3)   Where a proposed reduction of share capital involves either the diminution of any liability in respect of unpaid share capital or the payment to any shareholder of any paid-up share capital the Court may, if having regard to any special circumstances of the case it thinks proper so to do, direct that subsection (2) shall not apply as regards any class or any classes of creditors.

### Order confirming reduction and powers of Court on making such order

**16.**  (1)   The Court, if satisfied with respect to every creditor of the company who under section 15 is entitled to object to the reduction, that either that person's consent to the reduction has been obtained or that person's debt or claim has been discharged or has determined, or has been secured, may make an order confirming the reduction on such terms and conditions as it thinks fit.

(2)   Where the Court makes any such order, it may —

(a)   if for any special reason it thinks proper so to do, direct that the company shall, during such period, commencing on or at any time after the date of the order, as is specified in the order, add to its name as the last word thereof the words "and reduced"; and

(b)   require the company to publish as the Court directs the reasons for reduction or such other information in regard thereto as the Court may think expedient with a view to giving proper information to the public, and, if the court thinks fit, the causes which led to the reduction.

(3)   Where a company is ordered to add to its name the words "and reduced", those words shall, until the expiration of the period specified in the order, be deemed to be part of the name of the company.

### Registration of order and minute of reduction

**17.**  (1)   The Registrar, on delivery to that person of a copy of an order of the Court confirming the reduction of the share capital of a company, and of a minute approved by the Court, showing, with respect to the share capital of the company as altered by the order, the amount of the share capital, the number of shares into which it is to be divided and the amount of each share, and the amount, if any, at the date of the registration of the order and minute deemed to be paid up on each share, shall register the order and minute.

(2)   On the registration of the order and minute, and not earlier, the resolution for reducing share capital as confirmed by the order so registered shall take effect.



Companies Act (2021 Revision)                                                          Section 20

    (b)  wilfully misrepresents the nature or amount of the debt or claim of any creditor; or

    (c)  aids, abets or is privy to any such concealment or misrepresentation as aforesaid,

commits an offence and is liable on summary conviction to a fine of five thousand dollars or to imprisonment for a term of one year, or to both.

### Articles prescribing regulations for companies

**20.**  There may, in the case of a company limited by shares, and there shall, in the case of a company limited by guarantee or unlimited, be registered with the memorandum, articles of association signed by the subscribers to the memorandum and prescribing regulations for the company.

### Regulations required in case of unlimited company or company limited by guarantee

**21.**  (1)  In the case of an unlimited company the articles must state the number of members with which the company proposes to be registered and, if the company has a share capital, the amount of share capital with which the company proposes to be registered.

    (2)  In the case of a company limited by guarantee, the articles must state the number of members with which the company proposes to be registered.

### Adoption and application of Table A in Schedule 1

**22.**  (1)  Articles of association may adopt all or any of the regulations contained in Table A in Schedule 1.

    (2)  In the case of a company limited by shares and registered after the 1st December, 1961, if articles are not registered or, if articles are registered, insofar as the articles do not exclude or modify the regulations contained in Table A in Schedule 1, those regulations shall, so far as applicable, be the regulations of the company in the same manner and to the same extent as if they were contained in duly registered articles.

### Printing, stamping and signature of articles

**23.**  Articles shall —

    (a)  be divided into paragraphs numbered consecutively;

    (b)  bear the same stamp as if they were contained in a deed; and

    (c)  save as otherwise provided in section 25(2), be signed by each subscriber of the memorandum of association or each existing member, as the case may be, in the presence of at least one witness who shall attest the signature, and that attestation shall be sufficient.



memorandum of association and articles of association, if any, insofar as they
are not included therein.

(3A) The Registrar shall make the register under subsection (3) available for
inspection by any person on payment of the fee specified in Part 1A of Schedule
5 and the inspection shall be subject to such conditions as the Registrar may
impose.

(3B) The Cabinet may amend Schedule 1A by Order.

(4) Upon the filing of a memorandum of association under this section, there shall
be paid to the Registrar the fees specified in Part 1 of Schedule 5.

### Registrar to provide information

**26A.**(1)  The Registrar shall, upon request in writing by an entity under subsection (2),
provide any information required to discharge any function or exercise any
power, under the following Acts —

    (a)  the *Anti-Corruption Act (2019 Revision);*

    (b)  the *Monetary Authority Act (2020 Revision)*;

    (c)  the *Proceeds of Crime Act (2020 Revision);*

    (d)  the *Tax Information Authority Act (2021 Revision);*

(2)  For the purposes of subsection (1), the following entities may request
information from the Registrar —

    (a)  the Anti-Corruption Commission established under section 3 of *the Anti-
Corruption Act (2019 Revision)*;

    (b)  the Authority;

    (c)  the Financial Crimes Unit of the Royal Cayman Islands Police Service;

    (d)  the Financial Reporting Authority, as defined under section 2 of the
*Proceeds of Crime Act (2020 Revision);*

    (e)  the Tax Information Authority, designated under section 4 of the *Tax
Information Authority Act (2021 Revision)*; or

    (f)  a competent authority as defined under section 2(1) of the *Proceeds of
Crime Act (2020 Revision)*, which is assigned responsibility for monitoring
compliance with the anti-money laundering regulations under section 4(9)
of the *Proceeds of Crime Act (2020 Revision)*.

(3)  Where a request for information is made under subsection (1), the information
shall be provided within forty-eight hours of receipt of the request.

(4)  The recipient of any information provided by the Registrar under this section
shall —

    (a)  use the information for the purpose for which it was provided;



officers or directors of the company for loss or damage through their unauthorised act.

(2)  This section applies to companies incorporated before, on or after the 18th day of January, 1988.

### Copies of memorandum and articles to be given to members

**29.**  A copy of the memorandum of association having annexed thereto the articles of association, if any, shall be forwarded to every member, at that person's request, on payment of such reasonable sum, not exceeding one dollar for each copy as may be fixed by any rule of the company, and in the absence of any such rule, such copy shall be given gratuitously; and whichever company makes default in forwarding a copy of the memorandum of association and articles of association, if any, to a member in pursuance of this section, commits an offence and is liable, for each default, to a penalty of two dollars.

### Restrictions on registration of certain names

**30.**  (1)  No company shall be registered by a name which —

  (a)  is identical with a name by which a company in existence is already registered or any translated name entered on the register of companies, or so nearly resembles such name or translated name so as to be calculated to deceive, except where the company in existence is in the course of being dissolved and signified its consent in such manner as the Registrar requires;

  (b)  contains the words "Chamber of Commerce" unless the company is a company which is to be registered under a licence granted by the Governor under section 80 without the addition of the word "Limited" or the abbreviation "Ltd." to its name; or

  (c)  contains the words "building society".

  (2)  Except with the consent of the Registrar, no company shall be registered by a name which —

  (a)  contains the words "royal", "imperial" or "empire" or in the opinion of the Registrar suggests, or is calculated to suggest the patronage of Her Majesty or of any member of the Royal Family or connection with Her Majesty's Government or any department thereof in the United Kingdom or elsewhere;

  (b)  contains the words "municipal" or "chartered" or any words which in the opinion of the Registrar suggest, or are calculated to suggest, connection with any public board or other local authority or with any society or body incorporated by Royal Charter;

  (c)  contains the words "co-operative", "assurance", "bank", "insurance", or any similar word which in the opinion of the Registrar connotes any of



(3) If, through inadvertence or otherwise, a company on its first registration or on its registration by a new name or new translated name is registered by a name or a translated name which in any way contravenes section 30 or which, in the opinion of the Registrar, is misleading or undesirable, then the company may, with the sanction of the Registrar, change its name or its translated name as the case may be and shall, if the Registrar so directs, change its name or translated name within six weeks of the date of such direction or within such longer period as the Registrar may think fit.

(4) A company which defaults in complying with a direction under subsection (3) is liable to a fine of ten dollars for every day during which the default continues.

## Company with power to issue bearer shares not to hold land in the Islands

**32.** (1) A company which is empowered by any law or by its articles of association to issue bearer shares, certificates or coupons, has no power to hold land in the Islands:

Provided that the Minister charged with responsibility for Financial Services may, at that person's discretion, in the case of an exempt company so empowered that has never issued bearer shares, certificates or coupons, exempt that company in writing from subsection (1) for as long as it does not issue bearer shares, certificates or coupons.

(2) If a company is in breach of subsection (1), section 185(2), (3) and (4) shall apply, *mutatis mutandis*, to the company as if it were a foreign company which had failed to comply with Part IX.

(3) In this section —

"**hold land**" means to be the proprietor of a legal or beneficial interest in or claim to, or over immovable property whether freehold or leasehold and includes being the proprietor of a legal or beneficial interest in the equity capital of a company which holds land; and

"**equity capital**" with respect to a company includes shares, stock and scrip whether registered, inscribed or bearer which (other than by way of a fixed and predetermined right to interest and repayment of subscribed capital at par) entitles the owner to any variable right of participation in the profits of the company whether by way of dividend, bonus or conversion, or to share in the distribution of the assets of the company upon a winding up.



**Share premium account**

**34.** (1) Where a company issues shares at a premium, whether for cash or otherwise, a sum equal to the aggregate amount of the value of the premiums on those shares shall be transferred to an account called "the share premium account". Where a company issues shares without nominal or par value, the consideration received shall be paid up share capital of the company.

(2) The share premium account may be applied by the company subject to the provisions, if any, of its memorandum or articles of association in such manner as the company may, from time to time, determine including, but without limitation —

(a) paying distributions or dividends to members;

(b) paying up unissued shares of the company to be issued to members as fully paid bonus shares;

(c) any manner provided in section 37;

(d) writing off the preliminary expenses of the company; and

(e) writing off the expenses of, or the commission paid or discount allowed on, any issue of shares or debentures of the company.

Provided that no distribution or dividend may be paid to members out of the share premium account unless, immediately following the date on which the distribution or dividend is proposed to be paid, the company shall be able to pay its debts as they fall due in the ordinary course of business; and the company and any director or manager thereof who knowingly and wilfully authorises or permits any distribution or dividend to be paid in contravention of the foregoing provision commits an offence and is liable on summary conviction to a fine of fifteen thousand dollars and to imprisonment for five years.

(3) Where a company had, before the 18th day of January, 1988, issued any shares at a premium, this section shall apply as if the shares had been issued after such date.

(4) At the option of the company, subsection (1) shall not apply to premiums on shares of a company allotted in pursuance of any arrangement in consideration for the acquisition or cancellation of shares in any other company, whether a company within the meaning of this Act or not, and issued at a premium.

(5) At the option of the company, an amount corresponding to any amount representing the premiums or part of the premiums on shares issued by a company which, by virtue of subsection (4), is not included in such company's share premium account may also be disregarded in determining the amount at which any shares or other consideration provided for the shares issued is to be included in such company's balance sheet.

(6) For the purposes of subsection (4) —



Companies Act (2021 Revision)                                                                 Section 37

(2)    Nothing in subsection (1) affects the power of a company to pay such brokerage as has previously been lawful.

(3)    A vendor to, or promoter of, or other person who receives payment in money or shares from a company has, and is deemed always to have had, power to apply any part of the money or shares so received in payment of any commission, the payment of which, if made directly by the company, would have been lawful under subsection (1).

**Redemption and purchase of shares**

37.  (1)    Subject to this section, a company limited by shares or limited by guarantee and having a share capital may, if authorised to do so by its articles of association, issue shares which are to be redeemed or are liable to be redeemed at the option of the company or the shareholder and, for the avoidance of doubt, it shall be lawful for the rights attaching to any shares to be varied, subject to the provisions of the company's articles of association, so as to provide that such shares are to be or are liable to be so redeemed.

(2)    Subject to this section, a company limited by shares or limited by guarantee and having a share capital may, if authorised to do so by its articles of association, purchase its own shares, including any redeemable shares.

(3)  (a)    No share may be redeemed or purchased unless it is fully paid.

(b)    A company may not redeem or purchase any of its shares if, as a result of the redemption or purchase, there would no longer be any issued shares of the company other than shares held as treasury shares.

(c)    Redemption or purchase of shares may be effected in such manner and upon such terms as may be authorised by or pursuant to the company's articles of association.

(d)    If the articles of association do not authorise the manner and terms of the purchase, a company shall not purchase any of its own shares unless the manner and terms of purchase have first been authorised by a resolution of the company.

(da)  For the avoidance of doubt —

(i)    a company's articles of association; or

(ii)    a resolution of the company,

may authorise the company's directors to determine the manner or any of the terms of, any such redemption or purchase not being inconsistent with such articles of association or resolution and subject to such restrictions (if any) as may be provided therein.

(e)    The premium, if any, payable on redemption or purchase must have been provided for —

    Revised as at 31st December, 2020                                              Page 39

of the company, except that the reserve may be applied by the company in paying up its unissued shares to be allotted to members of the company as fully paid bonus shares.

(5) (a) Subject to this section, a company limited by shares or limited by guarantee and having a share capital may, if so authorised by its articles of association, make a payment in respect of the redemption or purchase of its own shares otherwise than out of its profits, share premium account, or the proceeds of a fresh issue of shares.

(b) References in subsections (6) to (9) to payment out of capital are, subject to paragraph (f), references to any payment so made, whether or not it would be regarded apart from this subsection as a payment out of capital.

(c) The amount of any payment which may be made by a company out of capital in respect of the redemption or purchase of its own shares is such an amount as, taken together with —

(i) any profits and share premium of the company being applied for purposes of the redemption or purchase; and

(ii) the proceeds of any fresh issue of shares made for the purpose of the redemption or purchase, is equal to the price of redemption or purchase, and the payment out of capital permitted under this paragraph is referred to in subsections (6) to (9) as the capital payment for the shares.

Nothing in this paragraph shall be taken to imply that a company shall be obliged to exhaust any profits and share premium before making any capital payment.

(d) Subject to paragraph (f), if the capital payment for shares redeemed or purchased and cancelled is less than their nominal amount, the amount of the difference shall be transferred to the company's capital redemption reserve.

(e) Subject to paragraph (f), if the capital payment is greater than the nominal amount of the shares redeemed or purchased the amount of any capital redemption reserve or fully paid share capital of the company may be reduced by a sum not exceeding, or by sums not in the aggregate exceeding, the amount by which the capital payment exceeds the nominal amount of the shares.

(f) Where the proceeds of a fresh issue are applied by a company in making any redemption or purchase of its own shares in addition to a payment out of capital under this subsection, the references in paragraphs (d) and (e) to the capital payment are to be read as referring to the aggregate of that payment and those proceeds.

(6) (a) A payment out of capital by a company for the redemption or purchase of



articles of association of any company or any other instrument to a company's capital redemption reserve fund is to be construed as a reference to the company's capital redemption reserve.

(9) This section shall apply to shares without nominal or par value, and shall, in relation to such shares, be read and construed as if —

    (a) in subsection (3) —

        (i) for the words "the nominal value of" appearing in paragraph (g), there were substituted the words "an amount equal to the consideration received for"; and

        (ii) for the words "nominal value" appearing in paragraph (h), there was substituted the word "number";

    (b) in subsection (4) for the words "aggregate nominal value of" appearing in paragraph (b), there were substituted the words "aggregate consideration received for"; and

    (c) in subsection (5) —

        (i) for the words "their nominal amount" appearing in paragraph (d), there were substituted the words "the consideration received for such shares"; and

        (ii) for the words "nominal amount of" appearing in paragraph (e), there were substituted the words "consideration received for".

### Treasury shares

**37A.**(1) Shares that have been purchased or redeemed by a company or surrendered to the company pursuant to sections 37 or 37B shall not be treated as cancelled pursuant to sections 37(3)(g) or 37B(2) but shall be classified as treasury shares and sections 37(4), 37(5)(d) and 37B(2) shall not apply to such shares at the time of such purchase, redemption or surrender, if —

    (a) the memorandum and articles of association of the company do not prohibit it from holding treasury shares;

    (b) the relevant provisions of the memorandum and articles of association (if any) are complied with; and

    (c) the company is authorised in accordance with the company's articles of association or by a resolution of the directors to hold such shares in the name of the company as treasury shares prior to the purchase, redemption or surrender of such shares.

(2) Shares held by a company pursuant to subsection (1) shall continue to be classified as treasury shares until such shares are either cancelled or transferred pursuant to subsection (3).

(3) A company that holds treasury shares may at any time —



(6) Notwithstanding subsection (7)(b), a treasury share may be transferred by the company and the provisions of this Act and (subject to any specific provisions with respect to the transfer of treasury shares) the memorandum and articles that apply to the transfer of shares shall apply to the transfer of treasury shares.

(7) For so long as a company holds treasury shares —

    (a) the company shall be entered in the register of members as holding those shares;

    (b) notwithstanding paragraph (a) —

        (i) the company shall not be treated as a member for any purpose and shall not exercise any right in respect of the treasury shares, and any purported exercise of such a right shall be void; and

        (ii) a treasury share shall not be voted, directly or indirectly, at any meeting of the company and shall not be counted issued shares at any given time, whether for the purposes of the company's articles of association or this Act; and

    (c) no dividend may be declared or paid, and no other distribution (whether in cash or otherwise) of the company's assets (including any distribution of assets to members on a winding up) may be made to the company, in respect of a treasury share.

(8) Nothing in subsection (7) prevents an allotment of shares as fully paid bonus shares in respect of a treasury share and shares allotted as fully paid bonus shares in respect of a treasury share shall be treated as treasury shares.

**Surrender of shares**

**37B.**(1) Subject to any express provisions of the company's memorandum or articles of association to the contrary, a company may accept the surrender for no consideration of any fully paid share (including a redeemable share) unless, as a result of the surrender, there would no longer be any issued shares of the company other than shares held as treasury shares.

(2) Subject to section 37A, any shares surrendered under subsection (1) shall be treated as cancelled on surrender, and the amount of the company's issued share capital shall be diminished by the nominal value of those shares accordingly; but the surrender of shares by a member is not to be taken as reducing the amount of the company's authorised share capital.

(3) This section is without prejudice to any right or power of a company arising under this Act or otherwise to accept the surrender of a share (not being a fully paid share) in lieu of forfeiture.



share capital, on members, to vote at general meetings of the entity on all or substantially all matters; and

(b)   in relation to a legal entity that does not have general meetings at which matters are decided by the exercise of voting rights, the rights conferred upon shareholders or members, as applicable, that are equivalent to those of a person entitled to exercise voting rights in a company.

(4)   A voting right is conditional where the voting right arises only in certain circumstances.

### Branch registers of members

**40A.** (1)   An exempted company may cause to be kept in any country or territory one or more branch registers of such category or categories of members as the exempted company may determine from time to time.

(2)   A branch register is deemed to be part of the exempted company's register of members.

(3)   Subject to subsection (6), a branch register shall be kept in the same manner in which a principal register is by this Act required or permitted to be kept.

(4)   The exempted company shall cause to be kept at the place where the exempted company's principal register is kept a duplicate of any branch register duly entered up from time to time.

(5)   If default is made in complying with subsection (4) within twenty-one days after —

(a)   establishing a branch register; or

(b)   making changes to the details recorded in a branch register,

the exempted company and every officer of the exempted company who is in default is liable to a penalty of five thousand dollars; and every director or manager of the company who knowingly and wilfully authorises or permits such default shall incur the like penalty.

(6)   Subject to subsection (4) with respect to a duplicate of any branch register —

(a)   the shares registered in a branch register shall be distinguished from those registered in the principal register; and

(b)   no transaction with respect to any shares registered in a branch register shall, during the continuance of that registration, be registered in any other register.

(7)   An exempted company may discontinue keeping any branch register, and thereupon all entries in that branch register shall be transferred to some other branch register kept by the exempted company or to the principal register.



"**listed shares register**" means the register of members required to be maintained by a company in respect of its listed shares pursuant to subsection (3); and

"**non-listed shares register**" means the register of members maintained by a company pursuant to subsection (5).

(8)  For the purpose of this section —

    (a)  references to title to shares include any legal or equitable interest in shares; and

    (b)  references to a transfer of title include a transfer by way of security.

### Annual list of members and return of capital, shares, calls, etc.

**41.** (1)  Every company, other than an exempted company that does not hold a licence to carry on business in the Islands to which section 174 refers, having a capital divided into shares shall make a list of all persons who, on the fourteenth day following the date on which the ordinary general meeting, or if there is more than one ordinary general meeting in each year, the first of such ordinary general meetings, is held, are members of the company; and such lists shall state the names and addresses of all the members therein mentioned, and the number of shares held by each of them, and shall contain a summary specifying the —

    (a)  amount of the capital of the company and the number of shares into which it is divided;

    (b)  number of shares taken from the commencement of the company up to the date of the summary;

    (c)  amount of calls made on each share;

    (d)  total amount of calls received:

    (e)  total amount of calls unpaid;

    (f)  total number of shares forfeited;

    (g)  names and addresses of the persons who have ceased to be members since the last list was made, and the number of shares held by each of them; and

    (h)  names and addresses of directors and officers of the company and the position or office that they hold,

and this list and summary shall be contained in a separate part of the register of the company and shall be completed within seven days after such fourteenth day as is mentioned in this section, and a copy shall be forwarded to the Registrar in January of each year after the year of its incorporation.

