1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   - - - - - - - - - - - - - - - - - - - -x

5

6   In the Matter of:

7   ASCENTRA HOLDINGS, INC. AND GRAHAM

8   ROBINSON AND IVY CHUA,                   Main Case No.

9        Debtors.                            21-11854-dsj

10

11  - - - - - - - - - - - - - - - - - - - -x

12

13                United States Bankruptcy Court

14                One Bowling Green

15                New York, New York

16

17                October 19, 2023

18

19

20

21  B E F O R E:

22  HON. DAVID S. JONES

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:  ELECTRONIC RECORDING

2

1

2   1) Hearing RE: Letter Briefs

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:  River Wolfe

21   eScribers, LLC

22   7227 North 16th Street, Suite #207

23   Phoenix, AZ 85020

24   (800) 257-0885

25   operations@escribers.net

3

1

2  A P P E A R A N C E S (All present by video or telephone):

3  PILLSBURY WINTHROP SHAW PITTMAN LLP

4         Attorneys for Petitioners/Foreign Representatives

5         31 West 52nd Street

6         29th Floor

7         New York, NY 10019

8

9  BY:   KWAME O. AKUFFO, ESQ.

10        HUGH M. MCDONALD, ESQ.

11        JOHN A. PINTARELLI, ESQ.

12

13

14  PILLSBURY WINTHROP SHAW PITTMAN LLP

15         Attorneys for Petitioners/Foreign Representatives

16         725 South Figueroa Street

17         36th Floor

18         Los Angeles, CA 90017

19

20  BY:   CLAIRE K. WU, ESQ.

21

22

23

24

25

4

1

2   PACHULSKI STANG ZIEHL JONES LLP

3        Attorneys for Shang Peng Gao Ke Inc. SEZC and SPGK

4        Pte Ltd.

5        780 Third Avenue

6        34th Floor

7        New York, NY 10017

8

9   BY:   JEFFREY M. DINE, ESQ.

10        ROBERT J. FEINSTEIN, ESQ.

11        BETH E. LEVINE, ESQ.

12        JOHN A. MORRIS, ESQ.

13

14

15   PACHULSKI STANG ZIEHL JONES LLP

16        Attorneys for Shang Peng Gao Ke Inc. SEZC and SPGK

17        Pte Ltd.

18        919 North Market Street

19        17th Floor

20        Wilmington, DE 19899

21

22   BY:   BRADFORD J. SANDLER, ESQ.

23

24

25

5

1

2  CAMPBELLS LLP

3       Attorneys for Petitioners/Foreign Representatives

4       4th Floor, Willow House

5       George Town, Grand Cayman  KY1-9010

6

7  BY:   NIENKE LILLINGTON, ESQ.

8

9

10  ALSO PRESENT:

11       JAMES PARKINSON, Crowe Cayman Ltd.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

6

1                        P R O C E E D I N G S

2            THE COURT:  And the next and final case on the

3    calendar, thank you for your patience, is Ascentra Holdings,

4    number 21-11854, letter briefs on the subject, really, of

5    whether a deposition can and should occur with respect to one

6    potential deponent.

7            I'm so sorry to keep you all waiting so long, but I

8    guess that just sometimes happens.  So let me get appearances

9    on Ascentra and refocus.  Nice to see you all.

10           Mr. McDonald, you're here for whom?

11           MR. MCDONALD:  Yes.  Good afternoon, Your Honor.  We

12   are now afternoon.

13           THE COURT:  Yep, 12:03.

14           MR. MCDONALD:  Hugh McDonald and John Pintarelli from

15   Pillsbury Winthrop Shaw Pittman LLP on behalf of the foreign

16   representatives.

17           THE COURT:  Okay.  Great.  And Mr. Morris.

18           MR. MORRIS:  Good afternoon, Your Honor.  John Morris,

19   Pachulski Stang Ziehl & Jones, for the SPGK parties.  I just

20   want to alert the Court, I've got to defend a deposition at 1

21   o'clock, and I'd really appreciate --

22           THE COURT:  Oh, we're going to be out of here.  Forget

23   it.

24           MR. MORRIS:  Okay.  I appreciate that.  Thank you.

25           THE COURT:  Yes.

21-11854-dsj   Doc 79   Filed 10/23/23   Entered 10/26/23 10:44:29   Main Document
Pg 7 of 49
**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

7

1          MR. MORRIS:   Yeah.  Okay.

2          THE COURT:  No, that's totally fine.  I have a court

3     meeting I'm supposed to be at at 12:30, so we'll see, although

4     I've made an excuse --

5          MR. MORRIS:  Okay.

6          THE COURT:  -- if necessary.  Okay.

7          So look, I am sorry to make you wait so long.  Let me

8     say, I have reviewed pretty attentively on this.  I saw

9     additional papers came in last night, including a very

10    interesting decision out of Singapore, which it was really very

11    interesting.  I read it with great interest.

12         I guess, I mean, I will say at a very unfancy level,

13    it just seems to me we've got a -- we've got one or two

14    contested motions, in aid of which there's a request to depose

15    a person.  And I struggle to see -- I mean, I appreciate all

16    the arguments why that's not appropriate, but I struggle to

17    overcome my basic view that opposed motions create contested

18    matters in which discovery is appropriate and if it suits the

19    evidentiary needs of the motion before me.  So that's kind of

20    my take coming in.  And I think I may as well just say that up

21    front so that the forces opposing can tell me why I should get

22    over that and that everyone knows where I am.

23         That said, I'm all yours.  So let me hear from -- I

24    guess it's Pillsbury first, right, the foreign representatives

25    opposing the conduct of the deposition.  I think that's where

**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

8

1   it makes sense to start.

2         MR. MCDONALD:  Yes, Your Honor.   Again, Hugh

3   McDonald, Pillsbury Winthrop Shaw Pittman, on behalf of foreign

4   representatives.  Your Honor, as Your Honor noted, there have

5   been developments in the case.  In addition to the decision by

6   Singapore's highest court, which overturned the lower-court

7   decision, which denied the foreign representatives recognition

8   of the essential proceedings, and now the essential proceedings

9   will be recognized in Singapore, that decision, Your Honor, as

10  we note in our correspondence, was one of the foundations of

11  the motion to terminate the recognition order in this case.

12        We believe the high court's determination was

13  appropriate.  And I would also note, and I'm sure you noted

14  with great interest, Your Honor, the court disagreed with

15  SPGK's interpretation of this Court's Global Cord decision and

16  really, I think, drilled home the fact that a Cayman

17  proceeding, an official liquidation regardless of whether it's

18  solvent or insolvent is entitled to recognition under the model

19  law.  And in essence, that is what the issue is here, and that

20  is what they have sought the determination from this Court.

21        In addition to the Singapore proceeding, Your Honor,

22  an action was commenced in the Cayman Islands against SPGK and

23  its principal, Mr. Yoshida, and other related entities

24  concerning, among other things, ownership of the Planet Payment

25  funds which have been paid into this court.

**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

9

1          We think that has two impacts on these proceedings,

2     Your Honor.  With respect to discovery, we now have a pending

3     proceeding.  And to the extent that SPGK is seeking discovery

4     related to that proceeding, it may only do so in the Cayman

5     Islands.  It may not seek that discovery here.

6          THE COURT:  That's just application of the pending

7     proceeding Rule?

8          MR. MCDONALD:  Yes, Your Honor.  We noted that in our

9     October 11 letter.  In support of that, we cited to the Bennett

10    Funding Group case and the Enron Corp. case, as well as Collier

11    on Bankruptcy, which collects a lot of cases on this.

12         So to the extent that -- and we only really realized

13    it when we had our conference with the Court and the letter in

14    opposition to our letter that we realized that SPGK was seeking

15    to broaden the scope of its discovery to also deal with

16    potential claims against SPGK over the Planet Payment funds.

17         THE COURT:  Am I right that formally the subpoena was

18    issued under Rule 2004?  I mean, I know in my prior ruling

19    there was -- it's tricky, right?  It's under the -- just, it's

20    under --

21         MR. MCDONALD:  Okay.  It was a 30(b)(6), Your Honor.

22         THE COURT:  Okay.

23         MR. MCDONALD:  It was a 30(b)(6), and it was limited

24    on its topics to seeking information about the essential

25    proceedings and creditors, et cetera.

**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

10

1          THE COURT:  Right.

2          MR. MCDONALD:  And then what we perceived from

3   comments made by counsel at the last conference, as well as

4   what was contained in their letter brief, that they were

5   seeking to broaden that to include issues concerning claims

6   against SPGK.  But now that it's clear that there is a pending

7   proceeding in the Cayman Islands, case law is crystal clear on

8   this, they cannot seek further discovery with regard to any

9   claims that are at issue in the Cayman Islands.

10         THE COURT:  Okay.  So really, it's -- and when was the

11  adversary proceeding, or whatever the right term is, the

12  proceeding commenced in Cayman?

13         MR. MCDONALD:  The writ was issued on October 11th,

14  Your Honor.  It was an amended writ.

15         THE COURT:  Which is eight days ago.

16         MR. MCDONALD:  Yes, Your Honor.

17         THE COURT:  And that's the commencement date of the

18  action?

19         MR. MCDONALD:  That was the issuance of the writ, yes,

20  by the Cayman court.  And so therefore, the action is now

21  pending there.  All of the parties have been served.  Parties

22  has agreed to accept service on behalf of all of the

23  defendants, and that has occurred.

24         THE COURT:  So -- okay.

25         MR. MCDONALD:  Your Honor --

**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

11

1      THE COURT:  So what I'm hearing is that that's your

2  primary argument at this point, really, is -- or I guess maybe

3  you just --

4      MR. MCDONALD:  Oh, no, I have to --

5      THE COURT:  -- you had assumed dispositive that you

6  don't have to go through your whole litany.

7      MR. MCDONALD:  They are also seeking discovery with

8  respect to the motion to terminate the recognition.  And I'd

9  like to just address that separately.  But Your Honor --

10      THE COURT:  Sure.

11      MR. MCDONALD:  -- there's one other point with respect

12  to the proceeding that has now commenced in the Cayman Islands.

13  There is now a pending proceeding in the plenary court over the

14  ownership of these funds.  We believe that while we believe, as

15  Your Honor stated at the very beginning of this case, that

16  there was an equitable basis to restrain the funds, as well as

17  the fact that we hit all the standards of a preliminary

18  injunction, we believe now that this pending proceeding clearly

19  demonstrates that there is a dispute in another court, and this

20  court, as a court in an ancillary proceeding to give aid to

21  that court, should not or really should not terminate the

22  restraint that the Court initially imposed at the outset of

23  these proceedings.

24      So we would submit the motion to terminate the

25  restraint itself should either be dismissed or withdrawn.

**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

12

1          THE COURT:  Okay.  I mean, let's see.  This is not --

2     this isn't necessarily germane to the motions before me, but

3     why was the plenary proceeding not brought before a week ago?

4          MR. MCDONALD:  Your Honor, as we've stated in our

5     status reports to this court, we have been undertaking an

6     extensive investigation and so are the foreign representatives

7     into potential claims against SPGK and its principal and its

8     related entities.  We had other proceedings going involving

9     SPGK in the Cayman Islands as well.  And as a result of those

10    investigations and proceedings, we finally got to a point we

11    were comfortable with the commencement of the action.  So it

12    took some time.

13         THE COURT:  Um-hum.

14         MR. MCDONALD:  As we noted in our status reports to

15    this Court, we have -- or we and the foreign representatives

16    and their counsel in the Cayman Islands have had to undertake

17    the review of millions of pages of documents.  There have been

18    numerous interviews of potential witnesses.  And quite frankly,

19    Your Honor, these proceedings commenced here by SPGK have

20    really diverted a lot of our efforts to get that moving.

21         So it's been a long slog getting through litigating

22    these motions.  But once we were at a position where we felt it

23    was comfortable, we did it.

24         THE COURT:  Okay.  And it seems to me -- all right.

25    So I'm just trying -- let me circle back to the function of

**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

13

1   this deposition.  Right.  I guess it's now being sought for two

2   broad reasons.  One is in aid or support of a motion to --

3   whatever the right word is, but terminate or unrecognized the

4   foreign proceeding.  And the other is to terminate the

5   restraint on funds, correct?  So it seems --

6          MR. MCDONALD:  Your Honor, may I --

7          THE COURT:  Go ahead.

8          MR. MCDONALD:  interrupt just briefly?  The

9   30(b)(6) --

10          THE COURT:  Yes.

11          MR. MCDONALD:  -- the way it was captioned and the way

12   it was originally served related solely to the motion to

13   terminate the recognition.  The additional discovery that they

14   are purportedly seeking is not in that subpoena and is only in

15   statements that counsel has made and alluded to in their

16   letter.  And as we noted in our response to that, that they're

17   basically attempting to utilize the contested matter to have a

18   fishing expedition into an investigation of potential claims.

