UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re

ASCENTRA HOLDINGS, INC. (in Official
Liquidation),

                        Debtor in a
                        Foreign Proceeding.[1]

Case No. 21-11854 (DSJ)

Chapter 15

## MEMORANDUM DECISION AND ORDER DENYING
## FOREIGN REPRESENTATIVES' APPLICATION TO
## PRECLUDE PROPOSED DEPOSITION

Before the Court is the request of the Foreign Representatives of Ascentra Holdings, Inc.

("**Ascentra**") to entirely deny discovery being requested by a group of entities collectively

referred to as "SPGK," which SPGK believes it needs and is entitled to in connection with two

motions it has filed in this Chapter 15 proceeding.  One of SPGK's motions (the "**Restraint**

**Termination Motion**") seeks an order terminating a restraint on certain funds that this Court

entered in 2021 (the "**Restraint**") when the Court also recognized as a foreign main proceeding

certain Cayman Islands proceedings brought by Ascentra.  The other motion of SPGK (the

"**Recognition Termination Motion,**" and, together with the Restraint Termination Motion, the

"**Motions**") seeks an order terminating the Court's recognition of Ascentra's Cayman Islands

main proceedings pursuant to Section 1517 of the Bankruptcy Code (the "**Recognition**").  Both

the Recognition and the Restraint were effected by the same order (the "**Recognition and**

**Restraint Order**").  Ascentra's Foreign Representatives have filed oppositions to both Motions,

---

[1]    The Debtor's company registration number is 283719.  The Debtor's registered office is c/o JTC (Cayman) Ltd.,
       94 Solaris Avenue, Second Floor, Camana Bay, PO Box 30745, Grand Cayman, Cayman Islands, KY1-1203.

and briefing is being held in abeyance while SPGK's contested demand to depose one of the Foreign Representatives is being litigated.

For reasons detailed below and briefly stated here, the Court rejects the Foreign Representatives' contention that the deposition that SPGK seeks should be precluded outright. No more need be decided now, and the Court does not rule now on narrower disputes that may arise, but the Court notes that serious questions legitimately may be raised on a less categorical basis, particularly based on considerations of comity including the weight that may be due to Cayman privilege rules and limitations on disclosure of information pertinent to the underlying Cayman proceedings, and on the U.S. discovery rules' requirement that discovery be relevant and proportional to the needs of the dispute before this Court that gives rise to SPGK's request.

In brief, SPGK's two Motions and the oppositions filed by the Ascentra Foreign Representatives give rise to contested matters, and these trigger discovery rights. Specifically, Bankruptcy Rule 1018 provides that various discovery-related Bankruptcy Rules apply in Chamber 15 matters including "all proceedings contesting . . . a chapter 15 petition for recognition, and to all proceedings to vacate an order for relief," and, even if Rule 1018 did not apply, Bankruptcy Rule 9014 makes discovery available "[i]n a contested matter not otherwise governed by these rules." Indeed, SPGK strenuously complains—and the Foreign Representatives do not deny—that the Foreign Representatives have deposed the principal of SPGK and one of its retained experts in this very matter. The Court may ultimately conclude that the Foreign Representatives have the better of the parties' legal arguments, but fairness dictates allowing SPGK a reasonable opportunity to develop predicate facts supporting its legal contentions in contested matters to which it is a party before this Court, subject to whatever narrower limitations may prove appropriate as the case progresses.

## **BACKGROUND**

In 2021, this Court entered the Recognition and Restraint Order, which both granted recognition of a Cayman Islands proceeding and authorized relief in connection with that recognition and in aid of the underlying proceedings, in the form of a restraining order intended to preserve certain funds whose ownership was or may be in dispute.  Specifically, on October 28, 2021, the Foreign Representatives filed an emergency application for a provisional order on an emergency application finding that Ascentra had presented a colorable claim to entitlement to certain funds (referred to as the "**Planet Payment Funds**"), and awarding provisional relief including a stay of any setoff or transfer of the Planet Payment Funds.  [ECF No. 9].  SPGK filed a "limited objection and reservation of rights" to the emergency application, in which SPGK explained that it "d[id] not object to the stay relief requested by the Liquidators but object[ed] to and s[ought] modification and clarification of the Proposed Order [submitted therewith]."  [ECF No. 15 at 1].  The Court entered the provisional order on November 1, 2021 with SPGK's requested modifications.  [ECF No. 17].  On November 22, 2021, SPGK filed a "reservation of rights" to the petition for recognition in which SPGK stated that, "[w]hile SPGK d[id] not objection [sic] to the Petition for Recognition, it remain[ed] in discussion with the Debtors as to the form of order to address the same concerns raised by SPGK in the [limited objection to the emergency application]."  [ECF No. 20 at 1].  Following further proceedings, on December 6, 2021, the Court entered the Recognition and Restraint Order, which reflected the modifications requested by SPGK, recognized the Cayman proceeding pursuant to sections 1517(a) and 1517(b)(1) of the Bankruptcy Code, and effected, on a permanent basis, the Restraint.  [ECF No. 22].  Notwithstanding SPGK's active participation in these proceedings, SPGK did not seek discovery from any party before the Court entered the Recognition and Restraint Order.

The Restraint, as embodied in the Recognition and Restraint Order, includes both a general bar on transferring any Ascentra property to anyone other than Ascentra's liquidators, and two provisions specifically addressing the Planet Payment Funds by restricting use of the funds yet also preserving SPGK's entitlement to commence proceedings in a non-U.S. forum to adjudicate the parties' dispute regarding ownership of those assets:

> 3. . . . [E]xcept to the extent permitted by section 362 or elsewhere in the Bankruptcy Code, all persons and entities are stayed from: . . . (d) transferring, relinquishing or disposing of any property of Ascentra to any person or entity other than the Liquidators.
>
> * * *
>
> 9. Ascentra and SPGK shall not transfer any funds in credit card processing accounts maintained by Planet Payment Inc. or any of its affiliates in the name of SPGK (the 'Planet Payment Funds') without further order of this Court. Nothing contained in this Order shall constitute a finding or determination regarding the existence or validity of Ascentra's claims to a property interest in the Planet Payment Funds or any other assets or property in which Ascentra has asserted a claim or interest.
>
> 10. Nothing in this Order shall be construed to (i) limit SPGK from commencing an action in a non-U.S. forum to adjudicate the dispute regarding the ownership of the assets or property claimed by Ascentra, including the Planet Payment Funds or (ii) constitute a determination that this Court or another U.S. court is the proper forum for the adjudication of such dispute.

[ECF No. 22 at 4, 6].

After entry of the Recognition and Restraint Order, about a year and a half passed without any activity of note in this Court. Then, on June 30, 2023, SPGK filed the Motions in this Court seeking to terminate the Recognition pursuant to 11 U.S.C. §§ 1517(d) and 1520(c) [ECF No. 37], and to terminate the Restraint pursuant to 11 U.S.C. § 1522(c) [ECF No. 42]. The Court held a status conference on July 20, 2023, with a merits hearing to be held later. The parties disagreed about whether SPGK was entitled to depose two individuals who had submitted

4

declarations in 2021 in support of the Foreign Representatives' requests for the Restraint and the

Recognition.  Those individuals were Guy Cowan, who had submitted a declaration addressing

questions of Cayman law, and Graham Robinson, who had submitted a declaration that SPGK

characterized as factual in nature.  [ECF No. 52 at 1].

