

Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street | New York, NY 10019-6131 | tel 212.858.1000 | fax 212.858.1500

John A. Pintarelli
tel: +1.212.858.1213
john.pintarelli@pillsburylaw.com

March 20, 2024

<u>**Via ECF**</u>

Honorable David S. Jones
United States Bankruptcy Court
Southern District of New York
One Bowling Green, Courtroom 701
New York, NY 10004-1408

Re:    **In re Ascentra Holdings, Inc. (In Official Liquidation), Case No. 21-11854:
Letter Regarding Leave to File Sur-Reply**

To the Honorable David S. Jones:

We represent Graham Robinson and Ivy Chua Suk Lin, the duly appointed joint official liquidators and foreign representatives (the "**Foreign Representatives**") of Ascentra Holdings, Inc. (In Official Liquidation) ("**Ascentra**").  Ahead of the status conference scheduled for March 21, 2024, the Foreign Representatives respectfully request that the Court also address matters previously raised before the Court concerning the reply brief filed by Shang Peng Gao Ke, Inc. SEZC and SPGK Pte. Ltd. (together, "**SPGK**") in further support of SPGK's motion for termination of the recognition order (the "**Termination Motion**") [ECF No. 37].[1]

Specifically, the Foreign Representatives respectfully request leave (i) to file a sur-reply in further opposition to the Termination Motion to address the new argument raised by SPGK for the first time in its reply (the "**Reply Brief**") [ECF No. 91] that the grounds for recognition "have otherwise ceased to exist"[2] and (ii) to take additional discovery, including the deposition of Andrew Johnstone, Cayman counsel to SPGK who filed a declaration with this Court in support

---

[1]  SPGK contemporaneously filed a motion to terminate the restraint on the Planet Payment funds (the "**Restraint Motion**") [ECF No. 37].  However, the briefing schedule for the Restraint Motion is pending the Court's ruling on SPGK's request to compel certain deposition testimony and the Foreign Representatives' response thereto [ECF Nos. 86 and 89].

[2]  SPGK does not oppose the filing of a sur-reply with respect to section II.D of the Reply Brief ("The Cayman Proceeding Does Not Qualify as a 'Foreign Proceeding'") (*i.e.*, paragraphs 17-33), subject to such sur-reply being filed within seven (7) days and not to exceed five (5) substantive pages.  The Foreign Representatives are not in agreement with these limitations for the reasons set forth herein.

Hon. David S. Jones
March 20, 2024
Page 2

of the relief SPGK seeks, in connection with such sur-reply.[3]  The Foreign Representatives respectfully request that any such deposition take place two (2) weeks in advance of filing the sur-reply.[4]

　　　In its Reply Brief, SPGK argues for the first time that the grounds for recognition have ceased to exist.  The Foreign Representatives' proposed sur-reply will respond to this newly-raised argument to ensure the Court has the benefit of a fully responsive set of briefs before deciding the outcome of the Termination Motion.  In the absence of a sur-reply, the Foreign Representatives would have no vehicle to respond to SPGK's modified position.

## Background

　　　On December 5, 2023, this Court issued a memorandum decision (the "**December 5 Memorandum**") [ECF No. 80] regarding SPGK's proposed Rule 30(b)(6) deposition of Ascentra. In its December 5 Memorandum, the Court stated:

> In its discretion, the Court declines to categorically preclude SPGK from now advancing new or modified positions in its forthcoming Reply in light of the Court's August 18 Order and the Foreign Representatives' subsequent oppositions to the Motions, all of which arguably have shifted the terms of engagement on the Motions. ***If SPGK does so, the Foreign Representatives are free to request leave to file a sur-reply to address the new arguments as appropriate****.  See, e.g., Preston Hollow Cap. LLC v. Nuveen Asset Mgmt. LLC*, 343 F.R.D. 460, 466 (S.D.N.Y. 2023) ("[S]ur-replies are permitted when an opposing party raises arguments for the first time in a reply.") (citing *Stepski v. M/V Norasia Alya*, No. 7:06-CV-01694, 2010 WL 11526765, at *1 (S.D.N.Y. Mar. 3, 2010)).  ***Given the circumstances of this case, the Court may well be inclined to exercise its broad discretion to consider new arguments reasonably raised for the first time in SPGK's Reply and to provide the Foreign Representatives an adequate opportunity to respond***, which seems far less likely to waste the parties' and the Court's time and resources than requiring SPGK to file two new motions and begin the entire briefing process anew.

ECF No. 80, at 31 (emphasis added).

---

[3]  As discussed at the last status conference, after the Foreign Representatives filed their objection to the Termination Motion, Mr. Johnstone's firm, Harney Westwood & Riegels ("**Harneys**"), filed declarations with this Court in which a Harneys partner stated under oath that solvent official liquidations in the Cayman Islands should be recognized as foreign main proceedings.  Mr. Johnstone is the partner of record in each of these cases. The Foreign Representatives should be permitted to take discovery of the clearly contradictory statements of Cayman law being advanced before this Court by the same firm.

[4]  If the Court requires a formal motion requesting leave to file a sur-reply and conduct the deposition requested, the Foreign Representatives hereby request leave to file such motion.

Hon. David S. Jones
March 20, 2024
Page 3

At the status conference held on December 21, 2023, the Foreign Representatives reserved their right to seek leave to file a sur-reply and to depose Mr. Johnstone prior to filing a sur-reply:

> Mr. McDonald: . . . Your Honor, as you noted in your opinion, it appears that SPGK is shifting its argument.
>
> So its original motion to terminate the recognition was based upon an accusation that there was no basis for recognition at the time the Court granted it. . .
>
> . . .[T]hey seem to be shifting to an argument that the bases for recognition have ceased to exist, which is the other alternative basis to terminate recognition. ***And I think your Honor noted that, in the event that they come up with a new argument or propose new arguments in their reply, the foreign representatives would be given the opportunity to submit a surreply*** . . .
>
> . . . ***If there is a new argument in there, prior to filing a surreply, we would like to reserve the right to seek to depose Mr. Andrew Johnstone of the Harneys firm.*** In the event there are no new arguments, we do reserve the right to cross-examine him at the ultimate hearing.

ECF No. 86, Ex. C (Dec. 21, 2023, Hr'g. Trans. at 22:21-23:18 (emphasis added)).

## Relief Requested

Courts have broad discretion to modify scheduling orders, including to facilitate a party's ability to file a sur-reply where the movant has introduced new facts or arguments on reply. *See e.g., Bates v. Deva Concepts LLC*, 2022 WL 2106494, at *1 (S.D.N.Y. June 10, 2022) (denying motion to reconsider order granting leave to file sur-reply where defendant made a new argument on reply); *SEC v. Ripple Labs, Inc.*, 2022 WL 329211, at *3 (S.D.N.Y. Feb. 3, 2022) (finding "good cause" to grant leave to file sur-reply where "directed to arguments [adversary] raises for the first time in its reply").

This Court has likewise ruled it has broad discretion to consider new arguments raised for the first time in a reply and to provide parties with an adequate opportunity to respond. December 5 Memorandum, 2023 Bankr. LEXIS 2872, at *47-48 (citing *Preston Hollow Cap. LLC v. Nuveen Asset Mgmt. LLC*, 343 F.R.D. 460, 466 (S.D.N.Y. 2023)).

SPGK argues now, for the first time, that the grounds for recognition have "ceased to exist." As a result, the Foreign Representatives seek to respond to the new point raised and to examine SPGK's original declarant Andrew Johnstone (ECF No. 39) regarding the same, particularly where Mr. Johnstone's firm has previously submitted on behalf of joint official liquidators in other proceedings where Mr. Johnstone is the lawyer of record and are currently pending before this

Hon. David S. Jones
March 20, 2024
Page 4

Court,[5] declarations in support of recognition of a foreign solvent official liquidation that are wholly *aligned* with the Foreign Representatives' position.[6]

Finally, SPGK cannot point to any prejudice that would result from the filing of a sur-reply, particularly when it is SPGK's shift from its original argument that created the need for a sur-reply. In contrast, the Foreign Representatives would undoubtedly be prejudiced by having to address SPGK's new position for the first time at the hearing on the Termination Motion. In such circumstances, the Foreign Representatives anticipate it would be helpful for this Court to have a written briefing ahead of any decision on the merits. Accordingly, the Foreign Representatives respectfully request the Court grant the relief sought herein.

### Good Faith Effort to Resolve

Counsel to the Foreign Representatives met and conferred with counsel to SPGK by email on March 18 and 19, 2024, to request SPGK's consent to the filing of a sur-reply and to the deposition of Andrew Johnstone in connection with the sur-reply. SPGK declined to agree to the deposition of Mr. Johnstone, but consented to the filing of a sur-reply within the parameters set forth above (which seek to impose strict time and page limits and do not provide time for the preparation of a sur-reply after the requested deposition).

Respectfully submitted,

*/s/ John A. Pintarelli*
John A. Pintarelli
Partner

---

[5] The Harneys' declarant, Ben Hobden, submitted a similar declaration to this Court, while at a prior firm, in the *Frontera Resources Caucasus Corporation (In Official Liquidation)* Chapter 15 case, Case No. 19-13418, ECF No. 3. A copy of the Hobden declaration is attached as **Exhibit A**.

[6] Copies of the Harneys declarations in *VPC Impact Acquisition Holdings II Limited (In Official Liquidation)*, Case No. 23-11551, ECF No. 6, and *Pioneer Merger Corp. (In Official Liquidation),* Case No. 23-11663, ECF No. 6, are attached hereto as **Exhibits B and C**, respectively. The exhibits to these declarations are voluminous and, as such, have not been attached but are available upon request.

# Exhibit A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------

| | |
|---|---|
| : | Chapter 15 |
| In re: : | |
| : | Case No. 19-_____ (___) |
| FRONTERA RESOURCES : | |
| CAUCASUS CORP. (in Official : | |
| Liquidation) : | |
| : | |
| Debtor in a : | |
| Foreign : | |
| Proceeding. : | |

---------------------------------------------------------

### DECLARATION OF BEN HOBDEN IN SUPPORT OF CHAPTER 15 PETITION OF FRONTERA RESOURCES CAUCASUS CORPORATION (IN OFFICIAL LIQUIDATION) FOR RECOGNITION OF FOREIGN INSOLVENCY PROCEEDING

I, Ben Hobden, hereby declare, under penalty of perjury under the laws of the United States of America, that the following is true and correct to the best of my knowledge and belief:

1.  I am a partner of the law firm of Conyers Dill & Pearman ("**Conyers**"). Conyers is a law firm that advises financial, institutional and business clients throughout the world on the laws of, the Cayman Islands, the British Virgin Islands and Bermuda. Conyers employs over 130 attorneys, 21 of whom are based in the Cayman Islands.

2.  I began practising law in the Cayman Islands in 2012 and I advise on the laws of the Cayman Islands. I have considerable experience advising court-appointed liquidators, banks, multinational corporations, and financial services institutions in the liquidation and winding-up of Cayman Islands companies.

3.  I am a partner in the litigation and restructuring department of the office of Conyers in the Cayman Islands. Prior to joining Conyers in 2012, I worked at a large practice in the United Kingdom focusing on litigation, insolvency and restructuring matters.

4.      I was admitted as a solicitor in England and Wales in 2008 before being admitted to the Cayman Islands' Bar in 2012 and have more than 11 years specialising in all aspects of corporate and insolvency litigation, with particular expertise in receiverships and liquidations, shareholder appraisals, cross-border commercial disputes and corporate restructurings.  I am admitted to practise as an attorney in the Cayman Islands.

5.      I regularly appear as lead counsel in the Grand Court of the Cayman Islands and the Cayman Islands Court of Appeal.

6.      My appearances concern aspects of the Cayman Islands Companies Law (2018 revision) (the "**Companies Law**"), the Cayman Islands Companies Winding Up Rules, 2018 (the "**CWR**"), and other laws governing insolvency of Cayman Islands-based entities.

7.      Although I am not an attorney barred in the United States, as a consequence of my Cayman Islands practice, I am familiar with the provisions of Chapter 15 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**").

8.      I respectfully submit this declaration in support of the Petition of David Griffin and Andrew Morrison, the duly appointed joint official liquidators and foreign representatives ("**Liquidators**") of Frontera Resources Caucasus Corporation (in Official Liquidation) ("**FRCC**"), a Cayman Islands exempted limited company that is in liquidation under the supervision of the Grand Court of the Cayman Islands, Financial Services Division (the "**Cayman Court**" or "**Grand Court**"), Cause No. FSD 138 of 2019 (IKJ) (the "**Cayman Liquidation**"), pursuant to Sections 92 and 131 of the Companies Law and the CWR, seeking recognition of the Cayman Liquidation pursuant to 11 U.S.C. §§ 1502 and 1517(b)(1) as a "foreign main proceeding," or in the alternative, as a foreign nonmain proceeding, the appointment of the Liquidators as "foreign representatives" of FRCC, as defined in 11 U.S.C. §

101(24), and related discovery relief, pursuant to Chapter 15 of the Bankruptcy Code (the "**Petition**").

9.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge or based upon my review of relevant documents, including, without limitation, the sworn declarations of David Griffin (the "**Griffin Declaration**") and Warren E. Gluck, or upon my opinion based upon my experience and knowledge.  To the extent matters stated in this Declaration are statements of legal opinion, such statements represent my view of the law of the Cayman Islands as a practicing Cayman Islands attorney.

10.     On September 12, 2019, the Cayman Court entered an order in which it, *inter alia*, (i) ordered that FRCC be wound up in accordance with the Companies Law and under the supervision of the Cayman Court; (ii) appointed the Liquidators as the joint official liquidators of FRCC; (iii) authorized the Liquidators to commence proceedings in the United States for recognition of the Cayman Liquidation and to request the Liquidators' appointment as the foreign representatives of FRCC; and (iv) authorized the Liquidators to take control of any of FRCC's subsidiaries (the "**Supervision Order**").  A true and correct copy of the Supervision Order is attached as **Exhibit 1** to the Griffin Declaration.

