**Hearing Date and Time: TBD**
**Reply Deadline: March 29, 2024**

Robert J. Feinstein
Bradford J. Sandler
John A. Morris
Beth E. Levine
Jeffrey M. Dine
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 34th Floor
New York, New York 10017
Telephone:    (212) 561-7700
Facsimile:    (212) 561-7777
E-Mail:    rfeinstein@psjlaw.com
    bsandler@pszjlaw.com
    jmorris@pszjlaw.com
    blevine@pszjlaw.com
    jdine@pszjlaw.com

*Counsel for Shang Peng Gao Ke Inc. SEZC and SPGK Pte. Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ASCENTRA HOLDINGS, INC. (in Official Liquidation),<br><br>Debtor in a Foreign Proceeding.[1] | Case No. 21-11854 (DSJ)<br><br>Chapter 15 |

**SHANG PENG GAO KE INC. SEZC AND SPGK PTE LTD.'S**
**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR**
**MOTION PURSUANT TO 11 U.S.C. § 1522(c) TO TERMINATE RESTRAINT**

---

[1]   The Debtor's company registration number is 283719.  The Debtor's registered office is c/o JTC (Cayman) Ltd., 94 Solaris Avenue, Second Floor, Camana Bay, PO Box 30745, Grand Cayman, Cayman Islands, KY1-1203.

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

I. PRELIMINARY STATEMENT ........................................................................................ 1

II. ARGUMENT ..................................................................................................................... 3

    A.    The JOLs Have Not Met the Injunction Standard .................................................... 3

        1.    The JOLs Cannot Establish A Likelihood of Success On The Merits .......... 3

        2.    The JOLs Cannot Demonstrate Irreparable Harm ........................................ 5

        3.    The Balance Of The Equities Weighs In SPGK's Favor ............................. 8

        4.    The Restraint Is Not In The Public Interest .................................................. 9

        5.    The JOLs Cannot Satisfy The Alternative Test For An Injunction ............ 10

    B.    The Interests Of Creditors and Other Interested Entities Will Be Sufficiently Protected If the Restraint Is Terminated .......................................... 10

    C.    The Restraint Termination Motion is Not Moot .................................................. 11

    D.    The Restraint of the Planet Payment Funds Was Outside This Court's Authority ............................................................................................................... 13

III. CONCLUSION ............................................................................................................... 15

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Amusement Indus. v. Citigroup Glob. Mkts. Realty Corp. (In re First Republic Grp. Realty, LLC)*,
    421 B.R. 659 (Bankr. S.D.N.Y. 2009) ...................................................................................6

*Bilalov v. Gref*,
    2022 U.S. Dist. LEXIS 241527 (S.D.N.Y. Mar. 18, 2022) .....................................................6

*Calpine Corp. v. Nev. Power Co. (In re Calpine Corp.)*,
    354 B.R. 45 (Bankr. S.D.N.Y. 2006) .....................................................................................8

*Corp. Comm'n of the Mille Lacs Band of Ojibwe Indians v. Money Ctrs. of Am., Inc.*,
    915 F. Supp. 2d 1059 (D. Minn. 2013) ................................................................................14

*Dunaway v. Purdue Pharm. L.P. (In re Purdue Pharm. L.P.)*,
    619 B.R. 38 (S.D.N.Y. 2020) .................................................................................................7

*Grupo Mexicano De Desarrollo v. All. Bond. Fund ("Grupo Mexicano")*,
    527 U.S. 308 (1999) .............................................................................................................13

*Haw. Structural Ironworkers Pension Tr. Fund v. Calpine Corp.*,
    2006 U.S. Dist. LEXIS 92499 (S.D.N.Y. Dec. 20, 2006) ......................................................8

*In re Anje Jewelry Co., Inc.*,
    47 B.R. 485 (Bankr. E.D.N.Y. 1983) ....................................................................................7

*In re Commonwealth Oil Refin. Co.*,
    805 F.2d 1175 (5th Cir. 1986) ...............................................................................................4

*In re Owens Corning*,
    419 F.3d 195 (3d. Cir. 2005) ...............................................................................................15

*In re Pittsburgh Corning Bankr. Corp.*,
    453 B.R. 570 (Bankr. W.D. Pa. 2011) ..................................................................................7

*IRS v. Kaplan (In re Kaplan)*,
    104 F.3d 589 (3d Cir. 1997) ..................................................................................................7

