Robert J. Feinstein
Bradford J. Sandler
John A. Morris
Beth E. Levine
Jeffrey M. Dine
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 34th Floor
New York, New York 10017
Telephone:    (212) 561-7700
Facsimile:    (212) 561-7777
E-Mail:        rfeinstein@pszjlaw.com
               bsandler@pszjlaw.com
               jmorris@pszjlaw.com
               blevine@pszjlaw.com
               jdine@pszjlaw.com

*Counsel for Shang Peng Gao Ke Inc. SEZC and SPGK Pte Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>ASCENTRA HOLDINGS, INC. (in Official Liquidation),<br><br>Debtor in a<br>Foreign Proceeding.[1] | Case No. 21-11854-dsj<br><br>Chapter 15 |

**REPLY DECLARATION OF JEFFREY M. DINE IN FURTHER SUPPORT
OF MOTION OF SHANG PENG GAO KE INC. SEZC AND SPGK PTE LTD.
PURSUANT TO 11 U.S.C. § 1522(c) TO TERMINATE RESTRAINT**

I, Jeffrey M. Dine, declare as follows:

1.      I am an attorney with the law firm of Pachulski Stang Ziehl & Jones LLP

("PSZJ"), with offices located at 780 Third Avenue, 34th Floor, New York, New York 10017, and

with other offices in Texas, California, and Delaware.

---

[1]    The Debtor's company registration number is 283719.  The Debtor's registered office is c/o JTC (Cayman) Ltd., 94 Solaris Avenue, Second Floor, Camana Bay, PO Box 30745, Grand Cayman, Cayman Islands, KY1-1203.

2. PSZJ is counsel to Shang Peng Gao Ke Inc. SEZC ("SPGK Cayman") and SPGK Pte Ltd. ("SPGK Singapore", and together with SPGK Cayman, "SPGK") in the above-captioned chapter 15 case.

3. I am duly admitted to practice law in, among other places, the State of New York and the United States District Court for the Southern District of New York.

4. I submit this reply declaration in further support of the *Motion of Shang Peng Gao Ke Inc. SEZC and SPGK Pte Ltd. Pursuant to 11 U.S.C. § 1522(c) to Terminate Restraint* (the "Motion").

5. A copy of the transcript of the deposition of Graham Robinson, taken February 29, 2024, is attached as **Exhibit 1**.

6. A copy of the Register of Directors and Officers and organizational chart of Ascentra Holdings Inc., marked as Exhibit 2 at Mr. Robinson's deposition, is attached hereto as **Exhibit 2**.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: March 29, 2024
  New York, New York

       */s/ Jeffrey M. Dine*
       Jeffrey M. Dine

# EXHIBIT 1

## Page 1

```
 1    IN THE UNITED STATES BANKRUPTCY COURT
 2    FOR THE SOUTHERN DISTRICT OF NEW YORK
 3    -------------------------------------x
 4    In re
 5    ASCENTRA HOLDINGS, INC. (In Official
 6    Liquidation),              Chapter 15
 7                             Case No.21-11854(DSJ)
 8
 9            Debtor in a
10            Foreign Proceeding.
11    -------------------------------------x
12
13
14            VIDEOTAPED 30(b)(6) DEPOSITION
15                      OF
16            ASCENTRA HOLDINGS, INC.
17      By:  GRAHAM ROBINSON, Corporate Representative
18              New York, New York
19            Thursday, February 29, 2024
20
21
22
23
24    Reported by:
      Frank J. Bas, RPR, CRR
25    Job No. J10806182
```

## Page 2

```
 1
 2
 3                  February 29, 2024
 4                  9:38 a.m. EST
 5
 6        Videotaped 30(b)(6) Deposition of ASCENTRA
 7    HOLDINGS, INC., by GRAHAM ROBINSON, Corporate
 8    Representative, held at the offices of Pachulski Stang
 9    Ziehl & Jones, 780 Third Avenue, New York, New York,
10    before Frank J. Bas, a Registered Professional
11    Reporter, Certified Realtime Reporter, and Notary
12    Public of the State of New York.
13
14
15
16
17
18
19
20
21
22
23
24
25
```

## Page 3

```
 1    A P P E A R A N C E S :
 2
 3    PILLSBURY WINTHROP SHAW PITTMAN LLP
      Attorneys for Petitioners
 4        31 West 52nd Street
          New York, New York 10019
 5
      BY:  HUGH M. McDONALD, ESQ.
 6        (hugh.mcdonald@pillsburylaw.com)
          JOHN A. PINTARELLI, ESQ.
 7        (john.pintarelli@pillsburylaw.com)
 8
 9    CAMPBELLS LLP
      JOLs Cayman Islands Counsel
10        Floor 4, Willow House, Cricket Square
          Grand Cayman KY1-9010
11        Cayman Islands
12    BY:  GUY COWAN, ESQ.
          (gcowan@campbellslegal.com)
13
          KATIE LOGAN, ESQ.(Via Zoom)
14        (klogan@campbellslegal.com)
15
16    BLAIR LEAHY KC (Via Zoom)
      For Joint Liquidators of Ascentra Holdings
17        20 Essex St. Chambers
          London, England, United Kingdom
18        (bleahy@twentyessex.com)
19
20
21
22
23
24
25
```

## Page 4

```
 1    A P P E A R A N C E S :
 2
      PACHULSKI STANG ZIEHL JONES LLP
 3    Attorneys for SPGK Pte. Ltd.
          780 Third Avenue, 34th Floor
 4        New York, New York 10017
 5    BY:  JOHN A. MORRIS, ESQ.
          BETH E. LEVINE, ESQ.
 6        JEFFREY DINE, ESQ.
          (jmorris@pszjlaw.com)
 7        (blevine@pszjlaw.com)
          (jdine@pszjlaw.com)
 8
 9
10    HARNEY WESTWOOD & RIEGELS
          3rd Floor, Harbour Place
11        103 South Church Street
          Grand Cayman
12        PO Box 10240 KY1-1002
          Cayman Islands
13
      BY:  CAITLIN MURDOCK, ESQ.
14        (caitlin.murdock@harneys.com)
15
      ALSO PRESENT:
16    DMITRY ZVONKOV, Videographer
      RYUNOSUKE "LUKE" YOSHIDA
17
18    (APPEARING VIA ZOOM):
19    NIENKE LILLINGTON, Campbells
      SUI HUNG YEUNG, Harneys
20    ALIANA DODDS, Campbells
      MINNA WU, Harneys
21    KELSEY SABINE, Harneys
22
23
                              - o0o -
24
25
```



Page 5

1        G. ROBINSON
2        THE VIDEOGRAPHER:  We are on the
3   record.  Today's date is February 29,
4   2024.  The time on the video is
5   9:38 a.m.
6        This is video 1 in the deposition
7   of Graham Robinson In Re Ascentra
8   Holdings, Inc., in the U.S. Bankruptcy
9   Court, Southern District of New York.
10  Case No. 21-11854(DSJ).
11       This deposition is taking place at
12  780 Third Avenue, New York, New York.
13  The videographer is Dmitry Zvonkov, the
14  court reporter is Frank Bas, both with
15  Esquire.
16       Will counsel please identify
17  themselves for the record.
18       MR. MORRIS:  John Morris, Pachulski
19  Stang Ziehl & Jones, for SPGK.
20       THE COURT REPORTER:  Just the main
21  players, that's fine.
22       MR. McDONALD:  Hugh McDonald,
23  Pillsbury Winthrop, for the witness,
24  Mr. Robinson.
25       THE VIDEOGRAPHER:  Will the

Page 6

1        G. ROBINSON
2        reporter please swear in the witness.
3                — — —
4
5   GRAHAM ROBINSON,
6   called as a witness, having been first duly
7   sworn by a Notary Public, was examined and
8   testified
9   as follows:
10  EXAMINATION BY
11  MR. MORRIS:
12       Q.  Good morning, Mr. Robinson.
13       A.  Good morning.
14       Q.  My name is John Morris.  I'm an
15  attorney at Pachulski Stang Ziehl & Jones, and
16  we represent SPGK in connection with the
17  Ascentra Chapter 15 proceeding.  Thank you
18  very much for coming to New York.
19       Do you understand that we're here
20  for your deposition today?
21       A.  Yes.
22       Q.  And have you ever been deposed
23  before, sir?
24       A.  Yes.
25       Q.  How many times?

Page 7

1        G. ROBINSON
2        A.  Once.
3        Q.  And how long ago was that?
4        A.  Good question.  I would say 2018.
5        Q.  And was it in a personal capacity
6   or in a professional capacity?
7        A.  Professional capacity.
8        Q.  Was it in the United States or was
9   it elsewhere?
10       A.  In the United States.
11       Q.  Okay.  So I don't know how much of
12  that you remember, it's six years ago, but
13  really general ground rules:
14       I'm not here to trick you.  I'm
15  going to ask you a series of questions.  It's
16  very important that you allow me to complete
17  my question before you begin your answer.
18       Is that fair?
19       A.  Understood.
20       Q.  And it's very important for me to
21  allow you to complete your answer before I
22  begin the next question.  And if I fail to do
23  that, will you let me know?
24       A.  Yes.
25       Q.  If at any time I ask a question

Page 8

1        G. ROBINSON
2   that you don't understand, will you let me
3   know that, too?
4        A.  Okay.
5        Q.  Okay.  If you need a break at any
6   time, feel free to let me know that, as long
7   as a question is not pending.
8        Is that fair?
9        A.  Understood.
10       Q.  Okay.
11       MR. McDONALD:  John, just before we
12  go on, it's not his personal deposition.
13  He's here as the foreign representative
14  of Ascentra.  You've noticed this --
15       MR. PINTARELLI:  Somebody's device
16  is on so it's echoing.  Is the Zoom
17  connected too?
18       (Pause in proceedings.)
19       MR. MORRIS:  I agree.  He's not
20  here in his individual -- as a personal
21  deposition.  He's here as a
22  representative of the estate.
23       MR. McDONALD:  Correct.  You've
24  noticed this as a 30(b)(6).  And he's
25  here as the foreign representative, as a



Page 9

1          G. ROBINSON
2    representative of the Ascentra Holdings
3    estate.
4          THE COURT REPORTER:  Can we go off
5    the record?
6          MR. MORRIS:  I think we should.
7          THE VIDEOGRAPHER:  Are we going off
8    the record?
9          THE COURT REPORTER:  Yes.
10         THE VIDEOGRAPHER:  This ends
11   media 1.  We're going off the record at
12   9:42.
13         (Pause in proceedings.)
14         THE VIDEOGRAPHER:  This begins
15   media 2.  On the record at 9:46.
16   BY MR. MORRIS:
17    Q.   Okay.  Back on the record.
18         Mr. Robinson, you serve as one of
19   the joint official liquidators for an entity
20   called Ascentra Holdings, Inc., is that
21   correct?
22    A.   Yes.
23    Q.   Okay.  When did you become a
24   liquidator of that entity?
25    A.   A voluntary liquidator or official

Page 10

1          G. ROBINSON
2    liquidator?
3    Q.   Let's start with voluntary.
4    A.   That was the 1st of June 2021, I
5    believe.
6    Q.   And you became the official
7    liquidator in September?
8    A.   17th of September 2021.
9    Q.   Okay.  How did you come to be
10   the voluntary liquidator for Ascentra
11   Holdings, Inc.?
12    A.   I was appointed via the shareholder
13   resolutions.
14    Q.   And do you recall who the
15   shareholders were?
16    A.   Of Ascentra Holdings?
17    Q.   Yes, sir.
18    A.   I do, yes.
19    Q.   And who were they at the time that
20   you were appointed?
21    A.   I am slightly uncertain whether
22   under Cayman law you would be entitled to know
23   who the shareholders of Ascentra are.
24    Q.   Are you not going to tell me?
25    A.   I'm happy to tell you.  But I've

Page 11

1          G. ROBINSON
2    got --
3          MR. McDONALD:  Can we --
4          MR. PINTARELLI:  Graham, it's okay
5    to answer.  All of the information is
6    public.  It's in the public filing in
7    the U.S., verified petitions, so it's
8    okay.
9          THE WITNESS:  It's in the public
10   filing, okay.
11    Q.   Before you answer I want to make
12   something really clear here.
13    A.   Yes.
14    Q.   So I am going to ask questions, and
15   from time to time Mr. McDonald might object.
16    A.   Understood.
17    Q.   And when he objects, sometimes he's
18   objecting because he's trying to preserve the
19   record because he thinks there's something
20   improper about the question from an
21   evidentiary point of view.  That gives me the
22   opportunity to either correct the question, if
23   I agree with him, or say I don't really care,
24   for whatever reason in my head, and you'll
25   answer the question.

Page 12

1          G. ROBINSON
2          He may also from time to time
3    specifically direct you not to answer a
4    question, and he and I will discuss why he's
5    doing that so I understand the basis for it.
6    If he doesn't direct you not to answer a
7    question -- and, you know, Mr. MacDonald will
8    give you the ultimate advice -- but as a
9    general matter, if he doesn't direct you not
10   to answer, you should answer the question.
11   Okay?
12         MR. MORRIS:  Is that fair, Hugh?
13         MR. McDONALD:  And to the extent
14   that you believe that your answer may
15   implicate the attorney-client privilege,
16   please let us know, and then we can
17   consult.  Okay?
18         MR. MORRIS:  Yes.
19    Q.   To be very clear, if in your head
20   you think the divulging -- you know, answering
21   a question will violate a duty or a law or an
22   obligation on your part, we'll take a break,
23   and you can consult with Mr. MacDonald and
24   we'll figure out how to go forward.  Okay?
25    A.   Okay.  Yes.

Page 13

1             G. ROBINSON
2       Q.   All right?
3            So let's go back to where I was.
4    Do you recall who the shareholders were who
5    appointed you as the voluntary liquidator?
6       A.   Of Ascentra Holdings?
7       Q.   Yes.  Sir.
8       A.   IR-P Holdings Limited.  INTL Media.
9    And the other shareholders are Jeffrey
10   Boshears.
11           Ryan -- I can't remember Ryan's
12   name.  It begins with K.
13           And Alex Olivia.  Or Oliva.  Oliva.
14      Q.   Do you know who the principal was
15   of IR-P who appointed you on behalf of that
16   entity?
17      A.   The liquidator of IR-P Holdings.
18      Q.   And what's that person's name?
19      A.   That person's name is me.
20      Q.   And when did you become the
21   liquidator of IR-P?
22      A.   I became the liquidator of --
23   voluntary liquidator of IR-P Holdings on the
24   28th of May 2021.
25      Q.   And so as the liquidator of IR-P,

Page 14

1             G. ROBINSON
2    you voted as that entity in its capacity as a
3    contributory to Ascentra Holdings, Inc. to
4    appoint you as the voluntary liquidator of
5    that company, is that right?
6       A.   Yes.
7       Q.   Do you know who the principal was
8    at -- I think you said INTL?
9       A.   (Nodding head affirmatively.)
10      Q.   -- who acted to appoint you the
11   voluntary liquidator of Ascentra Holdings,
12   Inc.?
13      A.   I do.  That was Marty Matthews.
14           THE COURT REPORTER:  Can you spell
15   the name?
16           THE WITNESS:  Marty.  It's Martin
17   Matthews, but he goes as Marty.
18   M-A-R-T-Y.
19      Q.   And how did it come to be; can you
20   recall the circumstances under which you
21   became the voluntary liquidator of Ascentra
22   Holdings, Inc.?  Do you recall who approached
23   you?
24      A.   I was approached by Campbells
25   attorneys in the Cayman Islands.

Page 15

1             G. ROBINSON
2       Q.   And did you have an understanding
3    at that time as to who Campbells represented?
4       A.   Yes.
5       Q.   And what was your understanding as
6    to who Campbells represented at the time they
7    approached you about the possibility of
8    serving as the voluntary liquidator?
9       A.   They represented, I believe, or
10   acted for Marty Matthews.
11      Q.   And who at Campbells first
12   approached you about this potential
13   engagement?
14      A.   Guy Cowan.
15      Q.   And do you recall what Mr. Cowan
16   told you about the potential engagement?
17           MR. McDONALD:  Objection.
18      A.   I would say that the conversations
19   I had with Guy Cowan would be privileged.
20      Q.   At the time that he approached you
21   had you been appointed --
22      A.   No.
23      Q.   -- in any capacity?
24           MR. McDONALD:  Let him finish the
25   question.