(2)  Every company, other than an exempted company, shall, in January of each year after the year of its registration, pay to the Registrar the annual fee specified in Part 2 of Schedule 5.



**Inspection of register**

44.  (1)  The register of members, commencing from the date of the registration of the company, shall be kept at the registered office of the company or, in the case of an exempted company, at any other place within or outside the Islands except that, in the case of an exempted company that holds a licence to carry on business in the Islands under any applicable law, the register of members shall be kept at its registered office within the Islands.

(2)  Except in the case of an exempted company that does not hold a licence to carry on business in the Islands under any applicable law and when closed as hereinafter provided the register of members shall, during business hours, subject to such reasonable restrictions as the company in general meeting may impose, so that no less than two hours in each day be appointed for inspection, be open to the inspection of any member *gratis* and to the inspection of any other person on payment of ten dollars or such less sum as the company may specify for each inspection; and every such member or other person may receive a copy of such register or any part thereof, or of such list or summary of members, on payment of one dollar for every page required to be copied.

(3)  If such inspection or copy is refused, the company shall incur for each refusal a penalty of five hundred dollars; and every director and manager of the company who knowingly authorises or permits such refusal shall incur the like penalty; and in addition to the above penalty, a Judge sitting in chambers may, by order, compel an immediate inspection of the register.

(4)  A company, including an exempted company, shall make available at the registered office, in electronic form or any other medium, such register, including any branch register in the case of an exempted company, as may be required of it upon service of an order or notice by the Tax Information Authority pursuant to the *Tax Information Authority Act (2021 Revision)*; and if the company fails to comply with the order or notice without reasonable excuse, the company shall incur a penalty of five hundred dollars and a further penalty of one hundred dollars for every day during which such non-compliance continues.



### Notice to Registrar of rectification of register

**47.**   Whenever any order has been made rectifying the register, in the case of a company required by this Act to send a list of its members to the Registrar, the Court shall, by its order, direct that due notice of such rectification be given to the Registrar.

### Register to be evidence

**48.**   The register of members shall be *prima facie* evidence of any matters by this Act directed or authorised to be inserted therein.

## Liability of Members

### Liability of present and past members of company

**49.**   In the event of a company being wound up every present and past member of such company shall be liable to contribute to the assets of the company to an amount sufficient for payment of the debts and liabilities of the company, and the costs, charges and expenses of the winding up and for the payment of such sums as may be required for the adjustment of the rights of the contributories amongst themselves:

Provided that —

   (a)   a past member shall not be liable to contribute to the assets of the company if that person has ceased to be a member for a period of one year or upwards prior to the commencement of the winding up;

   (b)   a past member shall not be liable to contribute in respect of any debt or liability of the company contracted after the time at which that person ceased to be a member;

   (c)   a past member shall not be liable to contribute to the assets of the company unless it appears to the Court that the existing members are unable to satisfy the contributions required to be made by them under this Act;

   (d)   in case of a company limited by shares, no contribution shall be required from any member exceeding the amount, if any, unpaid on the shares in respect of which that person is liable as a present or past member except where such member or past member holds or held shares of a class which are expressly stated in the memorandum of association to carry unlimited liability, as provided in section 8(2);

   (e)   in the case of a company limited by guarantee, no contribution shall be required from any member exceeding the amount of the undertaking entered into on that person's behalf by the memorandum of association, except where the amount of the undertaking of such member is unlimited, as provided in section 9(2);

   (f)   nothing in this Act shall invalidate any provisions contained in any policy of insurance or other contract whereby the liability of individual members



### Publication of name by a limited company

**52.** Every company, whether limited by shares or by guarantee, shall paint or affix, and shall keep painted or affixed, its name on the outside of every office or place in which the business of the company is carried on, or in any corridor, passage or hallway adjacent or proximate thereto, in a conspicuous position, in letters easily legible, and shall have its name in legible characters on any seal it uses, and shall have its name set out in legible characters in all notices, advertisements and other official publications of such company, and in all bills of exchange, promissory notes, endorsements, cheques and orders for money or goods purporting to be signed by or on behalf of such company, and in all bills of parcels, invoices, receipts and letters of credit of the company and its name may be followed with or preceded by, at the discretion of the company, its dual foreign name or its translated name, if any, or both.

### Penalties on non-publication of name

**53.** Any company which does not paint or affix, and keep painted or affixed, its name in manner directed by this Act is liable to a penalty of ten dollars for not so painting or affixing its name, and for every day during which such name is not so kept painted or affixed, and every director and manager of the company who knowingly and wilfully authorises or permits such default shall be liable to the like penalty; and any director, manager or officer of such company, or any person on its behalf, who uses or authorises the use of any seal purporting to be a seal of the company, whereon its name is not so engraven as aforesaid, or issues or authorises the issue of any notice, advertisement or other official publication of such company, or signs or authorises to be signed on behalf of such company any bills of exchange, promissory note, endorsement, cheque or order for money or goods, or issues or authorises to be issued any bill of parcels, invoice, receipt or letter of credit of the company, wherein its name is not set out in the manner aforesaid, is liable to a penalty of one hundred dollars, and shall further be personally liable to the holder of any such bill of exchange, promissory note, cheque, or order for money or goods for the amount thereof, unless the same is duly paid by the company.

### Register of mortgages

**54.** (1) Every limited company shall keep at its registered office in writing on one or more sheets, whether bound or unbound, a register of all mortgages and charges specifically affecting property of the company, and shall enter in such register in respect of each mortgage or charge a short description of the property mortgaged or charged, the amount of charge created and the names of the mortgagees or persons entitled to such charge.

(2) If any property of the company is mortgaged or charged without such entry as aforesaid being made, every director, manager or other officer of the company who knowingly and wilfully authorises or permits the omission of such entry, shall incur a penalty of one hundred dollars.



### Registrar to make list of directors available for inspection

**55A.**(1)   The Registrar shall maintain a list of the names of the current directors, and where applicable, the current alternate directors of a company.

(2)   The Registrar shall make available, the list of the names of the current directors of a company and where applicable, the current alternate directors of a company under subsection (1), for inspection by any person, on payment of the fee specified in Part 6A of Schedule 5, for each inspection, and subject to such conditions as the Registrar may impose.

(3)   For the purposes of subsection (1), an alternate director is a person who is registered by a company as an alternate director under section 55.

### Penalty for failing to notify of changes to the register of directors and officers

**56.**   (1)   A company that breaches the provisions of section 55 shall incur a penalty of five hundred dollars.

(2)   Notwithstanding subsection (1), if a company is in breach of section 55(1)(b) —

(a)   in respect of more than one change in directors or officers and —

(i)    the changes occurred within a thirty day period; and

(ii)   the Registrar is notified of the changes on the same day;

the applicable penalty for the breach shall be that specified in subsection (1), irrespective of the number of changes notified to the Registrar; and

(b)   in respect of directors or officers of five or more companies, the applicable aggregate penalty in respect of the companies to which the breach relates shall not exceed the sum of two thousand five hundred dollars, which shall be equally apportioned between and paid by, such companies.

(3)   In addition to the penalty under subsection (1), where the Registrar is satisfied that a breach of section 55 has been knowingly and wilfully authorised or permitted —

(a)   every company to which the breach relates shall incur a penalty of one thousand dollars; and

(b)   every director and officer of the company to which the breach relates shall incur a penalty of one thousand dollars and a further penalty of one hundred dollars for every day during which the default continues.

### Meetings

**57.**   Subject to the memorandum and articles of association of the company, a meeting of —

(a)   members;

(b)   a class of members;



(2C) Subsection (2B) shall not apply to a company that complies with a requirement under any regulatory law to file information regarding its accounts to the Authority.

(3) A company shall cause all books of account required to be kept under subsection (1) to be retained for a minimum period of five years from the date on which they are prepared.

(4) A company that knowingly and wilfully contravenes subsection (1) or (3) shall be subject to a penalty of five thousand dollars.

### Definition of special resolution

**60.** (1) A resolution is a special resolution when —

    (a) it has been passed by a majority of at least two-thirds of such members as, being entitled to do so, vote in person or, where proxies are allowed, by proxy at a general meeting of which notice specifying the intention to propose the resolution as a special resolution has been duly given, except that a company may in its articles of association specify that the required majority shall be a number greater than two-thirds, and may additionally so provide that any such majority (being not less than two-thirds) may differ as between matters required to be approved by a special resolution; or

    (b) if so authorised by its articles of association, it has been approved in writing by all of the members entitled to vote at a general meeting of the company in one or more instruments each signed by one or more of the members aforesaid, and the effective date of the special resolution so adopted shall be the date on which the instrument or the last of such instruments, if more than one, is executed.

(2) At any meeting mentioned in this section, unless a poll is demanded by at least one member, a declaration of the chairperson that the resolution has been carried shall be conclusive evidence of the fact, without proof of the number or proportion of votes recorded in favour of or against the same.

(3) Notice of any meeting shall, for the purposes of this section, be deemed to be duly given and the meeting to be duly held, whenever such notice is given and the meeting held in manner prescribed by the regulations of the company.

(4) In computing the majority under this section when a poll is demanded, regard shall be had to the number of votes to which each member is entitled by the regulations of the company.



Companies Act (2021 Revision)                                            Section 65

### Powers of inspectors

**65.** It shall be the duty of all officers and agents of the company to produce for examination by an inspector all books and documents in their custody or power; any inspector may examine upon oath the officers and agents of the company in relation to its business, and may administer such oath accordingly; and any officer or agent who refuses or neglects to produce any book or document hereby directed to be produced, or to answer any question relating to the affairs of the company, shall incur a penalty not exceeding forty dollars in respect of each such offence.

### Report of inspectors

**66.** (1) Upon the conclusion of the examination, the inspectors shall report their opinions to the Court.

(2) Such report shall be filed by the Clerk of the Court, but shall not, unless the Court so directs, be open to public inspection.

(3) All expenses of and incidental to any such examination and report shall be defrayed by the members upon whose application the inspectors were appointed, unless the Court shall direct the same to be paid out of the assets of the company, which it is hereby authorised to do.

### Inspection by resolution of the company

**67.** Any company as aforesaid may, by special resolution, appoint inspectors for the purpose of examining into the affairs of such company; and inspectors so appointed shall have the same powers and perform the same duties as inspectors appointed by the Court, except that instead of making their report to the Court, they shall make the same in such manner and to such persons as the company by resolution of its members directs, and the officers and agents of the company shall incur the same penalties in case of any refusal or neglect to produce any book or document hereby required to be produced to such inspectors or answer any question, as they would have incurred if such inspectors had been appointed by the Court.

### Inspectors' report admissible as evidence

**68.** The report of any inspectors appointed under this Act, or any copy thereof certified and signed by the inspectors, shall be admissible in any legal proceeding as evidence of the opinion of the inspectors in relation to any matter contained in such report.

## Notices

### Returns, etc., to Registrar

**69.** Any list, return, notice or information required by this Act to be made, given or supplied to the Registrar shall be authenticated by the signature of the secretary or manager or one of the directors of the company.



### Declaration in action against members

**75.**  In any action or suit brought by the company against any member to recover any call or other monies due from such member in that person's character of member, it shall not be necessary to set forth the special matter, but it shall be sufficient to allege that the defendant is a member of the company and is indebted to the company in respect of a call made or other monies due whereby a right of action has accrued to the company.

## Arbitration

### Power of companies to refer matters to arbitration

**76.**  Any company may, from time to time, by writing, agree to refer and may refer to arbitration any existing or future difference, question or other matter whatsoever in dispute between itself and any other company or person; and the companies, parties to the arbitration, may delegate to the person or persons to whom the reference is made power to settle any terms or to determine any matter capable of being lawfully settled or determined by the companies themselves or by the directors or other managing body of such companies.

## General Penalty

### General penalty; application of fines

**77.**  (1)  Where a duty is imposed by this Act on any company, director or officer of any company and no special penalty or fine has been provided for the breach of such duty, then any such company director or officer responsible for such breach commits an offence and is liable on conviction to a fine of five thousand dollars.

(2)  All fines shall be recovered in a summary way and shall be applied in aid of the general revenue of the Islands.

## Unlimited Liability of Directors and Managers

### Unlimited liability of directors and managers

**78.**  The liability of the directors, managers or the managing director of a company may, if so provided by the memorandum of association, be unlimited.

### Modification of section 49

**79.**  In the event of a company being wound up, section 49 as respects the contribution to be required from any director or manager whose liability is unlimited by virtue of section 78 shall have effect subject to the following modifications —



Registrar, qualifies the company or association for registration under this section.

(2) The Registrar shall only approve an application for designation under this section if the memorandum and articles of association of a company registered under this Act or an association being registered under this Act and applying for designation, contain language to the effect that —

    (a) the assets, profits, if any, and other income of the company or association applying for designation, shall be applied exclusively in the furtherance of the objects of the company or association; and

    (b) no portion of the assets and income of the company or association shall be distributed as profit or dividend directly or indirectly to the controllers, shareholders, owners or members of the company or association, unless such distribution is intended for the legitimate purpose of compensating a person for services to further the objects of the company or association or to pay the liabilities incurred on behalf of the company or association.

(3) Pursuant to an application made under subsection (1), the Registrar may direct that a company registered under this Act or that an association being registered under this Act, be registered with limited liability without the addition of the word "Limited" or the abbreviation "Ltd." to the company's name and that upon registration shall enjoy all the privileges and be subject to all the obligations by this Act imposed on companies, except the obligations under this Act requiring a company —

    (a) to use the word "Limited" or the abbreviation "Ltd." as any part of its name;

    (b) to send a list of its members to the Registrar;

    (c) to comply with the provisions of sections 51 or 55 or pay any fees pursuant to section 199; or

    (d) to pay the fees prescribed by sections 26, 41 and 169.

(4) The Registrar may impose any conditions that the Registrar thinks fit to impose on a company designated under this section and shall cause the conditions imposed to be inserted or endorsed on the memorandum or articles of association of the company or association being registered.

(5) Where a company designated under this section is to be dissolved, the person who owns, controls or directs that company shall ensure that any assets of the company remaining after the satisfaction of all debts and liabilities of the company shall be transferred to another company registered under this section or a non-profit organisation registered under the *Non-Profit Organisations Act (2020 Revision)* which has similar objects.



(b)  it shall be the duty of an officer of a company designated under section 80 to produce for examination by the Registrar, all books of account and documents, for the company for which the officer is responsible, that are in the officer's custody or power.

### Exempt from Part XVIIA

**80D.** A company designated under section 80 is exempt from the obligations under Part XVIIA of this Act.

### Penalty for breach of section 80B

**80E.** (1)  The Registrar —

(a)  may impose a penalty of five hundred dollars on a company designated under section 80, if the company breaches the provisions of section 80B; and

(b)  shall within ten days of the date of the imposition of the penalty, inform the company upon which the penalty has been imposed, of the reasons for the imposition of the penalty.

(2)  A company, upon which a penalty is imposed pursuant to subsection (1), which disputes the imposition of the penalty may appeal to the Court for review of the Registrar's decision to impose the penalty.

(3)  A dispute in relation to the penalty imposed pursuant to subsection (1) shall not be in respect of the amount of the penalty imposed and is limited to a dispute in relation to the grounds upon which the penalty is imposed.

(4)  Notwithstanding subsection (1), if a company is in breach of section 80B —

(a)  in respect of more than one change in the person who owns, controls or directs a company and —

(i)  the changes occurred within a sixty day period; and

(ii)  the Registrar is notified of the changes on the same day,

the applicable penalty for the breach shall be that specified in subsection (1), irrespective of the number of changes notified to the Registrar; and

(b)  in respect of a person who owns, controls or directs five or more companies, the applicable aggregate penalty in respect of the companies to which the breach relates shall not exceed the sum of two thousand five hundred dollars, which shall be equally apportioned between and paid by such companies.

(5)  In addition to the penalty under subsection (1), where the Registrar is satisfied that a breach of section 80B has been knowingly and wilfully authorised or permitted —



shall be deemed to have been duly authorised to act on behalf of the company and shall cease to be personally liable on the contract or other transaction.

(4)  Any contract, deed or other instrument made according to this section may be varied or discharged in the same manner as it is authorised by this section to be made.

(5)  All contracts, deeds or other instruments made according to this section shall be effectual in law and shall be binding upon the company and its successors and all other parties thereto, their heirs, executors or administrators, as the case may be.

(6)  A contract or other instrument to be governed by the laws of the Islands which is executed by an overseas company is, and is to be treated as, a deed or instrument under seal if it is —

  (a)  executed in conformity with subsection (1)(a); and

  (b)  executed in conformity with the requirements imposed by —

    (i)   the laws of the jurisdiction in which the overseas company was formed or incorporated; and

    (ii)  its memorandum or articles of association or other constitutional documents (howsoever called).

(7)  A contract or other instrument executed in accordance with subsection (6) meets any requirement of any law of the Islands that the contract or instrument is, and is to be treated as, a deed or instrument executed under seal.

(8)  A contract, deed or instrument is executed validly as a contract, deed or instrument under seal where it is executed in any manner contemplated by the parties thereto, including, without limitation —

  (a)  where the complete contract, deed or instrument is executed; or

  (b)  where any signature or execution page to the contract, deed or instrument is executed (whether or not the contract, deed or instrument is at such time in final form) which is attached by, or on behalf of, the relevant party to, or otherwise with the relevant party's express or implied authority to, the contract, deed or instrument,

  provided always that the contract, deed or instrument is executed in conformity with subsection (1)(a) or (b), or subsection (6), as the case may be.

(9)  Subsections (1), (4), (5), (6), (7) and (8) shall apply to contracts, deeds, instruments under seal or other instruments regardless of whether they were made before, on or after 27th April, 2011, the date commencement of this subsection by the *Companies (Amendment) Act, 2011 [Law 16 of 2011]*, and no contract, deed, instrument under seal or other instrument made before the commencement of this subsection shall be invalid by reason only of any provision of subsections (1), (4), (5), (6), (7) and (8).



(5)  The person affixing any such duplicate seal shall, by writing under that person's hand, certify on the deed or other instrument to which the seal is affixed the date on which it is affixed.

## Authentication of documents

**85**.  A document or proceeding requiring authentication by a company may be signed by a director, secretary or other authorised officer of the company.

## Arrangements and Reconstructions

### Power to compromise with creditors and members

**86**.  (1)  Where a compromise or arrangement is proposed between a company and its creditors or any class of them, or between the company and its members or any class of them, the Court may, on the application of the company or of any creditor or member of the company, or where a company is being wound up, of the liquidator, order a meeting of the creditors or class of creditors, or of the members of the company or class of members, as the case may be, to be summoned in such manner as the Court directs.

(2)  If a majority in number representing seventy-five per cent in value of the creditors or class of creditors, or members or class of members, as the case may be, present and voting either in person or by proxy at the meeting, agree to any compromise or arrangement, the compromise or arrangement shall, if sanctioned by the Court, be binding on all the creditors or the class of creditors, or on the members or class of members, as the case may be, and also on the company or, where a company is in the course of being wound up, on the liquidator and contributories of the company.

(3)  An order made under subsection (2) shall have no effect until a copy of the order has been delivered to the Registrar for registration, and a copy of every such order shall be annexed to every copy of the memorandum of association of the company issued after the order has been made, or, in the case of a company not having a memorandum, of every copy so issued of the instrument constituting or defining the constitution of the company.

(4)  If a company makes default in complying with subsection (3), the company and every officer of the company who is in default shall be liable to a fine of two dollars for each copy in respect of which default is made.

(5)  In this section the expression "**company**" means any company liable to be wound up under this Act and the expression "**arrangement**" includes a reorganisation of the share capital of the company by the consolidation of shares of different classes or by the division of shares into shares of different classes or by both those methods.



"**liabilities**" includes duties; and

"**transferee company**" means any company or body corporate established in the Islands or in any other jurisdiction.

### Power to acquire shares of dissentient shareholders

88.  (1)  Where a scheme or contract involving the transfer of shares or any class of shares in a company (in this section referred to as "the transferor company") to another company, whether a company within the meaning of this Act or not (in this section referred to as "the transferee company") has, within four months after the making of the offer in that behalf by the transferee company, been approved by the holders of not less than ninety per cent in value of the shares affected, the transferee company may, at any time within two months after the expiration of the said four months, give notice in the prescribed manner to any dissenting shareholder that it desires to acquire that person's shares, and where such notice is given the transferee company shall, unless on an application made by the dissenting shareholder within one month from the date on which the notice was given, the Court thinks fit to order otherwise, be entitled and bound to acquire those shares on the terms on which under the scheme or contract the shares of the approving shareholders are to be transferred to the transferee company.

(2)  Where a notice has been given by the transferee company under this section and the Court has not, on an application made by the dissenting shareholder, ordered to the contrary, the transferee company shall, on the expiration of one month from the date on which the notice has been given or, if an application to the Court by the dissenting shareholder is then pending, after that application has been disposed of, transmit a copy of the notice to the transferor company and pay or transfer to the transferor company the amount or other consideration representing the price payable by the transferee company for the shares which by virtue of this section that company is entitled to acquire, and the transferor company shall thereupon register the transferee company as the holder of those shares.