19          THE COURT:  Okay.  I got it.

20          MR. MCDONALD:  (Indiscernible) the Court doesn't have

21   to deal with that now because with the pending proceeding, the

22   Court doesn't have to deal with any discovery with respect to

23   (indiscernible).

24          THE COURT:  Well, look, it seems to me I -- you're

25   sounding very at least plausible to me that the pending

**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

14

1    proceeding Rule means that I should not create a or countenance

2    a U.S.-based discovery setting where on a dispute that is now

3    actively being considered by the Cayman court, I think.  That

4    being the essentially disposition of the funds or ownership of

5    the funds dispute, which is tied to the restraint.

6           But as to whether or not to terminate recognition of

7    the foreign main proceeding on grounds asserted, which will be

8    that it was incorrectly granted in the first place or that

9    circumstances have changed such that recognition is no longer

10   appropriate, I'm not sure that the pending proceeding Rule

11   knocks out that stated purpose of the discovery.

12          What's the answer to that?

13          MR. MCDONALD:  Your Honor, I agree with your

14   conclusion on that, but the termination of the recognition is

15   purely a legal issue, Your Honor.  So there are a couple of

16   aspects that we addressed in our papers.

17          The first and foremost was the standing to terminate

18   recognition.  And the response back from counsel has simply

19   been, since we have a dispute over funds, we have standing.

20   But they don't have standing.  They're neither a creditor nor a

21   contributory shareholder of Ascentra.  They did not object to

22   recognition.  In fact, at the outset of the proceeding, they

23   consented to recognition.  So we never raised the issue of

24   standing.

25          The only issue that was raised at the outset of these

21-11854-dsj   Doc 79   Filed 10/23/23   Entered 10/26/23 10:44:29   Main Document
Pg 15 of 49
**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

15

1  proceedings was with respect to the restraint on the funds.

2  And SPGK asked for and was granted by this Court the ability to

3  bring a proceeding in a non-U.S. court to seek a determination

4  of ownership of those funds.  Standing only became an issue

5  when they filed this motion, and we raised it in our objection.

6  We hit it right on right at the very beginning.  It's our first

7  argument.

8         THE COURT:  When's the hearing date on the motion --

9  I'll just call it motion to terminate?

10        MR. MCDONALD:  We don't have a hearing date right now,

11 Your Honor, because of this pending discovery dispute.  And we

12 sent out to court, and the court entered an order specifically

13 modifying that.  And the parties agreed that we would set a

14 date once it's determined whether or not the deposition can go

15 forward.  And then it would be two weeks after that that we

16 would have a response date, a reply date, for SPGK, and then we

17 would agree on a hearing date at that point, Your Honor.

18        THE COURT:  Okay.  And --

19        MR. MCDONALD:  But (indiscernible) --

20        THE COURT:  Yeah.  Go ahead.

21        MR. MCDONALD:  Yeah.  So there's a certain logic to

22 this.  If they didn't have standing or don't have standing in

23 the first place to challenge recognition, how can they have

24 standing to seek this discovery?  They're logically tethered.

25 They just can't because there was a -- and going to answer your

**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

16

1    question at the very beginning, Your Honor, simply because that

2    there's a contrived, contested matter they knew full well we

3    would have to oppose the attempt to terminate recognition

4    doesn't entitle them to discover it.

5            But more importantly, Your Honor, what they're seeking

6    is discovery that, A, the Court has already said they waived.

7    They did not cross-examine any of the declarations at the

8    recognition hearing.  Now, they are seeking -- and their

9    motion, Your Honor, is based on the fact that they are

10   submitting to this Court that the bases for recognition were

11   lacking at that time.

12           THE COURT:  Right.

13           MR. MCDONALD:  They are now seeking prospective

14   discovery about things such as whether or not a creditor has

15   filed a claim, whether proof of debt has been filed, whether

16   there have been communications with shareholders.  And we have,

17   as we've demonstrated in our papers, A --

18           THE COURT:  Don't all those -- yeah, don't all those

19   go to the question of whether the proceeding is or is not

20   collective?

21           MR. MCDONALD:  No.  Respectfully, no, Your Honor.  It

22   is the nature of the proceeding.  If you look at their papers,

23   their motion, their motion focuses and relies very heavily on

24   the Singapore decision.  And the question that they have posed

25   to this Court is as a matter of law, should it official

**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

17

1    liquidation of a solvent entity under the Companies Act in the

2    Cayman Islands be entitled to recognition under Chapter 15.

3    That is the legal issue they have posed.  Whether there is a

4    creditor or not is irrelevant.  Whether there have been

5    communications with shareholders, that's irrelevant.  They're

6    not a shareholder.

7            And I think as we also demonstrated, too, Your Honor

8    in our papers, there are matters that are now -- that are under

9    seal in the Cayman Islands.  And they're seeking testimony from

10   the foreign representative --

11           THE COURT:  Right.  Well, yeah, look, let me jump if

12   I -- I'll just jump on that one and say, look, if there's

13   material that a witness can't testify to by reason of sealing

14   order or Cayman Law or anything else, it seems to me the

15   solution to that is to instruct not to answer or get some sort

16   of ruling from the court if necessary that's tailored to the

17   topical restrictions that the person operates under.  Right.  I

18   mean, that's not a should-there-or-should-there-not-be-a-

19   deposition-at-all-type quite?

20           MR. MCDONALD:  I understand, Your Honor.  I agree that

21   it is by topic.  But many of this -- most of the contents of

22   this report relate to the topics they are seeking

23   (indiscernible).

24           THE COURT:  So what happens if I rule for you, and I

25   say, okay, I'm not going to -- I'm not going to require the

1   deposition to occur, now finish your briefing or if necessary,

2   argue before me, and we'll see where we get.  And then I'm

3   told -- and then I just -- and then it appears that evidence

4   was needed, and you prevented your adversary from developing

5   evidence, going to whatever -- really, I guess it would be

6   going to the whether the requirements of recognition are met or

7   are no longer met or something else going to termination.

8        What happens then?  I mean, don't I then have to

9   adjourn the -- schedule further proceedings, authorize

10  deposition, come back for an evidentiary hearing?  I mean, it

11  gets a little cumbersome.

12       MR. MCDONALD:  Your Honor, the parties are left of

13  their pleadings here.  The motion and the objection do not

14  raise any fact issues.  Indeed, while they said they want to

15  test the factual statements contained, they haven't identified

16  one fact that they need to test, and they use the word "test"

17  regularly in their pleading to you, in their letter to you.

18       There are no facts to test.  We are dealing with a

19  question of law, which the Singapore court dealt with as a

20  question of law.  The Singapore court did not, and this Court

21  does not, have to get into whether or not a proof of debt has

22  been sought to be filed in the proceeding.  It is the nature of

23  the proceeding and whether or not it satisfies the requirements

24  for recognition of a foreign proceeding.  And that is what

25  the --

**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

19

1          THE COURT:  Right.

2          MR. MCDONALD:  And that is what is before the Court.

3          THE COURT:  And I'll add, by the way, that also with

4    termination that there's also consideration of whether parties

5    have relied on the recognition or if circumstances have changed

6    such that termination isn't warranted, even if the original

7    grant on closer examination might not hold water; isn't that

8    so?

9          MR. MCDONALD:  Yes  Your Honor, there is --

10         THE COURT:  Right.

11         MR. MCDONALD:  As we demonstrated, there's tremendous

12   prejudice to the foreign representatives if --

13         THE COURT:  Right.

14         MR. MCDONALD:  -- the recognition is terminated.  We

15   are still in the process of investigating other claims that

16   this estate may have.  And it's not just against SPGK.  There

17   are other funds that may be at issue here with other parties

18   that are still being investigated.

19         THE COURT:  Okay.

20         MR. MCDONALD:  We just, we served a 2004 subpoena, I

21   think, a week ago, two weeks ago --

22         THE COURT:  Okay.

23         MR. MCDONALD:  -- on a party.  Your Honor, the bottom

24   line here is what we have said in our opposition and what they

25   have said in their motion does not create a fact issue that

**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

20

1    requires a deposition.  And even though there is a contested

2    matter, Your Honor, there has to be proportionality and

3    relevancy, and there is no proportionality or relevancy

4    demonstrated by SPGK whatsoever for this deposition.

5          THE COURT:  Okay.  So I appreciate your bottom line.

6    And I just want to make sure things are correctly entering my

7    brain.  So here's my takeaway.

8          First off, you say pending proceeding Rule as to

9    should eliminate any use of Chapter 15 proceedings in aid of

10   the Cayman proceedings to conduct discovery going to the

11   restraint on funds.  And those are now directly at issue in

12   litigation pending in the Cayman Islands.

13         The other motion that we have to take into account is

14   the motion to terminate the recognition.  And as to that, it's

15   driven by purely legal issues such that there is no relevance

16   or proportionality to the discovery requested, and rather, that

17   motion should be considered purely as a matter of law based on

18   legal submissions.  Right.  I have this right?

19         MR. MCDONALD:  That is correct, Your Honor.  And that

20   is what their motion has as its basis, surely, the nature of

21   the Cayman law.  They have no --

22         THE COURT:  Okay.

23         MR. MCDONALD:  They don't cite to any facts, and we

24   don't cite to any facts.  This is (indiscernible) --

25         THE COURT:  Well, I mean, I'm sure they're -- yeah,

**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

21

1  I'm sure they're going to say, look, we don't have facts

2  because we haven't been able to ask the facts of the foreign

3  representative or the deponent who can tell us, are there

4  creditors, is money owed, is money being assembled for

5  distribution, is there contemplation of distributions, when and

6  how, or any of the other -- I don't know whatever else they

7  want to ask.  Anyway, okay.  But I take your point.

8        MR. MCDONALD:  Your Honor, this Court has asked us on

9  a regular basis to provide status reports to the Court.

10       THE COURT:  Right.

11       MR. MCDONALD:  And you requested that at the outset is

12  proceeding.  We have adhered to that.  Our last status report

13  was literally filed the morning that they commenced these

14  motions, filed these motions.

15       THE COURT:  Okay.  I --

16       MR. MCDONALD:  And in that report, we reported to the

17  Court that the foreign representatives were, in fact, in

18  communication with potential creditors and had sought the

19  filing of proofs of debt.  Those are statements by counsel in

20  response to Your Honor's request to keep the Court apprized.

21       THE COURT:  Let me ask you --

22       MR. MCDONALD:  Whether or not --

23       THE COURT:  Yeah.

24       MR. MCDONALD:  Yeah.  Whether or not a proof of debt

25  is sought, whether or not a proof of debt is filed, again, is

21-11854-dsj   Doc 79   Filed 10/23/23   Entered 10/26/23 10:44:29   Main Document
Pg 22 of 49
**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

22

1  entirely irrelevant to the question of recognition of the

2  official liquidation of a solvent entity under the Cayman

3  Companies Act.

4       THE COURT:  Let me ask you this.  Can I analogize the

5  procedural posture as being that there's a motion filed by the

6  SPGK parties, actually, two motions, but those functionally are

7  sort of like complaints and that your opposition is

8  functionally like a 12(b)(6) motion to dismiss, saying legal

9  matter, as a matter of law, nothing here.  Don't launch into

10  discovery.  Just rule for us as a matter of law because you

11  can, and nothing more is required.  To which they reply and

12  say, not so.

13       So one possibility is to say, fine, I will treat this

14  like a 12(b)(6) motion, your argument on your asserted legal

15  basis, and then if I disagree with you or I conclude further

16  discovery is necessary, open it up at that point.

17       Does that line of practical thinking make sense to

18  you, Mr. McDonald?

19       MR. MCDONALD:  Yes, Your Honor, with respect to both

20  motions.

21       THE COURT:  Okay.

22       MR. MCDONALD:  Respectfully, I think the commencement

23  of the Cayman proceeding really does necessitate either the

24  withdrawal or denial of the motion to terminate the restraint.