Following the July 20 status conference, and at the Court's direction, the parties

submitted brief letters setting forth their contentions.  [ECF Nos. 52–53].  SPGK argued that the

2021 declarations of Mr. Robinson and Mr. Cowan contained material inaccuracies that were

relied upon in the original application for recognition and for a restraint of funds, so the

requested depositions were necessary to establish the falsity of the deponents' earlier

declarations and, consequently, show that the Cayman Islands proceeding was not entitled to

recognition, and/or that the Restraint should be terminated.  [ECF No. 52 at 2].  The Foreign

Representatives countered that SPGK had waived any rights it may have had to take the

requested depositions by failing to seek discovery or raise a substantive objection when the

Recognition and Restraint Order was entered in 2021, and that, in any event, the requested

deponents' testimony was irrelevant to the Motions because the Foreign Representatives did not

intend to rely on either of the 2021 declarations or declarants in opposition to SPGK's Motions.

[ECF No. 53 at 3].

On August 18, 2023, the Court entered an order (the "**August 18 Order**") concluding

that "the two opposed depositions that SPGK seeks [were], at most, marginally relevant to their

motions, and that the expense and inconvenience of proceeding with them [was] not

meaningfully important to the parties' current dispute, and 'outweigh[ed]' the possible benefit of

the depositions."  [ECF No. 56 at 6].  The Court reached that conclusion because (i) the Motions

could "be resolved based on facts presented on a current basis by the parties, and the Ascentra

liquidators represent[ed] that they do not intend to rely on the 2021 declarations of Mr. Cowan and/or Mr. Robinson"; (ii) by failing to seek discovery or meaningfully object before the Recognition and Restraint Order was entered, "SPGK may well have waived" any right "to revisit the prior orders . . . as opposed to seeking termination . . . and dismissal of the case on a forward-looking basis"; and (iii) "any effort to impeach the 2021 declarants [was] irrelevant or, at a minimum, an exercise whose possible value is outweighed by the expense and inconvenience of pursuing deposition testimony now." [ECF No. 56 at 6–8]. The Court added, however, that SPGK was "not necessarily preclude[d] [] from seeking discovery now from those same individuals if they possess knowledge that is relevant to the parties' current dispute and proportional to the needs of the case as required by Rule 26(b)," and that the Court was denying SPGK's request "without prejudice to a renewed request based on a showing that either proposed deponent possesses factual knowledge relevant to the parties' current dispute that is an appropriate subject for discovery under the governing Rule 26 standard or any other applicable law." [ECF No. 56 at 8].

On August 24, 2023, SPGK served on the Foreign Representatives a Notice of Deposition of Ascentra Holdings, Inc. pursuant to Civil Rule 30(b)(6) and Bankruptcy Rule 9014 (the "**Deposition Subpoena**"). [ECF No. 58-2]. The Deposition Subpoena, by its terms, sought "testimony upon oral examination of Ascentra Holdings, Inc. ('Debtor') in connection with SPGK's Motion Pursuant to 11 U.S.C. §§ 1517(d) and 1520(c) for an Order Terminating the Recognition and Restraint Order (ECF No. 37) by the person(s) most qualified to testify on the Debtor's behalf with respect to the subject matters described in Exhibit A hereto." [ECF No. 58-2 at 2 of 6]. Exhibit A to the Deposition Subpoena identifies the following nine deposition topics:

1. Whether Ascentra is, and since the Recognition Date has been, solvent for purposes of the Cayman Proceeding.

2. Whether, after the Recognition Date, the JOLs [i.e., the Foreign Representatives] ever considered Ascentra to be of doubtful solvency for purposes of the Cayman Proceeding.

3. The identity of each creditor of Ascentra existing after the Recognition Date, the amount owed to each such creditor, and the factual bases for such debt or obligation.

4. Any Proof of Debt or objection to any Proof of Debt requested by the JOLs or asserted by or on behalf of any purported creditor after the Recognition Date.

5. Any appearance by any purported creditor in the Cayman Proceeding after the Recognition Date.

6. Any application for sanction or other request for relief made in the Cayman Proceeding after the Recognition Date by any purported creditor.

7. Communications with any shareholder or anyone purporting to act on behalf of any shareholder (other than Lequios Holdings Ltd or Ryunosuke Yoshida, including SPGK) after the Recognition Date.

8. Communications after the Recognition Date with any purported creditor, or anyone purporting to act on behalf of any purported creditor, concerning any debt asserted to be owed by Ascentra to the purported creditor.

9. Filings in the Cayman Proceeding after the Recognition Date.

[ECF No. 58-2 at 5–6 of 6].

On August 28, 2023, the Foreign Representatives filed a letter expressing their view that the Deposition Subpoena was inappropriate and requesting a status conference to discuss it. [ECF No. 58].  On August 29, 2023, SPGK filed a letter responding to various points in the Foreign Representatives' letter and raising several arguments of its own.  [ECF No. 59].

On September 1, 2023, the Foreign Representatives filed oppositions to the Motions. [ECF Nos. 62, 64].

On September 13, 2023, the Court held a status conference to discuss the Deposition Subpoena, the transcript of which is docketed at ECF No. 70. At the conclusion of that conference, the Court stated that "the arguments need to be developed by the foreign representatives, because they are attacking the entitlement of the SPGK parties to be taking the discovery they seek or pursuing the relief they seek." [ECF No. 70 at 28:17–20]. The Court therefore directed the parties to submit additional briefing. [*Id.* at 28:20–23].

On September 20, 2023, the Foreign Representatives filed a letter brief asking this Court to "deny SPGK's request to take the discovery pursuant to the Deposition Subpoena in its entirety." [ECF No. 71 at 10]. SPGK filed a responsive letter brief on September 27, 2023. [ECF No. 73]. The Foreign Representatives filed a reply letter brief on October 4, 2023. [ECF No. 74]. The parties' contentions are discussed in detail in the Discussion section below.

On October 11, 2023, the Foreign Representatives filed a supplemental letter noting that, earlier that day, the Grand Court of the Cayman Islands had issued "an Amended Writ of Summons and Amended Statement of Claim (i.e., a complaint)" which the Foreign Representatives had filed against SPGK and "pursuant to which the [Foreign Representatives] s[ought] to recover, among other things, the Planet Payment Funds for the benefit of Ascentra." [ECF No. 77 at 1]. The letter argued that "SPGK's request for pre-litigation discovery related to the claims that are the subject of the litigation are [sic] inappropriate now that there is pending litigation before the Grand Court, and any discovery should be directed there." [ECF No. 77 at 2].

On October 18, 2023, the Foreign Representatives filed another supplemental letter to inform the Court that an appellate court in Singapore had reversed a lower court decision on which SPGK relies in its Recognition Termination Motion and ruled that the Cayman Island

proceeding qualifies as a "foreign proceeding" under Singapore law because "it (a) is a collective proceeding, (b) is being conducted under a law relating to insolvency or adjustment of debt and (c) has as its purpose the liquidation of Ascentra." [ECF No. 78 at 1]. The letter also attached a copy of the Singapore appellate decision. [ECF No. 78 at 3–68 of 68].

On October 19, 2023, the Court conducted a hearing on the parties' submissions, the transcript of which is docketed at ECF No. 79.

## <u>DISCUSSION</u>

### I.    <u>Legal Standards</u>

SPGK served the Deposition Subpoena pursuant to Civil Rule 30(b)(6), according to SPGK made applicable to this proceeding by Bankruptcy Rules 9014 and, in turn, 7030. Civil Rule 30(b)(6) provides, in pertinent part:

> A party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. . . . The persons designated must testify about information known or reasonably available to the organization.

Fed. R. Civ. P. 30(b)(6).