11.     The Supervision Order followed the issuance of a resolution by the Cayman Islands-based representative of the sole shareholder of FRCC wherein, pursuant to the Companies Law, FRCC was placed into voluntary liquidation and the Liquidators were appointed as the joint voluntary liquidators.

12.     As set forth herein, in my experience, Cayman Islands' liquidation proceedings are fair and equitable.  All creditors and interest holders have an opportunity to be heard by the Cayman Court and no creditor will be prejudiced because it is foreign-based.

13. Moreover, for the reasons discussed below, it is my position that: (i) the Liquidators qualify as "foreign representatives" of FRCC in the Cayman Liquidation; (ii) the Cayman Court is a "foreign court"; (iii) the Cayman Liquidation constitutes a "foreign proceeding" within the meaning of sections 101(24) and (23) of the Bankruptcy Code, respectively; (iv) the Petition was properly filed in accordance with the requirements of chapter 15 of the Bankruptcy Code; and (v) the Cayman Liquidation satisfies all the requirements to be recognized as a "foreign main proceeding" pursuant to Sections 1502(4) and 1517(b)(1) of the Bankruptcy Code.

14. To provide context for my explanation of the law of the Cayman Islands, I have set forth a short description of the relevant facts, which are taken from the Griffin Declaration.

## I. **Background**

15. FRCC was incorporated on February 29, 2000 as a Cayman Islands exempted limited company, with registration number 97554. The Memorandum of Association of FRCC is primarily governed by the Companies Law.

16. FRCC maintained a registered office at Maples Corporate Services Limited ("**Maples**"), P.O. Box 309, Ugland House, South Church Street, Grand Cayman KY1-1104, Cayman Islands.

17. Following the Supervision Order, the Liquidators changed FRCC's registered address to c/o FTI Consulting, Suite 3212, 53 Market Street, Camana Bay, Grand Cayman, P.O. Box 30613, KY1-1203, Cayman Islands.

18. FRCC is an intermediate holding company and part of a larger group of companies which all bear the "Frontera" name (collectively, the "**Frontera Group**"). The ultimate holding company of the Frontera Group is Frontera Resources Corporation ("**FRC**"), a

4

Cayman Islands exempted company that is registered to do business and maintains a principal place of business in Texas.

19.     FRC holds 100% of the shares of Frontera International Corporation ("**FIC**"), a Cayman Islands exempted company.  Prior to the enforcement action referred to below, FIC held all of the shares of FRCC.  FIC maintains a principal place of business in Texas.

20.     FRCC's principal asset is 100% of the shares of Frontera Resources Georgia Corporation ("**FRGC**"), a Cayman Islands exempted company.  The directors of FRCC are Messrs. Steven C. Nicandros ("**Nicandros**") and Zaza Mamulaishvili ("**Mamulaishvili**"), both of whom also act as directors of FRGC, along with Mr. Giorgi Zabakhidze ("**Zabakhidze**," and collectively with Nicandros and Mamulaishvili, the "**FRCC Directors**").[1]

## II.     **FIC Defaults on a Promissory Note and the FRCC Directors Default on Guarantees**

21.     On or about December 20, 2016, FIC, Outrider Master Fund, L.P. ("**Outrider**"), the lenders ("**Party Lien Debtholders**"), and MaplesFS Limited ("**MaplesFS**"), as collateral agent, entered into a restructured Note Agreement (the "**Note Agreement**").

22.     Pursuant to the Note Agreement, FIC restructured roughly $23 million of notes into 10% Senior Secured Notes Due 2020 (as amended, the "**Notes**").  The Notes were secured in part by FIC's shares in FRCC.

23.     In 2018, the parties amended and restructured the Notes to add Nicandros and Mamulaishvili as guarantors (the "**FRCC Director Guarantee**").

24.     Ultimately, FIC could not meet its repayment obligations under the Note Agreement and, on or about August 30, 2018, defaulted on the Notes.

25.     Nicandros and Mamulaishvili also defaulted on the FRCC Director Guarantee.

---

[1] Nicandros and Mamulaishvili are also directors of the ultimate parent, FRC, along with Luis E Giusti.  The Liquidators' preliminary investigation and FRCC's Declaration of Solvency indicates Nicandros and Mamulaishvili reside in the United States.

### III.    <u>The Resolution, Petition for Supervision and Supervision Order</u>

26.     Following FIC's default on the Notes, on May 1, 2019, MaplesFS, as collateral agent for the Parity Lien Debtholders and in its capacity as sole shareholder of FRCC, pursuant to section 116(c) of the Companies Law, passed a resolution placing FRCC into voluntary liquidation and appointing the Liquidators as the Joint Voluntary Liquidators (the "**Resolution**").[2] A copy of the Resolution is attached as **<u>Exhibit 5</u>** to the Griffin Declaration.

27.     I am told that since their appointment as JVLs in May 2019, and continuing to the present, the Liquidators have encountered difficulty obtaining information and documentation in relation to FRCC's affairs, principally due to the failure of the FRCC Directors to provide satisfactory responses, or any responses at all, to the Liquidators' reasonable requests.   I am told that, to date, the few documents that the FRCC Directors have provided are incomplete, vague and lack evidence to support the conclusions therein.   In fact, the documents produced by the FRCC Directors appear to raise more questions about the pre-liquidation affairs of FRCC than answers to such questions.

28.     I am also told the Liquidators think the FRCC Directors have either deliberately withheld information, or have not been as forthcoming as they should have been, especially in connection with: (i) the Assignment and Farmout Agreement, a material transaction divesting FRGC of its only significant asset – the rights under a production sharing contract (the "**PSC**") relating  to the development of natural gas assets in Eastern Europe -- shortly prior to the commencement of the Cayman Liquidation; (ii) the Arbitration concerning a dispute over the PSC, to which it is understood that FRGC remains a party despite FRGC's attempt to substitute another entity in the Frontera Group, Frontera Resources US, LLC ("**FRUS**"), as the supposed

---

[2] Unless otherwise noted, for the sake of clarity, this Declaration describes Messrs. Griffin and Morrison as "Liquidators or JOLs" even during the period between their appointment as the JVLs and the issuance of the Supervision Order roughly four months later.

respondent/counterclaimant; and (iii) FRCC's liabilities to unknown creditors of $2.2 million, described on FRCC's single-page unaudited balance sheet only as "Notes."[3]

29.     On July 24, 2019, the Liquidators petitioned the Cayman Court (the "**Supervision Petition**"), pursuant to Section 131 of the Companies Law, seeking, *inter alia*, their appointment as Liquidators and the conversion from a voluntary liquidation to a supervision proceeding.   A copy of the Supervision Petition is attached as **Exhibit 8** to the Griffin Declaration.

30.     On September 5, 2019, the Liquidators, as JVLs, filed further evidence in Mr Griffin's Third Affidavit to update the Cayman Court on the JVLs' efforts to administer the affairs of FRCC and to request additional relief.   A copy of Mr Griffin's Third Affidavit is attached as **Exhibit 9** to the Griffin Declaration.

31.     On September 12, 2019, the Cayman Court granted the Supervision Petition and issued the Supervision Order, resulting in the official liquidation of FRCC.

32.     As set forth in the Supervision Order, the Cayman Court, *inter alia*, (i) ordered that FRCC be wound up in accordance with the Companies Law and the CWR, and under the supervision of the Cayman Court; (ii) appointed Messrs. Morrison and Griffin as the joint official liquidators of FRCC; (iii) authorized the Liquidators to commence proceedings in the United States for recognition of the Cayman Liquidation and their appointment;  (iv) allowed the Liquidators to take control of FRCC's subsidiaries, such as FRGC; and (v) permitted the Liquidators to exercise the rights of FIC in FIC's capacity as the sole shareholder of FRCC. Supervision Order ¶¶ 1-2, 8, 9.

## IV.     The Laws and Rules of the Cayman Islands Relevant to a Chapter 15 Petition

---

[3] Capitalized terms not otherwise defined shall have the meaning set forth in the Griffin Declaration.

33.     I have been asked by the Liquidators to explain in general terms the relevant substantive Cayman Islands law and procedural rules relating to the liquidation and dissolution of insolvent Cayman Islands companies. In particular, the Liquidators have requested that I elaborate on how these laws and rules apply to the liquidation of FRCC.

34.     My opinion is expressed for the purposes of filing a petition for recognition of the Cayman Liquidation as a foreign main proceeding under Chapter 15 of the Bankruptcy Code. The issues on which I have been asked to opine fall well within my professional experience.

35.     In sum, as "official liquidators" appointed by the Cayman Court, the Liquidators may exercise such powers as are conferred by the Companies Law and the Order appointing them (*see* Section 110 of the Companies Law) and they are specifically authorised pursuant to paragraph 8 of the Supervision Order to file this Petition, and to take such steps in connection therewith as the Liquidators consider to be appropriate. True and correct copies of the relevant sections of the Companies Law and CWR (the significance of which I will discuss in more detail below), are attached hereto as **Exhibit 1**.

A.      **Sources of Law of the Cayman Islands**

36.     The Cayman Islands is a British Overseas Territory and, as such, its laws are derived from the: (a) original local statutes enacted by the Legislative Assembly of the Cayman Islands; (b) common law of England and other Commonwealth jurisdictions brought to the Cayman Islands as developed and applied by the courts of the Cayman Islands; (c) statutes of England and Wales in existence at the time of settlement, as subsequently applied, amended, repealed and replaced by statutes and subsidiary legislation enacted in and applicable to the Cayman Islands; (d) Orders in Council made by prerogative Order of the British Sovereign and made specifically applicable to the Cayman Islands; and (e) statutes of the United Kingdom Parliament that expressly apply to the Cayman Islands.

8

37.     Given that the Cayman Islands is a comparatively small jurisdiction, the extent of its body of case law is not nearly as voluminous as many other common law jurisdictions.

38.     As such, there is often no decided local case governing a particular legal point.  In these circumstances, the courts of the Cayman Islands can and do have regard to cases decided in those other jurisdictions, particularly appellate decisions from England and Wales, which are treated, in effect, as judicial precedent.[4]

39.     Where no specific local statutory provision applies, the question will be determined according to common law, and the doctrine of judicial precedent applies.

40.     The court of first instance is the Grand Court which will, as a matter of judicial comity, follow its own previous decisions unless they are shown to be wrong.[5]

41.     There is a right of appeal from the Grand Court to the Cayman Islands Court of Appeal.  The final appellate court for the Cayman Islands is the Judicial Committee of the Privy Council (the "**Privy Council**"), which sits in London and which is comprised of members of the English Supreme Court (the highest court in England and formerly known as the House of Lords).

42.     The Grand Court is bound by decisions of the Cayman Islands Court of Appeal and by decisions of the Privy Council on appeals originating from the Cayman Islands.

43.     Important cases from the courts of the Cayman Islands are published in the Cayman Islands Law Reports ("**CILRs**").

B.      **Liquidation of Cayman Islands Companies**

44.     The statutory provisions principally governing the liquidation of Cayman Islands companies are set out in Part V of the Companies Law, which is supplemented by the CWR, the

---

[4] Authorities from other countries that apply British common law, including Australia, Hong Kong and Canada, are sometimes treated as persuasive authorities.
[5] Re Bank of Credit & Commerce International, CILR 56 [1994-95].

Insolvency Practitioners' Regulations 2018 (the "**IPR**"), the Foreign Bankruptcy Proceedings (International Cooperation) Rules 2018 (as revised) and the Grand Court Rules 1995 (as revised).

45.     Read with the Companies Law, the CWR govern liquidation proceedings, including the Cayman Liquidation.  The IPR primarily delineate: (a) the eligibility of the appointment of an official liquidator of a company being wound up by order of the Grand Court; and (b) the official liquidators' compensation.[6]

46.     The provisions of Part V of the Companies Law apply to companies formed and registered under the Companies Law or its predecessors, including companies that are formed as exempted companies such as FRCC (as discussed in detail below).

47.     A Cayman Islands company may be wound up: (a) voluntarily, following the passing of a special resolution of its shareholder(s)[7] (as I understand was the case with respect to FRCC) or pursuant to a mandatory term in its constitutional documents;[8] (b) compulsorily, by order of the Grand Court;[9] or (c) under the supervision of the Grand Court.[10]   Voluntary liquidations are not subject to the supervision of the Grand Court.

48.     Following the entry of the company into voluntary liquidation, the voluntary liquidator is required to file declarations of solvency with the Cayman Islands Registry of Companies.  The declarations of solvency are sworn by all incumbent directors of the company and they attest to the fact that the company will remain solvent for a period of twelve months following its entry into voluntary liquidation.[11]

---

[6] The liquidation of a Cayman Islands company (whether voluntary or official) is referred to as "winding up."  These terms are used interchangeably.
[7] Section 90(b)(i) of the Companies Law.
[8] Section 90(b)(ii) and (iii) of the Companies Law.
[9] Section 90(a) of the Companies Law.
[10] Section 90(c) of the Companies Law.
[11] Section 124 of the Companies Law.

49.     Here, the FRCC Directors provided the Declaration within the required period. The Declaration claims that the FRCC Directors made a full inquiry into the affairs of FRCC and that, having done so, they believe that FRCC will be able to pay its debts in full.  However, I understand that the FRCC Directors failed to provide the Liquidators with sufficient financial information for FRCC that would validate or rebut the contents of the Declaration.

50.     This is one of the factors that resulted in the Liquidators filing the Supervision Petition, which is expressly authorized under the law of the Cayman Islands.

51.     Specifically, in certain circumstances, a voluntary liquidation may, if ordered by the Grand Court, be brought under the supervision of the Grand Court, whereupon it then proceeds as an "official liquidation."

52.     One such circumstance is if, upon the application of the voluntary liquidators, the Grand Court determines that continuing the liquidation under its supervision would "facilitate a more effective, economic, or expeditious liquidation of the company in the interests of the contributories and creditors."[12]   A supervision petition can also be made on the grounds that the company is or is likely to become insolvent.