*Marcus v. Las Uvas Valley Dairies (In re Las Uvas Valley Dairies)*,
    2019 Bankr. LEXIS 1883 (Bankr. D.N.M. June 19, 2019) .................................................14

*Rubin v. Pringle (In re Focus Media Inc.)*,
   387 F.3d 1077 (9th Cir. 2004) ...............................................................................................14

*Suber v. VVP Servs., LLC*,
   2021 U.S. Dist. LEXIS 128427 (S.D.N.Y. July 9, 2021)........................................................14

*Vitro v. ACP Master, Ltd. (In re Vitro)*,
   455 B.R. 571 (Bankr. N.D. Tex. 2011) ...................................................................................4

**Statutes**

11 U.S.C. § 1521(a)(3).....................................................................................................................4

**Other Authorities**

2 Collier on Bankruptcy ¶105.03 (Richard Levin & Henry J. Sommer eds. 16th ed. 2024) ..........7

Ryley Amond, *US credit rating outlook lowered to "negative" by Moody's — here's why
   consumers should be worried*, CNBC (Nov. 16, 2023), https://www.cnbc.com/select/moodys-
   lowers-us-credit-outlook-to-negative/ ...................................................................................13

Interested parties Shang Peng Gao Ke Inc. SEZC ("SPGK Cayman") and SPGK Pte. Ltd. ("SPGK Singapore," and together with SPGK Cayman, "SPGK"), by and through their undersigned counsel, hereby submit this reply memorandum of law in further support of their Motion Pursuant to 11 U.S.C. § 1522(c) to Terminate Restraint (the "Restraint Termination Motion") [ECF No. 42].[2]

## I.
## PRELIMINARY STATEMENT

1. In its opening brief, SPGK showed that the JOLs were unlikely to succeed in proving that the so-called "Cancellation Agreement" on which they based their claim to the Planet Payment Funds was an enforceable agreement. SPGK showed that (a) the JOLs could not authenticate the Cancellation Agreement, (b) the supposed agreement was created by Mr. Matthews after he purportedly, and improperly, removed Mr. Yoshida as a director by Mr. Matthews, and was never disclosed, and (c) the parties never complied with the Cancellation Agreement and never intended to.

2. Discovery has validated SPGK's position. Mr. Yoshida's uncontradicted testimony was that Mr. Matthews had taken over Ascentra in breach of his obligations under the shareholders' agreement, never disclosed the Cancellation Agreement to Mr. Matsuura or Mr. Yoshida, and slunk away from his supposed control of Ascentra when confronted by Mr.

---

[2] This submission is without prejudice to any claims or defenses that SPGK may assert (including in the Cayman Proceeding), as to which SPGK reserves its rights. Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Restraint Termination Motion. References to the "Restraint Obj." are to the *Foreign Representatives' Objection to Motion of Shang Peng Gao Ke Inc. SEZC and SPGK Pte. Ltd. Pursuant to 11 U.S.C. § 1522(c) to Terminate Restraint* [ECF No. 62].

Matsuura.³  The Cancellation Agreement was apparently buried in Ascentra's files until the JOLs found it and, without support, brandished it before the Court.  But in their Statement of Claim in the Cayman Islands (which the JOLs provided to the Court), the JOLs admitted that "No steps were taken to give effect to the Cancellation Agreement."⁴  In light of this admission, the parties agree that the Cancellation Agreement cannot support the restraint.

3.  Unable to rely on the Cancellation Agreement, the JOLs are forced to gin up vague "equitable" claims to the Planet Payment Funds.  Restraint Obj. at 2.  But those claims fare no better.  While the JOLs unjustifiably denigrate Mr. Yoshida, Mr. Robinson himself spent six months strenuously trying to dodge a deposition and then, after losing that battle, steadfastly refused to answer ***any*** questions concerning the facts purportedly supporting Ascentra's equitable claims to the Planet Payment Funds.  The JOLs cannot establish a likelihood of success on the merits of their claims, or the other elements required to justify the drastic remedy of a preliminary injunction, and the restraint should therefore be vacated.  *See* Point II.A.

4.  To evade the flimsiness of their claim, the JOLs contend that SPGK is somehow barred from seeking relief from the restraint—and the Restraint Termination Motion is effectively moot—because the parties agreed at the outset to place the Planet Payment Funds in the Disputed Ownership Fund (defined below).  This contention lacks merit because (a) SPGK expressly

---

³ Deposition of Ryunosuke Yoshida dated August 10, 2023 ("Yoshida Dep. Tr.") at 207:24-209:20.  A copy of the Yoshida Deposition is attached as Exhibit 2 to the Declaration of John Pintarelli in Support of the Restraint Obj. dated September 1, 2023 [ECF No. 63].