Page 16

1             G. ROBINSON
2            THE WITNESS:  Sorry.
3       Q.   At the time that he approached you
4    about the possibility of serving, is it your
5    contention that there was some type of
6    privilege relationship?
7            MR. McDONALD:  John, I've given you
8        a lot of latitude here.  We have
9        specific topics on the 30(b)(6).  He's
10       not here, again, in his personal
11       capacity.  He's here as the
12       representative to answer questions
13       concerning specific topics, not the
14       circumstances surrounding his
15       appointment.
16           MR. MORRIS:  Okay.
17           MR. McDONALD:  I've given you a lot
18       of latitude up until now, but you're
19       going beyond the scope of this
20       deposition.
21           MR. MORRIS:  Okay.  Is it your
22       position that I'm not allowed to ask any
23       questions unless they specifically
24       relate to the topics?
25           MR. McDONALD:  Yes.  We have



GRAHAM ROBINSON  30(b)(6)                    February 29, 2024
In Re Ascentra Holdings Inc.                         17—20

Page 17

1          G. ROBINSON
2    specific enumerated topics.  We've gone
3    over this with the Court.  Our objection
4    to four of them still stands, and we'll
5    deal with them when you get to them.
6    But I've given you a lot of latitude.
7    Again, he is not here in his individual
8    personal capacity.
9          MR. MORRIS:  I appreciate that.
10   And I am going to tell you our position
11   is that the 30(b)(6) topics are the
12   topics in which he had an affirmative
13   obligation to educate himself.  It
14   doesn't mean that I'm not allowed to ask
15   any question.  I've never in my life
16   heard in a 30(b)(6) deposition that I
17   can't ask a question.  Because otherwise
18   I would have had to put in the topic
19   "Background," how were you appointed?
20   Like, I might as well have put in my
21   outline.
22        But that's our position.  I have
23   heard your position.  I am going to ask
24   my questions, and you can feel free to
25   direct him not to answer any time you

Page 18

1          G. ROBINSON
2    want.
3        Is that fair?
4        MR. McDONALD:  Fair.
5        MR. MORRIS:  Okay.
6  DIR  Q.  Do you recall what Mr. Cowan told
7    you initially when he approached you about the
8    possibility of serving as the voluntary
9    liquidator of Ascentra?
10        MR. McDONALD:  Objection.
11        Direct the witness not to answer.
12   Q.  Are you going to follow your
13   counsel's advice?
14   A.  Yes.
15   Q.  Okay.  How long in advance of your
16   acceptance of the appointment did Mr. Cowan
17   approach you?
18        MR. McDONALD:  Objection to form.
19   A.  So when -- you're asking me when I
20   was first approached by Campbells prior to me
21   being appointed?
22   Q.  Yes, sir.
23   A.  This is from memory.  I would say
24   it would be in some period of time in 2020.
25  DIR  Q.  Okay.  Were you engaged by anybody

Page 19

1          G. ROBINSON
2    to do any work with respect to Ascentra prior
3    to the time you accepted the appointment of
4    voluntary liquidator on or about June 1, 2021?
5        MR. McDONALD:  Objection.
6        Direct the witness not to answer.
7    Q.  Are you going to follow your
8    counsel's advice?
9    A.  Yes.
10   Q.  Did you ever do any work on behalf
11   of Ascentra prior to June 1, 2021?
12   A.  No.
13  DIR  Q.  Did you have any relationship with
14   any of Ascentra's principals prior to the time
15   you accepted the appointment on June 1, 2021?
16        MR. McDONALD:  Objection.
17        Direct the witness not to answer.
18   Q.  Are you going to follow your
19   counsel's advice?
20   A.  Yes.
21   Q.  Did your work as the voluntary
22   liquidator of IR-P concern Ascentra in any way
23   prior to June 1, 2021?
24        MR. McDONALD:  Objection to form.
25   A.  You're going to have to rephrase

Page 20

1          G. ROBINSON
2    that question.  It doesn't make sense.
3    Q.  Okay.  I think you mentioned -- you
4    mentioned that you became the voluntary
5    liquidator of IR-P on May 28, 2021.
6    A.  Okay.
7    Q.  In your capacity as the voluntary
8    liquidator of that entity, did you do anything
9    that concerned Ascentra before you accepted
10   the appointment as Ascentra's voluntary
11   liquidator?
12        MR. McDONALD:  Objection to form.
13   Q.  And this is where you can answer.
14   If you understand.  If you don't, I can try
15   again.
16   A.  No.
17   Q.  Okay.  Do you know when --
18   withdrawn.
19        Has Ascentra -- withdrawn.
20        Is Ascentra a holding company?
21        MR. McDONALD:  Objection to form.
22        MR. MORRIS:  Withdrawn.
23   Q.  Do you understand what a holding
24   company is, sir?
25   A.  Yes.



**Page 21**

1          G. ROBINSON
2      Q.   What's your understanding of a
3   holding company?
4      A.   A holding company is a, what I
5   would say is the top co. of a group structure,
6   and underneath will be numerous entities, and
7   the shareholding flows eventually to the top
8   co.
9      Q.   Is it your understanding that
10  Ascentra was a holding company?
11     A.   I considered it a holding co., yes.
12     Q.   And it had certain entities that it
13  directly or indirectly owned that -- conducted
14  the operations of the Ascentra enterprise, is
15  that fair?
16     A.   Yes.
17     Q.   Okay.  I am going to use the phrase
18  "Ascentra" to refer to the whole enterprise;
19  not just Ascentra Holdings, Inc., but also to
20  its direct and indirect affiliates who carried
21  out the operations.
22          Is that fair?
23     A.   Yes.
24     Q.   And if I want to refer specifically
25  to the entity that filed the Chapter 15

**Page 22**

1          G. ROBINSON
2   proceeding in New York, I'll say "Ascentra
3   Holdings, Inc."
4      A.   Okay.
5      Q.   That's the distinction that I am
6   making.
7      A.   Okay.  Yes.
8      Q.   So with that distinction, do you --
9   is Ascentra engaged in any operations today?
10     A.   (No response.)
11          MR. MORRIS:  Withdrawn.
12     Q.   As of today is Ascentra engaged in
13  any operations other than those that are
14  attendant to its liquidation?
15          MR. McDONALD:  Objection to form.
16     A.   No.
17     Q.   Okay.  Do you know when Ascentra
18  ceased operating as a commercial entity?
19          MR. McDONALD:  Objection to form.
20     A.   My understanding is early 2021.
21  DIR  Q.   Do you know whether Ascentra
22  Holdings Inc. -- withdrawn.
23          Prior to that time, do you know
24  whether Ascentra Holdings, Inc. conducted
25  business in its own name or whether business

**Page 23**

1          G. ROBINSON
2   was conducted exclusively through the names of
3   the direct and indirect subsidiaries?
4          MR. McDONALD:  Objection.
5          I direct the witness not to answer.
6          (Reporter requests clarification.)
7      Q.   Are you going to follow counsel's
8   advice?
9      A.   Yes.
10     Q.   Okay.  Do you serve as a liquidator
11  for any entity that was directly or indirectly
12  controlled by Ascentra Holdings, Inc.?
13     A.   Yes.
14     Q.   Can you identify each entity?
15     A.   I am currently the official
16  liquidator of HEC International Limited.
17          I was the voluntary liquidator of
18  Interush (Singapore), which is now closed and
19  been dissolved.
20          And I believe I am the liquidator
21  of -- at the HEC International (Taiwan)
22  company.
23     Q.   Did you become -- apologies.
24          Was that in an official capacity or
25  as a voluntary liquidator?

**Page 24**

1          G. ROBINSON
2          MR. McDONALD:  Objection to form.
3      A.   For which entity?  Sorry.
4      Q.   Fair.  Let's take them one at a
5   time.
6      A.   Okay.
7      Q.   I think you said HGC?
8          MR. McDONALD:  HEC, I believe.
9      Q.   Did you ever serve as an official
10  liquidator for that entity?
11     A.   HEC International I was the
12  voluntary liquidator, and now I'm the official
13  liquidator.
14     Q.   And did that happen after you
15  became the official liquidator of Ascentra
16  Holdings, Inc. or before?
17     A.   After.
18     Q.   The same question with respect to
19  Interush (Singapore).  Before --
20          Withdrawn.  One question at a time.
21          Did you become -- did you ever
22  become an official liquidator of Interush
23  (Singapore)?
24     A.   No.
25     Q.   Did you serve as the voluntary

GRAHAM ROBINSON  30(b)(6)                           February 29, 2024
In Re Ascentra Holdings Inc.                                    25–28

Page 25

1           G. ROBINSON
2  liquidator of that entity?
3       A.  Yes.
4       Q.  And were you appointed voluntary
5  liquidator of that entity before or after you
6  became the official liquidator of Ascentra
7  Holdings, Inc.?
8       A.  After.
9       Q.  And then I think the last one was
10  the Taiwan entity, is that right?
11       A.  Correct.
12       Q.  Were you ever appointed the
13  official liquidator of that entity?
14       A.  I'm not trying to be difficult on
15  the question.  The Taiwanese liquidation
16  process is a very unusual and complicated one.
17  I would say it was -- it would be considered
18  as like an official liquidation, is how I
19  would look at it.  Yes.
20       Q.  I appreciate that.  I am going to
21  confess to having no familiarity with Taiwan
22  insolvency proceedings.
23       A.  I am still struggling, yes.
24       Q.  Did that occur after you were
25  appointed the official liquidator in the

Page 27

1           G. ROBINSON
2  just identified subject to a liquidation
3  proceeding in the Cayman Islands?
4       A.  Yes.
5       Q.  Which one?
6       A.  HEC International.
7       Q.  And in your capacity as the
8  official liquidator of that entity have you
9  declared that entity to be solvent, insolvent
10  or doubtful solvency?
11       A.  Solvent.
12       Q.  Do you recall when that entity was
13  placed into liquidation under the court
14  supervision of the Cayman Islands?
15       A.  7th of December 2021.
16       THE COURT REPORTER:  Can you say
17  the date again?
18       THE WITNESS:  7th of December 2021.
19       MR. MORRIS:  Okay.  I am going to
20  mark as Robinson exhibit 1 the amended
21  notice of deposition.
22       (Robinson Exhibit 1, Amended Notice
23  of Deposition of Ascentra Holdings, Inc.
24  was marked for identification.)
25  BY MR. MORRIS:

Page 26

1           G. ROBINSON
2  Ascentra Holdings, Inc. case?
3       A.  After.
4       Q.  Did the same people who appointed
5  you as the voluntary liquidator of Ascentra
6  Holdings, Inc. also appoint you as the
7  voluntary liquidator of the three entities you
8  just identified?
9       MR. McDONALD:  Objection to form.
10       MR. MORRIS:  Withdrawn.
11       Q.  Did the same people and entities
12  that you identified earlier as having
13  appointed you as the voluntary liquidator of
14  Ascentra Holdings, Inc. also appoint you as
15  the voluntary liquidator of the three entities
16  you just identified?
17       A.  No.
18       Q.  Who first appointed you the
19  voluntary liquidator of International Limited?
20       MR. McDONALD:  Objection to form.
21       Q.  If you recall.
22       A.  So say the question again?
23       Q.  You know what?  It's okay.  I'm
24  just going to move on.
25       Are any of the three entities you

Page 28

1           G. ROBINSON
2       Q.  Mr. Robinson, do you have exhibit 1
3  in front of you?
4       A.  Yes.
5       Q.  Okay.  Have you seen this before?
6       A.  I believe I have, yes.
7       Q.  Do you know what it is?
8       A.  I'm reading the title.  It says
9  Amended Notice of Deposition of Ascentra
10  Holdings, Inc.
11       Q.  Okay.  And if you can turn to --
12  the pages aren't numbered, but I think it's
13  the third page of the document, at the bottom
14  you'll see a heading "Amended Topics" --
15       A.  Yes.
16       Q.  -- that go on through the rest of
17  the document.
18       A.  Okay.
19       Q.  Have you seen those topics before?
20       A.  Yes.
21       Q.  And when did you see them for the
22  first time, if you recall?
23       A.  I don't -- from memory I couldn't
24  give you a specific date.  I know SPGK filed
25  its motion to terminate the recognition at the



Page 29

1        G. ROBINSON
2   end of June 2023, so it's going to be sometime
3   after that.  And I couldn't give you a
4   specific date.  I'm sorry.
5        Q.   Subject to whatever objections or
6   directions you received from counsel, are you
7   otherwise prepared to answer questions on the
8   topics set forth in exhibit 1?
9        A.   Yes.
10       Q.   Okay.  Did you do anything to
11  prepare for today's deposition?
12       A.   I did, yes.
13       Q.   What did you do?
14       A.   I met with my counsel yesterday in
15  New York.  And I also reviewed and kind of
16  refreshed my memory on past documents.  And
17  specific documents would be the status reports
18  filed in the Chapter 15 process; the two joint
19  official liquidator reports that have been
20  filed in the Cayman courts; my deposition --
21  not deposition.  My declaration that I filed
22  regarding the application for Chapter 15 back
23  in October 2021.
24        I reviewed the, our objection to
25  the motion to remove the restraint, which is

Page 30

1        G. ROBINSON
2   dated September 23.
3        And I also reviewed the amended
4   written statement of the claim that Ascentra
5   has filed against SPGK in the Cayman courts,
6   which is dated 11th of October 2023.
7        And I also looked at some old
8   financial kind of Excel spreadsheet documents
9   that we received from the company when we got
10  appointed.
11       Q.   What Excel spreadsheet documents
12  are you referring to?
13       A.   These are documents that we
14  obtained that -- at the beginning of your
15  appointment from Whinney, who was the account
16  manager, that does set out a summary of
17  creditors of Ascentra.
18       Q.   And did you rely on that Excel
19  spreadsheet to identify Ascentra Holdings,
20  Inc.'s creditors?
21       A.   It was one of the documents that
22  we -- we used.
23       Q.   Do you recall any other documents
24  that you reviewed in connection with your
25  preparation for today's deposition?

Page 31

1        G. ROBINSON
2        A.   Not -- no, not specific documents.
3        Q.   Did you speak with anybody who is
4   or purports to be a creditor in connection
5   with your preparation for today's deposition?
6        MR. McDONALD:  Objection to form.
7        A.   No.
8        Q.   Did you speak with anybody who is
9   or who claims to be a contributory to Ascentra
10  Holdings, Inc. in connection with the
11  preparation of your deposition?
12       A.   No.
13       Q.   Have you spoken with anybody, with
14  any person or entity, who represents --
15  withdrawn.
16       Going back to June 1, when you were
17  appointed the voluntary liquidator, and
18  thinking about the people who appointed you or
19  appointed you on behalf of corporate entities,
20  have you spoken with any of those people in
21  connection with today's deposition?
22       A.   No.
23       Q.   What do you do for a living, sir?
24       A.   I am an insolvency practitioner.
25       Q.   And do you work for a company?

Page 32

1        G. ROBINSON
2        A.   Yes.
3        Q.   What company do you work for?
4        A.   That is Crowe, which is C-R-O-W-E,
5   Cayman Limited.
6        Q.   And do you have a role or a title
7   or a position at Crowe Cayman Limited?
8        A.   Director.
9        Q.   When did you become a director at
10  Crowe?
11       A.   That was November 2019.
12       Q.   How long have you been affiliated
13  with Crowe?
14       A.   Since that date.
15       Q.   What does it mean to be an
16  insolvency practitioner?
17       A.   How long have you got?
18       What does it mean to be an
19  insolvency practitioner?
20       Q.   Mm-hmm.
21       THE COURT REPORTER:  "Yes"?
22  BY MR. MORRIS:
23       Q.   Yes.
24       A.   I am appointed official liquidator
25  or voluntary liquidator of Cayman entities.  I

Page 33

1           G. ROBINSON
2    also potentially assist companies with
3    financial matters.
4           Q.   And how long have you been an
5    insolvency practitioner?  When did you first
6    become one?
7           A.   Well, are you asking me when I
8    became licensed or when I -- how long have I
9    worked in insolvency matters?
10          Q.   We'll get to the license in a
11   moment.
12          A.   Okay.
13          Q.   When did you first start working in
14   the insolvency space?
15          A.   In 1993.
16          Q.   Can you describe for me generally
17   your educational background?
18          A.   Yes.  I'm obviously English, so
19   I've got O levels, A levels, and a degree.
20   And I also have accountancy qualifications,
21   but I'm not a chartered accountant.  And I
22   also have an insolvency qualification, formal
23   insolvency qualification, from the U.K.
24          Q.   So you're a chartered accountant?
25          A.   I am not a chartered accountant,

Page 34

1           G. ROBINSON
2    no.  I have accountancy qualifications, but I
3    am not a chartered accountant.
4           Q.   Okay.
5           THE COURT REPORTER:  Did you say O
6    level and A level?
7           THE WITNESS:  Yes.  O level and
8    then A level, yes.
9           Q.   And you have a license?
10          A.   I've got a -- yes, I have a
11   U.K. license through the Insolvency
12   Practitioners Association in the U.K.
13          Q.   When did you get that?
14          A.   I passed my qualification in 2000.
15   I got my license in 2008.
16          Q.   What does one need to do to obtain
17   a license?
18          A.   Short answer, certain amount of
19   hours worked and some exams that you need to
20   pass.
21          Q.   So is it fair to say that you
22   worked in the insolvency space for about 15
23   years before you obtained your license?
24          A.   Seven and eight is 15, yes.
25          Q.   Exactly.