(3)  Any sums received by the transferor company under this section shall be paid into a separate bank account, and any such sums and any other consideration so received shall be held by that company on trust for the several persons entitled to the shares in respect of which the said sum or other consideration were respectively received.

(4)  In this section —

"**dissenting shareholder**" includes a shareholder who has not assented to the scheme or contract and any shareholder who has failed or refused to transfer that person's shares to the transferee company, in accordance with the scheme or contract.



"**shadow director**" means, in relation to a company, any person in accordance with whose directions or instructions the directors of the company are accustomed to act, but the person is not deemed to be a shadow director by reason only that the directors act on advice given by that person in a professional capacity; and

"**winding up order**" includes an order that a voluntary winding up continue under the supervision of the Court and references to a company being wound up by the Court includes a company which is being wound up under the supervision of the Court.

## Alternative modes of winding up

**90**.   A company may be wound up —

    (a)   compulsorily by order of the Court;

    (b)   voluntarily —

        (i)   by virtue of a special resolution;

        (ii)  because the period, if any, fixed for the duration of the company by its articles of association has expired; or

        (iii) because the event, if any, has occurred, on the occurrence of which its articles of association provide that the company shall be wound up; or

    (c)   under the supervision of the Court.

## Jurisdiction of the Court

**91**.   The Court has jurisdiction to make winding up orders in respect of —

    (a)   an existing company;

    (b)   a company incorporated and registered under this Act;

    (c)   a body incorporated under any other law; and

    (d)   a foreign company which —

        (i)   has property located in the Islands;

        (ii)  is carrying on business in the Islands;

        (iii) is the general partner of a limited partnership; or

        (iv) is registered under Part IX.

# Winding up by the Court

## Circumstances in which a company may be wound up by the Court

**92**.   A company may be wound up by the Court if —



Companies Act (2021 Revision)                                                    Section 95

have the authority to present a winding up petition on its behalf without the sanction of a resolution passed at a general meeting.

(3)  A contributory is not entitled to present a winding up petition unless either —

   (a)  the shares in respect of which that person is a contributory, or some of them, are partly paid; or

   (b)  the shares in respect of which that person is a contributory, or some of them, either were —

      (i)  originally allotted to that person, or have been held by that person, and registered in that person's name for a period of at least six months immediately preceding the presentation of the winding up petition; or

      (ii)  have devolved on that person through the death of a former holder.

(4)  A winding up petition may be presented by the Authority in respect of any company which is carrying on a regulated business in the Islands upon the grounds that it is not duly licensed or registered to do so under the regulatory laws or for any other reason as provided under the regulatory laws or any other law.

## Powers of the Court

**95.**  (1)  Upon hearing the winding up petition the Court may —

   (a)  dismiss the petition;

   (b)  adjourn the hearing conditionally or unconditionally;

   (c)  make a provisional order; or

   (d)  any other order that it thinks fit,

but the Court shall not refuse to make a winding up order on the ground only that the company's assets have been mortgaged or charged to an amount equal to or in excess of those assets or that the company has no assets.

(2)  The Court shall dismiss a winding up petition or adjourn the hearing of a winding up petition on the ground that the petitioner is contractually bound not to present a petition against the company.

(3)  If the petition is presented by members of the company as contributories on the ground that it is just and equitable that the company should be wound up, the Court shall have jurisdiction to make the following orders, as an alternative to a winding-up order, namely —

   (a)  an order regulating the conduct of the company's affairs in the future;

   (b)  an order requiring the company to refrain from doing or continuing an act complained of by the petitioner or to do an act which the petitioner has complained it has omitted to do;



Companies Act (2021 Revision)                                                      Section 98

### Notice of winding up order

**98**.  When a winding up order is made, the liquidator shall —

    (a)  file a copy of the winding up order with the Registrar; and

    (b)  publish notice of the winding up in the Gazette and any newspaper in which the winding up petition was advertised.

### Avoidance of property dispositions, etc.

**99**.  When a winding up order has been made, any disposition of the company's property and any transfer of shares or alteration in the status of the company's members made after the commencement of the winding up is, unless the Court otherwise orders, void.

### Commencement of winding up by the Court

**100**. (1)  If, before the presentation of a petition for the winding up of a company by the Court —

    (a)  a resolution has been passed by the company for voluntary winding up;

    (b)  the period, if any, fixed for the duration of the company by the articles of association has expired; or

    (c)  the event upon the occurrence of which it is provided by the articles of association that the company is to be wound up has occurred,

the winding up of the company is deemed to have commenced at the time of passing of the resolution or the expiry of the relevant period or the occurrence of the relevant event.

    (2)  In any other circumstance not specified in subsection (1), the winding up of a company by the Court is deemed to commence at the time of the presentation of the petition for winding up.

### Company's statement of affairs

**101**. (1)  Where the Court has made a winding up order or appointed a provisional liquidator, the liquidator may require some or all of the persons mentioned in subsection (3) to prepare and submit to that person a statement in the prescribed form as to the affairs of the company.

    (2)  The statement shall be verified by an affidavit sworn by the persons required to submit it and shall show —

    (a)  particulars of the company's assets and liabilities, including contingent and prospective liabilities;

    (b)  the names and addresses of any persons having possession of the company's assets;

    (c)  the assets of the company held by those persons;

    (d)  the names and addresses of the company's creditors;



(3)  Subject to obtaining the prior approval of the company's creditors, if it is insolvent, or its contributories, if it is solvent, the directions given under subsection (2) may include a direction that the whole or part of the costs of investigation and prosecution be paid out of the assets of the company.

### Duty to co-operate and the private examination of relevant persons

**103**. (1)  This section applies to any person who, whether resident in the Islands or elsewhere —

(a)  has made or concurred with the statement of affairs;

(b)  is or has been a director or officer of the company;

(c)  is or was a professional service provider to the company;

(d)  has acted as a controller, advisor or liquidator of the company or receiver or manager of its property;

(e)  not being a person falling within paragraphs (a) to (c), is or has been concerned or has taken part in the promotion, or management of the company,

and such person is referred to in this section as the "**relevant person**".

(2)  It is the duty of every relevant person to co-operate with the official liquidator.

(3)  While a company is being wound up, the official liquidator may at any time before its dissolution apply to the Court for an order —

(a)  for the examination of any relevant person; or

(b)  that a relevant person transfer or deliver up to the liquidator any property or documents belonging to the company.

(4)  Unless the Court otherwise orders, the official liquidator shall make an application under subsection (3) if that person is requested in accordance with the rules to do so by one-half, in value, of the company's creditors or contributories.

(5)  On an application made under subsection (3)(a), the Court may order that a relevant person —

(a)  swear an affidavit in answer to written interrogatories;

(b)  attend for oral examination by the official liquidator at a specified time and place, or

(c)  do both things specified in paragraphs (a) and (b).

(6)  The Court may direct that any creditor or contributory of the company be permitted by the official liquidator to participate in an oral examination.

(7)  The Court shall have jurisdiction —

(a)  to make an order under this section against a relevant person resident outside the Islands; and



### Appointment of official liquidator

**105**. (1)   For the purpose of conducting the proceedings in winding up a company and assisting the Court therein, there may be appointed one or more than one person to be called an official liquidator or official liquidators; and the Court may appoint to such office such person as it thinks fit, and if more persons than one are appointed to such office, the Court shall declare whether any act hereby required or authorised to be done by the official liquidator is to be done by all or any or more of such persons.

(2)   The Court may also determine whether any and what security is to be given by an official liquidator on that person's appointment; and if no official liquidator is appointed, or during any vacancy in such office, all the property of the company shall be in the custody of the Court.

(3)   The liquidator shall, within twenty-eight days of the date upon which the winding up order is made, summon —

   (a)   a meeting of the company's creditors if the order was made on the grounds that the company is insolvent; or

   (b)   a meeting of the company's contributories if the order was made on grounds other than insolvency,

   for the purposes of resolving any other matters which the liquidator puts before the meeting.

(4)   The Court may make an order dispensing with the need to summon a meeting under this section or extending the time within which it shall be summoned.

### Appointment of joint liquidators

**106**. When two or more persons are appointed to the office of liquidator, either provisionally or as official liquidators, they shall be authorised to act jointly and severally, unless their powers are expressly limited by order of the Court.

### Removal of official liquidators

**107**. An official liquidator may be removed from office by order of the Court made on the application of a creditor or contributory of the company.

### Qualifications of official liquidators

**108**. (1)   A foreign practitioner may be appointed to act jointly with a qualified insolvency practitioner.

(2)   Official liquidators are officers of the Court.

### Remuneration of official liquidators

**109**. (1)   The expenses properly incurred in the winding up, including the remuneration of the liquidator, are payable out of the company's assets in priority to all other claims.



Companies Act (2021 Revision)                                                      Section 111

## General Powers of the Court

### Power to stay winding up

**111.** (1)   The Court may at any time after an order for winding up, on the application either of the liquidator or any creditor or contributory, and on proof to the satisfaction of the Court that all proceedings in the winding up ought to be stayed, make an order staying the proceedings either all together or for a limited time, on such terms and conditions as the Court thinks fit.

(2)   The Court may at any time after the liquidation has commenced under section 116(c), but before the final meeting has been held as provided for in section 127, on the application of the liquidator accompanied by —

    (a)   a special resolution stating that the company will not be wound up and setting out the reasons for such decision;

    (b)   proof of a recall notice published in the Gazette; and

    (c)   such other documents as the Court may consider necessary,

make an order to recall the liquidation, place the company into active status and place the company back into good standing as it was prior to the commencement of liquidation under section 116(c), on such terms and conditions as the Court thinks fit.

(3)   A company shall, within seven days of the making of an order under this section, forward a copy of the order to the Registrar who shall enter it in the records relating to the company.

### Settlement of list of contributories

**112.** (1)   The liquidator shall settle a list of contributories, if any, for which purpose that person shall have power to adjust the rights of contributories amongst themselves.

(2)   In the case of a solvent liquidation of a company which has issued redeemable shares at prices based upon its net asset value from time to time, the liquidator shall have power to settle and, if necessary rectify the company's register of members, thereby adjusting the rights of members amongst themselves.

(3)   A contributory who is dissatisfied with the liquidator's determination may appeal to the Court against such determination.

### Power to make calls

**113.** (1)   The Court may, at any time after making a winding up order, and either before or after it has ascertained the sufficiency of the company's assets, make calls on all or any of the contributories for the time being settled on the list of the contributories —



## Voluntary Winding up

### Circumstances in which a company may be wound up voluntarily

**116**. A company incorporated and registered under this Act or an existing company may be wound up voluntarily —

    (a)  when the period, if any, fixed for the duration of the company by its memorandum or articles of association expires;

    (b)  if the event, if any, occurs, on the occurrence of which the memorandum or articles of association provide that the company is to be wound up;

    (c)  if the company resolves by special resolution that it be wound up voluntarily; or

    (d)  if the company in general meeting resolves by ordinary resolution that it be wound up voluntarily because it is unable to pay its debts as they fall due.

### Commencement of winding up

**117**. (1)  A voluntary winding up is deemed to commence —

    (a)  at the time of the passing of the resolution for winding up; or

    (b)  on the expiry of the period or the occurrence of the event specified in the company's memorandum or articles of association,

notwithstanding that a supervision order is subsequently made by the Court.

    (2)  Subject to any contrary provision in its memorandum or articles of association, the voluntary winding up of an exempted limited duration company is taken to have commenced upon the expiry of a period of ninety days starting on —

    (a)  the death, insanity, bankruptcy, dissolution, withdrawal, retirement or resignation of a member of the company;

    (b)  the redemption, repurchase or cancellation of all the shares of a member of the company; or

    (c)  the occurrence of any event which, under the memorandum or articles of association of the company, terminates the membership of a member of the company,

unless there remain at least two members of the company and the company is continued in existence by the unanimous resolution of the remaining members pursuant to amended memorandum and articles of association adopted during that period of ninety days.

### Effect on business and status of the company

**118**. (1)  In the case of a voluntary winding up, the company shall from the commencement of its winding up cease to carry on its business except so far as it may be beneficial for its winding up.



### Removal of voluntary liquidators

**121.** (1)  A voluntary liquidator may be removed from office by a resolution of the company in a general meeting convened especially for that purpose.

(2)  A general meeting of the company for the purpose of considering a resolution to remove its voluntary liquidator may be convened by any shareholder or shareholders holding not less than one fifth of the company's issued share capital.

(3)  Whether or not a general meeting has been convened in accordance with subsection (2), any contributory may apply to the Court for an order that a voluntary liquidator be removed from office on the grounds that that person is not a fit and proper person to hold office.

### Resignation of voluntary liquidator

**122.** (1)  Where two or more persons are appointed as joint voluntary liquidators, they may resign by filing a notice of resignation with the Registrar, so long as at least one of them continues in office.

(2)  Except as provided in subsection (1), a voluntary liquidator wishing to resign shall —

    (a)  prepare a report and accounts; and

    (b)  convene a general meeting of the company for the purpose of accepting that person's resignation and releasing that person from the performance of any further duties, and shall cease to hold office with effect from the date upon which the resolution is passed.

(3)  In the event that the company fails to pass a resolution accepting that person's resignation, the voluntary liquidator may apply to the Court for an order that that person be released from the performance of any further duties.

### Notice of voluntary winding up

**123.** (1)  Within twenty-eight days of the commencement of a voluntary winding up, the liquidator or, in the absence of any liquidator, the directors shall —

    (a)  file notice of the winding up with the Registrar;

    (b)  file the liquidator's consent to act with the Registrar;

    (c)  file the director's declaration of solvency with the Registrar (if the supervision of the court is not sought);

    (d)  in the case of a company carrying on a regulated business, serve notice of the winding up upon the Monetary Authority; and

    (e)  publish notice of the winding up in the Gazette.

(2)  A director or liquidator who fails to comply with this section commits an offence and is liable to a fine of ten thousand dollars.



(2) At least twenty-one days before the meeting the liquidator shall send a notice specifying the time, place and object of the meeting to each contributory in any manner authorised by the company's articles of association and published in the Gazette.

(3) The liquidator shall, no later than seven days after the meeting, make a return to the Registrar in the prescribed form specifying —

   (a) the date upon which the meeting was held; and

   (b) if a quorum was present, particulars of the resolutions, if any, passed at the meeting.

(4) A liquidator who fails to call a general meeting of the company as required by subsection (1) or fails to make a return as required by subsection (3) commits an offence and is liable on conviction to a fine of ten thousand dollars.

### Effect of winding up on share capital of company limited by guarantee

**128**. Where a company limited by guarantee and having a capital divided into shares is being wound up voluntarily, any share capital that may not have been called upon shall be deemed to be an asset of the company, and to be a specialty debt due from each member to the company to the extent of any sums that may be unpaid on any shares held by that person, and payable at such time as may be appointed by the liquidator.

### Reference of questions to Court

**129**. (1) The voluntary liquidator or any contributory may apply to the Court to determine any question arising in the voluntary winding up of a company or to exercise, as respects the enforcing of calls or any other matter, all or any of the powers which the Court might exercise if the company were being wound up under the supervision of the Court.

(2) The Court, if satisfied that the determination of the question or the required exercise of power will be just and beneficial, may accede wholly or partly to the application on such terms and conditions as it thinks fit, or make such other order on the application as it thinks just.

(3) The voluntary liquidator shall, within seven days of the making of an order under this section, forward a copy of the order to the Registrar who shall enter it in that person's records relating to the company.

### Expenses of voluntary winding up

**130**. (1) The expenses properly incurred in the winding up, including the remuneration of the liquidator, are payable out of the company's assets in priority to all other claims.

(2) The rate and amount of the liquidator's remuneration shall be fixed and payment authorised by resolution of the company.



Companies Act (2021 Revision)                                              Section 134

## Offences of fraud, etc.

### Fraud, etc. in anticipation of winding up

**134.** (1)  Where a company is ordered to be wound up by the Court, or passes a resolution for voluntary winding up, any person, who is or was an officer, professional service provider, voluntary liquidator or controller of the company and who, within the twelve months immediately preceding the commencement of the winding up, has —

(a)  concealed any part of the company's property to the value of ten thousand dollars or more or concealed any debt due to or from the company;

(b)  removed any part of the company's property to the value of ten thousand dollars or more;

(c)  concealed, destroyed, mutilated or falsified any documents affecting or relating to the company's property or affairs;

(d)  made any false entry in any documents affecting or relating to the company's property or affairs;

(e)  parted with, altered or made any omission in any document affecting or relating to the company's property or affairs; or

(f)  pawned, pledged or disposed of any property of the company which has been obtained on credit and has not been paid for (unless the pawning, pledging or disposal was in the ordinary way of the company's business),

with intent to defraud the company's creditors or contributories commits an offence and is liable on conviction to a fine and to imprisonment for five years.

(2)  In this section —

"**officer**" includes a shadow director.

### Transactions in fraud of creditors

**135.**  Where a company is ordered to be wound up by the Court or passes a resolution for voluntary winding up, any officer or professional service provider of the company who —

(a)  has made or caused to be made any gift or transfer of, or charge on, or has caused or connived at the levying of any execution against, the company's property; or

(b)  has concealed or removed any part of the company's property,

with intent to defraud the company's creditors or contributories commits an offence and is liable on conviction to a fine and to imprisonment for five years.



### Material omissions from statement relating to company's affairs

**137.** (1)  Where a company is being wound up, whether by the Court or voluntarily, a person who is or was a director, an officer, a manager or a professional service provider of the company, commits an offence if that person makes any material omission in any statement relating to the company's affairs, with intent to defraud the company's creditors or contributories.

(2)  A person who commits an offence under subsection (1) is liable on conviction to a fine of twenty-five thousand dollars or to imprisonment for a term of five years, or to both.

(3)  In this section —

"**officer**" includes a shadow director.

## General provisions

### Getting in the company's property

**138.** (1)  Where any person has in that person's possession any property or documents to which the company appears to be entitled, the Court may require that person to pay, transfer or deliver such property or documents to the official liquidator.

(2)  Where the official liquidator seizes or disposes of any property which that person reasonably believed belonged to the company, that person shall not be personally liable for any loss or damage caused to its true owner except in so far as such loss or damage is caused by that person's own negligence.

### Provable debts

**139.** (1)  All debts payable on a contingency and all claims against the company whether present or future, certain or contingent, ascertained or sounding only in damages, shall be admissible to proof against the company and the official liquidator shall make a just estimate so far as is possible of the value of all such debts or claims as may be subject to any contingency or sound only in damages or which for some other reason do not bear a certain value.

(2)  Foreign taxes, fines and penalties shall be admissible to proof against the company only if and to the extent that a judgment in respect of the same would be enforceable against the company pursuant to the *Foreign Judgments Reciprocal Enforcement Act (1996 Revision)* or any laws permitting the enforcement of foreign taxes, fines and penalties.

### Distribution of the company's property

**140.** (1)  Subject to subsection (2), the property of the company shall be applied in satisfaction of its liabilities *pari passu* and subject thereto shall be distributed amongst the members according to their rights and interests in the company.



(2) Where the liquidator sells assets on behalf of a secured creditor, that person is entitled to deduct from the proceeds of sale a sum by way of remuneration equivalent to that which is or would be payable under section 109.

### Preferential charge on goods distrained

**143**. In the event of a landlord or other person entitled to receive rent distraining or having distrained on any goods or effects of the company within three months preceding the date of the winding up order, the debts to which priority is given by section 141 shall be a first charge on the goods or effects so distrained on or the proceeds of sale thereof.

### Effect of execution or attachment

**144**. (1) Where a creditor has issued execution against the goods or land of a company or has attached any debt due to it, and the company is subsequently wound up, that person is not entitled to retain the benefit of the execution or attachment against the liquidator unless that person has completed the execution or attachment before the commencement of the winding up.

(2) Notwithstanding subsection (1) —

    (a) where a creditor has had notice of a meeting having been called at which a resolution for voluntary winding up is to be proposed, the date on which that person had notice is substituted for the purpose of subsection (1) for the date of commencement of the winding up;

    (b) a person who purchases in good faith under a sale by the bailiff any goods of a company on which execution has been levied in all cases acquires a good title to them against the liquidator; and

    (c) the rights conferred by subsection (1) on the liquidator may be set aside by the Court in favour of the creditor to such extent and subject to such terms as the Court thinks fit.

(3) For the purposes of this Act —

    (a) an execution against goods is completed by seizure and sale;

    (b) an execution against securities is completed upon making a charging order absolute;

    (c) an attachment of a debt is completed by receipt of the debt; and

    (d) an execution against land is completed by the registration of a charging order.



    (a)  the transferee shall have a first and paramount charge over the property, the subject of the disposition, of an amount equal to the entire costs properly incurred by the transferee in the defence of the action or proceedings; and

    (b)  the relevant disposition shall be set aside subject to the proper fees, costs, pre-existing rights, claims and interests of the transferee (and of any predecessor transferee who has not acted in bad faith).