25       THE COURT:  Right.  Okay.  I understand.

**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

23

1        MR. MCDONALD:  And then secondly, the Singapore

2   decision, which they rely upon principally for bringing the

3   motion, we would submit militates in favor of the denial of

4   that motion straight up as a matter of law.  But we agree, with

5   obviously interpretation, the Singapore Court relies very

6   heavily on U.S. case law, including Your Honor's, that as a

7   matter of law, this Court should recognize (indiscernible).

8        THE COURT:  No, I understand.  I mean, of course, I'm

9   not bound by the Singapore court or its thinking, although it's

10  a outstanding court.  But these are issues that are kind of

11  getting active consideration all around the globe at this

12  point.

13        Okay.  Let me turn to Mr. Morris.  Thanks for your

14  patience.  So you can address this however you like.  I guess

15  the -- but I guess I'm interested in emerging with why you

16  think it's not workable to defer deciding whether or not to

17  permit the deposition and if you take the current motions as

18  effectively a 12(b)(6) motion and then open up for discovery if

19  it proves necessary upon considering the arguments.

20        MR. MORRIS:  Thank you, Your Honor.  John Morris,

21  Pachulski Stang Ziehl & Jones, for SPGK.  Your Honor, the

22  misrepresentations about our position need to be addressed.  We

23  haven't asked for any ruling as a matter of law.  Like, I don't

24  even know where to begin.  And just the disingenuous nature of

25  the presentation, I have to respond to.

**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

24

1          They took my client's deposition for more than seven

2   hours.  If they thought this was a proceeding that could be

3   decided as a matter of law, why did they do that?  Why do they

4   get to now be in the completely unfair position of having taken

5   my client's deposition and then filing on the eve of this

6   hearing this complaint in the Cayman Islands and say, wait a

7   minute, now you can't take my client's deposition.

8          The motion that's before the Court is whether it

9   should undo the restraint on these funds.  They have the burden

10  of proof.  They must prove that they're likely to succeed on

11  the merits.  They're not going to put any evidence on that.

12  We're not allowed to inquire as to the likelihood of success on

13  the merits because instead of filing it in this court, instead

14  of foregoing my client's deposition, they take my client's

15  deposition, they filed that proceeding in the Cayman Islands,

16  and then erect a barrier and say, you can't do it.  That is so

17  wrong, Your Honor.  It's just, there's nothing fair about that.

18          THE COURT:  Right.

19          MR. MORRIS:  This is a contested --

20          THE COURT:  I hear you.  Let me ask, does the

21  deposition tie to both motions?

22          MR. MORRIS:  The deposition is tied to both motions,

23  and counsel in their papers keep referring to this subpoena.

24  The subpoena, as we have said time and time again, became

25  irrelevant when they filed oppositions to the motions.  Because

**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

25

1  once they filed oppositions to the motions, you had contested

2  matters.  Once you had contested matters --

3          THE COURT:  Right.

4          MR. MORRIS:  -- we obtained the right to take

5  discovery.  It's really not more complicated than that.  And

6  they shouldn't be able to manufacture defenses to that as we're

7  going through this process.  They could have filed this

8  complaint in New York.  They didn't.

9          Instead, what they did is they came to New York.  They

10  didn't tell the Court that it was a solvent entity.  They

11  obtained a restraint on our money, they took my client's

12  deposition, and then they file in Cayman Islands and say, hey,

13  you stop now.

14          THE COURT:  When was your client --

15          MR. MORRIS:  You stop now.

16          THE COURT:  When was your client deposed?

17          MR. MORRIS:  August.

18          THE COURT:  And in connection --

19          MR. MORRIS:  After the motion was filed.

20          THE COURT:  In connection with --

21          MR. MORRIS:  And now, they're here saying you should

22  decide it as a matter of law, after taking my client's --

23          THE COURT:  Hang on.  Wait, wait, wait.

24          MR. MORRIS:  -- deposition for seven hours?

25          THE COURT:  Hang on.  You're getting on a roll.  But

**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

26

1   let me interrupt your roll and ask, was that deposition in

2   connection with these motions?

3          MR. MORRIS:  Yes, it was only in connection with these

4   motions.  Talk about a fishing expedition.  They went far

5   beyond that.  But it was only in connection with these motions.

6          How can they do that with a straight face?  How can

7   they take my client's deposition for more than seven hours,

8   then file in the Caymans when they couldn't file it in New York

9   and say, you can't do it?  How are they going to prove

10  likelihood of success on the merits?  How come we are not

11  entitled to inquire as to the likelihood of success on the

12  merits?  This is Alice in Wonderland, Your Honor.

13         THE COURT:  Okay.  And --

14         MR. MORRIS:  As far as standing goes, please.  SPGK is

15  the only party today affected by the recognition order.  If the

16  recognition order was not entered, Ascentra would never have

17  been entitled to obtain from this court the restraint on SPGK's

18  money.  It's really that simple.  Of course we have standing to

19  challenge the recognition order because that order affects us.

20         And we've cited cases in our briefs.  You don't have

21  to be -- this isn't the Cayman Islands.  As I said before, this

22  is America.  You don't have to be a creditor.  You don't have

23  to be a debtor.  You have to be a party-in-interest.  You have

24  to be somebody who is affected by the order.  And there is no

25  dispute, there can't be a serious dispute, that we're affected

**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

27

1 by the order because if the recognition order didn't exist, our

2 money wouldn't have been tied up in the way it's been.

3       THE COURT:  Okay.  I got it.  Let me ask this -- oh,

4 sorry, Mr. Morris.  Any other really important takeaways you

5 want to emphasize?

6       MR. MORRIS:  This is not a fishing expedition, Your

7 Honor.  We don't have to do a 30(b)(6) notice.  We don't have

8 to send subpoenas at this point.  They have admitted that Mr.

9 Robinson is the only person who has knowledge about the

10 debtor's affairs.

11       We should just be able to take his deposition.  It's

12 proportional.  It'll be for the same seven hours that they took

13 our client's deposition.  It'll be on the same two motions that

14 they took discovery in connection with my client.  This is

15 simple.

16       THE COURT:  And what do you want to find out, in

17 essence, and how is that going to further your ability to

18 litigate the motion?

19       MR. MORRIS:  A great question.  You actually

20 identified some of the issues yourself.  Is this a collective

21 proceeding for the benefit of creditors?  Are there creditors?

22 How many creditors are there?  What's happening in the case in

23 the Cayman Islands?

24       And I learned this from their expert.  This is not --

25 it got presented, I think, somehow as the Court is being asked

**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

28

1   to -- let me see if I could just find my note -- to recognize

2   an official proceeding.  That's not what this court does.  This

3   court doesn't recognize official proceedings.  They recognize

4   foreign proceedings as defined in 101(23).  That's what it

5   does.

6          This is not a foreign proceeding.  I mean, frankly,

7   I'm being told that we relied heavily on Singapore.  What we

8   actually rely on in the first instance is the fact, not a legal

9   issue, but the fact that this is a solvent entity.  And that

10  fact is going to -- it might be dispositive, but it's certainly

11  important in the Court's determination as to whether this is a

12  foreign proceeding under the United States Bankruptcy Code.

13          THE COURT:  Okay.

14          MR. MORRIS:  And the reason that it's important, as

15  former-Judge Henderson testified at length, is because

16  creditors have virtually no role in a wind-up proceeding in the

17  Cayman Islands where the entity is solvent.

18          And so we want to find out, because they asked a

19  million hypotheticals of my expert.  Hypothetical this.

20  Hypothetical that.  Hypothetical the other thing.  I don't

21  think the Court should entertain hypotheticals.  I think the

22  Court should make findings of fact as to what is actually

23  happening in this proceeding that warrants recognition by a

24  United States Bankruptcy Court.  And --

25          THE COURT:  I just want to make sure, you just

**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

29

1    referenced deposition questions to an expert.  Before, you said

2    your principal was deposed.  Is it --

3              MR. MORRIS:  They were both deposed.

4              THE COURT:  Okay.

5              MR. MORRIS:  They were both deposed.

6              THE COURT:  And hypotheticals are perfectly

7    appropriate for experts.

8              MR. MORRIS:  They are.  I'm not saying that there's

9    anything wrong with asking hypotheticals, but I have to -- I

10   have to be able to ask about facts.  Right.

11             THE COURT:  Okay.  I got it.

12             MR. MORRIS:  You can ask hypotheticals, but what's

13   actually happening in this case?

14             THE COURT:  All right.  I got it.

15             MR. MORRIS:  Isn't that important for the Court?

16             THE COURT:  Let me turn to Mr. McDonald.  So if you've

17   deposed the principal of SPGK, what's your answer to the

18   seeming unfairness and disparity point that Mr. Morris makes?

19             MR. MCDONALD:  I'd like to address everything Mr.

20   Morris just said because -- and I'm never going to be

21   disingenuous with this Court, and I take great exception to

22   being accused of doing so.

23             First off, Your Honor, they submitted a declaration of

24   Mr. Yoshida, a lengthy declaration, to get the restraint on the

25   funds terminated.  That declaration was filed only with respect

**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

30

1  to that.  We took Mr. Yoshida's deposition.  As we set forth in

2  our papers, we note that he was wrong in many of his statements

3  that he said in his declaration.

4       We tested his declaration.  They put fact issues

5  before this Court.  We deposed Mr. Yoshida in London along with

6  their expert, their Cayman law expert, who lives in Cayman.  We

7  learned at the outset of that deposition that they prepped Mr.

8  Yoshida in New York.  So they made us go to London for great

9  expense to do these depositions.  And we did it.  We

10 accommodated them on their request to have it in London,

11 despite having been prepped in New York.

12      All that aside, we had to look at what Mr. Yoshida was

13 saying was the basis for his claim of ownership over these

14 funds.  And as we have now demonstrated through our proceeding

15 in the Cayman Islands, and I'll address that in a second, there

16 is a clear case that he is not entitled, he, Mr. Yoshida, who

17 is the principal of SPGK, entitled to keep those funds.  They

18 are assets of the Ascentra estate, full stop.

19      The proceeding was commenced in the Cayman Islands,

20 Your Honor, because the SPGK is a Cayman entity and Ascentra is

21 a Cayman entity.  And we are dealing with funds at issue in

22 that case that are not just in the United States.  There are

23 funds that are in Singapore, there are funds that are in Taiwan

24 that are at issue in that proceeding.  So we had to commence it

25 in Cayman Islands.

**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

31

1          THE COURT:  Okay.  All right.  Look, here --

2          MR. MCDONALD:  Your Honor --

3          THE COURT:  Yeah, go ahead.

4          MR. MCDONALD:  Just, if I could, Your Honor, this is a

5    Chapter 15.  This is a proceeding in aid of a foreign

6    proceeding.  It's an ancillary proceeding.  It's not a plenary

7    proceeding.

8          What they're seeking to do by testing the likelihood

9    of success of a Cayman Island proceeding is to have this Court

10   review and weigh evidence that is going to be submitted in

11   connection with a Cayman litigation.  That is wholly

12   inappropriate.

13         THE COURT:  Well, if you had filed a motion -- you

14   did, when you filed your motion in whatever it was, in 2021 for

15   recognition, had they sought discovery on the topic of to

16   elicit facts relevant to whether the foreign representatives

17   meet the recognition requirements, that would have been

18   appropriate, right?  That would have been permitted?

19         MR. MCDONALD:  No, Your Honor.  They didn't have

20   standing to bring that -- to object to that (indiscernible).

21         THE COURT:  Would any party have standing?  Is there

22   any party in the planet who would have standing to object to

23   the proposed --

24         MR. MCDONALD:  Recognition?

25         THE COURT:  -- recognition?  Sorry.

1        MR. MCDONALD:  A creditor and a shareholder, someone

2   that has a monetary interest in the outcome of the Cayman

3   proceeding, would have standing.  So even a U.S. creditor

4   effective --

5        THE COURT:  All right.  So let me get you off

6   standing.  Assuming a party with standing, because their

7   position is, no, we are the party affected by this.  Of course

8   we have standing.  I'm not going to decide that one way or

9   another.  But assume a party with standing wants to take

10  discovery with respect to eligibility for recognition, is that

11  permissible?

12       MR. MCDONALD:  There have been, I think, a couple of

13  instances in the case law that I've seen where courts have

14  allowed limited discovery when there is a dispute over the

15  foreign proceeding itself.  But --

16       THE COURT:  Okay.

17       MR. MCDONALD:  And I don't know if this occurred or

18  not, but Your Honor's decision in Global Cord, I don't know if

19  there was discovery there.  And I think the issue in Global

20  Cord was simply the nature of the proceeding -- of that

21  proceeding in front of the Court.