"The deposition topics must be 'relevant to any party's claim or defense.'" *Bigsby v. Barclays Cap. Real Est., Inc.*, 329 F.R.D. 78, 81 (S.D.N.Y. 2019) (citing Fed. R. Civ. P. 26(b)(1)). "'Like other forms of discovery, a Rule 30(b)(6) deposition notice is subject to the limitations under Federal [Civil] Rule 26—deposition topics should be proportional to the needs of the case, not unduly burdensome or duplicative, and described with 'reasonable particularity.'" *Id.* (quoting *Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, No. 14CV09371, 2017 WL 9400671, at *1 (S.D.N.Y. Apr. 27, 2017)).

Although the Foreign Representatives do not specifically frame it as such, the Court

interprets their opposition to the Deposition Subpoena as a motion for a protective order pursuant

to Civil Rule 26(c)(1), which provides, in pertinent part:

> A party or any person from whom discovery is sought may move for a protective
> order in the court where the action is pending—or as an alternative on matters
> relating to a deposition, in the court for the district where the deposition will be
> taken. . . .   The court may, for good cause, issue an order to protect a party or
> person from annoyance, embarrassment, oppression, or undue burden or expense,
> including one or more of the following:
>
>> (A) forbidding the disclosure or discovery;
>>
>> . . .
>>
>> (C) prescribing a discovery method other than the one selected by the
>> party seeking discovery; [or]
>>
>> (D) forbidding inquiry into certain matters, or limiting the scope of
>> disclosure or discovery to certain matters[.]

Fed. R. Civ. P. 26(c)(1).  "'This rule confers broad discretion on the trial court to decide when a

protective order is appropriate and what degree of protection is required.'"  *City of New York v.*

*Fedex Ground Package Sys., Inc.*, No. 13 CIV. 9173, 2016 WL 1718261, at *5 (S.D.N.Y. Apr.

27, 2016) (quoting *U.S. Commodity Futures Trading Comm'n v. Parnon Energy Inc.*, 593 F.

App'x 32, 36 (2d Cir. 2014)) (internal quotation marks omitted).  "'The party seeking a

protective order bears the burden of establishing that good cause for the order exists.'  It must

demonstrate a 'particular need for protection,' showing 'specifically how, despite the broad and

liberal construction afforded the federal discovery rules, each [request] is not relevant or how

each question is overly broad, burdensome or oppressive by submitting affidavits or offering

evidence revealing the nature of the burden.'"  *Id.* (quoting *Ambac Assur. Corp. v. Adelanto Pub.*

*Util. Auth.*, No. 09 CIV. 5087, 2012 WL 1589597, at *5 (S.D.N.Y. May 7, 2012)).

## II.   The Restraint and Recognition Termination Motions Are Contested Matters That Trigger Discovery Entitlements and Obligations

Although most of the parties' briefing focuses on whether various doctrines preclude the discovery sought, the appropriate starting point for the analysis is to examine whether the parties' pending dispute is one that creates a right to discovery in the first place, absent some contrary reason that would overcome an otherwise applicable entitlement to discovery.  The answer to that question is yes.

As discussed, SPGK asserts ownership of funds that are restrained by the Court's 2021 Recognition and Restraint Order, and SPGK now has filed the two Motions that remain pending in this Court, one to terminate the Restraint pursuant to Bankruptcy Code Section 1522(c) and one to terminate the Recognition pursuant to Bankruptcy Code Section 1517(d).  The Foreign Representatives have filed oppositions to each Motion, and SPGK seeks to depose one of the Foreign Representatives concerning topics including Ascentra's solvency or lack thereof and the existence and activities of creditors in Acentra's Cayman proceedings.

An opposed motion is a "contested matter."  *See, e.g.*, *In re Ephedra Prod. Liab. Litig.*, 329 B.R. 1, 6 (S.D.N.Y. 2005) ("Although 'contested matter' is not defined in the Code or text of the Rules, the Notes of the Advisory Committee to the 1983 amendment to Rule 9014 explain: 'Whenever there is an actual dispute, other than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a contested matter.'"); *In re Nw. Airlines Corp.*, No. 05-17930, 2007 WL 2815917, at *4 (Bankr. S.D.N.Y. Sept. 26, 2007) (same); *see also, e.g.*, *In re Dernick*, No. 18-32417, 2019 WL 5078632, at *3 (Bankr. S.D. Tex. Sept. 10, 2019) ("Under Rule 9014 the [disputed discovery motion] constitutes a contested matter as it does not fall within the definition of adversary proceedings under Rule 7001.  Additionally and pursuant to Rule 9014, Rule 7026 applies to contested matters.") (citations omitted).  Bankruptcy Rule 1018 provides that

various discovery-related Bankruptcy Rules apply in Chamber 15 matters including "all proceedings contesting . . . a chapter 15 petition for recognition, and to all proceedings to vacate an order for relief," and the same rule provides that "a reference in the Part VII rules to adversary proceedings shall be read as a reference to proceedings contesting . . . a chapter 15 petition for recognition, or proceedings to vacate an order for relief."  Fed. R. Bankr. P. 1018 (referencing Bankruptcy Rules including 7024-7026 and 7028-7037); *see also* Bankruptcy Rule 9014 (discovery-related Bankruptcy Rules apply "[i]n a contested matter not otherwise governed by these rules," and "[t]he court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply").  The Foreign Representatives have not rebutted SPGK's showing that the Motions are contested matters that give rise to discovery rights.  In fact, in one case on which the Foreign Representatives heavily rely, *In re China Med. Techs., Inc.*, Case No. 12-13736 (Bankr. S.D.N.Y. oral ruling June 19, 2013, transcript docketed in this case at ECF No. 71 Ex. 6), the Court denied discovery "as a matter of discretion" but in so doing noted that the Court was not "imposing a hard and fast rule that non-foreign representatives must always be denied discovery in Chapter 15 cases," and further noted that "on matters involving recognition . . . they have clearer rights to discovery."  [ECF No. 71 Ex. 6 at 17:5–8, 17:14–15].

Thus, unless some overriding circumstance or applicable law overcomes the ordinary availability of discovery in the circumstances present here, SPGK is entitled to discovery in

connection with the Motions, subject to applicable rules including the scope-of-discovery provisions of Bankruptcy Rule 7026 and comity considerations.

## III.    The Foreign Representatives Fail to Show That No Discovery Is Permissible, But Comity and Relevance/Proportionality Considerations Likely Will Require Limitations

The Foreign Representatives raise six primary objections to the requested deposition. *First,* the Foreign Representatives argue that SPGK lacks standing to seek termination of the Recognition (but not the Restraint), and that, because their proposed deposition topics go to recognition itself rather than the merits of the parties' dispute over ownership of the disputed funds, SPGK lacks standing and therefore has no entitlement to take the discovery it seeks. *Second*, the Foreign Representatives argue that it would inappropriately exceed this Court's authority to conduct a "wholesale inquiry" into whether the Debtor is solvent because this Court's role is limited to "assist[ing] and cooperat[ing]" with the Cayman Grand Court in that court's conduct of Ascentra's foreign main proceeding.  *Third*, the Foreign Representatives argue that the Deposition Subpoena seeks information that is privileged and/or sealed in the Cayman proceedings.  *Fourth*, the Foreign Representatives argue that principles of comity counsel against enforcing the Deposition Subpoena.  *Fifth*, the Foreign Representatives argue that the Deposition Subpoena seeks irrelevant information beyond the scope of the Recognition Termination Motion.  *Sixth*, and finally, the Foreign Representatives argue that the "pending proceeding rule" bars any deposition concerning the Restraint Termination Motion.