53.     If the Grand Court issues an order granting the relief sought in the supervision petition, for all intents and purposes, the liquidation proceeds as though it was the Grand Court that ordered the winding up of the company.[13]

54.     In this case, following FIC's default on the Notes, MaplesFS, in its capacity as the collateral agent for the Party Lien Debtholders, and as sole shareholder of FRCC, passed the Resolution appointing the Liquidators.

---

[12] Section 131 of the Companies Law.
[13] Section 133 of the Companies Law.

55.     In July 2019, the Liquidators filed the Supervision Petition and, on September 12, 2019, the Cayman Court issued the Supervision Order, resulting in what amounts to a compulsory liquidation of FRCC, the appointment of the Liquidators, and the conferring of authority on the Liquidators to file the Petition.

56.     It is not possible to reverse a winding-up order, other than via appeal, and there has been no appeal of the Supervision Order.[14]

### C.     The General Rules and Procedures for Liquidation by the Grand Court

57.     The compulsory or supervised liquidation of a Cayman Islands company is carried out by liquidators appointed by and under the supervision of the Grand Court pursuant to certain statutory mechanisms set out in the Companies Law.

58.     The Grand Court has jurisdiction in respect of (among other things) the winding up of companies incorporated in the Cayman Islands.[15]  The Financial Services Division of the Grand Court, which supervises the Cayman Liquidation, deals with proceedings involving the winding up of Cayman Islands companies.[16]

59.     A Cayman Islands company may be compulsorily wound up by the Grand Court where: (a) the company has passed a special resolution requiring the company to be wound up by the Court; (b) the company has not commenced business within a year from its incorporation, or suspends its business for a whole year; (c) the period, if any, fixed for the duration of the company by the articles of association expires, or whenever the event, if any, occurs, upon the occurrence of which it is provided by the articles of association with the company is to be wound

---

[14] Under Section 111(1) of the Companies Law, an official liquidation can be "stayed" upon order of the Grand Court, this is highly infrequent in practice.
[15] Section 92 of the Companies Law.
[16] Financial Services Division Guide A3(g)

up; (d) the company is unable to pay its debts; and/or (e) the court is of the opinion that it is just and equitable that the company be wound up.[17]

60.     As noted above, FRCC first entered into voluntary liquidation as a result of the Resolution, and then entered into official liquidation following the filing of the Supervision Petition and the resulting promulgation of the Supervision Order.

61.     Now that FRCC is in official liquidation, it is important to note that the Cayman Liquidation will proceed on a level playing field for all stakeholders, including any creditors and FIC, as the shareholder of FRCC.  In addition, other entities in the Frontera Group may have rights in the Cayman Liquidation.

62.     A general principle underlying the Cayman Islands' insolvency regime is that the claims of investors and unsecured creditors within the same class are treated on a *pari passu* basis.[18]

63.     Section 97(1) of the Companies Law provides that upon the entry of a winding up order, no suit or other proceeding may be commenced or continued against the company except with leave of the Grand Court and subject to such terms as the Grand Court may impose.[19]

64.     This automatic stay, similar to the automatic stay provided for in the Bankruptcy Code, serves to promote the Liquidators' ability to deal with the claims of creditors collectively and comprehensively.

**D.      The Role and Powers of the Liquidators**

65.     As noted above, the Liquidators are fiduciaries and officers of the Grand Court. The powers of the FRCC Directors are suspended by the appointment of the Liquidators.[20]

---

[17] Section 92 of the Companies Law.
[18] Section 140 of the Companies Law.
[19] This litigation stay does not purport to have extraterritorial effect.
[20] CWR O.3, r. 22(4)

66. To be eligible for appointment as an official liquidator, the proposed appointee(s) must comply with the provision of the IPR, which include requirements as to: (a) professional qualifications; official liquidators are typically highly experienced and qualified accountants, with expertise as insolvency practitioners; (b) residency in the Cayman Islands; (c) insurance; and (d) independence.[21]

67. Any relevant stakeholder may attending a winding-up hearing (which is public) to challenge the appointment of the selected liquidators, including on the basis of an alleged bias or lack of independence.[22]

68. The Liquidators' powers arise from Schedule 3 of the Companies Law and the Supervision Order. Broadly speaking, the Liquidators are empowered, as agents of the estate of the company, to collect, seize, retain, administer and realize the company's property for the benefit of creditors and other stakeholders.

69. Schedule 3, Part I to the Companies Law (as supplemented by the CWR) sets out the following powers that the Liquidators may exercise with the sanction of the Grand Court:

  a. Bring or defend any action or other legal proceeding in the name and on behalf of the company, which sometimes takes the form of a claim by the company or by the liquidators themselves.

  b. Safeguard, collect, and realise the company's assets.

  c. Carry on the business of the company so far as may be necessary for its beneficial winding up.

  d. Dispose of any property of the company to a person who is or was related to the company.

  e. Pay any class of creditors in full, and to the extent there is any surplus, to the members of the company.

---

[21] IPR, rules 4-7. The prospective appointee(s) must swear an affidavit to the effect that they comply with these provisions of the IPR as a condition of their eligibility for their appointment. *See* CWR O.3 r.4(1).

[22] *See* Re Hadar Fund Ltd., (Unreported, FSD 94 of 2013 (AJJ), Aug. 13, 2013). There, the Grand Court refused to appointment nominee liquidators based on the appearance of a conflict, such that these nominees could not "properly regarded as independent as regards that company" as is required by IPR 6(1).

f.   Make any compromise or arrangement with creditors or persons claiming to be creditors or having or alleging themselves to have any claim (present or future, certain or contingent, ascertained or sounding only in damages) against the company or for which the company may be rendered liable.

g.   Compromise on such terms as may be agreed all debts and liabilities capable of resulting in debts, and all claims (present or future, certain or contingent, ascertained or sounding only in damages) subsisting, or supposed to subsist between the company and a contributory or alleged contributory or other debtor or person apprehending liability to the company.

h.   Deal with all questions in any way relating to or affecting the assets or the winding up of the company, take any security for the discharge of any such call, debt, liability or claim and give a complete discharge in respect of it.

i.   Sell any of the company's property by public auction or private contract with power to transfer the whole of it to any person or to sell the same in parcels.

j.   Raise or borrow money and grant securities therefor over the property of the company.

k.   Meet various reporting requirements, both to the stakeholders and the Grand Court.

l.   Engage staff (whether or not as employees of the company) to assist in the performance of their functions.

m.   Engage attorneys and other professionally qualified persons to assist in the performance of their functions.

70.   The Grand Court must approve the remuneration of the Liquidators and also retains a residual interest to remove the Liquidators, though this very rarely occurs in practice.

71.   Schedule 3, Part II of the Companies Law (as supplemented by the CWR) sets out the powers that the Liquidators may exercise without the Grand Court's sanction:

a.   Take possession of, collect and enter the property of the company and for that purpose to take all such proceedings as they considers necessary.

b.   Take all acts and execute, in the name and on behalf of the company, all deeds, receipts and other documents and for that purpose to use, when necessary, the company seal.

c.  Prove, rank and claim in the bankruptcy, insolvency or sequestration of any contributory for any balance against his estate, and to receive dividends in the bankruptcy, insolvency or sequestration in respect of that balance, as a separate debt due from the bankrupt or insolvent and rateably with the other separate creditors.

d.  Draw, accept, make and indorse any bill of exchange or promissory note in the name and on behalf of the company, with the same effect with the respect of the company's liability as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of the company in the course of its business.

e.  Promote a scheme of arrangement pursuant to section 86.

f.  Convene meetings of creditors and contributories.

g.  All other things incidental to the exercise of these powers.

72.  Often the order of the Grand Court appointing the liquidators will explicitly authorise them to exercise some, if not all, of the powers set forth in Schedule 3, Part II of the Companies Law.

73.  The Supervision Order specifically authorises the Liquidators to exercise certain of the enumerated powers in Schedule 3, Part II of the Companies Law.

74.  For instance, paragraph 7 of the Supervision Order authorises the Liquidators to exercise the following powers, without further sanction or intervention from the Cayman Court:

a.  seek recognition of the liquidation and/or the appointment of official liquidators in any jurisdiction the [Liquidators] consider necessary together with such other relief as they may consider necessary for the proper exercise of their functions within that jurisdiction; and

b.  engage counsel, attorneys, and professional advisors, whether in the Cayman Islands or elsewhere as they may consider necessary to advise and assist them in the performance of their duties and on such terms as they may think fit and to remunerate them out of the assets of [FRCC].

75.  As noted above, paragraph 8 of the Supervision Order explicitly permits the filing of this Chapter 15 Petition, which is an exercise of the power conferred in paragraph 6(b) of the Supervision Order, allowing the Liquidators to "engage counsel … whether in the Cayman

Islands or elsewhere as they may consider necessary to advise and assist them in their performance of their duties and on such terms as they think fit" and paragraph 9(b) of the Supervision Order permits the Liquidators to "[t]ake control of such of the direct and/or indirect subsidiaries of [FRCC] in which [FRCC] holds an interest as the [Liquidators] shall think fit."

76.    As Liquidators of FRCC, their practical duties include: (a) determining whether FRCC is solvent, insolvent, or of "doubtful solvency" (as defined below); (b) compiling the assets and liabilities of FRCC, including the purported debt of $2.2 million designated on the Declaration solely as "Notes"; (c) ascertaining the identities of FRCC's creditors, if any; (d) understanding the intercompany loans among FIC, FRCC and FRGC first disclosed in a minimal fashion by the FRCC Directors a few months previous; and (e) resolving whether the Assignment, via the Farmout Agreement, represented an arm's length transaction for full value.

77.    Another important aspect of the Liquidators' role is to identify the relevant stakeholders in the liquidation.  The Liquidators are required to make a summary determination as to whether the company should be regarded as solvent, insolvent or of "doubtful solvency."[23] That determination is significant because it determines who are treated as the stakeholders in the Cayman Liquidation - that is, whether it is the shareholders (in the case of a solvent liquidation), the creditors (in the case of an insolvent liquidation) or both (where the company is of doubtful solvency).

78.    This in turn affects, among other things, such as who is entitled to receive the Liquidators' reports, who is convened to meetings held in the Cayman Liquidation, and how the liquidation committee shall be comprised in the event such a committee is required.[24]  Pursuant to the Supervision Order, each of these contingencies could apply to the Cayman Liquidation.

---

[23] CWR O.8 r.1.
[24] *See* CWR O.10 r. 1(2), O.8 r.1(4)-(6), O.9 r.1.

79.     The Liquidators should keep that solvency determination under review during the Cayman Liquidation, and may change that determination if new circumstances arise.[25]

80.     Currently, the Liquidators cannot make a meaningful determination as to the solvency, or lack thereof, of FRCC.

81.     As set forth in the Griffin Declaration, the FRCC Directors have been consistently uncooperative with the Liquidators' efforts to administer the estate of FRCC.

82.     Specifically, the Liquidators' efforts have been materially hindered due to the FRCC Directors' refusal to comply with the Liquidators' numerous requests for basic information pertaining to FRCC, its assets, the transactions to which it is a party, and its creditors.

83.     Accordingly, the relief requested in this Petition is further necessary because certain of the FRCC Directors, who appear to reside or maintain a presence in the United States (as attested to in the Griffin Declaration), otherwise refuse to provide meaningful information concerning the financial condition of FRCC.

## V.     The Applicability of the Cayman Liquidation to the United States Bankruptcy Code

84.     I have also been asked by the Liquidators to explain the implications of the Cayman Liquidation on the Petition and the Bankruptcy Code, to the extent I have been apprised by United States counsel.

### A.     The Cayman Liquidation is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code.

85.     I am advised by United States counsel that a "foreign proceeding" is defined in section 101(23) of the Bankruptcy Code as:

"... *a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment*

---

[25] CWR O.8 r.2.

*of debt in which proceeding the assets and affairs of the Debtors are subject to control or supervision by a foreign court, for the purpose of reorganisation or liquidation."*

86.     In my view, the Grand Court's liquidation of FRCC satisfies the above definition.

87.     First, MaplesFS placed FRCC into voluntary liquidation pursuant to section 116 of the Companies Law.  Then, the Cayman Liquidation was commenced pursuant to Part V of the Companies Law, pursuant to a Supervision Order entered by the Grand Court.

88.     The Cayman Liquidation proceeds in front of the Grand Court, which must approve the exercise of a many powers of the Liquidators, while also ensuring that applicable law of the Cayman Islands is followed in order to afford parity to each interested party.

**B.     The Liquidators are "foreign representatives" within the meaning of section 101(24) of the Bankruptcy Code.**

89.     I am also advised by United States Counsel that "foreign representative" is defined in section 101(24) of the Bankruptcy Code as:

*"... a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding."*

90.     In my view, the Liquidators satisfy this definition.  As fiduciaries and officers of the Grand Court, the Liquidators are duly authorised and empowered by the Grand Court to investigate and administer the dispensation of FRCC's assets or affairs, and to act as the duly authorised representatives of FRCC, including potentially in the Arbitration in the event the Liquidators take control of FRGC.   By virtue of the Supervision Order, the Liquidators have, in effect, replaced the FRCC Directors.

91.     In addition, the Liquidators are empowered (subject to obtaining sanction of the Grand Court) to bring or defend claims against FRCC and to take control of FRGC.   Finally, the Supervision Order explicitly authorizes the Liquidators to hire counsel and staff, which the

Liquidators have done in both the Cayman Islands (including my firm) and the United States, and to file this Petition.

92.     As noted above, FRCC was formed as a Cayman Islands exempted company and has remained as such.

93.     An exempted company is prohibited from undertaking business in the Cayman Islands except in furtherance of its business carried on outside of the Cayman Islands unless that exempted company holds a licence to carry on business in the Cayman Islands under any applicable law.