⁴ Amended Writ of Summons and Amended Statement of Claim, *Ascentra Holdings, Inc. v. Yoshida*, Cause No FSD 300 of 2023 (RPJ) (Oct. 11, 2023) ("Statement of Claim") ¶ 41.  A copy of the Statement of Claim is attached to ECF No. 77 as Exhibit A.  The JOLs did not request leave to file additional briefing on the Restraint Termination Motion based on the Statement of Claim or to permit Mr. Robinson to answer any questions concerning it, and they should not be permitted sur-reply or other opportunity to raise arguments that they could have made months ago and as to which they have refused factual inquiry.

reserved the right to challenge the JOLs' "misstatements" at the outset of this proceeding, and (b) it contradicts Ascentra's express agreement that the placement of funds into the registry would not affect anyone's positions or arguments. Nor does the placement of the money into the registry "protect" SPGK's interest. In addition to being barred by the parties' stipulation, this assertion is false. It is indisputable that *only* SPGK has a contractual right to the Planet Payment Funds and the prolonged restraint interferes with SPGK's contract and property rights. See Point II.C.

5. The JOLs have also failed to show that the restraint was within the Court's authority under *Grupo Mexicano*. While the JOLs contend that they have asserted "equitable" claims to the Planet Payment Funds, Ascentra has failed to come forward with facts sufficient to support the claims. Ascentra has also failed to show a nexus between the Planet Payment Funds — funds due to SPGK under a contract to which Ascentra is a stranger — and any supposed equitable claim to SPGK's assets. The JOLs never explain how Ascentra has any ownership right in those particular funds, and what SPGK did to interfere with that nonexistent right. See Point II.D.

## II.
## ARGUMENT

A. **The JOLs Have Not Met the Injunction Standard**

   1. **The JOLs Cannot Establish A Likelihood of Success On The Merits**

6. In its opening brief, SPGK demonstrated that the JOLs could not meet their burden of proving that they are likely to succeed on the merits because the Cancellation Agreement did not support their claim. See Restraint Termination Motion ¶¶ 53-64.

7. Ascentra apparently agrees. Essentially abandoning their prior reliance on the Cancellation Agreement, the JOLs now argue that there is a substantial likelihood that the Cayman Proceeding qualifies as a foreign proceeding. Restraint Obj. at 27. But this argument is

misplaced. As set out in SPGK's opening brief, this is not a case where a foreign debtor is attempting to extend the automatic stay to a pending litigation or to the enforcement of an order or judgment, *see* Restraint Termination Motion ¶ 42, such that the likelihood that the Cayman Proceeding qualifies as a foreign proceeding should constitute the relevant inquiry for purposes of determining a likelihood of success on the merits.

8.   Instead, the issue is whether the JOLs are likely to succeed in establishing that Ascentra has a legal right or equitable claim to the Planet Payment Funds.[5] *See, e.g.*, *Vitro v. ACP Master, Ltd. (In re Vitro)*, 455 B.R. 571, 580 (Bankr. N.D. Tex. 2011) ("'merits,' with regard to the four-pronged preliminary injunction test, refer not to the successful completion of reorganization, but to the non-bankruptcy action itself"; injunction denied (citations omitted)); *In re Commonwealth Oil Refin. Co.*, 805 F.2d. 1175, 1189 (5th Cir. 1986) ("The inquiry for a preliminary injunction necessarily focuses on the outcome of a later proceeding, at which time the merits of the questions giving rise to the litigation will be decided"; injunction denied.).[6]

9.   But Ascentra has refused to answer any questions concerning the relevant issue. Thus, although the JOLs contend that Ascentra is contractually and equitably entitled to the Planet Payment Funds, *see* Restraint Obj. at 27, Graham Robinson (Ascentra's designee pursuant to F.R.C.P. 30(b)(6)) refused to testify as to the factual bases for these allegations. *See* Transcript of the Deposition of Graham Robinson (the "Robinson Dep. Tr.") attached as **Exhibit 1** to the

---

[5]   *See* 11 U.S.C. § 1521(a)(3).