Page 35

1           G. ROBINSON
2           Who were you employed by before you
3    joined Crowe in 2019?  Can you give me -- let
4    me back up.
5           From 1993, give me an overview of
6    your professional history and affiliations.
7           A.   I initially worked for a company
8    called Casson Beckman & Partners in
9    Manchester.
10          I left them and went to PwC,
11   PricewaterhouseCoopers.
12          I then left PricewaterhouseCoopers
13   and went to a company called RPG.
14          After RPGK I went to PKF.  After
15   PKF I went to Kroll, which is K-R-O-L-L.
16          I left Kroll in 2009 and went to
17   the Cayman Islands, where in the Cayman
18   Islands I worked for Robinson & Hunter until
19   2012.
20          I then went back to the U.K. in
21   2012.  I worked for myself and I also worked
22   for a company called BB Financial Services.
23          In 2014 I went back to the Cayman
24   Islands.  I then worked for Chris Johnson
25   Associates up until I started work for Crowe

Page 36

1           G. ROBINSON
2    Cayman Limited.
3           Q.   Okay.  When did you receive your
4    first appointment as an official liquidator in
5    the Cayman Islands?
6           A.   That would be two thousand and --
7    it's going to be late 2009 or early 2010.
8           Q.   Can you give me an estimate of how
9    many times you've been appointed an official
10   liquidator by the Cayman courts?
11          A.   Ten to 15.
12          Q.   And does that include the several
13   that you have mentioned today?
14          MR. McDONALD:  Objection to form.
15          A.   Yes.
16          Q.   Have you ever been appointed a
17   liquidator in any jurisdiction other than the
18   United Kingdom or the Cayman Islands?
19          A.   Well, the companies we referred to
20   today would be Singapore and Taiwan.  No.
21          Q.   Prior to this case have you ever
22   been involved in a Chapter 15 proceeding in
23   the United States?
24          A.   No.
25          Q.   I want to see if we can just make



Page 37

1           G. ROBINSON
2   sure that we have an understanding of kind of
3   where we started earlier with respect to the
4   corporate organization.  And I'm going to
5   just --
6           MR. MORRIS:  Let's mark as exhibit
7       2 a portion of a document that was filed
8       in the Chapter 7 -- Chapter 15
9       proceeding at Docket No. 77.  It's just
10      an organizational chart that I am going
11      to be focused on.
12          THE WITNESS:  Okay.
13          (Robinson Exhibit 2, Organizational
14      chart was marked for identification.)
15  BY MR. MORRIS:
16      Q.   I am going to represent to you that
17  we actually copied this from a filing I think
18  that originated in the Cayman Islands but that
19  was filed in New York.  I think it was part of
20  the complaint that was filed in the Cayman
21  Islands.
22          Have you seen this organizational
23  chart before?
24      A.   Yes.
25      Q.   And did you personally, in your

Page 38

1           G. ROBINSON
2   capacity as the official liquidator of
3   Ascentra Holdings, Inc., authorize it to be
4   filed on behalf of that entity?
5           MR. McDONALD:  Objection to form.
6       A.   Filed in which proceeding?
7       Q.   In the Cayman Islands.
8       A.   Yes.
9       Q.   And did you also authorize it to be
10  filed in the Chapter 15 proceeding in
11  New York?
12      A.   Yes.
13      Q.   To the best of your knowledge, is
14  this corporate organizational chart accurate?
15      A.   There is one error on this chart.
16      Q.   Can you just point that out to me,
17  please?
18      A.   The -- the shareholding in IR-P for
19  INTL Media has changed since this document has
20  been filed.
21      Q.   So I think you're referring to the
22  box that's below Martin Matthews and Mari
23  Matthews, is that right?
24      A.   Correct.  Yes.
25      Q.   Okay.  And can you describe for me

Page 39

1           G. ROBINSON
2   your understanding of what has changed?
3       A.   Basically, Mari Matthews holds her
4   50 percent shares in a separate entity.
5       Q.   Okay.  But she still now, instead
6   of directly, indirectly owns 50 percent of
7   International Media Holdings Inc. --
8   International Media Holdings, LLC; is that
9   your understanding?
10          MR. McDONALD:  Objection to form.
11      A.   She -- she doesn't own any -- she's
12  not a shareholder of INTL Media anymore.  But
13  she's a shareholder in her own right of IR-P
14  Holdings.
15      Q.   Okay.
16      A.   Through a separate entity to INTL.
17      Q.   Are there any other changes that
18  you're aware of?
19      A.   No.  That looks -- that looks okay.
20      Q.   Okay.  So now, just to make sure I
21  understood what you said earlier, if we look
22  at the chart, you'll see Ascentra Holdings,
23  Inc. is a Cayman Islands entity there; and
24  above that there are three shareholders, three
25  direct shareholders:  IR-P Holdings Inc.,

Page 40

1           G. ROBINSON
2   International Media Holdings, LLC, and then a
3   box called "Management and Related Parties."
4           Do I have that right?
5       A.   Yes.
6       Q.   And are those the people and the
7   entities that appointed you as the voluntary
8   liquidator back in June of 2021?
9       A.   Yeah.  I was appointed through the
10  shareholder resolutions.  Yes.
11      Q.   Yes.  And IR-P Holdings, Inc.
12  (Cayman Islands), that's one that you
13  mentioned earlier is in liquidation, is that
14  right?
15      A.   Yes.
16      Q.   And that's a solvent -- that's
17  subject to a solvency certificate, is that
18  right?
19          MR. McDONALD:  Objection to form.
20      A.   Yes.
21      Q.   Interush I think you said has been
22  dissolved, is that right?
23      A.   Interush -- sorry.  Interush
24  (Singapore), yes.
25      Q.   Yes.  Sorry for the ambiguity.  Let



GRAHAM ROBINSON  30(b)(6)                                February 29, 2024
In Re Ascentra Holdings Inc.                                      41–44

Page 41

1         G. ROBINSON
2    me ask the question again.
3         Interush Singapore has been
4    dissolved, is that right?
5    A.   Yes.
6    Q.   Okay.  And HEC International
7    Company Limited in Taiwan, that's also subject
8    to liquidation, correct?
9    A.   Yes.
10   Q.   Okay.  HEC International Limited
11   Cayman Islands, that's also subject to
12   judicially supervised liquidation proceedings
13   in the Cayman Islands, right?
14   A.   Yes.
15   Q.   And you serve as the official
16   liquidator of that entity?
17   A.   Yes.
18   Q.   And that entity is also subject to
19   a solvency certificate, correct?
20        MR. McDONALD:  Object to the form.
21   A.   Yes.
22   Q.   I think there's a statement in
23   documents somewhere that HEC International,
24   Limited Singapore branch has stopped doing
25   business.

Page 42

1         G. ROBINSON
2         Is my recollection about that
3    correct?
4         MR. McDONALD:  Object to the form.
5    A.   That is correct.
6    Q.   Is that entity the subject of any
7    liquidation proceeding or has it simply ceased
8    doing business?
9    A.   It's not -- it's not in a
10   liquidation process.  And that branch has been
11   closed.
12   Q.   So am I right that all of the
13   entities that are directly beneath Ascentra
14   Holdings, Inc. Cayman Islands served as
15   operating companies of Ascentra Holdings,
16   Inc. before it ceased to do business in
17   early 2021?
18        MR. McDONALD:  Objection to form.
19   A.   They -- they -- I would -- they
20   were part -- they were part of the group and I
21   am sure at some time over the years --
22        (Reporter requests clarification.)
23   A.   Those entities underneath Ascentra
24   are part of the group, yes.  And they've all
25   been part of the operational business of

Page 43

1         G. ROBINSON
2    Ascentra over the years in one way, shape or
3    form.
4    Q.   On the lower left-hand corner of
5    this organizational chart there's four
6    entities under the name Ted Sanders.
7         Do you see that?
8    A.   Yes.
9    Q.   Do you have an understanding of who
10   Mr. Sanders is?
11   A.   Yes.
12   Q.   What's your understanding of who
13   Mr. Sanders is in relation to this
14   organizational chart?
15   A.   Mr. Sanders was the former CFO of
16   Ascentra.
17   Q.   Did he ever serve as a director, to
18   the best of your knowledge?
19   A.   Of Ascentra?
20   Q.   Let me ask a better question.
21        Do you know whether Mr. Sanders
22   ever served as a director of Ascentra
23   Holdings, Inc.?
24   A.   No.
25   Q.   Do you know if Mr. Sanders ever

Page 44

1         G. ROBINSON
2    served as a director -- withdrawn.
3         I am going to refer to the one,
4    two, three, four, five, six -- seven entities
5    below the Ascentra Holdings, Inc. box as
6    "Ascentra's subsidiaries."
7         Is that fair?
8    A.   Okay.
9    Q.   Do you know whether Mr. Sanders
10   ever served as the director of any of
11   Ascentra's subsidiaries?
12   A.   From my memory, no.
13   Q.   Do you know what period of time
14   Mr. Sanders served as the CFO of Ascentra?
15   A.   I know it was -- I don't know the
16   exact start date.  I know he was involved from
17   2018 up until his resignation in May 2021, and
18   that he could possibly be involved in the
19   group before April 2018.  Sorry, I can't fully
20   recall.
21   Q.   Do you know, did he serve as the
22   CFO of Ascentra Holdings, Inc.?
23   A.   Of Ascentra.
24   Q.   And when you use the phrase
25   "Ascentra" in the context of Mr. Sanders'



Page 45

1          G. ROBINSON
2  role, what do you mean?
3          MR. McDONALD:  Object to the form.
4      A.  Can you just explain the question
5  better for me, please?
6      Q.  Yes.  I'll try again.
7          You've got Ascentra Holdings,
8  Inc. and then you've got the seven
9  subsidiaries.  Right?
10     A.  Mm-hmm.  Yes.
11     Q.  Okay.  Let's take them separately.
12         Do you know whether Mr. Sanders
13  ever served as the CFO of any of the seven
14  subsidiaries?
15         MR. McDONALD:  Objection to form.
16     A.  In my view, Mr. Ted Sanders was the
17  CFO of Ascentra group, and that included
18  Ascentra Holdings, all the subsidiaries, and
19  also SPGK.
20         MR. McDONALD:  John, you're going
21     way off topic here.  Can you please
22     explain how any of this line of
23     questioning relates to any of the topics
24     that are set forth in the deposition
25     notice?

Page 46

1          G. ROBINSON
2          MR. MORRIS:  I will tell you that
3  it goes to, number 1, the likelihood of
4  success on the merits and the
5  relationship of these entities.  And
6  number 2, it's background.
7          And if you want to direct him not
8  to answer, you're free to do that at any
9  time.  I don't think this stuff is
10  controversial, but you'll defend your
11  witness as you wish.
12         MR. McDONALD:  It goes to number 1,
13  the certificate of solvency?
14         MR. MORRIS:  No, the last four.
15  The last four questions.  Likelihood of
16  success on the merits and facts relating
17  thereto.
18         MR. McDONALD:  Again, we're giving
19  you some latitude, but it's going to be
20  very limited.
21         MR. MORRIS:  You'll do what you do,
22  and I'll do what I do, and we'll do it
23  respectfully.
24         MR. McDONALD:  Okay.
25     Q.  Do you know whether Ascentra ever

Page 47

1          G. ROBINSON
2  had a direct or indirect ownership interest in
3  any of the four entities under Mr. Sanders'
4  name?
5          MR. McDONALD:  Objection to form.
6      A.  The two entities at the bottom
7  there, AOS Property Ventures, and they
8  obviously -- it's got formerly known as
9  Interush, Inc., and then there's also Interush
10  International, they may have been set over the
11  side of the structure at one time, but I can't
12  recall from memory.
13     Q.  Okay.  Is it fair to say that this
14  chart doesn't depict any direct or indirect
15  relationship between any of the four entities
16  under Mr. Sanders' names and any of the
17  Ascentra Holdings entities, is that fair?
18         MR. McDONALD:  Objection to form.
19     A.  Just say that again for me, please?
20     Q.  Yeah.  I am talking specifically
21  now of ownership.
22     A.  Okay.
23     Q.  Okay.  Do you have any reason to
24  believe, as you sit here today, that Ascentra
25  Holdings, Inc. or any of its subsidiaries ever

Page 48

1          G. ROBINSON
2  had a direct or indirect ownership interest in
3  any of the four entities under Mr. Sanders'
4  name?
5          MR. McDONALD:  Objection; form.
6      A.  Like I said, they might have had
7  some ownership of these two at one time
8  previously, but I don't believe they had any
9  direct or indirect of Asian Offshore Services
10  and SPGK International.
11     Q.  And what's the basis for that
12  belief?
13     A.  Just -- just from I know the names
14  Interush, and I believe that they might --
15  just from memory -- they might have been part
16  of a bigger group structure that Ascentra had
17  prior to -- prior to 2016.
18     Q.  Are you aware of any facts
19  concerning either how, when or why they would
20  have ceased to have an ownership interest in
21  those two entities at the bottom of the
22  left-hand corner?
23         MR. McDONALD:  Objection to form.
24     A.  I do have a memory that they --
25  that Ted could have -- Ted Sanders, sorry,



Page 49

1          G. ROBINSON
2   could have purchased those companies from
3   Ascentra.
4       Q.   Do you have any understanding or
5   memory as to when that may have happened?
6       A.   No.  I've got no memory.
7       Q.   In the upper left-hand portion of
8   the document you've got Mr. Yoshida, is that
9   right?
10      A.   Yes.
11      Q.   And then below him you've got two
12  entities, Scuderia Bianco Limited --
13      A.   Yes.
14      Q.   -- and Lequios Holdings?  Lequios?
15      A.   Lequios?
16      Q.   I'll go with your --
17      A.   I'm not good at any of those fancy
18  words.
19      Q.   And then there's also a third
20  entity called Growth Today Inc.
21           Do I have that right?
22      A.   Yes.  I see them.
23      Q.   Okay.  Do you know if Ascentra
24  Holdings, Inc. or any of its subsidiaries ever
25  had a direct or indirect ownership interest in

Page 50

1          G. ROBINSON
2   Scuderia Bianco Limited?
3           MR. McDONALD:  Objection to form.
4       A.   No.
5       Q.   Okay.  Do you know if Ascentra
6   Holdings, Inc. or any of its subsidiaries ever
7   had a direct or indirect ownership interest in
8   Lequios Holdings?
9       A.   No.
10      Q.   Do you know if Ascentra Holdings,
11  Inc. or any of its subsidiaries ever had a
12  direct or indirect ownership interest in
13  Growth Today Inc.?
14          MR. McDONALD:  Objection to form.
15      A.   Just so I'm clear, what do you mean
16  by "direct or indirect ownership"?
17      Q.   That they were -- that they held
18  shares in, that they held equity, that they
19  were a contributory, either in their own name
20  or through another entity or person that they
21  controlled.
22          MR. McDONALD:  I'm going to object
23      and direct the witness not to answer.
24      The ownership and interrelationship of
25      these entities is subject to the

Page 51

1          G. ROBINSON
2   proceeding in the Cayman Islands, and
3   SPGK has answered that complaint, we
4   have responded.  And to the extent that
5   there is any interrelationship between
6   these entities, which we allege there
7   is, will be dealt with in connection
8   with those proceedings.
9           MR. MORRIS:  I'm not asking if
10      there's a relationship between the two.
11      I'm asking a very narrow question.  Let
12      me just ask -- let me just ask --
13          MR. McDONALD:  Can you just
14      rephrase that question, please?
15          MR. MORRIS:  Yes, I appreciate
16      that.
17  BY MR. MORRIS:
18      Q.   To the best of your knowledge, sir,
19  has Ascentra Holdings, Inc. or any of its
20  subsidiaries ever had a direct or indirect
21  ownership interest in Growth Today Inc.?
22      A.   What do you mean by "ownership
23  interest"?
24  DIR Q.   That they -- that they were an
25  owner of that entity.  That they held some

Page 52

1          G. ROBINSON
2   portion -- all or some portion of the shares.
3       A.   Shares.
4           MR. McDONALD:  Objection.
5      I direct the witness not to answer.
6           MR. MORRIS:  What's the basis for
7      the direction?  Just so the record's
8      clear.
9           MR. McDONALD:  That is a subject to
10      the litigation in the Cayman Islands,
11      and as we have stated to the Court, we
12      are not litigating the Cayman proceeding
13      here as part of this 30(b)(6).
14          MR. MORRIS:  You've made that
15      argument.  I just want to make my
16      record.
17          MR. McDONALD:  I just want to be
18      perfectly clear.
19          MR. MORRIS:  I appreciate that.
20          MR. McDONALD:  The
21      interrelationship between Growth Today,
22      its ultimate switch in ownership and the
23      relationship between its prior principal
24      and the principals of Ascentra are being
25      litigated in the Cayman Islands.