## Fraudulent trading

**147**. (1)  If in the course of the winding up of a company it appears that any business of the company has been carried on with intent to defraud creditors of the company or creditors of any other person or for any fraudulent purpose the liquidator may apply to the Court for a declaration under this section.

    (2)  The Court may declare that any persons who were knowingly parties to the carrying on of the business in the manner mentioned in subsection (1) are liable to make such contributions, if any, to the company's assets as the Court thinks proper.

## Supply of utilities

**148**. (1)  If a request is made by or with the concurrence of the liquidator (including a provisional liquidator) for the giving, after the effective date, of any of the supplies mentioned in subsection (2), the supplier —

    (a)  may make it a condition of the giving of the supply that the liquidator personally guarantees the payment of any charges in respect of the supply; but

    (b)  shall not make it a condition of the giving of the supply, or do anything which has the effect of making it a condition of the giving of the supply, that any outstanding charges in respect of a supply given to the company before the effective date are paid.

    (2)  The supplies referred to in subsection (1) are —

    (a)  a supply of electricity;

    (b)  a supply of water; and

    (c)  a supply of telecommunication services.

    (3)  In this section —

      "**effective date**" means —

    (a)  the date on which the provisional liquidator was appointed; or

    (b)  the date on which the winding up order was made.



(3)  Notwithstanding subsection (2), the Court may, on the application of the liquidator or any other person who appears to the Court to be interested, make an order deferring the date at which the dissolution of the company is to take effect to such date as the Court thinks fit.

(4)  An application under this section shall not be made after the company is deemed to have been dissolved.

(5)  An order of the Court made under this section shall be registered with the Registrar within seven days of the date upon which it was made.

### Dissolution following winding up by the Court

**152.** (1)  When the affairs of the company have been completely wound up, the Court shall make an order that the company be dissolved from the date of that order or such other date as the Court thinks fit, and the company shall be dissolved accordingly.

(2)  The effect of an order for dissolution in respect of a segregated portfolio is that its creditors' claims against the company shall be extinguished, notwithstanding that the company has not been liquidated and dissolved.

(3)  The official liquidator shall file the order for dissolution with the Registrar.

(4)  An official liquidator who fails to file the order for dissolution with the Registrar within fourteen days from the date, upon which it was perfected, commits an offence and is liable on summary conviction to a penalty of ten dollars for every day during which that person is so in default.

### Unclaimed dividends and undistributed assets

**153.** (1)  Any unclaimed dividends or undistributed assets in the possession or control of the liquidator or former liquidator of a company shall be held by that person as trustee upon trust for the benefit of the contributories or creditors to whom such funds are owed.

(2)  At the end of one year after the dissolution of the company, the former liquidator shall transfer any funds or other assets held on trust by that person to the Minister charged with responsibility for Finance who shall manage them in accordance with Part VIII of the *Public Management and Finance Act (2020 Revision)*.

## Insolvency rules and regulations

### Insolvency Rules Committee

**154.** (1)  There shall be established an Insolvency Rules Committee comprising —

(a)  the Chief Justice or other judge nominated by the Chief Justice in that person's place who shall be chairperson;



# PART VI - Removal of Defunct Companies

### Company not operating may be struck off register

**156.** (1)   Where the Registrar has reasonable cause to believe that a company is not carrying on business or is not in operation, that person may strike the company off the register and the company shall thereupon be dissolved.

(2)   A request on behalf of the company to strike the company off the register shall be accompanied by a fee of seventy-five dollars.

### Striking off for failure to pay fine

**156A.** Where an administrative fine imposed in accordance with Part XVII remains unpaid for ninety days after imposition of the fine, the Registrar may strike the company off the register and the company shall thereupon be dissolved.

### Company being wound up may be struck off register for want of liquidator, etc.

**157.** Where a company is being wound up, and the Registrar has reasonable cause to believe either that no liquidator is acting, or that the affairs of the company are fully wound up, that person may strike the company off the register and the company shall thereupon be dissolved.

### Registrar to publish fact of company being struck off register

**158.** The Registrar shall immediately publish a Government Notice to the effect that the company in question has been struck off the register, the date on which it has been struck off and the reason therefor. Such notice shall be gazetted.

### Company, creditor or member may apply to court for company to be reinstated

**159.** If a company or any member or creditor thereof feels aggrieved by the company having been struck off the register in accordance with this Act, the Court on the application of such company, member or creditor made within two years or such longer period not exceeding ten years as the Cabinet may allow of the date on which the company was so struck off, may, if satisfied that the company was, at the time of the striking off thereof, carrying on business or in operation, or otherwise, that it is just that the company be restored to the register, order the name of the company to be restored to the register, on payment by the company of a reinstatement fee equivalent to the original incorporation or registration fee and on such terms and conditions as to the Court may seem just, and thereupon the company shall be deemed to have continued in existence as if its name had not been struck off; and the Court may, by the same or any subsequent order, give such directions and make such provisions as seem just for placing the company and all other persons in the same position as nearly as may be as if the name of the company had not been struck off.



### Annual return

**168.** In January of each year after the year of its registration each exempted company that does not hold a licence to carry on business in the Islands to which section 174 refers shall furnish to the Registrar a return which shall be in the form of a declaration that —

    (a) since the previous return or since registration, as the case may be, there has been no alteration in the memorandum of association, other than an alteration in the name of the company effected in accordance with section 31 or an alteration already reported in accordance with section 10;

    (aa) states the nature of the business;

    (b) the operations of the exempted company since the last return or since registration of the exempted company, as the case may be, have been mainly outside the Islands; and

    (c) section 174 has been and is being complied with.

### Annual fee

**169.** (1) Every exempted company shall, in January of each year after the year of its registration, pay to the revenues of the Islands the annual fee specified in Part 4 of Schedule 5.

    (2) Each such annual fee referred to in subsection (1) shall be tendered with the return required by section 168.

    (3) An exempted company who defaults in submitting its annual return under section 168 or the fee specified in subsection (1) shall incur a penalty of —

    (a) 33.33% of the annual fee specified in subsection (1) if the return is submitted or the fee and penalty are paid between the 1st April and the 30th June;

    (b) 66.67% of the annual fee specified in subsection (1) if the return is submitted or the fee and penalty are paid between the 1st July and the 30th September; and

    (c) 100% of the annual fee specified in subsection (1) if the return is submitted or the fee and penalty are paid between the 1st October and the 31st December.

### Failure to comply with section 168 or 169

**170.** Any exempted company which fails to comply with section 168 or 169 shall be deemed to be a defunct company and shall thereupon be dealt with as such under Part VI but without prejudice to its being registered again as though it were being registered for the first time.



Companies Act (2021 Revision)                                      Section 176

### Penalty for carrying on business contrary to this Part

**176.** If an exempted company carries on any business in the Islands in contravention of this Part then, without prejudice to any other proceedings that may be taken in respect of the contravention, the exempted company and every director, provisional director and officer of the exempted company who is responsible for the contravention commits an offence and is liable on summary conviction to a fine of one hundred dollars for every day during which the contravention occurs or continues, and the exempted company shall be liable to be immediately dissolved and removed from the register.

### Electronic business by exempted companies

**177.** Nothing in this Act shall prohibit an exempted company from offering, by electronic means, and subsequently supplying, real or personal property, services or information from a place of business in the Islands or through an internet service provider or other electronic service provider located in the Islands.

## PART VIII - Exempted Limited Duration Companies

### Exempted company may apply to be registered as an exempted limited duration company

**178.** (1)   An exempted company may, at any time, apply to the Registrar to be registered as an exempted limited duration company.

(2)   An application may also be made under subsection (1) at the same time as an application is made —

(a)   to register a proposed company as an exempted company;

(b)   to re-register an ordinary non-resident company as an exempted company; or

(c)   to register a company by way of continuation as an exempted company.

(3)   An application under subsection (1) shall, in addition to any other fee that may be payable, be accompanied by an application fee of two hundred dollars.

### Registration as an exempted limited duration company

**179.** (1)   The Registrar shall register as an exempted limited duration company an exempted company that has made application under section 178 if —

(a)   the company has at least two subscribers or two members;

(b)   where the company was not already registered as a company prior to the application —

(i)   the memorandum of association of the company limits the duration of the company to a period of thirty years or less; and



provided by the articles of association, to delegate the management to a board of directors.

### Cancellation of registration

**181**. (1)   A company ceases to be an exempted limited duration company if —

(a)   the Registrar issues a certificate under section 207 on de-registration of the company;

(b)   the Registrar issues a certificate of incorporation in accordance with section 31(2) which records a change of name for the company that does not include at its end "Limited Duration Company" or "LDC"; or

(c)   the company passes a special resolution in accordance with section 10 to alter its memorandum of association to provide for a period of duration of the company that exceeds or is capable of exceeding thirty years,

and in the case of paragraph (b) or (c), the company pays a de-registration fee of four hundred dollars.

(2)   On a company ceasing to be an exempted limited duration company —

(a)   the Registrar shall, where the company has ceased to be an exempted limited duration company by virtue of paragraph (b) or (c) of subsection (1), issue to the company a certificate of incorporation altered to meet the circumstances of the case; and

(b)   in all cases the certificate issued by virtue of section 179(2) ceases to have effect.

(3)   A special resolution passed for the purpose of paragraph (c) of subsection (1) has no effect until a certificate of incorporation is issued by the Registrar under paragraph (a) of subsection (2).

### Electronic business by exempted limited duration companies

**182**. Nothing in this Act shall prohibit an exempted limited duration company from offering, by electronic means, and subsequently supplying, real or personal property, services or information from a place of business in the Islands or through an internet service provider or other electronic service provider located in the Islands.

## PART VIIIA - Special Economic Zone Companies

### Exempted company may apply to be registered as a special economic zone company

**182A**.(1)   An exempted company that does not hold a licence to carry on business in the Islands to which section 174 refers may, at any time, apply to the Registrar to be registered as a special economic zone company.



(3)   A special resolution passed for the purpose of subsection (1)(b)(ii) has no effect until the company is registered as a special economic zone company.

## Cancellation of registration

**182C.**(1)  A company ceases to be a special economic zone company if —

(a)   the Registrar issues a certificate under section 207 on de-registration of the company; or

(b)   the Registrar issues a certificate of incorporation —

(i)   in accordance with section 31(2) which records a change of name for the company that does not include the words "Special Economic Zone Company" or the letters "SEZC"; and

(ii)   altered to meet the circumstances of the case, where the company passes a special resolution in accordance with section 10 to alter its memorandum of association to exclude the carrying on of special economic zone business,

and in the case of paragraph (b), the company pays a deregistration fee of four hundred dollars.

(2)   On a company ceasing to be a special economic zone company the certificate issued by virtue of section 182B(2) ceases to have effect.

# PART IX - Overseas Companies

## Definition of foreign company

**183.** In this Part, a foreign company means an overseas company which, after the 1st December, 1961, establishes a place of business or commences carrying on business (which expressions in this Part include, without limiting their generality, the sale by or on behalf of an overseas company of its shares or debentures and offering, by electronic means, and subsequently supplying, real or personal property, services or information from a place of business in the Islands or through an internet service provider or other electronic service provider located in the Islands) within the Islands, and all overseas companies which before the 1st December, 1961 established a place of business or carried on business as aforesaid within the Islands at the 1st December, 1961.

## Documents, etc., to be delivered to Registrar by foreign companies

**184.** (1)  Every foreign company shall, within one month after becoming a foreign company as defined in section 183, deliver to the Registrar for registration the following —



order the overseas company to transfer any lands held by, vested in or belonging to it to a person capable of holding such lands and of being registered as proprietor thereof under the *Registered Land Act (2018 Revision)*.

(3)   If an overseas company fails to comply with an order under subsection (2), the Registrar may apply to the Court for an order that the land shall vest in the Minister charged with responsibility for Finance for the benefit of the Islands and be subject to the disposition of the Cabinet, and the Court may order accordingly.

(4)   An order under subsection (2), and any order or proceedings required by the Court to be served in respect of an application under subsection (3) shall be served by personal service on a person, if any, whose name and address has been delivered by the company to the Registrar under paragraph (e) of section 184(1):

Provided that, in the event any such order or proceedings may not be served by such personal service, it or they may be served by —

(a)   personal service on the attorney holding a power of attorney whereunder that person is authorised to accept service of orders and proceedings of the Court;

(b)   sending it by registered post to the overseas company at its usual or last known postal address in the Islands;

(c)   leaving it at the last known place of business of the overseas company in the Islands;

(d)   publication in three consecutive issues of the Gazette;

(e)   publication in three consecutive issues of a newspaper published and circulating in the Islands; or

(f)   displaying it in a prominent position on the lands and causing it to be kept so displayed for one month.

(5)   In this section —

"**hold land**" bears the meaning ascribed to that expression in section 32(3).

## Registration of foreign companies

**186**. (1)   Upon compliance with section 184, the Registrar shall issue a certificate under that person's hand and seal of office that the foreign company is registered under this Act.

(2)   A certificate of registration of a foreign company issued under subsection (1) shall be conclusive evidence that compliance has been made with all requirements of this Act in respect of registration.



a document may be served on the foreign company by leaving it at or sending it by post to any place of business established by the foreign company in the Islands.

### Deeds, etc., of overseas companies

**190**. The execution of a contract or other instrument in accordance with section 81(6)(a) and the fact that it was executed in accordance with a requirement referred to in section 81(6)(b) may be proved by the affidavit or solemn declaration of a witness to the execution of the contract or other instrument sworn or made before a notary public or any other person qualified to administer oaths in any jurisdiction.

### Execution of deeds, etc.

**191**. (1) An overseas company may appoint and empower a person either generally or in respect of a specified matter, to execute deeds or instruments under seal on its behalf.

(2) Any appointment under subsection (1) need not be made by deed or instrument under seal, but any person so appointed otherwise than by deed or instrument under seal shall not constitute the donee of a power under the *Powers of Attorney Act (1996 Revision)* (but without prejudice to the authority otherwise conferred upon them by the overseas company).

(3) A deed or instrument under seal, signed by a person on behalf of an overseas company pursuant to authority conferred pursuant to subsection (1), shall be binding on that overseas company and shall have effect as if it were executed as such by the overseas company.

### Removing company's name from register

**192**. If any foreign company ceases to carry on or have a place of business in the Islands it shall forthwith give notice of the fact to the Registrar and, as from the date on which notice is so given, the obligation of the foreign company to deliver any document to the Registrar shall cease:

Provided that where the Registrar is satisfied by any other means that the foreign company has ceased to carry on or have a place of business in the Islands it shall be lawful for that person to close the file of the foreign company and thereupon the obligation of the foreign company to deliver any document to the Registrar shall cease.

### Penalties for failing to comply with this Part

**193**. Whenever any foreign company fails to comply with any of the foregoing provisions of this Part, it and every officer or agent of it, commits an offence and is liable to a fine of one hundred dollars or, in the case of a continuing offence, a further fine of ten dollars for every day during which the default continues.



## PART X - Application of Law to Companies Formed or Registered in the Islands

### Application to existing companies

**196**. In the application of this Act to existing companies, it shall apply in the same manner in the case of —

    (a)   a limited company, other than a company limited by guarantee, as if the company had been formed and registered under this Act as a company limited by shares;

    (b)   a company limited by guarantee, as if the company had been formed and registered under this Act as a company limited by guarantee; and

    (c)   a company other than a limited company, as if the company had been formed and registered under this Act as an unlimited company.

### Date of incorporation

**197**. A reference, express or implied, to the date of incorporation of an existing company shall be, where appropriate, construed as a reference to the date on which the company was incorporated and recorded under the laws relating to companies then in force in the Islands.

### Articles of association remain

**198**. The articles of association of an existing company shall, so far as the same are not contrary to any express provisions of this Act, remain in force until altered or rescinded.

## PART XI - General

### Fees in lieu of other provisions

**199**. (1)   Wherever this Act provides for or requires the filing of any document, notice or return with the Registrar or the issue of any certificate or the Registrar provides a copy of any document in respect of which no fee is elsewhere specifically provided, the fees specified in Part 6 of Schedule 5 shall be payable.

    (2)   The Registrar may, in that person's discretion, extend the time within which any thing is required to be done by this Act, whether the time prescribed therefor has expired or not.

    (3)   Notwithstanding any provision of this Act which prescribes a specific *per diem* penalty in respect of a default of any obligation to make a filing or to maintain a record set out in this Act, it shall be lawful for the Registrar, in any case where the aggregate *per diem* penalty has exceeded the amount of five hundred dollars and that person is satisfied that the failure is not due to wilful default, to at any



# PART XII - Transfer by Way of Continuation

## Application for continuation

**201.** (1)   A body corporate incorporated, registered or existing with limited liability and a share capital under the laws of any jurisdiction outside the Islands (which body corporate is in this Part referred to as a "registrant") may apply to the Registrar to be registered by way of continuation as an exempted company limited by shares under this Act.

(2)   The Registrar shall register a registrant if —

 (a)   the registrant is incorporated, registered or existing in a jurisdiction whose laws permit or do not prohibit the transfer of the registrant in the manner hereinafter provided in this Part (hereinafter in this section referred to as "a relevant jurisdiction");

 (b)   the registrant has paid to the Registrar a fee equal to the fee payable on the registration of an exempted company under section 26;

 (c)   the registrant has delivered to the Registrar the documents listed in paragraphs (a) to (d) of section184(1) (in this Part referred to as "the charter documents");

 (d)   the name of the registrant is acceptable to the Registrar under section 30 or the registrant has undertaken to change the name to an acceptable name within sixty days of registration;

 (e)   the registrant has filed with the Registrar notice of the address of its proposed registered office in the Islands;

 (f)   the registrant has filed with the Registrar a declaration signed by a director of the registrant that the operations of the registrant will be conducted mainly outside the Islands;

 (g)   no petition or other similar proceeding has been filed and remains outstanding or order made or resolution adopted to wind up or liquidate the registrant in any jurisdiction;

 (h)   no receiver, trustee, administrator or other similar person has been appointed in any jurisdiction and is acting in respect of the registrant, its affairs or its property or any part thereof;

 (i)   no scheme, order, compromise or other similar arrangement has been entered into or made in any jurisdiction whereby the rights of creditors of the registrant are and continue to be suspended or restricted;

 (j)   the registrant is able to pay its debts as they fall due;

 (k)   the application for registration is *bona fide* and not intended to defraud existing creditors of the registrant;



Companies Act (2021 Revision)                                                    Section 202

(7)  Paragraphs (g), (h), (i), (j) and (p) of subsection (2) shall be satisfied by filing with the Registrar a declaration or affidavit of a director of the registrant to the effect that, having made due enquiry, that person is of the opinion that the requirements of those paragraphs have been met, and subsection (4) shall, *mutatis mutandis* apply with respect to such declaration or affidavit.

(8)  The Registrar shall register a registrant which is provisionally registered under this Part upon the requirements of paragraphs (b), (d), (k), (l), (m), (n), (o), (q), (r) and (s) of subsection (2) being met, as to which subsection (3) shall, *mutatis mutandis*, apply where relevant.

(9)  A registrant which is provisionally registered shall —

    (a)  within sixty days after registration, deliver, to the Registrar details of any changes in the information required by paragraphs (c) and (e) of subsection (2);

    (b)  file with the Registrar in January of each year following provisional registration, a declaration or affidavit in the form described in subsection (7); and

    (c)  pay to the Registrar in January of each year following provisional registration, a fee of one thousand dollars.

(10)  A registrant which is provisionally registered and which fails to comply with paragraphs (b) and (c) of subsection (9) by 30th June in such year shall cease to be provisionally registered but without prejudice to being provisionally registered anew hereunder upon complying with the requirements of this Part.

**Registration under this Part**

202. (1)  Upon registration of a registrant under this Part, the Registrar shall issue a certificate under that person's hand and seal of office that the registrant is registered by way of continuation as an exempted company and specifying the date of such registration, and section 27(3) shall apply, *mutatis mutandis*, to such certificate.

(2)  The Registrar shall enter in the register of companies the date of registration of the registrant and, to the extent possible with respect to the registrant, particulars of the matters specified.

(3)  From the date of registration of the registrant it shall continue as a body corporate for all purposes as if incorporated and registered as an exempted company under and subject to this Act the provisions of which shall apply to the company and to persons and matters associated therewith as if such company were so incorporated and registered and such company shall have, but without limitation to the generality of the foregoing —

    (a)  the capacity to perform all the functions of an exempted company;

    (b)  the capacity to sue and to be sued;



Companies Act (2021 Revision)                                          Section 203

### Amendment, etc., of charter documents

**203**. (1)    A registrant shall, within ninety days of registration by special resolution passed in accordance with this Act, make such amendments, alterations, modifications, variations, deletions and additions (in this section referred to as "changes"), if any, to its charter documents as are necessary to ensure that they comply with the requirements of this Act as they relate to an exempted company.