22       The issue they raised, the issues they raise in their

23  papers, is whether or not a solvent -- and solvency is not an

24  issue here, Your Honor.  It's not a fact issue, and I'll get to

25  that in one second.  But they have raised a legal issue as to

1   whether an official liquidation of a solvent company under

2   Cayman law is entitled to recognition as a foreign proceeding.

3        The solvency is a certificate of solvency that was

4   filed by the official liquidators.  It is before this Court.

5   It has been submitted in evidence to the Court.  We don't

6   dispute it.  It's there.  It's an official document the Court

7   can take judicial notice of.  And that hasn't changed.

8        If that changes, we have an obligation to report that

9   to this Court under Chapter 15.  We would, of course, apprize

10   the Court of that change in circumstance.  And indeed, that can

11   change.  As we've noted in our papers and as Judge Henderson

12   has noted, a determination of solvency can change to insolvency

13   or doubtful solvency under Cayman law.

14        But what they're asking this Court to rule from the

15   outset is that the nature of the proceeding is such that it

16   should not be recognized.  And the only fact Mr. Morris talked

17   about was solvency.  That's not a fact to take discovery about.

18   It's already there.  The Court takes judicial notice of that.

19        THE COURT:  Okay.  All right.  Look, I think, here's

20   something I need to -- I think what I'm going to need to do

21   today is end up reserving on this, which pains me terribly

22   because there's an unbelievable amount of work litigating,

23   writing, and time passing all on the subject of can a

24   particular person be deposed.  Obviously, foreign

25   representatives are very dug-in on this, and it's a matter they

**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

34

1   view as principled one.

2          I think what I need to do to be responsible is go back

3   and reread the briefing I've got on the underlying dispute that

4   this ties to to assess relevancy and proportionality.  I take

5   very seriously Mr. Morris' point that his client's already been

6   deposed.  I do think there's a real fairness concern about

7   that.  And I also -- well, yeah.  I'm also thinking about just

8   a degree of efficiency and avoiding possible protracted multi-

9   phase proceedings.  But I'll look at the papers and think about

10  this.

11         Can you all tell me what briefs exist that I should be

12  reading and where I'll find them on the substantive dispute?  I

13  mean, I can look readily enough, but if you know off the top of

14  your head.

15         MR. MCDONALD:  Well, Your Honor, we have the two

16  motions that were filed by SPGK and the declarations in support

17  of that.

18         THE COURT:  Yep.  Yeah.  Yeah, so --

19         MR. MCDONALD:  And that --

20         THE COURT:  -- that's what I'm thinking of.  Where are

21  they?

22         MR. MCDONALD:  -- you have our two objections.  You

23  have our two objections --

24         THE COURT:  Um-hum.

25         MR. MCDONALD:  -- to that, as well our declaration of

**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

35

1  our claimant expert who Mr. Morris indicated has been deposed.

2  So they've already --

3          THE COURT:  Um-hum.

4          MR. MCDONALD:  -- deposed one of our -- our expert

5  witness.  And then there were the three letter briefs submitted

6  in -- two by us, one by SPGK in connection with this discovery

7  dispute.  And then, Your Honor, there is the letter of October

8  11, which attaches a copy of the Cayman proceeding.

9          THE COURT:  Right.

10          MR. MCDONALD:  And in there, we cite to the case law

11  on pending proceeding.  And then there is the letter we sent

12  down yesterday, Your Honor, with respect to the Singapore

13  proceeding.

14          THE COURT:  Okay.  Got it.  Thank you.  That's

15  helpful.  I mean, I spend a lot of time scrolling through the

16  docket sheet in this.  And it's all docketed in this

17  proceeding, right?

18          MR. MCDONALD:  Yes, Your Honor.

19          THE COURT:  Yeah.

20          MR. MCDONALD:  I think it's docket entries 71, 73, 74,

21  77, and 78 for the recent submissions, Your Honor.

22          THE COURT:  Okay.  That's helpful.  So yeah, I just, I

23  am sorry not to be able to give you an answer on the spot, but

24  I want to --

25          MR. MCDONALD:  Yeah.

**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

36

1          THE COURT:  -- proceed with care.  Obviously, you both

2    care very powerfully about your positions, and I need to handle

3    it with more care than I could manage trying to rule on the

4    spot.

5          I'll give you --

6          MR. MCDONALD:  Your Honor (indiscernible) --

7          THE COURT:  Yeah.  Let me give you each one more shot

8    to plant any parting seeds in my brain.  But as I go off and

9    read things.

10         Anything else you want to add?  I'll start with Mr.

11   Morris.

12         MR. MORRIS:  Sure.  Just very quickly, Mr. McDonald, I

13   apologize if you interpreted my words as a personal attack.  I

14   would never do that.  I've enjoyed working with you, and I

15   didn't mean for it to get personal if that's the way you

16   interpreted it.  The disingenuous comment had to do with taking

17   my client's deposition and then trying to stop me from taking.

18   That's all.  It wasn't personal.

19         Having said that, Your Honor, on the substance,

20   parties take discovery on the merits of someone's allegations

21   all the time when there is a request for an injunctive relief.

22   Right.  And Your Honor hit the nail on the head.  Had we sought

23   discovery, had SPGK sought discovery when they first -- when

24   Ascentra first sought the restraint on SPGK's money, surely we

25   would have been entitled to discovery at that time.

**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

37

1          And I don't think that it should change now after they

2     took my client's deposition and chose to file the complaint,

3     really, as a defensive mechanism.  In fact, I would argue that

4     they had the burden of proof on the issue of likelihood of

5     success on the merits.  They still have the burden of proof on

6     the likelihood of success on the merits.  And we now know

7     better than we knew before what the claims and the allegations

8     are.

9          We should be allowed to test that.  I don't understand

10    how they can possibly -- instead of withdrawing the motion, I

11    actually think what should be withdrawn is the restraint

12    because they're telling the Court they're not going to put on

13    evidence.  They're not going to allow us to put on evidence

14    that we get from them.  I don't understand how they're going to

15    carry their burden of proof.  They simply can't.

16          THE COURT:  Okay.

17          MR. MORRIS:  So I'll start with that.  And then on the

18    motion to terminate, I don't want to beat a dead horse.  We

19    wouldn't be here today if there wasn't a Chapter 15 recognition

20    order.  We would not be here, right, because there would be

21    no -- Your Honor would never have had the ability to enter the

22    restraint.  So that came first.  And if we undo that, then the

23    restraint gets undone as well.  We certainly have a pecuniary

24    interest.

25          And finally, I'll just finish with the matter of

**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

38

1  fairness.  Your Honor touched on it.  I think, I just, it's

2  unfathomable to me that somebody would take my client's

3  deposition and then erect a barrier and say, we can't do it.

4  And by the way, we want the Court to rule as a matter of law.

5  If you thought this was a legal issue, why did you take the

6  deposition?  They're the ones who got the free discovery.

7          THE COURT:  Okay.  Got it.

8          MR. MORRIS:  It's just not right.

9          THE COURT:  All right.  Thank you.

10         MR. MCDONALD:  Your Honor.

11         THE COURT:  Let me cut you off.  We're coming up on

12 your deadline to be before another judge --

13         MR. MORRIS:  I'm done.

14         THE COURT:  -- and of mine to join some colleagues for

15 a meeting.

16         Mr. McDonald, let me give you a parting shot, though.

17         MR. MCDONALD:  Yes, Your Honor.  Your Honor, so first

18 of all, SPGK consented to the restraint and that SPGK

19 complained that no action was taken, even though they were

20 reserved the right to do that.  And we have investigated the

21 claims, and the fruits of that investigation, Your Honor, are

22 going to be privileged, I'm telling you right now.  This is

23 work product.  This has all been done by counsel with the

24 foreign representatives.

25         The facts that were put in their motion to terminate

**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

39

1    the restraint came solely from Mr. Yoshida.  It's the first

2    time they brought those facts before this Court.  We had every

3    right to depose Mr. Yoshida.  They were attempting to create a

4    case in front of this Court that SPGK was entitled to these

5    funds.  And we demonstrated in our opposition that, in fact,

6    they have no case for that.

7            And the evidence that we have put before the Court is

8    their own testimony and their own documents.  This is not like

9    a company where you have a fact witness to be deposed.  This is

10   a trustee, the equivalent of a trustee, as Judge Gerber said in

11   China Medical.  This is your seeking to depose a trustee on the

12   trustee's analysis of a claim.  Your Honor would never allow

13   that in a U.S. proceeding.  And Your Honor --

14           THE COURT:  All right.

15           MR. MCDONALD:  -- shouldn't allow it here.

16           THE COURT:  Got it.  All right.  Let me ask you to

17   please order the transcript, and I'm going to -- I'm going

18   to -- while this is fresh in my mind, I'm going to go back and

19   reread papers on the underlying merits.  It's possible I'll be

20   able to summon us for an oral ruling next week.  So I don't

21   know.  I'm saying that out loud, mostly to try to motivate

22   myself to move this promptly.  But I will get to you as soon as

23   I can, possibly that soon, and if not, soon thereafter.

24           Oh, I would encourage you to discuss whether there's

25   some way with guardrails that something could occur.  I mean,

**ASCENTRA HOLDINGS, INC. AND GRAHAM ROBINSON AND IVY CHUA**

40

1   that you're flagging the privilege issues regarding your

2   investigation, that sounds right.  I'm sure you'd be able to

3   assert privilege with regard to a lot of work.  And there would

4   be a deposition that occurred with successful privilege

5   assertions.  And if there's a relatively focused set of

6   questions on things like the sovereign or -- sovereign, excuse

7   me, solvent or nonsolvent status of the debtor or the

8   collective nature of the proceeding or role of creditors, those

9   facts could be developed.  They are what they are.  If it's

10  purely a legal issue, no harm done.

11       So this is not a ruling.  This is my encouraging you

12  to think about that and see if you can reach some kind of

13  agreement to proceed that'll take this off my plate.  But

14  otherwise, I'm going to -- I'm going to reserve.  I mean, I

15  think you have presented meaty things for me to consider that

16  have real legal substance that I'll handle with care.  But if a

17  practical solution emerges, I won't be sorry to hear it.  Okay.

18       So I'll just leave it at that.  Let me thank you for

19  your efforts.  I'm sorry I can't deliver you a clearer answer

20  immediately, but I'll do the most responsible job I can as soon

21  as I can.  And with that, good luck.  And we're adjourned.

22  Take care.

23       MR. MCDONALD:  Thank you, Your Honor.

24       (Whereupon these proceedings were concluded)

25

41

1

2                        C E R T I F I C A T I O N

3

4    I, River Wolfe, certify that the foregoing transcript is a true

5    and accurate record of the proceedings.