SPGK responds with four primary arguments of its own.  *First*, SPGK argues that the requested discovery is relevant to the Motions and proportional to the needs of the case.  *Second*, SPGK argues that the Foreign Representatives have already conceded standing as to the Restraint Termination Motion, and that SPGK has standing to seek termination of the

Recognition as an entity whose interests were affected by the relief granted upon the Recognition (i.e., the Restraint).  *Third*, SPGK argues that Cayman law does not preclude SPGK from deposing Mr. Robinson outright, and to the extent any specific question implicates Cayman Islands law, the Foreign Representatives can raise an objection at that time, as appropriate. *Fourth*, and finally, SPGK argues that a comity analysis is unnecessary because the Foreign Representatives have failed to show a conflict between domestic and foreign law, and, in any event, a comity analysis would not preclude the requested deposition.

The Court addresses each of the Foreign Representatives' arguments in the order in which the Foreign Representatives raise them.

A.    SPGK Has Standing to Seek Termination of the Recognition Order

The Foreign Representatives acknowledge that SPGK has standing to challenge the Restraint but assert that SPGK lacks standing to seek to terminate the Recognition, which they argue is the sole focus of the discovery that SPGK seeks.  The Foreign Representatives argue that SPGK is neither a creditor nor an owner of any Ascentra entity, although they acknowledge that SPGK is a litigation target of Ascentra or its representatives.  The Foreign Representatives say little if anything about whether SPGK's conceded standing to seek relief from this Court's Restraint extends to give SPGK standing to seek to terminate the Recognition, which this Court granted in the same order in which it also granted the Restraint, and without which the Restraint could not have been imposed.

Rather, the Foreign Representatives argue that only creditors or owners of an estate (or, conceivably, others with a pecuniary interest) are "parties in interest" with eligibility to take discovery or seek relief with respect to a pending bankruptcy proceeding.  Thus, according to the Foreign Representatives, because SPGK assertedly is merely a potential litigation target, it has

14

no pecuniary interest in the outcome of the proceeding and, therefore, no standing to challenge

this Court's recognition of the Cayman proceeding.  The Foreign Representatives attempt to

reinforce this contention by arguing that SPGK would not have standing to seek relief or

discovery in the Cayman Islands proceeding and therefore should not be permitted to challenge

the Recognition here.

The pertinent facts are straightforward.  In 2021, this Court entered the Recognition and

Restraint Order, which both recognized the Cayman Island proceedings pursuant to Section

1517(a) of the Bankruptcy Code and, pursuant to Section 1521(a)(3) of the Bankruptcy Code,

restrained or barred transfer of funds that are held in one or more SPGK-associated, U.S.-based

accounts.  SPGK appeared at the time the Recognition and Restraint Order was issued and

reserved rights, securing certain rights-reserving provisions in the resulting orders but never

litigating an objection or seeking discovery at the time the Court granted recognition and

restrained the disputed funds.  SPGK contends that the restrained funds belong to SPGK, and

that the Restraint is unlawful and should be terminated.  The Foreign Representatives disagree.

The continuing appropriateness of the Restraint will be resolved through the upcoming merits

consideration of SPGK's Restraint Termination Motion.

The Foreign Representatives cite a modest number of cases in support of their standing

contention, including *In re Timberline Energy Corp.*, Case No. 81-00522, 1989 Bankr. LEXIS

2437 (Bankr. N.D.N.Y. Dec. 4, 1989).  *Timberline* concluded that an individual who had been

convicted of criminally defrauding a debtor or bankruptcy estate lacked standing to seek relief

from Bankruptcy Court orders administering the estate of the business the movant had

victimized.  Construing the motion before it as arising under Fed. R. Civ. P. 60(b) (made

applicable by Bankruptcy Rule 9024), the court held that "in order to have the standing required

to bring a Rule 60(b) motion, [the movant] must be a party in interest to the Debtor's bankruptcy proceedings." *Timberline*, 1989 Bankr. LEXIS 2437, at *11. The *Timerbline* court noted that "[p]arty in interest is not defined in the Code" and that "whether an entity is a party in interest must be [determined] on a case by case basis." *Id.* at *12. Further, the court noted, "all persons whose pecuniary interests are directly affected by proceedings in bankruptcy are parties in interest." *Id.* (citing *Matter of Transatlantic and Pacific Corp.*, 216 F. Supp. 546, 552 (S.D.N.Y. 1963)). Further, citing a leading treatise, *Timberline* observes that the Code "must be construed broadly to permit parties affected by a Chapter 11 proceeding to appear and be heard." *Id.* Thus, *Timberline* explained, "the Second Circuit [in one case] required status as either a creditor or a debtor in order to be deemed a party in interest," *id.* (citing *In re Comcoach Corp.*, 698 F.2d 571, 573 (2d Cir. 1983)), but at least one case following *Comcoach* explained that a party may also establish standing by "assert[ing] an equitable claim against the estate," *id.* (citing *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 849 (Bankr. S.D.N.Y. 1989)). To evaluate this question, the "court must determine whether an entity has a sufficient stake in the proceeding to require representation." *Id.* (citing *Ionosphere*).

The Court concludes that SPGK meets these standing requirements not only with respect to the Restraint, but also with respect to the Recognition. At least since the Court's entry of the Restraint as to funds that SPGK claims it owns and that are held in an SPGK-associated account, SPGK may be a creditor of the estate and, at a minimum, holds a pecuniary interest and an equitable claim against the estate—a claim of entitlement to assets that the Foreign Representatives have caused to be restrained, thus preventing SPGK from accessing or using the funds for more than two years. Indeed, although the Court would not necessarily be aware of the Foreign Representatives' out-of-court activities, the only activity in the Chapter 15 proceeding

that is apparent to this Court is the Foreign Representatives' securing the Restraint.  Thus, this is

not a case in which SPGK is a minor or ancillary figure seeking to insert itself in a Chapter 15

case where it has no substantial or cognizable interest.  Accordingly, the Court concludes that

SPGK has standing to pursue the relief it now seeks.

The Court pauses to observe that one decision prominently relied on by SPGK as

assertedly supporting SPGK's standing—*In re Viacao Itapemirim, S.A.*, 607 B.R. 761 (S.D. Fla.

2019)—is inapposite.  In *Viacao*, the court considered two motions for a protective order filed by

a foreign representative as against discovery sought by an entity that the court termed a

"discovery target" that was "neither a creditor nor a shareholder of the Debtors."  607 B.R. at

764.  The court held that it "need not, and does not, reach the issue of whether § 1521(a)(4) bars

P&M from taking discovery in this case" or whether the entity had a "pecuniary interest" that, if

found to exist, might require the court to decide whether such an interest justified allowing that

party to take discovery.  *Id.*  The reason for this conclusion was that the party's proposed

discovery was "wholly inappropriate," regardless of whether it did or did not have a theoretical

entitlement to seek discovery, because the party's status as a mere discovery target "is not cause

for allowing the type of discovery that essentially amounts to a broad intrusion into the Foreign

Representative's investigative pursuits."  *Id.*  Further, *Viacao* concerned the availability of

discovery under Rule 2004, and therefore did not rule as to whether "contested matter" discovery

entitlements would justify the discovery sought.  *Id.* (noting that the party seeking discovery

would need to do so "in the context of a contested matter," which was not before the court)

(citing *In re Transbrasil S.A. Linhas Aéreas*, 557 B.R. 240, 241–43 (Bankr. S.D. Fla. 2016)).