94.     Specifically, the subscriber to any proposed company applying for registration as an exempted company under the Companies Law must declare that its operations will be conducted mainly outside of the Cayman Islands or pursuant to a licence to carry on business in the Cayman Islands.[26]  Subject to compliance with any other applicable licencing or regulatory requirements, in order to further objects outside of the Cayman Islands, an exempted company may effect and conclude contracts and exercise all of its powers necessary for the carrying on of its business, within the Cayman Islands.[27]   In other words, subject to any licencing and regulatory requirements, it can employ staff or agents in the Cayman Islands and maintain an office in the Cayman Islands.

95.     As such, although, upon its incorporation as an exempted limited company, FRCC was restricted from carrying on business within the Cayman Islands, that did not mean that FRCC had no presence at all in this jurisdiction.

96.     For example, FRCC's registered office has been situated in the Cayman Islands since its inception and continues to be so situated upon the commencement of voluntarily

---

[26] Section 163 of the Companies Law.
[27] Section 174 of the Companies Law.

liquidation and then the Cayman Liquidation. In addition, FRCC's sole shareholder (FIC), wholly-owned subsidiary (FRGC), and ultimate and intermediate parent entities are likewise incorporated in the Cayman Islands. MaplesFS, which authorized the Resolution placing FRCC into voluntary liquidation, is based in the Cayman Islands.

97. The IPR mandates that at least one official liquidator be resident in the Cayman Islands.[28] In the present case, both Liquidators reside in the Cayman Islands.

98. The Supervision Order grants the Liquidators various powers to enable them to effectively carry out their duties, but it remains the case that, where they are contemplating actions that are not of automatic statutory application, or as expressly provided for in the Supervision Order, they are required to seek the Grand Court's approval.

99. In considering whether to grant its approval, the Grand Court will have regard to the views of the Liquidation Committee in that event that it is formed.

100. In practice, this means that the management of FRCC is being conducted by the Liquidators from within the Cayman Islands. As a result, all aspects of the winding up of FRCC are subject to the supervision of the Grand Court.

101. Accordingly, it is submitted that there is a substantial nexus to the Cayman Islands in respect of the operating control over FRCC.

102. For these reasons, I believe that the Cayman Islands has been the center of main interests of FRCC since its placement into voluntary liquidation in May 2019 and continues to this day.

---

[28] IPR Rule 5(1)

IN WITNESS WHEREOF, I have executed this Declaration under penalty of perjury under the laws of the United States of America this 24th day of October, 2019.

_____
Ben Hobden

# EXHIBIT 1

**CAYMAN ISLANDS**



Supplement No.6 published with Extraordinary Gazette No.22 of 16th March, 2018.

**COMPANIES LAW**

**(2018 Revision)**

Cap. 22 (Law 3 of 1961) of the 1963 Revised Edition of the Laws consolidated with Laws 12 of 1962, 9 of 1966, 1 of 1971, 7 of 1973, 24 of 1974, 25 of 1975, 19 of 1977, 16 of 1978, 6 of 1980, 21 of 1981, 34 of 1983, 2 of 1984, 22 of 1984, 15 of 1985, 38 of 1985, 24 of 1987, 14 of 1988, 14 of 1989, 10 of 1990, 3 of 1991, 23 of 1991 (part), 11 of 1992, 3 of 1993, 23 of 1993, 33 of 1993, 2 of 1994, 8 of 1994, 14 of 1996, 26 of 1997, 4 of 1998, 6 of 1998, 20 of 1998 (part), 5 of 1999, 7 of 2000 (part), 5 of 2001, 10 of 2001, 29 of 2001, 46 of 2001, 22 of 2002, 26 of 2002, 28 of 2003, 13 of 2006, 15 of 2007, 12 of 2009, 33 of 2009, 37 of 2010, 16 of 2011, 29 of 2011, 6 of 2012, 14 of 2012, 29 of 2012, 1 of 2013, 6 of 2013, 14 of 2015, 3 of 2016, 2 of 2017, 42 of 2017 and the Companies (Amendment of Schedule) Order, 2011.

*Companies Law (2018 Revision)*

"professional service provider" means a person who contracts to provide general managerial or administrative services to a company on an annual or continuing basis;

"qualified insolvency practitioner" means a person holding the qualifications specified in the regulations made by the Insolvency Rules Committee under section 155 or such other qualifications as the Court considers appropriate for the conduct of the winding up of a company;

"Rules" mean rules prescribed by the Insolvency Rules Committee;

"shadow director" means, in relation to a company, any person in accordance with whose directions or instructions the directors of the company are accustomed to act, but the person is not deemed to be a shadow director by reason only that the directors act on advice given by him in a professional capacity; and

"winding up order" includes an order that a voluntary winding up continue under the supervision of the Court and references to a company being wound up by the Court includes a company which is being wound up under the supervision of the Court.

Alternative modes of winding up

90.   A company may be wound up-

    (a)   compulsorily by order of the Court;

    (b)   voluntarily-

        (i)    by virtue of a special resolution;

        (ii)   because the period, if any, fixed for the duration of the company by its articles of association has expired; or

        (iii)  because the event, if any, has occurred, on the occurrence of which its articles of association provide that the company shall be wound up; or

    (c)   under the supervision of the Court.

Jurisdiction of the Court

91.   The Court has jurisdiction to make winding up orders in respect of-

    (a)   an existing company;

    (b)   a company incorporated and registered under this Law;

    (c)   a body incorporated under any other law; and

    (d)   a foreign company which-

        (i)    has property located in the Islands;

        (ii)   is carrying on business in the Islands;

        (iii)  is the general partner of a limited partnership; or

        (iv)   is registered under Part IX.

64

*Companies Law (2018 Revision)*

### Winding up by the Court

92. A company may be wound up by the Court if-

Circumstances in which a company may be wound up by the Court

    (a) the company has passed a special resolution requiring the company to be wound up by the Court;

    (b) the company does not commence its business within a year from its incorporation, or suspends its business for a whole year;

    (c) the period, if any, fixed for the duration of the company by the articles of association expires, or whenever the event, if any, occurs, upon the occurrence of which it is provided by the articles of association that the company is to be wound up;

    (d) the company is unable to pay its debts; or

    (e) the Court is of opinion that it is just and equitable that the company should be wound up.

93. A company shall be deemed to be unable to pay its debts if-

Definition of inability to pay debts

    (a) a creditor by assignment or otherwise to whom the company is indebted at law or in equity in a sum exceeding one hundred dollars then due, has served on the company by leaving at its registered office a demand under his hand requiring the company to pay the sum so due, and the company has for the space of three weeks succeeding the service of such demand, neglected to pay such sum, or to secure or compound for the same to the satisfaction of the creditor;

    (b) execution of other process issued on a judgment, decree or order obtained in the Court in favour of any creditor at law or in equity in any proceedings instituted by such creditor against the company, is returned unsatisfied in whole or in part; or

    (c) it is proved to the satisfaction of the Court that the company is unable to pay its debts.

94. (1) An application to the Court for the winding up of a company shall be by petition presented either by-

Application for winding up

    (a) the company;

    (b) any creditor or creditors (including any contingent or prospective creditor or creditors);

    (c) any contributory or contributories; or

    (d) subject to subsection (4), the Authority pursuant to the regulatory laws.

    (2) Where expressly provided for in the articles of association of a company the directors of a company incorporated after the commencement of this Law have the authority to present a winding up petition on its behalf without the sanction of a resolution passed at a general meeting.

*Companies Law (2018 Revision)*

    (c)    persons who are or have been employees of the company, during the period of one year immediately preceding the relevant date.

(4)    Where any persons are required under this section to submit a statement of affairs to the liquidator, they shall do so, subject to subsection (5), before the end of the period of twenty-one days beginning with the day after that on which the prescribed notice of the requirement is given to them by the liquidator.

(5)    The liquidator may release a person from an obligation imposed on him under subsection (1) or, when giving the notice mentioned in subsection (4) or subsequently, the liquidator may extend the time for compliance; and if the liquidator refuses to extend the time for compliance, the Court may do so.

(6)    In this section-

"relevant date" means-

    (a)    in a case where a provisional liquidator is appointed, the date of his appointment; and

    (b)    in any other case, the commencement of the winding up.

(7)    A person who, without reasonable excuse, fails to comply with any obligation imposed under this section commits an offence and is liable on conviction to a fine of ten thousand dollars.

102. (1)    Where a winding up order is made by the Court, the liquidator shall be empowered to investigate-

    (a)    if the company has failed, the causes of the failure; and

    (b)    generally, the promotion, business, dealings and affairs of the company,

and to make such report, if any, to the Court as he thinks fit.

(2)    Subject to obtaining the directions of the Court, the liquidator shall have power to -

    (a)    assist the Authority and the Royal Cayman Islands Police Service to investigate the conduct of persons referred to in section 101(3); and

    (b)    institute and conduct a criminal prosecution of persons referred to in section 101(3).

(3)    Subject to obtaining the prior approval of the company's creditors, if it is insolvent, or its contributories, if it is solvent, the directions given under subsection (2) may include a direction that the whole or part of the costs of investigation and prosecution be paid out of the assets of the company.

103. (1)    This section applies to any person who, whether resident in the Islands or elsewhere-

*Investigation by liquidator*

*Duty to co-operate and the private examination of relevant persons*

69

(3)  The exercise by the liquidator of the powers conferred by this section is subject to the control of the Court, and subject to subsection (5), any creditor or contributory may apply to the Court with respect to the exercise or proposed exercise of such powers (hereinafter referred to as a "sanction application").

(4)  In the case of -

    (a)  a solvent company, a sanction application may only be made by a contributory and the creditors shall have no right to be heard;

    (b)  an insolvent company, a sanction application may only be made by a creditor and the contributories shall have no right to be heard; and

    (c)  a company whose solvency is doubtful, a sanction application may be made by both contributories and creditors and both contributories and creditors shall have a right to be heard.

(5)  For the purposes of this section, a person shall be treated as a related to a company if -

    (a)  he has acted for the company as a professional service provider;

    (b)  he is or was a shareholder or director of the company or of any other company in the same group as the company;

    (c)  he has a direct or indirect beneficial interest in the shares of the company; or

    (d)  he is a creditor or debtor of the company.

### General Powers of the Court

111. (1)  The Court may at any time after an order for winding up, on the application either of the liquidator or any creditor or contributory, and on proof to the satisfaction of the Court that all proceedings in the winding up ought to be stayed, make an order staying the proceedings either all together or for a limited time, on such terms and conditions as the Court thinks fit.

    *Power to stay winding up*

(2)  The Court may at any time after the liquidation has commenced under section 116 (c), but before the final meeting has been held as provided for in section 127, on the application of the liquidator accompanied by-

    (a)  a special resolution stating that the company will not be wound up and setting out the reasons for such decision;

    (b)  proof of a recall notice published in the Gazette; and

    (c)  such other documents as the Court may consider necessary,

make an order to recall the liquidation, place the company into active status and place the company back into good standing as it was prior to the commencement of liquidation under section 116(c), on such terms and conditions as the Court thinks fit.

*Companies Law (2018 Revision)*

    (c)    file the director's declaration of solvency with the Registrar (if the supervision of the court is not sought);

    (d)    in the case of a company carrying on a regulated business, serve notice of the winding up upon the Monetary Authority; and

    (e)    publish notice of the winding up in the Gazette.

    (2)   A director or liquidator who fails to comply with this section commits an offence and is liable to a fine of ten thousand dollars.

*Application for supervision order*

124. (1)   Where a company is being wound up voluntarily its liquidator shall apply to the Court for an order that the liquidation continue under the supervision of the Court unless, within twenty-eight days of the commencement of the liquidation, the directors have signed a declaration of solvency in the prescribed form in accordance with subsection (2).

    (2)   A declaration of solvency means a declaration or affidavit in the prescribed form to the effect that a full enquiry into the company's affairs has been made and that to the best of the directors' knowledge and belief the company will be able to pay its debts in full together with interest at the prescribed rate, within such period, not exceeding twelve months from the commencement of the winding up, as may be specified in the declaration.

    (3)   A person who knowingly makes a declaration under this section without having reasonable grounds for the opinion that the company will be able to pay its debts in full, together with interest at the prescribed rate, within the period specified commits an offence and is liable on summary conviction to a fine of ten thousand dollars and to imprisonment for two years.

*Avoidance of share transfers*

125. Any transfer of shares, not being a transfer with the sanction of the liquidator, and any alteration in the status of the company's members made after the commencement of a voluntary winding up is void.

*General meeting at year's end*

126. (1)   In the event of a voluntary winding up continuing for more than one year, the liquidators shall summon a general meeting of the company at the end of the first year from the commencement of the winding up and at the end of each succeeding year and such meetings shall be held within three months of each anniversary of the commencement of the liquidation.

    (2)   At each meeting the liquidator shall lay before the meeting a report and account of his acts and dealings and the conduct of the winding up during the preceding year.

    (3)   A liquidator who fails to comply with this section commits an offence and is liable on conviction to a fine of ten thousand dollars.

*Final meeting prior to dissolution*

127. (1)   As soon as the company's affairs are fully wound up, the liquidator shall make a report and an account of the winding up showing how it has been conducted and how the company's property has been disposed of and thereupon

*Companies Law (2018 Revision)*

liquidator's remuneration is calculated and particulars of the work done, as may be necessary to enable the members to determine what expenses have been properly incurred and what remuneration is properly payable to the liquidator.

(4)  If the company fails to approve the liquidator's remuneration and expenses or the liquidator is dissatisfied with the decision of the company, he may apply to the Court which shall fix the rate and amount of his remuneration and expenses.

### Winding up subject to the supervision of the Court

Application for supervision order

131.  When a resolution has been passed by a company to wind up voluntarily, the liquidator or any contributory or creditor may apply to the Court for an order for the continuation of the winding up under the supervision of the Court, notwithstanding that the declaration of solvency has been made in accordance with section 124, on the grounds that-

(a)  the company is or is likely to become insolvent; or

(b)  the supervision of the Court will facilitate a more effective, economic or expeditious liquidation of the company in the interests of the contributories and creditors.