[6]   In any event, for the reasons set forth in SPGK's Motion Pursuant to 11 U.S.C. §§ 1517(D) and 1520(c) for an Order Terminating the Recognition Order [ECF No. 37] and its Reply Memorandum of Law in Further Support of Motion of Shang Peng Gao Ke Inc. SEZC and SPGK Pte Ltd. Pursuant to 11 U.S.C. §§ 1517(D) and 1520(c ) for an Order Terminating the Recognition Order [ECF No. 91], this Court should terminate its recognition of the Cayman Proceeding. Thus, even if the question of whether the Cayman Proceeding qualifies as a foreign proceeding is the proper inquiry (and it is not), the JOLs cannot establish a likelihood of success on the merits.

accompanying Declaration of Jeffrey Dine, dated March 29, 2024, at 57:6-58:8; 124:19-128:24; 128:12-132:24; 133:20-135:4; 135:19-136:9. The Court should not adopt "facts" in support of the restraint that have no evidentiary basis.

10. The JOLs appear to rely on unidentified documents and snippets from the deposition of SPGK's principal, Ryunosuke Yoshida ("Mr. Yoshida"), that they contend support their position. *See generally* Restraint Obj. at 9-20. However, at the evidentiary hearing on the Restraint Termination Motion, SPGK will establish that (a) the JOLs have mischaracterized Mr. Yoshida's testimony and the documents used at his deposition, (b) SPGK's business was, and has always been, separate and distinct from Ascentra's, (c) the Planet Payment Funds are SPGK's property, not Ascentra's, and (d) the JOLs therefore are unlikely to succeed on the merits.

11. Likewise, the JOLs assert that no agreement existed between Ascentra and SPGK concerning SPGK's sale of Ascentra products. SPGK agrees. Ascentra is just a holding company (Robinson Dep. Tr. at 21:2-16, Robinson Dep. Ex. 2 (Dine Decl. Ex. 2)). Ascentra didn't sell "Ascentra products." Rather, like any holding company, Ascentra conducted its operations through subsidiaries. It is uncontroverted that SPGK had agreements with those subsidiaries and agreed to compensate these subsidiaries for the goods and services they provided. Yoshida Decl. [ECF No. 44] ¶ 45 & Ex. 7.

12. The JOLs have presented no witness testimony other than bits of Mr. Yoshida's deposition on the substance of these points and have refused even to allow their Rule 30(b)(6) witness to answer any questions about them. They cannot rely on their misleading description of Mr. Yoshida's testimony to carry their burden.

**2. The JOLs Cannot Demonstrate Irreparable Harm**

13. "[I]rreparable harm is the single most important prerequisite for the issuance of a preliminary injunction," *see Amusement Indus. v. Citigroup Glob. Mkts. Realty Corp.*

*(In re First Republic Grp. Realty, LLC)*, 421 B.R. 659, 678 (Bankr. S.D.N.Y. 2009). In its opening brief, SPGK established that the JOLs cannot meet their burden of demonstrating a clear showing of irreparable harm because, among other reasons, Ascentra waited more than three years to seek injunctive relief relating to the Planet Payment Funds. Restraint Termination Motion. ¶¶ 48-50. The JOLs fail to address—let alone justify—this delay; they simply attempt to distinguish SPGK's cases on the ground that the JOLs sought injunctive relief upon commencement of the chapter 15 proceeding. Restraint Obj. at 26 n.13. But that timing is irrelevant. Although the Cancellation Agreement was allegedly entered into on or about April 3, 2018, Ascentra failed to seek injunctive relief until September 2021, and no action relating to the ownership of the funds was brought until October 2023, when the JOLs finally asserted claims in the Cayman court. This delay alone is fatal to the JOLs' request as a matter of law. Restraint Motion ¶¶ 49-50 (delay longer than two months is typically fatal to a claim of irreparable harm in the Second Circuit).

14.     The JOLs attempt to establish irreparable harm by pointing to Mr. Yoshida's statement that if the restraint were lifted, he would deposit the Planet Payment Funds in SPGK's bank in Taiwan. Restraint Obj. at 26. But Taiwan is simply where SPGK's maintains its bank accounts.[7]

15.     Moreover, Ascentra's speculative assertions concerning the potential dissipation of the Planet Payment Funds is insufficient to establish irreparable harm in the absence of evidence that SPGK has dissipated funds—particularly where SPGK has been and is actively engaged with the JOLs in the Cayman Islands and elsewhere. *See Bilalov v. Gref*, No. 20-9153, 2022 U.S. Dist. LEXIS 241527, at *6 (S.D.N.Y. Mar. 18, 2022) ("conclusory assertions do not

---

[7]  Indeed, if Mr. Yoshida had a nefarious plan to spirit the funds away, he probably wouldn't give the JOLs advance notice.

sufficiently demonstrate that Defendants, who have appeared in this action and are actively litigating this case, are likely to dissipate their assets").