Page 53

```
1              G. ROBINSON
2      MR. MORRIS: So this is my
3   opportunity -- because I want to make my
4   record, too -- this is my opportunity to
5   inquire as to the facts that relate to
6   the likelihood of success on the merits
7   in New York. And I appreciate your
8   argument, and I know you made it to the
9   New York court and here we are.
10     So I believe that the answer to
11  this question goes to the likelihood of
12  success of the merits, which is why I am
13  asking it, to be clear.
14     And with that, if you are going to
15  direct him not to answer, we'll just
16  move on.
17     MR. McDONALD: I am directing him
18  not to answer.
19     MR. MORRIS: Okay. I am just going
20  to reserve my right, for all of the
21  questions that you direct him not to
22  answer, to either seek -- because I want
23  to be clear -- to seek a preclusion
24  order in New York from Ascentra offering
25  any evidence that would have been
```

Page 54

```
1              G. ROBINSON
2   responsive to these questions in the
3   New York proceeding, or to compel
4   further deposition.
5      So those are the two things that
6   I'm reserving my right for, and we'll
7   just go forward.
8      MR. McDONALD: And the judge made
9   it very clear that if you're inquiring
10  into the success of the Cayman
11  proceeding, that is privileged and that
12  goes beyond the scope of this
13  deposition. He made that crystal clear
14  at the last hearing, and we reserve our
15  rights as well.
16     MR. MORRIS: Okay. I don't think
17  he said anything about privilege.
18     MR. McDONALD: He did.
19     MR. MORRIS: I don't think he said
20  anything about privilege, but okay.
21     MR. McDONALD: John, he did. He
22  said if the question is basically do you
23  think you're going to win Cayman, and
24  all of these are going to that, he said
25  that's privileged. He was very clear.
```

Page 55

```
1              G. ROBINSON
2   BY MR. MORRIS:
3   DIR  Q.  Sir, do you know if Ascentra
4   Holdings, Inc. or any of its subsidiaries ever
5   had a contract with Growth Today Inc. or any
6   of its subsidiaries?
7          MR. McDONALD: Objection.
8       I direct the witness not to answer.
9      Q.  Are you going to follow your
10  counsel's advice?
11     A.  Yes.
12     Q.  Do you know if Ascentra Holdings,
13  Inc. or any of its subsidiaries ever commenced
14  legal proceeding to enforce any agreement that
15  it contended it had with Growth Today or any
16  of its subsidiaries?
17         MR. McDONALD: Objection to form.
18     A.  Just repeat the question, please?
19     Q.  Yes, I appreciate that. I could do
20  better.
21     Prior to the commencement of the
22  Ascentra Holdings, Inc. Cayman Islands
23  liquidation proceeding, are you aware of any
24  enforcement action that Ascentra Holdings,
25  Inc. or any of its subsidiaries took against
```

Page 56

```
1              G. ROBINSON
2   Growth Today Inc. or any of its subsidiaries
3   with respect to any contract?
4      A.  No.
5      Q.  Okay. Thank you.
6      Do you know if Ascentra Holdings,
7   Inc., as distinguished from the subsidiaries,
8   do you know if Ascentra Holdings, Inc. ever
9   provided any goods or services to Growth Today
10  Inc. or any of Growth Today Inc.'s
11  subsidiaries?
12         MR. McDONALD: Objection to form.
13     A.  Just say the question again,
14  please?
15     Q.  Sure. Do you know whether Ascentra
16  Holdings, Inc. -- withdrawn.
17     Prior to the commencement of the
18  Cayman Islands liquidation proceedings do you
19  know whether Ascentra Holdings, Inc. ever
20  provided goods and services to Growth Today
21  Inc. or any of the three subsidiaries listed
22  underneath it in this organizational chart?
23     A.  And you're asking me for
24  specifically Ascentra Holdings, Inc., or --
25     Q.  Correct.
```

GRAHAM ROBINSON  30(b)(6)                     February 29, 2024
In Re Ascentra Holdings Inc.                            57—60

Page 57

1           G. ROBINSON
2      A.   -- or not the Ascentra group?
3      Q.   Exactly.
4           MR. McDONALD:  Objection to form.
5      A.   Then the answer is no.
6   DIR  Q.   Okay.  Do you know if Growth Today
7   or any of the entities beneath Growth Today
8   ever paid money to a third party for the
9   benefit of Ascentra Holdings, Inc. or any of
10   its subsidiaries?
11          MR. McDONALD:  Objection.
12      I direct the witness not to answer.
13          MR. MORRIS:  Can I ask him if he
14      knows the answer to the question?  I'm
15      going to ask him the question, and then
16      you can decide.
17   DIR  Q.   Without divulging the answer to the
18   question, just yes or no, do you know whether
19   Growth Today Inc. or any of the three entities
20   beneath it ever paid any third party for the
21   benefit of Ascentra Holdings, Inc. or any of
22   its subsidiaries?  Just yes or no.
23          MR. McDONALD:  I'm still going to
24      direct him not to answer.
25          MR. MORRIS:  You're not even going

Page 58

1           G. ROBINSON
2   to let me know if he knows the answer to
3   the question?
4           MR. McDONALD:  Yes.
5           MR. MORRIS:  Okay.
6       Q.   Are you going to follow counsel's
7   advice?
8       A.   Yes.
9           MR. McDONALD:  John, when you come
10      to an appropriate point, can we take a
11      break?
12          MR. MORRIS:  Yes.  Now would be
13      great.
14          MR. McDONALD:  Is that okay?
15          MR. MORRIS:  Yes.  So we agree he's
16      under oath.
17          MR. McDONALD:  Yes.
18          MR. MORRIS:  No communication with
19      the witness while the deposition
20      continues.  But I'm happy to take a
21      break.
22          MR. McDONALD:  Thank you.
23          MR. MORRIS:  You bet.
24          THE VIDEOGRAPHER:  This ends
25      unit 2.  We're off the record at 10:44.

Page 59

1           G. ROBINSON
2           (Recess taken.)
3           THE VIDEOGRAPHER:  This begins
4   unit 3.  We're on the record at 10:56.
5           MR. MORRIS:  I am going to mark as
6      the next exhibit, which I think is
7      number 3, Robinson number 3, a document
8      that was previously marked as Hernandez
9      exhibit 5.  And it's entitled Joint
10      Official Liquidators' Certificate.
11          (Robinson Exhibit 3, CWR Form
12      Number 13, Joint Official Liquidators'
13      Certificate was marked for
14      identification.)
15   BY MR. MORRIS:
16      Q.   All right, sir.  Do you have
17   Robinson exhibit 3 in front of you?
18      A.   Yes.
19      Q.   Okay.  Do you know what that is?
20      A.   Yes.
21      Q.   And what is this document?
22      A.   This is the Joint Official
23   Liquidators' Certificate of Determination of
24   Solvency for Ascentra Holdings, Inc.
25      Q.   And in this document it says that

Page 60

1           G. ROBINSON
2   the joint official liquidators, quote, "hereby
3   certify that they have determined that the
4   above-named company should be treated as
5   solvent."
6           Did I read that correctly?
7       A.   Yes.
8       Q.   How did you make that
9   determination?
10      A.   So when we -- when we are appointed
11   official liquidators, one of our duties is to
12   just analyze the books and records that we
13   have in our possession.  I spoke to
14   stakeholders, management, former officers of
15   the company.  Reviewed financial information
16   in our possession.  And we make a
17   determination on whether the -- the company is
18   solvent.  And that's also discussed in
19   consultation with our attorneys.
20          And then we make a decision that we
21   should -- whether we should -- what
22   determination we should file.
23          And after that initial review, in
24   consultation, the decision was taken to file a
25   certificate of solvency.



Page 61

1           G. ROBINSON
2      Q.   You used the phrase "stakeholders."
3      Do you recall which stakeholders
4   you communicated with with respect to the
5   decision to identify Ascentra Holdings,
6   Inc. as solvent?
7           MR. McDONALD:  Objection to form.
8      I think there's confusion.  I think
9      you're saying -- did you "stakeholders"
10     or "stockholders"?
11          MR. MORRIS:  I heard him say
12     "stakeholders."
13          MR. McDONALD:  Okay.
14          MR. MORRIS:  Let me try again.
15          MR. McDONALD:  It just came across
16     as stockholders or stakeholders.  I
17     wasn't sure which you were going with.
18          MR. MORRIS:  I'll try again.
19     Q.   Did you speak with any stakeholders
20  in connection with your determination to
21  declare Ascentra Holdings, Inc. to be solvent?
22          MR. McDONALD:  Objection to the
23     form.
24     A.   When I say the word "stakeholder,"
25  I am talking about numerous parties involved

Page 62

1           G. ROBINSON
2   in the affairs of the company.
3      Q.   Okay.  Can you identify those
4   parties who were involved in the affairs of
5   the company?
6      A.   That I spoke to?
7      Q.   Yes.
8      A.   On the process, okay.  Yes.
9           That would be employees of the
10  group.  It would have been Ted Sanders.  It
11  was also, I believe, from memory, that I also
12  had communications with Luke Ryu.  Marty
13  Matthews.  And that would be it.
14          Did I say staff?
15     Q.   You said employees.
16     A.   Employees, okay.  Yes.
17     Q.   Do you remember the names of any of
18  the employees?
19     A.   Communication on that would have
20  been with Whinney.
21     Q.   Okay.  Out of the people that you
22  just identified, did any of them disagree with
23  the determination that you ultimately made
24  that Ascentra Holdings, Inc. is solvent?
25          MR. McDONALD:  Objection to form.

Page 63

1           G. ROBINSON
2      A.   No.
3      Q.   You mentioned "books and records."
4           Do you recall, and I appreciate
5   it's been some time, do you recall what books
6   and records you reviewed and relied upon to
7   reach your determination that Ascentra
8   Holdings, Inc. is solvent?
9      A.   It would have been through
10  communication and discussions with the
11  stakeholders and with the financial
12  information that we were provided to --
13  provided with by Whinney.
14     Q.   Among that information, was there a
15  general ledger, if you recall?
16     A.   We were aware of the -- the assets
17  of the group and what pertained to the assets
18  of the Ascentra group.
19     Q.   Did the determination of solvency
20  take into account not just assets but
21  liabilities?
22     A.   Yes.
23     Q.   Is there a particular test that you
24  utilized to determine that Ascentra Holdings,
25  Inc. is solvent?

Page 64

1           G. ROBINSON
2           MR. McDONALD:  Objection to form.
3      A.   There is no -- there is no specific
4   test that official liquidators undertake when
5   he's determining solvency.  It's the joint
6   official liquidators' opinion.
7      Q.   Do you know whether Ascentra
8   Holdings, Inc. maintained financial statements
9   for itself and its subsidiaries?
10     A.   Yes.  There are -- there are.  Yep.
11     Q.   And would those financial
12  statements include balance sheets?
13          MR. McDONALD:  Object to the form.
14     A.   Yes.
15     Q.   What other financial statements are
16  you -- do you have in mind when you think back
17  to what you reviewed in connection with this
18  analysis?
19     A.   Yeah, okay.
20          MR. McDONALD:  Let him finish the
21     question.
22     A.   Say the question again?  Sorry.
23     Q.   Okay.  Did you review financial
24  statements in connection with your analysis of
25  solvency?

GRAHAM ROBINSON  30(b)(6)                    February 29, 2024
In Re Ascentra Holdings Inc.                 65–68

Page 65

1          G. ROBINSON
2     A.  So when we got -- when we appointed
3  and we were reviewing the books and records in
4  our possession -- so when you say "financial
5  statements," there were no audited statements
6  for the recent period leading up to the
7  liquidation.  There were management accounts
8  and financial summaries and bank statements
9  and Excel spreadsheets showing balances at
10  bank and assets and stuff that is very basic.
11  It wasn't complicated.  It was easy to look
12  at, easy to assess.  And we deemed, after
13  reviewing those kind of financials, that the
14  company -- that Ascentra should be deemed
15  solvent.
16     Q.  Thank you very much.
17        Do you recall whether Ascentra
18  Holdings, Inc. reported their financial
19  statements on a consolidated basis with their
20  subsidiaries?
21        MR. McDONALD:  Objection to form.
22     A.  We have seen draft financial
23  statements and previous signed financial
24  statements where the accounts are
25  consolidated, yes.

Page 66

1          G. ROBINSON
2     Q.  Do you know the last period for
3  which Ascentra Holdings, Inc. received audited
4  financial statements?
5     A.  I'm not a hundred percent, but I
6  think it could be either 2017 maybe or 2018.
7  But that's from memory.  Sorry.
8     Q.  Do you recall if Ascentra Holdings,
9  Inc. prepared its financial statements on a
10  calendar-year basis, or was there some other
11  time period that they utilized?  Or
12  year-basis, fiscal year?
13     A.  Again, from memory I think the
14  financial year-end was December, but I
15  don't -- I don't fully recall.  I'm sorry.
16     Q.  Do you remember the name of
17  Ascentra's outside auditors for the period of
18  time that audited financial statements were
19  completed?
20     A.  I don't recall the name, no.
21     Q.  In your capacity as Ascentra's
22  joint official liquidator did you ever speak
23  with Ascentra's outside auditors?
24     A.  There were no outside auditors
25  appointed at the time of my appointment.

Page 67

1          G. ROBINSON
2     Q.  Okay.  In your review of the
3  records did you see anything that would have
4  reflected any disagreement between Ascentra
5  Holdings, Inc. and the last outside auditor
6  that it did have?
7        MR. McDONALD:  Objection to form.
8     A.  I can't from memory remember if
9  there was any statements in the last signed
10  audited statements from the auditor
11  questioning anything, how the accounts were --
12  were shown.
13     Q.  Okay.  And I think you testified
14  that your recollection is the last audited
15  financial statements were for either 2018 or
16  2019.
17        Do I have that right?
18        MR. McDONALD:  Objection.
19     Q.  Or was it '17 and '18?
20     A.  You're talking about --
21     Q.  Audited.
22     A.  -- today?
23     Q.  Mm-hmm.
24     A.  Yeah, probably seven -- maybe 2017.
25     Q.  Are you aware of any reason why

Page 68

1          G. ROBINSON
2  audited financial statements were not
3  completed for any period after the last one?
4     A.  I would say from the financials it
5  would be how -- how the account should be
6  recorded, and all the parties involved, how
7  they wanted the account to be shown.
8     Q.  Okay.  I think you said you are an
9  accountant, is that right?
10     A.  I have accountant qualifications.
11     Q.  Do you know whether Ascentra's
12  books and records were maintained under GAAP
13  accounting or, I guess, IFRS?
14     A.  I do not know.
15     Q.  You don't know.
16        MR. McDONALD:  John, just to be
17  clear, when you say "Ascentra" you mean
18  Ascentra Holdings or Ascentra group?
19        MR. MORRIS:  I appreciate that.
20  Ascentra Holdings, Inc.  Yes.
21        MR. McDONALD:  Okay.
22     Q.  And the same question then for any
23  of the subsidiaries.
24        Do you know if --
25        MR. McDONALD:  Ascentra group.  You



Page 69

1        G. ROBINSON
2    distinguished between Ascentra and
3    Ascentra Holdings.  So just to be
4    precise.
5        MR. MORRIS:  Okay.
6        Q.  You have never withdrawn the
7    certificate that's been marked as Robinson
8    exhibit 3, correct?
9        A.  Correct.
10       Q.  Okay.  As an experienced and
11   licensed insolvency practitioner, can you
12   share with me your understanding of the
13   circumstances that would require you to either
14   withdraw or amend this certificate?
15       MR. McDONALD:  To the extent you
16       can answer that without divulging
17       attorney-client privilege, please
18       answer.
19       A.  Just say the question again?
20   Sorry.
21       Q.  Just as a Cayman Islands insolvency
22   practitioner can you tell me your
23   understanding of the circumstances that would
24   require you to withdraw, amend or modify the
25   certificate?

Page 70

1        G. ROBINSON
2        A.  This is a general question, not
3    related to Ascentra?
4        Q.  Correct.
5        A.  That would be, as an officer of the
6    court and you've got a duty to monitor the
7    solvency during a lifecycle of the
8    liquidation, you would look and check
9    constantly on asset values and liability
10   values.  And if those change.
11       Q.  So is it fair to say that they
12   haven't changed in a manner in which it caused
13   you to withdraw the solvency certificate?
14       MR. McDONALD:  Objection to form.
15       A.  Since I filed this in September
16   2021 there's nothing that's come into my
17   possession or been filed by the parties that
18   has made me determine my solvency
19   determination should change.
20       Q.  Okay, thank you.
21       MR. MORRIS:  We'll mark as the next
22   exhibit, it will be Robinson number 4.
23   It's one of your earlier declarations.
24       (Robinson Exhibit 4, Declaration of
25   Graham Robinson was marked for

Page 71

1        G. ROBINSON
2    identification.)
3        Q.  Mr. Robinson, do you see this is a
4    declaration that was submitted to the Court in
5    New York back in October 2021?
6        A.  Yes.
7        Q.  Okay.  And do you recall this
8    particular declaration?
9        A.  Yes.
10       Q.  And do you recall reviewing it
11   before it was filed with the court?
12       A.  Yes.
13       Q.  And did you have an opportunity to
14   make comments and changes to the declaration?
15       A.  I did, yes.
16       Q.  Okay.  Let's go to paragraph 18.
17   And if you could just read that to yourself
18   for the moment.
19       (The witness complied.)
20       A.  Okay.
21       Q.  Was it your understanding at the
22   time you signed this that that statement was
23   true and accurate?
24       A.  Yes.
25       Q.  Do you believe it's true and

Page 72

1        G. ROBINSON
2    accurate today?
3        A.  Yes.
4        Q.  Just one little wrinkle here.
5        It's a statement that's made as of
6    December 31, 2021, but the document is
7    prepared in October 2021.
8        Is this kind of a forward-looking
9    statement?
10       A.  Yeah, I would say that we probably
11   forecast what expenses were likely to incur up
12   to the end of the year, yes.
13       Q.  Was it also true as of the date you
14   filed the application in the Cayman Islands
15   court for supervision of the liquidation; was
16   this statement true at that time as well?
17       MR. McDONALD:  Objection to form.
18       MR. MORRIS:  Withdrawn.
19       Q.  The liquidation was commenced
20   officially in --
21       A.  17th of September.
22       Q.  September 17th.
23       If we changed "December 31, 2021"
24   to September 17, 2021, would the statement in
25   paragraph 18 be accurate?