(2)    Within ninety days of registration, the registrant —

(a)    may, instead of passing a special resolution making the changes required by subsection (1); or

(b)    shall, whether or not it has passed such a special resolution making, or purporting to make, such changes, if the Registrar so directs,

apply to the Court for an order approving such changes and the Court, if satisfied that the changes (with such modifications, if any, as it considers appropriate) are necessary to ensure that the charter documents of the registrant comply with the requirements of this Act, may approve them accordingly and make such consequential orders as it thinks fit. Changes, when so approved, shall take effect as if they formed part of the charter documents.

(3)    A copy of the special resolution passed under subsection (1) or of the order of the Court made under subsection (2) shall be filed with and registered by the Registrar whose certificate of registration thereof shall be conclusive evidence that the charter documents comply with the requirements of this Act.

(4)    After registration of the registrant and until such time as the charter documents of the registrant are changed to comply with the requirements of this Act or to the extent they cannot be changed so to comply, this Act shall prevail.

(5)    The provisions of the charter documents of a registrant which would, if the company had been incorporated under this Act, have been required by this Act to be included in its memorandum of association shall be deemed to be the registered memorandum of association of the company and the provisions of the charter documents that do not by virtue of the foregoing constitute the registered memorandum of association shall be deemed to be the registered articles of association of the company, and the company and its members shall be bound thereby accordingly.

### Effect of registration under this Part on companies registered under Part IX

**204**. Where a registrant is also registered as a foreign company under Part IX it shall, upon registration under Part XII, automatically cease to be registered under Part IX and the Registrar shall cancel such registration.



(i)     the applicant has delivered to the Registrar an undertaking signed by a director that notice of the transfer has been or will be given within twenty-one days to the secured creditors of the applicant;

(j)     any consent or approval to the transfer required by any contract or undertaking entered into or given by the applicant has been obtained, released or waived, as the case may be;

(k)     the transfer is permitted by and has been approved in accordance with the memorandum and articles of association of the applicant;

(l)     the laws of the relevant jurisdiction with respect to transfer have been or will be complied with;

(m)    the applicant, if licensed under the *Banks and Trust Companies Act (2021 Revision)*, or the *Insurance Act, 2010 [Law 32 of 2010]* or, if so previously licensed and in respect of which such licence shall have been suspended or revoked and not reinstated, has obtained consent of the Authority to the transfer;

(n)     the applicant will upon registration under the laws of the relevant jurisdiction continue as a body corporate limited by shares; and

(o)     the Registrar is not aware of any other reason why it would be against the public interest to de-register the applicant.

(3)    Paragraphs (d), (e), (f), (g), (h), (j), (k), (l) and (n) of subsection (2) shall be satisfied by filing with the Registrar a declaration or affidavit of a director of the applicant to the effect that, having made due enquiry, that person is of the opinion that the requirements of those paragraphs have been met and which declaration or affidavit shall include a statement of the assets and liabilities of the applicant made up to the latest practicable date before the making of the declaration or affidavit.

(4)    A person who, being a director, makes a declaration or affidavit under subsection (3) without reasonable grounds therefor commits an offence and is liable on summary conviction to a fine of fifteen thousand dollars and to imprisonment for five years.

## Certification of deregistration, etc.

**207**. (1)    Upon de-registration of an applicant under this Part, the Registrar shall issue a certificate under that person's hand and seal of office that the applicant has been de-registered as an exempted company and specifying the date of such de-registration.

(2)    The Registrar shall enter in the register of companies the date of de-registration of the applicant.



    (b)   an application for re-registration is delivered to the Registrar together with the necessary documents.

(2)  Such special resolution shall —

    (a)   make such alterations in the company's memorandum of association as are necessary to bring it in substance and in form into conformity with the requirements of this Act with respect to the memorandum of association of an exempted company; and

    (b)   make such alterations in the company's articles of association as are requisite in the circumstances.

(3)  Such application shall be signed by a director of the company, and accompanied by —

    (a)   a copy of the memorandum and articles as altered by the special resolution; and

    (b)   a declaration by a director of the company that the operation of the company will be conducted mainly outside the Islands.

(4)  A special resolution that an ordinary non-resident company be re-registered as an exempted company may change the company's name to any name by which an exempted company could be registered.

(5)  The application shall be accompanied by a re-registration fee equal to the fee payable on the registration of an exempted company under section 26.

### Effect of reregistration of ordinary non-resident company as an exempted company

**211.** (1)  If, on an application under section 210, the Registrar is satisfied that an ordinary non-resident company may be re-registered under that section as an exempted company, that person shall —

    (a)   retain the application and other documents delivered to that person under the section; and

    (b)   issue to the company a certificate of re-registration stating that the company has been re-registered as an exempted company.

(2)  Upon the issue to a company of a certificate of re-registration under this section —

    (a)   the company, by virtue of the issue of that certificate, becomes an exempted company; and

    (b)   any alterations in the memorandum and articles set out in the special resolution take effect accordingly:

Provided that the foregoing shall not operate —

    (i)   to create a new legal entity;

    (ii)  to prejudice or affect the identity or continuity of the company;



(3)  An application may also be made under subsection (1) at the same time as application is made —

    (a)  to re-register an ordinary non-resident company as an exempted company;

    (b)  to register a company by way of continuation as an exempted company; or

    (c)  to register as an exempted limited duration company.

(4)  An application under subsection (1) shall, in addition to any other fee that may be payable, be accompanied by the fee specified in Part 7 of Schedule 5.

(5)  A segregated portfolio company shall, on paying the annual fee payable under section 169, pay the additional fee specified in Part 7 of Schedule 5 and the additional annual fee specified in Part 7 of Schedule 5 in respect of each segregated portfolio it has created (other than those in respect of which notice of termination has been given under subsection (6)), both of which shall be tendered in accordance with section 169(2).

(6)  At the same time as it tenders the fees in accordance with subsection (5) a segregated portfolio company shall furnish to the Registrar a notice containing the names of each segregated portfolio it has created (other than those in respect of which notice of termination has been given hereunder in a prior year) and indicating those which have been terminated under section 228A since the date of the last notice under this subsection.

(7)  A segregated portfolio company which fails to furnish the notice in accordance with subsection (6) shall incur a penalty of ten dollars for every day after 31st March of each year during which the notice is not filed.

## Conversions of existing companies

**214.** (1)  Where an exempted company has been registered prior to an application under section 213(1) the company shall —

    (a)  file with the Registrar a declaration made by at least two directors setting out an accurate statement —

        (i)  of the assets and liabilities of the company as at a date within three months prior to the date of the declaration;

        (ii)  of any transaction or event which, as at the date of the declaration, has occurred or is expected to occur between the date of the statement of assets and liabilities prepared pursuant to subparagraph (i) and the date of registration of the company as a segregated portfolio company which, if it had occurred before the date of the declaration, would have caused material changes to the assets and liabilities disclosed in the declaration;

        (iii)  that the segregated portfolio company intends to operate, and the assets and liabilities which the company proposes to transfer to each of those segregated portfolios;



(3) Each segregated portfolio shall be separately identified or designated and shall include in such identification or designation the words "Segregated Portfolio" or "SP" or "S.P.".

## Shares and dividends

**217.** (1) A segregated portfolio company may create and issue shares in one or more classes or series (including different classes or series relating to the same segregated portfolio), the proceeds of the issue of which shall be included in the segregated portfolio assets of and accounted for in the segregated portfolio in respect of which the segregated portfolio shares are issued.

(2) The proceeds of the issue of shares, other than segregated portfolio shares, shall be included in the segregated portfolio company's general assets.

(3) A segregated portfolio company may pay a dividend or other distribution in respect of segregated portfolio shares of any class or series and whether or not a dividend is declared on any other class or series of segregated portfolio shares or any other shares.

(4) Segregated portfolio dividends or other distributions shall be paid on segregated portfolio shares by reference only to the accounts of and to and out of the segregated portfolio assets and liabilities of the segregated portfolio in respect of which the segregated portfolio shares were issued and otherwise in accordance with the rights of such shares.

## Company to act on behalf of portfolios

**218.** (1) Any act, matter, deed, agreement, contract, instrument under seal or other instrument or arrangement which is to be binding on or to enure to the benefit of a segregated portfolio shall be executed by the segregated portfolio company on behalf of such segregated portfolio which shall be identified or specified, and such execution shall specify that it is in the name of, or by, or for the account of, such segregated portfolio.

(2) If a segregated portfolio company is in breach of subsection (1) the directors shall, forthwith upon becoming aware of the breach —

(a) make any necessary enquiries to determine the correct segregated portfolio to which the relevant act, matter, deed, agreement, contract, instrument under seal or other instrument or arrangement should be attributed;

(b) make the correct attribution; and

(c) notify in writing all persons which are party to the act, matter, deed, agreement, contract, instrument under seal or other instrument or arrangement that was executed, or which may be adversely affected by any such attribution, of that attribution and the parties' rights under subsection (3).



**Segregated portfolio assets**

220. Segregated portfolio assets —

    (a) shall only be available and used to meet liabilities to the creditors of the segregated portfolio company and holders of segregated portfolio shares who are creditors or holders of segregated portfolio shares in respect of that segregated portfolio and who shall thereby be entitled to have recourse to the segregated portfolio assets attributable to that segregated portfolio for such purposes; and

    (b) shall not be available or used to meet liabilities to, and shall be absolutely protected from, the creditors of the segregated portfolio company and holders of segregated portfolio shares who are not creditors or holders of segregated portfolio shares in respect of that segregated portfolio, and who accordingly shall not be entitled to have recourse to the segregated portfolio assets attributable to that segregated portfolio.

**Segregation of liabilities**

221. (1) Where a liability of a segregated portfolio company to a person arises from a matter, or is otherwise imposed, in respect of or attributable to a particular segregated portfolio —

    (a) such liability shall extend only to, and that person shall, in respect of that liability, be entitled to have recourse only to —

        (i) firstly, the segregated portfolio assets attributable to such segregated portfolio; and

        (ii) secondly, unless specifically prohibited by the articles of association, the segregated portfolio company's general assets, to the extent that the segregated portfolio assets attributable to such segregated portfolio are insufficient to satisfy the liability, and to the extent that the segregated portfolio company's general assets exceed any minimum capital amounts lawfully required by a regulatory body in the Islands; and

    (b) such liability shall not extend to, and that person shall not, in respect of that liability, be entitled to have recourse to the segregated portfolio assets attributable to any other segregated portfolio.

    (2) Where a liability of a segregated portfolio company to a person arises or is imposed otherwise than from a matter in respect of a particular segregated portfolio or portfolios, such liability shall extend only to, and that person shall, in respect of that liability, be entitled to have recourse only to, the company's general assets.



     (b)   the distribution of the segregated portfolio assets attributable to the segregated portfolio to those entitled to have recourse thereto.

  (4)  A receivership order —

     (a)   may not be made if the segregated portfolio company is in winding up; and

     (b)   shall cease to be of effect upon commencement of the winding up of the segregated portfolio company, but without prejudice to prior acts of the receiver or that person's agents.

  (5)  No resolution for the voluntary winding up of a segregated portfolio company of which any segregated portfolio is subject to a receivership order shall be effective without leave of the Court.

## Applications for receivership orders

**225**. (1)  An application for a receivership order in respect of a segregated portfolio of a segregated portfolio company may be made by —

     (a)   the company;

     (b)   the directors of the company;

     (c)   any creditor of the company in respect of that segregated portfolio;

     (d)   any holder of segregated portfolio shares in respect of that segregated portfolio; or

     (e)   in respect of a company licensed under the regulatory Laws, the Cayman Islands Monetary Authority where the segregated portfolio company is regulated by the Authority.

  (2)  The Court, on hearing an application —

     (a)   for a receivership order; or

     (b)   for leave, pursuant to section 224(5), for a resolution for voluntary winding up,

may make an interim order or adjourn the hearing, conditionally or unconditionally.

  (3)  Notice of an application to the Court for a receivership order in respect of a segregated portfolio of a segregated portfolio company shall be served upon —

     (a)   the company;

     (b)   in respect of a company licensed under the regulatory Laws, the Cayman Islands Monetary Authority; and

     (c)   such other persons, if any, as the Court may direct,

each of whom shall be given an opportunity of making representations to the Court before the order is made.



Companies Act (2021 Revision)                                          Section 228

(2)    The Court, on hearing an application for the discharge or variation of a receivership order, may make any interim order or adjourn the hearing, conditionally or unconditionally.

(3)    Upon the Court discharging a receivership order in respect of a segregated portfolio of a segregated portfolio company on the ground that the purpose for which the order was made has been achieved or substantially achieved, the Court may direct that any payment made by the receiver to any creditor of the company in respect of that segregated portfolio shall be deemed full satisfaction of the liabilities of the company to that creditor in respect of that segregated portfolio, and the creditor's claims against the company in respect of that segregated portfolio shall be thereby deemed extinguished.

### Remuneration of receiver

228. The remuneration of a receiver and any expenses properly incurred by that person shall be payable, in priority to all other claims, from the segregated portfolio assets attributable to the segregated portfolio in respect of which the receiver was appointed but not from any other assets of the segregated portfolio company.

### Termination and re-instatement

228A.(1)    Where a segregated portfolio has no segregated portfolio assets or liabilities of the segregated portfolio company attributable to it, the segregated portfolio company may by resolution of its directors (or such other authority as may be provided for in, and subject to the provisions of, its articles of association) terminate such segregated portfolio.

(2)    A segregated portfolio company may by resolution of its directors (or such other authority as may be provided for in, and subject to the provisions of, its articles of association) reinstate a segregated portfolio which has been terminated under subsection (1).

## Part XV - Custody, Etc. of Bearer Shares

### Transfer of bearer shares

229.(1)    A company incorporated under this Act shall not issue bearer shares to any person other than a custodian.

(2)    Except where bearer shares in a company are being redeemed by the company or the shareholder holding bearer shares in the company is seeking to convert those shares into registered shares, that shareholder shall not transfer those shares to any person other than a custodian or otherwise dispose of or deal in those shares unless the shareholder is disposing of those shares to, or dealing in those shares with, a custodian.



(12) A shareholder who knowingly transfers ownership of a bearer share contrary to subsection (2) commits an offence and is liable on summary conviction to a fine of ten thousand dollars.

### Custody of bearer shares

**230.** (1) A company incorporated under this Act shall ensure that its bearer shares are deposited with a custodian within twelve months of the 26th April, 2001.

(2) A company may apply in writing to the Registrar for an extension of the period specified under subsection (1), and such application shall be accompanied by —

    (a) a statement of the reasons for the extension;

    (b) the prescribed fee; and

    (c) such other information as the Registrar considers necessary,

and the Registrar may extend the period by a further period of up to twelve months.

(3) If the bearer shares of a company are not deposited with a custodian within the period specified under subsection (1) or any extension of that period granted under subsection (2), then the shares shall be null and void for all purposes under the Law.

(4) Notwithstanding subsection (3), the holder of a bearer share which has been deemed null and void in accordance with subsection (3) may, within three years of the share becoming null and void, petition the Court for the share to be restored; and the Court may make such order as it considers reasonable in the circumstances.

(5) Where the Court has ordered that a bearer share be restored in accordance with subsection (4), the rights under the share shall only be fully restored when the share has been deposited with a custodian.

(6) Where an authorised custodian ("the former custodian") for any reason refuses or is unable to provide services in accordance with this Act or the *Companies Management Act (2021 Revision)*, it shall give the beneficial owners of the bearer shares, the company which has issued the bearer shares and the Authority not less than sixty days' notice of its intention to terminate its services, and the custodian shall provide the beneficial owners with a list consisting of not less than five names of persons who may provide the services of custodian.

(7) Where a beneficial owner of bearer shares refuses or fails within sixty days of receiving a notice under subsection (6) to direct the former custodian to deposit the bearer shares into the custody of a new custodian, the former custodian may provide the company with the name and address of the beneficial owner and instruct the company to register the bearer shares in the name of that beneficial owner, or in the case of a minor, the name of the guardian of the beneficial



Registrar with the Registrar confirming that any bearer shares issued by that company have been registered in the form required by this section.

(8)   A company that fails to comply with subsection (7) shall not for the purposes of this Act be considered to be in good standing.

(9)   Bearer shares which have not been converted pursuant to subsection (1) shall be null and void and be without effect for all purposes of Law.

# PART XVI - Merger and Consolidation

## Definitions in this Part

**232**. In this Part —

"**consolidated company**" means the new company that results from the consolidation of two or more constituent companies;

"**consolidation**" means the combination of two or more constituent companies into a consolidated company and the vesting of the undertaking, property and liabilities of such companies in the consolidated company;

"**constituent company**" means a company that is participating in a merger or consolidation with one or more other companies;

"**merger**" means the merging of two or more constituent companies and the vesting of their undertaking, property and liabilities in one of such companies as the surviving company;

"**parent company**" means, with respect to another company, a company that holds issued shares that together represent at least ninety per cent of the votes at a general meeting of that other company;

"**subsidiary company**" means, with respect to another company, a company of which that other company is the parent company; and

"**surviving company**" means the sole remaining constituent company into which one or more other constituent companies are merged.

## Merger and consolidation

**233**. (1)   Without prejudice to sections 86 and 87, but subject to section 239A, two or more companies limited by shares and incorporated under this Act, may, subject to any express provisions to the contrary in the memorandum and articles of association of any of such companies, merge or consolidate in accordance with subsections (3) to (15).

(2)   Nothing in this Part shall derogate from the Authority's powers in relation to any constituent company that is a licensee under the regulatory laws and that proposes to participate in a merger or consolidation, or from a constituent company's obligations under the regulatory laws.



(6) A plan of merger or consolidation shall be authorised by each constituent company by way of —

    (a) a special resolution of the members of each such constituent company; and

    (b) such other authorisation, if any, as may be specified in such constituent company's articles of association.

(7) Notwithstanding subsection (6)(a), if a parent company incorporated under this Act is seeking to merge with one or more of its subsidiary companies incorporated under this Act, a special resolution under that subsection of the members of such constituent companies is not required if a copy of the plan of merger is given to every member of each subsidiary company to be merged unless that member agrees otherwise.

(8) The consent of each holder of a fixed or floating security interest of a constituent company in a proposed merger or consolidation shall be obtained but if such secured creditor does not grant that person's consent then the Court may upon application of the constituent company that has issued the security waive the requirement for such consent upon such terms as to security to be issued by the consolidated or surviving company or otherwise as the Court considers reasonable.

(9) After obtaining any authorisations and consents under subsections (6) and (8), the plan of merger or consolidation shall be signed by a director on behalf of each constituent company and filed with the Registrar together with, in relation to each constituent company —

    (a) a certificate of good standing;

    (b) a director's declaration that the constituent company is, and the consolidated or surviving company will be, immediately after merger or consolidation, able to pay its debts as they fall due;

    (c) a director's declaration that the merger or consolidation is *bona fide* and not intended to defraud unsecured creditors of the constituent companies;

    (d) a director's declaration that —

        (i) no petition or other similar proceeding has been filed and remains outstanding, and that no order has been made or resolution adopted to wind up the company in any jurisdiction;

        (ii) no receiver, trustee, administrator or other similar person has been appointed in any jurisdiction and is acting in respect of the constituent company, its affairs, or its property or any part thereof; and

        (iii) no scheme, order, compromise or other similar arrangement has been entered into or made in any jurisdiction whereby the rights of creditors of the constituent company are, and continue to be, suspended or restricted;



### Delay of effective date

**234**. A plan of merger or consolidation may provide that such merger or consolidation shall not become effective until a specified date or until the date of the occurrence of a specified event subsequent to the date on which the plan of merger or consolidation is registered by the Registrar, but such date shall not be a date later than the ninetieth day after the date of such registration.

### Termination or amendment

**235**. (1)   A plan of merger or consolidation may contain a provision that at any time prior to the date that the plan becomes effective it may be —

   (a)   terminated by the directors of any constituent company; or

   (b)   amended by the directors of the constituent companies to —

      (i)   change the name of the consolidated company;

      (ii)   change the effective date of the merger or consolidation, provided that the new effective date complies with section 234; and

      (iii)   effect any other changes to the plan as the plan may expressly authorise the directors to effect in their discretion.

(2)   If the plan of merger or consolidation is terminated or amended after it has been filed with the Registrar but before it has become effective, notice of termination or amendment of the plan shall be filed with the Registrar, and shall have effect on the date of registration by the Registrar after that person has satisfied that person's self in accordance with section 233(11).

(3)   A copy of the notice under subsection (2) shall be sent to any person entitled to vote on, consent to or be notified of the plan of merger or consolidation in accordance with section 233.

(4)   The notice of termination or amendment filed in accordance with subsection (2) shall identify the plan of merger or consolidation that is to be terminated or amended and shall state that the plan has been terminated or state the amendments made and in the former case, the Registrar shall issue a certificate of termination.