6

7

8

9    _____

10   River Wolfe (CDLT-265)

11   TTA-Certified Digital Legal Transcriber

12

13   eScribers

14   7227 North 16th Street, Suite #207

15   Phoenix, AZ 85020

16

17   Date:  October 23, 2023

18

19

20

21

22

23

24

25

21-11854-dsj    Doc 79    Filed 10/23/23    Entered 10/26/23 10:44:29    Main Document
In the Matter of: ASCENTRA HOLDINGS    Pg 42 of 49

October 19, 2023

## A

**ability (3)**
15:2;27:17;37:21
**able (7)**
21:2;25:6;27:11;
29:10;35:23;39:20;
40:2
**accept (1)**
10:22
**accommodated (1)**
30:10
**account (1)**
20:13
**accused (1)**
29:22
**Act (2)**
17:1;22:3
**action (5)**
8:22;10:18,20;
12:11;38:19
**active (1)**
23:11
**actively (1)**
14:3
**actually (6)**
22:6;27:19;28:8,22;
29:13;37:11
**add (2)**
19:3;36:10
**addition (2)**
8:5,21
**additional (2)**
7:9;13:13
**address (4)**
11:9;23:14;29:19;
30:15
**addressed (2)**
14:16;23:22
**adhered (1)**
21:12
**adjourn (1)**
18:9
**adjourned (1)**
40:21
**admitted (1)**
27:8
**adversary (2)**
10:11;18:4
**affairs (1)**
27:10
**affected (4)**
26:15,24,25;32:7
**affects (1)**
26:19
**afternoon (3)**
6:11,12,18
**Again (3)**
8:2;21:25;24:24
**against (5)**
8:22;9:16;10:6;
12:7;19:16

**ago (4)**
10:15;12:3;19:21,
21
**agree (4)**
14:13;15:17;17:20;
23:4
**agreed (2)**
10:22;15:13
**agreement (1)**
40:13
**ahead (5)**
13:7;15:20;31:3
**aid (5)**
7:14;11:20;13:2;
20:9;31:5
**alert (1)**
6:20
**Alice (1)**
26:12
**allegations (2)**
36:20;37:7
**allow (3)**
37:13;39:12,15
**allowed (3)**
24:12;32:14;37:9
**alluded (1)**
13:15
**along (1)**
30:5
**although (2)**
7:3;23:9
**amended (1)**
10:14
**America (1)**
26:22
**among (1)**
8:24
**amount (1)**
33:22
**analogize (1)**
22:4
**analysis (1)**
39:12
**ancillary (2)**
11:20;31:6
**apologize (1)**
36:13
**appearances (1)**
6:8
**appears (1)**
18:3
**application (1)**
9:6
**appreciate (4)**
6:21,24;7:15;20:5
**apprize (1)**
33:9
**apprized (1)**
21:20
**appropriate (6)**
7:16,18;8:13;14:10;
29:7;31:18
**argue (2)**

18:2;37:3
**argument (3)**
11:2;15:7;22:14
**arguments (2)**
7:16;23:19
**around (1)**
23:11
**Ascentra (7)**
6:3,9;14:21;26:16;
30:18,20;36:24
**aside (1)**
30:12
**aspects (1)**
14:16
**assembled (1)**
21:4
**assert (1)**
40:3
**asserted (2)**
14:7;22:14
**assertions (1)**
40:5
**assess (1)**
34:4
**assets (1)**
30:18
**assume (1)**
32:9
**assumed (1)**
11:5
**Assuming (1)**
32:6
**attaches (1)**
35:8
**attack (1)**
36:13
**attempt (1)**
16:3
**attempting (2)**
13:17;39:3
**attentively (1)**
7:8
**Attorneys (3)**
4:3,16;5:3
**August (1)**
25:17
**authorize (1)**
18:9
**Avenue (1)**
4:5
**avoiding (1)**
34:8

## B

**back (5)**
12:25;14:18;18:10;
34:2;39:18
**Bankruptcy (3)**
9:11;28:12,24
**barrier (1)**
24:16;38:3
**based (2)**

16:9;20:17
**bases (1)**
16:10
**basic (1)**
7:17
**basically (1)**
13:17
**basis (5)**
11:16;20:20;21:9;
22:15;30:13
**beat (1)**
37:18
**became (2)**
15:4;24:24
**begin (1)**
23:24
**beginning (3)**
11:15;15:6;16:1
**behalf (3)**
6:15;8:3;10:22
**benefit (1)**
27:21
**Bennett (1)**
9:9
**BETH (1)**
4:11
**better (1)**
37:7
**beyond (1)**
26:5
**both (6)**
22:19;24:21,22;
29:3,5;36:1
**bottom (2)**
19:23;20:5
**bound (1)**
23:9
**BRADFORD (1)**
4:22
**brain (2)**
20:7;36:8
**brief (1)**
10:4
**briefing (2)**
18:1;34:3
**briefly (1)**
13:8
**briefs (4)**
6:4;26:20;34:11;
35:5
**bring (2)**
15:3;31:20
**bringing (1)**
23:2
**broad (1)**
13:2
**broaden (2)**
9:15;10:5
**brought (2)**
12:3;39:2
**burden (4)**
24:9;37:4,5,15

## C

**calendar (1)**
6:3
**call (1)**
15:9
**came (4)**
7:9;25:9;37:22;
39:1
**CAMPBELLS (1)**
5:2
**can (22)**
6:5;7:21;15:14,23;
21:3;22:4,11;23:14;
26:6,6;29:12;33:7,10,
12,23;34:11,13;
37:10;39:23;40:12,
20,21
**captioned (1)**
13:11
**care (5)**
36:1,2,3;40:16,22
**carry (1)**
37:15
**case (16)**
6:2;8:5,11;9:10,10;
10:7;11:15;23:6;
27:22;29:13;30:16,
22;32:13;35:10;39:4,
6
**cases (2)**
9:11;26:20
**Cayman (40)**
5:5,11;8:16,22;9:4;
10:7,9,12,20;11:12;
12:9,16;14:3;17:2,9,
14;20:10,12,21;22:2,
23;24:6,15;25:12;
26:21;27:23;28:17;
30:6,6,15,19,20,21,
25;31:9,11;32:2;33:2,
13;35:8
**Caymans (1)**
26:8
**certain (1)**
15:21
**certainly (2)**
28:10;37:23
**certificate (1)**
33:3
**cetera (1)**
9:25
**challenge (2)**
15:23;26:19
**change (4)**
33:10,11,12;37:1
**changed (3)**
14:9;19:5;33:7
**changes (1)**
33:8
**Chapter (5)**
17:2;20:9;31:5;

33:9;37:19

**China (1)**
39:11

**chose (1)**
37:2

**circle (1)**
12:25

**circumstance (1)**
33:10

**circumstances (2)**
14:9;19:5

**cite (3)**
20:23,24;35:10

**cited (2)**
9:9;26:20

**claim (3)**
16:15;30:13;39:12

**claimant (1)**
35:1

**claims (8)**
9:16;10:5,9;12:7;
13:18;19:15;37:7;
38:21

**clear (3)**
10:6,7;30:16

**clearer (1)**
40:19

**clearly (1)**
11:18

**client (3)**
25:14,16;27:14

**client's (13)**
24:1,5,7,14,14;
25:11,22;26:7;27:13;
34:5;36:17;37:2;38:2

**closer (1)**
19:7

**Code (1)**
28:12

**colleagues (1)**
38:14

**collective (3)**
16:20;27:20;40:8

**collects (1)**
9:11

**Collier (1)**
9:10

**comfortable (2)**
12:11,23

**coming (2)**
7:20;38:11

**commence (1)**
30:24

**commenced (6)**
8:22;10:12;11:12;
12:19;21:13;30:19

**commencement (3)**
10:17;12:11;22:22

**comment (1)**
36:16

**comments (1)**
10:3

**communication (1)**

21:18

**communications (2)**
16:16;17:5

**Companies (2)**
17:1;22:3

**company (2)**
33:1;39:9

**complained (1)**
38:19

**complaint (3)**
24:6;25:8;37:2

**complaints (1)**
22:7

**completely (1)**
24:4

**complicated (1)**
25:5

**concern (1)**
34:6

**concerning (2)**
8:24;10:5

**conclude (1)**
22:15

**concluded (1)**
40:24

**conclusion (1)**
14:14

**conduct (2)**
7:25;20:10

**conference (2)**
9:13;10:3

**connection (8)**
25:18,20;26:2,3,5;
27:14;31:11;35:6

**consented (2)**
14:23;38:18

**consider (1)**
40:15

**consideration (2)**
19:4;23:11

**considered (2)**
14:3;20:17

**considering (1)**
23:19

**contained (2)**
10:4;18:15

**contemplation (1)**
21:5

**contents (1)**
17:21

**contested (8)**
7:14,17;13:17;16:2;
20:1;24:19;25:1,2

**contributory (1)**
14:21

**contrived (1)**
16:2

**copy (1)**
35:8

**Cord (3)**
8:15;32:18,20

**Corp (1)**
9:10

**correctly (1)**
20:6

**correspondence (1)**
8:10

**counsel (7)**
10:3;12:16;13:15;
14:18;21:19;24:23;
38:23

**countenance (1)**
14:1

**couple (2)**
14:15;32:12

**course (4)**
23:8;26:18;32:7;
33:9

**COURT (159)**
6:2,13,17,20,22,25;
7:2,2,6;8:6,14,20,25;
9:6,13,17,22;10:1,10,
15,17,20,24;11:1,5,
10,13,19,20,20,21,22;
12:1,5,13,15,24;13:7,
10,19,20,22,24;14:3;
15:2,3,8,12,12,18,20;
16:6,10,12,18,25;
17:11,16,24;18:19,20,
20;19:1,2,3,10,13,19,
22;20:5,22,25;21:8,9,
10,15,17,20,21,23;
22:4,21,25;23:5,7,8,9,
10;24:8,13,18,20;
25:3,10,14,16,18,20,
23,25;26:13,17;27:3,
16,25;28:2,3,13,21,
22,24,25;29:4,6,11,
14,15,16,21;30:5;
31:1,3,9,13,21,25;
32:5,16,21;33:4,5,6,9,
10,14,18,19;34:18,20,
24;35:3,9,14,19,22;
36:1,7;37:12,16;38:4,
7,9,11,14;39:2,4,7,14,
16

**courts (1)**
32:13

**court's (3)**
8:12,15;28:11

**create (4)**
7:17;14:1;19:25;
39:3

**creditor (6)**
14:20;16:14;17:4;
26:22;32:1,3

**creditors (8)**
9:25;21:4,18;27:21,
21,22;28:16;40:8

**cross-examine (1)**
16:7

**Crowe (1)**
5:11

**crystal (1)**
10:7

**cumbersome (1)**

18:11

**current (1)**
23:17

**cut (1)**
38:11

## D

**date (7)**
10:17;15:8,10,14,
16,16,17

**days (1)**
10:15

**DE (1)**
4:20

**dead (1)**
37:18

**deadline (1)**
38:12

**deal (3)**
9:15;13:21,22

**dealing (2)**
18:18;30:21

**dealt (1)**
18:19

**debt (5)**
16:15;18:21;21:19,
24,25

**debtor (2)**
26:23;40:7

**debtor's (1)**
27:10

**decide (2)**
25:22;32:8

**decided (1)**
24:3

**deciding (1)**
23:16

**decision (8)**
7:10;8:5,7,9,15;
16:24;23:2;32:18

**declaration (6)**
29:23,24,25;30:3,4;
34:25

**declarations (2)**
16:7;34:16

**defend (1)**
6:20

**defendants (1)**
10:23

**defenses (1)**
25:6

**defensive (1)**
37:3

**defer (1)**
23:16

**defined (1)**
28:4

**degree (1)**
34:8

**deliver (1)**
40:19

**demonstrated (6)**

16:17;17:7;19:11;
20:4;30:14;39:5

**demonstrates (1)**
11:19

**denial (2)**
22:24;23:3

**denied (1)**
8:7

**deponent (2)**
6:6;21:3

**depose (3)**
7:14;39:3,11

**deposed (11)**
25:16;29:2,3,5,17;
30:5;33:24;34:6;35:1,
4;39:9

**deposition (31)**
6:5,20;7:25;13:1;
15:14;18:1,10;20:1,4;
23:17;24:1,5,7,14,15,
21,22;25:12,24;26:1,
7;27:11,13;29:1;30:1,
7;36:17;37:2;38:3,6;
40:4

**deposition-at-all-type (1)**
17:19

**depositions (1)**
30:9

**despite (1)**
30:11

**determination (5)**
8:12,20;15:3;28:11;
33:12

**determined (1)**
15:14

**developed (1)**
40:9

**developing (1)**
18:4

**developments (1)**
8:5

**DINE (1)**
4:9

**directly (1)**
20:11

**disagree (1)**
22:15

**disagreed (1)**
8:14

**discover (1)**
16:4

**discovery (33)**
7:18;9:2,3,5,15;
10:8;11:7;13:13,22;
14:2,11;15:11,24;
16:6,14;20:10,16;
22:10,16;23:18;25:5;
27:14;31:15;32:10,
14,19;33:17;35:6;
36:20,23,23,25;38:6

**discuss (1)**
39:24

**disingenuous (3)**

21-11854-dsj   Doc 79   Filed 10/23/23   Entered 10/26/23 10:44:29   Main Document
In the Matter of: ASCENTRA HOLDINGS       Pg 44 of 49

October 19, 2023

23:24;29:21;36:16
**dismiss (1)**
  22:8
**dismissed (1)**
  11:25
**disparity (1)**
  29:18
**disposition (1)**
  14:4
**dispositive (2)**
  11:5;28:10
**dispute (12)**
  11:19;14:2,5,19;
  15:11;26:25,25;
  32:14;33:6;34:3,12;
  35:7
**distribution (1)**
  21:5
**distributions (1)**
  21:5
**diverted (1)**
  12:20
**docket (2)**
  35:16,20
**docketed (1)**
  35:16
**document (1)**
  33:6
**documents (2)**
  12:17;39:8
**done (3)**
  38:13,23;40:10
**doubtful (1)**
  33:13
**down (1)**
  35:12
**drilled (1)**
  8:16
**driven (1)**
  20:15
**dug-in (1)**
  33:25