While this last observation of *Viacao* is consistent with SPGK's standing contentions here where

a contested matter does exist, *Viacao* itself did not authorize any discovery at all, nor does it hold

that the relevant party would have been entitled to the discovery it sought even in the contested matter context.  As noted, however, the Court nevertheless concludes that SPGK has standing to seek discovery in the contested matter before this Court because it has a pecuniary and/or equitable interest in the U.S. Chapter 15 proceeding, by virtue of this Court's having granted the Foreign Representatives' request to restrain transfer or use of funds that SPGK claims it owns. *See, e.g.*, *Timberline*, 1989 LEXIS 2437, at *12 ("[A]ll persons whose pecuniary interests are directly affected by proceedings in bankruptcy are parties in interest.").

Finally, whether the Foreign Representatives are or are not right that SPGK would lack standing to seek relief in the Cayman Islands proceeding itself, this Court's standing analysis relates to opposed motions that are pending in this Court, and turns on whether SPGK has a sufficient interest in matters pending before this Court to give it standing to seek the relief it seeks here.  The fact that the U.S. proceeding's sole visible function has been to lay claim to and immobilize funds that SPGK claims belong to it is sufficient to establish SPGK's standing in this Chapter 15 proceeding.

   B.   Enforcing the Deposition Subpoena Does Not Exceed the Court's Authority

The Foreign Representatives argue that "a wholesale inquiry into whether the Cayman proceeding is 'solvent' exceeds its authority because independent findings about the solvency of the Cayman proceeding is inconsistent with [the Court's] role to assist and cooperate with the [Cayman] Grand Court."  [ECF No. 71 at 4] (citing *SNP Boat Serv. S.A. v. Hotel Le St. James*, 483 B.R. 776 (Bankr. S.D. Fla. 2012); *In re China Med. Techs., Inc.*, Case No. 12-13736 (Bankr. S.D.N.Y. 2012)).

The Foreign Representatives' argument mischaracterizes at least in part the purpose and nature of the subpoena, and disregards this Court's authority to consider arguments germane to

18

whether the Recognition should be terminated under Bankruptcy Code Section 1517(d).
Moreover, the Foreign Representatives' cited authorities do not support their position.

First, as explained above, there now is a contested matter before this Court as to whether
the Recognition should be terminated based on SPGK's attempt to show "that the grounds for
granting it were fully or partially lacking or have ceased to exist," while taking into account any
prejudice that may result from termination.  11 U.S.C. § 1517(d).  And, as a general matter,
appropriate discovery is available in contested matters.  *See supra* Part II; Bankr. Rules 1018,
9014.

According to the Foreign Representatives, however, the role of a U.S. bankruptcy court
under Chapter 15 is limited to providing assistance to the foreign court, and here SPGK is asking
this Court to improperly supplant the Cayman court's authority to conduct and supervise the
proceeding before it.  Further, according to the Foreign Representatives, "*China Medical* is
squarely on point.  There, the court refused to order discovery to investigate the foreign
representative's determination that the foreign debtor was insolvent because the information
sought was irrelevant to 'anything that would need to be done in the U.S.'"  [ECF No. 71 at 4
(quoting *China Medical*, Mar. 21, 2013 Hr'g Tr. at 20:23)].  But in the very same *China Medical*
oral ruling quoted by the Foreign Representatives, the Court expressly stated that the "legal
issue" that the Court was being asked to rule on was "whether there is ever a right for a party
other than a foreign representative to secure discovery *by Bankruptcy Rule 2004* when it's not
also authorized under 1521 and 1507."  [ECF No. 71-6 at 3:17–20] (emphasis added).  This
observation makes *China Medical* distinguishable in two important respects.  First, as already
noted, the *China Medical* court contrasted the situation before it to contested matters "involving
recognition," where there are "clearer rights to discovery."  [ECF No. 71-6 at 17:14–15].  And

19

here, SPGK is not seeking discovery under Rule 2004, but in connection with the contested

matters to which it is a party, under Rules 7026 and 7030 [*e.g.*, ECF No. 73 at 2], made

applicable by Rules 1018 and 9014.

*China Medical* also is materially distinguishable because that Court's denial of discovery

"as a matter of discretion" [ECF No. 71-6 at 18:5–8] turned on the Court's determination that

"[t]he information sought [was] insufficiently relevant to anything that would need to be done in

the U.S.," [ECF No. 71-6 at 20:22–23], explaining, "[S]olvency may be an issue in the Caymans.

It's not here.  It is not reasonably foreseeable, and indeed I don't think it's even been argued, that

I'm going to be making solvency findings here in the U.S."  [ECF No. 71-6 at 19:2–4].  In fact,

*China Medical* specifically noted that "[t]his, by way of contrast, is very different than the more

common requests that we Bankruptcy Judges get in 15s, to free up foreign assets from freezes

imposed by overly enthusiastic creditors" [ECF No. 71-6 at 19:5–8], and specifically did *not*

"decide whether other parties-in-interest [i.e., parties other than foreign representatives] must

always be denied discovery in Chapter 15 cases in the U.S., even on matters involving

recognition where they have clearer rights to discovery."  [ECF No. 71-6 at 17:12–15].  Here, by

contrast, there are contested proceedings regarding both the Restraint and the Recognition

itself—the very types of proceedings which *China Medical* described as affording parties-in-

interest "clearer rights to discovery."  Thus, if anything, *China Medical* supports SPGK's

position, not the Foreign Representatives'.

*SNP Boat Services*, meanwhile, is too ambiguous and slender a reed to overcome the

ordinary availability of discovery in contested matters before this Court where the issues

addressed are relevant to determinations that this Court must make in applying U.S. Bankruptcy

Code provisions.  The Foreign Representatives characterize *SNP* as holding that the court

"lacked jurisdiction to order discovery about whether a foreign creditor's interests were

sufficiently protected in a foreign proceeding," and that the bankruptcy court "abused its

discretion in ordering discovery because '[t]o inquire into a specific foreign proceeding is not

only inefficient and a waste of judicial resources, but more importantly, necessarily undermines

the equitable and orderly distribution of a debtor's property by transforming a domestic court

into a foreign appellate court where creditors are always afforded by the proverbial "second bite

at the apple."'" [ECF No. 71 at 5 (in part quoting *SNP*, 483 B.R. at 786)]. But the Foreign

Representatives' own characterization of *SNP* explains why it is inapposite here: *SNP* involved

discovery about whether due process protections were being afforded specific creditors in a

specific foreign proceeding, while also holding that the foreign court's conduct of the specific

case abroad was neither legally relevant nor a permissible topic of U.S. court inquiry; instead,

what mattered was whether French *law* adequately protected creditor rights. *SNP*, 483 B.R. at

785–86 ("In concluding that jurisdiction is limited to a determination that French *sauvegarde*

proceedings generally are sufficient to protect creditors' interests, it follows that a bankruptcy

court is without jurisdiction to inquire whether a particular creditor's interests are sufficiently

protected in any specific foreign proceeding.").

     Here, by contrast, the proposed discovery seeks information about the characteristics of

Ascentra's proceedings in the Cayman Islands that appears relevant to the Foreign

Representatives' eligibility for recognition, and, thus, to SPGK's Recognition Termination

Motion. That question flows from, and requires application of, U.S. law. Surely that is a proper

U.S. jurisdictional and judicial function, and not one that *SNP* holds lies outside of this Court's

jurisdiction. Likewise, evaluating whether to authorize discovery on those questions lies within

this Court's jurisdiction and inherent power, so long as the discovery is for the purpose of informing this Court's consideration of questions of United States law.