Appointment of official liquidator

132. (1)  When making a supervision order the Court-

(a)  shall appoint one or more qualified insolvency practitioners; and

(b)  may, in addition, appoint one or more foreign practitioners,

as liquidator or liquidators of the company and section 105 shall apply as if the Court had made a winding up order.

(2)  Unless a voluntary liquidator is appointed as an official liquidator, he shall prepare a final report and accounts within twenty-eight days from the date of the supervision order.

Effect of supervision order

133.  A supervision order shall take effect for all purposes as if it was an order that the company be wound up by the Court except that-

(a)  the liquidation commenced in accordance with section 117; and

(b)  the prior actions of the voluntary liquidator shall be valid and binding upon the company and its official liquidator.

### Offences of fraud, etc.

Fraud, etc. in anticipation of winding up

134. (1)  Where a company is ordered to be wound up by the Court, or passes a resolution for voluntary winding up, any person, who is or was an officer, professional service provider, voluntary liquidator or controller of the company and who, within the twelve months immediately preceding the commencement of the winding up, has-

80

*Companies Law (2018 Revision)*

(2)   Where the official liquidator seizes or disposes of any property which he reasonably believed belonged to the company, he shall not be personally liable for any loss or damage caused to its true owner except in so far as such losses or damage is caused by his own negligence.

139. (1)   All debts payable on a contingency and all claims against the company whether present or future, certain or contingent, ascertained or sounding only in damages, shall be admissible to proof against the company and the official liquidator shall make a just estimate so far as is possible of the value of all such debts or claims as may be subject to any contingency or sound only in damages or which for some other reason do not bear a certain value.

*Provable debts*

(2)   Foreign taxes, fines and penalties shall be admissible to proof against the company only if and to the extent that a judgment in respect of the same would be enforceable against the company pursuant to the Foreign Judgments Reciprocal Enforcement Law (1996 Revision) or any laws permitting the enforcement of foreign taxes, fines and penalties.

*1996 Revision*

140. (1)   Subject to subsection (2), the property of the company shall be applied in satisfaction of its liabilities *pari passu* and subject thereto shall be distributed amongst the members according to their rights and interests in the company.

*Distribution of the company's property*

(2)   The collection in and application of the property of the company referred to in subsection (1) is without prejudice to and after taking into account and giving effect to the rights of preferred and secured creditors and to any agreement between the company and any creditors that the claims of such creditors shall be subordinated or otherwise deferred to the claims of any other creditors and to any contractual rights of set-off or netting of claims between the company and any person or persons (including without limitation any bilateral or any multi-lateral set-off or netting arrangements between the company and any person or persons) and subject to any agreement between the company and any person or persons to waive or limit the same.

(3)   In the absence of any contractual right of set-off or non set-off, an account shall be taken of what is due from each party to the other in respect of their mutual dealings, and the sums due from one party shall be set-off against the sums due from the other.

(4)   Sums due from the company to another party shall not be included in the account taken under subsection (3) if that other party had notice at the time they became due that a petition for the winding up of the company was pending.

(5)   Only the balance, if any, of the account taken under subsection (3) shall be provable in the liquidation or, as the case may be, payable to the liquidator as part of the assets.

141. (1)   In the case of an insolvent company, the debts described in Schedule 2 shall be paid in priority to all other debts.

*Preferential debts*
*Schedule 2*

*Companies Law (2018 Revision)*

**Company, creditor or member may apply to court for company to be reinstated**

159. If a company or any member or creditor thereof feels aggrieved by the company having been struck off the register in accordance with this Law, the Court on the application of such company, member or creditor made within two years or such longer period not exceeding ten years as the Cabinet may allow of the date on which the company was so struck off, may, if satisfied that the company was, at the time of the striking off thereof, carrying on business or in operation, or otherwise, that it is just that the company be restored to the register, order the name of the company to be restored to the register, on payment by the company of a re-instatement fee equivalent to the original incorporation or registration fee and on such terms and conditions as to the Court may seem just, and thereupon the company shall be deemed to have continued in existence as if its name had not been struck off; and the Court may, by the same or any subsequent order, give such directions and make such provisions as seem just for placing the company and all other persons in the same position as nearly as may be as if the name of the company had not been struck off.

**Liability of members of company to remain**

160. The striking off the register of any company under this Law shall not affect the liability, if any, of any director, manager, officer or member of the company, and such liability shall continue and may be enforced as if the company had not been dissolved.

**Registrar not liable for any act performed under this Part**

161. No liability shall attach for any act performed or thing done by the Registrar under this Part.

**Vesting of property**

162. Any property vested in or belonging to any company struck off the register under this Law shall thereupon vest in the Minister charged with responsibility for Finance and shall be subject to disposition by the Cabinet, or to retention for the benefit of the Islands.

## PART VII - Exempted Companies

**What companies may apply to be registered as exempted companies**

163. Any proposed company applying for registration under this Law, the objects of which are to be carried out mainly outside the Islands, may apply to be registered as an exempted company.

**Registration of exempted companies**

164. On being satisfied that section 165 has been complied with, the Registrar shall register the company as an exempted company.

**Declaration by proposed company**

165. A proposed exempted company applying for registration as an exempted company shall submit to the Registrar a declaration signed by a subscriber to the effect that the operation of the proposed exempted company will be conducted mainly outside the Islands.

**Shares shall be non-negotiable**

166. The shares of an exempted company shall be non-negotiable and shall be transferred only on the books of the company.

*Companies Law (2018 Revision)*

immediately dissolved and removed from the register and in such case any fee tendered under section 26 or 169 shall be forfeited to the Minister charged with responsibility for Finance for credit to the general revenue.

**Penalty for false declaration**

173. Every director and officer of a company who knowingly makes or permits the making of any such declaration knowing it to be false commits an offence and is liable on summary conviction to a fine of five thousand dollars and to imprisonment for a term of one year, or to both.

**Prohibited enterprises**

174. An exempted company shall not trade in the Islands with any person, firm or corporation except in furtherance of the business of the exempted company carried on outside the Islands:

Provided that nothing in this section shall be construed so as to prevent the exempted company effecting and concluding contracts in the Islands and exercising in the Islands all of its powers necessary for the carrying on of its business outside the Islands.

**Prohibited sale of securities**

175. An exempted company that is not listed on the Cayman Islands Stock Exchange is prohibited from making any invitation to the public in the Islands to subscribe for any of its securities.

**Penalty for carrying on business contrary to this Part**

176. If an exempted company carries on any business in the Islands in contravention of this Part then, without prejudice to any other proceedings that may be taken in respect of the contravention, the exempted company and every director, provisional director and officer of the exempted company who is responsible for the contravention commits an offence and is liable on summary conviction to a fine of one hundred dollars for every day during which the contravention occurs or continues, and the exempted company shall be liable to be immediately dissolved and removed from the register.

**Electronic business by exempted companies**

177. Nothing in this Law shall prohibit an exempted company from offering, by electronic means, and subsequently supplying, real or personal property, services or information from a place of business in the Islands or through an internet service provider or other electronic service provider located in the Islands.

## PART VIII - Exempted Limited Duration Companies

**Exempted company may apply to be registered as an exempted limited duration company**

178. (1)   An exempted company may, at any time, apply to the Registrar to be registered as an exempted limited duration company.

(2)   An application may also be made under subsection (1) at the same time as an application is made-

(a)   to register a proposed company as an exempted company;

(b)   to re-register an ordinary non-resident company as an exempted company; or

92

CAYMAN ISLANDS



Supplement No. 1 published with Extraordinary
Gazette No. 103 dated 6 December, 2017.

**THE COMPANIES LAW (2016 REVISION) (AS AMENDED)**
**COMPANIES WINDING UP RULES, 2018**

**FOREIGN BANKRUPTCY PROCEEDINGS**
**(INTERNATIONAL COOPERATION) RULES, 2018**

**INSOLVENCY PRACTITIONERS' REGULATIONS, 2018**

**Verification of Petition (O. 3, r. 3)**

**3.**     (1)      The petition shall be verified by an affidavit that the statements in the petition are true, or are true to the best of the deponent's knowledge, information and belief.

        (2)      A creditors' petition in respect of debts due to two or more different creditors must be separately verified by or on behalf of each creditor.

        (3)      The verifying affidavit shall be sworn by :-

              (a)      the petitioner; or

              (b)      a director, officer or agent of the petitioner who has been concerned in and has personal knowledge of the matters giving rise to the petition.

**Nominated Official Liquidator's Consent to Act (O. 3, r. 4)**

**4.**     (1)      Every petition shall be supported by an affidavit sworn by the person or persons nominated for appointment as official liquidator stating that :-

              (a)      he is a qualified insolvency practitioner and meets the residency requirement contained in Regulation 5;

              (b)      having made due enquiry, he believes that he and his firm meet the independence requirement contained in Regulation 6;

              (c)      he and/or his firm are in compliance with the insurance requirement contained in Regulation 7; and

              (d)      he is willing to act as official liquidator if so appointed by the Court.

        (2)      If the petition seeks an order for the appointment of a qualified insolvency practitioner jointly with a foreign practitioner, it shall be supported by an affidavit sworn by the foreign practitioner stating :-

              (a)      his professional qualifications;

              (b)      the country in which he is qualified to perform functions equivalent to those performed by official liquidators under the Law or by trustees under the Bankruptcy Law (1997 Revision);

              (c)      his professional experience;

              (d)      he will have the benefit of professional indemnity insurance in respect of his acts and omissions done in his capacity as an official liquidator of the company meeting the requirements of Regulation 7;

17

(e)     if he has been appointed by a foreign court or authority as a liquidator, trustee, receiver or administrator of the company or a related party of the company, full particulars of such appointment; and

(f)     that, having made due enquiry, he and his firm meet independence requirement contained in Regulation 6.

## PART II:  CREDITOR'S PETITION

### Presentation and Service of Creditor's Petition (O. 3, r. 5)

5.    (1)    Prior to presenting a creditor's petition, the petitioner's attorney must apply in writing (by letter or e-mail) to the Registrar to have the proceeding assigned to a Judge and to fix a hearing date.

(2)    A creditor's petition shall not be filed unless and until the proceeding has been assigned to a Judge and a hearing date has been fixed and endorsed on the petition or stated in a notice of hearing filed simultaneously with the petition.

(3)    Every creditor's petition, together with the verifying and supporting affidavits and notice of hearing (if the hearing date is not endorsed upon the petition itself), shall be served upon the company by delivering them to the company's registered office immediately after the petition has been presented.

(4)    In the event that the company is carrying on a regulated business, copies of the petition and affidavits shall also be served upon the Authority immediately after the petition has been presented.

(5)    An affidavit of service shall be filed within 7 days of the presentation of every creditor's petition.

### Advertisement of Creditor's Petition (O. 3, r. 6)

6.    (1)    Unless the Court otherwise directs, every creditor's petition shall be advertised once in a newspaper having a circulation in the Islands.

(2)    In addition, unless the Court otherwise directs, if the company is carrying on business outside the Islands, every creditor's petition shall be advertised once in a newspaper having a circulation in the country or countries in which it is most likely to come to the attention of the company's creditors, in which case the advertisement must be published in the official language of such country.

(b)     withdraws its petition;

(c)     fails to appear on the hearing of its petition;

(d)     seeks to adjourn its petition or seeks that it be dismissed; or

(e)     appears, but does not apply for an order in terms of the prayer of its petition.

(2)    The Court may, on such terms as it thinks just, substitute as petitioner any creditor, contributory or the Authority who in its opinion would have a right to present a petition and who is desirous of doing so.

(3)    Where the Court exercises its discretion to substitute the company as petitioner, the petition of the substituted petitioner will be deemed to have been filed on the date of the original petition.


## PART VI:  WINDING UP ORDERS

### Form, Content and Effect of Winding Up Orders (O. 3, r. 22)

**22.**    (1)    Every winding up order shall be in CWR Form No 6.

(2)    Every winding up order shall state the full name, address and contact details of the official liquidator.

(3)    Every winding up order shall state which of the powers contained in Part I of Schedule 3 of the Law (if any) are given to the official liquidator.

(4)    On the appointment of an official liquidator all the powers of the directors cease, save that directors retain residual powers to allow them to initiate an appeal against the winding-up order.


### Filing, Service and Registration of Winding Up Orders (O. 3, r. 23)

**23.**    (1)    Every winding up order shall be drawn up and filed in accordance with GCR Order 42, rule 5.

(2)    The petitioner shall be responsible for ensuring that the winding up order is drawn up and filed immediately after the hearing.

(3)    The petitioner shall serve copies of the winding up order upon

(a)     the company at its registered office;

# ORDER 8

## MEETINGS OF CREDITORS AND CONTRIBUTORIES

**Meetings Convened by Official Liquidator (O. 8, r. 1)**

1. (1) For the purpose of convening meetings and establishing a liquidation committee, the official liquidator shall summarily determine whether, in his opinion, the company should be regarded as being –

   (a) solvent;

   (b) insolvent; or

   (c) of doubtful solvency,

   and the official liquidator's determination shall be final and binding upon the company's creditors and contributories for the purposes of this Order and Order 9 unless and until it is changed by the official liquidator in accordance with this Rule.

   (2) If and when the official liquidator considers that his initial determination about the company's solvency may no longer be justified, he shall re-consider the matter and may change his determination if he considers that it is appropriate to do so and his changed determination shall also be final and binding upon the company's creditors and contributories for the purposes of this Order and Order 9.

   (3) The official liquidator's initial determination under this Rule shall be certified in CWR Form No 13 and filed in Court within 28 days of the date on which the winding up order is made and any subsequent change in his determination shall be certified in CWR Form No 14 and filed in Court immediately after it is made.

   (4) If, and so long as the official liquidator determines that the company should be regarded as insolvent, he shall convene meetings of its creditors only.

   (5) If, and so long as the official liquidator determines that the company is solvent, he shall convene meetings of its contributories only.