16. Finally, essentially conceding that they cannot establish irreparable harm based on the mere fact that SPGK's bank accounts are outside the United States, the JOLs argue, without support, that "as a fallback," this Court can maintain the restraint based on its inherent powers pursuant to section 105 of the Bankruptcy Code. Restraint Obj. at 26. Section 105, however, is of no help to the JOLs.

17. To obtain a stay under section 105(a), the JOLs must satisfy all the prerequisites for an injunction in the Second Circuit. 2 Collier on Bankruptcy ¶105.03 (Richard Levin & Henry J. Sommer eds. 16th ed. 2024) ("Unlike the automatic stay, however, a request for relief under section 105 must meet traditional requirements for an injunction, and must be presented and prosecuted in traditional formats."). *In re Anje Jewelry Co.,* 47 B.R. 485, 487 (Bankr. E.D.N.Y. 1983) ("The court may issue a stay under section 105(a) only if the moving party satisfies the [] test established by the Second Circuit for the issuance of a preliminary injunction."). *See also In re Pittsburgh Corning Bankr. Corp.*, 453 B.R. 570, 601 (Bankr. W.D. Pa. 2011) (citing *IRS v. Kaplan (In re Kaplan)*, 104 F.3d 589, 595 & n.12 (3d Cir. 1997)) ("[i]n order to issue a § 105 injunction the court must examine whether the usual standards for injunctive relief are met. A § 105 injunction is governed by the same standards applicable under Fed. R. Civ. P. 65.").

18. Thus, the traditional four elements for issuance of a preliminary injunction required by the Second Circuit, *including irreparable harm*, must be included in the court's analysis when acting under section 105(a). *See, e.g., Dunaway v. Purdue Pharm. L.P. (In re Purdue Pharm. L.P.)*, 619 B.R. 38, 45-46, 58-62 (S.D.N.Y. 2020) (applying traditional injunction criteria); *Haw. Structural Ironworkers Pension Tr. Fund v. Calpine Corp.,* No. 06-5358, 2006 U.S.

Dist. LEXIS 92499, at *13-18 (S.D.N.Y. Dec. 20, 2006) (same); *Calpine Corp. v. Nev. Power Co. (In re Calpine Corp.),* 354 B.R. 45, 48 (Bankr. S.D.N.Y. 2006) (same).

19. The restraint must be terminated because the JOLs have not and cannot establish irreparable harm as required by Bankruptcy Code sections 1519(e) and 1521(e) as well as by Bankruptcy Rule 105(a).

**3.  The Balance Of The Equities Weighs In SPGK's Favor**

20. As demonstrated in SPGK's opening brief, the balance of the equities weighs in SPGK's favor because (1) the balance of equities cannot favor a movant who cannot show a likelihood of success on the merits; (2) SPGK has been and continues to be harmed by the restraint on the Planet Payment Funds which have lost value due to inflation and whose return is even now less than market, and it cannot use the Planet Payment Funds for the furtherance of its own business, whereas, in contrast, Ascentra faces no harm from the removal of a restraint on funds to which it has no right and its claim of dissipation is purely speculative; and (3) there is no evidence that Ascentra would be unable to collect on a Cayman Islands judgment against SPGK in the unlikely event the JOLs succeed on the merits. Restraint Termination Motion ¶¶ 65-67.

21. In response, first the JOLs contend that the balance of equities weighs in their favor because SPGK is being wound down and has approximately $150 million in a bank account in Taiwan. Restraint Obj. at 27. But whether or not SPGK is being wound down (and noting that the winding down of a multinational entity in a complicated regulatory environment is prolonged, active and expensive), or has significant other funds is irrelevant to whether SPGK is being blocked from accessing and investing or using funds – its receipts — to which it is contractually entitled and to which Ascentra has no demonstrable right.

22. The JOLs then raise the same canard they raised in connection with their claim of irreparable harm – that the balance of equities weighs in their favor because SPGK's

principal testified that the Planet Payment Funds will be moved to SPGK's bank account in the event that the restraint is lifted. *Id*. at 27-28. But as discussed above, Mr. Yoshida testified that he would deposit the Planet Payment Funds in a Taiwanese bank account, because that is the only place where SPGK holds bank accounts. And as the JOLs themselves noted, SPGK has approximately double the amount of Planet Payment Funds in its Taiwanese bank account, so no issue of collectability exists. Moreover, a concern that SPGK might transfer the Planet Payment Funds, held for its benefit by Planet Payment and derived from a contract to which it, not Ascentra, was a party, to its own accounts cannot be construed as prejudicial to Ascentra.