Page 73

1           G. ROBINSON
2       A.   Accurate in what way?
3       Q.   Would there be any modification to
4   this statement if you just took it and turned
5   it back, you know, ten weeks, to the date of
6   commencement?
7       A.   So -- okay.  So you're saying
8   Ascentra's main liabilities as of 17th of
9   September, 2021, basically?
10      Q.   Correct.  Mm-hmm.
11      A.   Yes.
12      Q.   Okay.  And when you use the term
13  "main liabilities" there, are you aware of
14  any liabilities that Ascentra had as of
15  September 17, 2021 other than the costs that
16  were going to be incurred by the liquidators
17  and certain ordinary course operating
18  expenses?  Were there any other liabilities
19  that you can recall?
20      A.   At the time, are you talking about
21  17th of September, or are you talking about
22  the day of this declaration?
23      Q.   September 17.
24      A.   Okay.  So just state the question
25  again, please?

Page 74

1           G. ROBINSON
2       Q.   Sure.  When you use the phrase
3   "main liabilities" -- actually, let's do this
4   in pieces.
5           Are you aware of any other -- any
6   liabilities as of December 31, 2021 other than
7   the costs incurred by the liquidators and
8   certain ordinary course operating expenses for
9   storage and maintenance of Ascentra's
10  information?
11      A.   I think the key sentence there
12  would be "Ascentra may have other contingent
13  liabilities that my team and are I
14  investigating."
15      Q.   Okay.  I appreciate that and I want
16  to separate, you know, stuff that may be
17  subject to investigation from what you knew,
18  what was -- you know, what was on the books
19  and records, what you knew at the time.  Okay?
20          So with that distinction, were
21  there any liabilities that you're aware of
22  that existed as of the end of 2021 other than
23  the ones that are described here?
24          Any non-contingent liabilities.
25  How about that?

Page 75

1           G. ROBINSON
2       A.   That's a difficult question to
3   answer because what I think you're asking me
4   is did other creditors come about after the
5   31st of December 2021 that weren't potentially
6   contingent at that time or I was totally
7   unaware of at that time.
8           I can't recall.  Because as part of
9   the liquidation process, I've been dealing
10  with creditor -- previous creditors and
11  potential creditors through the whole
12  liquidation process.
13      Q.   Go back to exhibit 1, which was the
14  30(b)(6) notice.  And if you can turn I think
15  to the third page, at the bottom it says
16  "Amended Topics."
17      A.   Okay.
18      Q.   And 2(a) asks about the number of
19  creditors existing as of the date of
20  commencement.
21          Let me just modify that a tiny bit,
22  in light of what you just said.
23          Do you recall whether Ascentra had
24  any non -- any creditors who held
25  non-contingent claims, right, who you agree

Page 76

1           G. ROBINSON
2   they had a claim, as of the date of
3   commencement?  Did they have any such
4   creditors?
5           MR. McDONALD:  Objection to form.
6       A.   Yes.
7       Q.   Okay.  Do you recall how many
8   creditors they had that fell into that very
9   specific category of non-contingent claims?
10          MR. McDONALD:  Objection to form.
11      A.   I struggle for the exact number,
12  but you are looking, I would say, at ten, 12.
13  Ten to 12, maybe.
14      Q.   Okay.  So to the best of your
15  recollection, on the date of commencement
16  Ascentra Holdings, Inc. had approximately ten
17  to 12 creditors who held undisputed claims, is
18  that fair?
19      A.   Exactly the day of appointment you
20  don't know if they're going to be -- if they
21  may be still disputed until you've reviewed.
22  So ...
23      Q.   So when you referred to the ten or
24  12, were those ten or 12 disputed claims,
25  undisputed claims or a mix?



GRAHAM ROBINSON  30(b)(6)                                   February 29, 2024
In Re Ascentra Holdings Inc.                                        77—80

Page 77

1          G. ROBINSON
2       A.   We were provided with that list
3    when we got appointed, and then we reviewed
4    and analyzed it, and if they were not
5    disputed, they would have been paid.
6       Q.   Okay.  And as a total group, how
7    many disputed, undisputed or contingent claims
8    existed, to the best of your knowledge, on the
9    date of commencement?
10         MR. McDONALD:  Objection to form.
11      A.   Again, you don't know which ones
12   are disputed when you get appointed.
13      Q.   And that's why I am trying to say I
14   don't really care whether it's disputed or
15   undisputed or contingent.
16         How many claims existed, to the
17   best of your knowledge, on the commencement
18   date, irrespective of whether they were
19   contingent or disputed claims?
20      A.   So on top of the ten to 12 is --
21      Q.   Mm-hmm.
22      A.   I would say maybe another ten.
23      Q.   Okay.  So somewhere between 20 and
24   22 claims in total, which included undisputed
25   claims, disputed claims and contingent claims.

Page 78

1          G. ROBINSON
2       Is that fair?
3          MR. McDONALD:  Objection to form.
4       A.   I would say okay, yes.
5       Q.   Do you know the aggregate value of
6    those claims?
7          MR. McDONALD:  Objection to form.
8       A.   Which -- do you want to break it
9    down?
10      Q.   Sure.
11      A.   Are you asking for the full amount?
12      Q.   Let's start with the full amount.
13         MR. MORRIS:  Withdrawn.  Let me ask
14   a different question.
15      Q.   As of the commencement date, what
16   did Ascentra's books and records show as their
17   obligations owing to creditors?
18         MR. McDONALD:  Objection to form.
19      A.   I think from memory it was over
20   20 million U.S. dollars.  That is for
21   creditors and other potential creditors.
22      Q.   Right.  And was there any creditor,
23   to the best of your recollection, who held a
24   claim, whether it was disputed or not, that
25   was more than a million dollars?

Page 79

1          G. ROBINSON
2          MR. MORRIS:  Withdrawn.
3       Q.   What was the biggest claim?
4          MR. McDONALD:  Objection to form.
5       A.   If you exclude the monies that are
6    due to the members on the commissions, the
7    biggest creditor claim was -- for a service
8    provider was approximately 3.9 million.
9       Q.   Do you know whether under the
10   Cayman Companies Act a solvent entity
11   liquidating under court supervision is
12   required to pay creditors within 12 months?
13         MR. McDONALD:  Objection to form.
14      A.   Sorry, say again.
15      Q.   Do you know whether under the
16   Cayman Companies Act a solvent entity
17   operating under court supervision is required
18   to pay its debts within 12 months?
19         MR. McDONALD:  Objection to form.
20      Q.   You can answer.
21      A.   Under court supervision, no.
22      Q.   Is that a rule that applies outside
23   of court?
24         MR. McDONALD:  Objection to form.
25      A.   For a voluntary liquidation --

Page 80

1          G. ROBINSON
2    well, a director, if he signs a declaration of
3    solvency, he's swearing in the declaration
4    that all the debts of the company will be paid
5    off in full within 12 months.
6       Q.   That's what I am asking.
7          Did that happen in this case?
8       A.   No.
9       Q.   So which debts were not paid in
10   full within 12 months?
11         MR. McDONALD:  Objection to form.
12      A.   Within 12 -- in the first 12
13   months?
14      Q.   Mm-hmm.
15      A.   I don't know from memory.  As I
16   said, there's no requirement for debts to be
17   paid, all creditors to be paid in 12 months.
18         Like I said before, and I'll repeat
19   again, we've been dealing with creditors for
20   the full -- through the whole liquidation
21   process, and some have been paid, some have
22   been agreed and paid, and we have probably
23   some creditors that we have not verified and
24   paid.
25      Q.   Has Ascentra paid all creditors in



GRAHAM ROBINSON  30(b)(6)                    February 29, 2024
In Re Ascentra Holdings Inc.                              81–84

Page 81

1          G. ROBINSON
2    full who hold undisputed claims?
3          MR. McDONALD: Objection to form.
4      A.  Yes.
5      Q.   And is the only reason the
6    remaining creditors haven't been paid in full
7    is because there's a dispute as to either the
8    validity or the amount of their claim?
9          MR. McDONALD: Objection to form.
10     A.  Yes, the verification -- I would
11   say that the verification -- sorry.  The
12   verification of the process of agreeing the
13   claims is still ongoing.
14     Q.   How many claims are subject to
15   dispute today?
16     A.  Seven.
17     Q.   Are those seven claims held by
18   seven different people and entities, or does
19   one or more entity own one or more of those
20   disputed claims?
21         MR. McDONALD: John, just to
22         interject.  There are reports filed with
23         the Cayman court, and we're kind of
24         cutting close to a line here.
25         To the extent generally you can

Page 82

1          G. ROBINSON
2    answer.
3          But the court has sealed these
4    reports, and they remain subject to
5    court seal.  So I'm just trying to keep
6    that in mind here so that the witness
7    isn't divulging information that is
8    currently subject to a court order under
9    seal.
10         MR. MORRIS: Okay.  I appreciate
11   that --
12         MR. McDONALD: In generality, yes.
13         MR. MORRIS: I have no knowledge of
14         any of that.  And you'll instruct him
15         not to answer if you think it's your
16         responsibility to do that.
17         MR. McDONALD: Right.  I just
18         wanted to make you aware of that, and
19         that may be an objection or a direction
20         at some point.
21         MR. MORRIS: Okay.
22         MR. McDONALD: Okay?
23         MR. MORRIS: Can we have the
24   question read back, please?
25         (Requested portion of the record

Page 83

1          G. ROBINSON
2    read back.)
3      A.  Seven separate entities.
4      Q.   Okay.  So is it fair to say that
5    Ascentra Holdings, Inc. has paid all creditors
6    in full except for the seven entities who hold
7    one disputed claim each?
8          MR. McDONALD: Objection to form.
9      A.  Yes.
10  DIR  Q.   Does the Ascentra Holdings estate
11   have sufficient assets to pay those disputed
12   claims in full if the holders of those claims
13   prevail on their position that their claims
14   are valid?
15         MR. McDONALD: We're getting into
16         the -- that line, and I'm going to
17         object and direct the witness not to
18         answer.
19         MR. MORRIS: I just want to be
20         really clear.  I'm just asking for a
21         yes-or-no answer here.
22  DIR  Q.   Does the state -- does the estate
23   have the sufficient assets to satisfy those
24   contingent claims if they are ultimately
25   deemed to be valid in the amounts that the

Page 84

1          G. ROBINSON
2    claim-holders contend?
3          MR. McDONALD: Again I'm going to
4         object and direct the witness not to
5         answer.
6      Q.   Are you going to follow counsel's
7    advice?
8      A.  Yes.
9      Q.   Okay.
10         MR. McDONALD: And, again, the
11         basis of that is that it's requesting
12         information that is currently under seal
13         with the Cayman court by court order.
14  REQ      MR. MORRIS: I would request a copy
15         of that court order in due course.
16   BY MR. MORRIS:
17  DIR  Q.   Can you tell me the aggregate value
18   of the claims that are being asserted against
19   the Ascentra Holdings, Inc. entity by the
20   seven claim-holders?
21         MR. McDONALD: Again I am going to
22         object and direct the witness not to
23         answer.
24         MR. MORRIS: And is that also
25         because there's a court order that would

Page 85

G. ROBINSON
1
2    preclude him from answering?
3       MR. McDONALD:  There's a court
4    order that has sealed that information
5    that is contained in a report, yes.  It
6    would be requiring him to divulge
7    information that is currently under
8    seal.  And we will happily send you that
9    order.
10      MR. MORRIS:  Okay.
11   BY MR. MORRIS:
12   DIR Q.   Can you identify for me the holders
13   of the seven disputed claims?
14      MR. McDONALD:  Objection.
15   I direct the witness not to answer.
16      Q.   Are you going to follow counsel's
17   advice?
18      A.   Yes.
19      Q.   Can you tell me the value of any of
20   the disputed claims?
21      MR. McDONALD:  I think that's been
22   answered already.
23      MR. MORRIS:  If you are objecting
24   as asked and answered, that's fine.  I
25   don't believe it was.  So I'll ask for

Page 86

G. ROBINSON
1
2    an answer.
3       A.   I believe I've answered that
4    question.
5       Q.   Okay.  Can you tell me again?
6       A.   3.9 million.
7       Q.   Oh, I -- so that's the answer to
8    the question of the largest claim, right?
9    That's what I understood.
10      A.   Yeah.
11      Q.   Okay.  Is that a disputed claim or
12   an undisputed claim?
13      A.   Again, we discussed this and
14   answered it was a disputed claim.
15      Q.   So that has not been paid, is that
16   fair?
17      A.   Yes.
18      Q.   Okay.  Has Ascentra Holdings, Inc.
19   made any reserve on account of these claims?
20      MR. McDONALD:  Objection to the
21   form.
22      A.   I'm uncertain if I can answer that
23   because that refers to the ongoing incoming
24   receipts and payments of the liquidation of
25   the estate, and that's within the court

Page 87

G. ROBINSON
1
2    reports, and that court report is sealed.
3       Q.   So I want to be really clear what I
4    am asking here.
5       Do you understand what a reserve
6    is?
7       A.   In what way?
8       Q.   Has Ascentra Holdings, Inc. set
9    money aside for the specific purpose of
10   satisfying these disputed claims at some point
11   in the future?  Just yes or no.
12      A.   I'm going to refer you to my last
13   answer.
14      Q.   Are you going to refuse to answer
15   that question?
16      A.   I can't answer that question
17   because it's based in the reports and those
18   reports are sealed.
19      So I'm not refusing to answer the
20   question.
21      Q.   You believe you have an obligation
22   not to disclose whether or not a reserve has
23   been established.
24      Do I understand that correctly?
25      A.   I'm an officer of the court in the

Page 88

G. ROBINSON
1
2    Cayman Islands.  My report's been filed with
3    the court, and the court has sealed it.  I'm
4    an officer of the court.  I follow what the
5    court has done.
6       Q.   Okay.  I just wanted to make sure.
7       Certain persons and entities have
8    made claims in the liquidation by way of proof
9    of debt, is that right?
10      MR. McDONALD:  Objection to form.
11      A.   Yes.
12      Q.   How many proofs of debt have been
13   filed?
14      MR. McDONALD:  Objection to form.
15      A.   Eight, I believe.
16      MR. MORRIS:  I'll mark as the next
17   exhibit, exhibit 5, Robinson 5, the
18   report that was filed with the
19   bankruptcy court in New York.
20      (Robinson Exhibit 5, letter to the
21   Court, dated December 29, 2023 was
22   marked for identification.)
23   BY MR. MORRIS:
24      Q.   You could take a quick look at it,
25   or take as long as you need to look at it.  My



GRAHAM ROBINSON  30(b)(6)                         February 29, 2024
In Re Ascentra Holdings Inc.                            89–92

Page 89

1           G. ROBINSON
2  first question for you is whether you have
3  seen this before?
4       A.  Yes, I've seen this document
5  before.
6       Q.  Okay.  And did you see it before it
7  was filed?
8       A.  Yes.
9       Q.  And so you were aware that it was
10 being filed on behalf of the joint official
11 liquidators in the Ascentra Chapter 15 case,
12 right?
13      A.  Yes.
14      Q.  Okay.  If you could go to I guess
15 the last substantive page, page 4.
16      A.  Okay.
17      Q.  So directing your recollection to
18 the middle of the page, underneath the heading
19 "Additional Actions Undertaken By the
20 Liquidators," your counsel informed the court
21 in New York, quote, "The liquidators continue
22 to correspond with potential creditors and
23 parties who have made claims in the
24 liquidation by proof of debt."
25          Have I read that first sentence

Page 90

1           G. ROBINSON
2  correctly?
3       A.  Yes.
4       Q.  Okay.  The phrase "potential
5  creditors," are those creditors who hold
6  contingent or disputed claims?
7       A.  The two referred to here are the
8  seven I listed before, yes.  Part of the
9  seven.  Yes.
10      Q.  Okay.  So the potential creditors
11 are seven, and there's two of whom that are
12 referred to in the second sentence, is that
13 fair?
14      A.  Yes.
15      Q.  Okay.  So if there are seven
16 potential creditors -- I think you mentioned
17 that there are eight proofs of debt that were
18 filed?
19          Do I have that right?
20      A.  From memory, yes.
21      Q.  And is that because one of the
22 proofs of debt was resolved?
23      A.  Yes.
24      Q.  And that proof of debt that was
25 resolved was paid in full, correct?

Page 91

1           G. ROBINSON
2       MR. McDONALD:  Objection to form.
3       A.  The proof of debt that was approved
4  by the liquidator has been paid, yes.
5       Q.  In full.  So again --
6       MR. McDONALD:  Objection to form.
7       Q.  So again, the only thing that is
8  outstanding today are the seven disputed
9  claims, is that fair?
10      MR. McDONALD:  Objection to form.
11      A.  In the Ascentra liquidation?
12      Q.  Yes, sir.
13      A.  Those seven, yes, and the members'
14 commissions that remain payable, yes.
15      Q.  Are the members' commissions
16 obligations of the company or are they part of
17 the members' equity?
18      MR. McDONALD:  Objection to form.
19      A.  (No response.)
20      MR. MORRIS:  Withdrawn.
21      Q.  When you use the phrase "members'
22 commission," what are you referring to?
23      A.  This -- this is the commissions
24 that are due to the -- to the members that
25 sold products on behalf of the Ascentra group.