### Effect of merger or consolidation

**236**. (1)   As soon as a merger or consolidation becomes effective —

   (a)   in the case of a consolidation, the new memorandum of association and articles of association filed with the plan of consolidation shall immediately become the memorandum of association and articles of association of the consolidated company;

   (b)   the rights, the property of every description including choses in action, and the business, undertaking, goodwill, benefits, immunities and privileges of



    (b)   no petition or other similar proceeding has been filed and remains outstanding, and no order has been made or resolution adopted to wind up or liquidate the constituent overseas company in the jurisdiction in which the constituent overseas company is existing;

    (c)   no receiver, trustee, administrator or other similar person has been appointed in any jurisdiction and is acting in respect of the constituent overseas company, its affairs or its property or any part thereof;

    (d)   no scheme, order, compromise or other similar arrangement has been entered into or made in any jurisdiction whereby the rights of creditors of the constituent overseas company are and continue to be suspended or restricted;

    (e)   the constituent overseas company is able to pay its debts as they fall due and the merger or consolidation is *bona fide* and not intended to defraud unsecured creditors of the constituent overseas company;

    (f)   in respect of the transfer of any security interest granted by the constituent overseas company to the surviving or consolidated company —

        (i)   consent or approval to the transfer has been obtained, released or waived;

        (ii)   the transfer is permitted by and has been approved in accordance with the constitutional documents of the constituent overseas company; and

        (iii)   the laws of the jurisdiction of the constituent overseas company with respect to the transfer have been or will be complied with;

    (g)   the constituent overseas company will, upon the merger or consolidation becoming effective, cease to be incorporated, registered or exist under the laws of the relevant foreign jurisdiction; and

    (h)   there is no other reason why it would be against the public interest to permit the merger or consolidation.

(3)   Subsection (2)(a) to (g) shall be satisfied by filing with the Registrar a declaration of a director of the surviving or consolidated company to the effect that, having made due enquiry, that person is of the opinion that the requirements of those paragraphs have been met; and —

    (a)   the declaration shall include a statement of the assets and liabilities of the constituent overseas company made up to the latest practicable date before making the declaration; and

    (b)   a director of the surviving or consolidated company shall be deemed to have made due enquiry for the purposes of subsection (2)(a) to (g) and this subsection if such director has obtained from a director of the constituent overseas company a declaration that the requirements of subsection 2(a) to (g) have been met with respect to such constituent overseas company.



due enquiry for the purposes of subsection (7)(a) to (d) and this subsection (8) if such director has obtained from a director of the constituent overseas company a declaration that the requirements of subsection (7)(a) to (d) have been met with respect to such constituent overseas company.

(9) A person who, being a director, makes a false declaration under subsection (8) commits an offence and is liable on conviction to a fine of twenty thousand dollars or to imprisonment for five years, or both.

(10) Where the surviving or consolidated company is to be an overseas company, the surviving or consolidated overseas company shall file with the Registrar —

    (a) an undertaking that it will promptly pay to the dissenting members of a constituent company incorporated under this Act the amount, if any, to which they are entitled under section 238; and

    (b) such evidence of the merger or consolidation from the jurisdiction of the surviving or consolidated overseas company as the Registrar considers acceptable, such evidence to include the effective date of the merger or consolidation.

(11) The effect of a merger or consolidation where the surviving or consolidated company is to be an overseas company under this section is the same as in the case of a merger or consolidation under this Part if the surviving or consolidated company is incorporated or established under this Act, and all of the relevant provisions of this Part apply, except insofar as the laws of the jurisdiction of the surviving or consolidated overseas company otherwise provide.

(12) For the purposes of this section —

    (a) any references in section 233 to the shares of any constituent company shall be deemed to include references to any other equity interests in such constituent company;

    (b) any references in section 233 to memoranda and articles of association shall be deemed to include references to the equivalent organisational documents of an overseas company; and

    (c) any reference in section 233 or this section to a director of a company shall be deemed to include a reference to any officer, member or other person (howsoever called) in whom the management of an overseas company is vested.

(13) Where the surviving or consolidated company is to be an overseas company, upon payment of the applicable fees under this Act and upon the Registrar being satisfied that the requirements of subsections (7) and (10) have been complied with the Registrar shall, where the overseas company is the surviving or consolidated company, strike off constituent companies incorporated pursuant to this Act from the register and issue a certificate of strike off by way of merger



(7) Upon the giving of a notice of dissent under subsection (5), the member to whom the notice relates shall cease to have any of the rights of a member except the right to be paid the fair value of that person's shares and the rights referred to in subsections (12) and (16).

(8) Within seven days immediately following the date of the expiration of the period specified in subsection (5), or within seven days immediately following the date on which the plan of merger or consolidation is filed, whichever is later, the constituent company, the surviving company or the consolidated company shall make a written offer to each dissenting member to purchase that person's shares at a specified price that the company determines to be their fair value; and if, within thirty days immediately following the date on which the offer is made, the company making the offer and the dissenting member agree upon the price to be paid for that person's shares, the company shall pay to the member the amount in money forthwith.

(9) If the company and a dissenting member fail, within the period specified in subsection (8), to agree on the price to be paid for the shares owned by the member, within twenty days immediately following the date on which the period expires —

    (a) the company shall (and any dissenting member may) file a petition with the Court for a determination of the fair value of the shares of all dissenting members; and

    (b) the petition by the company shall be accompanied by a verified list containing the names and addresses of all members who have filed a notice under subsection (5) and with whom agreements as to the fair value of their shares have not been reached by the company.

(10) A copy of any petition filed under subsection (9)(a) shall be served on the other party; and where a dissenting member has so filed, the company shall within ten days after such service file the verified list referred to in subsection (9)(b).

(11) At the hearing of a petition, the Court shall determine the fair value of the shares of such dissenting members as it finds are involved, together with a fair rate of interest, if any, to be paid by the company upon the amount determined to be the fair value.

(12) Any member whose name appears on the list filed by the company under subsection (9)(b) or (10) and who the Court finds are involved may participate fully in all proceedings until the determination of fair value is reached.

(13) The order of the Court resulting from proceeding on the petition shall be enforceable in such manner as other orders of the Court are enforced, whether the company is incorporated under the laws of the Islands or not.

(14) The costs of the proceeding may be determined by the Court and taxed upon the parties as the Court deems equitable in the circumstances; and upon application



# PART XVII - International Co-operation

## Definitions in this Part

**240**. In this Part —

"**debtor**" means a foreign corporation or other foreign legal entity subject to a foreign bankruptcy proceeding in the country in which it is incorporated or established;

"**foreign bankruptcy proceeding**" includes proceedings for the purpose of reorganising or rehabilitating an insolvent debtor; and

"**foreign representative**" means a trustee, liquidator or other official appointed in respect of a debtor for the purposes of a foreign bankruptcy proceeding.

## Ancillary orders

**241**. (1)   Upon the application of a foreign representative the Court may make orders ancillary to a foreign bankruptcy proceeding for the purposes of —

  (a)   recognising the right of a foreign representative to act in the Islands on behalf of or in the name of a debtor;

  (b)   enjoining the commencement or staying the continuation of legal proceedings against a debtor;

  (c)   staying the enforcement of any judgment against a debtor;

  (d)   requiring a person in possession of information relating to the business or affairs of a debtor to be examined by and produce documents to its foreign representative; and

  (e)   ordering the turnover to a foreign representative of any property belonging to a debtor.

  (2)   An ancillary order may only be made under subsection (1)(d) against —

  (a)   the debtor itself; or

  (b)   a person who was or is a relevant person as defined in section 103(1).

## Criteria upon which the Court's discretion shall be exercised

**242**. (1)   In determining whether to make an ancillary order under section 241, the Court shall be guided by matters which will best assure an economic and expeditious administration of the debtor's estate, consistent with —

  (a)   the just treatment of all holders of claims against or interests in a debtor's estate wherever they may be domiciled;

  (b)   the protection of claim holders in the Islands against prejudice and inconvenience in the processing of claims in the foreign bankruptcy proceeding;



"**corporate services provider**" means an individual or legal entity that provides corporate services under the *Companies Management Act (2021 Revision)*, the *Banks and Trust Companies Act (2021 Revision)*, the *Insurance Act, 2010 [Law 32 of 2010]* or any other regulatory law pursuant to which the individual or legal entity is licensed or permitted to provide registered office services;

"**individual**" means a natural person;

"**legal entity**" means a company, limited liability company or other body that is a legal person under the law by which it is governed;

"**prescribed**" means prescribed by regulations made under section 280;

"**registered shareholder**" means a person who is named as a shareholder of a company or member of a company on the register of members of the company;

"**registrable person**" means an individual or relevant legal entity that is a registrable person under section 251;

"**regulatory law**" means a law defined as such in section 2 of the *Monetary Authority Act (2020 Revision)*, other than the *Directors Registration and Licensing Act, 2014 [Law 10 of 2014]*;

"**relevant interest**" means an interest that a person holds in a company consisting of —

(a)    shares or voting rights in the company; or

(b)    the right to appoint or remove a majority of the directors of the company;

"**relevant legal entity**", in relation to a company, has the meaning assigned by section 248(3);

"**required particulars**" means particulars in respect of a registrable person required to be kept in a company's beneficial ownership register pursuant to sections 253 and 254;

"**restrictions notice**" means a notice issued under section 265; and

"**specified conditions**" means the conditions specified in sections 247(3), (4) and (5).

(2)    This Part is to be read and have effect as if each of the following were an individual, even if they are legal persons under the laws by which they are governed —

(a)    a corporation sole;

(b)    a government or government department of a country or territory or a part of a country or territory;

(c)    an international organisation whose members include two or more countries or territories (or their governments);

(d)    a local authority or local government body.



Companies Act (2021 Revision)                                              Section 246

    (b) to be managed, arranged, administered, operated or promoted by an approved person solely as a consequence of the entity having appointed an approved person to provide its registered office in the Cayman Islands.

  (3) For the purposes of this section, a company ("company S") is a subsidiary of one or more legal entities described in subsection (1) if —

    (a) such legal entities, separately or collectively, hold seventy-five percent or more of the shares or voting rights in company S;

    (b) each such legal entity is a member of company S and, separately or collectively, such legal entities have the right to appoint or remove a majority of its board of directors; or

    (c) it is a subsidiary of one or more legal entities each of which is itself a subsidiary of one or more legal entities described in subsection (1).

## Competent authority

**246**. (1) The Minister charged with responsibility for Financial Services is the competent authority for the purposes of this Part and shall exercise the functions of the competent authority under this Part acting alone or through a person designated by the Minister to act for a specific purpose.

  (2) The competent authority may do all things necessary or convenient to be done in the performance of the competent authority's functions under this Act.

## Identifying Beneficial Owners, Relevant Legal Entities and Registrable Persons

### Duty of companies to identify beneficial owners

**247**. (1) Companies to which this Part applies shall take reasonable steps to identify any individual who is a beneficial owner of the company.

  (2) For the purpose of identifying individuals who are beneficial owners under subsection (1), a company is entitled to rely, without further enquiry, on the response of a person to a notice in writing sent in good faith by the company, unless the company has reason to believe that the response is misleading or false.

  (3) An individual ("X") is a beneficial owner of a company ("company Y") if the individual meets one or more of the following conditions in relation to the company —

    (a) X must hold, directly or indirectly, twenty-five percent or more of the shares in company Y;

    (b) X must hold, directly or indirectly, twenty-five percent or more of the voting rights in company Y;

    (c) X must hold the right, directly or indirectly, to appoint or remove a majority of the board of directors of company Y.



legal entity in relation to that company (or would be a relevant legal entity if it were registered under this Act), if the company knows or has reasonable cause to believe that such shareholder or legal entity knows the identity of a registrable person.

(4) A notice under subsection (3) may require the persons to whom it is addressed —

    (a) to state whether or not they know the identity of a registrable person or any person likely to have that knowledge; and

    (b) if so, within one month of receipt of the notice, to supply, at the expense of the company, any required particulars respecting such registrable persons that are within the addressee's knowledge, and to state whether the particulars are being supplied with or without the knowledge of the person concerned.

(5) A company is not required to give a notice to an individual or a relevant legal entity if —

    (a) the company knows that the individual or entity is not a registrable person; or

    (b) the company has already been informed of the individual's or entity's status as a registrable person in relation to it, and has received all the required particulars.

(6) A person to whom a notice under this section is given is not required by that notice to disclose any information —

    (a) in respect of which a claim to legal professional privilege could be maintained in legal proceedings; or

    (b) that the person is prohibited by any law applicable in the Islands from disclosing.

**Duty of beneficial owners and relevant legal entities to supply information**

**250**. (1) This section applies to a person if —

    (a) the person is a registrable person in respect to a company to which this Part applies;

    (b) the person knows the facts referred to in paragraph (a);

    (c) the person has no reason to believe that the person's required particulars are stated in the company's beneficial ownership register;

    (d) the person has not received a notice from the company under section 249; and

    (e) the circumstances described in paragraphs (a), (b), (c) and (d) have continued for a period of at least one month.

(2) The person shall —



(3)   An ordinary resident company to which this Part applies may engage the Registrar to assist the company to establish and maintain its beneficial ownership register.

(3A)  Where an ordinary resident company does not engage the Registrar under subsection (3), the corporate services provider engaged by the ordinary resident company shall keep the beneficial ownership register of the ordinary resident company.

(4)   The Registrar may charge the prescribed fees for establishing and maintaining a beneficial ownership register on behalf of an ordinary resident company.

(5)   In this section —

"**ordinary non-resident company**" means a company designated by the Financial Secretary as a non-resident company in accordance with section 2(3) of the *Local Companies (Control) Act (2019 Revision)*; and

"**ordinary resident company**" means a company which carries on business in the Islands in accordance with section 2(2) of the *Local Companies (Control) Act (2019 Revision)*.

## Role of corporate services provider and Registrar

**253**.(1)  A company to which this Part applies shall provide in writing to a corporate services provider or to the Registrar, as the case may be, the required particulars of registrable persons in respect of that company, once those particulars have been confirmed.

(1A)  A company that is exempt from the application of this Part under section 245(1) shall provide in the prescribed manner to the corporate services provider or the Registrar, as the case may be —

    (a)   written confirmation of the exemption —

        (i)   identifying the paragraph under section 245(1) that provides for the exemption; and

        (ii)  including the prescribed information about the regulated legal entity, regulated parent entity or approved person referred to in that paragraph; and

    (b)   instructions to file the written confirmation with the competent authority.

(2)   The company referred to in subsection (1) shall instruct the corporate services provider or the Registrar, as the case may be, to enter the required particulars of registrable persons in the company's beneficial ownership register in the prescribed form and manner, or if no registrable persons are identified to enter a nil return.

(3)   Particulars need not be entered concerning an individual or relevant legal entity that is not a registrable person.



    (e)   the date on which it became or ceased to be a registrable person in relation to the company in question.

### Duty of company to keep register up to date

**255.** (1)  If a company to which this Part applies becomes aware of a relevant change with respect to a registrable person whose required particulars are stated in its beneficial ownership register, the company shall give notice to the registrable person, as soon as reasonably practicable after it learns of the change or first has reasonable cause to believe that the change has occurred, requesting confirmation of the change.

(2)  If the person to which a notice is sent under subsection (1) confirms the relevant change, the company shall record the details of the change and instruct the corporate services provider or the Registrar, as the case may be, to enter in the company's beneficial ownership register in the prescribed form and manner —

    (a)   the details of the relevant change confirmed by the company;

    (b)   the date on which the change was made; and

    (c)   whether there are further alterations to be made.

(3)  For the purposes of this section, a relevant change occurs if —

    (a)   the registrable person ceases to be a registrable person in relation to the company; or

    (b)   any other change occurs as a result of which the required particulars stated respecting the registrable person in the company's beneficial ownership register are materially incorrect or incomplete.

(4)  A relevant change with respect to a registrable person is considered to have been confirmed if —

    (a)   the company has given notice to the person requesting confirmation, within the period of one month from the date of the notice, of the relevant change, the date of the change and the required particulars included in the notice; and

    (b)   the details, date and particulars of the change have been supplied or confirmed to the company by the registrable person, or by another person, with the knowledge of the registrable person.

### Consequences of failure to disclose beneficial ownership

**256.** (1)  If a company's corporate services provider or the Registrar, as the case may be, is of the opinion that the company has failed to comply with section 253 or 255 without reasonable excuse or has made a statement to them that is false, deceptive or misleading in respect of a material particular, the corporate services provider or the Registrar, as the case may be, shall give notice of their opinion to the company.



(3)  The duty under subsection (2) shall be complied with by the end of the period of one month beginning with the day on which the person discovered the relevant change.

### Removal of entries from company's beneficial ownership register

**258**. A company may cause an entry relating to a person that is no longer a registrable person to be removed from its beneficial ownership register on the expiration of five years from the date on which the person ceased to be a registrable person in relation to the company.

### Power of the Grand Court to rectify beneficial ownership register

**259**. (1)  If —

    (a)  the name of any individual or relevant legal entity is, without sufficient cause, entered in or omitted from a company's beneficial ownership register as a registrable person; or

    (b)  default is made or unnecessary delay takes place in entering on a company's beneficial ownership register the fact that the individual or relevant legal entity has ceased to be a registrable person,

the person aggrieved, or any individual or relevant legal entity that is a registrable person in relation to the company, may apply to the Grand Court for rectification of the company's beneficial ownership register.

(2)  The Grand Court may —

    (a)  refuse the application; or

    (b)  order rectification of the beneficial ownership register and payment by the company of any damages sustained by any person aggrieved.

(3)  On an application under this section, the Grand Court may decide any question —

    (a)  as to whether the name of any person who is a party to the application should or should not be entered in or omitted from the company's beneficial ownership register; and

    (b)  that is necessary or expedient to be decided for rectification of the company's beneficial ownership register.

(4)  If the Grand Court makes an order for rectification of a company's beneficial ownership register against the company, it shall direct notice of the rectification to be given to the competent authority.



### Limits on searches that may be executed

**262.** (1)  The competent authority shall execute a search of a company's beneficial ownership register by means of the search platform if formally requested to do so by a senior official designated by name or position by the Minister, representing one of the following bodies —

   (a)  the financial intelligence unit, as defined in the *Proceeds of Crime Act (2020 Revision)*;

   (b)  the Financial Reporting Authority, as defined in the *Proceeds of Crime Act (2020 Revision)*;

   (c)  the Cayman Islands Monetary Authority;

   (ca)  the Anti-Corruption Commission established under section 3 of the *Anti-Corruption Act (2019 Revision)*;

   (d)  the Tax Information Authority, designated under section 4 of the *Tax Information Authority Act (2021Revision)*; and

   (e)  any other body which is assigned responsibility for monitoring compliance with money laundering regulations under section 4(9) of the *Proceeds of Crime Act (2020 Revision)*.

   (2)  **Repealed** by section 8(b) of the *Companies (Amendment) Act, 2020 [Law 4 of 2020]*.

   (3)  The competent authority shall execute a search of a company's beneficial ownership register by means of the search platform if formally requested to do so by the Financial Crime Unit of the Royal Cayman Islands Police Service if a senior official of the Unit certifies that the request for the search is in response to a request from a jurisdiction listed in Schedule 6 that has entered into an agreement with the Government respecting the sharing of beneficial ownership information made —

   (a)  by a law enforcement official designated by the agreement; and

   (b)  in compliance with that agreement.

   (3A)  The competent authority may execute a search of the beneficial ownership register of a company in accordance with this Part for the purpose of verifying the accuracy of the information provided by the company.

   (4)  No person shall use the search platform to search a company's beneficial ownership register except the competent authority.



    (c)   the relevant interest is not subject to a security interest granted to a third party who is not affiliated with the person.

  (2)  In deciding whether to send a restrictions notice, the corporate services shall have regard to the effect of the notice on the rights of persons in respect of the relevant interest, including third parties, persons with a security interest over the relevant interest, shareholders and other beneficial owners.

**Effect of restrictions notice**

**266.** (1)  The effect of a restrictions notice with respect to a relevant interest is as follows —

    (a)   any transfer or agreement to transfer the interest is void;

    (b)   no rights are exercisable in respect of the interest;

    (c)   no shares may be issued in respect of the interest or in pursuance of an offer made to the interest-holder;

    (d)   except in a liquidation, no payment may be made of sums due from the company in respect of the interest, whether in respect of capital or otherwise; and

    (e)   other than in a liquidation, an agreement to transfer any of the following associated rights in relation to the relevant interest is void —

        (i)   a right to be issued with any shares issued in respect of the relevant interest; or

        (ii)  a right to receive payment of any sums due from the company in respect of the relevant interest.

  (2)  This section does not apply to an agreement to transfer a relevant interest referred to in subsection (1)(a) or to an associated right referred to in subsection (1)(e), if the agreement results from the making of an order referred to in section 270(2)(b).

**Protection of third party rights**

**267.** (1)  The Grand Court may, on application by any person aggrieved, give a direction for the purpose of protecting the rights of third parties, persons with a security interest over the relevant interest, shareholders or other beneficial owners in respect of a relevant interest, if the Court is satisfied that a restrictions notice unfairly affects those rights.