**E**

**effective (1)**
  32:4
**effectively (1)**
  23:18
**efficiency (1)**
  34:8
**efforts (2)**
  12:20;40:19
**eight (1)**
  10:15
**either (2)**
  11:25;22:23
**elicit (1)**
  31:16
**eligibility (1)**
  32:10
**eliminate (1)**
  20:9

**else (4)**
  17:14;18:7;21:6;
  36:10
**emerges (1)**
  40:17
**emerging (1)**
  23:15
**emphasize (1)**
  27:5
**encourage (1)**
  39:24
**encouraging (1)**
  40:11
**end (1)**
  33:21
**enjoyed (1)**
  36:14
**enough (1)**
  34:13
**Enron (1)**
  9:10
**enter (1)**
  37:21
**entered (2)**
  15:12;26:16
**entering (1)**
  20:6
**entertain (1)**
  28:21
**entirely (1)**
  22:1
**entities (2)**
  8:23;12:8
**entitle (1)**
  16:4
**entitled (9)**
  8:18;17:2;26:11,17;
  30:16,17;33:2;36:25;
  39:4
**entity (7)**
  17:1;22:2;25:10;
  28:9,17;30:20,21
**entries (1)**
  35:20
**equitable (1)**
  11:16
**equivalent (1)**
  39:10
**erect (2)**
  24:16;38:3
**ESQ (6)**
  4:9,10,11,12,22;5:7
**essence (2)**
  8:19;27:17
**essential (3)**
  8:8,8;9:24
**essentially (1)**
  14:4
**estate (2)**
  19:16;30:18
**et (1)**
  9:25
**eve (1)**

24:5
**even (5)**
  19:6;20:1;23:24;
  32:3;38:19
**everyone (1)**
  7:22
**evidence (8)**
  18:3,5;24:11;31:10;
  33:5;37:13,13;39:7
**evidentiary (2)**
  7:19;18:10
**examination (1)**
  19:7
**exception (1)**
  29:21
**excuse (2)**
  7:4;40:6
**exist (2)**
  27:1;34:11
**expedition (3)**
  13:18;26:4;27:6
**expense (1)**
  30:9
**expert (7)**
  27:24;28:19;29:1;
  30:6,6;35:1,4
**experts (1)**
  29:7
**extensive (1)**
  12:6
**extent (2)**
  9:3,12

**F**

**face (1)**
  26:6
**fact (19)**
  8:16;11:17;14:22;
  16:9;18:14,16;19:25;
  21:17;28:8,9,10,22;
  30:4;32:24;33:16,17;
  37:3;39:5,9
**facts (10)**
  18:18;20:23,24;
  21:1,2;29:10;31:16;
  38:25;39:2;40:9
**factual (1)**
  18:15
**fair (1)**
  24:17
**fairness (2)**
  34:6;38:1
**far (2)**
  26:4,14
**favor (1)**
  23:3
**FEINSTEIN (1)**
  4:10
**felt (1)**
  12:22
**file (4)**
  25:12;26:8,8;37:2

**filed (18)**
  15:5;16:15,15;
  18:22;21:13,14,25;
  22:5;24:15,25;25:1,7,
  19;29:25;31:13,14;
  33:4;34:16
**filing (3)**
  21:19;24:5,13
**final (1)**
  6:2
**finally (2)**
  12:10;37:25
**find (4)**
  27:16;28:1,18;
  34:12
**findings (1)**
  28:22
**fine (2)**
  7:2;22:13
**finish (2)**
  18:1;37:25
**first (13)**
  7:24;14:8,17;15:6,
  23;20:8;28:8;29:23;
  36:23,24;37:22;
  38:17;39:1
**fishing (3)**
  13:18;26:4;27:6
**flagging (1)**
  40:1
**Floor (3)**
  4:6,19;5:4
**focused (1)**
  40:5
**focuses (1)**
  16:23
**forces (1)**
  7:21
**foregoing (1)**
  24:14
**foreign (22)**
  6:15;7:24;8:3,7;
  12:6,15;13:4;14:7;
  17:10;18:24;19:12;
  21:2,17;28:4,6,12;
  31:5,16;32:15;33:2,
  24;38:24
**foremost (1)**
  14:17
**Forget (1)**
  6:22
**formally (1)**
  9:17
**former-Judge (1)**
  28:15
**forth (1)**
  30:1
**forward (1)**
  15:15
**foundations (1)**
  8:10
**frankly (2)**
  12:18;28:6

**free (1)**
  38:6
**fresh (1)**
  39:18
**front (3)**
  7:21;32:21;39:4
**fruits (1)**
  38:21
**full (2)**
  16:2;30:18
**function (1)**
  12:25
**functionally (2)**
  22:6,8
**Funding (1)**
  9:10
**funds (20)**
  8:25;9:16;11:14,16;
  13:5;14:4,5,19;15:1,
  4;19:17;20:11;24:9;
  29:25;30:14,17,21,23,
  23;39:5
**further (4)**
  10:8;18:9;22:15;
  27:17

**G**

**Gao (2)**
  4:3,16
**George (1)**
  5:5
**Gerber (1)**
  39:10
**germane (1)**
  12:2
**gets (2)**
  18:11;37:23
**Global (3)**
  8:15;32:18,19
**globe (1)**
  23:11
**goes (1)**
  26:14
**Good (3)**
  6:11,18;40:21
**Grand (1)**
  5:5
**grant (1)**
  19:7
**granted (2)**
  14:8;15:2
**Great (6)**
  6:17;7:11;8:14;
  27:19;29:21;30:8
**grounds (1)**
  14:7
**Group (1)**
  9:10
**guardrails (1)**
  39:25
**guess (8)**
  6:8;7:12,24;11:2;

21-11854-dsj    Doc 79    Filed 10/23/23    Entered 10/26/23 10:44:29    Main Document
In the Matter of: ASCENTRA HOLDINGS    Pg 45 of 49

October 19, 2023

13:1;18:5;23:14,15

## H

**handle (2)**
36:2;40:16
**Hang (2)**
25:23,25
**happening (3)**
27:22;28:23;29:13
**happens (3)**
6:8;17:24;18:8
**harm (1)**
40:10
**head (2)**
34:14;36:22
**hear (3)**
7:23;24:20;40:17
**hearing (7)**
11:1;15:8,10,17;
16:8;18:10;24:6
**heavily (3)**
16:23;23:6;28:7
**helpful (2)**
35:15,22
**Henderson (2)**
28:15;33:11
**here's (2)**
20:7;33:19
**hey (1)**
25:12
**high (1)**
8:12
**highest (1)**
8:6
**hit (3)**
11:17;15:6;36:22
**hold (1)**
19:7
**Holdings (1)**
6:3
**home (1)**
8:16
**Honor (64)**
6:11,18;8:2,4,4,9,
14,21;9:2,8,21;10:14,
16,25;11:9,15;12:4,
19;13:6;14:13,15;
15:11,17;16:1,5,9,21;
17:7,20;18:12;19:9,
23;20:2,19;21:8;
22:19;23:20,21;
24:17;26:12;27:7;
29:23;30:20;31:2,4,
19;32:24;34:15;35:7,
12,18,21;36:9,19,22;
37:21;38:1,10,17,17,
21;39:12,13;40:23
**Honor's (3)**
21:20;23:6;32:18
**horse (1)**
37:18
**hours (4)**

24:2;25:24;26:7;
27:12
**House (1)**
5:4
**Hugh (2)**
6:14;8:2
**Hypothetical (3)**
28:19,20,20
**hypotheticals (5)**
28:19,21;29:6,9,12

## I

**identified (2)**
18:15;27:20
**immediately (1)**
40:20
**impacts (1)**
9:1
**important (4)**
27:4;28:11,14;
29:15
**importantly (1)**
16:5
**imposed (1)**
11:22
**inappropriate (1)**
31:12
**Inc (2)**
4:3,16
**include (1)**
10:5
**including (2)**
7:9;23:6
**incorrectly (1)**
14:8
**Indeed (2)**
18:14;33:10
**indicated (1)**
35:1
**Indiscernible (8)**
13:20,23;15:19;
17:23;20:24;23:7;
31:20;36:6
**information (1)**
9:24
**initially (1)**
11:22
**injunction (1)**
11:18
**injunctive (1)**
36:21
**inquire (2)**
24:12;26:11
**insolvency (1)**
33:12
**insolvent (1)**
8:18
**instance (1)**
28:8
**instances (1)**
32:13
**instead (4)**

24:13,13;25:9;
37:10
**instruct (1)**
17:15
**interest (4)**
7:11;8:14;32:2;
37:24
**interested (1)**
23:15
**interesting (2)**
7:10,11
**interpretation (2)**
8:15;23:5
**interpreted (2)**
36:13,16
**interrupt (2)**
13:8;26:1
**interviews (1)**
12:18
**into (6)**
8:25;12:7;13:18;
18:21;20:13;22:9
**investigated (2)**
19:18;38:20
**investigating (1)**
19:15
**investigation (4)**
12:6;13:18;38:21;
40:2
**investigations (1)**
12:10
**involving (1)**
12:8
**irrelevant (4)**
17:4,5;22:1;24:25
**Island (1)**
31:9
**Islands (19)**
8:22;9:5;10:7,9;
11:12;12:9,16;17:2,9;
20:12;24:6,15;25:12;
26:21;27:23;28:17;
30:15,19,25
**issuance (1)**
10:19
**issue (21)**
8:19;10:9;14:15,23,
25;15:4;17:3;19:17,
25;20:11;28:9;30:21,
24;32:19,22,24,24,25;
37:4;38:5;40:10
**issued (2)**
9:18;10:13
**issues (8)**
10:5;18:14;20:15;
23:10;27:20;30:4;
32:22;40:1

## J

**JAMES (1)**
5:11
**JEFFREY (1)**

4:9
**job (1)**
40:20
**JOHN (4)**
4:12;6:14,18;23:20
**join (1)**
38:14
**JONES (4)**
4:2,15;6:19;23:21
**Judge (3)**
33:11;38:12;39:10
**judicial (2)**
33:7,18
**jump (2)**
17:11,12

## K

**Ke (2)**
4:3,16
**keep (4)**
6:7;21:20;24:23;
30:17
**kind (3)**
7:19;23:10;40:12
**knew (2)**
16:2;37:7
**knocks (1)**
14:11
**knowledge (1)**
27:9
**knows (1)**
7:22
**KY1-9010 (1)**
5:5

## L

**lacking (1)**
16:11
**last (3)**
7:9;10:3;21:12
**launch (1)**
22:9
**law (22)**
8:19;10:7;16:25;
17:14;18:19,20;
20:17,21;22:9,9,10;
23:4,6,7,23;24:3;
25:22;30:6;32:13;
33:2,13;35:10;38:4
**learned (2)**
27:24;30:7
**least (1)**
13:25
**leave (1)**
40:18
**left (1)**
18:12
**legal (11)**
14:15;17:3;20:15,
18;22:8,14;28:8;
32:25;38:5;40:10,16

**length (1)**
28:15
**lengthy (1)**
29:24
**letter (10)**
6:4;9:9,13,14;10:4;
13:16;18:17;35:5,7,
11
**level (1)**
7:12
**LEVINE (1)**
4:11
**likelihood (6)**
24:12;26:10,11;
31:8;37:4,6
**likely (1)**
24:10
**LILLINGTON (1)**
5:7
**limited (2)**
9:23;32:14
**line (3)**
19:24;20:5;22:17
**liquidation (4)**
8:17;17:1;22:2;
33:1
**liquidators (1)**
33:4
**litany (1)**
11:6
**literally (1)**
21:13
**litigate (1)**
27:18
**litigating (2)**
12:21;33:22
**litigation (2)**
20:12;31:11
**little (1)**
18:11
**lives (1)**
30:6
**LLP (4)**
4:2,15;5:2;6:15
**logic (1)**
15:21
**logically (1)**
15:24
**London (3)**
30:5,8,10
**long (3)**
6:7;7:7;12:21
**longer (2)**
14:9;18:7
**look (11)**
7:7;13:24;16:22;
17:11,12;21:1;30:12;
31:1;33:19;34:9,13
**lot (4)**
9:11;12:20;35:15;
40:3
**loud (1)**
39:21