Indeed, despite its use of the word "jurisdiction" in one sentence, the *SNP* district court's analysis was based not primarily on the limits on U.S.-court power, but on issues of comity in light of Chapter 15's function of providing ancillary support for foreign proceedings. The *SNP* court based its decision on a Second Circuit case which "looked only to whether the 'foreign laws' at issue comported with due process and not whether the specific individual proceeding afforded due process." *SNP*, 483 at 785–86 (quoting *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 714 (2d Cir. 1987)). As *SNP* itself recognizes, the issue in *Victrix* was "to what degree principles of comity require a U.S. court to defer to a foreign bankruptcy proceeding," *SNP*, 483 B.R. at 785 (citing *Victrix*, 825 F.2d 709), not whether a U.S. Bankruptcy Court had jurisdiction to order discovery to adjudicate a U.S.-law contested matter.

Moreover, while *Victrix* did explain that "[u]nder general principles of comity as well as the specific provisions of section 304, federal courts will recognize foreign bankruptcy proceedings provided the foreign laws comport with due process and fairly treat claims of local creditors," *Victrix*, 825 F.2d at 714, it does not follow that U.S. Bankruptcy Courts are jurisdictionally barred from ordering discovery involving a foreign proceeding in all cases. On the contrary, neither *Victrix* nor the other cases cited by *SNP* involved issues of discovery generally or of a U.S. Bankruptcy Court's jurisdiction to authorize discovery in a Chapter 15 case specifically. *See generally, Victrix*, 825 F.2d at 711–15 (applying "principles of comity" and discussing whether the Second Circuit had appellate jurisdiction, whether the district court had admiralty jurisdiction, whether the foreign court had jurisdiction to issue a foreign judgment, and whether a Swedish bankruptcy court had jurisdiction over attached funds, but not discussing

22

whether U.S. Bankruptcy Courts have jurisdiction to do anything); *Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 456–59 (2d Cir. 1985) (applying "considerations of international comity" and discussing whether a Swedish court had jurisdiction over the plaintiff or the attached assets, but not discussing whether U.S. Bankruptcy Courts have jurisdiction to do anything); *In re Metcalfe & Mansfield Alternative Invs.*, 421 B.R. 685, 696–700 (Bankr. S.D.N.Y. 2010) (applying "principles of comity" and discussing whether an Ontario court had jurisdiction to issue a third-party non-debtor release and injunction, and whether a U.S. Bankruptcy Court has jurisdiction to do the same, but not discussing whether U.S. Bankruptcy Courts have jurisdiction to order discovery involving a foreign proceeding).  Even *SNP* mentions U.S. Bankruptcy Court jurisdiction only twice:  once in the sentence quoted above (which appears ten pages into the decision), and again two pages later in a sentence that refers back to the previous one.  *See generally*, *SNP* 483 B.R. at 786–87 (referring to the court's "determination that the bankruptcy court exceeded its jurisdiction when it inquired into SNP's French *sauvegarde* proceeding" when reversing the bankruptcy court's grant of sanctions).  Otherwise, *SNP*'s analysis of this issue focuses exclusively on principles of comity, not jurisdiction.  *SNP*, 483 B.R. at 785–86.  Therefore, the Court understands *SNP*'s references to jurisdiction as a rhetorical shorthand for the court's conclusion that, in that case, principles of comity and the limited role of U.S. courts in the Chapter 15 context required denial of discovery that was an impermissible collateral attack on a foreign proceeding and that was not sufficiently keyed to the relevant U.S.-law question.  *SNP* thus is best read as not holding that discovery into foreign proceedings is jurisdictionally barred in all cases.  To the extent *SNP* could be read as broadly as the Foreign Representatives here urge, this Court declines to adopt or follow that reading.

This conclusion is reinforced by consideration of the specific question before this Court. Here, SPGK seeks to depose the Foreign Representatives about the Cayman proceeding for the stated purpose of ascertaining whether that proceeding meets the statutory requirements for recognition in the United States under U.S. law (*i.e.*, Chapter 15). Like in *SNP*, SPGK's proposed inquiry seeks to examine aspects of the specific proceeding pending in the foreign court. But in *SNP*, that inquiry was held unnecessary to the U.S.-law question the court was required to decide, and, further, the proposed inquiry was found to constitute impermissible quasi-appellate review of a foreign tribunal. Here, by contrast, SPGK does not ask this Court to find fault with any aspect of the Cayman Islands proceeding, but rather to understand that proceeding's characteristics so as to determine whether the proceeding meets the requirements for recognition. That inquiry is directly called for by Section 1517, and therefore lies within this Court's jurisdiction. To the extent the inquiry is sensitive or risks encroaching on the Cayman court's authority, that is a comity issue, but it is not one that defeats this Court's jurisdiction.

C.      Any Objections that Certain Information Is Privileged, Confidential, and/or Under Seal in the Cayman Proceeding Can Be Raised During the Deposition

The Foreign Representatives raise numerous variations of the basic objection that the Deposition Subpoena should be rejected because at least some subset of the requested information is privileged, confidential, and/or under seal in the Cayman proceeding. [*See, e.g.*, ECF No. 71 at 3–4, 5, 9]. But the Foreign Representatives do not argue (much less establish) that *all* of the requested information is protected from discovery; on the contrary, they argue only that "*many* of the Deposition Topics *relate to* [such] information" without specifying which ones. [ECF No. 71 at 3–4] (emphasis added). This is an insufficient basis to impose a *per se* bar on the entire Deposition Subpoena, and the Court therefore declines to do so. For the avoidance of doubt, this Court has not been asked to reject or hold inapplicable any privilege assertion or

24

any disclosure bar imposed by operation of Cayman Islands law or orders of the Cayman Islands court. Nothing in this Decision calls into question the validity or applicability of any privilege assertion or any confidentiality requirement imposed by Cayman Islands law or the Cayman Islands court. If responding to any particular question during a deposition will require the Foreign Representatives to divulge information that is privileged or otherwise protected, the Foreign Representatives can raise an objection at that time, and, if necessary, the Court can resolve it as appropriate. At this juncture, the Court holds simply that privileges or disclosure limits that may exist in the Cayman Islands do not warrant entirely denying discovery in connection with the contested matters pending here.

        D.     <u>Comity Considerations May Require Limiting the Scope of the Deposition Subpoena</u>

The Foreign Representatives correctly emphasize the importance of extending comity to foreign courts where main proceedings are pending, but the Court concludes the Foreign Representatives take too absolute a position by insisting that no deposition whatsoever can occur, as opposed to raising comity-based objections on a more targeted basis.

The importance of affording comity is explicit in the Bankruptcy Code and prominent in relevant case law. The Code instructs U.S. courts to "grant comity" to foreign courts in Chapter 15 proceedings, providing, "[i]f the court grants recognition under section 1517, and subject to any limitations that the court may impose consistent with the policy of this chapter . . . a court in the United States shall grant comity or cooperation to the foreign representative." 11 U.S.C. § 1509(b)(3). Helpfully for courts tasked with following this mandate, "the Supreme Court [has] emphasized that 'international comity' ('the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states') 'requires in this context a . . . particularized analysis of the respective interests of the foreign

25

nation and the requesting nation.'" *Wultz v. Bank of China Ltd.*, 910 F. Supp. 2d 548, 552

(S.D.N.Y. 2012) (quoting *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist.*

*of Iowa*, 482 U.S. 522, 543–44 & n.27 (1987)).

In *Aérospatiale*, the Supreme Court identified five factors that "are relevant to any comity

analysis":

> (1) the importance to the . . . litigation of the documents or other information
> requested;
>
> (2) the degree of specificity of the request;
>
> (3) whether the information originated in the United States;
>
> (4) the availability of alternative means of securing the information; and
>
> (5) the extent to which noncompliance with the request would undermine
> important interests of the United States, or compliance with the request would
> undermine important interests of the state where the information is located.