   (6) If, and so long as the official liquidator determines that the company is of doubtful solvency, he shall convene meetings of both creditors and contributories and such meetings shall be held on the same day, either concurrently or consecutively.

   (7) A meeting is deemed to have been convened on the day upon which the official liquidator gives notice of it and it shall not be invalidated if, for whatever reason, the official liquidator inadvertently fails to give notice to any creditor or contributory.

   (8) References in this Order to –

(a)    "a meeting or meetings" shall mean a creditors' meeting or a contributories' meeting or both, depending upon the determination made by the company's official liquidator in accordance with this Rule;

(b)    "a creditors' meeting" shall mean a meeting of creditors convened when the official liquidator has certified that, in his opinion, the company should be regarded as insolvent; and

(c)    "a contributories' meeting" shall mean a meeting of contributories convened when the official liquidator has certified that, in his opinion, the company should be regarded as solvent.

**First Meeting and Subsequent Meetings (O. 8, r. 2)**

2.    (1)    Unless the Court otherwise directs, the official liquidator shall convene a first meeting within 28 days of the date upon which the winding up order is made.

(2)    The first meeting shall be convened for the purpose of electing a liquidation committee and dealing with such other matters or resolutions as the official liquidator thinks fit or the Court may direct.

(3)    Thereafter, the official liquidator shall convene meetings whenever –

(a)    he considers that it is appropriate to do so; or

(b)    the Court directs him to do so; or

(c)    he receives a valid requisition under Rule 3; and

(d)    in any event, not less than once a year.

**Requisitioned Meetings (O. 8, r. 3)**

3.    (1)    A creditors' meeting may be requisitioned by any one or more creditors whose debts are valued in total at $500,000 or 5% of the company's total unsecured liabilities, whichever is the lesser.

(2)    A contributories' meeting may be requisitioned by one or more contributories who together are entitled to cast at least 5% of the votes capable of being cast at a contributories' meeting.

(3)    A requisition must be made in writing, signed by each of the requisitionists, and must specify the full terms of each resolution intended to be put to the meeting.

(4)    A requisition must be delivered to the official liquidator.

# ORDER 9

## LIQUIDATION COMMITTEES

### Establishment of Liquidation Committee (O. 9, r. 1)

**1.**    (1)    Unless the Court otherwise directs, a liquidation committee shall be established in respect of every company which is being wound up by the Court.

(2)    The provisions of this Order shall also apply to a liquidation committee required to be established pursuant to an order made under Order 4, rule 7(3)(f).

(3)    The liquidation committee shall comprise not less than three nor more than five creditors (if the official liquidator has determined that the company should be regarded as insolvent) or contributories (if the official liquidator has determined that the company should be regarded as solvent).

(4)    The liquidation committee of an insolvent company shall be elected at the first meeting of creditors convened in accordance with Order 8, rule 2.

(5)    The liquidation committee of a solvent company shall be elected at the first meeting of the contributories convened in accordance with Order 8, rule 2.

(6)    In the case of a company determined by its official liquidator to be of doubtful solvency, the liquidation committee shall comprise not less three nor more than six members, of whom a majority shall be creditors elected at a meeting of creditors and at least one of whom shall be a contributory elected at a meeting of contributories.

(7)    After the liquidation committee has been established, the official liquidator may, with the consent of a majority of the remaining members of the committee, appoint a creditor or contributory (as the case may be) to fill any vacancy

(8)    The liquidation committee does not come into being, and accordingly cannot act, until the official liquidator has issued a certificate in CWR Form No 15 of its due constitution, which shall state the name, address and contact details of each member.

(9)    The official liquidator's certificate shall be filed in Court.

### Membership of Liquidation Committee (O. 9, r. 2)

**2.**    (1)    A liquidation committee cannot be established unless and until it has the minimum number of members required by Rule 1.

(2)    Any creditor of the company (other than one whose debt is fully secured) is eligible to be a member of a liquidation committee, so long as

50

# ORDER 10

# OFFICIAL LIQUIDATOR'S REPORTS AND ACCOUNTS

**Official Liquidator's Reporting Obligations (O. 10, r. 1)**

**1.**    (1)    The official liquidator shall prepare reports and accounts with respect to his conduct of the liquidation and the state of the company's affairs.

(2)    It is the duty of an official liquidator to report to –

(a)    the liquidation committee in compliance with the requirements of Order 9, rule 3;

(b)    the contributories, in the event that the official liquidator has determined (pursuant to Order 8, rule 1) that the company should be regarded as solvent; or

(c)    the creditors, in the event that the official liquidator has determined (pursuant to Order 8, rule 1) that the company should be regarded as insolvent; or

(d)    the contributories and creditors, if and for so long as the official liquidator has determined that the company should be regarded as being of doubtful solvency; and

(e)    the Court.

(2)    Whenever the official liquidator convenes a meeting pursuant to Order 8, rule 2, the official liquidator shall send a report and accounts to every person entitled to receive notice of the meeting.

(3)    Whenever the official liquidator convenes a meeting in response to a requisition made pursuant to Order 8, rule 3, he may send a report and/or accounts to every person entitled to receive notice of the meeting.

(4)    The official liquidator of an insolvent company has no continuing duty to report to the contributories, but he shall provide copies of his reports and accounts to any contributory upon request.

**Form and Content of Liquidators' Reports and Accounts (O. 10, r. 2)**

**2.**    (1)    Every official liquidator's report shall provide a description and analysis of -

(a)    the steps taken and, in the case of an interim report, the further steps intended to be taken in the liquidation generally; or

CAYMAN ISLANDS



Supplement No. 3 published with Extraordinary
Gazette No. 103 dated 6 December, 2017.

**THE COMPANIES LAW (2016 REVISION)(AS AMENDED)**

**INSOLVENCY PRACTITIONERS' REGULATIONS 2018**

## PART II:  APPOINTMENT OF OFFICIAL LIQUIDATORS

**4.**    **Professional Qualification**

(1)    A person shall be qualified to accept appointment by the Court as official liquidator of any company only if –

(a)    he is licensed to act as an insolvency practitioner in a relevant country; or

(b)    he is qualified as a professional accountant by an approved institute, is in good standing with such institute, has a minimum of five (5) years' relevant experience and is credited with not less than 2,500 chargeable hours of relevant work.

(c)    [*spent*].

(2)    For the purposes of paragraph (1)(a) of this Regulation the relevant countries are –

(a)    England and Wales;

(b)    Scotland;

(c)    Northern Ireland;

(d)    The Republic of Ireland;

(e)    Australia;

(f)    New Zealand; and

(g)    Canada.

(3)    For the purposes of paragraph (1)(b) of this Regulation, "approved institute"  means an institute, society, association or other body approved by the Council of the Cayman Islands Society of Professional Accountants pursuant to the Public Accountants Law (2009 Revision).

(4)    The expressions "relevant experience" and "relevant work" shall have the same meaning as in Part A of the Schedule to these Regulations.

**5.**    **Residency Requirement**

(1)    A qualified insolvency practitioner shall not be appointed by the Court as official liquidator of any company unless –

5

(a)      he is resident in the Islands; and

(b)      he, or the firm of which he is a partner or employee, or the company of which he is a director or employee, holds a trade and business licence which authorises him or his firm to carry on business as professional insolvency practitioners.

## 6.      Independence Requirement

(1)      A qualified insolvency practitioner shall not be appointed by the Court as official liquidator of a company unless he can be properly regarded as independent as regards that company.

(2)      A qualified insolvency practitioner shall not be regarded as independent if, within a period of 3 years immediately preceding the commencement of the liquidation, he, or the firm of which his is a partner or employee, or the company of which he is a director or employee, has acted in relation to the company as its auditor.

## 7.      Insurance Requirement

(1)      A qualified insolvency practitioner shall not be appointed by the Court as official liquidator of any company unless he and the firm of which he is a partner or employee or the company of which he is a director or an employee, has professional indemnity insurance (up to a limit of at least US$10 million in respect of each and every claim and at least US$20 million in the aggregate, with a deductible of not more than US$1 million) applicable to the negligent performance or non-performance of his duties as an official liquidator generally.

(2)      Nothing in these Regulations shall prevent the Court from making an order in respect of a particular company that its official liquidator shall

(a)      procure professional indemnity insurance covering him in respect of the negligent performance or non-performance of his duties to the company with a limit of coverage in excess of US$10 million in respect of each and every claim or with an aggregate limit in excess of US$20 million; or

(b)      procure the issue of a security bond to cover acts of fraud or dishonesty committed by the official liquidator or any of his staff,

in which case the premium shall be paid out of the assets of the company as an expense of the liquidation.

(3)      [spent]

# Exhibit B

R. Craig Martin (RCM 1971)
Gregory M. Juell
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, New York 10020
Phone: (212) 335-4500
Fax: (212) 335-4501

*Counsel to Petitioners Alexander Lawson*
*and Christopher Kennedy in their Capacities as*
*Joint Official Liquidators of VPC Impact Acquisition*
*Holdings II Limited (in Official Liquidation)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| VPC IMPACT ACQUISITION HOLDINGS II LIMITED (IN OFFICIAL LIQUIDATION) | Case No. 23-11551 (MEW) |
| Debtor in a Foreign Proceeding. | |

**DECLARATION OF BEN HOBDEN IN SUPPORT OF VERIFIED PETITION UNDER**
**CHAPTER 15 FOR ORDER AND FINAL DECREE GRANTING RECOGNITION OF**
**FOREIGN MAIN PROCEEDING AND OTHER RELATED RELIEF**

BEN HOBDEN hereby declares as follows:

1. I am a partner with the law firm Harney Westwood & Riegels ("**Harneys**") in its Cayman Islands office. I was admitted to the Roll of Solicitors in England and Wales in 2004.and admitted to practice in the Cayman Islands in 2008.

2. My firm represents Alexander Lawson and Christopher Kennedy of Alvarez & Marsal Cayman Islands Limited ("**A&M**") in their capacities as Joint Official Liquidators (in this capacity, jointly and severally, the "**JOLs**" or "**Foreign Representatives**") of VPC Impact Acquisition Holdings II Limited (in Official Liquidation) (the "**Foreign Debtor**" or "**VPC**"). I am the one of the partners in my firm dealing with the case.

3.  I submit this declaration (this "**Declaration**") in support of (a) the *Verified Petition Under Chapter 15 for Order and Final Decree Granting Recognition of Foreign Main Proceeding and Other Related Relief* (the "**Verified Petition**")[1] and (b) the *Motion of the Foreign Representatives for Chapter 15 Recognition and Final Relief* [ECF No. 3].

4.  I have read the *Declaration of Alexander Lawson in Support of Verified Petition Under Chapter 15 for Order and Final Decree Granting Recognition of Foreign Main Proceeding and Other Related Relief* (the "**Lawson Declaration**"). I rely on the Lawson Declaration for the factual background relevant to the views which I express in this Declaration.

5.  Copies of the statutory provisions of Cayman Islands law and decisions of the Cayman Islands and English Courts cited in this Declaration are attached hereto as **Exhibit 1**.

6.  I am over the age of 18 and, if called to testify, would testify competently to the facts set forth herein.

**Cayman Islands Legal System**

7.  I set out below a brief overview of the Cayman Islands legal system.

8.  The Cayman Islands is a British Overseas Territory and a distinct legal jurisdiction.

9.  The courts of the Cayman Islands administer justice in accordance with local statutes, subordinate legislation, statutes passed by the parliament of the United Kingdom that have been expressly extended to the Cayman Islands, orders of His Majesty's Privy Council applicable in the Cayman Islands, and principles of common law.

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Verified Petition.

1603582968.4

10.     The Grand Court is the court of first instance for insolvency matters, with appeals

lying to the Cayman Islands Court of Appeal (the "**Court of Appeal**"), and finally to His Majesty's

Judicial Committee of the Privy Council in London (the "**Privy Council**").

11.     The doctrine of judicial precedent applies in the Cayman Islands.  The structure of

the court system is hierarchical, with the courts being bound by the *rationes decidendi* of decisions

of the courts above.  The *rationes decidendi* of decisions of the Privy Council are therefore binding

on the Court of Appeal and the Grand Court.  The *rationes decidendi* of decisions of the Court of

Appeal are similarly binding on the Grand Court.  The Grand Court will generally follow the

*rationes decidendi* of its previous decisions, unless satisfied that they are clearly wrong.

12.     There is a comparatively small body of reported case law in the Cayman Islands,

contained in the Cayman Islands Law Reports ("**CILR**").  Further, there are unreported judgments,

which are as binding as those reported in the CILR.

13.     In the absence of binding Cayman Islands case law, the Cayman Islands Courts will

look to English authorities, which are highly persuasive, but not binding.  Generally, the Cayman

Islands courts follow English authorities to the extent that they are not inconsistent with either

Cayman Islands statutory provisions or Cayman Islands authorities, and to the extent that they do

not relate to English statutory provisions which have no equivalent in the Cayman Islands. Decisions

of courts in other Commonwealth jurisdictions are also of persuasive but not binding authority.

**Cayman Islands Companies**

14.     Cayman Islands companies are incorporated pursuant to the Companies Act.[2]  All

companies must maintain registered offices in the Cayman Islands to which all communications and

---

[2]     References to section numbers in this Declaration are references to sections of the Companies Act (2023
Revision) unless otherwise specified.

notices may be addressed or served,[3] and where matters such as the administration of annual filings and the payment of annual fees with the Cayman Islands Registrar of Companies are usually dealt with. Cayman Islands companies are also required to maintain statutory registers of members (*i.e.*, shareholders), mortgages and charges, and directors.[4]

15.     Various types of companies may be incorporated under the Companies Act, but the vast majority are incorporated as exempted companies under Part VII of the Companies Act. VPC is an exempted company.