    **4.**    **The Restraint Is Not In The Public Interest**

23. The JOLs argue that terminating the restraint is not in the public interest because SPGK is somehow using the Restraint Termination Motion and the Recognition Motion to "obtain a determination by this Court of their legal entitlement to the Planet Payment Funds without the initiation of any appropriate proceeding and a full hearing on the merits." Restraint Obj. at 28. This argument puts the standard on its head; the JOLs are obligated to prove they are likely to succeed on the merits of their claims. SPGK is not obligated to prove its rights to its money (although its contract with Planet Payment does exactly that); it is the JOLs' burden to show a likelihood of success on their claim, and no stipulation that SPGK might seek declaratory relief relieved the JOLs of that burden.

24. In fact, the JOLs delayed for almost two years in bringing a substantive claim. That substantive claim looks nothing like the claim that the JOLs put to the Court to justify their request for the restraint on the Planet Payment Funds, and itself is based on misstatements and misrepresentations of fact. So SPGK is doing nothing improper; it is simply asking the Court to enforce the law by terminating recognition of the Cayman Proceeding and the restraint of the Planet Payment Funds because the JOLs cannot meet the statutory requirements for each of these.

If anyone is seeking a determination without a full hearing on the merits, it is the JOLs, who seek this Court's adjudication of its likelihood of success in establishing contractual and equitable rights in the Planet Payment Funds while refusing to testify as to the facts relating to those rights.

### 5. The JOLs Cannot Satisfy The Alternative Test For An Injunction

25. In response to SPGK's argument that the JOLs also cannot satisfy the alternative test, *i.e.*, a showing of irreparable harm and either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief, Restraint Termination Motion ¶¶ 71-73, the JOLs simply argue that it can satisfy the alternative test for the reasons it articulated in connection with the four part standard discussed above. Restraint Obj. at 28. As SPGK demonstrated above and in its opening brief, the JOLs cannot satisfy the primary test for issuance of an injunction. It therefore cannot rely on the arguments it made in connection with that test to bolster its argument that it satisfies the alternative test.

### B. The Interests Of Creditors and Other Interested Entities Will Be Sufficiently Protected If the Restraint Is Terminated

26. The JOLs suggest that the interests of Ascentra, its creditors, and its shareholders will not be protected if the restraint is terminated. Restraint Obj. at 29. But once again, the only fact that they point to support this contention is their mantra that harm will occur if SPGK deposits the Planet Payment Funds in Taiwan in the only bank accounts that it holds. *Id.*[8] As discussed above, this is patently insufficient. On the other hand, termination of the restraint

---

[8] Moreover, as a solvent entity and as required by Cayman law, Ascentra has already paid all creditors in full except a handful with disputed claims. Robinson Dep. Tr. at 80:25-81:16. There is no evidence (because Ascentra refused to answer the questions) that SPGK's funds are necessary to pay disputed claims in full, as required.

will protect SPGK's interests which have been harmed by the imposition of a restraint without authority and that fails to meet the standards for its issuance.

**C.     The Restraint Termination Motion is Not Moot**

27. The JOLs' arguments that the Restraint Termination Motion is moot (Restraint Obj. at 23) are unavailing and makes no sense since SPGK's cash remains restrained. Moreover, these arguments are based upon the Stipulated Consent Order and Order Authorizing Disbursement entered August 29, 2023 (the "Stipulated Consent Order") [ECF No. 60] that the parties entered into at Planet Payment's request and that resulted in the Planet Payment Funds being into the Disputed Ownership Fund in the Court Registry Investment System (the "Disputed Ownership Fund"), the terms of which defeat the arguments.

28. The Stipulated Consent Order itself provides that "[n]othing in this Stipulated Consent Order shall constitute or be construed as an admission of any fact, right, obligation or liability, or the waiver or assertion of any legal position or argument, by any of the Parties, in this or any other proceeding." Stipulated Consent Order ¶ 7. The Planet Payment Funds were placed in the Disputed Ownership Fund at Planet Payment's request because Ascentra laid claim to them and Planet Payment understandably did not want to be in the middle. Under the circumstances, the JOLs' attempt to lever the placement of the Planet Payment Funds with the Court into some admission or waiver by SPGK directly conflicts with the parties' jointly agreed stipulation and should be dismissed out of hand.