Page 92

1           G. ROBINSON
2       Q.  And are those commissions subject
3  to the proof-of-debt process?
4       A.  Not at this stage.
5       Q.  Why not?
6       A.  No -- no -- no member has written
7  to the liquidators.
8       Q.  So as of today no claim has been
9  made for the payment of a member's commission,
10 is that fair?
11      A.  In the Ascentra liquidation?
12      Q.  Yes, sir.
13      A.  No.
14      Q.  That's not fair?
15      A.  Sorry.  No, they have not
16 submitted ...
17      Q.  Have members made claims for
18 commissions in any other liquidation that's
19 related to Ascentra Holdings, Inc.?
20      A.  No.
21      Q.  Would you have an obligation as the
22 joint official liquidator to pay the member
23 claim if you believe today that the claim was
24 valid?
25      MR. McDONALD:  Objection to form.



Page 93

1           G. ROBINSON
2      A.  Say the question again?  Sorry.
3      Q.  In your capacity as a joint
4   official liquidator, would you be duty-bound
5   to pay the commissions if you concluded that
6   they were a due and valid obligation of the
7   Ascentra Holdings, Inc. company?
8         MR. McDONALD:  Objection to form.
9      A.  If we've gone through the
10   verification process and we believed they were
11   due and payable, then they would be paid as
12   part of the liquidation process.
13      Q.  And did you, in your capacity as
14   the joint official liquidator, undertake a
15   review of whether any membership commissions
16   were due by Ascentra Holdings, Inc.?
17      A.  Yes.
18      Q.  And have you concluded that no
19   membership commissions are due by Ascentra
20   Holdings, Inc.?
21         MR. McDONALD:  Objection to form.
22      A.  Say the question again?
23      Q.  Have you concluded that Ascentra
24   Holdings, Inc. doesn't owe any membership
25   commissions?

Page 94

1           G. ROBINSON
2      A.  I have not concluded that, no.
3      Q.  You're still reviewing it?
4      A.  The review process of the
5   commissions has not been finalized.
6      Q.  Okay.  But no member has made a
7   claim for commission, correct?
8      A.  No member has made a claim for
9   commission in the Ascentra liquidation,
10   correct.
11      Q.  Okay.  Has any member made a claim
12   for commission in any other liquidation that
13   you are involved with?
14      A.  No.
15      Q.  Other than the seven disputed
16   claims or proofs of debt that you've
17   identified, are you aware of any other
18   contingent obligation that Ascentra Holdings,
19   Inc. has?
20         MR. McDONALD:  Objection to form.
21      A.  No.
22      Q.  Looking down, still staying with
23   the same report --
24      A.  Okay.
25      Q.  -- towards the end it says, quote,

Page 95

1           G. ROBINSON
2   "The liquidators also received three
3   additional proofs of debt from Mr. Sanders on
4   November 10, 2023, which have not been
5   adjudicated yet."
6         Have I read that correctly?
7      A.  You have.
8      Q.  And are those three proofs of debt
9   among the eight that you identified earlier?
10      A.  Yes.
11      Q.  Okay.  Does Mr. Sanders have any
12   other proofs of debt -- withdrawn.
13         Have any proofs of debt been filed
14   on Mr. Sanders' behalf other than those three?
15      A.  No.
16      Q.  And are those three proofs of debt,
17   are they filed on behalf of different entities
18   that are either owned or controlled by
19   Mr. Sanders, to the best of your knowledge?
20      A.  Yes.
21      Q.  So that among -- when you said
22   earlier that there were seven different
23   claim-holders or potential claim-holders,
24   three of them were affiliated with
25   Mr. Sanders, right?

Page 96

1           G. ROBINSON
2      A.  Yes.
3      Q.  Okay.  Of the other four, is there
4   any affiliation between the holders of those
5   potential claims?
6      A.  No.
7      Q.  So you've got Mr. Sanders plus four
8   other folks who collectively hold seven
9   disputed claims, correct?
10      A.  Yes.
11      Q.  Okay.  Can you describe for me the
12   nature of the three proofs of debt that were
13   filed on behalf of Mr. Sanders?
14         MR. McDONALD:  Objection to form.
15         To the extent you can disclose
16   that.
17      A.  No, we probably -- I probably
18   discussed the proof of debts with my Cayman
19   counsel, so I would say those discussions are
20   privileged.
21      Q.  But you've discussed it with
22   somebody representing Mr. Sanders, right?
23      A.  My attorneys have spoken to
24   Mr. Sanders' attorneys.
25      Q.  Okay.  So focussing on those

Page 97

1          G. ROBINSON
2   discussions, do you know what the nature of
3   Mr. Sanders' claim is?
4          Have you read the proofs of debt
5   that were filed on behalf of Mr. Sanders?
6      A.  Yes.
7      Q.  Do you have an understanding as to
8   the nature of the claim?
9      A.  He claims he's owed money.
10     Q.  Does he state why he believes he's
11  owed money?
12     A.  He does.
13  DIR  Q.  Does he cite to any contract that
14  he believes he's entitled to recover damages
15  for, for breach?
16         MR. McDONALD:  I'm going to object.
17     Those proofs of debt are still
18     confidential and the nature of those
19     claims and the nature of the
20     disagreement over those claims and the
21     negotiation of those claims are sealed
22     under -- as part of the report to the
23     court.
24         MR. MORRIS:  So you're not going to
25     let him tell me if there's a contract

Page 98

1          G. ROBINSON
2   claim or a tort claim?
3          MR. McDONALD:  No.
4      Q.  Do you dispute Mr. Sanders' claims?
5      A.  The verification process is still
6   ongoing.  So ...
7      Q.  You haven't agreed to pay the
8   claims, is that fair?
9      A.  The verification process is still
10  ongoing.
11     Q.  Do you dispute the validity of the
12  claims or the amount of the claims?
13     A.  The verification process is still
14  ongoing.
15     Q.  Can you describe for me what the
16  verification process is?
17     A.  We review the proof of debts and
18  make an assessment on whether it's valid or
19  invalid.
20     Q.  And when did he file the proofs of
21  debt?
22         MR. McDONALD:  Objection to form.
23     A.  I believe we received them in early
24  November 2023.
25     Q.  And are the proofs of debt filed

Page 99

1          G. ROBINSON
2   with the court, or are they just given to you
3   in your capacity as the joint official
4   liquidator?
5      A.  Just to me.
6      Q.  Okay.  So these are documents that
7   have not been filed with the court, correct?
8      A.  There's no requirement to file
9   proof of debts separately into the Cayman
10  court.
11     Q.  I appreciate that there's no
12  requirement.  I'm just asking you if it
13  happened.
14         To the best of your knowledge, were
15  Mr. Sanders' proofs of debt filed with the
16  Cayman court?
17     A.  No.
18     Q.  Okay.  Can you share with me
19  anything about the nature of the claims that
20  were delivered to you but not filed with the
21  Cayman court?
22     A.  Say that question again?  Sorry.
23     Q.  Can you tell me the amount of any
24  of the three claims that were given to you but
25  not filed with the court?

Page 100

1          G. ROBINSON
2          MR. McDONALD:  Again, that
3     information is subject to the seal
4     order.
5          MR. MORRIS:  But it wasn't filed
6     with the court, right?
7          MR. McDONALD:  The report
8     discussing the claims has been filed
9     with the court.  The claims have been
10    received by the liquidator.
11         MR. MORRIS:  And that's all I'm
12    asking about, is the claims -- I don't
13    care about any report filed with the
14    court.
15         So let me ask the question again.
16         MR. McDONALD:  So --
17         MR. MORRIS:  Let me ask the
18    question again.
19         MR. McDONALD:  Okay.
20  DIR  Q.  The claims that were given to you
21  but not filed with the Court, can you tell me
22  what the amount of those claims are?
23         MR. McDONALD:  I object.
24         Direct the witness not to answer.
25         The inspection of those proofs of



GRAHAM ROBINSON  30(b)(6)                    February 29, 2024
In Re Ascentra Holdings Inc.                        101–104

Page 101

G. ROBINSON
1       debt are limited to creditors and
2       contributories and are to be kept
3       confidential.  The discussion of those
4       are contained in a report that is filed
5       with the court and is subject to seal.
6          MR. MORRIS:  Just help me
7       understand, Hugh.  Is there an order
8       that was entered in this case that
9       you're relying upon, or is it a Cayman
10      Islands law?
11         MR. McDONALD:  It's a combination
12      of both.  There is, within the Cayman
13      Islands, the Companies Act, as well as
14      in the rules, a restriction on who can
15      inspect proofs of debt, and the
16      discussion of those proofs of debt are
17      contained in a report that are subject
18      to a court order sealing them.
19         And so --
20         MR. MORRIS:  Okay.  To be clear I'm
21      not asking about that report.
22         MR. McDONALD:  I understand that.
23      But the contents of those proofs of debt
24      are discussed in a report that is

Page 102

G. ROBINSON
1       subject to a seal.
2          MR. MORRIS:  Okay.  And you guys
3       will follow up with the identity of the
4       order that you're relying on and the
5       law, right?
6          MR. McDONALD:  Mm-hmm.
7          MR. MORRIS:  Okay.
8    BY MR. MORRIS:
9       Q.  Is there a deadline for the filing
10      of proofs of debt in this case, in the Cayman
11      Islands?
12      A.  No.
13      Q.  Based on your review of the
14      records, do you have any reason to believe --
15      withdrawn.
16         Based on your work as a joint
17      official liquidator, do you have any
18      expectation that any additional proofs of debt
19      are likely to be filed?
20         MR. McDONALD:  Objection to form.
21      A.  Specifically to the Ascentra --
22      Q.  Yes.
23      A.  -- liquidation?
24         I'm hopeful there's no other proof

Page 103

G. ROBINSON
1       of debts, yes.
2          Q.  Okay.  And do you have any
3       reason -- do you have any expectation that
4       they will be filed?  Is it more than a hope?
5       But based on your work, has anybody -- you
6       know, do you have any expectation --
7          MR. McDONALD:  Wait for him to
8       finish.
9          Q.  Okay.  Do you have any reason to
10      believe that somebody's going to file further
11      proofs of debt?  In the Ascentra Holdings,
12      Inc. case.
13      A.  Just from experience of being a
14      joint official liquidator, being involved
15      in restructuring for 30-odd years, you expect
16      the unexpected.
17      Q.  Okay.  Other than that, do you have
18      any reason to expect that any additional
19      proofs of debt will be filed in the Ascentra
20      Holdings, Inc. case?
21      A.  No.
22      Q.  Thank you.
23         MR. MORRIS:  Let's mark as the next
24      exhibit another report that was given to

Page 104

G. ROBINSON
1       the court in New York.
2          THE WITNESS:  Can we just do a
3       five-minute toilet break?
4          MR. MORRIS:  Sure, you bet.
5          THE VIDEOGRAPHER:  This ends
6       unit 3.  We're off the record at 11:52.
7          (Recess taken.)
8          THE VIDEOGRAPHER:  This begins
9       unit 4.  We're on the record at 12:03.
10         (Robinson Exhibit 6, Letter to the
11      Court dated June 30, 2023 was marked for
12      identification.)
13      BY MR. MORRIS:
14      Q.  All right.  Mr. Robinson, you have
15      in front of you what has been marked as
16      Robinson exhibit 6.  It's another document
17      that was filed with the court.
18         Have you taken a moment to look
19      at it?
20      A.  Yes.
21      Q.  Okay.  And you saw it before it was
22      filed, is that right?
23      A.  Yes.
24      Q.  Okay.  Directing your attention to



Page 105

G. ROBINSON
1
2  the second paragraph on the first page,
3  there's a statement in there that says, quote,
4  "As a result of various shareholder disputes,
5  on June 1, 2021 Ascentra was placed into
6  voluntary liquidation in the Cayman Islands by
7  its shareholders."
8        Have I read that correctly?
9    A.  Yes.
10   Q.  And is that accurate, to the best
11 of your knowledge?
12   A.  To the best of my knowledge, yes.
13   Q.  Okay.  Are you aware of any reason
14 that Ascentra was placed in voluntary
15 liquidation other than various shareholder
16 disputes?
17   A.  No.
18   Q.  Thank you.
19        And if you can go to the second
20 page on the back of the document.  The end of
21 the middle paragraph says, quote, "Further,
22 the liquidators have corresponded with various
23 potential creditors of Ascentra and requested
24 proofs of debt to be submitted."
25        Did I read that correctly?

Page 106

G. ROBINSON
1
2    A.  Which paragraph is that?
3    Q.  It's the middle one that begins "In
4  the Cayman proceeding."
5    A.  Okay.
6    Q.  So now I'm looking at the last
7  sentence that begins "Further --
8    A.  Oh, "Further." I see it.  Sorry.
9  I see it.
10   Q.  That's okay.  Are you with me now?
11 Take a moment to read it.
12   A.  Okay, yes.
13   Q.  And so this is dated in June.
14 Would this have been part of the process of
15 soliciting the proofs of debt that resulted
16 in, I guess, the ones that we talked about
17 earlier?
18   A.  Yeah, these -- these relate to the
19 creditors we discussed previously.  Yes.
20   Q.  Okay.  And under what
21 circumstances, if you recall, did you request
22 that proofs of debt be submitted?  Like, why
23 do you do that?
24      MR. McDONALD:  Objection to form.
25   A.  Well, the official liquidator has

Page 107

G. ROBINSON
1
2  got a pretty simple function, and that is to
3  get in the assets, realize the assets, and
4  then distribute the assets to the creditors.
5        And one of my jobs as a joint
6  official liquidator is to approve creditor
7  claims, and that's in a quasi-judicial way as
8  an officer of the court.  So that's what we
9  do.
10   Q.  So is it fair to say that you
11 request a proof of debt if somebody comes to
12 you and says the entity that's being
13 liquidated owes them money, and then you say,
14 well, send me a proof of debt and we'll figure
15 it out?
16   A.  Yeah, there's no right or wrong way
17 of how a proof is received or not received or
18 how you agree a claim.  But yeah, one way
19 would be, if someone came to you and requested
20 a claim they were owed money, you would enter
21 correspondence and you could request they
22 submit a formal proof of debt.
23   Q.  Okay.  And this is the process that
24 led to the seven remaining proofs of debt,
25 correct?  That are disputed.

Page 108

G. ROBINSON
1
2      MR. McDONALD:  Objection to form.
3    A.  Yeah, creditors can come to you,
4  and you can go to potential creditors as well.
5    Q.  Okay.  How many proofs of debt did
6  the joint official liquidators request, as
7  opposed to how many proofs -- let's just start
8  with there.
9        How many did you request be filed?
10   A.  How many proof of debts did the
11 joint official liquidators of Ascentra request
12 from potential creditors?
13   Q.  Mm-hmm.
14   A.  I don't know the exact number from
15 memory.  Out of the eight that we received,
16 from memory I would say we requested six.
17   Q.  And would they include Mr. Sanders'
18 three?
19   A.  Yes.
20   Q.  Why did you request Mr. Sanders to
21 file proofs of debt?
22   A.  I don't -- SPGK and the defendants,
23 all the defendants are not an admitted
24 creditor in the liquidation, and you are not
25 entitled to that information.



Page 109

1          G. ROBINSON
2          THE COURT REPORTER:  Can you just
3    repeat that?  All of defendants are
4    not ...
5          A.   An admitted creditor in the
6    liquidation under Cayman law.
7          Q.   So you believe you have a duty not
8    to tell me the answer to the question because
9    in your view SPGK is not entitled to receive
10   it under Cayman law, is that right?
11         A.   Say that again?  Sorry.
12         Q.   I just want to make sure that I
13   understand.  I don't mean to be contentious at
14   all.
15         You're refusing to answer my
16   question because SPGK is not a creditor in the
17   Ascentra Holdings, Inc. bankruptcy, is that
18   right?
19         A.   I wouldn't -- I'm not refusing to
20   answer your question.  I can't answer your
21   question.
22         Q.   Okay.  That's --
23         A.   That's a big difference.
24         Q.   Well, you're refusing because you
25   believe you have an obligation not to disclose

Page 110

1          G. ROBINSON
2    it.  Is that fair?
3          A.   Under Cayman law -- you are not an
4    admitted creditor, and you're not entitled to
5    that information under Cayman law.
6          Q.   Okay.  So let me just ask you, as
7    an experienced insolvency practitioner in the
8    Cayman Islands and one licensed to serve as a
9    liquidator, do you have any ability to share
10   this information -- withdrawn.
11         I understand your position that
12   SPGK has no right to the information.  My
13   question for you:  Is there anything that
14   prohibits you from disclosing the information?
15         MR. McDONALD:  Objection to form.
16         A.   I think I'll just refer you to my
17   previous answer.
18         Q.   And I'm trying to parse that
19   through.
20         I understand that you believe that
21   under Cayman law -- and I don't mean to be
22   contentious --
23         A.   That's okay.
24         Q.   -- that under Cayman law SPGK has
25   no right to know anything about the subject

Page 111

1          G. ROBINSON
2    matters that we're talking about.
3          Is that fair?
4          A.   Yeah.  You're not an admitted
5    creditor.
6          Q.   Okay.  Let's start with what's an
7    admitted creditor?
8          A.   A creditor that the claim has been
9    admitted by the joint official liquidators.
10         Q.   Meaning that it's no longer
11   disputed?
12         A.   Yes.  It's admitted.
13         Q.   So Mr. Sanders is not an admitted
14   creditor, is that right?
15         A.   Correct.
16         MR. McDONALD:  Objection to form.
17         Q.   So I appreciate what you're saying,
18   and now I am going to ask you a different
19   question.
20         Even though they don't have the
21   right to the information, is there any legal
22   prohibition, to the best of your knowledge,
23   that would prohibit you from disclosing it?
24         A.   Just say the question again?
25   Sorry.