  (2)  An order under this section —

    (a)   shall direct, subject to such terms as the Court thinks fit, that certain acts will not constitute a breach of the restrictions placed on the relevant interest by the restrictions notice;

    (b)   shall specify the acts that will not constitute a breach of the restrictions; and



    (a)   the Court is satisfied that the information required by the notice served under section 249 or 255 has been disclosed to the company and no unfair advantage has accrued to any person as a result of the earlier failure to make that disclosure; or

    (b)   the relevant interest is to be transferred for valuable consideration and the Court approves the transfer.

(3)   An order made by virtue of subsection (2)(b) may continue, in whole or in part, the restrictions mentioned in section 266(1)(c) and (d) so far as they relate to a right acquired or offer made before the transfer.

(4)   Where any restrictions continue in force by virtue of subsection (3) —

    (a)   an application may be made under this section for an order directing that the relevant interest cease to be subject to those restrictions; and

    (b)   subsection (2) does not apply in relation to the making of such an order.

### Orders for sale

**271**. (1)   On application by a corporate services provider that issues a restrictions notice, the Grand Court may order that the relevant interest subject to restrictions be sold, provided that the Court approves the sale.

(2)   A Court that makes an order under subsection (1) may make such further order relating to the sale or transfer of the interest as it thinks fit on application by —

    (a)   the corporate services provider that issued the restrictions notice;

    (b)   the person appointed in pursuance of the order to effect the sale; or

    (c)   any person with an interest in the relevant interest.

(3)   On making an order under subsection (1) or (2), the Court may order that the applicant's costs be paid from the proceeds of sale.

### Proceeds of sale of relevant interest

**272**. (1)   If a relevant interest is sold pursuant to an order under section 271, the proceeds of the sale, less the costs of the sale, must be paid into the Grand Court for the benefit of persons who are beneficially interested in the relevant interest.

(2)   A person who is beneficially interested in the relevant interest may apply to the Grand Court for the whole or part of those proceeds to be paid to that person.

(3)   On an application under subsection (2), the Court shall order the payment to the applicant of —

    (a)   the whole of the proceeds of sale together with any interest on the proceeds; or

    (b)   if another person was also beneficially interested in the relevant interest at the time of the sale, such proportion of the proceeds (and any interest) as



(2)  A person does not commit an offence under subsection (1)(a) if the person proves that the requirement to give information was frivolous or vexatious.

(3)  A person who commits an offence under this section is liable —

  (a)  on conviction on indictment —

    (i)  in the case of a first offence, to a fine of twenty-five thousand dollars; or

    (ii)  in the case of a second or subsequent offence, to a fine of fifty thousand dollars or to imprisonment for a term of two years, or to both; or

  (b)  on summary conviction to imprisonment for a term of twelve months or a fine of five thousand dollars, or to both.

## Failure to provide information

**276.** (1)  A person commits an offence if the person —

  (a)  knowingly and wilfully fails to comply with a duty under section 250 or 257 within the time required by that section; or

  (b)  in purported compliance with such a duty —

    (i)  makes a statement that the person knows to be false in a material particular; or

    (ii)  recklessly makes a statement that is false in a material particular.

(2)  A person who commits an offence under this section is liable —

  (a)  on conviction on indictment —

    (i)  in the case of a first offence, to a fine of twenty-five thousand dollars; or

    (ii)  in the case of a second or subsequent offence, to a fine of fifty thousand dollars or to imprisonment for a term of two years, or to both; or

  (b)  on summary conviction to imprisonment for a term of twelve months or a fine of five thousand dollars, or to both.

## Unlawful search or disclosure of beneficial ownership information

**277.** A person who conducts a search of a company's beneficial ownership register contrary to section 262(3), (3A) or (4) or discloses beneficial ownership information contrary to section 264 commits an offence and is liable on summary conviction to a fine of five thousand dollars or imprisonment for twelve months, or to both.



(b)  if the competent authority is satisfied that the default was knowingly and wilfully authorised or permitted, shall incur in addition to the penalty under paragraph (a), a penalty of one thousand dollars and a further penalty of one hundred dollars for every day during which the default continues.

## Regulations

**280**. (1)  The Cabinet may make regulations respecting anything required to carry out this Part or prescribing anything required to be prescribed under this Part, including regulations —

(a)  specifying criteria for the exercise of the competent authority's exemption powers under section 279;

(b)  respecting the giving of notices under section 249 or 255, including the form, content and manner of giving such notices;

(c)  to add to or remove from any of the lists of required particulars, including specifying the particulars required respecting the nature of control of a person referred to in section 254 over the company referred to in the particulars;

(d)  requiring additional matters to be noted in a company's beneficial ownership register;

(e)  requiring the competent authority, the Registrar, a corporate services provider or a company to refrain from using or disclosing particulars of a prescribed kind from a company's beneficial ownership register (or to refrain from doing so except in prescribed circumstances) where an application is made to the competent authority requesting them to refrain from so doing;

(f)  specifying the manner and form in which a company shall keep its beneficial ownership register;

(g)  setting the fees that the Registrar may charge for services pursuant to an engagement by a company under section 252 to establish and maintain the company's beneficial ownership register;

(h)  respecting the procedure to be followed by corporate services providers issuing and withdrawing restrictions notices, including regulations providing for —

    (i)  the form and content of restrictions notices, and the manner in which they must be given;

    (ii)  the factors to be taken into account in deciding what counts as a reason sufficient to justify a person's failure to comply with a notice issued under section 249 or 255;



# PART XVIIB – Administrative fines

### Registrar's power to fine

**281A.**The Registrar has the power to impose an administrative fine on a person who breaches a provision of this Act that is specified in Schedule 7.

### Fine amounts

**281B.**The fine shall be five thousand dollars for a breach and the Registrar may, in addition to the fine for the initial breach, impose a further fine of one thousand dollars for every month that the breach continues, until one of the following occurs —

    (a)   the breach stops or is remedied;

    (b)   payment of the initial fine and all fines imposed for the continuing breach; or

    (c)   the total of the initial fine and all fines for the continuing breach amounts to twenty-five thousand dollars.

### The power to fine

**281C.** For the avoidance of doubt —

    (a)   a fine may be imposed for a breach that is not an offence;

    (b)   where a breach set out in Schedule 7 is also an offence, a fine for the breach is not limited by the penalty under the provision or by sections 6(2)(ii) and 8 of the *Criminal Procedure Code (2019 Revision)*; and

    (c)   the Registrar shall not impose a fine where criminal proceedings have commenced or have been concluded in relation to the acts that constitute the breach.

### Limitation period

**281D.**(1)  The Registrar shall not impose a fine after the expiration of six months after the date on which the Registrar became aware of the occurrence of the breach.

    (2)   For the purpose of subsection (1), the Registrar becomes aware of the breach when information is first received from which the breach could reasonably have been inferred.

### Relationship with penalties

**281E.**If a breach set out in Schedule 7 is an offence, a fine for the breach shall not preclude a prosecution for the breach or liability for any relevant fees.

### Registrar may issue guidance

**281F.**The Registrar may issue guidance on the enforcement of administrative fines.



# SCHEDULE 1

*(section 22(1))*

## Table A

## Regulations for Management of a Company Limited by Shares

### *Preliminary*

1.  (1)  In these regulations —

    "**Law**" means the Companies Act *(2021 Revision)*.

    (2)  Where any provision of the Law is referred to, the reference is to that provision as modified by any law for the time being in force.

    (3)  Unless the context otherwise requires, expressions defined in the Law or any statutory modification thereof in force at the date at which these regulations become binding on the company, shall have the meanings so defined.

### *Shares*

2.  Subject to the provisions, if any, in that behalf of the memorandum of association, and without prejudice to any special rights previously conferred on the holders of existing shares, any share may be issued with such preferred, deferred or other special rights, or such restrictions, whether in regard to dividend, voting, return of share capital or otherwise as the company may, from time to time, by special resolution determine, and any preference share may, with the sanction of a special resolution, be issued on the terms that it is, or at the option of the company is liable, to be redeemed.

3.  If, at any time, the share capital is divided into different classes of shares, the rights attached to any class (unless otherwise provided by the terms of issue of the shares of that class) may be varied with the consent in writing of the holders of seventy-five per cent of the issued shares of that class or with the sanction of a special resolution passed at a separate general meeting of the holders of the shares of the class. To every such separate general meeting the provisions of these regulations relating to general meetings shall, *mutatis mutandis*, apply, but so that the necessary quorum shall be two persons at least holding or representing by proxy one-third of the issued shares of the class and that any holder of shares of the class present in person or by proxy may demand a poll.

4.  Every person whose name is entered as a member in the register of members shall, without payment, be entitled to a certificate of the company specifying the share or shares held by that person and the amount paid up thereon:



11.  The joint holders of a share shall be jointly and severally liable to pay calls in respect thereof.

12.  If a sum called in respect of a share is not paid before or on the day appointed for payment thereof, the person from whom the sum is due shall pay interest upon the sum at the rate of six per cent per annum from the day appointed for the payment thereof to the time of the actual payment but the directors shall be at liberty to waive payment of that interest wholly or in part.

13.  The provisions of these regulations as to the liability of joint holders and as to payment of interest shall apply in the case of non-payment of any sum which, by the terms of issue of a share, becomes payable at a fixed time, whether on account of the amount of the share, or by way of premium, as if the same had become payable by virtue of a call duly made and notified.

14.  The directors may make arrangements on the issue of shares for a difference between the holders in the amount of calls to be paid and in the times of payment.

15.  The directors may, if they think fit, receive from any member willing to advance the same all or any part of the moneys uncalled and unpaid upon any shares held by that person; and upon all or any of the moneys so advanced may (until the same would, but for such advance, become presently payable) pay interest at such rate (not exceeding, without the sanction of the company in general meeting, six per cent) as may be agreed upon between the member paying the sum in advance and the directors.

### *Transfer and Transmission of Shares*

16.  The instrument of transfer of any share shall be executed by or on behalf of the transferor and transferee, and the transferor shall be deemed to remain a holder of the share until the name of the transferee is entered in the register of members in respect thereof.

17.  Shares shall be transferred in the following form, or in any usual or common form approved by the directors —

I, A.B., of                     in consideration of the sum of $          paid to me by C.D., of                    (hereinafter called "the said transferee") do hereby transfer to the said transferee the share (or shares) numbered in the undertaking called the                     Company Limited, to hold unto the said transferee, subject to the several conditions on which I hold the same; and I, the said transferee, do hereby agree to take the said share (or shares) subject to the conditions aforesaid. As witnessed our hands the    day of           , 20  .
Witness to the signatures of, etc.



23. Such notice shall name a further day (not earlier than the expiration of fourteen days from the date of the notice) on or before which the payment required by the notice is to be made, and shall state that, in the event of non-payment at or before the time appointed, the shares in respect of which the call was made will be liable to be forfeited.

24. If the requirements of such notice are not complied with, any share in respect of which the notice has been given may at any time thereafter, before the payment required by the notice has been made, be forfeited by a resolution of the directors to that effect.

25. A forfeited share may be sold or otherwise disposed of on such terms and in such manner as the directors think fit, and at any time before a sale or disposition the forfeiture may be cancelled on such terms as the directors think fit.

26. A person whose shares have been forfeited shall cease to be a member in respect of the forfeited shares, but shall, notwithstanding, remain liable to pay to the company all moneys which at the date of forfeiture were payable by that person to the company in respect of the shares, but that person's liability shall cease if and when the company receives payment in full of the nominal amount of the shares.

27. A statutory declaration in writing that the declarant is a director of the company, and that a share in the company has been duly forfeited on a date stated in the declaration, shall be conclusive evidence of the facts therein stated as against all persons claiming to be entitled to the share. The company may receive the consideration, if any, given for the share on any sale or disposition thereof and may execute a transfer of the share in favour of the person to whom the share is sold or disposed of and that person shall thereupon be registered as the holder of the share, and shall not be bound to see to the application of the purchase money, if any, nor shall that person's title to the share be affected by any irregularity or invalidity in the proceedings in reference to the forfeiture, sale or disposal of the share.

28. The provisions of these regulations as to forfeiture shall apply in the case of non-payment of any sum which by the terms of issue of a share becomes payable at a fixed time, whether on account of the amount of the share, or by way of premium, as if the same had been payable by virtue of a call duly made and notified.

29. The company may, by ordinary resolution, convert any paid-up shares into stock, and reconvert any stock into paid-up shares of any denomination.

30. The holders of stock may transfer the same, or any part thereof, in the same manner and subject to the same regulations as and subject to which the shares from which the stock arose might prior to conversion have been transferred, or as near thereto as circumstances admit; but the directors may, from time to time, fix the minimum amount of stock transferable and restrict or forbid the transfer of fractions of that minimum, but the minimum shall not exceed the nominal amount of the shares from which the stock arose.



37.  The company may, by special resolution, reduce its share capital and any capital redemption reserve fund in any manner and with, and subject to, any incident authorised and consent required by law.

## General Meetings

38.  A general meeting shall be held once in every calendar year at such time (not being more than fifteen months after the holding of the last preceding general meeting) and place as may be resolved by the company in general meeting, or in default, at such time in the third month following that in which the anniversary of the company's incorporation occurs, and at such place as the directors shall appoint. In default of a general meeting being so held, a general meeting shall be held in the month next following, and may be convened by any two members in the same manner as nearly as possible as that in which meetings are to be convened by the directors.

39.  Such general meetings shall be called ordinary general meetings; all other general meetings shall be called extraordinary general meetings.

40.  The directors may, whenever they think fit, convene an extraordinary general meeting. If, at any time, there are not in the Island sufficient directors capable of acting to form a quorum, any director or any two members of the company may convene an extraordinary general meeting in the same manner as nearly as possible as that in which meetings may be convened by the directors.

## Notice of General Meetings

41.  Subject to section 60 of the Law relating to special resolutions, at least seven days' notice (exclusive of the day on which the notice is served or deemed to be served, but inclusive of the day for which notice is given) specifying the place, day and hour of meeting and, in case of special business, the general nature of that business shall be given in manner hereinafter provided, or in such other manner, if any, as may be prescribed by the company in general meetings, to such persons as are, under the regulations of the company, entitled to receive such notices from the company; but with the consent of all the members entitled to receive notice of some particular meeting, that meeting may be convened by such shorter notice and in such manner as those members may think fit.

42.  The accidental omission to give notice of a meeting to, or the non-receipt of a notice of a meeting by any member shall not invalidate the proceedings at any meeting.



Companies Act (2021 Revision)                                                      SCHEDULE 1

50.   If a poll is duly demanded it shall be taken in such manner as the chairperson directs, and the result of the poll shall be deemed to be the resolution of the meeting at which the poll was demanded.

51.   In the case of an equality of votes, whether on a show of hands or on a poll, the chairperson of the meeting at which the poll is demanded shall be entitled to a second or casting vote.

52.   A poll demanded on the election of a chairperson or on a question of adjournment shall be taken forthwith; a poll demanded on any other question shall be taken at such time as the chairperson of the meeting directs.

### *Votes of Members*

53.   On a show of hands every member present in person shall have one vote. On a poll every member shall have one vote for each share of which that person is the holder.

54.   In the case of joint holders the vote of the senior who tenders a vote, whether in person or by proxy, shall be accepted to the exclusion of the votes of the other joint holders, and for this purpose seniority shall be determined by the order in which the names stand in the register of members.

55.   A member of unsound mind, or in respect of whom an order has been made by any court having jurisdiction in lunacy, may vote, whether on a show of hands or on a poll, by that person's committee or other person in the nature of a committee appointed by that court, and any such committee or other person may, on a poll, vote by proxy.

56.   No member shall be entitled to vote at any general meeting unless all calls or other sums presently payable by that person in respect of shares in the company have been paid.

57.   On a poll votes may be given either personally or by proxy.

58.   The instrument appointing a proxy shall be in writing under the hand of the appointor or that person's attorney duly authorised in writing or, if the appointor is a corporation, either under seal or under the hand of an officer or attorney duly authorised. A proxy need not be a member of the company.

59.   The instrument appointing a proxy and the power of attorney or other authority, if any, under which it is signed, or a notarially certified copy of that power or authority shall be deposited at the registered office of the company not less than forty-eight hours before the time for holding the meeting or adjourned meeting at which the person named in the instrument proposes to vote, and in default the instrument of proxy shall not be treated as valid.

60.   An instrument appointing a proxy may be in the following form or any other form approved by the directors —

Company Limited



67. The directors may, from time to time, appoint one or more of their body to the office of managing director or manager for such term and at such remuneration (whether by way of salary, commission or participation in profits, or partly in one way and partly in another) as they may think fit and a director so appointed shall not, while holding that office, be subject to retirement by rotation, or taken into account in determining the rotation or retirement of directors; but that person's appointment shall be subject to determination *ipso facto* if that person ceases from any cause to be a director, or if the company in general meeting resolves that that person's tenure of the office of managing director or manager be determined.

68. The amount for the time being remaining undischarged of moneys borrowed or raised by the directors for the purposes of the company (otherwise than by the issue of share capital) shall not, at any time, exceed the issued share capital of the company without the sanction of the company in general meeting.

69. The directors shall cause minutes to be made in books provided for the purpose —

    (a)  of all appointments of officers made by the directors;

    (b)  of the names of the directors present at each meeting of the directors and of any committee of the directors; and

    (c)  of all resolutions and proceedings at all meetings of the company, and of the directors and of committees of directors,

and every director present at any meeting of directors or committee of directors shall sign that person's name in a book to be kept for that purpose.

### *The Seal*

70. Any seal of the company shall not be affixed to any instrument except by the authority of a resolution of a board of directors, and in the presence of a director and of the secretary or such other person as the directors may appoint for the purpose; and that director and the secretary or other person as aforesaid shall sign every instrument to which any seal of the company is so affixed in their presence.

### *Disqualification of Directors*

71. The office of director shall be vacated, if the director —

    (a)  without the consent of the company in general meeting holds any other office of profit under the company except that of managing director or manager;

    (b)  becomes bankrupt;

    (c)  is found to be or becomes of unsound mind;

    (d)  resigns that person's office by notice in writing to the company; or

    (e)  is directly or indirectly interested in any contract with the company or participates in the profits of any contract with the company:



### *Proceedings of Directors*

80.   The directors may meet together for the despatch of business, adjourn and otherwise regulate their meetings, as they think fit. Questions arising at any meeting shall be decided by a majority of votes. In case of an equality of votes the chairperson shall have a second or casting vote. A director may, and the secretary on the requisition of a director shall, at any time, summon a meeting of the directors.

81.   The quorum necessary for the transaction of the business of the directors may be fixed by the directors, and unless so fixed shall, when the number of directors exceeds three, be three, and when the number of directors does not exceed three, be two.

82.   The continuing directors may act notwithstanding any vacancy in their body, but, if and so long as their number is reduced below the number fixed by or pursuant to the regulations of the company as the necessary quorum of directors, the continuing directors may act for the purpose of increasing the number of directors to that number, or of summoning a general meeting of the company, but for no other purpose.

83.   The directors may elect a chairperson of their meetings and determine the period for which that person is to hold office; but if no such chairperson is elected, or if at any meeting the chairperson is not present within five minutes after the time appointed for holding the same, the directors present may choose one of their number to be chairperson of the meeting.

84.   The directors may delegate any of their powers to committees consisting of such member or members of their body as they think fit; any committee so formed shall, in the exercise of the powers so delegated, conform to any regulations that may be imposed on it by the directors.

85.   A committee may elect a chairperson of its meetings; if no such chairperson is elected, or if at any meeting the chairperson is not present within five minutes after the time appointed for holding the same, the members present may choose one of their number to be chairperson of the meeting.

86.   A committee may meet and adjourn as it thinks proper. Questions arising at any meeting shall be determined by a majority of votes of the members present and, in case of an equality of votes, the chairperson shall have a second or casting vote.

87.   All acts done by any meeting of the directors or of a committee of directors, or by any person acting as a director, shall, notwithstanding that it be afterwards discovered that there was some defect in the appointment of any such director or person acting as aforesaid, or that they or any of them were disqualified, be as valid as if every such person had been duly appointed and was qualified to be a director.

### *Dividends and Reserve*

88.   The company in general meeting may declare dividends, but no dividend shall exceed the amount recommended by directors.



98.   The directors shall, from time to time, determine whether and to what extent, at what times and places and under what conditions or regulations the accounts and books of the company or any of them shall be open to the inspection of members not being directors, and no member (not being a director) shall have any right of inspecting any account, book or document of the company except as conferred by law or authorised by the directors or by the company in general meeting.

99.   At the ordinary general meeting in every year the directors shall cause to be prepared and shall lay before the company a profit and loss account and a balance sheet for the period since the preceding account or, (in the case of the first ordinary general meeting) since the commencement of business by the company, made up to a date not more than six months before such meeting.

100.  A copy of every balance sheet (including every document required by law to be annexed thereto) which is to be laid before the company in general meeting together with a copy of the auditor's report shall, not less than seven days before the date of the meeting, be sent to all persons entitled to receive notices of general meetings of the company.

### *Audit*

101.  The accounts relating to the company's affairs shall be audited in such manner as may be determined from time to time by the company in general meeting or, failing any such determination, by the directors.