**lower-court (1)**
8:6
**Ltd (3)**
4:4,17;5:11
**luck (1)**
40:21

## M

**main (1)**
14:7
**makes (2)**
8:1;29:18
**manage (1)**
36:3
**manufacture (1)**
25:6
**many (3)**
17:21;27:22;30:2
**Market (1)**
4:18
**material (1)**
17:13
**matter (16)**
13:17;16:2,25;20:2,
17;22:9,9,10;23:4,7,
23;24:3;25:22;33:25;
37:25;38:4
**matters (4)**
7:18;17:8;25:2,2
**may (6)**
7:20;9:4,5;13:6;
19:16,17
**maybe (1)**
11:2
**McDonald (73)**
6:10,11,14,14;8:2,
3;9:8,21,23;10:2,13,
16,19,25;11:4,7,11;
12:4,14;13:6,8,11,20;
14:13;15:10,19,21;
16:13,21;17:20;
18:12;19:2,9,11,14,
20,23;20:19,23;21:8,
11,16,22,24;22:18,19,
22;23:1;29:16,19;
31:2,4,19,24;32:1,12,
17;34:15,19,22,25;
35:4,10,18,20,25;
36:6,12;38:10,16,17;
39:15;40:23
**mean (15)**
7:12,15;9:18;12:1;
17:18;18:8,10;20:25;
23:8;28:6;34:13;
35:15;36:15;39:25;
40:14
**means (1)**
14:1
**meaty (1)**
40:15
**mechanism (1)**
37:3

**Medical (1)**
39:11
**meet (1)**
31:17
**meeting (2)**
7:3;38:15
**merits (8)**
24:11,13;26:10,12;
36:20;37:5,6;39:19
**met (2)**
18:6,7
**might (1)**
19:7;28:10
**militates (1)**
23:3
**million (1)**
28:19
**millions (1)**
12:17
**mind (1)**
39:18
**mine (1)**
38:14
**minute (1)**
24:7
**misrepresentations (1)**
23:22
**model (1)**
8:18
**modifying (1)**
15:13
**monetary (1)**
32:2
**money (6)**
21:4,4;25:11;26:18;
27:2;36:24
**more (7)**
16:5;22:11;24:1;
25:5;26:7;36:3,7
**morning (1)**
21:13
**MORRIS (38)**
4:12;6:17,18,18,24;
7:1,5;23:13,20,20;
24:19,22;25:4,15,17,
19,21,24;26:3,14;
27:4,6,19;28:14;29:3,
5,8,12,15,18,20;
33:16;35:1;36:11,12;
37:17;38:8,13
**Morris' (1)**
34:5
**most (2)**
17:21;40:20
**mostly (1)**
39:21
**motion (33)**
7:19;8:11;11:8,24;
13:2,12;15:5,8,9;16:9,
23,23;18:13;19:25;
20:13,14,17,20;22:5,
8,14,24;23:3,4,18;
24:8;25:19;27:18;

31:13,14;37:10,18;
38:25
**motions (18)**
7:14,17;12:2,22;
21:14,14;22:6,20;
23:17;24:21,22,25;
25:1;26:2,4,5;27:13;
34:16
**motivate (1)**
39:21
**move (1)**
39:22
**moving (1)**
12:20
**multi- (1)**
34:8
**must (1)**
24:10
**myself (1)**
39:22

## N

**nail (1)**
36:22
**nature (7)**
16:22;18:22;20:20;
23:24;32:20;33:15;
40:8
**necessarily (1)**
12:2
**necessary (5)**
7:6;17:16;18:1;
22:16;23:19
**necessitate (1)**
22:23
**need (6)**
18:16;23:22;33:20,
20;34:2;36:2
**needed (1)**
18:4
**needs (1)**
7:19
**neither (1)**
14:20
**New (6)**
4:7;25:8,9;26:8;
30:8,11
**next (2)**
6:2;39:20
**Nice (1)**
6:9
**NIENKE (1)**
5:7
**night (1)**
7:9
**nonsolvent (1)**
40:7
**non-US (1)**
15:3
**nor (1)**
14:20
**North (1)**

4:18
**note (4)**
8:10,13;28:1;30:2
**noted (7)**
8:4,13;9:8;12:14;
13:16;33:11,12
**notice (3)**
27:7;33:7,18
**number (1)**
6:4
**numerous (1)**
12:18
**NY (1)**
4:7

## O

**object (3)**
14:21;31:20,22
**objection (2)**
15:5;18:13
**objections (2)**
34:22,23
**obligation (1)**
33:8
**obtain (1)**
26:17
**obtained (2)**
25:4,11
**obviously (3)**
23:5;33:24;36:1
**occur (3)**
6:5;18:1;39:25
**occurred (2)**
10:23;32:17;40:4
**o'clock (1)**
6:21
**October (3)**
9:9;10:13;35:7
**off (7)**
20:8;29:23;32:5;
34:13;36:8;38:11;
40:13
**official (8)**
8:17;16:25;22:2;
28:2,3;33:1,4,6
**once (1)**
12:22;15:14;25:1,2
**one (14)**
6:5;7:13;8:10;
11:11;13:2;17:12;
18:16;22:13;32:8,25;
34:1;35:4,6;36:7
**ones (1)**
38:6
**only (11)**
9:4,12;13:14;14:25;
15:4;26:3,5,15;27:9;
29:25;33:16
**open (2)**
22:16;23:18
**operates (1)**
17:17

**oppose (1)**
16:3
**opposed (1)**
7:17
**opposing (1)**
7:21,25
**opposition (4)**
9:14;19:24;22:7;
39:5
**oppositions (2)**
24:25;25:1
**oral (1)**
39:20
**order (12)**
8:11;15:12;17:14;
26:15,16,19,19,24;
27:1,1;37:20;39:17
**original (1)**
19:6
**originally (1)**
13:12
**otherwise (1)**
40:14
**out (7)**
6:22;7:10;14:11;
15:12;27:16;28:18;
39:21
**outcome (1)**
32:2
**outset (6)**
11:22;14:22,25;
21:11;30:7;33:15
**outstanding (1)**
23:10
**over (6)**
7:22;9:16;11:13;
14:19;30:13;32:14
**overcome (1)**
7:17
**overturned (1)**
8:6
**owed (1)**
21:4
**own (2)**
39:8,8
**ownership (5)**
8:24;11:14;14:4;
15:4;30:13

## P

**PACHULSKI (4)**
4:2,15;6:19;23:21
**pages (1)**
12:17
**paid (1)**
8:25
**pains (1)**
33:21
**papers (11)**
7:9;14:16;16:17,22;
17:8;24:23;30:2;
32:23;33:11;34:9;

39:19

**PARKINSON (1)**
5:11

**particular (1)**
33:24

**parties (9)**
6:19;10:21,21;
15:13;18:12;19:4,17;
22:6;36:20

**parting (2)**
36:8;38:16

**party (7)**
19:23;26:15;31:21,
22;32:6,7,9

**party-in-interest (1)**
26:23

**passing (1)**
33:23

**patience (2)**
6:3;23:14

**Payment (2)**
8:24;9:16

**pecuniary (1)**
37:23

**pending (13)**
9:2,6;10:6,21;
11:13,18;13:21,25;
14:10;15:11;20:8,12;
35:11

**Peng (2)**
4:3,16

**perceived (1)**
10:2

**perfectly (1)**
29:6

**permissible (1)**
32:11

**permit (1)**
23:17

**permitted (1)**
31:18

**person (4)**
7:15;17:17;27:9;
33:24

**personal (3)**
36:13,15,18

**Petitioners/Foreign (1)**
5:3

**phase (1)**
34:9

**Pillsbury (3)**
6:15;7:24;8:3

**Pintarelli (1)**
6:14

**Pittman (2)**
6:15;8:3

**place (2)**
14:8;15:23

**Planet (3)**
8:24;9:16;31:22

**plant (1)**
36:8

**plate (1)**

40:13

**plausible (1)**
13:25

**pleading (1)**
18:17

**pleadings (1)**
18:13

**please (2)**
26:14;39:17

**plenary (3)**
11:13;12:3;31:6

**point (10)**
11:2,11;12:10;
15:17;21:7;22:16;
23:12;27:8;29:18;
34:5

**posed (2)**
16:24;17:3

**position (4)**
12:22;23:22;24:4;
32:7

**positions (1)**
36:2

**possibility (1)**
22:13

**possible (2)**
34:8;39:19

**possibly (2)**
37:10;39:23

**posture (1)**
22:5

**potential (6)**
6:6;9:16;12:7,18;
13:18;21:18

**powerfully (1)**
36:2

**practical (2)**
22:17;40:17

**prejudice (1)**
19:12

**preliminary (1)**
11:17

**prepped (2)**
30:7,11

**PRESENT (1)**
5:10

**presentation (1)**
23:25

**presented (2)**
27:25;40:15

**pretty (1)**
7:8

**prevented (1)**
18:4

**primary (1)**
11:2

**principal (5)**
8:23;12:7;29:2,17;
30:17

**principally (1)**
23:2

**principled (1)**
34:1

**prior (1)**
9:18

**privilege (3)**
40:1,3,4

**privileged (1)**
38:22

**procedural (1)**
22:5

**proceed (2)**
36:1;40:13

**proceeding (56)**
8:17,21;9:3,4,7;
10:7,11,12;11:12,13,
18,20;12:3;13:4,21;
14:1,7,10,22;15:3;
16:19,22;18:22,23,24;
20:8;21:12;22:23;
24:2,15;27:21;28:2,6,
12,16,23;30:14,19,24;
31:5,6,6,7,9;32:3,15,
20,21;33:2,15;35:8,
11,13,17;39:13;40:8

**proceedings (16)**
8:8,8;9:1,25;11:23;
12:8,10,19;15:1;18:9;
20:9,10;28:3,4;34:9;
40:24

**process (2)**
19:15;25:7

**product (1)**
38:23

**promptly (1)**
39:22

**proof (8)**
16:15;18:21;21:24,
25;24:10;37:4,5,15

**proofs (1)**
21:19

**proportional (1)**
27:12

**proportionality (4)**
20:2,3,16;34:4

**proposed (1)**
31:23

**prospective (1)**
16:13

**protracted (1)**
34:8

**prove (2)**
24:10;26:9

**proves (1)**
23:19

**provide (1)**
21:9

**Pte (2)**
4:4,17

**purely (4)**
14:15;20:15,17;
40:10

**purportedly (1)**
13:14

**purpose (1)**
14:11

**put (6)**
24:11;30:4;37:12,
13;38:25;39:7

**Q**

**quickly (1)**
36:12

**quite (2)**
12:18;17:19

**R**

**raise (2)**
18:14;32:22

**raised (5)**
14:23,25;15:5;
32:22,25

**rather (1)**
20:16

**reach (1)**
40:12

**read (2)**
7:11;36:9

**readily (1)**
34:13

**reading (1)**
34:12

**real (2)**
34:6;40:16

**realized (2)**
9:12,14

**really (15)**
6:4,21;7:10;8:16;
9:12;10:10;11:2,21;
12:20;18:5;22:23;
25:5;26:18;27:4;37:3

**reason (2)**
17:13;28:14

**reasons (1)**
13:2

**recent (1)**
35:21

**recognition (34)**
8:7,11,18;11:8;
13:13;14:6,9,14,18,
22,23;15:23;16:3,8,
10;17:2;18:6,24;19:5,
14;20:14;22:1;26:15,
16,19;27:1;28:23;
31:15,17,24,25;32:10;
33:2;37:19