*Aérospatiale,* 482 U.S. at 544 n.28 (quotation marks and citations omitted). "When determining

whether to issue an order directing the production of information or documents in contravention

of foreign law, courts in the Second Circuit" consider those five factors and "two additional

factors":

> (6) the hardship of compliance on the party or witness from whom discovery is
> sought; and
>
> (7) the good faith of the party resisting discovery.

*Laydon v. Mizuho Bank, Ltd.*, 183 F. Supp. 3d 409, 419–20 (S.D.N.Y. 2016) (quoting *Wultz v.*

*Bank of China Ltd.*, 910 F. Supp. 2d 548, 553 (S.D.N.Y. 2012)). "Generally, the most important

factors are 'the competing interests of the countries involved and the hardship imposed by

compliance.'" *Kashef v. BNP Paribas S.A.*, No. 16CV3228, 2022 WL 1617489, at *2 (S.D.N.Y.

May 23, 2022) (quoting *In re Commodity Exch., Inc.*, No. 14-MD-2548, 2019 WL 1988525, at *2 (S.D.N.Y. May 6, 2019)).

The Foreign Representatives argue that the five *Aérospatiale* factors counsel against enforcing the Deposition Subpoena; they do not address the two additional Second Circuit factors.  [ECF No. 71 at 6–7].  SPGK responds that comity only comes into play when the party invoking comity has proven that "a genuine conflict exists," which the Foreign Representatives have failed to do, and that, regardless, an analysis of all seven factors counsels in favor of enforcing the Deposition Subpoena.  [ECF No. 73 at 7–8].

As a threshold matter, the Court agrees with SPGK that the Foreign Representatives have not shown that permitting the deposition to occur would, in itself, create an actual conflict between the laws of the United States and the Cayman Islands.  "'[T]he threshold question in a comity analysis is whether there is in fact a true conflict between domestic and foreign law.'" *CE Int'l Res. Holdings, LLC v. S.A. Mins. Ltd. P'ship*, No. 12-CV-08087, 2013 WL 2661037, at *5 (S.D.N.Y. June 12, 2013) (quoting *Aérospatiale*, 482 U.S. at 555).  "'The party relying on foreign law has the burden of showing that such law actually bars [the] production' at issue." *Id.* (quoting *Brit. Int'l Ins. Co. v. Seguros La Republica, S.A.*, No. 90CIV.2370, 2000 WL 713057, at *8 (S.D.N.Y. June 2, 2000)); *Laydon v. Mizuho Bank, Ltd.*, 183 F. Supp. 3d 409, 413 (S.D.N.Y. 2016) (same).  "'In order to meet that burden, the party resisting discovery must provide the Court with information of sufficient particularity and specificity to allow the Court to determine whether the discovery sought is indeed prohibited by foreign law.'"  *Laydon*, 183 F. Supp. 3d at 413 (quoting *Alfadda v. Fenn*, 149 F.R.D. 28, 34 (S.D.N.Y. 1993)).

As discussed above, the Foreign Representatives do not argue that the requested deposition *itself* would violate any Cayman Islands law, but only that "*many* of the Deposition

Topics *relate to* information" that is protected by Cayman Islands law.  [ECF No. 71 at 3–4]

(emphasis added).  Such contentions are not sufficiently specific to establish the existence of an

actual conflict of law.  Nor do the Foreign Representatives offer an expert declaration or any

other evidence that the deposition itself (as opposed to certain specific questions that may or may

not ultimately be asked during the deposition) would contravene Cayman Islands law.  Thus, the

Foreign Representatives have not met their burden of showing that a true conflict of law actually

exists.

Because the only issue now before the Court is whether to entirely preclude the

deposition that SPGK seeks, the Court has not received meaningful nuanced discussion and

cannot rule on what issues or questions might be contrary to comity principles.  It appears that a

recurring issue as discovery progresses will be striking the balance called for by the fifth

*Aérospatiale* factor, "the extent to which noncompliance with the request would undermine

important interests of the United States, or compliance with the request would undermine

important interests of the state where the information is located."  Questions of privilege and

confidentiality obligations imposed by Cayman law surely are entitled to serious consideration

under this factor, and are not to be lightly disregarded, even as the same factor counsels also

weighing possible countervailing interests of the United States or, presumably, enforcement of

its own law.  The first of the two Second Circuit-imposed additional factors—the burden on the

party from whom information is sought—also almost surely will come into play as SPGK's

overall list of topics is broad, intrusive, and likely burdensome to respond to.  The Court urges

the parties to sensitively weigh these interests as discovery resumes.  No more concrete ruling is

possible or appropriate at this time, but the Court is ready to promptly deal with any more

concrete issues that the parties present, if they are unable to resolve them through the meet and confer process.

> E.     Scope-of-Discovery Relevance and Proportionality Requirements Do Not Entirely Preclude the Requested Deposition

The Foreign Representatives raise relevance and proportionality arguments for rejecting the proposed deposition outright.  [*See* ECF No. 71 at 7–10; ECF No. 74 at 4–5].  The Court acknowledges that SPGK's proposed deposition topics and related requests are extremely broad, and raise at a minimum proportionality concerns.  But, as with the comity arguments just discussed, the Court does not accept the Foreign Representatives' arguments that these considerations entirely preclude the conduct of the proposed deposition on a more reasonably cabined set of topics.

Again, the Foreign Representatives' absolutist relevance position fails to grapple with the reality that Movants seek termination of recognition as well as of the restraint.  Bankruptcy Code Section 1517(d) allows "modification or termination of recognition if it is shown that the grounds for granting it were fully or partially lacking or have ceased to exist," with the Court to "give due weight to possible prejudice to parties that have relied upon the order granting recognition."  11 U.S.C. § 1517(d).  Thus, SPGK is entitled to mount some showing as to whether the grounds for recognition "have ceased to exist," assuming they ever did exist.  There is no serious dispute that the topics SPGK identifies relate to attributes that Courts consider in weighing a proceeding's eligibility for recognition, including whether it has the attributes of a "foreign proceeding" as required by section 1517(a).  *Compare* 11 U.S.C. § 101(23) ("The term 'foreign proceeding' means a collective judicial or administrative proceeding in a foreign country . . . under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation."), *with* [ECF No. 58-2 at 5–6 of 6] (list of deposition

topics going to whether debts and creditors are being identified or processed in the Cayman

proceeding, and, of possible but not certain relevance, questions going to whether Ascentra is

"solvent").  The Court does share the Foreign Representatives' concern that the topic list as

propounded is overbroad, calling in part for information that is irrelevant or, given the likely

burden of the full production called for, not proportional to the needs of the case.  But the topic

list does encompass relevant subjects that are a fair topic of inquiry once appropriately trimmed

to satisfy relevance and proportionality requirements.  As with the Court's comity-based ruling,

these questions are best addressed later, not in the context of a demand to foreclose any

discovery whatsoever.

The Foreign Representatives' remaining relevance and proportionality arguments likewise

do not justify entirely precluding discovery.  The Representatives are not aided by their arguments

that "SPGK has abandoned its original argument for termination," that "the Deposition Subpoena

is [] an impermissible attempt to obtain information to make a new argument in a reply brief," and

that "[t]he 'standard rule' in this Circuit is that new arguments in a reply brief are disfavored."