16.     The principal distinction between "exempted" and "ordinary" companies is that, pursuant to section 174, an exempted company is prohibited from trading in the Cayman Islands except in furtherance of its business outside the Cayman Islands.[5] Section 174 clarifies that it is not to be construed so as to prevent the exempted company from effecting and concluding contracts in the Cayman Islands and exercising in the Cayman Islands all of its powers necessary for the carrying on of its business outside the Cayman Islands. An exempted company can therefore, for example, maintain premises and employ staff and appoint directors and other agents who are residents in the Cayman Islands, in furtherance of the company's business outside the Cayman Islands.

17.     In any event, as I explain below, these restrictions cease to have any practical relevance in an official liquidation of an exempted company, such as the official liquidation of the Foreign Debtor, where the official liquidators are given the powers necessary to present a compromise or arrangement to the company's creditors.

---

[3]     Sections 50(1) and 70.

[4]     Sections 40, 54 and 55 respectively.

[5]     Sections 163 and 165 refer to the requirements that the objects and operations are to be conducted mainly outside the Cayman Islands.

4

## **Insolvency Proceedings in Respect of Cayman Islands Companies**

18.     The statutory provisions governing the liquidation of Cayman Islands companies are

set out in Part V of the Companies Act, which is supplemented by the Companies Winding Up Rules

(2023 Consolidation) (the "**CWR**"), the Insolvency Practitioners' Regulations [2018] (the "**IPR**"),

the Foreign Bankruptcy Proceedings (International Cooperation) Rules 2018, and the Grand Court

Rules 1995 (as revised).  Part V of the Companies Act applies to companies formed and registered

under the Companies Act or its predecessors, including companies that are formed as exempted

companies, as well as bodies incorporated under any other law and certain foreign companies.

19.     A Cayman Islands company may be wound up: (a) compulsorily, by order of the

Grand Court;[6] (b) voluntarily, following the passing of a special resolution of its shareholder(s),[7] or

pursuant to a mandatory term in its constitutional documents[8] or other event;[9] or (c) under the

supervision of the Grand Court.

20.     VPC's voluntary liquidation proceedings became effective on April 7, 2023 and the

Foreign Representatives were appointed as Joint Voluntary Liquidators ("**JVL**s")

21.     Following the commencement of voluntary liquidation proceedings, pursuant to

section 124 of the Companies Act and CWR Order 14, r.1(1), a "declaration of solvency shall be …

signed by each person who was a director of the company  on the date on which the voluntary

winding up was commenced.".  However, on April 26, 2023, John Martin, the Company's sole

director at that time, confirmed in writing to the JVLs that he was unwilling to sign a declaration of

solvency in the form required under Cayman Islands law.  The JVLs were therefore obliged, under

---

[6]     Section 90(a) of the Companies Act.

[7]     Section 90(b)(i) of the Companies Act.

[8]     Section 90(b)(ii) of the Companies Act

[9]     Section 90(b)(iii) of the Companies Act.

5

Cayman Islands law, to present a petition seeking that the winding up of the Company continue under the supervision of the Cayman Court.

22.    The JVLs presented such a petition on May 11, 2023.

23.    On July 5, 2023, the Cayman Court entered a Supervision Order in the Cayman Proceeding (the "**Supervision Order**") (subsequently revised due to a minor clerical error on July 17, 2023). The consequence of this was to convert the voluntary liquidation into an official liquidation, and to convert the JVLs to JOLs.

24.    A general principle underlying the Cayman Islands' insolvency regime is that creditors are treated on a *pari passu* basis, subject to certain exceptions.[10]

25.    Section 97(1) of the Companies Act provides in relevant part that upon the making of a winding up order against a company, no suit, action, or other proceedings, including criminal proceedings, shall be proceeded with or commenced against the company except with leave of the Grand Court and subject to such terms as the Grand Court may impose. This automatic stay serves to, *inter alia*, facilitate the JOLs' ability to deal with the claims of creditors collectively and comprehensively.

26.    In my experience, Cayman Islands liquidation proceedings are fair and equitable, insofar as all creditors and interest holders have the opportunity to be heard by the Grand Court and no creditors will be prejudiced on the sole basis that they are foreign based. All creditors are treated equally, regardless of where they are domiciled.

27.    The JOLs are fiduciaries and officers of the Grand Court. As official liquidators of VPC, their function is to (a) collect, realize and distribute the assets of VPC to its creditors and if

---

[10]    Section 140 (1) of the Companies Act.

there is a surplus, to equity holders in accordance with their rights; and (b) report to VPC's creditors and/or shareholders upon the affairs of VPC and the manner in which they are being wound up.

28.     Schedule 3, Part I of the Companies Act sets out the following powers that the JOLs may exercise with the sanction of the Grand Court:

a. "Power to bring or defend any action or other legal proceeding in the name and on behalf of the company.

b. Power to carry on the business of the company so far as may be necessary for its beneficial winding up.

c. Power to dispose of any property of the company to a person who is or was related to the company.

d. Power to pay any class of creditors in full.

e. Power to make any compromise or arrangement with creditors or persons claiming to be creditors or having or alleging themselves to have any claim (present or future, certain or contingent, ascertained or sounding only in damages) against the company or for which the company may be rendered liable.

f. Power to compromise on such terms as may be agreed all debts and liabilities capable of resulting in debts, and all claims (present or future, certain or contingent, ascertained or sounding only in damages) subsisting, or supposed to subsist between the company and a contributory or alleged contributory or other debtor or person apprehending liability to the company.

g.  Power to deal with all questions in any way relating to or affecting the assets or the winding up of the company, to take any security for the discharge of any such call, debt, liability or claim and to give a complete discharge in respect of it.

h.  The power to sell any of the company's property by public auction or private contract with power to transfer the whole of it to any person or to sell the same in parcels.

i.  The power to raise or borrow money and grant securities therefor over the property of the company.

j.  The power to engage staff (whether or not as employees of the company) to assist [them] in the performance of [their] functions.

k.  The power to engage attorneys and other professionally qualified persons to assist [them] in the performance of [their] functions."

29.  Schedule 3, Part II of the Companies Act further provides that the JOLs are permitted to exercise the following powers without the Grand Court's sanction:

a.  "The power to take possession of collect and enter the property of the company and for that purpose to take all such proceedings as [they] consider necessary.

b.  The power to do all acts and execute, in the name and on behalf of the company, all deeds, receipts and other documents and for that purpose to use, when necessary, the company seal.

c.  The power to prove, rank and claim in the bankruptcy, insolvency or sequestration of any contributory for any balance against his estate, and to receive dividends in the bankruptcy, insolvency or sequestration in respect of that

8

balance, as a separate debt due from the bankrupt or insolvent and ratably with the other separate creditors.

    d.   The power to draw, accept, make and indorse any bill of exchange or promissory note in the name and on behalf of the company, with the same effect with the respect of the company's liability as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of the company in the course of its business.

    e.   The power to promote a scheme of arrangement pursuant to section 86.

    f.   The power to convene meetings of creditors and contributories.

    g.   The power to do all other things incidental to the exercise of his powers."

30.    Pursuant to section 102 of the Companies Act, the JOLs are also empowered to investigate (a) the causes for the failure of VPC, as well as (b) generally, the promotion, business, dealings and affairs of VPC.

### The Cayman Proceedings as "Foreign Proceeding"

31.    I am advised by U.S. Counsel that "foreign proceeding" is defined in section 101(23) of the Bankruptcy Code to mean:

> *"... a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the Debtors are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation"* 11 U.S.C. § 101(23).

32.    Although the application of section 101(23) of the Bankruptcy Code is ultimately a question of applicable United States law on which I am not qualified to opine, based on my reading of the language of the section, I believe that the Cayman Islands official liquidation proceedings would fall within it.  They are collective judicial proceedings, in the Cayman Islands, governed by the Cayman Islands statute applicable to corporate insolvencies, in which the Foreign Debtor's

1603582968.4

assets and affairs are subject to the control and supervision of the Grand Court, for the purpose of

reorganization or, should the reorganization fail, liquidation.

### The JOLs as "Foreign Representatives"

33.     I am also advised by U.S. Counsel that "foreign representative" is defined in section

101(24) of the Bankruptcy Code to mean:

> *"... a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding."*

34.     Again, the application of section 101(24) is ultimately a question of applicable

United States law on which I am not qualified to opine, but in my view the JOLs constitute "foreign

representatives" based on a plain reading of the language of the section.  They have been appointed

by the Grand Court on an interim basis to administer the attempted reorganization of the Foreign

Debtor's debts, and they have been authorized by the order appointing them to (among other

matters) seek recognition under Chapter 15 of the Bankruptcy Code.

### Factors Relevant to the Determination of COMI

35.     I am advised by U.S. Counsel that certain other provisions of Cayman Islands law

may be relevant to the determination of the center of main interests ("**COMI**") of the Foreign Debtor

under section 1517 of the Bankruptcy Code.  I set out below an overview of Cayman Islands law

and practice which may be relevant to the determination of this question.  Again, I note that my

statement of facts below is based on the Declaration of Alexander Lawson.

36.     The Foreign Debtor was incorporated on January 13, 2021, as a special purpose

acquisition vehicle, commonly referred to as a SPAC. It is as an exempted company limited by

shares in accordance with the laws of the Cayman Islands with registration number 370137.  The

10

Foreign Debtor's registered address has been updated to the registered office of A&M at 2nd Floor, Flagship Building, 142 Seafarers Way, P.O. Box 2507, George Town, Grand Cayman, KY1-1104.

37.     As noted above, the restriction on the carrying on of an exempted company's business inside the Cayman Islands, only in support of its business outside the Cayman Islands, does not have any practical effect in the context of the liquidation of that company by official liquidators supervised by the Grand Court. Since the commencement of the official liquidation, the liquidation of the Foreign Debtor has been conducted from the Cayman Islands.

38.     Pursuant to the Supervision Order, the JOLs had the following powers conferred upon them, without further sanction from the Grand Court:

    a. The Joint Official Liquidators are empowered to engage staff, agents, and/or consultants (whether or not as employees of the Company) in the Cayman Islands and elsewhere to assist the JOLs in the performance of their functions.

    b. The Joint Official Liquidators are empowered to engage attorneys and other professionally qualified persons in the Cayman Islands and elsewhere to assist the JOLs in the performance of their functions.

    c. The Joint Official Liquidators are further authorized to seek the recognition of their appointment in the United States without further sanction or intervention of the Cayman Court.

    d. The Joint Official Liquidators are enabled to take any such action as may be necessary or desirable to obtain recognition of the liquidation as a foreign proceeding in the United States and any other relevant jurisdiction without further sanction or intervention of the Cayman Court.

39.     The JOLs' conduct of the official liquidation is subject to the supervision of the Grand Court. Various steps taken by the JOLs have required or would require the express sanction of the Grand Court. Other matters will be reported to the Grand Court either in the JOLs' reports, in affidavits, and in letters to the Grand Court. The JOLs' remuneration is also subject to the Grand Court's approval.

11

40.     Due to the appointment of the JOLs, the management of the Foreign Debtor's business has therefore been conducted from the Cayman Islands in respect of the matters referred to above.

*[Signature on the following page]*

12

IN WITNESS WHEREOF, I have executed this Declaration under penalty of perjury under the laws

of the United States of America this 27th day of September 2023.


By: */s/Ben Hobden*
Ben Hobden

## **Exhibit 1**

A.            Companies Act (2023 Revision)

B.            Companies Winding Up Rules (2023 Consolidation)

C.            Insolvency Practitioners' Regulations [2018]

# Exhibit C

R. Craig Martin (RCM 1971)
Gregory M. Juell
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, New York 10020
Phone: (212) 335-4500
Fax: (212) 335-4501

*Counsel to Petitioners Alexander Lawson*
*and Christopher Kennedy in their Capacities as*
*Joint Official Liquidators of Pioneer Merger Corp.*
*(in Official Liquidation)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 15 |
| PIONEER MERGER CORP. (IN OFFICIAL LIQUIDATION) | Case No. 23-11663 (DSJ) |
| Debtor in a Foreign Proceeding. | |

**DECLARATION OF BEN HOBDEN IN SUPPORT OF VERIFIED PETITION UNDER CHAPTER 15 FOR ORDER AND FINAL DECREE GRANTING RECOGNITION OF FOREIGN MAIN PROCEEDING AND OTHER RELATED RELIEF**

BEN HOBDEN hereby declares as follows:

1.      I am a partner with the law firm Harney Westwood & Riegels ("**Harneys**") in its Cayman Islands office.  I was admitted to the Roll of Solicitors in England and Wales in 2004 and admitted to practice in the Cayman Islands in 2008.

2.      My firm represents Alexander Lawson and Christopher Kennedy of Alvarez & Marsal Cayman Islands Limited ("**A&M**") in their capacities as Joint Official Liquidators (in this capacity, jointly and severally, the "**JOLs**" or "**Foreign Representatives**") of Pioneer Merger Corp. (in Official Liquidation) (the "**Foreign Debtor**" or "**Company**").  I am one of the partners in my firm dealing with the case.

3.      I submit this declaration (this "**Declaration**") in support of (a) the *Verified Petition Under Chapter 15 for Order and Final Decree Granting Recognition of Foreign Main Proceeding and Other Related Relief* (the "**Verified Petition**")[1] and (b) the *Motion of the Foreign Representatives for Chapter 15 Recognition and Final Relief* [ECF No. 3].

4.      I have read the *Declaration of Alexander Lawson in Support of Verified Petition Under Chapter 15 for Order and Final Decree Granting Recognition of Foreign Main Proceeding and Other Related Relief* (the "**Lawson Declaration**").  I rely on the Lawson Declaration for the factual background relevant to the views which I express in this Declaration.

5.      Copies of the statutory provisions of Cayman Islands law and decisions of the Cayman Islands and English Courts cited in this Declaration are attached hereto as **Exhibit 1**.

6.      I am over the age of 18 and, if called to testify, would testify competently to the facts set forth herein.

## Cayman Islands Legal System

7.      I set out below a brief overview of the Cayman Islands legal system.

8.      The Cayman Islands is a British Overseas Territory and a distinct legal jurisdiction.

9.      The courts of the Cayman Islands administer justice in accordance with local statutes, subordinate legislation, statutes passed by the parliament of the United Kingdom that have been expressly extended to the Cayman Islands, orders of His Majesty's Privy Council applicable in the Cayman Islands, and principles of common law.