29.     But even if the Court addressed the merits of the JOLs' arguments, they fail. In connection with the Stipulated Consent Order, the JOLs first contend that SPGK's stipulation

therein that the ownership of the Planet Payment Funds is "disputed,"[9] "directly contradicts SPGK's repeated assertions of its claimed ownership of the funds." Restraint Obj. at 23. This argument is nonsensical. There is obviously a dispute regarding the ownership of the funds. SPGK maintains, and has always maintained, that the funds belong to it, and the JOLs contend (which Ascentra did not for years prior to the appointment of a liquidator) that Ascentra is somehow entitled to them. If SPGK agreed that it had no rights to the Planet Payment Funds, there would be no dispute, the parties would not be before this Court, and there would be no need for a stipulation providing for the deposit of those funds into the Disputed Ownership Fund. The fact that SPGK has stipulated to the existence of a dispute does not constitute a reversal of the position that SPGK has consistently maintained in this matter. As SPGK stated in its Limited Objection and Reservation of Rights to Emergency Request for Provisional Relief dated November 1, 2021 ¶ 2 [ECF No. 15]:

> 2.  The Liquidators' characterization of the facts describing the Debtors' relationship with SPGK Cayman and the Debtors' purported rights to all of the income generated by SPGK Cayman are not accurate. However, the nature of those mischaracterizations are not relevant for purposes of the present Request for Provisional Relief and SPGK reserves all of their rights to correct the Liquidators' misstatements at the appropriate time and the appropriate forum. Suffice it to say, SPGK disputes the Liquidators' assertion of property interests in SPGK Cayman's income and the Planet Payment Funds.

30. Similarly, the JOLs' blithe proclamation that the deposit of the Planet Payment Funds into Disputed Ownership Fund moots the relief that SPGK requested in the Restraint Termination Motion because this will "protect the interest of all parties pending a decision regarding ownership on the merits," Restraint Obj. at 23, is also without merit. The fact that the Planet Payment Funds now are deposited in the Disputed Ownership Fund does not protect

---

[9] The Stipulated Consent Order provides: "Whereas, SPGK and the Foreign Representatives dispute ownership of the Planet Payment Funds." Stipulated Consent Order at 2.

SPGK's interests because SPGK is being denied the use of its own money. Moreover, the JOLs have not met the statutory basis for restraining the Planet Payment Funds, and SPGK's interests are not being protected if the funds to which it is contractually entitled are restrained without legal basis. If all that is necessary to restrain funds pursuant to chapter 15 is that they would be kept them somewhere "safe,"[10] Bankruptcy Code sections 1519(e) and 1521(e) — each of which dictate that such relief is subject to the "standards, procedures, and limitations applicable to an injunction." 11 U.S.C. §§ 1519(e), 1521(e)—would be rendered superfluous.

**D.    The Restraint of the Planet Payment Funds Was Outside This Court's Authority**

31.    As set forth in SPGK's opening brief, United States Courts, including this one, do not have authority to issue injunctions restraining assets in connection with claims for money damages for breach of contract. *Grupo Mexicano De Desarrollo v. All. Bond. Fund ("Grupo Mexicano")*, 527 U.S. 308, 333 (1999). SPGK established that because the only asserted basis for the restraint of the Planet Payment Funds was the Cancellation Agreement - a purported contract between SPGK and Ascentra[11] - this Court had no authority to restrain the Planet Payment Funds. *See* Restraint Termination Motion ¶¶ 33-41.

---

[10]    Funds in the Disputed Ownership Fund are not "safe." While the credit risk to funds in a commercial bank may be reduced, the United States' own credit rating has been lowering. Ryley Amond, *US credit rating outlook lowered to "negative" by Moody's — here's why consumers should be worried*, CNBC (Nov. 16, 2023), https://www.cnbc.com/select/moodys-lowers-us-credit-outlook-to-negative/. Moreover, SPGK is deprived of the freedom to invest its money as it sees fit.

[11]    When the JOLs sought the restraint and thereafter, they had not commenced a merits proceeding with respect to the Planet Payment Funds against SPGK in any court in any jurisdiction. It was not until October 4, 2023, that the JOLs filed their Statement of Claim [ECF No. 77 Ex. A]. While the JOLs submitted the Statement of Claim to this Court with respect to a discovery dispute, they have no additional briefing on the Restraint Termination Motion to address the Statement of Claim and have foreclosed all inquiry into the Statement of Claim. They cannot be heard now to say that the Statement of Claim can be considered to retrospectively justify the restraint.