Page 112

1          G. ROBINSON
2          Q.   Is there any legal impediment, you
3    know, is there any legal prohibition that
4    prevents you from disclosing the information,
5    or it's just that SPGK has no right to
6    receive it?
7          A.   SPGK has no right to receive it.
8          Q.   I understand.  But is there any --
9    do you have a legal duty not to disclose it,
10   or is it just that they have no right to
11   receive it?
12         Do you understand the distinction
13   that I'm making?
14         MR. McDONALD:  Yeah, I'm going to
15   object.  I think as I discussed earlier,
16   the information concerning the proofs of
17   debt is contained in reports that have
18   been filed with the court that are
19   subject to seal.
20         So is there a legal impediment?
21   Yes.  He's an officer of the court, and
22   he's bound by the orders of the court.
23         MR. MORRIS:  So is there any
24   information at all that you are willing
25   to let him testify to other than the

Page 113

1          G. ROBINSON
2    number of outstanding disputed claims?
3          MR. McDONALD:  As to the nature and
4    identity and basis for the claims and
5    the nature of any disputes over the
6    claims?  No.  He's not going to be able
7    to testify.
8          MR. MORRIS:  And is that because
9    the information was filed with the
10   court, or is there something else that
11   prohibits it?
12         MR. McDONALD:  It's a combination
13   of the statute rules and orders of the
14   court that prohibit him from disclosing
15   that information.
16         MR. MORRIS:  Okay.
17     Q.   Okay.  We're going to go to topic 5
18   on the 30(b)(6) list, which was exhibit 1, and
19   that relates to applications for sanction.
20         Can you tell me what an application
21   for sanction is, in the context of a Cayman
22   Islands liquidation proceeding?
23     A.   Well, so to answer your question
24   for me as a joint official liquidator,
25   basically our powers are split between powers

Page 114

1          G. ROBINSON
2    that we need the court sanction for and powers
3    that we don't need sanction for.
4          So ultimately we -- if there are
5    certain things that we need to do as part of
6    the liquidation process, then we would, with
7    our counsel, we would make applications to the
8    courts.
9      Q.   So there are certain things that
10   you may want to do that you need court
11   permission for, is that fair?
12     A.   Yes.
13     Q.   Okay.  Do creditors and the
14   liquidation of a solvent entity have any
15   ability to apply for sanction?
16     A.   They have no ability to apply for
17   sanction.
18     Q.   Okay.  And so then is it fair to
19   say that no creditor or potential creditor of
20   Ascentra Holdings, Inc. has ever applied for
21   sanction in that case?
22     A.   Sorry.  Just say that again?
23     Q.   Is it fair to say then that no
24   creditor or potential creditor has applied
25   for sanction of the Ascentra Holdings,

Page 115

1          G. ROBINSON
2    Inc. proceedings in the Cayman Islands?
3          MR. McDONALD:  Objection to form.
4      A.   No creditor or potential creditor
5    has applied for sanction, yes.
6      Q.   Okay.  Is it your understanding as
7    a licensed insolvency practitioner that
8    creditors and potential creditors of an
9    insolvent company or a company of doubtful
10   insolvency have the ability to apply for
11   sanction?
12         MR. McDONALD:  Objection.  That's
13   calling for a legal conclusion.
14     Q.   Okay.  Subject to that objection
15   you can answer.
16     A.   Just repeat the question for me,
17   please?
18     Q.   Sure.  As a licensed insolvency
19   practitioner in the Cayman Islands, do
20   creditors or potential creditors of insolvent
21   companies or companies of doubtful insolvency,
22   do they have a right to apply for sanction?
23         MR. McDONALD:  Objection; calls for
24   a legal conclusion.
25     Q.   You can answer.

Page 116

1          G. ROBINSON
2      A.   Yes.
3      Q.   Okay.  Do you know whether any
4    potential creditor -- withdrawn.
5          Do you know whether any creditor or
6    potential creditor -- withdrawn.
7          Is the Ascentra Holdings, Inc. case
8    pending before a particular bankruptcy --
9    withdrawn.
10         Is the Ascentra Holdings, Inc. case
11   pending before a particular judge in the
12   Cayman Islands?
13     A.   Yes.
14     Q.   And what's the name of the judge?
15     A.   Doyle.
16     Q.   Doyle.  Can I refer to him as Judge
17   Doyle, or is it Justice Doyle?
18         MR. COWAN:  Mr. Justice Doyle.
19         MR. MORRIS:  Mr. Justice Doyle.
20     Q.   To the best of your knowledge,
21   since the case was commenced has any creditor
22   or potential creditor appeared before
23   Mr. Justice Doyle?
24     A.   In the Ascentra liquidation?
25     Q.   Yes.

Page 117

1           G. ROBINSON
2     A.  Yes.
3     Q.  Okay.  Can you identify the
4  creditor or potential creditor who appeared
5  before Mr. Justice Doyle in the Ascentra
6  bankruptcy case?
7     A.  Your defendants.
8     Q.  Okay.  Is there any other creditor
9  or potential creditor -- withdrawn.
10          When you refer to my defendants
11  you're referring to my clients who are the
12  defendants in the complaint that was filed on
13  your behalf in the Cayman Islands, is that
14  right?
15     A.  That's the party that I'm
16  referring to, if you said they have been in
17  front -- they have appeared in the sanction,
18  then yes.
19     Q.  Other than my clients, is there any
20  other creditor or potential creditor who has
21  ever appeared before Mr. Justice Doyle in the
22  Ascentra Holdings, Inc. liquidation case?
23     A.  No.
24     Q.  Do you have access to the documents
25  that are filed with the court in the Cayman

Page 118

1           G. ROBINSON
2  Islands?
3     A.  Only through my Cayman attorneys.
4     Q.  And is it one of your
5  responsibilities to be at least generally
6  familiar with the documents that are filed in
7  the Cayman court in connection with the
8  Ascentra Holdings, Inc. bankruptcy?
9     A.  Yes.
10     Q.  Okay.  And in carrying out that
11  responsibility, are you aware of any
12  document that was filed in the Ascentra
13  Holdings, Inc. liquidation case by a creditor
14  or potential creditor other than my clients?
15     A.  No.
16     Q.  Thank you.  Have my clients
17  appeared in the Cayman case of Ascentra
18  Holdings, Inc. in any capacity other than as
19  defendants in the lawsuit that was commenced
20  against them?
21          MR. McDONALD:  Objection to form.
22     A.  When you say "the lawsuit," are
23  you referring to the one that we filed on the
24  11th of October 2023?
25     Q.  Yes, sir.

Page 119

1           G. ROBINSON
2     A.  So have they appeared in something
3  else?
4     Q.  Correct.
5     A.  Yes.
6     Q.  Do you have an understanding of
7  what -- in what capacity they appeared before
8  Mr. Justice Doyle other than as a defendant in
9  that lawsuit?
10     A.  Say that again?  Sorry.
11     Q.  It's okay.  My clients have the
12  information.
13          MR. MORRIS:  Let's move along.
14  We've got -- the next document is
15  what?  7?
16          THE COURT REPORTER:  Yes.
17          MR. MORRIS:  It's going to be the
18  foreign representatives' objection to
19  the motion to terminate the restraint.
20          THE WITNESS:  Okay.
21          (Robinson Exhibit 7, Foreign
22  Representatives' Objection to Motion of
23  SPGK to Terminate Restraint was marked
24  for identification.)
25          MR. McDONALD:  I'm sorry, this was

Page 120

1           G. ROBINSON
2  7 you said?
3          MR. MORRIS:  Yes.
4          THE COURT REPORTER:  Yes.
5  BY MR. MORRIS:
6     Q.  I'll just mark it to identify it,
7  but I don't know that I am going to ask you
8  any questions in hindsight.
9          Is this the objection that was
10  filed on your behalf in New York with respect
11  to SPGK's motion to terminate the restraint on
12  the Planet Payment funds?
13          (The witness reviews document.)
14     A.  Yes.
15     Q.  Okay.  And if you turn to just
16  page 27, I guess I'll ask one question.
17     A.  Twenty-seven.  Okay.
18     Q.  In the middle of the page, under
19  "Likelihood of Success on the Merits," you'll
20  see there's a statement, "Second," quote, "as
21  to the liquidators' claim to the Planet
22  Payment Funds as set forth in detail above,
23  the contractual and equitable bases remain and
24  indeed are stronger following Mr. Yoshida's
25  deposition."



Page 121

1         G. ROBINSON
2     Do you see that?
3     A.   Where does it start?
4     Q.   The word "Second" begins at the end
5  of about the fifth line down.
6     A.   Yes.
7     Q.   So I'm just focused on that
8  particular sentence.
9     A.   Okay.
10    Q.   And do you understand that SPGK has
11  asked the bankruptcy court in New York to lift
12  the restriction on the funds that originated
13  at Planet Payment?
14    A.   Yes.
15    Q.   And do you understand that your
16  counsel on your behalf has opposed that motion
17  saying that they have a legal and equitable
18  right to the Planet Payment money?
19    A.   Yes.
20    Q.   Okay.  And do you understand that
21  topics 6 through 9 of the 30(b)(6) topics are
22  intended to cover the documents and facts
23  concerning your position as to the legal and
24  equitable bases to the claim to the money?
25    A.   I've read paragraph 6 to 9.

Page 122

1         G. ROBINSON
2     Q.   Okay.
3         MR. MORRIS:  Let's now mark as the
4     next exhibit, which I guess is 9 --
5         THE COURT REPORTER:  8.
6         MR. McDONALD:  8.
7         MR. MORRIS:  8.  Thank you.
8         -- a report to the Court dated
9     October 11.
10        (Robinson Exhibit 8, Letter to the
11     Court dated October 11, 2023 was marked
12     for identification.)
13  BY MR. MORRIS:
14    Q.   Were you aware that this letter was
15  sent to the court in New York in October 2023?
16    A.   Yes.
17    Q.   Okay.  And so did you authorize
18  your counsel to give the judge in New York a
19  copy of the pleading, the amended pleading
20  that was filed in the Cayman Islands?
21    A.   Yes.
22  DIR  Q.   And was the purpose of providing
23  that to the Court so that the Court would see
24  the contractual and equitable claims that the
25  Ascentra Holdings, Inc. company was asserting

Page 123

1         G. ROBINSON
2  against the Planet Payment money?
3         MR. McDONALD:  Objection.
4     Q.   You can answer.
5         MR. McDONALD:  It calls for the
6  disclosure of attorney-client
7  communication.
8         MR. MORRIS:  I'm not asking for
9     anything about any communication.  I'm
10    asking for --
11        MR. McDONALD:  You're asking why.
12    That was done in consultation with
13    counsel.
14        MR. MORRIS:  Are you directing him
15    not to answer?
16        MR. McDONALD:  I am directing him
17    not to answer.
18        MR. MORRIS:  So if he was in front
19    of the judge today and the judge said,
20    "Why did you send me this," you would
21    say, "I can't tell you"?
22        You would direct him not to answer
23    because --
24        MR. McDONALD:  It's an obligation
25    of a foreign representative to apprise

Page 124

1         G. ROBINSON
2  the court of any developments in the
3  foreign jurisdiction, and we have done
4  so.  That is set forth in Chapter 15.
5     Q.   Is it your understanding that the
6  complaint sets forth contractual and equitable
7  bases for Ascentra Holdings, Inc. claim to the
8  Planet Payment money?
9         MR. McDONALD:  Objection to form.
10    A.   Say the question again, please?
11    Q.   Is it your understanding that the
12  complaint that was filed in the Cayman Islands
13  sets forth the contractual and equitable bases
14  for Ascentra Holdings, Inc.'s claim to the
15  Planet Payment funds?
16    A.   The facts and documents that
17  support our claim are set out in this amended
18  complaint.
19  DIR  Q.   Okay.  I just have a few questions
20  about that.  If we can go to paragraph 37.
21        Paragraph 37 identifies three
22  specific agreements.
23        Do I have that right?
24        MR. McDONALD:  I am going to object
25    and direct the witness not to answer.



Page 125

1        G. ROBINSON
2    We're not taking a deposition in the
3    Cayman proceeding here.  Your client has
4    answered, asserted defenses and a
5    counterclaim.  We have responded.  The
6    matter is taking place in the Cayman
7    Islands.
8        MR. MORRIS:  We don't need the
9    speech.  We understand it.  You could
10   just direct him not to answer on the
11   account -- on account that there's a
12   pending proceeding.
13       MR. McDONALD:  I'm directing him
14   not to answer on account there's a
15   pending proceeding.
16       MR. MORRIS:  Okay.  But I am going
17   to ask my questions anyway, and we'll
18   make the record.  Is that fair?
19       MR. McDONALD:  That's fine.
20       MR. MORRIS:  Okay.
21   DIR  Q.  Does paragraph 37 set forth --
22   identify three particular documents that were
23   executed by SPGK Cayman?
24       MR. McDONALD:  The same
25    instruction.

Page 126

1        G. ROBINSON
2        Q.  Are you going to follow counsel's
3    advice?
4        A.  Yes.
5    DIR  Q.  Okay.  Are these documents relevant
6    to Ascentra Holdings, Inc.'s claim to the
7    Planet Payment funds?
8        MR. McDONALD:  Objection.  The same
9    direction.
10       Q.  Are you going to follow counsel's
11   advice?
12       A.  Yes.
13   DIR  Q.  Have you personally reviewed these
14   three documents?
15       MR. McDONALD:  Objection.  The same
16   direction.
17       Q.  Are you going to follow counsel's
18   advice?
19       A.  Yes.
20   DIR  Q.  Do you know why these three
21   documents are cited in this complaint?
22       MR. McDONALD:  The same objection.
23   The same direction.
24       Q.  Are you going to follow counsel's
25   advice?

Page 127

1        G. ROBINSON
2        A.  Yes.
3    DIR  Q.  Do you know whether the legal
4    and equitable bases for Ascentra Holdings,
5    Inc. claim to the Planet Payment funds are set
6    forth anywhere other than this document and
7    exhibit 7?
8        MR. McDONALD:  The same objection.
9    The same direction.
10       MR. MORRIS:  So we can't even find
11   out if there's another place to look?
12       MR. McDONALD:  As I said, your
13   client has submitted defenses.  We have
14   responded to those.  There will be a
15   hearing in the Caymans where additional
16   evidence will be adduced and presented
17   to the Court.  So he's not testifying
18   about that.  That's all privileged, as
19   to whether or not there will be anything
20   else forthcoming in this matter.
21       MR. MORRIS:  Like I said, we'll
22   either do the preclusion order or we'll
23   do the follow-up.  But I appreciate
24   that.
25       Can we take a break?

Page 128

1        G. ROBINSON
2        MR. McDONALD:  Sure.
3        THE VIDEOGRAPHER:  This ends
4    unit 4.  We're off the record at 12:32.
5        (Recess taken.)
6        THE VIDEOGRAPHER:  This begins
7    unit 5.  We're on the record at 12:44.
8    BY MR. MORRIS:
9        Q.  Mr. Robinson, can you grab exhibit
10   number 1, please.
11       A.  Okay.
12   DIR  Q.  Look at topic 6.
13       Can you identify for me the
14   documents that the foreign representatives
15   contend support their assertion that they can
16   establish a likelihood of success on the
17   merits with respect to their contractual basis
18   for entitlement to the Planet Payment funds?
19       MR. McDONALD:  Objection.
20       I direct the witness not to answer
21   on the basis of a pending proceeding.
22       Q.  Are you going to follow counsel's
23   advice?
24       A.  Yes.
25   DIR  Q.  Can you turn the page, please, to



Page 129

```
1              G. ROBINSON
2   number 7.
3        Can you describe for me all facts
4   that the foreign representatives contend
5   support their assertion that they can
6   establish a likelihood of success on the
7   merits with respect to a contractual basis for
8   entitlement to the Planet Payment funds?
9        MR. McDONALD:  The same objection.
10   The same direction.
11        Also calls for divulging
12   attorney-client communications.
13   Q.  You are going to follow counsel's
14   advice?
15   A.  Yes.
16        MR. MORRIS:  To be clear, I'm not
17   asking for any attorney-client
18   privileged communications.  I'm just
19   asking for facts.
20        MR. McDONALD:  Understood.
21        MR. MORRIS:  Okay.  So I want to
22   just --
23        MR. McDONALD:  The same objection.
24   The same direction.
25        MR. MORRIS:  Okay.
```

Page 130

```
1              G. ROBINSON
2   DIR  Q.  Looking at topic number 8, can you
3   please tell me all of the documents that the
4   foreign representatives contend support their
5   assertion that they can establish a likelihood
6   of success on the merits with respect to an
7   equitable basis for entitlement to the Planet
8   Payment funds?
9        MR. McDONALD:  The same objection.
10   The same direction.
11        MR. MORRIS:  Does that include
12   attorney-client privilege or just the
13   pending-proceeding objection?
14        MR. McDONALD:  You said you're not
15   asking for any attorney-client
16   privileged information.
17        MR. MORRIS:  Correct.
18        MR. McDONALD:  So I'm just going
19   with the same objection, the same
20   direction.
21        MR. MORRIS:  Thank you.
22        MR. McDONALD:  And to the extent it
23   does call for divulging attorney-client
24   privilege, as I said before ...
25        MR. MORRIS:  But, again, I'm just
```