### *Notices*

102. (1)   A notice may be given by the company to any member either personally or by sending it by post to that person to that person's registered address, or (if that person has no registered address in the Islands) to the address, if any, in the Islands supplied by that person to the company for the giving of notices to that person.

     (2)   Where a notice is sent by post, service of the notice shall be deemed to be effected by properly addressing, prepaying and posting a letter containing the notice, and to have been effected in the case of a notice of a meeting at the expiration of twenty-four hours after the letter containing the same is posted, and in any other case at the time at which the letter would be delivered in the ordinary course of post.

103.  If a member has no registered address in the Islands and has not supplied to the company an address in the Islands for the giving of notices to that person, a notice addressed to that person and advertised in a daily newspaper circulating in the Islands shall be deemed to be duly given on that person at noon on the day following the day on which the newspaper is circulated and the advertisement appeared therein.



Companies Act (2021 Revision)                                         SCHEDULE 1A

# SCHEDULE 1A

*(section 26(3) )*

## Required Particulars

The required particulars are —

- (a) the name of the company and, in the case of an exempted company, the exempted company's dual foreign name (if any) together with its translated name;

- (b) the part of the Islands in which the registered office of the company is proposed to be situate;

- (c) the amount of capital of the company and, in the case of a company having its share capital divided into shares of a nominal or par value, the number of shares into which it is divided and the fixed amounts thereof;

- (d) the names and addresses of the subscribers to the memorandum and the number of shares taken by each subscriber;

- (e) the date of execution of the memorandum of association;

- (f) the date of filing of the memorandum of association;

- (g) the number assigned to the company;

- (h) in the case of a company limited by guarantee or a company that has no limit placed on the liability of its members —

- (i) a statement that the company is limited by guarantee or is unlimited, as the case may be; and

- (ii) the omission of any of the particulars specified in this Schedule which are irrelevant or inappropriate;

- (i) the nature of the business; and

- (j) the date of the end of the company's financial year.

---



Revised as at 31st December, 2020                                    Page 195

    (a)    a person who holds or is considered to hold a deposit after the presentation of the petition for the winding up of the bank or the commencement of the voluntary winding up of the bank (except in the case of the death of the owner of the deposit); and

    (b)    the following persons making deposits as —

        (i)    a person licensed under section 6(1) of the *Banks and Trust Companies Act (2021 Revision)*;

        (ii)    a person authorised, licensed or recognised as a bank or deposit holder in a country or territory outside the Islands;

        (iii)    a person who, in the opinion of the Court, has any responsibility for, or may have profited, or may profit, directly or indirectly, from the winding up;

        (iv)    a person who was, at the date of presentation of the petition for the winding up of the bank or the commencement of the voluntary winding up of the bank, a director, controller or manager of the bank or who, in the opinion of the court exercised such functions;

        (v)    a person who is the legal or beneficial owner of five percent or more of the shares of all classes issued by the bank; or

        (vi)    a company or corporation, whether or not incorporated in the Islands, which is, at the date of the presentation of the petition for the winding up of the bank or the commencement of the voluntary winding up of the bank, a parent, subsidiary or fellow subsidiary of the bank, or which is in common ownership with the bank.

3.    The deposit limit is twenty thousand dollars in respect of each eligible depositor or its equivalent in any foreign currency for which purpose the applicable exchange rate shall be that determined by the Court in accordance with section 150.

4.    For the purpose of calculating the amount of eligible deposits —

    (a)    separate deposits in the same legal or beneficial ownership shall be aggregated and treated as one deposit;

    (b)    the ownership of a deposit in joint names shall be deemed to be divided equally between the joint depositors;

    (c)    the ownership of a deposit in the name of a partnership shall be deemed to be divided equally among the partners;

    (d)    a deposit which is a client account, and which is designated as such, shall be treated as a separate deposit, made by the client of the depositor, of amounts corresponding to the amount to which such client is entitled; and

    (e)    the amount of each eligible deposit shall be reduced by the amount of any liability of the depositor to the bank in respect of which a right of set-off



# SCHEDULE 3

## Powers of Liquidators

*(section 110)*

### *PART 1*

### Powers exercisable with sanction

1.  Power to bring or defend any action or other legal proceeding in the name and on behalf of the company.

2.  Power to carry on the business of the company so far as may be necessary for its beneficial winding up.

3.  Power to dispose of any property of the company to a person who is or was related to the company.

4.  Power to pay any class of creditors in full.

5.  Power to make any compromise or arrangement with creditors or persons claiming to be creditors or having or alleging themselves to have any claim (present or future, certain or contingent, ascertained or sounding only in damages) against the company or for which the company may be rendered liable.

6.  Power to compromise on such terms as may be agreed all debts and liabilities capable of resulting in debts, and all claims (present or future, certain or contingent, ascertained or sounding only in damages) subsisting, or supposed to subsist between the company and a contributory or alleged contributory or other debtor or person apprehending liability to the company.

7.  Power to deal with all questions in any way relating to or affecting the assets or the winding up of the company, to take any security for the discharge of any such call, debt, liability or claim and to give a complete discharge in respect of it.

8.  The power to sell any of the company's property by public auction or private contract with power to transfer the whole of it to any person or to sell the same in parcels.

9.  The power to raise or borrow money and grant securities therefor over the property of the company.

10. The power to engage staff (whether or not as employees of the company) to assist that person in the performance of that person's functions.

11. The power to engage attorneys and other professionally qualified persons to assist that person in the performance of that person's functions.



Companies Act (2021 Revision)                                                    SCHEDULE 4

# SCHEDULE 4

*(section 40B)*

## APPROVED STOCK EXCHANGES

The following are approved stock exchanges —

| | | |
|---|---|---|
| American Stock Exchange (AMEX) | Euronext Brussels | NYSE Euronext |
| Amman Stock Exchange | Euronext Lisbon | NYSE MKT LLC |
| Athens Stock Exchange | Euronext NV | New Zealand Stock Exchange |
| Australian Securities Exchange | Euronext Paris | OMX Nordic Exchange |
| Barcelona Stock Exchange | Frankfurt Stock Exchange | Osaka Securities Exchange |
| BATS Global Markets | Fukuoka Stock Exchange | Oslo Stock Exchange |
| Berlin Stock Exchange | The Gretai Securities Market of Taiwan | Philadelphia Stock Exchange |
| Bermuda Stock Exchange | Hamburg-Hannover Stock Exchange | Philippine Stock Exchange |
| Bilbao Stock Exchange | Helsinki Stock Exchange | Prague Stock Exchange |
| BM&F Bovespa | Hong Kong Stock Exchange (including the Growth Enterprise Market) | Riga Stock Exchange |
| BME Spanish Exchanges | Iceland Stock Exchange | Rio de Janeiro Stock Exchange |
| Bolsa de Comercio de Buenos Aires | Indonesia Stock Exchange | São Paulo Stock Exchange (Bovespa) |
| Bolsa de Comercio de Santiago | Intercontinental Exchange | Saudi Stock Exchange (Tadawul) |
| Bolsa de Valores de Caracas | International Securities Exchange | Shanghai Stock Exchange Shenzhen, S.E. |
| Bolsa de Valores de Lima | Irish Stock Exchange | Shenzhen Stock Exchange |
| Bolsa de Valores de Colombia | Johannesburg Stock Exchange | Singapore Stock Exchange (including Catalist) |
| Borsa Italiana SPA | Korea Exchange (including KOSPI and KOSDAQ Market Divisions) | SIX Swiss Exchange |
| Bombay Stock Exchange | London Stock Exchange (including AIM) | Stock Exchange of Mauritius |
| Borsa Istanbul | Luxembourg Stock Exchange | Stockholm Stock Exchange |



# SCHEDULE 5

## FEES

*(sections 26(3), 26(4), 41(2), 45(2), 169(1), 184(2), 199(1), 213(4) and 213(5))*

### *PART 1*

*(section 26(4))*

The fees payable upon the filing of a memorandum of association under section 26 are as follows —

    (a)   in respect of a non-resident company —

        (i)   with no registered capital, or a registered capital not exceeding $42,000, a fee of $575; and

        (ii)   with a registered capital exceeding $42,000, a fee of $815;

    (b)   in respect of an exempted company except a special economic zone company —

        (i)   with no registered capital, or a registered capital not exceeding $42,000, a fee of $600;

        (ii)   with a registered capital exceeding $42,000, but not exceeding $820,000 a fee of $900;

        (iii)   with a registered capital exceeding $820,000 but not exceeding $1,640,000, a fee of $1,884; and

        (iv)   with a registered capital exceeding $1,640,000, a fee of $2,468;

    (ba)   in respect of a special economic zone company a fee equal to the lowest band of the fee payable upon filing of a memorandum of articles of association by an exempted company as set out in paragraph (b)(i); and

    (c)   in respect of any other company —

        (i)   with no registered capital or a registered capital not exceeding $42,000, a fee of $300; and

        (ii)   with a registered capital exceeding $42,000, a fee of $500.

### *PART 1A*

The fee payable for the inspection of the register under section 26(3A) is $50.



Companies Act (2021 Revision)                                                    SCHEDULE 5

## PART 4

*(section 169(1))*

1.   The annual fee payable by an exempted company except a special economic zone company, in January of each year after the year of its registration, to the revenues of the Islands under section 169(1) is as follows —

     (a)   in the case of an exempted company with no registered capital, or a registered capital not exceeding $42,000, an annual fee of $700;

     (b)   in the case of an exempted company with a registered capital exceeding $42,000 but not exceeding $820,000, an annual fee of $1000;

     (c)   in the case of an exempted company with a registered capital exceeding $820,000 but not exceeding $1,640,000, an annual fee of $1,984; and

     (d)   in the case of an exempted company with a registered capital exceeding $1,640,000, an annual fee of $2,568.

2.   The annual fee payable by a special economic zone company, in the January of each year of its registration to the revenues of the Islands under section 169(1) is a fee equal to the lowest band of the annual fee by an exempted company as set out in item 1(a).

## PART 5

*(section 184(2))*

1.   The fee payable by a foreign company under section 184(1) is $1,350.

2.   The annual fee payable by a foreign company under section 184(2) is $1,350.

## PART 6

*(section 199(1))*

The fee payable under section 199(1) wherever this Act provides for or requires the filing of any document, notice or return with the Registrar or the issue of any certificate or the Registrar provides a copy of any document in respect of which no fee is elsewhere specifically provided is as follows —

| | | |
|---|---|---|
| (a) | filing any resolution, notice, return or any other  document; | $75 |
| (b) | issuing any certificate; | $125 |
| (c) | providing a copy of any document (per folio of 72 words); | $125 |
| (d) | general search fee; | $30 |
| (e) | | |
| (i) | filing a plan of merger or consolidation; | $600 |
| (ii) | in the case where the surviving or consolidated company is | |



Companies Act (2021 Revision)                                    SCHEDULE 5

3.   Where, apart from this section, anything done under or for the purposes of the Law
     before the coming into force of the 2007 Act would cease to have effect by virtue of
     the repeal of any enactment in force before the coming into force of the 2007 Act it
     shall have effect as if it had been done under and for the purposes of the
     corresponding provisions of the 2007 Act.



# SCHEDULE 7

*(section 281A)*

## Administrative fines

| No. | Section | Description of breach |
|-----|---------|----------------------|
| 1. | 247(1) | Failure of a company to take reasonable steps to identify any beneficial owner of the company |
| 2. | 248(1) | Failure of a company to take reasonable steps to identify any relevant legal entities that exist in relation to the company |
| 3. | 249(1) | Failure of a company to give notice in writing to beneficial owners and relevant legal entities identified under section 249(1). |
| 4. | 250(2) | Failure of a beneficial owner or relevant legal entity to supply information under section 250(2) within the timeframe specified at 250(3). |
| 5. | 252(1) | Failure of a company to keep its beneficial ownership register at the company's registered office. |
| 6. | 252(2) | Failure of a corporate services provider engaged for the provision of registered office services to establish and maintain the company's beneficial ownership register in accordance with section 252(2). |
| 7. | 252(3) and 252(3A) | Failure of an ordinary resident company to either engage a corporate service provider or the Registrar to assist the ordinary resident company to establish and maintain the beneficial ownership register. |
| 8. | 253(1) | Failure of a company to provide in writing to a corporate services provider or to the Registrar the required particulars of registrable persons in respect of the company once the particulars have been confirmed. |



Companies Act (2021 Revision)

SCHEDULE 7

| No. | Section | Description of breach |
|-----|---------|----------------------|
| 16. | 257(2) | Failure of a person to whom the section applies — <br> (a) to notify the company of the relevant changes; <br> (b) to state the date the change occurred; and <br> (c) to give the company the information needed to update the beneficial ownership register under section 257(2), <br> within the timeframe specified under section 257(3). |
| 17. | 261(2) | Failure of the corporate services provider to regularly deposit beneficial ownership information in such place, such manner and at such intervals as may be prescribed in accordance with section 261(2). |
| 18. | 266(1) | Failure of an entity to act in a manner consistent with the terms of a restrictions notice under section 266(1). |
| 19. | 279A | Failure of a company or a corporate services provider to respond to a request for additional information under section 279A within the time specified. |

**Publication in consolidated and revised form authorised by the Cabinet this 5th day of January, 2021.**

**Kim Bullings**
*Clerk of the Cabinet*



Companies Act (2021 Revision)

## ENDNOTES

## Table of Legislation history:

| SL # | Law # | Legislation | Commencement | Gazette |
|------|-------|-------------|--------------|---------|
|  | 56/2020 | Citation of Acts of Parliament Act, 2020 | 3-Dec-2020 | LG89/2020/s1 |
| 115/2020 |  | Companies (Amendment) (No. 2) Law, 2020 (Commencement) (No. 2) Order, 2020 | 20-Aug-2020 | LG60/2020/s2 |
| 78/2020 |  | Companies (Amendment) (No. 2) Law, 2020 (Commencement) Order, 2020 | 9-Jun-2020 | LG44/2020/s1 |
|  | 19/2020 | Companies (Amendment) (No. 2) Law, 2020 | 1-Oct-2020 | LG39/2020/s3 |
| 27/2020 |  | Companies (Amendment) Law, 2020 (Commencement) (No. 2) Order, 2020 | 27-Mar-2020 | LG22/2020/s1 |
| 11/2020 |  | Companies (Amendment) Law, 2020 (Commencement) Order, 2020 | 18-Feb-2020 | LG11/2020/s1 |
|  | 4/2020 | Companies (Amendment) Law, 2020 | 15-May-2020 | LG10/2020s1 |
|  |  | **Companies  Law (2020 Revision)** | 9-Jan-2020 | LG4/2020/s8 |
| 34/2019 |  | Companies (Amendment) Law, 2019 (Commencement of Section 5) Order, 2019 | 19-Sep-2019 | LG34/2019/s1 |
|  | 10/2019 | Companies (Amendment) Law, 2019 | 19-Sep-2019 | LG28/2019/s1 |
|  | 46/2018 | Companies (Amendment) (No. 2) Law, 2018 | 1-Jan-2019 | GE98/2018/s3 |
| 6/2019 |  | Companies (Amendment) Law, 2017 (Commencement) Order, 2019 | 1-Feb-2019 | GE9/2019/s2 |
|  | 37/2018 | Companies (Amendment) Law, 2018 | 1-Mar-2019 | GE97/2018/s12 |
| 62/2017 |  | Schedule 4 of the Companies Law Departmental Notice, 2017 | 26-Jul-2017 | GE61/2017/p3 |
| 62/2015 |  | Schedule 4 of the Companies Law Departmental Notice, 2015 | 13-Feb-2015 | GE12/2015/p28 |
|  |  | **Companies  Law (2018 Revision)** | 16-Mar-18 | GE22/2018 s6 |
| 94/2017 |  | Companies (Amendment) (No.2) Law, 2017 (Commencement) Order, 2017 | 13-Dec-2017 | GE105/2017/s1 |
|  | 42/2017 | Companies (Amendment) (No. 2) Law, 2017 | 13-Dec-2017 | GE100/2017/s2 |
| 21/2017 |  | Companies (Amendment) Law, 2017 (Commencement) Order, 2017 | 21-Apr-2017 | GE34/2017s2 |
|  | 2/2017 | Companies (Amendment) Law, 2017 | 1-Jul-2017 | GE31/2017/s1 |
|  |  | **Companies  Law (2016 Revision)** | 2-Sep-16 | GE68/2016/s5 |
| E5/2013 |  | *ERRATUM: Companies Law (2016 Revision)* |  | GE93/2013/p42 |
|  | 3/2016 | Companies (Amendment) Law, 2016 | 13-May-2016 | GE36/2016/s1 |
| 43/2015 |  | Companies (Amendment) Law, 2015 (Commencement) | 21-Oct-2015 | GR82/2015/s1 |



Companies Act (2021 Revision)                                                              ENDNOTES

| SL # | Law # | Legislation | Commencement | Gazette |
|------|-------|-------------|--------------|---------|
|  | 7/2000 | Electronic Transactions Law, 2000 (part) | 11-Sep-00 | G19/2000/s2 |
|  |  | **Companies Law (2000 Revision)** | 8-May-00 | G10/2000/s1 |
|  | 5/1999 | Companies (Amendment) (Euro) Law, 1999 | 7-Jun-1999 | G12/1999/s3 |
|  | 20/1998 | Finance Law, 1998  (part) | 16-Nov-98 | G7/1999/s10 |
|  |  | **Companies Law (1998 Revision)** | 3-Aug-98 | G16/1998/s2 |
|  | 6/1998 | Companies (Amendment) (Segregated Portfolio Companies) Law | 11-May-98 | G10/1998/s4 |
|  | 4/1998 | Companies (Amendment) (Exempted Companies) Law, 1998 | 14-Apr-98 | G8/1998/s4 |
|  | 26/1997 | Companies (Amendment) (Protection of Depositors) Law, 1997 | 10-Mar-98 | G16/1998/s16 |
|  | 14/1996 | Companies Law (1995 Revision) (Amendment) (Authorised Signatures) Law | 25-Nov-96 | G25/1996/s4 |
|  |  | **Companies Law (1995 Revision)** | 21-Aug-95 | G17/1995/s1 |
|  | 8/1994 | Companies (Amendment) (No.2) Law, 1994 | 15-Nov-94 | G23/1994/s4 |
|  | 2/1994 | Companies (Amendment) Law, 1994 | 28-Mar-94 | GE/1994/s2 |
|  | 33/1993 | Companies (Amendment) (No.3) Law, 1993 | 14-Dec-93 | GE/1993/s10 |
|  | 23/1993 | Companies (Amendment) (No.2) Law, 1993 | 13-Dec-93 | GE25/1993/s2 |
|  | 3/1993 | Companies (Amendment) Law, 1993 | 18-May-93 | GE10/1993/s7 |
|  | 11/1992 | Companies (Amendment) Law, 1992 | 2-Sep-92 | GE/1992/s1 |
|  | 23/1991 | The Fees (Miscellaneous Amendment) Law, 1991 (part) | 15-Jan-92 | GE/1991/s1 |
|  | 3/1991 | Companies (Amendment) Law, 1991 | 6-May-91 | G9/1991/s6 |
|  | 10/1990 | Companies (Amendment) Law, 1990 | 21-Sep-90 | GE/1990/s3 |
|  | 14/1989 | Companies (Amendment) Law, 1989 | 20-Nov-89 | G24/1989/s8 |
|  | 14/1988 | Companies (Amendment) Law, 1988 | 13-Mar-89 | G6/1988/s4 |
|  | 24/1987 | Companies (Amendment) Law, 1987 | 18-Jan-88 | G2/1988/s1 |
|  | 38/1985 | Companies (Amendment) (No.2) Law, 1985 | 6-Jan-86 | G1/1986/s6 |
|  | 15/1985 | Companies (Amendment) Law, 1985 | 30-Sep-85 | G14/1985/s7 |
|  | 22/1984 | Companies (Amendment) (No.2) Law, 1984 | 29-Oct-84 | G22/1984/s5 |
|  | 2/1984 | Companies (Amendment) Law, 1984 | 30-Apr-84 | G9/1984/s7 |
|  | 34/1983 | Companies (Amendment) Law, 1983 | 1-Jan-84 | G9/1984/s11 |
|  | 21/1981 | Companies (Amendment) Law, 1981 | 1-Jan-82 | G23/1981/s3 |
|  | 6/1980 | Companies (Amendment) Law, 1980 | 19-May-80 | G10/1980/s6 |
|  | 16/1978 | Companies (Amendment) Law, 1978 | 25-Sep-78 | G20/1987/s1 |
|  | 19/1977 | Companies (Amendment) Law, 1977 | 21-Nov-77 | G24/1977/s2 |
|  | 25/1975 | Companies (Amendment) Law, 1975 | 1-Jan-76 | G26/1975/s11 |
|  | 24/1974 | Companies (Amendment) Law, 1974 | 1-Jan-75 | G1/1975/s6 |
|  | 7/1973 | Companies (Amendment) Law, 1973 | 2-Aug-73 | GN128/1973 |