**recognize (4)**
23:7;28:1,3,3

**recognized (2)**
8:9;33:16

**referenced (1)**
29:1

**referring (1)**
24:23

**refocus (1)**
6:9

**regard (2)**

10:8;40:3

**regarding (1)**
40:1

**regardless (1)**
8:17

**regular (1)**
21:9

**regularly (1)**
18:17

**relate (1)**
17:22

**related (4)**
8:23;9:4;12:8;
13:12

**relatively (1)**
40:5

**relevance (1)**
20:15

**relevancy (3)**
20:3,3;34:4

**relevant (1)**
31:16

**relied (2)**
19:5;28:7

**relief (1)**
36:21

**relies (2)**
16:23;23:5

**rely (2)**
23:2;28:8

**reply (2)**
15:16;22:11

**report (4)**
17:22;21:12,16;
33:8

**reported (1)**
21:16

**reports (3)**
12:5,14;21:9

**representative (2)**
17:10;21:3

**Representatives (12)**
5:3;6:16;7:24;8:4,
7;12:6,15;19:12;
21:17;31:16;33:25;
38:24

**request (4)**
7:14;21:20;30:10;
36:21

**requested (2)**
20:16;21:11

**require (1)**
17:25

**required (1)**
22:11

**requirements (3)**
18:6,23;31:17

**requires (1)**
20:1

**reread (2)**
34:3;39:19

**reserve (1)**
40:14

**reserved (1)**
38:20
**reserving (1)**
33:21
**respect (10)**
6:5;9:2;11:8,11;
13:22;15:1;22:19;
29:25;32:10;35:12
**Respectfully (2)**
16:21;22:22
**respond (1)**
23:25
**response (4)**
13:16;14:18;15:16;
21:20
**responsible (2)**
34:2;40:20
**restrain (1)**
11:16
**restraint (17)**
11:22,25;13:5;14:5;
15:1;20:11;22:24;
24:9;25:11;26:17;
29:24;36:24;37:11,
22,23;38:18;39:1
**restrictions (1)**
17:17
**result (1)**
12:9
**review (2)**
12:17;31:10
**reviewed (1)**
7:8
**right (42)**
7:24;9:17,19;10:1,
11;12:24;13:1,3;15:6,
6,10;16:12;17:11,17;
19:1,10,13;20:18,18;
21:10;22:25;24:18;
25:3,4;29:10,14;31:1,
18;32:5;33:19;35:9,
17;36:22;37:20;38:8,
9,20,22;39:3,14,16;
40:2
**ROBERT (1)**
4:10
**Robinson (1)**
27:9
**role (2)**
28:16;40:8
**roll (2)**
25:25;26:1
**Rule (10)**
9:7,18;14:1,10;
17:24;20:8;22:10;
33:14;36:3;38:4
**ruling (5)**
9:18;17:16;23:23;
39:20;40:11

---

**S**

**same (2)**

27:12,13
**SANDLER (1)**
4:22
**satisfies (1)**
18:23
**saw (1)**
7:8
**saying (5)**
22:8;25:21;29:8;
30:13;39:21
**schedule (1)**
18:9
**scope (1)**
9:15
**scrolling (1)**
35:15
**seal (1)**
17:9
**sealing (1)**
17:13
**second (2)**
30:15;32:25
**secondly (1)**
23:1
**seeds (1)**
36:8
**seek (4)**
9:5;10:8;15:3,24
**seeking (13)**
9:3,14,24;10:5;
11:7;13:14;16:5,8,13;
17:9,22;21:8;39:11
**seeming (1)**
29:18
**seems (5)**
7:13;12:24;13:5,24;
17:14
**send (1)**
27:8
**sense (2)**
8:1;22:17
**sent (2)**
15:12;35:11
**separately (1)**
11:9
**serious (1)**
26:25
**seriously (1)**
34:5
**served (3)**
10:21;13:12;19:20
**service (1)**
10:22
**set (3)**
15:13;30:1;40:5
**setting (1)**
14:2
**seven (4)**
24:1;25:24;26:7;
27:12
**SEZC (2)**
4:3,16
**Shang (2)**

4:3,16
**shareholder (3)**
14:21;17:6;32:1
**shareholders (2)**
16:16;17:5
**Shaw (2)**
6:15;8:3
**sheet (1)**
35:16
**shot (2)**
36:7;38:16
should-there-or-should-there-not-be-a- (1)
17:18
**simple (2)**
26:18;27:15
**simply (4)**
14:18;16:1;32:20;
37:15
**Singapore (12)**
7:10;8:9,21;16:24;
18:19,20;23:1,5,9;
28:7;30:23;35:12
**Singapore's (1)**
8:6
**slog (1)**
12:21
**solely (2)**
13:12;39:1
**solution (2)**
17:15;40:17
**solvency (6)**
32:23;33:3,3,12,13,
17
**solvent (9)**
8:18;17:1;22:2;
25:10;28:9,17;32:23;
33:1;40:7
**somebody (2)**
26:24;38:2
**somehow (1)**
27:25
**someone (1)**
32:1
**someone's (1)**
36:20
**sometimes (1)**
6:8
**soon (4)**
39:22,23,23;40:20
**sorry (7)**
6:7;7:7;27:4;31:25;
35:23;40:17,19
**sort (2)**
17:15;22:7
**sought (9)**
8:20;13:1;18:22;
21:18,25;31:15;
36:22,23,24
**sounding (1)**
13:25
**sounds (1)**
40:2
**sovereign (2)**

40:6,6
**specifically (1)**
15:12
**spend (1)**
35:15
**SPGK (27)**
4:3,16;6:19;8:22;
9:3,14,16;10:6;12:7,9,
19;15:2,16;19:16;
20:4;22:6;23:21;
26:14;29:17;30:17,
20;34:16;35:6;36:23;
38:18,18;39:4
**SPGK's (3)**
8:15;26:17;36:24
**spot (2)**
35:23;36:4
**standards (1)**
11:17
**standing (18)**
14:17,19,20,24;
15:4,22,22,24;26:14,
18;31:20,21,22;32:3,
6,6,8,9
**STANG (4)**
4:2,15;6:19;23:21
**start (3)**
8:1;36:10;37:17
**stated (3)**
11:15;12:4;14:11
**statements (4)**
13:15;18:15;21:19;
30:2
**States (3)**
28:12,24;30:22
**status (5)**
12:5,14;21:9,12;
40:7
**still (3)**
19:15,18;37:5
**stop (4)**
25:13,15;30:18;
36:17
**straight (2)**
23:4;26:6
**Street (1)**
4:18
**struggle (2)**
7:15,16
**subject (2)**
6:4;33:23
**submissions (2)**
20:18;35:21
**submit (2)**
11:24;23:3
**submitted (4)**
29:23;31:10;33:5;
35:5
**submitting (1)**
16:10
**subpoena (5)**
9:17;13:14;19:20;
24:23,24

**subpoenas (1)**
27:8
**substance (2)**
36:19;40:16
**substantive (1)**
34:12
**succeed (1)**
24:10
**success (6)**
24:12;26:10,11;
31:9;37:5,6
**successful (1)**
40:4
**suits (1)**
7:18
**summon (1)**
39:20
**support (3)**
9:9;13:2;34:16
**supposed (1)**
7:3
**sure (9)**
8:13;11:10;14:10;
20:6,25;21:1;28:25;
36:12;40:2
**surely (2)**
20:20;36:24

---

**T**

**tailored (1)**
17:16
**Taiwan (1)**
30:23
**takeaway (1)**
20:7
**takeaways (1)**
27:4
**Talk (1)**
26:4
**talked (1)**
33:16
**telling (2)**
37:12;38:22
**term (1)**
10:11
**terminate (15)**
8:11;11:8,21,24;
13:3,4,13;14:6,17;
15:9;16:3;20:14;
22:24;37:18;38:25
**terminated (2)**
19:14;29:25
**termination (4)**
14:14;18:7;19:4,6
**terribly (1)**
33:21
**test (5)**
18:15,16,16,18;
37:9
**tested (1)**
30:4
**testified (1)**

21-11854-dsj    Doc 79    Filed 10/23/23    Entered 10/26/23 10:44:29    Main Document
In the Matter of: ASCENTRA HOLDINGS    Pg 49 of 49

October 19, 2023

28:15
**testify (1)**
17:13
**testimony (2)**
17:9;39:8
**testing (1)**
31:8
**tethered (1)**
15:24
**Thanks (1)**
23:13
**that'll (1)**
40:13
**thereafter (1)**
39:23
**therefore (1)**
10:20
**thinking (4)**
22:17;23:9;34:7,20
**Third (1)**
4:5
**though (3)**
20:1;38:16,19
**thought (2)**
24:2;38:5
**three (1)**
35:5
**tie (1)**
24:21
**tied (3)**
14:5;24:22;27:2
**ties (1)**
34:4
**today (3)**
26:15;33:21;37:19
**told (2)**
18:3;28:7
**took (7)**
12:12;24:1;25:11;
27:12,14;30:1;37:2
**top (1)**
34:13
**topic (2)**
17:21;31:15
**topical (1)**
17:17
**topics (2)**
9:24;17:22
**totally (1)**
7:2
**touched (1)**
38:1
**Town (1)**
5:5
**transcript (1)**
39:17
**treat (1)**
22:13
**tremendous (1)**
19:11
**tricky (1)**
9:19
**trustee (3)**

39:10,10,11
**trustee's (1)**
39:12
**try (1)**
39:21
**trying (3)**
12:25;36:3,17
**turn (2)**
23:13;29:16
**two (11)**
7:13;9:1;13:1;
15:15;19:21;22:6;
27:13;34:15,22,23;
35:6

**U**

**Um-hum (3)**
12:13;34:24;35:3
**unbelievable (1)**
33:22
**under (13)**
8:18;9:18,19,20;
17:1,2,8,17;22:2;
28:12;33:1,9,13
**underlying (2)**
34:3;39:19
**undertake (1)**
12:16
**undertaking (1)**
12:5
**undo (2)**
24:9;37:22
**undone (1)**
37:23
**unfair (1)**
24:4
**unfairness (1)**
29:18
**unfancy (1)**
7:12
**unfathomable (1)**
38:2
**United (3)**
28:12,24;30:22
**unrecognized (1)**
13:3
**up (7)**
7:20;22:16;23:4,18;
27:2;33:21;38:11
**upon (2)**
23:2,19
**US-based (1)**
14:2
**use (2)**
18:16;20:9
**utilize (1)**
13:17

**V**

**view (2)**
7:17;34:1

**virtually (1)**
28:16

**W**

**wait (5)**
7:7;24:6;25:23,23,
23
**waiting (1)**
6:7
**waived (1)**
16:6
**wants (1)**
32:9
**warranted (1)**
19:6
**warrants (1)**
28:23
**water (1)**
19:7
**way (8)**
13:11,11;19:3;27:2;
32:8;36:15;38:4;
39:25
**week (3)**
12:3;19:21;39:20
**weeks (2)**
15:15;19:21
**weigh (1)**
31:10
**What's (4)**
14:12;27:22;29:12,
17
**whatsoever (1)**
20:4
**When's (1)**
15:8
**Whereupon (1)**
40:24
**whole (1)**
11:6
**wholly (1)**
31:11
**Willow (1)**
5:4
**Wilmington (1)**
4:20
**wind-up (1)**
28:16
**Winthrop (2)**
6:15;8:3
**withdrawal (1)**
22:24
**withdrawing (1)**
37:10
**withdrawn (2)**
11:25;37:11
**witness (3)**
17:13;35:5;39:9
**witnesses (1)**
12:18
**Wonderland (1)**
26:12

**word (2)**
13:3;18:16
**words (1)**
36:13
**work (3)**
33:22;38:23;40:3
**workable (1)**
23:16
**working (1)**
36:14
**writ (3)**
10:13,14,19
**writing (1)**
33:23
**wrong (3)**
24:17;29:9;30:2

**Y**

**Yep (2)**
6:13;34:18
**yesterday (1)**
35:12
**York (6)**
4:7;25:8,9;26:8;
30:8,11
**Yoshida (8)**
8:23;29:24;30:5,8,
12,16;39:1,3
**Yoshida's (1)**
30:1

**Z**

**ZIEHL (4)**
4:2,15;6:19;23:21

**1**

**1 (1)**
6:20
**10017 (1)**
4:7
**10123 (1)**
28:4
**11 (2)**
9:9;35:8
**11th (1)**
10:13
**12:03 (1)**
6:13
**12:30 (1)**
7:3
**12b6 (3)**
22:8,14;23:18
**15 (5)**
17:2;20:9;31:5;
33:9;37:19
**17th (1)**
4:19
**19899 (1)**
4:20

**2**

**2004 (2)**
9:18;19:20
**2021 (1)**
31:14
**21-11854 (1)**
6:4

**3**

**30b6 (4)**
9:21,23;13:9;27:7
**34th (1)**
4:6

**4**

**4th (1)**
5:4

**7**

**71 (1)**
35:20
**73 (1)**
35:20
**74 (1)**
35:20
**77 (1)**
35:21
**78 (1)**
35:21
**780 (1)**
4:5

**9**

**919 (1)**
4:18