[ECF No. 71 at 8–9 (quoting *Manon v. Pons*, 131 F. Supp. 3d 219, 238 (S.D.N.Y. 2015))].

Although the standard practice is not to consider such arguments, "[i]t is within the Court's

discretion whether to consider arguments raised for the first time in reply papers."  *In re AMR*

*Corp.*, 485 B.R. 279, 288 n.6 (Bankr. S.D.N.Y. 2013) (citing *In re Teligent, Inc.*, 326 B.R. 219,

229 (S.D.N.Y. 2005)), *aff'd*, 730 F.3d 88 (2d Cir. 2013); *see also, e.g.*, *Ashby v. Murphy*, No. 17-

CV-01099, 2022 WL 18135242, at *7 (W.D.N.Y. Nov. 28, 2022) ("The court retains 'broad

discretion to consider arguments made for the first time in reply papers' and does 'not abuse its

discretion in considering arguments . . . in reply papers when the adverse party is not surprised or

prejudiced by the consideration, or when the Court allows the adverse party to submit a sur-

reply.'") (alterations in original) (quoting *Brozzo v. United States Dep't of Educ.*, No. 7:14-CV-1584, 2016 WL 4734650, at \*4 (N.D.N.Y. Sept. 9, 2016), *report and recommendation adopted*, No. 17-CV-1099, 2023 WL 112439 (W.D.N.Y. Jan. 5, 2023)).

SPGK's approach has doubtless been swayed by this Court's August 18 Order disallowing SPGK's requested depositions of two 2021 declarants whom SPGK failed to depose or even cross-examine during the 2021 recognition hearing in which SPGK actively participated. That order itself noted the possible availability of discovery keyed to the requirements for termination of recognition under Section 1517(d), specifically including whether developments since recognition may warrant termination.

In its discretion, the Court declines to categorically preclude SPGK from now advancing new or modified positions in its forthcoming Reply in light of the Court's August 18 Order and the Foreign Representatives' subsequent oppositions to the Motions, all of which arguably have shifted the terms of engagement on the Motions. If SPGK does so, the Foreign Representatives are free to request leave to file a sur-reply to address the new arguments as appropriate. *See, e.g.*, *Preston Hollow Cap. LLC v. Nuveen Asset Mgmt. LLC*, 343 F.R.D. 460, 466 (S.D.N.Y. 2023) ("[S]ur-replies are permitted when an opposing party raises arguments for the first time in a reply.") (citing *Stepski v. M/V Norasia Alya*, No. 7:06-CV-01694, 2010 WL 11526765, at \*1 (S.D.N.Y. Mar. 3, 2010)). Given the circumstances of this case, the Court may well be inclined to exercise its broad discretion to consider new arguments reasonably raised for the first time in SPGK's Reply and to provide the Foreign Representatives an adequate opportunity to respond, which seems far less likely to waste the parties' and the Court's time and resources than requiring SPGK to file two new motions and begin the entire briefing process anew. In any event, this

discussion is hypothetical; for present purposes, it suffices to say that the Foreign Representatives' concerns do not defeat the Deposition Subpoena.

In sum, then, the Court rejects the Foreign Representatives' position that relevance and proportionality considerations require entirely disallowing the proposed deposition. In so ruling, however, the Court acknowledges the existence of serious relevance and proportionality issues, which, if not appropriately resolved by the parties themselves, may be the subject of further, more topic-specific applications.

F.     The Pending Proceeding Rule Does Not Apply Here

In their October 11 Letter, the Foreign Representatives argue that "SPGK's request for pre-litigation discovery related to the claims that are the subject of the litigation are inappropriate now that there is pending litigation before the Grand Court, and any discovery should be directed there," because "'once an adversary [proceeding] or contested matter has been commenced' then discovery proceeds solely in that pending proceeding according to its discovery rules." [ECF No. 77 at 2 (quoting *In re Bennett Funding Grp., Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996))]. The Foreign Representatives apparently are invoking the "well recognized rule"— commonly referred to as the "pending proceeding rule"—that "once an adversary proceeding or contested matter has been commenced, discovery is made pursuant to the Fed. R. Bankr. P. 7026 *et. seq.*, rather than by a Fed. R. Bankr. P. 2004 examination." *Bennett Funding*, 203 B.R. at 28.

But by that very definition—and as the Foreign Representatives' other cited authorities similarly demonstrate—the pending proceeding rule applies to preclude discovery that is sought pursuant to Bankruptcy Rule 2004. *See In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (discussing the "well recognized rule that once an adversary proceeding or contested matter is commenced, discovery should be pursued under the Federal Rules of Civil procedure

*and not by Rule 2004*") (emphasis added); 9 Collier on Bankruptcy P 2004.01(8) (16th ed. 2023) ("The courts have developed *an exception to Bankruptcy Rule 2004*, the 'pending proceeding rule.'  If an adversary proceeding or a contested matter is pending, then the parties to that proceeding or matter may no longer utilize the liberal provisions of *Bankruptcy Rule 2004* and should utilize the discovery devices provided for in Rules 7026 through 7037.") (emphasis added) (citations omitted).  Indeed, the Foreign Representatives cite no cases applying the pending proceeding rule outside of the Rule 2004 context, and the Court, after conducting its own research, has identified none.  Therefore, because SPGK seeks discovery under Rules 7026 and 7030 rather than Rule 2004, the pending proceeding rule is inapplicable here.

Even if the rule were not rendered inapplicable by its own definition, its rationale would still counsel against applying it here.  The "basis for [the pending proceeding rule] 'lies in the distinction between the broad . . . nature of the Rule 2004 exam and the more restrictive nature of discovery under [the Federal Rules of Civil Procedure]'" and the "concern that Rule 2004 examinations not be used as a tactic to circumvent the safeguards of the Federal Rules of Civil Procedure" by taking advantage of "Rule 2004's substantive differences." *Enron Corp.*, 281 B.R. at 840–41 (second and third alterations in original) (quoting *In re 2435 Plainfield Ave., Inc.*, 223 B.R. 440, 456 (Bankr. D.N.J. 1998)); *see also, e.g.*, *Bennett Funding*, 203 B.R. at 28 ("As Fed. R. Bankr. P. 2004 is meant to give the inquiring party broad power to investigate the estate, it does not provide the procedural safeguards offered by Fed. R. Bankr. P. 7026.  For example, under a Fed. R. Bankr. P. 2004 examination, a witness has no general right to representation by counsel, and the right to object to immaterial or improper questions is limited.") (citations omitted).  Thus, where, as here, discovery is sought pursuant to Rules 7026 and 7030 instead of Rule 2004, the fairness concerns that drive the pending proceeding rule are not implicated, and

the rule need not (and does not) apply.  As the above discussion of comity, relevance, and proportionality issues reflects, the Court is committed to engaging in appropriate discovery oversight, so there is little risk of an overbroad, Rule 2004-like process that could allow litigants to disregard discovery limitations that apply in a matter that is pending elsewhere.

## **CONCLUSION**

For the reasons stated above, the Foreign Representatives' request to entirely preclude SPGK's proposed deposition is denied.  The parties are to meet and confer regarding appropriate scheduling next steps, which may entail a discovery conference with this Court, or the conduct of a deposition, or a discussion of possibly acceptable narrowed deposition topics and protocols. The Court exhorts the parties to engage in good faith, and emphasizes its observations about issues posed by SPGK's currently proposed deposition topics.  The parties also are to promptly contact chambers to schedule a general case status conference to occur during the second half of December.

It is so ordered.


Dated: New York, New York
December 5, 2023

_____*s/ David S. Jones*_____
Honorable David S. Jones
United States Bankruptcy Judge