---

[1]      Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Verified Petition.

10.    The Grand Court is the court of first instance for insolvency matters, with appeals lying to the Cayman Islands Court of Appeal (the "**Court of Appeal**"), and finally to His Majesty's Judicial Committee of the Privy Council in London (the "**Privy Council**").

11.    The doctrine of judicial precedent applies in the Cayman Islands.  The structure of the court system is hierarchical, with the courts being bound by the *rationes decidendi* of decisions of the courts above.  The *rationes decidendi* of decisions of the Privy Council are therefore binding on the Court of Appeal and the Grand Court.  The *rationes decidendi* of decisions of the Court of Appeal are similarly binding on the Grand Court.  The Grand Court will generally follow the *rationes decidendi* of its previous decisions, unless satisfied that they are clearly wrong.

12.    There is a comparatively small body of reported case law in the Cayman Islands, contained in the Cayman Islands Law Reports ("**CILR**").  Further, there are unreported judgments, which are as binding as those reported in the CILR.

13.    In the absence of binding Cayman Islands case law, the Cayman Islands Courts will look to English authorities, which are highly persuasive, but not binding.  Generally, the Cayman Islands courts follow English authorities to the extent that they are not inconsistent with either Cayman Islands statutory provisions or Cayman Islands authorities, and to the extent that they do not relate to English statutory provisions which have no equivalent in the Cayman Islands. Decisions of courts in other Commonwealth jurisdictions are also of persuasive but not binding authority.

**Cayman Islands Companies**

14.    Cayman Islands companies are incorporated pursuant to the Companies Act.[2]  All companies must maintain registered offices in the Cayman Islands to which all communications and

---

[2]    References to section numbers in this Declaration are references to sections of the Companies Act (2023 Revision) unless otherwise specified.

notices may be addressed or served,[3] and where matters such as the administration of annual filings

and the payment of annual fees with the Cayman Islands Registrar of Companies are usually dealt

with.  Cayman Islands companies are also required to maintain statutory registers of members (*i.e.*,

shareholders), mortgages and charges, and directors.[4]

15.    Various types of companies may be incorporated under the Companies Act, but the

vast majority are incorporated as exempted companies under Part VII of the Companies Act.  The

Company is an exempted company.

16.    The principal distinction between "exempted" and "ordinary" companies is that,

pursuant to section 174, an exempted company is prohibited from trading in the Cayman Islands

except in furtherance of its business outside the Cayman Islands.[5]  Section 174 clarifies that it is not

to be construed so as to prevent the exempted company from effecting and concluding contracts in

the Cayman Islands and exercising in the Cayman Islands all of its powers necessary for the carrying

on of its business outside the Cayman Islands.  An exempted company can therefore, for example,

maintain premises and employ staff and appoint directors and other agents who are residents in the

Cayman Islands, in furtherance of the company's business outside the Cayman Islands.

17.    In any event, as I explain below, these restrictions cease to have any practical

relevance in an official liquidation of an exempted company, such as the official liquidation of the

Foreign Debtor, where the official liquidators are given the powers necessary to present a

compromise or arrangement to the company's creditors.

---

[3]       Sections 50(1) and 70.

[4]       Sections 40, 54 and 55 respectively.

[5]       Sections 163 and 165 refer to the requirements that the objects and operations are to be conducted mainly
outside the Cayman Islands.

**Insolvency Proceedings in Respect of Cayman Islands Companies**

18.     The statutory provisions governing the liquidation of Cayman Islands companies are set out in Part V of the Companies Act, which is supplemented by the Companies Winding Up Rules (2023 Consolidation) (the "**CWR**"), the Insolvency Practitioners' Regulations [2018] (the "**IPR**"), the Foreign Bankruptcy Proceedings (International Cooperation) Rules 2018, and the Grand Court Rules 1995 (as revised).  Part V of the Companies Act applies to companies formed and registered under the Companies Act or its predecessors, including companies that are formed as exempted companies, as well as bodies incorporated under any other law and certain foreign companies.

19.     A Cayman Islands company may be wound up: (a) compulsorily, by order of the Grand Court;[6] (b) voluntarily, following the passing of a special resolution of its shareholder(s),[7] or pursuant to a mandatory term in its constitutional documents[8] or other event;[9] or (c) under the supervision of the Grand Court.

20.     The Company's voluntary liquidation proceedings became effective on August 17, 2023, and the Foreign Representatives were appointed as Joint Voluntary Liquidators ("**JVLs**")

21.     Following the commencement of voluntary liquidation proceedings, pursuant to section 124 of the Companies Act and CWR Order 14, r.1(1), a "declaration of solvency shall be … signed by each person who was a director of the company on the date on which the voluntary winding up was commenced." On August 11, 2023, Jonathan Christodoro, Mitchell Caplan, Todd Davis and Oscar Salazar, the Company's directors at that time, signed a declaration confirming their belief that the Company will be able to pay its debts in full within a period of twelve (12) months

---

[6]     Section 90(a) of the Companies Act.

[7]     Section 90(b)(i) of the Companies Act.

[8]     Section 90(b)(ii) of the Companies Act

[9]     Section 90(b)(iii) of the Companies Act.

from the commencement of the winding up (the "**Director Declaration**").  Notwithstanding that the

Director Declaration was signed by the directors of the Company, it was the JVL's view that a

supervision order would facilitate a more commercial and effective resolution to the ongoing

litigation in the US, and as a consequence therefore, an economic and expeditious liquidation.

22.     The JVLs presented such a petition on August 28, 2023.

23.     On September 27, 2023, the Cayman Court entered a Supervision Order in the

Cayman Proceeding (the "**Supervision Order**"). The consequence of this was to convert the

voluntary liquidation into an official liquidation, and to convert the JVLs to JOLs.

24.     A general principle underlying the Cayman Islands' insolvency regime is that

creditors are treated on a *pari passu* basis, subject to certain exceptions.[10]

25.     Section 97(1) of the Companies Act provides in relevant part that upon the

making of a winding up order against a company, no suit, action, or other proceedings, including

criminal proceedings, shall be proceeded with or commenced against the company except with leave

of the Grand Court and subject to such terms as the Grand Court may impose. This automatic stay

serves to, *inter alia*, facilitate the JOLs' ability to deal with the claims of creditors collectively and

comprehensively.

26.     In my experience, Cayman Islands liquidation proceedings are fair and equitable,

insofar as all creditors and interest holders have the opportunity to be heard by the Grand Court and

no creditors will be prejudiced on the sole basis that they are foreign based. All creditors are treated

equally, regardless of where they are domiciled.

27.     The JOLs are fiduciaries and officers of the Grand Court.  As official liquidators of

the Company, their function is to (a) collect, realize and distribute the assets of the Company to its

---

[10]     Section 140 (1) of the Companies Act.

creditors and if there is a surplus, to equity holders in accordance with their rights; and (b) report to the Company's creditors and/or shareholders upon the affairs of the Company and the manner in which they are being wound up.

28.     Schedule 3, Part I of the Companies Act sets out the following powers that the JOLs may exercise with the sanction of the Grand Court:

a.   "Power to bring or defend any action or other legal proceeding in the name and on behalf of the company.

b.   Power to carry on the business of the company so far as may be necessary for its beneficial winding up.

c.   Power to dispose of any property of the company to a person who is or was related to the company.

d.   Power to pay any class of creditors in full.

e.   Power to make any compromise or arrangement with creditors or persons claiming to be creditors or having or alleging themselves to have any claim (present or future, certain or contingent, ascertained or sounding only in damages) against the company or for which the company may be rendered liable.

f.   Power to compromise on such terms as may be agreed all debts and liabilities capable of resulting in debts, and all claims (present or future, certain or contingent, ascertained or sounding only in damages) subsisting, or supposed to subsist between the company and a contributory or alleged contributory or other debtor or person apprehending liability to the company.

g.  Power to deal with all questions in any way relating to or affecting the assets or the winding up of the company, to take any security for the discharge of any such call, debt, liability or claim and to give a complete discharge in respect of it.

h.  The power to sell any of the company's property by public auction or private contract with power to transfer the whole of it to any person or to sell the same in parcels.

i.  The power to raise or borrow money and grant securities therefor over the property of the company.

j.  The power to engage staff (whether or not as employees of the company) to assist [them] in the performance of [their] functions.

k.  The power to engage attorneys and other professionally qualified persons to assist [them] in the performance of [their] functions."

29.    Schedule 3, Part II of the Companies Act further provides that the JOLs are permitted to exercise the following powers without the Grand Court's sanction:

a.  "The power to take possession of collect and enter the property of the company and for that purpose to take all such proceedings as [they] consider necessary.

b.  The power to do all acts and execute, in the name and on behalf of the company, all deeds, receipts and other documents and for that purpose to use, when necessary, the company seal.

c.  The power to prove, rank and claim in the bankruptcy, insolvency or sequestration of any contributory for any balance against his estate, and to receive dividends in the bankruptcy, insolvency or sequestration in respect of that

balance, as a separate debt due from the bankrupt or insolvent and ratably with the other separate creditors.

d.  The power to draw, accept, make and indorse any bill of exchange or promissory note in the name and on behalf of the company, with the same effect with the respect of the company's liability as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of the company in the course of its business.

e.  The power to promote a scheme of arrangement pursuant to section 86.

f.  The power to convene meetings of creditors and contributories.

g.  The power to do all other things incidental to the exercise of his powers."

30.     Pursuant to section 102 of the Companies Act, the JOLs are also empowered to investigate (a) the causes for the failure of the Company, as well as (b) generally, the promotion, business, dealings and affairs of the Company.

## The Cayman Proceedings as "Foreign Proceeding"

31.     I am advised by U.S. Counsel that "foreign proceeding" is defined in section 101(23) of the Bankruptcy Code to mean:

> *"... a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the Debtors are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation"* 11 U.S.C. § 101(23).

32.     Although the application of section 101(23) of the Bankruptcy Code is ultimately a question of applicable United States law on which I am not qualified to opine, based on my reading of the language of the section, I believe that the Cayman Islands official liquidation proceedings would fall within it.  They are collective judicial proceedings, in the Cayman Islands, governed by the Cayman Islands statute applicable to corporate insolvencies, in which the Foreign Debtor's

9

assets and affairs are subject to the control and supervision of the Grand Court, for the purpose of reorganization or, should the reorganization fail, liquidation.

### The JOLs as "Foreign Representatives"

33.    I am also advised by U.S. Counsel that "foreign representative" is defined in section 101(24) of the Bankruptcy Code to mean:

> *"... a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding."*

34.    Again, the application of section 101(24) is ultimately a question of applicable United States law on which I am not qualified to opine, but in my view the JOLs constitute "foreign representatives" based on a plain reading of the language of the section. They have been appointed by the Grand Court on an interim basis to administer the attempted reorganization of the Foreign Debtor's debts, and they have been authorized by the order appointing them to (among other matters) seek recognition under Chapter 15 of the Bankruptcy Code.

### Factors Relevant to the Determination of COMI

35.    I am advised by U.S. Counsel that certain other provisions of Cayman Islands law may be relevant to the determination of the center of main interests ("**COMI**") of the Foreign Debtor under section 1517 of the Bankruptcy Code. I set out below an overview of Cayman Islands law and practice which may be relevant to the determination of this question. Again, I note that my statement of facts below is based on the Declaration of Alexander Lawson.

36.    The Foreign Debtor was incorporated on October 21, 2020, as a special purpose acquisition vehicle, commonly referred to as a SPAC. It is as an exempted company limited by shares in accordance with the laws of the Cayman Islands with registration number 367259. The

Foreign Debtor's registered address has been updated to the registered office of A&M at 2nd Floor, Flagship Building, 142 Seafarers Way, P.O. Box 2507, George Town, Grand Cayman, KY1-1104.

37.    As noted above, the restriction on the carrying on of an exempted company's business inside the Cayman Islands, only in support of its business outside the Cayman Islands, does not have any practical effect in the context of the liquidation of that company by official liquidators supervised by the Grand Court.  Since the commencement of the official liquidation, the liquidation of the Foreign Debtor has been conducted from the Cayman Islands.

38.    Pursuant to the Supervision Order, the JOLs had the following powers conferred upon them, without further sanction from the Grand Court:

　　a.　The JOLs are empowered to engage staff, agents, and/or consultants (whether or not as employees of the Company) in the Cayman Islands and elsewhere to assist the JOLs in the performance of their functions.

　　b.　The JOLs are empowered to engage attorneys and other professionally qualified persons in the Cayman Islands and elsewhere to assist the JOLs in the performance of their functions.

　　c.　The JOLs are further authorized to seek the recognition of their appointment in the United States without further sanction or intervention of the Cayman Court.

　　d.　The JOLs are enabled to take any such action as may be necessary or desirable to obtain recognition of the liquidation as a foreign proceeding in the United States and any other relevant jurisdiction without further sanction or intervention of the Cayman Court.

39.    The JOLs' conduct of the official liquidation is subject to the supervision of the Grand Court.  Various steps taken by the JOLs have required or would require the express sanction of the Grand Court.  Other matters will be reported to the Grand Court either in the JOLs' reports, in affidavits, and in letters to the Grand Court.  The JOLs' remuneration is also subject to the Grand Court's approval.

11

40.    Due to the appointment of the JOLs, the management of the Foreign Debtor's business has therefore been conducted from the Cayman Islands in respect of the matters referred to above.

*[Signature on the following page]*

IN WITNESS WHEREOF, I have executed this Declaration under penalty of perjury under

the laws of the United States of America this 19th day of October 2023.


By: */s/ Ben Hobden*
Ben Hobden

**Exhibit 1**

A.        Companies Act (2023 Revision)

B.        Companies Winding Up Rules (2023 Consolidation)

C.        Insolvency Practitioners' Regulations [2018]