32. To dodge *Grupo Mexicano*, the JOLs assert that "[i]n the case at hand, the Foreign Representatives have asserted both contractual and equitable claims to the funds." Restraint Obj. at 24. But when they sought the restraint, the JOLs did not know what their supposed "equitable claims" were, and to this day refuse to explain them to the Court.

33. It is insufficient for *Grupo Mexicano* purposes to simply talk vaguely about claims sounding in equity; rather:

> [A] court may only issue an asset-freeze injunction pursuant to an equitable claim . . . if the plaintiff demonstrates a 'nexus' between the assets she seeks to freeze and the specific equitable claim sought . . . . Thus, a plaintiff cannot simply include an equitable claim or a request for an equitable remedy in their complaint in order to obtain a broad injunction that would 'preserve funds that may later be used to satisfy an award of statutory damages' for the remaining legal claims. . . . The Court may only enjoin assets to the extent necessary to preserve the equitable claim.

*Suber v. VVP Servs., LLC*, No. 20-08177, 2021 U.S. Dist. LEXIS 128427, at *5 (S.D.N.Y. July 9, 2021). *See also Corp. Comm'n of the Mille Lacs Band of Ojibwe Indians v. Money Ctrs. of Am., Inc.*, 915 F. Supp. 2d 1059, 1062-63 (D. Minn. 2013) ("'sprinkling' a bit of equity on a suit at law for money damages" insufficient to avoid requirements of *Grupo Mexicano* in a case where both legal and equitable claims are asserted; the court must focus on essence of action and strength of the alleged equitable interest). That is, the JOLs must show that they are specifically entitled to the Planet Payment Funds rather than make a claim for generalized money damages.

34. The JOLs have not shown and cannot show (and have refused to testify concerning), the requisite nexus between the Planet Payment Funds and any generalized equitable claim. Accordingly, this Court does not have the authority to restrain those funds.[12]

---

[12] The *Grupo Mexicano* holding applies to bankruptcy courts. *See Marcus v. Las Uvas Valley Dairies (In re Las Uvas Valley Dairies)*, No. 17-12356-t11, 2019 Bankr. LEXIS 1883, at *15 (Bankr. D.N.M. June 19, 2019). The cases cited by the JOLs, *see* Restraint Obj. at 24-25, are inapposite. In *Rubin v. Pringle (In re Focus Media Inc.)*, 387 F.3d 1077 (9th Cir. 2004), the

*(footnote continued)*

# III.
# CONCLUSION

For the reasons set forth herein and in SPGK's moving papers, the Court should terminate the restraint on the SPGK Planet Payment Funds and grant such other and further relief that it deems just and proper.

Dated: March 29, 2024
New York, New York

>Respectfully submitted,
>
>PACHULSKI STANG ZIEHL & JONES LLP
>/s/ Jeffrey M. Dine
>Robert J. Feinstein
>Bradford J. Sandler
>John A. Morris
>Beth E. Levine
>Jeffrey M. Dine
>780 Third Avenue, 34th Floor
>New York, New York 10017
>Telephone:    (212) 561-7700
>Facsimile:    (212) 561-7777
>E-Mail:    rfeinstein@psjlaw.com
>            bsandler@pszjlaw.com
>            jmorris@pszjlaw.com
>            blevine@pszjlaw.com
>            jdine@pszjlaw.com
>
>*Counsel for Shang Peng Gao Ke Inc. SEZC and SPGK Pte Ltd.*

---

claims at issue were fraudulent conveyance claims which had been explicitly excepted in *the Grupo Mexicano* decision and constructive trust claims which were held to be equitable in nature. *Id*. at 1084-85. And in *In re Owens Corning*, 419 F.3d 195 (3d. Cir. 2005), the issue before the court was whether pursuant to *Grupo Mexicano*, the bankruptcy court had the power to grant substantive consolidation, a remedy that the Third Circuit panel specifically held was "an equitable remedy," *id*. at 208, and one that was specifically authorized by Bankruptcy Code § 1123(a)(5)(c). *Id*. at 208 n.14. Where, as here, (1) the bulk of the claims asserted in the Statement of Claim appear to seek money damages and (2) there has been no demonstrated nexus between the purportedly equitable claims and the restraint on the Planet Payment Funds, this Court has no authority to order the restraint.