Page 131

```
1              G. ROBINSON
2   asking for documents.
3   Q.  Number 9.  Can you please -- are
4   you going to follow counsel's advice?
5   A.  Yes.
6   DIR  Q.  Number 9.  Can you please share
7   with us the facts that the foreign
8   representatives contend support their
9   assertion that they can establish a likelihood
10   of success on the merits with respect to an
11   equitable basis for entitlement to the Planet
12   Payment funds?
13        MR. McDONALD:  The same objection.
14   The same direction.
15   Q.  Are you going to follow counsel's
16   advice?
17   A.  Yes.
18   DIR  Q.  Do you know if Ascentra Holdings,
19   Inc. ever had a contract with Planet Payment
20   for any purpose?
21        MR. McDONALD:  Objection; the same
22   direction.
23   Q.  Are you going to follow counsel's
24   advice?
25   A.  Yes.
```

Page 132

```
1              G. ROBINSON
2   DIR  Q.  Do you know whether any subsidiary
3   of Ascentra Holdings, Inc. ever had a contract
4   of any kind with Planet Payment?
5        MR. McDONALD:  The same direction.
6   The same objection.  The same direction.
7   Q.  Are you going to follow counsel's
8   advice?
9   A.  Yes.
10   DIR  Q.  Does Ascentra Holdings, Inc. rely
11   upon the cancellation agreement to support its
12   claim to the Planet Payment funds?
13        MR. McDONALD:  The same objection.
14   The same direction.
15   Q.  Are you going to follow counsel's
16   advice?
17   A.  Yes.
18   DIR  Q.  Do you understand what the
19   cancellation is agreement -- withdrawn.
20        Do you understand what the
21   cancellation agreement is that I referred to?
22        MR. McDONALD:  The same
23   direction -- the same objection.  The
24   same direction.
25        MR. MORRIS:  All right.  I'll show
```



GRAHAM ROBINSON  30(b)(6)                    February 29, 2024
In Re Ascentra Holdings Inc.                           133–136

Page 133

1        G. ROBINSON
2     it to him just so there's no ambiguity.
3        Let's mark as the next exhibit --
4        What is it, number 9?
5        THE COURT REPORTER:  Yes, sir.
6        MR. MORRIS:  -- the cancellation
7     agreement.
8        (Robinson Exhibit 9, Exhibit E to
9     declaration of Graham Robinson was
10     marked for identification.)
11     Q.   Have you seen this document
12   before, sir?
13     A.   Yes.
14     Q.   And do you recall that this
15   document was attached as an exhibit to one of
16   the declarations that was filed on your behalf
17   in the Ascentra Holdings, Inc. Chapter 15
18   matter?
19     A.   Yes.
20   DIR Q.   Okay.  Does Ascentra Holdings,
21   Inc. rely on this document in any way to
22   support its contention that it's likely to
23   succeed on the merits of its claim to the
24   Planet Payment funds?
25        MR. McDONALD:  The same objection.

Page 134

1        G. ROBINSON
2     The same direction.
3     Q.   Are you going to follow counsel's
4   advice?
5     A.   Yes.
6        MR. MORRIS:  Let's take one more
7     short break.
8        Hold it.  Before we go off the
9     record.
10        Are you going to direct him not to
11     answer any question that concerns any
12     allegation or assertion that's set forth
13     in the complaint?
14        MR. McDONALD:  Yes.
15        MR. MORRIS:  And if you are given
16     those directions, do you intend to
17     follow them?
18        THE WITNESS:  Yes.
19        MR. MORRIS:  Would you direct him
20     not to answer any question relating to
21     any allegation or contention set forth
22     in the objection that was filed on
23     behalf of Ascentra Holdings that was
24     marked as one of the earlier exhibits?
25        MR. McDONALD:  Yes.

Page 135

1        G. ROBINSON
2        MR. MORRIS:  And would you follow
3   counsel's advice in that regard?
4        THE WITNESS:  Yes.
5        MR. MORRIS:  Okay.  Now let's go
6   off the record, and we may just be done.
7        MR. McDONALD:  Okay.
8        THE VIDEOGRAPHER:  This ends
9   unit 5.  We're off the record at 12:51.
10        (Pause in proceedings.)
11        THE VIDEOGRAPHER:  This begins
12   unit 6.  We're on the record at 12:56.
13        MR. MORRIS:  Okay.  Just a couple
14   of more questions I think.  In light of
15   the instructions that you've been given,
16   I don't want to waste people's time
17   here.
18   BY MR. MORRIS:
19   DIR Q.   Can you tell me what relief
20   Ascentra Holdings, Inc. is seeking against
21   SPGK in the Cayman Islands?
22        MR. McDONALD:  The same objection.
23   The same direction.
24     Q.   Are you going to follow counsel's
25   advice?

Page 136

1        G. ROBINSON
2     A.   Yes.
3   DIR Q.   Are you seeking anything other than
4   the recovery of money from SPGK?
5        MR. McDONALD:  The same objection.
6   The same direction.
7     Q.   Are you going to follow counsel's
8   advice?
9     A.   Yes.
10        MR. MORRIS:  I have no further
11     questions.  You know, subject to the
12     reservation of rights that I made early
13     on about either seeking a preclusion
14     order or motion to compel.  But I don't
15     want to waste anybody's time here.
16     So --
17        MR. McDONALD:  We appreciate that.
18        MR. MORRIS:  -- I'm done for the
19     day.
20        MR. McDONALD:  Okay.
21        THE VIDEOGRAPHER:  This is the
22     videographer.
23        Will anyone be ordering the video?
24        MR. McDONALD:  No.
25        MR. MORRIS:  Yes, we will.



GRAHAM ROBINSON  30(b)(6)                    February 29, 2024
In Re Ascentra Holdings Inc.                          137—140

Page 137

1          G. ROBINSON
2          THE VIDEOGRAPHER:  Okay.  This
3    concludes today's proceedings.  The
4    total number of video units was 6.
5    We're off the record at 12:58.
6                 ---
7    (Time noted:  12:58 p.m. EST)
8
9    _____
10              GRAHAM ROBINSON
11
12   Sworn and subscribed to before
13   me this _____day
14   of _____, 2024,
15   in the jurisdiction aforesaid.
16
17   _____
18              NOTARY PUBLIC
19
20
21
22
23
24
25

Page 138

1          C E R T I F I C A T E
2    STATE OF NEW YORK      )
3    COUNTY OF NEW YORK     )
4          I, FRANK J. BAS, a Certified Shorthand Reporter
5    and Notary Public within and for the State of New
6    York, do hereby certify:
7          That the witness whose testimony is hereinbefore
8    set forth, was duly sworn by me and that such
9    testimony given by the witness was taken down
10   stenographically by me and then transcribed.
11         I further certify that I am not related by blood
12   or marriage to any of the parties in this matter and
13   that I am in no way interested in the outcome of this
14   matter.
15         That any copy of this transcript obtained from a
16   source other than the court reporting firm, including
17   from co-counsel, is uncertified and may not be used at
18   trial.
19         IN WITNESS WHEREOF, I have hereunto set my hand
20   this 29th day of February, 2024.
21
                _____
22         FRANK J. BAS, RPR, CRR
23
24
25

Page 139

1    --------------- I N D E X ----------------------
2    WITNESS          EXAMINATION BY            PAGE
3    G. ROBINSON    MR. MORRIS                    6
4    --------------- EXHIBITS------------------------
     ROBINSON                                   PAGE
5
     Robinson Exhibit 1, Amended Notice of       27
6    Deposition of Ascentra Holdings, Inc.
7    Robinson Exhibit 2, Organizational chart    37
8    Robinson Exhibit 3, CWR Form Number 13,     59
     Joint Official Liquidators' Certificate
9
     Robinson Exhibit 4, Declaration of Graham   70
10   Robinson
11   Robinson Exhibit 5, Letter to the Court,    88
     dated December 29, 2023
12
     Robinson Exhibit 6, Letter to the Court    104
13   dated June 30, 2023
14   Robinson Exhibit 7, Foreign               119
     Representatives' Objection to Motion of
15   SPGK to Terminate Restraint
16   Robinson Exhibit 8, Letter to the Court    122
     dated October 11, 2023
17
     Robinson Exhibit 9, Exhibit E to           133
18   declaration of Graham Robinson
19
20
21
22
23
24
25

Page 140

1    --------------- I N D E X (Continued) ---------------
2    DIRECTIONS NOT TO ANSWER
3    Page    Line    Page    Line    Page    Line
4    18       6       97      13      131      6
     18       25      100     20      131      18
5    19       13      122     22      132      2
     22       21      124     19      132      10
6    51       24      125     21      132      18
     55       3       126     5       133      20
7    57       6       126     13      135      19
     57       17      126     20      136      3
8    83       10      127     3
     83       22      128     12
9    84       17      128     25
     85       12      130     2
10
11
12   REQUESTS
     Page    Line
13
     84       14
14
15
16
17
18
19
20
21
22
23
24
25



GRAHAM ROBINSON  30(b)(6)                    February 29, 2024
In Re Ascentra Holdings Inc.                            141—143

Page 141

1       DEPOSITION ERRATA SHEET
2   Our Assignment No. J10806182
    Case Caption:  In re Ascentra Holdings, Inc.
3
       DECLARATION UNDER PENALTY OF PERJURY
4      I declare under penalty of perjury that I have
    read the entire transcript of my deposition taken in
5   the above-captioned matter or the same has been read
    to me, and the same is true and accurate, save and
6   except for changes and/or corrections, if any, as
    indicated by me on the DEPOSITION ERRATA SHEET
7   hereof, with the understanding that I offer these
    changes as if still under oath.
8      Signed on the _____ day of _____
    20___.
9      _____
       GRAHAM ROBINSON
10
11
12     Subscribed and sworn to on the ____ day of
13  _____ 20 ____ before me.
14  _____
15
16  Notary Public, in and for the State of
17  _____.
18
19
20
21
22
23
24
25

Page 142

1   DEPOSITION ERRATA PAGE
2   Page No._____ Line No. _____ Change to:_____
3   _____
4   Reason for change:_____
5   Page No._____ Line No. _____ Change to:_____
6   _____
7   Reason for change:_____
8   Page No._____ Line No. _____ Change to:_____
9   _____
10  Reason for change:_____
11  Page No._____ Line No. _____ Change to:_____
12  _____
13  Reason for change:_____
14  Page No._____ Line No. _____ Change to:_____
15  _____
16  Reason for change:_____
17  Page No._____ Line No. _____ Change to:_____
18  _____
19  Reason for change:_____
20  Page No._____ Line No. _____ Change to:_____
21  _____
22  Reason for change:_____
23  SIGNATURE:_____DATE:_____
24       GRAHAM ROBINSON
25

Page 143

1   DEPOSITION ERRATA PAGE
2   Page No._____ Line No. _____ Change to:_____
3   _____
4   Reason for change:_____
5   Page No._____ Line No. _____ Change to:_____
6   _____
7   Reason for change:_____
8   Page No._____ Line No. _____ Change to:_____
9   _____
10  Reason for change:_____
11  Page No._____ Line No. _____ Change to:_____
12  _____
13  Reason for change:_____
14  Page No._____ Line No. _____ Change to:_____
15  _____
16  Reason for change:_____
17  Page No._____ Line No. _____ Change to:_____
18  _____
19  Reason for change:_____
20  Page No._____ Line No. _____ Change to:_____
21  _____
22  Reason for change:_____
23
24  SIGNATURE:_____DATE:_____
25       GRAHAM ROBINSON



# EXHIBIT 2

**FSD2023-0300**                    **Page 24 of 33**                    **2023-10-11**

REGISTER OF DIRECTORS AND OFFICERS FOR:

**Ascentra Holdings, Inc.**                                                                CR 283719

| Name | Address | Office Held | Appointment Effective Date | Resignation Effective Date | Notification of Appointment | Notification of Resignation |
|---|---|---|---|---|---|---|
| Chris Miner | 3008 Rivoli, Newport Beach, California, United States 92660 | DIRECTOR | 31-Dec-13 | 06-Mar-17 | 29-Jan-14 | 16-Mar-17 |
| Akinori Hori | Flat B, 1/F, No. 44 Coastline, Discovery Bay, N.T., Hong Kong | DIRECTOR | 31-Dec-13 | 16-Aug-15 | 29-Jan-14 | 14-Oct-16 |
| Ryunosuke Hori | 7 Fl, Flat F, Maple Mansion, Taikoo Shing, Hong Kong | DIRECTOR | 31-Dec-13 | 07-Feb-14 | 29-Jan-14 | 07-Feb-14 |
| Ryosuke Kojima | 313 St Vincent, Irvine, California, United States 92618 | DIRECTOR | 31-Dec-13 | 12-Jan-17 | 29-Jan-14 | 13-Feb-17 |
| Martin Matthews | 479 Morning Canyon Rd, Corona DL Mar California United States 92625 | DIRECTOR | 24-Dec-13 | 10-Nov-18 | 27-Dec-13 | 19-Nov-18 |
| Mourant Ozannes Cayman Secretaries Limited | P.O. Box 1348 94 Solaris Avenue, Camana Bay, Grand Cayman Cayman Islands KY1-1108 | SECRETARY | 24-Dec-13 | 29-Dec-15 | 27-Dec-13 | 17-Feb-16 |
| Ryunosuke Yoshida | 7 Fl, Flat F, Maple Mansion, Taikoo Shing, Hong Kong - | DIRECTOR | 07-Feb-14 | 30-Mar-18 | 07-Feb-14 | 03-Apr-18 |
| Martin Matthews | 479 Morning Canyon Rd, Corona DL Mar, California, United States 92625 | PRESIDENT | 25-Jul-14 | 14-May-15 | 25-Aug-14 | 14-Oct-16 |
| Martin Matthews | 479 Morning Canyon Rd, Corona DL Mar, California, United States 92625 | CHIEF EXECUTIVE OFFICER | 25-Jul-14 | 14-May-15 | 25-Aug-14 | 14-Oct-16 |
| Jeffrey Boshears | 2332 Baypointe Dr, Newport Beach, California, United States 92660 | CHIEF FINANCIAL OFFICER | 25-Jul-14 | 15-May-15 | 25-Aug-14 | 14-Oct-16 |
| Jeffrey Boshears | 2332 Baypointe Dr, Newport Beach, California, United States 92660 | ASSISTANT SECRETARY | 25-Jul-14 | 15-Aug-15 | 25-Aug-14 | 14-Oct-16 |
| Ryosuke Kojima | 313 St Vincent, Irvine, California, United States 92618 | CHIEF TECHNOLOGY OFFICER | 25-Jul-14 | 12-Jan-17 | 25-Aug-14 | 13-Feb-17 |
| Alex Oliva | 3741 Brilliant Place, Los Angeles, California, United States 90065 | CHIEF INFORMATION OFFICER | 25-Jul-14 | 05-Oct-16 | 25-Aug-14 | 14-Oct-16 |
| Takanori Meguro | 4 Chome-1-1, 16F, Taishido Setagaya Tokyo Japan 154-0004 | DIRECTOR | 14-Sep-17 | 08-Dec-17 | 02-Oct-17 | 10-Jan-18 |
| Christopher M Miner | PO Box 2026 Newport Beach, California USA 92659 | DIRECTOR | 07-Mar-18 | 17-Apr-18 | 08-Mar-18 | 25-Apr-18 |
| Motohiko Homma | Room 4529, Four Seasons Place 8 Finance Street Hong Kong | DIRECTOR | 11-Apr-18 | 18-Dec-18 | 16-Apr-18 | 27-Dec-18 |
| Yoshida Matsuura | The Harbour View Place Suite 5705 1 Austin Road West Hong Kong | DIRECTOR | 11-Apr-18 | | 16-Apr-18 | |
| Timothy Ashcroft | 1 Park Plaza Suite 800 Irvine CA 92614 U.S.A. | PRESIDENT | 12-Jan-17 | 07-Aug-17 | 13-Feb-17 | 02-Oct-17 |
| Yoshio Matsuura | The Harbour View Place, Suite 5705 1 Austin Road West, Kowloon Hong Kong | DIRECTOR | 28-Mar-18 | 30-Mar-18 | 29-Mar-18 | 03-Apr-18 |

EXHIBIT 2
WIT: Robinson
DATE: 2/29/24
FRANK BAS, RPR, CRR

**FSD2023-0300**                    **Page 24 of 33**                    **2023-10-11**

FSD2023-0300 **Page 25 of 33** **2023-10-11**

| Motohiko Homma | Room 4529, Four Seasons Place, 8 Finance Street Hong Kong | DIRECTOR | 28-Mar-18 | 30-Mar-18 | 29-Mar-18 | 03-Apr-18 |
| Yoshida Matsuura | The Harbour View Place Suite 5705 1 Austin Road West Hong Kong | CHAIRMAN | 01-Jun-18 | | 14-Jun-18 | |
| Ryunosuke Yoshida | 1212, 12th Floor China Resources Building 16 Harbour Road Wanchai Hong Kong | DIRECTOR | 18-Dec-18 | 01-Jun-21 | 27-Dec-18 | 02-Jun-21 |

CERTIFIED TO BE A TRUE COPY OF THE ORIGINAL



Name: Yun Shtang
For and on behalf of
Hermes Corporate Services Ltd.
P.O. Box 31493, George Town
Grand Cayman KY1-1206
Cayman Islands
Date: 10 Jun 2021



